FILED
CLERK, U.S. DISTRICT COURT

11/17/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: _____DM_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2020 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 2:20-cr-00579-SVW |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Bank Fraud and Wire Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1344(2): Bank Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. §§ 981, 982, 1028 and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| RICHARD AYVAZYAN, aka "Richard Avazian" and "Iuliia Zhadko," MARIETTA TERABELIAN, aka "Marietta Abelian" and "Viktoria Kauichko," ARTUR AYVAZYAN, aka "Arthur Ayvazyan," and TAMARA DADYAN, | |
| Defendants. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

[ALL DEFENDANTS]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

THE DEFENDANTS

1.    Defendant RICHARD AYVAZYAN, also known as ("aka") "Richard Avazian" and "Iuliia Zhadko" ("R. AYVAZYAN"), was a resident of Encino, California, within the Central District of California.

2.    Defendant MARIETTA TERABELIAN, aka "Marietta Abelian" and "Viktoria Kauichko," was a resident of Encino, California, within the Central District of California.  Defendant TERABELIAN and defendant R. AYVAZYAN were married.

3.    Defendant ARTUR AYVAZYAN, aka "Arthur Ayvazyan" ("A. AYVAZYAN"), was a resident of Encino, California, within the Central District of California.  Defendant A. AYVAZYAN and defendant R. AYVAZYAN were brothers.

4.    Defendant TAMARA DADYAN was a resident of Encino, California, within the Central District of California.  Defendant DADYAN and defendant A. AYVAZYAN were married.

THE PAYCHECK PROTECTION PROGRAM

5.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

6.    In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the small business (through its authorized representative) to

2

acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  One such certification required the applicant to affirm that "[t]he [PPP loan] funds w[ould] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments."  The applicant (through its authorized representative) was also required to acknowledge that "I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges."  In the PPP loan application, the applicant was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, the applicant was required to provide documentation showing its payroll expenses.

7.    A business's PPP loan application was received and processed, in the first instance, by a participating financial institution.  If a PPP loan application was approved, the participating financial institution would fund the PPP loan using its own monies.

8.    PPP loan proceeds were required to be used by the business on certain permissible expenses, namely, payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expenses within a designated period of time and used at least a minimum amount of the PPP loan proceeds towards payroll expenses.

THE ECONOMIC INJURY DISASTER LOAN PROGRAM

9.    The Economic Injury Disaster Loan Program ("EIDL") was a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

10.    The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

11.    To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020.  The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

12.    EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor.  The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold, as described in paragraph 11 above.  Any funds issued under an EIDL loan were issued directly by the SBA.

13.    EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtained a loan

4

under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

RELEVANT LENDING INSTITUTIONS

14.   Lenders A, B, C, D, and E were financial institutions insured by the Federal Deposit Insurance Company ("FDIC") that were approved SBA lenders of PPP loans.

BANK ACCOUNTS CONTROLLED BY THE DEFENDANTS

15.   Banks 1, 2, 3, 4, 5, and 6 were financial institutions insured by the FDIC.

16.   Defendant R. AYVAZYAN controlled and was a signatory (in his legal name or using one of his aliases) on the following bank accounts:

        a.   A business checking account at Bank 1 in the name of "Timeline Transport, Inc." (the "Timeline Transport Bank 1 Account");

        b.   A business checking account at Bank 2 in the name of "Inception Ventures Inc." (the "Inception Ventures Bank 2 Account"); and

        c.   A business checking account at Bank 3 in the name of "Iuliia Zhadko dba Top Quality Contracting" (the "TQC Bank 3 Account").

17.   Defendant TERABELIAN controlled and was a signatory (in her legal name or using one of her aliases) on the following bank accounts:

        a.   A personal checking account at Bank 2 in the name of TERABELIAN (the "Terabelian Bank 2 Account"); and

        b.   A business checking account at Bank 2 in the name of "Runyan Tax Service Inc." (the "Runyan Tax Bank 2 Account").

