Ashwin J. Ram (SBN 227513)
aram@steptoe.com
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

Nicholas P. Silverman (*pro hac vice*)
nsilverman@steptoe.com
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, N.W.
Washington D.C., 20036
Telephone: (202) 429-8096
Facsimile: (202) 329-3902

Michael A. Keough (SBN 327037)
**STEPTOE & JOHNSON LLP**
mkeough@steptoe.com
One Market Plaza
Spear Tower, Suite 3900
San Francisco, CA 94105
Telephone: (415) 365-6700
Facsimile: (415) 365-6699

*Counsel for Defendant Richard Ayvazyan*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RICHARD AYVAZYAN,<br>MARIETTA TERABELIAN,<br>ARTUR AYVAZYAN,<br>TAMARA DADYAN,<br><br>                    *Defendants.* | Case No. 20-cr-579 (SVW)<br><br>**EX PARTE APPLICATION FOR AN ORDER GRANTING DISCOVERY, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER AND AN ORDER GRANTING DISCOVERY**<br><br>Judge: Hon. Steven V. Wilson<br>Complaint Filed: October 20, 2020 |

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................1

II.  STATEMENT OF FACTS.......................................................................2

    A.   PRE-INDICTMENT DISCOVERY ............................................2

    B.   POST-INDICTMENT DISCOVERY..........................................3

III. ARGUMENT............................................................................................8

    A.   THE COURT SHOULD GRANT THE APPLICATION FOR DISCOVERY .................................................................................8

    B.   IN THE ALTERNATIVE, THE COURT SHOULD ENTER THE PROPOSED PROTECTIVE ORDER ATTACHED AS EX. A....................................................................................................11

IV.  CONCLUSION .....................................................................................16

## I. PRELIMINARY STATEMENT

Defendant Richard Ayvazyan intends to proceed to trial as scheduled on January 12, 2021. To prepare for this trial, Ayvazyan is entitled to receive discovery—under the Constitution, statutes, and ethical rules—that the government has unreasonably withheld despite the repeatedly requests of Ayvazyan's counsel. Much of this material can be quickly produced—indeed, many of the documents are specifically identified in the indictment. Instead, the government insists on withholding any discovery unless and until Ayvazyan agrees to an onerous stipulation that would classify every single document produced by the government as "Confidential Information" and prohibit Ayvazyan from possessing any of those documents outside of the presence of counsel, without even attempting to identify which documents might actually contain personal information subject to protection even when being publicly filed. *See* Fed. R. Crim. P. 49.1; L. R. 5.2-1, L. Cr. R. 49.1-1. Instead, the government is holding discovery hostage while insisting that Ayvazyan agree to proceed to trial with one hand tied behind his back.

Ayvazyan respectfully requests that the Court grant his application for discovery and order the government to produce discovery. In the event that the Court deems a protective order necessary, Ayvazyan respectfully submits that an Order based on the one entered by Judge Hatter in *United States Estopare*, 20-cr-79, Dkt. 179 (C.D. Cal. Oct. 20, 2020) (Ex. A)—a case in which the government recently engaged in similar discovery hostage-taking by insisting on a nearly identical protective order only to be rebuked by the court—would sufficiently protect any third-party interests while allowing Ayvazyan the ability to investigate the allegations against him and prepare for trial.

## II. STATEMENT OF FACTS

### A. Pre-Indictment Discovery

This case originated months ago when Special Agent Justin Palmerton's office received documents alleging that Iuliia Zhadko had fraudulently applied for a loan under the Paycheck Protection Program ("PPP Loan"). Because Zhadko had previously resided at the same address as Richard Ayvazyan and deposited funds into an account owned by Ayvazyan, Palmerton began investigating Ayvazyan. On October 19, 2020, a notice or a similar request to a law enforcement tracking system appears to have led to the detention, questioning, and arrest of Ayvazyan and his wife by Customs and Border Protection and the Miami Police Department.[1] The next day, Palmerton filed a Complaint alleging that Iuliia Zhadko was Richard Ayvazyan and that Ayvazyan had used his allegedly synthetic Zhadko identity to commit wire fraud and bank fraud. *See* Dkt. 1. Palmerton alleged that Ayvazyan and his wife—not Zhadko—submitted applications for PPP Loans in the names of fake businesses and caused others to do so in the names of real businesses. *Id.* ¶¶ 16, 26, 27, 34, 40.

