# EXHIBIT B

**Silverman, Nicholas**

---

| | |
|---|---|
| **From:** | Silverman, Nicholas |
| **Sent:** | Wednesday, November 18, 2020 10:10 PM |
| **To:** | Andre, Julian L. (USACAC); christopher.fenton@crm.usdoj.gov |
| **Cc:** | Ram, Ashwin; Keough, Michael |
| **Subject:** | US v. Ayvazyan - Discovery Request |
| **Attachments:** | Draft Protective Order.DOC; Draft Stipulation re Protective Order.DOC; Letter re Discovery Request.pdf |

Counsel,

On behalf of Rich Ayvazyan, please see attached letter regarding our request for discovery, proposed stipulation, and proposed protective order consistent with our recent telephone call. We adapted the stipulation and protective order from those used in Julian's most recent 18 U.S.C. § 1028A case with a protective order (United States v. Motley).

In addition to Ashwin, I have cced Mike Keough who will be joining Mr. Ayvazyan's defense team.

Best,

Nick Silverman

**Nicholas P. Silverman**
Associate
nsilverman@steptoe.com

**Steptoe**

+1 202 429 8096 direct      Steptoe & Johnson LLP
+1 617 595 6559 mobile     1330 Connecticut Avenue, NW
+1 202 429 3902 fax          Washington, DC 20036
                                      www.steptoe.com

This message and any attached documents contain information from the law firm Steptoe & Johnson LLP that may be confidential and/or privileged. If you are not the intended recipient, please do not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

**Silverman, Nicholas**

---

| | |
|---|---|
| **From:** | Silverman, Nicholas |
| **Sent:** | Wednesday, November 18, 2020 10:20 PM |
| **To:** | Fenton, Christopher (CRM) |
| **Subject:** | FW: US v. Ayvazyan - Discovery Request |
| **Attachments:** | Draft Protective Order-c2.DOC; Draft Stipulation re Protective Order-c2.DOC; Letter re Discovery Request-c2.pdf |

Christopher,

I apologize, but I appear to have used the incorrect address for you.  Please see the message below.

Nick

**Nicholas P. Silverman**
Associate
nsilverman@steptoe.com

## Steptoe

+1 202 429 8096 direct     Steptoe & Johnson LLP
+1 617 595 6559 mobile     1330 Connecticut Avenue, NW
+1 202 429 3902 fax        Washington, DC 20036
                           www.steptoe.com

This message and any attached documents contain information from the law firm Steptoe & Johnson LLP that may be confidential and/or privileged. If you are not the intended recipient, please do not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

---

**From:** Silverman, Nicholas
**Sent:** Wednesday, November 18, 2020 10:10 PM
**To:** Andre, Julian L. (USACAC) <Julian.L.Andre@usdoj.gov>; christopher.fenton@crm.usdoj.gov
**Cc:** Ram, Ashwin <aram@Steptoe.com>; Keough, Michael <mkeough@Steptoe.com>
**Subject:** US v. Ayvazyan - Discovery Request

Counsel,

On behalf of Rich Ayvazyan, please see attached letter regarding our request for discovery, proposed stipulation, and proposed protective order consistent with our recent telephone call.  We adapted the stipulation and protective order from those used in Julian's most recent 18 U.S.C. § 1028A case with a protective order (United States v. Motley).

In addition to Ashwin, I have cced Mike Keough who will be joining Mr. Ayvazyan's defense team.

Best,

Nick Silverman

**Nicholas P. Silverman**
Associate
nsilverman@steptoe.com

Steptoe

+1 202 429 8096 direct      Steptoe & Johnson LLP
+1 617 595 6559 mobile    1330 Connecticut Avenue, NW
+1 202 429 3902 fax          Washington, DC 20036
                                          www.steptoe.com

This message and any attached documents contain information from the law firm Steptoe & Johnson LLP that may be confidential and/or privileged. If you are not the intended recipient, please do not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

Ashwin J. Ram
213 439 9443
aram@steptoe.com



633 West Fifth Street, Ste. 1900
Los Angeles, CA 90071
213 439 9400 main
www.steptoe.com

November 18, 2020

<u>By Electronic Mail</u>

Julian Andre, Assistant United States Attorney
Christopher Fenton, Trial Attorney
U.S. Attorney's Office for the
Central District of California
312 N Spring St.
Los Angeles, CA 90012

     Re:    ***United States v. Richard Ayvazyan*, No. 20-cr-579 (SVW)**
                **<u>Request for Discovery</u>**

Dear Counsel:

     We represent defendant Richard Ayvazyan and write on his behalf.  Although the complaint in this matter was filed on October 20, 2020, you were notified on November 9, 2020 that Ayvazyan does not intend to waive his right to a speedy trial, and the indictment was filed on November 17, 2020, you have not yet produced discovery.  In order to prepare for trial, Ayvazyan requests immediate and complete production of discovery.  Any further delay—particularly when the government has already filed a complaint and now an indictment—is unreasonable and risks prejudicing Ayvazyan's constitutional and statutory rights to a fair and speedy trial.  During our November 9 teleconference, you mentioned the potential need for a protective order to produce discovery based on potential allegations of fraud and/or identity theft. To expedite discovery, we have prepared the attached draft stipulation and proposed protective order based on the stipulation and protective order filed by Mr. Andre in *United States v. Motley*, which we understand to have involved allegations of both fraud and identity theft.

