NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6683
     Facsimile: (213) 894-6269
     E-mail:    Julian.L.Andre@usdoj.gov

DANIEL A. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
     1400 New York Avenue NW, 3rd Floor
     Washington, DC 20530
     Telephone: (202) 302-0539
     Facsimile: (202) 514-0152
     E-mail:    Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-579-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT RICHARD AYVAZYAN'S *EX PARTE* APPLICATION FOR AN ORDER GRANTING DISCOVERY OR, IN THE ALTERNATIVE, A PROTECTIVE ORDER AND AN ORDER GRANTING DISCOVERY |
| v. | |
| RICHARD AYVAZYAN, aka "Richard Avazian" and "Iuliia Zhadko," MARIETTA TERABELIAN, aka "Marietta Abelian" and "Viktoria Kauichko," ARTUR AYVAZYAN, aka "Arthur Ayvazyan," and TAMARA DADYAN, | |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, Assistant United States Attorney Julian L. André, and Department of Justice Trial Attorney Christopher Fenton, hereby submits its opposition to defendant RICHARD AYVAZYAN's ex parte application for an order granting discovery or, in the alternative, a protective order and an order granting discovery (CR 63).

The government's opposition is based on the attached memorandum of points and authorities, the government's separate ex parte application for a protective order, supporting declaration, and proposed protective order (CR 65), the files and records in this case, and such further evidence and argument as the Court may permit. The government will not repeat all of the facts set forth in its ex parte application for a protective order (CR 65), which it incorporates by reference herein.

Dated: December 9, 2020        Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
JULIAN L. ANDRÉ
Assistant United States Attorney
CHRISTOPHER FENTON
Department of Justice Trial Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                               PAGE

TABLE OF AUTHORITIES................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND..............................2

III.  ARGUMENT.......................................................4

      A.   Defendant R. AYVAZYAN's Application to Compel
           Discovery Is Unnecessary..................................4

      B.   Reasonable Safeguards Are Necessary to Protect
           Victims, Other Third-Parties, and the Public In
           General...................................................5

      C.   Defendant R. AYVAZYAN Would Not Be Prejudiced by the
           Government's Proposed Protective Order...................10

      D.   Defendant R. AYVAZYAN's Ex Parte Application Appears
           to Violate the Local Rules...............................13

      E.   The Government's Proposed Protective Order Should
           Apply to All Four Defendants in this Case................14

IV.   CONCLUSION....................................................14

**TABLE OF AUTHORITIES**

DESCRIPTION                                                              PAGE

**FEDERAL CASES**

United States v. Ayvazyan et al.,
      No. SA CR 11-180-CJC (C.D. Cal.)................................6

United States v. Baker,
      No. 20-CR-288 (LJL), 2020 WL 4589808 (S.D.N.Y. Aug. 10,
      2020)...........................................................9

United States v. Estopare,
      No. CR 20-79-TJH, Dkt. 179 (C.D. Cal. Oct. 20, 2020)........8, 9

United States v. W. R. Grace,
      401 F. Supp. 2d 1093 (D. Mont. 2005)...........................9

**FEDERAL STATUTES**

18 U.S.C. § 1029(e)...................................................8

18 U.S.C. § 3161 et seq..........................................2, 12

18 U.S.C. § 3174(b)..............................................2, 12

**FEDERAL RULES**

Fed. R. Crim. P. 16(d)(1).........................................4, 5

**MISCELLANEOUS**

C.D. Cal. General Order No. 20-09 (Aug. 6, 2020)....................11

C.D. Cal. Local Civ. R. 79-5........................................13

C.D. Cal. Local Civ. R. 79-6........................................13

C.D. Cal. Local Crim. R. 49-1.2(b)(5)...............................13

C.D. Cal. Order of the Chief Judge No. 20-179
      (Dec. 7, 2020.)...........................................11, 12

Order, In re Approval of the Judicial Emergency Declared in the
      Central District of California (9th Cir. Apr. 9, 2020),
      available at
      https://cdn.ca9.uscourts.gov/datastore/opinions/2020/04/10/
      JC%20Order%20and%20Report%20re%20Judicial%20Emergency%20in%
      20CA-C.pdf......................................................12

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendant RICHARD AYVAZYAN ("R. AYVAYZAN") is charged with conspiring to fraudulently obtain millions of dollars in COVID-19-related disaster relief funds through two federal loan programs. On Friday, December 4, 2020, defendant R. AYVAZYAN made his initial appearance in this district and was arraigned on the 12-count indictment. On the evening of Monday, December 7, 2020, defendant R. AYVAZYAN filed the instant ex parte application to compel production of discovery in this case. Defendant R. AYVAZYAN's application is unnecessary, improper, and should be denied.

