Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

[Additional Counsel Listed on Next Page]

*Counsel for Defendant Richard Ayvazyan*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD AYVAZYAN,<br>MARIETTA TERABELIAN,<br>ARTUR AYVAZYAN,<br>TAMARA DADYAN,<br><br>*Defendants*. | Case No.  20-CR-00579-SVW<br><br>**OPPOSITION TO GOVERNMENT'S *EX PARTE* APPLICATION FOR A PROTECTIVE ORDER REGARDING DISCOVERY CONTAINING PERSONAL IDENTIFYING INFORMATION, ACCESS DEVICE MATERIALS, AND PRIVACY ACT INFORMATION**<br><br>Hon. Stephen V. Wilson |

OPPOSITION TO GOVERNMENT'S *EX PARTE* APPLICATION

Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
**STEPTOE & JOHNSON LLP**
One Market Plaza
Spear Tower, Suite 3900
San Francisco, CA 94105
Telephone: (415) 365-6700
Facsimile: (415) 365-6699

Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, N.W.
Washington D.C., 20036
Telephone: (202) 429-8096
Facsimile: (202) 429-3902

*Counsel for Defendant Richard Ayvazyan*

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

1    Defendant Richard Ayvazyan, through undersigned counsel, opposes the

2    government's *ex parte* application (Dkt. 65) and responds as follows:

3    **I.    THE COURT SHOULD DENY THE GOVERNMENT'S APPLICATION
          AND GRANT THE DEFENDANT'S APPLICATION FOR DISCOVERY
4         BECAUSE THE GOVERNMENT HAS NOT ESTABLISHED GOOD
          CAUSE OR NARROWLY TAILORED ITS PROPOSED RELIEF**
5

6         The Fifth and Sixth Amendments to the U.S. Constitution, the Federal Rules of

7    Criminal Procedure, case law, and ethical rules entitle Defendant Richard Ayvazyan to

8    receive discovery so that he can investigate the allegations against him and prepare for

9    his January 12, 2021 trial.  The government's attempt to hold all of this discovery

10   hostage violates each of these entitlements and is unsupported by law.

11        "Protective orders are the exception, not the rule, and appropriate reasons must

12   be given for their entry."  *United States v. Stone*, No. 10-cr-20123, 2012 WL 137746, at

13   *3 (E.D. Mich. Jan. 18, 2012) (denying motion for protective order "to protect the

14   privacy and security interests of government witnesses" because "[t]he government has

15   not met its burden to show disclosure will cause a clearly defined and serious injury").

16   Where, as here, the government's proposed protective order would restrict a defendant

17   from possessing any of the discovery to investigate the allegations against him and

18   prepare for trial, the government bears a heavy burden to show good cause to believe

19   disclosure of discovery would result in a clearly defined and serious injury, and that the

20   restrictions are narrowly tailored to prevent overburdening a defendant's constitutional

21   rights.  Here, the government has (A) failed to satisfy show good cause to believe a

22   particular injury would result from disclosure; (B) misrepresented Ayvazyan's

23   conditions of release to the Court about in an attempt to manufacture good cause; and

24   (C) failed to engage in any tailoring or balancing at all.  Accordingly, the government's

25   *ex parte* application (Dkt. 65) should be denied and the defendant's *ex parte* application

26   (Dkt. 63) should be granted.

27

28
                                          1

1

2

### A.    The Government Fails to Show Good Cause to Believe Disclosure Would Result in a Clearly Defined and Serious Injury

3    It is the government's burden to show, "with specificity," good cause to believe

4    certain disclosures will cause "clearly defined and serious injury." *United States v.*

5    *Arredondo*, No. 12-cr-1055, 2012 WL 1946955, at *1 (D. Ariz. May 30, 2012) (*quoting*

6    *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007)).  The government's

7    application fails to meet this burden.  Instead of narrowing in on specific harm, the

8    government's application argues broadly[1] that somewhere within the sea of discovery

9    materials there exist unspecified documents that, if turned over to a defendant, could

10   "risk[] the privacy and security of the information's [unspecified] owners."  Dkt. 65 ¶ 2.

