NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6683
    Facsimile: (213) 894-6269
    E-mail:   Julian.L.Andre@usdoj.gov

DANIEL A. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 302-0539
    Facsimile: (202) 514-0152
    E-mail:   Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>RICHARD AYVAZYAN,<br>  aka "Richard Avazian" and<br>      "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>  aka "Marietta Abelian" and<br>      "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>  aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br><br>          Defendants. | No. CR 20-579-SVW<br><br>GOVERNMENT'S EX PARTE APPLICATION FOR (1) CONTINUANCE OF TRIAL DATE AND (2) FINDINGS OF EXCLUDABLE TIME PURSUANT TO THE SPEEDY TRIAL ACT; DECLARATION OF JULIAN L. ANDRÉ<br><br>**CURRENT TRIAL DATE:**      **01-12-21**<br>**PROPOSED TRIAL DATE:**   **05-04-21** |

Plaintiff the United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, Assistant United States Attorney Julian L. André, and Department of Justice Trial Attorney Christopher Fenton, hereby applies <u>ex parte</u> for entry of an order: (1) continuing the trial date in this matter; and (2) excluding time from the Speedy Trial Act calculation for excludable delay.

This application is based upon attached memorandum of points and authorities, the declaration of Assistant United States Attorney Julian L. André, the files and records in this case, and such further evidence and argument as the Court may permit.

On December 15, 2020, the government emailed counsel for all four defendants in this case to obtain their respective positions regarding a continuance of the trial date in this matter.  On December 15, 2020, counsel for defendant RICHARD AYVAZYAN ("R. AYVAZYAN") advised the government via email that defendant does not consent to any continuance of the trial date.  As of the filing of the instant <u>ex parte</u> application, counsel for defendants MARIETTA TERABELIAN, A. AYVAZYAN, and DADYAN have not responded to the government's December 15, 2020, email.  However, on December 16, 2020, counsel for defendant R. AYVAZYAN indicated in a separate email

///

///

///

that their prior December 15, 2020, response was a joint response on behalf of all four defendants.

Dated: December 17, 2020            Respectfully submitted,

                                    NICOLA T. HANNA
                                    United States Attorney

                                    BRANDON D. FOX
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                    _____/s/_____
                                    JULIAN L. ANDRÉ
                                    Assistant United States Attorney
                                    CHRISTOPHER FENTON
                                    Department of Justice Trial Attorney

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                            <u>PAGE</u>

TABLE OF AUTHORITIES................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.   INTRODUCTION...................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND..............................1

     A.   The Pending Charges......................................1

     B.   Discovery................................................3

     C.   The Covid-19 Pandemic....................................4

III. DISCUSSION.....................................................8

IV.  CONCLUSION....................................................14

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                 PAGE

**FEDERAL CASES**

Furlow v. United States,
     644 F.2d 764 (9th Cir. 1981)................................11

In re Approval of Judicial Emergency in the Central Dist. of
     Cal., 955 F.3d 1140 (9th Cir. 2020).......................6, 9

United States v. Burrell,
     634 F.3d 284 (5th Cir. 2005)................................14

United States v. Correa,
     182 F. Supp. 2d 326 (S.D.N.Y. 2001)........................11

United States v. Hale,
     685 F.3d 522 (5th Cir. 2012)................................11

United States v. Lewis,
     611 F.3d 1172 (9th Cir. 2010)...............................11

United States v. Richman,
     600 F.2d 286, 292 (1st Cir. 1979)..........................12

United States v. Scott,
     245 Fed. Appx. 391 (5th Cir. 2007).........................12

United States v. Stallings,
     701 F. App'x 164 (3d Cir. 2017).............................11

Zedner v. United States,
     547 U.S. 489 (2006)........................................10

**FEDERAL STATUTES**

18 U.S.C. § 1028A(a)(1)..........................................1

18 U.S.C. § 1343.................................................1

18 U.S.C. § 1344(2)..............................................1

18 U.S.C. § 1349.................................................1

18 U.S.C. § 3161............................................passim

18 U.S.C. § 3162.................................................9

18 U.S.C. § 3174(b)........................................2, 5, 9

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                            PAGE

**MISCELLANEOUS**

C.D. Cal. General Order No. 20-02, In Re: Coronavirus Public
    Emergency, Order Concerning Jury Trials and Other
    Proceedings (Mar. 13, 2020)..............................4, 5, 12

