Ashwin J. Ram (SBN 227513)
aram@steptoe.com
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
**STEPTOE & JOHNSON LLP**
One Market Plaza
Spear Tower, Suite 3900
San Francisco, CA 94105
Telephone: (415) 365-6700
Facsimile: (415) 365-6699

Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, N.W.
Washington D.C., 20036
Telephone: (202) 429-8096
Facsimile: (202) 429-3902

*Counsel for Defendant Richard Ayvazyan*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  20-CR-00579-SVW |
| *Plaintiff,* | **OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION FOR CONTINUANCE AND EXCLUSION OF TIME** |
| v. | |
| RICHARD AYVAZYAN, MARIETTA TERABELIAN, ARTUR AYVAZYAN, TAMARA DADYAN, | Hon. Stephen V. Wilson |
| *Defendants.* | |

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

# TABLE OF CONTENTS

I.    THE COURT SHOULD DENY THE REQUESTED CONTINUANCE...... 2

II.   THE COURT SHOULD DENY THE GOVERNMENT'S UNJUSTIFIED
      AND OVERBROAD REQUEST TO EXCLUDE TIME .....................................4

III.  IN THE ALTERNATIVE, THE COURT SHOULD ORDER THE
      GOVERNMENT TO PRODUCE ITS TRIAL EXHIBITS AND
      WITNESS LIST BEFORE THE INITIAL JANUARY 12 TRIAL DATE ...........6

      A.    The Government Has Laid in Wait for a Potential Continuance
            Instead of Producing Its Exhibits and Witnesses ........................................6

      B.    The Court Should Impose a December 22, 2020 Discovery Cut-Off
            Consistent with the Order in *United States v. Cai* ......................................9

IV.   CONCLUSION...................................................................................................11

i

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Klopfer v. North Carolina*,
   386 U.S. 213 (1967) .................................................................................. 5

*Roman Catholic Diocese v. Cuomo*,
   592 U.S. ___, *slip op.* (Nov. 25, 2020) ................................................... 5

*United States v. Cai*,
   No. 19-cr-761, Dkt. 134 (C.D. Cal. Aug. 6, 2020) ................................... 9

*United States v. Cai*,
   No. 19-cr-761, Dkt. 135 (C.D. Cal. Aug. 7, 2020) ................................... 9

*United States v. Cai*,
   No. 19-cr-761, Dkt. 190 (C.D. Cal. Aug. 12, 2020) ....................... 2, 6, 8, 9

*United States v. Clymer*,
   25 F.3d 824 (9th Cir. 1994) ...................................................................... 4

*United States v. Loud Hawk*,
   474 U.S. 302 (1986) .............................................................................. 3, 5

*United States v. Mendez*,
   No. 07-cr-11 (MMM), 2008 WL 2561962 (C.D. Cal. June 25, 2008) ..... 10

*United States v. Nance*,
   666 F.2d 353 (9th Cir. 1982) .................................................................... 4

*United States v. Olsen*,
   No. 17-cr-76, Dkt. 98 (C.D. Cal. Oct. 14, 2020) ................................... 4, 5

## Statutes

18 U.S.C. § 3161(a) ....................................................................................... 2

18 U.S.C. § 3174 ........................................................................................... 3

## Other Authorities

H. Rep. No. 96-390 (July 26, 1979) ............................................................. 3

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

New York Times Editorial Board, *America Is Letting the Coronavirus Rage Through Prisons*, N.Y. Times, Nov. 21, 2020 .......................................... 2

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

1   The government's latest request for *ex parte* relief (Dkt. 94) effectively asks this

2   Court to reward the government for indicting a case that it had not fully investigated

3   and is not prepared to prosecute.

4   Equally troubling, the government's discovery gamesmanship and December 17

5   *ex parte* submission make clear that the government intends to use COVID-19 to secure

6   a tactical advantage.  Despite filing a Complaint almost two months ago, the

7   government is not prepared for trial.  After at least one month of dodging discovery

8   requests while it developed its case, the government has now requested a continuance,

9   in part, so it can continue to do the work it should have done before the Complaint and

10  Indictment.  The government has refused to identify its trial exhibits and produce its

11  witness list, in order for the defense to meaningfully prepare for trial and challenge the

12  government's evidence.

