# EXHIBIT A

1   UNITED STATES DISTRICT COURT

2   CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3   HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE

4

5   UNITED STATES OF AMERICA,        )
                                     )
6              PLAINTIFF,            )      CASE NO.
                                     )
7              vs.                   )      CR 19-00761-JFW
                                     )
8   ZOULIN CAI,                      )
                                     )      PAGES 1 TO 46
9              DEFENDANT.            )
    _____   )

10

11

12

13              REPORTER'S TRANSCRIPT OF
        EX PARTE APPLICATION BY VIDEO CONFERENCING
14            WEDNESDAY, AUGUST 12, 2020
                     8:34 A.M.
15            LOS ANGELES, CALIFORNIA

16

17

18

19

20

21

22

23   _____

        MIRANDA ALGORRI, CSR 12743, RPR, CRR
24         FEDERAL OFFICIAL COURT REPORTER
          350 WEST 1ST STREET, SUITE 4455
25         LOS ANGELES, CALIFORNIA 90012
             MIRANDAALGORRI@GMAIL.COM

1                   **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4          NICOLA T. HANNA
      UNITED STATES ATTORNEY

5          BY:  VICTORIA DEGTYAREVA
      BY:  JULIA CHOE

6          Assistant United States Attorneys
      United States Courthouse

7          312 North Spring Street
      Los Angeles, California 90012

8

9    **FOR THE DEFENDANT:**
 (Defendant appearing by video)

10

      SPERTUS LANDES & UMHOFER, LLP

11         BY:  SAMUEL A. JOSEPHS
      BY:  CHRISTA CULVER WASSERMAN

12         1990 South Bundy Drive
      Suite 705

13         Los Angeles, California 90025

14

 Also present by video:

15

      Dorothy Li

16         Sunny Johnston
      Mandarin Interpreters

17

18

19

20

21

22

23

24

25

1      **LOS ANGELES, CALIFORNIA; WEDNESDAY, AUGUST 12, 2020**

2                          **8:34 A.M.**

3                            **---**

4

5           THE CLERK:  CR 19-761(A)-JFW, United States of

6    America versus Zoulin Cai.

7           Counsel, please state your appearances.

8           MS. DEGTYAREVA:  Good morning, Your Honor.  This

9    is Victoria Degtyareva and Julia Choe on behalf of the

10   Government.

11          MR. JOSEPHS:  Good morning, Your Honor.  This is

12   Sam Josephs and Christa Culver-Wasserman on behalf of Mr. Cai

13   who is appearing via video conference.

14          THE COURT:  And he is being assisted by a

15   Mandarin interpreter.  And if that interpreter would please

16   announce his or her appearance.

17          Where is she?

18          THE INTERPRETER:  Good morning, Your Honor.  The

19   interpreter is here, and we have two Mandarin interpreters this

20   morning.  My name is Dorothy Li, and my oath is with the Court.

21   The other interpreter's name is Sunny Johnston.

22          THE COURT:  Would you spell that second name for

23   the court reporter?

24          THE INTERPRETER:  Of course.  It's S-u-n-n-y

25   J-o-h-n-s-t-o-n.

```
 1              THE COURT:  Where is Mr. Antony?

 2              MS. DEGTYAREVA:  Your Honor, Mr. Antony was

 3    unable to join us this morning, so Ms. Choe and I are

 4    representing the Government.

 5              THE COURT:  Okay.  This matter is on the Court's

 6    calendar for a hearing on the Government's ex parte application

 7    for an order to continue the trial date and pretrial deadlines.

 8    It was filed on August 6th, and it appears as docket No. 134.

 9    On August 7th, the defendant filed his opposition to the

10    ex parte application.  That appears as docket No. 135.  On

11    August 10th the Government filed a reply which appears as

12    docket No. 139.

13              In the ex parte application, the Government seeks

14    an order continuing the trial from its current date of

15    August 25th of 2020 to October 27 of 2020 and an order

16    continuing the pretrial deadlines that have been set by the

17    various orders of the Court.

18              I will first hear argument and rule on the

19    ex parte application, and then I will rule on the second part

20    of the ex parte application which is the request to continue

21    various pretrial deadlines.

22              The defendant, as I indicated, filed an

23    opposition to the ex parte application and specifically points

24    out that the trial date that is suggested or proposed by the

25    Government of October 27th is not acceptable due to the medical
```

leave for Mr. Josephs's co-counsel Ms. Wasserman and requests a

trial date of late September, specifically September 29th.

So Mr. Josephs, I will hear from you.  I really

don't have any choice in the matter based upon the general

order that was issued on -- just recently.  I can never keep

track of the general order numbers.  It was General Order 20-09

which was filed on August 6th of 2020.  And in that general

order, the Court has indicated that, until further notice, no

jury trials will be conducted in criminal cases.  That order

superseded General Order 20-08 which had contemplated that

hopefully the Court was going to conclude phase two and move to

a phase three which is the resumption of jury trials.  That

resumption of jury trials date was a date that was to be

implemented at a future date from the date of the entry of

General Order 20-08 which is May 28th of 2020.

So let me hear from you, Mr. Josephs, if you have

anything that you wish to add to your opposition.

MR. JOSEPHS:  Thank you, Your Honor.  I do just

briefly.  I know that the Court has read all the papers, and I

understand that the Court is in a very difficult predicament

with the general order.  I do though think that the general

order is not specific to our case, and I do think that there

are factors relevant to cases individually that the Court must

consider in granting ends-of-justice exclusion.

We understand that Judge Carter has decided to

1    proceed with jury trials as at least one court in the district

2    has decided to issue jury summons despite the general order.  I

3    completely understand that that places the Court in a difficult

4    position, but I guess our request to the Court is, given the

5    fact that all the factors that we talked about in our papers

6    and especially the fact that Mr. Cai is detained and the fact

7    the parties are ready proceed on the current date, that we

8    would be asking the Court to make an exception to the general

9    order and to issue jury summons to find a jury pool, if not by

10   the August 25th date, because I understand that jury summons

11   may have been called back, to a date in the near future within

12   a couple weeks of that August 25th date.

13            So, Your Honor, I just don't think that the

14   general order -- while it suspended jury trials across the

15   court, there are still factors that each Court needs to

16   consider.  And I think Judge Carter at least has decided in his

17   court that juries can be summoned.

18            THE COURT:  It's going to be interesting to see

19   how he is going to accomplish that.  I was unaware that that

20   was his -- that he was taking that position.  I don't have any

21   reason to doubt what you say.  Judge Carter may have his own

22   specific case in mind, but I'm unaware of those circumstances.

23            In any event, unless you have anything else, I'm

24   prepared to rule.

25            MR. JOSEPHS:  It's not on the trial date issue,

1    Your Honor, unless the Court wants to get into other potential

2    dates if the Court were to vacate the August 25th date.  But on

3    the vacating of the August 25th date itself, I have no other

4    points.

