Ashwin J. Ram (SBN 227513)
aram@steptoe.com
Michael A. Keough (SBN 327037)
mkeough@steptoe.com
Nicholas P. Silverman (*pro hac vice*)
nsilverman@steptoe.com
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff,*<br><br>    v.<br><br>RICHARD AYVAZYAN,<br>MARIETTA TERABELIAN,<br>ARTUR AYVAZYAN,<br>TAMARA DADYAN,<br><br>    *Defendants*. | Case No. 20-cr-579 (SVW)<br><br>**DECLARATION OF RICHARD AYVAZYAN IN SUPPORT OF MOTIONS TO SUPPRESS**<br><br>Judge: Hon. Stephen V. Wilson<br>Date: April 5, 2021<br>Time: 11:00 a.m. |

I, Richard Ayvazyan, declare as follows:

1. I am one of the defendants in the above-captioned matter.

2. The events described in this declaration are to the best of my recollection.

3. In October 2020, I traveled from the United States to Turks and Caicos for a vacation with my wife, Marietta Terabelian.

4. We returned from Turks and Caicos to the United States via Miami International Airport on October 19, 2020. Our flight landed in Miami at approximately 3:00 p.m.

5. After our flight landed, my wife and I proceeded to the border checkpoint that all passengers must pass through to enter the United States and handed our passports to Officer One.[1]

6. Soon after we handed our passports to Officer One, Officer Two approached the booth, took our passports from Officer One, and led us to a corridor behind the booths. Officer Two explained to us that we had been randomly selected for a search.

7. We entered what appeared to be a waiting room with Officer Two. At this point, we had been off the plane for approximately thirty minutes.

8. After a few minutes, Officer Three approached and led us into a second, smaller waiting room with posted signs instructing that cell phone use was not allowed. We sat in the waiting room and watched while approximately 20 people entered the room, had their passports processed, and left.

9. After approximately one hour, I approached the counter where passports were being checked and asked another officer, Officer Four, how much longer we would need to wait. Officer Four responded that it all depends and could take twenty more minutes or three hours. I then returned to my seat in the waiting room.

---

[1] I do not know the names of all of the officers I interacted with at the Miami airport, and refer to them as "Officer One," "Officer Two," and so on, unless I was provided with a specific name that I recall here.

1
DECLARATION OF R. AYVAZYAN IN SUPPORT OF MOTIONS TO SUPPRESS

10. After another twenty minutes, we left our seats again and walked back to the entrance of the secondary screening area, where Officer Five was seated in a small room near the entrance checking passports. I asked Officer Five if my passport had been checked, and Officer Five asked me to wait.

11. We returned to our seats. After another ten or fifteen minutes of waiting, another officer, Officer Six, walked past me. We both stood up and told Officer Six that we had been waiting for an hour and a half and asked if there was any more information about our passports.

12. As this was happening, an officer walking past who appeared to be a supervisor, Officer Seven, stopped where we were standing with Officer Six and asked what the problem was. I explained that we had a flight to catch and that no one was telling us anything.

13. My wife and I then told Officer Seven that we wanted an attorney. Officer Seven ignored this request and asked me whether I had a record. I responded that I did, and that I had pled guilty to a charge approximately ten years before. Officer Seven told me that this was probably what the delay was for, and that someone was probably checking that there were no holds on our passports.

14. I asked if this meant that we could get an attorney, and asked how we would contact one if we were not allowed to use our cell phones. I asked if I could call an attorney, and Officer Seven said no. I asked if they could detain us indefinitely without an attorney, and Officer Seven said yes. Officer Seven then told me to relax and take a seat.

15. I returned to my seat in the waiting room. At this point we had been off the plane for two hours.

16. After another thirty minutes, I again approached the counter and spoke to Officer Eight. I asked Officer Eight to check our names and see what was going on. Officer Eight told me that someone was working on our passports. Shortly after this,

Officer Nine came out of a rear hallway area and approached me. Officer Nine introduced himself as Officer Smith and told me to be patient and that he would be with me in ten minutes.

