Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

John L. Littrell (SBN 221601)
*jlittrell@bklwlaw.com*
Ryan V. Fraser (SBN 272196)
*rfraser@bklwlaw.com*
**BIENERT KATZMAN LITTRELL
WILLIAMS, LLP**
601 W. 5th Street, Suite 720
Los Angeles, CA 90071
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

*Counsel for Defendant
Marietta Terabelian*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    *Plaintiff,*

    v.

RICHARD AYVAZYAN,
MARIETTA TERABELIAN,
*et al.,*

    *Defendants.*

Case No. 20-cr-579 (SVW)

**JOINT REPLY IN SUPPORT OF
MOTIONS TO SUPPRESS AND
RETURN PROPERTY SEIZED
FROM SUBJECT PREMISES-1**

Judge: Hon. Stephen V. Wilson
Date: April 12, 2021
Time: 11:00 a.m.

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

# TABLE OF CONTENTS

I.  FACTUAL INACCURACIES IN THE OPPOSITION..........................................2

   A.  Dangerous Law Enforcement Misconduct at a Family Home....................3

   B.  Misrepresentations About A Former In-Law's 2009 Conduct ....................4

   C.  Irrelevant Allegations Absent from the Affidavit and Warrant ..................6

II.  THE SEIZED PROPERTY SHOULD BE RETURNED REGARDLESS OF SUPPRESSION (DKT. 146 §§ IV.D, IV.E) ......................................................7

   A.  Physical Property Seized Without Probable Cause Should Be Returned ...............................................................................................7

      1.  The Government Seized Property Without Adducing Probable Cause That the Property Was Traceable to the Alleged Crime ...........................................................................7

      2.  The Government Had the Information Necessary to Provide a More Precise Description of the Alleged Proceeds But Withheld That Information From the Magistrate Judge..............................................................................10

   B.  Digital Device Data Should Be Returned ................................................14

III.  THE SEIZED PROPERTY SHOULD BE SUPPRESSED AND RETURNED BECAUSE THE SEARCH WARRANT LACKED PARTICULARITY ON ITS FACE (DKT. 146 § III.A)......................................15

IV.  THE SEIZED PROPERTY SHOULD BE SUPPRESSED AND RETURNED BECAUSE THE WARRANT WAS FACIALLY OVERBROAD (DKT. 146 § III.B)..........................................................................19

V.  THE SEIZED PROPERTY SHOULD BE SUPPRESSED AND RETURNED BECAUSE THE WARRANT WAS EXECUTED UNREASONABLY (DKT. 146 § III.C)............................................................21

i

1

2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3 **Cases**

4

5 *Aguilar v. Texas*,
      378 U.S. 108 (1964) ................................................................................................. 9

6

7 *Arizona v. Evans*,
      514 U.S. 1 (1995) ..................................................................................................... 6

8 *Corley v. United States*,
      556 U.S. 303 (2009) .............................................................................................. 18

9

10 *Guzman v. City of Chicago*,
      565 F.3d 393 (7th Cir. 2009) ................................................................................... 6

11

12 *Honeycutt v. United States*,
      137 S. Ct. 1626 (2017) ............................................................................................. 7

13

14 *New Prime Inc. v. Oliveira*,
      139 S. Ct. 532 (2019) ............................................................................................. 17

15

16 *In re Solid State Devices, Inc.*,
      130 F.3d 853 (9th Cir. 1997) ................................................................................. 19

17

18 *United States v. $405,089.23 in U.S. Currency*,
      122 F.3d 1285 (9th Cir. 1997) ............................................................................... 13

19

20 *United States v. $59,520.00 in U.S. Currency*,
      No. 14-cv-284, 2015 WL 12732455 (C.D. Cal. July 22, 2015) ............................. 13

21 *United States v. Bershchansky*,
      788 F.3d 102 (2d Cir. 2015) .................................................................................. 17

22

23 *United States v. Bikundi*,
      125 F. Supp. 3d 178 (D.D.C. 2015) ....................................................................... 12

24

25 *United States v. Blakeney*,
      942 F.2d 1001 (6th Cir. 1991) ............................................................................... 10

26

27 *United States v. Bridges*,
      344 F.3d 1010 (9th Cir. 2003) ......................................................................... 15, 18

28

ii

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

*United States v. Cardwell*,
    680 F.2d 75 (9th Cir. 1982) ........................................................................ 1, 10, 11, 20

*United States v. Castillo Flores*,
    No. 16-cr-833 (CAS), 2017 WL 2841698 (C.D. Cal. July 3, 2017) ........................ 6

*United States v. Contents in Account No. 059-644190-69*,
    253 F. Supp. 2d 789 (D. Vt. 2003) ............................................................................ 12

*United States v. Crozier*,
    777 F.2d 1376 (9th Cir. 1985) ................................................................................... 21

*United States v. Duong*,
    156 F. Supp. 2d 564 (E.D. Va. 2001) ................................................................. 19, 20

*United States v. Ford*,
    184 F.3d 566 (6th Cir. 1999) .................................................................................... 20

*United States v. Grandberry*,
    730 F.3d 968 (9th Cir. 2013) .................................................................................... 18

*United States v. Hillyard*,
    677 F.2d 1336 (9th Cir. 1982) .................................................................................. 18

*United States v. Holzman*,
    871 F.2d 1496 (9th Cir. 1989) .................................................................................. 10

*United States v. Johnston*,
    789 F.3d 934 (9th Cir. 2015) .................................................................................... 18

*United States v. Kow*,
    58 F.3d 423 (9th Cir. 1995) ............................................................................ 1, 12, 20

*United States v. Padilla*,
    888 F.2d 642 (9th Cir. 1989) .................................................................................... 13

*United States v. Pembejian*,
    No. 11-cr-72 (C.D. Cal. Sept. 5, 2013) .................................................................. 4, 5

*United States v. Spilotro*,
    800 F.2d 959 (9th Cir. 1986) .............................................................................. 10, 18

*United States v. VanThiel*,
    2016 WL 4803176 (D. Nev. Sept. 13, 2016) ........................................................... 21

REPLY – WARRANTLESS DETENTION AND SEARCHES

*United States v. Weber*,
    923 F.2d 1338 (9th Cir. 1990) ....................................................................... 19

*United States v. Wey*,
    256 F. Supp. 3d 355 (S.D.N.Y. 2017) ........................................... 15, 18, 20

