Ashwin J. Ram (SBN 227513)
aram@steptoe.com
Michael A. Keough (SBN 327037)
mkeough@steptoe.com
Nicholas P. Silverman (*pro hac vice*)
nsilverman@steptoe.com
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>RICHARD AYVAZYAN, *et al.*,<br><br>*Defendants.* | Case No. 20-cr-579 (SVW)<br><br>**DEFENDANT RICHARD AYVAZYAN'S NOTICE OF MOTION AND MOTION TO ENFORCE THE COURT'S DECEMBER 22, 2020 DISCOVERY ORDER**<br><br>Judge: Hon. Stephen V. Wilson<br>Date: May 3, 2021<br>Time: 11:00 a.m. |

# NOTICE OF MOTION TO ENFORCE THE COURT'S DECEMBER 22, 2020 DISCOVERY ORDER

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Monday, May 3, 2021 or as soon as this counsel may be heard in Courtroom 10A of this Court at 350 W. 1st Street, 10th Floor, Los Angeles, CA 90012, Defendant Richard Ayvazyan ("Ayvazyan"), through undersigned counsel, will move the Court to enforce its December 22, 2020 Discovery Order and (1) dismiss this case due to the government's expressed inability to comply with its document production obligations before trial, or, in the alternative, to (2) exclude (i) documents contained in the government's March 12, 2021 document dump, and (ii) documents produced after the March 15, 2021 discovery cut-off date.

This motion is based on this notice, the accompanying memorandum of points and authorities, any reply that Ayvazyan may make, such other evidence and arguments as may be presented at or prior to the hearing, and all records and files in this action.

Dated:   April 1, 2021

Respectfully submitted,

**STEPTOE & JOHNSON LLP**

*/s/ Ashwin J. Ram*
Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400

NOTICE OF MOTION TO ENFORCE THE COURT'S DECEMBER 22, 2020
DISCOVERY ORDER

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........................................................................... 1

II. STATEMENT OF FACTS ................................................................................... 3

    A. THE DEFENDANTS' REPEATED REQUESTS FOR DISCOVERY .................................................................................................. 3

    B. THE MARCH 12, 2021 DOCUMENT DUMP ............................................ 5

    C. THE GOVERNMENT'S BELATED PRODUCTIONS ............................. 6

III. ARGUMENT ........................................................................................................ 7

    A. THE GOVERNMENT'S INABILITY TO PRODUCE EVIDENCE IN ITS POSSESSION BEFORE TRIAL WARRANTS DISMISSAL OF THE INDICTMENT ......................................................... 7

    B. EVEN IF THE COURT DOES NOT DISMISS THE INDICTMENT, IT SHOULD ENFORCE ITS DISCOVERY ORDER AND EXCLUDE EVIDENCE PRODUCED ON OR AFTER MARCH 12, 2021 ................................................................................. 9

        1. This Court Has Broad Discretion to Enforce Its Discovery Order ............................................................................... 9

        2. The Government Violated the Expeditious Production Order By Dumping the Vast Majority of Its Production at the Eleventh Hour ..................................................... 10

        3. Documents Produced After March 15 Violated This Court's Discovery Order and Should Be Excluded ...................... 12

        4. The Government Cannot Show That Its Production Delay Was Due to Extraordinary Circumstances ......................... 14

IV. CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Maryland*,
    373 U.S. 83 (1963) .................................................................................... 1, 7, 8

*F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*,
    244 F.3d 1128 (9th Cir. 2001) ............................................................................ 9

*Gantt v. Roe*,
    389 F.3d 908 (9th Cir. 2004) ............................................................................. 8

*Giglio v. United States*,
    405 U.S. 150 (1972) ........................................................................................... 8

*U.S. v. W.R. Grace*,
    526 F.3d 499 (9th Cir. 2008) ................................................................... 9, 10, 12

*United States v. Campagnuolo*,
    592 F.2d 852 (5th Cir. 1979) ............................................................................ 11

*United States v. Garcia*,
    730 F. Supp. 2d 1159, 1168 (C.D. Cal. 2010) ................................................. 13

*United States v. Govey*,
    284 F. Supp. 3d 1054 (C.D. Cal. 2018) ............................................................. 8

