TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
    1100/1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/3819
    Facsimile: (213) 894-6269/0141
    E-mail:   Scott.Paetty@usdoj.gov/Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 320-0539
    Facsimile: (202) 514-0152
E-mail:  Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-579(A)-SVW |
|      Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT RICHARD AYVAZYAN'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, EXCLUDE GOVERNMENT EVIDENCE (ECF 248); DECLARATION OF CHRISTOPHER FENTON; EXHIBITS |
|          v. | |
| RICHARD AYVAZYAN, | |
|   aka "Richard Avazian" and | |
|     "Iuliia Zhadko," | Hearing Date: May 3, 2021 |
| MARIETTA TERABELIAN, | Hearing Time: 11:00 a.m. |
|   aka "Marietta Abelian" and | Location:    Courtroom of the |
|     "Viktoria Kauichko," |           Hon. Stephen V. |
| ARTUR AYVAZYAN, |           Wilson |
|   aka "Arthur Ayvazyan," and | |
| TAMARA DADYAN, | |
| MANUK GRIGORYAN, | |
|   aka "Mike Grigoryan," and | |
|     "Anton Kudiumov," | |
| ARMAN HAYRAPETYAN, | |
| EDVARD PARONYAN, | |

aka "Edvard Paronian" and
     "Edward Paronyan," and
VAHE DADYAN,

          Defendants.

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Scott Paetty and Brian Faerstein, and United States Department of Justice Trial Attorney Christopher Fenton, hereby files its Opposition to defendant Richard Ayvazyan's motion to dismiss, or in the alternative, exclude government evidence (ECF No. 248).

This opposition is based upon the attached memorandum of points and authorities, the Declaration of Christopher Fenton and attached

//

//

2

1  exhibits, the files and records in this case, and such further

2  evidence and argument as the Court may permit.

3  Dated: April 12, 2021          Respectfully submitted,

4                                 TRACY L. WILKISON
                                  Acting United States Attorney

5                                 BRANDON D. FOX

6                                 Assistant United States Attorney
                                  Chief, Criminal Division

7

8              /s/
                                  SCOTT PAETTY
9                                 BRIAN FAERSTEIN
                                  Assistant United States Attorneys
10                                CHRISTOPHER FENTON
                                  Department of Justice Trial Attorney
11
                                  Attorneys for Plaintiff
12                                UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

I.    INTRODUCTION ................................................. 1

II.   STATEMENT OF FACTS ........................................... 3

      A.   The Initial Indictment (November 17, 2020) ............... 3

      B.   The Discovery Order (December 22, 2020) .................. 3

      C.   The First Superseding Indictment (March 9, 2021) ......... 4

      D.   Discovery (Other Than Digital Devices) ................... 4

      E.   Discovery (Digital Devices) .............................. 6

III.  ARGUMENT ..................................................... 8

      A.   Defendant's Motion to Dismiss With Prejudice Is
           Frivolous ................................................ 9

      B.   Defendant's Request to Exclude Timely-Produced
           Discovery Is Frivolous .................................. 12

      C.   Defendant's Request for a Blanket Exclusion of
           Evidence Produced After March 15 Should Be Denied ....... 14

IV.   CONCLUSION .................................................. 17

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

**Federal Cases**

Gantt v. Roe,
    389 F.3d 908 (9th Cir. 2004) .................................. 12

United States v. Govey,
    284 F. Supp. 3d 1054 (C.D. Cal. 2018) ........................ 12

United States v. Kearns,
    5 F.3d 1251 (9th Cir. 1993) ............................... 9, 12

**Federal Statutes**

    18 U.S.C. § 3500 ......................................... 16, 17

## I.    INTRODUCTION

Amidst the global pandemic, the government worked quickly to detect and disrupt COVID-19 related schemes.  In November 2020, shortly before grand juries were suspended due to the virus, the government charged defendant RICHARD AYVAZYAN for his role as one of the leaders of a pandemic fraud that used a national emergency to scam and steal millions of dollars from American families who needed the money to survive.  The indictment, which followed months of investigation, detailed defendant's prolific crime ring.  As soon as the Court entered a protective order, the government began producing discovery relating to the indictment.  After the government began producing discovery, the Court entered a scheduling order directing the government to produce all outstanding discovery by March 15.  The government continued to produce discovery in compliance with the Court's order, including complete forensic copies of dozens of digital devices seized in the course of the investigation.

