Ashwin J. Ram (SBN 227513)
aram@steptoe.com
Michael A. Keough (SBN 327037)
mkeough@steptoe.com
Nicholas P. Silverman (*pro hac vice*)
nsilverman@steptoe.com
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>RICHARD AYVAZYAN, *et al.*,<br><br>*Defendants.* | Case No. 20-cr-579 (SVW)<br><br>**REPLY IN SUPPORT OF DEFENDANT RICHARD AYVAZYAN'S MOTION TO ENFORCE THE COURT'S DECEMBER 22, 2020 DISCOVERY ORDER**<br><br>Judge: Hon. Stephen V. Wilson<br>Date: May 3, 2021<br>Time: 11:00 a.m |

## **TABLE OF CONTENTS**

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

I.    THE COURT SHOULD DISMISS THE INDICTMENT ..................................... 2

II.   THE COURT SHOULD ENFORCE ITS DISCOVERY ORDER AND EXCLUDE EVIDENCE PRODUCED ON OR AFTER MARCH 12, 2021 ........ 5

III.  THE COURT SHOULD ENFORCE ITS DISCOVERY ORDER AND EXCLUDE EVIDENCE PRODUCED AFTER THE MARCH 15, 2021 DISCOVERY CUTOFF ................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Grand Jury Subpoenas Issued May 3, 1994 (Nash)*,
    858 F. Supp. 132 (D. Ariz. 1994) ............................................................................... 4

*United States v. Barrera-Moreno*,
    951 F.2d 1089 (9th Cir. 1991) .................................................................................. 2

*United States v. Kearns*,
    5 F.3d 1251 (9th Cir. 1993) ...................................................................................... 2

REPLY – MOTION TO ENFORCE DISCOVERY ORDER

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

The government does not dispute that this Court has the inherent authority to manage its docket by setting a deadline for the close of discovery. The government also does not dispute that it produced the majority of its documents on March 12, 2021, and that it has continued to produce documents after the March 15, 2021 deadline set by the Court. The government does not dispute that the core of its belated productions—both on the eve of the March 15 deadline and in the month since the deadline—relate to the same conspiracy charged in the original indictment filed against Ayvazyan in November. Taken together, there is no question that the government violated the Court's Discovery Order.

What is disputed, however, is whether the government had the power to unilaterally determine the scope of the Court's Discovery Order. In an attempt to avoid any consequences for its production failures, the government asserts that it had the power to disregard the Court's Discovery Order because it unilaterally decided that the order did not apply to any forthcoming the superseding indictments despite the lack of any carve-out to that effect. But the government's own conduct—filing the superseding indictment and dumping most of its discovery three days before the discovery cut-off—shows that the government did not truly believe the Court would countenance violations of the Discovery Order.

The government's games did not stop there. Against this backdrop, the government misrepresents what was produced on and after March 12, arguing that the documents concern the superseding indictment and therefore should not be excluded. This argument is meritless for two reasons. First, both indictments charge the same conspiracy. As long as the government intends to introduce statements or acts in furtherance of conspiracies to prove them at trial, the conspiracy determines the scope of discovery material to preparing for trial, not the list of overt acts. Second, even accepting the government's unjustified reading of its discovery obligations, the

government misrepresents the content of its belated discovery productions.  In fact, the March 12 through April 15 productions have contained numerous documents related to the loans, entities, and individuals charged in the original indictment including, for example, multiple productions of bank statements for the company that the government claims was the beginning of its investigation (Time Line Transport, Inc.).  Regardless of whether the government is allowed to construe "conspiracy" differently for evidentiary purposes and discovery purposes, the government has flagrantly violated the Court's Discovery Order.  The Court is well within its power to dismiss this case, or in the alternative, exclude documents contained in the government's March 12-15, 2021 document dump, and documents produced after the March 15, 2021 discovery cut-off.

## I. THE COURT SHOULD DISMISS THE INDICTMENT

The government's last-minute dump of thousands of documents warrants dismissal of the superseding indictment.  The government does not dispute that the Court has the authority to dismiss an indictment where prosecutorial misbehavior substantially prejudices a defendant.  Dkt. 278 at 9 (citing *United States v. Kearns*, 5 F.3d 1251, 1253-54 (9th Cir. 1993)).  Instead, the government argues that it did not commit misconduct because it was not required to produce discovery relating to the superseding indictment until it was unsealed.[1]  This argument fails for the reasons detailed below.

