**DECLARATION OF CHRISTOPHER FENTON**

I, Christopher Fenton, hereby declare and state as follows:

I am a Trial Attorney with the Criminal Division, Fraud Section, of the United States Department of Justice.  I am an attorney assigned to the case of United States v. Richard Ayvazyan et al., No. 20-CR-579(A)-SVW.

1.  Exhibit 1 is a true and correct copy of an email dated August 4, 2020 from Federal Bureau of Investigation Special Agent ("FBI SA") Justin Palmerton to me and others (with one of the two attachments).  This document was Bates-stamped DOJ_PROD_0000161157-DOJ_PROD_0000161163, and is being produced in discovery with both attachments.

2.  Exhibit 2 consists of a true and correct copy of bank records produced by Bank of America to the government on or around August 11, 2020. These documents were Bates-stamped DOJ_PROD_0000016932-DOJ_PROD_0000016984, and were produced in discovery.  These documents are being filed under seal.

3.  Exhibit 3 consists of a true and correct copy of an excerpt from a document produced by Beverly Hills Escrow to the government on or around September 3, 2020.  This document was Bates-stamped DOJ_PROD_0000004397, and was produced in discovery.

4.  Exhibit 4 consists of a true and correct copy of the transcript of defendant Richard Ayvazyan's detention hearing in this case, which was held on October 22, 2020 in the United States District Court for the Southern District of Florida. This document was Bates-stamped DOJ_PROD1_0000000135-DOJ_PROD1_0000000177, and was produced in discovery.

5.   Exhibit 5 consists of a true and correct copy of a plea agreement for A.P. in Case No. 2:11-cr-00072-GW (C.D.Cal.)(filed Sept. 5, 2013) (ECF 2598).

6.   On the morning of March 11, 2021, I communicated by telephone with SA Palmerton about the status of his efforts to execute a warrant for the arrest of defendant Manuk Grigoryan. Specifically, SA Palmerton contacted me by telephone to inform me that he had called a telephone number he believed to belong to Grigoryan's mother, A.G., to inquire about Grigoryan's whereabouts, and that Grigoryan unexpectedly had answered the telephone. SA Palmerton explained to me that he had identified himself to Grigoryan, informed Grigoryan that the FBI had a warrant for Grigoryan's arrest, and instructed Grigoryan to exit his parents' residence. SA Palmerton further explained to me that Grigoryan responded, "Bro, call my fucking lawyer," identified "Ashwin" as his attorney, and then hung up. SA Palmerton asked me to contact Ashwin Ram.

7.   Assistant United States Attorney Brian Faerstein and I together called Mr. Ram by telephone. When Mr. Ram answered the telephone, I explained that the government had sought and obtained a superseding indictment, that Grigoryan had been added as a defendant, and that FBI agents were attempting to locate Grigoryan so that they could execute a warrant for his arrest. I further explained that SA Palmerton had spoken with Grigoryan by telephone and that Grigoryan said he is represented by "Ashwin." Mr. Ram responded that he only represents Richard Ayvazyan and that Mr. Ram does not represent Grigoryan.

8. Mr. Ram called me back later that same morning. Mr. Ram explained to me that he had spoken with his client, Richard Ayvazyan, who said that SA Palmerton had contacted him. This was the first time I had become aware that SA Palmerton had mistakenly contacted Ayvazyan. I responded that it was my understanding that SA Palmerton had not intentionally contacted Ayvazyan and that SA Palmerton believed he had dialed a telephone number belonging to Grigoryan's mother, A.G. With the understanding that SA Palmerton had called a telephone number belonging to Grigoryan's mother, A.G., I suggested the possibility that Grigoryan may have given his mother's cell phone to Ayvazyan following Ayvazyan's arrest.

9. I reviewed the declaration that Mr. Ram submitted in support of defendant Richard Ayvazyan's motion to dismiss. (ECF 289-3.) Mr. Ram wrote, "I asked [Trial] [A]ttorney Fenton whether he knew that the government had called my client Richard Ayvazyan. [Trial] Attorney Fenton did not deny that this had occurred." (Id. ¶ 3.) As I explained above, I learned for the first time during my second call with Mr. Ram (when he called me back) that SA Palmerton had mistakenly contacted Ayvazyan instead of Grigoryan.

10. In his declaration, Mr. Ram also wrote, "[Trial] Attorney Fenton responded, in substance, that he did not think that the government had called Ayvazyan intentionally." (Id. ¶ 4.) I understood then and, based on subsequent communications with SA Palmerton, believe now that SA Palmerton did not intentionally contact Ayvazyan, that SA Palmerton believed he had dialed a telephone number belonging to Grigoryan's mother, A.G., and that SA

3

Palmerton believed he had spoken with Grigoryan until I informed him otherwise following my second call with Mr. Ram.

11. In his declaration, Mr. Ram wrote that "In explaining how *they* would have unintentionally called Ayvazyan, [Mr. Fenton] stated, in substance, that '. . . *we* thought *we* were calling the number of Manuk's mother [or mother-in-law].'" (Id. ¶ 4 (emphasis added).) SA Palmerton mistakenly called Ayvazyan alone. Neither I nor anyone else from the government was on that call.

12. In his declaration, Mr. Ram also wrote that "In explaining how they would have unintentionally called Ayvazyan, [Mr. Fenton] stated, in substance, that 'They all pass around these phones.'" (Id. ¶ 4.) As explained above, in substance, I suggested the possibility that Grigoryan may have given his mother's cell phone to Ayvazyan following Ayvazyan's arrest.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at West Tisbury, Massachusetts, on May 3, 2021.

_____
CHRISTOPHER FENTON

4