John L. Littrell (SBN 221601)
jlittrell@bklwlaw.com
Ryan V. Fraser (SBN 272196)
rfraser@bklwlaw.com
**BIENERT KATZMAN LITTRELL WILLIAMS LLP**
601 W. 5th Street, Suite 720
Los Angeles, CA 90071
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

Attorneys for Defendant MARIETTA TERABELIAN

Ashwin J. Ram (SBN 227513)
aram@steptoe.com
Michael A. Keough (SBN 327037)
mkeough@steptoe.com
Nicholas P. Silverman (pro hac vice)
nsilverman@steptoe.com
Meghan Newcomer (pro hac vice)
mnewcomer@steptoe.com
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

Attorneys for Defendant RICHARD AYVAZYAN

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD AYVAZYAN, MARIETTA TERABELIAN, *et al.*,<br><br>Defendants. | Case No. 2:20-cr-579-SVW<br><br>Hon. Stephen V. Wilson<br><br>**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PRIOR CONVICTIONS UNDER FED. R. EVID. 401–404 & 609**<br><br>Hearing Information:<br>Date: June 7, 2021<br>Time: 11:00 a.m.<br><br>Trial Date: June 15, 2021 |

**TO THIS HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:**

Through counsel, defendants Richard Ayvazyan and Marietta Terabelian hereby move jointly *in limine* to exclude evidence of their prior convictions from the trial under Federal Rules of Evidence 401–404 and 609.

Dated:  May 17, 2021                                Respectfully submitted,

BIENERT KATZMAN LITTRELL
WILLIAMS LLP

<u>/s/ Ryan V. Fraser</u>
John L. Littrell
Ryan V. Fraser
*Counsel for Defendant Marietta Terabelian*


STEPTOE & JOHNSON LLP

<u>/s/ Ashwin J. Ram</u>
Ashwin J. Ram
Michael A. Keough
Nicholas P. Silverman (*pro hac vice*)
Meghan Newcomer (pro hac vice)
*Counsel for Defendant Richard Ayvazyan*

# TABLE OF CONTENTS

I. Introduction ............................................................................................................. 1

II. Background ............................................................................................................ 1

    A. Present allegations ........................................................................................ 1

    B. Prior convictions .......................................................................................... 2

        1. 2012 bank-fraud case .......................................................................... 3

        2. 1999 grand-theft case .......................................................................... 4

III. Argument ............................................................................................................... 4

    A. Legal standard: To be admissible under 404(b), other crimes must be sufficiently recent and similar enough to the present allegations in their factual details that the relevance does not involve propensity reasoning. ..................................................................................................... 5

    B. The 2012 case is too old and not similar enough in its factual details to the present allegations. ................................................................................. 7

        1. Inadmissible to prove identity ............................................................ 7

        2. Inadmissible to prove knowledge or intent ........................................ 9

    C. Ayvazyan's 1999 grand-theft conviction is inadmissible under Rule 404 or 609 ....................................................................................................... 11

    D. If the Court admits any of the prior convictions under Rule 609, it should not permit reference to the factual details of the prior case. ........... 12

IV. Conclusion ........................................................................................................... 13

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Buck v. Davis*,
  137 S. Ct. 759 (2017) ................................................................................................ 5

*Cf. United States v. Martinez-Martinez*,
  369 F.3d 1076 (9th Cir. 2004) ................................................................................ 12

*United States v. Aims Back*,
  588 F.2d 1283 (9th Cir. 1979) .................................................................................. 5

*United States v. Andrini*,
  685 F.2d 1094 (9th Cir. 1982) .................................................................................. 7

*United States v. Bramble*,
  641 F.2d 681 (9th Cir.1981) ................................................................................... 10

*United States v. Ezzell*,
  644 F.2d 1304 (9th Cir. 1981) ............................................................................ 7, 11

*United States v. Garcia-Orozco*,
  997 F.2d 1302 (9th Cir. 1993) ................................................................................ 10

*United States v. Gomez*,
  763 F.3d 845 (7th Cir. 2014) .................................................................................... 6

*United States v. Hernandez-Miranda*,
  601 F.2d 1104 (9th Cir. 1979) ....................................................................... 5, 9, 10

