UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No.  2:20-cr-579-SVW-1                                    Date: May 18, 2021

Present: The Honorable:  Stephen V. Wilson, U.S. District Judge

Interpreter   NA

| Paul M. Cruz | N/A | N/A |
|---|---|---|
| *Deputy Clerk* | *Court Reporter / Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s) | Present | Cust | Bond | Attorneys for Defendants: | Present | App | Ret |
|---|---|---|---|---|---|---|---|
| Richard Ayvazyan | | | X | N/A | | | |

**Proceedings:** IN CHAMBERS ORDER DENYING MOTION TO DISMISS OR EXCLUDE EVIDENCE FOR VIOLATION OF THE COURT'S DISCOVERY ORDER [248] AND MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT [289]

Before the Court are two motions filed by Defendant Richard Ayvazyan to dismiss the indictment or, alternatively, exclude evidence. *See* Dkts. 248, 249.

Ayvazyan's motion to dismiss the indictment or exclude evidence for violations of the Court's discovery orders is DENIED. It appears from the briefing that the vast majority of the documents were, in fact, produced prior to the Court's March 15 deadline. *See* Dkt. 248 at 3–6. A handful of documents were produced on March 18, 2021, and March 26, 2021. *See id.* at 6. And, in reply, Ayvazyan suggests that some documents were produced as late as April 15. *See* Dkt. 287 at 2.

The trial date in this case is two months after the latest document production, and the vast majority of the documents were produced before the March 15 deadline. Accordingly, there is no prejudice to Ayvazyan, and dismissal of the indictment is not warranted. *See United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993) (dismissal of indictment under court's supervisory powers requires substantial prejudice).

As for the exclusion of evidence, Ayvazyan correctly notes that "[n]o showing of prejudice to the defendant is required; the Court's interest in managing its own proceedings is sufficient." Dkt. 248 at 10; *see also United States v. Talbot*, 51 F.3d 183, 188 n.5 (9th Cir. 1995) (affirming exclusion of evidence for violation of discovery order without showing of prejudice). Nevertheless, a court has discretion to determine precisely *how* it executes its "interest in managing its own proceedings." *See Hernandez v. City of El Monte*, 138 F.3d 393, 398 (9th Cir. 1998) ("District courts have inherent power to control their dockets and may impose sanctions . . . in the exercise of that discretion."). That is why decisions to exclude evidence on the basis that a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

party violated a discovery order are reviewed for an abuse of discretion.  *See United States v. Schwartz*, 857 F.2d 655, 658 (9th Cir. 1988).

Here, the remedy sought by Ayvazyan ignores the trial date in the case and the lack of prejudice.  Indeed, under the present circumstances, the exclusion of evidence produced after March 15 would be an unnecessarily drastic measure.  Accordingly, the Court declines to exclude the challenged evidence.

Ayvazyan's motion to dismiss the indictment for alleged prosecutorial misconduct is DENIED.  "Outrageous government conduct occurs when the actions of law enforcement officers or informants are 'so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'"  *United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013) (quoting *United States v. Russell*, 411 U.S. 423, 431–32 (1973)).  Dismissal of an indictment for violation of the Due Process clause is "limited to extreme cases" and is only warranted if the government's conduct "violates fundamental fairness" and is "so grossly shocking and so outrageous as to violate the universal sense of justice."  *United States v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011).

Here, the Government's conduct is not "so grossly shocking and so outrageous as to violate the universal sense of justice."  *Id.*

First, the border stop and search—and later events stemming from that incident—do not constitute outrageous government conduct.  In its prior order regarding Ayvazyan's motion to suppress, the Court already discussed the border stop and search as well as the search of Ayvazyan's home.  *See generally* Dkt. 296.  The border search does not rise to the level of outrageous conduct; indeed, in the Court's view, it did not even violate the Fourth Amendment.  *See generally id.*  Even if there was a Fourth Amendment violation, the legality of the search was unclear to the extent that any misconduct did not rise to the level alleged by Ayvazyan.  The same conclusion applies to the search of Defendants' home and the execution of that search.  *See generally id.*

As to the missing video footage from Ayvazyan's detention at the Miami airport, the Court finds that the Government's unsuccessful attempts to preserve and obtain the video footage were, at worst, negligent.  Accordingly, they cannot form the basis for a finding of outrageous government conduct.  *See United States v. Wiley*, 794 F.2d 514, 515 (9th Cir. 1986) ("[O]utrageous government conduct is not to be equated with negligence or poor judgment.").

Additionally, although customs officers violated Defendants' *Miranda* rights, the officers' conduct was not "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction."  *Russel*, 411 U.S. at 431–32.  Rather, the Court already imposed the appropriate remedy for that *Miranda* violation: suppression of the evidence seized from Defendants' phones, and a *Kastigar* hearing to determine the extent to which the Government used that evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

The Court reaches the same conclusion with regards to the review of communications between Ayvazyan and his wife, Defendant Marietta Terabelian. There is no evidence that customs agents intentionally—as opposed to negligently—invaded the marital communications privilege. Moreover, the Government set up an independent filter team to review the communications before allowing the prosecution team to review them.[1] *See* Dkt. 319 at13 n.7. Even assuming there was a violation of the marital communications privilege, the Court has already imposed the appropriate remedy for that violation: suppression of the evidence seized from Defendants' phones, and a *Kastigar* hearing to determine the extent to which the Government used that evidence. Ayvazyan identifies no facts regarding the circumstances under which the messages were reviewed that warrant a more drastic measure.

