TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
    1100/1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/2424/3819
    Facsimile: (213) 894-6269/0141
    E-mail:    Scott.Paetty@usdoj.gov
              Catherine.S.Ahn@usdoj.gov
              Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 320-0539
    Facsimile: (202) 514-0152
    E-mail:    Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-579(A)-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S *EX PARTE* APPLICATION FOR RECONSIDERATION OF SCHEDULING ORDER SETTING KASTIGAR HEARING (ECF 341); DECLARATION OF CATHERINE AHN |
| v. | |
| RICHARD AYVAZYAN, <br>   aka "Richard Avazian" and <br>   "Iuliia Zhadko," <br> MARIETTA TERABELIAN, <br>   aka "Marietta Abelian" and <br>   "Viktoria Kauichko," <br> ARTUR AYVAZYAN, <br>   aka "Arthur Ayvazyan," and <br> TAMARA DADYAN, <br> MANUK GRIGORYAN, <br>   aka "Mike Grigoryan," and | |

```
    "Anton Kudiumov,"
ARMAN HAYRAPETYAN,
EDVARD PARONYAN,
  aka "Edvard Paronian" and
    "Edward Paronyan," and
VAHE DADYAN,

        Defendants.
```

Plaintiff the United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, Assistant United States Attorneys Scott Paetty, Catherine Ahn, and Brian Faerstein, and Department of Justice Trial Attorney Christopher Fenton, hereby submits this <u>ex parte</u> application for the Court to reconsider its scheduling order of May 18, 2021.

This application is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 19, 2021          Respectfully submitted,

                             TRACY L. WILKISON
                             Acting United States Attorney

                             BRANDON D. FOX
                             Assistant United States Attorney
                             Chief, Criminal Division


                                  /s/
                             _____
                             CATHERINE AHN
                             SCOTT PAETTY
                             BRIAN FAERSTEIN
                             Assistant United States Attorneys
                             CHRISTOPHER FENTON
                             Department of Justice Trial Attorney

                             Attorneys for Plaintiff
                             UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

**Contents**

I.  INTRODUCTION...................................................1

II. ARGUMENT.......................................................2

    A.  The defendants are not entitled to a Kastigar hearing
        because they were not compelled to provide testimony
        through a grant of immunity...............................2

    B.  Even if Kastigar applied to coerced confessions, the
        Court should nonetheless decline to hold a Kastigar
        hearing because defendants' involuntary communication
        of their passcodes was not "testimonial" and therefore
        does not implicate the Fifth Amendment's Self-
        Incrimination Clause.....................................7

    C.  If the Court decides to hold a Kastigar hearing,
        considerations of judicial economy counsel in favor of
        doing so after the trial or, in the alternative,
        ordering a full briefing schedule and continuing
        trial...................................................10

III. CONCLUSION...................................................13

1

**TABLE OF AUTHORITIES**

2

**CASES**

3    <u>Fisher v. United States</u>, 425 U.S. 391 (1976).....................8

4    <u>In re Boucher</u>, Case no. 2:06-mj-91, 2009 WL 424718 (D. Vt. Feb.
5        19, 2009)......................................................9

6    <u>In the Matter of the Search of A Residence In Aptos, California</u>,
       Case No. 17-mj-70656, 2018 WL 1400401 (March 20, 2018)......8, 9

7    <u>Kastigar v. United States</u>, 406 U.S. 441 (1972)...................1, 5

8    <u>Mission Power Engineering Co. v. Continental Cas. Co.</u>, 883 F.
9        Supp. 488 (C.D. Cal. 1995)...................................12

10    <u>Oregon v. Elstad</u>, 470 U.S. 29 (1985)..............................3

11    Subana v. Yarborough, 130 Fed. Appx. 101 (9th Cir. 2005)...........3

   Tretheway v. Farmon, 39 Fed. Appx. 591 (9th Cir. 2002)..............3

12    <u>United States v. Ahmed</u>, 94 F. Supp. 3d 394 (E.D.N.Y. 2015)..........4

13    <u>United States v. Anderson</u>, 79 F.3d 1522 (9th Cir. 1996)..........5, 6

14    <u>United States v. Apple MacPro Computer</u>, 851 F.3d 238 (3d Cir.
15        2017)......................................................8, 9

