Ashwin J. Ram (SBN 227513)
aram@steptoe.com
Michael A. Keough (SBN 327037)
mkeough@steptoe.com
Meghan L. Newcomer (*pro hac vice*)
mnewcomer@steptoe.com
Nicholas P. Silverman (*pro hac vice*)
nsilverman@steptoe.com
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

John L. Littrell (SBN 221601)
jlittrell@bklwlaw.com
Ryan V. Fraser (SBN 272196)
rfraser@bklwlaw.com
**BIENERT KATZMAN LITTRELL
WILLIAMS, LLP**
601 W. 5th Street, Suite 720
Los Angeles, CA 90071
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

*Counsel for Defendant Marietta Terabelian*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  20-cr-579 (SVW) |
| *Plaintiff,* | **DEFENDANTS RICHARD AYVAZYAN'S AND MARIETTA TERABELIAN'S JOINT OPPOSITION TO GOVERNMENT'S APPLICATION FOR RECONSIDERATION** |
| v. | |
| RICHARD AYVAZYAN, MARIETTA TERABELIAN, *et al.,* | Hon. Stephen V. Wilson |
| *Defendants.* | Hearing Date:  May 26, 2021<br>Time:           11:00 a.m. |

1

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................... 1

I.   *KASTIGAR* APPLIES TO THE COMPELLED STATEMENTS FROM
     MIAMI INTERNATIONAL AIRPORT ................................................... 3

     A.   *KASTIGAR* APPLIES TO ACTUALLY COMPELLED
          STATEMENTS, NOT *MIRANDA* VIOLATIONS INVOLVING
          OTHERWISE VOLUNTARY STATEMENTS ........................................ 4

     B.   THE NINTH CIRCUIT AND OTHER COURTS HAVE
          REPEATEDLY REJECTED THE GOVERNMENT'S PROPOSAL
          TO LIMIT *KASTIGAR* TO DEFENDANTS "COMPELLED TO
          PROVIDE TESTIMONY THROUGH A GRANT OF
          IMMUNITY" ...................................................................................... 5

II.  THE COMPELLED STATEMENTS WERE TESTIMONIAL ........................... 9

     A.   PROVIDING DIGITAL DEVICE PASSCODES IS
          TESTIMONIAL ................................................................................. 9

     B.   THE FOREGONE CONCLUSION EXCEPTION DOES NOT
          APPLY SIMPLY BECAUSE THE DEFENDANTS WERE
          COMPELLED .................................................................................. 10

III. THE *KASTIGAR* HEARING SHOULD BE HELD AS THE COURT HAS
     SCHEDULED IT BEFORE TRIAL ..................................................... 13

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO APPLICATION FOR RECONSIDERATION

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5    *Chavez v. Martinez*,
6        538 U.S. 760 (2003) .......................................................................... 5, 6, 7

7    *In re Grand Jury Subpoena*,
8        383 F.3d 905 (9th Cir. 2004) ............................................................ 11, 12

*In re Grand Jury Subpoena*,
9        75 F.3d 446 (9th Cir. 1996) ..................................................................... 8

10   *In re Grand Jury Subpoena Dated March 25, 2011*,
11       670 F.3d 1335 (11th Cir. 2012) ..................................................... 8, 10, 12

12   *Greene v. Johnson*,
13       No.12-cv-1824, 2013 WL 950788 (S.D. Cal. Feb. 4, 2013) ..................................... 13

14   *Hoffman v. United States*,
15       341 U.S. 479 (1951) ............................................................................ 11

16   *Kastigar v. United States*,
17       406 U.S. 441 (1972) ......................................................................*passim*

18   *In re Residence in Oakland, Cal.*,
19       354 F. Supp. 3d 1010 (N.D. Cal. 2019) ...................................................... 12

20   *SEC v. Huang*,
21       No. 15-cv-269, 2015 WL 5611644 (E.D. Pa. Sept. 23, 2015) .................................... 12

22   *Subana v. Yarborough*,
23       130 F. App'x 101 (9th Cir. 2005) .............................................................. 8

24   *Trethewey v. Farmon*,
25       39 F. App'x 591 (9th Cir. 2002) .............................................................. 8

26   *United States v. Ahmed*,
27       94 F. Supp. 3d 394 (E.D.N.Y. 2015) ........................................................... 8

*United States v. Allen*,
28       864 F.3d 63 (2d Cir. 2017) .................................................................... 6

ii

OPPOSITION TO APPLICATION FOR RECONSIDERATION

*United States v. Antelope,*
395 F.3d 1128 (9th Cir. 2005) ...................................................................... 8

*United States v. Barrera,*
415 F. Supp. 3d 832 (N.D. Ill. 2019) ......................................................... 12

*United States v. Benson,*
No. 12-cr-480, 2016 WL 215233 (N.D. Cal. Jan. 19, 2016) .............. 13, 14

*United States v. Danielson,*
325 F.3d 1054 (9th Cir. 2003) .......................................................... 8, 9, 14

*United States v. Dudden,*
65 F.3d 1461 (9th Cir. 1995) ...................................................................... 13

*United States v. Garrett,*
797 F.2d 656 (8th Cir. 1986) ...................................................................... 15

*United States v. Ghailani,*
733 F.3d 29 (2d Cir. 2013)............................................................................ 7

*United States v. Ghailani,*
743 F. Supp. 2d 242 (S.D.N.Y. 2010) ...................................................... 6, 7

*United States v. Hubbell,*
530 U.S. 27 (2000)..............................................................................*passim*

