UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| Case No. | 2:20-cr-579-SVW | Date: May 21, 2021 |
|---|---|---|

| Present: The Honorable: | Stephen V. Wilson, U.S. District Judge |
|---|---|

Interpreter    NA

| Paul M. Cruz | N/A | N/A |
|---|---|---|
| *Deputy Clerk* | *Court Reporter / Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s) | Present | Cust | Bond | Attorneys for Defendants: | Present | App | Ret |
|---|---|---|---|---|---|---|---|
| Richard Ayvazyan | | | X | | | | |
| Marietta Terabelian | | | X | | | | |

**Proceedings:** ORDER RESOLVING [344] EX PARTE APPLICATION FOR RECONSIDERATION, [338] MOTION FOR KASTIGAR HEARING, [339] EX PARTE APPLICATION TO SHORTEN TIME FOR KASTIGAR HEARING, AND [346], [347], [348], [350] JOINDERS IN MOTION FOR KASTIGAR HEARING.

Before the Court is an ex parte application for reconsideration filed by the Government. Dkt. 344. The Government asks this Court to reconsider its decision to set a *Kastigar* hearing. Defendants Richard Ayvazyan and Marietta Terabelian (collectively "Defendants") oppose the Government's request. For the below reasons, the ex parte application is GRANTED IN PART. The Court will hold a *Kastigar* hearing but will do so after the trial is complete.

## I. Defendants are Entitled to a *Kastigar* Hearing.

The Court rejects the Government's argument that "a precondition for *Kastigar* relief" is that Defendants must have been "compelled to testify under a grant of immunity." Dkt. 344 at 2. To the contrary, courts in the Ninth Circuit have found that a *Kastigar* hearing is required where a defendant's testimony was compelled by means other than a grant of formal immunity. *See, e.g.*, *In re Grand Jury Subpoena*, 75 F.3d 446, 447 (9th Cir. 1996) (threat of loss of employment constituted requisite compulsion); *United States v. Dudden*, 65 F.3d 1461, 1469 (9th Cir. 1995) (compulsion by informal immunity agreement); *United States v. Anderson*, 79 F.3d 1522, 1530 (9th Cir. 1996) (explaining legal contempt could constitute requisite compulsion but finding no compulsion because defendant voluntarily waived Fifth Amendment privilege); *United States v. Benson*, 2016 WL 215233, at *1 (N.D. Cal. Jan. 19, 2016) (court ordered competency hearing constituted requisite compulsion).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

The Government suggests that the distinguishing factor here is that, unlike the cases cited above, the compulsion that Defendants were subjected to did not involve "judicial supervision." Dkt. 344 at 6 (quoting *United States v. Ghailani*, 743 F.Supp.2d 242, 253 (S.D.N.Y. 2010)).

Yet, that is a distinction without a difference. The key inquiry is whether a testimonial statement[1] was compelled, and it makes no difference whether the statement was "compelled" by legal process or "coerced" by law enforcement tactics.[2] Either way, Fifth Amendment protections are implicated.

Supreme Court authority supports this conclusion. Specifically, in describing the scope of protection under the Fifth Amendment for defendants whose statements were coerced, the Supreme Court explained that the scope is equal to that required by *Kastigar*: "[O]ur cases provide that those subjected to coercive police interrogations have an *automatic* protection from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial. This protection is, in fact, coextensive with the use and derivative use immunity mandated by *Kastigar* when the government compels testimony from a reluctant witness." *Chavez v. Martinez*, 538 U.S. 760, 769–70 (2003) (emphasis in original) (citations omitted).

The Ninth Circuit's opinion in *Anderson* further confirms the Court's conclusion. There, the court explained that the defendant "premise[d] his alleged entitlement to a *Kastigar* hearing on two distinct fifth amendment claims." 79 F.3d at 1525. The first theory was that the defendant was entitled to immunity. *See id.* at 1526. The second was that the defendant's testimony was compelled in violation of his Fifth Amendment privilege against self-incrimination. *See id.* In discussing the second theory, the Ninth Circuit expressly found that, "[i]f a defendant's statements were compelled in violation of the fifth amendment, he is entitled to a

