```
TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
     1100/1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527/2424/3819
     Facsimile: (213) 894-6269/0141
     E-mail:    Scott.Paetty@usdoj.gov
                Catherine.S.Ahn@usdoj.gov
                Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
     1400 New York Avenue NW, 3rd Floor
     Washington, DC 20530
     Telephone: (202) 320-0539
     Facsimile: (202) 514-0152
     E-mail:    Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>RICHARD AYVAZYAN,<br>  aka "Richard Avazian" and<br>     "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>  aka "Marietta Abelian" and<br>     "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>  aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>  aka "Mike Grigoryan," and | No. CR 20-579(A)-SVW<br><br>GOVERNMENT'S MOTION *IN LIMINE* #1 TO EXCLUDE EVIDENCE AND ARGUMENT OF ALLEGED VICTIM NEGLIGENCE AND GUARANTEES AS A DEFENSE; DECLARATION OF CATHERINE AHN |

|   |
|---|
| "Anton Kudiumov," ARMAN HAYRAPETYAN, EDVARD PARONYAN,  aka "Edvard Paronian" and   "Edward Paronyan," and VAHE DADYAN,   Defendants. |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, Assistant United States Attorneys Scott Paetty, Catherine Ahn, and Brian Faerstein, and Department of Justice Trial Attorney Christopher Fenton, hereby files this motion in limine seeking to exclude evidence and arguments concerning alleged victim negligence and any reference to loan guarantees that specific victims in this case, specifically lenders and loan processors for the Paycheck Protection Program ("PPP"), may have been provided by the United States Small Business Administration ("SBA").

This motion is based upon the attached memorandum of points and authorities, the attached declaration, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 24, 2021                Respectfully submitted,

                                   TRACY L. WILKISON
                                   Acting United States Attorney

                                   SCOTT M. GARRINGER
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                         /s/
                                   ─────────────────────────────
                                   CATHERINE AHN
                                   SCOTT PAETTY
                                   BRIAN FAERSTEIN
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The government hereby moves to exclude evidence and arguments concerning alleged victim negligence and any reference to loan guarantees that specific victims in this case, specifically lenders and loan processors for the Paycheck Protection Program ("PPP"), may have been provided by the United States Small Business Administration ("SBA").  As the guarantor of eligible PPP loans, the SBA itself further qualifies as a victim of defendants' alleged offenses, as do the banks and financial institutions that held the accounts into which the fraudulent PPP and Economic Injury Disaster Loan ("EIDL") proceeds were deposited, transferred through, or received.  For the reasons described below, evidence and arguments concerning any alleged negligence on the part of the above-referenced victims, or the SBA's guarantee, are irrelevant to the question of defendants' guilt and inadmissible as a defense.

**II.    STATEMENT OF FACTS**

   **A.    Defendants' Alleged Fraud, Money-Laundering, Identity Theft, and Bank and Wire Fraud and Money-Laundering Conspiracies**

The government incorporates herein by reference the statement of facts, as they relate to the charges in this case, contained in its opposition to defendant Richard Ayvazyan's Motion in Limine #1 (ECF 357 at 2).

As relevant to this motion, the government expects that the trial evidence will show that the defendants and coconspirators took affirmative steps to submit or cause the submission of false and fraudulent information and documentation as part of defendants' alleged bank fraud, wire fraud, and money laundering conspiracies and

aggravated identity theft.  Defendants did so in order to fraudulently obtain emergency economic funds intended to, among other things, enable small businesses to keep their businesses operating and employees on payroll through the crisis of COVID-19.  These funds were authorized by the Coronavirus Aid, Relief, and Economic Security Act of 2020 ("CARES Act") (Pub. L. 116-136), and distributed by the SBA through the EIDL program as well as through SBA-approved PPP lenders and processors.  (See First Superseding Indictment ¶¶ 10-18 (ECF 154).)

Defendants used numerous synthetic and false identities of individuals and businesses to submit, and cause to be submitted, PPP and EIDL applications.  Defendants and coconspirators then moved the fraudulent loan proceeds into and through accounts, including accounts opened in names other than their own.  (See e.g., id. ¶¶ 1, 31(a)-(b), 31(f), 43-51, 61-63.)  By so doing, they concealed the original source of the fraudulent funds and used the funds for expenses that were prohibited by the requirements of the PPP.  (Id.)  When financial institutions froze the funds in accounts opened in the names of stolen identities, defendants such as Tamara Dadyan attempted to continue their fraud by repeatedly making calls to the financial institution and repeating her false representations.  (Id. ¶¶ 61-62.)

### B. The Structure of the PPP

Following the enactment of the CARES Act, the SBA issued interim final rules establishing and regulating the PPP.[1]  See SBA, Interim

---

[1] In January 2021, the SBA issued an interim final rule announcing a second round of PPP loans authorized by section 311 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues
*(footnote cont'd on next page)*

Final Rules, 85 Fed. Reg. 20811 (April 15, 2020) (the "First Rule") and 85 Fed. Reg. 33010 (June 1, 2020) (the "Lender Rule"). The SBA recognized that speed was of the essence in distributing COVID-19-related economic relief. "The intent of the [CARES] Act is that SBA provide relief to America's small businesses expeditiously, which is expressed in the Act by giving all lenders delegated authority and streamlining the requirements of the [SBA's] regular 7(a) loan program." Lender Rule, 85 Fed. Reg. 33011. If borrowers used PPP loans used for eligible expenses, such as payroll, the funds used for those expenses could be forgiven and the SBA guaranteed PPP lenders the remaining amount of the loan. See First Rule, 85 Fed. Reg. 20816 and SBA, Interim Final Rule, 85 Fed. Reg. 33004 (June 1, 2020) (the "Forgiveness Rule").

