Ashwin J. Ram (SBN 227513)
aram@steptoe.com
Michael A. Keough (SBN 327037)
mkeough@steptoe.com
Meghan L. Newcomer (*pro hac vice*)
mnewcomer@steptoe.com
Nicholas P. Silverman (*pro hac vice*)
nsilverman@steptoe.com
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

Fred G. Minassian (SBN 170974)
fgminassian@yahoo.com
**LAW OFFICES OF FRED G.
MINASSIAN, INC.**
101 N. Brand Ave, Suite 1970
Glendale, CA 91203
Telephone: (818) 240-2444

*Counsel for Defendant Tamara Dadyan*

John L. Littrell (SBN 221601)
*jlittrell@bklwlaw.com*
Ryan V. Fraser (SBN 272196)
*rfraser@bklwlaw.com*
**BIENERT KATZMAN LITTRELL
WILLIAMS, LLP**
601 W. 5th Street, Suite 720
Los Angeles, CA 90071
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

*Counsel for Defendant Marietta Terabelian*

Thomas A. Mesereau Jr. (SBN 91182)
mesereau@mesereaulaw.com
**MESEREAU LAW GROUP, P.C.**
10100 Santa Monica Blvd., Suite 300
Los Angeles, CA 90067
Telephone: (310) 651-9960

Jennifer J. Wirsching (SBN 263141)
*wirschinglaw@outlook.com*
**ATTORNEY AT LAW**
1935 Alpha Rd, Suite 216
Glendale, CA 91208
Telephone: (424) 902-9280

*Counsel for Defendant Artur Ayvazyan*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>RICHARD AYVAZYAN,<br>MARIETTA TERABELIAN,<br>ARTUR AYVAZYAN,<br>TAMARA DADYAN,<br><br>*Defendants*. | Case No.  20-cr-579 (SVW)<br><br>**JOINT NOTICE OF MOTION AND MOTION TO EXCLUDE DIGITAL DEVICE FILES FROM DEVICES OBTAINED ON NOVEMBER 5, 2020**<br><br>Hon. Stephen V. Wilson<br><br>Current Hearing Date:    June 21, 2021<br>Requested Hearing Date: June 14, 2021<br>Time:                         11:00 a.m. |

## <u>NOTICE OF MOTION TO SUPPRESS ELECTRONIC FILES</u>

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Monday, June 14, 2021; Monday, June 21, 2021; or as soon as this counsel may be heard in Courtroom 10A of this Court at 350 W. 1st Street, 10th Floor, Los Angeles, CA 90012, Defendants Richard Ayvazyan, Marietta Terabelian, Artur Ayvazyan, and Tamara Dadyan, through undersigned counsel, will move the Court to exclude the digital device files contained in devices that were obtained on November 5, 2020 and not subject to a timely responsiveness review.

This motion is based on this notice, the accompanying memorandum of points and authorities, the declaration of Ashwin J. Ram in support, any reply that the defendants may make, such other evidence and arguments as may be presented at or prior to the hearing, and all records and files in this action.

Dated:   May 24, 2021          Respectfully submitted,

**STEPTOE & JOHNSON LLP**

*/s/ Ashwin J. Ram*
Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Meghan L. Newcomer (*pro hac vice*)
*mnewcomer@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

1
NOTICE OF MOTION TO EXCLUDE DIGITAL DEVICE FILES

1

2
*/s/ John L. Littrell*
John L. Littrell (SBN 221601)

3
*jlittrell@bklwlaw.com*
Ryan V. Fraser (SBN 272196)

4
*rfraser@bklwlaw.com*
**BIENERT KATZMAN LITTRELL**

5
**WILLIAMS, LLP**
601 W. 5th Street, Suite 720

6
Los Angeles, CA 90071

7
Telephone: (213) 528-3400

8
Facsimile: (949) 369-3701

9
*Counsel for Defendant Marietta Terabelian*

10
*/s/ Thomas A. Mesereau*

11
Thomas A. Mesereau Jr. (SBN 91182)

12
*mesereau@mesereaulaw.com*
**MESEREAU LAW GROUP, P.C.**

13
10100 Santa Monica Blvd., Suite 300

14
Los Angeles, CA 90067
Telephone: (310) 651-9960

15
Jennifer J. Wirsching (SBN 263141)

16
*wirschinglaw@outlook.com*
**ATTORNEY AT LAW**

17
1935 Alpha Rd, Suite 216

18
Glendale, CA 91208
Telephone: (424) 902-9280

19

20
*Counsel for Defendant Artur Ayvazyan*

21
*/s/ Fred G. Minassian*

22
Fred G. Minassian (SBN 170974)
*fgminassian@yahoo.com*

23
**LAW OFFICES OF FRED G. MINASSIAN, INC.**

24
101 N. Brand Ave, Suite 1970
Glendale, CA 91203

25
Telephone: (818) 240-2444

26
*Counsel for Defendant Tamara Dadyan*

27

28

2
NOTICE OF MOTION TO EXCLUDE DIGITAL DEVICE FILES

# **TABLE OF CONTENTS**

I.      LEGAL STANDARD ........................................................................................2

II.     ARGUMENT ...................................................................................................3

        A.      THE GOVERNMENT'S SEARCH WARRANT EXECUTION
                VIOLATED THE TERMS OF THE WARRANTS AND THE
                FOURTH AMENDMENT ......................................................................4

                1.      The Government Failed to Complete a Responsiveness
                        Review as Soon as Practicable and Failed to Secure a
                        Valid Extension ...........................................................................5

