TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
    1100/1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/2424/3819
    Facsimile: (213) 894-6269/0141
    E-mail:    Scott.Paetty@usdoj.gov
              Catherine.S.Ahn@usdoj.gov
              Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 320-0539
    Facsimile: (202) 514-0152
    E-mail:  Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>RICHARD AYVAZYAN,<br>  aka "Richard Avazian" and<br>    "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>  aka "Marietta Abelian" and<br>    "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>  aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>  aka "Mike Grigoryan," and | No. CR 20-579(A)-SVW<br><br><u>GOVERNMENT'S PROPOSED EXCERPTS OF</u><br><u>THE FIRST SUPERSEDING INDICTMENT</u><br><u>TO BE READ TO THE JURY</u> |

1      "Anton Kudiumov,"
  ARMAN HAYRAPETYAN,
2   EDVARD PARONYAN,
     aka "Edvard Paronian" and
3      "Edward Paronyan," and
  VAHE DADYAN,
4

5          Defendants.

6      Plaintiff the United States of America, by and through its

7 counsel of record, the Acting United States Attorney for the Central

8 District of California and Assistant United States Attorneys Scott

9 Paetty, Catherine Ahn, and Brian Faerstein, and Department of Justice

10 Trial Attorney Christopher Fenton, hereby submits its proposed

11 excerpts of the indictment to be read to the jury in accordance with

12 Court's May 21, 2021 order (ECF 360).  These excerpts are from the

13 First Superseding Indictment filed on March 9, 2021 (ECF 154).[1]

14 Dated: May 27, 2021          Respectfully submitted,

15                      TRACY L. WILKISON
                     Acting United States Attorney
16

17                      BRANDON D. FOX
                     Assistant United States Attorney
18                      Chief, Criminal Division

19                           /s/

20                      CATHERINE AHN
                     SCOTT PAETTY
21                      BRIAN FAERSTEIN
                     Assistant United States Attorney

22                      Attorneys for Plaintiff
                     UNITED STATES OF AMERICA
23

24

25

26

27

28      [1] The government will be filing a proposed redacted indictment for use at trial; none of the proposed redactions affect any of the proposed excerpts.

**PROPOSED EXCERPTS**

COUNT ONE

[18 U.S.C. § 1349]

[ALL DEFENDANTS]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this First Superseding Indictment:

1.   Synthetic identities were false identities created using certain personally identifiable information, such as names, dates of birth, and social security numbers, that typically consisted of a combination of stolen and fictitious information.  Synthetic identities could be used to create false business names and entities.

THE DEFENDANTS

2.   Defendant RICHARD AYVAZYAN, also known as ("aka") "Richard Avazian" and "Iuliia Zhadko" ("R. AYVAZYAN"), was a resident of Encino, California.

3.   Defendant MARIETTA TERABELIAN, aka "Marietta Abelian" and "Viktoria Kauichko," was a resident of Encino, California.  Defendant TERABELIAN and defendant R. AYVAZYAN were married.

4.   Defendant ARTUR AYVAZYAN, aka "Arthur Ayvazyan" ("A. AYVAZYAN"), was a resident of Encino, California.  Defendant A. AYVAZYAN and defendant R. AYVAZYAN were brothers.

5.   Defendant TAMARA DADYAN ("T. DADYAN") was a resident of Encino, California.  Defendant T. DADYAN and defendant A. AYVAZYAN were married.

6.   Defendant MANUK GRIGORYAN, aka "Mike Grigoryan" and "Anton Kudiumov," was a resident of Sun Valley, California.

7.   Defendant ARMAN HAYRAPETYAN was a resident of Glendale, California.

8.   Defendant EDVARD PARONYAN, aka "Edvard Paronian" and "Edward Paronyan," was a resident of Granada Hills, California.

9.   Defendant VAHE DADYAN ("V. DADYAN") was a resident of Glendale, California.

THE PAYCHECK PROTECTION PROGRAM

10.   The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

11.   In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the small business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  One such certification required the applicant to affirm that "[t]he [PPP loan] funds w[ould] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments."  The applicant (through its authorized representative) was also required to acknowledge that "I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges."  In the PPP loan application, the applicant was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures were

used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, the applicant was required to provide documentation showing its payroll expenses.

12.  A business's PPP loan application was received and processed, in the first instance, by a participating financial institution.  If a PPP loan application was approved, the participating financial institution would fund the PPP loan using its own monies.

13.  PPP loan proceeds were required to be used by the business on certain permissible expenses, namely, payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expenses within a designated period of time and used at least a minimum amount of the PPP loan proceeds towards payroll expenses.

