HANUSZ LAW, PC
John Hanusz (SBN 277367)
Email: john@hanuszlaw.com
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone: (213) 204-4200

Counsel for Manuk Grigoryan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MANUK GRIGORYAN,<br><br>Defendant. | Case No. 20CR-00579(A)-SVW<br><br>**MANUK GRIGORYAN'S RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT OF ALLEGED VICTIM NEGLIGENCE AND GUARANTEES AS A DEFENSE (DKT. NO. 358)** |

Manuk Grigoryan, by and through counsel, hereby files his Response in Opposition to the Government's Motion *in Limine* to Exclude Evidence and Argument of Alleged Victim Negligence and Guarantees as a Defense (Dkt. No. 358).

Dated: May 31, 2021            Respectfully submitted,

                                                            */s/ John Hanusz*
                                                            John Hanusz

                                                            Counsel for Mr. Grigoryan

**RESPONSE IN OPPOSITION**

**I. INTRODUCTION**

The government has charged Mr. Grigoryan and his co-defendants with committing fraud in connection with loans issued through the Paycheck Protection Program ("PPP"). As the government notes, these loans were issued by private lenders to mitigate the economic effects of the Covid-19 pandemic. "[S]peed was of the essence" in the approval of these loans, and a streamlined process was instituted to provide for financial institutions to quickly approve loan applications. Dkt. No. 358 at 3. Notably, the lenders were not ultimately responsible for any loss associated with the loans: *the government guaranteed all of the loans*.

The government has made clear that it intends to make the internal processes of the PPP program a central pillar of the story it will seek to tell the jury at trial. *See* Dkt. No. 374 at 2-3. At the same time, it seeks to prohibit the presentation of any evidence (which would presumably include cross-examination) or argument by Defendants which might call the government's narrative into question. The government's request – made in a vacuum, more than three weeks before trial and without the provision of witness and exhibit lists – would deprive the defense of inquiring into the most basic building blocks of the government's case: the loan programs and banks that Defendants stand accused of defrauding. Contrary to the government's claims, Defendants should be permitted to question the government's evidence regarding the processes by which the financial institutions processed the loan applications. The government has alleged that Defendants obtained (or sought to obtain) fraudulent loans from seventeen different financial institutions, and the Ninth Circuit has made clear that a lack of materiality may be demonstrated through industry practice. As a result, the banks' internal processes of processing the loan applications and making loans guaranteed by the government – processes which the government

2

itself intends to place at issue – are directly relevant to the question of materiality. Moreover, the lack of actual harm suffered by the banks – given that they were completed insulated from any financial losses because of the government's guarantee – is directly probative of lack of intent. In light of these benefits, the state of mind of the lenders, and their corresponding policies, procedures, and representations designed to entice borrowers, is directly relevant to the borrowers' state of mind, especially given the disparity of sophistication between the two.

The practices and internal processes of the lenders are neither irrelevant nor inadmissible, and the Court should permit Defendants to present evidence regarding the same at trial.

## II. ARGUMENT

### A. Lending Industry Practice Is Directly Relevant to the Issue of Materiality

Citing *United States v. Lindsey*, 850 F.3d 1009 (9th Cir. 2017), the government argues that evidence of an individual lender's negligence is inadmissible as a defense in fraud case. Dkt. No. 358 at 4, 6-7. The government's proposition is incomplete. Contrary to the government's argument, the Ninth Circuit has not held that lending practices are irrelevant or inadmissible. Indeed, the government's reading of *Lindsey* wholly ignores one of the case's core and unambiguous holdings: defendants "may attack materiality through industry practice." *Lindsey*, 850 F.3d at 1016. "Among other things, defendants can disprove materiality through evidence of the lending standards applied throughout the industry." *Id.* Evidence of industry-wide standards is relevant and admissible to determine "the intrinsic capabilities of a statement to influence" a lender – that is, whether the statements at issue were material. *Id.* at 1015-17.

As a result, Defendants are entitled to show that the lenders acted unreasonably, and that reasonable lenders "would not have relied on" the false

statements alleged by the government, and thus were immaterial. *United States v. Casher*, No. CR-19-65-BLG-SPW, 2020 WL 2557849 at *3 (D. Mont. May 20, 2020); *see also United States v. Markevich*, 775 F. App'x 287, 289 (9th Cir. 2019) (error to exclude defense evidence of lending practices regarding issue of materiality).

