TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
    1100/1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/2424/3819
    Facsimile: (213) 894-6269/0141
    E-mail:    Scott.Paetty@usdoj.gov
              Catherine.S.Ahn@usdoj.gov
              Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 320-0539
    Facsimile: (202) 514-0152
    E-mail:  Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-579(A)-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION *IN LIMINE* #2 TO ADMIT EVIDENCE INEXTRICABLY INTERTWINED WITH THE CHARGED OFFENSES; DECLARATION OF CATHERINE AHN; AND EXHIBITS 1-4 (FILED UNDER SEAL) |
| v. | |
| RICHARD AYVAZYAN, aka "Richard Avazian" and "Iuliia Zhadko," MARIETTA TERABELIAN, aka "Marietta Abelian" and "Viktoria Kauichko," ARTUR AYVAZYAN, aka "Arthur Ayvazyan," and TAMARA DADYAN, MANUK GRIGORYAN, aka "Mike Grigoryan," and | Hearing Date: June 14, 2021 Hearing Time: 11:00 a.m. Trial Date: June 15, 2021 Location:   Courtroom of the Hon. Stephen V. Wilson |

"Anton Kudiumov,"
ARMAN HAYRAPETYAN,
EDVARD PARONYAN,
  aka "Edvard Paronian" and
      "Edward Paronyan," and
VAHE DADYAN,

        Defendants.

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, Assistant United States Attorneys Scott Paetty, Catherine Ahn, and Brian Faerstein, and Department of Justice Trial Attorney Christopher Fenton, hereby files this motion *in limine* seeking admission of evidence inextricably intertwined with the bank fraud and wire fraud and money laundering conspiracies and schemes charged in the First Superseding Indictment.

This motion is based upon the attached memorandum of points and authorities, the attached declaration and exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 31, 2021            Respectfully submitted,

                               TRACY L. WILKISON
                               Acting United States Attorney

                               SCOTT M. GARRINGER
                               Assistant United States Attorney
                               Chief, Criminal Division

                                     /s/
                               _____
                               CATHERINE AHN
                               SCOTT PAETTY
                               BRIAN FAERSTEIN
                               Assistant United States Attorneys
                               CHRISTOPHER FENTON
                               Department of Justice Trial Attorney

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES.......................... 1

I.    INTRODUCTION............................................. 1

II.   FACTUAL AND PROCEDURAL HISTORY.......................... 2

      A.    The Charged Conduct................................. 2

      B.    Defendants' Possession of Fraudulent Identification
            Documents, Credit and Debit Cards, Account
            Information, Notary Stamps, Business Information, and
            Cash................................................ 5

III. ARGUMENT................................................. 7

      A.    Evidence of Defendants' Possession of Reserve
            Identities and Supporting Instruments of Fraud is
            Inextricably Intertwined with the Charged Offenses.. 7

            1.    The Reserve Identity Evidence is Inextricably
                  Intertwined with the Fraud Conspiracy and
                  Schemes....................................... 7

            2.    The Reserve Evidence is Inextricably Intertwined
                  with the Money Laundering Conspiracy and Scheme
                  ............................................. 17

            3.    The Approximately $450,000 in Cash Found at
                  R. Ayvazyan and Terabelian's Residence Is
                  Admissible................................... 21

      B.    The Reserve Evidence Is Inextricably Intertwined with
            the Charged Offenses Even If They Could be Used for
            Other, Uncharged Crimes............................ 22

      C.    Even if Rule 404(b) Applied, the Evidence Would be
            Admissible......................................... 23

IV.   CONCLUSION.............................................. 24

### TABLE OF AUTHORITIES

**CASES**

United States v. Bailey, 696 F.3d 794 (9th Cir. 2012)............. 24

United States v. Daly, 974 F.2d 1215 (9th Cir. 1992)............. 22

United States v. Dorsey, 677 F.3d 944 (9th Cir. 2012)............ 21

United States v. Lague, 971 F.3d 1032 (9th Cir. 2020)............ 24

United States v. Lillard, 354 F.3d 850 (9th Cir.2003)............ 16

United States v. Lo, 839 F.3d 777 (9th Cir. 2016)................ 17

United States v. Loftis, 843 F.3d 1173 (9th Cir. 2016).... 16, 17, 21

United States v. Montgomery, 384 F.3d 1050 (9th Cir. 2004)....... 15

United States v. Vizcarra-Martinez, 66 F.3d 1006 (9th Cir.
    1995)....................................................... 16

United States v. Ward, 197 F.3d 1076 (11th Cir. 1999)............ 23

United States v. Williams, 989 F.2d 1061 (9th Cir. 1993)...... 16, 23

**STATUTES**

Fed. R. Evid. 404(b)....................................... passim

**OTHER AUTHORITIES**

U.S. Small Businesses Adminsitration, "Paycheck Protection
    Program Frequently Asked Questions," (June 25, 2020).......... 4

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

The government respectfully moves this Court for a finding that

4

evidence of defendants' possession and creation of stolen or

5

synthetic identities, which were collocated with stolen or synthetic

6

identities directly used to obtain fraudulent COVID-19 disaster

7

relief loans, are inextricably intertwined with the charged

8

offenses.  As evidenced by the conconspirators' own text message

9

conversations, such evidence is not within the scope of Fed. R.

10

Evid. ("Rule") 404(b) and may be used by the government to prove the

11

charged fraud and money laundering conspiracies and schemes.[1]

12

On November 5, 2020, federal agents searched a residence that

13

proved to be the headquarters of a massive criminal conspiracy.  The

14

home – which belonged to defendants Tamara Dadyan ("T. Dadyan") and

15

Artur Ayvazyan ("A. Ayvazyan") – contained all the parts for an

16

assembly line to produce fraudulent loan applications and then

17

conceal and spend the fraudulently obtained proceeds.  These parts

18

include physical and digital evidence of identification documents,

19

social security cards, credit and debit cards, email and online

20

account information, checks/checkbooks, notary stamps and official

21

seals belonging to individuals other than the defendants, all found

22

in and around the same location within the home.  Similar and

23

related evidence was also found on the iPhones belonging to

24

defendants T. Dadyan, A. Ayvazyan, Richard Ayvazyan ("R. Ayvazyan"),

25

and Marietta Terabelian ("Terabelian"), as well as at other

26

27

    [1] In light of the increased safety concerns associated with
COVID-19, the government is seeking to anticipate and resolve

28

evidentiary issues before trial so as to avoid lengthy sidebars with
counsel for the defendants proceeding to trial.

i

residences used by other defendants who participated in the conspiracies, demonstrating that the defendants shared these tools and worked together towards common criminal objectives.

