TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
    1100/1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/2424/3819
    Facsimile: (213) 894-6269/0141
    E-mail:   Scott.Paetty@usdoj.gov
                Catherine.S.Ahn@usdoj.gov
                Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 320-0539
    Facsimile: (202) 514-0152
            E-mail: Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>RICHARD AYVAZYAN,<br>   aka "Richard Avazian" and<br>      "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>   aka "Marietta Abelian" and<br>      "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>   aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>   aka "Mike Grigoryan," and | No. CR 20-579(A)-SVW<br><br>GOVERNMENT'S MOTION <u>*IN LIMINE*</u> <u>#3</u><br><u>TO EXCLUDE EVIDENCE OR ARGUMENT</u><br><u>THAT OCTOBER 19-20, 2020 MIAMI</u><br><u>BORDER STOP AND NOVEMBER 5, 2020</u><br><u>PREMISES SEARCHES WERE UNLAWFUL</u><br><br>Hearing Date: June 14, 2021<br>Hearing Time: 1:30 p.m.<br>Location:    Courtroom of the<br>               Hon. Stephen V.<br>               Wilson |

|  |
|---|
| "Anton Kudiumov,"<br>ARMAN HAYRAPETYAN,<br>EDVARD PARONYAN,<br>   aka "Edvard Paronian" and<br>      "Edward Paronyan," and<br>VAHE DADYAN,<br><br>Defendants. |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, Assistant United States Attorneys Scott Paetty, Catherine S. Ahn, and Brian Faerstein, and Department of Justice Trial Attorney Christopher Fenton, hereby files this motion in limine seeking to exclude evidence and arguments, including on cross examination of government witnesses, that the border stop on October 19-20, 2020 at the Miami International Airport and the premises searches conducted on November 5, 2020 were unlawful. This motion is brought pursuant to Rules 401, 402, and 403 of the Federal Rules of Evidence and is based upon the attached memorandum of points and

//

authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 31, 2021                     Respectfully submitted,

                                        TRACY L. WILKISON
                                        Acting United States Attorney

                                        SCOTT M. GARRINGER
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                              /s/
                                        SCOTT PAETTY
                                        CATHERINE S. AHN
                                        BRIAN FAERSTEIN
                                        Assistant United States Attorneys
                                        CHRISTOPHER FENTON
                                        Department of Justice Trial Attorney


                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendants Richard Ayvazyan ("R. Avazyan"), Marietta Terabelian, Artur Ayvazyan ("A. Ayvazyan"), and Tamara Dadyan ("T. Dadyan") (collectively, "defendants"), along with four other coconspirators, are charged with thirty-three felony counts arising out of their alleged fraudulent scheme to steal and launder tens of millions of dollars from federally funded COVID-19 disaster relief programs.[1] Certain of the evidence that the government intends to introduce at trial was collected from defendants on October 19-20, 2020, during a border stop in Miami, and on November 5, 2020, during the execution of search warrants at defendants' homes, including a mansion purchased using proceeds of the alleged fraud.

The government hereby moves to exclude evidence and argument at trial that the border stop or the residence searches were unlawful or that the manner in which law enforcement agents engaged in the border stop or residence searches violated defendants' constitutional rights.  Specifically, based on numerous pre-trial filings by defendants, the government believes that defendants may seek to introduce evidence, cross-examine government witnesses, and raise arguments before the jury regarding the circumstances surrounding their detention and interrogation in Miami and the efforts that law enforcement took to secure their residences in executing the searches.  For example, defendants may seek to argue to the jury that the government improperly detained and questioned them in Miami and

---

[1] The facts underlying the charges in this case are summarized in the Government's Motion in Limine No. 2 (ECF 384) and are incorporated by reference herein.

conducted unreasonable searches at their residences.  Such evidence and argument is irrelevant to the issues at trial under Rules 401 and 402 of the Federal Rules of Evidence, and any limited probative value (of which there is none) is substantially outweighed by the danger of numerous concerns under Rule 403.

## II. STATEMENT OF FACTS

During a secondary screening stop at the Miami International Airport in October 2020, Customs and Border Protection ("CBP") Officers conducted a search of defendant R. Ayvazyan's and defendant Terabelian's belongings as they returned from a luxury vacation in Turks and Caicos and found: (i) in defendant Terabelian's luggage, a physical credit card in the name of "Viktoria Kauichko;" and (ii) in defendant R. Ayvazyan's belongings, one physical credit card in the name of "Runyan Tax Services/Viktoria Kauichko," and four physical credit cards in the name of "Iuliia Zhadko," including cards associated with "Top Quality Contracting" and "Turing Info Solutions."  (ECF 152 at 3.)  These physical credit cards provide significant links between these defendants and the aliases and companies that they and their coconspirators used to apply for and launder proceeds of the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan program ("EIDL") in furtherance of the loan fraud conspiracy in which they participated.

