TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
     1100/1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527/2424/3819
     Facsimile: (213) 894-6269/0141
     E-mail:    Scott.Paetty@usdoj.gov
                Catherine.S.Ahn@usdoj.gov
                Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
     1400 New York Avenue NW, 3rd Floor
     Washington, DC 20530
     Telephone: (202) 320-0539
     Facsimile: (202) 514-0152
     E-mail:   Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-579(A)-SVW |
|      Plaintiff, | GOVERNMENT'S MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUDE DIGITAL DEVICE FILES FROM DEVICES OBTAINED ON NOVEMBER 5, 2020 (ECF 363) |
|         v. | |
| RICHARD AYVAZYAN,<br>  aka "Richard Avazian" and<br>    "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>  aka "Marietta Abelian" and<br>    "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>  aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>  aka "Mike Grigoryan," and | |

        "Anton Kudiumov,"
ARMAN HAYRAPETYAN,
EDVARD PARONYAN,
   aka "Edvard Paronian" and
        "Edward Paronyan," and
VAHE DADYAN,

             Defendants.

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, Assistant United States Attorneys Scott Paetty, Catherine S. Ahn, and Brian Faerstein, and Department of Justice Trial Attorney Christopher Fenton, hereby files this memorandum in opposition to defendants Richard Ayvazyan, Marietta Terabelian, Artur Ayvazyan, and Tamara Dadyan's "motion to exclude digital device files from devices obtained on November 5, 2020." (ECF 363.)

//
//
//
//
//
//
//
//
//
//
//
//
//
//

1    This opposition is based upon the attached memorandum of points

2    and authorities and exhibits, the files and records in this case, and

3    such further evidence and argument as the Court may permit.

4    Dated: May 31, 2021            Respectfully submitted,

5                                    TRACY L. WILKISON
                                     Acting United States Attorney
6
                                     SCOTT M. GARRINGER
7                                    Assistant United States Attorney
                                     Chief, Criminal Division
8

9                                         /s/
                                     _____
10                                   SCOTT PAETTY
                                     CATHERINE S. AHN
11                                   BRIAN FAERSTEIN
                                     Assistant United States Attorneys
12
                                     CHRISTOPHER FENTON
13                                   Trial Attorney, Department of
                                     Justice
14
                                     Attorneys for Plaintiff
15                                   UNITED STATES OF AMERICA

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                                                  <u>PAGE</u>

TABLE OF AUTHORITIES...............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    Introduction.................................................1

II.   Statement of Facts...........................................2

      A.    The Search Warrants....................................2

      B.    The Government's Review and Production of Evidence
            from Digital Devices, Including the Four Digital
            Devices Subject to Defendants' Motion..................3

      C.    Defendants' Prior Motions to Exclude Digital Evidence.....7

III.  Argument.....................................................7

      A.    The Length of the Government's Examination of the
            Digital Devices Was "Reasonable" under the Fourth
            Amendment..............................................8

      B.    The Defendants' Process Argument Fails Because the
            Warrant Authorized Prosecutors to Participate in the
            Search of the Digital Devices.........................13

      C.    Defendants' Request for Exclusion Based on Rule 16 and
            the Court's Orders Is Frivolous.......................15

      D.    The Court has Already Ordered a Post-trial Kastigar
            Hearing...............................................18

IV.   Conclusion..................................................18

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

**CASES**

United States v. Aboshady, 951 F.3d 1 (1st Cir. 2020)..........14, 15

United States v. Burns, No. 07 CR 556, 2008 WL 4542990
     (N.D. Ill. Apr. 29, 2008)............................9, 11, 12

United States v. Gorrell, 360 F. Supp. 2d 48 (D.D.C. 2004)..........9

United States v. Mutschelknaus, 564 F. Supp. 2d 1072
     (D.N.D. 2008)....................................................10

United States v. Nepstead, 424 F.2d 269 (9th Cir. 1970)............10

United States v. Stefanson, 648 F.2d 1231 (9th Cir. 1981)..........11

United States v. Syphers, 426 F.3d 461 (1st Cir. 2005)............10

United States v. Triumph Capital Group, Inc., 211 F.R.D. 31
     (D. Conn. 2002)....................................10, 11, 12

