TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
    1100/1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/2424/3819
    Facsimile: (213) 894-6269/0141
    E-mail:   Scott.Paetty@usdoj.gov
              Catherine.S.Ahn@usdoj.gov
              Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 320-0539
    Facsimile: (202) 514-0152
    E-mail:   Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>RICHARD AYVAZYAN,<br>  aka "Richard Avazian" and<br>     "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>  aka "Marietta Abelian" and<br>     "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>  aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>  aka "Mike Grigoryan," and | No. CR 20-579(A)-SVW<br><br>GOVERNMENT'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS UNDER FED. R. CRIM. P. 12(B) OR CONTINUE THE TRIAL TO HOLD A PRE-TRIAL KASTIGAR HEARING |

|   |
|---|
| "Anton Kudiumov," ARMAN HAYRAPETYAN, EDVARD PARONYAN,   aka "Edvard Paronian" and     "Edward Paronyan," and VAHE DADYAN,       Defendants. |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, Assistant United States Attorneys Scott Paetty, Catherine S. Ahn, and Brian Faerstein, and Department of Justice Trial Attorney Christopher Fenton, hereby files this memorandum in opposition to defendants Richard Ayvazyan and Marietta Terabelian's motion to dismiss or for a pre-trial Kastigar hearing.  (ECF No. 381.)

//
//
//
//
//
//
//
//
//
//
//
//
//
//

This opposition is based upon the attached memorandum of points and authorities and exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 4, 2021                      Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


        /s/
SCOTT PAETTY
CATHERINE S. AHN
BRIAN FAERSTEIN
Assistant United States Attorneys

CHRISTOPHER FENTON
Trial Attorney, Department of Justice


Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

I.   INTRODUCTION ...................................................... 1

II.  ARGUMENT .......................................................... 1

     A.   The Court Should Deny the Defendants' Motion to
          Dismiss Pursuant to Rule 12(b) Because Defendants Do
          Not Allege Structural Error in the Grand Jury
          Proceedings ................................................. 1

     B.   Holding Any Portion of the Kastigar Inquiry Pre-trial
          Would Be Inefficient and Unworkable. ........................ 5

III. CONCLUSION ........................................................ 9

**TABLE OF AUTHORITIES**

DESCRIPTION                                                              PAGE

**Federal Cases**

United States v. Allen,
530 U.S. 27 (2000) ............................................... 4

United States v. Bingham,
   653 F.3d 983 (9th Cir. 2011) .................................. 3

United States v. Carozza,
   608 Fed. Appx. 532 (9th Cir. 2015) ............................ 4

United States v. Connolly, 16-cr-0370,
   2019 WL 2120523 (May 2, 2019) ................................. 7

United States v. Dudden,
   65 F.3d 1461 (9th Cir. 1995) .................................. 6

United States v. Gallo,
   859 F.2d 1078 (2nd Cir. 1988) ................................. 7

United States v. Hubbell,
864 F.3d 63 (2nd Cir. 2017) ...................................... 4

United States v. Kaplan,
   554 F.2d 958 (9th Cir. 1977) .................................. 4

United States v. Montoya,
   45 F.3d 1286 (9th Cir. 1995) .................................. 5

United States v. Rogers,
   722 F.2d 557 (9th Cir. 1983) ............................... 6, 8

United States v. Serrano,
   870 F.2d 1 (9th Cir. 1989) .................................... 6

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Relying on conjecture, hyperbole, and false claims that the government has conceded indisputable facts, defendants now ask the Court to bypass the Kastigar hearing they requested and instead dismiss the indictment outright. Alternatively, defendants ask the Court to reconsider its prior decision to hold the Kastigar hearing post-trial, and rearrange its schedule to continue the trial and hold the Kastigar hearing beforehand. Defendants base this request, in part, on Fed. R. Crim. P. 12(b). The Court should deny defendants' motion in its entirety. As set forth below, the Ninth Circuit has held that dismissal is not the remedy for the sort of challenge that defendants lodge pursuant to Fed. R. Crim. P. 12(b). Moreover, given the circumstances of this case, a pre-trial Kastigar hearing would be inefficient and unworkable.

