Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
Meghan Newcomer (*pro hac vice*)
*mnewcomer@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        v.<br><br>RICHARD AYVAZYAN,<br>*et al.*,<br><br>                *Defendants*. | Case No.  20-cr-579 (SVW)<br><br>**DEFENDANT RICHARD AYVAZYAN'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* #3 TO EXCLUDE EVIDENCE OR ARGUMENT THAT THE OCTOBER 19-20, 2020 MIAMI BORDER STOP AND NOVEMBER 5, 2020 PREMISES SEARCHES WERE UNLAWFUL**<br><br>Judge:   Hon. Stephen V. Wilson<br>Date:     June 14, 2021<br>Time:     1:30 p.m. |

**OPPOSITION**

Defendant Richard Ayvazyan, through undersigned counsel, opposes the government's motion *in limine* to exclude evidence or argument regarding the October 19-20, 2020 border stop and November 5, 2020 premises searches.  Ayvazyan does not intend to argue to the jury that the investigatory activities were illegal but rather that they were emblematic of a shoddy investigation by law enforcement officials who had already concluded the defendants were guilty.  Evidence of the government's investigatory failures is directly relevant to the credibility of the government's witnesses, as well as the weight that the government's evidence should be afforded.  Evaluating the government's investigation and assessing credibility and weight are squarely within the jury's purview.  The government would rather hide its mission critical investigation flaws from the jury and require the jury to take the government's word for it.  This is not the law.

Precedent from the U.S. Supreme Court and the Ninth Circuit makes clear that, not only is this evidence relevant, it is critical for the jury to be able to perform its duties and evaluate whether the government has met its burden of proof.  The government's motion ignores this binding precedent because it precludes the relief the motions seeks.  Further, denying defendants the ability to probe the government's investigation would simply allow the government to further benefit from the taint that has infected the government's indictment and evidence – a result not permitted under *Kastigar v. United States*, 406 U.S. 441 (1972).

Accordingly, the Court should deny the government's motion *in limine* and admit evidence related to the conduct of the government's investigation at trial.

I.   **RELEVANT BACKGROUND**

The history of the government's haphazard investigation in this case has been well documented in previous filings before the Court.  Early in the investigation, the government decided that defendant Richard Ayvazyan and a group of other people of Armenian descent were involved in a single conspiracy and/or scheme to secure

Paycheck Protection Program (PPP) loans and Economic Injury Disaster Loans (EIDL) using fraudulent applications. *See* Dkt. 1, Complaint, Statement of Facts Constituting the Offense. The government's investigation began mere months after the PPP program was created and pursued the theory of a single conspiracy and/or scheme to the exclusion of other potential lines of investigation—including whether this single conspiracy and/or scheme was in fact multiple conspiracies connected only by the fact that the parties involved were of the same ethnicity and engaged in financial transactions with each other in the same community. Driven by the need to support that pre-existing conclusion of a conspiracy that (according to the government) encompasses at least 151 allegedly fraudulent PPP and EIDL loans submitted by 79 different companies and 56 different people, the government carried out a shoddy investigation that led to a pretextual border stop where Ayvazyan was wrongfully accused of being a terrorist, as well as military-style raids of the defendants' homes that involved the harassment of the defendants' children, all in order to find evidence that would support the government's unfounded suspicions. *See* Dkt. 130 & 135 (detailing pretextual border stop); Dkt. 146 (detailing military-style raids on the defendants' homes). The government has indicated that the resulting supporting evidence from both the border stop and the search of the defendants' homes will be offered as evidence at trial.

The government has relied on tainted evidence to form and repeatedly confirm its flawed central theory of the case, namely, that Ayvazyan is Iuliia Zhadko and that Ayvazyan is responsible for all of Zhadko's conduct. Based on this myopic and flawed theory, the government has failed to follow leads that other people used the identities alleged to have applied for PPP and EIDL loans – leads that were apparent in the government' own evidence – and instead stuck to their belief that Ayvazyan was at the heart of all the alleged conduct. For example, the government has previously filed with the Court copies of bank account statements for an account controlled by Iuliia Zhadko (who the government contends is Ayvazyan). *See* Dkt 219-4. Page 3 of this bank

2

account statement shows that Zhadko made an October 13, 2020 purchase at Lamps Plus in California, while Ayvazyan and Terabelian were in Turks and Caicos. Ayvazyan did not make the purchase in question, and someone else had control of the Zhadko account.  But the government did not pursue this lead, and instead stuck to its theory that Zhadko is Ayvazyan's identity and Ayvazyan is responsible for Zhadko's conduct.

