Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Meghan L. Newcomer (*pro hac vice*)
*mnewcomer@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

Thomas A. Mesereau Jr. (SBN 91182)
*mesereau@mesereaulaw.com*
**MESEREAU LAW GROUP, P.C.**
10100 Santa Monica Blvd., Suite 300
Los Angeles, CA 90067
Telephone: (310) 651-9960

Jennifer J. Wirsching (SBN 263141)
*wirschinglaw@outlook.com*
**ATTORNEY AT LAW**
1935 Alpha Rd, Suite 216
Glendale, CA 91208
Telephone: (424) 902-9280

*Counsel for Defendant Artur Ayvazyan*

Fred G. Minassian (SBN 170974)
*fgminassian@yahoo.com*
**LAW OFFICES OF FRED G.
MINASSIAN, INC.**
101 N. Brand Ave, Suite 1970
Glendale, CA 91203
Telephone: (818) 240-2444

*Counsel for Defendant Tamara Dadyan*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> RICHARD AYVAZYAN, *et al.,* <br><br> *Defendants.* | Case No.  20-cr-579 (SVW) <br><br> **DEFENDANTS' OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* #2 TO ADMIT EVIDENCE INEXTRICABLY INTERTWINED WITH THE CHARGED OFFENSES** <br><br> Judge:          Hon. Stephen V. Wilson <br> Hearing Date: June 14, 2021 <br> Time:            11:00 a.m. |

1

# **TABLE OF CONTENTS**

2   PRELIMINARY STATEMENT ................................................................. 1

3   I.   STATEMENT OF FACTS ............................................................ 1

4   II.   LEGAL STANDARD ................................................................. 3

5   III.   THE SUPPOSED "RESERVE IDENTITIES" EVIDENCE SHOULD BE
6        EXCLUDED UNDER RULE 404(B) BECAUSE, BY DEFINITION,
        THEY WERE NOT PART OF THE CHARGED SCHEME ................................ 5

7        A.   THE "RESERVE IDENTITIES" EVIDENCE IS NOT
8             "INEXTRICABLY INTERTWINED" WITH THE CHARGES IN
             THE INDICTMENT AND IS THEREFORE SUBJECT TO RULE
9             404(B) ............................................................................. 5

10             1.   To be "inextricably intertwined" with charged
                   conduct, other acts must be part of "a single criminal
11                   transaction" ............................................................ 6

12             2.   The "reserve identities" evidence relates to the State
                   Case and thus cannot be part of the "transaction"
13                   charged in this case .................................................... 8

14        B.   "RESERVE IDENTITIES" EVIDENCE IS NOT ADMISSIBLE
             UNDER ANY OF THE LIMITED PURPOSES PERMITTED BY
15             RULE 404(B) BECAUSE IT DOES NOT PROVE A MATERIAL
             ELEMENT OF ANY OFFENSE CHARGED IN THE
16             INDICTMENT .................................................................. 11

17   IV.   THE "RESERVE IDENTITIES" EVIDENCE SHOULD BE EXCLUDED
        UNDER RULE 403 ................................................................... 12

18   V.   "RESERVE IDENTITIES" EVIDENCE WOULD INTRODUCE FIFTH
19        AMENDMENT ERROR ............................................................... 14

20

21

22

23

24

25

26

27

28

i

## **TABLE OF AUTHORITIES**

**Page(s)**

### Cases

*United States v. Bailey*,
  696 F.3d 794 (9th Cir. 2012) ............................................................... 4, 13

*United States v. Bracy*,
  67 F.3d 1421 (9th Cir. 1995) ...................................................................... 3

*United States v. Bradley*,
  5 F.3d 1317 (9th Cir. 1993) ........................................................................ 3

*United States v. Garcia*,
  291 F.3d 127 (2d Cir. 2002) ....................................................................... 3

*United States v. Hodges*,
  770 F.2d 1475 (9th Cir. 1985) .................................................................... 3

*United States v. Lignelli*,
  No. 2:11-CR-234, 2014 WL 2002294 (W.D. Pa. May 15, 2014) ............... 4

*United States v. Loftis*,
  843 F.3d 1173 (9th Cir. 2016) .................................................................... 7

*United States v. Mayans*,
  17 F.3d 1174 (9th Cir. 1994) ................................................................. 4, 11

*United States v. Mehrmanesh*,
  689 F.2d 922 (9th Cir. 1982) ................................................................ 4, 11

*United States v. Montgomery*,
  384 F.3d 1050 (9th Cir. 2004) .................................................................... 6

*United States v. Ramirez-Robles*,
  386 F.3d 1234 (9th Cir. 2004) .............................................................. 4, 11

