1 | TRACY L. WILKISON
Acting United States Attorney
2 | SCOTT M. GARRINGER
Assistant United States Attorney
3 | Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
4 | CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
5 | Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
6 |      1100/1300 United States Courthouse
       312 North Spring Street
7 |      Los Angeles, California 90012
       Telephone: (213) 894-6527/2424/3819
8 |      Facsimile: (213) 894-6269/0141
       E-mail:     Scott.Paetty@usdoj.gov
9 |                Catherine.S.Ahn@usdoj.gov
                   Brian.Faerstein@usdoj.gov
10 |
DANIEL S. KAHN
11 | Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
12 | CHRISTOPHER FENTON
Trial Attorney, Fraud Section
13 | Criminal Division, U.S. Department of Justice
       1400 New York Avenue NW, 3rd Floor
14 |      Washington, DC 20530
       Telephone: (202) 320-0539
15 |      Facsimile: (202) 514-0152
       E-mail:     Christopher.Fenton@usdoj.gov
16 |
Attorneys for Plaintiff
17 | UNITED STATES OF AMERICA

18 |                 UNITED STATES DISTRICT COURT

19 |            FOR THE CENTRAL DISTRICT OF CALIFORNIA

20 | RICHARD AYVAZYAN,                    No. CR 20-579(A)-SVW
      aka "Richard Avazian" and
21 |      "Iuliia Zhadko,"               GOVERNMENT'S REPLY IN SUPPORT OF
MARIETTA TERABELIAN,                     ITS MOTION *IN LIMINE* #3 TO EXCLUDE
22 |   aka "Marietta Abelian" and        EVIDENCE OR ARGUMENT THAT OCTOBER
      "Viktoria Kauichko,"               19-20, 2020 MIAMI BORDER STOP AND
23 | ARTUR AYVAZYAN,                      NOVEMBER 5, 2020 PREMISES SEARCHES
      aka "Arthur Ayvazyan," and         WERE UNLAWFUL
24 | TAMARA DADYAN,
MANUK GRIGORYAN,                         Hearing Date: June 14, 2021
25 |   aka "Mike Grigoryan," and          Hearing Time: 1:30 p.m.
      "Anton Kudiumov,"                  Trial Date:   June 15, 2021
26 | ARMAN HAYRAPETYAN,                   Location:     Courtroom of the
EDVARD PARONYAN,                                       Hon. Stephen V.
27 |   aka "Edvard Paronian" and                        Wilson
      "Edward Paronyan," and
28 | VAHE DADYAN,

1

Defendants.

2

3       Plaintiff United States of America, by and through its counsel

4   of record, the Acting United States Attorney for the Central District

5   of California, Assistant United States Attorneys Scott Paetty,

6   Catherine S. Ahn, and Brian Faerstein, and Department of Justice

7   Trial Attorney Christopher Fenton, hereby files its reply in support

8   of its motion in limine #3 to exclude evidence and arguments,

9   including on cross examination of government witnesses, that the

10  border stop on October 19-20, 2020 at the Miami International Airport

11  and the premises searches conducted on November 5, 2020 were unlawful

12  (ECF 390).  This reply is based upon the attached memorandum of

13  points and authorities, the files and records in this case, and such

14  further evidence and argument as the Court may permit.

15   Dated: June 7, 2021                Respectfully submitted,

16                                      TRACY L. WILKISON
                                        Acting United States Attorney
17
                                        SCOTT M. GARRINGER
18                                      Assistant United States Attorney
                                        Chief, Criminal Division
19

20              /s/
                                        _____
                                        SCOTT PAETTY
21                                      CATHERINE AHN
                                        BRIAN FAERSTEIN
22                                      Assistant United States Attorneys
                                        CHRISTOPHER FENTON
23                                      Department of Justice Trial Attorney

24                                      Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA
25

26

27

28

2

1

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

2     The government's motion in limine no. 3 seeks to exclude

3 evidence and argument at trial that the border search in Miami or

4 subsequent residence searches in this case were unlawful or violated

5 defendants' constitutional rights.  (ECF 390.)  The legality of these

6 searches and attendant conduct have been litigated extensively and

7 ruled upon by the Court, and such issues are improper and irrelevant

8 to the jury's consideration of guilt in this case.

