Ashwin J. Ram (SBN 227513)
aram@steptoe.com
Michael A. Keough (SBN 327037)
mkeough@steptoe.com
Meghan L. Newcomer (*pro hac vice*)
mnewcomer@steptoe.com
Nicholas P. Silverman (*pro hac vice*)
nsilverman@steptoe.com
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

John L. Littrell (SBN 221601)
jlittrell@bklwlaw.com
Ryan V. Fraser (SBN 272196)
rfraser@bklwlaw.com
**BIENERT KATZMAN LITTRELL
WILLIAMS, LLP**
601 W. 5th Street, Suite 720
Los Angeles, CA 90071
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

*Counsel for Defendant Marietta Terabelian*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>RICHARD AYVAZYAN,<br>MARIETTA TERABELIAN,<br>*et al.*,<br><br>*Defendants.* | Case No.  20-cr-579 (SVW)<br><br>**JOINT REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CRIM. P. 12(B) OR CONTINUE THE TRIAL TO HOLD A *KASTIGAR* HEARING**<br><br>Hon. Stephen V. Wilson<br><br>Hearing Date:  June 14, 2021<br>Time:  1:30 p.m. |

# **TABLE OF CONTENTS**

I.  THE COURT SHOULD DISMISS THE INDICTMENTS UNDER FED.
    R. CRIM. P. 12(B)(3)(A) AND 12(B)(3)(B) BECAUSE THE
    INDICTMENTS ARE DEFECTIVE ................................................................2

    A.  Dismissal Is Merited by the Indictments' Prohibited Evidentiary Use
        of Tainted Information ..................................................................................3

    B.  Dismissal Is Merited by the Indictments' Prohibited
        Non-Evidentiary Use Of Tainted Information ..............................................7

II. IN THE ALTERNATIVE, THE COURT SHOULD CONTINUE THE
    TRIAL FOR A PRE-TRIAL KASTIGAR HEARING ......................................12

    A.  A Pre-Trial Hearing is Consistent With Precedent Including *United
        States v. Kilroy*............................................................................................12

    B.  The Defendants Will Be Prejudiced By Proceeding to Trial Without
        Resolving the Indictments' Uses of Tainted Information ...........................14

III. CONCLUSION.............................................................................................15

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*In re Grand Jury Proceedings (Kinamon)*,
    45 F.3d 343 (9th Cir. 1995) ................................................................. 5, 6

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005) ........................................................................... 4

*United States v. Allen*,
    764 F.3d 63 (2d Cir. 2017)................................................................ 7, 14

*United States v. Allen*,
    864 F.3d 63 (2d Cir. 2017)................................................................. 14

*United States v. Benson*,
    No. 12-cr-480, 2016 WL 215233 (N.D. Cal. Jan. 19, 2016) ................................ 8, 13

*United States v. Blue*,
    384 U.S. 251 (1966)........................................................................... 6

*United States v. Burr*,
    25 F. Cas. 30 (C.C. Va. 1807)............................................................... 5

*United States v. Costello*,
    221 F.2d 668 (2d Cir. 1955) ................................................................. 4

*United States v. Danielson*,
    352 F.3d 1054 (9th Cir. 2003) ............................................................ 8, 15

*United States v. Dudden*,
    65 F.3d 1461 (9th Cir. 1995) .............................................................. 8, 9

*United States v. Gallo*,
    859 F.2d 1078 (2d Cir. 1988) ............................................................... 14

*United States v. Gallo*,
    863 F.2d 185 (2d Cir. 1988) ................................................................ 13

*United States v. Hampton*,
    775 F.2d 1479 (11th Cir. 1985) .......................................................... 6, 15

*United States v. Heine*,
    No. 15-cr-238, 2017 WL 1345220 (D. Or. Apr. 7, 2017) ............................... 4

iii

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

*United States v. Kilroy*,
    27 F.3d 679 (D.C. Cir. 1994) ................................................................... 13

*United States v. Kilroy*,
    769 F. Supp. 6 (D.D.C. 1991) ................................................................ 13

*United States v. Leeper*,
    No. 06-cr-58A, 2006 WL 1455485 (W.D.N.Y. May 22, 2006) ................................. 3

*United States v. Montoya*,
    45 F.3d 1286 (9th Cir. 1995) .............................................................. 5, 9

*United States v. North*,
    910 F.2d 843 (D.C. Cir. 1990) ............................................................ 5, 6

*United States v. Ratti*,
    365 F. Supp. 2d 649 (D. Md. 2005) ......................................................... 5

*United States v. Samango*,
    607 F.2d 877 (9th Cir. 1979) .............................................................. 4

*United States v. Sears, Roebuck & Co., Inc.*,
    719 F.2d 1386 (9th Cir. 1983) ............................................................ 4

*United States v. Serrano*,
    870 F.2d 1 (1st Cir. 1989) ..........................................................*passim*

