John L. Littrell (SBN 221601)
jlittrell@bklwlaw.com
Ryan V. Fraser (SBN 272196)
rfraser@bklwlaw.com
**BIENERT KATZMAN LITTRELL WILLIAMS LLP**
601 W. 5th Street, Suite 720
Los Angeles, CA 90071
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

Attorneys for Defendant MARIETTA TERABELIAN

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD AYVAZYAN, MARIETTA TERABELIAN, ARTUR AYVAZYAN, TAMARA DADYAN, MANUK GRIGORYAN, ARMAN HAYRAPETYAN, EDVARD PARONYAN, and VAHE DADYAN,<br><br>Defendants. | Case No.  2:20-cr-579-SVW<br><br>Hon. Stephen V. Wilson<br><br>**MARIETTA TERABELIAN'S REPLY TO GOVERNMENT'S OPPOSITION TO HER MOTION TO SUPPRESS OR EXCLUDE JAIL CALLS**<br><br>Hearing Date: June 14, 2021<br><br>Trial Date: June 15, 2021 |

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I.  Introduction

Marietta Terabelian made repeated requests for access to an attorney when she was being investigated and arrested by Customs and Border Protection ("CBP") at Miami International Airport on Monday afternoon, evening, and night on October 19, 2020. CBP ignored or refused them all and arrested her in part based on evidence they obtained by coercing her cellphone passcode in violation of the Fifth Amendment. Next, violating *McNabb-Mallory* and Federal Rule of Criminal Procedure 5(a)(1)(A)'s prompt-presentment requirement, the government held Terabelian in jail until Wednesday afternoon. As she waited, she reached out by phone for help securing representation by counsel in calls in which she also made ambiguous statements that the government now seeks to admit to prove that she is guilty.

The Court should not allow the government to perfect the denial of so many of Terabelian's rights by admitting these calls at trial. *Kastigar*, *McNabb-Mallory*, *Doyle/Kallin*, and Federal Rule of Evidence 403 all call for suppression or exclusion. The government's brief opposing her motion fails to show otherwise.

## II.  Reply arguments

### A. Because the government arrested Terabelian in part based on the contents of her cellphone, her jail calls are inadmissible under *Kastigar*.

The government contends *Kastigar v. United States*, 406 U.S. 441 (1972), does not preclude using Terbelian's jail calls at trial because, before coercing Terabelian's cellphone passcode, it already knew the Viktoria Kauichko identity was involved in the apparent scheme under investigation, *see* Opp. Br. 7 ("the government had developed substantial evidence about the use of the fake identity "'Viktoria Kauichko'"), and Terabelian was already suspected of participating. *Id.* at 8. The Kauichko payment card

found in Terabelian's possession at the airport, created "more than sufficient independent probable cause" to arrest Terabelian in Miami, the government says.[1] *Id.*

The government is mistakenly equating the *Kastigar* burden with a Fourth Amendment fruit-of-the-poisonous-tree analysis. *See* Brief in Support of Ayvazyan and Terabelian's Joint Motion for *Kastigar* Hr'g, dkt. 338, at 8–17 (brief's page numbering) (pp. 15–24 of 25 by the CM/ECF ribbon's page numbering); *e.g.*, *Kastigar*, 406 U.S. at 453 (barring "any information directly or indirectly derived from" evidence obtained through coercion in violation of the Fifth Amendment), 460 ("heavy burden" on the government), 461–62 (requiring the government to prove that all its evidence was derived "from legitimate independent sources" that must be "wholly independent" of the coercion and coerced evidence). Under *Kastigar*, "information derived from compelled testimony may not [even] be used in . . . 'interpreting evidence [or] otherwise generally [in] planning trial strategy.'" *United States v. Danielson*, 325 F.3d 1054, 1072 (9th Cir. 2003), as amended (May 19, 2003) (Sixth Amendment violation, but Ninth Circuit explicitly followed *Kastigar* framework) (quoting *United States v. Crowson*, 828 F.2d 1427, 1430 (9th Cir. 1987)).

The government fails to meet this burden with regard to the jail calls because it took the action of arresting Terabelian by relying on evidence from her cellphone. After

---

[1] The government's brief states that Terabelian did not move to suppress the Kauichko card found in her possession. Terabelian disagrees. Terabelian previously joined the motion filed by Richard Ayvazyan to suppress evidence from the Miami International Airport encounter under the Fourth and Fifth Amendments, dkt. 153, which the Court acknowledged, dkt. 296 at 3 n.2, but the Court construed Terabelian not to have moved to suppress physical evidence from her wallet. *Id.* at 17 n.14, 19 n.16.

