TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
       1100/1300 United States Courthouse
       312 North Spring Street
       Los Angeles, California 90012
       Telephone: (213) 894-6527/2424/3819
       Facsimile: (213) 894-6269/0141
       E-mail:    Scott.Paetty@usdoj.gov
                  Catherine.S.Ahn@usdoj.gov
                  Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
       1400 New York Avenue NW, 3rd Floor
       Washington, DC 20530
       Telephone: (202) 302-0539
       Facsimile: (202) 514-0152
       E-mail:    christopher.fenton@usdoj.gov


Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-579(A)-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date:  June 15, 2021 |
| RICHARD AYVAZYAN,<br> aka "Richard Avazian" and<br>     "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br> aka "Marietta Abelian" and<br>     "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br> aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN, | Location:    Courtroom of the<br>             Hon. Stephen V.<br>             Wilson |

1      aka "Mike Grigoryan," and
          "Anton Kudiumov,"
2   ARMAN HAYRAPETYAN,
   EDVARD PARONYAN,
3      aka "Edvard Paronian" and
          "Edward Paronyan," and
4   VAHE DADYAN,

5              Defendants.

6

7        Plaintiff the United States of America, by and through its

8   counsel of record, the Acting United States Attorney for the Central

9   District of California, Assistant United States Attorneys Scott

10  Paetty, Catherine S. Ahn, and Brian Faerstein, and Department of

11  Justice Trial Attorney Christopher Fenton, hereby files its trial

12  memorandum.

13       The government respectfully requests leave of the Court to

14  supplement or modify this memorandum as may be appropriate.

15   Dated: June 9, 2021              Respectfully submitted,

16                                     TRACY L. WILKISON
                                       Acting United States Attorney
17
                                       SCOTT M. GARRINGER
18                                     Assistant United States Attorney
                                       Chief, Criminal Division
19
                                          /s/
20                                     CATHERINE S. AHN
                                       SCOTT PAETTY
21                                     BRIAN FAERSTEIN
                                       Assistant United States Attorneys
22
                                       CHRISTOPHER FENTON
23                                     Trial Attorney, Department of
                                       Justice
24
                                       Attorneys for Plaintiff
25                                     UNITED STATES OF AMERICA

26

27

28

                                    2

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................1

TABLE OF AUTHORITIES.............................................1

MEMORANDUM OF POINTS AND AUTHORITIES.............................1

I.    STATUS OF THE CASE.........................................1

II.   STATEMENT OF FACTS.........................................1

III.  STATEMENT OF CHARGES.......................................6

      A.    Conspiracy...........................................7

            1.    Conspiracy to Commit Bank Fraud and/or Wire Fraud....7

            2.    Conspiracy to Engage in Money Laundering.............7

      B.    Wire Fraud...........................................8

      C.    Bank Fraud...........................................8

            1.    Bank Fraud.....................................8

            2.    Attempted Bank Fraud...........................9

      D.    Aggravated Identity Theft...........................10

      E.    Money Laundering....................................10

IV.   TRIAL STATUS / PRETRIAL MOTIONS / PRETRIAL FILINGS.........11

      A.    Trial Status........................................11

      B.    Pretrial Motions....................................11

            1.    Motions to Suppress...........................11

            2.    Motions to Dismiss............................12

      C.    Motions in Limine...................................13

      D.    Stipulations........................................15

      E.    Trial Indictment....................................15

      F.    Other Pretrial Filings..............................16

V.    TRIAL EVIDENCE............................................17

VI.   WITNESSES.................................................19

VII.  LEGAL AND EVIDENTIARY ISSUES..............................20

A.      Text Messages, Emails, and Call Recordings...............20

        1.      Opposing Party Admissions...........................21

        2.      Co-Conspirator Statements...........................22

B.      Business Records and Absence of Public Records..........24

        1.      Business Records....................................24

        2.      Absence of Public Records...........................26

C.      Defendants May Not Introduce Their Own Statements,
        Texts, Email Messages, or Call Recordings...............28

        1.      Defendants may not introduce their own statements
                unless a hearsay exception applies..................28

        2.      The "rule of completeness" does not allow
                defendants to introduce inadmissible statements.....29

D.      Cross-Examination of Defendants and Defense Witnesses....30

        1.      Cross-Examination of Defendants....................30

        2.      Cross-Examination of Defense Witnesses.............31

E.      Summary Exhibits........................................32

F.      Summary Witnesses.......................................35

G.      Affirmative Defenses....................................36

H.      Reciprocal Discovery....................................37

VIII.      CONCLUSION............................................37

**TABLE OF AUTHORITIES**

**CASES**

Barsky v. United States,
   339 F.2d 180 (9th Cir. 1964)...................................34

Bourjaily v. United States,
   483 U.S. 171 (1987)..........................................23

Crawford v. Washington, 541 U.S. 36 (2004)......................23

Diamond Shamrock Corp. v. Lumbermens Mut. Cas. Co.,
   466 F.2d 722 (7th Cir. 1972).................................35

Goldberg v. United States,
   789 F.2d 1341 (9th Cir. 1986)................................34

La Porte v. United States,
   300 F.2d 878 (9th Cir. 1962).................................24

McGautha v. California,
   402 U.S. 183 (1971)..........................................30

Ohio v. Roberts,
   448 U.S. 56 (1980)...........................................24

Ohler v. United States,
   529 U.S. 753 (2000)..........................................30

U-Haul Int'l v. Lumbermans Mutual Casualty Co.,
   576 F.3d 1040 (9th Cir. 2009)................................25

United States v. Aubrey,
   800 F.3d 1115 (9th Cir. 2015)................................33

United States v. Baker,
   855 F.2d 1353 (8th Cir. 1988)................................24

United States v. Black,
   767 F.2d 1334 (9th Cir. 1985)................................31

United States v. Bonallo,
   858 F.2d 1427 (9th Cir. 1988)................................25

United States v. Catabran,
   836 F.2d 453 (9th Cir. 1988).................................25

United States v. Cisneros,
   No. 217CR00229ACAS1, 2018 WL 3702497
   (C.D. Cal. 2018).............................................30

United States v. Cohen,
   631 F.2d 1223 (5th Cir. 1987)................................29

United States v. Collicott,
   92 F.3d 973 (9th Cir. 1996)...............................29, 30

United States v. Crespo de Llano,
   838 F.2d 1006 (9th Cir. 1987)...............................23

United States v. Crosgrove,
   637 F.3d 646 (6th Cir. 2011)................................30

United States v. Cuozzo,
   962 F.2d 945 (9th Cir. 1992)................................31

United States v. Emmert,
   829 F.2d 805 (9th Cir. 1987)................................29

United States v. Fernandez,
   839 F.2d 639 (9th Cir. 1988)................................22

United States v. Harry,
   816 F.3d 1268 (10th Cir. 2016)..............................28

United States v. Hegwood,
   977 F.2d 492 (9th Cir. 1992)................................32

United States v. Johnson,
   594 F.2d 1253 (9th Cir. 1979)...............................33

United States v. Larson,
   460 F.3d 1200 (9th Cir. 2006)...............................23

United States v. Lemire,
   720 F.2d 1327 (D.C. Cir. 1983)..........................34, 35

United States v. Mendoza-Prado,
   314 F.3d 1099 (9th Cir. 2002)...............................32

United States v. Miranda-Uriarte,
   649 F.2d 1345 (9th Cir. 1981)...........................30, 31

United States v. Norton,
   867 F.2d 1354 (11th Cir. 1989)..............................24

United States v. Ortega,
   203 F.3d 675 (9th Cir. 2000)............................21, 22

United States v. Pree,
   408 F.3d 855 (7th Cir. 2005)................................34

United States v. Rizk,
   660 F.3d 1125 (9th Cir. 2011)...........................33, 34

United States v. Safavian,
   435 F. Supp. 2d 36 (D.D.C. 2006)............................22

United States v. Scales,
    594 F.2d 558 (6th Cir. 1979)...............................33, 34

