1  TRACY L. WILKISON
   Acting United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   SCOTT PAETTY (Cal. Bar No. 274719)
4  CATHERINE AHN (Cal. Bar No. 248286)
   BRIAN FAERSTEIN (Cal. Bar No. 274850)
5  Assistant United States Attorneys
   Major Frauds/Environmental and Community Safety Crimes Sections
6       1100/1300 United States Courthouse
        312 North Spring Street
7       Los Angeles, California 90012
        Telephone: (213) 894-6527/2424/3819
8       Facsimile: (213) 894-6269/0141
        E-mail:    Scott.Paetty@usdoj.gov
9                  Catherine.S.Ahn@usdoj.gov
                   Brian.Faerstein@usdoj.gov
10
   DANIEL S. KAHN
11 Acting Chief, Fraud Section
   Criminal Division, U.S. Department of Justice
12 CHRISTOPHER FENTON
   Trial Attorney, Fraud Section
13 Criminal Division, U.S. Department of Justice
        1400 New York Avenue NW, 3rd Floor
14      Washington, DC 20530
        Telephone: (202) 320-0539
15      Facsimile: (202) 514-0152
        E-mail:    Christopher.Fenton@usdoj.gov
16
   Attorneys for Plaintiff
17 UNITED STATES OF AMERICA

18                   UNITED STATES DISTRICT COURT

19            FOR THE CENTRAL DISTRICT OF CALIFORNIA

20 RICHARD AYVAZYAN,                    No. CR 20-579-SVW-2
      aka "Richard Avazian" and
21       "Iuliia Zhadko,"              GOVERNMENT'S OPPOSITION TO
   MARIETTA TERABELIAN,               DEFENDANT RICHARD AYVAZYAN'S
22    aka "Marietta Abelian" and      MOTION IN LIMINE TO PRECLUDE
         "Viktoria Kauichko,"         SUMMARY WITNESS (ECF 451);
23 ARTUR AYVAZYAN,                     MEMORANDUM OF POINTS AND
      aka "Arthur Ayvazyan," and      AUTHORITIES
24 TAMARA DADYAN,
   MANUK GRIGORYAN,                   Hearing Date: June 14, 2021
25    aka "Mike Grigoryan," and       Hearing Time: 1:30 p.m.
         "Anton Kudiumov,"            Trial Date:   June 15, 2021
26 ARMAN HAYRAPETYAN,                 Location:     Courtroom of the
   EDVARD PARONYAN,                                 Hon. Stephen V.
27    aka "Edvard Paronian" and                     Wilson
         "Edward Paronyan," and
28 VAHE DADYAN,

1        Defendants.

2

3        Plaintiff United States of America, by and through its counsel

4   of record, the Acting United States Attorney for the Central District

5   of California, Assistant United States Attorneys Scott Paetty,

6   Catherine S. Ahn, and Brian Faerstein, and Department of Justice

7   Trial Attorney Christopher Fenton, hereby files its opposition to

8   defendant Richard Ayvazyan's motion in limine to preclude summary

9   witness.  (ECF 451.)  This opposition is based upon the attached

10  memorandum of points and authorities, the files and records in this

11  case, and such further evidence and argument as the Court may permit.

12   Dated: June 11, 2021          Respectfully submitted,

13                                 TRACY L. WILKISON
                                   Acting United States Attorney
14
                                   SCOTT M. GARRINGER
15                                 Assistant United States Attorney
                                   Chief, Criminal Division
16

17                                 _____/s/_____
                                   SCOTT PAETTY
18                                 CATHERINE AHN
                                   BRIAN FAERSTEIN
19                                 Assistant United States Attorneys
                                   CHRISTOPHER FENTON
20                                 Department of Justice Trial Attorney

21                                 Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA
22

23

24

25

26

27

28

                                   2

**TABLE OF CONTENTS**

DESCRIPTION                                                      PAGE

TABLE OF AUTHORITIES.............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.............................1

I.    INTRODUCTION...............................................1

II.   STATEMENT OF FACTS.........................................2

      A.    Describing the Flow of Funds.........................2

      B.    Comparing the Many PPP and EIDL Loan Applications........3

      C.    The Summary Chart Exhibits Were Produced in a Form
            that Allowed the Defense to Prepare to Cross-Examine
            Summary Witnesses at Trial...........................4

III.  ARGUMENT...................................................5

      A.    The Summary Chart Exhibits Are Admissible Under
            Federal Rule of Evidence 1006........................5

            1.    The Materials Underlying the Summary Chart
                  Exhibits Are Admissible and Were Made Available
                  to Defendants..................................6

            2.    The Materials Underlying the Summary Chart
                  Exhibits Are Voluminous........................9

      B.    Ms. Robinson Will Testify Appropriately as a Lay
            Witness Under Federal Rules of Evidence 602 and 701......11

      C.    Neither Ms. Robinson's Testimony Nor the Summary Chart
            Exhibits Should Be Precluded Under Federal Rule of
            Evidence 403.........................................15

            1.    Ms. Robinson's Testimony Should Not Be Precluded
                  Under Rule 403.................................15

            2.    The Summary Chart Exhibits Should Not Be
                  Precluded Under Rule 403.......................17

      D.    Defendant's Proposed Restrictions on Ms. Robinson's
            Testimony and the Summary Chart Exhibits Should Be
            Rejected.............................................21

IV.   CONCLUSION.................................................23

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

**CASES**

Barsky v. United States, 339 F.2d 180 (9th Cir. 1964)..............20

Diamond Shamrock Corp. v. Lumbermens Mut. Cas. Co., 466 F.2d 722
    (7th Cir. 1972)...........................................13

