Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Meghan L. Newcomer (*pro hac vice*)
*mnewcomer@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

John L. Littrell (SBN 221601)
*jlittrell@bklwlaw.com*
Ryan V. Fraser (SBN 272196)
*rfraser@bklwlaw.com*
**BIENERT KATZMAN LITTRELL WILLIAMS, LLP**
601 W. 5th Street, Suite 720
Los Angeles, CA 90071
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

*Counsel for Defendant Marietta Terabelian*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　*Plaintiff,*<br><br>　　v.<br><br>RICHARD AYVAZYAN, MARIETTA TERABELIAN, *et al.*,<br><br>　　　　*Defendants.* | Case No. 20-cr-579 (SVW)<br><br>**JOINT OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* #4 TO ADMIT BUSINESS RECORDS UNDER FRE 902(11)**<br><br>Hon. Stephen V. Wilson<br><br>Hearing Date:　June 14, 2021<br>Time:　　　　　1:30 p.m. |

# **TABLE OF CONTENTS**

I. THE COURT SHOULD DENY THE MOTION TO AUTHENTICATE AS MOOT ................................................................................................ 2

II. THE COURT SHOULD DENY THE MOTION TO ADMIT AS TO DOCUMENTS OR PORTIONS THEREOF THAT ARE HEARSAY AND ARE NOT BUSINESS RECORDS ............................................................. 3

III. THE COURT SHOULD DENY THE MOTION TO ADMIT BECAUSE—REGARDLESS OF AUTHENTICITY—THE GOVERNMENT HAS NOT PROVEN ADMISSIBILITY ................................. 6

    A. The Government Has Not Laid Foundation For Relevancy of Several Exhibits Offered ................................................................ 6

        1. Exhibits 3.a-3.t; 4.a-4.z; 5.a-5z; and 6.a-6.y (Loan Files and Related Documents for Loans Not in First Superseding Indictment) ................................................... 6

        2. Exhibits 30-33 (Productions from Escrow Companies) ................. 8

        3. Exhibits 34-42 (Sales of Goods & Services, Brokerages, Leasing) ........................................................ 8

        4. Exhibits 85-92 and 100-111 (Bank Records) ................................. 9

    B. PRESERVATION OBJECTION ON *KASTIGAR* GROUNDS ............... 10

IV. CONCLUSION .................................................................................................. 11

Rule 902(11) provides for a mechanism by which the government can have a witness certify that an identified government exhibit is authentic without testifying at trial. Were the government's request limited to the authenticity of identified, relevant documents actually kept in this form in the regular course of business, the defendants would readily consent to authenticity. Indeed, the defendants have agreed regarding the authenticity of many of the at-issue documents. But the government is attempting to stretch a rule of authenticity to mandate blanket admission of over 19,000 pages of documents—some business records and some not—without a separate showing of admissibility. Moreover, the government's exhibits do not correspond to single documents. Each exhibit is a composite of multiple (sometimes dozens) of various documents, each of which is subject to a separate analysis of

(a) whether the document is authentic—whether under Rule 901 or Rule 902,

(b) what portion of the document is subject to an exception from hearsay such as business records, and

(c) whether the document is otherwise admissible.

Despite being styled as an authenticity motion, prong (a) is the only one that is not at issue here (for most exhibits). Other than composites of unrelated accounts being combined into one exhibit (which should be deemed inadmissible under any of the foregoing three prongs), a majority of the documents appear to be authentic. The questions presented are therefore which portions of the documents are business records within the meaning of Rule 803(6) (or otherwise not hearsay), and which subset of those business records are admissible.

The business records exception does not guarantee admissibility. Aside from relevance, Rule 403 issues, and government's shotgun approach to trial exhibits involving the combination of unrelated documents into a single exhibit, even hearsay issues remain: the business records exception only covers one level of hearsay (the statement from the custodian to the Court and jury); it does not cover the underlying

statements in an email, loan application, chat message, or other out-of-court statements between a customer/client and custodian.  It is the government's burden to prove admissibility as to each exhibit, each of the documents that underlie that exhibit, and every portion of those documents.  The government's request for blanket admissibility—rather than authentication—should therefore be denied without prejudice.