18.   Defendant A. AYVAZYAN controlled and was a signatory (in his legal name or using his alias) on the following bank accounts:

a.   A business checking account at Bank 2 in the name of "Allstate Towing and Transport LLC" (the "Allstate Towing Bank 2 Account"); and

b.   A business checking account at Bank 4 in the name of "Allstate Towing and Transport LLC" (the "Allstate Towing Bank 4 Account").

19.   Defendant DADYAN controlled and was a signatory on the following bank accounts:

a.   A business checking account at Bank 3 in the name of "Secureline Realty and Funding, Inc." (the "Secureline Realty Bank 3 Account");

b.   A business checking account at Bank 5 in the name of "ABC Realty Advisors, Inc." (the "ABC Realty Bank 5 Account"); and

c.   A business checking account at Bank 6 in the name of "Secureline Realty and Funding, Inc." (the "Secureline Realty Bank 6 Account").

B.   THE OBJECTS OF THE CONSPIRACY

20.   Beginning no later than in or around March 2020 and continuing until at least in or around July 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, and DADYAN, conspired with one another and with others known and unknown to the Grand Jury to commit: (a) wire fraud, in violation of Title 18, United States Code, Section 1343; (b) bank fraud, in violation of Title 18, United States Code, Section 1344(2).

C.   <u>THE MANNER AND MEANS OF THE CONSPIRACY</u>

21.   The objects of the conspiracy were to be carried out, and were carried out, in substance, as follows:

a.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, and DADYAN, together with other coconspirators, used and caused to be used, stolen, fictitious, or synthetic identities of individuals to submit fraudulent applications for PPP and EIDL loans;

b.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, and DADYAN, together with other coconspirators, would use, and cause to be used, stolen, fictitious, and synthetic business names to submit fraudulent applications for PPP and EIDL loans;

c.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, and DADYAN, together with other coconspirators, would make, and cause to be made, false statements to the SBA and financial institutions in connection with the fraudulent applications for PPP and EIDL loans, including false representations regarding the number of employees to whom the companies had paid wages and false certifications that the loans would be used for permissible business purposes.

d.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, and DADYAN, together with other coconspirators, would electronically submit, and cause to be submitted, false and fictitious documents to the SBA and financial institutions in support of the fraudulent PPP and EIDL loan applications, including false or fictitious tax documents, payroll records, bank records, and identification documents.

e.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, and DADYAN, together with other coconspirators, would direct that PPP and EIDL loan proceeds be deposited into bank accounts that defendants

R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, and DADYAN, and their
coconspirators controlled.

        f.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, and
DADYAN, and their coconspirators, would use the fraudulently obtained
PPP and EIDL loan proceeds for their own personal benefit and for the
benefit of their coconspirators, including for expenses prohibited
under the requirements of the PPP and EIDL programs, such as the
purchase of residential properties at Address 1 in Tarzana,
California ("Residential Property 1"), and Address 2 in Glendale,
California ("Residential Property 2").

      22.  As part of the conspiracy, between in or around March 2020
and in or around July 2020, defendants R. AYVAZYAN, TERABELIAN,
A. AYVAZYAN, and DADYAN, together with other coconspirators,
submitted and caused the submission of at least 35 fraudulent PPP and
EIDL loan applications seeking a total of at least $5.6 million in
PPP and EIDL proceeds from the SBA and financial institutions and
received a total of at least $4.6 million in PPP and EIDL loan
proceeds from the SBA and financial institutions.