In the Complaint, Palmerton repeatedly referenced document productions that he had obtained and analyzed. *See, e.g., id.* ¶ 7. These included "loan documents provided by the SBA" including the applications allegedly submitted by Ayvazyan or his supposed co-conspirators, *id.* ¶¶ 16, 26, 27, 34, "records provided by" two local escrow companies including Ayvazyan's records, *id.* ¶¶ 22, 23, 24, 33, and "records provided by Financial Institution[s]" and "Lender[s]" regarding accounts allegedly held by Ayvazyan or his wife, *id.* ¶¶ 25, 26, 31, 32, 37. Despite the availability and alleged relevance of each of these third-party productions, the government has declined to produce them.

---

[1] This incident violated Ayvazyan's Fourth and Fifth Amendment rights and he has requested discovery related to the incident in order to efficiently present the violations for the Court's review and determination of appropriate sanctions.

Ayvazyan was held in a Miami jail for over one week. During his detention, he contracted COVID-19 and suffered debilitating symptoms in November.

On November 5, 2020, the government executed a series of military-style searches on homes belonging to Ayvazyan and his brother. Despite the non-violent nature of the charges in this case, video footage of one such search shows the government using smoke grenades, military-style assault rifles, military body armor, and a battering ram to attack suburban homes at six o'clock in the morning. The government seized a variety of physical and electronic items—many of which could not possibly fall within the warrant's limitation to evidence, fruits, and instrumentalities of the alleged offenses—from Ayvazyan's home including "Misc. Financial Records," "Misc. Financial Docs," Ayvazyan's children's iPhone, "uncounted cash" from both savings and Ayvazyan's own wallet, and jewelry—without regard for whether it had been purchased before or after the alleged conspiracy began in March 2020. There was no attempt to ensure that only property responsive to the warrant was seized. The property seized from Ayvazyan's home has not been produced to the defense and the defense has not been permitted to inspect it.[2]

The government refused multiple requests for pre-indictment discovery and advised that it wished to put in place a protective order as a condition precedent to any discovery due to its allegations of fraud and identity theft.

### B. Post-Indictment Discovery

On November 17, 2020, the last day permitted by 18 U.S.C. § 3161(b), the government indicted Ayvazyan. Within twenty-four hours, Ayvazyan memorialized his requests for discovery in a letter sent via email on November 18, 2020. Ayvazyan's letter informed the government that he intended to invoke his right to a speedy trial and that trial preparation required the immediate production of discovery. Nov. 18, 2020

---

[2] Defense counsel has sought discovery of the items seized in order to request return of items that were not subject to seizure pursuant to the warrant.

Discovery Ltr. at 1 (Ex. B) ("Any further delay—particularly when the government has already filed a complaint and now an indictment—is unreasonable and risks prejudicing Ayvazyan's constitutional and statutory rights to a fair and speedy trial."). In addition to citations to authority requiring production, Ayvazyan provided examples of types of evidence that would be favorable and material to the defense to mitigate the possibility that the government would fail to recognize the need to produce relevant information. *See United States v. Sadr*, ___ F. Supp. 3d ___, 2020 WL 5549931, at *5 (S.D.N.Y. Sept. 16, 2020) (emphasizing that "trial blinders" should "not cause AUSAs to wrongfully withhold potentially exculpatory evidence").