     Ayvazyan requests that the government provide "open file" discovery in this case, including the prompt production of all of the documents and other evidence it has obtained in its investigation and all grand jury transcripts, FBI 302s, and interview memoranda.

November 18, 2020
Page 2



In the event that you elect not to provide open file discovery, Ayvazyan respectfully submits this formal request for discovery in this case, pursuant to the Fifth and Sixth Amendments to the United States Constitution; Rules 5, 12, 16, and 26.2 of the Federal Rules of Criminal Procedure; *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and progeny; the Department of Justice's "Guidance for Prosecutors Regarding Criminal Discovery"; and the additional authority set forth below.

Both the request for open file discovery and the formal request for discovery are continuing in nature and require supplementation in accordance with Fed. R. Crim. P. 16(c).

Ayvazyan requests that you produce and/or permit him to inspect and copy or photograph the materials specified below. This request encompasses not only documents[1] and information[2] in the possession, custody, or control of, or that have been reviewed by, the U.S. Attorney's Office for the Central District of California and the Federal Bureau of Investigation, but also documents and information in the possession, custody, and control of, or that have been reviewed by, the Department of Justice Criminal Division, the Small Business Administration, the Internal Revenue Service, Customs & Border Protection, the Department of Homeland Security, the Transportation Security Administration, the Miami Police Department, the Miami-Dade Police Airport District Station, and any other federal, state or local agency allied with the prosecution or involved in any way in investigating the activities alleged in the search warrant(s), complaint, or indictment, including all related conduct. As used in this letter, the words "government" and "you" include your office and the above-referenced federal, state, or local agencies.

Ayvazyan requests that the government comply with all of its discovery obligations under federal law, including, but not limited to, the production of the following:

## I.   Search, Interrogation, and Arrest Discovery

1.   The "lead that came in" that began the investigation. *See* 10/22/20 Tr. at 16.

---

[1] The word "documents" includes, but is not limited to, all books, papers, letters, correspondence, reports, memoranda, studies, calendars, appointment books, diaries, notes, messages, e-mail, text messages, instant messages, other computer facilitated or transmitted materials, images, photographs, polaroids, information in any computer database, audio and video tapes, recordings, transcripts, ledgers, printouts, contracts, checks, receipts, and all copies or portions thereof, and any other written, recorded, or memorialized material of any nature whatsoever.

[2] All requests in this letter include information that has not been memorialized. Even if requests do not explicitly mention unmemorialized information, each request below includes a request for the immediate memorialization and production of such information.

November 18, 2020
Page 3



2.      All communications between any member of the prosecution team (including but not limited to the U.S. Attorney's Office for the Central District of California and the Federal Bureau of Investigation, the Internal Revenue Service, and the Department of Justice Criminal Division) on the one hand, and Customs & Border Protection, the Department of Homeland Security, the Transportation Security Administration, the Miami Police Department, and the Miami-Dade Police Airport District Station on the other, related to any person or entity involved in this investigation or indictment, including but not limited to those referenced in Compl. ¶ 41 and by Agent Palmerton during the October 22 hearing.  To the extent any communication occurred but was not memorialized, please identify the communication by date, time, parties, and content.

3.      All documents, notices, bulletins, notes, reports, and statements regarding the selection of Richard Ayvazyan or Marietta Terabelian for additional screening, secondary screening, detention, rejection, or any other treatment at Miami International Airport on or about October 19, 2020.  To the extent any communication occurred but was not memorialized, please identify the communication by date, time, parties, and content.  This request includes but is not limited to any use of Automated Targeting System-Passenger, the National Targeting Center, Unified Passenger, or any other function designed to alert CBP or port of entry personnel to a particular passenger.

4.      All documents, notes, reports, recordings, and statements of or regarding Ayvazyan or Terabelian at Miami International Airport on or about October 19, 2020 including all interactions occurring while they were in any lobby, waiting area, corridor, or secondary screening area.  This request includes all emails, text messages, instant messages, phone calls, or other communications regarding Ayvazyan or Terabelian.  This request includes all audio or visual recordings of Ayvazyan or Terabelian.  To the extent any communication occurred but was not memorialized, please identify the communication by date, time, parties, and content.

5.      All items seized from Richard Ayvazyan or Marietta Terabelian or their luggage including identification of which items are considered to be "contraband," *see* Compl. ¶¶ 6, 41.

6.      The photograph of Iuliia Zhadko's driver's license with metadata, *see* Compl. ¶ 41, and all other data seized.

7.      The text messages purportedly seized from Marietta Terabelian's cell phone with metadata including the cell phone's telephone number, *see* Compl. ¶ 41, and all other data seized.

8.      All search warrant materials related to this investigation and indictment including applications, affidavits, warrants, inventories, returns, and other materials.  To the extent responsiveness decisions were made, please explain how the people making those decisions were instructed to ensure *Brady* material was memorialized and/or seized.

November 18, 2020
Page 4



## II.      Statements of the Defendant

9.      Any written or recorded statements made by Ayvazyan within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the government.  *See* Fed. R. Crim. P. 16(a)(1)(B)(i).  This request includes, without limitation:

    a.      All notes, reports, and memoranda summarizing any statement by Ayvazyan to law enforcement officials at the time of his arrest;

    b.      All transcripts and/or recordings of conversations in which Ayvazyan was a participant;

    c.      All wire and oral communications made by Ayvazyan that were transmitted to or intercepted by, for or on behalf of any government agent or employee or any agency or entity of the U.S. government, including but not limited to any communications involving Ayvazyan and any government informant or cooperator;

    d.      All written and recorded statements of witnesses that reflect, relate, or incorporate any statements made by Ayvazyan; and

    e.      All other documents that purport to reflect, relate, or incorporate any statements made by Ayvazyan.  *See, e.g.*, Compl. ¶ 22.