First, the government is working diligently to prepare discovery for production in this case, and is ready to begin producing discovery to defendants on a rolling basis once the Court has entered an appropriate protective order. Defendants are thus seeking to compel the government to do what the government has already committed to doing and has been actively attempting to accomplish -- produce discovery to defendants (CR 65).

Second, defendant R. AYVAZYAN's demand that the government provide him with unfettered access to personal identifying information ("PII") of third-parties and unauthorized or counterfeit access devices is meritless. The PII and access device materials to be produced in discovery were either used to perpetrate the alleged fraud or could be used to engage in additional fraudulent conduct. Given the nature of the charges and the fact that defendant R. AYVAZYAN and his wife, defendant MARIETTA TERABELIAN, were previously convicted of conspiracy to commit bank fraud in this district, allowing the defendants in this case (all four of whom are related)

to possess this sensitive information would pose a serious risk of harm to victims, other third-parties, and the public in general. In contrast, the government's proposed protective order (CR 65-1) would appropriately preclude defendants from personally possessing these materials, while still allowing defendants to prepare for trial by reviewing this sensitive information in the presence of their lawyers or other members of the defense team, including via video conference from their homes. Defendant R. AYVAZYAN does not – and cannot – articulate how the proposed protective order would actually prejudice him, particularly when it permits him access to discovery via an application like Zoom or WebEx from his home.

Third, there will be more than sufficient time for defendant R. AYVAZYAN and his lawyers to review the discovery in advance of trial. Although this case has initially been set for trial on January 12, 2021, trials in this district are suspended indefinitely due to COVID-19. And under the Speedy Trial Act and 18 U.S.C. § 3174(b), the Court has until June 2, 2021, to commence the trial as to defendant R. AYVAZYAN. Defendant R. AYVAZYAN's insistence that he is proceeding to trial on January 12, 2020, is divorced from the current reality facing this district.

For these reasons, the Court should grant the government's ex parte application seeking a protective order so that the government may begin producing discovery (CR 65) and deny the defendant's ex parte application to compel discovery (CR 63).

II. **FACTUAL AND PROCEDURAL BACKGROUND**

On November 30, 2020, in advance of and in anticipation of the defendant R. AYVAZYAN's December 4, 2020, initial appearance in this district and all four defendants' post-indictment arraignments, the

2

government circulated a proposed protective order to counsel for each defendant. (CR 63, Ex. C.) The proposed protective order was based on the standard protective order that the U.S. Attorney's Office adopted in March 2020 after consultation with the Federal Public Defender's Office and that has been used extensively in this district. (CR 63, Ex. E.)

The U.S. Attorney's Office standard protective order provides for different levels of protection of discovery based on the facts of each case. After consideration of the nature of the charges in this case (which include conspiracy, bank and wire fraud, and aggravated identity theft), and defendants R. AYVAZYAN and TERABELIAN's criminal histories (which include using the identities of other individuals to defraud financial institutions), the government proposed a version of the protective order that permits defendant to access to all of the discovery so long as certain safeguards are in place. The government explained to defendant R. AYVAZYAN's counsel that the government has been preparing discovery and would be prepared to begin providing discovery on a rolling basis as soon as the defendant agreed to, and the Court entered, the proposed protective order.

Counsel for defendant R. AYVAZYAN rejected the government's proposed protective order, instead insisting on language that would provide defendant R. AYVAZYAN unfettered access to all of the discovery, including extensive amounts of PII belonging to third-parties and unauthorized or counterfeit access devices, such as bank and credit card account numbers, social security numbers, and drivers' license numbers. The government told counsel that, because of the nature of allegations against defendant R. AYVAZYAN, the government could not agree to provide him unfettered access to PII

3

and access device materials. However, in light of the risks posed by the COVID-19 pandemic, the government was agreeable to revise the proposed protective order to permit defendant R. AYVAZYAN remote access to discovery (including from his home) so as to better permit him the ability to participate in his defense. This accommodation was intended to provide defendant R. AYVAZYAN a safe and convenient means of viewing discovery with the safeguards otherwise required by the standard protective order applicable in cases like this one.