11   But "[b]road allegations of harm, unsubstantiated by specific examples or articulated

12   reasoning, do not support a good cause showing."  *United States v. Calderon*, 14-cr-

13   103-CAS, 2014 WL 1401941, at *3 (C.D. Cal. Apr. 8, 2014) (quoting *Arredondo* and

14   *Wecht* and denying government application for protective order except as to agreed-

15   upon matters and grand jury proceedings).  The government's application has done just

16   that—it is devoid of specific examples of the documents underpinning its concern, the

17   specific people that might be harmed, or the specific way in which these materials

18   could be misused.  This is not enough.

19   Setting aside the lack of a specific alleged harm, the government also fails to

20   provide good cause to believe that the generalized and speculative harms to privacy or

21   safety referenced in Dkt. 65 will occur.  The government argues that good cause exists

22   "due to the nature of the allegations against defendant R. Ayvazyan."  Dkt. 65 ¶ 15.

23   But many defendants are accused of fraud or identity theft, and yet that accusation is

24

25   [1] The government's application even broadens the proposed risk of harm by claiming that this "may expose" any third-party member of the general public to "potential safety risks."  Dkt.

26   65 ¶ 2.  The accusation that Ayvazyan represents a threat to public safety has no basis in fact.

27   Ayvazyan respectfully refers the Court to page 10 of his Application (Dkt. 63), which explains that Ayvazyan has no violent history, is a respected businessman, and has been a long-time

28   member of the local Armenian community.  He is not a safety risk to anyone.

2

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

not sufficient cause to justify tying their hands behind their back during trial preparation. *See* Dkt. 63 at 4 (providing eight examples of recent fraud and identity theft cases in which the same government counsel appearing in the present case or his co-counsel stipulated that such restrictions were not necessary). The government argues that Ayvazyan's prior conviction standing alone increases the risk of danger to public (Dkt. 65 at 2). But the government does not identify (because it cannot) what about this conviction makes him a danger to others—especially where, as here, Ayvazyan is subject to conditions of supervised release that include home detention, location monitoring, and prohibit him from accessing the bank accounts of others. The fact that Ayvazyan plead guilty to a non-violent charge a decade ago is not probative of whether he presents a safety risk today. *See Vincent v. Mendoza-Powers*, No. 06-cv-5482, 2010 WL 143455, at *17 (C.D. Cal. Jan. 6, 2010) (noting that a prior non-violent conviction was not "not a valid indicator of whether he is a danger to the public").

Ayvazyan, if anything, presents a lower risk of harm than similarly situated defendants. He is physically incapable of applying for any Paycheck Protection Program loans because the program is no longer open to new applications.[2] Any similar federal program fraud would be immediately spotted by the government or Probation given that Ayvazyan is under pretrial supervision. Ayvazyan has compliantly submitted bank account information and statements to probation upon request and he will continue to do so. Moreover, Ayvazyan would be reviewing discovery through Steptoe's eDiscovery system, which will track every document he views. It would be fundamentally illogical for Ayvazyan to misuse data or information when he knows that there will be an easily collectible record of his access.

---

[2] *See, e.g.*, James T. Madore, *$134B in Untapped Loan Guarantees Remain as PPP Applications End*, *Newsday* (Aug. 12, 2020), https://www.newsday.com/business/coronavirus/ppp-paycheck-loans-sba-businesses-1.48052017 (noting that the PPP program closed for new loan applications on August 8, 2020).