C.D. Cal. General Order No. 20-03, In Re: Coronavirus Public
    Emergency, Order Concerning Access to Court Facilities
    (Mar. 13, 2020)................................................4

C.D. Cal. General Order No. 20-05, In Re: Coronavirus Public
    Emergency, Further Order Concerning Jury Trials and Other
    Proceedings (Apr. 15, 2020)...................................4

C.D. Cal. General Order No. 20-09, In Re: Coronavirus Public
    Emergency, Further Order Concerning Jury Trials and Other
    Proceedings (Aug. 6, 2020...........................4, 5, 7, 12

C.D. Cal. General Order No. 20-12, In Re: Coronavirus Public
    Emergency Order Concerning Reopening of the Southern
    Division (Sept. 14, 2020).....................................5

C.D. Cal. Order of the Chief Judge No. 20-042 (Mar. 19, 2020)....4, 5

C.D. Cal. Order of the Chief Judge No. 20-043 (Mar. 29, 2020).......4

C.D. Cal. Order of the Chief Judge No. 20-044 (Mar. 31, 2020).......4

C.D. Cal. Order of the Chief Judge No. 20-179, In Re:
    Coronavirus Public Emergency, Activation of Continuity of
    Operations Plan, at 3 (Dec. 7, 2020)..................4, 5, 7, 8

California Department of Public Health (updated daily),
    available at https://www.cdph.ca.gov/Programs/CID/
    DCDC/Pages/Immunization/ncov2019.aspx.........................7

California Executive Order N-33-20 (March 19, 2020).................6

California Regional Stay at Home Order 12/03/2020 (Dec. 3, 2020)....6

Coronavirus Disease 2019 (COVID-19) in the U.S., Centers for
    Disease Control and Prevention (updated daily), available
    at https://www.cdc.gov/
    coronavirus/2019-ncov/cases-updates/cases-in-us.html..........7

Safer at Home, Public Order Under City of Los Angeles Emergency
    Authority (March 19, 2020)....................................6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants RICHARD AYVAZYAN ("R. AYVAZYAN"), MARIETTA TERABELIAN, ARTUR AYVAZYAN ("A. AYVAYZAN"), and TAMARA DADYAN are charged with conspiring to fraudulently obtain millions of dollars in COVID-19-related disaster relief funds through two federal loan programs.  The trial in this matter is currently scheduled for January 12, 2021.  Because trials in this district are currently suspended due to the impact of COVID-19 and are unlikely to resume until March 2021 at the very earliest, the government seeks an order from this Court: (1) continuing the trial to May 4, 2021; and (2) finding that the interim time periods should be excluded from the calculation of the time in which trial must commence.  The government, however, has no objection to the Court selecting a trial date in March 2021 or April 2021 if the Court believes that an earlier trial date would be safe and feasible given the current public health circumstances.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Pending Charges

On November 17, 2020, a federal grand jury returned a 12-count indictment in United States v. Ayvazyan et al., No. CR 20-579-SVW. The indictment charges defendants R. AYVAZYAN, TERABELIAN, A. AYVAYZAN, and DADYAN with violations of 18 U.S.C. § 1349 (conspiracy to commit wire and bank fraud); 18 U.S.C. § 1343 (wire fraud); and 18 U.S.C. § 1344(2) (bank fraud).  (CR 32.)  Defendant R. AYVAZYAN is also charged with a violation of 18 U.S.C. § 1028A(a)(1) (aggravated identity theft).  (Id.)

The charges in this case arise from a conspiracy to fraudulently obtain millions of dollars in COVID-19-related disaster relief funds under the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan Program ("EIDL").  (CR 32.)  Among other things, defendants used fake, stolen, and synthetic identities, as well as stolen and fictitious business names, to submit fraudulent PPP and EIDL loan applications to financial institutions and the Small Business Administration ("SBA").  (Id.)  In connection with the fraudulent loan applications, defendants would also make false statements and submit fake documents, including fake Internal Revenue Service ("IRS") forms and fake California Drivers' Licenses ("CA DL").  (Id.)  Defendants then used the fraudulently obtained disaster relief funds for their own personal benefit, including to purchase the $3.25 million luxury home in which defendants R. AYVAZYAN and TERABELIAN currently reside.  (Id.)