13  This tactic of indicting first and investigating later is not authorized by any rule

14  of federal criminal procedure or law; indeed, it is fundamentally at odds with justice

15  and basic fairness.  Because the government has been lying in wait for a COVID-19

16  continuance it now seeks to weaponize, defendant Richard Ayvazyan opposes its

17  application and makes three requests:

18  *First*, if the Court grants a continuance of the current January 12, 2021 trial date,

19  Ayvazyan requests that the Court set trial for a date (originally) within the period

20  required by the Speedy Trial Act (*i.e.*, February 12, 2021 or earlier).

21  *Second*, even if a brief continuance is necessary, the attempt to exclude time

22  under the Speedy Trial Act (over the objection of all defendants) based on COVID-19

23  is unjustified and should be denied.  The touchstone for such an exclusion is that trial is

24  impossible, and the government implicitly concedes that it is not impossible.  The

25  government's exclusion request includes time during which grand juries were held in

26  person and time during which the government concedes jury trials will likely be held.

27  Ayvazyan therefore objects to the government's request for exclusion of time under the

28  Speedy Trial Act, which should be denied.

1

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

*Third*, to the extent the pandemic is found to require a brief continuance of the trial date, Ayvazyan requests that the Court impose a discovery cut-off and order the government to identify its trial exhibits and witnesses by December 22, 2020, three weeks before the current trial date of January 12, 2021, consistent with Judge Walter's holding in *United States v. Cai*, No. 19-cr-761, Dkt. 190 (C.D. Cal. Aug. 12, 2020) (maintaining late July and mid-August deadlines for government's evidence despite trial continuance to March 2021).  A trial continuance based on the pandemic presents no impediment to the government's existing duty to follow the Court's Order to "comply with its discovery obligations."  Dkt. 92 ¶ 1.  Nor should the pandemic provide a windfall to the government at the expense of Ayvazyan's fundamental rights.  Accordingly, the alternative proposed order attached as Ex. A would preclude the government from offering evidence in its case-in-chief unless that evidence is produced to the defense by the December 22 discovery cut-off.

## I.   THE COURT SHOULD DENY THE REQUESTED CONTINUANCE

Ayvazyan was indicted on November 17, 2020 and pleaded not guilty at his first appearance in this District on December 4, 2020.  In compliance with 18 U.S.C. § 3161(a), the case was "set … for trial on a date certain" specifically, January 12, 2021.  Absent the exclusion of time, Ayvazyan is entitled by the Speedy Trial Act and Sixth Amendment to a trial on or before February 12, 2020.   Ayvazyan requests that trial.

Ayvazyan is well aware of the COVID-19 pandemic.  He and his wife suffered COVID-19 infections from government-requested detention.[1]  A trial, however, is

---

[1] The government's response that it is "equally likely" that Ayvazyan contracted COVID-19 while traveling via airplane is absurd.  No commercial airline flights in the United States have been linked to a superspreader event.  Jails and prisons on the other hand have proven to be the "perfect breeding ground for the virus."  New York Times Editorial Board, *America Is Letting the Coronavirus Rage Through Prisons*, N.Y. Times, Nov. 21, 2020, https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html.  Ayvazyan and his wife, Marietta Terabelian, tested negative for COVID when they were detained and were placed in a "green" COVID-negative cell.  The government then gave Terabelian a cellmate before the cellmate's test returned.  The next day the cellmate was

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

possible and is necessary to clear Ayvazyan's name.  Until then, Ayvazyan remains under the cloud of indictment, subject to the "substantial impairment of liberty imposed on an accused while released on bail" but subject to house arrest, and "the disruption of life caused by the arrest and the presence of unresolved criminal charges." *United States v. Loud Hawk*, 474 U.S. 302, 311 (1986).  Ayvazyan therefore wishes to preserve the January 12 trial date, but if a continuance is granted, he requests that it be February 12 or earlier.