5                    THE COURT:  All right.  Then the Court makes the

6    following ruling:

7                    The Indictment in this case was filed on

8    December 17th, 2019, and the defendant first appeared before a

9    judicial officer of the court on December 19th, 2019.  The

10   Speedy Trial Act originally required the trial to commence on

11   or before February 27th of 2020.  This case was originally set

12   for trial on February 11 of 2020.

13                   At the status conference on January 16th of 2020,

14   the defendant requested a continuance of the February 11th

15   trial date to October 13th of 2020.  The Court did not approve

16   defendant's request but advised counsel that it would consider

17   a trial date of August 25th of 2020.  The parties then filed a

18   stipulation to continue the trial from February 11th to the

19   current trial date of August 25th and a proposed order which

20   the Court signed and filed on February 4th.  In that order, the

21   Court found that the time from February 11th to August 25th was

22   excluded in calculating or computing the time under the Speedy

23   Trial Act.

24                   As counsel has indicated, the defendant is

25   currently detained.  The Government has filed a First

1   Superseding Indictment on July 17, 2020.

2              With respect to the Speedy Trial Act, the act

3   generally requires a trial to begin within 70 days of

4   indictment or initial appearance, whichever occurs later, and

5   entitles the defendant to dismissal of the charges if that

6   deadline is not met.  The Speedy Trial Act, specifically

7   18 United States Code Section --

8              THE INTERPRETER:  Your Honor, I'm so sorry.  This

9   is the Mandarin interpreter.  Can you slow down a little bit?

10             THE COURT:  Yes.

11             The Speedy Trial Act Section 3161(h)(7)(A),

12  however, permits a Court to grant a continuance on the basis of

13  its findings that the ends of justice served by taking such

14  action outweigh the best interest of the public and the

15  defendant in a speedy trial.  The Court must set forth in the

16  record of the case, either orally or in writing, its reasons

17  for finding that the ends of justice served by granting of such

18  continuance outweigh the best interests of the public and the

19  defendant in a speedy trial.

20             Speedy Trial Act sets forth the following

21  non-exclusive list of factors that Courts must consider in

22  determining whether to grant an ends-of-justice continuance:

23             First, whether the failure to grant such a

24  continuance in the proceeding would be likely to make a

25  continuation of such proceeding impossible or result in a

1    miscarriage of justice;

2            Two, whether the case is so unusual or so complex

3    due to the number of defendants, the nature of the prosecution,

4    or the existence of novel questions of fact or law that it is

5    unreasonable to expect adequate preparation for pretrial

6    proceedings or for the trial itself within the time limits

7    established by this section;

8            Three, whether in a case in which arrest precedes

9    indictment, delay in the filing of the indictment is caused

10   because the arrest occurs at a time such that it is

11   unreasonable to expect a return and filing of the indictment

12   within the period specified in Section 3161(b), or because the

13   facts upon which the grand jury must base its determination are

14   unusual or complex; and,

15           Four, whether the failure to grant such a

16   continuance in a case which, taken as a whole, is not so

17   unusual or so complex as to fall within clause (ii) would deny

18   the defendant reasonable time to obtain counsel, would

19   unreasonably deny the defendant or Government continuity of

20   counsel, or would deny counsel for the defendant or the

21   attorney for the Government the reasonable time necessary for

22   effective preparation taking into account the exercise of due

23   diligence.

24           The Speedy Trial Act prohibits an end-of-justice

25   continuance because of general congestion of the Court's

1  calendar or lack of diligent preparation or failure to obtain

2  available witnesses on the part of the attorney for the

3  Government.

4          As the Court stated in *United States versus*

5  *Kemprud*, K-e-m-p-r-u-d, 2020 WL 2128583 -- and I'm quoting --

6  "Although the Speedy Trial Act does not directly address

7  continuances stemming from pandemics, national disasters or

8  other emergencies, this Court has discretion to order a

9  continuance in such circumstances."  That was the end of the

10  quote.

11          For example, in *Furlow*, F-u-r-l-o-w, *versus*

12  *United States* at 644 F.2d 764, the 9th Circuit affirmed a

13  continuance -- an ends-of-justice continuance following the

14  Mount Saint Helens eruption.  And the 5th Circuit in

15  *United States versus Scott* at 245 Fed.Appx. 391 recognized that

16  Hurricane Katrina related continuances served the ends of

17  justice.

18          In considering a Covid-19 ends-of-justice

19  continuance, the Court in *United States versus Smith* at

20  2020 WL 2541713 found the following nonstatutory factors to be

21  relevant:

22          One, whether the defendant was detained pending

23  trial;

24          Whether Covid-19 is present in the facility where

25  the defendant is detained and, if so, whether the defendant

belongs to a population that is particularly susceptible to the virus;

Three, whether the Court can safely conduct a jury trial;

Four, whether the defendant has invoked his speedy trial rights since the case's inception;

Five, how long the defendant has been detained;

Six, whether the defendant is charged with a violent crime or has a history of violent crimes;

Seven, whether the defendant was denied bail solely because of risk of nonappearance; and,

Eight, whether there is a specific reason to suspect recidivism if charges are dismissed.

In this case, the Court concludes that the ends of justice served by a continuance outweigh the best interests of the public and the defendant in a speedy trial.  The Government has correctly characterized the various Central District of California General Orders 20-02, -03, -05, and -09 and the orders of the chief judge 20-042, 20-043, 20-78, and 20-80 as well as the California and Los Angeles emergency orders.

As is most relevant to the Court's determination, on August 6th of 2020 -- and I'm quoting -- "In order to protect the public health and in order to reduce the size of public gatherings and reduce unnecessary travel, the Court

1    entered General Order 20-09 which closed all courthouses in the

2    Central District until further notice due to the recent surge

3    in Coronavirus cases.  In General Order 20-09, the Court

4    suspended all jury trials in civil and criminal cases until

5    further notice."

6              With respect to the suspension of criminal jury

7    trials, the full court made the following findings in paragraph

8    6A of the general order -- and I'm quoting -- "The Center for

9    Disease Control and Prevention has warned that in coming months

10   most of the U.S. population will be exposed to this virus.  The

11   Covid-19 rates of infection, hospitalization, and deaths have

12   significantly increased in the Central District in the last

13   30 days such that holding jury trials substantially increases

14   the chances of transmitting the Coronavirus.  The Court

15   concludes that conducting jury trials would also likely place

16   prospective jurors, defendants, attorneys, and court personnel

17   at unnecessary risk.  Therefore, the Court finds that

18   suspending criminal jury trials in the Central District of

19   California because of the increase in reported Covid-19

20   infections, hospitalizations, and deaths serves the ends of

21   justice and outweigh the interests of the public and the

22   defendants in a speedy trial."  And that is the end of the

23   quote from paragraph 6A.