17. Approximately ten minutes later, Officer Smith called my name and reiterated that I had been selected for a random secondary search. He gave me a paper form with biographical questions to answer, along with a pen. Once I had completed the form, Officer Smith reviewed the form with me, and questioned me regarding my name, address, where I was coming from, phone numbers, relatives' names, children's names, social media accounts, employment, bank accounts, whether I was associated with organized crime, and whether I had any prior convictions. He also asked several questions regarding my employment at Inception Ventures and the home that I had recently purchased with my wife. He also asked me whether I lived in this home.

18. Officer Smith then searched the bag that I was carrying. First, he removed my wallet and placed my credit cards that he found inside on the table in front of him. Each of the credit cards belonged to me and was in my name. Officer Smith next removed several phones, and asked who the phones belonged to. I explained that these phones belonged to my business associate and that they had given the phones to me for the trip. Officer Smith requested the passcode for these phones and explained that searching the phones was part of the inspection. I did not provide the passcodes. Officer Smith stated he needed to call a supervisor to get permission to confiscate the phones, and that it might take thirty minutes to one hour for his supervisor to come from the other side of the airport to have me sign a form confirming that the phones had been confiscated. Officer Smith then stated that once I signed this form, I would be on my way.

19. I then returned to the waiting room while my wife was separately interviewed. Shortly thereafter, Officer Smith confiscated my phone.

20. I then approached the counter again and spoke to Officer Ten. I asked if I

could use the desk phone to call my brother and his wife. Officer Ten allowed me to use the phone. I then called my brother and his wife and asked that they call an attorney regarding our detention because we did not have access to our smartphones and therefore could not do so ourselves.

21. After another forty minutes to one hour had passed, Officer Eleven and Officer Twelve approached me. Officer Eleven introduced himself as Ramirez. Officer Ramirez and Officer Twelve next took me to the luggage carousel to retrieve our luggage. Officer Ramirez then asked me if there was anything in my bag he should know about, and I responded no.

22. Officer Ramirez proceeded to search the bag that I had been carrying. Officer Ramirez removed credit cards in the names of Iuliia Zhadko and Viktoria Kauichko. In response to questions from Officer Ramirez, I told him the cards were not stolen and that I had permission from the owners to possess and use them.

23. After the luggage search, Officer Ramirez took me to another room and continued questioning me. Officer Ramirez was very friendly, and told me that he wanted to get me out of there. Officer Ramirez asked about my life, my addresses, my business and business partners, and about my brother, Artur, specifically. Officer Ramirez then asked if he could search the four phones had been previously confiscated by Officer Smith.

24. I again asked for a lawyer and told Officer Ramirez that I wanted to confer with a lawyer before giving him the phone passcodes. Officer Ramirez asked why I needed a lawyer and told me that we were "just talking." Officer Ramirez continued questioning me. When I asked why he needed the codes, Officer Ramirez told me that the cell phone searches were for national security purposes and just to confirm that I was not a terrorist. Officer Ramirez told me that if I called a lawyer, the lawyer would tell me the same thing. Officer Ramirez told me that once they confirmed I was not a terrorist, they would have me out in fifteen to twenty minutes.

25. Understanding that the officers would only be looking for evidence to confirm that I was not involved with terrorism, I gave consent for Officer Ramirez to access the phones in my presence to confirm that I was not a terrorist. I also supplied the passcode to my phone and one of the other phones. After additional questioning, Officer Ramirez returned me to the waiting room.

26. At approximately 11 p.m., Officer Smith took me back to an interview room from the waiting area and began interrogating me again. Over the next several hours, Officer Smith reviewed his initial interview report and asked me several short questions, but spent most of his time on his computer. After approximately forty-five minutes, Officer Smith allowed me to use the desk phone to call my brother. I left a voicemail asking him to see if he could call a lawyer and find out the laws regarding my detention.

27. At approximately 1:45 a.m., my wife and I were arrested and taken to a local jail. I said that we still had not been told what the charges were and again asked for a lawyer. I was told that I could not speak to a lawyer now, but I could do so later in the car. While being taken to the jail, I was told that an Assistant U.S. Attorney working on the case had instructed that I not be allowed to call an attorney.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Tarzana, California on March 8, 2020.

Respectfully submitted,



Richard Ayvazyan