*United States v. Winn*,
    79 F. Supp. 3d 904 (S.D. Ill. 2015)............................................................... 20

*Wheeler v. State*,
    135 A.3d 282 (Del. 2016) .............................................................................. 21

*Wisc. Cent. Ltd. v. United States*,
    138 S. Ct. 2067 (2018) ................................................................................... 18

**Other Authorities**

Fed. R. Crim. P. 16(a)(1)(E) ............................................................................... 14

Fed. R. Crim. P. 41.................................................................................... 7, 14, 18

REPLY – WARRANTLESS DETENTION AND SEARCHES

1

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

The government sought a nearly limitless search warrant at odds with a limited probable cause statement that effectively granted officers complete discretion to seize whatever records or items they found in the personal residence of Ayvazyan, Terabelian, and their children.  The government then took advantage of the overbroad search warrant to seize a wide array of financial records and any cash or jewelry regardless of whether the cash or jewelry was wholly unrelated or traceable to the alleged crime.  Indeed, the government seized jewelry without regard for whether it matched the descriptions of the jewelry purchased in allegedly fraudulent transactions, including a wedding ring and receipts proving that other jewelry had been acquired long before the first allegedly fraudulent loan.  The government seized every dollar it could find, including the family's cash savings, without any regard for the fact that the money was not traceable to withdrawals from the alleged fraudulent loans.

Finally, the government compounded its errors by engaging in serious misconduct risking the lives of private citizens.

The Affidavit failed to adduce probable cause to justify the seizure of the property in question.  Generic classifications (e.g., "any and all cash" or "any and all jewelry") are permitted in a warrant *only* when a more precise description is "not possible." *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982).  That is not the case here.  The government failed to disclose to the magistrate judge that a more precise description was absolutely possible—based on the 70,000 pages of discovery that the government has previously bragged about obtaining and reviewing, *see* Dkt. 152 at 2, 17-18—rendering all the more remarkable the Opposition's tactic of faulting the magistrate judge for "[not] requir[ing] such analysis before finding probable cause authorizing the warrant." Dkt. 188 at 19.  The Ninth Circuit has made clear that the government is not entitled to engage in this sort of willful blindness. *See United States v. Kow*, 58 F.3d 423, 428 n.2 (9th Cir. 1995) (disapproving of the government's attempt

1

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

to "refrain from further investigation …, and yet rely on the lack of specific information to justify the lack of particularity in the warrant").  The government had in its possession the information that would enable a specific, particularized warrant, and it chose to ignore that information in order to facilitate the unconstitutional seizure of any valuable assets it could find.

Section II therefore explains that the property should be returned regardless of whether the government's misconduct amounts to a constitutional violation.  Sections III, IV, and V explain that the property should also be suppressed because both the government's warrant and its execution of that warrant do, in fact, amount to constitutional violations.

## I.   FACTUAL INACCURACIES IN THE OPPOSITION

The Opposition resorts to misrepresentations to justify the government's misconduct.  While a reply brief would ordinarily restrict itself to points of law, the Opposition's attempt to attack Ayvazyan and Terabelian veers from the ordinary into the extraordinary and therefore merits a response.

The Opposition goes to great lengths in a futile attempt to justify the dangerous misconduct committed by law enforcement officers while executing the search warrant at issue.  The Opposition is filled with misrepresentations—several of which are highlighted below—but none looms larger than the baseless contention that law enforcement's misconduct reflected a contemporaneous decision that Ayvazyan, Terabelian, and their children posed a serious risk of danger and should be considered armed and dangerous.  The government did not make this argument when seeking the Warrant and it did not apply for a no-knock or other special procedure.  That is because the contemporaneous documentation contradicts the Opposition's claim that the government considered Ayvazyan and Terabelian to be so dangerous as to justify a military-style raid.  On September 23 and October 26, 2020, the government filed

surveillance requests certifying in writing that Ayvazyan and Terabelian's home was *not* potentially dangerous:

> Is the subject of this request considered armed and dangerous or do the circumstances of the case involve a potentially dangerous environment (high-crime locations, known associates, etc.)? No

Ram Decl. Ex. A (DOJ_PROD_0000152041; DOJ_PROD_0000152446) (highlighting added) (attaching background reports on all relevant parties including the in-law discussed below).[1]

When asked, in real time, if it was concerned about violence, the government said "No." The Opposition's post hoc justifications are just that: after-the-fact excuses for misconduct committed by the government.

### A.    Dangerous Law Enforcement Misconduct at a Family Home

The Opposition does not actually deny that "the Affidavit alleged no threat of violence or resistance and of course, the officers encountered none." Dkt. 146 at 3. Nor does the Opposition deny that the government employed overwhelming, military-style force despite knowing that Ayvazyan and Terabelian would be at home with their three children, sister-in-law, and niece. The Opposition does not deny that the government officers inappropriately held the children at gunpoint for a sustained period of time. *Id.* at 4-5. ███████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████

The Opposition does not deny that officers proceeded to go room to room seizing property based on whether it appeared valuable instead of whether it could be traced to the alleged offenses. Dkt. 146 at 6. The Opposition does not deny that the officers knowingly seized a child's iPhone.[2] The Opposition does not deny that the officers shot

---

[1] Citations to "Ram Decl." refer to the Declaration of Ashwin Ram filed concurrently with this Reply.

[2] The Opposition instead exposes the government's warped interpretation of probable cause that pleading guilty to a no-prison offense a decade ago, in which Ayvazyan's mother wrote a letter,

at and snapped in half the home's security cameras and sawed off the protective gate at the driveway's entrance, causing thousands of dollars of damages. *Id.*

The Opposition instead claims that this misconduct was consistent with executing a search in "a professional manner." Opp'n at 1. It was not.

### B.  Misrepresentations About A Former In-Law's 2009 Conduct

Faced with government misconduct that it cannot deny, the Opposition attempts to dirty up the victims of that misconduct. The Opposition tries to paint a non-violent Tarzana family as violent gang members in an effort to justify the needlessly violent actions of the government. It is important to be clear on this point: neither Ayvazyan nor Terabelian are associates of the Armenian gang referenced a half dozen times throughout the Opposition. The government does not allege that they are associates, and they are not. Instead, the Opposition attacks Ayvazyan and Terabelian through allegations about their former brother-in-law, Artur Pembejian, who was married to Terabelian's sister and served a probation-only sentence in 2013. Even if the Opposition's allegations were accurate, they would apply to Pembejian, not Ayvazyan and Terabelian. The Opposition's allegations, however, are inaccurate.