*United States v. Kearns*,
    5 F.3d 1251 (9th Cir. 1993) ................................................................................ 7

*United States v. Roybal*,
    566 F.2d 1109 (9th Cir. 1977) .......................................................................... 10

*United States v. Schwartz*,
    857 F.2d 655 (9th Cir. 1988) ............................................................................ 10

*United States v. Talbot*,
    51 F.3d 183 (9th Cir. 1995) .............................................................................. 10

*United States v. Wicker*,
    848 F.2d 1059 (10th Cir. 1988) ........................................................................ 11

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Richard Ayvazyan, through undersigned counsel, moves this Court to enforce its December 22, 2020 Discovery Order and (1) dismiss this case due to the government's expressed inability to comply with its document production obligations before trial, or, in the alternative, to (2) exclude (i) documents contained in the government's March 12, 2021 document dump, and (ii) documents produced after the March 15, 2021 discovery cut-off date.

### I. PRELIMINARY STATEMENT

This motion arises out of the government's indictment of a case that it was not prepared to try and consequent failure to comply with its constitutional obligations and the Court's discovery order. Richard Ayvazyan was indicted on November 17, 2020 and immediately demanded that the government turn over discovery to allow him to proceed to trial. After delaying its initial production, the government again waited to drop a last-second production containing nine times as much material as the three months' worth of productions that purported to comply with the Court's order to make every effort to produce discovery well in advance of the March 15 deadline. Put simply, expeditious compliance and "making every effort" does not result in producing 90% of discovery on the Friday night before a Monday deadline. To compound its failures, the government indicated in recent production letters that it intends to continue violating the discovery order in an obvious attempt to delay the trial. Most troubling, the government has admitted that it has no projected date by which it could produce other data from devices seized in November 2020, and consequently discharge its *Brady* obligations, related to a pre-indictment seizure in time for a trial that has already been delayed by four months over the objection of all defendants.

This was the exact result Ayvazyan understood would be avoided when, on December 22, the Court ordered the Government to "expeditiously comply with its discovery obligations" and "produce all outstanding discovery, including documents

and physical evidence it intends to rely on in its case-in-chief" by "March 15, 2021." Dkt. 105 (the "Discovery Order"). The Court cautioned the government that "[a]ny evidence produced after March 15, 2021, *will not be admitted* absent extraordinary circumstances." *Id.* (emphasis added).

In blatant disregard of the Discovery Order, on March 12, 2021, the government dumped over 240,000 pages of documents on Ayvazyan in a production that was more than 9 times larger than all its previous productions combined. Dkt. 234-2. This last-minute production does not comply with the Court's order to "expeditiously" produce documents. On March 18 and 26, the Government produced two additional volumes of discovery. Dkt. 234-3 & 234-4. These productions after the March 15 discovery cut-off clearly violate the Discovery Order.

In the most egregious discovery misconduct to date, the March 26 production was accompanied by a letter stating that the government has not yet processed documents on devices seized in November 2020, and that it *does not know* when it will be able to produce that discovery to Ayvazyan. Dkt. 234-4. The government's failure to process the data on these devices—including devices that will evidence Ayvazyan's lack of participation in key alleged crimes—demonstrates a reckless disregard for Ayvazyan's ability to adequately prepare. Ayvazyan has a constitutional right to proceed to trial quickly, apprised of all evidence relevant to his case. The government's failure to process and produce documents in a timely manner violates that right, and the Court should dismiss the indictment.

Even if the Court does not dismiss the indictment, it should not condone the government's repeated failures to obey the Court's Discovery Order. For this reason, the Court should exclude all documents produced in violation of the Discovery Order, including the March 12, 2021 production, the productions made after March 15, 2021, and any additional productions the government may try to make between now and trial.

## II. STATEMENT OF FACTS

### A. The Defendants' Repeated Requests for Discovery

Ayvazyan was indicted on November 17, 2020 and pled not guilty. Before his indictment, Ayvazyan had repeatedly requested pre-indictment discovery and noted that he particularly needed discovery regarding the pretextual airport stop and his invocation of counsel that went unheeded. Within twenty-four hours of his November 17 indictment, Ayvazyan sent the government a detailed discovery request, including a request that the government identify its trial exhibits and witnesses so that he could prepare for trial. Dkt. 63-3 § III ¶ 13; id. § VII. The government summarily refused or ignored each request.