The government put defendant on notice that he was subject to ongoing investigation and that, if the government obtained a superseding indictment, it would produce additional discovery relating to the new loans and companies that were the subject of the superseding indictment after it was unsealed.  Defendant did not move the Court to request any relief at that time.  Instead, he focused his efforts on committing new crimes aimed at laundering the disaster relief funds he had stolen.

Shortly after grand juries resumed in February 2021, the government superseded to add new loans, new companies, new money laundering charges, and new defendants to the indictment.  Because defendant's crime ring is massive, the new superseding indictment was

1    substantially expanded.  The superseding indictment, returned in

2    March 2021, also included new crimes committed by defendant and his

3    co-conspirator as recently as January and February 2021.

4         Even though the government believed that the Court's scheduling

5    order did not apply to a subsequent superseding indictment, the

6    government also prepared to produce discovery relating to the new

7    charges and new defendants as soon as that superseding indictment was

8    unsealed.  As a result of these efforts, the superseding indictment

9    was unsealed on March 11, 2021 and, the next day on March 12, the

10   government began producing discovery relating to the significantly

11   expanded charges under the superseding indictment.  The government

12   made three large productions of discovery relating to the superseding

13   indictment between March 12 and March 15, 2021.

14        Faced with overwhelming evidence of his guilt and decades in

15   prison, defendant filed a frivolous motion asking the Court to

16   dismiss the new superseding indictment with prejudice or, in the

17   alternative, exclude from evidence discovery that no one seriously

18   disputes was timely produced.  Defendant's motion has no basis in

19   fact or law, and should be denied.

20        Defendant also asks the Court to read a scheduling order

21   relating to discovery to impose a blanket prohibition on the

22   production of any discovery after March 15, 2021 – without regard to

23   the circumstances relating to the evidence or subsequent

24   developments, including the filing of a superseding indictment that

25   exposed more of defendant's fraud ring.  This request is also

26   meritless and should be denied.

27

28

2

II.   **STATEMENT OF FACTS**

    A.   **The Initial Indictment (November 17, 2020)**

On November 17, 2020, defendant was indicted in connection with his role in a Los Angeles-based ring that was using stolen, fake, and synthetic identities to fraudulently apply for at least 35 COVID-19 disaster relief loans.  (ECF 32.)  The detailed indictment traced the flow of stolen money, which defendant used to fund a luxurious lifestyle.  Defendant used some of the millions of dollars he stole to buy and furnish a mansion, which is where he currently resides on home confinement while he awaits trial.

    B.   **The Discovery Order (December 22, 2020)**

Trial was initially scheduled to begin January 4, 2021.  Because COVID-19 continued unabated and a jury could not be seated, the government moved for a continuance on December 17, 2020.  (ECF 94.) Defendant opposed a continuance, insisting on a January 4 jury trial despite the undisputed fact that no jurors would be available on January 4.  (ECF 96.)  Defendant also demanded the government produce all discovery within five days.[1]  (Id. at 9-11.)

The Court granted the government's motion, continued the trial until May 4, 2021, and entered the following order:

> The Government is ORDERED to expeditiously comply with its discovery obligations. Specifically, the Government has until March 15, 2021 to produce all outstanding discovery, including documentary and physical evidence it intends to rely on in its case in chief. The Government should make every effort to produce outstanding discovery well in advance of this deadline. Any evidence produced after March 15, 2021, will not be admitted absent extraordinary circumstances.

---

[1] As described below, the government had already started producing discovery to the defense, promptly upon the Court's entry of a protective order, on December 14, 2020 – four days before the defense made this demand for the completion of discovery.

3

(ECF 103; ECF 105 (the "December 22 Order").)  The Court did not enter any other scheduling orders at that time.