First, the government decided, without consulting the Court, that "[t]he December 22 Order applied only to the initial indictment."  Dkt. 278 at 9.  The government attempts to shift the burden by faulting Ayvazyan for not seeking "clarification about whether the December 22 Order applied to superseding

---

[1] To the extent the government argues that Ayvazyan must prove both prosecutorial misconduct and a due process violation to warrant dismissal, that is incorrect. Dkt. 287 at 9.  "A district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. If the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991) (internal citations omitted). Thus, Ayvazyan's proving prosecutorial misconduct is sufficient to warrant dismissal under the Court's supervisory powers here.

indictments," *id.* at 10, but Ayvazyan was not the one who knew what the government was withholding.  The government argued to Ayvazyan that his understanding that these loans and entities were "related" to those charged in the indictment was incorrect, Dkt. 278-4, but now the government has done an about-face and charged the same loans and entities as part of a single conspiracy.  There was no way for Ayvazyan to predict that the government would take the oxymoronic position that two loans can be a part of the same conspiracy for charging, evidentiary, and sentencing purposes but not for discovery purposes because the government had redacted the information about the loans in question from its previous productions.  The government's attempt to shift the burden to Ayvazyan—despite withholding material information in real time—shows that it has been operating in bad faith all along.  The government did not seek clarification before withholding discovery from the defense because the government made a calculated decision that it is easier to ask forgiveness than permission.  Nothing in the Court's Order mentions an extension of time should the government file a superseding indictment. Accordingly, this Court should find that the government's total disregard for the deadlines set by this Court constitutes flagrant misbehavior.

      Second, the government argues that it was not required to produce documents "gathered by the government as part of an ongoing grand jury investigation related to yet uncharged conduct." *Id.*  But this framing misrepresents both the government's use of the grand jury and the content of the documents produced on and after March 12.

      The superseding indictment charges Ayvazyan with participation in a conspiracy, the same conspiracy charged in the November indictment.  The government admits that it was using the grand jury to "continue its investigation of defendant's [alleged] massive fraud ring"[2] and that the documents produced on and after March 12 related to that investigation.  That admission clearly demonstrates the government's misconduct:

---

[2] Ayvazyan disputes this characterization as factually inaccurate, and looks forward to proving at trial that the government's allegations are completely off base and inconsistent with the evidence produced to date.

the government was misusing the grand jury to investigate an already indicted conspiracy to obtain evidence to use at trial. *In re Grand Jury Subpoenas Issued May 3, 1994 (Nash)*, 858 F. Supp. 132, 134 (D. Ariz. 1994) ("The grand jury may not be used by the government for pretrial criminal discovery.") (collecting cases).[3]

The documents produced on and after March 12 support this conclusion. As detailed below, many of the documents in the governments document dump and late productions relate to conduct included in the original indictment, or individuals charged in or central to the original indictment.

The government's other arguments against dismissal are frivolous. The Government argues that a Cellebrite report in the March 12 production constituted half the production and was not a new production. But the Cellebrite report reveals the pages that the prosecution team can use—including, in this case, revealing the transmission of privileged content to prosecutors—and thus constitutes new evidence. In a similar vein, the government argues that the March 12 production did not represent 90% of its productions to date because that number did not account for forensic copies of devices produced to Ayvazyan. But Ayvazyan calculated the number of pages of documents produced using the Bates numbers stamped on the documents by the government. It was based on these page counts that Ayvazyan arrived at the 90% number. Regardless of exactly how many pages the government produced on the eve of discovery, the material facts remain constant and true: the government violated the discovery order by withholding substantial productions until the last minute and making other productions after the deadline.

The government's focus on this minutiae is a red herring and nothing more than an attempt to distract the Court from the real prejudice caused to Ayvazyan by its discovery abuses. Ayvazyan has been under house arrest for months while the government finally got around to fully investigating the case charged in the indictment.

---

[3] Ayvazyan requests that the government be compelled to produce all grand jury information related to the superseding indictment—including grand jury transcripts—to the defendants and the Court.