*United States v. Luna*,
  21 F.3d 874 (9th Cir. 1994) ............................................................................ passim

*United States v. Mixon*,
  2015 WL 13849033 (D. Ariz. Dec. 3, 2015) ............................................................ 8

*United States v. Perkins*,
  937 F.2d 1397 (9th Cir. 1991) ............................................................................ 7, 11

*United States v. Powell*,
  587 F.2d 443 (9th Cir. 1978) .................................................................................... 7

*United States v. Robinson*,
  8 F.3d 398 (7th Cir. 1993) ...................................................................................... 12

*United States v. Smith*,
  725 F.3d 340 (3d Cir. 2013) ..................................................................................... 6

**Statute**

18 U.S.C. § 371 .................................................................................................... 2

**Rules**

Fed. R. Evid. 403 ............................................................................................. 9, 12

Fed. R. Evid. 404 ........................................................................................ passim

Fed. R. Evid. 609 ................................................................................... 1, 5, 11 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  Introduction

On May 10, 2021, nearly two months after the March 15 deadline set by the Court for the government to disclose any evidence to be offered in its case-in-chief, the government provided notice of its intention to introduce, under Federal Rule of Evidence 404(b) ("Rule 404(b)" or "404(b)"), Richard Ayvazyan's and Marietta Terabelian's prior convictions for conduct occurring ten and more years ago. Ayvazyan 404(b) Notice Letter, Exhibit A to Declaration of Ryan Fraser; Terabelian 404(b) Notice Letter, Ex. B to Fraser Decl.[1] Because these prior convictions are remote in time and lacking in distinctive facts sufficiently similar to the present allegations, Ayvazyan and Terabelian move to preclude their use at trial. Aside from being stale, the prior conduct has no permissible 404(b)(2) purpose that does not depend on propensity logic. Therefore, it is inadmissible. *See* Fed. R. Evid. 404(b)(1).

Ayvazyan and Terabelian also move the Court to limit the information related to these convictions that the government may reveal to the jury for impeachment under Federal Rule of Evidence 609 ("Rule 609"), should either Ayvazyan or Terabelian testify.

## II.  Background

### A. Present allegations

In broad overview, the fifty-eight-page superseding indictment of March 9, 2021, names eight defendants in all, charging Ayvazyan and Terabelian as follows (omitting counts that charge only other defendants):

---

[1] All instances of "Ayvazyan" without a first name herein refer to Richard Ayvazyan.

| Count Nos. | Defendants | Alleged Offenses | Title 18 Sections Invoked |
|---|---|---|---|
| 1 | Ayvazyan, Terabelian, and others | Conspiracy to commit bank and wire fraud | 1349, 1343, 1344(2) |
| 2–12 | Ayvazyan, Terabelian, and others | Wire fraud and aiding and abetting wire fraud | 1343, 2(a) |
| 13–20 | Ayvazyan, Terabelian, and others | Bank fraud and aiding and abetting bank fraud | 1344(2) and 2(a) |
| 21 | Ayvazyan | Aggravated identity theft | 1028A(a)(1), 2(b) |
| 22 | Ayvazyan and Terabelian | Aggravated identity theft | 1028A(a)(1), 2(a), (b) |
| 26 | Ayvazyan, Terabelian, and others | Conspiracy to commit money laundering | 1956(h) |
| 28–32 | Ayvazyan | Concealment money laundering | 1956(a)(1)(B)(i), 2(b), 3147 |

The government alleges that Ayvazyan and Terabelian "orchestrated a vast fraud ring that used an array of fake businesses, aliases, and stolen identities, to steal tens of millions of dollars" through the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan Program ("EIDL"). Gov.'s Opp'n to Mots. to Suppress, dkt. 152, at 8 (CM/ECF pagination).

**B. Prior convictions**

In the prior case common to both Ayvazyan and Terabelian, they entered into plea agreements filed on January 20, 2012, for conspiracy to commit bank fraud in violation of 18 U.S.C. § 371. *See United States v. Richard Ayvazyan and Marietta Terabelian*, No. 8:11-CR-180-CJC (C.D. Cal.), dkt. 55 ("Terabelian PA"); dkt. 58 ("Ayvazyan PA") (collectively, the "2012 bank-fraud case" or the "2012 case"). Also, in about 1999, per

the government's notice letter, Ayvazyan was apparently convicted of grand theft in violation of California Penal Code 487(a) (the "1999 grand-theft case" or the "1999 case").