Second, the Court rejects Ayvazyan's argument that the Government misled the Court during the April 2, 2021 hearing. Having reviewed the full exchange between the prosecutors and the Court, the Court is satisfied that the Government did not intentionally—or even negligently—mislead the Court. *See* Dkt. 289-4 at 10–11, 19–20.

Third, Agent Palmerton's call to Ayvazyan does not rise to the level of outrageous government conduct. Even crediting Ayvazyan's version of events—*i.e.*, assuming Agent Palmerton knew he was calling Ayvazyan and referenced Ayvazyan by name—a phone call to Ayvazyan for the purpose of convincing Grigoryan to self-surrender does not warrant the dismissal of an indictment. Such a phone call may be improper given that Ayvazyan was represented at the time, but it is far from being "so grossly shocking and so outrageous as to violate the universal sense of justice." *See Stinson*, 647 F.3d at 1209.

Fourth, the Court is not persuaded by Ayvazyan's challenge to the Government's use of the grand jury. The Government abuses the grand jury's investigatory power if the "sole or dominating purpose" for the grand jury investigation was to procure evidence for trial. *See In re Grand Jury Subpoenas Issued May 3, 1994 (Nash)*, 858 F.Supp. 132, 134 (D. Ariz. 1994). Here, that standard is not satisfied. In the first superseding indictment, the grand jury indicted additional defendants and charged additional counts against the existing defendants. *See* Dkt. 154. This includes new counts for a money laundering conspiracy, which is related to but independent from the wire fraud and bank fraud conspiracy alleged in the initial indictment. *See id.* It appears that the Government "continued to investigate the [crimes] after the initial indictment had been filed, seeking to identify others potentially involved in the conspiracy, and preparing to file additional charges against [Ayvazyan]." *United States v. Furrow*, 125 F. Supp. 2d 1170, 1177–78 (C.D. Cal. 2000) (cleaned up) (citing *United States v. Jones*, 129 F.3d 718, 723 (2d Cir. 1997)). "The government's use of the grand jury for these

---

[1] Ayvazyan suggests, without citation, that the filter team produced the entire text chain to the prosecutors without redaction or deletion. Dkt. 329 at 10. Even if that were true, the filter team may have done so because it need not withhold material that was not privileged. Indeed, given the allegations in this case, the messages may not have been covered by the marital communications privilege, which does not extend to communications "made in furtherance of a joint criminal venture." *United States v. Marashi*, 913 F.2d 724, 731 (9th Cir. 1990).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

purposes is entirely appropriate," *see Furrow*, 125 F.Supp.2d at 1178, and the Court cannot conclude that the "sole or dominating purpose" of the continued grand jury proceedings was to procure evidence for trial of crimes alleged in the original indictment, *Nash*, 858 F.Supp. at 134.

Ayvazyan seems to suggest that the Court should infer an improper grand jury purpose based on the fact that, when issuing the original indictment, the Government had probable cause to indict Ayvazyan on some of the allegations later contained in the first superseding indictment.  *See* Dkt. 329 at 22.  However, "the availability of sufficient evidence to charge certain crimes at an earlier point in the process does not cast doubt on the propriety of the grand jury's investigation, for the grand jury has an affirmative duty to conduct a thorough and deliberate investigation." *See Furrow*, 125 F.Supp.2d at 1177; *see also Branzburg v. Hayes*, 408 U.S. 665, 701 (1972) ("A grand jury investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.")

Fifth, the Court rejects Ayvazyan's *Brady* argument.  Ayvazyan does not meaningfully identify any *Brady* material, instead speculating that the Government—which alleges that Iuliia Zhadko is Ayvazyan's alias—must have evidence that Zhadko has continued to use his accounts (thereby suggesting Ayvazyan is not, in fact, Zhadko), or that the Government must have evidence that the defendants were passing around phones that were used to apply for loans or conduct transactions in this case.[2] *See* Dkt. 289 at 15–16.  Ayvazyan also argues that the Government must identify exculpatory material contained in voluminous productions with particularity.

However, the Government's productions were provided in a searchable format and accompanied by a detailed index.  *See* Dkt. 278-5.  The Government has sufficiently complied with its *Brady* obligations.  *See United States v. Gross*, 424 F.Supp.3d 800, 804 (C.D. Cal. 2019) (finding Government complied with *Brady* and "there is nothing intrinsically unsettling about the voluminous production by the Government" where production included over six million pages, was produced in searchable format, and was accompanied by index).

Finally, Defendant argues that, if dismissal of the indictment under the due process clause is not warranted, then the Court should alternatively dismiss the indictment pursuant to the Court's supervisory powers.  However, for the Court to dismiss a case pursuant to its supervisory powers, the Government's misconduct must be flagrant.  *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988).  For the reasons discussed above, that standard is not satisfied here.  *See supra* at 2–5.

---

[2] Ayvazyan argues that the material redacted in a customs form is exculpatory because it would be "likely to prove Ayvazyan's argument that border concerns were used as a pretext to unlawfully search for PPP loan fraud evidence." Dkt. 289 at 16.  Yet, even if that were true, the document would not be exculpatory because Eleventh Circuit law—*i.e.*, the law that governs the search at the Miami airport—would allow the challenged search without any level of suspicion.  *See generally* Dkt. 296.  Similarly, Ayvazyan argues the Government is withholding an exculpatory IP address log. Dkt. 289 at 15.  To the contrary, the Government has produced the entirety of that log.  *See* Dkt. 219-1 ¶ 17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

For the foregoing reasons, Ayvazyan's motions are DENIED.

**IT IS SO ORDERED.**

                                                                                                                    **Initials of Deputy Clerk**   PMC