16    <u>United States v. Benson</u>, 2015 WL 1064738 (N.D. Cal. March 11,
17        2015).........................................................6

18    <u>United States v. Deerfield Specialty Papers, Inc.</u>, 501 F.Supp.
       796 (E.D. Pa. 1980)..........................................11

19    <u>United States v. Dudden</u>, 65 F.3d 1461 (9th Cir. 1995)..........11, 12

20    <u>United States v. Fricosu</u>, 841 F. Supp. 2d 1232 (D. Colo. 2012)......9

21    <u>United States v. Ghailani</u>, 743 F. Supp. 2d 242 (S.D.N.Y. 2010)2, 3, 6

22    <u>United States v. Hubbell</u>, 530 U.S. 27 (2000)....................5, 7

23    <u>United States v. Kandik</u>, 633 F.2d 1334 (9th Cir. 1980).............4

24    <u>United States v. Kilroy</u>, 27 F.3d 679 (D.C. Cir. 1994).............10

25    United States v. Kimball, 884 F.2d 1274 (9th Cir. 1989).............3

26    <u>United States v. Patane</u>, 542 U.S. 630 (2004).......................3

27    <u>United States v. Squillacote</u>, 221 F.3d 542 (4th Cir. 2000).......4, 5

28    <u>United States v. Tinkleberg</u>, 563 U.S. 647 (2011)..................13

<u>United States v. Volpe</u>, 42 F. Supp. 2d 204 (E.D.N.Y. 1999).........10

<u>United States v. Walker</u>, No. 18-cr-87 (JMA), 2019 WL 1876873,
    (E.D.N.Y. Apr. 26, 2019)......................................10

<u>Wong Sun v. United States</u>, 371 U.S. 471 (1963)......................3

**<u>STATUTES</u>**

18 U.S.C. § 3161(h)...............................................13

California Corporation Code § 25531(e)............................6

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      On May 17, 2021, defendants Richard Ayvazyan and Marietta

4 Terabelian ("defendants") filed what is styled as a "motion for a

5 Kastigar hearing, to disqualify the prosecution team, and to

6 dismiss." (ECF 338.) Also on May 17, 2021, the defendants filed an

7 ex parte application for their motion to be heard on shortened time.

8 (ECF 339.) The factual premise of the defendants' motions is that –

9 based on an unprecedented application of Kastigar v. United States,

10 406 U.S. 441 (1972) – the government should be required to show that

11 all evidence it intends to present at trial was developed

12 independently from information suppressed by the Court because it was

13 derived from a Miranda violation. (ECF 296, 297.) Around noon the

14 next day, before the government was able to respond to defendants'

15 motions, the Court entered an order setting a Kastigar hearing for

16 May 26, 2021 and ordering the government to file declarations

17 responsive to the dictates of Kastigar by May 24, 2021. (ECF 341.)

18      The government respectfully requests that the Court take the

19 Kastigar hearing off calendar. As set forth below, under Fifth

20 Amendment jurisprudence, statements that were "coerced" are treated

21 differently than those that were "compelled by a grant of immunity,"

22 with the fruit of the poisonous tree doctrine applying to the former

23 and Kastigar's "independent source" test applying to the latter.

24 Indeed, the Ninth Circuit has consistently applied the fruit of the

25 poisonous tree doctrine in coerced confession cases. That is why

26 (1) defendants sought suppression without requesting a Kastigar

27 hearing, and (2) this Court's prior ruling that defendants'

28 statements regarding their phones were coerced resulted in the simple

1  exclusion of the fruits of that constitutional violation.  (ECF 286.)

2  That ruling resolved the violation in its entirety because the

3  defendants were not compelled to testify under a grant of immunity,

4  which is a precondition for <u>Kastigar</u> relief.  In the alternative,

5  even if the procedures set forth in <u>Kastigar</u> were the remedy for a

6  coerced confession, a <u>Kastigar</u> hearing is unnecessary because the

7  defendants' communication of their cell phone passwords was not a

8  "testimonial" act for purposes of the Self-Incrimination Clause.