*United States v. Kandik,*
633 F.2d 1334 (9th Cir. 1980) ...................................................................... 8

*United States v. Kimball,*
884 F.2d 1274 (9th Cir. 1989) ...................................................................... 8

*United States v. Macchia,*
861 F. Supp. 182 (E.D.N.Y. 1994) ............................................................ 14

*United States v. Maffei,*
No. 18-cr-174, 2019 WL 1864712 (N.D. Cal. Apr. 25, 2019) .............. 2, 10

*United States v. Montoya,*
45 F.3d 1286 (9th Cir. 1995) ...................................................................... 14

*United States v. North,*
910 F.2d 843 (D.C. Cir. 1990) .............................................................. 13, 15

OPPOSITION TO APPLICATION FOR RECONSIDERATION

*United States v. North*,
  920 F.2d 940 (D.C. Cir. 1990) ................................................................. 13

*United States v. Patane*,
  542 U.S. 630 (2004) ..................................................................... 4, 5, 7

*United States v. Sanchez*,
  334 F. Supp. 3d 1284 (N.D. Ga. 2018) ...................................................... 10

*United States v. Squillacote*,
  221 F.3d 542 (4th Cir. 2000) ................................................................. 9

*United States v. Zielezinski*,
  740 F.2d 727 (9th Cir. 1984) ................................................................ 15

*In re White Google Pixel 3 XL*,
  398 F. Supp. 3d 785 (D. Idaho 2019) ........................................................ 10

**Statutes**

28 U.S.C. § 2254(d)(1) ......................................................................... 8

iv

OPPOSITION TO APPLICATION FOR RECONSIDERATION

**PRELIMINARY STATEMENT**

The Government's *Ex Parte* Application for Reconsideration of Scheduling Order Setting *Kastigar* Hearing (Dkt. 344) ("App'n for Reconsideration") is a transparent and desperate attempt to delay the inevitable: findings of evidentiary use of tainted information, findings of non-evidentiary use of tainted information, disqualification of the prosecution team, and dismissal.  The government violated the Fifth Amendment by refusing requests for counsel, purporting to detain individual travelers indefinitely, and compelling those travelers to provide testimonial statements in violation of the Fifth Amendment.  The consequences are that the resulting information and everything directly or indirectly derived from that information are tainted and must be expunged.  And the burden is entirely on the government.

The government's arguments rest on the thinnest of reeds.  First, relying on a decade-old district court case that has never been cited out-of-circuit or agreed with by its own Circuit Court, the government tries to paint a misleading picture in its argument that applying *Kastigar* to out-of-court compelled and involuntary statements rather than testimony compelled through a grant of immunity would be a "sea change."  It wouldn't.  The government's argument based on *Miranda* violations is a red herring because as the Court's April 27, 2021 Order observed, there is a doctrinal distinction between baseline *Miranda* violations and the far narrower category of statements that are "actually coerced."  This case falls in that latter category.  The case cited by the government ignores the plain logic of *Kastigar* that there is "no justification in reason or policy" to provide greater protections to compelled in-court testimony than compelled out-of-court statements (so-called "coerced confessions").  *See infra* § I.B.  Moreover, the Ninth Circuit has rejected the government's proposed limitation to in-court testimony holding that *Kastigar* protections apply to out-of-court statements.  There is no reason to distinguish between the out-of-court compelled statements in these Ninth Circuit cases and the ones at issue here.

Second, the government strains credulity to argue that the forgone conclusion

doctrine—a standard applicable to subpoenas of information where the government already knows exactly what exists and should be produced in response to a subpoena—applies to compelling individual travelers to provide the passcodes to six digital devices merely in their possession and over 500,000 pages of data.  The Court need not read past the first case the government cites—*United States v. Hubbell*, 530 U.S. 27 (2000)—which reasoned that the act of production was protected by the Fifth Amendment (and therefore protected from derivative use) because "[t]he assembly of those documents was like telling an inquisitor the combination to a wall safe, not like being forced to surrender the key to a strongbox."  *Id.* at 43.  As a court in this circuit recently observed in holding that providing the passcode to three smartphones was testimonial, "provision of a passcode bears a striking similarity to 'telling an inquisitor the combination to a wall safe."  *United States v. Maffei*, No. 18-cr-174, 2019 WL 1864712, at *6 (N.D. Cal. Apr. 25, 2019) (quoting *Hubbell*, 530 U.S. at 43).

In the government's last-ditch effort to shield itself from inquiry, it unsurprisingly posits that the jurors, Court, defendants, government, and others should expend untold resources on a trial and ignore the majority position (including statements from the Supreme Court and Ninth Circuit) that a pre-trial *Kastigar* hearing is the preferred procedure.  The argument made by the government relies on assuming a fact pattern that *is not presented*: tainted information obtained after an investigation was substantially complete that was not put to *non-evidentiary* use in investigating, interpreting evidence, building a case, approaching witnesses, drafting indictments, and pre-trial strategy.  In this case, however, the government has already conceded that "The government's charging theory is that 'Iuliia Zhadko' is a fake identity that Defendant used as an alias to commit crimes …."[1] and testified under oath that the

---

[1] Opp'n to Mot. to Dismiss for Prosecutorial Misconduct at 17 n.11 (Dkt. 310); see also App'n for Modified Protective Order at 10-11 (Dkt. 219) (arguing government's case theory that Zhadko is "the unique synthetic identity belonging to defendant R. Ayvazyan").

source of that "charging theory" was tainted evidence.[2]  A pretrial hearing is necessary to establish just how far the taint migrated through the government's trial team and confirm that dismissal of the indictment is merited.