---

[1] The Court rejects the Government's argument that the provision of cell phone passcodes was not testimonial. First, it cannot be seriously disputed that the provision of a cell phone passcode is akin to the testimonial act of "telling an inquisitor the combination to a wall safe." *United States v. Hubbell*, 530 U.S. 27, 43 (2000). Second, the "foregone conclusion" exception is inapplicable because the Government had no idea whether any files existed on the phone, let alone what specific files existed. *See, e.g.*, *In re Grand Jury Subpoena Duces Tecum Dated Mar. 25, 2011*, 670 F.3d 1335, 1347 (11th Cir. 2012) ("In [a case where the exception applied], the Government knew exactly what documents it sought to be produced, knew that they were in the possession of the attorney, and knew that they were prepared by an accountant. Here, the Government has not shown that it possessed even a remotely similar level of knowledge as to the *files* on the hard drives at the time it attempted to compel production . . . .") (emphasis in original) (citations omitted); *Matter of Residence in Oakland, California*, 354 F.Supp.3d 1010, 1017–18 (N.D. Cal. 2019) (foregone conclusion exception inapplicable to smartphone because "the Government inherently lacks the requisite prior knowledge of the information and documents that could be obtained via a search of these unknown digital devices, such that it would not be a question of mere surrender"); *United States v. Barrera*, 415 F.Supp.3d 832, 838 (N.D. Ill. 2019) ("[Foregone conclusion exception] does not apply, as the government does not know exactly all the items it expects to find on this particular cell phone.").

[2] Indeed, the Supreme Court uses the terms "compel" and "coerce" interchangeably. *See, e.g.*, *Michigan v. Tucker*, 417 U.S. 433, 448 (1974) ("Cases which involve the Self-Incrimination Clause must, by definition, involve an element of coercion, since the Clause provides only that a person shall not be compelled to give evidence against himself.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

*Kastigar* hearing . . . ." *Id.* At no point did the Ninth Circuit limit the applicability of *Kastigar* to cases where a defendant was compelled by means of "immunity" or any other legal process. *See generally id.*

The Government argues that requiring a *Kastigar* hearing here would "convert[] every *Miranda* violation into the basis for a *Kastigar* hearing." Dkt. 344 at 3. However, the Court is not requiring a *Kastigar* hearing because there was a *Miranda* violation. Rather, the Court is requiring a *Kastigar* hearing because Defendants were *actually coerced* into providing their passcodes.

Indeed, case law makes it clear that the remedies for actual coercion in violation of the Fifth Amendment are greater than those for violations of *Miranda*, which is a prophylactic rule, not a Constitutional one. As the Supreme Court explained in *United States v. Patane*, a *Miranda* violation creates a "presumption of coercion" that prevents the introduction of statements only in the Government's case-in-chief. 542 U.S. 630, 639; *see also id.* at 644 ("[S]tatements taken without sufficient *Miranda* warnings are presumed to have been coerced only for certain purposes and then only when necessary to protect the privilege against self-incrimination."). Because a *Miranda* violation does not require a finding of actual coercion—*i.e.*, the core of the Fifth Amendment's self-incrimination clause, *see Tucker*, 417 U.S. at 448 ("Cases which involve the Self-Incrimination Clause must, by definition, involve an element of coercion, since the Clause provides only that a person shall not be compelled to give evidence against himself.")—the remedy for a *Miranda* violation is more limited. For example, "statements taken without Miranda warnings (though not actually compelled) can be used to impeach a defendant's testimony at trial." *Patane*, 542 U.S. at 639. Moreover, the physical fruits of a standalone *Miranda* violation need not be suppressed. *See id.* at 644.

Where there is actual coercion, however, defendants are afforded the full panoply of Fifth Amendment protection. That includes suppressing fruits of the coerced statements. *See id.* ("[T]he Court requires the exclusion of the physical fruit of actually coerced statements . . . ."). It also includes "protection from the use of the[] involuntary statements (*or evidence derived from [those] statements*) in any subsequent criminal trial." *Chavez*, 538 U.S. at 769 (emphasis added).

Accordingly, a *Miranda* violation does not, in and of itself, entitle a defendant to a *Kastigar* hearing. Rather, such a hearing is required only upon a finding of actual coercion.

Here, the Court already found that Defendants were actually coerced into providing their passcodes. *See* Dkt. 296 at 17–18. Thus, because Defendants' statements were "compelled in violation of the fifth amendment, [they] [are] entitled to a *Kastigar* hearing." *Anderson*, 79 F.3d at 1526.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

**II.     The Court Will Defer the *Kastigar* Hearing Until After the Trial.**

The Court finds that the most prudent course of action is to hold a *Kastigar* hearing after trial. First, trial in this case is a little over three weeks away, and there is insufficient time for the parties to prepare for—and the Court to conduct—a thorough *Kastigar* hearing. This is partially the Defendants' doing: Defendants have been on notice of the Court's finding of actual coercion since April 27, 2021, but they waited three weeks to file their motion for a *Kastigar* hearing.[3]

Defendants object to holding a *Kastigar* hearing post-trial, but courts have discretion to hold the *Kastigar* hearing "pre-trial, post-trial, mid-trial (as evidence is offered), or it may employ some combination of these methods."[4] *United States v. Kilroy*, 27 F.3d 679, 686–87 (D.C. Cir. 1994); *see also United States v. Allen*, 864 F.3d 63, 78 (2d Cir. 2017) (reviewing district court's findings made at post-trial *Kastigar* hearing); *United States v. Volpe*, 42 F.Supp.2d 204, 219 (E.D.N.Y. 1999) ("[T]he court has discretion to hold the [*Kastigar*] hearing before, during, or after the trial . . . .").