Given the need for expeditious distribution of PPP funds, the SBA emphasized that "lenders may rely on borrower representations" and, to the extent the application contained errors or needed further support, "the lender should work with the borrower to remedy the issue." Lender Rule, 85 Fed. Reg. 33013; see also First Rule, 85 Fed. Reg. 20815-20816. However, since "loans and loan forgiveness are provided based on the borrower's certifications and documentation provided by the borrower," the SBA has the authority to review individual PPP loans to determine if the borrower was ineligible and require additional documentation from PPP lenders. Lender Rule, 85 Fed. Reg. 33012.

The SBA further warned that it would seek repayment of lender processing fees associated with an ineligible loan, and clawback such

---

Act. See SBA, Interim Final Rule, 86 Fed. Reg. 3712 (January 14, 2021). The PPP rules and regulations discussed in this motion are limited to the first round or first draw PPP loans.

3

fees if it determined a lender had not fulfilled its obligations under PPP regulations.  Id.  Although the SBA assured PPP lenders that borrower ineligibility would not affect the SBA's guarantee of a PPP loan, the availability of that guarantee was subject to lender compliance with, among other things, the SBA's First Rule.  Lender Rule, 85 Fed. Reg. 33014.  The SBA expected lenders to abide by the due diligence and anti-money laundering program requirements of the Bank Secrecy Act, including but not limited to practices such as establishing a customer identification program, and were expected to "understand the nature and purpose of their PPP customer relationships to develop customer risk profiles."  First Rule, 85 Fed. Reg. 20815.

### C. The CARES Act Authorization of EIDL Funds

The CARES Act further authorized the SBA to distribute $10 billion in emergency EIDL grants.  15 U.S.C. § 9006(a)(6).  The CARES Act waived EIDL rules, outlined verification methods that relied on borrower representations, and permitted the SBA to approve applicants based solely on their credit score.  See 19 U.S.C. § 9009(c)(1)-(2), (d)(1), and (e)(2).  For example, the SBA could verify an applicant's eligibility for EIDL funds through a self-certification provided under penalty of perjury.  19 U.S.C. § 9009(e)(2).

### III. ARGUMENT

The Ninth Circuit recently held, in an opinion citing numerous other circuit's similar holdings, that "a victim's negligence is not a defense to . . . fraud," and "[e]vidence of lender negligence is thus not admissible as a defense . . ."  United States v. Lindsey, 850 F.3d 1009, 1014 (9th Cir. 2017) (affirming district court's decision to exclude any evidence of victim negligence and citing

4

cases from the Second, Third, Fourth, and Fifth Circuits). The Ninth Circuit has ruled against the admissibility of an individual lender's supposed negligence in numerous cases and contexts since the publication of Lindsey, including United States v. Palamarchuk, 791 Fed. Appx. 658, 660 (9th Cir. 2019) ("neither individual victim lender negligence nor an individual victim lender's intentional disregard of relevant information is a defense to mail fraud") and United States v. Ellison, 704 F. App'x 616, 620 (9th Cir. 2017) ("a victim's negligence is not a defense" to securities fraud). Through Lindsey, the Ninth Circuit resolved the debate as to inadmissibility of an individual victim lender's negligence, careless decision-making, or even reckless indifference to a fraud scheme, holding that a lender's negligence "does not mean lenders can be victimized by intentional fraudulent conduct with impunity merely because the lenders were negligent, or even because the lenders intentionally disregarded the information in a loan application. Two wrongs do not make a right." Id. A "[l]enders' negligence, or even intentional disregard, cannot excuse another's criminal fraud." Id.

Other courts have reached similar conclusions. United States v. Coyle, 63 F.3d 1239, 1244 (3d Cir. 1995) ("[T]he negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct."); United States v. Moore, 923 F.2d 910, 917 (1st Cir. 1991) ("[I]t is not a defense that the bank might have prevented its losses had it better internal controls or procedures."); United States v. Winkle, 477 F.3d 407, 418 (6th Cir. 2007) (approving the exclusion of an FDIC report that criticized the bank fraud victim's failure to detect a fraud scheme); United States v. Rennert, 374 F.3d 206, 213 (3d Cir. 2004) ("fraud victim's negligence or lack of

5

diligence in uncovering the fraud is not a defense"); <u>United States v. Thomas</u>, 377 F.3d 232, 243-44 (2d Cir. 2004) (affirming restrictions on cross of victim; rejecting defendant's argument that victim's foolishness vitiated defendant's fraudulent intent).