                2.      The Government Violated the Warrant's Requirement
                        that the Responsiveness Review Be Conducted By a
                        Law Enforcement Officer Search Team Utilizing
                        Search Protocols ..........................................................................9

        B.      THE GOVERNMENT'S SEARCH WARRANT EXECUTION
                WAS UNREASONABLE BECAUSE IT AMOUNTS TO A
                GENERAL WARRANT ......................................................................11

        C.      EXCLUSION IS PROPER UNDER RULE 16 AND THE
                DISCOVERY CUT-OFF ORDER ..........................................................13

        D.      THE ELECTRONIC FILES SHOULD BE EXCLUDED DUE TO
                *KASTIGAR* TAINT INFECTING THE REVIEW PROCESS .................16

III.    CONCLUSION ...............................................................................................16

i

MOTION TO EXCLUDE DIGITAL DEVICE FILES

# **TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*Andresen v. Maryland,*
   427 U.S. 463 (1976) ............................................................................ 3

*In re App'n for Warrant (Cunnius),*
   770 F. Supp. 2d 1138 (W.D. Wash. 2011) .................................... 9

*In re Apple iPhone,*
   31 F. Supp. 3d 159 (D.D.C. 2014) ................................... 3, 9, 10

*Armstrong v. Manzo,*
   380 U.S. 545 (1965) ............................................................................ 8

*Coolidge v. New Hampshire,*
   403 U.S. 443 (1971) ......................................................................... 10

*Entick v. Carrington,*
   19 How. St. Tr. 1029 (1765) .......................................................... 2

*Franklin v. Foxworth,*
   31 F.3d 873 (9th Cir. 1994) ......................................................... 12

*Go-Bart Importing Co. v. United States,*
   282 U.S. 344 (1931) ............................................................................ 3

*Matthews v. Eldridge,*
   424 U.S. 319 (1976) ............................................................................ 8

*In re Odys Loox Plus Tablet,*
   28 F. Supp. 3d 40 (D.D.C. 2014) .............................................. 10

*Payton v. New York,*
   445 U.S. 573 (1980) ............................................................................ 3

*Purbeck v. Wilkinson,*
   No. 21-cv-47, 2021 WL 1550563 (D. Idaho Apr. 20, 2021) ...................................... 8

*Riley v. California,*
   573 U.S. 373 (2014) ......................................................................... 11

*In re Search Warrant,*
   No. 00-cr-138, 2000 WL 1196327 (D.D.C. July 24, 2000)........................... 8

MOTION TO EXCLUDE DIGITAL DEVICE FILES

*In re Search Warrants Issued Aug. 29, 1994,*
   889 F. Supp. 296 (S.D. Ohio 1995) ............................................................. 8

*Stanford v. State of Texas,*
   379 U.S. 476 (1965) ................................................................................... 2

*United States v. Adjani,*
   452 F.3d 1140 (9th Cir. 2006) .................................................................. 12

*United States v. Bonner,*
   No. 12-cr-3429, 2013 WL 3829404 (S.D. Cal. July 23, 2013) ................................. 10

*United States v. Bridges,*
   344 F.3d 1010 (9th Cir. 2003) .................................................................... 3

*United States v. Comprehensive Drug Testing, Inc.,*
   621 F.3d 1162 (9th Cir. 2010) ................................................................. 2, 9

*United States v. Davis,*
   244 F.3d 666 (8th Cir. 2001) .................................................................... 15

*United States v. Garcia,*
   730 F. Supp. 2d 1159 (C.D. Cal. 2010) ......................................................... 14

*United States v. Garcia,*
   No. 2:10-cr-595 (C.D. Cal. July 13, 2010) ...................................................... 14

*United States v. Huntoon,*
   No. 16-cr-46, 2018 WL 1755788 (D. Ariz. Apr. 12, 2018) ................................... 11

*United States v. Kirschenblatt,*
   16 F.2d 202 (2d Cir. 1926) ................................................................... 2, 11

*United States v. Mason,*
   No. 06-cr-80, 2008 WL 281970 (S.D.N.Y. Jan. 25, 2008) ................................... 15

*United States v. Ornelas,*
   906 F.3d 1138 (9th Cir. 2018) ................................................................... 14

*United States v. Ramirez,*
   523 U.S. 65 (1998) ................................................................................. 3

*United States v. Roybal,*
   566 F.2d 1109 (9th Cir. 1977) ................................................................... 14

MOTION TO EXCLUDE DIGITAL DEVICE FILES

*United States v. Sadr*,
  No. 18-cr-224 (S.D.N.Y. Oct. 10, 2019) .................................................... 15

*United States v. Schesso*,
  730 F.3d 1040 (9th Cir. 2013) ............................................................ 3, 9

*United States v. Schwartz*,
  857 F.2d 655 (9th Cir. 1988) ................................................................ 14

*United States v. Tamura*,
  694 F.2d 591 (9th Cir. 1982) ............................................................ 2, 12

*United States v. W.R. Grace*,
  526 F.3d 499 (9th Cir. 2008) ................................................................ 14

**Other Authorities**

Fed. R. Crim. P. 16(a)(1)(E) ............................................................ 1, 4, 13, 15

Fed. R. Crim. P. 41 ...............................................................................*passim*

Michael Lesk, How Much Information Is There In the World?,
  https://chnm.gmu.edu/digitalhistory/links/pdf/introduction/0.6a.pdf........................ 13