THE ECONOMIC INJURY DISASTER LOAN PROGRAM

14.  The Economic Injury Disaster Loan Program ("EIDL") was a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

15.  The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

16.  To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the

case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020.  The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

17.  EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor.  The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold, as described in paragraph 15 above.  Any funds issued under an EIDL loan were issued directly by the SBA.

18.  EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

RELEVANT LENDING INSTITUTIONS

19.  Lenders A, B, C, D, E, G, and H were financial institutions insured by the Federal Deposit Insurance Company ("FDIC") that were approved SBA lenders of PPP loans.

20.  Lender F was a financial institution that was an approved SBA lender of PPP loans.

BANK ACCOUNTS CONTROLLED BY THE DEFENDANTS

21.  Banks 1, 2, 3, 4, 5, 6, 7, and 8 were financial institutions insured by the FDIC.

22.   Defendant R. AYVAZYAN controlled and/or was a signatory (in his legal name or using one of his aliases) on the following bank accounts:

a.   A business checking account at Bank 1 in the name of "Timeline Transport, Inc." (the "Timeline Transport Bank 1 Account");

b.   A business checking account at Bank 2 in the name of "Inception Ventures Inc." (the "Inception Ventures Bank 2 Account");

c.   A business checking account at Bank 3 in the name of "Iuliia Zhadko dba Top Quality Contracting" (the "TQC Bank 3 Account");

d.   A business checking account at Bank 7 in the name of "Mod Interiors, Inc." (the "Mod Interiors Bank 7 Account");

e.   A business checking account at Bank 5 in the name of "Turing Info Solutions Inc." (the "Turing Info Bank 5 Account"); and

f.   A personal checking account at Bank 5 in the name of "Iuliia Zhadko" (the "Zhadko Bank 5 Account").

23.   Defendant TERABELIAN controlled and/or was a signatory (in her legal name or using one of her aliases) on the following bank accounts:

a.   A personal checking account at Bank 2 in the name of defendant TERABELIAN (the "Terabelian Bank 2 Account");

b.   A business checking account at Bank 2 in the name of "Runyan Tax Service Inc." (the "Runyan Tax Bank 2 Account"); and

c.   The Mod Interiors Bank 7 Account.

24.   Defendant A. AYVAZYAN controlled and/or was a signatory (in his legal name or using his alias) on the following bank accounts:

5

a. A business checking account at Bank 2 in the name of "Allstate Towing and Transport LLC" (the "Allstate Towing Bank 2 Account");

b. A business checking account at Bank 4 in the name of "Allstate Towing and Transport LLC" (the "Allstate Towing Bank 4 Account"); and

c. A personal checking account at Bank 8 in the name of A.D. (the "A.D. Bank 8 Account").

25. Defendant T. DADYAN controlled and/or was a signatory on the following bank accounts:

a. A business checking account at Bank 3 in the name of "Secureline Realty and Funding, Inc." (the "Secureline Realty Bank 3 Account");

b. A business checking account at Bank 5 in the name of "ABC Realty Advisors, Inc." (the "ABC Realty Bank 5 Account");

c. A business checking account at Bank 6 in the name of "Secureline Realty and Funding, Inc." (the "Secureline Realty Bank 6 Account"); and

d. The A.D. Bank 8 Account.

26. Defendant GRIGORYAN controlled and/or was a signatory (in his legal name or using one of his aliases) on the following bank accounts:

a. A business checking account at Bank 4 in the name of "G&A Diamonds" (the "G&A Diamonds Bank 4 Account");

b. A business checking account at Bank 2 in the name of "Redline Auto Mechanics" (the "Redline Auto Mechanics Bank 2 Account"); and

c.    A personal checking account at Bank 2 in the name of "Anton Kudiumov" (the "Kudiumov Bank 2 Account").

27.    Defendant HAYRAPETYAN controlled and/or was a signatory on the following bank accounts:

a.    A business checking account at Bank 5 in the name of "Arman Hayrapetyan DBA S. Construction" (the "S. Construction Bank 5 Account");

b.    A business checking account at Bank 5 in the name of "Arman Hayrapetyan DBA H. Construction Co." with account number ending in 1511 (the "H. Construction 1511 Bank 5 Account");

c.    A business checking account at Bank 5 in the name of "Arman Hayrapetyan DBA H. Construction Co." with account number ending in 9066 (the "H. Construction 9066 Bank 5 Account"); and

d.    A personal checking account at Bank 5 in the name of defendant HAYRAPETYAN.