The Ninth Circuit's ruling in *United States v. Green*, 698 F. App'x 879, 880 (9th Cir. 2017) is particularly instructive here. In that matter, the trial court refused to allow evidence of lending standards in the mortgage industry. The Ninth Circuit reversed this ruling, holding that the exclusion of evidence deprived that defendant of a "meaningful opportunity to present a complete defense:"

> because (1) materiality was an essential element of wire fraud, (2) his main defense to materiality was that mortgage industry lenders at the time of his alleged fraud were only interested in closing on loans and would issue loans regardless of borrower qualifications, and (3) the expert's testimony was essentially Green's only evidence to prove these industry practices.

*Green*, 698 F. App'x at 880. Certainly, if expert testimony regarding general industry practices is relevant, then percipient testimony about specific bank practices is that much more relevant. In this matter, the government seeks to do what *Green* forbids: to cut the defense off at the knees by prohibiting the introduction of evidence or argument regarding the core issue of whether the statements made to the lenders were material. As defendants in fraud cases should be "permitted to develop fully and fairly all of the evidence that would tend to exonerate," *United States v. Thomas*, 32 F.3d 418, 421 (9th Cir. 1994), the Court should reject the government's argument and allow Defendants to present the evidence and argument permitted by law.

**B.      The Lack of Harm Suffered By the Lenders, As Well As the Benefits Received, Are Directly Probative of the Lack of Intent to Cause Harm**

The government acknowledges that all of the PPP loans at issue were fully guaranteed by the government: lenders who participated in the PPP program would be fully reimbursed for any and all loans issued under the program. Dkt. No. 358 at 3. Simply put, the lenders are not victims. They suffered no loss. To the contrary, they were incentivized and compensated to provide each of the loans. Indeed, they were incentivized by the government to process the loans as quickly as possible.

Intent to defraud necessarily means that a defendant contemplated and intended some actual harm or injury to his alleged victims. *United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020) ("we … hold that wire fraud requires the intent to deceive and cheat — in other words, to deprive the victim of money or property by means of deception."); *see also United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987) (only a showing of intended harm will satisfy the element of fraudulent intent); *United States v. Jain*, 93 F.3d 436, 442 (8th Cir. 1996) (the essence of a scheme to defraud is an intent to harm the victim); *United States v. Cochran*, 109 F.3d 660, 667-69 (10th Cir. 1997).

As actual harm is probative of an intent to harm, lack of actual harm is similarly probative of a lack of intent to harm. *United States v. Ethridge*, 948 F.2d 1215, 1217-18 (11th Cir. 1991) (per curiam) ("If Hanover had lost money, the government would likely have introduced that fact as evidence of intent to defraud. In our opinion, the Ethridges are equally entitled to argue that the fact that Hanover did not suffer a loss related to their intent, and present evidence to support that argument."); *see also United States v. Foshee*, 578 F.2d 629, 634 (5th Cir. 1978) (holding that a defendant must be permitted to argue that a lack of actual harm is circumstantial evidence of a lack of intent to defraud).

Moreover, the fact that the financial institutions received benefits in exchange for their participation in the loan programs is directly relevant to the issue of intent. *Thomas*, 32 F.3d at 421 (holding that benefits to purported victims were relevant to show lack of intent to defraud); *see also United States v. Ciccone*, 219 F.3d 1078, 1082 (9th Cir. 2000) ("Evidence of actual gain was highly probative on the issue of the nature of the scheme and whether [Ciccone] had an intent" to defraud.). The benefits received by the lenders—a widely publicized fact—were reflected in the lenders' behavior and the state of mind of both lenders and borrowers. Any policies, procedures, and representations designed to entice borrowers to use a particular service to apply for loans are thus directly relevant as well. The lenders at issue are sophisticated financial institutions, and to the extent that they promoted policies designed to solicit borrowers (particularly unsophisticated ones), Defendants are entitled to address these policies in light of the profits the lenders received in exchange for issuing the loans.

Here, there is no question that any of the lenders suffered any harm – actual or otherwise – as a result of Defendants' alleged actions. But not only did the lenders fail to suffer any harm, they actually *benefited* from their participation in the PPP program. Given these two critical facts, which Defendants expect will be uncontested at trial, Defendants should be allowed to inquire into the lenders' internal processes with respect to the loan applications they received, and what, if any, mechanisms they had in place to deal with questionable or potentially fraudulent loan applications. This is especially the case in light of the fact that the lenders themselves knew they would be fully reimbursed by the government for all loans issued, and the fact that they were incentivized by the government to issue as many loans as possible and as quickly as possible.

## III. CONCLUSION

For the reasons stated above, the Court should deny the Motion *in Limine* to Exclude Evidence and Argument of Alleged Victim Negligence and Guarantees as a Defense should be denied.