At trial, the government seeks to introduce evidence of this assembly line for fraud, including both the evidence of identities directly used to fraudulently obtain and use the loan proceeds described in the FSI ("directly used identities") and evidence relating to additional stolen or synthetic identities and their supporting instruments of fraud, to include fraudulent identification documents, checks/checkbooks, credit and debit cards, purported official records or certifying instruments, and related email and online accounts ("reserve identities").  These identities were interchangeable components of the fraudulent schemes and conspiracies.  The government respectfully moves this Court to find that defendants' possession and use of these reserve identities and supporting instruments of fraud are inextricably intertwined with the charged offenses and are not subject to Rule 404(b).  As such, this evidence is admissible during the government's case-in-chief, even if it relates to an identity that was not directly used to apply for a fraudulent COVID-19 disaster relief loan.

## II.  FACTUAL AND PROCEDURAL HISTORY

### A.  The Charged Conduct

Defendants are charged with conspiracy to commit bank fraud and wire fraud, conspiracy to commit money laundering, bank fraud and attempted bank fraud, wire fraud, money laundering, and - for certain defendants - aggravated identity theft, concealment money laundering, and committing an offense while on pre-trial release. (See FSI, generally (ECF 154).)  The government alleged that the

2

conspiracy began no later than in or around March 2020 and continued until at least in or around August 2020 in Los Angeles County.

Specifically, defendants are charged with: (1) conspiring to use, or cause the use, of stolen or fictitious individual and business information to (2) submit materially false and misleading information to the U.S. Small Business Administration, banks, and lenders regarding (3) the business' eligibility for a COVID-19 disaster relief loan.  Defendants lied or caused other defendants to lie about the applying business' monthly payroll expenses, employees, and even the names, status, and contact information for the businesses and their purported owners or representatives.  (See e.g., FSI at ¶¶ 31, 33 (manner and means and overt acts of the bank and wire fraud conspiracy).)  Defendants submitted this information through fraudulent PPP and EIDL applications using, among other things, fraudulent identification cards, fraudulent social security numbers, false or fictitious payroll reports, false or fictitious federal employer tax identification numbers ("EINs"), and fraudulent IRS tax forms.  (Id.)  By combining stolen and fictitious names, dates of birth, and social security numbers, defendants were able to create synthetic identities that could be used to create false business names and entities.  (Id. ¶ 1.)

Defendants further conspired to: (1) use, or cause the use, of financial accounts, sometimes in the names of stolen or synthetic identities and businesses, to (2) send and receive fraudulent loan proceeds, and (3) use those proceeds for expenses prohibited by the COVID-19 disaster relief loan programs.  This conduct forms the basis of the charged money laundering and money laundering conspiracy counts.  (Id. ¶¶ 53-54 (conspiracy) and 55-58 (individual

counts).)  These expenses included the purchase of at least three residential properties in Tarzana, Glendale, and Palm Desert using fraudulent loan proceeds.  (Id. ¶ 33 (Overt Acts 16, 24, 36, 41, 44, 49 and 53).)

Through this alleged conduct, defendants are charged with conspiring to and committing bank fraud (Counts 1-12) and wire fraud (Counts 1, 13-20), money laundering conspiracy (Count 26) and, for certain defendants, aggravated identity theft (Counts 21-25), concealment money laundering (Count 27), and money laundering (Counts 28-32) and attempted bank fraud (Count 33) while on pre-trial release.  (See FSI, generally.)

As alleged in the FSI, defendants conspired to obtain COVID-19 disaster relief funds intended to help workers stay employed and small businesses stay open through the pandemic.  (Id. ¶ 10.)  The U.S. Small Business Administration ("SBA") distributed these funds through the Paycheck Protection Program ("PPP"), which relied on third-party lenders and processors to accept, review, and fund PPP loans, as well as the Economic Injury Disaster Loan ("EIDL") program, which was directly administered by the SBA.  (Id. ¶¶ 10-18, 33, 53.)  Business applicants were expected to provide their monthly payroll and operational expenses, number of employees, and proof of those expenses through a payroll report or relevant tax forms, such as an IRS Schedule C, Form 940, or Form 941.  (See SBA, "Paycheck Protection Program Frequently Asked Questions," Q1 and 10 (June 25, 2020) (available at https://www.sba.gov/sites/default/files/2020-06/Paycheck-Protection-Program-Frequently-Asked-Questions%20062520-508.pdf.)  The amount of money a business was eligible to receive depended on these self-reported expenses, and businesses were

required to use that money towards business, and not personal, expenses.  (FSI ¶¶ 11, 13, 17-18.)

### B.   Defendants' Possession of Fraudulent Identification Documents, Credit and Debit Cards, Account Information, Notary Stamps, Business Information, and Cash

In November 2020, the government executed residential search warrants and seized several categories of evidence[2] related to the charged offenses, examples of which are described below:

1) Fraudulent California Driver's Licenses ("CADLs"), social security cards, and debit and credit cards in the names of individuals other than defendants, including multiple CADLs bearing the same name but different photos (see e.g., Fenton Decl. (ECF 207) Exh. 8 and Fenton Decl. (ECF 188) Exh. 12);

2) Blank checks and checkbooks, including checks printed on the wrong side of check paper, indicating manufacture (see e.g., Exh. 1 (filed under seal) (see also Decl. of Catherine Ahn); see also Fenton Decl. (ECF 207) Exh. 12);

3) Lists of email addresses and user account information with associated passwords, including a page titled, "TAMMY INFO FOR MLS ECT" (sic) with login information for "Tloxpo.com"[3] and "Secureline tax ID" (See Fenton Decl. (ECF 207), Exh. 10; see also Exh. 2 (filed under seal));

---

[2] See Gov't Opposition to R. Ayvazyan and M. Terabelian's Motion to Suppress (ECF 188) at 2-4, 6, 10-11 and Exh. 8 - 12 attached to Fenton Decl. (filed under seal); Gov't. Opposition to A. Ayvazyan and T. Dadyan's Motion to Suppress (ECF 207) at 2-4, 6, 11 and Exh. 8 and 10-13 attached to Fenton Decl. (filed under seal).