During a subsequent search, pursuant to a federal search warrant, in November 2020 of a mansion on Topeka Drive in Tarzana, California (the "Topeka Residence"), which defendants R. Ayvazyan and Terabelian purchased using proceeds of the alleged conspiracy law enforcement discovered additional evidence of fraud, including, among other things:

- digital photographs of credit cards in the names of Iuliia Zhadko and Viktoria Kauichko on defendant R. Ayvazyan's new iPhone;
- a grocery bag containing nearly $450,000 of cash that defendant Terabelian threw into the bushes in her backyard when law enforcement arrived;
- an assortment of gold coins believed to have been purchased with disaster relief funds fraudulently obtained using defendant Terabelian's deceased father's identity; and financial records showing the source of funds (namely disaster relief loan proceeds) used by defendants R. Ayvazyan and Terabelian to purchase the Topeka Residence.

(ECF 188 at 11.)

Law enforcement executed a separate search the same day, also pursuant to a federal search warrant, at the residence of defendants A. Ayvayzan and T. Dadyan on Weddington Avenue in Encino, California (the "Weddington Residence"). During that search, as discussed in detail in the Government's Motion in Limine No. 2, law enforcement discovered a trove of evidence related to the PPP/EIDL fraud conspiracy, including, among other things:

- dozens of unauthorized and counterfeit access devices, such as fake and stolen California driver's licenses, social security cards, and credit cards, including for individuals whose names were used to fraudulently apply for PPP and EIDL loans;
- handwritten and typed lists of personally identifiable information ("PII") for fake, stolen and synthetic

3

>    identities, including for names used in furtherance of the fraud;
> - lists of "EMAILS FOR BORROWERS," which were lists of email addresses created for fake, stolen and synthetic identities used to apply for fraudulent loans;
> - fraudulent PPP and EIDL loan applications using T. Dadyan's name and the names of other individuals;
> - blank checks and other records for accounts that received PPP and EIDL funds; and official looking rubber stamps, including stamps for the Clerk of the United States Bankruptcy Court for the Central District of California, Los Angeles Registrar-Recorder/County Clerk, the Los Angeles Superior Court, and numerous notaries.

(ECF 207 at 11; see also ECF 384.)

At trial, the government intends to call CBP officers who assisted in the searches that resulted in the discovery of the fraudulent physical credit cards at the Miami International Airport. The government also intends to call law enforcement witnesses to introduce evidence that was seized pursuant to the search warrants that were executed at the Topeka Residence and the Weddington Residence, including the evidence described above.

**III. ARGUMENT**

Defendants should be precluded from introducing evidence or argument regarding any alleged improprieties related to the searches, such as the length of time defendants R. Ayvazyan and Terabelian were detained, searched, and questioned at the border in Miami, and the safety precautions agents undertook to secure the Topeka Residence and the Weddington Residence in executing the search warrants. Any

4

such evidence, argument, or references by defense counsel to the alleged impropriety or unlawfulness of the border stop or the residences searches is irrelevant and improper, and should be excluded.

First, the government does not intend to use any statements made by defendants R. Ayvazyan and Terabelian during the October 2020 Miami border stop or any evidence obtained from their digital devices seized in Miami, in compliance with the Court's order. (ECF 296.) The government also does not intend to introduce evidence as to the planning and manner of the execution of the residential search warrants in November 2020. As such, any evidence or argument (including through cross-examination of government witnesses) as to the custodial interrogation in Miami or the manner in which the November 2020 premises searches were executed is irrelevant to any fact of consequence at trial, and thus is inadmissible on this basis alone. Fed. R. Evid. 401, 402.

Second, the legal issues the government expects defendants may seek to re-raise at trial are for the sole province of the Court, not the jury. The Miami border stop and the searches of the Topeka Residence and the Weddington Residence have been the subject of multiple and extensive motions to suppress in this case, in which defendants raised numerous constitutional arguments related to the actions of law enforcement agents who conducted the searches. (See generally ECF 130, 135, 136, 146, 149, 153.) Among other things, defendants R. Ayvazyan and Terabelian claimed that they were unreasonably detained at the Miami airport and subjected to a coercive custodial interrogation. (See generally ECF 130, 135, 136, 153.) They also alleged that they were subjected to an unreasonable

show of force by agents who entered and conducted a safety sweep of the Topeka Residence prior to the search of that premises. (ECF 146, 153.) Defendant A. Ayvazyan and T. Dadyan similarly claimed that agents acted unreasonably while securing the Weddington Residence prior to the arrival of the search teams at that location. (ECF 149.) This Court has issued orders resolving the issues raised in these motions. (ECF 296, 297.)