**STATUTES**

Fed R. Crim. P. 41.................................................11

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Introduction**

There is overwhelming evidence of defendants' guilt contained in four smartphones that were lawfully seized from defendants' residences pursuant to warrants that this Court has already found to be constitutionally valid.  The evidence includes digital photographs of fake identification documents and fraudulently obtained credit cards in the names of synthetic identities used to commit fraud; digital photographs of fraudulently submitted COVID-19 disaster relief loan applications; text messages between certain of the defendants detailing the manner and means of the charged conspiracies and schemes; and digital photographs of the templates used by defendants to create the fake identification documents, payroll reports, and tax forms used in furtherance of the fraud. (See, e.g., Declaration of Christopher Fenton ("Fenton Decl.") ¶¶ 1-4, Exs. 1-7 (examples of digital photographs seized from defendants' smartphones).)

The government produced a complete forensic copy of the four smartphones to the four defendants approximately four and a half months prior to the current trial so that the four defendants and their counsel could conduct their own examination of the smartphones. The government has also produced to all eight defendants summary reports of the contents that are searchable and organize the data by file type. The government has now completed its responsiveness review, approximately five weeks early, and produced to all eight defendants a follow-up report, showing which of the previously-disclosed discovery materials the government seized from these four smartphones.  Tomorrow the government is producing to defendants, two

weeks before trial, a copy of the trial exhibits that the government created using the evidence from the four smartphones belonging to these four defendants, which are a subset of the materials that they received in discovery months ago.

Facing overwhelming evidence and decades of imprisonment, defendants resort to their now familiar tactic of demanding the Court impose the drastic sanction of exclusion based on frivolous allegations of prosecutorial misconduct.  Defendants also ask the Court to reconsider its prior opinions and orders finding that the search warrants for the smartphones were constitutionally valid (ECF 296, 297), without providing a legitimate basis for the request or a compelling reason for the Court to reconsider and reverse itself. Defendants' motion is frivolous and meritless and should be denied.

## II.  Statement of Facts

### A.   The Search Warrants

On November 3, 2020, the United States obtained warrants to search defendants' respective residences in Tarzana and Encino.  (See ECF 363, Ex. A, 2:20-MJ-05282, Ex. B, 2:20-MJ-05286.)  Attachment B to the warrants set forth detailed categories of items authorized to be seized, including digital devices.  The "search procedure" laid out in the fourth paragraph of Attachment B authorized executing parties to either search the digital devices on-site or "seize and transport the device(s) and/or forensic image(s) thereof to an appropriate law enforcement laboratory or similar facility to be searched at that location."  The "search procedure" also stipulated that "[t]he search team shall complete the search as soon as is practicable but not to exceed 120 days from the date of execution of the warrant.  The government will not search the digital device(s)

2

and/or forensic image(s) thereof beyond this 120-day period without obtaining an extension of time order from the Court."

Of particular relevance to the defendants' motion, paragraph 5 of Attachment B specifically authorized prosecutors to participate in the search of the electronic devices: "[t]he review of the electronic data obtained pursuant to this warrant may be conducted by <u>any government personnel assisting in the investigation</u>, who may include, in addition to law enforcement officers and agents, <u>attorneys for the government</u>, attorney support staff, and technical experts." (emphasis added).

On November 5, 2020, federal agents executed the warrant and recovered, among other things, dozens of digital devices, including the four cellular telephones that are the subject of this motion (hereinafter "the Four Digital Devices"). Rather than reviewing the electronic materials on the premises, agents seized the devices, and the FBI's Computer Analysis and Response Team ("CART") made digital copies, which the warrants authorized.

**B.   The Government's Review and Production of Evidence from Digital Devices, Including the Four Digital Devices Subject to Defendants' Motion.**

The government produced a complete forensic copy of each of the digital devices to these four defendants so that their respective counsel had timely access to all of the data on the devices and could conduct their own review and examination. At the time the government began producing these complete forensic copies to defendants, counsel asked if the government had generated "reports" (<u>e.g.</u>, using software called Cellebrite) of the data contained on the devices. On January 4, 2021, the government explained that, after it produced to defendants a copy of the complete forensic image, it would follow up

with a copy of any such Cellebrite reports if the government generated such information: "We have not yet produced any of these types of reports because the government has prioritized providing the defense with complete forensic copies of the devices and therefore has not yet completed its own review of the devices.  We will produce any discoverable reports generated as part of the government's review of the devices once the government's review is complete and such reports are generated."  (Fenton Decl. ¶ 5, Ex. 8.)  Defendants did not seek any relief from this Court at that time.