**II.   ARGUMENT**

**A.   The Court Should Deny the Defendants' Motion to Dismiss Pursuant to Rule 12(b) Because Defendants Do Not Allege Structural Error in the Grand Jury Proceedings**

Having previously moved to dismiss the indictment on Kastigar grounds (ECF No. 338), defendants have now filed another motion to dismiss that repackages these same arguments, this time under the ill-fitting guise of Fed. R. Crim. P. 12(b)(3)(A) (allegations relating to a defect in the institution of the prosecution) and 12(b)(3)(B) (allegations relating to a defect in the indictment). (ECF No. 381.) The essence of defendants' motion is that the Court

should dismiss the indictment because the grand jury was exposed to compelled information.[1]

Defendants' motion is based on speculation and unfounded inferences, not facts. For example, defendants claim they found references in tainted evidence to 58 individuals and entities associated with loans charged in the indictment and conclude "[t]he grand jury [therefore] heard evidence and argument about each of these 58 individuals or entities and that evidence and argument violated the defendants' Fifth Amendment rights." (ECF 381 at 6.) The reality, however, is that defendants merely speculate about these 58 individuals and entities, and what evidence, if any, the government presented to the grand jury about them.[2] Similarly, defendants infer that government investigators did not know about the links between defendants and Iuliia Zhadko or Viktoria Kauichko until after the border stop because these alter egos were not listed as "known associates" in the FBI's request to CBP for secondary screening. (See, e.g., ECF 381 at 9-10.) Defendants are wrong and the government will address these and other facts necessary to carry its burden at the Kastigar hearing when so ordered by the Court.[3]

---

[1] Defendants' brief does not identify the specific sub-section of Rule 12(b)(3)(A) and (B) under which they proceed. As to subsection 12(b)(3)(A), the government construes the defendants' motion as proceeding under 12(b)(3)(A)(v), which pertains to "an error in the grand-jury proceeding." As to Rule 12(b)(3)(B), none of the prongs are applicable.

[2] Defendants' claim that they found "obvious" examples of tainted evidence presented to the grand jury is similarly meritless. (See ECF 381 at 7-8 (referencing Annandale Nursery, Camilo Amaya, Lilia Turcan, Gevorg Boyrazyan, and Bayview Consulting).) None of these names are mentioned in the indictment.

[3] Defendants argue that "[i]f the indictment was untainted, the government would respond to this motion with a declaration to the Court, swearing under penalty of perjury that each of the above-
*(footnote cont'd on next page)*

2

1       Even if defendants' incorrectly assumed facts were true, it is
2  far from clear that the use of compelled testimony amounts to an
3  "error in the grand-jury proceeding" for the purposes of Rule
4  12(b)(3)(A)(v).  The defendants cite no cases that use this rule as a
5  vehicle to pursue a <u>Kastigar</u> violation and the fact that their
6  previous motion to dismiss on <u>Kastigar</u> grounds did not mention Rule
7  12 suggests that they did not hold this view when the issue was first
8  raised. (ECF No. 338.)
9       Furthermore, even if we assume for the sake of argument that a
10 <u>Kastigar</u> violation occurred (which it did not), and that the
11 violation amounts to an "error in the grand-jury proceeding" (which
12 it does not), pre-trial dismissal is not the appropriate remedy
13 because these errors would be cured with a conviction by the petit
14 jury.  In <u>United States v. Bingham</u>, the Ninth Circuit recognized that
15 non-structural defects in the grand jury process – specifically,
16 allegedly misleading statements in the grand jury presentation - are
17 harmless if followed by a conviction at trial:

> [Defendant] claims that the government engaged in
> outrageous conduct during the grand jury proceedings and
> that the district court erred in denying [his] motion to
> this effect.  The scope of our review is quite narrow,
> because the petite jury convicted [the defendant] on all
> charges.  Thus, any error in the grand jury proceeding
> connected with the charging decision is deemed harmless
> beyond a reasonable doubt.  After a conviction, only a
> structural error that renders the grand jury proceedings
> fundamentally unfair may be corrected.  The only structural
> errors the Supreme Court has recognized are racial and
> gender discrimination in the selection of the grand jurors.

---

referenced allegations was proven to the grand jury solely by untainted evidence. But the government will not provide that declaration because it cannot." (ECF 381 at 6-7.)  Defendants are wrong.  The government declines to provide such a declaration because doing so would be inconsistent with the Court's order (ECF 356), which has directed that the <u>Kastigar</u> hearing will be held after the trial, not before, pursuant to a process set by the Court, not defendants.