## II.   LEGAL STANDARD

Federal Rule of Evidence 402 provides for the admission of relevant evidence. Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action."  Fed. R. Evid. 401.

Under Federal Rule of Evidence 403, the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

## III.   ARGUMENT

### A.   Evidence of the Government's Investigation is Relevant Under FRE 401

The U.S. Supreme Court has made clear that the integrity of the government's investigation, including mistakes, mishaps, and misconduct, is always relevant to a jury. *Kyles v. Whitley*, 514 U.S. 419, 446 (1995).  The Ninth Circuit has clarified that defendants are entitled to examine witnesses with respect to the investigatory details underlying an indictment – including circumstances relating to either misconduct or investigative deficiencies – and a court cannot preclude counsel from arguing these issues to the jury.  *See United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000) (investigative mistakes "hurt the credibility of the Government's witnesses"); *United States v. Hanna*, 55 F.3d 1456, 1459–60 (9th Cir. 1995) (inconsistent and misleading statements by investigating agents are also probative of a government witness's

3

credibility); *United States v. Pritchard*, 485 F. App'x 199, 201 (9th Cir. 2012) (trial court erred when jury not allowed "to scrutinize the government's investigation or consider the absence of evidence in reaching its verdict.").

In *United States v. Sager*, 227 F.3d 1138, 1145-46 (9th Cir. 2000), the Ninth Circuit held that courts should not discourage jurors from "consider[ing] possible defects in [the] investigation." *Id.* at 1145. The Ninth Circuit observed that details of the investigation were relevant to both the witness's credibility as well as the weight that the jury should give that testimony. *Id.* The same result is appropriate here. The jury will be asked to assess critical questions regarding the completeness and efficacy of the government's investigation, including whether the government failed to follow certain lines of investigation after its early conclusion that Ayvazyan was the ringleader of what the government believed was a single conspiracy and/or scheme that included 151 PPP and EIDL loans. Evidence of the draconian steps that the government took to find evidence to support this mistaken theory – including lying to Ayvazyan about whether he was entitled to a lawyer – directly speaks to whether the government and its witnesses are credible when they argue to the jury that all of these loans were tied together in a single conspiracy and/or scheme. The jury, as factfinder, should be allowed to consider this evidence because, when it comes to weight and credibility, the government's investigation is on trial along with the defendant himself. *Pritchard*, 485 F. App'x at 201.

**B.**   **Evidence of the Government's Investigation is Admissible under Rule of Evidence 403**

As noted above, the U.S. Supreme Court and the Ninth Circuit have made clear that the jury is entitled to evaluate the government's investigation techniques to assess the credibility of government witnesses and to decide the weight that this evidence should be given. Under this precedent, evidence related to the government's investigation does not run afoul of Federal Rule of Evidence 403 and is routinely admitted. *See, e.g.*, *United States v. Aguilar*, 831 F. Supp. 2d 1180, 1203 (C.D. Cal.

4

2011) (Matz, J.) ("A jury permitted to consider" [] "facts demonstrating a skewed or biased investigation."); *see also Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant"); *Orena v. United States*, 956 F. Supp. 1071, 1100 (E.D.N.Y. 1997) (Weinstein, J.) ("destroying the bona fides of the police is a tactic that has never lost its place in the criminal defense reasonable doubt armamentarium."). There is no indication that this evidence will lead to unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

As the Ninth Circuit held in *Sager*, "To tell the jury that it may assess the product of an investigation, but that it may not analyze the quality of the investigation that produced the product, illogically removes from the jury potentially relevant information." *Sager*, 227 F.3d at 1135. The jury cannot perform its most basic function – assessing the evidence presented by the government – without being able to probe whether the government's investigation was done properly.