*United States v. Vega*,
  188 F.3d 1150 (9th Cir. 1999) .................................................................. 11

*United States v. Vizcarra–Martinez*,
  66 F.3d 1006 (9th Cir. 1995) ...................................................................... 6

ii

OPPOSITION TO MOTION *IN LIMINE* TO ADMIT "RESERVE IDENTITIES" EVIDENCE

*United States v. Williams*,
  989 F.2d 1061 (9th Cir. 1993) ........................................................................ 6

*Wilson v. Maricopa County*,
  No. CV-04-2873, 2007 WL 686726 (D. Ariz. Mar. 2, 2007) ......................... 4, 13, 14

**Rules**

Fed. R. Evid. 403 .......................................................................................... *passim*

Fed. R. Evid. 404(b) ...................................................................................... *passim*

**Other Authorities**

State of California Department of Justice, Office of the Attorney General,
  Press Release, "Attorney General Bonta Announces Arrests and
  Arraignment in $15 Million Mortgage Fraud and Green Loan Scheme
  in Southern California," https://oag.ca.gov/news/press-
  releases/attorney-general-bonta-announces-arrests-and-arraignment-15-
  million-mortgage .......................................................................................... 1

OPPOSITION TO MOTION *IN LIMINE* TO ADMIT "RESERVE IDENTITIES"
EVIDENCE

1

## **PRELIMINARY STATEMENT**

2      After repeatedly telling the defendants that it did not intend to use at trial any

3  evidence from the State of California's mortgage fraud case charged against Defendants

4  R. Ayvazyan, T. Dadyan and A. Ayvazyan, the government has done an about-face,

5  claiming for the first time that evidence of the state case should be admitted as "other

6  acts" evidence in the government's case-in-chief.  The Government's motion is a

7  transparent attempt to skirt Rule 404(b) and convince the jury to convict defendants

8  based on evidence of other crimes, wrongs, or acts.  By the government's own

9  definition, the proposed evidence was not used in and was unrelated to the conspiracy

10  charged in the indictment, and its introduction would violate Rule 404(b).  Even if the

11  evidence were admissible under Rule 404(b), it should be excluded under Rule 403

12  because the probative value of the evidence is substantially outweighed by the undue

13  prejudice to defendants if it is introduced.  Looming over the inadmissibility of the

14  proposed evidence is the fact that it was seized using tainted information and its use

15  would therefore violate the Fifth Amendment and require reversal of any convictions.

16  ## I.      STATEMENT OF FACTS

17      The superseding indictment alleges that defendants were members of a

18  conspiracy to use "stolen, fake, and synthetic identities to fraudulently apply for

19  COVID-19 relief funds." Dkt. 307, Gov. Opp. to MTD.

20      Immediately after this case was set for a June 15, 2021 trial, authorities for the

21  State of California arrested defendants R. Ayvazyan, T. Dadyan and A. Ayvazyan and

22  others on charges of "allegedly operating a sophisticated mortgage fraud and green loan

23  scheme" that took place between 2014 and 2020 (hereinafter, "State Case"). *See* State

24  of California Department of Justice, Office of the Attorney General, Press Release,

25  "Attorney General Bonta Announces Arrests and Arraignment in $15 Million Mortgage

26  Fraud and Green Loan Scheme in Southern California," May 3, 2021 ("Press Release")

27  (available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-announces-

28

1   arrests-and-arraignment-15-million-mortgage). According to the government, "[t]he
2   state's 133-count indictment names twelve defendants and is predicated on a six-year
3   fraud scheme that began more than half-a-decade before COVID-19 and the CARES
4   Act-related fraud at the heart of the federal case." Dkt. No. 331-2, Gov.'s Sur-reply in
5   Response to Def. R. Ayvazyan's Motion to Dismiss at 3. The government contends that
6   the state case addresses "violations of state law that are ***wholly separate*** from the
7   violations of federal law addressed in the indictment in this case." *Id.* at 2 (emphasis
8   added).  Moreover, in discussions regarding the discovery related to the State Case, the
9   government "assur[ed]" defendants that it "do[es] not intend to use any of these
10  materials during the government's case-in-chief in this matter." *Id.* at 3, Exhibit 1
11  (Letter to Counsel dated May 3, 2021 at 2).