9     Defendant Richard Ayvazyan's ("defendant") opposition states

10 that he will not "argue to the jury that the investigatory activities

11 were illegal but rather that they were emblematic of a shoddy

12 investigation by law enforcement officials who had already concluded

13 the defendants were guilty."  (ECF 417 at 1.)  But defendant

14 realleges factual matters, including purported "military-style raids"

15 and accusations of "being a terrorist," that pertain solely to the

16 legality of the searches in this case and not to any issues at trial,

17 while also insinuating his intent to raise other due process

18 allegations for the jury's consideration.

19     This reply addresses defendant's mistaken contentions as to the

20 permissible bounds of questioning the government's investigation at

21 trial.  The government also responds to what it perceives to be

22 defendant's intention to make arguments at trial sounding in

23 vindictive or discriminatory prosecution or outrageous government

24 conduct, or arguing issues related to the purported "taint" of the

25 government's evidence to the jury, all of which are improper as a

26 matter of law.

27

28

1
2
**I.    EVIDENCE OR ARGUMENT AT TRIAL REGARDING THE ALLEGED UNLAWFULNESS OF GOVERNMENT SEARCHES UNDER THE GUISE OF QUESTIONING THE QUALITY OF THE INVESTIGATION IS IMPROPER**

3   Defendant contends that he will ask the jury "to assess critical

4   questions regarding the completeness and efficacy of the government's

5   investigation," relying, in substantial part, on United States v.

6   Sager, 227 F.3d 1138 (9th Cir. 2000).  (ECF at 4, 5, 6.)  The

7   government does not dispute that the defense may, within prescribed

8   limits and with adequate foundation, question at trial the "quality

9   of the [government's] investigation," alleged defects in the

10   evidence, or the credibility and potential bias of the government's

11   witnesses.  Sager, 227 F.3d at 1145, 1146.

12   Inquiries about the government's investigation are not without

13   limits, however.  As the Sager court observed, "[i]n circumstances

14   different from these, a court may properly decide that such a line of

15   investigation is to be limited for some independent evidentiary

16   reason, such as that the evidence would be cumulative."  Id. at 1146

17   (citing United States v. Miller, 874 F.2d 1255, 1266 (9th Cir.

18   1989)).  Similarly, in United States v. Yagman, this Court recognized

19   that "Sager does not give Defendant carte blanche to attack all

20   aspects of the [government's] investigation," including where "the

21   relevance of such evidence would be substantially outweighed by the

22   risk of jury confusion, undue delay, and prejudice."  United States

23   v. Yagman, CR 06-227(A)-SVW, 2007 WL 9724391, at *6 (C.D. Cal. May

24   16, 2007); see also United States v. Yagman, 345 F. App'x 312, 314

25   n.1 (9th Cir. 2009) (affirming court's exclusion of defense proposed

26   "framing" evidence and noting "none of the proffered testimony would

27   have raised any concerns over the credibility or validity of any of

28

2

1  the documentary evidence produced during the government's

2  investigation").

3      Here, in elaborating on the anticipated scope of his inquiry

4  about the government's investigation, defendant states his intention

5  to raise with the jury allegations pertaining to the execution of the

6  searches in this case that have no relevance to the issues at trial.

7  For instance, defendant once again contends that he was "wrongfully

8  accused of being a terrorist" and "l[ied] to . . . about whether he

9  was entitled to a lawyer."  (ECF 417 at 2, 4.)  He also points once

10  again to purported "military-style raids of the defendants' homes

11  that involved the harassment of the defendants' children."  (Id. at

12  2.)  Putting aside the inaccuracy and exaggeration of these

13  allegations, which the parties litigated extensively in pretrial

14  motions, these and other potential claims relating to the manner and

15  execution of the border search and premises warrants are irrelevant

16  to the jury's consideration of the evidence at trial, including any

17  purported gaps in the government's investigation.