*United States v. Serrano, Boscio, & Stamps*,
    680 F. Supp. 58 (D.P.R. 1988) ........................................................... 10

*United States v. Tormos-Vega, Boscio, & Serrano*,
    656 F. Supp. 1525 (D.P.R. 1987) ................................................... 10, 11, 12

*United States v. Whitmore*,
    35 F. App'x 307 (9th Cir. 2002) ....................................................... 5, 13

*United States v. Zielezinski*,
    740 F.2d 727 (9th Cir. 1984) ............................................................ 6

**Other Authorities**

Douglas Turner, *Non-Evidentiary Use of Immunized Testimony: Twenty
    Years After Kastigar and the Jury Is Still Out*, 20 Am. J. Crim. L. 105
    (1992) ................................................................................... 9

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

Fed. R. Crim. P. 12(b)(3)(A) ................................................................. 2

Fed. R. Crim. P. 12(b)(3)(B) ................................................................. 2

Fed. R. Crim. P. 12(d) ........................................................................... 4

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

The government engaged in prohibited evidentiary and non-evidentiary use of tainted information to return the indictments in this case.  The defendants therefore request that the indictments be dismissed.  In the event that an evidentiary hearing is necessary before dismissal, the defendants respectfully submit their first request for a continuance of approximately three weeks so that the evidentiary hearing can be held without prejudicing the defendants' ability to defend their cases at trial.

The grand jury charged the defendants with a conspiracy involving the alleged "submission of at least 151 fraudulent PPP and EIDL loan applications."  Dkt. 154 ¶ 32.  After the government finally disclosed these loans on May 21, 2021, the defendants learned that over half of the applications (at least 83) were directly linked to people or entities implicated in the tainted evidence obtained by the government seven months earlier.  This tainted evidence—combined with the addition of a co-conspirator based on tainted evidence, the addition of a victim based on tainted evidence, and the government's under-oath admission that its charging theory was a product of tainted evidence—renders the indictments and prosecution defective.  The indictments should therefore be dismissed.

In the event that dismissal requires an evidentiary hearing, the defendants request that the Court continue the case to hold that hearing before trial.  This is consistent with the practice lauded by the D.C. Circuit and this Court's previous In-Chambers Order of bifurcating a *Kastigar* hearing into a pre-trial examination of the indictment and pre-trial taint and a post-trial examination of the evidence adduced at trial.  The defendants are willing to sacrifice their interest in a June 15 trial date because, in the absence of a pre-trial hearing, they will be prejudiced by having to choose between their ability to the defend the case and their ability to do so at a potential second trial.

1

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

## I. THE COURT SHOULD DISMISS THE INDICTMENTS UNDER FED. R. CRIM. P. 12(B)(3)(A) AND 12(B)(3)(B) BECAUSE THE INDICTMENTS ARE DEFECTIVE

The indictments and the institution of prosecution are defective. They should be dismissed under Fed. R. Crim. P. 12(b)(3)(A) and 12(b)(3)(B).[1]

The government unconstitutionally coerced two suspects to provide compelled statements at the outset of its investigation on October 19, 2020. The government set up no prophylactic measures, no filter teams, no untainted agents or attorneys, and no walls to prevent the tainted information derived from those compelled statements from infecting the investigation and prosecution. And so the taint spread without limit. The defendants' opening motion explained how the tainted information about specific loans was obtained by the government and presented to the grand jury as part of the conspiracy alleged in the superseding indictment (Dkt. 381 at 6-8); how tainted information led the government to add additional charges and co-conspirators (Dkt. 381 at 8-9); and how the government's stated "charging theory" was formed on the basis of tainted information (Dkt. 381 at 9-11).

Rather than dispute the taint and merits of dismissal, the government resorts to arguments about whether the defective indictment is structurally defective such that the Court should consider whether the decision to dismiss the indictments (an appropriate remedy) could be the subject of reversible error on appeal, and whether First Circuit case law—which the government wrongfully cites as Ninth Circuit law—prohibits the non-evidentiary use that has occurred. The indictments are, in fact, defective based on prohibited non-evidentiary and evidentiary use of tainted information, and the Court should reject the government's invitation to err.

---

[1] Although the government attempts to argue that "none of the prongs [in 12(b)(3)(B)] are applicable," the government is wrong. Rule 12(b)(3)(B) permits dismissal based on defects in the indictment and lists two non-exclusive examples, not "prongs"—as demonstrated by the use of "including."

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

**A.      Dismissal Is Merited by the Indictments' Prohibited Evidentiary Use of Tainted Information**

The government responds to the defendants' enumerated examples of evidentiary taint underlying the grand jury process with two dodges—either one of which would decimate the Fifth Amendment right against the use of compelled statements in the grand jury context.