To any extent necessary to complete her request and the record, Terabelian renews her joinder and moves, pursuant to the Fourth and Fifth Amendments, to suppress all physical evidence obtained from her at Miami International Airport, based on CM/ECF document numbers 130, 135, 136, 153, 208, 209, and all supporting declarations and exhibits thereto.

all, it is clear that FBI SA Palmerton and the CBP officers involved in investigating and arresting Terabelian at Miami International Airport relied significantly on the evidence from Terabelian's cellphone in justifying her arrest. *See* Customs and Border Protection ("CBP") Report by Officer Theodora Brewster ("Brewster Report), Ex. D (under seal) at p. 3 of 4 to Fraser Decl. in Support of Mot. to Suppress, dkt. 136 ("Information revealed during the . . . electronic media inspection confirmed that [Terabelian] was taking on the identity of 'Viktoria Kauichko' as discovered on the Credit Card in her wallet. This was evidence via messages where the subject was referred to as 'Viktoia Kauichko.'"). That is why FBI SA Palmerton made a point of noting it in his Statement of Facts Constituting the Offense, filed on October 20, 2020, in support of the Complaint. Dkt. 1 at 17–18 of 19 (CM/ECF pagination) ("CBP also conducted a manual search of TERABELIAN's cellphone for digital contraband and discovered text messages in which TERABELIAN appeared to be using the identity of 'Viktoria Kauichko' to communicate with others."). In CBP Officer Theodora Brewster's report, meanwhile, she noted that Terabelian stated during her interrogation that Ayvazyan had put the Kauichko card in her belongings and that Terabelian had not used the Kauichko card. That is undoubtedly why, from all the cellphone evidence reviewed, Officer Brewster noted *only* her interpretation that the cellphone evidence suggested Terabelian apparently using the Kauichko identity. *See* Brewster Report at p. 3 of 4. Thus, it is evident that, to CBP, the cellphone evidence was important to interpret the payment card and link Terabelian with other Kauichko evidence.

  *Kastigar* and its progeny forbid the government from using the coerced cellphone evidence in this way. *See, e.g.*, *Danielson*, 325 F.3d at 1072 (barring the use of evidence obtained through a Fifth Amendment violation even in "interpreting [other] evidence"). Here, because Terabelian's coerced cellphone evidence was a substantial contributing factor motivating her arrest, her jail calls are inadmissible under *Kastigar*.

### B. The jail calls should be suppressed under the *McNabb-Mallory* rule because they occurred during an unreasonable presentment delay of greater than six hours.

Opposing suppression under *McNabb-Mallory*, the government claims that (1) the rule does not apply because the calls at issue were not elicited by interrogation; (2) Terabelian was not arrested until 3:00 a.m., so the calls occurred within the six-hour safe harbor of § 3501(c); and (3) the presentment delay was reasonable. In each respect, the government is incorrect.

#### 1. Because Terabelian was interrogated, 18 U.S.C. § 3501(d) does not insulate her jail calls from suppression; moreover, interrogation need not immediately precede statements to be suppressed under the *McNabb-Mallory* rule.

The government asserts that under 18 U.S.C. § 3501(d), there can be no *McNabb-Mallory* suppression because no one was interrogating Terabelian during the jail calls. Opp. Br. 10. That provision states: "Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention." § 3501(d).

First, even assuming for the sake of argument that § 3501(d) did limit the *McNabb-Mallory* rule, which it does not, for the reasons explained below, that would not save Terabelian's jail calls from suppression, because by its terms, § 3501(d) only carves out "confession[s] made or given voluntarily . . . without interrogation by anyone." Terabelian *was* interrogated—at great length. *See* Terabelian Decl., dkt. 139. Indeed, the government subjected her to detention, arrest, and interrogation at Miami International Airport that lasted several hours, extending until after regular court hours on October 19, 2020. Ayvazyan and Terabelian's flight arrived approximately 3:30 or 3:00 p.m., *see* Order Re Motions to Suppress, dkt. 296 at 2 ("around 3:30 p.m."); Richard Ayvazyan Decl. ¶ 3 ("approximately 3:00 p.m."), dkt. 134.; yet her interrogation, which began that afternoon, *see* dkt. 296 at 16; Ayvazyan Decl. ¶¶ 15–19, continued until almost 11:00