United States v. Scholl,
    166 F.3d 964 (9th Cir. 1999)..................................24

United States v. Shirley,
    884 F.2d 1130 (9th Cir. 1989).................................35

United States v. Siddiqui,
    235 F.3d 1318 (11th Cir. 2000)................................22

United States v. Torres,
    794 F.3d 1053 (9th Cir. 2015).................................29

United States v. Vallejos,
    742 F.3d 902 (9th Cir. 2014).............................29, 30

United States v. Zavala-Serra,
    853 F.2d 1512 (9th Cir. 1988).................................23

**STATUTES**

Fed. R. Evid. 104(a)..............................................23

Fed. R. Evid. 106.................................................29

Fed. R. Evid. 403.................................................28

Fed. R. Evid. 404(a)(2)(A)........................................32

Fed. R. Evid. 801(d)(2).......................................22, 23, 28

Fed. R. Evid. 802.................................................28

Fed. R. Evid. 803..............................................passim

Fed. R. Evid. 902..............................................passim

**OTHER AUTHORITIES**

Federal Rule of Criminal Procedure 12.1...........................37

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   STATUS OF THE CASE**

3      The criminal trial of defendants RICHARD AYVAZYAN, a.k.a.

4   "Richard Avazian," a.k.a. "Iulia Zhadko" ("R. AYVAZYAN"), MARIETTA

5   TERABELIAN, a.k.a. "Marietta Abelian," a.k.a. "Viktoria Kauichko"

6   ("TERABELIAN"), ARTUR AYVAZYAN, a.k.a. "Arthur Ayvazyan" ("A.

7   AYVAZYAN"), TAMARA DADYAN ("T. DADYAN"), ARMAN HAYRAPETYAN

8   ("HAYRAPETYAN"), and VAHE DADYAN ("V. DADYAN") (collectively,

9   "defendants") is scheduled for June 15, 2021 at 8:30 a.m., before the

10   Honorable Stephen V. Wilson, United States District Judge.[1]   The

11   government anticipates that its case-in-chief will require eight to

12   ten days.   Jury trial has not been waived.   Defendants are on bond.

13   **II.   STATEMENT OF FACTS**

14      The government has described the facts and details underlying

15   the charges in this case in its recently-filed motions <u>in limine</u>,

16   including its motion <u>in limine</u> #2 (ECF 384), as well as in its

17   responses to defendants' numerous motions brought throughout the

18   course of this case.   The government provides here a summary of the

19   facts and evidence it intends to adduce at trial.

20      As the trial evidence will show, defendants R. AVAYZYAN,

21   TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN,

22   and V. DADYAN conspired to submit or cause to be submitted fraudulent

23   loan applications through both the Paycheck Protection Program

24   _____

25      [1] On June 7, 2021, defendant MANUK GRIGORYAN ("GRIGORYAN")
   entered guilty pleas to two counts in the superseding indictment,
26   which pleas were accepted by the Court.  (ECF 454.)  His sentencing
   hearing is scheduled for September 13, 2021.  On June 9, 2021,
27   defendant EDVARD PARONYAN ("PARONYAN") and the government filed a
   plea agreement with the Court.  Defendant PARONYAN's change of plea
28   hearing currently is scheduled for June 11, 2021, at 10:00 a.m.  (ECF
   472.)

("PPP") and the Economic Injury Disaster Loan program ("EIDL"), and then launder the fraudulent proceeds of these loans.  Congress authorized the PPP and EIDL programs through the Coronavirus Aid, Relief, and Economic Security Act of 2020 ("CARES Act") to make emergency economic funds available to, among other things, small businesses to keep their businesses operating and employees on payroll as a result of the onset of the COVID-19 pandemic.  A witness from the United States Small Business Administration ("SBA") will testify about the background and operation of these programs, including the process for applying and eligibility for obtaining COVID-19 disaster relief loans.

The trial evidence will show that defendants used, or caused to be used, stolen or fictitious individual and business information in submitting materially false and misleading information to the SBA, banks, and lenders regarding the business' eligibility for these PPP and EIDL loans.  The evidence will demonstrate that defendants lied or caused other defendants to lie, among other things, about the applying business' monthly payroll expenses, number of employees, and, in many cases, the names, status, and contact information for the businesses and their purported representatives.  As reflected in many of the loan applications that will be offered into evidence,[2] defendants submitted or caused other defendants to submit fraudulent information and documentation in support of the loans, including fake

---

[2] The government filed its MIL #4 seeking to admit these and other business records under the self-authentication provision of Federal Rule of Evidence 902(11).  In addition, to expedite the presentation of evidence, the government plans on presenting information through summary chart exhibits and summary witnesses based on admissible records certified in accordance with Fed. R. of Evid. 902(11) and 803.

identification cards, false or fictitious payroll reports purportedly prepared by the payroll servicing company "Gusto," false or fictitious federal employer tax identification numbers ("EINs"), and fraudulent IRS tax forms.  In some cases, defendants submitted fictious payroll reports and IRS tax forms virtually identical in substance, reflecting their common use of fraudulent forms across multiple loan applications.  The government will present evidence through the IRS, California Employment Development Department, California Department of Motor Vehicles, Department of Homeland Security, and Gusto, of the falsity of the information in and documentation supporting these PPP and EIDL loan applications.

In many cases, defendants also used the stolen names and identifying information of real victims in support of the fraudulent loan applications, as trial testimony from several of those victims will reflect.  In some cases, defendants submitted or caused to be submitted applications in the names of those individuals or their actual businesses without lawful authority; in others, defendants fraudulently listed actual tax preparers as having prepared fraudulent IRS tax forms or other fictitious supporting documentation submitted in support of loan applications.

The trial evidence will further show that, following receipt of the fraudulent loan proceeds, defendants shared and transferred the proceeds between them, specifically through bank accounts that they controlled either in their own names or stolen or synthetic[3]

---

[3] The government will present testimony at trial explaining that a "synthetic" identity is an identity created by combining both stolen and fictitious personally identifiable information, such as names, dates of birth, and social security, to create new synthetic identities that could be used to perpetrate the fraud.

individual and business names.  Bank records offered at trial will reflect defendants' control and use of these bank accounts to send and receive fraudulent loan proceeds between each other and to use those proceeds for expenses prohibited by the PPP and EIDL loan programs.  These expenses included the purchase of at least three residential properties in Tarzana, Glendale, and Palm Desert, as well as expenditures on luxury items such as jewelry and high-end furnishings, as will be reflected in escrow account records and other records obtained from a number of retailers.

The trial evidence will further show that, in furtherance of the bank fraud, wire fraud, and money laundering conspiracies summarized above, defendants used and shared numerous synthetic and false identities to carry out their fraudulent activities.  The government will offer evidence of defendants' possession of significant amounts of synthetic and false identifying information, including information that was used in submitting the fraudulent loan applications charged in this case.  This evidence will include, among other things, documents and information obtained pursuant to the execution of residential search warrants at several locations on November 5, 2020, including the residence of defendants R. AYVAZYAN and TERABELIAN on Topeka Drive in Tarzana, the residence of defendants A. AYVAZYAN and T. DADYAN on Weddington Street in Encino, and an apartment under the control of defendant GRIGORYAN on Canoga Avenue in Woodland Hills. During the searches, the government found significant amounts of fraudulent identification documents including drivers licenses and Social Security cards, as well as fraudulently obtained credit cards.

The government further intends to present text messages extracted from a phone (the "T. DADYAN phone") seized from the

Weddington Street residence in Encino, pursuant to a federal search warrant.  The T. DADYAN phone contains text messages between T. DADYAN and R. AVAZYAN, who are identified in the T. DADYAN phone as "tammy" and "Rich New," respectively.  The "Rich New" contact is associated with a phone number that, according to certified business records, is subscribed to "Iulia Zhadko."  The text messages will establish that defendants R. AYVAZYAN and T. DADYAN agreed to work together to knowingly prepare and submit PPP and EIDL loan applications with false and materially misleading representations, including purported numbers of employees, payroll records, and the identities of the business applicant and its purported owner.  The text messages will further show how T. DADYAN and R. AYVAZYAN provided false documentation, exchanged personal identification cards and information for purported business owners, attempted to convince PPP lenders and banks to release fraudulent PPP and EIDL proceeds, and transferred funds to co-conspirators as payment for their role in the conspiracy.