Goldberg v. United States, 789 F.2d 1341 (9th Cir. 1986)..........13

United States v. Abbas, 504 F.2d 123 (9th Cir. 1974)..........22, 23

United States v. Aubrey, 800 F.3d 1115 (9th Cir. 2015).11, 13, 15, 23

United States v. Boesen, 541 F.3d 838 (8th Cir. 2008)..............21

United States v. Fullwood, 342 F.3d 409 (5th Cir. 2003)........... 16

United States v. George, 160 F. App'x 450 (6th Cir. 2005)..........19

United States v. Keplinger, 776 F.2d 678 (7th Cir. 1985)............6

United States v. Lemire, 720 F.2d 1327 (D.C. Cir. 1983)............19

United States v. Leon-Reyes, 177 F.3d 816 (9th Cir. 1999)..........21

United States v. Montgomery, 384 F.3d 1050 (9th Cir. 2004).9, 11, 21,
    23

United States v. Pree, 408 F.3d 855 (7th Cir. 2005)................13

United States v. Rizk, 660 F.3d 1125 (9th Cir. 2011)..........passim

United States v. Robinson, 774 F.2d 261 (8th Cir. 1985).............9

United States v. Scholl, 166 F.3d 964 (9th Cir. 1999)..............6

United States v. Vázquez-Soto, 939 F.3d 365 (1st Cir. 2019)........8

**OTHER AUTHORITIES**

Ninth Circuit Manual of Model Criminal Jury Instruction, No.
    4.17 ................................................20, 22

Ninth Circuit Manual of Model Criminal Jury Instructions, No.
    3.9 ................................................15, 22

**RULES**

Federal Rule of Evidence 403................................15, 17

Federal Rule of Evidence 602............................11, 12, 15

ii

### TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                          PAGE

Federal Rule of Evidence 701....................................11, 15

Federal Rule of Evidence 803(6).....................................6

Federal Rule of Evidence 902(11)....................................6

Federal Rule of Evidence 1006.......................................5

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The government intends to have a witness describe the flow of fraudulently obtained funds using summary chart exhibits based on documents produced in discovery.  Defendants have moved to preclude this testimony and these exhibits based on arguments already rejected by this Court and misrepresentations of the facts.  (ECF 451.) Defendant's motion is untethered to the facts of this case or governing law, and should be denied for the following reasons.

First, the summary charts the government seeks to admit, which synthesize voluminous information from bank records and COVID-19 disaster relief loan files, are admissible as summary exhibits under Rule 1006.  The government produced in discovery all of the bank records and loan file information – months before its more recent courtesy production of electronic copies of its trial exhibits to defendants – and these underlying materials are admissible as self-authenticating business records under Rules 803(6) and 902(11).

Second, contrary to defendant's unfounded assumptions, Ms. Robinson will appropriately be testifying as a lay, not expert, witness.  The government retained Ms. Robinson and the consulting firm for which she works (Stout Risius Ross, LLC) to assist in the government's underlying investigation in this case, not to provide expert witness testimony.  Ms. Robinson will be testifying as a summary witness based on her personal knowledge of the investigation and the materials underlying the summary charts.

Third, Ms. Robinson's anticipated testimony and the summary charts are highly probative of defendant's and his coconspirators' guilt for the charged offenses in the superseding indictment.  The

high probative value of this evidence is not substantially outweighed by any danger of unfair prejudice, including the purported grounds for prejudice defendant raises in his motion.

Finally, the limitations defendant proposes in the alternative on Ms. Robinson's testimony and the use of the summary charts at trial are unnecessary and not supported by law or the facts of this case, and should be rejected.

## II.  STATEMENT OF FACTS

### A.  Describing the Flow of Funds

The government retained Stout Risius Ross, LLC ("Stout"), including Managing Director Marylee Robinson, to assist in its investigation of defendants' extensive fraudulent activities.  In sum, Stout helped the government follow the money.  Having reviewed volumes of loan files and bank records, the Stout team assisted by describing the flow of funds from start to finish, including explaining how the fraudulently-obtained funds were used.

Although not required to do so, one month before trial, the government provided written notice to defendants of its intention to call a member of the Stout team – namely Ms. Robinson - to testify at trial.  The government disclosed the nature of Ms. Robinson's testimony, including that she would speak to the specific financial transactions referenced in the First Superseding Indictment:

> Ms. Robinson will identify the accounts at various banks and brokerages used by the defendants and their co-conspirators, including the bank and brokerage accounts referenced in the First Superseding Indictment.  She will describe flows of funds into, out of, and between these and other accounts, including to trace the use of Paycheck Protection Program (PPP) and Economic Injury Disaster Loan (EIDL) loan proceeds that were deposited or transferred into these and other accounts.

1   (ECF 451-3.)   The government further disclosed the basis of Ms.

2   Robinson's testimony, including her "review of bank and brokerage

3   account records, as well as accounting and other business records

4   from escrow companies and vendors, which previously have been

5   provided to the defendants in discovery."   (Id.)