The Court's standing order requires that the government submit its exhibits to the Court by the first day of trial, likely in part because ruling on evidentiary issues is facilitated by the ability to review any exhibit at issue.  The government filed its motion with purported "Descriptions" of each exhibit, but those "Descriptions" frequently omit material information including other accounts included in an exhibit, the type of documents involved, page counts, and date ranges.  A denial without prejudice will permit the government to submit copies of the exhibits they propose to admit along with a proffer as to why the exhibits are admissible, including explanations for second-level hearsay, relevance, and the "shotgun approach" combination of unrelated documents into a single exhibit.

I.   **THE COURT SHOULD DENY THE MOTION TO AUTHENTICATE AS MOOT**

Rule 901 requires that "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a). Rule 902 is an exception to this requirement, stipulating that certain evidence "require[s] no extrinsic evidence of *authenticity*" as part of the admission process.  Fed. R. Evid. 902 (emphasis added).  The defendants have not objected to the authenticity of any of the exhibits at issue, and do not intend to do so.  Rule 902 is therefore not implicated and the government's motion should be denied as moot.  Whatever portion of the evidence that proves relevant to the government's case-in-chief should be offered as that relevance is established in the ordinary course of trial.

## II. THE COURT SHOULD DENY THE MOTION TO ADMIT AS TO DOCUMENTS OR PORTIONS THEREOF THAT ARE HEARSAY AND ARE NOT BUSINESS RECORDS

The government moves to "admit[ the listed exhibits] under Federal Rule of Evidence 803(6)." Rule 803(6) excepts certain business records from the hearsay rule's prohibition—it is a rule of non-exclusion, not admission. Rule 803(6) provides that a "record of an act, event, condition, opinion, or diagnosis" is not hearsay if it was (A) made at or near the time by—or from information transmitted by—someone with knowledge; (B) kept in the course of a regularly conducted activity of a business, organization, occupation, or calling; and (C) making the record was a regular practice of that activity. Fed. R. Evid. 803(6). These conditions can be shown through testimony or certifications under Rule 902(11) or 902(12) unless the opponent shows that the source of information, method of preparation, or circumstances of preparation indicate a lack of trustworthiness.

The key issue in applying business records exceptions is the definition of the "someone with knowledge" who made the statement in question. "The business records exception is based on a presumption of accuracy, accorded because the information is part of a regularly conducted activity that demands accuracy." *Wilson v. City of Los Angeles*, No. 18-cv-5775, 2020 WL 7711836, at *9 (C.D. Cal. July 20, 2020) (noting "To satisfy Rule 803(6), each participant in the chain which created the record—from the initial observer-reporter to the final entrant—must generally be acting in the course of the regularly conducted business."). For example, to the extent a cashier had knowledge of a purchase at the time he conducted a transaction, the receipt that he drafted could qualify as a business record of the contents of the purchase.

Because of the importance of establishing the scope of the author's knowledge, "[a]s a threshold matter, the proponent must establish the source of the information." *Id*. Where the underlying statements were made by non-employees, those non-employees "were under no obligation to provide information to the … employees, and thus their statements lack indicia of trustworthiness," and are not protected by the

3
OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* #4

business records exception. *Abascal v. Fleckenstein*, 820 F.3d 561, 566 (2d Cir. 2016). Rule 803(6) only covers one level of hearsay, the one related to the business's "record" of an act, event, condition, opinion, or diagnosis. It does not cover the hearsay therein, such as the statements within an email, chat, oral discussion, or loan application that is being recorded as having occurred. *See Out of the Box Enters., LLC v. El Paseo Jewelry Exchange, Inc.*, No. 10-cv-01858 (VAP), 2012 WL 12893690, at *4 (C.D. Cal. May 11, 2012); *San Francisco Baykeeper v. West Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 757 (N.D. Cal. 2011) (holding that business record was inadmissible insofar as it "repeats a statement from a statement from an unknown individual that does not appear to be an agent of Defendant, and there is no indication as to the trustworthiness or reliability of this individual"); *Clark v. United States*, 365 F. Supp. 2d 553, 564 (S.D.N.Y. 2005) ("The statements of the informant within the police reports were not part of a business record because the declarant had no 'duty to report the information he was quoted as having given.'" (quoting *United States v. Bortnovsky*, 879 F.2d 30, 34 (2d Cir. 1989)).