D.   OVERT ACTS

      23.  On or about the following dates, in furtherance of the
conspiracy and to accomplish its objects, defendants R. AYVAZYAN,
TERABELIAN, A. AYVAZYAN, and DADYAN, together with other
conspirators, committed and willfully caused others to commit the
following overt acts, among others, within the Central District of
California:

<b><u>Secureline Realty PPP Loans</u></b>

<u>Overt Act No. 1</u>:   On or about April 22, 2020, defendant DADYAN
submitted and caused to be submitted to Lender D an application in

8

the name of Secureline Realty and Funding, Inc. ("Secureline Realty")
seeking a PPP loan in the amount of $122,838, which application:
(a) falsely represented that Secureline Realty had eight employees,
including employees for whom it had paid wages and payroll taxes; and
(b) falsely certified Secureline Realty would use the loan proceeds
for permissible business purposes.

Overt Act No. 2:   On or about April 22, 2020, defendant DADYAN
submitted and caused to be submitted to Lender D false and fraudulent
documents in support of the Secureline Realty PPP loan application,
including the following:

a.   A fake Internal Revenue Service ("IRS") Form 940 for
2019, which falsely represented that Secureline Realty had paid
$589,623 to its employees in 2019.

b.   A fake IRS Form 941 for the first quarter of 2020,
which falsely represented that Secureline Realty had paid $151,842 to
its employees during that period.

Overt Act No. 3:   On or about May 7, 2020, defendant DADYAN
caused Lender D to wire approximately $122,838 in proceeds from the
Secureline Realty PPP loan to Secureline Realty Bank 3 Account.

Overt Act No. 4:   On or about May 9, 2020, defendant DADYAN
submitted and caused to be submitted to Lender E an application in
the name of Secureline Realty seeking a PPP loan in the amount of
$137,500, which application: (a) falsely represented that Secureline
Realty had eight employees, including employees for whom it had paid
wages and payroll taxes; and (b) falsely certified Secureline Realty
would use the loan proceeds for permissible business purposes.

<u>Overt Act No. 5:</u>   On or about May 11, 2020, defendant DADYAN caused Lender E to wire approximately $137,500 in proceeds from the Secureline Realty PPP loan to Secureline Realty Bank 6 Account.

<u>Overt Act No. 6:</u>   On or about May 27, 2020, defendant DADYAN caused a check for approximately $136,000, drawn on Secureline Realty Bank 6 Account and comprised in substantial part of the PPP loan proceeds for Secureline Realty, to be deposited into ABC Realty Bank 5 Account.

<u>Overt Act No. 7:</u>   On or about June 12, 2020, defendant DADYAN caused approximately $120,010, which in substantial part came from the PPP loan proceeds for Secureline Realty, to be withdrawn from Secureline Realty Bank 3 Account and subsequently caused approximately $120,000 to be deposited to ABC Realty Bank 5 Account.

<u>Overt Act No. 8:</u>   On or about June 17, 2020, defendant DADYAN caused approximately $200,000 to be wired from ABC Realty Bank 5 Account to Inception Ventures Bank 2 Account, for which defendant R. AYVAZYAN was the sole signatory.

<u>Overt Act No. 9:</u>   On or about June 22, 2020, defendant R. AYVAZYAN caused approximately $435,000, which in part came from the approximately $200,000 in PPP loan funds defendant R. AYVAZYAN received from defendant DADYAN, to be wired from Inception Ventures Bank 2 Account to Escrow Company 1 to be used to as part of the $3,250,000 purchase price for Residential Property 1, which was purchased in the names of defendants R. AYVAZYAN and TERABELIAN.

**Top Quality Contracting PPP Loan**

<u>Overt Act No. 10:</u>   On or about April 30, 2020, defendant R. AYVAZYAN, using the name of M.Z., submitted and caused to be

10

submitted to Lender B an application in the name of Top Quality Contracting ("TQC"), seeking a PPP loan in the amount of $130,000.

Overt Act No. 11:   On or about April 30, 2020, in connection with the TQC PPP loan application, defendant R. AYVAZYAN submitted and caused to be submitted to Lender B a fake copy of M.Z.'s California driver's license and a false IRS Form 940 purportedly prepared and filed by M.Z.