Although Ayvazyan did not agree that a protective order was necessary, in order to assuage the government's concerns, he proposed a draft protective order substantially identical to the one utilized by the same government attorney in eight other cases involving fraud and identity theft charges, especially *United States v. Motley*, No. 17-cr-774, Dkt. 60 (C.D. Cal. Jan. 22, 2018) (alleged fraud and identity theft); *see also United States v. Avenatti*, No. 19-cr-61, Dkt. 36 (C.D. Cal. May 20, 2019) (alleged fraud and identity theft); *United States v. Canada*, No. 18-cr-895, Dkt. 15-1 (C.D. Cal. Feb. 25, 2019) (alleged fraud and embezzlement involving federal funding programs); *United States v. Marshall*, No. 17-cr-194 (SVW), Dkt. 34 (C.D. Cal. May 11, 2017) (alleged fraud involving federal funding program); *United States v. Vardumyan*, No. 16-cr-433, Dkt. 16 (C.D. Cal. July 7, 2016) (alleged fraud); *United States v. Stephens*, No. 16-cr-262, Dkt. 23 (alleged fraud); *United States v. Hessani*, No. 15-cr-499, Dkt. 87 (C.D. Cal. Oct. 29, 2015) (alleged fraud and identity theft); *United States v. Kang*, No. 15-cr-478, Dkt. 29 (C.D. Cal. Sept. 16, 2015) (alleged fraud and identity theft). In each of these eight cases, the defense team—including the defendant—was permitted to possess discovery materials for the purpose of investigating and preparing its defense. And in each case, government counsel agreed that such a protective order was legally sufficient.

When the government did not substantively respond to Ayvazyan's request for discovery, he followed up on the request via email and provided an FTP link enabling the government to directly upload files to Ayvazyan's counsel, a common practice other U.S. Attorney's Offices have found to be convenient. Almost two weeks later, the government instead responded by insisting upon a proposed protective order that it knew Ayvazyan could not accept.

The government's proposed order, sent on November 30, was grossly overbroad. "Confidential Information" requiring protection was defined as "*any document …  containing*" "a name," an "email address," "financial information," an "address," or any other "information that can be used to identify a person." Gov't Proposal ¶ 5.b (incorporating definition of PII Materials in ¶ 5.a) (Ex. C). The government's proposal therefore mandated treating every document as "Confidential Information." The government's proposal then mandated that the defendant could not "maintain, or otherwise possess any Confidential Information [i.e., any document produced by the government] in this case at any time." *Id.* ¶ 5.g. Moreover, although the defendant could view such discovery "in the presence of a member of the Defense Team," he could not take any notes that contained any "information contained in" the discovery, *id.* ¶ 5.g, or receive any such notes from the Defense Team, *id.* ¶ 5.j. In sum and substance, Ayvazyan would be prohibited from participating in the investigation of his case or preparation of his defense based on any discovery received from the government.

Ayvazyan immediately responded that the government's proposal went far beyond the government's previous practice in *Motley*, *Avenatti*, *Marshall*, and *Canada* and appeared to be either intended to punish the defendant for exercising his constitutional rights or a stall tactic designed to prevent him from obtaining access to materials the government had maintained for at least one month. Nov. 30, 2020 7:10 PM email (Ex. D) (noting that to the extent the government could identify specific

5
EX PARTE APPLICATION FOR AN ORDER GRANTING DISCOVERY

confidential information, the defense would be willing to apply narrowly tailored protections).

Ayvazyan proposed a meet and confer and volunteered that he would follow the onerous terms of the government's proposal until they could negotiate a reasonable alternative:

> we reiterate our request for discovery. The government filed its Complaint over one month ago on October 20, 2020. We have repeatedly asked for discovery and emphasized our desire to review discovery and conduct our own investigation. Although the absence of a protective order does not justify the continued delay of producing discovery, much of which has been in your possession for months, to expedite your discovery production this email will confirm our agreement to follow the terms of your proposed protective order until we can agree upon or litigate a protective order to be ordered by the Court.