10.     The portion of any written record containing the substance of any oral statement made by Ayvazyan, whether before or after arrest, to any person identified to the defendant as a government agent.  *See* Fed. R. Crim. P. 16(a)(1)(B)(ii).  This request includes without limitation, all documents, including notes, prepared by any FBI employee or agent that contain the substance of any relevant statement made by Ayvazyan.

11.     The substance of any other oral statement made by Ayvazyan or any other target of the investigation, whether before or after arrest, in response to interrogation by any person then known by the speaker to be a government agent.  *See* Fed. R. Crim. P. 16(a)(1)(A).

## III.     Documents, Tangible Objects, and Information

12.     All books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that were obtained from or belong to Ayvazyan, or that belonged to Ayvazyan at the time of the alleged offenses, or that belong or belonged to any agent of Ayvazyan or any entity allegedly owned or controlled by Ayvazyan.  *See* Fed. R. Crim. P. 16(a)(1)(E)(iii).  This request includes all documents as to which the government or any entity assigned Ayvazyan as a custodian, whether hard copy or electronic records.



13.    All books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that the government intends to use at trial in its case-in-chief.  *See* Fed. R. Crim. P. 16(a)(1)(E)(ii).  We request that any materials in this category be specifically identified from among the materials produced pursuant to the defendant's other Rule 16 and *Brady* requests, both to enable counsel to prepare effectively for trial and to afford Ayvazyan an opportunity to move to suppress any evidence the prosecution intends to use in its case-in-chief.  *See* Fed. R. Crim. P. 12(b)(3)(C) and 12(b)(4)(B).

14.    All books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that are material to the preparation of Ayvazyan's defense, *see* Fed. R. Crim. P. 16(a)(l)(E)(i), including, but not limited to, those items set forth in paragraphs III.15-30 below.

15.    All documents obtained from third parties related to any person or entity referenced or alluded to in the search warrant(s), complaint, or indictment.  *See* Compl. ¶ 7 (noting such documents exist).  This includes but is not limited to:

a. All documents provided by the SBA mentioning any person or entity referenced or alluded to in the search warrant(s), complaint, or indictment.  *See* Compl. ¶¶ 16, 26.b, 26.c, 27, 34.

b. All documents from the State of California's Employment Development mentioning any person or entity referenced or alluded to in the search warrant(s), complaint, or indictment.  *See* Compl. ¶¶ 19.c, 30.a (noting receipt of documents regarding Timeline Transport, Inc.).

c. All documents from the State of California's Department of Motor Vehicles mentioning any person or entity referenced or alluded to in the search warrant(s), complaint, or indictment.  *See* Compl. ¶ 30.b.

d. All documents from any escrow firm including but not limited to Escrow Company 1 and Escrow Company 2 mentioning any person or entity referenced or alluded to in the search warrant(s), complaint, or indictment.  *See* Compl. ¶¶ 23, 24; Ind. ¶ 23.

e.  All documents from any lender or financial institution including all account statements mentioning any person or entity referenced or alluded to in the search warrant(s), complaint, or indictment.  *See, e.g.*, Compl. ¶¶ 21, 25, 26.a, 26.d, 27, 31, 32, 34; 10/22/20 Tr. at 14; Ind. ¶¶ 14-19.

f. All IRS forms mentioning any person or entity referenced or alluded to in the search warrant(s), complaint, or indictment including those referenced in Compl. ¶ 36 and Ind. ¶ 23.



g. The California Driver's licenses mentioning any person referenced or alluded to in the search warrant(s), complaint, or indictment including those referenced in Compl. ¶ 36 and Ind. ¶ 23.

h. All emails, text messages, voicemails, phone calls, or other communications related to any person or entity in the search warrant(s), complaint, or indictment that is not otherwise covered by other categories in this letter.

16.     All documents related to all alleged "fraudulent applications," Ind. ¶ 21.a-.d, including the alleged "35 fraudulent PPP and EIDL loan applications" cited in Ind. ¶ 22 and the loan applications cited in Ind. ¶ 23.

17.     All alleged "false statements," "false representations," and "false and fictitious documents," Ind. ¶ 21.c, .d, including all documents cited in Ind. ¶ 23.  Please identify with specificity the statements, representations, and specific portions of the documents alleged to be false.  This information is within the government's possession—it would have been a prerequisite to aver the truth of the cited sub-paragraphs—and it is necessary to prepare for trial.

18.     All alleged "false and fraudulent pretenses, representations, and promises, and … conceal[ed] material facts," *see* Ind. ¶ 25.  This information is within the government's possession—it would have been a prerequisite to aver the truth of the cited paragraph—and it is necessary to prepare for trial.

19.     All alleged interstate wire transmissions in Counts Two, Three, Four, Five, Six, and Seven.  *See* Ind. ¶ 27.

20.     The means of identification belonging to another person that was allegedly transferred, possessed, and used without lawful authority.  *See* Ind. ¶ 33.

21.     Identification of all proceeds allegedly traceable to the offenses.  *See* Ind. ¶¶ 35, 38, 41, 44.

22.     All documents reflecting the alleged use of funds for personal benefit.  *See* Compl. ¶ 43; 10/22/20 Tr. at 14; Ind. ¶ 23.