On December 7, 2020, the government informed counsel for each defendant that because the parties had been unable to reach an agreement on an appropriate protective order, it planned to file an ex parte application seeking a protective order under Federal Rule of Criminal Procedure 16(d)(1) later that day or the following morning. (CR 63, Ex. G.) The government said that it hoped its application would "allow the Court to resolve this issue expeditiously" so the government could "begin producing discovery to the defendants on a rolling basis, as [it] had always planned." (Id.) Defendant R. AYVAYZAN's counsel responded by notifying the government that it intended to file the instant ex parte application seeking to compel production of discovery and asked the government to respond – within three minutes – with its position as to the ex parte application. Counsel for defendant R. AYVAZYAN filed the instant application shortly thereafter.

**III. ARGUMENT**

**A.    Defendant R. AYVAZYAN's Application to Compel Discovery Is Unnecessary**

Defendant R. AYVAZYAN's request that the Court compel the production of discovery is unnecessary, and his claim that the

4

government is holding the discovery "hostage" is frivolous. Defendant R. AYVAZYAN was indicted on November 17, 2020. He made his initial appearance in this district and was arraigned just a few days ago on December 4, 2020. The government has worked diligently to prepare discovery for production, and is ready to begin producing discovery on a rolling basis as soon as the Court enters an appropriate protective order. Had the parties agreed to the entry of a stipulated protective order, the government would have already made its initial discovery production.

Additionally, once it became clear that the parties would not reach an agreement on a protective order, the government promptly sought a protective order from this Court. On December 7, 2020 -- prior to defendant R. AYVAZYAN filing the instant ex parte application -- the government advised the defendants it would be seeking a protective order under Rule 16(d)(1) in hopes of expediting the resolution of this issue and the subsequent production of discovery. Nevertheless, defendant R. AYVAZYAN rushed to file the instant ex parte just before the government, and is now requesting that the Court compel the government to do something it has repeatedly committed to doing and has actively been attempting to accomplish -- produce discovery to defendants. Such an order is simply unnecessary.

**B. Reasonable Safeguards Are Necessary to Protect Victims, Other Third-Parties, and the Public In General**

Defendant R. AYVAYZAN claims that the Court need not enter a protective order or that, in the alternative, the Court should enter a protective order that does not impose meaningful safeguards on defendant R. AYVAZYAN's ability to possess sensitive information,

5

such as PII and access devices.  (CR 63.)  Defendant R. AYVAZYAN's primary argument is that the government has not identified specific facts showing that he poses a identified risk based on the disclosure of specific information.  (See CR 63 at 8-11.)  Defendant is wrong.

As set forth in the government's ex parte application, in 2012, defendant R. AYVAZYAN and his wife (codefendant TERABELIAN) pleaded guilty to conspiracy to commit bank fraud.  (CR 65, ¶ 9.)  In the factual basis to his plea agreement for the 2012 conviction, defendant R. AYVAZYAN admitted that he defrauded three financial institutions by submitting fraudulent loan applications and false supporting documentation.  United States v. Ayvazyan et al., No. SA CR 11-180-CJC, Dkt. No. 58.  Defendant also admitted that, in connection with a short sale of his residence to his mother, he caused his mother to submit a fraudulent letter to a financial institution falsely stating she was not related to the owner of the property.  Id.

The charges in this case are similar to those to which defendant R. AYVAZYAN pleaded guilty in 2012, but also far more serious:  the indictment alleges that defendant R. AYVAZYAN conspired with his wife (defendant TERABELIAN), brother (defendant ARTUR AYVAYZAN ("A. AYVAZYAN"), sister-in-law (defendant TAMARA DADYAN), and others to fraudulently obtain at least $5.6 million in COVID-19-related disaster relief funds under the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") Program.  Among other things, the indictment alleges that defendants used fake, stolen, and synthetic identities, as well as stolen or fictitious business names, to submit fraudulent PPP and EIDL loan applications to financial institutions and the Small Business Administration.