3
OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

1    The government's argument to the contrary is without merit.  The only
2    distinction the government draws is that, in 2012, Ayvazyan pleaded guilty to
3    misrepresenting his income to obtain a loan and successfully completed his sentence of
4    probation without incident.  Dkt. 65 ¶ 15.  Ayvazyan's offense did not involve the
5    misuse of a third party's private information or, for that matter, any conduct that
6    inflicted harm on a third party.  It provides no reason to believe that he would do so
7    now.[3]

8    **B.    The Government Misrepresents Ayvazyan's Pretrial Conditions in an
9    Attempt to Manufacture Good Cause**

10    Understanding that it cannot show good cause, the government inexplicably
11    claims that another court has made findings precluding Ayvazyan from receiving
12    discovery by prohibiting him from "possessing 'any identification, mail matter, access
13    devices, or any identification-related material other than in [their] own legal or true
14    name[s]." Dkt. 65 ¶ 7 (citing Dkt. 5).  The government is wrong.

15    The cited language is not part of Richard Ayvazyan's conditions of release.
16    Ayvazyan's conditions of release prohibit only accessing bank accounts belonging to
17    others, a condition he has followed and will continue to follow.  *See* Dkt. 47, 48
18    (conditions of release for Ayvazyan).  The document the government cites is the
19    conditions of release for co-defendant *Artur* Ayvazyan, not Richard.  But even
20    assuming *arguendo* that the government was not mistaken, and Artur's conditions of
21    release applied to all defendants, those conditions do not expressly prohibit possession
22    of identification-related materials produced by the government for the purpose of
23    preparing for trial.  Indeed, such an outcome—setting a condition of release that is then

---

24
25    [3] The government also claims there may exist information protected by the Privacy Act.  The
     government fails to describe that information with sufficient particularity much less the harm
26    that disclosure would cause.  Any information provided to the government for use in law
     enforcement activity pursuant to 5 U.S.C. § 552a(b)(7), however, would necessarily be
27    producible in discovery because discovery would be a core part of that law enforcement
     activity for which the information was provided.
28
                                    4
          OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

used to deny the defendant access to mandatory pre-trial discovery—would violate the Sixth Amendment rights afforded to the defendant.

## C.    Any Good Cause Would Be Insufficient to Justify the Requested Protective Order

The government's proposed protective order is not limited to personal, private information that, if disclosed, would subject its owner to a specific injury.  Instead, the government wishes to prevent Ayvazyan from possessing, controlling, or even taking notes on *any document* that contains "a name" or any other information that could conceivably be used to identify a person such as a business or email address.  Dkt. 65 ¶ 13.h, .i, .k (incorporating ¶ 13.a, .c).  In a case involving allegedly fraudulent loan applications, such a broad brushstroke would include even the very documents that the government will have to present at trial to meet its burden of proof (access to which would be a critical part of the defendant's preparation for trial).  The government defines "Confidential Information" so broadly that it applies to every document, then applies onerous strictures to any and all Confidential Information.  Good cause to redact one subset of documents "does not [provide] good cause to restrict the entirety of discovery with an overbroad protective order."  *United States v. Cross*, No. 20-cr-9, 2020 WL 2542818, at *3 (E.D. Wisc. May 19, 2020).  This is the equivalent to indiscriminately shutting down the main water valve to an office building under the belief that a single sink might flood.  The reasonable solution is to turn off the water to that sink.[4]  The government insists on going beyond the reasonable solution and entering what is, in effect, a blanket order shutting off the main water valve and

---

[4] "Turning off the water to that sink" is what Ayvazyan proposed immediately upon learning that the government was unwilling to abide by the protective orders it had agreed to in similar cases: produce all discovery regarding Ayvazyan and his alleged co-conspirators, and propose narrowly tailored redactions necessary to protect Fed. R. Civ. P. 5.2 information belonging to the alleged identity theft victim M.Z.  *See* Dkt. 63-5 at 1-2.  The government refused to discuss the proposal.

5

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

1   denying the defendant the right to search through discovery to investigate the
2   allegations against him and prepare for his case.

3          In the Ninth Circuit, to prevent access to unfiled discovery materials, "[a] party
4   asserting good cause bears the burden, for each particular document it seeks to protect,
5   of showing that specific prejudice or harm will result if no protective order is granted."
6   Dkt. 63 at 9 (citing *Arredondo*, 2012 WL 1946955, at *1 (*quoting Foltz v. State Farm*
7   *Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003))); *see also Beckman Indus. v.*
8   *Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).  Assuming *arguendo* that the
9   government demonstrated good cause for a protective order (it has not), this would not
10  justify the blanket protective order requested by the government.