Defendants R. AYVAZYAN and TERABELIAN first appeared before a judicial officer of the Court in which the charges in this case were pending on December 4, 2020.  (CR 80, CR 86.)  The Speedy Trial Act, 18 U.S.C. §§ 3161, 3174(b), requires that the trials of defendants R. AYVAZYAN and TERABELIAN commence on or before June 2, 2021.

Defendants A. AYVAZYAN and DADYAN first appeared before a judicial officer of the Court in which the charges in this case were pending on November 5, 2020.  (CR 5, CR 20.)  The Speedy Trial Act, 18 U.S.C. §§ 3161, 3174(b), requires that the trials of defendants A. AYVAZYAN and DADYAN commence on or before May 16, 2021.

All four defendants in this case are currently released on bond pending trial.  (See CR 5, CR 20, CR 80, CR 86.)

2

On December 3 and 4, 2020, the Court set this case for trial on January 12, 2021. (See, e.g., CR 60.) The government estimates that its case-in-chief in this matter will last approximately five to seven days. All four defendants are joined for trial and a severance has neither been sought nor granted.

**B.    Discovery**

The government has been working diligently to produce discovery to defendants in a timely manner. To date, the government has produced approximately 3,834 pages of discovery to defendants in this case, including financial records, reports, and other documents, and anticipates producing additional written discovery materials to defendants by December 21, 2021. The government will then produce any other discovery materials to which defendants are entitled on a rolling basis as soon as the materials are processed, bates-labeled, and available for production.

Additionally, on December 17, 2020, the government is making documentary evidence seized during the execution of 11 search warrants on November 5, 2020, available for the defendants' counsel to inspect and copy at the Federal Bureau of Investigation's ("FBI's") office.

Finally, the government seized a number of digital devices during the execution of search warrants in connection with this investigation. The FBI's Computer Analysis and Response Team is currently imaging and processing these digital devices, and will be providing defendants with complete copies of the devices on a rolling basis as soon as they become available. The government anticipates providing the defendants with copies approximately six of these digital devices during the week of December 21, 2020.

C.    **The Covid-19 Pandemic**

On March 13, 2020, following the President's declaration of a national emergency in response to COVID-19, the Court entered a General Order suspending jury selection and jury trials.  C.D. Cal. General Order No. 20-02, In Re: Coronavirus Public Emergency, Order Concerning Jury Trials and Other Proceedings (Mar. 13, 2020).  That suspension remains in place until a "date to be determined."  C.D. Cal. General Order No. 20-09, In Re: Coronavirus Public Emergency, Further Order Concerning Jury Trials and Other Proceedings (Aug. 6, 2020); see also C.D. Cal. Order of the Chief Judge No. 20-179, In Re: Coronavirus Public Emergency, Activation of Continuity of Operations Plan, at 3 (Dec. 7, 2020) ("Jury trials remain suspended.").

Also on March 13, 2020, the Court imposed health- and travel-related limitations on access to Court facilities.  C.D. Cal. General Order No. 20-03, In Re: Coronavirus Public Emergency, Order Concerning Access to Court Facilities (Mar. 13, 2020).  On March 19, 2020, by Order of the Chief Judge, the Court implemented its Continuity of Operations ("COOP") Plan, closing all Central District of California courthouses to the public (except for hearings on criminal duty matters) and taking other emergency actions.  C.D. Cal. Order of the Chief Judge No. 20-042 (Mar. 19, 2020).  On March 29, 2020, the Court authorized video-teleconference and telephonic hearings.  C.D. Cal. Order of the Chief Judge No. 20-043 (Mar. 29, 2020).  Two days later, on March 31, 2020, the Court suspended all grand-jury proceedings.  C.D. Cal. Order of the Chief Judge No. 20-044 (Mar. 31, 2020).  That suspension was subsequently extended through June 1, 2020.  C.D. Cal. General Order No. 20-05, In Re:

4

Coronavirus Public Emergency, Further Order Concerning Jury Trials and Other Proceedings at 3 ¶ 7 (Apr. 15, 2020).

On August 6 and September 14, 2020, the Court slightly relaxed its restrictions to permit in-person criminal hearings for defendants who do not consent to remote appearance and to allow up to 10 members of the public to attend.  General Order No. 20-09, at 2-3; C.D. Cal. General Order No. 20-12, In Re: Coronavirus Public Emergency Order Concerning Reopening of the Southern Division, at 2 (Sept. 14, 2020).