The government argues that Ayvazyan's speedy trial clock will not run out on February 12, 2021 but will instead last until June 2.  Dkt. 94 at 2.  This argument, however, is based on an eight-month-old Order purporting to suspend the limits of the Speedy Trial Act for one year pursuant to 18 U.S.C. § 3174.  Section 3174, however, only applies when a "district court is unable to comply with [the Speedy Trial Act] due to the status of its court calendars," 18 U.S.C. § 3174(a).  Section 3174 does not permit suspending the right to speedy trial due to a public health emergency; it only applies to suspensions "to alleviate calendar congestion resulting from the lack of resources." *Id.* A public health emergency does not create an issue with respect to "the status of … court calendars" necessitating a suspension "to alleviate calendar congestion resulting from the lack of resources." *Id.*; *accord* H. Rep. No. 96-390, at *9 (July 26, 1979) ("The Committee notes that all of the emergency provisions of section 3174 cite as the primary reason for having to do so the fact that judgeship vacancies, usually multiple vacancies, existed in the district.").  That is why each of the government's examples of disasters making trials temporarily impossible (Dkt. 94 at 11-12) involved an ends-of-justice exclusion, not a Section 3174 Order.  Section 3174 simply does not apply.

---

informed her test was positive.  Terabelian and Ayvazyan thereafter contracted COVID-19 as a result, and reported the circumstances to Probation.  The government's failure to take responsibility for its actions is disappointing.  After being infected with COVID-19 and suffering for several weeks with classic symptoms, Ayvazyan has tested negative as recently as today.

3

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.   THE COURT SHOULD DENY THE GOVERNMENT'S UNJUSTIFIED AND OVERBROAD REQUEST TO EXCLUDE TIME

The government takes the most aggressive stance possible, seeking to exclude time from November 18, 2020 through May 4, 2021 based on the December 7, 2020 General Order's "closure of court facilities to the public, except for hearings on certain criminal duty matters, until … January 8, 2021," making March 2, 2021 "the earliest date upon which a trial in this matter could possibly commence." Dkt. 94 at 8.  The proposition that a December 7 to January 8 pause in operations, during which no in-person hearings were scheduled anyways, could merit excluding time for a January 12 trial is curious.  But the attempt to use that brief pause to exclude *five-and-a-half months* is absurd.

The Speedy Trial Act permits limited exclusion during qualifying public emergencies pursuant to the ends of justice provision, but Congress intended that provision to be "rarely used."  *United States v. Nance*, 666 F.2d 353, 355 (9th Cir. 1982); *see United States v. Clymer*, 25 F.3d 824, 829 (9th Cir. 1994) ("[T]he 'ends of justice' exclusion … may not be invoked in such a way as to circumvent the time limitations set forth in the [Speedy Trial] Act.").  The key inquiry is whether "conducting [a jury trial] would be impossible" during the time sought to be excluded. Order Dismissing Charges for Violation of the Sixth Amendment & Speedy Trial Act at 2, *United States v. Olsen*, No. 17-cr-76, Dkt. 98 (C.D. Cal. Oct. 14, 2020) (noting that "*actual impossibility* is key to applying the ends of justice exception").  If holding a trial is possible then exclusion of time is unjustified.

The time period from November 18 to December 7 occurred before the General Order cited by the government.  Neither COVID-19 nor any other factor contributed to delay during this period.  The government had not even begun producing discovery. No exclusion is merited.

The time period from December 8 through January 8 has and will feature a prohibition on court activities including grand juries and many-but-not-all criminal

4

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

hearings.  Regardless, this period fell and will have concluded before the January 12 trial date, so neither COVID-19 nor any other factor contributed to delay during this period.  No exclusion is merited.

The time period from January 9 through March 2 features the same circumstances considered by Judge Carney in *Olsen*.  According to the government, grand juries are poised to resume, but the failure to issue petit jury summonses ahead of time will mean that no petit juries will be available.  *See* Dkt. 94 at 8.  Judge Carney correctly held that under these circumstances if grand juries are convening, then criminal jury trials are possible, and it is therefore improper to exclude time.  Order Dismissing Charges for Violation of the Sixth Amendment & Speedy Trial Act at 2-3, *Olsen*, Dkt. 98 (C.D. Cal. Oct. 14, 2020).  The Speedy Trial Act protects defendants against both misconduct by the government and the failure to summon jurors, and time therefore cannot be excluded if a trial is possible but administrative portions of the court have failed to summons jurors.  No exclusion is merited.