24             Although General Order 20-09 addresses

25   district-wide health concerns, this Court must still make

1  on-the-record findings that justify its finding in this case

2  that the ends of justice served by the granting of such

3  continuance outweigh the best interests of the public and the

4  defendant in a speedy trial.

5           In this case, the Court finds that conducting a

6  jury trial in this case on August 25th would likely place

7  prospective jurors, the defendant, attorneys and court

8  personnel at unnecessary risk.  When the Court last checked,

9  which was on August 10th, Los Angeles County, for example, had

10  a cumulative total of over 210,000 Covid-19 cases.  The 14-day

11  rolling average is approximately 2,477 new cases per day which

12  is up approximately 19.7 from the two weeks prior.  The 14-day

13  rolling average for deaths is 44 deaths per day which is up

14  over 14 percent from the two weeks prior.

15           Moreover, in light of General Order 20-09, it is

16  impossible, even if the Court were to conclude it was

17  appropriate, for the Court to select and empanel a jury on the

18  current scheduled trial date of August 25th.  Indeed, the jury

19  summons that were issued in anticipation of the phase three

20  reopening in August were vacated.  No new jury summons have

21  gone out and will not go out until the Court makes a

22  determination that it is safe to empanel a jury.  As such,

23  there will be no pool from which the Court could select a jury

24  on August 25th, 2020.

25           And even if the Court somehow could issue jury

summons to prospective jurors, which it cannot, it is unlikely that the Court could even obtain or maintain an adequate number of jurors given the danger to those prospective jurors' health and the inability of a significant number of those jurors to obtain childcare given the closure of the public schools in Los Angeles and as demonstrated by the responses that the Court received to the jury summons that had gone out that are now -- that have now been vacated.

Moreover, in addition to the public health concerns cited by General Order 20-09, an ends-of-justice continuance is particularly appropriate in this case because the trial involves a large number of witnesses.  The Government estimates that it will call approximately two dozen witnesses in its case in chief and a significant number of those witnesses must travel, thus putting themselves and others at risk if they come to court at this stage of the pandemic.

More specifically, the Government intends to call several expert witnesses to testify about the alleged counterfeit products at issue in this case, and four of those witnesses are located in either Northern California or in other states and would have to travel to Los Angeles for trial.  The Government also intends to call lay victim witnesses who purchased the counterfeit products from the defendant and his co-conspirators.  Some of those witnesses are located on the East Coast and would also have to travel by air to testify at

1    trial.

2          Based upon the defendant's opposition -- and the

3    Court recognizes that Judge Burns in the Southern District

4    has -- is in the process of conducting a short two-day --

5    two-to-three-day civil jury trial this week in the Southern

6    District of California.  The Court, however, finds the

7    circumstances of San Diego County and the Southern District of

8    California are dramatically different from the dangerous

9    conditions currently present in Los Angeles County and other

10   regions served by the Central District.  In the last seven

11   days, the Los Angeles County had approximately 166 cases per

12   100,000 in population whereas San Diego had about half that

13   many.

14          As to Judge Carter and his announced intention, I

15   have no information other than what Mr. Josephs just indicated,

16   but I find it highly doubtful that Judge Carter is intending to

17   violate the general order issued by the Court, but that remains

18   to be seen.

19          The Court recognizes that the defendant has been

20   detained pending trial and is extremely sympathetic to

21   defendant's interest in a speedy trial.  For that reason, the

22   Court intends to give this matter priority, and this matter

23   will be the first criminal trial to be tried as soon as the

24   Court resumes jury trials.

25          Moreover, this is not a case where the defendant

has invoked his speedy trial rights from the outset of the
case.  Rather, counsel, after his client had already been
ordered detained, requested a trial date of October 13, 2020,
just two weeks before the Government's current proposed trial
date.  And because the Court would not approve such a long
continuance, the defendant ultimately agreed to continue the
trial date from February 11th to August 25th of 2020.

Finally, the Court has also considered whether
Covid-19 is present in the facility where the defendant is
detained and, if so, whether the defendant belongs to a
population that is particularly susceptible to the virus.
Defendant is approximately 29 years old, and there is no
evidence that he presents a heightened risk for serious
complications from Covid-19.

Moreover, the MDC in Los Angeles has, to date,
managed the pandemic extremely well.  According to the BOP
website, which I checked on August 11th of 2020, there are
currently no inmates with an active Covid-19 infection and two
staff members.  There have been four inmates and four staff
members who have recovered.  No inmate and no staff members
have fortunately died as a result of the virus.

The Court does not take its decision lightly in
weighing defendant's and the public's strong interest in a
speedy trial.  However, after carefully weighing all of the
factors, the Court finds that the ends of justice served by the

1    granting of a continuance outweigh the best interests of the

2    public and the defendant in a speedy trial.

3              That concludes the ruling.  I think it's

4    appropriate to defer talking about the trial date until we talk

5    about the -- and I rule on the Government's request for

6    continuance of the various pretrial dates.

7              Mr. Josephs, what's your view on that?

8              MR. JOSEPHS:  Well, Your Honor, our view is that

9    nothing about --

10             THE COURT:  Only the view with respect to why

11   wait and talk about a trial date, not about the pretrial

12   deadline extension.

13             MR. JOSEPHS:  Well, Your Honor, I guess that's

14   fine with us although I do think that the trial date issue in

15   some respects depends on what the Court is going to do with the

16   pretrial deadlines.  I'm fine with that, Your Honor.  We can

17   talk about the pretrial deadline issue.

18             THE COURT:  Okay.  Then I will turn to the second

19   part of the ex parte application.  In the Government's ex parte

20   application, the Government also seeks an extension of the

21   various pretrial deadlines based on any new trial date.

22   Specifically, the Government seeks an extension of deadlines

23   for the translations that it seeks to introduce in trial which

24   deadline expired on July 30th of 2020; a supplemental or

25   amended pretrial exhibit list, which deadline was on August 3rd

1  of 2020; the joint pretrial exhibit stipulation, the deadline

2  of which is today; the Government's pretrial witness list, the

3  deadline is this Friday; and the defendant's response sometime

4  early next week; the motion in limine deadline which passed on

5  August 10th of 2020; the various other pretrial deadlines

6  specified in the Court's Criminal Trial Order including the

7  pretrial and jury instructions which is calculated and the

8  deadlines are set based upon the current trial date of

9  August 25th.

10              THE INTERPRETER:  Your Honor, I'm so sorry.  This

11  is the Mandarin interpreter.  We need to switch interpreter

12  right now.

13              THE COURT:  Okay.

14              THE INTERPRETER:  Give us three seconds.  Okay.

15              THE COURT:  Take your time.

16              THE INTERPRETER:  Okay.  Thank you.

17              THE INTERPRETER:  Good morning, Your Honor.  This

18  is the second interpreter Sunny Johnston.