While it is abnormal to delve into the details of a third party's case, it is necessary here because the Opposition misrepresents Pembejian's case in an effort to smear Ayvazyan and Terabelian. Pembejian pled guilty to delivering a gift antique rifle from an Armenian gang member to a visiting politician from Armenia, discussing the potential purchase of three other firearms that he neither bought nor sold, and discussing police presence at a restaurant, all of which occurred in 2009. Factual Basis, Plea Agreement, *United States v. Pembejian*, No. 11-cr-72, Dkt. 2598 (C.D. Cal. Sept. 5, 2013); Def't's Sent'g Mem. at 2, *Pembejian*, Dkt. 2874 (Jan. 23, 2014). Pembejian's

---

justifies seizing a child's iPhone without any evidence about the phone or the child's involvement in the alleged crime. Opp'n at 19 n.4. The Opposition voluntarily asserts this interpretation of probable cause without any appreciation for the purpose of the Fourth Amendment to prevent general searches of suspects' homes.

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

conduct was sufficient to qualify as an "associate," but the government agreed that he played a "minor role," and that his actions did not merit jail time.  Plea Agreement at 9 (recommending probation only).  Critically, ***the Plea Agreement did not allege that Pembejian was a member of the gang***, and to the contrary, Pembejian averred that "***[h]e [wa]s not a member of the Armenian Power***," Def't's Sent'g Mem. at 2 (emphasis added).  There is no indication that the government contested this fact, and Pembejian thereafter received the minimum term of probation (two years below the government's request) indicating that any such protest was overruled.

The Opposition exaggerates, misstates, and misrepresents Pembejian's conduct in a desperate attempt to justify the use of military-style force during the execution of a search warrant for proceeds of a non-violent crime at a family home.  Even if Pembejian's home were the one being searched, this use of force would have been inappropriate.  Because the home being searched was not Pembejian's—but was in fact a family with zero connection to the 2009 events or any gang—the government's military-style raid was inexcusable misconduct.

The Opposition also spends considerable pages attempting to imply that Ayvazyan owns firearms.  He doesn't.  Ayvazyan owned guns before his 2012 court case, and he thereafter gave them to his brother in compliance with the law.  The Opposition attacks *his brother's* lawful and responsible maintenance of those firearms in a gun safe, but that is irrelevant to the force necessary to execute a search warrant at Ayvazyan's home.  Similarly, the Opposition shows photos of accessory packages found in the trash *at a different home*, but fails to disclose to the Court that Ayvazyan has never lived there as proven by other (undisclosed) photos from the same trash pull,[3] which include ordinary medical prescriptions, food orders, and receipts, all from a family that does not include Ayvazyan.  The accessory packages belonged to that

---

[3] Ram Decl. Ex. B (DOJ_PROD_0000152146; DOJ_PROD_0000003741; DOJ_PROD_0000003742; DOJ_PROD_0000003749)

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

family, not Ayvazyan.  Ayvazyan has never lived at that house and the rest of the trash pull corroborates the fact that the Opposition's argument is a red herring.

The Opposition is desperate to justify the misconduct of the officers who executed the Warrant in this case, but the Opposition's obsession with a non-party's decade-old, probation-only case and guns that were legally transferred between family members to comply with the law is a distraction technique that the Court should ignore. The Opposition allows itself to come untethered from the facts with no apparent concern for the government's own contemporaneous statements that Ayvazyan and Terabelian's home was not potentially dangerous.

## C.    Irrelevant Allegations Absent from the Affidavit and Warrant

To justify the Warrant's lack of particularity and overbreadth, the Opposition repeatedly relies on irrelevant allegations about Terabelian's efforts to avoid seizure of her phone and her family's cash savings.  The Opposition raises this issue at least six times.  *See* Opp'n at 1, 10, 11, 18-19, 19, 20.  The Opposition argues that because Terabelian did not want the government to seize her property, there was "undoubtedly probable cause to seize [that property] pursuant to the search warrant." *Id.* at 18-19 (similarly arguing probable cause to seize Ayvazyan's phone based on later searches of the phone).  The Opposition is wrong.  Setting aside the facts—that anyone would be hesitant to expose their savings to the government mere days after the government detained her for over ten hours, denied her requests for a lawyer, repeatedly interrogated and searched her, arrested her, and exposed her to COVID-19—the law is clear.  "It is axiomatic that hindsight may not be employed in determining whether a prior arrest or search was made upon probable cause." *United States v. Castillo Flores*, No. 16-cr-833 (CAS), 2017 WL 2841698, at *6 (C.D. Cal. July 3, 2017) (rejecting government's post-hoc seizure justification) (quoting *Arizona v. Evans*, 514 U.S. 1, 17 (1995)); *see also Guzman v. City of Chicago*, 565 F.3d 393, 396 (7th Cir. 2009) ("[Courts] do not view probable cause determinations with hindsight.").  Probable

6

1   cause is based on the allegations in the November 3, 2020 Warrant Application, not the

2   allegations in the March 18, 2021 Opposition.

## II.   THE SEIZED PROPERTY SHOULD BE RETURNED REGARDLESS OF SUPPRESSION (DKT. 146 §§ IV.D, IV.E)

The government does not contest that property seized without probable cause—whether it was because the warrant went beyond the scope of probable cause or the executing officers did so—should be returned regardless of whether that violation occurred in good faith or bad faith.  *See* Dkt. 146 § IV.D.  The government should therefore be required to return (A) physical property seized without supporting probable cause, and (B) digital device data for which the review period has expired.

### A.   Physical Property Seized Without Probable Cause Should Be Returned

#### 1.   The Government Seized Property Without Adducing Probable Cause That the Property Was Traceable to the Alleged Crime

Federal Rule of Criminal Procedure 41 and the Fourth Amendment only permit seizing assets upon carrying the burden of proof that those specific assets are evidence, proceeds, or instrumentalities of the alleged crime.  Allegations that an individual committed a crime do not justify a general seizure of that individual's property.  Nor do they justify seizing that individual's valuable property merely because the alleged crime resulted in proceeds absent *probable cause that the valuable property is actually a proceed[4] of the alleged crime.  Put differently, the Fourth Amendment permits seizure of forfeitable assets, but no such seizure may occur with respect to untraced property merely because the government may later wish to pursue substitute assets.  *See Honeycutt v. United States*, 137 S. Ct. 1626, 1633 (2017) (noting that pretrial restraints on forfeitable property require that the government demonstrate that the property at issue has the requisite connection to the alleged crime).