Almost two weeks and multiple defense requests later, the government replied on December 1. The government offered to begin "rolling" discovery productions—with no mention of an end date—but only if the defendant would agree to the onerous protective order since litigated before and rejected by this Court. Dkt. 63-6 at 2. The government still did not respond to Ayvazyan's request to identify its trial exhibits and witnesses so that he could prepare for trial. *Id*.

On December 11, after the Court denied the government's ex parte application for a protective order and granted in part Ayvazyan's application for discovery and ordered the government to "comply with its discovery obligations," Dkt. 92 ¶ 1, Ayvazyan and his co-defendants wrote to the government to once again request that the government identify its trial exhibits and witnesses. Dec. 11, 2020 Ltr. (Dkt. 96-2). The December 11 letter explained that "the failure to produce discovery continues to impede the defendants' ability to prepare for trial." *Id.* at 1 (noting that 53 days had elapsed since the government filed its complaint citing numerous easy-to-reproduce third-party subpoena productions). On both December 15th and 16th, Ayvazyan repeated his request that the Government produce its trial exhibit list and witness list. Dec. 15 Email from Nicholas Silverman (Dkt. 96-4); Dec. 16 Email from Ashwin Ram (Dkt. 96-5).

1  The government first ignored Ayvazyan, and then stated that it opposed the request but
2  made no counteroffer of a different date certain by which it would finish producing
3  discovery. *Id.*
4       On December 17, 2020, the government moved for a continuance, asking the
5  Court to push the trial date out five months to May 4, 2021. In requesting a lengthy
6  continuance, the government assured the Court that it was "working diligently to
7  produce discovery to defendants in a timely manner," citing the 3,834 pages of
8  discovery it had produced to Defendants. Dkt. 94 at 3. The government noted its
9  intention to produce "additional written discovery materials to defendants by December
10  21, 2021," promising the Court that it would "produce any other discovery materials to
11  which defendants are entitled on a rolling basis *as soon as the materials are processed,*
12  *bates-labeled, and available for production.*" *Id.* (emphasis added). The government's
13  promise to the Court—that it would produce any discovery "as soon as the materials are
14  processed"—proved false.
15       Ayvazyan opposed the continuance on the grounds that the Speedy Trial Act and
16  Sixth Amendment entitled him to a trial on or before February 12, 2020. Dkt. 96 at 2.
17  Ayvazyan requested that the Court impose a discovery cut-off of December 22, arguing
18  that even if the continuance was granted, the government should not be permitted to use
19  the pandemic as an excuse to slow roll the production of evidence it should have
20  already had at the time of the indictment. *Id.* at 9.
21       The government requested permission to file a reply brief, which opposed
22  Ayvazyan's request for a December 22, 2020 discovery cutoff, arguing that "the
23  government has already produced to defendants *a substantial amount* of the relevant
24  evidence relating to the current charges." Dkt. 99-2 at 5 (emphasis added). The
25  government expressed willingness to "meet-and-confer regarding reasonable pretrial
26  deadlines, including deadlines for the exchange of exhibit lists, witness lists, and the
27  filing of pretrial motions" once the Court "selected a new trial date." Dkt. 99-2 at 9.
28

On December 22, 2020, the Court continued the trial date to May 4, 2021, and granted, in part, Ayvazyan's request for a discovery cut-off, directing the government to complete discovery seven weeks before the May 4 trial. Dkt. 103 & 105. The Court ordered the government to "expeditiously comply with its discovery obligations" and "produce all outstanding discovery, including documentary and physical evidence it intends to rely on in its case-in-chief" by March 15, 2021. Dkt. 105. The Order further directed the government to "make every effort to produce outstanding discovery well in advance of this deadline." *Id.* That did not happen.