### C.   The First Superseding Indictment (March 9, 2021)

The government continued its investigation into the pandemic fraud ring, which proved to be massive.  The government identified hundreds of additional fraudulent loans and new members potentially associated with the ring.  The government also learned that, while on pretrial release, defendant violated his conditions and committed new crimes.  The government continued its investigation even as grand juries were suspended in this District because of COVID-19 from December 2020 into February 2021.

Shortly after grand juries resumed, the government superseded.[2] (ECF 154.)  The First Superseding Indictment increased the number of fraudulent loans at issue from 35 to over 150, increased the alleged amount of loss from $5.6 million to at least $21.9 million, charged a money laundering conspiracy, and added four defendants.  The First Superseding Indictment also charged defendants R. AYVAZYAN and TAMARA DADYAN with new crimes they committed while on pretrial release through January and February 2021.

### D.   Discovery (Other Than Digital Devices)

Following the initial indictment, the government stood ready to begin producing discovery as soon as the Court entered a protective order.  On Friday, December 11, 2020, the Court entered a protective order.  (ECF 92.)  The next business day, on Monday, December 14, 2020, the government made its first production.  Three days later, on

---

[2] Although the government did not read the December 22 Order to require it to supersede before March 15, the government nevertheless made a good faith effort to do so in order to produce as much discovery as possible relating to the new indictment by March 15.

4

1    December 17, 2020, the government made the physical evidence it had

2    seized available for inspection by defendant.  (Declaration of

3    Christopher Fenton ("Fenton Decl.") ¶ 1, Ex. 1.)

4         From the start, the government was transparent with defendant

5    about the fact that its investigation of him was ongoing.  The

6    government expressly notified defendant in writing that it would

7    produce information relating to the 35 loans and companies that were

8    the subject of the initial indictment, and that it would not produce

9    in discovery information relating to any other loans or companies

10   that were the subject of the ongoing investigation.  (Fenton Decl. ¶¶

11   2-3, Ex. 2 (Jan. 4, 2021 Email); Ex. 3 (Jan. 29, 2021 Email).)  The

12   government also expressly notified defendant that, if the government

13   were to obtain a superseding indictment charging defendant with

14   crimes relating to any additional loans or companies (or otherwise

15   seek to introduce evidence at trial reflecting such information),

16   then the government would produce discovery relating to those

17   additional loans or companies at that time.  (Id.)  Defendant did not

18   seek any relief from this Court at that time or at any subsequent

19   time before he filed the instant motion.

20        Consistent with the government's notice to defendant, from

21   December 14, 2021 through March 5, 2021, the government produced 11

22   volumes of discovery relating to the 35 loans and companies that were

23   the subject of the initial Indictment.  (Fenton Decl. ¶ 4, Ex. 4

24   (compilation of discovery production cover letters, filed under

25   seal).[3])  As soon as the government unsealed the First Superseding

26

27          [3] The government is filing concurrently herewith an ex parte
     application to file this exhibit under seal because it contains
28   voluminous amounts of sensitive personally identifiable information,
                                                    *(footnote cont'd on next page)*

                                       5

1  Indictment on March 11, 2021, the government produced three

2  additional volumes that included discovery relating to the new

3  charges and new defendants that are the subject of the new

4  indictment.  These productions were made on March 12, March 13, and

5  March 15, 2021, respectively.  (Id.)  They were substantially larger

6  than earlier productions because they included information relating

7  to the 150-plus loans, new companies, new money laundering charges,

8  and the four newly-charged defendants that were the subject of the

9  First Superseding Indictment.[4]

10      **E.   Discovery (Digital Devices)**

11      The government lawfully seized over 50 digital devices in

12  connection with its investigation.  To date, the government has

13  produced to defendant a complete forensic copy of any data extracted

14  from all of these digital devices except for three: (i) one laptop

15  that cannot be copied because the hard drive was damaged; and

16  (ii) two Apple devices that cannot be copied because they are

17  encrypted and, despite the best efforts of the FBI's Computer

18  Analysis and Response Team (CART), have not yet been unlocked.

19  (Fenton Decl. ¶ 4, Ex. 4 (Mar. 26, 2021 Letter).)  These three

20  devices belong to defendants ARTUR AYVAZYAN and TAMARA DADYAN.  And

21  counsel for these defendants refused the government's request for (i)

22  consent to conduct further analysis on the damaged hard drive; and

23

24

25  including the names and identifiers of possible victims, the
    defendants, and other subjects, and the sensitive information as it

26  appears in the exhibit would be difficult to redact without rendering
    these documents difficult to comprehend.