4
REPLY – MOTION TO ENFORCE DISCOVERY ORDER

The government has admitted that it cannot access three seized devices containing exculpatory information, and that it does not know if it will be able to produce the evidence from those devices before trial. Dkt. 278 at 6-7.  As established in Ayvazyan's opening motion—and not addressed by the government—the government's conduct violates Ayvazyan's Sixth Amendment rights by forcing him to either forgo his right to a speedy trial, or to proceed to trial without the ability to use all relevant, exculpatory evidence in the government's possession. To preserve and protect Ayvazyan's constitutional rights, and to send a message to the government that it may not flout Court ordered deadlines while it cleans up a mess of its own making, the Court should dismiss the charges with prejudice.

## II. THE COURT SHOULD ENFORCE ITS DISCOVERY ORDER AND EXCLUDE EVIDENCE PRODUCED ON OR AFTER MARCH 12, 2021

The government does not dispute that the Court has the inherent authority to exclude evidence produced in violation of a discovery order.  Instead, the government asserts two arguments for why the March 12 production should not be excluded.  First, the government argues that the March 12 document dump did not violate the Court's order because the discovery cut-off was March 15.  Second, the government argues that most of the March 12 production relates to the superseding indictment. Both of these arguments fail.

The government's argument that the March 12 production was not late ignores that the Court's Discovery Order contained multiple provisions, which did more than just set a deadline for the close of discovery.  The Court ordered the government to "expeditiously comply with its discovery obligations" and "make every effort to produce outstanding discovery well in advance of [the March 15] deadline."  The Court included these provisions after reviewing Ayvazyan's submission detailing the government's stonewalling on discovery to date. These portions of the order are completely ignored in the government's opposition, as they were when the government

chose to dump the vast majority of its discovery on Ayvazyan three days before the discovery deadline.

On this point, the government spends a significant amount of time arguing that waiting nine days to provide defendants with documents that were ready for production did not prejudice Ayvazyan. The Court should reject this sleight of hand argument. The question here is whether the government's delay violated the Court's order to "expeditiously comply" with its discovery obligations and produce documents "well in advance" of the March 15 deadline. The government does not explain why it chose to wait nine days to produce those documents, presumably because the only explanation for the delay was gamesmanship. As the government argues, they were producing other documents to Ayvazyan during this time period, just not the giant data dump that was produced on March 12. Thus, the government's conduct did not comply with the letter or spirit of the Court's Discovery Order.

Second, the government's argument that the documents produced on March 12 relate to the superseding indictment is misleading, for two reasons. As discussed above, both the original indictment and the superseding indictment attempt to allege only one purported conspiracy, and the newly produced documents relate to that conspiracy. Thus, the superseding indictment is not an excuse for the documents' delayed production. And the March 12 production contains numerous documents related to loans and conduct charged in the original indictment. The below chart contains a sampling of the documents that the government held for months instead of "expeditiously" producing them to Ayvazyan.

| **Examples of Government's Failure to Make Every Effort to Produce Discovery Expeditiously** | | | |
|---|---|---|---|
| **Gov't Obtained** | **Prod. to Defense** | **Description** | **Bates** |
| June 15, 2020 | Mar. 12, 2021 | June 2020 production from Radius Bank to SBA OIG attaching over 100 pages of documentation related to Time | DOJ_PROD_0000045210-21 |

| | | | |
|---|---|---|---|
| | | Line Transport, Inc. (*see* Ind. ¶¶ 16.a, 23, and Count Seven) | |
| July 7, 2020 | Mar. 12, 2021 | July 2020 subpoena production from Radius Bank to Agent Palmerton regarding Time Line Transport, Inc. (*see* Ind. ¶¶ 16.a, 23, and Count Seven) | DOJ_PROD_0000045013; DOJ_PROD_0000045014 |
| Aug. 11, 2020 | Mar. 12, 2021 | Account opening information, bank statements, and detailed transaction history including transfer towards purchase of property referenced in Ind. ¶¶ 21.f., 23, 35.a, 38.a, 41.a, 44.a. for Inception Ventures, Inc. (*see* Ind. ¶¶ 16.b, 23) that bear print dates and/or metadata from Aug. 11, 2020 | DOJ_PROD_0000068129, 33; DOJ_PROD_0000068223; DOJ_PROD_0000068235; DOJ_PROD_0000068243, 44, 48 |
| Aug. 26, 2020 | Mar. 13, 2021 | SBA loan file for Runyan Tax (*see* Ind. ¶¶ 17.b, 23, Count Eleven) | DOJ_PROD_0000149745 |
| Oct. 19, 2020 | Apr. 9, 2021 | Pre-indictment evaluations of properties alleged to be purchased as part of the charged conspiracy including Residential Property 1 and Residential Property 2. | DOJ_PROD_0000158131- DOJ_PROD_00000158506 |
| Oct. 19, 2020 | Mar. 26, 2021 | A cellebrite of a seized digital device for which the government still has not conducted a responsiveness review as required by Fed. R. Crim. P. 41 | DOJ_PROD_0000154472 |
| Nov. 24, 2020 | Mar. 12, 2021 | Bank statements and transaction log through Nov. 24, 2020 for ABC Realty Advisors, Inc. (*see* Ind. ¶¶ 19.b, 23) | DOJ_PROD_0000069296; DOJ_PROD_0000069440 |