### 1. 2012 bank-fraud case

In Terabelian's plea agreement, she and the government agreed that she conspired with Ayvazyan (only) from around November 2007 to June 2011, to commit bank fraud against Bank of the West by inflating her own income in applying for a residential mortgage and a line of credit and submitting false W-2s and tax returns to support the application. Terabelian PA at 6. Terabelian claimed that, through her employment with United Labs, Inc., she earned wages of $209,208 in 2008 and $215,904 in 2009, though in fact she earned less than $20,000 in both years and had no income from United Labs. *Id.* at 6–7. These false claims enabled her to obtain credit that she otherwise would not have qualified for. *Id.* at 6. Even so, the government acknowledged Terabelian's conduct had resulted in no loss to Bank of the West whatsoever. *Id.* at 7. The Court sentenced Terabelian to probation as recommended by the government. *See* Terabelian Judgment, No. 8:11-CR-180-CJC-2, dkt. 90. Terabelian has no other convictions.

Ayvazyan's plea agreement in the 2012 case states that he conspired with Terabelian (only) to commit bank fraud against Bank of the West and also committed bank fraud against Bank of America and Chase Bank. Ayvazyan PA at 6. He admitted that he "and/or" Terabelian knowingly falsely inflated their income in applying for residential mortgages and lines of credit, and he "and/or" Terabelian provided false W-2s and tax returns. *Id.* On or about November 6, 2007, Ayvazyan reported monthly income of $44,000 from In-Line Investments, Inc., though he actually earned approximately $76,000 and $36,000 in annual income from In-Line Investments in 2007 and 2008, respectively. *Id.* at 7. Ayvazyan withdrew $500,000 from the line of credit and transferred the funds to the personal Bank of America account he held jointly with Terabelian, causing a loss to Bank of America the parties believed did "not exceed $470,000." *Id.* He also sold a residence to his mother in a short sale by having her

represent to Chase Bank that she was not related to him, which had caused the bank to lose $559,200 or less as of the date of the plea agreement. *Id.* This Court sentenced Ayvazyan to "time served" with supervised release. *See* Ayvazyan Judgment, No. 8:11-CR-180-CJC, dkt. 99.

According to the government's 404(b) notice letter, Terabelian's bank fraud a decade prior is admissible 404(b) evidence against her because it "involved her using a similar modus operandi as here to commit bank fraud. Specifically, [she] and her husband . . . victimized . . . banks by submitting fabricated income and tax records in support of fraudulent loan applications." Ex. B to Fraser Decl. While purporting to "reserve[] the right to supplement" this notice, the government says no more of substance to articulate or explain the reasoning for admitting the 2012 conviction against Terabelian. The government invokes modus operandi in seeking to admit the 2012 case against Ayvazyan, as well. In support, the government references the same facts as against Terabelian and adds that he "caus[ed] the name of a close family relative to be used in furtherance of the fraud." Ex. A to Fraser Decl.

### 2. 1999 grand-theft case

The government has provided no other discovery concerning Ayvazyan's apparent 1999 case, but reports that he conspired with "at least two other [unspecified] individuals" to obtain funds from a financial institution by "fraudulent transactions involving the names of third-parties." Ex. A to Fraser Decl. This, the government says, "involved [Ayvazyan] using a similar modus operandi as here to commit bank fraud," in that he "targeted" a bank "by facilitating fraudulent transactions involving the use of third-party names." *Id.* The government provides no further factual information regarding this case and no additional support for admitting it under 404(b)(2) in this trial twenty-two years later. *See id.*

### III. Argument

As 404(b) evidence, the prior convictions are inadmissible because the conduct is too remote in time and the relatively generic fact patterns are not similar enough to the

present allegations in their details. When it comes to impeachment of either defendant, if and only if he or she should testify, the general fact of a felony conviction in 2012 is admissible against him or her under Rule 609(a)(2), but this evidence should not include the particular facts of the prior cases.