9  **II.  ARGUMENT**

10     **A.  The defendants are not entitled to a <u>Kastigar</u> hearing**
            **because they were not compelled to provide testimony**
11          **through a grant of immunity.**

12     The well-reasoned decision in <u>United States v. Ghailani</u> rejected

13  the argument advanced by defendants: that <u>Kastigar</u> applies to coerced

14  confessions absent immunization and compulsion.  743 F. Supp. 2d 242,

15  251-52 (S.D.N.Y. 2010).  In that case, the defendant, who was

16  subjected to "extremely harsh interrogation methods" while being held

17  at an overseas CIA facility, divulged the identity of a witness whom

18  the government intended to call at trial.  <u>Id.</u> at 249-50.  There was

19  no question of coercion – the government stipulated that this

20  information was extracted in violation of Ghailani's Fifth and Sixth

21  Amendment rights.  <u>Id.</u>  Even in those extreme circumstances, however,

22  the district court rejected the argument that <u>Kastigar</u> required proof

23  that the government's discovery of the witness was wholly independent

24  of the information the defendant divulged under interrogation.  <u>Id.</u>

25  at 252.  While Ghailani's statement was "coerced" under the Fifth

26  Amendment, the fact that it was not "compelled by a grant of

27  immunity" rendered <u>Kastigar</u> inapplicable.  <u>Id.</u> at 252.  Any contrary

28  ruling would have unraveled bedrock precedents governing <u>Miranda</u>'s

fruit of the poisonous tree doctrine and converted every Miranda violation into the basis for a Kastigar hearing, contravening decades of Supreme Court jurisprudence.  See Wong Sun v. United States, 371 U.S. 471, 484-485 (1963), Oregon v. Elstad, 470 U.S. 298, 305-06 (1985).  The distinction between "coerced" and "compelled" testimony is important because:

> The Supreme Court has relied on Fourth Amendment cases in determining what evidence is excludable as the fruit of a coerced confession . . . .  [A] coerced confession differs from immunized testimony.  In the former situation, the likelihood of deterring police misconduct is, as in the Fourth Amendment context, a relevant consideration, while this is not so with regard to immunity, which is granted under prosecutorial and judicial supervision.

Ghailani, 743 F. Supp. 2d. at 253 (quotation omitted).  Ghailani presented similar facts to the case at bar: the defendants were coerced into making a statement, but not compelled by a grant of immunity.

Importantly, Ghailani's ruling relied on a series of Ninth Circuit decisions, which it cited in support of the proposition that appellate courts and commentators "consistently have assumed that the poisonous fruit doctrine, with its qualifications, applies to coerced confessions. . . ."  Id. at 252 n.59 (citing Subana v. Yarborough, 130 Fed. Appx. 101, 103 (9th Cir. 2005); Tretheway v. Farmon, 39 Fed. Appx. 591, 594 (9th Cir. 2002); United States v. Kimball, 884 F.2d 1274, 1279-80 (9th Cir. 1989).  In fact, the Supreme Court itself has described the remedy as entailing a fruit of the poisonous tree analysis: "the Court requires the exclusion of the physical fruits of actually coerced statements."  United States v. Patane, 542 U.S. 630, 644 (2004) (plurality opinion).

*Ghailani*, moreover, is not the only case that relied on the Ninth Circuit's analysis to reject the proposition that a coerced confession triggers a *Kastigar*-like burden on the government to affirmatively prove that all of its evidence is independent of the Fifth Amendment violation.  In *United States v. Ahmed*, the district court declined to hold a "taint hearing" to determine whether the government made derivative use of statements allegedly obtained through "torture" performed in a foreign country.  94 F. Supp. 3d 394, 438 (E.D.N.Y. 2015).  Rather than applying *Kastigar*, the Court put the burden on the *defendant* to identify evidence that was fruit of the poisonous tree and cited the Ninth Circuit's decision in *United States v. Kandik*, 633 F.2d 1334, 1335-36 (9th Cir. 1980) in doing so.  *Ahmed*, 94 F.Supp. 3d at 438.  In *Kandik*, the Ninth Circuit explained that "a defendant has the initial burden of establishing a factual nexus between the illegality and the challenged evidence." *Kandik*, 633 F.2d at 1335.  The remedy described in both *Ahmed* and *Kandik* was fruit of the tree, not *Kastigar*.