To the extent the government is simply arguing it cannot meet its heavy burden of proof, the defendants agree.  There is simply no basis to delay justice here. Accordingly, the court should not reconsider the *Kastigar* hearing it set and should instead require the government to produce the information requested by Manuk Grigoryan's Joinder (Dkt. 346 at 4): (1) testimony from all individuals (agents and prosecutors) who possessed, reviewed, or discussed the tainted information, along with affirmative proof that the tainted information did not affect their actions or decision-making process in any manner; (2) disclosure of the grand jury transcripts and exhibits; and (3) disclosure of proposed trial exhibits.

## I. *KASTIGAR* APPLIES TO THE COMPELLED STATEMENTS FROM MIAMI INTERNATIONAL AIRPORT

In *Kastigar v. United States*, the Supreme Court held that the Fifth Amendment prohibits the government from using testimony or other information compelled by the government "or any information directly or indirectly derived from such testimony or other information."  *Kastigar v. United States*, 406 U.S. 441 (1972); *see* Motion For *Kastigar* Hearing, To Disqualify the Prosecution Team, and To Dismiss at 4-5 (Dkt. 438).  The Supreme Court did not hold that this prohibition only applies to *some* Fifth Amendment violations.  To the contrary, the government's proposal to carve out out-of-court coerced confessions and subject them to lesser protections would undermine a key basis of the Supreme Court's holding that derivative-use immunity was sufficient for compelled testimony:

> One raising a claim under this statute need only show that he testified under a grant of immunity in order to shift to the government the heavy

---

[2] Oct. 22, 2020 Hr'g Tr. at 23-24 (Dkt. 310-6) ("[O]nce the CBP stopped for the secondary inspection, we learned that there was a photograph of Iuliia Zhadko on the digital device and we made the connection that Iuliia Zhadko was, in fact, an alias of Richard Ayvazyan.").

3

OPPOSITION TO APPLICATION FOR RECONSIDERATION

burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources.[] On the other hand, a defendant raising a coerced-confession claim under the Fifth Amendment must first prevail in a voluntariness hearing before his confession and evidence derived from it become inadmissible.[]

There can be **no justification in reason or policy** for holding that the Constitution requires an amnesty grant where, acting pursuant to statute and accompanying safeguards, testimony is compelled in exchange for immunity from use and derivative use when no such amnesty is required where the government, acting without colorable right, coerces a defendant into incriminating himself.

*Id.* at 462 (emphasis added). In other words, the Supreme Court both stated that coerced out-of-court statements require derivative exclusion *and* held that there was "no justification in reason or policy" for elevating compelled testimony protections above those accorded to coerced confessions. This is precisely what the government proposes to do here.

The government relies on a single out-of-circuit district court case to argue that applying *Kastigar* to out-of-court statements would be a "sea change in Fifth Amendment jurisprudence," because it would supposedly require the disqualification of prosecutors who are tainted by information "obtained in violation of *Miranda*." Gov't App'n for Reconsideration at 7. The government is wrong for two reasons: (1) this Court has already held that this case involves *coerced* information, not information merely obtained in violation of *Miranda*, and (2) courts including the Ninth Circuit have repeatedly applied the *Kastigar* standard to coerced out-of-court statements.

A.    ***Kastigar*** **Applies to Actually Compelled Statements, Not *Miranda* Violations Involving Otherwise Voluntary Statements**

The coerced-confessions standard applies to statements *actually compelled*[3] in violation of the Fifth Amendment, not to all *Miranda* violations. Applying the rule from *United States v. Patane*, 542 U.S. 630 (2004), this Court held in its April 27, 2021

---

[3] As noted in Ayvazyan and Terabelian's Motion, the Supreme Court equates coercion, involuntariness, and compulsion, and uses the words interchangeably. *See* Dkt. 338 at 6-7 n.7.

OPPOSITION TO APPLICATION FOR RECONSIDERATION

Order that the statements in this case met the "actually coerced" standard and were "not voluntary." Dkt. 296 at 17, 18. And as *Patane* explained, there is a large difference between "actually coerced" statements and simple *Miranda* violations:

> Unlike the Fourth Amendment's bar on unreasonable searches, the Self–Incrimination Clause is self-executing. We have repeatedly explained "that those subjected to coercive police interrogations have an automatic protection from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial." … This explicit textual protection supports a strong presumption against expanding the *Miranda* rule any further.

*Patane*, 542 U.S. at 640 (quoting *Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (plurality opinion)). Thus, the Supreme Court made clear that "those subjected to coercive police interrogations" are protected by use and derivative use immunity and that this protection for coerced statements exceeds the protection for straight-forward *Miranda* violations. Lest there be any doubt what *Chavez* meant by "automatic protection from the use of their involuntary statements (or evidence derived from their statements)," the opinion continued in the next sentence: "This protection is, in fact, coextensive with the use and derivative use immunity mandated by *Kastigar* when the government compels testimony from a reluctant witness." *Chavez*, 538 U.S. at 769-770. In sum, coerced confessions are protected by the *Kastigar* standard, but that standard does not apply to voluntary statements taken in violation of *Miranda*. Because the Court has found that the statements were involuntary, *Kastigar* applies.