Second, a post-trial *Kastigar* hearing will be more focused and tailored to the actual evidence in this case than a pre-trial hearing would be. Given the volume of evidence in this case, a pre-trial *Kastigar* hearing may require the Court to make findings about evidence, witness interviews, and prosecutorial decisions that ultimately will have no bearing on the trial. And resolving *Kastigar* issues during trial would be unduly disruptive to the fact-finding process. Accordingly, the Court finds it more appropriate to resolve the *Kastigar* issue after trial. *See Kilroy*, 27 F.3d at 687 (finding district court "wisely" deferred some *Kastigar* issues until "the record became concrete and not merely predictive").

Accordingly, the Court will hold a *Kastigar* hearing on a date to be determined after trial.

---

[3] Defendants suggest that they waited to file their motion because the Government had not yet responded to Defendants' May 7, 2021 letter regarding the *Kastigar* issue. It is not clear why—under Defendants' theory of the scope of *Kastigar*—Defendants needed to wait for the Government to respond to that letter. After all, the Defendants' position is that the Government bears the entire burden of disproving any and all use of the evidence seized from Defendants' cell phones. *See* Dkt. 338 at 1 ("[The Government] bears the affirmative duty of disproving *any* use of either the compelled statements or any information or evidence directly or indirectly derived from those statements."); *id.* at 8 ("[T]he onus is on the government."). Given that position, a simple motion explaining that Defendants are entitled to a *Kastigar* hearing would have sufficed.

[4] The Ninth Circuit's opinion in *Dudden* does not counsel otherwise. There, the court rejected the defendant's position that the trial court should have instructed the jury on deciding whether the government breached an immunity agreement. *See Dudden*, 65 F.3d at 1469. After explaining that the issue was one for the court and not for the jury, the court stated in dicta that "the judge must determine before the trial whether the government has proven its independent sources, if necessary with a *Kastigar* hearing." *Id.* Yet, in its opinion, the Ninth Circuit expressly remanded the case to the district court to hold a *Kastigar* hearing and to set aside the conviction only if the Government failed to meet its burden at that hearing. *See id.* In other words, the Ninth Circuit approved of a post-trial *Kastigar* hearing. After all, if a pre-trial hearing were required, the Ninth Circuit would have simply vacated the conviction and ordered a *Kastigar* hearing followed by—if necessary—a new trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

**III.    The Co-Defendants Are Not Entitled to a *Kastigar* Hearing.**

After Defendants filed their motion for a *Kastigar* hearing, nearly all of the co-defendants in this case joined that motion. *See* Dkts. 346 (joinder by Manuk Grigoryan); 347 (joinder by Vahe Dadyan); 348 (joinder by Edvard Paronyan); 350 (joinder by Artur Ayvazyan and Tamara Dadyan).

These co-defendants are not permitted to join the motion and will not be entitled to a *Kastigar* hearing. It is bedrock Fifth Amendment law that "the privilege against self-incrimination is personal to the witness." *Bowman v. United States*, 350 F.2d 913, 915 (9th Cir. 1965); *see also Moran v. Burbine*, 475 U.S. 412, 433 n.4 (1986) (explaining that Fifth Amendment privilege is "a personal one that can only be invoked by the individual whose testimony is being compelled").

Accordingly, the co-defendants' attempts to join Defendants' motion is rejected, and the post-trial *Kastigar* hearing will be limited to defendants Richard Ayvazyan and Marietta Terabelian.

**IV.    Conclusion.**

For the foregoing reasons, the Government's ex parte application to reconsider the Court's prior order, Dkt. 344, is GRANTED IN PART. The *Kastigar* hearing set for May 26, 2021 at 11:00 a.m. is hereby VACATED. The Court will hold a *Kastigar* hearing limited to defendants Richard Ayvazyan and Marietta Terabelian on a date to be determined after trial. Defendants' motion for a *Kastigar* hearing, Dkt. 338, and their ex parte application to shorten the time for a *Kastigar* hearing, Dkt. 339, are both moot. The Court DENIES the co-defendants' requests to join the *Kastigar* hearing. *See* Dkts. 346, 347, 348, 350.

**IT IS SO ORDERED.**

:

**Initials of Deputy Clerk**