In the Ninth Circuit, as in other circuits, the government need not prove that a fraud scheme was calculated to deceive only persons of ordinary prudence and comprehension, as fraud statutes protect the naïve as well as the "worldly-wise," and it is immaterial whether only the most gullible victims would have been deceived. <u>United States v. Ciccone</u>, 219 F.3d 1078, 1083 (9th Cir. 2000). As discussed above, the susceptibility of a victim to a fraud scheme, including a victim financial institution, is irrelevant to a defendant's guilt or innocence. <u>United States v. Hanley</u>, 190 F.3d 1017, 1023 (9th Cir. 1999) (superseded by statute on other grounds). As explained by the Fourth Circuit in <u>United States v. Colton</u>, 231 F.3d 890 (4th Cir. 2000), "[t]he susceptibility of the victim of the fraud, in this case, a financial institution, is irrelevant to the analysis: If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. These are criminal statutes, not tort concepts." 231 F.3d at 903. Whether the institutional victim's internal controls or personnel were sufficient to detect and prevent fraud is irrelevant to the crimes charged in this case, and inadmissible as a defense.

The Ninth Circuit in <u>Lindsey</u> also rejected the argument, commonly made by defendants in fraud cases, that victim negligence is somehow relevant to materiality. As the Court held in <u>Lindsey</u>, the materiality requirement does not allow defendants to backdoor victim

negligence into a case because materiality is an objective, not subjective test. Lindsey, 850 F.3d at 1015 ("A false statement is material if it objectively had a tendency to influence, or was capable of influencing, a lender to approve a loan."); accord United States v. Peterson, 538 F.3d 1064, 1072 (9th Cir. 2008) ("'capable of influencing' is an objective test, which looks at the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end.") (internal citations and quotation marks omitted). The materiality requirement is not concerned with a statement's subjective effect, but instead on a statement's intrinsic capability to influence. Peterson, 538 F.3d at 1072. Along similar lines, the Ninth Circuit has held that a "misrepresentation may be material without inducing any actual reliance." United States v. Blixt, 548 F.3d 882, 889 (9th Cir. 2008) (internal citation omitted); see also Neder v. United States, 527 U.S. 1, 24–25 (1999) ("The common-law requirement[ ] of 'justifiable reliance' ... ha[s] no place in the federal fraud statutes.").

In the instant case, the relevant inquiry is whether: (i) defendants and coconspirators submitted fraudulent PPP and EIDL applications, opened and used bank accounts using fraudulently obtained personal or business information, and transferred the fraudulent loan proceeds in a manner that obscured their origin (or caused any of such conduct to happen); (ii) whether defendants and coconspirators had the requisite intent to defraud the SBA, PPP lenders and processors, and financial institutions holding the accounts into and through which fraudulent loan proceeds were deposited or transferred; and (iii) for the purpose of certain counts, whether the information that defendant submitted and withheld

7

from the SBA, PPP lenders and processors, and financial institutions had the natural tendency to influence or was capable of influencing them. Hindsight challenges to any of these institutional victims' internal controls are irrelevant, a waste of time, and create the risk of jury confusion. See Fed. R. Evid. 404(b).

Accordingly, this Court should prohibit defendants from introducing evidence or making arguments concerning any supposed victim negligence, including any criticism of a PPP lender, processor, or SBA's internal controls, as well as the internal controls of banks and financial institutions whose accounts were used to receive or transfer fraudulent loan proceeds. United States v. Biesiadecki, 933 F.2d 539, 544 (7th Cir. 1991) (upholding exclusion of testimony that "would have improperly shifted the jury's attention away from the knowledge and intent of [defendant] and focused instead on the beliefs of the victim of the alleged scheme to defraud").

For similar reasons, the Court should exclude any evidence or arguments concerning the SBA's guarantees to PPP lenders as a defense to the alleged fraud, money laundering, identity theft, and conspiracies.[2] The government does not know on what basis the defense would try to introduce evidence or make arguments concerning this guarantee, but any such evidence and arguments would be irrelevant to the case, a waste of time, and tend to confuse and

---

[2] The government acknowledges that facts related to the structure of the PPP, including loan forgiveness and SBA guarantees, are relevant to the alleged offenses. The government's motion is to exclude defense arguments and evidence proffering these guarantees as a defense to fraud and evidence of victim negligence (e.g., victims were less likely to scrutinize applications because of the SBA's loan guarantees). Such arguments and evidence are inadmissible for the reasons described herein.

8

mislead the jury, and as such it should be excluded.[3] Even in civil cases, were a victim's negligence might be relevant to damages, evidence of financial compensation (insurance) is inadmissible to prove negligence or wrongdoing. Fed. R. Evid. 411. This is even more true in the criminal context of the instant case, where victim negligence is irrelevant, and should therefore be excluded.

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court exclude evidence of victim negligence and SBA guarantees because it is irrelevant to the question of defendants' guilt and inadmissible as a defense.

---

[3] As noted in the attached declaration, counsel for defendant Richard Ayvazyan would not agree that it should be excluded but did not offer any grounds for seeking to introduce it. As of the date of this filing, counsel for the remaining defendants have not stated a position. See Ahn Decl. ¶ 2.

9