MOTION TO EXCLUDE DIGITAL DEVICE FILES

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

The government executed broad search warrants at each of the moving defendant's homes on November 5, 2020, choosing to seize dozens of digital devices containing private information.  In the last two weeks, the government has disclosed that (1) government agents or attorneys are currently selecting their exhibits from four raw, complete devices belonging to each of the moving defendants, (2) the government did not even begin to review any of these devices[1] for responsiveness until after the Warrant's deadline passed, and (3) the government's only argument for using the totality of defendants' digital lives without a Rule 41 responsiveness review is that it obtained a post-indictment, *ex parte*, sealed extension permitting it to continue reviewing the entire device and seizing files until after trial.  There was no justification for the government's four-month delay in beginning a responsiveness review and no need to deprive the defendants of their right to be heard on an extended deprivation of property.  The government hid the proceedings from the defendants because it knew that if the presiding judge knew that the discovery cut-off was eleven days away, that trial was two months away, and that the government had failed to diligently execute the warrant, then the presiding judge would not grant an extension at all—much less allow the prosecutors unrestricted access to select trial exhibits from raw digital device data.

It simply cannot be the case that the Fourth Amendment's prohibition on general searches is circumvented this easily such that law enforcement can seize massive digital devices and obtain extensions until after a discovery cut-off and after trial that enable it to fish through the entire digital devices for evidence to use against the devices' owners.  Were the government's position correct, the exception would consume the rule and functional general searches of digital devices would become permissible.

---

[1] The government provided notice on April 26, 2021 that it intends to use four digital devices, one belonging to each of the moving defendants.  The government *did not disclose* that it had not conducted a responsiveness review.  Indeed, it is oxymoronic for the government to have decided which devices it would use *before conducting a responsiveness review* to determine which devices and files the government could seize.

1

MOTION TO EXCLUDE DIGITAL DEVICE FILES

1    The government's delayed responsiveness review strategy violates the terms of
2    the warrant, the Court's discovery order mandating production of all Rule 16 discovery
3    by March 15, the Fourth Amendment's prohibition on unreasonable execution, and the
4    prohibition of *Kastigar v. United States* and its progeny against using tainted
5    information to interpret evidence or select exhibits.  The evidence from each of the
6    digital devices seized on November 5, 2020 should therefore be excluded.

## I.    LEGAL STANDARD

8        The Fourth Amendment was enacted to prohibit the equivalent of "general
9    warrants known as writs of assistance," which "had given customs officials blanket
10   authority to search where they pleased for goods imported in violation of the British tax
11   laws." *Stanford v. State of Texas*, 379 U.S. 476, 481 (1965) (unanimous).  In *Entick v.
12   Carrington*, the "wellspring" of the right now protected by the Fourth Amendment, the
13   court had declared a warrant unlawful because it authorized seizure of "all the party's
14   papers, in the first instance."  *Id.* (quoting 19 How. St. Tr. 1029, 1064 (1765)) (noting
15   that the British House of Commons responded by passing a resolution condemning the
16   use of general warrants).  Just as *Entick* found a general seizure of books and papers to
17   be unlawful, the Fourth Amendment sought to prohibit such general warrants from
18   being executed in the future.  *Stanford*, 379 U.S. at 486 (holding unconstitutional a
19   search warrant that authorized broad seizure of a suspect's books and papers); *see also*
20   *United States v. Kirschenblatt*, 16 F.2d 202, 204 (2d Cir. 1926) (Hand, J.) ("[T]o
21   rummage at will among his papers in search of whatever will convict him, appears to us
22   to be indistinguishable from what might be done under a general warrant.").

23       In tension with the prohibition on general searches is the fact that "over-seizing is
24   an inherent part of the electronic search process."  *United States v. Comprehensive*
25   *Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc).  The Ninth Circuit
26   has therefore urged judicial officers to exercise "greater vigilance … in striking the
27   right balance between the government's interest in law enforcement and the right of
28   individuals to be free from unreasonable searches and seizures."  *Id.*  "In the

2

MOTION TO EXCLUDE DIGITAL DEVICE FILES

comparatively rare instances where documents are so intermingled that they cannot feasibly be sorted on site," officers "may apply for specific authorization for large-scale removal of material, which should be granted by the magistrate issuing the warrant only where on-site sorting is infeasible and no other practical alternative exists." *United States v. Tamura*, 694 F.2d 591, 595-96 (9th Cir. 1982) (noting that the Fourth Amendment requires executing warrants "in a manner that minimizes unwarranted intrusions upon privacy." (quoting *Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976))).

"As the Ninth Circuit has made clear, 'the reality that overseizing is an inherent part of the electronic search process' requires [courts] to 'exercise greater vigilance in protecting against the danger that the process of identifying seizable electronic evidence could become a vehicle for the government to gain access to a larger pool of data that it has no probable cause to collect.'" *In re Apple iPhone*, 31 F. Supp. 3d 159, 168 (D.D.C. 2014) (quoting *Schesso*, 730 F.3d at 1042). In search warrant execution as in all Fourth Amendment analysis, the Fourth Amendment's purpose to prevent general warrants is paramount and the protections are "to be liberally construed" in favor of individual rights. *See United States v. Bridges*, 344 F.3d 1010, 1014 & n.1 (9th Cir. 2003) (quoting *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 357 (1931)); *see also United States v. Ramirez*, 523 U.S. 65, 71 (1998); *Payton v. New York*, 445 U.S. 573, 583 (1980). Any attempt to exploit Fed. R. Crim. P. 41 to turn a temporary overseizure into a general warrant must therefore be rejected.