28.    Defendant PARONYAN controlled and was a signatory (in his legal name or using his alias) on the following bank accounts:

a.    A business checking account at Bank 5 in the name of "Redline Auto Collision, Inc." (the "Redline Auto Collision Bank 5 Account"); and

b.    A personal checking account at Bank 5 in the name of defendant PARONYAN (the "Paronyan Bank 5 Account").

29.    Defendant V. DADYAN controlled and was a signatory on the following bank account:

a.    A business checking account at Bank 3 in the name of "Voyage Limo LLC" (the "Voyage Limo Bank 3 Account").

B.   THE OBJECTS OF THE CONSPIRACY

30.   Beginning no later than in or around March 2020 and continuing until at least in or around August 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN conspired with one another and with others known and unknown to the Grand Jury to commit: (a) wire fraud, in violation of Title 18, United States Code, Section 1343; and (b) bank fraud, in violation of Title 18, United States Code, Section 1344(2).

C.   THE MANNER AND MEANS OF THE CONSPIRACY

31.   The objects of the conspiracy were to be carried out, and were carried out, in substance, as follows:

     a.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other coconspirators, used and caused to be used, stolen, fictitious, and synthetic identities of individuals to submit fraudulent applications for PPP and EIDL loans.

     b.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other coconspirators, used and caused to be used, stolen, fictitious, and synthetic business names to submit fraudulent applications for PPP and EIDL loans.

     c.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other coconspirators, made and caused to be made, false statements to the SBA and financial institutions in connection with the fraudulent applications for PPP and EIDL loans, including false

1  representations regarding the number of employees to whom the

2  companies had paid wages and false certifications that the loans

3  would be used for permissible business purposes.

4        d.    Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T.

5  DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together

6  with other coconspirators, electronically submitted, and caused to be

7  submitted, false documents to the SBA and financial institutions in

8  support of the fraudulent PPP and EIDL loan applications, including

9  false or fictitious tax documents, payroll records, bank records, and

10 identification documents.

11       e.    Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T.

12 DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together

13 with other coconspirators, directed the other defendants and their

14 coconspirators to deposit PPP and EIDL loan proceeds into bank

15 accounts that defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T.

16 DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, and their

17 coconspirators controlled.

18       f.    Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T.

19 DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together

20 with other coconspirators, laundered and used the fraudulently

21 obtained PPP and EIDL loan proceeds for their own personal benefit

22 and for the benefit of their coconspirators, including for expenses

23 prohibited under the requirements of the PPP and EIDL programs, such

24 as the purchase of residential properties at Address 1 in Tarzana,

25 California ("Residential Property 1"), Address 2 in Glendale,

26 California ("Residential Property 2"), and Address 3 in Palm Desert,

27 California ("Residential Property 3"), gold coins, diamonds, jewelry,

28

9

luxury watches, fine imported furnishings, designer handbags and
clothing, cryptocurrency, and securities.

32.   [OMITTED]

D.   OVERT ACTS

*33.*   On or about the [] dates [specified in the indictment], in
furtherance of the conspiracy and to accomplish its objects,
defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN,
GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other
coconspirators, committed and willfully caused others to commit the
overt act [specified in the indictment], among others, within the
Central District of California.

*[OVERT ACTS OMITTED]*

COUNTS TWO THROUGH TWELVE

[18 U.S.C. §§ 1343, 2(a)]

[ALL DEFENDANTS]

34. *[OMITTED]*

A.   THE SCHEME TO DEFRAUD

35.   Beginning no later than in or around March 2020 and continuing until at least in or around August 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, intended to devise, and participated in a scheme to defraud the SBA and financial institutions, and to obtain money and property by means of material false pretenses, representations, and promises, and the concealment of material facts.

36.   *[OMITTED]*

B.   USE OF THE WIRES

37.   On or about the dates set forth [in the indictment], in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with others known and unknown to the Grand Jury, aiding and abetting each other, transmitted and caused the transmission of the items [specified in counts two through twelve of the indictment] by means of wire and radio communication in interstate and foreign commerce:

*[COUNTS TWO – TWELVE OMITTED]*

11

COUNTS THIRTEEN THROUGH TWENTY

[18 U.S.C. §§ 1344(2), 2(a), 2(b)]

[ALL DEFENDANTS]

*38.  [OMITTED]*

A.  *[OMITTED]*

39.  Beginning no later than in or around March 2020 and continuing until at least in or around August 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to obtain moneys, funds, credits, assets, and other property owned by and in the custody and control of federally-insured financial institutions by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