[3] TLOxp is an online subscription database that provides "an efficient way to uncover, locate and verify information on individuals and businesses . . ." (TransUnion, Products, TLOxp (available at https://www.transunion.com/product/tloxp).)

4)   Seals for various state and federal agencies and notary
     stamps in the names of individuals other than defendants
     (See Fenton Decl. (ECF 207), Exh. 13); and

5)   Approximately $450,000 in cash found in a bush outside
     R. Ayvazyan and Terabelian's residence (see Fenton Decl.
     (ECF 188) Exh. 8);

(collectively, the "seized evidence").

In addition to the above categories of seized evidence, the government also seized digital devices during the November 2020 residential searches.  This includes an Apple iPhone X found at A. Ayvazyan and T. Dadyan's residence with an Apple ID that included T. Dadyan's name (the "T.D. iPhone").[4]  The T.D. iPhone contained photos, internet history, and files, as well as text messages from "tammy" to "Rich New."  T-Mobile subscriber records identified the subscriber of the "Rich New" telephone number as "Iulia Zhadko," a synthetic identity defendant R. Ayvazyan is alleged to have used on PPP and EIDL applications, bank accounts, digital currency accounts, and to purchase a residential property in Glendale.  (See FSI, ¶¶ 1, 2, 22, 33 (Overt Acts 19, 41, 42, 53, 59-61), and 58.)

These messages include, among other things, explicit discussions of how to submit PPP and EIDL applications; using databases, websites, and coached explanations to obtain Employer Identification Numbers ("EINs") for businesses; changing those EINs by one digit when submitting an application; "fixing" bank statements to match claimed payroll expenses; creating payroll

---

[4] A forensic copy of the T.D. iPhone and a searchable report of its readable contents, post-filter review, were produced to defendants with Bates no. DOJ_PROD_0000160626.

reports allegedly produced by payroll service provider Gusto; and
the use of dead individuals' names and credit scores to meet lender
requirements.  (See T.D. iPhone Excerpts 1-8, infra.[5])  The messages
further show how coconspirators convinced banks and lenders to
release frozen accounts or funds; contain discussions regarding who
should receive money from accounts into which fraudulent proceeds
had been deposited; and how much each should receive.  (Id.)

## III.  ARGUMENT

### A.  Evidence of Defendants' Possession of Reserve Identities and Supporting Instruments of Fraud is Inextricably Intertwined with the Charged Offenses

#### 1.  The Reserve Identity Evidence is Inextricably Intertwined with the Fraud Conspiracy and Schemes

##### a.  The T.D. iPhone Messages Reveal the Coconspirators' Reliance on Reserve Identities and Instruments of Fraud to Maintain the Fraud Conspiracy and Schemes

Defendants used a plethora of names, identification cards,
identification numbers, and business identifiers – some real, some
fake, and some a synthetic combination of the two - to execute the
charged conspiracies and schemes.  (See FSI, generally.)  The
diversity of identities used in the PPP and EIDL fraud evince a
ready supply of information and tools to manufacture and validate
synthetic identities.  The plethora of fraudulent identification
cards, credit and debit cards, checks/checkbooks, seals, and notary
stamps in names of individuals other than defendants' found in one
of their homes confirms this.  Furthermore, as revealed by the T.D.
iPhone text messages, the defendants needed access to a ready supply

---

[5] The government has only provided selected excerpts relevant to
this motion and will identify the messages it intends to introduce
by the Court's June 1, 2021 trial exhibit deadline.

of personal and business information to execute the fraud schemes

and conspiracy.  This information was further needed to open new

bank accounts when previous accounts were flagged for fraud.  These

fake, stolen, and synthetic identities were all fungible:  to the

extent one identity did not work, defendants simply grabbed the next

available one.  As such, even when they weren't directly used, the

evidence found during the residential searches is inextricably

intertwined with the charged offenses.  They are therefore not

subject to analysis or exclusion under Rule 404(b) and should be

deemed admissible, subject to other evidentiary rules.[6]

Although the FSI focuses on the use and submission of stolen

and synthetic identities and fraudulent documentation, possession of

such personal and business information is a factual and logical

predicate to their use and submission, as charged.  Furthermore, the

common possession and sharing of such information ties different

members of the conspiracy together.  Similarities between

purportedly different PPP and EIDL applications show a common hand

in their preparation; the text messages retrieved from the T.D.

iPhone confirm it.  These messages show that coconspirators relied

on a ready supply of preexisting identities, businesses, and

accounts to submit or cause the submission of fraudulent PPP and

EIDL applications, and then receive and transfer the proceeds.  Text

messages between "tammy" and "Rich New" discussing submissions to

Bluevine, an SBA-authorized PPP lender, reveal this approach:

_____

[6] To be clear, the government is not seeking a ruling on the admissibility of evidence with identities directly used in the PPP or EIDL fraud and related transactions (the directly used identities).  Such evidence is already intrinsic to the charged offenses and therefore not evidence of other acts.  This includes defendants' communications in furtherance of the charged offenses.