Defendants should not be permitted to relitigate before the jury, whether through argument, evidence, or cross examination of government witnesses, the same issues as to the legal admissibility of the evidence raised in their motions to suppress. Such questions are properly in the jurisdiction of the Court, not the jury. See Fed. R. Evid. 104(a); see also United States v. Reed, 575 F.3d 900, 919 (9th Cir. 2009) ("It is well-settled that the question of the competency of the evidence by reason of the legality or otherwise of its seizure is a question of fact and law for the court and not for the jury.") (quotations and citations omitted).[2]

Third, allowing the defense once again to raise these legal arguments will confuse the issues, mislead the jury, be a waste of time, and risks the undue delay of a "trial within a trial" based on conduct not at issue in the case. Fed. R. Evid. 403. Defendants'

---

[2] To the extent defendants claims allege violations of their civil rights due to the circumstances surrounding the execution of the warrants, civil and not criminal remedies should be applied in adjudicating such claims. See Hudson v. Michigan, 547 U.S. 586, 598-599 (2006) and United States v. Garcia-Hernandez, 659 F.3d 108, 113-14 (1st Cir. 2011). The government would object to the introduction of such evidence in this trial, however, on the bases of Fed. R. of Evid. 104(b) and 403 as lacking sufficient proof to determine relevance and lacking any probative value that would not be substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and waste of time.

questioning of government witnesses regarding circumstances surrounding the searches at issue here would result in a misleading sideshow.  For example, if defendants were allowed to reallege to the jury that law enforcement used excessive and unreasonable force in executing the search warrants, defendants would be putting in issue (once again) operational and safety concerns that have no bearing on the issues at trial.  Nonetheless, if such issues are raised, the government would need to introduce in rebuttal factual considerations that guided law enforcement's planning of the search warrant executions, including, among other things, evidence of defendants' ties to the "Armenian Power" organized crime group and evidence of their possession of numerous firearms.  (<u>See generally</u> ECF 188, 207.)

In addition, even assuming there is some limited probative value at trial as to the legality of the searches conducted in this case (and, to be clear, there is not), any such probative value is substantially outweighed by the danger of the numerous concerns set forth in Federal Rule of Evidence 403.  The Court addressed whether interactions between defendants and law enforcement in this case warranted suppression of the evidence and resolved those issues as a matter of law.  At this stage of the proceeding, any argument or suggestion to the jury that the behavior of law enforcement involved in the searches was unconstitutional presents the danger of unfair prejudice, as the jury's focus improperly will be drawn from the actual evidence and facts at issue to their feelings about how that evidence was obtained.  Fed. R. Evid. 403.  The government expects the jurors will be instructed that they are to decide the facts from "all the evidence received in the case" and not be influenced by any "personal likes or dislikes, sympathy, prejudice, fear, or public

opinion." Ninth Circuit Model Criminal Jury Instructions, No. 3.1 (Duties of Jury To Find Facts and Follow Law). However, if defendants are permitted to cross examine law enforcement witnesses, for example, on the legal basis for the Miami border stop, including whether the stated reasons for the stop were pretextual or whether defendants R. Ayvazyan and Terabelian were unreasonably detained before CBP officers found the Zhadko and Kauichko credit cards, there is a significant risk of the jury deciding this case based on emotion (i.e., whether the jurors dislike the officers) rather than the evidence at issue.

There also is the significant risk that the jury would be distracted from the central issue in the case, that is, whether defendants are guilty or not guilty of the various loan fraud, aggravated identity theft, and money laundering counts with which they are charged, and focus instead on whether the jury approves of the government's witnesses and operational tactics. Under Rule 403, such evidence and argument should be excluded to avoid confusion of the issues and misleading the jury. See United States v. Sarno, 73 F.3d 1470, 1488 89 (9th Cir. 1995) (exclusion of evidence relating to proof of fact that was not element of charge not abuse of discretion where such evidence "might well have (as the district court here concluded) induced confusion in the minds of the jury and distracted them from the true issue [in the case]").

Finally, defendants are not entitled to introduce otherwise irrelevant evidence or argument in the hopes of encouraging jury nullification. See United States v. Powell, 955 F.2d 1206, 1212-13 (9th Cir. 1992) (defense is not entitled to a jury nullification instruction); see also United States v. Sepulveda, 15 F.3d 1161, 1190

(1st Cir. 1993) ("A trial judge . . . may block defense attorneys' attempts to serenade a jury with the siren song of nullification"). Having no right to seek jury nullification, defendants have no right to present evidence or evidence that is irrelevant to their defense and merely constitutes a baseless attack on the testifying government witnesses.  See Zal v. Steppe, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring).  Jurors should not be misled into drawing upon emotion in reaching their verdict.  Having already had the opportunity to litigate their constitutional arguments before the Court, defendants should not be allowed to divert attention from the central issues of guilt or innocence in an effort to suggest to the jury that they should not be held accountable because of the way in which evidence against them was gathered.

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court grant the government's motion in limine seeking to exclude evidence and arguments, including on cross examination of government witnesses, that the border stop on October 19-20, 2020 at the Miami International Airport and the residence searches conducted on November 5, 2020 were unlawful or that the manner in which law enforcement agents engaged in the border stop or residence searches violated defendants' constitutional rights.