When, in February 2021, the government began to produce these Cellebrite reports to defendants (as the government said it would), it explained that it had asked an independent filter team to review the Cellebrite reports first for potentially privileged material before they were made available to the prosecution team.  (Fenton Decl. ¶ 6, Ex. 9 (Feb. 26, 2021 Letter).)  The government used an independent filter team to review certain of the defendants' digital devices, including the Four Digital Devices, both in an abundance of caution and in recognition of defendant Richard Ayvazyan's claim following the execution of a search warrant at his residence that he possessed potentially privileged information.  Because some of the potentially privileged communications might have been in Armenian, the independent filter team used an Armenian speaker to conduct the review.  Again, defendants did not seek any relief from this Court at that time.

On March 4, 2021 the government sought and received its first and only request for an extension of time to complete its search, which allowed the government to continue searching up to and including July 3, 2021.  (See ECF 363, Ex. C, 2:20-MJ-05282.)  The

government sought the extension using the same method it had used to
obtain the search warrants, namely by submitting an ex parte
application to the magistrate judge.  In its submission, the
government explained that it had seized dozens of digital devices and
that more time was needed to complete its responsiveness review
because:

- as of that time, only three devices had been completely
  processed and filter reviewed for privilege, and the
  remaining digital devices were still being imaged and
  processed by CART and reviewed by the filter team;

- the forensic review of digital devices was time consuming and
  required specialized computer software and training, and, in
  some cases, required additional time to decrypt encrypted
  devices;

- the filter review process involved a thorough review of the
  data contained on the devices to ensure that the
  responsiveness review team was not tainted by the release of
  privileged material; and

- the FBI CART team's resources had been stretched due to the
  huge influx of devices that were seized during investigations
  arising out of the January 6, 2021 insurrection at the U.S.
  Capitol in Washington, D.C.

(See id.)

The government submitted its ex parte application under seal.
In its application to seal, the government explained to the
magistrate judge that its investigation had so far yielded an
indictment of four individuals in United States v. Ayvazyan, CR 20-
579-SVW, that the investigation was ongoing, and that the government
was evaluating whether to supersede to add more defendants and more
fraudulent loans.  The government further disclosed to the magistrate
judge that the government had already produced a copy of the search
warrants to the four defendants in discovery, and requested that the
search warrants remain under seal and that the application be filed
under seal while the government completed its investigation and

1    sought additional charges:

2         The search warrants in this case remain under seal.  The
      affidavits have been produced to the defendants; however, this
3         production was subject to a protective order that restricts
      their dissemination.  If this application were made public
4         before any additional charging decisions can be made, there is a
      significant risk that the case would be jeopardized by, among
5         other reasons, potentially alerting additional subjects that the
      investigation is ongoing.
6

7    (See ECF 363, Ex. D, 2:20-MJ-05282.)  The government's application

8    was granted, and the government was given until July 3, 2021 to

9    complete its responsiveness review.

10        The government subsequently decided to focus on one of the

11   digital devices belonging to each of the four original defendants and

12   selected the Four Digital Devices that are the subject of the instant

13   motion.  (Fenton Decl. ¶ 7, Ex. 10 (Apr. 26, 2021 Letter).)  The

14   complete forensic copy of the Four Digital Devices had already been

15   produced to defendants on February 1, 2021, so that defendants could

16   conduct their own examination.  (ECF 363, Ex. F.)  The independent

17   filter team then generated Cellebrite reports for each of the Four

18   Digital Devices and redacted from those reports any potentially

19   privileged communications.  On April 30, 2021, as soon as the

20   independent filter team completed its review and released the

21   redacted Cellebrite reports to the prosecution team, the prosecution

22   team produced the reports to defendants.  (Fenton Decl. ¶ 8, Ex. 11.)