3

653 F.3d 983, 998 (9th Cir. 2011) (internal quotations and citations omitted).  Notably, in United States v. Carozza, which held that "any misstatements by the DEA agents before the grand jury were rendered harmless by the petit jury's guilty verdict," the Ninth Circuit made clear that the district court may rule on a related motion to dismiss "before or after trial."  608 Fed. Appx. 532, 536 (9th Cir. 2015); see also United States v. Kaplan, 554 F.2d 958, 970 n.7 (9th Cir. 1977) (court may defer ruling on dispositive motions).[4]

Because the defendants do not allege a structural defect in the grand jury process, the harmless error standard applies to their Rule 12 motion.  Dismissal of an indictment is an extreme remedy and the government submits that it should be given the opportunity to demonstrate, by convincing a petit jury to convict, that the purported violations of which the defendants complain are not prejudicial.

Moreover, pre-indictment dismissal makes little sense as a matter of policy.  Although it is impossible to say with certainty what steps the government would take in response to a dismissal, given the strength of evidence against the defendants, and the fact that the Court has already determined

---

[4] In United States v. Allen, the Second Circuit relied on United States v. Hubbell in holding that "harmless error review applies to violations of non-structural constitutional rights, if the government has presented immunized testimony to the grand jury, the indictment should be dismissed unless the government establishes that the grand jury would have indicted even absent that testimony."  864 F.3d 63, 99-100 (2d Cir. 2017) (reviewing evidence developed during a post-trial Kastigar hearing) (citing 530 U.S. 27 (2000)).  The defendants' argument in Allen was presented as a Kastigar challenge, not a Rule 12(b) challenge as the defendants do in the instant motion.  And under Ninth Circuit precedent, conviction at trial would cure any non-structural error alleged under Rule 12(b).

4

that the United States had probable cause to conduct a premises search without the offending information (ECF No. 296), re-indictment on similar charges is a likely outcome.

### B. Holding Any Portion of the Kastigar Inquiry Pre-trial Would Be Inefficient and Unworkable.

On May 21, 2021, the Court determined that, given the circumstances of this case, it made sense to defer resolution of the defendants' Kastigar claims until after the trial: "[g]iven the volume of evidence in this case, a pre-trial Kastigar hearing may require the Court to make findings about evidence, witness interviews, and prosecutorial decisions that ultimately will have no bearing at trial." (ECF No. 356 at 4.) The defendants' motion to reconsider this decision provides no indication that any of the underlying circumstances have changed. Instead, they argue that litigating some aspects of their Kastigar claims pre-trial would be tactically advantageous to the defense and that the issue of whether the indictment was "tainted" by compelled information should be resolved before trial.[5] (ECF No. 381 at 11.)

Whether, and how, to conduct a Kastigar hearing is left to the discretion of the district court and a trial court's findings regarding the "use" of compelled information will not be disturbed absent clear error. United States v. Montoya, 45 F.3d 1286, 1295 (9th Cir. 1995). These deferential standards recognize that the most

---

[5] As in prior submissions, defendant Richard Ayvazyan incorrectly states here that the government "conceded" facts and arguments that the government did not actually concede. (See, e.g., ECF 381 at 11 ("Unlike cases in which non-evidentiary use is in question, here, the government has conceded such use under oath ….").) The government made no such concessions.

5

prudent way to proceed in Kastigar litigation depends on the unique circumstances of the case at hand. Given the dynamics of this case, a pre-trial hearing on any aspect of the defendants' Kastigar challenge would be inefficient and unworkable. This is so for five reasons.

First, a trial will clarify whether the government made the "non-evidentiary" uses of the compelled statements, as defendants allege. Specifically, defendants indicate an intention to explore whether the government used compelled statements to "uncover other incriminating evidence, focus the investigation, decide to initiate prosecution, interpret other evidence, or otherwise plan trial strategy." (ECF 381 at 13.)[6] It stands to reason that, if the government used compelled testimony to focus its investigation or plan trial strategy, then these uses would manifest at trial, and could be adjudicated at a post-trial hearing.

Second, even if there was pre-trial "use" of a compelled statement, a trial will help clarify whether that use mattered. Pretrial uses of compelled testimony, including use during a grand jury presentation, are subject to a harmless error analysis. United States v. Rogers, 722 F.2d 557, 560 (9th Cir.