## C.    The Government's Arguments in Support of Its Motion Fall Flat

The government ignores the binding precedent holding that evidence of the government's investigation – including mistakes, mishaps, and misconduct – is admissible. Instead, the government offers several non sequiturs to justify excluding this highly relevant evidence. The Court should ignore all of these arguments.

First, the government argues that it does not intend use any statements made by Ayvazyan or Terabelian during the Miami border stop, or the digital devices seized from Ayvazyan and Terabelian, in compliance with the Court's prior order suppressing those statements and devices, and that this renders any evidence related to the government's investigation tactics irrelevant. The government has already indicated, however, that it intends to use evidence collected from both the Miami border stop and the premises searches at trial. Dkt. 390 at 4. Giving this evidence to the jury without

5

1  allowing the jury to probe the investigation and tactics that yielded this evidence is

2  equivalent to telling the jury that they should not consider the government's

3  investigation that led to the collection of certain evidence supporting preconceived

4  suspicions to the exclusion of evidence contradicting those suspicions.  This approach

5  invites error under the Ninth Circuit's opinion in *Sager*.  *Sager*, 227 F.3d at 1144-45.

6  Further, the government's fear that the jury will "dislike the officers" (Dkt. 390 at 11) is

7  not a reason to keep this evidence from the jury.  The jury may well dislike the

8  defendants too, but the jury will be instructed to put aside these feelings in both respects

9  and to return a verdict based on what the evidence does and does not show.  Moreover,

10  government agents are not "like anybody else in the case." *Sager*, 227 F.3d at 1145.

11  As the conductors of the investigation and the collectors of evidence, the Ninth Circuit

12  has made clear that these witnesses are subject to special scrutiny from the jury. *Id.*

13       Next, the government argues that the parties should not re-litigate the

14  constitutionality of the Miami border stop or the premises searches before the jury.  The

15  government's argument about constitutionality misses the point.  Ayvazyan is not

16  asking the jury to determine whether the border stop and premises searches are

17  constitutional, unlike the issue in *United States v. Reed*, 575 F.3d 900 (9th Cir. 2009)

18  (cited in Dkt. 309 at 9).  That is the Court's duty and the Court has already ruled on

19  Ayvazyan's previous motions.  The jury, however, is entitled to hear evidence to decide

20  whether the government's theories and witnesses are credible, as well as to determine

21  the weight to give the evidence that resulted from this investigation.  Mistakes and

22  misstatements are directly relevant to this task. *Howell*, 231 F.3d at 625 (investigative

23  mistakes "hurt the credibility of the Government's witnesses"); *Hanna*, 55 F.3d at

24  1459–60 (inconsistent and misleading statements are also probative of a government

25  witness's credibility).  Here, the government's investigation was predicated on the

26  mistaken belief that a single conspiracy and/or scheme existed that encompassed 151

27  loans, and the government committed error after error (at best) as it attempted to find

28  evidence to support its preferred theory.  The heart of the jury's role will be to

1    determine whether that single conspiracy and/or scheme existed.  The government's

2    shoddy investigation is directly relevant to that task, as the jury may decide that this

3    shoddy investigation indicates that the government's charging theory is wrong and that

4    the investigation's purpose was to ramrod through a conviction rather than to discover

5    the truth.

6        The government also argues that the evidence should be excluded due to several

7    concerns under Federal Rule of Evidence 403.  But, as noted above, evidence regarding

8    the conduct of the investigation will not confuse the jury or distract from the central

9    issue of the case.  Instead, it will shed light on the central issues of the case.  As noted

10    above, binding Ninth Circuit and U.S. Supreme Court precedent make clear that

11    evidence of the investigation and its tactics is relevant to the jury's task.  This evidence

12    does not run afoul of Rule 403 and would not distract from the central issues of the case

13    – in fact, the evaluation of the government's investigation *is* the central issue in the

14    case.  *Pritchard*, 485 F. App'x at 201.