12        Despite these assurances, on the eve of trial the government filed a motion *in
13  limine* to admit evidence related to the state case at trial.  The government concedes that
14  it is seeking to introduce evidence that was not "directly used to fraudulently obtain and
15  use the loan proceeds described in the FSI."  Dkt. 384, Gov't Br. at 2.  Instead, under
16  the misleading title of "reserve identities," the government intends to introduce
17  "*evidence relating to additional* stolen or synthetic identities and their supporting
18  instruments of fraud, to include fraudulent identification documents,
19  checks/checkbooks, credit and debit cards, purported official records or certifying
20  instruments, and related email and online accounts." *Id.* (emphasis added). The purpose
21  of the government's motion is to admit evidence *that was not used* in the fraud scheme
22  charged in the indictment. Dkt. 384, Gov't Br. at 8, n.6.  The "reserve identity"
23  evidence is only related to the State Case, and thus irrelevant to the present case given
24  that none of the "reserve identity" evidence was used to commit the fraud charged in
25  the indictment.

26
27
28

2

OPPOSITION TO MOTION *IN LIMINE* TO ADMIT "RESERVE IDENTITIES"
EVIDENCE

1    ## II.    LEGAL STANDARD

2         Federal Rule of Evidence 404(b) excludes evidence of uncharged crimes,

3    wrongs, or acts to prove the character of a person in order to show that the person acted

4    in conformity with that character.  Fed. R. Evid. 404(b).  The rule prohibits evidence

5    from being admitted to prove propensity to commit a crime like fraud, but permits

6    evidence to be admitted solely for a limited purpose, such as proof of motive,

7    opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or

8    accident, provided that the government advances before trial its theory of admissibility

9    and carries its burden of satisfying the requirements for the admission of such evidence.

10   *Id.*

11        The Ninth Circuit has urged great caution in admitting evidence under Rule

12   404(b):

13            [E]xtrinsic acts evidence "is not looked upon with favor" and . . .
14            its use "must be narrowly circumscribed and limited."  [A] reluctance to
             sanction the use of evidence of other crimes stems from the underlying
15           premise of our criminal justice system, that the defendant must be tried
             for what he did, not for who he is.  Under our system, an individual may
16           be convicted only for the offense of which he is charged and not for other
             unrelated criminal acts which he may have committed.  <u>Therefore, the</u>
17           <u>guilt or innocence of the accused must be established by evidence</u>
18           <u>relevant to the particular offense being tried, not by showing that the</u>
             <u>defendant has engaged in other acts of wrongdoing.</u>
19

20   *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir. 1985) (internal citation omitted)

21   (emphasis added).  A criminal defendant "must be tried for what he did, not who he is."

22   *United States v. Bradley*, 5 F.3d 1317, 1320 (9th Cir. 1993).  The purpose of the rule is

23   to ensure that "evidence of prior bad acts or crimes may not be used to prove that a

24   defendant has a propensity to commit the crime charged."  *United States v. Bracy*, 67

25   F.3d 1421, 1432 (9th Cir. 1995).  "The government may not invoke Rule 404(b) and

26   proceed to offer, carte blanche, any prior act of the defendant in the same category of

27   crime." *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002).

28
                                              3
     OPPOSITION TO MOTION *IN LIMINE* TO ADMIT "RESERVE IDENTITIES"
                                           EVIDENCE

1    In order to admit evidence pursuant to Rule 404(b), it is the government's burden
2    to establish that the proffered evidence "(1) proves a material element of the offense for
3    which the defendant is now charged, (2) if admitted to prove intent, is similar to the
4    offense charged, (3) is based on sufficient evidence [to support a finding that the
5    defendant committed the other act], and (4) is not too remote in time." *United States v.*
6    *Ramirez-Robles*, 386 F.3d 1234, 1242 (9th Cir. 2004).  The government is required to
7    "'articulate precisely the evidential hypothesis by which a fact of consequence may be
8    inferred from the other acts evidence.'" *United States v. Mayans*, 17 F.3d 1174, 1181
9    (9th Cir. 1994) (quoting *United States v. Mehrmanesh*, 689 F.2d 922, 830 (9th Cir.
10   1982).  "If the evidence meets this test under Rule 404(b), the court must then decide
11   whether the probative value is substantially outweighed by the prejudicial impact under
12   Rule 403." *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (internal
13   quotation marks omitted).

14   Rule 403 also requires exclusion where the probative value of the otherwise
15   admissible evidence is substantially outweighed by the danger of confusing issues at
16   trial, or misleading the jury, or by considerations of undue delay, waste of time, or
17   needless presentation of cumulative evidence.  Fed. R. Evid. 403; *see also United States*
18   *v. Lignelli*, No. 2:11-CR-234, 2014 WL 2002294, at *3 (W.D. Pa. May 15, 2014)
19   (excluding evidence in a bank fraud trial of alleged misconduct involving three
20   uncharged properties because the evidence would double the scope of the trial, and "the
21   evidence (and the jury) must remain focused on the three appraisals for which [the
22   defendant] faces the criminal charges in the Indictment"); *Wilson v. Maricopa County*,
23   No. CV-04-2873 PHX-DGC, 2007 WL 686726, at *13 (D. Ariz. Mar. 2, 2007)
24   (excluding evidence under Rule 403 regardless of its admissibility under Rule 404(b)
25   where "[t]he case would devolve into a series of mini-trials concerning the relevancy
26   and outcome of these other cases, resulting in an unnecessarily lengthy trial for the
27   parties, the Court, and the jury").
28