18      Among other things, these issues pertain (and pertained) solely

19  to the Court's evaluation of defendants' suppression arguments.  As

20  noted in the government's moving brief, United States v. Reed, 575

21  F.3d 900 (9th Cir. 2009), is instructive.  There, the district court

22  excluded defense expert testimony at trial where the defense "sought

23  to present the same evidence adduced at the hearings on the renewed

24  motion to suppress" relating to alleged "'anomalies' in the wiretap

25  that could indicate that the Government was conducting illegal

26  wiretaps."  Id. at 919.  The Ninth Circuit affirmed the district

27  court's exclusion of the evidence, reasoning that the "legality of a

28  wiretap and the question of whether the Government had a warrant for

1  a wiretap is not a question for the jury to consider, because it is

2  not immediately relevant to the question of guilt." Id. (citing

3  Jones v. United States, 362 U.S. 257, 264 (1960)); see also Jones,

4  362 U.S. at 264 (requirement that motions to suppress "be made before

5  trial . . . is designed to eliminate from the trial disputes over

6  police conduct not immediately relevant to the question of guilt").

7  The legality of the searches in this case and purported

8  constitutional violations relating thereto are not "immediately

9  relevant to the question of guilt" and thus are irrelevant and carry

10 no probative value at trial.

11      Defendant's anticipated arguments about the conduct of Customs

12 and Border Protection ("CBP") officers in Miami and law enforcement

13 executing the premises search warrants in this District similarly are

14 irrelevant to issues of guilt.  Defendant has not proffered any

15 credible information, other than repeated broad and baseless attacks

16 leveled at law enforcement and government personnel, calling into

17 question the validity and integrity of the actual admissible evidence

18 obtained as a result of the border and premises searches.  See

19 Yagman, 345 F. App'x at 314 n.1.

20      Moreover, any alleged deficiencies in CBP's questioning of

21 defendant or its border search procedures have already been litigated

22 and ruled upon by the Court.  CBP's role in the investigation was

23 minimal in any event.  The investigation was conducted primarily by

24 the United States Small Business Administration, Federal Bureau of

25 Investigation, and Internal Revenue Service Criminal Investigation

26 Division.  These agencies, not CBP, directed the course of the

27 investigation.  CBP became involved only briefly by virtue of

28 defendant's decision to fly through Miami on the way back from Turks

1 & Caicos, and CBP's involvement was limited to conducting its border

2 search procedures during this limited window of time.  In his

3 opposition, defendant identifies the government's strategic choices

4 and guiding theories of culpability as the primary purported bases of

5 relevance for introducing evidence about the government's

6 investigation.  (See generally ECF 417.)  But details about CBP's

7 activities, while relevant to the Court's earlier rulings on the

8 border search, are irrelevant to these broader issues or to any fact

9 of consequence at trial.  Fed. R. Evid. 401, 402.

10    Nor is information relating to law enforcement's tactical

11 preparation and safety precautions for the premises search warrants

12 on November 5, 2020 relevant to issues pertaining to the government's

13 broader investigatory strategy.  Defendant takes issue with the

14 government's potential need to introduce rebuttal evidence regarding

15 law enforcement's belief about defendant's and several codefendants'

16 association with Armenian Power and possession of numerous firearms.

17 (ECF 417 at 7-8.)  Defendant challenges the factual foundation for

18 this information, which the government has explained in multiple

19 filings in this case.  (See ECF 188 at 4-6; ECF 207 at 4-6; ECF 310

20 at 13-15).  Defendant also posits that the government would be

21 seeking to obtain convictions based on his and his codefendants'

22 "shared Armenian ethnicity."  (Id. at 7.)  The government intends to

23 do nothing of the kind, but defendant misses the larger point.  The

24 government does not intend to introduce any evidence regarding

25 Armenian Power or any of the defendants' possession or suspected

26 possession of firearms.  But it would be required to do so if

27 defendant opens the door to issues of law enforcement safety and

28 tactics by injecting irrelevant issues regarding "military-style

1    raids" into trial.  See, e.g., United States v. Wales, 977 F.2d 1323,

2    1326 (9th Cir. 1992) (evidence about false driver's licenses

3    admissible where defense "opened the door" on cross-examination);

4    United States v. Segall, 833 F.2d 144, 148 (9th Cir. 1987) (evidence

5    about bank account funds admissible where defense "opened the door"

6    and created "false impression" on cross-examination).

7         Balanced against the lack of any probative value of evidence or

8    arguments regarding the purported unlawfulness of the searches in

9    this case, defendant's retreaded attacks on this basis would pose a

10   substantial danger of unfair prejudice, confusing the issues,

11   misleading the jury, undue delay, and wasting time.  Fed. R. Evid.