First, the government argues that the grand jury may have returned an indictment alleging 151 fraudulent loan applications (Superseding Ind. ¶ 32) based solely on a request from the government and without receiving any evidence of those applications. Opp'n at 2.  The proposition that the grand jury returned an indictment based upon mere suggestion by the prosecutor—and not based on "an informed and objective evaluation of the evidence presented to it" would violate the Fifth Amendment guarantee of an independent grand jury and independently merit dismissal of this tainted case.[2]  *See, e.g.*, *United States v. Leeper*, No. 06-cr-58A, 2006 WL 1455485, at *5 (W.D.N.Y. May 22, 2006) (dismissing indictment acquired by prosecutorial vouching instead of evidentiary review because "[t]o let the indictment stand under these circumstances would make a mockery out of the entire grand jury process and

---

[2] The government complains about the number of motions that have been filed.  The defendants do not relish having to spend their time researching and writing to the Court instead of preparing for trial, but two considerations have made this motion practice necessary. First, the prosecution has been riddled with "errors" from the moment the government violated the defendants' constitutional rights in Miami.  The Court has concluded that the prosecution's misconduct violated the Fifth Amendment, that it would have violated the Fourth Amendment if it took place in the Ninth Circuit, and that while such conduct may be negligent or inadvisable, it did not require dismissal.  The defendants have filed these motions because the government engaged in the conduct and missteps that required them. Second, the defendants have consistently attempted to meet and confer to narrow issues by writing letters to the government.  The government has obstinately refused to provide the requested information or take a reasonable position (if any), thus meaning that the defendants have been left with no option but to turn to the Court for relief.  In one particularly notable example, the government spent weeks ignoring or castigating three defense requests for information relevant to litigating motions to suppress or for a bill of particulars.  When the defense raised those issues in open court, the government finally complied.  The defense would have preferred to deal with these and other issues without bothering the Court, but the government appears to cooperate only when the Court is watching.

3

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

would render the Grand Jury Clause a nullity"); *United States v. Heine*, No. 15-cr-238, 2017 WL 1345220, at \*10 (D. Or. Apr. 7, 2017) ("if it appeared that no evidence had been offered that rationally established the facts, the indictment ought to be quashed; because then the grand jury would have in substance abdicated." (quoting *United States v. Costello*, 221 F.2d 668, 677 (2d Cir. 1955) (Hand, C.J.))).[3]  Indeed, if there was no other evidence presented with respect to the 151-loan allegation, then the prosecutor effectively acted as a witness testifying to that allegation.  The government's argument that the grand jury merely rubberstamped an indictment on the prosecutors' say-so instead of hearing any evidence at all—thereby sacrificing their role as an independent body defending individuals against the state—is a concession of error independently meriting dismissal if it occurred.

Second, the government thereafter pivots to an equally dubious argument: that the constitutional violation of using evidence derived from compelled statements to obtain an indictment against the defendant is a "non-structural defect[] in the grand jury process" and would be rendered harmless by a petit jury's conviction.  Opp'n at 3.  To be clear, a conviction would not "cure" the error; instead, it would be an argument that the error is not reversible.  This argument—that the Court should err and let a defective indictment stand contrary to Fed. R. Crim. P. 12(b), 12(d) simply because an appellate court may not reverse that error—is repugnant to the sense of criminal justice and would fundamentally undermine the right not to bear witness against oneself in grand jury proceedings.  *Cf. Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005) ("We have it on good authority that "a motion to a court's discretion is a motion, not to its

---

[3] *See also United States v. Sears, Roebuck & Co., Inc.*, 719 F.2d 1386, 1391 (9th Cir. 1983) ("Implicit in [the Fifth Amendment] is the guarantee that a defendant will be indicted only upon the informed and independent determination of a legally constituted grand jury. … Dismissal of an indictment is therefore warranted on constitutional grounds if prosecutorial misconduct has undermined the grand jury's ability to make an informed and objective evaluation of the evidence presented to it."); *United States v. Samango*, 607 F.2d 877, 882 (9th Cir. 1979) ("[A] line must be drawn beyond which a prosecutor's control over a cooperative grand jury may not extend.").

inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" (quoting *United States v. Burr*, 25 F. Cas. 30, 35 (C.C. Va. 1807) (Marshall, C.J.))).  The possibility of reversal is not how courts determine motions; instead, they apply sound legal principles to the facts at hand.  Adopting the government's argument for the court to rule based on reversal considerations instead of the law would effect a sea change in criminal procedure.[4]

The Ninth Circuit has made clear that the use of compelled statements before grand juries is just as unconstitutional as their use before petit juries.  In a case involving a police officer coerced into answering questions in an internal affairs investigation by threats of professional repercussions, the grand jury sought to subpoena the report containing those coerced statements.  *In re Grand Jury Proceedings (Kinamon)*, 45 F.3d 343, 344-45 (9th Cir. 1995).  The district court denied the officer's motion to quash reasoning that "a grand jury investigation is not a criminal proceeding and therefore, the compelled statements are not being used against him [Kinamon] when presented to the grand jury." *Id.* at 346.  The Ninth Circuit reversed, holding that "[a] grand jury is no more entitled to use a witness' immunized testimony against him to reach an indictment than is a trial jury permitted to use such testimony to reach its verdict." *Id.* at 348.  Just as the Fifth Amendment prohibits using compelled statements before a petit jury, so too does it prohibit using them before a grand jury.