p.m. *See* dkt. 136 at 11 (brief's page numbering), 15 of 20 (CM/ECF page numbering). Meanwhile, the business hours of the local United States District Court were from 8:30 a.m. to 5:00 p.m. U.S. Dist. Ct., S.D. Fla. Website, https://www.flsd.uscourts.gov/court-hours-holidays (last visited June 6, 2021). Because Terabelian *was* interrogated, § 3501(d) would not insulate her jail calls from suppression even if § 3501(d) did limit the *McNabb-Mallory* rule.

But, second, § 3501(d) does not place limitations on *McNabb-Mallory* claims. *See Corley v. United States*, 556 U.S. 303, 313–14 (2009). In *Corley*, which directly addressed the impact of the entire § 3501 on *McNabb-Mallory*, the Supreme Court sided with the petitioner's position that *only subsection (c)* affected *McNabb-Mallory*. *See id.* (setting forth Corley's argument that "§ 3501 touches [on *McNabb-Mallory*] only in subsection (c)" and deciding that "Corley has the better argument").

Consequently, the pre-*Corley* out-of-circuit cases the government offers as support for the proposition that interrogation must have immediately preceded the confession are unavailing. *See* Opp. Br. 10–11 (citing *United States v. Colon*, 835 F.3d 27 (2d Cir. 1987), *United States v. Fullwood*, 86 F.3d 27, (2d Cir. 1996), and *United States v. Lambros*, 564 F.2d 26 (8th Cir. 1977)). Even before *Corley*, the Second Circuit did not support the government's position uniformly. *See United States v. Perez*, 733 F.2d 1026, 1031 (2d Cir. 1984) (deeming it "clear" under § 3501(c) that "if a defendant confesses more than six hours after the time of arrest and has not yet been arraigned, the delay *in and of itself* may justify suppression" unless the delay was reasonable (emphasis added)).

More importantly, the Ninth Circuit has emphasized repeatedly that the *McNabb-Mallory* rule exists not only to avoid secret interrogations and have probable cause determined promptly, but also "to insure that a defendant is brought before a judicial officer as quickly as possible so that he may be advised of his rights." *United States v. Liera*, 585 F.3d 1237, 1243 (9th Cir. 2009), quoted in *United States v. Torres Pimental*, 755 F.3d 1095, 1104 (9th Cir. 2014). In a felony case such as this, the mandatory judicial advisement of rights at the initial appearance includes bail conditions, the right to retain

or request the court appoint counsel, the right "not to make a statement, and [to notice from the judge] that any statement made may be used against the defendant"; the judge also "must allow the defendant reasonable opportunity to consult with counsel." Fed. R. Crim. P. 5(d)(1)(B), (C), (E), (2). Having that information or securing release on bail would have prevented Terabelian from making the statements attributed to her in these calls. Terabelian was not Mirandized at arrest and so did not receive the admonitions at that time, either. Nor did she receive access to counsel even though she requested it repeatedly during her post-arrest interrogation.

Thus, the government's *Miranda* violations and unreasonable delay in presentment caused the prejudice she would suffer from admitting the call recordings. This very case illustrates why limiting the suppression remedy for presentment delay to instances where interrogation immediately preceded the statements would undermine a purpose of the *McNabb-Mallory* rule that the Ninth Circuit has repeatedly reinforced. Therefore,

> [t]he rule as it stands today is relatively simple to apply. When a criminal defendant brings a suppression motion based on *McNabb-Mallory*, the district court looks to see whether the confession was obtained within six hours of arrest. If so, *McNabb-Mallory* does not bar its admission. (Of course, the confession could be inadmissible for other reasons.) If, however, the "confession occurred before presentment and beyond six hours, . . . the court must decide whether delaying that long was unreasonable or unnecessary . . . and if it was, the confession is to be suppressed."