The government further intends to present images and evidence of web history searches conducted by defendants who owned or were identified as the users of four iPhones – the T. DADYAN phone referenced above, a phone associated with A. AYVAZYAN, a phone associated with R. AYVAZYAN, and a phone associated with TERABELIAN. The presence of the same identification cards across multiple devices, images of checks, and account information associated with transfers to launder fraudulent proceeds, will further establish knowledge and participation in the charged conspiracies.

1

2   **III. STATEMENT OF CHARGES**

3        Defendants are charged with one count of conspiracy to commit

4   bank fraud and wire fraud, in violation of 18 U.S.C. § 1349 (Count

5   1); eleven counts of wire fraud, in violation of 18 U.S.C. § 1343

6   (Counts 2-12[4]); eight counts of bank fraud, in violation of 18 U.S.C.

7   § 1344(2) (Counts 13-20[5]); and one count of conspiracy to engage in

8   money laundering, in violation of 18 U.S.C. § 1956(h) (Count 26).  In

9   addition, defendant R. AYVAZYAN is charged with two counts of

10  aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1)

11  (Counts 21-22), and defendants TERABELIAN (Count 22), A. AYVAZYAN

12  (Count 24), T. DADYAN (Count 24), GRIGORYAN (Count 23), and

13  HAYRAPETYAN (Count 25) are each charged with one count of aggravated

14  identity theft.  Defendant V. DADYAN also is charged with money

15  laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Count 27).

16  Finally, two defendants -- defendant R. AYVAZYAN and defendant T.

17  DADYAN -- are charged with crimes allegedly committed while they were

18  on pretrial release in this case:  Defendant R. AYVAZYAN is charged

19  with money laundering while on pretrial release, in violation of 18

20  U.S.C. §§ 1956(a)(1)(B)(i) and 3147 (Counts 28-32), and defendant T.

21  DADYAN is charged with attempted bank fraud while on pretrial

22  release, in violation of 18 U.S.C. §§ 1344(2) and 3147 (Count 33).

23  (See First Superseding Indictment ("FSI") (ECF 154).)

24

25

26

27        [4] Defendant V. DADYAN is charged only in Counts 7 through 12,
    whereas the other defendants are charged in all eleven wire fraud
    counts.

28        [5] Defendant V. DADYAN is charged only in Counts 18 through 20,
    whereas the other defendants are charged in all eight bank fraud
    counts.

**A.    Conspiracy**

1.    Conspiracy to Commit Bank Fraud and/or Wire Fraud

In order for a defendant to be found guilty of the charge of conspiracy to commit bank fraud and/or wire fraud as charged in Count 1 of the FSI, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning no later than in or around March 2020, and continuing until at least in or around August 2020, there was an agreement between two or more persons to commit at least one of the following crimes: (1) bank fraud, in violation of 18 U.S.C. § 1344(2); and (2) wire fraud, in violation of 18 U.S.C. § 1343 -- with all jurors agreeing as to the particular crime which the coconspirators agreed to commit; and

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

2.    Conspiracy to Engage in Money Laundering

In order for a defendant to be found guilty of the charge of conspiracy to engage in money laundering as charged in Count 26 of the FSI, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning no later than in or around March 2020 and continuing until at least in or around October 2020, there was an agreement between two or more persons to commit at least one of the following crimes: (1) money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and (2) engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957 -- with all jurors agreeing as to the particular crime which the conspirators agreed to commit; and

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

**B.   Wire Fraud**

In order for a defendant to be found guilty of wire fraud as charged in Counts 2-12 of the FSI, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.  Deceitful statements of half-truths may constitute false or fraudulent representations;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

**C.   Bank Fraud**

        1.   <u>Bank Fraud</u>

In order for a defendant to be found guilty of bank fraud as charged in Counts 13-20 of the FSI, the government must prove each of the following elements beyond a reasonable doubt:

First, for each Count, the defendant knowingly carried out a scheme or plan to obtain money or property from the financial

institution specified in the Count by making false statements or promises;

Second, the defendant knew that the statements or promises were false;

Third, the statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property;

Fourth, the defendant acted with the intent to defraud; and

Fifth, the specified financial institution was federally insured.

2.   Attempted Bank Fraud

In order for defendant T. DADYAN to be found guilty of attempted bank fraud as charged in Count 33 of the FSI, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly attempted to execute a scheme to obtain money or property from Capital One, N.A. by false promises or statements;

Second, the promises or statements were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property;

Third, the defendant acted with the intent to defraud;

Fourth, the defendant did something that was a substantial step toward carrying out the plan or scheme and that strongly corroborated the defendant's intent to commit that crime; and

Fifth, Capital One, N.A. was federally insured.

Defendant T. DADYAN is charged with committing the offense charged in Count 33 while released pursuant to the Bail Reform Act. If the jury finds beyond a reasonable doubt that defendant T. DADYAN

9

committed the charged attempted bank fraud offense, the jury must also determine whether the government has proven beyond a reasonable doubt that she committed the offense while on release.

### D.   Aggravated Identity Theft

In order for a defendant to be found guilty of aggravated identity theft as charged in Counts 21-25 of the FSI, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly transferred, possessed, or used without legal authority a means of identification of another person, as specified in each Count;

Second, the defendant knew that the means of identification belonged to a real person; and

Third, the defendant did so during and in relation to a specific bank fraud or wire fraud offense charged in the indictment, as specified in each Count.

To act "without legal authority" means to act in a way that is contrary to law.  Thus, the government need not establish that the means of identification of another person was stolen or used without that person's consent or permission.

### E.   Money Laundering

In order for a defendant to be found guilty of laundering money as charged in Counts 27-32 of the FSI, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant conducted a financial transaction involving property that represented the proceeds of conspiracy to commit bank fraud and wire fraud, in violation of 18 U.S.C. § 1349; wire fraud, in violation of 18 U.S.C. § 1343; or bank fraud, in violation of 18 U.S.C. § 1344(2);

1    Second, the defendant knew that the property represented the

2    proceeds of some form of unlawful activity; and

3    Third, the defendant knew that the transaction was designed in

4    whole or in part to conceal or disguise the nature, location, source,

5    ownership, and/or control of such proceeds.

6    Defendant R. AYVAZYAN is charged with committing the offenses

7    charged in Counts 28-32 while released pursuant to the Bail Reform

8    Act.  If the jury finds beyond a reasonable doubt that defendant R.

9    AYVAZYAN committed any of the charged money laundering offenses, the

10   jury must also determine whether the government has proven beyond a

11   reasonable doubt that he committed the offense while on release.

12   **IV.  TRIAL STATUS / PRETRIAL MOTIONS / PRETRIAL FILINGS**

13        **A.    Trial Status**

14   As described above, the trial is set to commence June 15, 2021.

15   Defendants R. AYVAZYAN and TERABELIAN have requested a three-week

16   continuance of trial in connection with their most recently filed

17   motion to dismiss, requesting the Court reconsider its ruling that a

18   Kastigar hearing be held after, not before, trial.  (ECF 381.)  The

19   government opposes defendants' motion and request for a trial

20   continuance.  (ECF 416.)

21        **B.    Pretrial Motions**

22             1.   Motions to Suppress

23   Defendants have filed numerous motions to suppress evidence, all

24   of which the government has opposed, and most of which the Court has

25   ruled upon.  We briefly note the relief sought in each motion and the

26   Court's ruling, where applicable:

27   Defendant R. AYVAZYAN filed two motions to suppress physical and

28   digital evidence, statements, and the fruits thereof relating to a

11

border stop in Miami on October 19-20, 2020.  (ECF 130, 135.)
Defendant TERABELIAN similarly moved to suppress digital evidence and
statements relating to the same border stop.  (ECF 136.)  The Court
granted their motions in part with respect to suppressing certain
digital evidence as the fruit of a Fifth Amendment violation, but
denied the other grounds for relief in their motions.  (ECF 296.)
Defendant TERABELIAN also filed a motion to suppress recorded
telephone calls she made from Broward County Jail after her arrest at
the Miami Airport.  (ECF 393, 442.)  The government opposed the
motion (ECF 418), which remains pending.