6         Pursuant to the Court's order, on June 1, 2021, <u>two weeks before</u>

7   <u>trial</u>, the government provided defendants with a copy of the summary

8   chart exhibits that it anticipates Ms. Robinson will use as part of

9   her trial testimony.   (See ECF 451-8.)   This set of summary chart

10  exhibits (hereinafter referred to as the "Flow of Funds Summary

11  Charts"), describe the flow of fraudulently-obtained loan funds –

12  <u>i.e.</u>, the exhibits follow the money – based on Ms. Robinson's review

13  of bank records for around 24 accounts and files for around 27 loans,

14  which is voluminous.   (See ECF 451-6.)   Consistent with the

15  government's prior written notice, most of this information

16  specifically ties back to the accounts and loans referenced in the

17  First Superseding Indictment.   All of the information has been

18  previously produced in discovery and is admissible.

19        B.   **Comparing the Many PPP and EIDL Loan Applications**

20        Pursuant to the Court's order, on June 1, 2021, <u>two weeks before</u>

21  <u>trial</u>, the government also provided defendants with a copy of a set

22  of summary chart exhibits summarizing information from the many

23  COVID-19 disaster relief loan applications submitted (or caused to be

24  submitted) by defendants (hereinafter the "Loan Summary Charts" and,

25  together with the "Flow of Funds Summary Charts," the "Summary Chart

26  Exhibits").   The Loan Summary Charts are based on voluminous loan

27  files for approximately 60 loans alleged to be within the scope of

28

the conspiracy.  (See ECF 451-7.)  The government anticipates that a case agent will testify about the Loan Summary Charts at trial.[1]

### C. The Summary Chart Exhibits Were Produced in a Form that Allowed the Defense to Prepare to Cross-Examine Summary Witnesses at Trial

The Summary Chart Exhibits provided to defendants on June 1 were in near-final form.  In the cover email attaching the Summary Chart Exhibits, the government explained that it reserved certain rights, including: (i) "the right to change layout/presentment as needed for technology or other presentation purposes but underlying content remains the same"; (ii) "the right to remove information from summary exhibits or correct information, as needed"; and (iii) "the right to not seek admission of all the information in the list."  (ECF 451-8.) Accordingly, the government marked the Summary Chart Exhibits "draft".  (See ECF 451-6, 451-7.)  None of these reserved rights, however, potentially affect the content of the Summary Chart Exhibits such that they would result in a substantive change that would hinder the defense's ability to effectively prepare to cross-examine Ms. Robinson or a case agent at trial.[2]

---

[1] The government does not anticipate that Ms. Robinson will use the Loan Summary Charts as part of her trial testimony.

[2] In the course of their review of the Summary Chart Exhibits, counsel for defendant R. Ayvazyan flagged that the exhibits cited to certain government exhibit numbers that were not on the government's trial exhibit list.  (See ECF 451-9.)  The government explained that this was a citation error caused by the fact that some of the government exhibit numbers changed between the time when the government provided the summary chart exhibits and the trial exhibit list to the defendants.  (See id.)  The detailed descriptions of the government exhibits on which the summary chart relied (i.e., name of account holder, bank, and last four digits of account number) remained the same.  Defendants therefore had notice of the documents on which the summary chart exhibits rely and, with the aid of the detailed index the government had provided in discovery, can easily locate these documents (which had been previously produced to defendants in discovery).

4

III.  **ARGUMENT**

    **A.**    **The Summary Chart Exhibits Are Admissible Under Federal Rule of Evidence 1006**

    Defendant contends that the "Summary Charts should be excluded because the government has not met either [Rule 1006's] or the Ninth Circuit's basic prerequisites for admitting summary charts."  (ECF 451 at 4-5.)  Defendant is wrong.

    Federal Rule of Evidence 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006.  The Advisory Committee Notes to Rule 1006 add that, "[t]he admission of summaries of voluminous books, records, or documents offers the only practicable means of making their contents available to judge and jury.  The rule recognizes this practice, with appropriate safeguards."  Fed. R. Evid. 1006, 1972 Advisory Committee Notes; see also United States v. Rizk, 660 F.3d 1125, 1130 (9th Cir. 2011) ("The purpose of the rule is to allow the use of summaries when the documents are unmanageable or when the summaries would be useful to the judge and jury.") (citation omitted).

    The Ninth Circuit has explained that, "[a] proponent of summary evidence must establish that the underlying materials upon which the summary is based (1) are admissible in evidence and (2) were made available to the opposing party for inspection."  Rizk, 660 F.3d at 1130.  While the underlying materials "must be admissible, [they] need not themselves be admitted into evidence."  Id.  With respect to the contents of the summary charts, any contention that the chart may

contain inaccuracies or omissions goes to the weight of the evidence, not its admissibility.  Rizk, 660 F.3d at 1131 at n.2; see also United States v. Scholl, 166 F.3d 964, 978 (9th Cir. 1999) ("'Generally, objections that an exhibit may contain inaccuracies, ambiguities, or omissions go to the weight and not the admissibility of the evidence.'" (quoting United States v. Keplinger, 776 F.2d 678, 694 (7th Cir. 1985))).  All of these criteria are met here.

    1.  The Materials Underlying the Summary Chart Exhibits Are Admissible and Were Made Available to Defendants

Defendant argues that the government "has not established the admissibility of the evidence underlying" the Summary Chart Exhibits, claiming the charts "rely on exhibits that the government has yet to produce to defendants."  (ECF 451 at 5.)  This is false.

The government produced in discovery all of the underlying information reflected in the Summary Exhibit Charts.  That information consists of bank records and loan files, along with certifications from the business entities that provided the records. As the government explains more fully in its motion in limine #4 to admit self-authenticating business records, all of these materials are admissible as business records and self-authenticating under Federal Rules of Evidence 803(6) and 902(11).  (See ECF 468.)  In short, the evidence underlying the Summary Chart Exhibits is both admissible and has been made available to defendant for inspection. Rizk, 660 F.3d at 1130.