Even if the custodians' companies recorded the exhibits as business records, the government must establish a hearsay exception or non-hearsay purpose for the hearsay statements contained therein that are attributable to non-employees. As a court in this district summarized the matter:

> It is of no consequence that [the company] sometimes recorded its customers' hearsay statements on invoices written contemporaneously with the customers' visits, for while the invoices themselves might fall within an exception the rule against hearsay, *see* Fed. R. Evid. 803(6), a hearsay statement contained therein does not receive the same treatment automatically; it remains inadmissible hearsay unless it, too, falls within an exception. Fed. R. Evid. 805.

*Out of the Box Enters.*, 2012 WL 12893690, at *4. Pursuant to that rule, the following exhibits contain hearsay within hearsay as part of the compilation of documents marked as a single exhibit:

- **GX 1.n**: Online chats between account holder (Iuliia Zhadko) and bank.
- **GX 2.a-2.q; GX 3.a-3.t; GX 4.a-4.z; GX 5.a-5.z; GX 6.a-6.y**: Loan applications and communications not forming a regularly conducted exhibit such as emails or calls with applicants forming hearsay within hearsay. *See, e.g.*, GX 4.a, GX 4.d.[1]
- **GX 2.e**: Emails between account holder (Mark Zindroski) and bank.
- **GX 2.n**: Emails between account holder (Viktoria Kauichko) and bank.
- **GX 2.o**: Emails between account holder (Nazar Terabelian) and bank; notes regarding what account holder told bank employee (presumably in a telephone call based on reference to having account holder's wife call bank).
- **GX 30**: Emails from the escrow company to Iuliia Zhadko and the government's former C.I. that it is no longer calling likely in a futile attempt to minimize the use of obvious tainted evidence.
- **GX 31**: Biographical information provided by Anton Kudiumov and letter containing statements of Anton Kudiumov.
- **GX 32**: Emails from escrow officers and mortgage lender, including one with a handwritten note that Artur Ayvazyan's email address is the "email for 3rd party deposit."[2]
- **GX 34**: Email from witness to Agent regarding whether the witness spoke directly with Mod Interiors, and repeating what the witness was told by a different witness.

---

[1] As with several other exhibits, the Court may conclude that some of these applications or communications—which are alleged to be part of the conspiracy—fall under another exception to the hearsay rule such as statements by co-conspirators in furtherance of the conspiracy or an exclusion such as party admissions (although they would not be admissible against the defendants on the latter basis). The government has not made that argument for admission, though it is free to do so at trial.

[2] There are also emails from Richard Ayvazyan. Ayvazyan does not object to those emails specifically on hearsay grounds, but Terabelian does.

- **GX 36**: 380-page file including log notes including notes on calls and emails with lmalyan01@yahoo.com, Jeremy Killian, and Geghetsik Gevorgyan; email from Jeff Bleecker to Michele Ramos.
- **GX 37** (Abbott & Hast Mortuary): Not yet produced, working with government to obtain.
- **GX 37** (Gentleman Time Pieces)[3]: Screenshots of text messages between witness and two different customers, one of whom is in the witness's phone as "Anton Kudiumov Bought Hulk" and the other as "Richard Ayvazyan Bought DD40/Sky." From our meet and confer with the government, we understand that it intends to lay foundation through witness Anthony Farrer.
- **GX 106**: January 4, 2021 letter closing account of AM & AM Financial Services likely after the bank learned of the indictment of signatory Tamara Dadyan.

### III. THE COURT SHOULD DENY THE MOTION TO ADMIT BECAUSE—REGARDLESS OF AUTHENTICITY—THE GOVERNMENT HAS NOT PROVEN ADMISSIBILITY

The government's motion attempts to use a rule of authentication as a rule of admission, and it should be denied on that ground alone. Fed. R. Evid. 902(11) concerns the authenticity requirement of admission, not all requirements of admission. Exhibits—whether or not they are authentic—require a foundation of admissibility.