Overt Act No. 12:   On or about May 8, 2020, defendant R. AYZAYAN caused Lender B to wire approximately $130,000 in proceeds from the TQC PPP loan to TQC Bank 3 Account, which listed defendant R. AYVAZYAN's alias "Iuliia Zhadko" and M.Z. as the only signatories.

**Allstate Towing PPP Loan**

Overt Act No. 13:   On or about May 2, 2020, defendant A. AYVAZYAN submitted and caused to be submitted to Lender C an application in the name of Allstate Towing and Transport LLC ("Allstate Towing") seeking a PPP loan in the amount of $124,000, which application: (a) falsely represented that Allstate Towing had 11 employees, including employees for whom it had paid wages and payroll taxes; and (b) falsely certified Allstate Towing would use the loan proceeds for permissible business purposes.

Overt Act No. 14:   On or about May 2, 2020, defendant A. AYVAZYAN submitted and caused to be submitted to Lender C false and fraudulent documents in support of the Allstate Towing PPP loan application, including the following:

a.   A fake IRS Form 940 for 2019, which falsely represented that Allstate Towing had paid $546,000 to its employees in 2019.

b.   A fake IRS Form 941 for the first quarter of 2020, which falsely represented that Allstate Towing had paid $136,500 to its employees during that period.

Overt Act No. 15:   On or about May 5, 2020, defendant A. AYVAZYAN caused Lender C to wire approximately $124,000 in proceeds from the Allstate Towing PPP loan to Allstate Towing Bank 4 Account.

Overt Act No. 16:   On or about May 21, 2020, defendant A. AYVAZYAN caused approximately $80,000, which in substantial part came from the Allstate Towing PPP loan proceeds, to be wired from Allstate Towing Bank 4 Account to Allstate Towing Bank 2 Account.

Overt Act No. 17:   On or about June 3, 2020, defendant A. AYVAZYAN caused approximately $93,000, which in substantial part came from the Allstate Towing PPP loan proceeds, to be wired from Allstate Towing Bank 2 Account to Escrow Company 1 to be used as part of the $3,250,000 purchase price for Residential Property 1, which was purchased in the names of defendants R. AYVAZYAN and TERABELIAN.

### G&A Diamonds and Redline Auto Collision Loans

Overt Act No. 18:   On or about May 3, 2020, defendants R. AYVAZYAN and TERABELIAN, together with other coconspirators, submitted and caused to be submitted to Lender C an application in the name of G&A Diamonds seeking a PPP loan in the amount of approximately $113,750.

Overt Act No. 19:   On or about May 5, 2020, defendants R. AYVAZYAN and TERABELIAN, together with other coconspirators, caused Lender C to wire approximately $113,750 in proceeds from the G&A Diamonds PPP loan to G&A Diamonds' Bank 4 account (the "G&A Diamonds Bank 4 Account").

Overt Act No. 20:   On or about June 2, 2020, defendants R. AYVAZYAN and TERABELIAN, together with other coconspirators, submitted and caused to be submitted to the SBA an application in the name of Redline Auto Collision Inc. ("Redline Auto") seeking an EIDL loan in the amount of approximately $150,000.

Overt Act No. 21:   On or about June 8, 2020, defendants R. AYVAZYAN and TERABELIAN, together with other coconspirators, caused the SBA to wire approximately $149,900 in proceeds from the Redline Auto EDIL loan to Redline Auto's Bank 5 account (the "Redline Auto Bank 5 Account").

Overt Act No. 22:   On or about June 14, 2020, defendants R. AYVAZYAN and TERABELIAN, together with other coconspirators, submitted and caused to be submitted to the SBA an application in the name of G&A Diamonds seeking an EIDL loan in the amount of approximately $150,000.

Overt Act No. 23:   On or about June 16, 2020, defendants R. AYVAZYAN and TERABELIAN, together with other coconspirators, caused the SBA to wire approximately $149,900 to G&A Diamonds Bank 4 Account.