Nov. 30, 2020 7:10 PM email (Ex. D).  The government refused to produce discovery or engage in a productive discussion about how this protective order should differ from its previous eight protective orders, which did not contain such onerous restrictions. Instead, the government said that those cases involving similar charges were "entirely irrelevant to this prosecution" because they involved "different facts."  Dec. 1, 2020 Ltr. at 2 n.2 (Ex. E).

The parties met and conferred on December 2, 2020.  During the call, the government was unable to identify any particular risk posed by Ayvazyan preparing for trial like any other defendant.  In particular, the government refused to answer questions about what facts created risks that did not exist in the numerous fraud and identity theft cases where the government stipulated that such onerous restrictions were

unnecessary.[3] Defense counsel pointed out that each of the loan applications was allegedly submitted by one of the defendants, their aliases, or their supposed co-conspirators, and that with a single exception,[4] the government had only identified those people or entities as the owners of the personal identification information. It was illogical to claim that allegedly synthetic identification information belonged to Ayvazyan or was fraudulently submitted by Ayvazyan and then withhold that information from him while forcing him to defend that identification information he allegedly owned or fraudulently submitted. Although Ayvazyan reiterated his willingness to work out a narrowly tailored agreement protecting specific information without interfering with trial preparation, government counsel stated that it would not agree to permit Ayvazyan to engage in the basic trial preparation routinely done by defendants both in this District and around the country.[5]

That night, Ayvazyan sent a letter stipulation proposing to agree in writing that he would follow the government's proposed order until the parties can agree upon or

---

[3] The government claimed that it "would be illegal" and a violation of Ayvazyan's bond for him to possess the covered discovery. Defense counsel is unaware of any basis for this unusual claim. Any law preventing a person from possessing any document with a name or address written on it would be unconstitutional, particularly when weighed against the constitutional rights of an individual to defend himself in a criminal case.

[4] Ayvazyan pointed out that "M.Z." is differently situated as an alleged victim of identity theft. *See* Ind. ¶ 33 (Dkt. 32). As such, Ayvazyan volunteered to agree to a narrowly tailored protective order that covered M.Z.'s undisclosed information protected by procedural rules and ensured that Ayvazyan was given sufficient access to defend himself. Ex. B. The government did not respond but later confirmed that no other witnesses are alleged victims of identity theft.

[5] Government counsel confirmed that the protective order—despite its plain language prohibiting any "possess[ion]" however brief—would not prevent electronically sharing documents with Ayvazyan as long as he did not download them, print them, photograph them, or otherwise transcribe the protected information. Despite the government's atextual limitation, the proposed protective order would be unconstitutional because the limitations imposed are unnecessary and because they would impede Ayvazyan's preparation for his defense as described infra in section III.B.

litigate a protective order to be ordered by the Court. Ex. F. After follow-up requests on December 4 and December 7, the government refused to agree to the letter stipulation and concluded that ex parte litigation was necessary. Ex. G. This motion followed.

### III. ARGUMENT

#### A. The Court Should Grant the Application for Discovery

The government has held discovery hostage and refused to produce any discovery—including Ayvazyan's own statements and property along with all other discovery—unless and until he agrees to the government's unconstitutional demands. Dec. 1, 2020 Discovery Ltr. at 1 (Ex. E) (refusing to produce discovery until entry of a protective order). Unsurprisingly, this sort of hostage-taking has no basis in Rule 16 or the law of this District.

Rule 16(a)(1), the U.S. Constitution, and ethical obligations each entitle Ayvazyan to discovery of certain information. The government may seek a protective order only as to the particular information for which it can establish good cause for protection, Fed. R. Crim. P. 16(d), and is not empowered to withhold all other discovery in the meantime. The Court should therefore direct the government to produce all discovery except the particular information for which it seeks Rule 16(d) protection.