23.     All documents reflecting the use of funds for business expenses.  Compl. ¶ 43.

24.     Given the government's demonstrated and fundamental misunderstanding of Ayvazyan and his business ventures, criminal history (among other key facts), and motivations, *see* 10/22/20 Tr. at 9-16, as well as the law applicable to the allegations:

a.  All documents relating to Ayvazyan or the conduct alleged in the indictment that were introduced as exhibits before the grand jury.  We request that any



materials in this category be specifically identified from among the materials produced pursuant to the defendant's other Rule 16 and *Brady* requests.

b.  All documents relating to Ayvazyan or the conduct alleged in the indictment that were obtained by or for the grand jury or pursuant to any grand jury or trial subpoena.  This request includes any documents furnished informally to prosecutors in lieu of formal compliance with a subpoena.

c.  All documents relating to Ayvazyan or the conduct alleged in the indictment obtained from any witness who testified before the grand jury, or who was interviewed or consulted during the course of the grand jury investigation.

25.     All documents relating to Ayvazyan or the conduct alleged in the indictment that were obtained by any search or seizure pursuant to a search warrant or otherwise.

26.     All documents relating to Ayvazyan or the conduct alleged in the indictment obtained from any federal, state or local governmental, regulatory or legislative body or agency.

27.     All documents relating to press releases or press conferences concerning Ayvazyan or the investigation of the defendant, and all other documents relating to any contacts between the government and representatives of the media concerning Ayvazyan or the investigation of the defendant.

28.     All documents relating to the reputation of Ayvazyan, including, without limitation, any documents relating to Ayvazyan's reputation for honesty, integrity, or competence.

29.     A glossary identifying the pseudonyms used in both the Complaint and the Indictment.

30.     The Pretrial Services Report referenced during the October 22 detention hearing.

## IV.     *Brady* and *Giglio* Material

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Agurs*, 427 U.S. 97 (1976), *United States v. Bagley*, 473 U.S. 667 (1985), *Kyles v. Whitney*, 514 U.S. 419 (1995), and California Rule of Professional Conduct 3.8 & cmt. 3, Ayvazyan requests immediate identification and disclosure of all documents and information (in whatever form) that are favorable to the defense or that would tend to exculpate Ayvazyan or mitigate his culpability with respect to the charges in the indictment, that would tend to impeach any potential witness against Ayvazyan, that would tend to cast doubt on the accuracy or admissibility of witness testimony on which the prosecution may rely, or that are relevant to the issue of sentencing, including but not limited to the items below. Ayvazyan specifically notes:



31.  Any document or information indicating or tending to establish that any of the allegations in the search warrant(s), complaint, or indictment are not true.

32.  Any document or information indicating or tending to establish that any meeting, conversation, use of words, practice, or conduct that is the subject of the search warrant(s), complaint, or indictment or forms the basis of the search warrant(s), complaint, or indictment did not violate government laws, regulations, standards or established business practices.

33.  Any document or information indicating or tending to establish that Ayvazyan believed that any meeting, conversation, use of words, practice, or conduct that is the subject of the search warrant(s), complaint, or indictment or forms the basis of the search warrant(s), complaint, or indictment did not constitute a crime.

34.  Any document or information indicating or tending to establish that any other person (including but not limited to the alleged co-conspirators) believed that any meeting, conversation, use of words, practice, or conduct that is the subject of the search warrant(s), complaint, or indictment or forms the basis of the search warrant(s), complaint, or indictment did not constitute a crime.

35.  Any documents or information indicating or tending to establish that Ayvazyan did not instigate, control, authorize, approve, or acquiesce in the practices that are the subject of the search warrant(s), complaint, or indictment.

36.  Any documents or information indicating or tending to establish that the alleged false or fraudulent applications, statements, documents, or pretenses were not false.

37.  Any documents or information indicating or tending to establish that the alleged false or fraudulent applications, statements, documents, or pretenses were not material.

38.  Any documents or information indicating or tending to establish that any entity referenced in the search warrant(s), complaint, or indictment, or any company otherwise related to the defendants, spent any funds on business expenses.

39.  Any documents or information indicating or tending to establish that a third person was responsible for the loan applications or succeeding financial transactions at issue in any part of the search warrant(s), complaint, or indictment.

40.  Any document or information indicating or tending to establish that Ayvazyan engaged in any conduct that forms the basis of search warrant(s), complaint, or indictment in reliance upon advice provided by counsel, accountants, consultants, or others.

November 18, 2020
Page 9



41.　　Any document or information (in whatever form) that could be used to impeach any potential government witness, or any person whose statements will be introduced pursuant to Fed. R. Evid. 801(d)(2)(C), (D), or (E), including but not limited to:

a.　　Any document or information relating to any conviction, arrest, or criminal record of, and any criminal charge brought against, any potential government witness;

b.　　Any document or information relating to promises, consideration, or inducements made to any potential government witness, whether directly to the witness or indirectly to the witness's attorney, friends, family, employer, business associates, or other culpable or at risk third-party. "Consideration" means anything of value or use, including immunity grants, whether formal or informal, witness fees, transportation or relocation assistance, money, dropped or reduced charges or suggestions of favorable treatment with respect to any federal, state or local criminal, civil, or administrative matter, expectations of downward departures or motions for reduction of sentence, considerations regarding forfeiture of assets, or stays of deportation or other immigration status considerations;