Evidence seized from defendant R. AYVAZYAN and his codefendants show that defendants recently possessed a substantial amount of PII relating to third-parties, as well as unauthorized or counterfeit access devices which were either used in connection with the alleged fraud or which could be used for further fraudulent activity. For example, at the time the defendant was arrested in Miami, Florida, he was in possession of numerous counterfeit and unauthorized access devices, including credit cards in the names of at least two synthetic or stolen identities. (See CR 1 at ¶ 41.) Separately, one of many cellphone belonging to defendant R. AYVAZYAN contained, among other things, numerous counterfeit and unauthorized access devices, namely, drivers' license numbers, Social Security numbers, and credit card numbers relating to real, fake, and synthetic identities. (See CR 65 ¶ 12.) Similarly, at least 20 real or fake drivers' licenses and Social Security cards were seized from the residence of defendants A. AYVAZYAN and DADYAN last month. (Id.)

These facts specifically show that defendant R. AYVAZYAN (and his three codefendants/family members) pose an identified risk, namely that, if given unfettered access to this sensitive information, the defendants may use these fake, stolen, and synthetic identities to commit new crimes, such as obtaining new credit cards, applying for new loans or other lines of credits, and opening new bank accounts to launder criminal proceeds. This specific concern was a sufficient basis for the Court to impose special conditions of release prohibiting the defendants from using or possessing "any identification, mail matter, access devices, or any identification-related material other than in [their] own legal or true name[s]," and using bank accounts or credit card accounts except in their true

7

names.[1] (See, e.g., CR 5.) And this specific concern is more than a sufficient basis for the Court to impose reasonable safeguards on defendant R. AYVAZYAN's access to such information in this case pursuant to Rule 16(d)(1).[2]

Defendant R. AYVAZYAN also relies heavily on The Honorable Terry J. Hatter Jr.'s order in United States v. Estopare, No. CR 20-79 (TJH), Dkt. 179 (C.D. Cal. Oct. 20, 2020), to argue that the Court need not impose safeguards on the defendant R. AYVAZYAN's access to discovery. (CR 63 at 11-14.) The relevant facts of Estopare are materially different than in this case and readily distinguishable.

First, the defendants in Estopare were not alleged to have used fake, stolen, or synthetic identities in connection with the crimes charged and do not appear to have had criminal histories involving such offenses. In contrast, allegations of fraud using fake, stolen, or synthetic identities and identity theft are central to the indictment against defendants in this case.

Second, the defendant in Estopare was in custody. Defendants in this case are all released on bond and, pursuant to the terms of the

---

[1] Contrary to defendant R. AYVAZYAN's claim (CR 63 at 7), it is in fact illegal for defendants to possess the unauthorized or counterfeit access devices that are contained in the discovery, such as stolen or fake drivers' licenses numbers, Social Security numbers, and bank or credit account numbers. See 18 U.S.C. § 1029(e) (defining unauthorized or counterfeit access devices).

[2] Defendant R. AYVAZYAN attempts to mitigate the significance of these facts and allegations by offering self-serving characterizations that are contradicted by the record. For example, defendant R. AYVAZYAN claims that he is an "upstanding businessman," pointing to his ownership of Inception Ventures. (See, e.g., CR 63 at 10.) However, the indictment alleges that defendant R. AYVAZYAN used Inception Ventures to funnel fraudulently-obtained disaster relief loan funds to purchase a multi-million dollar home in the name of him and his wife, codefendant TERABELIAN. (See CR 32.)

proposed protective order, would be permitted to access and review all of the discovery by traveling to their attorneys' offices or from their homes using Zoom or other video conferencing applications.

Third, at the time the defendant in Estopare filed her ex parte application, approximately three months had passed since the defendant had been indicted and made her initial appearance in this district. Here, defendant R. AYVAZYAN filed his ex parte application just over one business day after his initial appearance in this district. Estopare has no application to this case.[3]

Defendant R. AYVAZYAN also cites to United States v. Baker, No. 20-CR-288 (LJL), 2020 WL 4589808, at *4 (S.D.N.Y. Aug. 10, 2020), arguing that this case demonstrates why the proposed protective order in this case is unworkable, particularly amidst the COVID-19 pandemic. The defendant in Baker, however, was detained and specifically alleged that the Bureau of Prisons video-conferencing technology that he used to communicate with his counsel was highly flawed and frequently resulted in the premature termination of video-conference meetings. Id. In this case, however, the government has proposed a protective order that would permit the defendants to use reliable videoconferencing technology – such as Zoom – to meet with