11         This kind of blanket order, while "useful and expeditious in large scale litigation
12  … can be overbroad and unnecessary" in criminal cases.  *United States v. Williams*, No.
13  No. 15-cr-10145, 2015 WL 5923551, at *3 (D. Mass. Oct. 9, 2015) (quoting *United*
14  *States v. Smith*, 985 F. Supp. 2d 506, 545 (S.D.N.Y. 2013)).  It is therefore necessary
15  that "in determining the appropriate level of protection," the court "'ensure[s] that a
16  protective order is no broader than is necessary to serve the intended purposes.'"  *Id.*;
17  *see also Cross*, 2020 WL 2542818, at *3 (vacating protective order as "overbroad"
18  because the government failed to show that the defendant was a threat to the particular
19  witness being protected).  The government's core response is that its proposed
20  protective order is "necessary" to produce any discovery.  Dkt. 65 at 2.  The
21  government does not cite any legal authority for this remarkable proposition because
22  there is none.  There is no conceivable need to limit Ayvazyan's access to the vast
23  majority of the documents at issue in this case including, for example, Ayvazyan's own
24  escrow documents (containing names and contact information) or the very loan
25  applications (containing names and business information) for which Ayvazyan will be
26  tried.  Ayvazyan previous demonstrated the existence of narrower orders that would
27  protect the government's interests in Dkt. 63-2 and Dkt. 63-5.  The government's

28

failure to follow these examples to ensure that its proposed order is as narrow as possible is fatal to its application.

After ensuring the order is as narrow as possible to achieve a government interest, that purported interest must be balanced against Ayvazyan's constitutional right to investigate the allegations against him. *See United States v. W.R. Grace*, 401 F. Supp. 2d 1093, 1101 (D. Mont. 2005) (holding that due process required that defendants have an opportunity to inspect key records "without the arbitrary removal of portions of the records by the prosecution"); *Williams*, 2015 WL 5923551, at \*4 ("Balancing all of the concerns raised by the government and the defendants, the restrictions [proposed by the government] are overly burdensome and … broader than necessary in light of the showing made by the government relative to witness intimidation and retaliation."). The government's proposal to withhold everything from Ayvazyan makes no attempt to balance anything.

The government's proposed order would use a narrow fear to justify restrictions on every document in discovery. A drastic measure like that is grossly overbroad. The Court should therefore enter Ayvazyan's proposed order granting discovery (Dkt. 63-1) and direct the government to produce discovery.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD ENTER AYVAZYAN'S PROPOSED PROTECTIVE ORDER (DKT. 63-2)

Ayvazyan's Proposed Protective Order (filed as Dkt. 63-2) would sufficiently protect any of the government's potential interests for the reasons stated in Section III.B of Ayvazyan's Application for Discovery (Dkt. 63). The proposed order follows the precedent established by Judge Hatter in a recent case in this District, *United States v. Estopare*, No. 20-cr-79 (TJH), Dkt. 110 (C.D. Cal. May 21, 2020); *id.* Dkt. 179 (C.D. Cal. Oct. 20, 2020). *See* Dkt. 63 § 3.B.

Critically, the *Estopare* Order would balance the competing interests by serving as "a substantial safeguard against unauthorized disclosure" while ensuring that

7

Ayvazyan can investigate the allegations against him and prepare for trial.  *See* Dkt. 63 at 13-14 (quoting *United States v. W.R. Grace*, 401 F. Supp. 2d 1093, 1101 (D. Mont. 2005)); *United States v. Burgess*, No. 18-cr-373, 2018 WL 11211501, at *3 (S.D.N.Y. Sept. 21, 2018) (holding that Defendants could access protected materials independently for the purpose of preparing because requiring the presence of attorneys for every review session would "impose undue and substantial burdens on the defendants and counsel").