However, on December 7, 2020, following "an unprecedented surge of COVID-19 cases, hospitalizations, and test positivity rates in the Central District," the Court reinstituted its COOP Plan.  Order of the Chief Judge No. 20-179, at 1-2.  Pursuant to the COOP Plan, from December 9, 2020 at 5:00 p.m. through and including January 8, 2021, all grand jury proceedings are suspended and court facilities are once again closed to the public except for hearings on certain criminal duty matters.  Order of the Chief Judge No. 20-179, at 2-3.

These orders were imposed based on (1) the California Governor's declaration of a public-health emergency in response to the spread of COVID-19, as well as (2) the Centers for Disease Control's advice regarding reducing the possibility of exposure to the virus and slowing the spread of the disease.  See, e.g., General Order 20-02, at 1.  The Chief Judge has recognized that, during the COVID-19 crisis, all gatherings should be limited to no more than 10 people and elderly and other vulnerable people should avoid person-to-person contact altogether.  See Order of the Chief Judge No. 20-042, at 1-2. The Court has more broadly recognized CDC guidance advising "precautions to reduce the possibility of exposure to the virus and slow the spread of the disease[.]"  General Order 20-09, at 1.

5

Consistent with this Court's orders, the Judicial Council of the Ninth Circuit Court of Appeals declared an emergency in the Central District of California, pursuant to 18 U.S.C. § 3174.  In re Approval of Judicial Emergency in the Central Dist. of Cal., 955 F.3d 1140 (9th Cir. 2020).  The Judicial Council's order recognizes that "under the emergency declarations of national, state, and local governments, as well as recommendations from the Centers for Disease Control and Prevention to convene groups of no more than 10 people, the Court is unable to obtain an adequate spectrum of . . . grand jurors."  Id. at 1141.

Local and state governments have adopted similar policies.  On March 19, 2020, both Los Angeles Mayor Eric Garcetti and California Governor Gavin Newsom issued emergency orders requiring residents to "stay home," subject to limited exceptions.  California Executive Order N-33-20 (March 19, 2020); accord Safer at Home, Public Order Under City of Los Angeles Emergency Authority ¶ 1 (March 19, 2020).  Subject to similarly limited exceptions, all travel was prohibited.  Safer At Home ¶ 4.  Non-essential businesses requiring in-person attendance by workers were ordered to cease operations.  Id. ¶ 2.  All schools in the Los Angeles Unified School District remain closed to in-person classes.

On December 3, 2020, the Acting State Public Health Officer of the State of California issued a Regional Stay at Home Order based on the "unprecedented surge in the level of community spread of COVID-19."  California Regional Stay at Home Order 12/03/2020 (Dec. 3, 2020).  That order went into effect on December 6, 2020 and restricts business and social activities, including by suspending outdoor restaurant operations, in California regions for which ICU bed

capacity is less than 15%.  As the Chief Judge's December 7, 2020 Order reactivating the COOP Plan recognizes, ICU availability in the Southern California region, which includes the entire Central District of California, fell below 15% as soon as the Regional Stay at Home Order went into effect.  Order of the Chief Judge No. 20-179, at 2.

As these measures all reflect, the coronavirus pandemic is a global emergency that is unprecedented in modern history.  As data from both the Centers for Disease Control and the California Department of Public Health reflect, the virus has spread through the United States community at an alarming rate.  See Coronavirus Disease 2019 (COVID-19) in the U.S., Centers for Disease Control and Prevention (updated daily), available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html; Coronavirus Disease 2019 (COVID-19), California Department of Public Health (updated daily), available at https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx.  The death toll, across the world, is staggering.

Based on these facts, the Court's August 2020 order concluded that it was necessary to suspend criminal jury trials until further notice "in order to protect public health, and in order to reduce the size of public gatherings and reduce unnecessary travel."  General Order 20-09, at 1.  Given the increased rates of COVID-19-related hospitalization and death over the 30 days preceding the August 2020 order, the Court found that "holding jury trials substantially increases the chances of transmitting the Coronavirus," and it would thus "place prospective jurors, defendant, attorneys, and court personnel at unnecessary risk."  Id. at 3.  The Court concluded that

1    suspending jury trials thus served the ends of justice and outweighed
2    the interests of the public and defendants in a speedy trial.  Id.
3    The COOP Plan continues the suspension of all jury trials.  Order of
4    the Chief Judge No. 20-179, at 3.