The government concedes that it cannot prove that a trial between March 3 and May 4 is impossible.  *See* Dkt. 94 at 8 ("the government understands that March 2, 2021, is likely to be the earliest date upon which a trial in this matter could possibly commence.").  The mere possibility that a public health emergency *might* worsen in the future (notwithstanding a vaccine currently being administered to the public) is not a valid justification for excluding time now.  No exclusion is merited.

Exclusion of time under the ends of justice provision is supposed to be rare and a last resort.  To say that the government paints with a broad brush in supporting its preconceived notion that "trials in this district are suspended indefinitely," Dkt. 73 at 2, would be overly charitable.  As the Supreme Court has recently made clear, the government is not free to disregard constitutional rights in times of crisis—even the COVID-19 pandemic.  *See Roman Catholic Diocese v. Cuomo*, 592 U.S. ___, slip op. at 1 (Nov. 25, 2020) (Gorsuch, J., concurring).  The government chose to indict these defendants knowing that it would move for a continuance and that prejudice would

ensue.  *See Loud Hawk*, 474 U.S. at 311.  Even where a defendant is released on personal recognizance—which is not the case here; the defendants are on twenty-four-hour house arrest—the individual's reputation, business, and basic ability to function as a member of society are prejudiced.  *Klopfer v. North Carolina*, 386 U.S. 213, 221-22 (1967) ("The petitioner is not relieved of the limitations placed upon his liberty by this prosecution merely because its suspension permits him to go 'whithersoever he will.' The pendency of the indictment may subject him to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, [and inflict] the 'anxiety and concern accompanying public accusation….").  Convening a grand jury to indict defendants and then arguing for the suspension of their speedy trial rights based on the overbroad claims about the inability to convene a petit jury would violate both the letter and spirit of the rights enshrined in the Fifth and Sixth Amendments.  The government's effort to do so should be rejected.

## III.  IN THE ALTERNATIVE, THE COURT SHOULD ORDER THE GOVERNMENT TO PRODUCE ITS TRIAL EXHIBITS AND WITNESS LIST BEFORE THE INITIAL JANUARY 12 TRIAL DATE

### A.  The Government Has Laid In Wait for a Potential Continuance Instead of Producing Its Exhibits and Witnesses

The government has spent six weeks deflecting requests for discovery, including, at least for the last four weeks, explicit requests for the government's exhibit list and witness list.[2]  In *Cai*, Judge Walter observed that the government's tactic of attempting to use a COVID-19 continuance to delay the production of its final exhibits and witness list was "totally inappropriate."  *Id.* at 21.  That is the tactic being implemented by the government in this case.

---

[2] Only over the past week has the government begun to permit inspection of a small subset of discovery (physical seizures) and produced an unspecified portion third-party documents.  The government has not produced any electronic records seized via search warrants or any digital devices.  Moreover, the government has not identified its exhibits or witnesses in a way that will allow the defendants to prepare their defense to those exhibits and witnesses.

6

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

1    Beginning in early November, Ayvazyan informed the government that he

2  intended to exercise his right to a speedy trial and requested pre-indictment discovery

3  so he could begin preparing for trial. *See* Dkt. 63 at 3.  Within twenty-four hours of his

4  November 17 indictment, Ayvazyan sent a detailed discovery request including a

5  request that the government identify its trial exhibits and witnesses so that he could

6  prepare for trial.  Dkt. 63-3 § III ¶ 13; *id.* § VII.  The government summarily refused or

7  ignored each request.

8    Almost two weeks and multiple defense requests later, the government replied on

9  December 1.  The government offered to *begin* "rolling" discovery productions—with

10  no mention of an end date—during the week of December 11 if the defendant would

11  agree to the onerous protective order since litigated before and rejected by this Court.

12  Dkt. 63-6 at 2.  The government *still* did not respond to Ayvazyan's request to identify

13  its trial exhibits and witnesses so that he can prepare for trial.  *Id.*

14    On December 11, after the Court denied the government's *ex parte* application

15  for a protective order, and granted in part Ayvazyan's application for discovery and

16  ordered the government to "comply with its discovery obligations," Dkt. 92 ¶ 1,

17  Ayvazyan and his co-defendants wrote to the government to once again request that the

18  government identify its trial exhibits and witnesses.  Dec. 11, 2020 Ltr. (Ex. B).