19              THE COURT:  All right.  We're prepared to

20  proceed.

21              I don't intend -- I can tell you at the outset,

22  how the Government addresses this issue, I don't intend to

23  continue any of the pretrial dates.  I believe the Government

24  has disingenuously claimed that, in the intervening months

25  between the current pretrial deadlines and any new trial date,

1  both the Government and defense's understanding of the evidence

2  is likely to change which could significantly alter the

3  presentation of the evidence at trial and thus, for example,

4  the exhibits that are presented.

5  I just disagree, and I also disagree with the way

6  that the Government has handled the discovery in this case.

7  The Government at the status conference in January, January 16

8  of 2020, represented to the Court in response to my question

9  after we were talking about the status of discovery that it was

10  close to being prepared for trial.  I don't see any reason why

11  this case cannot be prepared based upon the current deadlines

12  so that, as jury trials resume, this case can immediately go

13  forward.

14  As I mentioned in my ruling on the speedy trial,

15  the defendant is detained, and I intend to give priority to

16  this case, and it's going to be the first of the many cases

17  that will go to trial.  This has been my practice in terms of

18  preparing cases for trial in both civil and criminal cases.  We

19  had hoped that phase three would permit us to try cases at the

20  end of August, but unfortunately that's changed.

21  The problem I have with the Government's approach

22  to this case -- did we lose somebody?

23  THE INTERPRETER:  One second.  The defendant's

24  screen disappeared, so he's calling staff to help him.

25  THE COURT:  Okay.  Can the defendant hear the

```
1   Court?   Is the interpreter there?

2                 THE INTERPRETER:  Yes, I can.

3                 THE COURT:  Are you in communication with the

4   defendant?

5                 THE INTERPRETER:  Yes, Your Honor.  He's waiting

6   for someone to help him.

7                 THE COURT:  Well, what does that mean?  Can he

8   hear what you are saying without the video?

9                 THE DEFENDANT:  Yes, I can.

10                 THE COURT:  Mr. Josephs, do you have any

11   objection to proceeding as long as the defendant can hear the

12   proceedings rather than --

13                 MR. JOSEPHS:  No, Your Honor.  I think she just

14   needs to mute her phone.  But, no, Your Honor.

15                 THE COURT:  All right.  So if the interpreter

16   will put her phone on mute, and then we can proceed.

17                 Let me ask the interpreter, if there is any point

18   in time where -- let me just explain to the interpreter the

19   defendant's counsel has agreed that we can proceed with the

20   hearing so long as the defendant can hear the proceedings, and

21   it is not necessary that his -- that he -- that he can see the

22   proceedings, just hear.  So if at any point in time -- I ask

23   the interpreter -- the defendant can no longer hear the

24   proceedings or the interpreter can no longer hear the

25   proceedings, please interrupt me.
```

1                     Does the interpreter understand that?

2                     THE INTERPRETER:  Yes, Your Honor, I do.

3                     THE COURT:  Okay.  Thank you very much.

4                     I actually don't know where I was.  I have a

5     fundamental -- first of all, I'm not going to continue these

6     pretrial deadlines.  And as I indicated, I had a fundamental

7     problem with the Government's approach to these -- to the

8     discovery and these deadlines.  Instead of just simply

9     complying with the deadlines set by the Court, the Government

10    in its various filings raised the specter or the issue,

11    especially in the -- in connection with the pretrial exhibit

12    list that it was -- it provided the exhibits to Mr. Josephs,

13    but then in an accompanying e-mail took the position that they

14    were somehow reserving some rights which was totally

15    inappropriate.  It then was in an e-mail of August 3rd of 2020

16    when the Government produces its exhibit list that they

17    reserved the right to supplement the list and will move to

18    continue the date.

19                     Then that generated a request for a status

20    conference with respect to the exhibits by Mr. Josephs, and

21    then the Government opposing that indicated that it would not

22    seek to add any trial exhibits, and I issued an order that the

23    Government would not be allowed to add any trial exhibits

24    without a showing of good cause.

25                     In addition, it appears that the Government has

1  been in some fashion lying in wait for the -- what it believed

2  to be a continuance of the trial.  I suspect that one of the

3  issues was the Government's failure to produce all of the

4  translations that were supposed to be produced by July 30th of

5  2020.  And the Government admits in its reply brief in

6  connection with the ex parte application that -- it's not the

7  reply brief but in their ex parte application that they did not

8  produce those translations.

9          A more fundamental problem I have is that the

10  Government, if it was going to seek to extend these dates or if

11  the -- for example, the July 30th date was not going to be --

12  there was some reason that they couldn't comply with that date,

13  it certainly could have sought leave from the Court.  The

14  Government prosecutor sent an e-mail to Shannon on July 27th

15  indicating his understanding that the Executive Committee voted

16  on new criteria for a tiered reopening and cancelling existing

17  jury summons and that the full court was going to vote on that

18  matter.  How the Government was privy to that information is

19  beyond me, but in any event, it is set forth in that -- in the

20  e-mail.  The Government indicated that it would move the

21  ex parte and hope to resolve the numerous pretrial deadlines in

22  the next few weeks.  That was on July 27th.  Shannon, the

23  courtroom deputy, responded on July 28th the Government should

24  go ahead and file its ex parte application.

25          The ex parte application was not filed until

1   August 6th of 2020.  So in the meantime, it appears that the --

2   not appears but the Government has conceded that the

3   July 30th, 2020, date for the translations was not met, and now

4   under the guise of a continuance of the August 25th trial date,

5   they seek a revival of a deadline that has already expired.

6          So I just have a fundamental problem with the

7   Government's approach.  This reference to being frozen in trial

8   strategy and trial strategies and witnesses change, I just

9   don't see that.  This is a relatively simple case.  The

10  defendant is -- has been in large part simply charged with the

11  sales of counterfeit batteries, and of course we have the money

12  laundering charge.  The case hasn't changed any from the date

13  it was investigated through the many hearings that we have had,

14  and I don't know why the Government continues to advance this

15  theme that trial strategy may change.  Obviously trial strategy

16  may change as we get closer to trial, but there is no reason

17  why the Government could not comply with the various --

18  unequivocally comply with the various deadlines set by the

19  Court.

20         Obviously if there is some issue that comes up,

21  the remedy is to seek an ex parte application directed to that

22  specific issue rather than simply hoping that, when the

23  Court -- if the Court issued a general order continuing the

24  trial, that somehow these dates were going to magically be

25  modified.

```
 1              The purpose of sending out the amended Criminal
 2   Trial Order in setting these dates is to pretry the case and --
 3              (Video dropped.)
 4              THE COURT:  -- to pretry the case in order to
 5   eliminate as many issues so that the trial can proceed without
 6   having to -- the interpreter knows that if she can't hear me --
 7   can the interpreter still hear me?
 8              THE INTERPRETER:  Yes, Your Honor.  I can hear
 9   you just fine, but I do not see anyone.  I just see myself like
10   everybody.
11              THE COURT:  Right.  But we have agreed that the
12   video is not the most -- we are going to proceed without video
13   as long as everybody can hear me and hear each other.  We are
14   going to proceed that way.
15              So, again, I want to remind the interpreter that,
16   if you cannot hear the Court or any counsel, to please
17   interrupt the proceedings so we can figure out how to
18   reestablish the contact.  Is that okay with the interpreter?
19              THE INTERPRETER:  Yes, Your Honor.  I understand.
20              THE COURT:  Okay.  So obviously what I intend to
21   do is to resolve as many issues as possible.  And even in this
22   case, as we approached an August 25th deadline and it appeared
23   that the trial date would be continued, in my view, there is
24   absolutely no reason why counsel can't continue to comply with
25   these deadlines so we can eliminate, to the extent possible,
```