---

[4] In general, Fed. R. Crim. P. 41(c) also permits issuance of a warrant for evidence or instrumentalities.  In this case, however, the government does not argue that any of the seized property at issue was evidence or an instrumentality.  The sole dispute is whether each item is a proceed.

7

The Opposition does not dispute that property must be returned to the extent the Affidavit failed to adduce probable cause—whether that was followed by an overbroad Warrant or by seizure of items beyond the scope of a properly drawn Warrant.  Either way, the lack of probable cause to seize property merits return.  In this case, the government seized the following items without establishing probable cause to believe that they were proceeds of the alleged PPP loan fraud:

- Cash savings of approximately $450,000.
- All jewelry (except the four watches referenced in the Warrant Affidavit):
    - Two Cartier watches seized along with receipts demonstrating that they could not be proceeds of the alleged offense because they were obtained long before March 27, 2020.
    - Terabelian's wedding ring received from Ayvazyan almost a decade ago and bearing the signs of age precluding any reasonable conclusion that it was purchased within the last year.
    - Two rings received by Terabelian in 2007 to commemorate the recent births of the couple's second and third children along with the receipts for the gems in the rings and the replacement ring bands.
    - One yellow-gold Rolex model 18238 watch.
    - One stainless steel Rolex Datejust model 126200 watch with a black dial purchased many years ago by Ayvazyan.
    - One stainless steel Rolex Datejust model 279160 watch with a pink dial purchased years ago by Ayvazyan.
    - One platinum ring.
    - One ring with Ayvazyan's initials that he received as a gift from his uncle upon the birth of his son in 2007.
    - One yellow gold necklace that Terabelian has had since before her marriage to Ayvazyan.
    - One white gold ring, marked 585 DJ, purchased by Ayvazyan in 2018.

8

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

1    • Gold coins dated 1979-1987.[5]

2    *See* Dkt. 146 at 7-9 (listing property with citations to photographs where available).

3    To be clear, establishing probable cause to seize an item and describing that item

4    with particularity are the government's burdens, not Ayvazyan and Terabelian's.

5    Ayvazyan and Terabelian have gone above and beyond by gathering evidence that

6    seized items predated the allegations in the search warrant affidavit.  The Opposition

7    attempts to justify the government's simultaneous seizure of property and *receipts*

8    *proving that the property was not a proceed of the alleged crime* by arguing—without a

9    single specific allegation—that the receipts it seized could be suspect and are not

10   "dispositive of ownership."  Opp'n at 24.  The Opposition fails to disclose to the Court

11   that the government responded to Ayvazyan's motion by contacting the jewelry stores

12   in question, and that *each store verified that the receipts were legitimate*.

13   Setting aside the government's failure to disclose this information to the Court,

14   the Opposition's obsession with being "dispositive of ownership" misses the point.  It is

15   not defendants' obligation to adduce evidence "dispositive[ly]" tracing an item to his

16   ownership; it is the search warrant affiant's obligation to adduce probable cause to

17   believe that an item can be traced from the criminal violation.  It is beyond question

18   that the Affidavit failed in this respect.

19

20

21

22   ---

[5] The Opposition cites to a series of checks including three checks for gold coins (the receipts for which were also subpoenaed by the government), and that although they do not add up to "exactly 60 gold coins" as the government claims, these checks could support a finding of probable cause to seize up to 62 gold coins if they had been cited in the Warrant Affidavit along with reason to believe that the checks were used by Ayvazyan or Terabelian.  Instead, the Affidavit's paragraph about Nazar Terabelian contains no allegation or evidence at all about the disposition of the alleged proceeds.  Dkt. 152 Ex. 11 at 31.  The government cannot now selectively mine discovery for post hoc justifications for the Affidavit it submitted five months ago.  *See Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention.").

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

### 2. The Government Had the Information Necessary to Provide a More Precise Description of the Alleged Proceeds But Withheld That Information From the Magistrate Judge

The Affidavit's generic classifications authorizing seizure of all "currency" and "jewelry" without regard to its relationship to the alleged crime are insufficient under the circumstances.[6]  The Opposition argues that the use of "generic classifications, like 'jewelry'" is permissible "particularly when exact descriptions of the jewelry are not available."  Opp'n at 22 (quoting *United States v. Holzman*, 871 F.2d 1496, 1509 (9th Cir. 1989)).  The Opposition misstates the test.  "Generic classifications in a warrant are acceptable *only* when a more precise description is not possible."  *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982); *accord United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).  Thus, in *Holzman*—the case relied upon by the Opposition—the Ninth Circuit held that "jewelry" was defensible because police "did [not] have time to develop a more exact description" of the jewelry stolen less than twenty-four hours earlier.  871 F.2d at 1509.  In cases where "a more precise description" is possible or available, however, courts have repeatedly rejected generic classifications.  *See, e.g.*, *Spilotro* (holding that an "affidavit mention[ing] only a few stolen diamonds" was insufficient to provide probable cause to search for "gemstones and other items of jewelry" generally); *United States v. Blakeney*, 942 F.2d 1001, 1027 (6th Cir. 1991) ("[W]e conclude that the use of the generic term 'jewelry,' when an inventory of the items taken … was available to the agent applying for the search warrant, rendered this portion of the search warrant overbroad.").

Here, a more precise description was both possible and available.  "One of the crucial factors to be considered is the information available to the government."  *Cardwell*, 680 F.2d at 78.  The government's prior submissions bragged that before applying for these search warrants, the government investigated for months.  Dkt. 152

---

[6] *See* Dkt. 152 Ex. 11 ¶ 1.r (authorizing seizure of any and all "currency in in excess of $1,000, including the first $1,000 if more than $1,000 is seized" and purportedly authorizing seizure of any and all "jewelry").

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

at 2.  During that investigation, "the government served over 200 subpoenas, obtaining information from federal and state agencies, lenders, retail banks, and escrow companies, among others"; "traced the funds and learned that the proceeds had been funneled through various bank accounts" and had been allegedly used by Ayvazyan to purchase several homes.  *Id.*; *accord id.* at 17-18.  The government argued that "[t]he statements of probable cause supporting the search warrant applications" were based on this investigation including the document subpoenas and tracing.  *Id.* at 18.