### B. The March 12, 2021 Document Dump

On the evening of Friday, March 12, 2021, the government sandbagged Ayvazyan with a 242,753-page document dump on the eve of the Court's discovery deadline. *See* March 12, 2021 Ltr. from S. Paetty (Dkt. 234-2). Before this document dump, the government had produced approximately 31,007 pages of discovery as part of its promise to produce discovery "as soon as the materials are processed." The data dump was 782% of the previous productions, or 90% of the government's total productions to Ayvazyan. In the letter accompanying the production, the government claimed that the newly produced documents related to "(i) new charges against the original defendants; and (ii) new defendants." *Id.* The government implied that it planned to continue producing documents, claiming that it was "rolling production of these additional discovery materials out beginning on the same day that the first superseding indictment was unsealed." *Id.* The government claimed that it made this production "[r]ather than wait for the Court to enter a new scheduling order," *id.*, a confusing statement given that the government has not requested an extension of the current schedule and Ayvazyan has made clear that he intends to proceed to trial on May 4, 2021.

The folder structure for the March 12 production showed further evidence of the government's discovery abuses. The March 12 production was actually four

productions, numbered Discovery Production 5 through 8. The folder containing production five was named "210303 – Discovery Production 5," demonstrating that the production folder was created on March 3, nine days before Ayvazyan received it. Discovery production 8 was dated "210310", but was also not produced until March 12. The discovery letter accompanying these four productions did not address why these productions were not produced on a rolling basis instead of strategically releasing them all on Ayvazyan three days before the close of discovery.

### C.   The Government's Belated Productions

Doubling down on their refusal to comply with the Court's discovery schedule, the government has made multiple productions after the March 15, 2021 discovery deadline. Most egregiously, the government intends to continue "rolling" out productions, with no end in sight despite Ayvazyan's quickly approaching trial date.

On March 18, 2021, the government produced Memoranda of Interview ("MOI") for interviews conducted from March 15 to 17, 2021, bank statements from two different banks for time periods well before the close of discovery, a firearm history report dated October 27, 2020, and a correction to a report that was originally written on November 5, 2020.

On March 26, 2021, the government produced a Cellebrite report to Ayvazyan, noting that the report was for "a digital device for which we previously provided a complete forensic copy to counsel for the four original defendants." March 26 Ltr. from S. Paetty (Dkt. 234-4). The government did not explain why the Cellebrite report was only being made available after the close of discovery despite previous defense requests for any available Cellebrite reports.

The government inexplicably announced that it had "several additional items we are working on preparing for production as soon as practicable." The government abandoned all pretext that it intended to produce documents in a timely manner before

1 trial, admitting that it has no projected date by which it could produce information from
2 devices seized during searches in November 2020.

## III. ARGUMENT

This Court has the inherent authority to manage its docket by ordering the completion of discovery in sufficient time to allow a defendant to prepare for trial. The Court did so here, ordering the Government to "expeditiously comply with its discovery obligations" and to complete document production by March 15, 2021 but to "make every effort to produce outstanding discovery well in advance of this deadline." The government disobeyed the Court's order. Instead of making every effort to produce discovery well in advance of March 12, the government produced almost all discovery three days before the cut-off, and has continued to produce documents after the deadline. Worse, the government proposes to continue violating this Court's discovery cut-off, noting that it has no proposed end date for producing discovery despite the looming trial date.

This Court can and should dismiss the indictment given the government's recent confession that it has no idea when it will be able to produce *Brady* material and other discovery from devices seized in November 2020. If the Court does not dismiss the indictment, the Court should prohibit the government from offering the documents produced on March 12, as well as those produced after March 15, 2021, from Ayvazyan's quickly approaching trial.

### A. The Government's Inability to Produce Evidence in Its Possession Before Trial Warrants Dismissal of The Indictment

"A district court may dismiss an indictment for a violation of due process or pursuant to its supervisory powers." *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993). "Dismissal under the court's supervisory powers for prosecutorial misconduct requires (1) flagrant misbehavior and (2) substantial prejudice." *Id.* "One of the principal, sworn duties of a prosecutor is to disclose to a defendant all material,

7
MOTION TO ENFORCE THE COURT'S DECEMBER 22, 2020 DISCOVERY ORDER

favorable evidence, including impeachment evidence, in the Government's possession." *United States v. Govey*, 284 F. Supp. 3d 1054, 1061 (C.D. Cal. 2018) (citing *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972)). The evidence must be disclosed "at a time when the disclosure would be of value to the accused." *Gantt v. Roe*, 389 F.3d 908, 912 (9th Cir. 2004) (granting habeas relief where prosecutors failed to disclose exculpatory evidence in time for use by defendant at trial). "Strict compliance with these discovery obligations is required for a defendant to be afforded due process and to meaningfully exercise his Sixth Amendment right to a fair and speedy trial and his right to call and confront witnesses." *Govey*, 284 F. Supp. 3d at 1061.