27      [4] These productions also included information relating to dozens
    of other loans that were the subject of the ongoing grand jury

28  investigation but were not the basis for crimes charged in the First
    Superseding Indictment.

6

1    (ii) the passwords to expedite the unlocking of the two Apple

2    devices.  (Fenton Decl. ¶ 5, Ex. 5.)[5]

3         The government produced complete forensic copies of the digital

4    devices to defendant so that his counsel had timely access to all of

5    the data on the devices and could conduct its own review.  At the

6    time the government began producing these copies to defendant,

7    counsel asked if the government had generated "reports" (e.g.,

8    Cellebrite) or other reviewable images of the data contained on the

9    devices.  On January 4, 2021, the government explained that, after it

10   produced to defendant a copy of the complete forensic image, it would

11   follow up with a courtesy copy of any such reports or images if the

12   government generated such information: "We have not yet produced any

13   of these types of reports because the government has prioritized

14   providing the defense with complete forensic copies of the devices

15   and therefore has not yet completed its own review of the

16   devices.  We will produce any discoverable reports generated as part

17   of the government's review of the devices once the government's

18   review is complete and such reports are generated."  (Fenton Decl.

19   ¶ 6, Ex. 6.)  Defendant did not seek any relief from this Court at

20   that time or at any time before he filed the instant motion.

21

22

23   ─────────────────

24        [5] In the midst of CART's work on the digital devices in this
     case, there were significant competing demands placed on its time as
25   a result of the need to process and review evidence in connection
     with the insurrection at the U.S. Capitol on January 6, 2021.
26   (Fenton Decl. ¶ 4, Ex. 4 (Mar. 26, 2021 Letter).)  Eight of the
     devices – namely routers, modems, GPS devices, and a cable box – were
27   not processed and reviewed until last week.  Little or no data was
     extracted from these eight digital devices and whatever was obtained
28   was produced in discovery as soon as it was made available by CART.
     (Id. (Apr. 9, 2021 Letter).)

                                      7

When, in February 2021, the government began to produce these reports and images to defendant (as the government had said it would in due course), it explained that it had asked an independent filter team to review the reports and images first for potentially privileged material before they were made available to the prosecution team.[6]  (Fenton Decl. ¶ 4, Ex. 4 (Feb. 26, 2021 Letter).)  Again, defendant did not seek any relief from this Court at that time or at any time before he filed the instant motion.

The government has already produced courtesy copies of reports or images for 7 of the devices.  As explained above, these reports and images contain a subset of the same information found within the complete forensic copies previously produced to defendant.  These reports and images are being generated on a rolling basis as the government filters and reviews the data pursuant to Magistrate Judge Maria A. Audero's orders that require the government to complete its review of these digital devices for responsiveness by July 3, 2021.  See, e.g., Order, In re Search Warrants, No. 2:20-mj-05286 (ECF 5-1).

## III. ARGUMENT

Defendant asks the Court to dismiss the First Superseding Indictment with prejudice or, in the alternative, exclude from evidence discovery that no one seriously disputes was timely produced.  Defendant's motion has no basis in fact or law, and should be denied.

---

[6] The government is using a filter team to review certain of the defendants' digital devices seized in this case both in an abundance of caution and in recognition of defendant's claim following the execution of a search warrant at his residence that he possessed potentially privileged information.  Because some of the potentially privileged communications may be in Armenian, the independent filter team must use an Armenian speaker to conduct the review.

1    Defendant also asks the Court to read its December 22, 2020
2    Order to impose a blanket prohibition on the production of any
3    discovery after March 15, 2021 – without regard to the circumstances
4    relating to the evidence or subsequent developments, including the
5    filing of a superseding indictment that exposed more of defendant's
6    fraud ring.  This request also is meritless and should be denied.