| | | | |
|---|---|---|---|
| Nov. 24, 2020 | Mar. 12, 2021 | Bank statements and transaction log through Nov. 24, 2020 for Terabelian's personal account (*see* Ind. ¶¶ 17.a, 23, and Count Six) | DOJ_PROD_0000069320; DOJ_PROD_0000069442 |
| Nov. 24, 2020 | Mar. 12, 2021 | Bank statements and transaction log through Nov. 24, 2020 for Allstate Towing & Transport (*see* Ind. ¶¶ 18.a, 18.b, 23, Count Two, and Count Nine) | DOJ_PROD_0000069360, DOJ_PROD_0000069445 |
| Nov. 24, 2020 | Mar. 12, 2021 | Bank statements for Runyan Tax (*see* Ind. ¶¶ 17.b, 23, Count Eleven) through Oct. 31, 2020 within production that appears to come from Nov. 2020 | DOJ_PROD_0000069412 |
| Nov. 24, 2020 | Mar. 12, 2021 | Bank statements and transaction log through Nov. 24, 2020 for Inception Ventures, Inc.  (*see* Ind. ¶¶ 16.b, 23) | DOJ_PROD_0000069392, DOJ_PROD_0000069447 |
| Throughout pre-indictment period | Mar. 15, 2021 | Thousands of pages of FBI reports related to the investigation dating as far back as June 15, 2020, the majority of which relate to the pre-indictment period. | DOJ_PROD_0000151831 through DOJ_PROD_0000154129 |

There are also documents related to companies or loans charged in the first indictment for which the available date information does not make it clear when the government received the information. *See, e.g.*, Ram Decl. Ex. A, DOJ_PROD_0000104381 (Tax Form for Top Quality Contracting). This presents two possibilities, both of which are problematic.  Either the government subpoenaed these documents before the original indictment and held onto the subpoena responses to include the documents in the March 12 dump. Or, equally troubling, the government was using the grand jury to continue investigating the charges in the original indictment

8
REPLY – MOTION TO ENFORCE DISCOVERY ORDER

to obtain evidence to use at trial. Neither of these options excuses the government's failure to comply with the Court's order to produce documents "expeditiously" and "well in advance" of the March 15 deadline. Accordingly, the March 12-15 productions should be excluded from the government's case-in-chief.

### III. THE COURT SHOULD ENFORCE ITS DISCOVERY ORDER AND EXCLUDE EVIDENCE PRODUCED AFTER THE MARCH 15, 2021 DISCOVERY CUTOFF

The government does not offer any explanation for why it is continuing to produce documents after the close of discovery, nor does it show that "extraordinary circumstances" have caused it to do so. The government's failure to offer a cogent explanation for its late productions is sufficient grounds to exclude all evidence produced after March 15, 2021 from the government's case-in-chief.

The government argues that the superseding indictment created extraordinary circumstances that permitted it to violate the Court's discovery order. That argument is flawed for multiple reasons. First, nothing in the December 22 order addressed the ability to unilaterally extend the discovery deadline by filing a superseding indictment. As discussed above, the government chose to violate the Court's discovery order, and is still pending asking for forgiveness. Nor was there any need or good faith reason for the government to violate the Discovery Order.

Second, many documents that have been produced after March 15 concern conduct charged in the original indictment. For example, as the government admits in its opposition, it waited until April 9, 2021, almost a month after the close of discovery, to produce forensic information for devices that were seized in November 2020.[4] Dkt.