### A. Legal standard: To be admissible under 404(b), other crimes must be sufficiently recent and similar enough to the present allegations in their factual details that the relevance does not involve propensity.

"Our law punishes people for what they do, not who they are." *Buck v. Davis*, 137 S. Ct. 759, 778 (2017). Specifically, Rule 404(b)(1) prohibits using evidence of a past crime to raise an inference that on a particular occasion a defendant acted in conformity with the character shown by the crime—this is a propensity theory of relevance. Meanwhile, under Rule 404(b)(2) "other crimes" evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Courts may admit evidence of past crimes if (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) the act is sufficiently similar to the offense charged. *See United States v. Luna*, 21 F.3d 874, 878 (9th Cir. 1994).

Yet, "evidence of other crimes or wrong acts is not looked upon with favor and must be carefully scrutinized to determine probative value." *United States v. Aims Back*, 588 F.2d 1283, 1287 (9th Cir. 1979). The government bears the burden of "first establishing relevance of the evidence to prove a fact within one of the exceptions to the general exclusionary rule of Rule 404(b) and thereafter of showing that the proper relevant evidence is more probative than it is prejudicial to the defendant." *United States v. Hernandez-Miranda*, 601 F.2d 1104, 1108 (9th Cir. 1979).

Importantly, other crimes are not admissible unless the facts involved are distinctive enough that relevance to the permissible 404(b) purpose is not based on propensity logic. The Ninth Circuit explains:

> It is proper to infer that two distinctive crimes (e.g., two armed bank robberies committed by a person wearing Mickey Mouse ears) were committed by the same person; it is improper to infer that two merely similar crimes (e.g., two armed bank robberies) were, since the latter conclusion depends upon an inference about character. Somewhere along the continuum from merely similar crimes to truly distinctive crimes, an improper inference about propensity (the defendant is guilty because he committed another similar crime, and because people tend to behave consistently) can become a proper inference about identity (these two acts are so distinctive that only one person could have committed them both). Drawing the line is a matter for the court, not the jury.

*Luna*, 21 F.3d at 882.

Other circuits reinforce this insight. "[T]he district court should not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc) (emphasis in original) (reversing conviction). In *Gomez*, the government argued the defendant's history of dealing drugs helped show the permissible 404(b) purpose of identity; that is, it proved his involvement in the drug deal charged. *See id.* at 862–63. The Court of Appeals for the Seventh Circuit (*en banc*) rejected this position, ruling the prior acts were inadmissible because they tended to prove identity "only by way of a forbidden propensity inference: Once a drug dealer, always a drug dealer." *Id.* at 862–23; *see also United States v. Smith*, 725 F.3d 340, 342 (3d Cir. 2013) (rejecting 404(b) evidence of past drug dealing at a particular location to show that the defendant threatened an officer with a gun at that location in order to defend his turf, because inferring that motive necessarily involved concluding the defendant was a drug dealer by character).

Applying this principle here calls for rejecting the government's proposed use of Ayvazyan's and Terabelian's prior convictions.

### B. The 2012 case is too old and not similar enough in its factual details to the present allegations.

The 2012 convictions should not be admitted. They are too remote in time. They are too factually generic. And, critically, they do not bear a sufficient resemblance to the present charges. The only value of these ancient cases to the government is to have the jury consider them to represent the defendants' character, which is forbidden.

#### 1. *Inadmissible to prove identity*[2]

To admit evidence of other crimes to prove identity, "the characteristics of the other crime or act [must] be 'sufficiently distinctive to warrant an inference that the person who committed the act also committed the offense at issue.'" *Luna*, 21 F.3d at 787–79 (quoting *United States v. Andrini*, 685 F.2d 1094, 1097 (9th Cir. 1982)). If the characteristics of the offenses at issue are generic, they will not support an inference of identity. *See id.* (citing *United States v. Powell*, 587 F.2d 443, 448 (9th Cir. 1978)). Here, the facts of the 2012 case are not distinctively similar enough to the allegations made in the charging indictment. *See Luna*, 21 F.3d at 878 n.1 (*quoting United States v. Myers,* 550 F.2d 1036, 1045 (5th Cir.1977).