The Fourth Circuit's decision in *United States v. Squillacote* followed the same path in focusing on the grant of immunity as central to *Kastigar*.  221 F.3d 542, 558-559 (4th Cir. 2000).  There, the panel affirmed the district court's decision not to hold a *Kastigar* hearing to explore whether the government made derivative use of defendant's privileged conversations with his psychotherapist, which were recorded as part of a Foreign Intelligence Surveillance Act warrant.  *Id.*  "Contrary to the Appellants' view, a *Kastigar* analysis is not triggered by the existence of evidence protected by a privilege, but instead by the government's effort to compel a witness to testify over the witness's claim of privilege."  *Id.* at 559

1   (emphasis added).  The panel further observed that "the government's
2   right to compel testimony in the face of a claim of privilege is the
3   issue at the heart of Kastigar" and held that "because this case does
4   not involve the use of compelled testimony, the district court
5   properly refused the Appellants' request for a Kastigar hearing."
6   Id. at 560 (emphasis added).

7        By referencing the government's right to compel testimony over
8   the invocation of a privilege, the Fourth Circuit confirmed that
9   Kastigar does not reach coerced statements of the sort presented
10  here.  Rather, Kastigar applies where the Supreme Court applied it:
11  to cases in which the government requires a person to testify under a
12  grant of immunity.  That is why Kastigar focused on the government's
13  use of its "power to compel residents to testify in court or before
14  grand juries or agencies," 406 U.S. at 444, and why the Supreme Court
15  later explained that Kastigar "particularly emphasized the critical
16  importance of protection against a future prosecution based on
17  knowledge and sources of information obtained from the compelled
18  testimony," United States v. Hubbell, 530 U.S. 27, 38-39 (2000)
19  (emphasis added).

20       United States v. Anderson, upon which defendants rely, confirms
21  that Kastigar is triggered by compulsion through legal process, not
22  through all coercive actions that induce a defendant to make a
23  statement.  79 F.3d 1522 (9th Cir. 1996).  In that case, the Ninth
24  Circuit affirmed the district court's decision denying a Kastigar
25  hearing for a defendant who claimed that his prior testimony was
26  immunized by a California statute.  Id. at 1531.  It is true that the
27  panel stated: "[i]f a defendant's statements were compelled in
28  violation of the Fifth Amendment, he is entitled to a Kastigar

5

1   hearing." Id. at 1526.  But the case makes clear that the

2   "compulsion" at issue was the threat of legal contempt.  Anderson

3   consistently and repeatedly associated "compulsion" and "contempt."

4   Id. at 1525 ("he claimed that his testimony was compelled by the

5   threat of contempt"); 1526 ("Anderson contends that, absent immunity,

6   his waiver (and therefore his testimony and production) were

7   compelled by a threat of contempt"); 1531 ("Anderson was not

8   compelled to testify under the threat of contempt and therefore his

9   fifth amendment waiver was voluntary").  The Ninth Circuit in

10  Anderson was not asked to, nor did it create, new law as to whether

11  Kastigar applies to coercion accomplished through means other than

12  immunity and legal contempt--processes that both entail "judicial

13  supervision," Ghailani, 743 F. Supp. 2d at 253.

14      Anderson's exhaustive analysis of whether the defendant was

15  compelled to give testimony through a grant of immunity conferred by

16  California Corporation Code § 25531(e) proves the point.  In denying

17  Anderson's argument that his waiver of his Fifth Amendment rights was

18  compelled by the threat of contempt, the panel again analyzed whether

19  California's compulsion statute applied: "[a]gain, however,

20  Anderson's argument is premised upon an incorrect interpretation of

21  the relevant California statutes."  Anderson, 79 F.3d at 1531.  The

22  Anderson decision turned on the applicability of California's

23  immunity and compulsion statute because immunization and compulsion

24  through legal process were requirements of his Kastigar claim.[1]

25

26

27      [1] Ayvazyan's brief relies on United States v. Benson, but that
    case is inapt because the magistrate judge conferred a level of use
28  and derivative use immunity, which were not bestowed upon defendants
    Ayvazyan and Terabelian.  2015 WL 1064738 (N.D. Cal. March 11, 2015).