**B.    The Ninth Circuit and Other Courts Have Repeatedly Rejected the Government's Proposal to Limit *Kastigar* to Defendants "Compelled to Provide Testimony Through a Grant of Immunity"**

The government's claim that applying *Kastigar* to coerced confessions would represent a "sea change" is wrong. One need look no further than the fact that the only decision the government cites that actually held that *Kastigar* does not apply to coerced confessions is a decade-old out-of-circuit district court case involving the intersection of a national security intelligence-gathering mission and the belated criminal

5

OPPOSITION TO APPLICATION FOR RECONSIDERATION

prosecution of an alleged member of Al Qaeda, who was indicted for "conspiring with Usama Bin Laden and others to kill Americans abroad by, among other means, bombing the United States embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania, bombings in which 224 people reportedly were killed and many more injured."  *See* Gov't App'n for Reconsideration at 2-3 (citing *United States v. Ghailani*, 743 F. Supp. 2d 242 (S.D.N.Y. 2010)).

This Court should not rely on the "analysis" in *Ghailani* to resolve the question whether Kastigar applies to involuntary and coerced confessions.  First, and tellingly, no circuit court and no district court outside of the Second Circuit has relied on this aspect of *Ghailani*.  Indeed, the lone circuit court case to reference *Ghailani* – *United States v. Allen*, 864 F.3d 63, 90 n.121 (2d Cir. 2017) – did so in a footnote to point out that the U.S. Supreme Court in *Chavez v. Martinez*, 538 U.S. 760, 769–70 (2003) (plurality opinion) reached a different conclusion.  *Allen*, 864 F.3d at 90, n.121 (quoting *Chavez* ("[O]ur cases provide that those subjected to coercive police interrogations have an automatic protection from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial. This protection is, in fact, coextensive with the use and derivative use immunity mandated by *Kastigar* when the government compels testimony from a reluctant witness." (citations omitted)). And even this circuit-level authority citing *Ghailani* in the context of a specifically-discussed *Kastigar* issue ultimately applied a *Kastigar* analysis to the facts of the case (concerning statements compelled by a foreign official without a promise of derivative immunity).

*Ghailani* is less than a model of analytical clarity.  *Ghailani* involved Classified Information Procedures Act filings that were heavily redacted and subject to a classified, sealed, record.  Publicly available briefing underlying the case does not make clear that the defense even squarely requested a *Kastigar* hearing with the burden on the government to prove no evidentiary or non-evidentiary uses were made of the coerced

OPPOSITION TO APPLICATION FOR RECONSIDERATION

testimony.  Indeed, even the court initially framed the parties' dispute as one over the reach of the "fruit of the poisonous tree" doctrine:

> Ghailani claims that all of his custodial statements about Abebe were coerced and obtained in violation of his right to counsel.  He argues that Abebe should be precluded from testifying at trial because that testimony would constitute "fruit of the poisonous tree"—evidence derived from his illegally obtained statements.

*Ghailani*, 743 F. Supp. 2d at 249.  Although the court later noted that the defendant "contends instead that [the cooperator] may not be called because the government has failed to establish that [the cooperator's] testimony ultimately is traceable to a source entirely independent of Ghailani's statements," and further shared its view that Ghailani's "position derives from *Kastigar v. United States*," the overwhelming majority of the decision (and remaining portion of the analysis) focused almost exclusively on the scope of the "fruit of the poisonous tree" analysis.  Tellingly, this issue was not even raised on appeal.  *See United States v. Ghailani*, 733 F.3d 29, 36 (2d Cir. 2013).

*Ghailani* advanced and was premised on the fundamentally flawed position that there were policy reasons to accord greater protection to compelled testimony than coerced confessions. 743 F. Supp. 2d at 252-53.  This position simply ignored *Kastigar*'s warning to the contrary that there was "no justification in reason or policy" to accord protections to compelled testimony beyond the use and derivative use immunity accorded to coerced confessions.  406 U.S. at 462.  Nor did *Ghailani* even attempt to address the contrary statements in *Chavez* and *Patane* (both of which indicate that coerced confessions are entitled to use and derivative use immunity under *Kastigar*).  It is, perhaps, because of these flaws that no circuit court and no district court outside of the Second Circuit has **ever** relied on *Ghailani* to apply a lower standard than *Kastigar* to involuntary and coerced statements.

In some cases, the issue of whether the *Kastigar* standard or Fourth Amendment standard applies is never raised.  Coerced confessions typically come at the end of an

7

OPPOSITION TO APPLICATION FOR RECONSIDERATION

1   investigation, not the outset, where the difference between the standards may not be

2   outcome determinative.  The government makes much of *Ghailani*'s footnote of

3   "[l]ower courts" that have "assumed" that a different doctrine applies to coerced

4   confessions, which included three Ninth Circuit cases: two unpublished habeas cases

5   (in which AEDPA required deference to the state courts' legal conclusions, *see* 28

6   U.S.C. § 2254(d)(1)) and a 1989 Sixth Amendment decision that has since been

7   supplanted by *Danielson*'s holding that *Kastigar* applies to a Sixth Amendment

8   analysis.[4]  **None** of these three cases actually or specifically addressed whether *Kastigar*

9   applies to coerced confessions.   Instead, the issue was not raised and the courts applied

10   the more well-known Fourth Amendment standard.

11          Where the issue of *Kastigar*'s application to coerced out-of-court statements has

12   actually been ruled upon by the Ninth Circuit, the court has squarely rejected the

13   government's argument that *Kastigar* is limited to defendants "compelled to provide

14   testimony through a grant of immunity."  Gov't App'n for Reconsideration at 2.  In *In*

15   *re Grand Jury Subpoena*, the Ninth Circuit held that where "officers were compelled to

16   make [] statements under threat of loss of their employment," a *Kastigar* hearing would

17   be held to protect the officers' Fifth Amendment rights.  75 F.3d 446, 447-48 (9th Cir.