## II. ARGUMENT

The government seized the digital devices at issue almost seven months ago. During Friday's hearing, the government revealed that it *still* has not conducted the responsiveness reviews required by Fed. R. Crim. P. 41 and the Fourth Amendment to determine which files are responsive to the warrant and subject to seizure. Instead of having a search team conduct a responsiveness review pursuant to a search protocol and seizing only a portion of each device (as the Warrant requires), in this case, the

3

MOTION TO EXCLUDE DIGITAL DEVICE FILES

government—apparently including attorneys who are not part of the search team as defined by the Warrants—is selecting its trial exhibits from the *entirety of massive digital devices and announced that it intends to deem the files it selects as exhibits "seized."* That is contrary to the letter and spirit of the Fourth Amendment, Federal Rules of Criminal Procedure 16 and 41, and this Court's discovery cut-off, which required production of all discovery by March 15, 2020—precisely to avoid this sort of last-minute addition of evidence.

The government's search warrant execution strategy in this case was to exploit the off-site responsiveness review permitted by Fed. R. Crim. P. 41 to seize entire digital devices (i.e., execute a general warrant seizing all of one's papers), then delay that responsiveness review until after the government had selected which of the files on those devices it wanted to introduce into evidence. The government flouted this Court's discovery order, ignored the prosecution's Rule 16 obligation to produce the portion of the device that had been seized by March 15, 2021, and undermined the Fourth Amendment by seeking to accomplish exactly what it was designed to prohibit: a general warrant in which the government is free to peruse at its leisure the entirety of a person's life use any digital file in a person's possession against them. Exclusion of the files—none of which were timely seized in a responsiveness review—is therefore proper under Rule 16 and the discovery cut-off order and under the Fourth Amendment.

## A. The Government's Search Warrant Execution Violated the Terms of the Warrants and the Fourth Amendment

The Warrants (Ram Decl. Ex. A, Ex. B) imposed two important limitations on the government's review of seized digital devices. First, the Warrants required a responsiveness review be completed "as soon as is practicable" and no later than March 5, 2021. Warrants Attach. B ¶ 4.a. Second, the Warrants required that a "search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant." *Id.* ¶ 4.b; *see also id.* ¶ 5 (noting that after law enforcement officials conducted the responsiveness review,

government attorneys could review the resulting "seized or copied" data).  Rather than execute a responsiveness review using search protocols, the government sought an unlawful extension that would give the prosecutors unfettered access to the raw data throughout trial.  Because the government failed to complete a responsiveness review as soon as practicable, failed to secure a valid extension, and failed to utilize proper search protocols, exclusion is appropriate.

### 1. The Government Failed to Complete a Responsiveness Review as Soon as Practicable and Failed to Secure a Valid Extension

The Fourth Amendment and Fed. R. Crim. P. 41 permit the *temporary* overseizure of electronic data to identify the limited files within that data that fall within the scope of the warrant's probable cause.  Fed. R. Crim. P. 41(e)(2)(B).  In order to avoid "frequent petitions to the court for additional time," Rule 41 does not impose a one-size-fits-all deadline and instead permits "a judge [to] impos[e] a deadline … at the time the warrant is issued."  Fed. R. Crim. P. 41 adv. comm. note (2009).  In this case, the Warrant instructed that "[t]he search team shall complete the search of [digital devices or forensic copies thereof] as soon as is practicable but not to exceed 120 days from the date of execution of the warrant."  Warrant Attach. B ¶ 4.a.  The 120-day period expired on March 5, 2020.

The government failed to complete its review as soon as practicable.  When the 120-day period expired, the government had not even *begun* a responsiveness review of the digital devices at issue.  *See* Sealed *Ex Parte* App'n for Extension ¶ 8.a (Mar. 4, 2021) (DOJ_PROD_0000162873) (Ram Decl. Ex. C) ("Extension App'n") (claiming that the only devices that had begun a responsiveness review were tainted devices from the Miami airport stop and that the remaining devices were "still being imaged and process by the lab and reviewed by the filter team").[2]  This "backlog in the imaging and

---

[2] This application was produced to the defendants on May 13, 2021 along with the government's motion to file its ex parte application under seal.  *See* Ram Decl. Ex. D (DOJ_PROD_0000162894) ("Sealing App'n").  A substantially identical application was filed with respect to each of the devices at issue.

review process" was the government's own doing; it was "caused" by the decision to seize approximately 50 devices during the ransacking of the defendants' houses. *Id.* ¶ 8.d.  Although the government blamed the FBI forensic team's resources being "stretched" due to important "investigations arising out of the January 6, 2021 insurrection at the U.S. Capitol," *id.* this was (at best) a red herring.  The relevant devices were seized on November 5, 2020.  Although the government has not produced the FD-302 memoranda for these devices, the memoranda for other devices show that CART was able to process the data within one week but that the government waited multiple months to submit a request.[3]  In any event, all of the relevant devices had been processed by February 1, 2020 at the latest,[4] leaving the government with over one month to complete its responsiveness review.[5]

At Friday's hearing, the government attempted to argue that it had obtained an extension and had until July to finish its responsiveness review, but that extension is invalid.  The government obtained a post-indictment extension on an *ex parte* and *sealed* basis to prevent the defendants from being heard on an additional deprivation of property.  The government's extension was obtained by deceiving the Court, withholding material facts, and seeking relief that is not authorized by any statute.  To prevent the defendants from challenging its unlawful warrant execution, the government wrongfully applied for and received permission to seal its extension request even though the underlying warrant had already been disclosed and the

---

[3] *See* Ram Decl. Ex. E (DOJ_PROD_0000153655; DOJ_PROD_0000153807; DOJ_PROD_0000153808) (Dec. 16, 2020 request to process 7 devices completed by Dec. 21, 2020; Jan. 4, 2021 request to process 6 devices completed by Jan. 7, 2021; Jan. 4, 2021 request to re-process 7 devices completed by Jan. 7, 2021).