B.  *[OMITTED]*

40.  On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with others known and unknown to the Grand Jury, aiding and abetting each other, committed and willfully caused others to commit the  acts {specified in counts thirteen through twenty of the indictment], each of which constituted an execution of the fraudulent scheme:

*[COUNTS THIRTEEN - TWENTY OMITTED]*

12

                              COUNT TWENTY-ONE

                       [18 U.S.C. §§ 1028A(a)(1), 2(b)]

                            [Defendant R. AYVAZYAN]

41.  *[OMITTED]*

42.  *[OMITTED]*

                              COUNT TWENTY-TWO

                   [18 U.S.C. §§ 1028A(a)(1), 2(a), 2(b)]

                  [Defendants R. AYVAZYAN and TERABELIAN]

43.  *[OMITTED]*

44.  *[OMITTED]*

                             COUNT TWENTY-THREE

                       [18 U.S.C. §§ 1028A(a)(1), 2(b)]

                            [Defendant GRIGORYAN]

*45.*  *[OMITTED]*

*46.*  *[OMITTED]*

                              COUNT TWENTY-FOUR

                   [18 U.S.C. §§ 1028A(a)(1), 2(a), 2(b)]

                  [Defendants A. AYVAZYAN and T. DADYAN]

47.  *[OMITTED]*

*48.*  *[OMITTED]*

                              COUNT TWENTY-FIVE

                       [18 U.S.C. §§ 1028A(a)(1), 2(b)]

                           [Defendant HAYRAPETYAN]

*49.*  *[OMITTED]*

*50.*  *[OMITTED]*

COUNT TWENTY-SIX

[18 U.S.C. § 1956(h)]

[ALL DEFENDANTS]

51.   *[OMITTED]*

A.   THE OBJECTS OF THE CONSPIRACY

52.   Beginning no later than in or around March 2020 and continuing until at least in or around October 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN conspired with one another and with others known and unknown, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

a.   to knowingly conduct and attempt to conduct a financial transaction involving the proceeds of specified unlawful activity, that is, wire fraud and bank fraud, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.   to knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, bank and wire fraud, in violation of Title 18, United States Code, Section 1957.

B.   THE MANNER AND MEANS OF THE CONSPIRACY

53.   The objects of the conspiracy were carried out, and to be carried out, as follows:

14

a.    Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other coconspirators, submitted and caused the submission of fraudulent PPP and EIDL loan applications, which caused the SBA and SBA-approved lenders, including lenders who were federally-insured financial institutions, to wire loan proceeds to bank accounts in the names of the entities used to obtain such loans.

b.    Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other conspirators, transferred and caused the transfer of the loan proceeds, including in financial transactions of $10,000 or greater, to secondary accounts under their control, including in the names of fictitious identities, and in order to conceal the true nature, location, source, ownership, and control of the funds.

c.    Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other conspirators, spent the PPP and EIDL fraud proceeds for their own personal benefit and for the benefit of their coconspirators, including for expenses prohibited under the requirements of the PPP and EIDL programs, such as the purchase of Residential Property 1, Residential Property 2, and Residential Property 3, gold coins, diamonds, jewelry, luxury watches, fine imported furnishings, designer handbags and clothing, cryptocurrency, and securities.

C.    *[OMITTED]*

54.  *[OMITTED]*

                          COUNT TWENTY-SEVEN

                  [18 U.S.C. §§ 1956(a)(1)(B)(i), 2(b)]

                         [Defendant V. DADYAN]

       55.   [OMITTED]

       [OMITTED]

       56.   [OMITTED]



              COUNTS TWENTY-EIGHT THROUGH THIRTY-TWO

                  [18 U.S.C. §§ 1956(a)(1)(B)(i), 2(b), 3147]

                         [Defendant R. AYVAZYAN]

       57.   [OMITTED]

A.     [OMITTED]

       58.   [OMITTED]

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| *[COUNTS TWENTY-EIGHT – THIRTY-TWO OMITTED]* | | |

B.     [OMITTED]

       59.   [OMITTED]

                          COUNT THIRTY-THREE

                [18 U.S.C. §§ 1344(2), 2(a), 2(b), 3147]

                        [Defendant T. DADYAN]

      60.  *[OMITTED]*

A.    *[OMITTED]*

      61.  *[OMITTED]*

      62.  *[OMITTED]*

            a.   *[OMITTED]*

            b.   *[OMITTED]*

            c.   *[OMITTED]*

B.    *[OMITTED]*

      63.  *[OMITTED]*

C.    *[OMITTED]*

      64.  *[OMITTED]*


            *[FORFEITURE ALLEGATIONS ONE THROUGH FIVE OMITTED]*