8

**T.D. iPhone Excerpt 1 (May 1, 2020[7]):**

| # | From | Body |
|---|------|------|
| 2487 | +17473334170 **Rich New** | Go to bluevine.com right now and apply they are approving and closing within 24 hours |
| 2488 | +18184145533 **tammy** | With same info |
| 2489 | +17473334170 **Rich New** | Ya just change your EIN by one number |
| 2490 | +18184145533 **tammy** | Ohh and then they will come favk say they dint gave it |
| 2491 | +17473334170 **Rich New** | I did 7 apps last night and 4 of them got email that it's funded |
| 2492 | +18184145533 **tammy** | So I just change the last digit of tax I'd only while applying what about when I have to uplaod |
| 2493 | +18184145533 **tammy** | 940 941 keep it sane |
| 2494 | +17473334170 **Rich New** | Ya change that too and give different account |
| 2495 | +17473334170 **Rich New** | I didn't sleep all night   I was working 24 hours straight |
| 2498 | +18184145533 **tammy** | Wants statements |
| 2499 | +18184145533 **tammy** | February |
| 2500 | +18184145533 **tammy** | I don't have that's much activity there |
| 2501 | +18184145533 **tammy** | Should I upload |
| 2502 | +17473334170 **Rich New** | So fix it |
| 2503 | +17473334170 **Rich New** | Actually ya upload it |
| 2504 | +18184145533 **tammy** | Like fix it to match the payroll |

Within minutes, the parties discussed how to obtain more business EINs through password-protected databases and websites:

**T.D. iPhone Excerpt 2 (May 1, 2020):**

| # | From | Body |
|---|------|------|
| 2515 | +17473334170 **Rich New** | Tam is there any way we can get EIN number for business on Tlo |
| 2516 | +18184145533 **tammy** | Tax Id |
| 2517 | +17473334170 **Rich New** | Ya |
| 2518 | +18184145533 **tammy** | Yah even with sole proprietor |
| 2519 | +17473334170 **Rich New** | U serious |
| 2520 | +17473334170 **Rich New** | How do I search |
| 2521 | +18184145533 **tammy** | Hesa I'll send u |
| 2522 | +18184145533 **tammy** | But listen |
| 2523 | +18184145533 **tammy** | I have 4 total accounts 2 for abc 2 for secureline |
| 2524 | +18184145533 **tammy** | And Commerica is a smaller bank no than wells ? And they email me to apply but I have no money in that account |

---

[7] Dates/Times are based on Coordinated Universal Time (UTC), which is approximately eight hours ahead of Pacific Standard Time. The columns show, from left to right, the internal number assigned to the text message, the sender of the text, and its content.

9

| 2525 | +18184145533 **tammy** | rye925 - PIN |
| | | |
| | | TLOxp Online |
| | | Reply HELP for help, Reply STOP to cancel. |
| | | Msg&data rates may apply. |
| 2526 | +17473334170 **Rich New** | It doesn't matter you can be running payroll from different accounts |
| 2527 | +18184145533 **tammy** | So |
| | | Then why do I have to fix statements for |
| | | This idiot blue what ever |
| 2528 | +17473334170 **Rich New** | You don't I just did it anyway. They ask for statements to verify your bank account |
| 2532 | +18184145533 **tammy** | [TAX ID ON JUST THE NAME.pdf][8] |
| 2533 | +18184145533 **tammy** | https://irs-taxid-numbers.com/ |
| 2534 | +17473334170 **Rich New** | I don't need to file I need to check |
| 2537 | +17473334170 **Rich New** | Like I need the number |
| 2538 | +17473334170 **Rich New** | I have the business name |
| 2539 | +18184145533 **tammy** | Ohhhhh Jesus u can call them if u have all their info |
| 2540 | +18184145533 **tammy** | Let me ask ara hold on |
| 2541 | +18184145533 **tammy** | Rich best way is to tlo the business name then call franchise tax or wherever gives u the tax I'd say my cpa is not working I need to verify my tax if |
| 2542 | +18184145533 **tammy** | Id |
| 2543 | +17473334170 **Rich New** | Ya I did it didn't show |
| 2544 | +18184145533 **tammy** | I'll know morning from cpa |
| 2545 | +18184145533 **tammy** | Don't forget send me the statement from ur payroll |
| 2546 | +17473334170 **Rich New** | Use the bank statement I gave you for iuliia |
| 2547 | +17473334170 **Rich New** | I gave you 3 months there is February in there. Use that |
| 2548 | +17473334170 **Rich New** | The one I send you you is wells |
| 2549 | +17473334170 **Rich New** | They don't check for shit Tam. It's all automated. They request the statement to verify the account exists |

Not only did "Rich New" expressly mention "iuliia,"
R. Ayvazyan's alleged alias, the shared use of fraudulent payroll
records created using preexisting synthetic identities and accounts
is further evidence of the conspiracy.  Defendants R. Ayvazyan and
T. Dadyan shared such information with the other defendants, as
well.  For example, the government intends to prove at trial that

---

[8] The names of images or files sent by text are identified in red bracketed font.

fraudulent loan applications associated with defendants R. Ayvazyan, Terabelian, T. Dadyan, and A. Ayvazyan: (1) reported the same payroll and/or unemployment tax numbers, down to the penny; (2) used the same types of fraudulent payroll reports and/or federal tax forms as fraudulent loan applications associated with defendants Manuk Grigoryan, Edvard Paronyan, and Vahe Dadyan; and (3) sought the same amounts from the same banks around the same time period, and then shared the proceeds.  Such coordination is the hallmark of conspiracy.