23   The prosecution team then reviewed the Cellebrite reports for each of

24   the Four Digital Devices and identified the materials it intended to

25   seize pursuant to the search warrants.  The prosecution team

26   completed its responsiveness review of these Four Digital Devices

27   approximately five weeks before the July 3 deadline.  And on May 26,

28   2021, the government reproduced to defendants a further redacted copy

6

of the Cellebrite reports for each of the Four Digital Devices that included only the limited subset of information it was seizing pursuant to the search warrants. (Fenton Decl. ¶ 9, Ex. 12.)

## C.   Defendants' Prior Motions to Exclude Digital Evidence

On March 11, 2021, the defendants moved to suppress evidence recovered from the Tarzana and Encino residences, including the Four Digital Devices, on the ground that the warrants lacked particularity and were overbroad.  (ECF 146, 149.)  Defendants also argued for suppression of the evidence on the Four Digital Devices, among others, based on their claim that the magistrate judge's extension of time was invalid and that allowing the government to continue its review violated the Court's discovery cutoff.  (ECF 146 at 23-24; 149 at 11-12; ECF 222 at 14-15.)  The Court denied defendants' motions, ruling that the warrants were sufficiently particular and were not overbroad, and rejecting defendants' arguments that the warrants had been executed in an unreasonable manner.  (ECF 296, 297.)  Defendants separately moved to exclude evidence based on allegations of undue delay and prosecutorial misconduct.  (ECF 248, ECF 289.)  The Court denied defendants' motions.

In the instant motion (ECF 363), defendants, once again, move the Court to suppress the contents of the digital devices and raise the same arguments that the Court already rejected.

## III. Argument

Although styled as a "motion to exclude digital device files from devices obtained on November 5, 2020," the defendants' pleading is, in essence, another motion to suppress evidence that the Court has already deemed to have been seized in compliance with the Fourth Amendment.  (See ECF 296).  The defendants' pleading is lengthy and

the government finds the precise bases for suppression difficult to ascertain.  Nonetheless, it appears the defendants are making two primary arguments for suppression: 1) the delay between the date that the government seized the digital devices and when it examined their contents renders the search "unreasonable" under the Fourth Amendment; and 2) the search protocol that the government applied to the devices was improper because prosecutors – not agents – searched the devices for potential trial exhibits.  Both arguments rely on faulty factual and legal premises.

### A.   The Length of the Government's Examination of the Digital Devices Was "Reasonable" under the Fourth Amendment.

Defendants argue that the Court should take the drastic action of excluding overwhelming evidence of their guilt that is contained on the Four Digital Devices because the government did not review the data as soon as practicable.  (ECF 363 at 5.)  The government's review, however, was timely because it sought and obtained in good faith a court order extending the time to complete its responsiveness review until July 3, 2021 – and then completed that review approximately five weeks early.

Unable to dispute the fact of the extension, defendants instead argue that the extension was "invalid."  (ECF 363 at 5-6.) Defendants do not seriously challenge the underlying reasons for why the government requested a one-time extension.[1]  Rather, defendants

---

[1] For example, defendants assert – without any factual basis – that the January 6, 2021 insurrection at the U.S. Capitol in Washington, D.C. did not actually result in an increased workflow that placed competing demands on the CART team's time and resources. Baseless conjecture should not be credited in a motion seeking drastic sanctions like the exclusion of overwhelming evidence of guilt.

allege that the extension was "obtained by deceiving the Court."

(Id.)  Like the myriad allegations of prosecutorial misconduct that the Court has already considered and rejected, these allegations are also without basis in fact.

Defendants' primary argument is that the government should have told the magistrate judge about the Court's March 15 discovery cutoff and the May 4 trial date.  Defendants, however, fail to explain how or why such information would have been material to the question before the magistrate judge:  whether the government had good cause to request a one-time extension to complete its responsiveness review based on the facts and circumstances.  Moreover, the government simply had nothing to hide from the magistrate judge.  It had already produced to defendants on February 1, 2021 a complete copy of the forensic image of the Four Digital Devices so that defendants could conduct their own examination and, at the time that the government submitted its application on March 4, 2021, the District had not yet resumed jury trials.