---

[6] The Ninth Circuit has not been entirely clear on the types of non-evidentiary uses of compelled information which are permitted. Compare United States v. Dudden, 65 F.3d 1461, 1467 (9th Cir. 1995) ("The government may not use the statements to uncover other incriminating evidence, focus the investigation, decide to initiate prosecution, interpret other evidence, or otherwise plan trial strategy") with United States v. Serrano, 870 F.2d 1, 17-18 (9th Cir. 1989) ("[W]e agree with the Second Circuit that a prosecution is not foreclosed merely because the immunized testimony might have tangentially influenced the prosecutor's thought processes in preparing the indictment and preparing for trial") (internal quotations omitted).

6

1983).  Because the objective of the Kastigar standard is to put the defendant in the same position as he was in prior to compulsion, courts evaluating pre-trial use of compelled statements have looked to whether the violation impacted the course of subsequent proceedings – including trial – in evaluating whether to grant relief.  In United States v. Connolly, for example, the Court concluded that evidence compelled from the defendant through his employer was never used in a way that necessitated dismissal of the indictment.  16-cr-0370, 2019 WL 2120523 at *23 (May 2, 2019).  Importantly, the court's analysis of this question explicitly relied on the government's trial presentation: "the Court having sat through a lengthy trial and reviewed the evidence on numerous occasions – does not doubt that Black would have been indicted and convicted even if [the defendant were not compelled to testify]."  Id.  Similarly, the concurrence in United States v. Gallo credited the district court's observation that pretrial use of compelled testimony did not impact the proceedings writ large in affirming its ruling that use of the testimony in a wire tap application did not justify dismissal of the indictment: "The district court found that the use of Miron's testimony had 'no effect at all on events'; that, instead, it was like 'a leaf dropping unobserved in a deep forest' and Miron was 'left in precisely the same position as if he had never testified.'"  859 F.2d 1078, 1091 (2d Cir. 1988) (Van Graafeiland, J., concurring).

    Third, pretrial litigation of a Kastigar issue is unworkable where, as here, defendants are challenging non-evidentiary uses of compelled testimony such as making strategic

7

decisions and preparing for trial. As this Court has already recognized, any hearing held before trial will necessarily involve a fluid record. This is because the government's trial preparation (and the strategic decisions attendant to trial preparation) will continue up to and during any pre-trial Kastigar hearing. This issue is particularly acute given the scope of the discovery sought by the defense. (See ECF No. 353 (setting forth 10 discovery demands purportedly related to Kastigar, including demands for privileged communications, attorney work product, and secret grand jury materials).) While the government concedes no duty to produce the discovery that defendants have requested, ongoing trial preparation efforts will surely generate more of the types of documents that they seek. Discovery under these circumstances would be unmanageable.

Fourth, the defendants' claim that a pretrial Kastigar hearing will save them from having "to sit through a federal criminal trial that may ultimately prove unnecessary" employs wishful thinking. Under the harmless error doctrine, a motion to dismiss the indictment on Kastigar grounds should be dismissed if the government shows that the grand jury heard "adequate untainted evidence to support the indictment." Rogers, 722 F.2d at 560. The Court already found that a search warrant for defendants' residence was supported by probable cause after excising all references to the evidence obtained during the border stop. (ECF 296 at 18-22.) Specifically, the Court found that, even without the evidence from the border stop, "there was ample evidence linking Defendants to Zhadko and

Kauichko." (Id.) That search warrant was obtained on November 3, 2020, ten days before the case agents first accessed the digital devices obtained during the border stop. At the Kastigar hearing, the government will show that the indictments were not obtained based on tainted evidence. However, even if tainted evidence was presented to the grand jury, there is good cause to believe that the other evidence presented to the grand jury similarly amounted to probable cause such that there was harmless error.[7] (See, e.g., ECF 310, 311.)

Finally, defendants' request for a continuance – despite their prior insistence on proceeding expeditiously - is infeasible. Pandemic-related trial constraints substantially limit the number of jury trials that may occur simultaneously in order to protect public health and safety. Defendants have no constitutional right to a pretrial Kastigar hearing and should not be permitted to disrupt the Central District of California's trial calendar merely so that they may continue to multiply pretrial proceedings.

Under these circumstances, even if Rule 12(b)(3)(A) or (B) applies to defendants' Kastigar contentions, there is ample "good cause to defer a ruling" until after trial. Fed. R. Crim. P. 12(d). The Court should stand by its prior order and conduct any necessary Kastigar proceedings after trial.

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny defendants' motion in its entirety.

---

[7] Of course, if defendants are acquitted at trial, there would be no need for a Kastigar hearing at all.