15        In a passing reference, the government again trots out the specter of Armenian

16    Power, an alleged organized crime group with which Ayvazyan and Terabelian have

17    absolutely zero connection, claiming that evidence related to Armenian Power will be

18    necessary to show the jury the "operational and safety concerns" during the premises

19    searches that would result in a "misleading sideshow."  Dkt. 390 at 10.  But no

20    sideshow would result from this prejudicial evidence because it would not be

21    admissible anyway.  References to an organized crime group called Armenian Power

22    would invite the jury to convict Ayvazyan and his co-defendants based on their shared

23    Armenian ethnicity.  Guilt based on one's ethnicity is an anathema to the American

24    criminal justice system.  *See, e.g.*, *United States v. Vue*, 13 F.3d 1206, 1213 (8th Cir.

25    1994) (reversing conviction and vacating sentence because "the injection of ethnicity

26    into the trial clearly invited the jury to put the [defendants'] racial and cultural

27    background into the balance in determining their guilt.").  This evidence is also

28    irrelevant because there is no connection between this so-called organized crime group

7

OPPOSITION TO MOTION *IN LIMINE* #3

1   and Ayvazyan or Terabelian.  As previously demonstrated in the Joint Reply in Support

2   of Motions to Suppress and Return Property Seized from Subject Premises-1 (Dkt.

3   222), the government's argument is that Ayvazyan and Terabelian are connected to a

4   gang called Armenian Power because their *former* brother-in-law, who was married to

5   and has divorced Terabelian's sister, pled guilty to briefly possessing an antique rifle

6   belonging to an Armenian gang member, discussing the potential purchase of three

7   other firearms that he neither bought nor sold, and discussing police presence at a

8   restaurant, all of which occurred in 2009.  Dkt. 222 at 9.  This information has no

9   probative value vis-à-vis Ayvazyan or Terabelian in the present case.  Armenian Power

10  is nothing more than a highly improper red herring.[1]

11      Finally, the government claims that allowing the jury to probe the government's

12  investigation would be tantamount to a jury nullification instruction.  This is a desperate

13  argument.  The Court should see this argument for what it is – a convenient straw man

14  that the government hopes will keep otherwise relevant evidence away from the jury.

15      **D.    The Government's Shoddy Investigation Implicates *Kastigar***
16          **Concerns**

17      This Court has already ruled that defendants Ayvazyan and Terabelian are

18  entitled to a hearing to determine the reach of the tainted evidence pursuant to *Kastigar*

19  *v. United States*, 406 U.S. 441 (1972).  In addition to requiring the suppression of the

20  fruit of the poisonous tree, *Kastigar* prohibits derivative use of tainted information in

21  any way whatsoever.  As set forth in the Joint Motion to Dismiss Under Fed. R. Crim.

22

---

23  [1] The government also claims that there is "evidence of [defendants'] possession of numerous
    firearms."  The government's previous argument that Ayvazyan owned firearms at the time of the
24  premises search has already been debunked.  Ayvazyan previously owned firearms, but gave them to
    his brother after Ayvazyan's 2012 court case. Dkt. 222 at 10.  The government has previously pointed
25  to a trash pull – at a residence that does not belong to Ayvazyan – where it found packaging for
    firearm-related purchases as evidence that Ayvazyan owned firearms – but that same trash pull also
26  included ordinary medical prescriptions, food orders, and receipts, all from a family that does not
    include Ayvazyan.  *Id.*  The remainder of the trash pull, including trash from neighbors, corroborates
27  that the trash in question came either from a neighbor or the family living in a house where Ayvazyan
    has never lived.  *Id.* at 10-11.
28

12(b) or Continue the Trial to Hold a Pre-Trial *Kastigar* Hearing (Dkt. 381), the indictments in this case are already tainted by both evidentiary and non-evidentiary uses of compelled statements. Allowing the government to cut off questioning regarding its investigation tactics gives the government the opportunity to directly and indirectly use tainted evidence with abandon, with the attendant risk of injecting further Fifth Amendment error at trial.

## IV.   CONCLUSION

For the foregoing reasons, the court should deny the government's motion *in limine* and admit evidence related to the conduct of the government's investigation at trial in this action.

Dated: June 4, 2021

**STEPTOE & JOHNSON LLP**

/s/ *Ashwin J. Ram*
Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
Meghan L. Newcomer (*pro hac vice*)
*mnewcomer@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*