4

OPPOSITION TO MOTION *IN LIMINE* TO ADMIT "RESERVE IDENTITIES" EVIDENCE

1
2

### III. THE SUPPOSED "RESERVE IDENTITIES" EVIDENCE SHOULD BE EXCLUDED UNDER RULE 404(b) BECAUSE, BY DEFINITION, THEY WERE NOT PART OF THE CHARGED SCHEME

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

The government defines "reserve identities" as "evidence *relating to* additional stolen or synthetic identities and their supporting instruments of fraud, to include fraudulent identification documents, checks/checkbooks, credit and debit cards, purported official records or certifying instruments, and related email and online accounts." Dkt. 384, Gov't Br. at 2. The crux of this definition is that the identities and alleged supporting documents were never an intrinsic part of the charged scheme. Rather, the government suspects that—had the scheme continued—it is possible that the "reserve identities" could have become a part of the scheme at some time in the future. Of course, no defendant can stand trial for a crime that the government believes will be committed in the future. The "reserve identities" evidence should be excluded because it is not "inextricably intertwined" with the charged scheme, and is thus subject to Rule 404(b). Because the "reserve identities" evidence is subject to Rule 404(b), the government can only admit that evidence if it proves that the "reserve identities" "prove[] a material element of the offense for which the defendant is now charged." They do not, and admission of such unrelated and prejudicial evidence is not permitted under Rule 404(b) or any other rule.

19
20
21

### A. The "Reserve Identities" Evidence Is Not "Inextricably Intertwined" with the Charges in the Indictment and Is Therefore Subject to Rule 404(b)

22
23
24
25

The government's attempt to admit the so called "reserve identities" evidence violates Rule 404(b). The government argues that the "reserve identities" evidence is "inextricably intertwined" with the charged conspiracy, and is thus admissible without violating Rule 404(b). That argument fails.

26
27
28

5

1

### 1.    To be "inextricably intertwined" with charged conduct, other acts must be part of "a single criminal transaction"

The government's brief focuses on the "inextricably intertwined" language as the only requirement for finding that conduct falls outside Rule 404(b).  But the government ignored that, when creating the "inextricably intertwined" standard, the Ninth Circuit explained: "[t]he policies underlying rule 404(b) are inapplicable when offenses committed *as part of a single criminal episode* become other acts simply because the defendant is indicted for less than all of his actions." *United States v. Williams*, 989 F.2d 1061 (9th Cir. 1993).  The focus in the Ninth Circuit is on whether the acts were part of a *single criminal transaction or episode*.  *See, e.g.*, *United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004) ("We conclude that each action was "inextricably intertwined" with the conspiracy, and therefore not subject to Rule 404(b), because each *occurred within the temporal scope of the conspiracy and comprised the conspiracy*."); *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995) ("Thus, when it is clear that particular acts of the defendant are part of, and thus inextricably intertwined with, *a single criminal transaction*, we have generally held that the admission of evidence regarding those acts does not violate Rule 404(b).") (emphasis added to each).

For example, in *Vizcarra–Martinez*, the government sought to admit evidence that defendant possessed a small, personal-use amount of methamphetamine when he was arrested for "possession of hydriodic acid with knowledge that it would be used to manufacture methamphetamine." *Id.* at 1012.  The Ninth Circuit found that the District Court had abused its discretion by admitting the evidence.  The Ninth Circuit explained that the "methamphetamine found in the defendant's pocket had nothing to do with the incidents leading to the search, nor did it have any bearing upon the commission of the crime. Thus, we reject the government's contention that the contested evidence was so inextricably intertwined with the crime as to fall outside the scope of Rule 404(b)." *Id.* at 1013. That analysis is equally applicable to the government's attempt to introduce the

6

1  "reserve identities" evidence at trial here.  The defendants have made no 404(b)

2  objection to introduction of evidence of identities that the indictment actually alleges

3  were used in the charged conspiracy.  The "reserve identities" evidence, in contrast,

4  were never used in the charged conspiracy and therefore are not inextricably

5  intertwined merely because the government can envision a counterfactual scenario in

6  which they might possibly have been used.