12   403.   The Court already has considered and ruled upon the factual

13   contentions pertaining directly to the suppression motions in this

14   case, as is required.  Fed. R. Evid. 104(a).  Allowing the jury to

15   hear evidence relating to admissibility issues but untethered to any

16   credible information calling into question the actual integrity of

17   the evidence obtained from the searches would only mislead and

18   confuse the jury.  It also would unnecessarily delay trial and waste

19   time by requiring the government to put in rebuttal evidence

20   otherwise not relevant to issues of guilt.

21   **II.   DEFENDANT SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OR ARGUMENT
          AT TRIAL REGARDING ALLEGATIONS OF DUE PROCESS VIOLATIONS**

22

23        In his opposition, and consistent with his approach of casting

24   baseless accusations against the government throughout this case,

25   defendant insinuates that he may seek to raise, directly or

26   indirectly, improper arguments at trial premised on vindictive or

27   discriminatory prosecution or outrageous government conduct.  The

28   government's instant motion initially focused on the impropriety of

                                    6

1  defense arguments at trial regarding the unlawfulness or

2  unconstitutionality of the searches in this case.  However, in light

3  of defendant's previous unfounded claims of prosecutorial misconduct,

4  which the Court has rejected, and the tenor of his current filing,

5  defendant once again puts at issue the impropriety of potential

6  defense arguments bearing on purported due process violations at

7  trial.

8      Defendant contends that, "[e]arly in the investigation, the

9  government decided that defendant Richard Ayvazyan and a group of

10 other people of Armenian descent were involved in a single conspiracy

11 and/or scheme to secure" fraudulent COVID-19 disaster relief loans.

12 (ECF 417 at 1-2.)  Defendant describes the government's development

13 of evidence against him as a "pre-existing conclusion," "find[ing]

14 evidence that would support the government's unfounded suspicions,"

15 "find[ing] evidence to support its preferred theory," and seeking to

16 "ramrod through a conviction rather than to discover the truth."[1]

17 (Id. at 2, 6, 7.)

18

---

19      [1] Defendant claims, as he has previously, that the government
   "failed to follow leads that other people used the identities alleged
20 to have applied for PPP and EIDL loans -- leads that were apparent in
   the government's own evidence."  (ECF 417 at 2.)  Defendant provides
21 one example of "an October 13, 2020 purchase at Lamps Plus in
   California" reflected in a Chase bank statement for an account in the
22 name of "Turing Info Solutions, Inc." controlled by "Iuliia Zhadko."
   (See Exhibit 3 (Under Seal) to the Declaration of Brian Faerstein,
23 ECF 219-1, at DOJ_PROD_0000099291.)  Defendant claims that he could
   not have been using the "Zhadko" alias because he was in Turks &
24 Caicos at that time.  The evidence demonstrates just the opposite.
   Not only does defendant disregard the ubiquity and ease of online or
25 over-the-phone purchases, but also the Chase bank account statement
   in question reflects that the purchase was made through a "Card
26 Purchase," specifying "Card 3537."  (Id.)  When defendant was stopped
   by CBP in Miami, officers seized, among other things, a physical
27 Chase credit card in the name of "Iuliia Zhadko, Turing Info
   Solutions," with an account number ending in -3537.  (See Exhibit 3
28 (Under Seal) to the Declaration of Scott Paetty, ECF 152-1, at
   DOJ_PROD_0000023739.)

7

1    Defendant's allegations echo, in type if not in degree, his

2  numerous baseless accusations about government misconduct throughout

3  this case.  For instance, in defendant's filings seeking to dismiss

4  the case for prosecutorial misconduct, defendant made the following

5  unfounded allegations:

6
- "[T]he government assumed that [defendant Ayvazyan] too
7     must be culpable.  But there was a hole in that
     assumption:  Ayvazyan was not involved in Zhadko's
8     allegedly fraudulent application.  In an effort to fill
     that hole, the government began a pattern of misconduct
9     that has plagued this case," (ECF 289 at 1);

10
- "[T]he government attempted to amplify the misimpression
11     it had created that Ayvazyan was some sort of 'ring
     leader' instead of someone who merely received funds from
12     an array of friends and associates including several
     people who had allegedly submitted fraudulent PPP loan
13     applications," (id. at 3);