---

[4] Courts routinely rule on whether an indictment is based on tainted information.  *See, e.g.*, *United States v. Whitmore*, 35 F. App'x 307, 324 (9th Cir. 2002) (describing how the district court held a pre-trial hearing to determine whether witness's tainted testimony was used to return indictment but that government established an independent source of evidence for the indictment); *United States v. Montoya*, 45 F.3d 1286, 1299 (9th Cir. 1995) (holding that the government carried its burden of "proof by a preponderance of the evidence that all evidence utilized in the indictment … was obtained from independent sources and that the … prosecution team had no access to the immunized testimony"); *United States v. Serrano*, 870 F.2d 1, 14-15 (1st Cir. 1989) (noting that district court held pre-trial *Kastigar* hearing on use of tainted information to obtain indictment and hearing appeal of that ruling despite conviction); *United States v. Ratti*, 365 F. Supp. 2d 649, 666 (D. Md. 2005) (ordering an evidentiary hearing on the indictment's evidentiary sources because introduction of evidence derived from proffer session, and distinguishing the Fifth Amendment violation at issue from the ordinary use of incompetent evidence); *see also North*, 910 F.2d at 872-73 (remanding for hearing on whether grand jury witnesses were exposed to tainted information).

5

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

1  Because this grand jury returned an indictment based on compelled statements, the

2  indictment should be dismissed whether or not that error was structural.

3      The prohibition on use of compelled statements before a grand jury would be

4  illusory if consequent petit jury verdicts were sufficient to undo the constitutional

5  violation that occurred in grand jury proceedings.  "Although some challenges to an

6  indictment can be cured at trial—such as presentation of hearsay or other inadmissible

7  evidence to the grand jury—other improprieties threaten the very integrity of the grand

8  jury itself.  … Where an impropriety occurs in the grand jury room itself, the

9  indictment may be tainted.  If an indictment is tainted, the Constitution requires that it

10  be quashed."  *United States v. Zielezinski*, 740 F.2d 727, 731 (9th Cir. 1984).[5]

11      Setting aside the government's proposal to obviate the constitutional prohibition

12  on the use of compelled statements in any part of a criminal case, the government cites

13  no Ninth Circuit cases holding that the use of compelled statements before the grand

---

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[5] *Zielezinski* noted in dicta that the pre-*Kastigar* Supreme Court—interpreting the Fifth Amendment under a fruit of the poisonous tree analysis—permitted grand jury indictments based on fruits of compelled testimony because it equated such fruits with improper evidence gathering.  *See id.* (citing *United States v. Blue*, 384 U.S. 251, 255 (1966) (stating that judicially developed exclusionary rules for "evidence … gained in violation of the accused's rights … assume implicitly that the remedy does not extend to barring the prosecution altogether" because that would be a poor policy choice but noting that the defendant could pursue dismissal below on other grounds).  *Kinamon* clearly requires rejecting this pre-*Kastigar* distinction between coerced statements and immunized testimony and extending the same protections to coerced statements that apply to immunized testimony.  *Kinamon* held in the first instance that the coerced statements at issue were entitled to be treated equally with immunized testimony in the grand jury context.  45 F.3d at 347 ("As a general principle, the Fifth Amendment provides that an individual may not be compelled to answer a question unless, at a minimum, he is shielded from the use of his compelled answers, and any evidence derived therefrom, in any subsequent criminal case in which he is a defendant.  … Indeed, even the government concedes that it 'treats statements made under the circumstances presented in this case as immunized.'").  This question has been addressed directly by *United States v. North* in which the court explained that the *use* of evidence or testimony derived from immunized testimony (not immunized testimony itself) was "the prohibited act [itself]," distinct from the Fourth Amendment exclusionary rule concerns that animated *Blue* and other pre-*Kastigar* cases.  *North*, 910 F.2d at 868-69 ("There is no antecedent or prior wrong to be remedied, but use is a wrong that goes to the quick of the indictment."); *accord United States v. Hampton*, 775 F.2d 1479 (11th Cir. 1985) (holding that the Fifth Amendment required post-conviction dismissal of indictment unless the government could demonstrate that "none of the evidence presented to the grand jury [wa]s derived, directly or indirectly" from the tainted evidence).  The use of evidence derived from compelled statement is directly prohibited by the Fifth Amendment and is—in and of itself—a constitutional violation, not a mere error in the evidence-gathering process.