*United States v. Gowadia*, 760 F.3d 989, 993 (9th Cir. 2014) (quoting *Corley*, 556 U.S. at 322); *see also United States v. Studley*, 783 F.2d 934, 937 n.2 (9th Cir. 1986) ("the normal remedy for violation of Rule 5(a) is suppression of evidence obtained during the unreasonable delay"); *Bayless v. United States*, 381 F.2d 67, 70 (9th Cir. 1967) ("All that *McNabb*, and *Mallory*, decided was that confessions or admissions obtained from a prisoner during a period of unnecessary delay could not be used as evidence against him at his trial.").

Reflecting this, in *Torres Pimental*, 755 F.3d at 1103–04, the Ninth Circuit suppressed statements *for unreasonable presentment delay* where the defendant

requested to give a confession after having invoked the right to counsel when first questioned after arrest. *See id.* at 1099. The government is correct that the opinion refers to his second interaction with the agents as interrogation, even though he initiated it and even though that is not how the government argued the case to the Ninth Circuit. *See* Appellee's Br., *United States v. Torres Pimental*, 2012 WL 5865617, at, *e.g.*, 15 ("Nothing Agent Aradanas did was for the purpose of extracting a confession . . . ."). But *Torres Pimental* suppressed for unreasonable presentment delay regardless of interrogation. *See id.* This is evident from its statement of the *McNabb-Mallory* rule, which included no interrogation requirement: "Under the *McNabb-Mallory* rule, a confession is inadmissible if it is 'given after an unreasonable delay in bringing [an arrested person] before a judge.'" *Id.* at 1099 (quoting *Corley*, 556 U.S. at 303, 306). And it is evident from *Torres Pimental* explaining its reversal of the denial of the motion to suppress by emphasizing that the *McNabb-Mallory* rule has the purpose of insuring the quickest possible judicial advisement of rights. *Id.* at 1104 (quoting *Liera*, 585 F.3d at 1243).

Therefore, suppression of a statement under *McNabb-Mallory* does not require that interrogation immediately preceded it. Terabelian's jail calls must be suppressed if the occurred during an unreasonable presentment delay, which they did, as explained further below.

### 2. The calls occurred outside the safe harbor of § 3501(c) because Terabelian was arrested more than six hours before the first jail call.

The government claims that the jail calls—the earlier of which was placed at 8:29 a.m. on October 20, 2020—occurred within the six-hour safe harbor of § 3501(c). The government gets the math to work for this with the conclusory assertion that "Defendant was arrested at 3:00 a.m.," Opp. Br. 13, which comes from an FBI 302 report that two FBI agents arrested Terabelian at Miami International Airport "at approximately 3:00 a.m." Dkt. 418-2.

It should go without saying that the time of an arrest depends on the facts and the law, not the conclusory assertions of the officers involved.[2] Here, the Court previously found—for good reason—that Terabelian was in custody for *Miranda* purposes under Eleventh (as well as Ninth) Circuit law when her cellphone passcode was coerced by CBP. *See* Order, dkt. 296, at 17; dkt. 136 at 11 of 20 (CM/ECF page numbering) (discussing custody determination); dkt. 209 at 10–12 of 23 (CM/ECF page numbering) (same). The Eleventh Circuit standard for "whether a suspect is in custody turns on whether restrictions on the suspect's freedom of movement are 'of the degree associated with formal arrest.'" *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996) (citation omitted); dkt. 296 at 14–15 (citing *Moya* for this standard). Given that Terabelian was in custody for *Miranda* purposes as of the coercion of the cellphone passcode, she was also under arrest then. *See id.* Objectively assessed, then, she was under arrest long before midnight on October 19, 2020. *See* Brewster Report at p. 4 of 4 (cellphone review was complete by approximately 9:00 p.m.).

Therefore, the jail calls of 8:29 and 8:35 a.m. on October 20, 2020, did not occur within six hours of the actual arrest time, which was on October 19. (Terabelian's motion referred to the arrest as having occurred "no later than 1:45 a.m.," dkt. 393 at 10, because the Court's suppression order referred to "approximately 1:45 a.m." as the time when the defendants were "informed that they were being arrested." Dkt. 296 at 2. Here, the exact time of the arrest is not material because there is no serious argument that it was as late as 2:30 a.m. on October 20 so as to fall within the six-hour safe harbor.) This leaves only to determine whether the delay in presentment was reasonable.