Defendants R. AYVAZYAN and TERABELIAN moved to suppress physical
and digital evidence seized during the execution of a federal search
warrant at their residence.  (ECF 146.)  The Court denied their
motion but ordered the return of certain items.  (ECF 296.)

Defendants A. AYVAZYAN and T. DADYAN moved to suppress physical
and digital evidence seized during the execution of a federal search
warrant at their residence.  (ECF 149.)  The Court denied their
motion but ordered the return of one item.  (ECF 297.)

Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, and T. DADYAN
moved to suppress digital evidence seized during the execution of
federal search warrants at their residences.  (ECF 363.)  The
government filed an opposition (ECF 391), and the motion remains
pending.

2.   Motions to Dismiss

Defendant R. AYVAZYAN, and in some cases other defendants, have
filed numerous motions to dismiss the indictments in this case in
multiple forms, all of which the government has opposed, and most of

which the Court has ruled upon.  We briefly note the alleged basis for each motion and the Court's ruling, where applicable:

Defendant R. AYVAZYAN moved to "enforce the Court's December 22, 2020 Discovery Order," seeking an order of dismissal or in the alternative excluding certain discovery.  (ECF 248.)  The Court denied defendant's motion.  (ECF 343.)

Defendant R. AYVAZYAN moved to dismiss on the alleged basis of prosecutorial misconduct.  (ECF 289.)  The Court denied defendant's motion.  (ECF 343.)

Defendants R. AYVAZYAN and TERABELIAN moved for a Kastigar hearing, seeking an order disqualifying the prosecution team and dismissing the case.  (ECF 338.)  Defendants A. AYVAZYAN, T. DADYAN, GRIGORYAN, PARONYAN, and V. DADYAN joined in the motion.  (ECF 346-48, 350.)  The Court ultimately ordered that a Kastigar hearing would be scheduled for a date to be determined after trial but limited that hearing to defendants R. AYVAZYAN and TERABELIAN, denying the other defendant's joinder requests.  (ECF 356.)

Defendants R. AYVAZYAN and TERABELIAN moved once again to dismiss the case based on Kastigar, seeking in the alternative a continuance of trial and a pretrial Kastigar hearing.  (ECF 381.) The government filed an opposition (ECF 416), and the motion remains pending.

## C.  Motions in Limine

The government has filed four motions in limine.  The first motion ("MIL #1") seeks to exclude as a defense any evidence and arguments concerning alleged victim negligence as well as any reference to loan guarantees that specific victims in this case, specifically lenders and loan processors for the PPP, may have been

provided by the United States Small Business Administration ("SBA"). (ECF 358.)  MIL #2 seeks a ruling from the Court that evidence of defendants' possession and creation of stolen or synthetic identities, which were colocated with stolen or synthetic identities directly used to obtain fraudulent COVID-19 disaster relief loans, are inextricably intertwined with the charged offenses.  (ECF 384.) The third motion ("MIL #3") seeks to exclude evidence and argument that the border search in Miami or subsequent residence searches in this case were unlawful or violated defendants' constitutional rights.  (ECF 390.)  One or more defendants have filed oppositions to each of the government's first three motions in limine, and each remains pending as of the date of this filing.  In addition, on June 9, 2021, the government filed a fourth motion in limine ("MIL #4") seeking to admit certain business records pursuant to the self-authentication provision of Federal Rule of Evidence 902(11), which also remains pending.

Defendants R. AYVAZYAN and TERABELIAN filed a motion in limine seeking to preclude the government's use of their prior federal bank fraud conspiracy convictions under Federal Rule of Evidence 404(b) and to limit the information the government can reveal about these convictions under Federal Rule of Evidence 609 on cross-examination of defendants, should they testify.  (ECF 340.)  The government has filed an opposition to this motion, and it remains pending as of the date of this filing.

Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, and V. DADYAN filed a motion in limine seeking to preclude testimony from a non-expert summary witness who will describe the flow of PPP and EIDL funds between and amongst defendants and how those funds were

14

1  used.  (ECF 451.)  The government intends to file an opposition to

2  this motion.

3       **D.   Stipulations**

4       To streamline the trial, the government has proposed

5  stipulations to defendants regarding a number of factual issues the

6  government believes not to be genuinely in dispute.  These issues

7  include the fact of interstate wire transfers, the federally-insured

8  status of relevant financial institutions, the authenticity of

9  business and public records pursuant to certifications obtained from

10 relevant entities, the authenticity of jail call recordings, and the

11 authenticity of the forensic data from iPhones seized from certain

12 defendants.  To date, certain of the defendants have not yet agreed

13 to stipulate to any of these issues, but the government will continue

14 to seek to meet and confer with defendants on stipulations to any or

15 all of these or other issues.

16      **E.   Trial Indictment**

17      The government has filed a motion to redact the superseding

18 indictment for use at trial.  (ECF 422.)  In an effort to streamline

19 its case for presentation at trial, the government proposes to

20 proceed at trial on a redacted version of the superseding indictment

21 that removes one paragraph specifying the total number of loans (151)

22 that were part of the charged conspiracies and streamlining the

23 attempted bank fraud count against defendant T. DADYAN.  Defendant R.

24 AYVAZYAN has opposed the government's motion and filed a cross-motion

25 to strike certain allegations regarding the PPP and EIDL programs

26 from the indictment.  (ECF 426.)  The government filed a reply in

27 support of its motion to redact (ECF 450), and the motion remains

28 pending.

1

**F.   Other Pretrial Filings**

2   On May 23, 2021, the government provided defendants with a draft

3   of proposed jury instructions in an effort to meet and confer on a

4   set of joint proposed jury instructions, with respective objections

5   noted pursuant to the Court's Standing Order.  Defendants provided

6   the government with a draft of their proposed jury instructions on

7   May 26, 2021, and proposed that the parties file separate proposed

8   jury instructions with the Court.  On May 27, 2021, the government

9   filed its proposed jury and forfeiture instructions.  (ECF 373.)  The

10   same day, six of the eight defendants (defendants R. AYVAZYAN,

11   TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, and V. DADYAN) filed a

12   joint set of proposed jury instructions on behalf of those

13   defendants.  (ECF 372.)  The Court has not yet ruled on the parties'

14   competing requested instructions.

15   On June 6, 2021, the government provided defendants with a draft

16   of a proposed verdict form for each defendant in an effort to meet

17   and confer on joint proposed verdict forms to file with the Court.

18   Counsel for defendant R. AYVAZYAN stated they intended to file a

19   separate proposed verdict form on behalf of defendant R. AYVAZYAN.

20   The government received comments from defendants TERABELIAN, V.

21   DADYAN, and HAYRAPETYAN, and implemented some requests but were not

22   able to agree on another, as described in the preface to the

23   government's proposed verdict forms filed on June 8, 2021.

24   The government submitted its exhibits list and witness list to

25   defendants, in accordance with this Court's order, on June 1, 2021,

26   and filed the exhibits and witness lists with the Court on June 9,

27   2021, per the Court's Order.  (ECF 449.)

28

16

1    The government has also filed its proposed voir dire.  (ECF
2    453.)

3  **V.    TRIAL EVIDENCE**

4    The evidence at trial will include the following types of
5    evidence:

6    Business Records:  The government will offer a significant
7    amount of business records, including through Rule 902(11)
8    certifications as self-authenticating business records as described
9    further herein, as part of its case-in-chief.  These business records
10   were obtained from banks, lenders, real estate and escrow companies,
11   brokerage and cryptocurrency trading firms, jewelry stores and other
12   retailers (such as high-end furnishings and timepiece distributors),
13   telecommunications companies, and other business entities.  These
14   records include, among other things, bank records (including records
15   for the accounts opened and used by defendants to receive and launder
16   the fraudulent loan proceeds), loan applications and supporting
17   materials, loan files, telephone records, Internet Protocol address
18   records, certificates of authenticity from the FDIC, escrow records,
19   receipts and business records relating to the sale of goods and
20   services, brokerage and cryptocurrency account records, and apartment
21   leasing records and security video.