Moreover, defendant's contention that the "exhibits" themselves have not yet been produced is factually inaccurate and misleading. It is also wholly irrelevant.  The government has clearly identified for defendant the self-authenticating business records summarized in

6

the Summary Chart Exhibits.  Specifically, the Summary Chart Exhibits refer to exhibit numbers reflected in the exhibit list the government provided to the defense on June 1, 2021, and the exhibit list in turn refers to the Bates-numbers for all of the materials previously produced to the defense.  The Summary Exhibit Charts also describe the records and loan files on which they rely.  While not required to do so, the government has endeavored to provide defendants with electronic copies of all of the government's trial exhibits in advance of trial.  (See ECF 473.)  But, as this Court recognized in its Order denying other defendants' ex parte applications to continue trial, "an electronic copy of each exhibit is not what allows an attorney to meaningfully prepare for trial; rather, it is the documents underlying those exhibits that allow meaningful preparation."  (ECF 492 at 1 (emphasis in original).)  Defendants have had these documents for months.

Defendant also claims that the Summary Chart Exhibits "contain images that have not been produced in discovery and that are not admissible as evidence."  (ECF 451 at 6.)  Defendant points only to four photographs of residential properties sourced from Zillow.com, claiming that because the government "has not disclosed how the images were obtained, when, by whom, or what they purported to be," they are inadmissible.  (Id.)  This claim is false.  The government included on each slide the specific link to the Internet website where the relevant pictures may be found.  And defendant redacted it.

Defendant also argues that, because "the images were not included on the government's exhibit list," they are therefore inadmissible.  This too is false.  The images are part of the Summary Chart Exhibits that were timely disclosed to defendant pursuant to

the Court's order and were therefore timely disclosed to defendant.
Defendant's claim that this timely disclosure provided insufficient
notice is frivolous and, quite frankly, a waste of the Court's time –
particularly given that the Internet link to the pictures were
included alongside the pictures.

Moreover, during trial, case agents with personal knowledge of
the relevant properties will identify these images as reflecting
houses purchased by defendants in furtherance of the charged
conspiracies.  There is no requirement that a witness have personally
taken a photograph being offered into evidence in order to
authenticate the photograph so long as they have personal knowledge
of what is depicted.  See, e.g., United States v. Vázquez-Soto, 939
F.3d 365, 374 (1st Cir. 2019) ("A photograph's contents, buttressed
by indirect or circumstantial evidence, can form a sufficient basis
for authentication even without the testimony of the photographer or
some other person who was present at the time it was taken.")
(citation omitted).  In any event, defendant's claim that the four
photographs invalidate the admissibility of the Summary Chart
Exhibits as a whole is also frivolous and should be rejected.[3]

---

[3] Defendant also argues that the Summary Chart Exhibits "rely on
exhibits that were not included on the government's witness [sic]
list," referring to the three exhibit numbers in the charts that were
not on the government's trial exhibit list.  Despite the government
explaining to defendant that the references to those exhibit numbers
were "citation errors," not omissions (i.e., several incorrect
exhibit numbers were inadvertently listed in the charts), defendant
still raises this issue with the Court as a purported basis for
precluding the admissibility of the Summary Chart Exhibits
altogether.  (See ECF 451-9.)

1          2.   The Materials Underlying the Summary Chart Exhibits
2               Are Voluminous

3       Defendant's challenge to the voluminousness of the records
4  underlying the Summary Chart Exhibits similarly is without merit.
5  Defendant claims, erroneously, that the government's recent motion to
6  redact the superseding indictment at trial with respect to the
7  allegation of 151 loans "limits the evidence the government must
8  present at trial to evidence related to the 17 loans actually charged
9  in the indictment." (ECF 451 at 5.)  That is not the law.

10      "The rule is well established that the government in a
11 conspiracy case may submit proof on the full scope of the conspiracy;
12 it is not limited in its proof to the overt acts alleged in the
13 indictment." Rizk, 660 F.3d at 1131 (collecting cases within and
14 outside of Ninth Circuit).  The defendant in Rizk argued that summary
15 charts reflecting 96 real estate transactions were "overbroad" where
16 the "overt acts and substantive counts of the indictment identified
17 only nine specific properties." Id. at 1129, 1129 n.1.  The court
18 rejected this argument, finding that the "real estate transactions
19 shown on the charts were 'inextricably intertwined' with the
20 conspiracy charge" and the "government offered the summary charts to
21 show the full scope of that conspiracy and as proof that the non-
22 specified transactions were not 'other acts' at all." Id. at 1132.
23 See also United States v. Montgomery, 384 F.3d 1050, 1062 (9th Cir.
24 2004) (summary exhibit admissible where all entries were
25 "'inextricably intertwined' with the conspiracy, and therefore not
26 subject to Rule 404(b), because each occurred within the temporal
27 scope of the conspiracy and comprised the conspiracy"); United States
28 v. Robinson, 774 F.2d 261, 276 (8th Cir. 1985) ("The summary properly

1   included all 105 applicants [rather than the 15 named in the

2   indictment], because information regarding all of these individuals

3   was relevant in delineating the enormous scope of the [loan fraud]

4   scheme.").

5       The same reasoning applies here.  The redacted superseding

6   indictment that will be submitted to the jury, following the Court's

7   order granting the government's motion to redact (ECF 478), alleges

8   broad conspiracies (Counts 1 and 26) among at least eight charged

9   coconspirators to submit fraudulent COVID-19 disaster relief loan

10   applications and launder the ill-gotten proceeds of those loans.