#### A. The Government Has Not Laid Foundation for Relevancy of Several Exhibits Offered

##### 1. Exhibits 3.a-3.t; 4.a-4.z; 5.a-5z; and 6.a-6.y (Loan Files and Related Documents for Loans Not in First Superseding Indictment)

At the April 2, 2021 hearing, the Court questioned the government extensively about the definition of the alleged conspiracy and corresponding schemes charged, and

---

[3] The government's description in Dkt. 468-1 appears to list the incorrect exhibit. Ayvazyan has notified the government, which indicated that it does not intend to introduce the Gentleman Time Pieces exhibit as a business record at this time. Until the government's reply is submitted, however, the motion to admit remains open and the defendants submit this description to ensure that they do not waive the argument against such admission.

whether multiple people "had their own scheme to obtain funds illegally, how is it tied to this overall conspiracy?" Tr. at 24-25 Dkt. 289-4. The government's response—that the defendants were "teaching each other" how to apply for loans and working together to do so, and that they would call a C.I. (who is no longer on the government's witness list, presumably due to her testimony being demonstrably tainted) to explain it all—left the scope of the conspiracy entirely unclear to the defendants. The government's disclosure of a list of 151 loans and subsequent retreat from that number show that the alleged conspiracy has no limiting definition beyond a target of Armenian-Americans in the Los Angeles area.

Against that backdrop, the government moves to admit Exhibits 3.a-3.t; 4.a-4.z; 5.a-5z; and 6.a-6.y. The government concedes that these exhibits are not within the categories of exhibits "from [the] First Superseding Indictment," Dkt. 468-1 (*compare* category title for Exhibits 1-2, *with* Exhibits 3-6), but it does not lay any foundation for why each exhibit is actually relevant and not cumulative.

Moreover, some of the exhibits very clearly *are* cumulative because they are, in fact, copies of each other:

- **GX 2.b, GX 5.b:** Same application. Nearly identical (one exhibit has one extra page).
- **GX 2.c, GX 6.d**: Same application. Nearly identical (one exhibit has one extra page).
- **GX 2.h, GX 4.v**: Duplicates.
- **GX 2.n, GX 3.q**: Duplicates.
    - **GX 5.y**: Same application. Nearly identical and encompassed within the above-referenced exhibits.
- **GX 3.b, GX 4.f**: Same application. Nearly identical (one exhibit has one extra page).
- **GX 3.e, GX 4.p:** Duplicates.

- **GX 3.g, GX 4.s**: Same application. Nearly identical (one exhibit has one extra page).
- **GX 3.o, GX 5.t**: Duplicates.
  - **GX 2.j**: Same application. Nearly identical and encompassed within the above-referenced exhibits.
- **GX 3.t, GX 6.w**: Duplicates.
  - **GX 2.k**: Same application. Nearly identical and encompassed within the above-referenced exhibits.

If the Court permits the government to enter into evidence loan applications not identified in the indictment in front of the jury, it should not allow the government to do so over and over again, creating the misimpression of additional allegedly culpable conduct and confusion in the jury room.

### 2. Exhibits 30-33 (Productions from Escrow Companies)

- **GX 30**: Compilation of 15 documents containing government-selected "extracted pages" from 5 different document productions.
- **GX 32**: Compilation of 12 documents containing government-selected "extracted pages" from 3 different document productions.

### 3. Exhibits 34-42 (Sales of Goods & Services, Brokerages, Leasing)

- **GX 37**: From our meet and confer, we understand that the government intends to lay foundation for this exhibit with witness Anthony Farrer.
- **GX 38**: Includes records from purchases made by Liudmyla Gorodnia. Neither the person nor the purchases are mentioned in the indictment.
- **GX 41**: Combines the accounts of Iuliia Zhadko and Nazar Terabelian into a single exhibit, implying that they are operated by the same person.
- **GX 49**: Appears to combine both FDIC certifications with California DMV certifications one of which involves Roza Avakian, who is not mentioned in the

indictment. Assuming this exhibit is revised to include only the FDIC certifications,[4] this issue would be resolved.