Overt Act No. 24:   On or about June 17, 2020, defendants R. AYVAZYAN and TERABELIAN, together with other coconspirators, caused approximately $150,000, comprised in substantial part of the proceeds from the Redline Auto EIDL loan, to be wired from Redline Auto Bank 5 Account to Terabelian Bank 2 Account.

Overt Act No. 25:   On or about June 19, 2020, defendants R. AYVAZYAN and TERABELIAN, together with other coconspirators, caused approximately $100,000, which in substantial part came from

the proceeds from the G&A Diamonds PPP and EIDL loans, to be wired from G&A Diamonds Bank 4 Account to Terabelian Bank 2 Account.

    <u>Overt Act No. 26:</u>   On or about June 22, 2020, defendants R. AYVAZYAN and TERABELIAN caused approximately $565,000, which in substantial part came from PPP and EIDL loan funds obtained from the SBA and financial institutions in the name of G&A Diamonds and Redline Auto, to be wired from Terabelian Bank 2 Account to Escrow Company 1 to be used as part of the $3,250,000 purchase price for Residential Property 1, which was purchased in the names of defendants R. AYVAZYAN and TERABELIAN.

**Timeline Transport EIDL Loan**

    <u>Overt Act No. 27:</u>   On or about June 15, 2020, defendant R. AYVAZYAN, using the alias "Iuliia Zhadko," submitted and caused to be submitted to the SBA an application in the name of Timeline Transport, Inc. ("Timeline Transport") seeking an EIDL loan in the amount of approximately $150,000, which application: (a) falsely represented that "Iuliia Zhadko" had owned Timeline Transport since 2016 and was the company's Chief Executive Officer; (b) falsely represented that Timeline Transport had 22 employees, including employees for whom it had paid wages and payroll taxes; and (c) falsely certified Timeline Transport would use the loan proceeds for permissible business purposes.

    <u>Overt Act No. 28:</u>   On or about June 22, 2020, defendant R. AYVAZYAN caused the SBA to wire approximately $149,900 in proceeds from the Timeline Transport EIDL loan to Timeline Transport Bank 1 Account.

    <u>Overt Act No. 29:</u>   On or about June 24, 2020, defendant R. AYVAZYAN caused approximately $110,000, which in substantial part

came from the Timeline Transport EIDL loan proceeds, to be wired from Timeline Transport Bank 1 Account to Escrow Company 1 to be used as part of the $3,250,000 purchase price for Residential Property 1, which was purchased in the names of defendants R. AYVAZYAN and TERABELIAN.

**Runyan Tax Service PPP Loan**

Overt Act No. 30:   On or about July 13, 2020, defendant R. AYVAZYAN and defendant TERABELIAN, using her alias "Viktoria Kauichko," submitted and caused to be submitted to Lender A an application in the name of Runyan Tax Service, Inc. ("Runyan Tax Service") seeking a PPP loan in the amount of $276,653, which application: (a) falsely represented that Runyan Tax Service had 22 employees, including employees for whom it had paid wages and payroll taxes; and (b) falsely certified Runyan Tax Service would use the loan proceeds for permissible business purposes.

Overt Act No. 31:   On or about July 13, 2020, defendants R. AYVAZYAN and TERABELIAN submitted and caused to be submitted to Lender A false and fraudulent documents in support of the Runyan Tax Service PPP loan application, including a fraudulent California driver's license purportedly belonging to "Viktoria Kauichko," and a federal tax filing representing "Viktoria Kauichko" as Runyan Tax Service's President, even though defendants R. AYVAZYAN and TERABELIAN knew at the time that "Viktoria Kauichko" was a fake and synthetic identity.

Overt Act No. 32:   On or about July 21, 2020, defendants R. AYVAZYAN and TERABELIAN caused Lender A to wire approximately $276,653 in proceeds from the Runyan Tax Service PPP loan to Runyan Tax Bank 2 Account.