Good cause pursuant to Fed. R. Crim. P. 16(d) requires "a showing that disclosure will work a clearly defined and serious injury." *United States v. Arredondo*, No. 12-cr-1055, 2012 WL 1946955, at *1 (D. Ariz. May 30, 2012) (quoting *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *United States v. Calderon*, 14-cr-103-CAS, 2014 WL 1401941, at *3 (C.D. Cal. Apr. 8, 2014) (quoting *Arredondo* and *Wecht* and denying government

8
EX PARTE APPLICATION FOR AN ORDER GRANTING DISCOVERY

application for protective order except as to agreed-upon matters and grand jury proceedings). The injury resulting from the lack of a protective order "must be shown with specificity." *Id.* If the government can show why a specific injury would result from the disclosure of particular information, then the Court must weigh the defendant's constitutional interest in disclosure of the information against the injuries that disclosure would cause. *Id.* (citing *Wecht*, 484 F.3d at 211); *see United States v. W.R. Grace*, 401 F. Supp. 2d 1093, 1101 (D. Mont. 2005) (holding that the due process rights of a defendant outweighed even the statutory privacy rights of victim-witnesses' medical records as long as use was restricted to the instant litigation); Fed. R. Crim. P. 16 adv. comm. notes (1974) (noting that if the government demonstrated that a witness "would be subject to physical or economic harm if [specific information] is revealed," then a protective order would be appropriate).

"The burden is on the party seeking the protective order to make a sufficient showing of why it is *needed*." Wright & Miller, 2 Fed. Prac. & Proc. Crim. § 262 ("General claims that ... witness intimidation will result from discovery should not suffice."). In the Ninth Circuit, to prevent access to unfiled discovery materials, "[a] party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Arredondo*, 2012 WL 1946955, at *1 (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)); *see also Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

In this case, the government has failed to identify the specific information requiring protection, and has instead defined "confidential information" in a way that would subject all of the documents in discovery to restrictions without justification or any cause. In any event, the defendant's Fifth and Sixth Amendments would outweigh the government's vague, speculative averments of risk unsupported by particular threats.

9

EX PARTE APPLICATION FOR AN ORDER GRANTING DISCOVERY

The government has repeatedly failed to identify specific facts as to why Ayvazyan poses a specific and identified risk based on the disclosure of specific information. Ayvazyan is an upstanding businessman (and owner of Inception Ventures) with a respected position in the Los Angeles Armenian community. He and his wife live together with their three children and often care for his mother nearby. Ayvazyan works, lives, and goes to church in the same tight-knit community in which he has spent most of the last thirty-one years. Although the government alleges that Ayvazyan committed fraud and identity theft—offenses to which Ayvazyan has pled not guilty and is presumed innocent—the government has proposed treating Ayvazyan far more harshly than similarly charged defendants. Ayvazyan's lone guilty plea ten years ago, involving misstating income in mortgage applications and a sentence of probation, does not lead one to conclude he is a threat to anyone. Ayvazyan has no history of violence and has never threatened a witness or otherwise impeded justice.

Ayvazyan has demonstrated that he can follow rules similar to the ones that adhere to discovery. He is currently under house arrest per his terms of release. He has lived under Probation's supervision and abided by its rules. While Ayvazyan has pled not guilty, he respects Probation's role as supervisor. He has repeatedly complied with Probation's instructions. In one particularly salient example, Ayvazyan complied with every request during the execution of a search warrant at his home, even opening the gate so that the searching agents' vehicles could enter without obstacle. The government's broad-brush attempt to paint Ayvazyan as too dangerous to participate in his own defense is without merit.

In light of the government's inability to identify any evidence that the requested disclosure will lead to a specifically identified harm, the government cannot and will not be able to satisfy its heavy burden that a specific prejudice or harm will occur in the absence of a protective order. Even if the Court disagrees or the government succeeds in demonstrating a specific prejudice or harm, however, the Court should grant

1  Ayvazyan's application for discovery and require the government to move for a
2  protective order as to the specific information in specific documents that requires
3  protection under Rule 16.  The desire to subject specific information to a protective
4  order is not a lawful justification to deny discovery of all other information.  Instead, it
5  is an abuse of Rule 16 and prosecutorial power.  The Court should therefore grant this
6  application and direct the government to produce discovery.