c.　　Any document or information tending to show the bias of a potential government witness, including animosity toward Ayvazyan, animosity toward any group or entity of which Ayvazyan is a member or with which Ayvazyan is affiliated, a relationship with the alleged victim, or known but uncharged criminal conduct that may provide an incentive to curry favor with a prosecutor;

d.　　Any document or information affecting the reliability of a potential government witness's testimony, including known alcohol or substance abuse, mental health issues or other issues that could affect the witness's ability to perceive and recall events;

e.　　Any document or information relating to any inconsistency in statements given by any potential government witness;

f.　　Any document or information relating to any inconsistency between agents' and/or prosecutors' rough notes and FBI 302s or other memoranda of interviews of any potential government witness;

g.　　Any document or information bearing adversely on the character or reputation for truthfulness of any potential government witness; and

h.　　Each specific instance of conduct from which it could be inferred that any potential government witness is untruthful.



November 18, 2020
Page 10

> 42. The date of and participants in each and every interview (including not only interviews conducted by the U.S. Attorney's Office or the Department of Justice Criminal Division, but also interviews conducted by other agencies or third parties), debriefing, "queen for a day" session, proffer, deposition, or other statement or description of the alleged facts made by each potential government witness (whether directly or indirectly, such as a proffer made by counsel). In addition, please specify, as to each such witness, the first date on which the witness made any allegation that Ayvazyan engaged in any allegedly unlawful conduct or any conduct alleged in the search warrant(s), complaint, or indictment. This includes but is not limited to the "witness interviews [Agent Palmerton] ha[s] conducted," Compl. ¶ 7, "interviews conducted by other law enforcement officers," *id.*, and the interview(s) of "Victim 1," *id.* ¶ 39, and "M.Z.," Ind. ¶ 23.

As you are aware, California has adopted Rule of Professional Conduct 3.8, entitled "Special Responsibilities of a Prosecutor," which provides that a prosecutor "shall make timely disclosure to the defense of all evidence or information known to the prosecutor that the prosecutor knows or reasonably should know tends to negate the guilt of the accused, mitigate the offense, or mitigate the sentence …." Rule 3.8(d). These "disclosure obligations in paragraph (d) are not limited to evidence or information that is material under *Brady*" and "include, at a minimum the duty to disclose impeachment evidence or information that a prosecutor knows* or reasonably should know* casts significant doubt on the accuracy or admissibility of witness testimony on which the prosecution intends to rely." Rule 3.8 cmt. 3; *see also* ABA Standards for Criminal Justice, Prosecution Function and Defense Function 3-3.11(a) (3d ed. 1993) ("A prosecutor should not intentionally fail to make timely disclosure to the defense, at the earliest feasible opportunity, of the existence of all evidence or information which tends to negate the guilt of the accused or mitigate the offense charged or which would tend to reduce the punishment of the accused").

We contend that the foregoing categories of information constitute *Brady* and Rule 3.8 material, and that disclosure should take place immediately. Ayvazyan further requests that the government identify with particularity and provide copies of all materials that qualify as *Brady* and Rule 3.8 material, as described above. Please advise us promptly whether the government will be producing *Brady* material immediately even if it is contained in what might otherwise be considered as *Jencks* material, or whether you take the position that you are not obligated to produce such material at this time.

We also request the underlying source material for any *Brady* and Rule 3.8 information, as opposed to any summary letter or paraphrased description of the information. Please advise us promptly whether the government will not be producing underlying source material.

For purposes of the *Brady* doctrine, "the format of the information does not determine whether it is discoverable." U.S. Attorneys' Manual § 9-5.002.B.5 (2018). For example, material exculpatory information that is provided "during a conversation with an agent or a witness is no less discoverable than if that same information were contained in an email." *Id.* We therefore request that all such information be memorialized and produced to Ayvazyan.



## V.   Purportedly Privileged Material

Ayvazyan specifically requests that the government produce all documents or information (in whatever form) produced to the government—or over which the government otherwise has custody, control, or possession—that are responsive to Ayvazyan's discovery and *Brady/Giglio* requests contained herein or that the government would otherwise be legally required to produce, over which any individual or entity has asserted the attorney-client privilege and/or the attorney work product doctrine.  This request applies to all such documents produced pursuant to (a) a non-waiver agreement between any individual or entity and the government, (b) a court order pursuant to Fed. R. Evid. 502, or (c) a court order concluding that the documents are covered by the crime-fraud exception to the attorney-client privilege.

Ayvazyan also requests that you identify any person or entity that has asserted any attorney-client privilege, work product privilege, common interest privilege, or any other privilege as the basis for withholding or not producing, in whole or in part, any documents to the government or the grand jury during the investigation.  Ayvazyan further requests that you provide all documents (including all privilege logs) with respect to the assertion of or challenge to any such claimed privileges.  This request specifically encompasses all pleadings, court orders, correspondence, and other material related to any grand jury litigation by the government in which it challenged any assertion of any privilege.

## VI.   Criminal Records

Pursuant to Rule 16(a)(1)(D) of the Federal Rules of Criminal Procedure, Ayvazyan requests copies of his prior criminal record.

## VII.   *Jencks* Material

Pursuant to the Jencks Act, 18 U.S.C. § 3500, and Rule 26.2 of the Federal Rules of Criminal Procedure, Ayvazyan requests that the government provide a list of the names and addresses of all witnesses that the government intends to call in its case-in-chief and all statements of those witnesses in the possession, custody, or control of the government or any other government entity, including, but not limited to, notes of interviews, FBI 302s, or other summaries prepared by government attorneys or agents, and grand jury transcripts and any other witness statements.  We request that the government begin providing this material as soon as possible, or in any event no later than sixty days prior to the start of trial.