---

[3] Defendant R. AYVAZYAN similarly relies on United States v. W. R. Grace, 401 F. Supp. 2d 1093, 1095 (D. Mont. 2005), which is also irrelevant. In that case, the defendants, who were alleged to have committed certain environmental crimes and related frauds, sought the medical records of the alleged victims, including victim-witnesses. The government filed a motion for a protective order based on concerns that the victim witnesses' privacy rights require redaction of the records prior to disclosure. This case did not concern imposing reasonable safeguards to protect against the misuse of fake, stolen and synthetic identifies by a defendant who was alleged to have used such information in furtherance of the crimes charged, had a criminal history, and was prohibited by the Court from possessing such information as a condition of his release.

9

defense counsel to review discovery from their homes. Defendants also remain able to travel to their attorneys' respective offices to review discovery at any time.

Finally, other cases in which government counsel stipulated to different protective orders (see CR 63 at 4-6) are irrelevant. The cases defendant R. AYVAZYAN cites involved different charges, different facts, and different defendants with different criminal histories. The fact that government counsel did not believe such restrictions were necessary in those particular cases, does not establish that such restrictions are unnecessary here. Rather, those cases prove that the government only seeks the additional safeguards sought in this case when it truly believes they are necessary.

### C. Defendant R. AYVAZYAN Would Not Be Prejudiced by the Government's Proposed Protective Order

There is no merit to defendant R. AYVAZYAN's claim that the government's proposed protective order prejudices his defense and thereby deprives him of his Fifth and Sixth Amendment rights. (CR 63 at 1, 14-16.) Nor can defendant R. AYVAZYAN legitimately claim that the prejudice in this case is acute because he intends to go to trial on January 12, 2020, in the middle of the COVID-19 pandemic.[4] (Id.)

As an initial matter, defendant R. AYVAZYAN does not – and cannot – articulate how the proposed protective order would actually prejudice him. He does not show how the proposed protective order would prevent him from reviewing discovery and participating in his

---

[4] Although defendant R. AYVAZYAN argues it would be unsafe to require him to review discovery at his counsel's office during the COVID-19 pandemic (CR 63 at 16, Ex. D), defendant apparently has no such concerns for the health and safety of prospective jurors, the Court, or court personnel.

10

defense, particularly when it allows him to access discovery at his attorney's office or via Zoom from his home.  He also does not show why he needs to <u>possess</u> a copy of information related to fake, stolen, or synthetic identities in order to meaningfully participate in his defense, as opposed to being informed of these identities.

Defendant R. AYVAZYAN's claim that emergency relief is necessary due to the current January 12, 2020, trial date is likewise misplaced.  Although the trial in this matter has been set for January 12, 2021, defense counsel is undoubtedly aware that all jury trials in this district are currently suspended due to the COVID-19 pandemic and that such a trial date is thus not possible.  <u>See</u> C.D. Cal. General Order No. 20-09 (Aug. 6, 2020).  The August 2020 General Order concluded that it was necessary to suspend criminal jury trials until further notice "in order to protect public health, and in order to reduce the size of public gatherings and reduce unnecessary travel, and found that "holding jury trials substantially increases the chances of transmitting the Coronavirus," and would "place prospective jurors, defendant, attorneys, and court personnel at unnecessary risk."  <u>Id.</u> at 3.  The Court concluded that suspending jury trials thus served the ends of justice and outweighed the interests of the public and defendants in a speedy trial.  <u>Id.</u>

Additionally, on December 7, 2020, the Chief Judge issued an order implementing further emergency procedures due to the "unprecedented surge of COVID-19 cases, hospitalizations, and test positivity rates in the Central District of California" and the State's regional stay-at-home order.  C.D. Cal. Order of the Chief Judge No. 20-179, at 1-2 (Dec. 7, 2020.)  Under the Chief Judge's most recent order, all Courthouses in this district will be closed to

the public and no in-person hearings will go forward, except for hearings on criminal duty matters, until January 8, 2021. Id. at 2-3. Given that jury summons must be sent out at least 49 days prior to any trial, the earliest this case could proceed to trial appears to be March 2, 2021.