The government argues that its proposed order should be entered because it would "provide the defense with sufficient information to adequately represent [the] defendant."  Dkt. 65 ¶ 5; *see also id.* ¶ 13.d (defining the "Defense Team" to exclude the defendant).  The government's position represents a fundamental misunderstanding of the defendant's role in protecting his own liberty.  The defendant's right to participate in his own defense is sacrosanct and entitled to heavy weight.  Contrary to the government's proposed protective order:

> The Sixth Amendment does not provide merely that a defense shall be
> made for the accused; it grants to the accused personally the right to make
> his defense.  It is the accused, not counsel, who must be 'informed of the
> nature and cause of the accusation,' who must be 'confronted with the
> witnesses against him,' and who must be accorded 'compulsory process
> for obtaining witnesses in his favor.' Although not stated in the
> Amendment in so many words, the right to self-representation—to make
> one's own defense personally—is thus necessarily implied by the structure
> of the Amendment. The right to defend is given directly to the accused; for
> it is he who suffers the consequences if the defense fails.

*Faretta v. California*, 422 U.S. 806, 819 (1975).  The implicit proposition of the government's proposed protective order—that a criminal defendant has no right to

8

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

1  investigate the charges against him or prepare his own defense—has no basis in law and
2  should be rejected out of hand.

3      The government claims that screensharing one document at a time is sufficient to
4  protect Ayvazyan's right to participate in his defense.  The government is wrong for
5  three reasons.

6      First, screensharing one document at a time might allow Ayvazyan to review
7  preselected exhibits like a witness, *but see infra*, but it would not allow him to be a
8  member of the defense team.  Part of Ayvazyan's role on the defense team is to identify
9  key categories of exculpatory evidence.  *See* Dkt. 63 § III.B.  As noted *supra* in Section
10  I.A, Ayvazyan will identify exculpatory evidence by reviewing discovery on Steptoe's
11  eDiscovery platform.  In normal times, it would be a burden for Ayvazyan to conduct
12  this review with counsel present—Ayvazyan would have to come to Steptoe's office
13  and sit at a computer clicking through documents while counsel worked on other trial
14  preparation next to him.  Due to COVID, it is an impossibility.  Ayvazyan cannot sit in
15  a room with counsel, and the government's proposed order would transform retained
16  counsel into a babysitter, clicking "next document" and awaiting instructions when they
17  should be preparing for trial.  *See United States v. Baker*, No. 20-cr-288, 2020 WL
18  4589808, at *4 (S.D.N.Y. Aug. 10, 2020) (emphasizing the "value and [] interest in the
19  defendant being able to freely review the evidence against him, on his own time, and
20  without a defense lawyer or anyone else looking over his shoulder").  Ayvazyan is an
21  active member of his defense team and needs to be able to do his job without impeding
22  the ability of the other members of that team to do their jobs.

23      *Second*, having counsel screenshare exhibits is not even an adequate substitution
24  for witness preparation, much less fact investigation.  Courts, defense counsel, and even
25  prosecutors have all agreed that screensharing individual documents is an inadequate
26  replacement for in-person review.  *See, e.g.*, *Baker*, 2020 WL 4589808, at *4 (rejecting
27  government's proposed protective order for failure to adequately protect the

28

9
OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

defendant's rights); Joint Resp. of USAO & Defense at 2, *United States v. Abdelaziz*, No. 19-cr-10080, Dkt. 1659 (D. Mass. Dec. 4, 2020) (videoconference screensharing "is not an adequate substitute" for preparation sessions because of "unavoidable communication lags and other technological issues, as well as the fact that presenting exhibits to a witness remotely … can be cumbersome").  Undersigned counsel has no doubt that the Court has noticed that there are occasionally videoconference glitches even in short sessions.  Videos cut out, static hits, and people disconnect.  Those glitches occur exponentially more when a videocall has been going for eight hours to go through hundreds of documents rather than a one-hour hearing.  As prosecutors have recognized in other cases, screensharing is not a reliable enough substitute to take the place of independent document review.