5        This District has not adopted any protocols for safely
6    conducting jury trials once trials in this district resume.  See id.

7    **III. DISCUSSION**

8        The government requests that the Court continue the trial to May
9    4, 2021, and enter an order finding that the time between November
10   18, 2020, and May 4, 2021, should be excluded from the Speedy Trial
11   Act calculation of the date by which trial must commence.  Given the
12   continuing suspension of all jury trials under the COOP Plan; the
13   closure of court facilities to the public, except for hearings on
14   certain criminal duty matters, until at least January 8, 2021,
15   pursuant to Order of the Chief Judge No. 20-179; and the time needed
16   to summons jurors for trial once the court facilities reopen, the
17   government understands that March 2, 2021, is likely to be the
18   earliest date upon which a trial in this matter could possibly
19   commence.  It, however, remains possible that trials in this district
20   may not be able to resume until April 2021 or later if the public
21   health situation in this District does not improve significantly by
22   January 8, 2020.  Accordingly, the government submits that a trial
23   date of May 4, 2021 -- which still falls within the current Speedy
24   Trial Act limitations -- is a realistic and appropriate trial date.
25   A May 4, 2021, trial date would take into account the ongoing impact
26   of the COVID-19 pandemic on the Court's operations and our District,
27   the defendants' purported desire to proceed to trial as soon as
28   possible, allow the Court sufficient time the Court to consider and

1    rule on any pretrial motions to be filed by defendants,[1] and
2    hopefully avoid the need for the Court to grant further continuances.
3    The government, however, has no objection to the Court selecting an
4    earlier trial date in March 2021 or April 2021 if the Court believes
5    that an earlier trial date would be safe and reasonably feasible
6    under the current public health circumstances.

7         The Speedy Trial Act generally requires a trial to begin within
8    70 days of indictment or initial appearance, whichever occurs later,
9    18 U.S.C. § 3161(c)(1), and entitles the defendant to dismissal of
10   the charges (with or without prejudice) if that deadline is not met,
11   § 3162(a)(2).  However, because the Judicial Council of the Ninth
12   Circuit has declared an emergency in the Central District of
13   California, that clock -- in this case -- is extended to 180 days.
14   Judicial Emergency, 955 F.3d at 1141.  Specifically, under the
15   Judicial Council's order and 18 U.S.C. § 3174, Speedy Trial trial-
16   date clocks are extended to 180 days in all cases in which
17   (a) indictments or informations are filed between March 13, 2020, and
18   April 13, 2021, and (b) the defendant is not being detained solely
19   because he or she is awaiting trial.  See Judicial Emergency, 955
20   F.3d at 1141-42.  This is such a case.

21        Because defendants R. AYVAZYAN and TERABELIAN first appeared in
22   this district on December 4, 2020, the Speedy Trial Act currently
23   requires that their trials commence on or before June 2, 2021.  The
24   Speedy Trial Act requires that the trial of defendants A. AYVAZYAN
25   and DADYAN commence on or before May 16, 2021, because defendants A.

26

27        [1] Defendant R. AYVAZYAN has already indicated that he intends to
     move to suppress certain evidence.  (See CR 63 at 2, n. 1.)  The time
28   in which any such motions are pending would be automatically
     excludable under § 3161(h)(d)(1).

AYVAYZAN and DADYAN had appeared in this district prior to the November 17, 2020, indictment.

Certain periods of time, however, are excluded from the Speedy Trial Act's trial clock -- regardless of that clock's initial length. Id. § 3161(h).  Some periods of time are automatically excluded, including periods of delay resulting from the absence or unavailability of the defendant or an essential witness.  Id. § 3161(h)(3)(A).  Other periods of time are excluded only when a judge continues a trial and finds, on the record, that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  Id. § 3161(h)(7)(A).