19    The December 11 letter explained that that "the failure to produce discovery

20  continues to impede the defendants' ability to prepare for trial." *Id.* at 1 (noting that 53

21  days had elapsed since the Complaint).  The letter requested in a bolded paragraph "that

22  even if the government plans to move for a continuance based on the COVID-19

23  pandemic, it produce all evidence to be used [and a list of witnesses to be called] in its

24  case-in-chief no later than December 22, 2020, which is three weeks before the January

25  12 trial date." *Id.* at 2.  The letter reasoned that although the government had taken the

26  position that "trials in this district are suspended indefinitely," Dkt. 73 at 2, the

27  government is "not entitled to use COVID-19 as an opportunity to lengthen the time

28

7

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

between indictment and a defendant getting the evidence he needs to defend himself." Ex. B at 2.

Only after the Court's Order directed the government to comply with its discovery obligations did the government even *begin* to make productions of third-party discovery to the defense—but these productions remain incomplete with no end date in sight on the government's rolling schedule.[3]  The government refused to respond to the defendants' request for a date certain by which the government would identify its trial exhibits and witnesses.[4]  On December 15, in a communication selectively quoted by (and omitted from) the government's submission, the defendants again requested that the government produce its trial exhibit list and witness list by December 22, 2020. Dec. 15 Email from Nicholas Silverman (Ex. D).  Ayvazyan noted that the proposed deadline "provides the government over two months since the issuance of the Complaint and enables the defendants to prepare for trial."  *Id.*  Because the defendants "are the ones who suffer prejudice from a continuance[,]" the government should not receive an undue extension.  *Id.*  The government did not respond.

Ayvazyan wrote for a third time on December 16 to ask for the government's position on the proposed exhibit and witness list deadline of December 22.  Dec. 16 Email from Ashwin Ram (Ex. E).  Ayvazyan noted that the "rolling" productions proposed by the government appeared to be inconsistent with such a deadline.  The

---

[3] On December 17, two members of defense counsel were permitted to visit the FBI's Los Angeles office to review a small subset of evidence: the physical and documentary evidence seized by search warrants two weeks after the October 20 Complaint.  Around the same time, the government made two small productions of discovery received from third parties.  Each production noted that – although there is less than one month until trial – the government intends to make future productions "on a rolling basis," with no defined end date.

[4] The government's trial exhibits were not part of the evidence that the government has allowed the defendants to inspect in person on December 17.  The government proposed delaying its production of *Jencks* materials until only one week before trial and refused to answer when it would provide a witness list or agree to a date certain.

8

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

government cursorily stated that it opposed the request but made no counteroffer of a different date certain by which it would finish producing discovery.  *Id.*

### B. The Court Should Impose a December 22, 2020 Discovery Cut-Off Consistent with the Order in *United States v. Cai*

The government has refused to produce its exhibits and witnesses and instead continued "lying in wait for the … continuance of trial" it expects.  Tr. at 22, *Cai*, Dkt. 190 (C.D. Cal. Aug. 12, 2020).  It is the defendants who will pay the price of a COVID-19 continuance with extra months of house arrest, the cloud of an indictment, and the potential spoliation of evidence.  The defendants will be prejudiced in these three ways, all while the government lackadaisically gathers and slow rolls the production of evidence it should have already had at the time of the indictment or at least the time originally set for trial.  The government should not receive a windfall from these tactics by being given the extra time it improperly seeks.

In *United States v. Cai*, the U.S. Attorney's Office for the Central District of California tried to do just that.  Having indicted the defendant for conspiracy to engage in money laundering, trafficking in counterfeit goods, wire fraud, and aggravated identity theft, the government sought to use General Order 20-09 to continue the August 25, 2020 trial date and the corresponding exhibit and witness identification deadlines due to COVID-19.  Gov't *Ex Parte* App'n to Continue Trial Date & Pretrial Deadlines, *Cai*, Dkt. 134 (C.D. Cal. Aug. 6, 2020).  The government argued that it should be entitled to develop new trial evidence because "in the intervening months between the current pretrial deadlines and the new trial date, [the government]'s understanding of the evidence is likely to change, which could significantly alter the presentation of evidence at trial and thus the exhibits that are presented."  *Id.* at 16.  The Court disagreed, siding with the defendant's argument that "[t]he Court should reject the government's attempt to obtain a strategic advantage from the COVID-19 pandemic."  Opp'n to Gov't Ex Parte App'n at 2, *Cai*, Dkt. 135 (C.D. Cal. Aug. 7, 2020) (noting also "the government has ignored the Court's orders, never intended to