certain of the issues that will make the trial go more

smoothly.

As I indicated, I don't want to be redundant.  I

just simply don't understand the Government, if it is

complying -- on the one hand, the Government says it is

complying with the deadlines and has produced all the pretrial

exhibits and on the other hand in an e-mail says it is

reserving its rights.  There is no reservation of rights.  You

either comply -- if in the future an issue comes up, obviously

on both sides, the defendant and the Government, that requires

an additional exhibit, certainly the removal of exhibits

doesn't present that much of a problem.  But if there is a new

exhibit, the Government and the defense can come into court on

an ex parte application and make a -- the required showing, and

then I can make a ruling.  But why the Government continues to

on the one hand say we complied and on the other hand say that

we reserve our rights has been an absolute mystery to me.

So whoever wants to address that issue, I will

hear from you.

MS. DEGTYAREVA:  Yes, Your Honor.  This is

Victoria Degtyareva.  Ms. Choe and I also lost video, but we

can hear what is going on.  We just can't see anything.  And we

are fine proceeding in that manner.

With regard to the Court's comments, I think

perhaps we were at fault I think in our communications and our

1   comment with regard to reservations of rights was aimed at our

2   biggest concern --

3            THE COURT:  Let me stop you here.  Get closer to

4   whatever you are speaking into because your voice is not clear.

5   And slow down for the interpreter.

6            MS. DEGTYAREVA:  Is this better?

7            THE COURT:  That is much better.

8            MS. DEGTYAREVA:  Okay.

9            THE COURT:  So you were talking about how the

10  Government was --

11           MS. DEGTYAREVA:  On our end, I think we could

12  have made more clear in communications why we wanted to reserve

13  some rights with regard to the exhibits.  Our biggest concern

14  and the biggest motivating factor in filing the ex parte

15  application regarding the pretrial deadlines is that we believe

16  it is likely that many -- not many but at least some number of

17  the witnesses may change depending on Covid concerns and the

18  situation whenever the new trial date occurs.  So we have one

19  potential -- we would have one potential witness who is not for

20  Covid who is abroad, and that witness was not able to travel

21  for an August 25th trial date.  It is impossible to say right

22  now when that witness would be able to travel or if that

23  witness would be able to travel for our new date.

24           Similarly, we have several victim witnesses who

25  are out of -- so in the current exhibit list we provided, we

1  included exhibits related to the two victims who told us they

2  were comfortable traveling.  There were other victims who said

3  they were not comfortable, and we did not want to put them in a

4  position of issuing a subpoena and forcing them to risk their

5  health and travel.  So we decided not to include them.

6          THE COURT:  So what does that have to do with

7  simply providing a pretrial exhibit stipulation which includes

8  all of the exhibits that, whether the witness could be there or

9  not be there, the Government intended to rely on.  Then the

10  defense has those exhibits.  To the extent that the two victims

11  don't feel comfortable traveling and you have to remove those

12  exhibits, that is one thing.  But at least the defense then

13  knows that those exhibits are there and there is a potential

14  that those exhibits may be offered by the Government.

15          I still don't understand this reservation issue.

16  It's the same in every case where I issue an exhibit

17  stipulation.  The work is done on the exhibits.  And then as we

18  get closer to trial, if stipulations, for example, are entered

19  into, certain of the exhibits fall off the exhibit list.  But

20  reserving at this point in time smacks to me -- and I know that

21  Mr. Josephs raised this in his request for a status

22  conference -- that somehow the Government has exhibits that are

23  going to be sprung on the defense at a later point in time.

24          That is what you create by this nonsense of

25  frozen trial strategy, reserving exhibits, reserving issues.

1    The Government should just simply be forthright, produce

2    everything, comply with the Court's deadlines.  To the extent

3    that there are issues that arise with the exhibits or the

4    witnesses at a later point in time, the Government knows how to

5    file an ex parte application or a motion to present to the

6    Court whatever issues have arisen.  And then just simply

7    when -- your co-counsel writes to Shannon saying, oh, we

8    understand the Court is going to continue the trial because it

9    is for X, Y, and Z, we intend to file an ex parte application,

10   the defendant opposes it, then Shannon writes back and says, go

11   ahead and file it.  You don't file it.  Instead, you let the --

12   what really drives this I think is the deadline for the

13   translations which the Government let go by on July 30th.

14            MS. DEGTYAREVA:  Your Honor, with regard to the

15   translations, we did receive from the translation service

16   additional translations which we will produce to the defense

17   pursuant to our discovery obligations.  However -- and I

18   understand the Court will not let us introduce new translations

19   past the deadline.  But even if the Court were to let us, we

20   actually would not seek to introduce any translations.

21            THE COURT:  Your voice is -- your voice is not

22   clear.  So you are going to have to get closer.

23            MS. DEGTYAREVA:  One moment.  Let me see if I can

24   fix this.  Is that better?

25            THE COURT:  Go ahead.  Give it a try.

1           MS. DEGTYAREVA:  Okay.  So with regard to the

2    translations, there will be -- we will produce additional

3    translations to the defense pursuant to our discovery

4    obligations.  However, even if the Court were to allow us to

5    use new translations -- and I understand the Court will not

6    allow us to do so -- there are no translations that we would

7    have intended to use at trial.  So the translations really are

8    not at issue for us.  In other words, even if all the pretrial

9    deadlines were continued, we would not seek to add any

10   additional translations.

11          THE COURT:  So if the pretrial -- if the

12   July 30th date had been extended, how many additional

13   translations would the Government have been seeking to use at

14   trial?

15          MS. DEGTYAREVA:  None, Your Honor.  We --

16          THE COURT:  Then, again, I just don't understand

17   your approach to the discovery in this case.