As to jewelry, the government spent months obtaining retailer records that listed the precise make and model of the watches obtained with alleged proceeds of fraud. *See, e.g.*, Ram Decl. Ex. C (DOJ_PROD_0000016645) (list of watches allegedly sold to Ayvazyan and other suspects during time in question detailing make, model, and color). The government chose not to utilize that "more exact description" because it wanted discretion to seize jewelry that (except for four watches whose seizure is not contested, *see* Dkt. 146 at 8 n.9) does not match the description of assets acquired with alleged proceeds.

As to cash proceeds, the government subpoenaed *over 70,000 pages of data* from financial institutions[7] including data regarding every single loan in the indictment. Effectively conceding that it found no evidence that the defendants withdrew any substantial amount of cash—much less $450,000—or that anyone else withdrew such money and transferred it to them, the Opposition ignores these 70,000 pages in violation of the Ninth Circuit's emphasis on the "crucial" nature of "the information available to the government" when evaluating whether a generic classification is permissible.  *Cardwell*, 680 F.2d at 78.  Instead, the Opposition appears to argue that the government decided not to analyze the documents it subpoenaed before seeking a

---

[7] Some of these productions appear to be little more than a fishing expedition with no apparent connection to the alleged criminal conduct in this case.  The point, however, is that the government had access to every relevant data point regarding the disposition of any loan it alleged to be fraudulent.

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

search warrant[8] and instead is allowed to rely on a generic classification that some unknown portion of the proceeds had not been "located."  These are proceeds that were deposited into an identified bank account reflected on a bank statement in the government's possession.  The bank statements showed how those proceeds were disposed of, and presumably showed that neither Ayvazyan nor anyone else withdrew $451,000 in cash.[9]  Even the Superseding Indictment returned four months later does not allege probable cause to believe that the seized cash will be subject to forfeiture.  If the bank statements and the government's funds tracing had shown otherwise, the government would have used them.  Because of the nature of the alleged fraud in this case—wholly traceable to identifiable transactions—the government could easily identify the disposition of every single dollar by reviewing the account statement for the account that received any particular loan.[10]  The government chose not to summarize that information and instead sought discretion to seize as many assets as it could find.

The government is not free to turn a blind eye to the account statements in its possession and grant its agents maximum discretion to seize whatever they can find. The Ninth Circuit has expressly disapproved of such tactics, chastising the government's attempt to "refrain from further investigation …, and yet rely on the lack of specific information to justify the lack of particularity in the warrant."  *United States*

---

[8] The government has presumably analyzed the documents it subpoenaed by now and realized that there is no evidence that the $450,000 came from the alleged misconduct.  Otherwise, it would have cited that evidence in the Opposition.

[9] This is not a case where the government alleges that Ayvazyan withdrew any amount of cash.  Even if it did, however, the mere "pooling [of] tainted and untainted funds" does not establish probable cause to seize the combined sum in its entirety.  *United States v. Contents in Account No. 059-644190-69*, 253 F. Supp. 2d 789, 800 (D. Vt. 2003).

[10] Indeed, in at least one other case, the government has been able to trace $7.8 million in cashier's checks and cash deposits to tainted Medicaid payments and satisfied its burden in that manner.  *United States v. Bikundi*, 125 F. Supp. 3d 178, 192 (D.D.C. 2015).  By contrast, the government pointed to no evidence to support an inference that other deposits were traceable to the charged offense and thus failed to establish probable cause.  *See id.* at 193, 195.

12

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

1  *v. Kow*, 58 F.3d 423, 428 n.2 (9th Cir. 1995).  The Opposition claims on three separate

2  occasions that the alleged crime under investigation was "simple and straightforward."

3  Opp'n at 13, 16, 23.  The proposition that it was impossible for the government to

4  analyze bank statements in such a "simple and straightforward" set of transactions is

5  fundamentally unworthy of the Court's consideration.  This is a case where the

6  government was plainly capable of specifying the alleged proceeds of fraud and chose

7  not to do so.

8         The amount of cash savings seized does not mitigate the government's burden.

9  The Ninth Circuit has held that the possession of a similar sum "that had its origins in

10  cash" was "insufficient" to satisfy probable cause that the money came from drug

11  dealing.  *United States v. $405,089.23 in U.S. Currency*, 122 F.3d 1285, 1290 (9th Cir.

12  1997).  "We have held that 'the test requires more than the mere existence of a large

13  amount of cash to establish a connection between that cash and illegal drug

14  transactions; the money must be 'in combination with other persuasive circumstantial

15  evidence.'"  *Id.* (quoting *United States v. Padilla*, 888 F.2d 642, 644 (9th Cir. 1989)).

16  The Ninth Circuit specified that even though the government had produced sufficient

17  evidence to believe that the individuals were involved in drug dealing, the agent's

18  "affidavit lacks … a sufficient connection between the detailed narcotics activity and

19  the particular assets targeted by the Government's forfeiture proceeding."  *Id.* at 1290-

20  91.  Without that nexus, the government could not establish probable cause.  *Id.* at

21  1291; *accord United States v. $59,520.00 in U.S. Currency*, No. 14-cv-284, 2015 WL

22  12732455 (C.D. Cal. July 22, 2015) (finding that the government failed to adduce

23  probable cause to seize cash because "absent some other connection to illegal drug

24  activity, the amount of currency seized and characteristics of the packaging carry little

25  weight in the Court's analysis").  Thus, the court held that with respect to cash where

26  there was no evidence regarding the origin of the funds, "the Government has failed to

27  demonstrate probable cause for the forfeiture of these assets."  *Id.*  The same rationale

28  applies to the instant case in which the government had the ability to demonstrate a

1  nexus if one existed but chose instead to claim authority to seize all cash and jewelry
2  regardless of source.

3      The government seized private citizens' assets without setting out probable cause
4  to believe that those assets were evidence, proceeds, or instrumentalities of the alleged
5  crime.  Those assets should be *returned* whether the warrant authorized that seizure
6  (and thus was overbroad) or failed to authorize it (making the execution unlawful) and
7  regardless of the good or bad faith of the government.