The government's "deliberate indifference and reckless disregard for its constitutional discovery obligations" warrants dismissal here, as it did in *United States v. Govey*. *Id.* In *Govey*, the government requested two continuances to enable it to review and produce voluminous discovery materials to defendant. The government led the court to believe that, given the continuances which prejudiced the defendant, "all material evidence would be produced to the defense and in enough time for Defendant finally to make use of it at the trial." *Id.* at 1062. Instead, the government "dumped 75,000 material documents on Defense counsel within the span of a week," shortly before trial. *Id.* The court found that the government's late production "demonstrated blatant indifference and reckless disregard for Defendant's ability to use the materials at trial." *Id.* The Court dismissed the indictment, holding that:

> In short, either proceeding with the trial or continuing it would have violated Defendant's constitutional rights. Again, proceeding with the trial, Defendant is denied his Sixth Amendment right to call and confront the important trial witnesses. Continuing the trial, Defendant is denied his Sixth Amendment right to a speedy trial. The only option the Court has to preserve and protect Defendant's constitutional rights is to dismiss the charges and to do so with prejudice.

*Id.* at 1064.

The same result is required here. The government has demonstrated "blatant indifference and reckless disregard" for Ayvazyan's ability to adequately prepare for trial. The government dumped 90% of its discovery on Ayvazyan three days before the close of discovery, and continues to produce documents—most of which had been available to the government for months—even though the deadline has passed. Moreover, the government has admitted that it has cannot promise that it will produce information from devices seized before indictment in time for any trial at all. The government simply does not know when, if ever, it will be able to produce the evidence it seized before seeking an indictment. The government's failure to properly manage discovery in this case has resulted in its inability to produce evidence in its possession by the May 4 trial date, which has already been continued over the objection of defendants. The government's discovery actions violate Ayvazyan's Sixth Amendment rights by forcing him to either forgo his right to a speedy trial, or to proceed to trial without the ability to use all relevant, exculpatory evidence in the government's possession. To preserve and protect Ayvazyan's constitutional rights, the Court must dismiss the charges and do so with prejudice.

**B.     Even if the Court Does Not Dismiss the Indictment, It Should Enforce Its Discovery Order and Exclude Evidence Produced On or After March 12, 2021**

**1.     This Court Has Broad Discretion to Enforce Its Discovery Order**

A district court may issue and enforce a scheduling order "under Federal Rules of Criminal Procedure 2 and 16, and its more general inherent authority to manage its docket." *U.S. v. W.R. Grace ("Grace II")*, 526 F.3d 499, 509 (9th Cir. 2008) (en banc); *see also F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001) ("All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders."). The Ninth Circuit has repeatedly held that this authority permits district

courts to exclude evidence or testimony disclosed by the government in violation of a discovery order. *See United States v. Roybal*, 566 F.2d 1109, 1110-11 (9th Cir. 1977) (reversing conviction, emphasizing that the provision of late discovery in violation of a specific order resulted in "unfairness and potential prejudice to the defendant" as well as "unfairness and discourtesy to the trial judge"); *United States v. Schwartz*, 857 F.2d 655, 659 (9th Cir. 1988) (reaffirming that "the district court may exclude documents or witnesses" where the government "fail[s] to comply with the court's pretrial or discovery orders."). Such exclusion is not a sanction, but instead "simply enforce[s] the earlier pretrial order requiring the timely identification of trial witnesses and documentary evidence." *Grace II*, 526 F.3d at 514.

No showing of prejudice to the defendant is required; the Court's interest in managing its own proceedings is sufficient. *See United States v. Talbot*, 51 F.3d 183 (9th Cir. 1995); *Grace II*, 526 F.3d at 514-16 (9th Cir. 2008) ("a violation of a 'specific discovery order' has been demonstrated, [and therefore] the district court was free to exclude the government's witness[.]"). In this case involving repeated discovery violations and an indictment sought with the intent to investigate later, exclusion of government evidence is proper.