7    **A.   Defendant's Motion to Dismiss With Prejudice Is Frivolous**

8    "Dismissal under the court's supervisory powers for
9    prosecutorial misconduct requires (1) flagrant misbehavior and
10   (2) substantial prejudice." United States v. Kearns, 5 F.3d 1251,
11   1253-54 (9th Cir. 1993).  "To warrant dismissal on due process
12   grounds, government conduct must be so grossly shocking and
13   outrageous as to violate the universal sense of justice." Id.
14   Defendant fails to make either requisite showing, let alone both.

15   Here, defendant asks the Court to sanction the government by
16   dismissing the First Superseding Indictment with prejudice because
17   the government did not produce discovery relating to that new
18   superseding indictment until after it was unsealed on March 12.  (ECF
19   248 at 5-6, 9.)  The government, however, was not obligated to
20   produce discovery relating to the First Superseding Indictment before
21   it was unsealed.  The December 22 Order applied only to the initial
22   indictment; it did not purport to set any deadlines with respect to
23   any subsequently obtained superseding indictment.

24   Even if the December 22 Order did apply to the First Superseding
25   Indictment (which it does not), it did not require contemporaneous
26   disclosure of the information gathered by the government as part of
27   an ongoing grand jury investigation related to yet uncharged conduct.
28   The government is required by Federal Rule of Criminal Procedure 6(e)

9

to keep matters before the grand jury secret.  Fed. R. Crim. P.
6(e)(2)(B)(vi).  And it would be impossible to effectively
investigate crimes if the government were required to disclose each
step to the target, particularly where, like here, the defendant was
committing new crimes at the same time that the government was
conducting its investigation.  The government also was investigating
crimes committed by the four newly-charged defendants and obtained an
order sealing the First Superseding Indictment, pursuant to Rule
6(e)(4), in order to be able to effectuate the arrests of those
defendants.  Fed. R. Crim. P. 6(e)(4).  Contemporaneous production of
the underlying discovery relating to those new defendants would have
potentially jeopardized the government's ongoing investigation
against those additional targets as well.

Defendant also cannot show "flagrant misbehavior" or
"substantial prejudice" because, as early as January 4, 2021,
defendant was on notice that the government's investigation was
ongoing and that the government would not produce discovery relating
to additional loans or companies until after it obtained a
superseding indictment.  (Fenton Decl. ¶ 2-3, Ex. 2, 3.)  It was not
misconduct for the government to continue its investigation of
defendant's massive fraud ring or defendant's new crimes; indeed it
was the government's duty to do so.  But if defendant disagreed, he
had the opportunity to seek relief from the Court (including to seek
clarification about whether the December 22 Order applied to
superseding indictments and/or required contemporaneous disclosure),
and he did not.

Defendant also asks the Court to dismiss the First Superseding
Indictment with prejudice because the government produced a "242,753-

10

page document dump" on March 12 and that this figure constituted "90% of the government total productions." (ECF 248 at 5-6, 9.) Defendant misstates the facts.

First, over half of the March 12 production (126,001 pages out of 242,753) had previously been produced to defendant on December 21, 2020 and was being reproduced to defendant a second time in a new format as a courtesy at defendant's request. (Fenton Decl. ¶ 4, Ex. 4 (Dec. 21, 2020 Letter; Mar. 26, 2021 Letter).) Defendant's omission of this key fact has the practical effect of misleading the Court to believe this significant portion of the production was new to defendant when it was not.

Second, as explained above, a substantial amount of the balance of information produced on March 12 related to the new loans, companies, money laundering charges, and defendants included for the first time in the new superseding indictment that had only been unsealed the day before.

Third, defendant's claim that the March 12 production constituted "90%" of the discovery is not true. In addition to the inaccuracies described above, defendant excluded from his calculation volumes of discovery produced to him, including the complete forensic copy of dozens of digital devices for which there is no page count.

Defendant also asks the Court to dismiss the First Superseding Indictment with prejudice because the government is continuing to work to extract data from three digital devices it seized and does not yet know whether or when it will be able to do so. (ECF 248 at 1-2, 9 (citing Mar. 26, 2021 Letter).) Defendant again misstates the facts. The government has not been able to copy these three devices because one is damaged and the other two are encrypted. Such is the

11

result of misfortune, not misconduct.  Moreover, the owners of the three devices - defendants ARTUR AYVAZYAN and TAMARA DADYAN – have refused the government's request to provide consent to conduct a further analysis of the damaged device and the passwords to unlock the two encrypted devices. (Fenton Decl. ¶ 5, Ex. 5.)