---

[4] The government's purported reason for the delay in producing this data is that the FBI CART team responsible for processing digital devices was too busy processing and reviewing evidence related to "the insurrection at the U.S. Capitol on January 6, 2021" to timely process these files. Dkt. 278 at 7. The government is essentially taking advantage of a national emergency to cover up its discovery abuses, and the court should not countenance it. This is particularly so because records produced by the CART team show that they were timely processing requests made by the government even after the incidents at the Capitol. For example, DOJ_PROD_0000153808 shows that the CART team was able to provide copies of seven devices to Agent Palmerton on January 11, 2021, seven days after the

278 at 7 n.5. On April 6, 2021, 22 days after the close of discovery, the government produced a Memorandum of Interview dated February 24, 2021 that included discussions of Ayvazyan and his down payment for a property described in the original indictment.[5]  *See* Ram Decl. Ex. B, DOJ_PROD_0000154473. The Discovery Order required that the government produce "all outstanding discovery" by March 15, 2021. Dkt. 105.  While this would not apply to discoverable communications occurring after the deadline—for which circumstances obviously preclude pre-deadline production—the government has no excuse for its failure to adhere to the Court's deadline for an important memorandum written weeks earlier.

In a related point, the government argues that the Discovery Order "does not prohibit the government from continuing to interview witnesses in preparation for trial or in connection with its ongoing investigation." Dkt. 278 at 15.  Ayvazyan did not argue that the government could not conduct additional interviews. The issue identified in Ayvazyan's motion, which the government completely ignores, is that the interviews conducted after the close of discovery concerned the authenticity of evidence seized from Ayvazyan's house on November 5, 2020.  This more than four-month delay is what Ayvayzan argued was inconsistent with the Court's Discovery Order and the Court's desire to limit the government's ability to leverage the COVID pandemic at the

---

request was made. Ram Decl. Ex. C.  DOJ_PROD_0000153995 shows that the CART team processed information on two seized devices on January 26, 2021. Ram Decl. Ex. D.  Accordingly, the government's argument that the CART team was too busy to assist in processing devices is contradicted by their own documents.

[5] To the extent the government may argue that this interview memorandum was withheld because it pertained to a confidential informant, that argument cannot save the government.  The protective order at issue in this case did not provide for the government to withhold information about confidential informants. *See* Dkt. 92. The government asked the Court to alter the protective order to include the ability to withhold discovery related to confidential informants on March 29, 2021, fourteen days after the close of discovery. Dkt. 219.  If the government had desired to withhold interview notes for interviews conducted well before the close of discovery, it should have petitioned the Court *before* the close of discovery. This failure further highlights the government's disregard for the Court's orders in this case. And to the extent the government argues that it could not produce information about a confidential informant until after the superseding indictment was unsealed, that still does not countenance their production of the information 22 days after the close of discovery.

expense of Ayvayzan's right to a speedy trial. And even here, the government does not offer any justification for that delay. Instead, it argues that it can and will continue its investigation, despite having unsealed the superseding indictment and despite the passage of the Court's discovery deadline. The government must produce any additional evidence or interviews that arise from its preparation for trial. But this Court should still find that the government's indictment of a case it was not ready to try does not permit the government to violate the Court's discovery order. The Court should exclude any evidence produced after March 15 from the government's case-in-chief.

Third, the government's argument that the March 12 discovery concerned the superseding indictment counsels against allowing the government to use evidence produced after March 15 in its case-in-chief. The government has been investigating the conspiracy at issue in both the original and superseding indictments since the summer of 2020. The government's opposition emphasizes that the government told Ayvazyan in early January that its investigation was "ongoing." Dkt. 278 at 5. And the government argues that the March 12 production "relates in substantial part to the new charges and defendants." *Id.* at 14. Based on the government's own arguments, it was able to produce discovery related to the new charges and defendants in advance of the March 15 cut-off. There is thus no excuse for the government's failure to complete its productions by that deadline.

For the reasons set forth in Ayvazyan's opening motion and this reply, the Court should enforce its December 22, 2020 Discovery Order and (1) dismiss this case due to the government's expressed inability to comply with its document production obligations before trial, or, in the alternative, to (2) exclude (i) documents contained in the government's March 12, 2021 document dump, and (ii) documents produced after the March 15, 2021 discovery cut-off date.

//
//
//

Dated: April 19, 2021

Respectfully submitted,

**STEPTOE & JOHNSON LLP**

*/s/ Ashwin J. Ram*
Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*