*First*, the alleged facts and circumstances are not similar. The prior case was essentially an unsophisticated *mortgage fraud* committed by a husband and wife in submitting false documents to inflate their earnings and thus qualify to borrow for a home purchase. *See* Ayvazyan PA at 6–7; Terabelian PA at 6–7. The conspiracy was anything but "vast," and there was no use of a stolen or synthetic identity. *See id.*

In contrast here, the government alleges that Ayvazyan and Terabelian "orchestrated a vast fraud ring [involving six other named defendants and other unnamed coconspirators] that used an array of fake businesses, aliases, and stolen identities, to

---

[2] The government's 404(b) notice letters do not focus on any of the enumerated 404(b)(2) purposes in particular, but posit that the past crimes are admissible as modus operandi evidence. *See* Exs. A & B to Fraser Decl. A modus operandi theory links with the purposes explicitly listed in 404(b)(2) where the prior crimes and the presently charged conduct are similarly "'peculiar, unique, or bizarre'" enough to represent a signature match. *See United States v. Perkins*, 937 F.2d 1397, 1400 (9th Cir. 1991) (quoting *United States v. Ezzell*, 644 F.2d 1304, 1306 (9th Cir. 1981)).

steal tens of millions of dollars" in disaster-relief loans from programs that did not even exist in 2012. Gov.'s Opp. to Motions to Suppress, dkt. 152, at 8; *see also* generally Superseding Indictment, dkt. 154; Transcript of Apr. 2, 2021, Hearing, dkt. 289-4, at 29:18–21 (transcript pagination and line numbering) (government counsel explaining that the superseding indictment covers "over 150 fraudulent loans . . . [as] a rough estimate . . . [with] about 85 percent [involving] fake or stolen names"). Moreover, in the present allegations, the primary subject of the fraudulent misrepresentations is not the income of a husband and wife and whether they can afford to repay a mortgage or stay current on a home-equity line of credit, but rather the number of employees and the payrolls of various businesses, and the businesses' intent to use disaster-relief proceeds for permissible purposes. *See* Superseding Indictment at 11–26 (detailing businesses' loan applications). Because of these stark differences, a juror could not infer identity from the prior convictions without resorting to forbidden propensity reasoning.

*Second*, insofar as the 2012 case and the present allegations are similar, the similarities are generic. *Cf. United States v. Mixon*, 2015 WL 13849033, at *4 (D. Ariz. Dec. 3, 2015) ("use of a knife in an earlier assault is . . . not specific enough"). They pertain to credit-fraud crimes generally rather than any concrete and specific modus operandi. *Cf., e.g., Luna*, 21 F.3d at 881 n.5 ("[T]here were important differences as to the *kinds* of masks, gloves, and bags which were used; similarly, although the robbers wore sweats in all cases, they did not wear the same *color* sweats. Given these differences, the common elements take on an even more generic quality: disguises for hands, face, and body; something to carry away the money in.") (original emphasis). The similarities here—alleged involvement of each other and some parent—are too generic or poor of a fit to support an inference of identity. *See Luna*, 21 F.3d at 879. Ayvazyan's apparent involvement of his mother in the prior case did not also involve Terabelian. *See* Terabelian PA at 6–7 (factual basis). Additionally, in contrast to Ayvazyan alone reportedly causing his living mother to submit one particular false letter to the bank in the 2012 case, the government posits in this case that he and Terabelian misappropriated

and misused the very identity of Terabelian's deceased father. By the government's characterizations, the conspiracy alleged here dwarfs the scope, scale, and sophistication of the one of which Ayvazyan and Terabelian were previously convicted.

*Lastly,* the conduct underlying the 2012 case occurred ten and more years ago, which further reduces its probative value and the basis for admission under Rule 404(b). *See Luna*, 21 F.3d at 878. Weighed against that minimal probative value, the risk is too great that jurors will improperly (and incorrectly) infer the defendants are guilty because their prior convictions indicate a general propensity to engage in fraud to acquire houses. *See* Fed. R. Evid. 403, 404(b)(1).