1  It is not uncommon for courts to suppress statements as being

2  obtained involuntarily in violation of Miranda and the fact that

3  Ayvazyan's brief does not cite any cases in which a court ordered a

4  Kastigar hearing under circumstances similar to the facts presented

5  here is telling.[2]  This Court already suppressed the fruits of any

6  claimed constitutional violation, and defendants have not identified

7  any authority whatsoever that permits both a fruit of the poisonous

8  tree analysis and a subsequent Kastigar inquiry.  Defendants sought

9  and were granted suppression under a proper analysis and only devised

10  an inapplicable Kastigar remedy when they did not like the remedy

11  this Court supplied.  There is no basis to apply Kastigar here, and

12  doing so would represent a sea change in Fifth Amendment

13  jurisprudence, potentially requiring the disqualification of

14  prosecutors who become aware of information obtained in violation of

15  Miranda.  That is not remotely the law.

16  **B.  Even if Kastigar applied to coerced confessions, the Court
   should nonetheless decline to hold a Kastigar hearing**

17  **because defendants' involuntary communication of their
   passcodes was not "testimonial" and therefore does not**

18  **implicate the Fifth Amendment's Self-Incrimination Clause.**

19  The Self-Incrimination Clause – and Kastigar, by extension –

20  reaches only "testimonial" communications.  See Hubbell, 530 U.S. at

21  35 ("The word 'witness' in the constitutional text limits the

22  relevant category of compelled incriminating communications to those

23  that are 'testimonial' in character").  While the testimonial act of

24

25  _____

26  [2] Ayvazyan's March 8, 2021 motion to suppress evidence recovered
   from his cell phone as a result of his involuntary statement sought

27  relief under the fruit of the poisonous tree doctrine, not remedies
   under Kastigar.  (See ECF 135 at 6 (seeking suppression of "direct
   and indirect fruits of that evidence); and 23 ("[b]oth direct and

28  indirect fruits of an unlawful search (the 'fruit of the poisonous
   tree') should be suppressed").)

7

production doctrine protects a person from "being incriminated by his own compelled testimonial communications," Fisher v. United States, 425 U.S. 391, 409 (1976), the Fifth Amendment privilege does not protect acts of production where the government already is aware of the implicit testimonial aspects of production.  That is, the Fifth Amendment "does not protect an act of production when any potentially testimonial component of the act of production – such as the existence, custody, and authenticity of evidence – is a foregone conclusion that adds little or nothing to the sum total of the Government's information."  United States v. Apple MacPro Computer, 851 F.3d 238, 247 (3d Cir. 2017) (internal quotations omitted).  In such instances, the implied information communicated by the production falls within an exception to the Fifth Amendment known as the "foregone conclusion."  Fisher, 425 U.S. at 411.

Because government agents obtained the cell phones in question from Ayvazyan and Terabelian, their act of communicating the encryption codes was not testimonial.  Many courts have held that providing access to encrypted devices that are already in the government's possession does not constitute an implied "testimonial" communication.  In In the Matter of the Search of A Residence In Aptos, California, the court ruled that an All Writs Act order compelling the defendant to decrypt digital devices already seized by government agents did not implicate the defendant's Fifth Amendment rights because "any testimony inhering to [the defendant's] compelled act of decryption is a foregone conclusion."  Case No. 17-mj-70656, 2018 WL 1400401 (March 20, 2018).  Other courts analyzing legal process compelling defendants to grant access to encrypted digital devices have reached the same conclusion.  See, e.g., United States

v. Fricosu, 841 F. Supp. 2d 1232, 1237 (D. Colo. 2012) ("There is little question here but that the government knows of the existence and location of the computer's files.  The fact that it does not know the specific content of any specific documents is not a barrier to production."); In re Boucher, Case no. 2:06-mj-91, 2009 WL 424718, at *2-3 (D. Vt. Feb. 19, 2009) (compelling production of unencrypted version of laptop did not constitute compelled testimonial communication).

To establish the foregone conclusion exception, "the government must establish its independent knowledge of three elements: the files' existence, the files' authenticity, and respondent's possession or control of the files." Aptos, 2018 WL 1400401 at *8; see also Apple MacPro Computer, 851 F.3d at 248-49 (foregone conclusion exception applied because "the Government has provided evidence to show both that files exist on the encrypted portions of the devices and that [respondent] can access them").  The record before the Court establishes these elements.  The Court's order on defendants' motion to suppress concluded that the phones were recovered on Ayvazyan's and Terabelian's persons and that they knew and divulged the passcodes to the devices.  (ECF 296 at 17.) Ayvazyan and Terabelian have consistently declared that the phones were theirs and that they knew the passcodes.  (ECF 134 at ¶¶ 41 and 20, Ayvazyan Decl. at ¶¶ 18-19; ECF 139 at ¶¶ 12-14.)