18   1996).  Similarly, in *United States v. Antelope*, the court held that the Fifth Amendment

19   prohibited the government from compelling a defendant to make statements to a

20   counselor unless it accorded him "immunity … consistent with the Supreme Court's

21   opinion in *Kastigar*."  395 F.3d 1128, 1140-41 & n.5 (9th Cir. 2005); *see also United*

22   *States v. Hubbell*, 530 U.S. 27, 45 (2000) (holding that compelled to produce

23   documents required *Kastigar* protections); *In re Grand Jury Subpoena Dated March*

---

[4] *See Subana v. Yarborough*, 130 F. App'x 101 (9th Cir. 2005) (28 U.S.C. § 2254 case; no mention of *Kastigar*); *Trethewey v. Farmon*, 39 F. App'x 591 (9th Cir. 2002) (no mention of *Kastigar* and concluding that statements were voluntary); *United States v. Kimball*, 884 F.2d 1274 (9th Cir. 1989) (no mention of *Kastigar*, and since superseded in that respect by *Danielson*).  This is also true of the government's citations to *United States v. Ahmed*, 94 F. Supp. 3d 394, 438 (E.D.N.Y. 2015) and *United States v. Kandik*, 633 F.2d 1334 (9th Cir. 1980), where there was no mention, specific discussion, or analysis of *Kastigar*.

8

OPPOSITION TO APPLICATION FOR RECONSIDERATION

*25, 2011*, 670 F.3d 1335, 1350-53 (11th Cir. 2012) ("*March 2011 Subpoena*") (holding that *Kastigar* protections were necessary to compel production of decryption password). If the government cannot compel a defendant to make statements to an employer or a counselor without according *Kastigar* protections, then it cannot compel a defendant to make statements to CBP without according those protections. The Ninth Circuit has therefore closed the door on the government's proposed limitation on *Kastigar*.[5]

## II.     THE COMPELLED STATEMENTS WERE TESTIMONIAL

### A.     Providing Digital Device Passcodes Is Testimonial

The Application for Reconsideration's argument that the Fifth Amendment does not apply to the provision of phone passcodes is rebutted by the very first case it cites: *United States v. Hubbell*, 530 U.S. 27 (2000). In *Hubbell*, the Court held that an act of production was testimonial and required derivative suppression because "[t]he assembly of those documents was like telling an inquisitor the combination to a wall safe, not like being forced to surrender the key to a strongbox." 530 U.S. at 43 (holding

---

[5] In an apparent attempt to confuse the issues, the government cites to *United States v. Squillacote*, 221 F.3d 542, 558-559 (4th Cir. 2000), to support the proposition that involuntary or coerced confessions do not fall within the purview of *Kastigar*. But the Fourth Circuit's analysis in *Squillacote* concerned the government's violation of an *evidentiary privilege* by covertly wiretapping psychotherapist-privileged communications. By definition, because the participants to the conversation were not aware of the government's presence, they were not coerced or compelled by the government in any way. Nor could such conversations be described as involuntary. Ironically, while the government has reviewed attorney-client privileged communications in this case as indicated by a May 14, 2021 clawback letter regarding two such intrusions, no defendant has yet claimed an entitlement to a *Kastigar* hearing with respect to these confirmed privilege invasions. *Squillacote* simply has no bearing on the involuntary and coerced statements the government obtained at the Miami Airport in this case.

Even if *Squillacote* applied, however, the government neglects to inform the Court that the Ninth Circuit has reached the **opposite** result in an analogous case, holding that where the government intrudes on the defendant's attorney-client privilege via an out-of-court conservation and obtains privileged information, the *Kastigar* standard applies. *United States v. Danielson*, 325 F.3d 1054, 1071 (9th Cir. 2003) (noting that *Kastigar* prohibits both direct and indirect use of tainted information including informing pre-trial strategy, interpreting evidence, or focusing an investigation). It may be that the Fourth Circuit has chosen to draw a line somewhere between out-of-court privileged conversations and in-court testimony, but the Ninth Circuit has not.

OPPOSITION TO APPLICATION FOR RECONSIDERATION

that the act of production of documents was testimonial because it would be a "step in a chain of evidence"). If the combination to a wall safe is testimonial, then the passcode to a digital device is testimonial. Indeed, this was the logic of the U.S. District Court for the Northern District of California in holding that providing the passcode to three smartphones was testimonial. *United States v. Maffei*, No. 18-cr-174, 2019 WL 1864712, at *6 (N.D. Cal. Apr. 25, 2019) ("[P]rovision of a passcode bears a striking similarity to 'telling an inquisitor the combination to a wall safe.'" (quoting *Hubbell*, 530 U.S. at 43)).

Hubbell's logic does not stand alone. Courts have repeatedly held that providing the passcode to a digital device is testimonial. *See, e.g.*, *March 2011 Subpoena*, 670 F.3d at 1350-53 ("Requiring Doe to use a decryption password is most certainly more akin to requiring the production of a combination because both demand the use of the contents of the mind, and the production is accompanied by the implied factual statements [regarding the defendant's role in placing contents on and encrypting the hard drive] noted above that could prove to be incriminatory."); *In re White Google Pixel 3 XL*, 398 F. Supp. 3d 785, 793 (D. Idaho 2019) ("caselaw makes a clear distinction between biometric features and passcodes on the basis that passcodes are testimonial."); *United States v. Sanchez*, 334 F. Supp. 3d 1284, 1295 (N.D. Ga. 2018) (holding production of iPhone passcodes was testimonial).