[4] *See* Ram Decl. Ex. F (Feb. 1, 2021 discovery letter).

[5] The government also claimed to have utilized a filter review.  Extension App'n ¶ 8.b.  It is unclear whether this is true.  The government never asked for a filter term list and the resulting productions included both attorney-client privileged materials and privileged confidential marital communications.  Regardless of whether the government's claim is false, the government knew a filter review was necessary when it secured the Warrant and any such review would therefore have been accounted for in the 120-day limit.

MOTION TO EXCLUDE DIGITAL DEVICE FILES

1    indictment on the underlying warrant had already been returned.  The government

2    falsely informed the Court that it needed the application to be sealed—four months

3    after the devices were seized from their owners and the owners were given a copy of

4    the underlying search warrant and affidavits—"to maintain the integrity of the

5    government's ongoing investigation."  Sealing App'n at 3-4 (Ram Decl. Ex. D).  In

6    support, the government cited cases about "pre-indictment disclosure of a search

7    warrant affidavit," but they do not appear to have cited a single case or statute that

8    permits post-indictment sealing.  *Cf.* Fed. R. Crim. P. 41(f)(3) (noting that notice may

9    only be delayed "if the delay is authorized by statute").  The government further

10   misrepresented that "[t]he search warrants in this case remain under seal," only

11   disclosing that the affidavits had been produced to the defendants.  Sealing App'n at 5.

12   The government did not disclose that all of the devices were seized from the four

13   existing defendants; that the government had been ordered to produce all outstanding

14   discovery to those four defendants by March 15, 2020; and that those four defendants

15   had a May 4, 2020 trial date.  The government did not disclose these facts because it

16   knew that they would be material to denying the government's application.  Instead, the

17   government falsely assured the Court—five days before obtaining the superseding

18   indictment—that if the property owners were informed "before any additional charging

19   decisions can be made, there is a significant risk that the case would be jeopardized by,

20   among other reasons, potentially alerting additional subjects that the investigation is

21   ongoing."  *Id.*

22   The government's stated justification to prevent the defendants from being heard

23   was utterly false for two reasons.  First, as the government has trumpeted to this Court

24   it had told the defendants that the investigation was ongoing months earlier.  *See, e.g.*,

25   Gov't's Opp'n to Mot. to Dismiss at 1, Dkt. 278 (Apr. 12, 2021) ("[In a January 2021

26   email,] [t]he government put defendant on notice that he was subject to an ongoing

27   investigation ….").  The government is not free to assure one judge that its

28   investigation is so secret that property owners cannot be permitted their constitutional

7

MOTION TO EXCLUDE DIGITAL DEVICE FILES

right to notice and an opportunity to be heard while simultaneously assuring another judge that the same people are fully informed of the ongoing investigation. Second, knowledge of the ongoing investigation had nothing to do with the government's sealing. Indeed, the superseding indictment was unveiled less than one week later, and yet the government refused to produce the Extension Application and Sealing Application for *over two months thereafter*. The Extension Application revealed no privileged trial strategy or investigatory details, and there was no valid reason to seal. The government did not want the defendants to object to the unlawful bases for seizing their property, so it lied to the Court to keep them in the dark.

The defense has twice asked the government for its legal authority for proceeding on an ex parte, sealed basis after an indictment of the owners or possessors of the digital devices. The government has not responded. That is because no authority exists. *Cf. Purbeck v. Wilkinson*, No. 21-cv-47, 2021 WL 1550563, at *5 (noting that even property owners who have not yet been indicted can have a Fourth Amendment right of access); *In re Search Warrant*, No. 00-cr-138, 2000 WL 1196327, at *1 (D.D.C. July 24, 2000) (noting that the general right to unsealing affidavits derives from a defendant's constitutional right to move to suppress and therefore attaches after indictment); *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 299 & n.4 (S.D. Ohio 1995) (holding that the Fourth Amendment includes the right to examine the affidavit supporting a warrant and holding that fears of jeopardizing a continuing criminal investigation were insufficient because the government demonstrate "no less restrictive means, such as redaction" would satisfy that interest). The defendants were entitled to object to the seizure of their property for an additional 120 days, *see Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard "'at a meaningful time and in a meaningful manner."'" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))), but they were wrongfully deprived of that right by the government's misrepresentations to the Court.

8

MOTION TO EXCLUDE DIGITAL DEVICE FILES

The resulting extension violated the defendants' rights under Rule 41 and the Constitution and is without force or effect.

### 2. The Government Violated the Warrant's Requirement that the Responsiveness Review Be Conducted By a Law Enforcement Officer Search Team Utilizing Search Protocols

The Warrants require that the "[t]he search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under the warrant." Warrant ¶ 4.b. The search team (defined as "law enforcement personnel or other[s] assisting law enforcement personnel") is supposed to use these search protocols to identify specific files, copy the specific files (¶ 4.e), produce the resulting seized or copied files to the prosecutors (¶ 5).