Defendants' reliance on pre-existing accounts to develop fraudulent PPP or EIDL applications was not limited to business identities.  As shown below, they also drew from a preexisting supply of individual identities, including those of the dead, to meet lender criteria.  Exchanges like the below demonstrate that defendants viewed these many identities as fungible:

**T.D. iPhone Excerpt 3 (May 28, 2020):**

| # | From | Body |
|---|------|------|
| 2943 | +17473334170 **Rich New** | Btw I got one today on a personal account |
| 2944 | +18184145533 **tammy** | From ? Bluevibe ? |
| 2945 | +17473334170 **Rich New** | No from Liberty SBF to a guys US bank personal |
| 2946 | +18184145533 **tammy** | How long it took |
| 2947 | +18184145533 **tammy** | I have 3 million ending with bluevine no response |
| 2948 | +18184145533 **tammy** | Since 5/8 I reapplied Nd still nothing |
| 2949 | +17473334170 **Rich New** | This one took probably 2 weeks |
| 2950 | +18184145533 **tammy** | [2019 Form 940 TQ.pdf] |
| 2951 | +18184145533 **tammy** | [Form 941 (Rev. January 2019)TQ.pdf] |
| 2952 | +18184145533 **tammy** | Is this a dude's face one u used |
| 2953 | +18184145533 **tammy** | I didn't use this one the one I have is the same one this guy changed the numbers on I don't want to give all same exact numbers |
| 2954 | +17473334170 **Rich New** | Ya don't use all same |
| 2955 | +17473334170 **Rich New** | I have like 3 different ones |
| 2956 | +18184145533 **tammy** | On that one what's the payroll amount |

| 2957 | +17473334170 **Rich New** | But honestly I'm not doing those anymore. The getting hard to do now |
| 2958 | +17473334170 **Rich New** | That one is like 180k loan |
| 2959 | +17473334170 **Rich New** | I applied yesterday |
| 2960 | +18184145533 **tammy** | Should I redo this so with osbaldo or alak name then do it ? [IMG_5307.PNG]  [IMG_5308.PNG] |
| 2961 | +17473334170 **Rich New** | Ya but this is credit based remember. Put it on someone that has at least like 640 fico |
| 2962 | +18184145533 **tammy** | I have alak |
| 2963 | +18184145533 **tammy** | High fico |
| 2964 | +18184145533 **tammy** | I think |
| 2965 | +17473334170 **Rich New** | Call me |
| 2966 | +18184145533 **tammy** | [Credit sesame printscreen.jpg] |
| 2967 | +17473334170 **Rich New** | Your good |
| 2968 | +18184145533 **tammy** | That's alak not me 😂 |
| 2969 | +17473334170 **Rich New** | You can do 2 on this guy |
| 2970 | +18184145533 **tammy** | Let's go the fool is dead on armo land |
| 2971 | +17473334170 **Rich New** | Ok he has personal accounts? |
| 2972 | +18184145533 **tammy** | Yes wells |
| 2973 | +18184145533 **tammy** | Can't u check see if rojellio account open wut is we have his account checks here from us bank |

Furthermore, as indicated in the last message above, defendants used checks, check images, and bank statements in their possession to help transfer funds as part of the overall scheme and conspiracy. Defendants used check images to help wire money to coconspirators after an account received PPP or EIDL funds. (See T.D. iPhone Excerpts 7 and 8, infra at 18-20; see also Exh. 1 and 4 (filed under seal).) Defendants even discussed how to print checks, when needed:

**T.D. iPhone Excerpt 4 (July 28, 2020):**

| # | From | Body |
|---|------|------|
| 3986 | +18184145533 **tammy** | Rich u have a check from this [Fw  Welcome to the Brighter Side of Banking.png] |
| 3987 | +17473334170 **Rich New** | Who's is that |
| 3988 | +18184145533 **tammy** | Some one I did but I need to make a voided check |
| 3989 | +18184145533 **tammy** | I don't have any I'll look in my office but If you find a check can u send me pic |
| 3990 | +17473334170 **Rich New** | Go to checkkeeper.com. Put the info and print one |

1    Evidence found during the residential searches includes checks

2  printed on the wrong side of check paper.  (See Exh. 1 at 2.)

3    The seized evidence from T. Dadyan and A. Ayvazyan's residence

4  also includes notary stamps and seals that were located in the same

5  room as fake identification documents, credit and debit cards,

6  fraudulent loan applications, and checks and checkbooks.  As with so

7  many of the other instruments of fraud found at defendants' houses,

8  these notary stamps displayed names other than those of defendants.

9  Two of these names were used in fraudulent PPP or EIDL applications.

10 This includes a Bank of America PPP application for $117,938

11 submitted by "Arsen Dadyan,"[9] the supposed business representative of

12 ABC Realty Advisors, Inc., with a supposed average monthly payroll

13 of $49,135.25 -- despite having no records of relevant IRS tax

14 filings in 2019.

15    Notary stamps and seals are used to indicate authenticity; they

16 verify the validity of a transaction or a public record that may be

17 relied on by third-parties.  The T.D. iPhone messages reveal the

18 importance of using businesses with an ostensibly clean record.  The

19 messages below show how the coconspirators reacted when it was

20 discovered that Secureline Realty and Funding, Inc. – a company that

21 T. Dadyan is alleged to have used to submit fraudulent PPP loans

22 (FSI ¶ 33 (Overt Acts 8-16)) - had been suspended by the Secretary

23 of State ("SOS"):

24          **T.D. iPhone Excerpt 5 (August 4, 2020):**

| #    | From                      | Body                          |
|------|---------------------------|-------------------------------|
| 4097 | +17473334170 **Rich New** | Tam what's the password for Tlo |
| 4098 | +18184145533 **tammy**    | Not working hold on           |

28    [9] This application was produced to defense as Bates no.
DOJ_PROD_000000005.pdf - DOJ_PROD_000000007.pdf

| 4099 | +17473334170 **Rich New** | I put Arturo2020$ |
| 4100 | +17473334170 **Rich New** | But it's not working |
| 4101 | +18184145533 **tammy** | It's not babe they found Secureline sos suspended |
| 4102 | +17473334170 **Rich New** | U serious, so we can't run TLO |
| 4103 | +18184145533 **tammy** | U have a payroll report redacted or not for 11 people |
| 4104 | +17473334170 **Rich New** | Whatever I have you have aziz |

The evidence shows that the coconspirators understood that lenders and retail banks required official-looking records to verify the coconspirators' relationship to a business, particularly when opening bank accounts.  So the coconspirators created them.  On or about September 16, 2020, "tammy" texted "Rich New" that a check she had written from Bank of the West to "abc really" [sic] was rejected and she had been on hold 60 minutes.  She then described providing altered documentation of ownership to open an account at a new bank:

**T.D. iPhone Excerpt 6 (Sept. 16-17, 2020):**

| # | From | Body |
| --- | --- | --- |
| 4708 | +18184145533 **tammy** | His emailing me the one now am and am financial |
| 4709 | +18184145533 **tammy** | U get this he opened the account with my name |
| 4710 | +18184145533 **tammy** | But the Corp online everything belongs to Alak |
| 4711 | +18184145533 **tammy** | Public record no where me |
| 4712 | +17473334170 **Rich New** | So you just gave the articles? |
| 4713 | +18184145533 **tammy** | Nope I did stock purchase agreement |
| 4714 | +18184145533 **tammy** | And the papers showing I changed online the statement of info but I didn't |
| 4715 | +18184145533 **tammy** | It's only printout |
| 4716 | +18184145533 **tammy** | And email from them says ur email received allow 72 hours or something to update |
| 4721 | +18184145533 **tammy** | Rich I Have the other ones |
| 4722 | +18184145533 **tammy** | U want to check |
| 4723 | +18184145533 **tammy** | The shit load I gave u befor to old cell |
| 4724 | +18184145533 **tammy** | Should I email |
| 4725 | +18184145533 **tammy** | Rich is my |
| 4726 | +18184145533 **tammy** | I opened 3 accounts |

The above conversation is an explicit example of how, when one account or identity can no longer be used, the coconspirators used

14

preexisting business and individual identities to continue the
fraud.  This is because these identities are interchangeable.  As
such, their possession of reserve identities and related instruments
of fraud (checks/checkbooks, email accounts, etc.) are inextricably
intertwined with the conspiracy.

The T.D. iPhone messages further reveal the coconspirators'
reliance on shared access to email accounts in the names of stolen
or synthetic identities to further the conspiracy.  Not only were
emails useful for verifying new accounts, the mere existence of an
email account could help validate a false or stolen identity.

For example, on or about July 28, 2020, "tammy" and "Rich New"
discussed what supporting documentation to use for "LK Designs," a
business purportedly owned by L.K.  During that discussion, "tammy"
sent "Rich New" a modified payroll report bearing numerous names,
dates of birth, social security numbers, and associated email
accounts with the telling message, "See if better I fixed the
socials that were the same" (sic).  (See Exh. 3 (filed under seal).)
As indicated by that message, the information contained in that
payroll report was fake, buft doctoring the information to create
the appearance of real people was key to executing the fraud scheme
and conspiracy.

> b.   *The Reserve Identity Evidence is Admissible
>      under Ninth Circuit Precedent*

Under well-established Ninth Circuit precedent, offenses or
acts that form the basis of a conspiracy are "inextricably
intertwined" with that conspiracy and are therefore admissible,
without regard to Rule 404(b).  See United States v. Montgomery, 384
F.3d 1050, 1061-62 (9th Cir. 2004) (summary exhibit admissible

because it detailed acts that were inextricably intertwined with the conspiracy) (citing United States v. Williams, 989 F.2d 1061 (9th Cir. 1993), United States v. Lillard, 354 F.3d 850 (9th Cir.2003), and United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012 (9th Cir. 1995)).  As described above, defendants' possession of reserve identities and their related instruments of fraud is inextricably intertwined with the charged conspiracy and schemes.  They each form a part of the synthetic identity assembly line that enabled defendants to conspire to, and commit, PPP and EIDL fraud.  It further enabled them to access and/or open accounts necessary to receive and transfer the proceeds of that fraud.  This is true even if the evidence relates to specific names that were not directly used in PPP or EIDL applications because it is proof of the manner and means of the conspiracy, the relationship between the coconspirators, and their respective roles in that conspiracy.

Such evidence would be admissible even when analyzed through the lens of a charged fraud scheme, rather than a fraud conspiracy. In United States v. Loftis, the Ninth Circuit applied the concept of inextricably intertwined evidence to wire fraud.  843 F.3d 1173, 1177 (9th Cir. 2016).  Before trial, the government indicated its intent to present evidence from investor victims, wires, and geographic locations that were not specifically referenced in the indictment.  Id. at 1175-76.  The district court partially granted defendant's motion to exclude on the basis that these were "other wire frauds" not charged in the indictment.  Id. at 1175-76.  The Ninth Circuit reversed, extending to wire fraud the principle that "direct evidence of the ongoing conspiracy charged in the indictment" was not subject to Rule 404(b).  Id. at 1176-77.

Instead, the Ninth Circuit pointed to its holding in United States v. Lo, 839 F.3d 777, 793 (9th Cir. 2016), to state that since the commission of wire fraud "necessarily includes a fraudulent scheme as a whole," the additional evidence simply encompassed "additional executions of the scheme that were not specifically charged."  The government was not precluded from "introducing evidence of uncharged transactions to prove the first element of wire fraud—the existence of a scheme to defraud."  Loftis, 843 F.3d at 1176-77.

Similarly, defendants' possession of the seized evidence is encompassed in the charged fraud schemes and conspiracy.  The colocation of evidence with directly used and reserve identities shows they were all part of the coconspirator's approach to manufacturing the evidence necessary to commit the charged offenses.  It proves the first element of wire fraud – the existence of the coconspirators' scheme to defraud by using an assembly line of false and synthetic identities, businesses, supporting records and certifying tools, and their access to related financial and online accounts.  The products of this assembly line were used in furtherance of their conspiracy to obtain COVID-19 disaster relief funds for their own personal expenses.

    2.    The Reserve Evidence is Inextricably Intertwined with the Money Laundering Conspiracy and Scheme

Defendants are also charged with money laundering and money laundering conspiracy.  Specifically, they are charged with, among other things, conducting and attempting to conduct financial transactions involving the proceeds of the wire fraud and bank fraud conspiracy; namely, the fraudulent proceeds of the PPP and EIDL applications described above.  (See FSI ¶¶ 51-58.)  As such,

1  evidence inextricably intertwined with the fraud and fraud

2  conspiracy must also form an inextricably intertwined basis for the

3  money laundering charges.

4      The seized evidence is also admissible to prove the alleged

5  money laundering offenses, separate and apart from the money

6  laundering conspiracy's dependence on the EIDL and PPP fraud.  The

7  government found checks, checkbooks, credit and debit cards and

8  other financial records during the November 2020 residential

9  searches.  Photographs of checks, checkbooks, and credit and debit

10  cards were also sent between coconspirators in text messages found

11  on the T.D. iPhone.  The text messages reveal that checks and

12  account records were not only used to support fraudulent PPP and

13  EIDL applications; photos of these documents were used to direct the

14  receipt and transfer of the fraudulent proceeds in furtherance of

15  the charged offenses to pay individual coconspirators.  (FSI ¶ 53.)

16      For example, bank records show that on or about July 3, 2021, a

17  New Acre Farm Produce account in the name of T.T. received $210,000

18  from "Crb Bluevine Sba Loan."[10]  That same day, "tammy" sent "Rich

19  New" a photo of the Runyan Tax Bank 2 account statement (see Exh. 4

20  at 1 (filed under seal)) with the following message:

21                 **T.D. iPhone Excerpt 7 (July 3, 2020):**

| #    | From                     | Body                                                                 |
|------|--------------------------|----------------------------------------------------------------------|
| 3504 | +18184145533 **tammy**   | I'm expecting a wire for Art for $73500 [IMG_5861.jpg] (See Exh. 4 at 1.) |
| 3505 | +18184145533 **tammy**   | And for me $157                                                       |
| 3506 | +18184145533 **tammy**   | How many times can people apple for the sister relief I feel like u can apply with different emails and different information |
| 3507 | +17473334170 **Rich New** | As many businesses as you have with different eins                   |

---

[10] Law enforcement agents found pre-signed copies of New Acre
Farm Produce checks in T. Dadyan and A. Ayvazyan's residence.  (See
Fenton Decl. (ECF 207) Exh. 12.)

| 3508 | +17473334170 **Rich New** | Sorry, I can't talk right now. |
|------|---------------------------|-------------------------------|
| 3509 | +18184145533 **tammy** | Send me the routing number for the Vahe wire |
| 3510 | +18184145533 **tammy** | [IMG_2124.jpeg] (See Exh. 4 at 2.) |

The last image sent by "tammy" in the above conversation was of a wiring form showing the transfer of $73,500 from T.T. of New Acre Farm Produce Inc. to Runyan Tax Service, Inc. (see Exh. 4 at 2). The form identified "Payroll New Acre Farm Produce" as its purpose, despite the text stating that the wire was expected for Art. Notably, on the day before this wire "tammy" told "Rich New" that someone was coming over and that, "I told art show him the decline letter from the eidl and it's simple its 35 percent for ppp." The $73,500 "wire for Art" is 35% of the $210,000 in SBA funds that had been deposited into the New Acre account. Bank records confirm that the wire was sent and received.

A similar discussion occurred on July 10, 2020, in which the parties sent images of checks to identify which accounts to use for wires and further discussed using checks as an alternative method by which the money could be transferred through "Art" (defendant T. Dadyan's husband and co-defendant is Artur Ayvazyan). (See T.D. iPhone Excerpt 8, below.)

**T.D. iPhone Excerpt 8 (July 10, 2020):**

| # | From | Body |
|------|---------------------------|-------------------------------|
| 3639 | +17473334170 **Rich New** | Oh ok. I wanna wire now |
| 3640 | +17473334170 **Rich New** | For Vahe |
| 3641 | +18184145533 **tammy** | Ok 👍 |
| 3642 | +18184145533 **tammy** | U have info |
| 3643 | +17473334170 **Rich New** | It's that check right u send me |
| 3644 | +18184145533 **tammy** | [IMG_6569.jpeg] |
| 3645 | +17473334170 **Rich New** | This one<br>[IMG_6512.jpg]  (See Exh. 4 at 3.) |
| 3646 | +18184145533 **tammy** | I |
| 3647 | +17473334170 **Rich New** | What email should I put for him |

19

| 3648 | +18184145533 **tammy** | Vahe314@yahoo.com |
|------|------------------------|-------------------|
| 3649 | +17473334170 **Rich New** | It allows me only 25. So I sent 25 |
| 3650 | +17473334170 **Rich New** | Do you want me to send from other place or he can wait we can send another 25 Monday |
| 3651 | +18184145533 tammy | Ok Monday or u can give check art will deport for him |
| 3652 | +18184145533 tammy | Or what's ever |
| 3653 | +17473334170 Rich New | Ok |

Vahe Dadyan is a charged coconspirator who, among other things, is alleged to have submitted a fraudulent PPP loan that caused $157,000 in fraudulent proceeds to be deposited into an account, from which approximately $155,000 was transferred into the Runyan Tax Bank 2 account. (FSI ¶ 33 (Overt Acts 37 – 40).) This transfer occurred on or about July 3, 2020. (Id.) On or about July 23, 2020, funds in the Runyan Tax Bank 2 Account were transferred to Escrow Company 2 to help purchase Residential Property 2 in the name of defendant R. Ayvazyan's alleged alias, "Iulia Zhadko." (FSI ¶ 33 (Overt Act 41).)

As these messages show, the coconspirators used a ready supply of financial accounts, including preexisting accounts owned or controlled by other members of the conspiracy, to send, receive, or cause the sending or receiving of funds, as needed. Like the identities used to fraudulently apply for PPP and EIDL loans, the bank accounts used to launder the proceeds were also fungible. When one method of payment failed, they moved to another. When one account could no longer be used, they opened a new one using a synthetic identity. (See T.D. iPhone Excerpt 6, infra at 14-15.) As such, evidence of defendants' possession, control, and access to reserve identities and the tools necessary to verify them is inextricably intertwined with the money laundering conspiracy. Without the ability to create and support these synthetic

1  identities, the coconspirators would not have been able to access,

2  open, or otherwise control the accounts through which the tainted

3  funds flowed.

4

5          3.   The Approximately $450,000 in Cash Found at
                R. Ayvazyan and Terabelian's Residence Is Admissible

6       In Loftis, the Ninth Circuit relied on its prior precedent in

7  United States v. Dorsey, 677 F.3d 944 (9th Cir. 2012), to highlight

8  "two general categories of other act evidence [that] may be

9  inextricably intertwined and thus exempted from the requirements of

10  Rule 404(b).  First, other act evidence may constitute a part of the

11  transaction that serves as the basis for the criminal charge.

12  Second, admission of the other act evidence may be necessary to

13  permit the prosecutor to offer a coherent and comprehensible story

14  regarding the commission of the crime."  Loftis, 843 F.3d at 1177-78

15  (internal quotations and citations omitted).

16       The cash found at defendant R. Ayvazyan and Terabelian's

17  residence is inextricably intertwined with the charged fraud scheme

18  and conspiracy.  The primary purpose of financial fraud is not the

19  fraud itself; it is the money.  Bank records show that, in addition

20  to moving fraudulently obtained PPP and EIDL funds through the use

21  of wires and checks, defendants also took possession of money from

22  tainted accounts in cash.  (See Fenton Decl. (ECF 188), Exh. 8 and

23  15 (showing numerous checks made out to "CASH" using the Mod

24  Interiors Bank 7 account); see also FSI ¶¶ 22(d), 23(c), and 33

25  (Overt Acts 54-58).)  As such, the presence of nearly half-a-million

26  dollars in cash on defendants R. Ayvazyan's and Terabelian's

27  property is part and parcel of the story of their criminal conduct.

28  Money is the purpose for the fraudulent transactions discussed

                                    21

above, and defendants' possession of significant amounts of bundled cash – particularly when found hidden in the bushes of their property during the search - permits the government to present the jury with a complete story of the charged offenses and prove its case. (See Fenton Decl. (ECF 188), Exh. 8.) Similarly, the bundled stacks of cash are inextricably intertwined with the charged money laundering conspiracy. Cash is the ultimate fungible asset -- unlike wire or bank-based transfers, it can exchange hands numerous times without leaving an audit trail.

**B. The Reserve Evidence Is Inextricably Intertwined with the Charged Offenses Even If They Could be Used for Other, Uncharged Crimes**

It is possible that defendants used the above-described instruments of fraud and money laundering to pursue other crimes. Defendants have also been charged by the California Attorney General's Office with a years-long mortgage fraud scheme and defendants R. Ayvazyan and Terabelian were previously convicted in this district for a loan-related bank fraud scheme. (See ECF 334, 340, and 357.) However, as indicated by the Ninth Circuit's ruling in United States v. Daly, the mere fact that an instrument of crime can be used to commit other crimes does not subject it to Rule 404(b). 974 F.2d 1215, 1216 (9th Cir. 1992) (government permitted to present inextricably intertwined evidence of shoot-out during which defendant possessed a firearm to prove felon-in-possession charge).

The use of a check, fake social security number, or a dead person's identity for multiple types of fraud does not remove its inextricable connection to the charged offense, just as the commingling of funds does not remove the taint of unlawful activity.

See <u>United States v. Ward</u>, 197 F.3d 1076, 1083 (11th Cir. 1999).  It would be nonsensical for defendants to exclude evidence of the manner and means by which they committed fraud and money laundering simply by using them to commit additional, uncharged crimes.  The Ninth Circuit recognized this reality in <u>United States v. Williams</u>, when it affirmed the district court's decision to admit evidence of defendant's sale of drugs other than the charged cocaine.  989 F.2d 1061, 1071 (9th Cir. 1993).  "The policies underlying rule 404(b) are inapplicable when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions."  <u>Id.</u>

**C. Even if Rule 404(b) Applied, the Evidence Would be Admissible**

As discussed above, the government does not believe evidence of defendants' possession of reserve identities and related instruments of fraud fall under the scope of Rule 404(b) because they are inextricably intertwined with the charged conspiracies and schemes. However, even if Rule 404(b) did apply, the evidence would be admissible as proof of opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident.  For the reasons presented, defendants' possession of, and access to, a ready supply of individual and business information, combined with the tools to manufacture and verify synthetic identities, enabled them to commit the charged crimes.  Defendants' possession of these instruments of fraud and money laundering reveal that their receipt of fraudulent PPP and EIDL proceeds was no accident.  It was all part of a deliberate plan to submit fraudulent loan applications and enjoy the fruits of their labor by using the tools they had before,

23

and further developed during, the COVID-19 pandemic.

The Ninth Circuit has repeatedly held that "Rule 404(b) is one of inclusion--not exclusion[.]"  See e.g., United States v. Lague, 971 F.3d 1032, 1040 (9th Cir. 2020) and United States v. Bailey, 696 F.3d 794, 806 (9th Cir. 2012).  Under the Ninth Circuit's "low threshold test of sufficiency," defendants' possession of additional fictitious and synthetic identities and the instruments of fraud are admissible for purposes of proving opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident. Lague, 971 F.3d at 1040 (citations and quotations omitted).

In Lague, the Ninth Circuit held that the district court properly admitted evidence of a medical professional's "uncharged prescriptions of controlled substances in enormous quantities" because they supported a "reasonable inference" that the charged controlled substance prescriptions were issued unlawfully.  Id. Similarly, defendants' possession of synthetic identities in names that were directly used in fraudulent loan applications and related accounts, as well as those that were not, combined with their possession of the instruments of fraud (stamps, seals, account passwords, checks, credit and debit cards in names not their own), all support a reasonable inference that defendants knowingly and intentionally used synthetic identities in furtherance of the charged offenses.  As such, the evidence is admissible under the low threshold requirements of Rule 404(b).

**IV.  CONCLUSION**

For the aforementioned reasons, evidence of defendants' possession of and access to interchangeable reserve identities, along with instruments of fraud directly referenced in coconspirator

24

communications, is admissible as being inextricably intwined with the charged fraud and money laundering conspiracies and schemes. The government respectfully requests that the Court find such evidence admissible as inextricably intertwined with the charged offenses or, in the alternative, admissible under the permissive standards of Rule 404(b).