In any event, even putting aside the magistrate's order granting an extension, any delay in completion of the government's review of the digital evidence does not render the search "unreasonable" under the Fourth Amendment because the passage of time did not result in an expiration of probable cause.  Neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure places per se limits on the duration of any forensic analysis, and the courts have upheld forensic analysis begun months after investigators acquired a computer or data.  See United States v. Burns, No. 07 CR 556, 2008 WL 4542990, at *8-9 (N.D. Ill. Apr. 29, 2008) (ten month delay); United States v. Gorrell, 360 F. Supp. 2d 48, 55 n.5 (D.D.C. 2004) (same).

Rather than applying rigid time limits, courts assess whether delays in forensic analyses were "reasonable" under the circumstances. United States v. Mutschelknaus, 564 F. Supp. 2d 1072, 1077 (D.N.D. 2008).

The Ninth Circuit and other appellate courts view the dissipation of probable cause as the chief measure of "reasonableness" when assessing whether the length of a search violated the Fourth Amendment.  In United States v. Nepstead, for example, the Ninth Circuit held that a search was "reasonable" despite a delay in execution because the passage of time did not impact the probable cause determination:

> In the case before us, nothing, other than the passage of time, occurred during the six-day period between issuance and execution of the search warrant which changed the facts upon which the original affidavit was based and which gave the agents probable cause to believe that articles subject to seizure were in the house.  And, on the facts before us, the passage of time could not detract from probable cause because the house was kept under surveillance for signs of activity.

424 F.2d 269, 271 (9th Cir. 1970).  In United States v. Syphers, the First Circuit employed similar reasoning in assessing whether a five-month delay in searching a computer already in police custody attributable to a "backlog" at the laboratory rendered the search "unreasonable."  426 F.3d 461, 469 (1st Cir. 2005).  The panel ruled that the "the five-month delay did not invalidate the search of appellant's computer because there is no showing that the delay caused a lapse in probable cause, that it created prejudice to the defendant, or that federal or state officers acted in bad faith to circumvent federal requirements."  Id.; see also United States v. Triumph Capital Group, Inc., 211 F.R.D. 31, 66 (D. Conn. 2002)

("[t]he purpose of Fed R. Crim. P. 41(c)(1)'s time limitation is to prevent a stale warrant").[2]

Here, the defendants do not allege that passage of time negated probable cause, nor can they.  This is because the government had probable cause on the day that it seized the devices, as the Court held when it denied defendant's prior motion to suppress evidence from the premises searches.  (ECF 296 at 18-22; ECF 297 at 2-6.) Any delay in reviewing their contents in no way impacted the initial probable cause determination.  Delayed reviews of copied digital evidence cannot impact the initial probable cause determination because the act of copying devices essentially "freezes" the evidence in time.  Burns, 2008 WL 4542990 at *9 ("the delay [in reviewing digital evidence] in this case was certainly lengthy and the government does not give any reason for the delay.  However, Burns does not assert that the time lapse affected the probable cause to search the computer (nor could he, given that suspected child pornography had already been found on the hard drive), that the government has acted in bad faith, or that he has been prejudiced in any way by the delay, and the warrant does not specify a date by which the search must have been conducted"); Triumph Capital, 211 F.R.D. at 66 ("when the mirror image was made within the ten-day period the evidence was frozen in time.  Thus, there was no danger

---

[2] More broadly, violations of Rule 41 do not require suppression unless: "(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision of the Rule."  United States v. Stefanson, 648 F.2d 1231, 1235 (9th Cir. 1981) (magistrate judge's failure to record affiant's oath in violation of Rule 41 did not warrant suppression).

that probable cause ceased to exist during the search of the hard drive"). As in Burns and Triumph Capital, the quality of the evidence did not degrade as a result of the time it took to examine the devices because the government made copies of the media. Unlike some forms of physical evidence, the integrity of electronic evidence does not decay with time, particularly in the short period at issue here.

Beyond the absence of impact on the probable cause determination, the defendants have not shown that the longevity of the review prejudiced them. This is so for two reasons. First, the government provided forensic copies of the entire devices to these four defendants in discovery on February 1, 2021. See Triumph Capital, 211 F.R.D. at 66 (noting that "[t]he defendants were given copies of everything seized. This obviates the need for a detailed inventory"). The government then followed up with a copy of Cellebrite reports on April 30, 2021. Second, by virtue of the court's order requiring production of an exhibit list by June 1, 2021, the government is required to disclose well in advance of trial any items from the digital devices that it plans to offer in its case-in-chief. In other words, the exhibit list will identify those files extracted from the drives that are at issue.