7      The government relies on *United States v. Loftis*, 843 F.3d 1173 (9th Cir. 2016),

8  but *Loftis* does not support their position.  In *Loftis*, the defendant was charged with

9  five counts of wire fraud based on a broad scheme to defraud multiple investors across

10  multiple states.  The indictment included five wires and three investor victims, but the

11  government attempted to introduce evidence of additional wires and additional victims

12  at trial.  The District Court partially excluded the evidence under rule 404(b), and the

13  government filed an interlocutory appeal.  The Ninth Circuit found that Rule 404(b) did

14  not apply because the uncharged transactions were part of the crime charged.  The

15  Court then went on to conduct a 404(b) analysis, stating that "even if the uncharged

16  transactions at issue were not part of the crime charged, they would not be subject to

17  exclusion under Rule 404(b) because they are 'part of the same transaction' as the

18  charged transactions."  *Id.* at 1178.

19      Here, the government's attempt to liken the "reserve identities" evidence with the

20  additional wire transfers in *Loftis* is an apples to oranges comparison that should be

21  rejected.  The government is not seeking to introduce additional PPP or EIDL loan

22  applications, or additional wire transfers related to the PPP loan fraud charged in the

23  indictment.  It is possible the government could prove additional PPP or EIDL

24  applications were "part of the same transaction" charged in the indictment, and thus

25  "inextricably intertwined" and admissible without violating Rule 404(b).  However, the

26  government is attempting to introduce evidence of "fraudulent identification

27  documents, checks/checkbooks, credit and debit cards, purported official records or

28

7

OPPOSITION TO MOTION *IN LIMINE* TO ADMIT "RESERVE IDENTITIES"
EVIDENCE

certifying instruments, and related email and online accounts" that have no ties to the PPP loan fraud or the money laundering counts charged in the indictment. This is especially true for the "notary stamps and seals" that the government alleges were found at T. Dadyan and A. Ayvazyan's residence.  The indictment does not contain a single allegation related to notary stamps, thus, possession of these items cannot be "part of the same transaction" alleged in the indictment.   The government characterizes this evidence as part of an "assembly line for fraud," but the indictment does not charge any defendant with creating an assembly line for fraud. Accordingly, the alleged possession of these items by two defendants does not make the evidence "inextricably intertwined" with the conduct charged in the indictment.

**2.      The "reserve identities" evidence relates to the State Case and thus cannot be part of the "transaction" charged in this case.**

The government is well aware that the "reserve identities" evidence is *per se* evidence of other crimes, wrongs or acts—it is evidence related to allegations of mortgage fraud charged against multiple defendants by the State of California. For example, as a summary of the type of evidence seized during the search of A. Ayvazyan and T. Dadyan's home, the government cites "[l]ists of email addresses and user account information with associated passwords, including a page titled, 'TAMMY INFO FOR MLS ECT.'" Dkt. 384, Gov't Br. at 5. That page clearly shows login information related to T. Dadyan's real estate business.  MLS stands for Multiple Listing Service, which "is a tool to help listing brokers find cooperative brokers working with buyers to help sell their clients' homes."  https://www.nar.realtor/nar-doj-settlement/multiple-listing-service-mls-what-is-it.  The first entry on the page the government cites is an ID number for NRDS, which stands for the National REALTOR® Database System, according to the National Associates of REALTORS. *See* https://www.nexusaor.com/help-top-left-menu/293-how-do-i-find-my-nrds-id.html ("Your National REALTOR® Database System ID, or NRDS, is a 9 digit number that is given by the National Association of REALTORS®, through the local Primary

8

1  board, to each of its members.").  The federal indictment does not charge any defendant

2  with mortgage fraud.  Rather, it is the State Case that alleges a scheme to commit

3  mortgage fraud using stolen identities and forged instruments, and it is in the State Case

4  that this evidence would be relevant.  *See, e.g.*, Ram Decl. Ex. A, 4/26/2021 Indictment

5  filed in Superior Court of the State of California, Los Angeles County at 5-7.  The

6  government contends that the state case addresses "violations of state law that are

7  ***wholly separate*** from the violations of federal law addressed in the indictment in this

8  case" and that those violations were part of "a six-year fraud scheme that began more

9  than half-a-decade before COVID-19 and the CARES Act-related fraud at the heart of

10  the federal case."  Dkt. No. 331-2, Gov.'s Sur-reply in Response to Def. R. Ayvazyan's

11  Motion to Dismiss at 2-3 (emphasis added).  Given the government's position on the

12  State Case, it is impossible to see how evidence related to the State Case could be

13  "inextricably intertwined" with the charges in the superseding indictment related to PPP

14  loan fraud.  The only logical conclusion is that the government is attempting to admit

15  the "reserve identities" evidence as propensity evidence.