14
- "While shocking the universal sense of justice is a high
15     standard, the government's determination to trample the
     civil liberties while cloaking itself in 'terrorism' and
16     'national security' is so outrageous as to merit
     dismissal, particularly when combined with the consequent
17     deletion of evidence and pattern of misconduct," (id. at
     19);
18
- "As a result of its erroneous conclusion based on
19     unlawfully seized evidence, the government became
     convinced that Ayvazyan was somehow the leader of what
20     the government continuously characterizes as a 'fraud
     ring.'  The government therefore acted on the unlawfully
21     seized evidence to turn Ayvazyan's life upside down,"
22     (id. at 21);

23
- "The government has committed flagrant misconduct in
24     violation of ethical rules, the Fourth Amendment, assault
     and battery laws, destruction of property laws, the
25     Federal Rules of Criminal Procedure and the Court's
     discovery order. As a result Ayvazyan has suffered...,"
26     (id. at 23); and

27
- "The government's misconduct began with the unlawful
     interrogation of Ayvazyan at Miami International Airport
28

8

1  on October 19, 2020 and has continued into new misconduct
2  as recently as the last two weeks."  (ECF 329 at 1.)

3  The Court rejected defendant's allegations of prosecutorial

4  misconduct and should not allow defendant to make such claims to the

5  jury.

6      To the extent defendant intends to argue at trial that he was

7  the victim of vindicative or discriminatory prosecution or outrageous

8  government conduct (all of which are wholly without merit), he should

9  be precluded from doing so.  See, e.g., United States v. Sotelo-

10  Murillo, 887 F.2d 176, 182 (9th Cir. 1989) ("Whether the government's

11  conduct is sufficiently outrageous to violate due process is a

12  question of law reviewed de novo.  It is not an issue for the jury

13  and Sotelo was not entitled to a jury instruction on the issue.")

14  (internal citation omitted); United States v. Wylie, 625 F.2d 1371,

15  1378 (9th Cir. 1980) ("The question of the outrageous involvement of

16  government agents is a question of law for the court."); United

17  States v. Berrigan, 482 F.2d 171, 174-75 (3d Cir. 1973) ("question of

18  discriminatory prosecution relates not to the guilt or innocence of

19  appellants, but rather addresses itself to a constitutional defect in

20  the institution of the prosecution"); see also Yagman, 2007 WL

21  9724391, at *4 ("Defendant cannot cloak vindicative prosecution

22  arguments under the guise of a defense that he has been framed.").

23  **III. DEFENDANT SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OR ARGUMENT
   AT TRIAL REGARDING PURPORTED "TAINT" OF GOVERNMENT EVIDENCE**
24

25      Defendant raises another argument in his opposition not

26  addressed initially in the government's motion in limine but that

27  warrants a response.  Specifically, defendant contends numerous times

28  that he should be entitled to "probe the government's investigation"

9

1    to prevent the government from "further benefit[ing] from the taint

2    that has infected the government's indictment and evidence."  (ECF

3    417 at 1; see also id. at 2 ("government has relied on tainted

4    evidence to form and repeatedly confirm its flawed central theory of

5    the case"); id. at 9 ("the indictments in this case are already

6    tainted"); id. ("cut[ting] off questioning regarding its

7    investigation tactics gives the government the opportunity to

8    directly and indirectly use tainted evidence with abandon").

9         The Court has ordered that a Kastigar hearing be held post-trial

10   to determine the extent, if any, to which the government has used

11   purportedly tainted evidence in investigating and prosecuting this

12   case.   That hearing, not trial, will be the appropriate time and

13   place for defendant to explore his theories about allegedly tainted

14   evidence.   These legal issues are irrelevant to the jury's

15   consideration of guilt and pose a substantial danger of confusing the

16   issues and misleading the jury, and defendant should be precluded

17   from raising them at trial.  Fed. R. Evid. 401-403.

18   **IV.   CONCLUSION**

19        For the foregoing reasons, and the reasons set forth in its

20   motion (ECF 390), the government respectfully requests that this

21   Court exclude defense evidence and arguments that the border stop on

22   October 19-20, 2020 in Miami and the residence searches conducted on

23   November 5, 2020 were unlawful or that the manner in which law

24   enforcement agents engaged in these searches violated defendants'

25   constitutional rights.   The government further requests that this

26   Court exclude defense evidence and arguments regarding alleged due

27   process violations or allegedly "tainted" evidence.

28