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

jury is a non-structural defect, curable via a consequent trial, *see* Opp'n at 3-4 (citing cases related to inadvertent misstatements by witnesses' evidence, not violation of a constitutional command). The only case cited by the government involving the use of compelled statements is *United States v. Allen*, 764 F.3d 63 (2d Cir. 2017). Opp'n at 4 n.4. *Allen* held that "an indictment is subject to dismissal if it was procured on the basis of tainted evidence," a question determined by reviewing the grand jury transcript, not the trial transcript. 764 F.3d at 99-100. The *Allen* court considered its prior decision in *United States v. Rivieccio*—which reached the same conclusion the government advocates for here (that the introduction of compelled statement evidence to the grand jury was rendered harmless by a petit jury verdict)—and declared that *Rivieccio* was **no longer good law**. *Id.* at 99. The Second Circuit therefore determined that the indictment had to be dismissed because "Upon review of the evidence and testimony presented to the grand jury in this case, we cannot conclude beyond a reasonable doubt that the grand jury would have indicted [the defendants] without the evidence supplied by [a witness who reviewed compelled statements]." *Id.* at 100.

Finally, the government argues that pre-trial dismissal "makes little sense as a matter of policy" because the government may just re-indict. Opp'n at 4-5. That might be the government's prerogative in response to a pre-trial dismissal (depending on the Court's prejudice ruling), but the mere fact that the government may be permitted to *try* to lawfully indict the defendants does not mean that an unlawful indictment should stand.

The indictments in this case used tainted evidence in violation of the Fifth Amendment, and they should be dismissed. Not one of the government's cited cases holds otherwise.

## B. Dismissal Is Merited by the Indictments' Prohibited Non-Evidentiary Use of Tainted Information

The government orchestrated the Miami stop at the outset of its investigation. At the time, the defendants' connections with Iuliia Zhadko, Viktoria Kauichko, and

Manuk Grigoryan were not solid enough to mention in a summary of the case for agents who would be interrogating the defendants.  When the unlawful interrogation ceased, the government had changed its view to alleging that Ayvazyan was Zhadko, Terabelian was Kauichko, and Grigoryan was under investigation.  Lest there be any doubt what caused this change, the government's lead agent testified under oath two days later: "once CBP stopped [Ayvazyan and Terabelian] for the secondary inspection, we learned that there was a photograph of Iuliia Zhadko on the digital device [in Ayvazyan's possession] and we made the connection that Iuliia Zhadko was, in fact an alias of Richard Ayvazyan."  Oct. 22, 2020 Hr'g Tr. at 23-24, Dkt. 310-6.  Similarly, the same agent stated in a sworn complaint that Kauichko was an alias of Terabelian's based at least in part on the tainted "text messages in which Terabelian [allegedly] us[ed] the identity of Viktoria Kauichko to communicate with others" (Compl. ¶ 41, Dkt. 1).  This development in the government's theory of the case based on tainted information at the investigation's outset are paradigms of impermissible non-evidentiary use of tainted information.

The Ninth Circuit has repeatedly held that the Fifth Amendment prohibits "non-evidentiary use" of information derived from compelled statements.  *See United States v. Benson*, No. 12-cr-480, 2016 WL 215233 (N.D. Cal. Jan. 19, 2016) (analyzing Ninth Circuit law.  The defendants have collected citations and summarized the prohibited non-evidentiary uses: pre-trial strategy "includ[ing] but [] not limited to, such things as decisions about the scope and nature of the investigation, about what witnesses to call (and in what order), about what questions to ask (and in what order), about what lines of defense to anticipate in presenting the case in chief, and about what to save for possible rebuttal"[6]; using tainted information to "focus the investigation, decide to initiate prosecution, [or] interpret other evidence"[7]; refusing to plea bargain based on

---

[6] Dkt. 338 at 10 (quoting *United States v. Danielson*, 352 F.3d 1054, 1074 (9th Cir. 2003).

[7] *Id.* (quoting *United States v. Dudden*, 65 F.3d 1461, 1467 (9th Cir. 1995).

8

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

1   tainted information; identifying witnesses or interviewing them based on tainted
2   information; or building a case in any way based on tainted information.[8]  To be blunt,
3   there is a reason that *Kastigar* issues arising early in an investigation (or even late,
4   sometimes) result in either dismissal or disqualification.  The scope of prohibited use is
5   vast.