---

[2] Many law-enforcement officers are trained to deny suspects are under arrest, in a strategem for wider latitude in extracting statements. *See* Charles D. Weisselberg, *Mourning* Miranda, 96 Cal. L.Rev. 1519, 1542–44 (2008); Charles E. Riley III, *Finetuning Miranda Policies, FBI Law Enforcement Bull.* 23, 24–25 (1985), cited in *Smith v. Clark*, 804 F.3d 983, 986 (9th Cir. 2015) (Fletcher, J., dissenting).

### 3. The presentment delay was not reasonable.

Because the statements in question were made more than six hours after arrest and before presentment, under *Corley*, the Court must next decide whether, "considering the means of transportation and the distance to be traveled to the nearest available magistrate," delaying from the night of Monday, October 19, 2020, until the following Wednesday afternoon with no intervening holiday was reasonable. *United States v. Valenzuela-Espinoza*, 697 F.3d 742, 749 (9th Cir. 2012).

The delay in Terabelian's case was unreasonable. To counter this, the government submits an exhibit from the U.S. Attorney's Office in the Southern District of Florida showing that the Southern District of Floria had planned in advance not to conduct initial appearances on October 20, 2020.[3] This cannot establish reasonableness, any more than a 10:30 a.m. paperwork requirement could in *Valenzuela-Espinoza*.

There, a Tucson court policy required that "paperwork for initial appearances" be available for the duty magistrate by 10:30 a.m. on the morning of the appearance, absent "exceptional circumstances" which were not explained. *Id.* Inability to meet this paperwork requirement did not make the defendant's presentment delay reasonable. *Id.* at 750. The Ninth Circuit explained various ways that such a policy could be manipulated to the detriment of the rights protected by Rule 5 and McNabb-Mallory, concluding that "[i]t is not the longstanding principle embodied in *McNabb-Mallory* that must give way to local paperwork needs, but the local paperwork policy that must be tailored to the requirements of *McNabb-Mallory* . . . ." *Id.* at 751.

Similarly here, the Southern District of Florida's apparently planned dark day on the non-holiday of October 20, 2020, was not reasonable. The District has sixteen

---

[3] Pursuant to Federal Rule of Criminal Procedure 26.2, Terabelian requests production of all statements of declarant AUSA Paetty and the out-of-court declarant from the Southern District of Florida U.S. Attorney's Office related to the request for exhibit 2, its significance, and the Southern District of Florida court schedule. *See* Paetty Decl. ¶ 3 (explaining he obtained the calendar from the Southern District of Florida U.S. Attorney's Office).

magistrate judges, U.S. Dist. Ct., S.D. Fla. Website, https://www.flsd.uscourts.gov/magistrate-judges (last visited June 7, 2021), four federal courthouses in Miami, and another courthouse only approximately 28 miles away in Fort Lauderdale. *Id.* at https://www.flsd.uscourts.gov/miami-courthouses. There was no disaster or inclement weather involved, and, given the advance planning not to conduct initial appearances on October 20, in the words of *Valenzuela-Espinoza*, the Southern District of Florida had the time and obligation to "tailor" its schedule to the requirements of *McNabb-Mallory* to conduct Terabelian's initial appearance. Indeed, none of the delay reasons acknowledged by the caselaw in the government brief at page 15 comes close to a magistrate planning a day off in advance and failing to get coverage from any of fifteen colleagues. The more than thirty-six-hour delay in presenting Terabelian to a magistrate was unreasonable.

### C. Alternatively, the calls should be excluded under Federal Rule of Evidence 403 because of unfair prejudice and the fact that admitting the calls would necessitate a time-consuming mini-trial over the ambiguous phrases the government seeks to use.

The government argues the jail calls should be admitted over Terabelian's Rule 403 objections because of the purportedly high probative value of the reference to getting "caught" and the requests to "clean the house." The government also says ambiguity goes to weight, not admissibility. Both premises are wrong.

First, the ambiguity does go to admissibility because it creates the need for extrinsic evidence. Given the extremely damning interpretation advocated by the government—which is all that Terabelian "acknowledge[d] in her motion," Opp. Br. 18—a mini-trial with multiple defense witnesses who can shed light on the intended meaning of these phrases would be the only way to prevent extreme and unfair prejudice to Terabelian from the possibility of the jury adopting the government's interpretation without considering other evidence of the intended meaning. *See* Fed. R. Evid. 403 (dangers counting against admission include "unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time"). These witnesses would be in

addition to the government witnesses already required to lay the foundation that Terabelian made the calls as a precondition to relevance and to establish the proper translation from Armenian into English.