22   Public Records (and the absence thereof):  The government also
23   will offer evidence obtained from governmental and public entities
24   regarding certain individual and/or business identifying information
25   relevant to the charged conspiracies and schemes as well as
26   documentation submitted in connection with fraudulent loan
27   applications.  As discussed further herein, that evidence will
28   include certifications from these public entities of the absence of

records regarding identifying information or documentation (i.e., the information was fictitious or otherwise does not exist) that was submitted with loan applications or associated with bank accounts relevant to the charges.

Materiality Witnesses:  The government intends to call a witness from the Small Business Administration who will provide brief facts about the PPP and EIDL programs, the application, and the importance of certain information in the application.  The witness is also an SBA custodian of record.  The government further intends to call a witness from a PPP lender, who can testify as to the importance of certain information and representations in the PPP application.

Physical Evidence Seized Pursuant to Searches:  The government will offer physical evidence, documentation, and photographs pertaining to information seized as part of searches conducted in this case pursuant to search warrants as well as other physical evidence seized during the course of the investigation, including through trash pulls and physical credit cards seized from defendants R. AYVAZYAN and TERABELIAN in Miami.  Among other things, these materials relate to the significant amount of stolen or synthetic identifying information and other underlying fraudulent documentation and instrumentalities used in furtherance of the charged conspiracies and schemes.

Data extracted from Seized Digital Devices:  The government intends to call two FBI forensic examiners, one of whom extracted the data from three of the iPhones whose content the government intends to admit into evidence, and a second examiner that extracted data from a fourth iPhone.  The primary purpose of these witnesses is to establish authenticity for the basis of the government's trial

exhibits.  The examiners are expected to testify that they received the devices, extracted data from the devices in a manner consistent with forensic methodology, and then provided the data in a readable report for review (a "Cellebrite report"), that became the basis for the government's trial exhibits.  A testifying agent is then expected to testify that the trial exhibits contain a true and accurate representation of the extracted data in the Cellebrite report, and introduce into evidence the data extracted from the four iPhones. The testifying agent is further expected to identify PPP and EIDL applications, wire transfers, identification cards, and other evidence referenced in text messages or images found on the iPhones.

Call Recordings:  The government seeks to admit two recordings of jail calls defendant TERABELIAN made after her arrest in Miami while in custody at the Broward County Jail.  The government also seeks to admit recorded phone calls defendant T. DADYAN made to Capital One Bank in connection with the attempted bank fraud charge against her.

## VI.   WITNESSES

The government anticipates calling around 25 witnesses in its case-in-chief, including:

- a witness from the SBA and one SBA-approved PPP lender to testify about the program and materiality of the false and misleading statements;

- individual victims whose identities or business names were stolen and used as part of the fraud;

- witnesses from state and federal agencies and Gusto (a payroll processor) to establish the falsity of the

information included in the PPP and EIDL applications submitted as part of the fraud;

- percipient witnesses who witnessed defendant R. Ayvazyan using synthetic identities;

- a summary witness to describe the flow of PPP and EIDL loan funds between defendants and use of the funds;

- forensic examiners to testify about the authenticity of digital evidence seized from certain defendants' iPhones;

- foundation witnesses, including case agents, to testify about evidence seized from certain defendants' residences and the agents' investigation of the crimes charged in the indictment; and

- law enforcement officers to authenticate physical evidence seized at Miami International Airport and jail calls, and an Armenian-language translator to translate those calls.

In the event that defendants do not agree to stipulate to certain facts such as the interstate nature of the wires underlying the wire fraud counts or the FDIC-insured status of banks underlying the bank fraud counts, and/or if defendants are not willing to stipulate to the authenticity of certain documents (and the Court does not rule on the government's motion in limine before trial), the government may also call witnesses to testify to these facts.

The government reserves the right to call additional witnesses as necessary and rebuttal witnesses should defendants present a case.

## VII. LEGAL AND EVIDENTIARY ISSUES

### A.    Text Messages, Emails, and Call Recordings

The government intends to introduce at trial text messages that defendants exchanged with each other and others in the course of the

charged conspiracies and schemes, and emails that defendants sent to third-parties to whom they sent fraudulently-obtained PPP and EIDL loan funds.  The government also intends to introduce at trial recordings of telephone calls that certain defendants made during the course of the charged conspiracies and schemes.  These text messages, emails, and call recordings fall into three main categories: (1) admissions by an opposing party; (2) co-conspirator statements; and (3) business records.  The first and second categories consist mostly of: text message conversations between co-conspirators during and in furtherance of the conspiracy, along with files and images sent to each other as part of the text message conversation, as well as recorded telephone calls T. DADYAN made to Capital One Bank and TERABELIAN made while detained at the Broward County Jail.  The third category consists primarily of text messages between R. AYVAZYAN (using a telephone number associated with synthetic identity, Iuliia Zhadko) and a vendor of luxury watches and text messages between R. AYVAZYAN and a real estate broker to arrange the purchase of a house for synthetic identity, Anton Kudiumov.

      1.   <u>Opposing Party Admissions</u>

Many of the texts, emails, and call recordings discussed above are admissible as party admissions.  Statements by a defendant, when offered by the government, are admissions by a party-opponent and are therefore not hearsay under Federal Rule of Evidence 801(d)(2). <u>United States v. Ortega</u>, 203 F.3d 675, 682 (9th Cir. 2000).  For example, this would include a text message exchanged between co-conspirators R. AYVAZYAN and T. DADYAN in which they explicitly discuss changing EIN numbers by one digit in PPP or EIDL applications.  This would also include text messages exchanged

between R. AYVAZYAN and the luxury watch salesman discussing the purchase of an expensive watch for Viktoria Kauichko, and between R. AYVAZYAN and the real estate broker discussing the purchase of a house for Anton Kudiumov.

Courts routinely admit electronic evidence, like text messages and emails, as party admissions in criminal cases.  See, e.g., United States v. Safavian, 435 F. Supp. 2d 36, 43 (D.D.C. 2006) ("The statements attributed directly to [defendant] come in as admissions by a party opponent under Rule 801(d)(2)(A)"); United States v. Siddiqui, 235 F.3d 1318, 1323 (11th Cir. 2000) ("Those [emails] sent by [defendant] constitute admissions of a party").

As discussed in a separate section below, however, the rule does not go both ways.  A defendant's statements offered by him or her are inadmissible hearsay.  United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000); see also United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

### 2.   Co-Conspirator Statements

The government will also seek to introduce texts and emails from R. AYVAZYAN, T. DADYAN, and other co-conspirators in its case-in-chief as co-conspirator statements.  Texts and emails that R. AYVAZYAN, T. DADYAN, and others sent during the course of and in furtherance of the charged conspiracies and schemes are co-conspirator statements admissible as non-hearsay under Fed. R. Evid. 801(d)(2)(E).

Statements of one co-conspirator during the course of and in furtherance of the conspiracy may be used against another conspirator because such statements are not hearsay.  See Fed. R. Evid. 801(d)(2)(E).  Further, the Supreme Court has held in Crawford v.

1    _Washington_, 541 U.S. 36, 56 (2004), that statements made in

2    furtherance of a conspiracy are "not testimonial" such that their

3    admission does not violate the Confrontation Clause.  As such, the

4    introduction of co-conspirator statements pursuant to Fed. R. Evid.