11   (See generally ECF 422-2.)  With respect to the alleged overt acts,

12   the redacted superseding indictment specifies that defendants

13   "commit[ted] the following overt acts, among others," in detailing

14   examples of how the charged conspiracy was carried out.  (Id., ¶ 32.)

15   Thus, the alleged overt acts do not limit the breadth of the charged

16   conspiracies to 17 loans, as defendant contends.  See Rizk, 660 F.3d

17   at 1129 n.1 (summary charts not overbroad where "the indictment

18   alleged that the defendants committed the enumerated overt acts,

19   'among others,' in furtherance of the conspiracy").

20       Indeed, in granting the government's motion to redact, the Court

21   found that the removal of the allegation about 151 loans being part

22   of the alleged conspiracies "does not in any way change the charged

23   offenses, the overt acts and objects of the conspiracy, or any of the

24   allegations in the indictment other than the total number of alleged

25   fraudulent loans and their value."  (ECF 478 at 22.)  Redaction of

26   the superseding indictment allows the government to meet its burden

27   of proof without having to prove each of the 151 fraudulent loan

28   applications.  But it does not alter the relevance of the numerous

10

1  fraudulent loan applications beyond the 17 described in the overt

2  acts – including multiple applications made on behalf of the same

3  companies identified in the overt acts - to the charged conspiracies.

4  Rizk, 660 F.3d at 1132; Montgomery, 384 F.3d at 1062.

5      The loan file and bank account records that underlie the Summary

6  Chart Exhibits pertain directly to the charged bank/wire fraud and

7  money laundering conspiracies.  The Flow of Funds Summary Charts

8  summarize information deriving from around 24 separate bank accounts

9  and around 27 loan files.  The Loan Summary Charts pertain to

10 approximately 60 separate loan files, including loan applications,

11 supporting documentation, loan agreements, and other information

12 considered by the lenders in connection with processing the loans.

13 Presentation of this voluminous evidence at trial would be

14 "unmanageable," and use of the proposed Summary Chart Exhibits "would

15 be useful to the judge and jury."  Rizk, 660 F.3d at 1130 (underlying

16 records were "standard real estate records"); see also United States

17 v. Aubrey, 800 F.3d 1115, 1130 (9th Cir. 2015) ("Multiple bankers'

18 boxes of bank statements constitute the type of materials anticipated

19 by Rule 1006.").

20     The Summary Chart Exhibits summarize admissible, voluminous

21 records that have been properly made available to defendant for his

22 review.  They are therefore admissible under Federal Rule of Evidence

23 1006.

24     **B.  Ms. Robinson Will Testify Appropriately as a Lay Witness**
       **Under Federal Rules of Evidence 602 and 701**

25

26     Defendant argues that "Ms. Robinson's testimony should be

27 excluded because it will not be based on personal knowledge, as

28 required by Federal Rules of Evidence 602 and 701."  (ECF 451 at 6.)

Defendant makes a number of assumptions, without any factual basis, about the role of Ms. Robinson and Stout in connection with the government's investigation.  Among other things, defendant claims that Ms. Robinson "has no independent knowledge of the facts at issue" and "has assumed the role of an expert witness while dodging the rigorous standards applied to expert testimony."  (Id. at 7.) Defendant is mistaken on the facts and the law.

As a member of the Stout investigatory team, Ms. Robinson will be testifying in a lay capacity under Rules 602 and 701, based on her personal knowledge of the materials underlying the Flow of Funds Summary Charts and role in the investigation.  Ms. Robinson will provide this foundation for her personal knowledge of the underlying information during her direct examination.  See Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony.").  As explained, her testimony will be limited to describing the flow of funds described in the Flow of Funds Summary Charts (ECF 451-6), including identifying the bank and brokerage accounts used by defendants to receive, transfer, and spend the proceeds of the fraudulent PPP and EIDL loans.  (ECF 451-3.)

Defendant recognizes that the "Ninth Circuit allows summary witnesses to testify when those witnesses are summarizing their personal knowledge gained by participating in their investigation of a case."  (ECF 451 at 6-7 (citing United States v. Aubrey, 800 F.3d 1115 (9th Cir. 2015).)  Indeed, in Aubrey, the Ninth Circuit concluded that a forensic auditor from the United States Department of Housing and Urban Development ("HUD") serving as a summary witness "was not required to be certified as an expert" even though he "might have been eligible to be certified as an expert" and he made "two

12

passing references to the 'last-in-first-out [accounting] method."
Aubrey, 800 F.3d 1129.  The HUD forensic auditor "introduced a series
of charts reflecting the movement of funds among [defendant's]
business and personal accounts, following each [housing authority]
requisition payment between July 2003 and June 2004."  Id. at 1122.
The Ninth Circuit held that it was not error for the district court
to allow the HUD auditor to testify as a lay summary witness, where
the court "properly restricted his testimony to the areas in which he
had personal knowledge (the documents, investigation, and the methods
he used to prepare his summary) and prevented him from providing in-
depth analysis of various accounting methods."  Id. at 1129.  See
also Goldberg v. United States, 789 F.2d 1341, 1343 (9th Cir. 1986)
(affirming district court's determination that the testimony of "an
experienced revenue agent" as to summaries of voluminous tax records
did not include any expert opinions or conclusions); United States v.
Pree, 408 F.3d 855, 869 (7th Cir. 2005) ("When a summary witness
simply testifies as to what the government's evidence shows, he does
not testify as an expert witness.").