### 4. Exhibits 85-92 and 100-111 (Bank Records)

- **GX 89**: Checking account owned by Marietta Terabelian including statements from after her arrest and a check image of a November 5, 2020 check for $300,000 to Steptoe & Johnson LLP that says "Attorney Retainer" used to pay for undersigned counsel. This cannot survive a basic 401/403 balancing and underscores the lack of diligence performed by the government in preparing its "bulk" exhibits and in further asking this Court to prematurely admit all such exhibits with no analysis of admissibility.

- **GX 92**: Checking accounts belonging to Diana Saakyan and Diana Saakyan DBA Montadrath with statements going back to December 2019. Neither the person nor the company nor the accounts are mentioned in the indictment.

- **GX 101**: Savings account owned by Viktoria Kauichko involving no material transactions. Because of the lack of transactions, the exhibit is irrelevant and any limited relevance would be outweighed by the waste of time and possibility of confusing the jury in light of its cumulative nature (Kauichko's checking account will be offered into evidence as GX 100 subject to the defendants' preservation objection below).

- **GX 102**: Checking account belonging to Tamara Dadyan that received an SBA deposit from a loan not mentioned in the indictment.

- **GX 103**: Checking account belonging to AM & AM Financial with signatory Tamara Dadyan. Neither the company nor the account is mentioned in the indictment.

---

[4] The defendants learned of this likely error after his meet and confer with the government and has notified the government, but the government has not had time to respond. It is noted as an objection only in the event that it is not an error and the government intends not to withdraw and reoffer this exhibit.

- **GX 104**: Checking account belonging to Liudmyla Kopytova. Neither the person nor the account is mentioned in the indictment.
- **GX 105**: Checking account belonging to Diana Saakyan DBA Montadrath. Neither the person nor the company nor the account is mentioned in the indictment.
- **GX 106**: Checking account belonging to AM & AM Financial with signatory Tamara Dadyan. The exhibit includes a January 4, 2021 letter closing the account likely after the bank learned of Dadyan's indictment.
- **GX 108**: 258 pages related to four different accounts held by two daughters of Tamara Dadyan and Artur Ayvazyan, Redline Auto Collision, and ABC Realty, all combined into one exhibit.
- **GX 110**: Checking account belonging to New Acre Farm Produce Inc. Neither the company nor the account is mentioned in the indictment. The account statements go back to July 2018.
- **GX 111**: Checking account belonging to Mykhail Diuzhenko and MD Acquisition Services. Neither the person nor the company nor the account is mentioned in the indictment.

### B.   The Defendants States Their *Kastigar* Objection to the Proposed Exhibits, Which They Understand Is Foreclosed Until After Trial

The defendants object to the admission of the exhibits because the government has not proven that the exhibits it proposes to admit (which include evidence derived using tainted information) were obtained, reviewed, interpreted, selected as exhibits, or otherwise used wholly independently of the tainted information. The defendants object to each of the exhibits listed in Dkt. 468-1 (including but not limited to the phone records and IP records not otherwise listed above in section III.A) on this ground.

The defendants understand that this issue will be resolved only after trial per the Court's Order dated June 10, 2021 (Dkt. 478) and submit this standing objection to avoid any government argument of waiver.

## IV. CONCLUSION

The defendants have not objected to authenticity of most of the exhibits and does not plan to. The use of Rule 902(11) is therefore moot. Even if Rule 902(11) did apply, however, authenticity is not admissibility, and the government has not yet carried its burden to demonstrate admissibility of the proposed exhibits.

Dated:   June 12, 2021          Respectfully submitted,

/s/ Ashwin J. Ram
Ashwin J. Ram (SBN 227513)
aram@steptoe.com
Michael A. Keough (SBN 327037)
mkeough@steptoe.com
Meghan L. Newcomer (*pro hac vice*)
mnewcomer@steptoe.com
Nicholas P. Silverman (*pro hac vice*)
nsilverman@steptoe.com
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

/s/ John L. Littrell
John L. Littrell (SBN 221601)
jlittrell@bklwlaw.com
Ryan V. Fraser (SBN 272196)
rfraser@bklwlaw.com
**BIENERT KATZMAN LITTRELL WILLIAMS, LLP**
601 W. 5th Street, Suite 720
Los Angeles, CA 90071
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

*Counsel for Defendant Marietta Terabelian*

### SIGNATURE ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(i), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.