<u>Overt Act No. 33:</u>   On or about July 23, 2020, defendants R. AYVAZYAN and TERABELIAN caused approximately $238,614, which in substantial part came from the Runyan Tax Service PPP loan proceeds, to be transferred from Runyan Tax Bank 2 Account to Escrow Company 2 to be used as part of the approximately $1,000,000 purchase price for Residential Property 2, which was purchased in the name of defendant R. AYVAZYAN's alias "Iuliia Zhadko."

COUNTS TWO THROUGH SEVEN

[18 U.S.C. §§ 1343, 2(a)]

[ALL DEFENDANTS]

24.   The Grand Jury re-alleges paragraphs 1 through 19 and 21 through 23 of this Indictment here.

A.   THE SCHEME TO DEFRAUD

25.   Beginning no later than in or around March 2020 and continuing until at least in or around July 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, and DADYAN, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the SBA and financial institutions as to material matters, and to obtain moneys, funds, assets, and other property owned by and in the custody and control of the SBA and financial institutions by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

26.   The fraudulent scheme operated and was carried out, in substance, as described in paragraphs 21 through 23 of this Indictment.

B.   USE OF THE WIRES

27.   On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, and DADYAN, together with others known and unknown to the Grand Jury, aiding and abetting each other, transmitted and caused the transmission of the following

items by means of wire and radio communication in interstate and
foreign commerce:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|-------|------|------------------------------|
| TWO | May 5, 2020 | Transfer of approximately $124,000 in PPP loan proceeds from Lender C, sent by means of an interstate wire, into Allstate Towing Bank 4 Account |
| THREE | May 8, 2020 | Transfer of approximately $130,000 in PPP loan proceeds from Lender B, sent by means of an interstate wire, into TQC Bank 3 Account |
| FOUR | May 11, 2020 | Transfer of approximately $137,500 in PPP loan proceeds from Lender E, sent by means of an interstate wire, into Secureline Realty Bank 6 Account |
| FIVE | June 16, 2020 | Transfer of approximately $149,900 in EIDL loan proceeds from the SBA, sent by means of an interstate wire, into G&A Diamonds Bank 4 Account |
| SIX | June 17, 2020 | Transfer of approximately $150,000 in EIDL loan proceeds from the Redline Auto Bank 5 Account, sent by means of an interstate wire, to Terabelian Bank 2 Account |
| SEVEN | June 22, 2020 | Transfer of approximately $149,900 in EIDL loan proceeds from the SBA, sent by means of an interstate wire, into Timeline Transport Bank 1 Account |

COUNTS EIGHT THROUGH ELEVEN

[18 U.S.C. §§ 1344(2), 2]

[ALL DEFENDANTS]

28.   The Grand Jury re-alleges paragraphs 1 through 19 and 21 through 23 of this Indictment here.

A.   THE SCHEME TO DEFRAUD

29.   Beginning no later than in or around March 2020 and continuing until at least in or around July 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, and DADYAN, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, executed, and attempted to execute a scheme to obtain moneys, funds, credits, assets, and other property owned by and in the custody and control of federally-insured financial institutions by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

30.   The fraudulent scheme operated and was carried out, in substance, as described in paragraphs 21 through 23 of this Indictment.

B.   EXECUTIONS OF THE SCHEME

31.   On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, and DADYAN, together with others known and unknown to the Grand Jury, aiding and abetting each other, committed and willfully caused others to commit the following acts, each of which constituted an execution of the fraudulent scheme:

| COUNT | DATE | ACT |
|-------|------|-----|
| EIGHT | April 30, 2020 | Submission of application for PPP loan to Lender B in the name of TQC |
| NINE | May 2, 2020 | Submission of application for PPP loan to Lender C in the name of Allstate Towing |
| TEN | May 9, 2020 | Submission of application for PPP loan to Lender E in the name of Secureline Realty |
| ELEVEN | July 13, 2020 | Submission of application for PPP loan to Lender A in the name of Runyan Tax Service |