### B. In the Alternative, the Court Should Enter the Proposed Protective Order Attached as Ex. A.

Ayvazyan respectfully submits that the government has failed to carry its burden to demonstrate good cause requiring a protective order.  If the Court disagrees and concludes that a protective order is necessary, then the Amended Protective Order recently entered by Judge Hatter in *United States v. Estopare*, No. 20-cr-79 (TJH), Dkt. 179 (C.D. Cal. Oct. 20, 2020) would be appropriate.  A proposed Order is attached as Ex. A.

In *Estopare*, the government refused to produce unredacted discovery for approximately two months, advancing nearly identical arguments that a protective order preventing fraud defendants to possess personally identifying information was appropriate.  As in this case, there was no specific concern that the defendants would misuse a specific piece of information.  Instead, there was only the generalized fear that the defendants had been charged with serious offenses—immigration fraud and forced servitude—and that the criminal organization of which the defendants were a part had "a long history of witness intimidation and harassment."  Gov't Opp'n to Disc. Appl. at 2, *Estopare*, Dkt. 103 (C.D. Cal. May 15, 2020).  The only piece of related evidence against the defendants, however, was a "file labeled 'traitor' that was discovered in an office associated with the defendants during the execution of the search warrant and which contained the personal identifying information of these so called 'traitors.'"  *Id.* at 8 (citing Dkt. 103-1 at 6).

11
EX PARTE APPLICATION FOR AN ORDER GRANTING DISCOVERY

1    Despite its lack of specific evidence, the government argued for restrictions on
2    the provision of all personal identification information—in substantially similar form to
3    the case at bar—that belonged to either cooperating witnesses or other third parties. *Id.*
4    at 3-4 (defining key terms identically to the government's proposal in this case). Most
5    important, the government sought to prohibit the *Estopare* defendants from possessing
6    confidential information outside of the presence of counsel, *id.* at 4, just as it does here.
7    The *Estopare* defendants applied for an order granting discovery and a more
8    reasonable protective order, arguing that it was impractical for counsel to "sit with [a
9    co-defendant] hour after hour while she reviews these materials" presumably because
10   counsel had other trial preparation to work on. Reply Supp. Disc. Appl. at 5, *Estopare*,
11   Dkt. 105 (C.D. Cal. May 18, 2020). Common practice is for clients to provide written
12   comments about discovery to counsel to facilitate efficient preparation, but the
13   *Estopare* defendants observed that the government's insisted-upon protective order
14   would prevent that. *Id.* Moreover, criminal discovery is complex and often requires
15   multiple readings, especially by laypeople like defendants. *Id.* That requires the
16   defendants be able to review discovery without counsel sitting behind them for hour
17   after hour. *Id.*
18   Judge Hatter granted the *Estopare* defendants request, finding that the
19   government's proposed protective order—identical in the key respects to the proposal
20   in this case—was unnecessary and inappropriate. *See* Order, *Estopare*, Dkt. 110 (C.D.
21   Cal. May 18, 2020). Instead, the court ordered that the application for discovery was to
22   be granted, that the government must provide unredacted copies of all discovery
23   material including materials containing personal identification information or witness
24   statements, and that a protective order would be entered that
25       (1) limited access to unredacted discovery to the defendants, their counsel,
26       and other defense team members;
27
28

12
EX PARTE APPLICATION FOR AN ORDER GRANTING DISCOVERY

(2) limited the use of unredacted discovery materials to the litigation of the instant case;

(3) prohibited distribution of the unredacted materials to third parties such as the alleged co-conspirators with demonstrated practice of witness intimidation, harassment, and retaliation;

(4) permitted distribution of materials to third parties for trial preparation as long as the information listed in Fed. R. Civ. P. 5.2 and C.D. Cal. Local R. 5.2-1 were redacted;

(5) permitted distribution of unredacted discovery to entities or individuals who owned or were the subject of the relevant information; and

(6) required that third parties return or destroy materials following the trial preparation.

Amended Protective Order, *Estopare*, Dkt. 179 (C.D. Cal. Oct. 20, 2020); Order, *Estopare*, Dkt. 110 (C.D. Cal. May 21, 2020). Other district courts agree that limiting use of unredacted materials to the instant litigation serves as "a substantial safeguard against unauthorized disclosure," sufficient to order unredacted versions of victim-witnesses' sensitive medical files. *United States v. W.R. Grace*, 401 F. Supp. 2d 1093, 1101 (D. Mont. 2005) (holding that due process required that defendants have an opportunity to inspect key records "without the arbitrary removal of portions of the records by the prosecution").

If the above Order was sufficient to protect the safety of cooperating witnesses in *Estopare* despite an actual history of witness intimidation, retaliation, and harassment

and a folder labeled "Traitors" then surely it is more than sufficient in this case in which the sole concern is that the defendant has been charged with a crime. Moreover, defense counsel has provided the government with eight protective orders from cases involving aggravated identity theft or fraud. Each of those protective orders similarly permitted defendants—many of whom were charged with more serious offenses than those involved in this case—unrestrained access to discovery to prepare for their own defense.

The government's proposed protective order, on the other hand, would materially prejudice Ayvazyan's defense and thereby deprive him of his Fifth and Sixth Amendment rights. *See, e.g., United States v. Baker*, No. 20-cr-288, 2020 WL 4589808, at *4 (S.D.N.Y. Aug. 10, 2020) (rejecting similar government-proposed protective order because video-conferencing due to COVID-19 makes it even more time consuming and unworkable to review every document with counsel present). It should not be entered.

Ayvazyan's defense strategy requires that he have access to discovery as a full member of the defense team able to independently search for and identify exculpatory evidence. ████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
█████████████████████
     ████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████



15
EX PARTE APPLICATION FOR AN ORDER GRANTING DISCOVERY

1 █████████████████████████████████████████████████████████
2 ████████████████████████████████████████████████████
3 ███████████████████████████████████████████████████████
4 ████████████████████████████[6]

Ayvazyan is entitled to participate in the investigation and preparation of his defense. Indeed, under the circumstances described above, his participation is necessary to due process and obtaining a fair trial. The government's proposed protective order goes far beyond the necessary rights afforded to other defendants and would impede Ayvazyan's constitutional rights. If the Court determines a protective order is necessary, it should enter Ayvazyan's proposed protective order (Ex. A) based on the order held to be sufficient in *Estopare*.

## IV.  CONCLUSION

Ayvazyan requests that the Court grant Ayvazyan's application for discovery for the reasons stated above. In the alternative that the Court concludes that the government has sufficiently proved a protective order is necessary, Ayvazyan requests that the Court enter his proposed protective order and direct the government to produce discovery.

Dated:  December 7, 2020

Respectfully submitted,
**STEPTOE & JOHNSON LLP**

*/s/ Ashwin J. Ram*
Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
STEPTOE & JOHNSON LLP
633 West Fifth Street, Suite 1900

---

[6] Ayvazyan respectfully requests that the Court maintain the redacted portion of this filing under seal to maintain the sanctity of his defense strategy. Ayvazyan submits this sealed information so that the Court may evaluate his motion, but the government is not entitled to it.

16
EX PARTE APPLICATION FOR AN ORDER GRANTING DISCOVERY

Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
One Market Plaza
Spear Tower, Suite 3900
San Francisco, CA 94105
Telephone: (415) 365-6700
Facsimile: (415) 365-6699

Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
1330 Connecticut Avenue, N.W.
Washington D.C., 20036
Telephone: (202) 429-8096
Facsimile: (202) 329-3902

*Counsel for Defendant Richard Ayvazyan*