## VIII.   Scientific Evidence

Pursuant to Rule 16(a)(1)(F) of the Federal Rules of Criminal Procedure, Ayvazyan requests documentation relating to all requests for, and the results of, physical or mental examinations, scientific tests, or experiments that were conducted in connection with the investigation of the charges contained in the indictment.  This includes, but is not limited to:



a.    all forensic examinations of any computer hard drive, handheld cellular telephone or mobile device that Ayvazyan possessed or to which Ayvazyan had access;

b.    all handwriting exemplars, handwriting samples, handwriting or document analyses, and all documents examined or used in or related to such analyses;

c.    all fingerprint and palm print exemplars, fingerprint samples, comparisons, and opinions of fingerprint experts, and all documents examined or used in connection with, or that relate to, those opinions; and

d.    all polygraph examinations, psychological stress examinations, hypnotic procedures, or any other scientific procedures devised to determine whether a subject is telling the truth, or to refresh a witness' memory, and all documents that refer or relate to such examinations.

## IX.    Other Crimes Evidence

Pursuant to the Fifth and Sixth Amendments to the United States Constitution and Rules 403 and 404(b)(2) of the Federal Rules of Evidence, Ayvazyan requests that the government disclose all evidence of similar crimes, wrongs, or acts, allegedly committed by Ayvazyan (or any person alleged to have been acting pursuant to his instructions), upon which the government intends to rely on at trial.

## X.    Suppression Issues

43.    As a predicate to potential motions pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, *see* Rule 12(b)(4)(B), Ayvazyan requests that he be informed:

a.    Whether the government intends to offer into evidence any statement made by Ayvazyan or any family member, and the substance of any such statement;

b.    Whether any evidence in the government's possession, custody, or control was obtained by a search and seizure conducted by the government, and a description of such evidence;

c.    Whether any evidence in the government's possession, custody, or control was obtained through electronic or mechanical surveillance, including without limitation, wiretaps, body wires, pen registers, and/or surveillance of telephone calls, and a description of such evidence;



    d.      Whether any evidence in the government's possession, custody, or control was obtained through the use of a beeper or other tracking device, and a description of such evidence;

    e.      In connection with any tape recording, wiretaps, or other surveillance of the defendant during the investigation of the allegations of the search warrant(s), complaint, or indictment or any related allegations, Ayvazyan seeks:

        i.      The names and addresses of all such persons whose personal or business telephones the government tapped or monitored, or whose conversations or actions the government monitored by other means without the person's knowledge;

        ii.      Transcripts or other records of the statements or conversations monitored;

        iii.      The original recorded tapes created during such surveillance;

        iv.      The procedures used to conduct such surveillance; and

        v.      The authority under which such surveillance was conducted.

    f.      Whether any evidence in the government's possession, custody, or control was obtained through a mail cover and/or trash cover and a description of such evidence; and

    g.      The identities of any informant or undercover agent employed by the government during its investigation of the charges of the search warrant(s), complaint, or indictment.

44.      Ayvazyan requests that the prosecution disclose whether it intends to offer in its case-in-chief, as a statement by the defendant, any of the following, and that it provide the substance of any such statement:

    a.      Any statement as to which the defendant allegedly manifested his adoption or belief in its truth.  *See* Fed. R. Evid. 801(d)(2)(B).

    b.      Any statement made by another which was purportedly authorized by the defendant.  *See* Fed. R. Evid. 801(d)(2)(C).

    c.      Any statement made by an agent or servant of the defendant concerning a matter within the scope of his agency or employment made during the existence of such a relationship.  *See* Fed. R. Evid. 801(d)(2)(D).



d.      Any statement made by an alleged co-conspirator of the defendant during the course and in furtherance of any alleged conspiracy.  *See* Fed. R. Evid. 801(d)(2)(E).

## XI.    Hearsay

Ayvazyan requests notice of any hearsay statement that the government plans to offer at trial under Federal Rule of Evidence 807, including its particulars, the declarant's name and address, and other information giving Ayvazyan a fair opportunity to meet the statement.  Fed. R. Evid. 807(b).

## XII.    Charts and Summaries

Pursuant to Fed. R. Evid. 1006, Ayvazyan requests that he be advised whether the government will seek to offer any chart, summary, or calculation in evidence and, if so, (1) that all such charts, summaries, and calculations be produced, and (2) that all writings, recordings, or other information on which such charts, summaries, or calculations are based be made available for inspection and copying.

## XIII.    Electronically Stored Information

Ayvazyan requests that the government comply with the "Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases" issued by the Department of Justice and Administrative Office of the U.S. Courts Joint Working Group on Electronic Technology in the Criminal Justice System in February 2012.  To that end, Ayvazyan requests the ability to "meet and confer" with the government as needed to discuss the nature, volume, and mechanics of the government's production of ESI discovery.  Among other things, Ayvazyan makes the following requests:

1.      The government should produce ESI received from third parties in the format it was received.  However, if the government has further processed ESI received from third parties, such as by adding load files, converting native files to TIFF images, extracting metadata or other coding, or making electronic files searchable, the government should produce such enhanced ESI in discovery to save Ayvazyan the expense of replicating this work.  Ayvazyan does not seek any government attorney work product by this request.

2.      The government should produce a table of contents describing the general categories of information available as ESI discovery in order to expedite Ayvazyan's review of discovery and avoid discovery disputes, unnecessary expense, and undue delay.  Further, the government should produce the cover letters that accompanied and described the third party productions of ESI and other documents to facilitate Ayvazyan's review.

3.      For all ESI produced from a seized, searched, or subpoenaed third-party digital device (e.g., computer, hard drive, thumb drive, CD, DVD, cell phone,

November 18, 2020
Page 15



Blackberry, iPhone, Android, smart phone, smart watch, or personal digital assistant), the government should identify the digital device that held the ESI, identify the device's owner or custodian, and identify the location where the device was seized, searched, or from where it was produced.

4.   The government should produce any materials received in paper form in converted digital files that can be viewed and searched.  These materials should be produced in multi-page TIFF and OCR format where each document is one file that may have multiple pages.  Alternatively, a less preferable option would be production in multi-page, searchable PDF format.  Under no circumstances should paper materials be converted into single-page TIFF images without document breaks.

5.   All production of ESI should maintain parent-child relationships between documents, such as where an email (the parent document) has attachments (the child documents).

Please let us know promptly whether there are any requests set forth in this letter with which you decline to comply.  We are available to discuss any of the foregoing requests at your convenience.  We reserve the right to supplement these requests as we continue to review the discovery material and prepare for trial.

Sincerely,

*/s/ Ashwin J. Ram*
Ashwin J. Ram
Michael A. Keough
Nicholas P. Silverman (*Pro Hac Vice* to be filed)
STEPTOE & JOHNSON LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Tel: (213) 439-9400
Fax: (213) 439-9599
aram@steptoe.com

*Counsel for Defendant Richard Ayvazyan*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

        v.

RICHARD AYVAZYAN,
MARIETTA TERABELIAN,
ARTUR AYVAZYAN,
TAMARA DADYAN,

        *Defendants*.

Case No.  20-cr-579 (SVW)

## **STIPULATION AND REQUEST FOR PROTECTIVE ORDER**

The government and defendants Richard Ayvazyan, Marietta Terabelian, Artur Ayvazyan, and Tamara Dadyan hereby stipulate, agree, and request that the Court enter a protective order in this case:

1. The defendants have been charged with the offenses enumerated in the November 17, 2020 indictment including conspiracy, fraud-related offenses, and aggravated identity theft.

2. The defendants have notified the government that they intend to invoke their rights under the Speedy Trial Act and Bill of Rights.

3. As part of its investigation in the above-captioned case, the government is in possession of documents related to the charges against the defendants, and seeks to provide those documents to counsel for the defendants. Among the documents that the government would like to produce are documents that contain personal identification information including for individuals other than the defendants. The personal identification information in the aforementioned documents includes, without limitation, names, addresses, dates of birth, social

security numbers, employment information, and other personal identifying information, both with respect to defendants and third parties.

4. This personal identification information is interspersed throughout the discovery in this case and the personal identification information may have evidentiary value. To redact this information by hand would therefore be prohibitively time consuming and may also prevent defense counsel from effectively reviewing relevant material in the documents containing personal identification information.

5. The parties recognize that all materials that the government produces to the defense are solely for the use of the defendants, their attorneys, or other individuals or entities acting in conjunction with the attorney-client relationship to prepare for the trial in this case. The purpose of the proposed protective order is to prevent the unauthorized dissemination, distribution, or use of materials containing the personal identification information of others.

6. Therefore, in order to permit the government to provide discovery material to defense counsel while avoiding the unauthorized dissemination, distribution, or use of personal identification information of witnesses, potential witnesses, and/or third parties, the parties have stipulated to the entry of the protective order for discovery that the government will provide to counsel for defendants in the above-captioned case. The protective order will encompass any discovery, that is, written or typed documentation, electronic data, and/or audio or video recordings provided to the defense team, as defined below, including any paper or electronic copies of the discovery before or after the execution of the Protective Order that is designated as "SUBJECT TO PROTECTIVE ORDER."

7. The parties hereby stipulate that the Court issue a protective order that contains the mandates in the attached proposed order.

IT IS SO STIPULATED.

_____                    _____
Richard Ayvazyan                                   Date
*Defendant*

_____                    _____
Ashwin Ram                                         Date
*Counsel for Defendant R. Ayvazyan*

_____                    _____
Marietta Terabelian                                Date
*Defendant*

_____                    _____
[x]                                                Date
*Counsel for Defendant Terabelian*

_____                    _____
Artur Ayvazyan                                     Date
*Defendant*

_____                    _____
[x]                                                Date
*Counsel for Defendant A. Ayvazyan*

_____                    _____
Tamara Dadyan                                      Date
*Defendant*

_____                    _____
[x]                                                Date
*Counsel for Defendant Dadyan*

_____
Julian André
Christopher Fenton
*Counsel for the Government*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          v.<br><br>RICHARD AYVAZYAN,<br>MARIETTA TERABELIAN,<br>ARTUR AYVAZYAN,<br>TAMARA DADYAN,<br><br>        *Defendants*. | Case No.  20-cr-579 (SVW) |

**PROPOSED PROTECTIVE ORDER REGARDING**
**LIMITING DISCLOSURE OF PERSONAL IDENTIFICATION INFORMATION**

The Court having considered the stipulation of the government and defendants Richard Ayvazyan, Marietta Terabelian, Artur Ayvazyan, and Tamara Dadyan, with respect to the disclosure of sensitive and confidential information contained in discovery to be provided by the government to counsel of record for defendant in this matter and good cause appearing therefor, the Court hereby ORDERS as follows:

1. In order to permit the government to provide discovery material to the counsel of record for defendants while avoiding the unauthorized dissemination, distribution, or use of personal identification information, including, without limitation, names, addresses, dates of birth, and social security numbers of victims, witnesses, potential witnesses, and/or third parties ("Personal Identification Information"), the parties have stipulated to the entry of this Protective Order in the above-captioned case. The Protective Order will encompass any discovery, that is, written or typed documentation, electronic data, and/or audio or video recordings provided to the defense team, as defined below, including any paper or electronic copies of the discovery before

or after the execution of the Protective Order that is designated as "SUBJECT TO PROTECTIVE ORDER."

2. For the purposes of this Order, the term "defense team" refers to the counsel of record for defendants and any other defense attorneys for defendants, defense investigators, retained experts or potential experts, and paralegal and legal assistants providing assistance on this case who have been advised of their obligations under the Protective Order and agreed to follow its terms. The "defense team," for the purposes of the Protective Order, includes defendants. The "defense team" does not include family members and other associates of defendants.

3. The government shall identify all materials subject to the Protective Order, which are provided to the defense team by the United States Attorney's Office for the Central District of California in the instant criminal case, by marking any materials containing Personal Identifying Information "SUBJECT TO PROTECTIVE ORDER." Any party objecting to such designation may do so by application to the Court upon duly noticed motion, following meeting and conferring with the government regarding the objection.

4. Undersigned counsel of record for defendants agrees to advise all members of the defense team of their obligations under the Protective Order and ensure their agreement to follow the Protective Order, prior to providing members of the defense team with access to any materials subject to the Protective Order.

5. The defense team shall not permit anyone who is not a member of the defense team to retain in his or her possession any materials designated subject to the Protective Order absent consent of the government.

6. The defense team shall access and use the materials designated subject to the Protective Order for the sole purpose of preparing for trial or any related proceedings in the

above-captioned criminal matter. The defense team may review the materials designated subject to the Protective Order with a witness or potential witness in this case, including defendants. Before being shown any portion of the materials designated subject to the Protective Order, however, any witness or potential witness must be informed of, and agree in writing to be bound by, the requirements of the Protective Order in substantially the same form as Appendix 1. Absent consent of the government, no defense witness or potential defense witness may retain the materials designated subject to the Protective Order, or any copy thereof, after his or her review of those materials with the defense team is complete. Absent consent of the defense, no government witness or potential government witness may retain the materials designated subject to the Protective Order, or any copy thereof, after his or her review of those materials with the government team is complete.

7. The defense team shall maintain materials designated subject to the Protective Order safely and securely, and shall exercise reasonable care in ensuring the confidentiality of those materials.

8. To the extent that notes are made that quote, in whole or in part, the Sensitive Information in any materials designated subject to the Protective Order, or to the extent that copies are made for authorized use by members of the defense team, such notes, copies, or reproductions become materials designated subject to the Protective Order and must be handled in accordance with the terms of the Protective Order.

9. In the event that a party needs to file materials designated subject to the Protective Order with the Court or divulge the contents of such materials in court filings, the filing should be made under seal absent prior agreement by both the government and the defense. If the Court rejects the request to file such information under seal, the party seeking to file such information

shall provide advance written notice to the other party to afford such party an opportunity to object or otherwise respond to such intention. If the other party does not object to the proposed filing, the party seeking to file such information shall redact the Sensitive Information and make all reasonable attempts to limit the divulging of Sensitive Information.

10. The defense team shall use materials designated subject to the Protective Order only for the preparation and litigation of this matter, and for no other purpose. Litigation of this matter includes any appeals filed by defendants, and any motions filed by defendants pursuant to 28 U.S.C. § 2255. Upon the final disposition of this case, any materials designated subject to the Protective Order shall not be used, in any way, in any other matter, absent a court order. All materials designated subject to the Protective Order maintained in the defense team's files shall remain subject to the Protective Order unless and until such order is modified by court order. Upon request of the government, after the conclusion of appellate and post-conviction proceedings, the defense team shall return the materials designated subject to the Protective Order or certify that such materials have been destroyed within thirty days of said request.

11. In the event that there is a substitution of counsel prior to when such documents must be returned, new defense counsel must join this Protective Order before any materials designated subject to the Protective Order may be transferred from the current counsel of record for defendant to the new defense counsel, who then will become the defense team's custodian of materials designated subject to the Protective Order and who shall then become responsible, upon the request of the government, for returning or destroying all materials designated subject to the Protective Order after the conclusion of appellate and postconviction proceedings.

IT IS SO ORDERED.

_____          _____
Judge Stephen V. Wilson                          Date
U.S. District Court Judge

## APPENDIX A

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            v.<br><br>RICHARD AYVAZYAN,<br>MARIETTA TERABELIAN,<br>ARTUR AYVAZYAN,<br>TAMARA DADYAN,<br><br>            *Defendants*. | Case No.  20-cr-579 (SVW) |

## <u>AGREEMENT TO FOLLOW PROTECTIVE ORDER</u>

I, _____, acknowledge that I have read and understand the Protective Order entered on _____, 2020 and agree to abide by its terms and conditions. I agree to the jurisdiction and venue of the United States District Court for the Central District of California to enforce the Protective Order.


_____                    _____
Signature                                                            Date


_____

_____
Address


_____
Telephone