Defendant R. AYVAZYAN's Speedy Trial Act argument is also meritless. The Speedy Trial Act currently requires that the trial of defendant R. AYVAYZAN commence on or before June 2, 2021.[5] Because the Judicial Council of the Ninth Circuit has declared an emergency in the Central District of California, the Speedy Trial Act clock--in this case--is extended from 70 days to 180 days.[6] Specifically, under the Judicial Council's order and 18 U.S.C. § 3174, Speedy Trial trial-date clocks are extended to 180 days in all cases: (a) "for which indictments or informations are filed" between April 13, 2020, and April 13, 2021; and (b) in which the defendant is not "being detained solely because [he or she is] awaiting trial[.]" 18 U.S.C. § 3174(b). This is such a case. And because defendant R. AVYAZYAN did not make his initial appearance in this district until December 4, 2020, the Speedy Trial Act clock did not begin to run until

---

[5] The Speedy Trial Act also requires that the trial of defendant TERABELIAN commence on or before June 2, 2021. However, the Speedy Trial Act requires that the trial of defendants A. AYVAZYAN and DADYAN commence on or before May 16, 2021, because defendants A. AYVAYZAN and DADYAN had appeared in this district prior to the November 17, 2020, indictment. If the parties cannot reach an agreement on an acceptable new trial date, the government will move ex parte for a continuance of the trial date to May 2021.

[6] See Order, In re Approval of the Judicial Emergency Declared in the Central District of California (9th Cir. Apr. 9, 2020), available at https://cdn.ca9.uscourts.gov/datastore/opinions/2020/04/10/JC%20Order%20and%20Report%20re%20Judicial%20Emergency%20in%20CA-C.pdf.

12

December 4, 2020.  18 U.S.C. § 3161(c)(1).  The Court can thus reschedule the trial for any date prior to June 2, 2021, without impacting defendant R. AYVAZYAN's Speedy Trial Act rights.[7]

### D. Defendant R. AYVAZYAN's *Ex Parte* Application Appears to Violate the Local Rules

The government objects to defendant R. AYVAZYAN filing a portion of his ex parte application in camera and under seal.  The government sees no reason why an in camera filing would be necessary or appropriate at this stage of this litigation or in connection with his ex parte application.  And defendant R. AYVAZYAN has provided no meaningful explanation for the in camera submission other than a vague reference to the "sanctity of his defense strategy" in a footnote.  (CR 63 at 16, n. 6.)  Defendant R. AYVAZYAN also appears to have violated the local rules by submitting his ex parte application in camera and under seal without first seeking permission from the Court, as required under Local Criminal Rule 49-1.2(b)(5) and Local Civil Rules 79-5 and 79-6.  Notably absent from defendant R. AYVAZYAN's corresponding notice of manual filing (CR 62) is any indication that defendant R. AYVAZYAN has filed an application for leave to file documents in camera and under seal.  Accordingly, the government respectfully requests that the Court strike that portion of defendant R. AYVAZYAN's ex parte application, and not consider any arguments contained therein.

---

[7] The Court may also need to reschedule the trial because coconspirators should be tried together and at least one of defendant R. AYVAZYAN's coconspirators, his brother defendant A. AYAVZYAN, just retained permanent counsel on December 8, 2020.

13

**E.   The Government's Proposed Protective Order Should Apply to All Four Defendants in this Case**

On December 8, 2020, defendants TERABELIAN, A. AYVAZYAN, and DADYAN filed a notice indicating that they are joining in defendant R. AYVAZYAN's ex parte application. (CR 70.) None of the other three defendants presented any individualized arguments in connection with their joinder. They appear to rely entirely on defendant R. AYVAZYAN's arguments. And defendant A. AYVAZYAN joined the ex parte application to compel production of discovery despite the fact that he has yet to request that the government produce discovery.

The need to impose safeguards on defendant R. AYVAZYAN's access of sensitive PII and access device materials applies equally to his three codefendants. Indeed, all four are family and are alleged to have acted in close concert throughout the alleged conspiracy. Additionally, as set forth above, defendant TERABELIAN was convicted in 2012 of conspiring with defendant R. AYVZAYAN to commit bank fraud. And the same type of access device materials that were recovered from defendant R. AYVAZYAN were recovered from defendants A. AYVAZYAN and DADYAN's residence.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests the Court deny defendant R. AYVAZYAN's ex parte application (CR 63), and instead enter the government's proposed protective order (CR 65-1). Once the Court has resolved this protective order issue, the government is prepared to begin immediately producing discovery on a rolling basis and will continue to work diligently to complete its remaining discovery productions in a timely manner.