*Third*, setting aside the inadequacy of clicking through each document with counsel, the government's proposed order falls woefully short of even this mark by conditioning exhibit-sharing via videoconference on a written certification that there is "no way" for the defendant to photograph, record, write down, or memorialize in any way the document being shared or any of the information in the document.  Dkt. 65 ¶ 13.m.  Such a certification would be impossible.  There is no set of restrictions that could provide the absolute impossibility required by the government's proposed order. Nor would such restrictions necessary or appropriate.[5]  As *W.R. Grace* makes clear even in the context of medical records—which, unlike the files in this case, are subject to strict statutory protection—protective orders require balancing any potential harm

---

[5] An example of the inappropriateness of the government's proposed order would be to consider the escrow files showing deposits for the purchase of Ayvazyan's home.  Each page of the escrow files would be Confidential Information because they contain names, addresses, email addresses, and financial information.  As a result, Ayvazyan would be prohibited from possessing any version of the escrow files.  If counsel wished to ask Ayvazyan about the circumstances of a particular transfer, Ayvazyan would be prohibited from writing down the date of the transfer because that would be "any data or information contained in the Confidential Information."

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

1   against the defendant's due process rights.  As in *W.R. Grace*, a similar prohibition on

2   misuse of discovery "for improper or illegal purposes" sufficiently mitigates the risk of

3   harm without unnecessary infringement on due process rights.[6]

4   **III.    CONCLUSION**

5         Ayvazyan requests that the Court deny the government's *ex parte* application and

6   grant Ayvazyan's application for discovery for the reasons stated above in Section I and

7   in Dkt. 63 § III.A.  In the event the Court concludes that a protective order is necessary,

8   Ayvazyan requests that the Court enter the proposed protective order at Dkt. 63-2, and

9   direct the government to immediately produce discovery for the reasons stated above in

10  Section II and in Dkt. 63 § III.B.

11  //

12  //

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

---

21
22  [6] Finally, the government's application highlights the seemingly short turnaround time
    between when defense counsel asked for the government's position on the defendant's *ex*
23  *parte* application and when it was filed.  Dkt. 65 ¶ 20.  In reality, the parties had been
    negotiating the terms of a potential protective order since the defense proposed a draft
24  protective order on November 18, 2020, including an offered stipulation from the defense to
    abide by the terms of the protective order until the outstanding issues related to the protective
25  order could be brought before the Court.  When the government refused to agree to this
    compromise, it became clear that extraordinary relief was necessary and, pursuant to the
26  Court's individual procedures regarding *ex parte* applications, defendant filed his *ex parte*
27  application as soon as he became aware that this relief was necessary.  The subject of the *ex*
    *parte* applications was not a surprise.
28

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

1

Dated:   December 9, 2020                     Respectfully submitted,

2

3                                             **STEPTOE & JOHNSON LLP**

4                                             */s/ Ashwin J. Ram*
                                              Ashwin J. Ram (SBN 227513)
5                                             *aram@steptoe.com*
                                              633 West Fifth Street, Suite 1900
6                                             Los Angeles, CA 90071
                                              Telephone: (213) 439-9400
7                                             Facsimile: (213) 439-9599

8

9                                             Michael A. Keough (SBN 327037)
                                              *mkeough@steptoe.com*
10                                            One Market Plaza
                                              Spear Tower, Suite 3900
11                                            San Francisco, CA 94105
                                              Telephone: (415) 365-6700
12                                            Facsimile: (415) 365-6699

13

14

15                                            Nicholas P. Silverman (*pro hac vice*)
                                              *nsilverman@steptoe.com*
16                                            1330 Connecticut Avenue, N.W.
                                              Washington D.C., 20036
17                                            Telephone: (202) 429-8096
                                              Facsimile: (202) 429-3902
18

19                                            *Counsel for Defendant Richard Ayvazyan*

20

21

22

23

24

25

26

27

28
                                              12