In this case, the time between November 18, 2020, and May 4, 2021, should be excluded from the Speedy Trial Act under the ends-of-justice provision, 18 U.S.C. § 3161(h)(7)(A).[2]

Although the General Orders address district-wide health concerns and make Speedy Trial Act findings under § 3161(h)(7)(A), individualized findings are nevertheless necessary in this case.  See General Order 20-02 at 2 ¶ 4; General Order 20-09 at 2 ¶ 6(a).  The Supreme Court has emphasized that the Speedy Trial Act's ends-of-justice provision, § 3161(h)(7)(A), "counteract[s] substantive openendedness with procedural strictness," "demand[ing] on-the-record

---

[2] Although the Speedy Trial Act time limits in this case are extended to 180-days pursuant to 18 U.S.C. § 3174(b) and the Ninth Circuit's judicial emergency order, Judicial Emergency, 955 F.3d at 1141-42, the government anticipates that defendants may nevertheless attempt to challenge the statutory Speedy Trial Act extension. Accordingly, the government believes it is necessary for the Court to issue findings of excludable time even though the government's proposed trial date falls within the extended Speedy Trial Act limits.

findings" in a continued case.  Zedner v. United States, 547 U.S. 489, 500 (2006).  "[W]ithout on-the-record findings, there can be no exclusion under" § 3161(h)(7)(A).  Moreover, any such failure generally cannot be harmless.  Id. at 509.

Judged by the plain language of the Speedy Trial Act, the General Orders and Chief Judge Orders require supplementation here. Specifically, ends-of-justice continuances are excludable only if "the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).  Moreover, no such period is excludable unless "the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."  Id. The period must also be "specifically limited in time."  United States v. Lewis, 611 F.3d 1172, 1176 (9th Cir. 2010).

As the above facts reflect, the ends of justice justify excludable time here.  Pandemic, like natural disaster or other emergency, grants this Court the discretion to order an ends-of-justice continuance.  "Although the drafters of the Speedy Trial Act did not provide a particular exclusion of time for such public emergencies (no doubt failing to contemplate, in the more innocent days of 1974, that emergencies such as this would ever occur), the discretionary interests-of-justice exclusion" certainly covers this situation.  United States v. Correa, 182 F. Supp. 2d 326, 329 (S.D.N.Y. 2001) (addressing September 11 attacks); see Furlow v. United States, 644 F.2d 764, 767-69 (9th Cir. 1981) (affirming Speedy

11

Trial exclusion after eruption of Mount St. Helens); <u>accord</u> <u>United States v. Stallings</u>, 701 F. App'x 164, 170-71 (3d Cir. 2017) (same, after prosecutor had "family emergency"); <u>United States v. Hale</u>, 685 F.3d 522, 533-36 (5th Cir. 2012) (same, where case agent had "catastrophic family medical emergency"); <u>United States v. Scott</u>, 245 Fed. Appx. 391, 394 (5th Cir. 2007) (same, after Hurricane Katrina); <u>United States v. Richman</u>, 600 F.2d 286, 292, 293-94 (1st Cir. 1979) (same, after a "paralyzing blizzard" and the informant was hospitalized).

Here, the public health risks outlined above--and the findings articulated in General Orders 20-02 and 20-09--justify a continuance. As the President, the California governor, the Los Angeles mayor, and this Court's orders have recognized, we are in the midst of a grave public-health emergency requiring people to take extreme measures to limit contact with one another.  The Central District of California has no established jury-trial protocol at present; instead, the Court has concluded that jury trials would "place prospective jurors, defendant, attorneys, and court personnel at unnecessary risk." General Order 20-09 at 3 ¶ 6(a).  In the absence of such a district-wide protocol, proceeding with a jury trial is unsafe.

An ends-of-justice delay is particularly apt in this case because:

- This trial involves numerous witnesses who must travel, and thus would put themselves and others at risk if they were to come to court during this crisis.  Indeed, multiple public agencies have recommended against unnecessary travel.  Specifically, here, the government intends to call representatives from a number of the relevant financial

12

institutions to testify at trial, many of whom are located out of state.

- Two of defendant R. AYVAZYAN's attorneys from Steptoe & Johnson LLP live and work outside this District. Specifically, the government understands that Michael Keough works in San Francisco, California, and Nicholas Silverman works in Washington D.C.  Both would therefore need to travel to this District for trial.

- This case is being prosecuted jointly by the United States Attorney's Office and the Department of Justice's Fraud Section.  Department of Justice Trial Attorney Christopher Fenton, who is serving as co-counsel on this case, would thus need to travel from Washington D.C. for the trial in this matter.

In addition, due to the restrictions imposed by current public-health concerns -- particularly given the complexity and document-intensive nature of this multi-defendant case -- it is also unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within Speedy Trial Act time limits.  Indeed, defendants opposed the government's request for a protective order in this case at least in part based on COVID-19's impact on the defendants to ability to review the discovery in this case.  (CR 63 at 14 and Ex. D.)  Moreover, there is an extensive amount of digital evidence that was seized in this case, which the FBI's CART team is working diligently to produce to defendants as soon as possible despite operating with limited resources due to restrictions caused by the COVID-19 pandemic.  Under these unusual and emergent circumstances, denial of a continuance is likely to deny all counsel

reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

In addition, the government notes that at least two out of the four defendants in this case, defendants R. AYVAZYAN and DADYAN, are currently prohibited from entering the federal courthouse under the plain language of General Order 20-03 because they were diagnosed with the coronavirus in November 2020.  (See, e.g., CR 63 at 3.)[3]  At this time, it is unclear whether the defendants have recovered from COVID-19 and, if so, whether they would be allowed to enter the courthouse.  To the extent defendants are unable to enter the federal courthouse and cannot appear or are unavailable for the current trial date, even with the exercise of due diligence, the relevant time periods would also be excludable under § 3161(h)(3)(A).  See generally United States v. Burrell, 634 F.3d 284, 290-93 (5th Cir. 2005) (discussing standard).

**IV.  CONCLUSION**

Based on the foregoing, the Court should continue the trial date, and enter a case-specific order finding excludable time under 18 U.S.C. § 3161(h)(7)(A).  However, nothing in the Court's order should preclude a finding that other provisions of the Speedy Trial Act dictate that additional time periods are excluded from the period within which trial must commence.

---

[3] In his recent ex parte application, defendant R. AYVAZYAN claims that he contracted COVID-19 while temporarily detained in Miami, Florida.  (CR 63 at 3.)  It, however, is equally likely that he contracted COVID-19 while he and his wife, defendant TERABELIAN, were travelling to and from their luxury vacation in Turks & Caicos.  (See CR 1 at ¶ 41.)  It is unclear whether defendant TERABELIAN was ever diagnosed with COVID-19.  Defendant DADYAN's counsel indicated that she had been diagnosed with COVID-19 during her initial appearance on November 5, 2020.  The government does not know whether defendant A. AYVAZYAN subsequently tested positive for COVID-19.

14

1

**DECLARATION OF JULIAN L. ANDRÉ**

2      I, Julian L. André, declare as follows:

3      1.   I am an Assistant United States Attorney for the Central

4  District of California.  Together with Department of Justice Trial

5  Attorney Christopher Fenton, I represent the government in United

6  States v. Richard Ayvazyan et al., CR No. 20-579-SVW.  I make this

7  declaration in support of the government's ex parte application for

8  entry of an order: (1) continuing the trial date in this matter; and

9  (2) excluding time from the Speedy Trial Act calculation for

10 excludable delay.

11     2.   On December 15, 2020, I emailed counsel for defendants

12 RICHARD AYVAZYAN ("R. AYVAZYAN"), MARIETTA TERABELIAN, ARTUR AYVAZYAN

13 ("A. AYVAZYAN"), and TAMARA DADYAN and requested that they provide

14 the government with their clients' respective positions regarding a

15 new trial date in this matter given that trials in this District are

16 currently suspended due to the COVID-19 pandemic.  The government

17 also requested that counsel for each defendant advise the government

18 as to any potential conflicts that would impact scheduling a new

19 trial date in this matter.  The government requested that counsel

20 respond to the government's email by December 16, 2020, at 4:30 pm.

21     3.   On December 15, 2020, counsel for defendant R. AYVAZYAN

22 responded via email and stated, among other things, that defendant R.

23 AYVAZYAN does not consent to a continuance of the trial date.

24 Counsel for defendant R. AYVAZYAN further indicated that to the

25 extent the government seeks a continuance over defendant's objection,

26 defendant R. AYVAZYAN "would want the first available trial in

27 March."

28

4.    As of the filing the instant <u>ex parte</u> application, counsel for defendants MARIETTA TERABELIAN, A. AYVAZYAN, and DADYAN have not responded to the government's December 15, 2020, email regarding a new trial date in this matter.  However, on the evening of December 16, 2020, counsel for defendant R. AYVAZYAN sent the government a separate email in which he indicated that his firm's prior December 15, 2020, email opposing a continuance of the trial date was a "joint response" on behalf of all four defendants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on December 16, 2020.

_____
JULIAN L. ANDRÉ

2