9

comply, and has been lying in wait to request a bailout from the Court when the general order issued"); *see* Hr'g Tr. at 21-32, *Cai*, Dkt. 190 (C.D. Cal. Aug. 12, 2020) (agreeing that the government should comply with the existing deadlines instead of angling to turn the COVID-19 continuance into more time to change its trial strategy).  Although Judge Walter granted a continuance from August 2020 until March 2021, he ordered the government to disclose its case-in-chief exhibits and witnesses in August to ensure that the March trial would be as efficient as possible and that the government would not be rewarded for "lying in wait for … what it believed [would] be a continuance of trial." *Id.* at 21; *see also id.* at 32 (making clear that the August deadlines that had not yet passed remained in place).

The same logic applies to the government's tactics here.  As in *Cai*, "[t]his is a relatively simple case" for which the government knows its trial strategy.  *Id.* at 23.  A deadline is proper to ensure that "the government will organize and focus its case" and "that defendants will have adequate time to seek out government witnesses before trial, and prepare to meet the government's evidence." *United States v. Mendez*, No. 07-cr-11 (MMM), 2008 WL 2561962, at *6 (C.D. Cal. June 25, 2008) (ordering the government to disclose its final witness list four weeks ahead of the then-existing trial date).  The government is capable of making that production now.  The government should not be allowed to engage in gamesmanship by withholding that trial strategy.  The government should not be able to gain a windfall by obtaining additional post-indictment investigation time and taking a lackadaisical approach to its discovery obligations.

Trial is set for January 12, 2021.  Whether or not it remains set for that date, the government—having filed a Complaint on October 20 and an Indictment on November 17—has had more than enough time to produce discovery and determine its case-in-chief.  The government should not be permitted to evade or game its discovery obligations.  Ayvazyan therefore asks the Court (1) to order the government to comply with its discovery obligations and identify its exhibits and witnesses promptly, and in

10

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

no event after December 22, and (2) to prohibit the government from using evidence in its case-in-chief that was not produced by December 22.  This alternative proposed order is attached as Ex. A.

## IV.   CONCLUSION

For the above reasons, Ayvazyan respectfully asks that (1) the Court deny the government's motion for a continuance or set trial for February 12 or earlier, and in the alternative that (2) if the Court grants the motion for a continuance, then the Court should deny the government's motion to exclude time and enter the alternative proposed order attached as Ex. A, which would require the government to produce its trial exhibit and witness list by December 22 and prohibit the use of evidence in the government's case-in-chief unless that evidence is produced by December 22.

Dated:   December 18, 2020                          Respectfully submitted,

                                                                    **STEPTOE & JOHNSON LLP**

                                                                    */s/ Ashwin J. Ram*
                                                                    Ashwin J. Ram (SBN 227513)
                                                                    *aram@steptoe.com*
                                                                    STEPTOE & JOHNSON LLP
                                                                    633 West Fifth Street, Suite 1900
                                                                    Los Angeles, CA 90071
                                                                    Telephone: (213) 439-9400
                                                                    Facsimile: (213) 439-9599

                                                                    Michael A. Keough (SBN 327037)
                                                                    *mkeough@steptoe.com*
                                                                    One Market Plaza
                                                                    Spear Tower, Suite 3900
                                                                    San Francisco, CA 94105
                                                                    Telephone: (415) 365-6700
                                                                    Facsimile: (415) 365-6699

                                                                    Nicholas P. Silverman (*pro hac vice*)
                                                                    *nsilverman@steptoe.com*
                                                                    1330 Connecticut Avenue, N.W.

11

OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION

Washington D.C., 20036
Telephone: (202) 429-8096
Facsimile: (202) 329-3902

*Counsel for Defendant Richard Ayvazyan*