18          MS. DEGTYAREVA:  Your Honor, we did receive

19   additional translations which, again, we will produce.  But

20   none of those translations are ones that we would seek to

21   introduce at trial even if the deadline had not passed.  So our

22   main concern is the potential that witnesses would change.  In

23   the exhibit list that we provided -- and maybe this was not the

24   way that the Court would have wanted us to do it.  But in the

25   exhibit list we provided, we included only those exhibits that

1    we intended to introduce should trial go forward on

2    August 25th.  So we included the witnesses that indicated that

3    they were able to travel for an August 25th trial date.

4            At this point we don't know if trial is continued

5    to October or to March as defense is requesting.  We simply

6    don't know which of those victim witnesses would be able to

7    travel.

8            THE COURT:  So you list them all, you list all of

9    the exhibits, and you put an asterisk that may or may not

10   testify, may or may not be offered based upon availability

11   during -- due to the Covid-19 virus.  Then everybody knows what

12   is out there.  It's done by the deadline.  Mr. Josephs knows

13   that, okay, we have two, three, four victims, two of which may

14   or may not testify.  We have these exhibits.  I need to look at

15   these exhibits and figure out what they are in the event that

16   the victims are able to testify.

17           MS. DEGTYAREVA:  Your Honor, we didn't take that

18   approach because we were certain that for an August 25th trial

19   date, apart from the two victims we listed, no other victim

20   would testify.  So for that trial date, we were certain that --

21   we didn't feel it was appropriate to include additional

22   exhibits that we knew we would not introduce on August 25th.

23           THE COURT:  All right.  As I indicated, it is not

24   my intention to continue any of the pretrial dates.

25           MS. DEGTYAREVA:  Your Honor, for clarification,

1    if it does turn out that the -- some of the victim witnesses or

2    the expert who is located abroad, if they had to change for

3    Covid-related reasons or if they have life reasons that prevent

4    them from being able to travel or let others travel, may we

5    file an ex parte application to seek to establish good cause to

6    change exhibits or witnesses based on those types of travel

7    restrictions or health concern related changes?

8              THE COURT:  Well, are you talking about the

9    Toshiba employees based in Japan?

10             MS. DEGTYAREVA:  The Toshiba employee as well as

11   certain victims who are located out of state who told us for

12   August 25th they did not feel comfortable traveling but who may

13   be able to travel for a later date.

14             THE COURT:  You can go ahead and file an ex parte

15   application, and I will take a look at it.  But I'm going to

16   tell you you will have an uphill battle with respect to

17   demonstrating good cause as a result of the way you approached

18   this.  To me it is just -- common sense dictates that you put

19   everybody on the list, put all the exhibits on the list, and as

20   I said, use asterisks to indicate may or may not be -- may or

21   may not be called depending upon the circumstances.  Then

22   everything is out there.  Mr. Josephs knows exactly what he's

23   dealing with, and from his standpoint, more and more of the

24   witnesses won't be available.

25             Now you're in a situation where you have to

 1   demonstrate good cause, and obviously there's going to be an

 2   opposition to those ex parte applications.  But the Government

 3   can file whatever it wants to be -- whatever it wants to file

 4   and raise whatever issues it wants to raise, and I will rule on

 5   those issues.

 6          So I don't intend to change, and I will go

 7   through these deadlines because there are some deadlines that I

 8   think are appropriately changed based upon the new trial date.

 9   But I don't intend to change any of -- the translation deadline

10   which, as I indicated, we discussed expired on July 30th, the

11   Government's pretrial exhibit list which expired on

12   August 3rd, the motions in limine August 10th.  And I take it

13   the Government, since it didn't file any motions in limine,

14   doesn't have any motions in limine it intended to file.

15          MS. DEGTYAREVA:  That's right, Your Honor.  The

16   Government does not intend to file or didn't intend to file any

17   motions in limine.

18          THE COURT:  Okay.  And the joint pretrial exhibit

19   stipulation which is due today I'm not going to change.  The

20   Government's witness list is due on August 14th.  There will be

21   no change.  The 404(b) evidence requirement under the Criminal

22   Trial Order of August 14th, there is no change.  The

23   defendant's response to the Government's witness list August

24   17th, there is no change.

25          I will change the jury instructions and verdict

 1    form and the trial brief.  I don't see any reason to require

 2    those to be prepared again.  My goal is to eliminate witness

 3    and exhibit and evidentiary issues.  So those two deadlines

 4    will change, and they will now be set for eight days before the

 5    new trial date that we establish today.

 6              The Government's witness list -- I have two dates

 7    for the witness list.  The amended trial order had one, and

 8    there was another one which was closer to trial on August 18th.

 9    That will remain.  The exhibit list for trial of August 18th

10    will remain.  The expert offers of proof August 18th will

11    remain.  I don't need any agreed statement of the case until

12    five days before the new trial date.  And the hearing on the

13    motions in limine will not change except for August 21st.

14              Mr. Josephs, I will hear from you, but first let

15    me -- I guess there is an issue that I want to raise with

16    respect to these motions in limine that you filed.

17              On August 10th the defendant filed his Motions in

18    Limine Nos. 1, 2, and 3.  This appears as docket No. 137.

19    However, the defendant failed to comply with the Court's

20    Criminal Trial Order because the defendant filed all of his

21    motions in one document.  The Criminal Trial Order at page 8

22    specifically requires counsel to prepare a separate

23    sequentially-numbered joint motion in limine.  In addition, the

24    defendant, in connection with the motions in limine, violated

25    the Court's order with respect to exhibits that was issued on

1    July 7th, docket No. 115, in which the Court ordered counsel to

2    prepare a table of contents for each document that was attached

3    or referred to an exhibit.

4              So I don't know what happened, Mr. Josephs, but

5    why didn't you comply with the Court's Criminal Trial Order?

6              MR. JOSEPHS:  Your Honor, with respect to the

7    first issue, I thought the way that the Court wanted the joint

8    motion was to have each motion in limine separately -- the

9    defense's position, the Government's position afterwards and

10   those to be sequential in the motion.  I apologize.  I did not

11   understand that the Court wanted a separate pleading for each

12   motion in limine.

13             THE COURT:  A separate sequentially-numbered

14   joint motion.  I don't know how that could be any clearer.

15             MR. JOSEPHS:  Well, we listed it all in a joint

16   motion sequentially numbered in the joint motion.  So,

17   Your Honor --

18             THE COURT:  All that does is mean that I -- when

19   these exhibits come in, I'm going to have a stack of exhibits

20   that are two feet high and the purpose of -- maybe it is not

21   artfully worded, but the purpose of paragraph 8 -- and I have

22   never had anybody file motions in limine in this fashion, both

23   civil and criminal cases.  They're separate freestanding

24   motions with separate freestanding exhibits so I have each of

25   them before me so it makes it easier for the Court to go

1    through the various motions.

2              I'm not going to impose any sanction, but I'm

3    going to tell you or ask you or order you to refile the motions

4    as separate motions on or before August 13th.  Each motion in

5    limine should be on its separate document, should only include

6    the exhibits relevant to that motion in limine, and most

7    importantly, include a table of contents for those exhibits.

8              And I don't know, given the courthouse is closed,

9    how counsel are providing the Court with courtesy copies.  Are

10   you still able to deliver courtesy copies?

11             MR. JOSEPHS:  We are, yes.  We have been

12   FedEx'ing them to the Court.

13             THE COURT:  FedEx but not by hand delivery.

14             MR. JOSEPHS:  Correct.

15             THE COURT:  That is fine.  I just need those

16   because I obviously have to prepare for the hearing.

17             As long as we are talking about the motions in

18   limine, I quickly walked through each of the motions in limine,

19   and I'm certainly not prepared to rule on them or any of them.

20   I would be interested in your view in terms of why consumer

21   complaints are not relevant to show that the defendant was a

22   member of the charged conspiracy and that they go to his

23   knowledge that the batteries that he was selling to customers

24   were not genuine and that they had various defects based upon

25   the returns and the customer complaints.

1          It seems to me that evidence is terribly relevant

2    to establish which I assume is going to be part of a defense in

3    this case.  The defendant didn't have the requisite knowledge

4    or intent.  When you have customers returning batteries, it

5    seems to me that it is highly relevant to whether or not the

6    defendant knew that his -- that that which he was selling were

7    not genuine.

8          MR. JOSEPHS:  Your Honor, there is certainly an

9    issue with whether our client had knowledge of the returns from

10   the consumers.  I think that is a separate issue.  We don't --

11   we don't have an objection overall to consumers testifying.  It

12   is just certain testimony from those consumers.  And if the

13   Government is prepared to put on evidence from experts in terms

14   of the alleged counterfeit nature of the products themselves

15   and to have consumers get up on the stand and testify that this

16   battery was counterfeit for the reasons that the consumers are

17   expected to say, number one, calls for some expert opinion on

18   behalf of the consumers that the Government is going to be

19   offering from other witnesses, and I think it is prejudicial

20   given that there is not a materiality element to the

21   counterfeit charges.

22          So it's -- the main reason for those witnesses is

23   to -- for the Government to establish whether these batteries

24   were, in fact, counterfeit.  And there are other witnesses that

25   will directly address that issue that we have been provided

1    notice on.

2                    THE COURT:  Well, I can't imagine how any of

3    these victims are going to be able to testify -- and let me ask

4    the Government -- that the particular battery that they

5    received was not genuine.  I assume the best the consumer can

6    testify to is it was represented to me to be an X, Y, Z

7    manufactured battery and had a URL label on it and, when I used

8    the battery, it either didn't work or exploded and then I sent

9    it back.  Isn't that the sum total of what these consumers or

10   victims -- alleged victims are going to be able to testify to?

11                   MS. DEGTYAREVA:  Yes, Your Honor.  They can

12   testify to that, and they can also testify that, when they

13   looked at the label on the battery, it was different from, for

14   example, a label or a battery that had come with the original

15   product.  So not that -- they can't testify that it was

16   counterfeit, but they can say they noted differences or

17   inaccuracies on the labels.

18                   THE COURT:  Okay.  All right.  It sounds to me

19   like --

20                   THE INTERPRETER:  Your Honor, the interpreter

21   needs to switch.  Can you just hold for one second?

22                   THE COURT:  Sure.  Take your time.

23                   THE INTERPRETER:  Thank you.

24                   THE INTERPRETER:  Okay, Your Honor.  We can begin

25   now.  Thank you.

1           THE COURT:  All right.  Thank you very much.

2           Motion in Limine No. 2, this seeks to exclude the

3   various notices.  One of the things it seeks to exclude are the

4   notices of seizure.  Again, I don't see how those notices are

5   hearsay.  They are not going to be offered by the Government,

6   as I understand it, to prove the fact of those seizures.  But

7   as in most instances, it's simply to give notice or, more

8   importantly, direct evidence of the defendant's knowledge,

9   again, which I assume is going to be an issue in this case,

10   that the defendant had been advised for years that these

11   shipments contained products that were subject to seizure by

12   the Government.

13           Why isn't that relevant to his knowledge?

14           MR. JOSEPHS:  Your Honor, I do think the hearsay

15   issue is a significant one.  There are cases that we cited in

16   our motion that talk about the notice -- when notice is being

17   offered or when the document is being offered for a notice or a

18   knowledge purpose but that notice or knowledge is entirely

19   dependent upon the truth of the statements in the documents

20   that you can't get around the hearsay issue in the document by

21   just offering it for a purported different reason.

22           So the documents themselves talk about the

23   seizures being because the batteries are allegedly counterfeit.

24   You have a CVP witness that would be on the stand testifying.

25   I think, again, it was because these batteries were

1   counterfeit.  And the truth of that statement is what the

2   knowledge is based on, what the purported notice is based on.

3   So it is still hearsay.

4               THE COURT:  All right.  I don't want to debate

5   it.  I understand your position.  You will have an uphill

6   battle on that.

7               In any event, Motion in Limine No. 3 seeks to

8   exclude trial Exhibits 370 to 382, and these are all the

9   financial documents.  Why would the Government not be able to

10  offer those documents in connection -- there is a money

11  laundering charge in this case.

12              MR. JOSEPHS:  Absolutely, Your Honor.  And there

13  are a multitude of financial documents that the Government is

14  going to offer.  So this is a tiny, tiny subset of the

15  financial documents that appear in the exhibit list.  The

16  documents at issue in the motion talks about overall revenue

17  that was generated by the company and nothing that goes

18  directly to money laundering charges which of course is about

19  specific sales, whether those sales were then -- the proceeds

20  of or represent the proceeds of illegal activity, and then

21  whether those sales were transferred to different accounts that

22  went to China.  Those are the subject of the money laundering

23  charges, and the Government has other exhibits that it will

24  show those transfers.

25              These documents simply show that the company did

1    $24 million in sales overall, "X" number of dollars each year.

2    And I think just the sheer volume is prejudicial and is a 401,

3    403 issue for the jury.

4              THE COURT:  Okay.  I will certainly -- at least

5    now I have a thumbnail of what the arguments are.

6              All right.  So I don't have anything else other

7    than the selection of a trial date.  I don't see -- given the

8    lead time -- Mr. Josephs, let me ask you where did you get the

9    information about what Judge Carter has announced he is going

10   to be doing?

11             MR. JOSEPHS:  Through former colleagues at the

12   Federal Public Defender's Office, Your Honor, that were in

13   Judge Carter's courtroom.

14             THE COURT:  And this is -- go ahead.

15             MR. JOSEPHS:  I understood that Judge Carter had

16   a hearing I believe it was yesterday in which he told the

17   parties that had a trial date set in front of him that he was

18   going to be issuing jury summons despite the general order.

19   That's the only information that I have.

20             I was going to ask the Court obviously, as we are

21   getting into this trial date issue now, whether the Court would

22   inquire as to -- with Judge Carter as to what his plans may be.

23   Obviously we want to stay in this courtroom.  We very much want

24   to stay in this courtroom.  But if there is issues that prevent

25   us from having a trial date that will allow both myself and

```
 1   Ms. Wasserman to try the case, I would at least like to -- if
 2   the Court could ask Judge Carter if there was any possibility
 3   of an earlier date that would allow us both to preside -- to be
 4   involved in the trial that potentially Judge Carter could
 5   preside over the trial.  That is, of course, a last resort,
 6   Your Honor.  We want to stay in this Court.  I just was raising
 7   it because I heard this information yesterday.
 8              THE COURT:  It remains to be seen whether or not
 9   that -- that's going to be possible.  What kind of a case was
10   it?  Do you know?  Civil or criminal?
11              MR. JOSEPHS:  It was a criminal case, Your Honor.
12   I don't know the nature of it.
13              THE COURT:  All right.  Okay.  Well, Judge Carter
14   certainly can do what Judge Carter will do.  I don't know how
15   he intends to accomplish sending out jury summons since the
16   court is not sending out jury summons.  So it will be
17   interesting to see how that unfolds.
18              With respect to a trial date in this case, I
19   don't see, even if we -- if the -- what we have is a -- without
20   going into the internal workings of the court, although it
21   seems like the Government has some kind of inside track, this
22   is a continuing evaluation on a weekly basis with respect to --
23   and I don't know.  There is a -- we continually re-evaluate
24   based upon the science and the numbers what we believe is a
25   potential date that we can resume selecting juries for both
```

1    criminal and civil trials.

2              The lead time that is necessary in order to

3    summons jurors is significant.  It is -- if my memory serves

4    me, it is a minimum of six weeks, and I think it's even more

5    than six weeks given the protocol that we have adopted with

6    respect to sending out a secondary questionnaire to the jurors.

7              So I don't see realistically that we would be in

8    a position -- I think even October -- the end of October is --

9    might be somewhat unrealistic.  I am thinking that it will

10   probably be November before we will be resuming jury trials,

11   but I could be wrong.  But even if we decided, say, within the

12   next couple of weeks to start jury trials, given the lag time

13   and the time necessary to send out summons, I think it's

14   unrealistic to expect that we could try this case before

15   November.

16             So those are my -- those are my observations.  I

17   will hear from you, Mr. Josephs, because I know you have the

18   issues with respect to losing a valued member of your trial

19   team.

20             MR. JOSEPHS:  I do, Your Honor.  And I agree.  I

21   think it is unlikely, given the nature of what we are seeing

22   with the -- with Covid, that October is realistic most likely.

23             So, Your Honor, the issue for us is that we

24   both -- myself and Ms. Wasserman have been involved obviously

25   since the very beginning on representing Mr. Cai.  We have

1  extended a tremendous amount of resources for our law firm in

2  doing so.  And to have a trial without her -- first of all,

3  it's not a one-lawyer case.  The Government has three AUSA's

4  assigned to the case, and I believe in their pretrial exhibit

5  list alone they identify 39 witnesses.  So it's a

6  multiple-lawyered case on our side.  And the lawyer with the --

7  with a significant amount of knowledge about the evidence and

8  the discovery since day one is Ms. Wasserman, and I'm losing

9  her basically the middle of October through early to

10 mid-February.

11             We understand that the Court -- that March is far

12 off, but I believe that it may be the first available given

13 what we are seeing.  So we are asking for March so that Mr. Cai

14 can have the best possible representation that has been

15 available to him so far.  Having another lawyer from my firm

16 get involved in the case now would be an incredible expenditure

17 of resources for my firm and for Mr. Cai because it was not

18 something that was envisioned originally when we accepted

19 representation.  So there is that issue as well.

20             Given that, Your Honor, we would like to have the

21 two trial lawyers that have been representing him all along to

22 be the trial lawyers in this case, and March is the first

23 available date past basically the middle of October for that to

24 take place.

25             THE COURT:  All right.  Well, I certainly don't

```
 1   want to deprive your client of the lawyers that have been
 2   representing him since the onset of the case, so I have no
 3   problem with a March 2021 date.
 4             What is the Government's position?
 5             MS. DEGTYAREVA:  Your Honor, if the defendant
 6   wishes to waive his right to be brought to trial before March,
 7   the Government has no objection to a March date.
 8             THE COURT:  Well, I assume, Mr. Josephs, that is
 9   what you are suggesting.
10             MR. JOSEPHS:  Of course, Your Honor, yes.
11             THE COURT:  All right.  Then what I will ask
12   counsel to do is to prepare a stipulation with an appropriate
13   waiver and select a -- whatever date you select in March, as I
14   said before, I'm committed to try this case.  I will just
15   accept that date so long as it is on a Tuesday to go forward.
16   And whatever else I have on that date, whether it is criminal
17   or civil, I will simply continue it.  It is more important that
18   both counsel agree on a date in March and then submit a
19   stipulation with a proposed order, and then I will sign it.
20             MR. JOSEPHS:  Thank you, Your Honor.
21             THE COURT:  All right.
22             MR. JOSEPHS:  Your Honor, can I ask will the
23   motions in limine hearing be in person, or will we be doing
24   video?
25             THE COURT:  We are going to do video -- the
```

```
 1   problem is -- yes.  We are going to do them by video which is
 2   going to be -- which is going to be potentially painful.  Not
 3   painful, but it's not the way we are all -- we have all done
 4   things all of our lives practicing law.  But these are new and
 5   different times.
 6             All right.  As I indicated, the pretrial -- the
 7   pretrial dates as I set forth on the record will remain the
 8   same.  I will ask counsel to get a stipulation, if not this
 9   week, early next week.
10             Is there anything else from the Government?
11             MS. DEGTYAREVA:  No, Your Honor.  Thank you.
12             THE COURT:  Anything else from the defense?
13             MR. JOSEPHS:  No, Your Honor.  Thank you very
14   much.
15             THE COURT:  All right.  Then we will close the
16   record.  And everybody stay safe.
17             MR. JOSEPHS:  You too, Your Honor.
18             (Proceedings concluded at 10:02 a.m.)
19
20
21
22
23
24
25
```

1          CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5          I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

7    THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

8    PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

9    FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13   THE UNITED STATES.

14

15              DATED THIS  15TH  DAY OF SEPTEMBER, 2020.

16

17

18              /S/ MIRANDA ALGORRI
                _____
19              MIRANDA ALGORRI, CSR NO. 12743, CRR
                FEDERAL OFFICIAL COURT REPORTER
20

21

22

23

24

25