8      **B.    Digital Device Data Should Be Returned**

9      The Search Warrant in this case instructed that "[t]he search team shall complete
10  the search of [digital devices or forensic copies thereof] as soon as is practicable but not
11  to exceed 120 days from [November 5, 2020]."  Warrant Attach. B ¶ 4.a.  That deadline
12  has come and gone.  The Opposition claims that the government obtained an extension,
13  Opp'n at 25, but it did so without providing notice and an opportunity to be heard to the
14  owners of the property as required by Federal Rule of Criminal Procedure 41.  There is
15  no exception to the notice requirement in this case, *cf.* Fed. R. Crim. P. 41(f)(3) (noting
16  that a judge may delay notice "if the delay is authorized by statute"), and the
17  government has therefore violated Rule 41.  As a result, the government should return
18  any digital device data that was not marked as responsive by March 8, 2021.

19      Setting aside the Warrant's March 8, 2021 deadline, the Discovery Order in this
20  case independently merits returning the digital device data that was not marked as
21  responsive by March 15, 2021.  The Court ordered the government to complete its
22  production of discovery—including the data seized from the defendant and data the
23  government intended to rely on in its case-in-chief, Fed. R. Crim. P. 16(a)(1)(E)(ii),
24  (iii)—by March 15, 2021.  Dkt. 105 ("the Government has until March 15, 2021 to
25  produce all outstanding discovery, including documentary and physical evidence it
26  intends to rely on in its case in chief.").  The government's attempt to continue seizing
27  data would undermine the Court's Order.  Even if the Warrant's March 8, 2021

28

14

1    deadline does not apply, the Court should enforce its order and require the government

2    to return any data not marked responsive by March 15, 2021.

3    **III.    THE SEIZED PROPERTY SHOULD BE SUPPRESSED AND**
     **RETURNED BECAUSE THE SEARCH WARRANT LACKED**
4    **PARTICULARITY ON ITS FACE (DKT. 146 § III.A)**

5         In *United States v. Bridges*, the Ninth Circuit held that a warrant that authorized

6    seizure of "almost all of [a business]'s property, papers, and office equipment" and

7    failed to limit that seizure by tying it to particular fraudulent activities was

8    "constitutionally inadequate."  344 F.3d 1010, 1017, 1018 (9th Cir. 2003).  The Ninth

9    Circuit further held that the permeated-with-fraud exception did not apply because the

10   law enforcement agency "did not allege in its [warrant] application that [the business]'s

11   operations were permeated with fraud."  *Id.* at 1018 ("Agent Rodriguez's Affidavit does

12   not make it sufficiently clear that ATC's operations were entirely fraudulent in

13   nature.").  The government does not dispute this holding and does not claim that Agent

14   Palmerton invoked the permeated-with-fraud exception.  Instead, he sought and

15   obtained a warrant for all records related to several businesses without particularizing

16   the records sought in the same manner held unlawful in *Bridges*.

17        But the Court need not rely solely on *Bridges*, because the Warrant in this case

18   went even further.  In addition to authorizing the seizure of all records or items related

19   to the businesses, this Warrant also authorized the seizures of all records or items

20   related to the people alleged to be affiliated with the businesses, *i.e.*, the defendants.  In

21   *United States v. Wey*, the U.S. District Court for the Southern District of New York

22   held a nearly identical search warrant to be unlawful under the particularity prong

23   because it authorized the seizure of items such as "financial records" as long as those

24   records related to any of the "individuals and entities set forth in Exhibit B to the

25   Warrants," which included both Benjamin Wey and his company, NYGG.  256 F.

26   Supp. 3d 355, 386 (S.D.N.Y. 2017).  This was the "circular structure" that the court

27

28

1  found to be unconstitutional: the warrant "authorize[d] seizure from the Wey

2  Apartment of all such materials *pertaining to the Weys themselves*." *Id.*

3      The Opposition spends three pages on *Wey*, but it does not dispute that *Wey* was

4  correctly decided.  Instead, it argues that the warrant in *Wey* is meaningfully distinct

5  from the Warrant in this case.  The implication is clear: if the Warrant in this case is

6  substantially similar to that found unlawful in *Wey*, then it too fails the particularity test

7  and should be suppressed.

8      The Opposition's argument is that this Warrant is distinct from that in *Wey*

9  because it did not "give[] the officers discretion to seize any item related to defendants

10  R. Ayvazyan and Terabelian anywhere in their own home."  Opp'n at 14.  This

11  argument relies on the government's assertion that Ayvazyan and Terabelian are not

12  included in paragraph 1.a[11] of the Warrant either expressly (*id.* at 14-15) or as

13  "affiliated individuals" (*id.* at 15).  This argument is belied by the government's own

14  submissions: the Warrant Affidavit and the Complaint.

15      The relevant portion of the Warrant provides the officers with discretion to seize

16  any and all "[r]ecords or items concerning …**Fiber One Media**, … **Inception Fund**,

17  … **Runyan Tax Services**, … **Timeline Transport**, … or any affiliated … individuals."

18  Dkt. 152 Ex. 11 at 6.  The Affidavit for that Warrant and its incorporated Complaint

19  allege:

20  • Records list "Terabelian's alias 'Viktoria Kauichko' … as the CEO of **Fiber**

21  **One**."  Dkt. 152 Ex. 11 at 41, Aff. ¶ 49.

22

23

---

[11] Both parties agree that the core of the dispute is paragraph 1.a.  It is worth noting, however, that the government's attempt to attack Ayvazyan's interpretation of paragraph 1.i makes no sense.  The government criticizes Ayvazyan's summary of paragraph 1.i because paragraph 1.i does not permit seizure of "financial records" without further qualification.  The problem with that criticism is paragraph 1.i does precisely that: it authorizes the seizure of records or items regarding the creation, alteration, or use of financial records or six other types of records.  To state the obvious, permission to seize "other financial records" and six additional categories of documents includes authorization to seize financial records.  The government's argument to the contrary misrepresents the Warrant's content and is not credible.

16

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

1   • "R. AYVAZYAN represented to CBP officers that he owns a company titled
2     '**Inception Fund**.'"  *Id.* at 16-17, Aff. ¶ 36.
3   • Viktoria Kauchiko "purported to be the CEO and 100% owner of **Runyan Tax**
4     **Services**…."  *Id.* at 69, Compl. ¶ 27.
5   • Iuliia Zhadko "represented that he was the Chief Executive Officer ("CEO") and
6     that he had owned **Timeline Transport** since 2016."  *Id.* at 64, Compl. ¶ 17.
7     Zhadko "appears to be a fake or synthetic[] identity used by Ayvazyan."  *Id.* at
8     65, Compl. ¶ 20.
9   If the alleged CEOs and owners of the listed entities are not "affiliated individuals,"
10  then that begs the question of just who the government believes *would* qualify as an
11  affiliated individual.  The government appears to equate "affiliated individual" with
12  "employee of," Opp'n at 15 (arguing that Ayvazyan and Terabelian were not alleged
13  affiliated individuals because "none of the[] … companies purportedly employed"
14  Terabelian or Ayvazyan), but that strained reading is not drawn from the warrant
15  materials.  To the contrary, the warrant materials allege that most of these companies
16  had no employees at all.  *See, e.g.*, Dkt. 152 Ex. 11 at 65 ("CA EDD was unable to
17  locate any record of Timeline Transport having employees in 2019 or 2020"); *id.* at 69
18  ("no employment records exist for Runyan Tax Services for 2019 and 2020").  The
19  Warrant's plain text says "affiliated … individuals," not employees, and the
20  government's post hoc attempt to rewrite that text is without merit.
21      The Opposition derisively calls this reliance on the Warrant's plain text
22  "absurdist" and "hyper-technical," insisting that a "proper reading" would limit the
23  Warrant to "documents relating to [an affiliated individual']s involvement with the
24  [listed company] as it relates to the specific enumerated crimes."  Opp'n at 15.  The
25  Opposition's argument is flawed in two critical respects.  First, it contradicts the plain
26  language of the Warrant contrary to current jurisprudence.  *United States v.*
27  *Bershchansky*, 788 F.3d 102, 111 (2d Cir. 2015) ("We look directly to the text of the
28  search warrant to determine the permissible scope of an authorized search."); *see New*

*Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) ("It's a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time Congress enacted the statute." (quoting *Wisc. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018))); *United States v. Johnston*, 789 F.3d 934, 942 (9th Cir. 2015) ("To begin, the plain language of the warrant authorized…."); *see also* Dkt. 148 at 17 & n.19 (analyzing plain language of Warrant).  Second, it would read "affiliated … individuals" out of the Warrant altogether; every document related to an affiliated individual's involvement with a listed company would, by definition, relate to the listed company obviating any inquiry into its relation to an individual.  The Opposition's strained interpretation would therefore violate the canon against surplusage.  *See, e.g.*, *United States v. Grandberry*, 730 F.3d 968, 981-82 (9th Cir. 2013) ("[T]he government's proposed reading of Grandberry's [parole] search condition would violate 'one of the most basic interpretive canons, that a statute [or regulation] should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009))).  The ordinary meaning of the Warrant is consistent with modern interpretative jurisprudence and avoids any surplusage problems.  Applying that ordinary meaning, this Warrant is just as unconstitutional as the one suppressed in *Wey*.[12]

---

[12] As in *Wey*, good faith does not apply to a warrant that fails to limit the items to be seized beyond linking the seizure description "to some relationship to the owner/occupant of the premises being searched."  256 F. Supp. 3d at 398; *see Spilotro*, 800 F.2d at 968 (holding that even linking evidence to violation of two statutes is insufficient to demonstrate good faith absent narrower tailoring).  As in *Wey*, the Warrant here may mention the crimes under investigation, but they do not limit the authorized seizures by that mention.  *See* Dkt. 146 at 17 n.19 (explaining that Paragraph 1's reference to the alleged crimes does not limit the paragraphs that follow); Opp'n (not contesting this argument).  The Opposition argues that *Wey* is distinguishable because the Warrant in this case incorporated the Affidavit.  Opp'n at 16.  It did not.  The law requires both that the Affidavit be incorporated *and* physically accompany the Warrant during execution.  *United States v. Hillyard*, 677 F.2d 1336, 1340 (9th Cir. 1982).  Although the Affidavit was purportedly incorporated by reference, it was not attached to the Warrant.  Photographs of the Warrant received on site pursuant to Fed. R. Crim. P. 41(f)(1)(C) are attached as Ram Decl. Ex. D; *see also* Decl. ¶ 5 (noting that when counsel asked for a copy of the

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

## IV.  THE SEIZED PROPERTY SHOULD BE SUPPRESSED AND RETURNED BECAUSE THE WARRANT WAS FACIALLY OVERBROAD (DKT. 146 § III.B)

In addition to "clearly stat[ing] what is sought," search warrants must limit those items based on the underlying "probable cause on which the warrant is based."  *In re Solid State Devices, Inc.*, 130 F.3d 853, 856 (9th Cir. 1997).  Thus, the scope of a search warrant "must be no broader than the probable cause on which it is based."  *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990).  Suspicion of a crime is not supposed to provide law enforcement with a general license to seize a person's valuables.  To the contrary, the Fourth Amendment is intended to prevent "exploratory rummaging" in a suspect's property.  *Id.*

Section II.A above explains how the government failed to confine the Warrant to the purported probable cause on which the Warrant was based and how that failure was particularly unworthy of forgiveness in light of the government's "months-long investigation" involving "more than 200 grand jury subpoenas," "numerous interviews," information from other "federal and state agencies," and "other investigative activities."  Dkt. 152 at 17-18.  The Warrant's failure to tailor its seizure of money and property to the information revealed by that investigation is fatal.  *See supra* § II.A.2.

The Opposition attempts to deflect and obfuscate from the Warrant's failures, but those attempts miss the point entirely.  For example, the Warrant is temporally overbroad because it authorizes the seizure of money and property as purported proceeds, regardless of whether the money and property was obtained before the alleged crime occurred.  Dkt. 146 at 18 (citing among other cases *United States v.*

---

affidavit, agents refused to provide it).  No Affidavit was attached.  *Accord Bridges*, 344 F.3d at 1018 (concluding that warrant was not attached in part because "when Bridges asked Agent Rodriguez to show him the Affidavit on the day of the search, she informed him that, '[he] had no legal right to [see the Affidavit.]'").  Thus, while *Wey* controls regardless of the Affidavit—the Affidavit in this case does not allege probable cause justifying the seizures of property obtained before March 2021—the Opposition misrepresents the lack of attachment of the Affidavit.  The end result is a warrant that was facially invalid and should be suppressed.

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

*Duong*, 156 F. Supp. 2d 564 (E.D. Va. 2001)).  The Opposition attempts to address this temporal overbreadth point in two equally misguided halves.  First, it claims that generic classifications of money and property are permissible when it is impossible to be more specific.  Opp'n at 22.  But as discussed *supra* in § II.A.2 and demonstrated by Ram Decl. Ex. C and the relevant bank statements for each loan-receiving account, it was entirely possible to be more specific.  The government strategically chose not to be more specific, and it should now be bound to the consequences of that decision.

Second, the Opposition discusses the *Wey* and *Duong* cases without addressing the portion of those cases that related to temporal overbreadth.  Opp'n at 23.  The pertinent point is not that the *Duong* affiant used a form search warrant attachment from other cases[13]; that is irrelevant.  Instead, the pertinent point is that *Duong* plainly holds that seized property must be suppressed if it is "unrelated to facts stated in the affidavit" even if the language of the warrant appears to permit that seizure.  156 F. Supp. 2d at 572.  One example provided in *Duong* is records from before the March 1995 – June 1995 time period during which the alleged scheme occurred.  *Id.* at 567-68, 572.  Here, the Warrant authorized seizures beyond the March 2020 – July 2020 dates during which it alleged that criminal activity had occurred, which is why it is temporally overbroad.  This is consistent with the long line of cases that a warrant is overbroad if it permits seizing items without limitation "by relevant dates … available to the police …." *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999) (relying on the Ninth Circuit's *Cardwell* decision); *see also United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (warrant "not sufficiently particular" in part because the "government did not limit the scope of the seizure to a time frame within which the suspected criminal activity took

---

[13] The Opposition curiously defends the Warrant as being distinct from *Duong* and valid based on the number of items seized.  While the application of a Warrant may be evidence either of mistaken suspicions or restrained execution, it has nothing to do with particularity or overbreadth, both of which are facial—not as-applied—challenges to a warrant's validity.  The lack of evidence found at the Ayvazyan home is not relevant to the Warrant's unconstitutionality under both the particularity and overbreadth doctrines.

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

place"); *United States v. Winn*, 79 F. Supp. 3d 904, 920 (S.D. Ill. 2015) (suppressing evidence from warrant due to failure to limit date range to that supported by specific evidence in the complaint); *Wheeler v. State*, 135 A.3d 282, 304 (Del. 2016) ("Federal Courts of Appeals have concluded that warrants lacking temporal constraints, where relevant dates are available to the police, are insufficiently particular.").

The Opposition attempts to direct the Court away from this fatal flaw rather than address it.  That is because in light of the relatively narrow time frame of the Affidavit's allegations, the failure to similarly restrain the Warrant is patently unreasonable and merits suppression.[14]

## V. THE SEIZED PROPERTY SHOULD BE SUPPRESSED AND RETURNED BECAUSE THE WARRANT WAS EXECUTED UNREASONABLY (DKT. 146 § III.C)

The government finds itself in a Catch-22.  The executing officers seized property without probable cause and, in some instances, seized proof that the property could not be supported by probable cause (receipts for watches or other jewelry purchased before the alleged scheme could have begun).  Either the Warrant authorized those seizures and was therefore facially overbroad, or the Warrant did not authorize those seizures and the execution was unreasonable.  The Opposition attempts to call on the frequent government favorite "good faith" to navigate a middle ground, but the facts of this case explain why the Court should reject that attempt.

No reasonable attorney or officer could think that suspicion of a crime justifies the warrant execution in this case.  As discussed, *supra*, the government—after observing in internal documents that the residents posed no threat—treated the Ayvazyan family like second- or third-class citizens.  The government launched an

---

[14] The Opposition argues good faith, but this is a facial overbreadth challenge.  "The Ninth Circuit has also long established that the good faith exception generally may not be invoked to overcome a facially overbroad warrant unless an officer receives 'specific assurance from the magistrate that the overbroad warrant was acceptable.'"  *United States v. VanThiel*, 2016 WL 4803176, at *6 (D. Nev. Sept. 13, 2016) (rejecting good faith argument) (quoting *United States v. Crozier*, 777 F.2d 1376, 1381-82 (9th Cir. 1985)).  No such "specific assurance" occurred in this case, and "[t]he [good faith] exception, therefore, cannot apply."  *Id.* at *8.

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

1   invasion-style execution to the detriment of Ayvazyan's children.  The government
2   assaulted those children and held them at gunpoint for an extended period of time.
3   There is no justification for holding children at the end of a military assault rifle and
4   continuing to do so even after parents have been removed from the scene.  There is
5   likewise no justification for ████████████████████████████████
6   ████████████████████████████████

7       To make matters worse, the government disabled the cameras to avoid being
8   recorded while they did this.  Although the Opposition claims that this was out of fear
9   of local businessman Richard Ayvazyan and nursing caretaker Marietta Terabelian, *it*
10  *continued disabling cameras even after Ayvazyan and Terabelian had been handcuffed*
11  *and placed on the curb*.  The Opposition's claims are false and should not be credited.
12  These warrants were not executed in good faith, and the resulting seizures should be
13  suppressed and returned.
14  //
15  //
16  //
17  //
18  //
19  //
20  //
21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

Dated:   March 29, 2021                    Respectfully submitted,

                                           **STEPTOE & JOHNSON LLP**

                                           */s/ Ashwin J. Ram*
                                           Ashwin J. Ram (SBN 227513)
                                           *aram@steptoe.com*
                                           Michael A. Keough (SBN 327037)
                                           *mkeough@steptoe.com*
                                           Nicholas P. Silverman (*pro hac vice*)
                                           *nsilverman@steptoe.com*
                                           **STEPTOE & JOHNSON LLP**
                                           633 West Fifth Street, Suite 1900
                                           Los Angeles, CA 90071
                                           Telephone: (213) 439-9400
                                           Facsimile: (213) 439-9599

                                           *Counsel for Defendant*
                                           *Richard Ayvazyan*

                                           **BIENERT KATZMAN LITTRELL
                                           WILLIAMS, LLP**

                                           */s/ John L. Littrell*
                                           John L. Littrell (SBN 221601)
                                           *jlittrell@bklwlaw.com*
                                           Ryan V. Fraser (SBN 272196)
                                           *rfraser@bklwlaw.com*
                                           **BIENERT KATZMAN LITTRELL
                                           WILLIAMS, LLP**
                                           601 W. 5th Street, Suite 720
                                           Los Angeles, CA 90071
                                           Telephone: (213) 528-3400
                                           Facsimile: (949) 369-3701

                                           *Counsel for Defendant*
                                           *Marietta Terabelian*

REPLY – MOTIONS TO SUPPRESS AND RETURN PROPERTY

1

## **<u>SIGNATURE ATTESTATION</u>**

2
3
4

Pursuant to Local Rule 5-4.3.4(a)(i), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28