### 2. The Government Violated the Expeditious Production Order By Dumping the Vast Majority of Its Production at the Eleventh Hour

In December 2020, the government promised this Court it would produce documents as soon as possible. Dkt. 94 at 3. The government also told this Court that it had "already produced to defendants *a substantial amount* of the relevant evidence relating to the current charges." Dkt. 99-2 at 5 (emphasis added).

Even with these assurances, the Court ordered the government to "expeditiously comply with its discovery obligations" and to "make every effort to produce outstanding discovery well in advance" of the March 15 discovery deadline. Dkt. 105. The government failed to do so, violating this Court's order.

The March 12 production demonstrates that the government sat on documents that were ready for production, waiting to drop substantially all of their discovery on Ayvazyan right before the discovery deadline, instead of "mak[ing] every effort to produce" documents "well in advance of [the March 15] deadline" as ordered by the Court. Evidence abounds to support this conclusion.

First, the folder structure of the March 12 production shows that the government was actually dumping four productions at once, prepared and sat on for up to *nine days* before producing them to Ayvazyan:

| Name | Date modified | Type |
|---|---|---|
| 210303 - Discovery Production 5 | 3/15/2021 11:41 AM | File folder |
| 210310 - Discovery Production 8 | 3/15/2021 12:43 PM | File folder |
| Discovery Production 6 | 3/15/2021 10:55 AM | File folder |
| Discovery Production 7 | 3/15/2021 12:26 PM | File folder |

The contents of the four March 12 productions are even more troubling. They included reports for devices seized weeks before indictment and old bank statements apparently produced to the government months earlier, including many documents related to the conspiracy alleged since the October 2020 complaint.

Given the government's blatant disregard for this Court's order to "expeditiously comply with its discovery obligations" and to "make every effort to produce outstanding discovery well in advance" of the March 15 discovery deadline, the Court is well within its right to exclude from trial any document contained in the March 12 document dump. *See, e.g.*, *United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988) ("On occasion the district court may need to suppress evidence that did not comply with discovery orders to maintain the integrity and schedule of the court even though the defendant may not be prejudiced." (citing *United States v. Campagnuolo*, 592 F.2d 852, 858 (5th Cir. 1979) (there is no abuse of discretion when "a district judge

for prophylactic purposes suppresses evidence . . . the government should have disclosed earlier")))

### 3. Documents Produced After March 15 Violated This Court's Discovery Order and Should Be Excluded

The Government's March 18 and March 26 productions violated this Court's December 22, 2021 scheduling order. The purpose of the Court's scheduling order was to allow the defense access to the information it needed to "adequately and timely prepare[]" for trial. *Grace II*, at 509. By continuing to produce documents after the March 15 deadline, the government is preventing Ayvazyan from adequately and timely preparing for trial on May 4, 2021. Most egregiously, the productions contain discovery that the government either acquired, or easily could have acquired, well in advance of March 15 if it had chosen to take this Court's discovery order seriously.

The March 18 production includes at least three documents that have been in the government's possession for almost five months: an October 27, 2020 firearm history report, and two related bank documents for an account at J.P. Morgan Chase from May 2020, one of which states that it was part of a "statement request" dated August 27, 2020. There is no excuse for producing these documents after the discovery deadline.

The remaining documents in the March 18 production could have been produced before the discovery deadline if the government had even attempted to comply with its disclosure obligations. The production contains three MOIs for interviews conducted either right before or right after the March 15 close of discovery. Each interview lasted less than fifteen minutes and concerned the authenticity of property sales receipts for property improperly seized from Ayvazyan's home on November 5, 2020. There is no valid reason that these brief interviews could not have been conducted in the four months between the seizure of the property and the discovery deadline set by this Court, particularly because they relate to receipts seized by the government proving that other government seizures were unconstitutional.

The March 26, 2021 production includes a Cellebrite report for a phone that was seized from Marietta Terabelian on October 19-20, 2020 during the government's pretextual border search. *See* Dkt. 130, 208. Each of these late productions could have been made to Ayvazyan well before the close of discovery. The cumulative effect of these late productions is to prejudice Ayvazyan by overwhelming him with a mountain of new, irrelevant documents in which are hidden long-requested pieces of exculpatory material, interfering with his ability to prepare for trial. And the government intends to continue inflicting such prejudice.

The cover letter to the March 26 production indicates that the government intends to continue making productions, including producing data from devices seized from Ayvazyan's house *on November 5, 2020*. Dkt. 234-4. The government makes no effort to explain why it hasn't processed the data in the four months since seizing the devices. Nor would any such excuses be well-received at this late stage.

Courts in this district frequently exclude documents produced after the close of discovery. For example, in *United States v. Garcia*, the government sought to admit evidence that it had not produced to the defendant by the discovery deadline set by the Court. 730 F. Supp. 2d 1159, 1168 (C.D. Cal. 2010). The government argued that "so long as it complied with Rule 16 of the Federal Rules of Criminal Procedure, 'reliance on the Court's Discovery Order to establish a discovery violation is inapposite.'" *Id.* The Court soundly rejected that argument, finding it "troubling inasmuch as it implies that the government believes it has discretion to determine whether it will comply with court orders." *Id*. After detailing the Ninth Circuit's long history of excluding evidence as a remedy for failure to comply with a discovery order, the Court granted the defendant's motion *in limine* to exclude documents produced after the close of discovery. *Id.* at 1169.

The government's actions here similarly show that it believes "it has discretion to determine whether it will comply with court orders." *Id.* The government has already

made two productions after the close of discovery, and indicated its intent to make additional productions. The Court should not permit this blatant failure to comply with its Order. The Court is well within its right to enforce its discovery order, and exclude all documents produced after March 15, 2021 from trial.

### 4. The Government Cannot Show That Its Production Delay Was Due to Extraordinary Circumstances

In entering its December 22, 2020 Order, this Court cautioned the government that "[a]ny evidence produced after March 15, 2021, will not be admitted absent extraordinary circumstances." Dkt. 105. No extraordinary circumstances are present here.

As detailed above, the documents produced on March 12 and since March 15 are all documents that the government either acquired, or could have acquired, well before the discovery deadline. The government's decision to indict Ayvazyan before it had completed its investigation is not an extraordinary circumstance that justifies ignoring this Court's discovery order. Quite the opposite, the government's "indict first and investigate later" approach here is not authorized by any rule of federal criminal procedure or law, and should not be condoned by this Court. Because no extraordinary circumstances exist, this Court should enforce its discovery Order and exclude all productions made on or after March 12, 2021.

\*   \*   \*

The government's failure to comply with this Court's discovery orders warrants an outright dismissal of the case against all originally charged defendants. Short of such dismissal, the government should be precluded from admitting any discovery disclosed on or after March 12, 2021 in its case-in-chief. Given the government's continuing obligation to turn over exculpatory material to Ayvazyan meaningfully in advance of trial, the Court should direct the government to produce such material as soon as possible to allow Ayvazyan adequate time to prepare for trial. Any additional productions made after the March 15 discovery deadline should similarly be excluded

from the government's case-in-chief. Finally, as a further remedial measure necessary for the government to comply with its discovery obligations, Ayvazyan asks the Court to order the government to identify its exhibits and witnesses promptly, but in no event later than April 15, 2020.

## IV.   CONCLUSION

For the foregoing reasons, Ayvazyan respectfully requests that this Court protect Ayvazyan's constitutional rights by dismissing the indictment, or in the alternative, enforce its December 22, 2020 Discovery Order and exclude (1) the documents produced on March 12, 2021, (2) the documents produced on March 18 and March 26, and (3) any additional documents produced by the government after the March 15, 2021 close of discovery, and order the government to identify its exhibits and witnesses no later than April 15, 2020.

Dated:   April 1, 2021

Respectfully submitted,

**STEPTOE & JOHNSON LLP**

/s/ Ashwin J. Ram
Ashwin J. Ram (SBN 227513)
aram@steptoe.com
Michael A. Keough (SBN 327037)
mkeough@steptoe.com
Nicholas P. Silverman (*pro hac vice*)
nsilverman@steptoe.com
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*