Defendant's motion is also without any basis in law.  Defendant relies almost exclusively on United States v. Govey, 284 F. Supp. 3d 1054 (C.D. Cal. 2018).  In that case, the government failed to timely produce impeachment evidence for key law enforcement witnesses even after multiple hearings and admonitions from the court.  The government sought multiple continuances solely to produce discovery and still failed to meet its obligations.  On the eve of trial, the government asked the court to review 20,000-plus documents to determine whether they were privileged and should be withheld.  And defendant was substantially prejudiced because he was in custody. None of the facts underlying the court's decision in Govey are present here.[7]

**B.   Defendant's Request to Exclude Timely-Produced Discovery Is Frivolous**

As an alternative to dismissal, defendant insists the Court exclude timely-produced evidence because it was produced on March 12

---

[7] The only other cases defendant cites do not support the relief he requests here.  In Kearns, the Ninth Circuit held that dismissal was not proper where the government's failure to produce material impeachment evidence until after trial was not the result of "flagrant misbehavior."  5 F.3d at 1254.  In Gantt v. Roe, the Ninth Circuit remanded a case where the government failed to disclose exculpatory information learned on the last day of trial in a relatively weak murder case.  389 F.3d 908, 913 (9th Cir. 2004). Here, the case has not yet gone to trial and the evidence against defendant is overwhelming.

and not before.  (ECF 248 at 9-11.)  In support of his argument, defendant purports to find evidence of misconduct in metadata the government produced to him.  (Id. at 11.)  According to defendant, the metadata proves that the government "sat" on discovery for up to nine days before producing it.  (Id.)  Defendant claims this nine-day delay violated the December 22 Order even though the discovery was nevertheless produced in advance of the March 15 deadline.

Defendant does not articulate a violation of the December 22 Order.  To the extent the discovery related to the initial indictment, the government had until March 15 to produce it absent extraordinary circumstances.  Defendant fails to explain why an alleged delay of a matter of days warrants the severe sanction of exclusion when the discovery was nevertheless produced in advance of the March 15 deadline, months before trial.

To the extent the discovery related to the First Superseding Indictment (which a substantial portion of it did), the December 22 Order does not apply and even if it did, the government complied with the order by producing the discovery in advance of March 15.  The government did not "sit" on this discovery; rather, it prepared to produce it as soon as the new superseding indictment was unsealed on March 11, which it did on March 12.[8]

Importantly, defendant does not claim that the purported nine-day delay prejudiced him in any way, nor can he.  Instead, he argues that the Court should impose a severe exclusionary sanction in spite

---

[8] Defendant's allegations of misconduct are further undermined by the fact that, during this supposed nine-day window, the government continued to produce discovery (which is another fact defendant omitted to tell the Court).  (Fenton Decl. ¶ 4, Ex. 4 (Mar. 5, 2021 Letter).)

13

of the fact that he was not actually harmed.  (ECF 248 at 10.)  Even if prejudice is not required, its total absence is nevertheless a relevant consideration to the Court and strongly weighs against excluding from evidence discovery that was timely produced before the March 15 deadline – and relates in substantial part to the new charges and defendants.  As a practical matter, excluding such evidence would be tantamount to dismissal of the First Superseding Indictment.  None of the authority defendant relies on actually supports such a drastic and disproportionate outcome.

Excluding evidence under the circumstances here and in the manner defendant requests would have the unintended consequence of effectively immunizing charged defendants from prosecution for new crimes where the government does not provide contemporaneous discovery regarding those ongoing offenses.  Defendant's request for the setting of such a dangerous precedent should be denied.

**C.   Defendant's Request for a Blanket Exclusion of Evidence Produced After March 15 Should Be Denied**

Defendant argues that the Court should read its December 22 Order to impose a blanket exclusion of all evidence produced after March 15 without regard for the circumstances surrounding its production.  However, the December 22 Order expressly stated that exclusion would only apply in the absence of extraordinary circumstances.  (ECF 105.)  Moreover, the December 22 Order did not contemplate (and therefore should not apply to) discovery relating to a subsequent superseding indictment.  The government should be permitted to continue its investigation, especially given that defendant has continued to commit new crimes while on bond.

14

1    Defendant argues that the Court should exclude a Cellebrite

2  report for an iPhone belonging to a co-defendant because it is "new"

3  evidence and its "late" disclosure prejudices him.  (ECF 248 at 13.)

4  This is simply not true.  The evidence is not "new" and the

5  disclosure is not "late" because the government previously produced a

6  complete forensic image of the iPhone to defendant on December 21,

7  2020.  As explained above, the government prioritized the production

8  of these complete forensic images to defendant, before filtering the

9  data for potentially privileged information and generating Cellebrite

10  reports for its own use.  The government put defendant on notice of

11  its approach as early as January 4 and defendant did not seek relief

12  from the Court.  (Fenton Decl. ¶ 6, Ex. 6.)  The Court therefore

13  should not exclude from evidence this or any other Cellebrite report

14  produced after March 15 when the government has already timely

15  produced to defendant a complete forensic image of the relevant

16  digital device.[9]

17    Defendant also takes issue with the government's production of

18  memoranda of interviews that took place on or after March 15.  (ECF

19  248 at 12.)  However, the December 22 Order does not prohibit the

20  government from continuing to interview witnesses in preparation for

21  trial or in connection with its ongoing investigation.  Such a

22  prohibition would be unprecedented and without justification.  The

23

24    ───────────────

    [9] Defendant questions why the government could not have produced
25  these reports earlier.  The prosecution team asked an independent
    filter team to review this report (and other reports) for potentially
26  privileged information before it was released to the prosecution
    team.  Because some of the communications were in Armenian, the
27  independent filter team has to use a particular Armenian-speaking
    employee to conduct the filter review.  These steps were taken to
28  protect the defendants' interests, in response to concerns raised by
    counsel for defendant R. AYVAZYAN.  The

                                    15

1   government anticipates that it will continue to prepare and produce
2   memoranda of interviews whenever appropriate between now and trial.[10]

3       Defendant also objects to the production of bank statements
4   requested in August 2020.  (ECF 248 at 12.)  However, these bank
5   statements were not produced to the government until after March 15,
6   which is why the government produced them when it did.  As a general
7   matter, the government has served hundreds of subpoenas in connection
8   with its investigation of the large-scale fraud ring in this case and
9   continues to receive returns after March 15, 2021.  The government
10  anticipates producing these returns reasonably soon after it receives
11  them, which the government believes is appropriate as it understands
12  the December 22 Order.  The receipt of subpoena returns after the
13  March 15 cut-off certainly fits within the "extraordinary
14  circumstances" exception – the government cannot produce information
15  until it is in the government's possession.

16      Defendant points out that CART had not yet processed a small
17  number of digital devices, namely routers, modems, GPS devices and a
18  cable box, and falsely states that the government made "no effort" to
19  explain why these devices had not yet been processed.  (ECF 248 at
20  13.)  Contrary to defendant's false claim, the government had
21  previously informed him that there were extraordinary circumstances
22  that prompted the delay: the need to process and review evidence in
23  connection with the January 6 insurrection at the U.S. Capitol placed
24  significant competing demands on CART's time and resources.  (Fenton
25  Decl. ¶ 4, Ex. 4 (Mar. 26, 2021 Letter).)  In any event, as explained

26
27      [10] The government intends to produce reports of such potential
    witness statements in due course even though discovery of such
28  materials is not required until the witness "has testified on direct
    examination in the trial of the case."  18 U.S.C. § 3500(a).

16

above, CART completed processing these remaining devices last week.
Little or no data was extracted from these eight digital devices and
whatever was obtained has been produced in discovery.  (Id. (Apr. 9,
2021 Letter).)

**IV.  CONCLUSION**

    For the foregoing reasons, the government respectfully requests
that this Court deny defendant RICHARD AYVAZYAN's motion.