### 2. Inadmissible to prove knowledge or intent

As with prospective 404(b)(2) evidence of identity, "[w]hen a prior criminal act is relied upon to prove *intent or knowledge*, similarity between the two events must be shown to establish the threshold requirement of relevance." *Hernandez-Miranda*, 601 F.2d at 1108 (emphasis added).

Knowledge is a nonstarter here. The government cannot attribute any knowledge gained from the 2012 case to the allegations of conspiracy to defraud disaster-relief programs that have only been in existence for a little more than a year.

The government fares little better when it comes to an intent theory, because the intent established in the prior convictions is not similar to the intent allegedly involved here. The general desire for wealth is too generic for 404(b)(2) use because it obviously invites jurors to convict through propensity reasoning. *See* Fed. R. Evid. 404(b)(1).

At the fact-specific level, dissimilarities predominate. A husband and wife's intent to borrow money to buy a home by misstating their personal incomes is one thing. It is quite another to intend, as alleged in the superseding indictment, *a decade later*, to "orchestrate" a conspiracy with six or more others to purchase *three* homes, "gold coins, diamonds, jewelry, luxury watches, fine imported furnishings, designer handbags and clothing, cryptocurrency, and securities" with disaster-relief funds obtained through

payroll-related frauds on banks and the government, all involving several fake businesses and personal identities.

The context of the current charges is also instructive in this regard. As the superseding indictment states, dkt. 154 at 3, the PPP came into existence through the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, enacted in or about March 2020. The PPP entailed "loans to small businesses for . . . payroll costs, interest on mortgages, rent, and utilities," to be forgiven if the business used the money within a designated period and with a minimum portion spent on payroll expenses. *Id.* at 3–4. Meanwhile, the EIDL provided low-interest loans to small businesses, renters, and homeowners in disaster-stricken regions. *Id.* at 4. Pursuant to the CARES Act and EIDL Program, the Small Business Administration could lend up to $2 million to eligible small businesses experiencing financial disruption from the pandemic. *Id.* at 4. Applicants needed to report their business's number of employees, gross revenues, and cost of goods sold for fixed twelve-month periods before and after the outbreak of the coronavirus emergency. *Id.* at 4–5. These details are significant here because the alleged intent to defraud such specialized programs through misrepresentations concerning business payrolls, employee numbers, revenues, and cost of goods sold, and the prospective use of the proceeds is simply not the same as a married couple's intent to inflate their ability to repay their mortgage.

Applying parallel reasoning, in *United States v. Bramble,* 641 F.2d 681, 682–83 (9th Cir.1981), the Ninth Circuit decided that a prior conviction for possession of marijuana was not relevant to intent in a later prosecution for possession with intent to distribute cocaine. Similarly, in *Hernandez-Miranda*, 601 F.2d at 1108–09, where a defendant charged with heroin importation denied knowledge of the drugs in the car he was driving, the Ninth Circuit reversed the admission of evidence that the defendant had previously been convicted for smuggling marijuana, "because the only similarity was that the defendant was again on trial for smuggling drugs across the border." *United States v. Garcia-Orozco*, 997 F.2d 1302, 1304 (9th Cir. 1993) (also reversing for

improper admission of 404(b) evidence that was offered ostensibly for intent or knowledge). The 2012 case is inadmissible here under the guise of "intent" because it is dissimilar except in its generic elements and thus invites the propensity reasoning forbidden by Rule 404(b)(1).

### C. Ayvazyan's 1999 grand-theft conviction is inadmissible under Rule 404 or 609.

Ayvazyan's 1999 grand-theft conviction is inadmissible under Rule 404 for similar reasons as the 2012 case. Obviously, it is even more remote in time, with the underlying conduct having occurred twenty-two or more years ago, in the previous millennium. This greatly reduces the probative value without mitigating the unfair prejudice to Ayvazyan and, by association, Terabelian.

As described by the government's notice, the 1999 case also lacks the truly idiosyncratic shared characteristics necessary for a modus operandi theory of admission. To begin, the claim that Ayvazyan "conspired with at least two other individuals" in the 1999 case is already a poor fit to this "vast" case, dkt. 152 at 8, which allegedly involves seven other *named* coconspirators. Of course, the PPP and EIDL Program could not have been involved. And even if Ayvazyan's twentieth century conduct "involved . . . target[ing] a federally-insured bank by facilitating fraudulent transactions involving the use of third-party names," this hardly amounts to a distinctive signature. The federally insured status of the bank is not peculiar at all. While "fraudulent transactions involving the use of third-party names" sounds more specific, a "fraudulent transaction" is elemental of fraud crimes. The "use of third-party names" is analogous to the use of a disguise in a bank robbery, which, even with numerous other specific features matching, fails to meet the required level of distinctiveness for modus operandi-based admission under 404(b). *See Perkins*, 937 F.2d at 1400–01 (emphasizing the need for truly "'peculiar, unique, or bizarre' conduct" (quoting *Ezzell*, 644 F.2d at 1306)).

The vagueness of the government's notice and its failure to provide discovery concerning the 1999 case are even more reason to preclude it. *See* Fed. R. Evid.

404(b)(3)(A)–(B) (requiring, "so that the defendant has a fair opportunity" to object, that the government provide reasonable notice of what its proposed "other crimes" evidence would be, and that the notice articulate "the reasoning that supports [admission for the permissible] purpose"). Here, two months after the discovery deadline, the government has failed to provide any indictment, judgment, plea agreement, or other case documents to be offered at trial regarding the alleged 1999 conviction. Thus, the government has impaired Ayvazyan and Terabelian's ability to develop further their objection to use of the 1999 conviction. For all these reasons, the 1999 conviction should be excluded as "other crimes" evidence under Federal Rules of Evidence 403 and 404(b).

The 1999 conviction is also inadmissible for impeachment, because of its age and because its probative value does not substantially outweigh its prejudicial effect. *See* Fed. R. Evid. 609, Notes of Committee on the Judiciary, Senate Report No. 93–1277, ("It is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances."). Moreover, the government has failed to provide the notice required by Rule 609(b)(2).

### D. If the Court admits any of the prior convictions under Rule 609, it should not permit reference to the factual details of the prior case.

To the extent Ayvazyan or Terabelian testifies at trial, disclosing to the jury the factual details of Ayvazyan's or Terabelian's prior convictions would invite jurors to entertain character-based inferences forbidden by Federal Rules of Evidence 403 and 404. So, if the Court admits prior convictions for impeachment here, the government should be allowed to disclose to the jury only the date of the conviction and its felony nature. *Cf. United States v. Martinez-Martinez*, 369 F.3d 1076 (9th Cir. 2004) (affirming admission where district judge "sanitize[d] the conviction by only allowing it to be referred to as 'a felony conviction' in order to ameliorate any potential prejudice to the defendant"); *United States v. Robinson*, 8 F.3d 398, 409 (7th Cir. 1993) ("details of the prior conviction should not have been exposed to the jury").

### IV. Conclusion

For all the reasons above, Ayvazyan and Terabelian request the Court rule *in limine* to prohibit any reference at trial to Ayvazyan's and Terabelian's prior convictions, except that if either of them testifies, then the government may impeach the testifying defendant by establishing that he or she was convicted of a felony in 2012.

Dated: May 17, 2021

Respectfully submitted,

BIENERT KATZMAN LITTRELL WILLIAMS LLP

*/s/ Ryan V. Fraser*
John L. Littrell
Ryan V. Fraser
*Counsel for Defendant Marietta Terabelian*

STEPTOE & JOHNSON LLP

*/s/ Ashwin J. Ram*
Ashwin J. Ram
Michael A. Keough
Nicholas P. Silverman (*pro hac vice*)
Meghan Newcomer (*pro hac vice*)
*Counsel for Defendant Richard Ayvazyan*

# CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and I am a resident and employed in Los Angeles, California; that my business address is 601 W. 6th Street, Suite 720, Los Angeles, CA 90071; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court for the Central District of California, and at whose direction I caused service of the foregoing document entitled **DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PRIOR CONVICTIONS UNDER FED. R. EVID. 401–404 & 609** on all interested parties as follows:

**[X]   BY ELECTRONIC TRANSMISSION:** by electronically filing the foregoing with the Clerk of the District Court using its CM/ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies all parties in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 17, 2021 at Los Angeles, California.

*/s/ Elizabeth Garcia*
Elizabeth Garcia