Even absent defendants' repeated statements that the phones were theirs, the government could already prove their ownership and control through the fact they were recovered from their persons.  The defendants' declarations establish that the border agents understood that Ayvazyan and Terabelian had dominion over the phones in question

1    and the ability to unlock them before they provided the passcodes.

2    In short, the information impliedly communicated by the act of

3    obtaining the cell phones from defendants' persons – showing they had

4    dominion and control over the devices - establishes the foregone

5    conclusion exception.  The information that the border agents

6    obtained in violation of their Fifth Amendment rights was therefore

7    not "testimonial."  Accordingly, even if the Court declined to apply

8    the numerous Supreme Court and Ninth Circuit precedents cited above,

9    the Court should still decline to hold a Kastigar hearing because

10   only "testimonial" statements implicate the Confrontation Clause and

11   the statements given under coercion were not "testimonial."

12

13   **C.  If the Court decides to hold a Kastigar hearing,
         considerations of judicial economy counsel in favor of
14       doing so after the trial or, in the alternative, ordering a
         full briefing schedule and continuing trial.**

15        "[A] trial court may hold a Kastigar hearing pre-trial, post-

16   trial, mid-trial (as evidence is offered), or it may employ some

17   combination of these methods."  United States v. Kilroy, 27 F.3d 679,

18   686-87 (D.C. Cir. 1994) (quotations omitted).  When district courts

19   decide to hold Kastigar hearings, it is common to do so after trial.

20   See United States v. Walker, No. 18-cr-87 (JMA), 2019 WL 1876873, at

21   *1 (E.D.N.Y. Apr. 26, 2019) ("As to Defendant's Kastigar claim, the

22   Court will hold a Kastigar hearing after trial, if necessary.");

23   United States v. Volpe, 42 F. Supp. 2d 204, 219 (E.D.N.Y. 1999)

24   ("While the court has discretion to hold the [Kastigar] hearing

25   before, during, or after the trial ... it is the general practice in

26   this circuit to defer such a hearing until after trial"); United

27   States v. Deerfield Specialty Papers, Inc., 501 F.Supp. 796, 803

28

                                        10

(E.D. Pa. 1980) (Kastigar hearing should be deferred until the completion of trial").[3]

Considerations of judicial economy counsel in favor of holding a Kastigar hearing after trial (if at all). Whereas a pre-trial Kastigar hearing requires the parties and the Court to predict what evidence will ultimately be received, a post-trial hearing enables the factfinder to adjudicate the issues with the benefit of knowing the evidence that was actually used at trial. Given that it is almost impossible to predict the evidence that will be admitted at trial (especially to the extent that either party puts on a rebuttal case), a pretrial effort to determine whether the government's trial evidence is independent from a compelled statement necessarily involves a moving target. Moreover, the jury's verdict (or an entry of a pre-trial guilty plea by any defendant) could very well influence the scope of the inquiry or obviate the need for it altogether.

Finally, it should be noted that, even if Kastigar applies, the government may meet this burden without holding a hearing at all. In

---

[3] In United States v. Dudden, the Ninth Circuit held that whether or not the government made derivative use of evidence gained after an informal grant of immunity is for the judge, not a jury, to decide. 65 F.3d 1461, 1469, 1472 (9th Cir. 1995) (remanding with instructions to hold a Kastigar hearing). In doing so, the Court stated, in dicta, that "the decision whether the government has proven that it did not breach the agreement in preparing its case for trial [] is not for the jury to make after trial. Instead, the judge must determine before trial whether the government has proven its independent sources, if necessary with a Kastigar hearing." Id. at 1469. But Dudden did not actually present the question of whether a judge may hold a hearing after trial; instead, the court established that questions about Kastigar violations should not be presented to the jury. If Dudden intended to prohibit district courts from holding Kastigar hearings after trial, it stands to reason that it would have addressed other authorities holding that the practice is valid. Moreover, Dudden is distinguishable from the instant case, which does not involve any grant of immunity.

1  Dudden, the Ninth Circuit noted that a hearing is not always
2  necessary if there are no factual issues left to resolve related to
3  the grant of immunity or the government meets its burden through the
4  use of affidavits.  Dudden, 65 F.3d at 1469.

5      Holding a Kastigar hearing on an expedited basis will result in
6  extreme prejudice to the United States, which has less than a week to
7  submit its evidence through affirmative declarations, shortly after
8  which it must prepare for a contested evidentiary hearing on that
9  evidence while simultaneously preparing for trial.  (ECF 341.)
10 Moreover, Ayvazyan's ex parte application to hold a Kastigar hearing
11 on a shortened schedule did not meet the requirements for the rushed
12 pace he sought.  He was required to show that he was "without fault
13 in creating the crisis that requires ex parte relief, or that the
14 crisis occurred as a result of excusable neglect."  See Mission Power
15 Engineering Co. v. Continental Cas. Co., 883 F. Supp. 488, 492 (C.D.
16 Cal. 1995).  Far from being without fault, Ayvazyan is squarely to
17 blame for the "crisis" that he claimed required expedited briefing.
18 The factual premise of his Kastigar motion is that on October 19-20,
19 2020 at Miami International Airport, "Customs and Border Patrol
20 officers (under the direction of the FBI and Agent Palmerton) coerced
21 Terabelian and Ayvazyan into sharing passcodes to the phones in their
22 possession."  (ECF 338 at 10.)  The admissibility of evidence derived
23 from this event – and its Fifth Amendment implications - was
24 litigated extensively.  In the course of this litigation, Ayvazyan's
25 March 8, 2021 motion to suppress sought relief under the fruit of the
26 poisonous tree doctrine, not remedies under Kastigar.  (See ECF 135
27 at 6 (seeking suppression of "direct and indirect fruits of that
28 evidence); and 23 ("[b]oth direct and indirect fruits of an unlawful

1    search (the 'fruit of the poisonous tree') should be suppressed".)

2    It was not until weeks _after_ the Court's ruling on Ayvazyan's motion

3    to suppress, which did not grant the entirety of the relief that he

4    sought, that Ayvazyan sought a Kastigar hearing on an unreasonably

5    expedited schedule.

6        To the extent the Court determines a Kastigar hearing should be

7    held before trial, the government respectfully requests that the

8    Court do so under a full briefing schedule, which would enable the

9    parties to adequately prepare, and continue the trial.  The Speedy

10   Trial Act permits the Court to continue the trial beyond the current

11   June 15, 2021 date, since the multitude of motions filed in this case

12   have resulted in automatic exclusions of time.  18 U.S.C. § 3161(h)

13   (the period resulting "from any pretrial motion, from the filing of

14   the motion through the conclusion of the hearing on, or other prompt

15   disposition of, such motion" shall be excluded); see also United

16   States v. Tinkleberg, 563 U.S. 647, 656-57 (2011) (not excluding such

17   time "would significantly hinder the Speedy Trial Act's efforts to

18   secure fair and efficient criminal trial proceedings" and that

19   "pretrial motions will likely consume extra time") (citations

20   omitted).[4]

21   **III. CONCLUSION**

22       For the foregoing reasons, the Court should withdraw its order

23   scheduling a Kastigar hearing and should rule that the fruit of the

24

25   _____

26        [4] Even if one excludes motions related to protective orders,
     bond, and continuances, defendants have filed nine pre-trial motions
     (ECF 130, ECF 135, ECF 136, ECF 146, ECF 149, ECF 248, ECF 289, ECF
27   338, ECF 340) beginning on March 8, 2021 and continuing through to
     May 17, 2021.  As of the date of this filing, the time consumed by
28   these motions alone totals to 73 days of automatically excludable
     time, and counting.

poisonous tree doctrine, not Kastigar's independent source test,
applies here.  No further litigation on the Fifth Amendment violation
is necessary because the Court has already identified and suppressed
the evidence derived from any coerced statement, and, in any event,
such statements were not testimonial.  If, however, the Court applies
Kastigar, it should do so without a hearing or, at most, conduct the
hearing after trial on a timetable that permits the government
adequate time to prepare.