## B.   The Foregone Conclusion Exception Does Not Apply Simply Because the Defendants Were Compelled

The government argues that the "foregone conclusion" exception applies to the contents of the six digital devices at issue. App'n for Reconsideration at 9-10. This argument is fundamentally flawed from the outset. The defendants are aware of no case that has applied the foregone conclusion exception where the ownership or use of the devices at issue was contested. Here, the parties dispute both who owns the devices at issue and whether the devices are used by non-owners who would bear responsibility for their contents. *See, e.g.*, Mot. to Dismiss for Prosecutorial Misconduct at 4 (Dkt.

10

OPPOSITION TO APPLICATION FOR RECONSIDERATION

289) (arguing that the government's attribution of phones' content to Ayvazyan was incorrect); *id.* at 16 (arguing that because of the evidence that phones were passed around rather than used by the account holder, mere ownership would not establish responsibility for the phones' content); Opp'n to Mot. to Dismiss at 17 n.12 (Dkt. 310) (attributing ownership and use of disputed phones to Ayvazyan); Reply Supp. Mot. to Dismiss at 16 (arguing that evidence of third parties' responsibility was exculpatory); Mot. to Supp. at 6 (Dkt. 135) (arguing that phones belonged to Ayvazyan's business associate).[6]  The fact that Terabelian and Ayvazyan, under compulsion, confessed to knowing the passcodes to the devices was a statement that "would furnish a link in the chain of evidence needed to prosecute the claimant[s] for a federal crime," and is therefore testimonial and protected by the Fifth Amendment.  *Hubbell*, 530 U.S. at 38 (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)).  The Court need not delve into the morass of the foregone conclusion exception because the link-in-the-chain rule applies.

Moreover, the foregone conclusion exception does not apply because the government has not carried its burden to prove with reasonable particularity that it has such extensive knowledge of the documents produced that the "existence, possession, and authenticity of the documents" were a foregone conclusion before the act of production and "the witness adds little or nothing to the sum total of the Government's information by conceding that he in fact has the documents …."  *In re Grand Jury Subpoena*, 383 F.3d 905, 910 (9th Cir. 2004).  In *Grand Jury Subpoena*, the Ninth Circuit emphasized that the government must carry its burden of proof by

---

[6] The government misrepresents the evidence in its argument that this is not disputed citing paragraph 18 of Ayvazyan's Declaration (Dkt. 134) to argue that he has consistently claimed that all of the phones in question were his.  That paragraph in fact, states the opposite: "Officer Smith next removed several phones, and asked who the phones belonged to. **I explained that these phones belonged to my business associate** and that they had given the phones to me for the trip."  Dkt. 134 ¶ 18 (emphasis added).  Regardless of ownership, the key questions are access and use.  Even if the government's misrepresentation were correct, Ayvazyan's provision of passcodes in a case allegedly involving shared phones registered to non-users would be a link in the chain of evidence to demonstrate that he was one of the users of the phones found in his possession.

11

OPPOSITION TO APPLICATION FOR RECONSIDERATION

"establish[ing] the existence of the documents sought and [the individual]'s possession of them with 'reasonable particularity' before the existence and possession of the documents could be considered a foregone conclusion and production therefore would not be testimonial."  383 F.3d at 910.

The government does not come close to demonstrating extensive knowledge with reasonable particularity.  Its entire argument is that (1) the phones were recovered on Ayvazyan's and Terabelian's persons and (2) that they knew and divulged the passcodes to the devices.  App'n for Reconsideration at 9-10.  Were the government correct that these facts are sufficient, it would open a gaping hole in the protection for phone passcodes because this is true of every compelled passcode case.  The "exception" would eat the rule.  Indeed, courts have repeatedly and emphatically rejected the government's contention that these facts (one of which was not obtained until after compulsion)[7] are sufficient to justify compelling digital device passcodes. *See, e.g.*, *In re Residence in Oakland, Cal.*, 354 F. Supp. 3d 1010, 1017-18 (N.D. Cal. 2019) (holding that in light of the breadth of data on smartphones and the increased production, "the Government inherently lack[ed] the requisite prior knowledge of the information and documents"); *United States v. Barrera*, 415 F. Supp. 3d 832, 838 n.2 (N.D. Ill. 2019) (foregone conclusion exception "does not apply, as the government does not know exactly all the items it expects to find on this particular cell phone."); *SEC v. Huang*, No. 15-cv-269, 2015 WL 5611644, at *3 (E.D. Pa. Sept. 23, 2015) (foregone conclusion exception did not apply to smart phones because SEC could only show possession and "sole use[] and possess[ion]," not the existence of the requested documents on the phones); *see also March 2011 Subpoena*, 670 F.3d at 1348 (rejecting

---

[7] The fact that the defendants divulged the passcodes **after coercion** is irrelevant to the foregone conclusion doctrine, which under Ninth Circuit law looks only to the government's quantum of evidence **before** compulsion, not to what the compulsion reveals.  *See Grand Jury Subpoena*, 383 F.3d at 910 ("When deciding whether the government has met its burdens of production and proof, courts should look to the quantum of information possessed by the government before it issued the relevant subpoena.") (cleaned up).  When the government compelled the passcodes, the government did not know who owned or used the six digital devices in question.

OPPOSITION TO APPLICATION FOR RECONSIDERATION

foregone conclusion exception application to hard drive encryption key because the government must demonstrate that the digital files are foregone conclusions and "categorical requests for documents the Government anticipates are likely to exist simply will not suffice" under foregone conclusion exception). Indeed, one need look no further to the passcode to a wall safe referenced in *Hubble*. If "telling an inquisitor the combination to a wall safe," 530 U.S. at 43, is not a foregone conclusion despite the obvious possession of the wall safe and divulging knowledge of its combination, then telling the inquisitor the passcodes to digital devices is not a foregone conclusion. The Court should therefore reject the government's meritless invitation to drastically diminish individual liberties over digital devices.

## III.    THE *KASTIGAR* HEARING SHOULD BE HELD AS THE COURT HAS SCHEDULED IT BEFORE TRIAL

The Supreme Court stated in *Kastigar* that part of the "heavy burden" "impose[d] on the prosecution [is] the affirmative duty to prove that the evidence it *proposes to use* is derived from a legitimate source wholly independent of the compelled testimony." 406 U.S. at 460 (emphasis added). It would be nonsensical to impose a duty to disprove the taint of proposed evidence after that evidence has already been offered, thus courts in this circuit have commonly noted that *Kastigar* hearings are held before trial. *E.g.*, *United States v. Dudden*, 65 F.3d 1461, 1468 (9th Cir. 1995) ("Before trial, the government must prove the independent sources [of any evidence it intends to use] by a preponderance of the evidence" at a Kastigar hearing); *United States v. Benson*, No. 12-cr-480, 2016 WL 215233 (N.D. Cal. Jan. 19, 2016) (*Kastigar* hearing held before trial); *Greene v. Johnson*, No.12-cv-1824, 2013 WL 950788, at *17 (S.D. Cal. Feb. 4, 2013) ("The government must prove the independent nature of its sources before trial by a preponderance of the evidence and a *Kastigar* hearing is usually required to determine if the government has met its burden."). The Ninth Circuit is not alone in holding *Kastigar* hearings before trial. *See United States v. North*, 910 F.2d 843, 854, *on pet. for reh'g*, 920 F.2d 940 (D.C. Cir. 1990) ("A pre-trial hearing is the

13

OPPOSITION TO APPLICATION FOR RECONSIDERATION

most common choice."); *United States v. Macchia*, 861 F. Supp. 182, 189 (E.D.N.Y. 1994) (stating "under normal circumstances a *Kastigar* hearing should be conducted before trial").

A pre-trial hearing is the better practice because *Kastigar* requires the government to prove that it has not made evidentiary *or non-evidentiary use* of the tainted information. *United States v. Danielson*, 325 F.3d 1054, 1072 (9th Cir. 2003) ("[The government] must show … that all of its pre-trial and trial strategy was based on independent sources."). It is telling that the government has failed to even mention the non-evidentiary use prohibition in its application for reconsideration. Strategy in the non-evidentiary use context "is a broad term that includes, but is not limited to, such things as decisions about the scope and nature of the investigation, about what witnesses to call (and in what order), about what questions to ask (and in what order), about what lines of defense to anticipate in presenting the case in chief, and about what to save for possible rebuttal." *Id.*; *United States v. Montoya*, 45 F.3d 1286, 1293 (9th Cir. 1995) ("The focus of the inquiry under *Kastigar* is whether the immunized testimony was in any way used to build a case against [the defendants].").

As demonstrated by the recent *United States v. Benson* case out of the Northern District of California, the tainted information will require the disqualification of the case agents and prosecutors who were exposed to tainted information at the outset of the investigation and had their opinions and mindset irreparably tainted. *See* Dkt. 338 at 15-16 (summarizing *Benson* analysis). Even where the taint occurred after a substantial portion of the investigation, "binding precedent does indeed cover non-evidentiary uses, including adjustments to trial strategy in light of knowledge of such statements." *Benson*, 2016 WL 215233, at *4. And because the tainted trial prosecutors could not disprove such adjustments, they had to be disqualified (and the case was later dismissed). *Id.* This case presents an even stronger argument for disqualification and dismissal. The lead case agent has testified under oath to the importance of the tainted evidence. The government has refused to disclose the extent

14

OPPOSITION TO APPLICATION FOR RECONSIDERATION

1   of the taint, which occurred early in the investigation, and the government has

2   repeatedly used the tainted evidence in court filings, indictments, affidavits, and witness

3   interviews.  Disproving non-evidentiary use is impossible.

4       Where prosecutors' impressions have been informed by tainted information, their

5   judgments and decisions are tainted and they must be removed before going through the

6   expense and burden of trial.  Under the circumstances, the government's claim of

7   "judicial economy" is without merit for the two reasons identified by the D.C. Circuit in

8   explaining why "[a] pre-trial hearing is the most common choice": (1) if the grand jury

9   process was tainted, then the indictment must be dismissed, and (2) if the trial turns out

10  to be tainted, then the defendants will be entitled to a new trial.  *See North*, 910 F.2d at

11  854.

12      Indictments tainted by information obtained in violation of the Fifth Amendment

13  requires dismissal. *See United States v. Zielezinski*, 740 F.2d 727, 733–34 (9th Cir.

14  1984) ("We cannot permit convictions to stand where indictments are tainted, and we

15  must satisfy ourselves that prosecutors truly relied upon independent sources. . . . The

16  government cannot simply provide transcripts to the court, *in camera*, and assume that

17  it has met its *Kastigar* burden. Only a hearing can convincingly establish that the

18  command of the Fifth Amendment has been satisfied."); *United States v. Garrett*, 797

19  F.2d 656, 664 (8th Cir. 1986) ("Indictments which rest upon evidence which is directly

20  or indirectly the product of compelled testimony are unconstitutional. . . . Requiring the

21  district court to hold an evidentiary hearing at which the government, confronted by

22  defense counsel, must affirmatively demonstrate the independent source of the evidence

23  upon which the indictment is based, will provide the defendant with the only

24  meaningful method and opportunity to prove a violation of his fifth amendment

25  privilege.").

26      This prohibition extends not just to evidentiary use of tainted information to

27  obtain the indictment, but also to non-evidentiary use of tainted information to

28  strategize about the indictment and case more broadly.  *See* Joint Mot. for *Kastigar*

15

OPPOSITION TO APPLICATION FOR RECONSIDERATION

Hearing, to Disqualify Prosecution Team, and to Dismiss at 8-11 (Dkt. 338) (summarizing prohibited uses with citations to authority).  The government has already effectively conceded that its indictments are tainted: "The government's charging theory is that 'Iuliia Zhadko' is a fake identity that Defendant used as an alias to commit crimes …."  Opp'n to Mot. to Dismiss for Prosecutorial Misconduct at 17 n.11 (Dkt. 310); *see also* App'n for Modified Protective Order at 10-11 (Dkt. 219) (arguing government's case theory that Zhadko is "the unique synthetic identity belonging to defendant R. Ayvazyan").  S.A. Palmerton testified under oath that the source of that "charging theory" was tainted evidence: "[O]nce the CBP stopped for the secondary inspection, we learned that there was a photograph of Iuliia Zhadko on the digital device and we made the connection that Iuliia Zhadko was, in fact, an alias of Richard Ayvazyan."  Dkt. 310-6 at 23-24 (emphasis added).  While the government has not yet produced the transcripts and exhibits to show how far the taint extended, it is far enough to require dismissal of the indictments.  The only question is whether those indictments are dismissed before or after trial.

Any trial without a preceding *Kastigar* hearing would be an unnecessary waste of resources of the jurors, the Court, the defendants, the government, and everyone else involved.  There would be constant sidebars to discuss the taint of nearly every exhibit and witness statement making social distancing impossible and exacerbating the stress and frustration of jurors.  These decisions would have to be made on the fly without insight from which agents and prosecutors were aware of the evidence and used it to pursue investigatory leads, prepare witnesses, choose evidence, or otherwise spread taint throughout the case.  *See* Dkt. 338 at 8-9 (listing prohibited evidentiary and non-evidentiary uses with supporting citations).  Moreover, if that trial ended in a conviction, a *Kastigar* hearing would be necessary and any conviction would likely be vacated by the Court because of the extent of the taint at the core of the government's case theory, and the government's admissions about the investigation that followed that taint.

OPPOSITION TO APPLICATION FOR RECONSIDERATION

The government's application really comes down to a desire to hide its strategic choices.  The government argues it will be prejudiced by compiling its evidence[8] and submitting declarations about its investigation.  Ayvazyan has been seeking information relating to the *Kastigar* issue *for weeks*.  The government failed to timely respond to these requests and refused to provide a substantive response.  Dkt. 338-3.  When the government finally responded (refusing to provide the information), Dkt. 338-4, Ayvazyan and Terabelian filed this motion that very night.  The government has had ample time to compile the requested information and it chose not to do so.[9]

The government took an enormous gamble by compelling statements in violation of the Fifth Amendment. It has now lost that gamble, see Apr. 27, 2021 Order (Dkt. 296), and the taint of the Miami airport stop has permeated the government's case over the last seven months.  A pre-trial *Kastigar* hearing is necessary, the government's application for reconsideration should be denied, and the government should be ordered to produce the information requested in Manuk Grigoryan's Joinder (Dkt. 346 at 4): (1) testimony from all individuals (agents and prosecutors) who possessed, reviewed, or discussed the tainted information, along with affirmative proof that the tainted information did not affect their actions or decision-making process in any manner; (2) disclosure of the grand jury transcripts and exhibits; and (3) disclosure of proposed trial exhibits (which are already due to be produced on June 1).

---

[8] The government's argument that "it is almost impossible to predict the evidence that will be admitted at trial" is nonsensical given that the government claimed to be "ready to be proceed to trial" on April 5, 2021.  *See* Dkt. 267-2.  It is hard to fathom how the government could be ready to proceed to trial, yet not know which exhibits it intends to use in its case-in-chief or their admissibility.  Furthermore, the *Kastigar* hearing is scheduled to take place less than a week before the government's exhibit list is due—not to mention six months after this case was indicted and more than two months after the Court ordered discovery deadline.  At this point, the government should know with a reasonable degree of certainty which exhibits it intends to introduce in its case-in-chief.

[9] The government suggests yet another continuance.  The defendants, who objected to the first two continuances, object once again.  A third continuance would be unfair and a violation of the defendants' constitutional and statutory rights.  The government has had six months to prepare for trial.  It does not need more time.

17

OPPOSITION TO APPLICATION FOR RECONSIDERATION

Dated:   May 20, 2021          Respectfully submitted,

**STEPTOE & JOHNSON LLP**

*/s/ Ashwin J. Ram*
Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Meghan L. Newcomer (*pro hac vice*)
*mnewcomer@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

**BIENERT KATZMAN LITTRELL WILLIAMS, LLP**

*/s/ John L. Littrell*
John L. Littrell (SBN 221601)
*jlittrell@bklwlaw.com*
Ryan V. Fraser (SBN 272196)
*rfraser@bklwlaw.com*
601 W. 5th Street, Suite 720
Los Angeles, CA 90071
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

*Counsel for Defendant Marietta Terabelian*

## SIGNATURE ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(i), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.