The government appears to be violating the Warrants in two ways. First, the government is not using search protocols to identify specific responsive files. A search protocol is "an explanation of the scientific methodology the government will use to separate what is permitted to be seized from what is not, will explain to the Court how the government will decide where it is going to search." *In re Apple iPhone, IMEI 013888003738427*, 31 F. Supp. 3d 159, 166 (D.D.C. 2014); *CDT III*, 621 F.3d at 1179 (Kozinski, C.J., concurring) (equating search protocol with "[t]he process of sorting, segregating, decoding and otherwise separating seizable data (as defined by the warrant) from all other data"). Ideally, search protocols will ensure that those prosecuting the case are not exposed to raw data until after an independent responsiveness review has deemed it within the scope of the warrant. *See In re App'n for Warrant (Cunnius)*, 770 F. Supp. 2d 1138, 1150 (W.D. Wash. 2011) (endorsing *CDT* concurrence protocols and emphasizing the importance of releasing only responsive data to investigating agents); *see also CDT III*, 621 F.3d at 1179 (Kozinski, C.J., concurring) (urging courts to require a protocol that prevented agents involved in the investigation from seeing data until the responsive data has been segregated); *cf. United States v. Schesso*, 730 F.3d 1040, 1049 (9th Cir. 2013) (explaining that "The seized electronic data was reviewed by Investigator Holbrook, a specialized computer

9

1    expert, rather than Detective Kennedy, the case agent, and Schesso does not assert that

2    Holbrook disclosed to Kennedy 'any information other than that which [was] the target

3    of the warrant.'").

4            In *United States v. Bonner*, a court in the Southern District of California

5    explained that search protocols must be "reasonably directed to identify data within the

6    scope of the warrant in order to meet the particularity requirement." No. 12-cr-3429,

7    2013 WL 3829404, at *19 (S.D. Cal. July 23, 2013). Without such a protocol in place,

8    "the search of the electronic data becomes general exploratory rummaging in a person's

9    belongings." *Id.* Because the government's protocol "expanded the search to data

10   which the Government had no probable cause to collect," the *Bonner* court concluded

11   that the search protocol was "not directed to identify data within the scope of the

12   warrant and violated the Defendant's rights under the Fourth Amendment.

13           So too here. The government has jettisoned the search protocol requirement

14   altogether. In its March 4 extension request, the government revealed that its protocols

15   contain no restrictions on search methodology mistakenly defining the protocol as

16   imaging and processing devices, conducting a filter review, and producing the devices

17   to the case agents for a responsiveness review pursuant to the warrant. Extension

18   App'n ¶ 7. Search protocols are supposed to provide a detailed "explanation of how the

19   government intends to conduct the search so that the Court may conclude that the

20   government is making a genuine effort to limit itself to a particularized search." *Apple

21   iPhone*, 31 F. Supp. 3d at 168; *see also In re Odys Loox Plus Tablet*, 28 F. Supp. 3d 40,

22   46 (D.D.C. 2014) (holding that no search protocol would be deemed adequate without

23   an explanation of how the search would be done to ensure it was not a "general,

24   exploratory rummaging in a person's belongings" (quoting *Coolidge v. New

25   Hampshire*, 403 U.S. 443, 467 (1971)). The government's protocol does not explain

26   how it will limit its responsiveness review at all, and indeed it has not. Implicit in the

27   government's in-court representations on Friday is the conclusion that the

28   government—including its attorneys who are not authorized members of the search

10

MOTION TO EXCLUDE DIGITAL DEVICE FILES

1   team—are selecting trial exhibits directly from the raw phones with no protocol or

2   restrictions in place.  That is the essence of a "general, exploratory rummaging in a

3   person's belongings" and is anathema to the Fourth Amendment and the Warrant.

4       Because government attorneys are accessing data that has not already been seized

5   and because they are doing so without a valid search protocol in place, the government

6   is violating the Warrant's terms and the Fourth Amendment.

7   **B.    The Government's Search Warrant Execution Was Unreasonable**
        **Because It Amounts to a General Warrant**

8

9       An individual's liberty is not protected from general warrants if the government

10  remains free to seize "a digital record of nearly every aspect of [individuals'] lives" and

11  avoid narrowing that digital record until after trial.  *See Riley v. California*, 573 U.S.

12  373, 395 (2014).  In *Riley*, the Supreme Court stated with approval: "In 1926, Learned

13  Hand observed (in an opinion later quoted in *Chimel*) that it is 'a totally different thing

14  to search a man's pockets and use against him what they contain, from ransacking his

15  house for everything which may incriminate him.'"  *Id.* (quoting *United States v.*

16  *Kirschenblatt*, 16 F.2d 202, 203 (2d Cir. 1926)).  In another portion of Judge Hand's

17  quoted opinion, he noted that while "a thorough search of all that the offender has" may

18  be necessary to ensure that the government finds every piece of evidence, that is

19  "exactly what the [Fourth] amendment was designed to prevent."  *Kirschenblatt*, 16

20  F.2d at 204.  Here, the government seeks not just to ransack defendants' houses for a

21  thorough search of all that the defendants have, but to be able to continue doing so

22  through trial.  The government has an executed a strategy in this case that would allow

23  it to do just that: pushing out its responsiveness review deadline to ensure that it

24  maintains the whole of each defendant's digital record for use at trial.

25      That strategy, particularly in light of the discovery cut-off, violated the Fourth

26  Amendment's prohibition of unreasonable search warrant execution.  "[B]oth the scope

27  of a seizure permitted by a warrant, and the reasonableness of government conduct in

28  executing a valid warrant, can present Fourth Amendment issues."  *United States v.*

*Huntoon*, No. 16-cr-46, 2018 WL 1755788, at *2 (D. Ariz. Apr. 12, 2018); *see also Tamura*, 694 F.2d at 596 ("The government's unnecessary delay in returning the [non-responsive property] appears to be an unreasonable and therefore unconstitutional manner of executing the warrant."). "The reasonableness of a search or seizure depends not only on when it is made, but also on how it is carried out." *Franklin v. Foxworth*, 31 F.3d 873, 875 (9th Cir. 1994); *see also United States v. Adjani*, 452 F.3d 1140, 1149 (9th Cir. 2006) ("We understand the heightened specificity concerns in the computer context, given the vast amount of data they can store.").

Fed. R. Crim. P. 41's authorization of off-site review was meant as a substitute for on-site review, not a substantive expansion of the federal government's authority to search private property. *See* Fed. R. Crim. P. 41 adv. comm. note (2009) (noting that the reason for permitting off-site review is "[]practical[ity]" and "the need for a two-step process," not a desire to afford a new substantive power to law enforcement and that property owners should retain "an expectation of the timing for return of the property"); *cf.* Warrants Attach. B ¶ 4.a ("The search team shall complete the search as soon as is practicable …."). The government's strategy in this case attempts to use that authorization as a loop hole that would provide precisely that: a substantive expansion of its power to search and seize items to be used against their owners. Here, the government chose to execute a mass seizure of devices, chose to indict the case two weeks later, chose to wait approximately one month before it started processing the devices, made no effort to complete its responsiveness review (or even start it) was aware that it was subject to a discovery cut-off, and submitted a misleading extension request that it kept from the defendants in order to hide material information from the reviewing judge. The government's strategy was designed to ensure that it had the full forensic device at its disposal when picking trial evidence, which is precisely the type of general warrant that the Fourth Amendment was designed to prevent. The strategy should result in exclusion.

MOTION TO EXCLUDE DIGITAL DEVICE FILES

### C.      Exclusion is Proper Under Rule 16 and the Discovery Cut-Off Order

The government's failure to complete its discovery has violated this Court's Discovery Order.  The government was required to comply with *all of its discovery obligations*—including disclosure of items material to preparing the defense and items that the government intends to use in its case-in-chief at trial—by March 15, 2021.  In-Chambers Order, Dkt. 105 (Dec. 22, 2020).

The government's argument at Friday's hearing was that disclosing a forensic copy of the devices containing terabytes of data was sufficient to meet its obligations, but the government is wrong.  Rule 16 applies to each "portion[] of any of these items" that is material to preparing the defense, that the government intends to use in its case in chief, or that was obtained from the defendant.  Fed. R. Crim. P. 16(a)(1)(E).  By producing the entire item, the government does not obviate its duty to produce the "portion" of the item that it intends to use particularly where knowing that subset is material to preparing the defense.  The government claims that the devices hold so much data that it could not complete a cursory responsiveness review—meant to be a substitute for paging through a bookcase while on site—in the *four months* provided by the initial warrant.  How can the defendants (without the resources of the federal government) possibly be expected to complete an in-depth substantive content review and prepare a defense while simultaneously processing the other information the government has amassed?  The defendants pushed for disclosure and a discovery cut-off because the government used the grand jury's powers to secure over 20 terabytes of data, more than the Library of Congress and its 20 million books.[6]  The simple answer is that the defendants cannot possibly process the government's addition of newly seized data[7] within two weeks.

---

[6] *See* Michael Lesk, *How Much Information Is There In the World?*, https://chnm.gmu.edu/digitalhistory/links/pdf/introduction/0.6a.pdf.

[7] To be clear, the entire devices were obtained from the defendants in November 2020.  Only the portion marked responsive can lawfully be seized.  Thus, the government has produced the data obtained from the defendants, but it has not produced the portion that was seized.

13

Based on the government's failure to produce the portion of the phones that it was seizing in time for the discovery cut-off, the Court has discretion to exclude the proposed seized data to enforce its order. *See United States v. W.R. Grace*, 526 F.3d 499, 514 (9th Cir. 2008) (en banc) (upholding exclusion of government evidence not disclosed by discovery deadline); *United States v. Ornelas*, 906 F.3d 1138, 1150-51 (9th Cir. 2018) (affirming exclusion of testimony disclosed shortly before trial as enforcement of discovery order); *United States v. Roybal*, 566 F.2d 1109, 1110-11 (9th Cir. 1977) (reversing conviction, emphasizing that the provision of late discovery in violation of a specific order resulted in "unfairness and potential prejudice to the defendant" as well as "unfairness and discourtesy to the trial judge"); *United States v. Schwartz*, 857 F.2d 655, 659 (9th Cir. 1988) (reaffirming that "the district court may exclude documents or witnesses" where the government "fail[s] to comply with the court's pretrial or discovery orders."). Although no showing of prejudice is necessary, *see W.R. Grace*, 526 F.3d at 515, prejudice will occur in this case because the addition of the seized data to the government's already large pool of seizures, with only two weeks until trial, would make it potentially impossible for the defendants to adequately prepare.

In *United States v. Garcia*, a defendant moved to exclude evidence of a prior conviction because it was not produced to her in discovery before the discovery deadline of June 30, 2010. 730 F. Supp. 2d 1159 (C.D. Cal. 2010). The government argued that by producing Garcia's entire criminal record, it had satisfied its discovery deadline. Opp'n to Def't's Mot. in *Limine* to Exclude Evidence of Garcia's Prior Offense, *United States v. Garcia*, 2:10-cr-595, Dkt. 32 (C.D. Cal. July 13, 2010). The court, expressing doubt that the production actually contained the did not rule on that bassis. Instead, it ruled that due the government's failure to produce the evidence that it sought to admit prior to the discovery cut-off, enforcement of the discovery cut-off and exclusion of evidence was appropriate. *Garcia*, 730 F. Supp. 2d at 1168-69.

1    In *United States v. Sadr*, the government produced both a forensic copy of the

2  defendant's email account in April 2018 and the portion of that email account

3  (approximately 358 documents) marked "responsive" or "pertinent" in May 2018.  The

4  discovery cut-off in that case passed in July 2018.  *See* Mem. of Law Supp. Mot. to

5  Exclude at 2-6, *United States v. Sadr*, No. 18-cr-224, Dkt. 149 (S.D.N.Y. Oct. 10,

6  2019).  Later in the litigation, after the discovery deadline had passed, the government

7  proposed to add 1,775 documents to the pool of responsive documents, arguing (as the

8  government does here) that the forensic copy of the defendant's email account was

9  sufficient to comply with its discovery obligations.  *See* Sept. 17, 2019 Letter from U.S.

10 Attorney's Office for the Southern District of New York, *United States v. Sadr*, No. 18-

11 cr-224, Dkt. 149-3 (S.D.N.Y. Oct. 10, 2019).  The defendant moved to exclude

12 pursuant to Rule 16 arguing that the court should exercise its discretion to enforce the

13 discovery deadline or to sanction the government's discovery failures and that the

14 prejudice to the defense from expanding the pool of potential evidence exceeded the

15 prejudice to the government, who had already indicted the case based on the more

16 limited pool.  After initially opposing the motion, the government ultimately agreed not

17 to use the documents despite the earlier production of a forensic copy, and the

18 documents were properly excluded.[8]

19    In cases like this, courts frequently look to the reason for the delay.  *See, e.g.*,

20 *United States v. Davis*, 244 F.3d 666, 671 (8th Cir. 2001) (chastising the government

21 for not seeking a continuance or otherwise challenging the discovery deadline and

22 affirming exclusion of evidence); *United States v. Mason*, No. 06-cr-80, 2008 WL

23 281970, at *3, *4 (S.D.N.Y. Jan. 25, 2008) ("Here, the government concedes that there

24 were 'shortfalls . . . ,' but offers no excuse or explanation, acceptable or otherwise, for

25 the failure to timely disclose evidence" that defendant had specifically sought for

26 eleven months).  Here, there is no good reason for the government's delay.  It was

27

28 [8] *See* Nov. 25, 2019 Hr'g Tr. at 36-39.

given three months' warning of the March 15, 2021 discovery cut-off and yet it treated that cut-off as a mere suggestion. It exhibited no interest in protecting the rights of the defendants either to discovery or to exclusive possession of their property. The government's delay merits exclusion and under the Court's discovery cut-off order, it has that authority.

### D.   The Electronic Files Should Be Excluded Due to *Kastigar* Taint Infecting the Review Process

Based on the government's description at Friday's hearing, the same government team members are reviewing the phones that previously reviewed, received, or used tainted information. *Kastigar* prohibits using tainted information as an investigatory lead or to uncover evidence, to interpret evidence, to build a case, or to make trial decisions like selecting exhibits. *See* Joint Mot. for *Kastigar* Hearing, to Disqualify the Prosecution Team, and to Dismiss at 8-9, Dkt. 338 (May 17, 2021). The ongoing responsiveness review is therefore tainted.

## III.   CONCLUSION

The Fourth Amendment's purpose is to prohibit general warrants. If the government's strategy in this case—seizing masses of digital device data and refusing to perform the required responsiveness review until after it figures out which evidence to mark as trial exhibits against the device's owner—is tantamount to a declaration that the Fourth Amendment's restrictions do not apply to digital devices. That declaration can and should be emphatically rejected. The government's failure to promptly perform a responsiveness review, unlawful extension request, and unconstitutional strategy merits exclusion of the digital device evidence the government proposes to use.

//

//

//

//

//

16

MOTION TO EXCLUDE DIGITAL DEVICE FILES

Dated:   May 24, 2021            Respectfully submitted,

*/s/ Ashwin J. Ram*
Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Meghan L. Newcomer (*pro hac vice*)
*mnewcomer@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

*/s/ John L. Littrell*
John L. Littrell (SBN 221601)
*jlittrell@bklwlaw.com*
Ryan V. Fraser (SBN 272196)
*rfraser@bklwlaw.com*
**BIENERT KATZMAN LITTRELL
WILLIAMS, LLP**
601 W. 5th Street, Suite 720
Los Angeles, CA 90071
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

*Counsel for Defendant Marietta Terabelian*

[SIGNATURES CONTINUE ON NEXT PAGE]

17
MOTION TO EXCLUDE DIGITAL DEVICE FILES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Thomas A. Mesereau Jr.

Thomas A. Mesereau Jr. (SBN 91182)
*mesereau@mesereaulaw.com*
**MESEREAU LAW GROUP, P.C.**
10100 Santa Monica Blvd., Suite 300
Los Angeles, CA 90067
Telephone: (310) 651-9960

Jennifer J. Wirsching (SBN 263141)
*wirschinglaw@outlook.com*
**ATTORNEY AT LAW**
1935 Alpha Rd, Suite 216
Glendale, CA 91208
Telephone: (424) 902-9280

*Counsel for Defendant Artur Ayvazyan*

/s/ Fred G. Minassian

Fred G. Minassian (SBN 170974)
*fgminassian@yahoo.com*
**LAW OFFICES OF FRED G. MINASSIAN, INC.**
101 N. Brand Ave, Suite 1970
Glendale, CA 91203
Telephone: (818) 240-2444

*Counsel for Defendant Tamara Dadyan*

## SIGNATURE ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(i), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

MOTION TO EXCLUDE DIGITAL DEVICE FILES