The defendants try to demonstrate prejudice with a question: "how can the defendants (without the resources of the federal government) possibly be expected to complete an in-depth substantive content review and prepare a defense while simultaneously processing the other information the government has amassed?" The website of Steptoe and Johnson, the international law firm that represents defendant Richard Ayvazyan, suggests an answer. Specifically,

1  Steptoe's website touts its state of the art "Complex Litigation &

2  Discovery Center," which it says "bring[s] a wealth of e-discovery

3  experience and subject matter insight that comes from the successful

4  hands-on management of more than 300 document reviews" and which

5  employs sophisticated techniques such as "technology-assisted review"

6  and "email threading."  See https://www.steptoe.com/en/about/complex-

7  litigation-discovery-center.html.  Given Steptoe's forensic resources

8  and defendants' likely already existing familiarity with the contents

9  of their own digital devices, defense counsel's attempts to assert

10  prejudice are not well taken.

11         **B.   The Defendants' Process Argument Fails Because the Warrant**
               **Authorized Prosecutors to Participate in the Search of the**
12             **Digital Devices.**

13       The defendants' brief seems to argue that the digital evidence

14  should be suppressed because prosecutors themselves are reviewing the

15  material to identify trial exhibits.  According to the defendants,

16  this is a problem because "[the government's] attorneys [] are not

17  authorized members of the search team. . . ."  (ECF 363 at 17.)  To

18  the extent that the defense is suggesting that prosecutors are

19  prohibited from participating in the review of evidence obtained by a

20  search warrant, their proposition is, in a word, nonsense.

21       The "search procedure for digital devices" set out in the

22  warrant are perfectly contrary to the defendants' assertion that

23  prosecutors are not "authorized members of the search team."

24  Specifically, paragraph five of Attachment B to the warrant says

25  "[t]he review of the electronic data obtained pursuant to this

26  warrant may be conducted by any government personnel assisting in the

27  investigation, who may include, in addition to law enforcement

28  officers and agents, attorneys for the government, attorney support

staff, and technical experts." (Emphasis added). Even absent this explicit authorization, it is common for prosecutors to participate personally in the review of seized electronic evidence, and this should come as no surprise given the objective of a search warrant is to provide prosecutors with evidence to use at trial. The information wall between prosecutors and agents posited by the defendants would also have the undesirable policy consequence of inhibiting searching agents from seeking legal advice from prosecutors about whether or not particular evidence falls within the scope of the warrant.

The defendants' assertion that "the government has jettisoned the search protocol requirement altogether" has no basis in fact. (ECF 363 at 17.) The government reviewed the devices for documents that fall within the scope of the warrant. That the government is identifying trial exhibits as part of this process is not a problem. See United States v. Aboshady, 951 F.3d 1, 5 (1st Cir. 2020) (government permitted to retain and search electronic data "in preparation for trial"). This is because the documents that the government intends to introduce at trial are merely a subset of the scope of documents that Attachment B to the warrant authorizes the government to "seize."

At any rate, the remedy for any errors in the search process is exclusion of evidence that exceeded the bounds of the warrant, not suppression of all information contained on the device at issue. As the Court held in Aboshady, "[i]f the scope of the government's search was too broad, Aboshady would only be entitled to suppression of those emails that were introduced at trial and that reasonably fell outside the scope of the warrant unless the lawful and unlawful

14

parts of the search are inextricably intertwined or where the lawful

part seems to have been a kind of pretext for the unlawful part."

Id. at 9.

### C. Defendants' Request for Exclusion Based on Rule 16 and the Court's Orders Is Frivolous.

Defendants' last-ditch effort to have the Court afford relief

that it previously denied should be rejected.  Defendants' request

based on Rule 16 and the Court's orders is without basis in law or

fact and should be denied.  The government has made good faith

efforts to comply with its discovery obligations in a timely manner,

and defendants have not been prejudiced in any way.

At the outset of the case, the government notified defendants of

the process it would use to promptly produce to them a forensic copy

of the dozens of digital devices it had seized so that defendants

could conduct their own examination.  Defendants did not seek relief

from the Court.  Consistent with its notice, the government promptly

produced a complete forensic copy of the Four Digital Devices (among

many others) to defendants by February 1, 2021.  The government's

production of this evidence was made approximately six weeks prior to

the discovery cutoff, and four and half months before trial.

Defendants do not and cannot demonstrate any prejudice based on this

record.

To the extent that steps were taken that may have delayed the

time when defendants would have otherwise received additional copies

of the data – in the form of Cellebrite reports – such steps were

taken to protect defendants' privileges:  an independent filter team

conducted a filter review, using an Armenian language specialist, to

respect and protect defendants' potentially privileged

communications.  Filtering foreign language documents for privilege takes time.

Moreover, the government produced to defendants approximately six weeks before trial a Cellebrite report summarizing the data available from the complete forensic copies that the government had produced months prior, and the government produced to defendants nearly three weeks before trial a reproduction of the Cellebrite that contains only the limited subset of data the government decided to seized after it completed its responsiveness review.  These reports are searchable and organized by file type.  In addition, the government is producing to defendants two weeks before trial a copy of the specific trial exhibits containing the evidence from the Four Digital Devices that it intends to use at trial.  Even had defendants decided not to conduct their own examination of the complete forensic copies that the government had produced four and half months before trial, defendants had more than sufficient time to review the Cellebrite reports produced in discovery well in advance of trial.

Defendants do not make a serious effort to argue how or why they have been prejudiced based on the facts present here.  Defendants state only that "prejudice will occur in this case because the addition of the seized data to the government's already large pool of seizures, with only two weeks until trial, would make it potentially impossible for the defendants to adequately prepare."  (ECF 363 at 13-14.)  Defendants' claim -- that the reproduction of a limited subset of material, which they have already had in their possession, negatively impacts their efforts to prepare for trial -- defies common sense.

Finally, defendants argue, as they have done repeatedly during

16

the extensive litigation in this case, that they need not demonstrate
prejudice.  (ECF 363 at 14.)  But defendants still must proffer an
actual reason as to why, based on this record, the Court should take
extraordinary and drastic steps to exclude direct evidence of
defendants' involvement in serious crimes when that evidence has been
available to defendants and their counsel for months in advance of
trial.  Defendants do not make such a showing because they cannot.

Moreover, none of the decisions on which defendants rely
actually support the drastic sanctions defendants seek here.  In all
of the opinions defendants cite (ECF 363 at 14), the government had
access to the discovery at issue before the defendants.  Here,
however, defendants had access to the discovery three months before
the government, because the government provided defendants with a
complete forensic copy of the Four Digital Devices on February 1 (per
defendants' request) and the government did not obtain access until
the end of April (after the contents had been reviewed by the
independent filter team to redact potentially privileged
communications).  Moreover, none of the cases involved information
about which defendants had intimate knowledge – namely, the contents
of their own smartphones.  To the contrary, the opinions and orders
relied on by defendants concerned the belated disclosure of
information known or knowable only to the government, such as
information relating to a government informant, expert witness,
witness list, co-defendant plea, or police reports.  There is no
legal support for the extraordinary relief defendants seek.

**D.    The Court has Already Ordered a Post-trial _Kastigar_ Hearing.**

The defendants suggest that the government's search of the devices was somehow influenced by information compelled in violation of _Kastigar_.  (ECF 363 at 23).  This is not so, and, at any rate, the Court has already set a post-trial _Kastigar_ hearing and considerations of judicial economy counsel in favor of dealing with all _Kastigar_ arguments at that time.

**IV.  Conclusion**

For the foregoing reasons, the Court should deny the motion filed as ECF 363.


Dated: May 31, 2021                Respectfully submitted,

                                   TRACY L. WILKISON
                                   Acting United States Attorney

                                   SCOTT M. GARRINGER
                                   Assistant United States Attorney
                                   Chief, Criminal Division

                                         /s/
                                   _____
                                   SCOTT PAETTY
                                   CATHERINE AHN
                                   BRIAN FAERSTEIN
                                   Assistant United States Attorneys

                                   CHRISTOPHER FENTON
                                   Department of Justice Trial Attorney

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

18