16      Additionally, the evidence laid out by the government on pages 5-6 of their brief

17  predates March 2020, the alleged beginning of the conspiracies charged in the

18  indictment.  The identities and documents cited on page 5 have been charged as part of

19  the State Case, with allegations about the use of those identities dating back to 2017.

20  For example, the government's "reserve identities" evidence includes identity

21  documents, such as driver's licenses and/or social security cards, for Luidmyla K.,

22  Adeliya T., Tetiana V., Egia K., Osbaldo V., Mykhail D., Peter R., and Roza A.  *See*

23  Gov't Br. at 5, *citing* Fenton Decl. (ECF 207) Exh. 8.  Each of these identities is

24  incorporated into charges in the State Case for acts that allegedly occurred in 2016 and

25  2017, *years* before the PPP loan fraud is alleged to have occurred.  Ram Decl. Ex. A,

26  4/26/2021 Indictment filed in Superior Court of the State of California, Los Angeles

27  County at 1 (Defendant's a/k/a listed as Roza A.), 14 (Overt Act related to Peter R.), 15

28

9

OPPOSITION TO MOTION *IN LIMINE* TO ADMIT "RESERVE IDENTITIES"
EVIDENCE

1   (Overt Acts related to Egia K., Tetiana V., Luidmyla K.), 36 (Overt Act related to

2   Osbaldo V.) 72 (Overt Act related to Adeliya T.), 93 (Overt Acts related to Mykhail D).

3   The government has repeatedly alleged that the state case is "wholly separate from the

4   violations of federal law addressed in the [superseding] indictment."  Thus, the

5   instrumentalities used to commit acts alleged in the State Case cannot be part of "a

6   single criminal transaction" with the fraud and money laundering alleged in the

7   superseding indictment.  The "reserve identities" evidence is subject to rule 404(b) and

8   should be excluded.

9           The $450,000 in cash found at R. Ayvazyan and Terabelian's house is also

10  subject to exclusion under Rule 404(b).  The government argues that because the

11  "primary purpose" of financial fraud is obtaining money, the presence of cash at R.

12  Ayvazyan and Terabelian's house "is part and parcel of the story of their criminal

13  conduct."  That is not the standard under Rule 404(b).  The government cannot prove

14  that the cash was the proceeds of PPP loan fraud.  Given that the government's

15  discovery productions have not revealed $450,000 in withdrawals by R. Ayvazyan or

16  Terabelian or transfers of cash from others to them—despite months of surveillance—it

17  would appear that the cash was received from completely legitimate sources, or, at

18  worst, sources related to the State Case, not the PPP loan fraud.  Given that Armenians

19  are culturally distrustful of banks and prefer to keep their money in cash, the logical

20  explanation for the cash is that R. Ayvazyan and Terabelian obtained the cash from

21  legitimate sources, and chose to keep the cash in their home.

22          Finally, the government argues that the use of the "reserve identities" evidence in

23  the State Case does not preclude the Court from concluding that the identities were also

24  used in the federal case charged in the superseding indictment.  That argument ignores

25  that the government plans to introduce evidence of "identities directly used in the PPP

26  or EIDL fraud and related transactions."  Dkt. 384, Gov't Br. at 8, n.6.  The whole

27  purpose of the government's motion is to admit evidence *that was not used* in the PPP

28

OPPOSITION TO MOTION *IN LIMINE* TO ADMIT "RESERVE IDENTITIES"
EVIDENCE

1   or EIDL fraud or money laundering scheme charged in the indictment.  Because the

2   "reserve identities" evidence is not part of the same transaction charged in the

3   indictment, it is not "inextricably intertwined" with charged conduct, and must be

4   excluded under 404(b).

### B. "Reserve Identities" Evidence Is Not Admissible Under Any of the Limited Purposes Permitted by Rule 404(b) Because it Does Not Prove A Material Element of any Offense Charged in the Indictment

In order to admit evidence pursuant to Rule 404(b), it is the government's burden to establish that the proffered evidence "(1) proves a material element of the offense for which the defendant is now charged, (2) if admitted to prove intent, is similar to the offense charged, (3) is based on sufficient evidence [to support a finding that the defendant committed the other act], and (4) is not too remote in time." *United States v. Ramirez-Robles*, 386 F.3d 1234, 1242 (9th Cir. 2004).[1]  The government is required to "'articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence.'" *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994) (quoting *United States v. Mehrmanesh*, 689 F.2d 922, 830 (9th Cir. 1982)).

The government has not established that "reserve identities" evidence will prove "a material element of the offense for which the defendant is now charged." *Ramirez-*

---

[1] The express language of Rule 404(b) also requires that the government provide "reasonable notice" in advance of trial.  Fed. R. Evid. 404(b)(2).  "Reasonable notice is designed to reduce surprise and promote early resolution of admissibility issues." *United States v. Vega*, 188 F.3d 1150, 1153 (9th Cir. 1999) (reversing conviction due to government's failure to disclose other act evidence prior to trial).  "Because the notice requirement serves as condition precedent to admissibility of 404(b) evidence, the offered evidence is inadmissible if the court decides that the notice requirement has not been met." *Id.* (quoting Fed. R. Evid. 404(b) 1991 amendment advisory committee note).  The government provided 404(b) notice to defendants about other evidence it seeks to introduce at trial, demonstrating that the government understands that 404(b) notice is required to admit evidence of other crimes, wrongs or acts.  A throwaway argument at the end of a motion in limine is insufficient to serve as notice under Rule 404(b), particularly when that information comes months after the close of discovery and less than two weeks before trial.

11

OPPOSITION TO MOTION *IN LIMINE* TO ADMIT "RESERVE IDENTITIES" EVIDENCE

*Robles*, 386 F.3d at 1242.  By definition, the "reserve identities" evidence was not used in the commission of the alleged PPP loan fraud or money laundering conspiracies charged in the indictment. Dkt. 384, Gov't Br. at 8, n.6.  As discussed above, the evidence the government categorized as "reserve identities" evidence relates to the State Case, not this case. The "reserve identities" evidence predates March 2020, the alleged beginning of the conspiracies charged in the indictment.  The government has not established that admission of the evidence will prove "a material element of the offense for which defendant is now charged." Accordingly, the "reserve identities" evidence is not admissible under the limited purposes in Rule 404(b).

It is worth noting that the government's motion to admit evidence of the "reserve identities" is just one more attempt by the government to make this case about conduct that has not been charged in the indictment, as opposed to focusing on the actual overt acts and conduct included in the indictment.  The government charged the defendants with conspiring to submit "151 fraudulent PPP and EIDL loan applications," but, on the eve of trial, informed the defendants of its plan to redact the paragraph of the indictment concerning that allegation. *See* Ram Decl., Ex. B, Email from C. Ahn. Nonetheless, the majority of the government's exhibit list relates to evidence of loan applications and bank records for conduct not charged in the indictment. Now, through a last-minute motion *in limine*, the government is attempting to admit additional types of evidence that have nothing to do with the conduct charged in the indictment. These tactics violate defendants' fundamental right to due process, and the Court should prevent the government from further violating defendants' constitutional rights by excluding the "reserve identities" evidence.

## IV.   THE "RESERVE IDENTITIES" EVIDENCE SHOULD BE EXCLUDED UNDER RULE 403

The unduly prejudicial nature of the "reserve identities" evidence is obvious: any juror who hears that defendants T. Dadyan and A. Ayvazyan possessed a "plethora" of fake and synthetic identities, seals and notary stamps will assume that the defendants

12

1    have a propensity for creating such fake identities and did so here. Dkt. 384, Gov.'s Br.

2    at 7.  At the very least, jurors will assume that the fake and synthetic identities unrelated

3    to the PPP fraud case mean that defendants must have committed other crimes with

4    those identities and deserve to be punished.

5         Even if the court finds that "reserve identities" evidence is admissible under Rule

6    404(b), the Court should exclude the "reserve identities" evidence under Rule 403,

7    because the probative value of the evidence "is substantially outweighed by the

8    prejudicial impact" of its admittance. Fed. R. Evid. 403; *United States v. Bailey*, 696

9    F.3d 794, 799 (9th Cir. 2012).  With respect to other act evidence in particular, "the

10   determination must be made whether the danger of undue prejudice outweighs the

11   probative value of the evidence in view of the availability of other means of proof and

12   other factors appropriate for making decisions of this kind under Rule 403."  Fed. R.

13   Evid. 404(b) Advisory Committee's Note.  Rule 403 also requires exclusion where the

14   probative value of the otherwise admissible evidence is substantially outweighed by the

15   danger of confusing issues at trial, or misleading the jury, or by considerations of undue

16   delay, waste of time, or needless presentation of cumulative evidence.  Fed. R. Evid.

17   403; *see also Wilson v. Maricopa County*, No. CV-04-2873 PHX-DGC, 2007 WL

18   686726, at *13 (D. Ariz. Mar. 2, 2007) (excluding evidence under Rule 403 regardless

19   of its admissibility under Rule 404(b) where "[t]he case would devolve into a series of

20   mini-trials concerning the relevancy and outcome of these other cases, resulting in an

21   unnecessarily lengthy trial for the parties, the Court, and the jury").

22        Here, "reserve identities" evidence should be excluded under Rule 403 for two

23   reasons.  First, "the danger of undue prejudice outweighs the probative value of the

24   evidence in view of the availability of other means of proof." Fed. R. Evid. 404(b)

25   Advisory Committee's Note.  The Government intends to introduce what it describes as

26   "direct identities" evidence related to the scheme charged in the indictment.  Piling on

27   "reserve identities" evidence—alleged instrumentalities of fraud that have nothing to do

28

13

OPPOSITION TO MOTION *IN LIMINE* TO ADMIT "RESERVE IDENTITIES"
EVIDENCE

with the charges in the federal case—is unduly prejudicial and cumulative. Given that the government already intends to introduce evidence of "direct identities," that undue prejudice outweighs any probative value of "reserve identities" evidence.

Second, admitting "reserve identities" evidence would be an incredible waste of both the court and jury's time, requiring a mini-trial on each identity to determine whether it was actually used in the federal case at issue, or whether it is evidence unrelated to the federal case. *See Wilson v. Maricopa County*, No. CV-04-2873 PHX-DGC, 2007 WL 686726, at *13 (D. Ariz. Mar. 2, 2007) (excluding evidence under Rule 403 regardless of its admissibility under Rule 404(b) where "[t]he case would devolve into a series of mini-trials concerning the relevancy and outcome of these other cases, resulting in an unnecessarily lengthy trial for the parties, the Court, and the jury"). Given that the government can introduce the "direct identities" evidence, any probative value to the "reserve identities" evidence is outweighed both by "considerations of undue delay, waste of time, or needless presentation of cumulative evidence" and the undue prejudice to defendants. Accordingly, the Court should exclude the "reserve identities" evidence under Rule 403.

## V. "RESERVE IDENTITIES" EVIDENCE WOULD INTRODUCE FIFTH AMENDMENT ERROR

As noted in the *Kastigar* briefing, the defendants are entitled not just to suppression of the fruits of the poisonous tree, but to prohibit derivative use of tainted information in any way whatsoever.  Although the Court held that the search warrants did not require suppression as fruits of the poisonous tree, the search warrants and seized property remain tainted by the use of tainted information both in the search warrants themselves and in the execution thereof.  Permitting the introduction of such tainted evidence would violate the Fifth Amendment.

OPPOSITION TO MOTION *IN LIMINE* TO ADMIT "RESERVE IDENTITIES" EVIDENCE

1    Dated:   June 4, 2021                    Respectfully submitted,

2                                             */s/ Ashwin J. Ram*
                                             Ashwin J. Ram (SBN 227513)
3                                             *aram@steptoe.com*
                                             Michael A. Keough (SBN 327037)
4                                             *mkeough@steptoe.com*
                                             Meghan L. Newcomer (*pro hac vice*)
5                                             *mnewcomer@steptoe.com*
                                             Nicholas P. Silverman (*pro hac vice*)
6                                             *nsilverman@steptoe.com*
                                             **STEPTOE & JOHNSON LLP**
7                                             633 West Fifth Street, Suite 1900
                                             Los Angeles, CA 90071
8                                             Telephone: (213) 439-9400
                                             Facsimile: (213) 439-9599
9

10                                            *Counsel for Defendant Richard Ayvazyan*

11

12                                            */s/ Thomas A. Mesereau*
                                             Thomas A. Mesereau Jr. (SBN 91182)
13                                            *mesereau@mesereaulaw.com*
                                             **MESEREAU LAW GROUP, P.C.**
14                                            10100 Santa Monica Blvd., Suite 300
                                             Los Angeles, CA 90067
15                                            Telephone: (310) 651-9960

16

17                                            Jennifer J. Wirsching (SBN 263141)
                                             *wirschinglaw@outlook.com*
18                                            **ATTORNEY AT LAW**
                                             1935 Alpha Rd, Suite 216
19                                            Glendale, CA 91208
                                             Telephone: (424) 902-9280
20

21                                            *Counsel for Defendant Artur Ayvazyan*

22                                            */s/ Fred G. Minassian*
                                             Fred G. Minassian (SBN 170974)
23                                            *fgminassian@yahoo.com*
                                             **LAW OFFICES OF FRED G.**
24                                            **MINASSIAN, INC.**
                                             101 N. Brand Ave, Suite 1970
25                                            Glendale, CA 91203
                                             Telephone: (818) 240-2444
26

27                                            *Counsel for Defendant Tamara Dadyan*

28
                                  15
OPPOSITION TO MOTION *IN LIMINE* TO ADMIT "RESERVE IDENTITIES"
                              EVIDENCE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(i), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

16

OPPOSITION TO MOTION *IN LIMINE* TO ADMIT "RESERVE IDENTITIES" EVIDENCE