6        In a futile attempt to escape the Ninth Circuit's prohibition on non-evidentiary
7   use, the government argues that "[t]he Ninth Circuit has not been entirely clear on the
8   type of non-evidentiary uses of compelled information" that are prohibited.  Opp'n at 6
9   n.6.  To support this statement, the government compares *Dudden*—a Ninth Circuit
10  case in which the court held that "The government may not use [compelled] statements
11  to uncover other incriminating evidence, focus the investigation, decide to initiate
12  prosecution, interpret other evidence, or otherwise plan trial strategy"—with *United*
13  *States v. Serrano*, which the government claims is a Ninth Circuit case limiting non-
14  evidentiary use.  The first problem is that ***Serrano* is not a Ninth Circuit case**.

15       Contrary to the government's brief, *Serrano* is a First Circuit case on appeal from
16  the District of Puerto Rico.  *See* 870 F.2d 1 (1st Cir. 1989).  The First and Second
17  Circuits have been reluctant to extend *Kastigar* protections to non-evidentiary use,
18  according lesser protections than the Ninth, Third, and Eighth Circuits by holding that
19  if non-evidentiary use is limited to "tangential influence" on a prosecutor's thought
20  processes, there is no Fifth Amendment violation.  *See* Douglas Turner, *Non-*
21  *Evidentiary Use of Immunized Testimony: Twenty Years After Kastigar and the Jury Is*
22  *Still Out*, 20 Am. J. Crim. L. 105, 115-28 (1992) (summarizing cases by circuit).  In the
23  Ninth, Third, and Eighth Circuits, on the other hand, it is settled law that non-
24  evidentiary use of tainted information is prohibited.  *See supra* (summarizing Ninth
25  Circuit law); Dkt. 338 at 8-10 (summarizing Ninth Circuit law).  Although the
26  defendants do not ascribe any ill-intent or intentional purpose to mislead the Court by

27

28  _____
    [8] *Id.* at 8 (quoting *United States v. Montoya*, 45 F.3d 1286, 1293 (9th Cir. 1995)).

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

virtue of the government's erroneous submission relying on *Serrano*, it should nonetheless be disregarded as incorrect.

Notwithstanding the government's erroneous citation and the First Circuit's view of *Kastigar* protections, the district court proceedings in *Serrano* are nothing less than devastating to the government's opposition. The district court proceedings in *Serrano* involved two different cases against an overlapping set of defendants and facts: 85-cr-24 (alleging fraud) and 85-cr-449 (alleging extortion). *Id.* at 13. Both the fraud and extortion investigations began in February 1984 and continued for seven months before the lead agent was exposed to the defendant's compelled statements. *See United States v. Tormos-Vega, Boscio, & Serrano*, 656 F. Supp. 1525 (D.P.R. 1987); *United States v. Serrano, Boscio, & Stamps*, 680 F. Supp. 58 (D.P.R. 1988). The district court judges held pre-trial *Kastigar* hearings in both cases, taking testimony and examining the grand jury transcripts to determine whether the indictment was obtained using tainted information. *Id.* The district court judges reached different outcomes because of the different facts presented by the two levels of prohibited use of tainted information: the extortion case was dismissed and the fraud case remained intact. The differences that merited these different outcomes support the defendants' argument here:

|  | **Fraud Case** | **Extortion Case** |
|---|---|---|
| **Citation** | *United States v. Serrano, Boscio, & Stamps*, 680 F. Supp. 58 (D.P.R. 1988) | *United States v. Tormos-Vega, Boscio, & Serrano*, 656 F. Supp. 1525 (D.P.R. 1987) |
| **Pre-Taint Investigation** | *Seven months.<br>*Interviews of numerous witnesses memorialized in "extensive" pre-taint reports "exhaustively detail[ing]" the defendant's transactions.<br>*One voluntary statement and one voluntary interview from the defendant, both of which "thoroughly" and "extensively" discussed the relevant transaction.<br>*"[T]he case was complete before [the compelled statements], and the evidence presented to the grand jury was [the agent's] | *Seven months.<br>*Received "thousands and thousands of documents," but "still reviewing [them]."<br>*Still needed to finish reviewing documents and conducting interviews; uncertain whether more subpoenas would be necessary.<br>*"[H]ad a general idea of the case." |

10

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

| | | |
|---|---|---|
| | testimony concerning the contents of reports of witness interviews … conducted prior to [the compelled statements]." | |
| **Exposure to Taint** | *Public immunized statements to legislative committee that agent watched 3-4 times.<br><br>*"Nothing came out in reference to, or affecting the instant case." | *Public immunized statements to legislative committee that agent watched 3-4 times.<br><br>*Agent testified that "he only used the immunized testimony to 'corroborate' what he already had in the case<br><br>*Learned about a meeting among co-conspirators, which he later testified to. |
| **Post-Taint Investigation** | None referenced | Witness interviews |
| ***Kastigar* hearing** | Held pre-trial; involved testimony from lead agent and prosecutor; evidence regarding investigation and grand jury transcripts; "complete prosecutorial report," all interview reports, all subpoenas (all of which was pre-taint) | Held pre-trial; involved testimony and evidence regarding investigation and grand jury transcripts |
| **Holding** | **Motion denied.**<br><br>"[E]ach step of the investigative chain" was proven to be fully documented and based on prior independent sources. | **Indictment dismissed**.<br><br>"Although it appears that the FBI investigation had amassed a significant amount of raw data which inculpated Serrano prior to his [compelled testimony], the agent … us[ed] the immunized testimony as a means of advancing, organizing and gaining insight into voluminous materials, mostly unread documents, in his files related to complex financial transactions." |

The government did not appeal or otherwise dispute the ruling in *Tormos-Vega*, and the case was dismissed before trial.

Comparing the facts of *Serrano* and *Tormos-Vega*, it is obvious which case is closer to the facts at bar.  S.A. Palmerton testified to the importance of the compelled statements two days after they were made.  The government then repeatedly accessed them and prioritized their review above all other digital devices in this case. *Cf. Tormos-Vega*, 656 F. Supp. at 1533 ("[A] case agent, such as Garcia, who

11

deliberately seeks, has continuous access to, and immerses himself in the protected testimony at a point in his investigation when he has only a general idea of the case, must have done this aware of its value and must have persisted in his efforts because he was obtaining investigative leads and advancing his investigation."). The government used the compelled statements to identify witnesses including the person who ultimately became their C.I., and used them to interview those witnesses. *Cf. id.* at 1535 (finding it "highly probable" that witness interviews of pre-existing targets were tainted by indirect use of compelled statements because the targets were first interviewed after agent's exposure to compelled statements). As in *Tormos-Vega*, tainted information was used by S.A. Palmerton and the government to interpret evidence and focus the investigation, resulting in tainted indictments. As in *Tormos-Vega*, the resulting defective indictment should be dismissed.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD CONTINUE THE TRIAL FOR A PRE-TRIAL *KASTIGAR* HEARING

The defendants' request in the alternative for a continuance is based on the change in circumstances as a result of the Court's May 21 Order. That Order made clear that the Court is prepared to honor the defendants' request to proceed to trial on June 15, but that the same request is in tension with their request for a pre-trial *Kastigar* hearing. As stated in Dkt. 381, the defendants respectfully consent to and request that the Court continue trial approximately three weeks in order to hold a pre-trial *Kastigar* hearing because such a hearing is both consistent with precedent and would avoid unnecessary prejudice.[9]

### A.   A Pre-Trial Hearing is Consistent With Precedent Including *United States v. Kilroy*

In their May 17 and May 19 briefs, the defense and government cited various cases considering whether a pre-trial or post-trial *Kastigar* hearing is the norm. While

---

[9] The movants believe that all defendants other than those who plead guilty will consent to such a continuance, but to the extent any defendants unexpectedly object, the movants are amenable to a severance.

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

1  the defendants maintain that a pre-trial hearing is the norm in most Ninth Circuit courts,

2  *see, e.g.*, *Whitmore*, 35 F. App'x at 324 (noting pre-trial *Kastigar* hearing); *Benson*,

3  2016 WL 215233 (pre-trial *Kastigar* hearing), they accept that there is not one universal

4  practice and circuit courts typically defer to district courts.  That is why the defendants

5  agree with the Court that it is significant that the D.C. Circuit went out of its way to

6  endorse the practice of the district court in *United States v. Kilroy*.  That practice was to

7  bifurcate the Kastigar hearing into two parts: (1) a pre-trial hearing regarding prohibited

8  use of tainted information to obtain a grand jury indictment, *see* 27 F.3d 679, 686-87

9  (D.C. Cir. 1994); 769 F. Supp. 6, 8 n.2, 10 n.7 (D.D.C. 1991), and (2) a post-trial

10  hearing regarding prohibited use of tainted information at trial, *see* 27 F.3d at 687;

11  *accord United States v. Gallo*, 863 F.2d 185, 190 (2d Cir. 1988) (case cited by the

12  government in which the court, Judge Weinstein presiding, bifurcated *Kastigar* hearing

13  into a pre-trial proceeding and a post-trial proceeding).

14       The government does not even address *Kilroy* in its brief.  Instead, the

15  government argues that the Court should endorse the government's error in hopes that it

16  may end up being harmless.  Setting aside the philosophical quagmire of intentionally

17  inviting error based on the promise that it may be harmless, the government completely

18  misconstrues "harmless error" in this context.  As noted *supra*, *Serrano* is not actually a

19  Ninth Circuit case and, in any event, involves issues surrounding "tangential[]

20  influence[]" from an agent's off-hand reference to the defendant's immunized

21  testimony about activities that "did not concern the indictment in [that] case."  870 F.2d

22  at 16.  Similarly, the government cites to a trio of Second Circuit cases: *United States v.*

23  *Connelly*, a 2019 opinion conspicuously cited without reference to the fact that the

24  court actually held that a pre-trial *Kastigar* hearing was necessary to determine

25  "whether the testimony of anyone who did appear before the grand jury" was affected

26  by exposure to tainted information, Order & Opinion at 20, No. 16-cr-370, Dkt. 145

27  (S.D.N.Y. Oct. 19, 2017) (emphasizing that this required inquiry into their discussions

28  with an agent tainted by knowledge of the compelled statement); *United States v. Gallo*

13

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

regarding a single, inadvertent mention of compelled statements "of negligible significance" that did not disadvantage the defendant, 859 F.2d 1078, 1082 (2d Cir. 1988); and *United States v. Allen* in which the Second Circuit reversed a conviction based on the prohibited use of tainted information to shape an indictment, 864 F.3d 63, 100 (2d Cir. 2017).  While the Second Circuit may be more reluctant to credit non-evidentiary use theories than the Ninth Circuit, these cases do not aid the government's argument.  As the Second Circuit held in the *Allen* case cited by the government, "an indictment is subject to dismissal if it was procured on the basis of tainted evidence," *id.* at 98, and that fact will not change based on a subsequent trial.

### B.   The Defendants Will Be Prejudiced By Proceeding to Trial Without Resolving the Indictments' Uses of Tainted Information

The defendants' opening motion (Dkt. 381 at 11-17) established that Ayvazyan and Terabelian will be prejudiced by proceeding to trial on a tainted indictment.  The defendants will be forced to choose whether they (a) give up the element of surprise and present their best defense while the government uses tainted information, or (b) hope that they are correct that the vacatur of any conviction will be necessary and hold back their defense for a potential second trial.[10]  This effectively removes one of the few advantages accorded to a defendant in the criminal justice system: the right not to disclose the defense until trial.  While *Kastigar* protections are meant to ensure that a defendant is left "in substantially the same position" as if they had been afforded their Fifth Amendment rights, *Hampton*, 775 F.2d at 1488, Ayvazyan and Terabelian have been given no choice but to limit their own defense in order to preserve their *Kastigar* rights.  A pre-trial *Kastigar* hearing on issues unrelated to trial evidence would avoid that result.

---

[10] Notwithstanding the potential downside risk of a subsequent trial, defendants maintain that the government is not permitted to bring another indictment following a post-trial *Kastigar* dismissal.  *See United States v. Allen*, 864 F.3d 63, 100 (2d Cir. 2017).

14

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

The government makes no serious argument that a *Kastigar* hearing should be delayed until after trial. It attempts to muddy the waters regarding the definition of non-evidentiary use, but as discussed above, it does so by citing out-of-circuit cases from a circuit that does not have a similar body of law to the Ninth Circuit. The government claims that challenges to non-evidentiary use are "unworkable" because they may touch on decisions related to trial strategy, but that ignores the half of non-evidentiary use that is "pre-trial strategy." *Danielson*, 352 F.3d at 1074. If the government has already used tainted information to interpret evidence, focus its investigation, identify witnesses, or pursue investigatory leads in furtherance of the prosecution, then the government has violated the Fifth Amendment and dismissal is required. Nothing will unring that bell. There is no need to drag jurors into court and hold a two-week COVID-era trial to reach that conclusion.

Deciding whether non-evidentiary use of the tainted evidence warrants dismissal has the potential to eliminate the need for a trial altogether. That is the ultimate act of conserving limited court resources and promoting judicial efficiency.[11]

## III.   CONCLUSION

The government unconstitutionally coerced two suspects to provide compelled statements at the outset of its investigation. The government then used those compelled statements and tainted information derived therefrom to develop its case and return two indictments. The government did not enact prophylactic measures or walls; to the contrary, it prioritized review of the tainted evidence and testified to the importance of the tainted evidence in forming the government's charging theory. The indictments are tainted and should be dismissed. If a hearing is necessary, then a three-week continuance should be granted so that hearing can be held before trial with the benefit of the discovery in the proposed order (Dkt. 381-1).

---

[11] The government's new desire to proceed expeditiously to trial stands in stark contrast to its two previous requests for a continuance (that were both granted over the defendants' objections). *See* Dkt. 96, 264.

15

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE

Dated:   June 7, 2021

Respectfully submitted,

*/s/ Ashwin J. Ram*
Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Meghan L. Newcomer (*pro hac vice*)
*mnewcomer@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

*/s/ John L. Littrell*
John L. Littrell (SBN 221601)
*jlittrell@bklwlaw.com*
Ryan V. Fraser (SBN 272196)
*rfraser@bklwlaw.com*
**BIENERT KATZMAN LITTRELL WILLIAMS, LLP**
601 W. 5th Street, Suite 720
Los Angeles, CA 90071
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

*Counsel for Defendant Marietta Terabelian*

## SIGNATURE ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(i), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

16

REPLY IN SUPPORT OF MOTION TO DISMISS OR CONTINUE