Second, the ambiguity does reduce the remarks' probative value. Because the remarks are not clearly an admission or a request to conceal or destroy evidence, the jury has no way to draw the inference of consequence—Terabelian's actual subjective intent—without significant extrinsic evidence. If the remarks were unambiguous, that would not be so. Further, although the government suggests that probative value is discounted for other available evidence only when the adverse party offers to stipulate to an element, that is not the law. *See, e.g.*, *United States v. Sine*, 493 F.3d 1021, 1035 (9th Cir. 2007) (admitting the evidence that led to judicial findings of fact counted against admitting the judicial opinion itself). Here, the government's purported evidence of Terabelian putting cash in the bushes at her home as the search warrant was about to be executed accomplishes a substantially similar evidentiary purpose to the jail calls. *See* Gov.'s Opp. to Mot. to Suppress, dkt. 188, at 1 (brief page numbering) (government's description of event).

To the extent the Court is left with a balance between the risk of mini-trial, on the one hand, and the calls' discounted probative value, on the other, the additional unfair prejudice from exposing to the jury Terabelian's detention in jail tips the decision against admitting the jail calls. Of course Terabelian could not be made to stand trial in jail clothes because of the unfair prejudice that would create, even though courts can give the same instruction to the jury to disregard the jail clothing. *See Estelle v. Williams*, 425 U.S. 501, 503–04 (1976) ("To implement the presumption [of innocence], courts must be alert to factors that may undermine the fairness of the fact-finding process"; therefore, "[c]ourts have, with few exceptions, determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system" (footnote omitted)). Here, similarly, admitting calls that show she was in jail shortly after the Miami airport encounter with

CBP leads to a strong inference of guilt on an impermissible basis, which undermines the presumption of innocence in a way that a limiting instruction cannot cure because of human psychology.

In addition, with Terabelan's requests for assistance finding an attorney redacted, as the government proposes to address the *Doyle* and *Kallin* error the calls would otherwise entail,[4] *see* Opp. Br. 20, the edited calls will give the jury the false and unfairly prejudicial impression that Terabelian was calling *only* or almost only to convey the "clean the house" request. It is worth noting that the government created this problem by repeatedly denying Terabelian's requests for access to counsel and delaying her presentment to a magistrate judge.

For all these reasons, the calls' 403 dangers substantially outweigh their probative value and they should be excluded.

### D. *Doyle* and redactions

The government's brief offers no counterargument against Terabelian's position that the calls as originally proposed would result in *Doyle* / *Kallin* error. Gov. Br. 20. The government posits that the error can be corrected with redactions, but the redactions would only amplify the unfair prejudice, as explained in the previous subsection.

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

---

[4] *See Doyle v. Ohio*, 426 U.S. 610, 619 (1976); *United States v. Kallin*, 50 F.3d 689, 693 (9th Cir. 1995), as amended (Mar. 17, 1995) (*Doyle* extends to comments on a defendant's decision to retain counsel).

### III. Conclusion

The Court should suppress or exclude evidence of Terabelian's jail calls.

Dated: June 7, 2021

Respectfully submitted,

BIENERT KATZMAN LITTRELL WILLIAMS LLP

*/s/ Ryan V. Fraser*
John L. Littrell
Ryan V. Fraser

*Counsel for Defendant Marietta Terabelian*

MARIETTA TERABELIAN'S REPLY TO THE GOVERNMENT'S OPPOSITION
TO HER MOTION TO SUPPRESS OR EXCLUDE JAIL CALLS

# CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and I am a resident and employed in Los Angeles, California; that my business address is 601 W. 5th Street, Suite 720, Los Angeles, CA 90071; that I am over the age of 18 and not a party to the above-entitled action.

I am admitted to practice before the United States District Court for the Central District of California. I caused service of the foregoing document entitled "MARIETTA TERABELIAN'S REPLY TO GOVERNMENT'S OPPOSITION TO HER MOTION TO SUPPRESS OR EXCLUDE JAIL CALLS" on all interested parties as follows:

[X] **BY ELECTRONIC TRANSMISSION:** by electronically filing the foregoing with the Clerk of the District Court using its CM/ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies all parties in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 7, 2021 at Los Angeles, California.

/s/ Ryan Fraser