5    801(d)(2)(E) requires only a foundation that: (1) the declaration was

6    made during the course of the conspiracy; (2) it was made in

7    furtherance of the conspiracy; and (3) there is, including the co-

8    conspirator's statement itself, sufficient proof of the existence of

9    the conspiracy and of the defendant's connection to it.  _Bourjaily v._

10   _United States_, 483 U.S. 171, 173, 181 (1987); _United States v._

11   _Larson_, 460 F.3d 1200, 1211 (9th Cir. 2006).

12        The government must prove by a preponderance of the evidence

13   that a statement is a co-conspirator statement in order for the

14   statement to be admissible under Rule 801(d)(2)(E).  _Bourjaily_, 483

15   U.S. at 176; _United States v. Crespo de Llano_, 838 F.2d 1006,

16   1017(9th Cir. 1987).  Whether the government has met its burden is to

17   be determined by the trial judge, not the jury.  _United States v._

18   _Zavala-Serra_, 853 F.2d 1512, 1514 (9th Cir. 1988).  The Court may

19   rely on inadmissible evidence, such as a co-conspirator's plea

20   agreement, in determining whether the 801(d)(2)(E) exception applies.

21   _Cf._ _United States v. Gil_, 58 F.3d 1414, 1420 (9th Cir. 1995) (the

22   preliminary determination of whether Fed. R. Evid. 801(d)(2)(E)

23   applies is to be made "by the court, not the jury, pursuant to Fed.

24   R. Evid. 104(a)); Fed. R. Evid. 104(a) ("the court must decide any

25   preliminary question about whether . . . evidence is admissible.  In

26   so deciding, the court is not bound by evidence rules, except those

27   on privilege").

28

**B.   Business Records and Absence of Public Records**

1.   <u>Business Records</u>

As described more fully in its MIL #4, the government will seek to admit documents and records that were obtained from banks, lenders, real estate and escrow companies, brokerage and cryptocurrency trading firms, jewelry stores and other retailers (such as high-end furnishings and timepiece distributors), telecommunications companies, and other business entities.  These records include, among others, the records described in Section V (Trial Evidence) above.

Challenges to the accuracy or completeness of business records ordinarily go to the weight of the evidence and not its admissibility.  <u>See</u> <u>United States v. Scholl</u>, 166 F.3d 964 (9th Cir. 1999), <u>as amended on denial of reh'g</u> (Mar. 17, 1999); <u>La Porte v. United States</u>, 300 F.2d 878, 880—82 (9th Cir. 1962).  Because Rule 803(6) represents a firmly rooted hearsay exception, if non-testimonial evidence meets the requirements for admission under the Rule, no further showing of reliability is necessary for admission under the Confrontation Clause.  <u>See</u> <u>Ohio v. Roberts</u>, 448 U.S. 56, 66 n.8 (1980), <u>overruled on other grounds by</u> <u>Crawford v. Washington</u>, 541 U.S. 36 (2004); <u>Ray</u>, 930 F.2d at 1371; <u>United States v. Norton</u>, 867 F.2d 1354, 1363 (11th Cir. 1989); <u>United States v. Baker</u>, 855 F.2d 1353, 1360 (8th Cir. 1988).

Moreover, computer printouts that are compilations of data regularly maintained by a business, such as printouts from a bank's internal accounting systems or other systems that business entities maintain in the ordinary course of its business, are admissible as records of regularly conducted activity pursuant to Fed. R. Evid.

24

803(6).  See <u>United States v. Catabran</u>, 836 F.2d 453, 458 (9th Cir. 1988) ("Any question as to the accuracy of the printouts, whether resulting from incorrect data entry or the operation of the computer program, as with inaccuracies in any other type of business records, would have affected only the weight of the printouts, not their admissibility."); <u>United States v. Bonallo</u>, 858 F.2d 1427, 1436 (9th Cir. 1988) ("The fact that it is possible to alter data contained in a computer is plainly insufficient to establish untrustworthiness. The mere possibility that the logs may have been altered goes only to the weight of the evidence not its admissibility."); <u>U-Haul Int'l v. Lumbermans Mutual Casualty Co.</u>, 576 F.3d 1040, 1043-44 (9th Cir. 2009) (computer records kept in the regular course of business activity properly admitted under Rule 803(6)).

Certified records of regularly conducted activity or records generated by an electronic process or system (such as subscriber records and IP address information from a telecommunications company or internet service provider) as well as certified data copied from an electronic device, storage medium, or file (such as data obtained from a bank's internal systems), are self-authenticating when accompanied by a written certification satisfying the requirements of Fed. R. Evid. 902(11), 902(13), or 902(14).  The government has obtained and produced 902(11) certifications for numerous banks' business records (including bank account information and loan files). The government has produced all of the underlying documents and the certifications in discovery and given advance notice regarding its intent to seek to admit these types of documents under the relevant rules, and, through its forthcoming motion <u>in limine</u>, will be seeking

to admit a number of exhibits as self-authenticating records under these rules.

### 2. Absence of Public Records

Similarly, the government will seek to admit as self-authenticating documents under Federal Rule of Evidence 902(4) certifications obtained from several federal and state governmental or public entities reflecting the absence of certain public records directly relevant to the charges in this case.  The information obtained from these public entities, including the IRS, California Employment Development Department ("CA EDD"), California Department of Motor Vehicles ("CA DMV"), and United States Department of Homeland Security ("DHS"), reflect that individual and business identifying information or fictitious documentation submitted in connection with the fraudulent loan applications did not in fact exist.  A certification of (or testimony from a custodian regarding) the absence of public records from these entities is admissible under Federal Rule of Evidence 803(10).

Rule 803(10) provides, in relevant part, that "[t]estimony — or a certification under Rule 902 — that a diligent search failed to disclose a public record or statement" constitute exceptions to the rule against hearsay "if the testimony or certification is admitted to prove that the record or statement does not exist; or a matter did not occur or exist, if a public office regularly kept a record or statement for a matter of that kind."  Fed. R. Evid. 803(10)(A).  The Rule further provides that, "in a criminal case, a prosecutor who intends to offer a certification provides written notice of that intent at least 14 days before trial, and the defendant does not object in writing within 7 days of receiving the notice — unless the

court sets a different time for the notice or the objection."  Fed.
R. Evid. 803(10)(B); see also Fed. R. Evid. 803, Committee Notes on
Rules — 2013 Amendment (explaining that "notice-and-demand" procedure
satisfies Confrontation Clause following Melendez-Diaz v.
Massachusetts, 557. U.S. 305 (2009)).

In compliance with Rule 803(10)(B), the government provided
notice to defense counsel on May 18, 2021, of the government's intent
to introduce certain evidence of the absence of public records
through testimony and/or pursuant to certifications under Rule 902.
The notice explained that the government would be producing
certifications with respect to the non-existence of public records
pertaining to information from the IRS, CA EDD, CA DMV, and DHS that
had previously been produced in discovery.  The government did not
receive an objection from any defendant.  The government thereafter
produced the certifications of the absence of public records, which
it obtained pursuant to trial subpoenas, in discovery.  The
government intends to move these certifications into evidence at
trial under Federal Rules of Evidence 803(10) and 902.[6]

---

[6] The government also may offer testimony about the absence of
public records through a witness "familiar with both the process of
searching the records and the government's recordkeeping practices
with regard to the database."  United States v. Diaz—Lopez, 625 F.3d
1198, 1200 (9th Cir. 2010).  The Ninth Circuit has recognized that,
"[u]nlike Rule 803(6), which governs the admissibility of business
records, Rule 803(10) does not specify 'the testimony of the
custodian or another qualified witness.'"  United States v. Parker,
761 F.3d 986, 992 (9th Cir. 2014) (quoting Fed. R. Evid. 803(6)(D)).
"Rather, Rule 803(10) simply requires 'testimony' that a diligent
search did not turn up a public record."  Id.  However, because it
has satisfied the notice-and-demand procedure of Rule 803(10)(B), and
in the interest of streamlining its trial presentation, the
government may also seek to offer the evidence of absence of public
records through the self-authenticating certifications produced in
discovery.

**C. Defendants May Not Introduce Their Own Statements, Texts, Email Messages, or Call Recordings**

Defendants engaged in numerous text message conversations with each other. The government does not intend to introduce all of these communications, but will instead introduce selected portions in its case-in-chief. The portions that the government intends to introduce are relevant to guilt or innocence, and exclude irrelevant communications that might be misleading or confusing to the jury or otherwise excludable under Fed. R. Evid. 403 (such as references to watching political events associated with a particular candidate that might otherwise be probative as to defendants' monitoring of the availability of COVID-19 relief funds and COVID-19 relief programs). As discussed above, because statements by a party are not hearsay when offered by the opposing party, see Fed. R. Evid. 801(d)(2), the prosecution can properly admit defendants' texts, emails, and calls into evidence as party admissions.

> 1. **Defendants may not introduce their own statements unless a hearsay exception applies**

Defendants, however, cannot admit their own statements, texts, email messages, or call recordings unless a hearsay exception applies. See Fed. R. Evid. 802; United States v. Harry, 816 F.3d 1268, 1279 (10th Cir. 2016). The Court should be wary of any attempt that defendants may make to introduce their own statements using narrowly-tailored hearsay exceptions that do not apply. For example, any attempt by defendant to introduce their own statements under the "state of mind" exception to the hearsay rule, Fed. R. Evid. 803(3), should be viewed with skepticism. Rule 803(3) "narrowly limit[s] those admissible statements to declarations of condition-'I'm scared'-and not belief-'I'm scared because [someone] threatened me.'"

28

1   United States v. Emmert, 829 F.2d 805, 810 (9th Cir. 1987) (citing

2   United States v. Cohen, 631 F.2d 1223, 1225 (5th Cir. 1987).

3       Similarly, the "effect on a listener" exception does not allow

4   defendants to admit all of their statements under the theory that the

5   statements are not offered for the truth, but merely to show what she

6   did in response or why she did what she did.  Any attempt to admit

7   defendants' statements on this basis would be an improper end run

8   around the hearsay rule.  United States v. Torres, 794 F.3d 1053,

9   1061 (9th Cir. 2015) (upholding exclusion of statements that

10  defendant sought to admit under "effect on the listener" exception as

11  defendant "offered the statements for the truth of the defense

12  asserted" and for the "implied assertions" in the statements that

13  another person sent defendant unwittingly on a drug importation

14  mission).

15      2.   The "rule of completeness" does not allow defendants
             to introduce inadmissible statements

16

17      Moreover, any "rule of completeness" argument based on Federal

     Fed. R. Evid. 106 ("Rule 106") is applicable only when one party

18
     seeks to introduce a misleadingly tailored excerpt of a statement.

19
     Fed. R. Evid. 106.  Rule 106 "does not, however, require the

20
     introduction of any unedited writing or statement merely because an

21
     adverse party has introduced an edited version."  United States v.

22
     Vallejos, 742 F.3d 902, 905 (9th Cir. 2014).  It is proper to admit

23
     segments of a conversation without including the entire conversation,

24
     and adverse parties are not entitled to offer additional statements

25
     just because they exist and the proponent has not offered them.  See

26
     United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996).  If the

27
     statements offered by the defendant do not clarify a misleading

28

                                    29

1   impression, the district court should exclude them.  <u>Vallejos</u>, 742

2   F.3d at 905; <u>see also</u> <u>United States v. Crosgrove</u>, 637 F.3d 646, 661

3   (6th Cir. 2011) (finding that defendant could not introduce text

4   messages under Rule 106 because messages were too far removed in time

5   to correct any misleading impression).  Finally, Rule 106 does not

6   make otherwise inadmissible evidence admissible.  <u>Collicott</u>, 92 F.3d

7   at 983; <u>United States v. Cisneros</u>, No. 217CR00229ACAS1, 2018 WL

8   3702497, at *11 (C.D. Cal. 2018) ("[D]efendant's exculpatory

9   statements to law enforcement are inadmissible hearsay and thus

10  cannot be introduced pursuant to Rule 106.").

11      **D.   Cross-Examination of Defendants and Defense Witnesses**

12          1.   <u>Cross-Examination of Defendants</u>

13      The government does not know whether any of the defendants

14  intend to testify at trial or call any witnesses as part of a defense

15  case.  If one or more of the defendants do testify, the government

16  should be permitted fully to cross-examine them because a defendant

17  who testifies at trial waives their right against self-incrimination

18  and subjects themself to cross-examination concerning all matters

19  reasonably related to the subject matter of their testimony.  <u>See</u>

20  <u>Ohler v. United States</u>, 529 U.S. 753, 759 (2000) ("It has long been

21  held that a defendant who takes the stand in his own behalf cannot

22  then claim the privilege against cross-examination on matters

23  reasonably related to the subject matter of his direct examination.")

24  (quoting <u>McGautha v. California</u>, 402 U.S. 183, 215 (1971), <u>vacated in</u>

25  <u>part on other grounds by</u> <u>Crampton v. Ohio</u>, 408 U.S. 941 (1972)).

26      A defendant has no right to avoid cross-examination on matters

27  that call into question his or her credibility or any claim of

28  innocence.  <u>United States v. Miranda-Uriarte</u>, 649 F.2d 1345, 1353-54

1   (9th Cir. 1981).  The scope of a defendant's waiver is co-extensive

2   with the scope of relevant cross-examination.  United States v.

3   Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); United States v. Black,

4   767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually

5   discusses on direct does not determine the extent of permissible

6   cross-examination or his waiver.  Rather, the inquiry is whether 'the

7   government's questions are reasonably related' to the subjects

8   covered by the defendant's testimony.").

9       As previously noted, defendants R. AYVAZYAN and TERABELIAN have

10  filed a motion in limine to preclude the use of their prior federal

11  bank fraud conspiracy convictions under Federal Rule of Evidence

12  404(b) and to limit the information the government can reveal about

13  these convictions under Federal Rule of Evidence 609.  (ECF 340.)

14  The government has opposed this motion (ECF 357), and, pending the

15  Court's ruling, intends to introduce evidence as to the name and

16  nature of the offense for which defendants R. AYVAZYAN and TERABELIAN

17  were convicted -- not just the date and fact of the felony conviction

18  -- on cross-examination of these defendants.[7]  (See ECF 357 at 15-

19  17.)

20          2.   Cross-Examination of Defense Witnesses

21       Similarly, if any defendant calls a character witness, the

22  government should be allowed to cross examine that witness with

23  information pertaining to how the witness's opinion of defendant's

24

25  _____

26      [7] As set forth in its opposition to defendants R. AYVAYZAN's and
    TERABELIAN's motion in limine regarding their prior convictions, the
27  government separately seeks to admit evidence of their prior bank
    fraud conspiracy conviction under Federal Rule of Evidence 404(b)(2)
    as highly probative, among other things, of their knowledge and
28  intent with respect to the bank fraud conspiracy and substantive
    counts charged in this case.  (See ECF 357 at 6-15.)

character would change if the witness were confronted with a specific instance of defendant's conduct that rebuts that opinion.  A character witness who offers an opinion on or discusses defendant's reputation for good character on direct examination can be cross examined with relevant specific instances of conduct.  Under Fed. R. Evid. 404(a)(2)(A), character evidence is admissible when offered by the prosecution to rebut "evidence of a pertinent trait" of character offered by a defendant.  See also Fed. R. Crim. P. 405(a).  "[W]hen the defendant 'opens the door' to testimony about an issue by raising it for the first time himself, he cannot complain about subsequent government inquiry into that issue." United States v. Mendoza-Prado, 314 F.3d 1099, 1105 (9th Cir. 2002) (quoting United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992)).  Such cross examination can be properly phrased in the form of "have you heard" or "did you know" questions regarding defendant's criminal conduct.  See United States v. Scholl, 166 F.3d 964, 974 (9th Cir. 1999).

### E. Summary Exhibits

This case involves a large number of documents, including voluminous bank and financial records and loan files.  To assist the jury's understanding of the case, the government intends to present charts and summaries that will aid the jury in understanding the evidence, including summary exhibits that summarize: (a) information related to the many PPP and EIDL loans submitted by defendants, including in the names of their aliases; (b) the bank accounts that defendants owned and controlled and used to receive and transfer PPP and EIDL loan funds; and (c) defendants' use of the PPP and EIDL loan proceeds.

Federal Rule of Evidence 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place.  And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006.

The Advisory Committee Notes to Rule 1006 add that "[t]he admission of summaries of voluminous books, records, or documents offers the only practicable means of making their contents available to judge and jury.  The rule recognizes this practice, with appropriate safeguards."  Fed. R. Evid. 1006, 1972 Advisory Committee Notes; see also United States v. Johnson, 594 F.2d 1253, 1255 (9th Cir. 1979) ("The purpose of Rule 1006 is to allow the use of summaries when the volume of documents being summarized is so large as to make their use impractical or impossible; summaries may also prove more meaningful to the judge and jury.").

A summary chart may be admitted as substantive evidence when the proponent establishes that the underlying documents upon which the summary is based are voluminous, admissible, and available for inspection.  Johnson, 594 F.2d at 125-26; see also United States v. Rizk, 660 F.3d 1125, 1130 (9th Cir. 2011); United States v. Aubrey, 800 F.3d 1115, 1130 (9th Cir. 2015).  Although the materials underlying the summary must be admissible, they need not themselves be admitted into evidence.  Rizk, 660 F.3d at 1130—31.  In addition, the summary chart must be accurate, authentic, and properly introduced.  United States v. Scales, 594 F.2d 558, 563 (6th Cir. 1979) (affirming introduction of summary charts presenting an organization of undisputed objective evidence in terms of relevant counts of the indictment).  Any contention that the chart may contain

33

1  inaccuracies or omissions goes to the weight of the evidence, not its

2  admissibility.  <u>Rizk</u>, 660 F.3d at 1131 at n.2.

3       Rule 1006 does not require that a jury's examination of the

4  underlying records be literally impossible before a summary or a

5  chart may be utilized.  "All that is required for the rule to apply

6  is that the underlying writings be 'voluminous' and that in court

7  examination not be convenient."  <u>Scales</u>, 594 F.2d at 562.  Nor does

8  the large size of, or other complexity to, a summary chart render it

9  inadmissible when it contains otherwise unobjectionable evidence.

10 <u>Id.</u> at 563.  Where a chart does not contain complicated calculations

11 that would require an expert for accuracy, authentication of the

12 chart requires only that the witness (1) have properly catalogued the

13 exhibits and records upon which the chart is based; and (2) have

14 knowledge of the analysis of the records referred to in the chart.

15 <u>Id.</u>; <u>see</u> <u>Goldberg v. United States</u>, 789 F.2d 1341, 1343 (9th Cir.

16 1986) (upholding district court's determination that the testimony of

17 a revenue agent as to summaries of voluminous tax records did not

18 include any expert opinions or conclusions); <u>United States v. Pree</u>,

19 408 F.3d 855, 869 (7th Cir. 2005) ("When a summary witness simply

20 testifies as to what the government's evidence shows, he does not

21 testify as an expert witness.").  The use of other persons in the

22 preparation of summary evidence goes to the weight of the evidence,

23 not its admissibility.  <u>See</u> <u>United States v. Soulard</u>, 730 F.2d 1292,

24 1299 (9th Cir. 1984).

25      Finally, summary charts need not contain the defendant's version

26 of events.  <u>See</u> <u>United States v. Lemire</u>, 720 F.2d 1327, 1349 (D.C.

27 Cir. 1983); <u>Barsky v. United States</u>, 339 F.2d 180, 181 (9th Cir.

28 1964) (rejecting defendant's argument that summary should be excluded

34

1  because it did not contain his version of the case; accepting that

2  argument "would be to hold that if a defendant had an alibi, no

3  matter how improbable, then no expert could prepare a summary of the

4  evidence tending to prove guilt").

5      Defendant R. AYVAZYAN has filed a motion in limine seeking to

6  exclude the government's introduction of summary charts (ECF 451), to

7  which the government will be filing an opposition.

8      **F.   Summary Witnesses**

9      The government will seek to introduce some of the above summary

10  charts through Marylee Robinson, a Managing Director at Stout Risius

11  Ross, LLC.  A summary witness may properly testify about, and use a

12  chart to summarize, evidence that is voluminous and complex.  The

13  court and jury are entitled to have a witness "organize and evaluate

14  evidence which is factually complex and fragmentally revealed."

15  United States v. Shirley, 884 F.2d 1130, 1133-34 (9th Cir. 1989)

16  (agent's testimony regarding her review of various telephone records,

17  rental receipts, and other previously offered testimony held to be

18  proper summary evidence, as it helped jury organize and evaluate

19  evidence; summary charts properly admitted); accord United States v.

20  Lemire, 720 F.2d 1327, 1348 (D.C. Cir. 1983).  Further, a summary

21  witness may be assisted by others in the preparation of summary

22  evidence; the assistance provided by other people in the preparation

23  of summary evidence goes to its weight, not its admissibility.  See

24  United States v. Soulard, 730 F.2d 1292, 1299 (9th Cir. 1984);

25  Diamond Shamrock Corp. v. Lumbermens Mut. Cas. Co., 466 F.2d 722, 727

26  (7th Cir. 1972) ("It is not necessary . . . that every person who

27  assisted in the preparation of the original records or the summaries

28  be brought to the witness stand.").

Defendant R. AYVAZYAN has filed a motion _in limine_ seeking to exclude the government's summary witness (ECF 451), to which the government will be filing an opposition.

### G.    Affirmative Defenses

None of the defendants have given notice of any affirmative defenses or an intent to rely on any affirmative defense, including mental incapacity, entrapment, or duress, or an alibi defense, in response to the government's requests for such notice.  Therefore, to the extent defendant may attempt to rely on such a defense, the government reserves the right to object and to move to preclude the defendant from asserting such a defense.

In addition, as previously noted, the government filed MIL #1 seeking to exclude as a defense any evidence and arguments concerning alleged victim negligence as well as any reference to loan guarantees that specific victims in this case, specifically lenders and loan processors for the PPP, may have been provided by the SBA.  (ECF 358.)  Defendant GRIGORYAN, joined by defendant R. AYVAZYAN, oppose MIL #1, seeking to inquire into and/or introduce evidence regarding these issues at trial.  (ECF 383, 386.)  For the reasons set forth more fully in its MIL #1, which remains pending, the government submits that "a victim's negligence is not a defense to . . . fraud," and "[e]vidence of lender negligence is thus not admissible as a defense . . ."  United States v. Lindsey, 850 F.3d 1009, 1014 (9th Cir. 2017).  For similar reasons, as explained in MIL #1, evidence or argument regarding the SBA's guarantees to PPP lenders is irrelevant to the charges in this case and would be a waste of time and tend to confuse and mislead the jury as to the issues of guilt.  Fed. R. Evid. 401-403.

### H.   Reciprocal Discovery

To date, none of the defendants have produced any discovery to the government despite the government's requests for reciprocal discovery pursuant to Federal Rule of Criminal Procedure 16(b).  The reciprocal discovery requirements of Federal Rule of Criminal Procedure 16(b) require the defendant to produce (A) information pertaining to "books, papers, documents, data, photographs, [or] tangible objects . . . [if] the defendant intends to use the item in the defendant's case-in-chief at trial;" (B) Reports of Examinations and Tests; and (C) "a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence" pertaining to expert witnesses.  Fed. R. Crim. P. 16(b).  To the extent any defendant attempts to introduce or use any documents (including texts, emails, or other electronic evidence) at trial that has not been produced and to which the government is entitled under Federal Rules of Criminal Procedure 12.1, 12.2, 16(b), or 26.2, or seeks to rely on an undisclosed affirmative defense, the government reserves the right to object and to request that the Court exclude the documents or the affirmative defense.

## VIII.   CONCLUSION

The government respectfully requests leave to file such supplemental memoranda as may become necessary during trial.