The government expects Ms. Robinson will provide the same type
of testimony using the Flow of Funds Summary Charts, including
introducing and describing the "movement of funds" reflected in the
charts.  While Ms. Robinson has worked with other Stout personnel in
connection with its investigative role, that fact does not undermine
her personal knowledge or ability to testify as a summary witness in
a lay capacity.  See, e.g., Diamond Shamrock Corp. v. Lumbermens Mut.
Cas. Co., 466 F.2d 722, 727 (7th Cir. 1972) ("It is not necessary . .
. that every person who assisted in the preparation of the original
records or the summaries be brought to the witness stand.").

13

Defendant points to Ms. Robinson's qualifications in her professional bio on Stout's website, including the fact that her "list of license and designations includes Certified Public Accountant (CPA), Certified in Financial Forensics (CFF) and Certified Fraud Examiner (CFE)." (ECF 451 at 2.)  But Ms. Robinson's impressive qualifications do not dictate the type of testimony (lay or expert) she may or will provide at trial.  Rather, the content of her testimony does.  Here, just as law enforcement agents often do in connection with investigations for which they have assisted, Ms. Robinson will be providing summary testimony about her personal knowledge of the voluminous information developed as part of Stout's assistance in the government's investigation.  She is quite literally following the money – that simply does not require her to form an expert opinion; it is descriptive in nature.

In fact, as defendant acknowledges, Ms. Robinson's Stout bio reflects that she "specializes in providing expert testimony <u>and</u> litigation consulting services, including . . . conducting fraud and forensic accounting investigations." (ECF 451 at 2 (citing https//www.stout.com/en/professionals/marylee-robinson) (emphasis added).)  Her consulting services include "extensive experience providing fraud and forensic accounting services in white collar crime cases with an emphasis on matters involving the analysis of voluminous documents and data" as well as providing "assistance to the Department of Justice in a series of investigations of corporate executives . . ." <u>See</u> https://www.stout.com/en/professionals/marylee-robinson.  Ms. Robinson, and the Stout team, have served in this consulting, investigative role here, and she will testify

14

1     appropriately as a lay, summary witness.  Fed. R. Evid. 602, 701;

2     Aubrey, 800 F.3d 1129.

3          **C.    Neither Ms. Robinson's Testimony Nor the Summary Chart**
           **Exhibits Should Be Precluded Under Federal Rule of Evidence**

4          **403**

5          Defendant also challenges the admissibility of both Ms. Robinson

6     as a testifying summary witness and the Summary Chart Exhibits under

7     Rule 403.  Defendant's arguments on both grounds are without merit.

8          1.   Ms. Robinson's Testimony Should Not Be Precluded Under
                Rule 403

9

10         Defendant contends that "Ms. Robinson's professional

11    qualifications and history of testifying as an expert on behalf of

12    the Department of Justice will improperly influence the jury's view

13    of the evidence in the summary charts, unduly prejudicing the

14    defendants."  (ECF 451 at 8.)  Defendant further claims that allowing

15    Ms. Robinson to testify "will place the imprimatur of a certified

16    public accountant on contested issues at trial."  (Id. at 9.)

17         Crediting defendant's concerns about the qualifications of Ms.

18    Robinson as a driving basis to exclude her testimony as unfairly

19    prejudicial would effectively disqualify numerous witnesses who

20    testify on behalf of the government, including IRS and FBI agents who

21    similarly have accounting credentials and testify as lay witnesses.

22    In any event, defendant's concerns are sufficiently mitigated by the

23    instruction the government expects the Court will provide to the jury

24    regarding the Credibility of Witnesses.  See Ninth Circuit Manual of

25    Model Criminal Jury Instructions, No. 3.9.  The jury can be trusted

26    to follow the Court's instructions.  In addition, defendant will have

27    a full opportunity to cross-examine Ms. Robinson regarding her

28    credentials, personal knowledge, and investigative findings, as well

as "the witness's interest in the outcome of the case, if any" and "the witness's bias or prejudice, if any." Id.; see also Rizk, 660 F.3d at 1134 (defendant had opportunity "to cross-examine the government witnesses who prepared" summary charts).

Defendant also speculates as to the degree of prejudice that purportedly could arise out of the order in which Ms. Robinson testifies. According to defendant, Ms. Robinson should neither be permitted to testify as an initial "overview witness" (citing law outside the Ninth Circuit) or at the end of the government's case (citing United States v. Fullwood, 342 F.3d 409, 413 (5th Cir. 2003)).[4] (ECF 451 at 9.) Wherever Ms. Robinson testifies within the government's case-in-chief, defendant still will have the mitigating safeguards of the Court's cautionary instruction to the jury and the ability to cross-examine Ms. Robinson fully. In any event, the government does not anticipate calling Ms. Robinson among its first witnesses as an "overview witness" nor at the end of its case-in-chief.

Balanced against any minimal risk of unfair prejudice, Ms. Robinson's anticipated testimony is highly probative as to the evidence of defendants' guilt. Ms. Robinson will aid the jury in its consideration of voluminous bank records and loan files that would be "unmanageable" without a summary witness or summary charts. Rizk, 660 F.3d at 1130. Ms. Robinson's testimony will be particularly probative as to the money laundering conspiracy charge, as she will testify about the flow of funds from the fraudulent loans through the

---

[4] Notably, Fullwood involved a summary witness who served as the government's "final rebuttal witness," not just a witness during its case-in-chief. Fullwood, 342 F.3d at 413.

various bank accounts defendants controlled and the expenditures made with those loan proceeds.  Ms. Robinson's testimony will provide an efficient vehicle, based on the underlying admissible bank records and loan files, for the jury's consideration of this evidence.

The high probative value of Ms. Robinson's testimony thus is not substantially outweighed by the danger of unfair prejudice, and she should be permitted to testify at trial as a summary witness.

2.   The Summary Chart Exhibits Should Not Be Precluded Under Rule 403

Defendant raises similar arguments in seeking to exclude the highly probative Summary Chart Exhibits under Rule 403, all of which should be rejected.

First, with respect to probative value, defendant contends the charts "contain irrelevant information" based on the government's motion to redact the superseding indictment with respect to the allegation about 151 loans.  (ECF 451 at 10-11.)  Defendant once again claims that the government's evidence at trial should be arbitrarily limited to "the 17 loans included in the redacted superseding indictment, and the other loan applications are irrelevant."  (Id. at 11.)  For the reasons previously discussed in section III.A.2 above, defendant's argument is contrary to the law of conspiracy and the Federal Rules of Evidence, and belied by the factual relevance of the loan files and bank records underlying the Summary Chart Exhibits to the extensive fraudulent conduct charged in this case.  The additional loan applications reflected in the Summary Chart Exhibits are directly relevant to the overall charged conduct – and contrary to defendant's claim that "allowing the summary witness to testify about 60 loans" would be "wasting both the jury's and

Court's time," (ECF 451 at 11), it would be an even more significant waste of time to preclude this admissible and relevant evidence coming in through the Summary Chart Exhibits.[5]

Second, with respect to supposed unfair prejudice, defendant argues that the charts are "inflammatory" because the Flow of Funds Summary Charts contain "inflammatory photos of homes" and "unflattering photos of the named defendants." (ECF 451 at 11.) There is nothing inflammatory about these photos, and, in fact, they are highly probative to the jury's consideration of the charges against defendants. The photos of the homes demonstrate the true and accurate nature of the properties purchased using the millions of dollars in fraudulent proceeds from defendants' scheme, including an aerial shot of defendant's sprawling, $3.25 million mansion in Tarzana. (See ECF 451-6 at 8.)

As for the photos of the defendants, the photos will be helpful to the jury in tracking which of the numerous defendants (who will be in court and visible to the jury) were responsible for each of the financial transactions reflected in the summary charts. Defendant

_____

[5] Defendant also claims that two pages of the summary charts "are misleadingly titled 'Example Loans Applied for by Companies Included in First Superseding Indictment,' which implies that each of the loans on those pages was charged in the indictment." (ECF 451 at 10 (referring to ECF 451-7 at 4-5).) Defendant's contention is that the government is "attempting to have their cake and eat it too" because "most of the loans on those two pages are not mentioned in the indictment." (Id.) There is nothing misleading about the title or content of these pages. As the heading states, the multiple loan applications reflected in the chart were made on behalf of companies (or purported companies) that are identified in the superseding indictment even if not all of the loans are similarly identified. The fact that a number of these companies, at the direction of defendant and his coconspirators, submitted multiple COVID-19 disaster relief loan applications in the span of just a few months' time is highly probative of the fraudulent nature of the loan applications.

cites an unpublished case from the Sixth Circuit, United States v. George, 160 F. App'x 450 (6th Cir. 2005), for the proposition that a "mug shot tends to make people believe that the person is 'bad,' and therefore can be unfairly prejudicial."  (ECF 451 at 11-12.)  But the photographs in the Flow of Funds Summary Charts are not "mug shots." They are largely sourced from Department of Motor Vehicles identification photographs that have been produced to defendants in discovery, and do not carry the same potential prejudicial impact a photo of someone in jail or in an orange jumpsuit might.[6]

Third, defendant also contends that the Summary Chart Exhibits are "argumentative" because, for example, some are "titled 'Use of EIDL/PPP Funds' and purport to show transfers of money between entities that received loan funds and other businesses."  (ECF 451 at 12.)  While defendant would prefer the government use the "underlying images of bank records" to illustrate the use of funds and transfers, the entire point of the summary exhibits is to synthesize voluminous records that would be unmanageable to present to the jury.  Defendant does not appear to take issue with the accuracy of the underlying information (though he could do so on cross-examination), and summary charts need not contain defendant's version of events.  See United States v. Lemire, 720 F.2d 1327, 1349 (D.C. Cir. 1983) ("A summary, to be admissible, we think need not give effect to the contentions of the accused." (quoting Flemister v. United States, 260 F.2d 513, 517 (5th Cir. 1958))); Barsky v. United States, 339 F.2d 180, 181 (9th

_____

[6] In any event, although the government does not believe it would be necessary or applicable under the circumstances, the Court can give a limiting instruction regarding the photographs, or a variation thereof, if necessary.  See Ninth Circuit Manual of Model Criminal Jury Instructions, No. 2.13 ("Photos of Defendant, Mugshots").

Cir. 1964) (rejecting defendant's contention that "summary did not contain [his] version of his [s]ource of the money and, therefore, it was incomplete").

Defendant further points to the Summary Chart Exhibits' selection of "certain transactions to highlight devoid of any qualifying information." (ECF 451 at 12 (citing ECF 451-6 at 12).) But there is nothing inherently misleading about the highlighting or bolding of the line-items in the one page defendant identifies, or the information that was selected for inclusion in the charts. See, e.g., Rizk, 660 F.3d at 1125 (summary charts approved by court included "color-coding"). And defendant will have the full opportunity to cross-examine Ms. Robinson about these and other aspects of the Flow of Funds Summary Charts. Id. at 1134.

Defendant's final argument - that the "summary charts do not contain straightforward presentation of facts" but instead "ultimate conclusions the government intends to argue to the jury" – is not supported by the actual content reflected in the summary charts, which the Court has available for its review. (ECF 451-6, 451-7.) The Flow of Funds Summary Charts describe the flow of funds including to show how the PPP and EIDL loan proceeds were used, and the Loan Summary Charts list loan applications and related information that is no doubt relevant. Nevertheless, the government has proposed in its proposed jury instructions (ECF 373), and anticipates the Court will provide, the Ninth Circuit's model criminal instruction for "Charts and Summaries Admitted Into Evidence," which should provide adequate safeguards that the jury will give the Summary Chart Exhibits "only such weight as [the jurors] think the underlying material deserves." Ninth Circuit Manual of Model Criminal Jury Instructions, No. 4.17.

1    Defendant's driving concern rests on his realization that the

2  voluminous records and facts summarized in the charts, drawn fairly

3  upon the underlying evidence obtained by the government, proves his

4  guilt.  But "evidence is not unfairly prejudicial merely because it

5  tends to prove a defendant's guilt." United States v. Boesen, 541

6  F.3d 838, 848-49 (8th Cir. 2008) (finding summary charts not unfairly

7  prejudicial).  The Ninth Circuit similarly has "previously rejected

8  403 challenges to the admission of summary evidence that was relevant

9  and not unfairly prejudicial," and defendant presents no compelling

10 basis for a different conclusion here.  See Rizk, 660 F.3d at 1133;

11 see also United States v. Montgomery, 384 F.3d 1050, 1062 (9th Cir.

12 2004) ("No unfair prejudice resulted, both because the district court

13 gave a limiting instruction and because defendants had notice of the

14 [summary] exhibit and an opportunity to cross-examine the agent about

15 her assumptions.").[7]

16    **D.   Defendant's Proposed Restrictions on Ms. Robinson's
          Testimony and the Summary Chart Exhibits Should Be Rejected**
17

18    Defendant alternatively proposes that certain limits be placed

19 on Ms. Robinson's testimony if she is permitted to testify.  The

20 Court should reject defendant's proposed limitations.

21

22

_____

23    [7] Defendant relies several times on United States v. Leon-Reyes,
   177 F.3d 816, 820 (9th Cir. 1999), including the Ninth Circuit's
24 cautionary words that "[s]ummaries are normally prepared by an
   interested party and therefore may not be completely accurate or may
25 be tainted with the preparing party's bias." Id. at 820. (See ECF
   451 at 7, 8, 11.)  However, Leon-Reyes pertained to the preparation
26 of "summaries of oral testimony" from a separate, prior trial, id. at
   820 (emphasis added), a uniquely different scenario than summaries of
27 financial information reflected in business records.  The court in
   Leon-Reyes nonetheless affirmed the district court's admission of
28 summary exhibits, endorsing the "numerous advantages" that summary
   exhibits provide during trial.  Id.

First, consistent with his erroneous arguments described above, defendant asserts that "Ms. Robinson's testimony and the summary charts she presents should be limited to loans charged in the superseding indictment." (ECF 451 at 14.) As previously explained, testimony and evidence regarding numerous fraudulent loans and attendant financial transactions beyond those identified in the overt acts are directly relevant to the charged conspiracies in this case and highly probative of defendant's guilt. (See infra section III.A.2.) Defendant's arbitrary limitation on the government's evidence is neither supported in the law nor the facts of this case, and should be rejected.

Second, defendant states that "limiting instructions must be given during Ms. Robinson's testimony to ensure that the jury understands how to interpret Ms. Robinson's testimony, and the weight to ascribe that testimony." (ECF 451 at 14.) A limiting instruction at the time of Ms. Robinson's testimony is unnecessary, as the government expects that the jury will be instructed on the credibility of witnesses as well as charts and summaries admitted into evidence before the jury deliberates. See Ninth Circuit Manual of Model Criminal Jury Instructions, Nos. 3.9, 4.17.

Third, defendant contends that the Summary Chart Exhibits "should not be admitted into evidence and should not be given to the jury during their deliberations." (ECF 451 at 14.) Defendant cites a Ninth Circuit case from 1974 for the proposition that "where charts are used to aid witness testimony, they should not be submitted to the jury." (Id. (citing United States v. Abbas, 504 F.2d 123 (9th Cir. 1974).) What defendant fails to mention, however, is that the charts at issue in Abbas "summariz[ed] the testimony of the

witnesses" and were prepared by the government as "allegedly demonstrative charts," which "should not have gone to the jury for use during their deliberations." Abbas, 504 F.2d at 124, 125. That factual scenario is inapposite and stands in stark contrast to the other more recent Ninth Circuit cases discussed herein where the court has approved of the use and admission of summary charts into evidence. See, e.g., Rizk, 660 F.3d at 1134; United States v. Aubrey, 800 F.3d 1115, 1130 (9th Cir. 2015); Montgomery, 384 F.3d at 1062. Indeed, the Ninth Circuit recognizes the appropriateness of the admission of summary charts into evidence given its recommended model criminal jury instruction for this very evidence.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to preclude summary witness testimony, and permit the government to (i) call Marylee Robinson as a summary witness at trial, and (ii) introduce into evidence the Summary Chart Exhibits the government has produced to defendants.