COUNT TWELVE

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

[Defendant R. AYVAZYAN]

32.   The Grand Jury re-alleges paragraphs 1 through 19 and 21 through 23 of this Indictment here.

33.   Beginning no later than in or around March 2020 and continuing until at least in or around July 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant R. AYVAZYAN knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification that defendant R. AYVAZYAN knew belonged to another person, namely, the name of M.Z., during and in relation to bank fraud, a felony violation of Title 18, United States Code, Section 1344(2), as charged in Count Eight of this Indictment.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982]

34. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count One of this Indictment.

35. The defendant so convicted shall forfeit to the United States of America the following:

a. all right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense, including, but not limited to, certain real property referred to herein as Residential Property 1 located in the County of Los Angeles, State of California, APN 2176-029-031, and certain real property referred to herein as Residential Property 2 located in the County of Los Angeles, State of California, APN 5663-036-033; and

b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

36. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be

located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

37.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Two through Seven of this Indictment.

38.   The defendant, if so convicted, shall forfeit to the United States of America the following:

a.   all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses, including, but not limited to, certain real property referred to herein as Residential Property 1 located in the County of Los Angeles, State of California, APN 2176-029-031, and certain real property referred to herein as Residential Property 2 located in the County of Los Angeles, State of California, APN 5663-036-033; and

b.   to the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

39.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a)

24

cannot be located upon the exercise of due diligence; (b) has been
transferred, sold to, or deposited with a third party; (c) has been
placed beyond the jurisdiction of the court; (d) has been
substantially diminished in value; or (e) has been commingled with
other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982]

40. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Eight through Eleven of this Indictment.

41. Any defendant so convicted shall forfeit to the United States of America the following:

a. all right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense, including, but not limited to, certain real property referred to herein as Residential Property 1 located in the County of Los Angeles, State of California, APN 2176-029-031, and certain real property referred to herein as Residential Property 2 located in the County of Los Angeles, State of California, APN 5663-036-033; and

b. to the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

42. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in

26

the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION FOUR

[18 U.S.C. §§ 982 and 1028 and 28 U.S.C. § 2461(c)]

43. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982 and 1028 and Title 28, United States Code, Section 2461(c) in the event of the conviction of defendant RICHARD AYVAZYAN, also known as ("aka") "Richard Avazian," and "Iuliia Zhadko," of the offense set forth in Count Twelve of this Indictment.

44. The defendant, if so convicted, shall forfeit to the United States of America the following:

a. all right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense, including, but not limited to, certain real property referred to herein as Residential Property 1 located in the County of Los Angeles, State of California, APN 2176-029-031, and certain real property referred to herein as Residential Property 2 located in the County of Los Angeles, State of California, APN 5663-036-033;

b. any personal property used or intended to be used to commit the offense; and

c. to the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

45. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b) and 1028(g), the defendant, if so convicted, shall forfeit substitute

property, up to the total value of the property described in the

preceding paragraph if, as the result of any act or omission of the

defendant, the property described in the preceding paragraph, or any

portion thereof: (a) cannot be located upon the exercise of due

diligence; (b) has been transferred, sold to or deposited with a

third party; (c) has been placed beyond the jurisdiction of the

court; (d) has been substantially diminished in value; or (e) has

been commingled with other property that cannot be divided without

difficulty.

                                        A TRUE BILL


                                        _____/S/_____
                                        Foreperson

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

DANIEL A. KAHN
Acting Chief, Fraud Section
Criminal Division
United States Department of Justice

KRISTEN A. WILLIAMS
Assistant United States Attorney
Deputy Chief, Major Frauds Section

JULIAN L. ANDRÉ
Assistant United States Attorney
Major Frauds Section

CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice