TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
        1100/1300 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-6527/2424/3819
        Facsimile: (213) 894-6269/0141
        E-mail:    Scott.Paetty@usdoj.gov
                   Catherine.S.Ahn@usdoj.gov
                   Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
        1400 New York Avenue NW, 3rd Floor
        Washington, DC 20530
        Telephone: (202) 320-0539
        Facsimile: (202) 514-0152
        E-mail:    Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD AYVAZYAN,<br>   aka "Richard Avazian" and<br>      "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>   aka "Marietta Abelian" and<br>      "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>   aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>   aka "Mike Grigoryan," and<br>      "Anton Kudiumov,"<br>ARMAN HAYRAPETYAN,<br>EDVARD PARONYAN,<br>   aka "Edvard Paronian" and<br>         "Edward Paronyan," and<br>VAHE DADYAN, | No. CR 20-579(A)-SVW<br><br>GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* #4 TO ADMIT BUSINESS RECORDS UNDER THE SELF-AUTHENTICATION PROVISION OF FEDERAL RULE OF EVIDENCE 902(11)<br><br>Hearing Date: June 14, 2021<br>Hearing Time: 1:30 p.m.<br>Trial Date:   June 15, 2021<br>Location:     Courtroom of the<br>              Hon. Stephen V.<br>              Wilson |

1

2          Defendants.

3          Plaintiff United States of America, by and through its counsel

4    of record, the Acting United States Attorney for the Central District

5    of California, Assistant United States Attorneys Scott Paetty,

6    Catherine S. Ahn, and Brian Faerstein, and Department of Justice

7    Trial Attorney Christopher Fenton, hereby files its reply in support

8    of its motion in limine #4 to admit business records under the self-

9    authentication provision of Federal Rule of Evidence 902(11) (ECF

10   468).  This reply is based upon the attached memorandum of points and

11   authorities, the files and records in this case, and such further

12   evidence and argument as the Court may permit.

13   Dated: June 13, 2021              Respectfully submitted,

14                                     TRACY L. WILKISON
                                       Acting United States Attorney
15
                                       SCOTT M. GARRINGER
16                                     Assistant United States Attorney
                                       Chief, Criminal Division
17

18                                     _____/s/_____

19                                     SCOTT PAETTY
                                       CATHERINE AHN
20                                     BRIAN FAERSTEIN
                                       Assistant United States Attorneys
21                                     CHRISTOPHER FENTON
                                       Department of Justice Trial Attorney
22
                                       Attorneys for Plaintiff
23                                     UNITED STATES OF AMERICA

24

25

26

27

28

                                     2

# TABLE OF CONTENTS

TABLE OF CONTENTS.......................................................1

REPLY MEMORANDUM OF POINTS AND AUTHORITIES.........................1

I.   ARGUMENT..........................................................3

    A.   The Court Should Grant the Government's Motion to Pre-
         Admit Those Documents for Which Defendants Do Not
         Challenge Authenticity or Admissibility....................3

    B.   Defendants Challenge to the Form of Certain Exhibits
         Is Not a Basis to Object to Admissibility and, In Any
         Event, Has Been Already Been Resolved (Thus Removing
         the Objection).............................................4

    C.   Defendants' Relevance Challenges Are Frivolous...........7

         1.   Defendants' Blanket Relevance Challenges Are
              Frivolous...........................................7

         2.   Defendants' Specific Relevance Challenges Are
              Frivolous..........................................11

    D.   Defendants' Hearsay Challenges Are Perfunctory..........13

    E.   Defendants' Challenge to Admissibility Under <u>Kastigar</u>
         Will Be Addressed Post-Trial...........................18

II.  CONCLUSION.......................................................18

1

### REPLY MEMORANDUM OF POINTS AND AUTHORITIES

2     Approximately <u>one month before trial</u>, the government provided
3 written notice of its intention to introduce at trial key categories
4 of self-authenticating business records – such as the loan files and
5 bank records referenced in the First Superseding Indictment -
6 pursuant to Federal Rule of Evidence 902.  The government had already
7 timely made the documents and certifications available for inspection
8 by defendants.  The government's notice complied in all respects with
9 Rules 902 and 803(6).  The government requested that defendants let
10 the government know by May 24 if defendants had any objections to the
11 notice or believed it deficient in any way.  The government explained
12 that if there were no objections, the government would move to admit
13 these documents at the beginning of trial.  <u>Defendants did not object</u>
14 <u>or otherwise respond</u>.

15     As the government continued to prepare for trial, the government
16 provided a second notice of its intention to introduce at trial
17 additional self-authenticating business records pursuant to Rule 902.
18 The government's goal was to streamline the presentation of its case
19 – which necessarily involves a significant amount of business record
20 evidence – and minimize the number of witnesses it calls at trial.
21 The government requested that defendants let the government know by
22 May 31 if defendants had any objections to the notice or believed it
23 deficient in any way.  <u>Again, defendants did not object or otherwise</u>
24 <u>respond</u>.

25     On the eve of trial (and only after the government filed a
26 motion with the Court), defendants finally agree that all of the
27 exhibits the government seeks to admit pursuant to Rules 803(6) and
28 902 are indeed authentic.  (ECF 513 at 2 (defendants "have not

objected to the authenticity of any of the exhibits at issue, and do not intend to do so").  Thus, extrinsic evidence of authenticity – in the form of testimony by a custodian of records – is not necessary to establish authenticity.  But rather than acknowledge that there is no genuine dispute that requires the Court's time to resolve, defendants fight the admission of certain of these self-authenticating business records based on evidentiary objections not actually grounded in the Federal Rules of Evidence, frivolous relevance challenges, and hearsay arguments that completely ignore hearsay law.

Defendants hearsay challenges are pro-forma.  Defendants acknowledge – unprompted – that their own hearsay arguments may be rejected because "the Court may conclude that some of these applications or communications – which are alleged to be part of the conspiracy – fall under another exception to the hearsay rule such as statements by co-conspirators in furtherance of the conspiracy or an exclusion such as party admissions."  (ECF 513 at 5.)  Defendants nevertheless make the argument at the eleventh hour, on the eve of trial, after sitting silent for weeks following the government's notice of its intention to introduce these documents pursuant to Rules 803(6) and 902.  Defendants' own brief demonstrates its own lack of purpose: there is no evidentiary basis on which to exclude the loan files and other nuts-and-bolts evidence referenced in and related to the First Superseding Indictment.

The government thus respectfully requests that the Court grant its motion and allow the government to pre-admit the exhibits that are the subject of its motion.  These exhibits are indisputably authentic (as defendant concedes) and admissible as relevant business

records that fall squarely within the exception to hearsay pursuant to Rules 803(6) and 902.[1]

I.   **ARGUMENT**

    A.   **The Court Should Grant the Government's Motion to Pre-Admit Those Documents for Which Defendants Do Not Challenge Authenticity or Admissibility**

Defendants do not contest the authenticity or admissibility of the following exhibits, which were identified in Attachment 1 to the government's MIL #4, on any basis:

| Govt. Ex. No. | Description |
|---|---|
| 1.a | Sabala Construction (JP Morgan Chase 9906) |
| 1.b | Hart Construction (JP Morgan Chase 1511) |
| 1.c | Hart Construction (JP Morgan Chase 9066) |
| 1.d | Secureline Realty (Comerica 8935) |
| 1.e | Secureline Realty (Wells Fargo 1754) |
| 1.f | Top Quality Contracting (Wells Fargo 3517) |
| 1.g | Zhadko (Wells Fargo 8054) |
| 1.h | Allstate Towing (Bank of America 7695) |
| 1.j | Allstate Towing (US Bank 5135) |
| 1.k | G&A Diamonds (US Bank 1964) |
| 1.l | Redline Auto Collision (JP Morgan Chase 1732) |
| 1.m | Voyage Limo (Wells Fargo 7900) |
| 1.o | Redline Auto Mechanics (Bank of America 6271) |
| 1.p | Runyan Tax Service (Bank of America 9700) |
| 1.q | Mod Interiors (Radius 2395) |
| 1.r | Turing Info Solutions (JP Morgan Chase 5268) |
| 1.s | A.D. dba Six Farms (Capital One 1441) |
| 33 | Perfect Escrow |
| 35 | Coinbase |
| 40 | Robinhood |
| 42 | The Point at WA (Greystar) |
| 53.a-53.j | Capital One Bank |

---

[1] Defendants' suggestion that the government's MIL #4 should be "denied as moot" is baseless.  (ECF 513 at 2.)  Defendants may raise challenges to the admissibility of certain exhibits, including under the business records hearsay exception specified in Rule 902(11), in response to the government's motion to admit these exhibits under both Rules 803(6) and 902(11).  But contending that their concession as to the Rule 902 component of the analysis moots the entire motion to admit is a non-sequitur and should be rejected.

| Govt. Ex. No. | Description |
|---|---|
| 59 | AT&T (0005) |
| 60 | AT&T (8243) |
| 61 | T-Mobile (4170) |
| 62 | AT&T (3314) |
| 63 | Verizon (7030) |
| 64 | T-Mobile (4226) |
| 65 | AT&T (5533) |
| 66 | AT&T (8777) |
| 67 | T-Mobile (0360) |
| 68 | T-Mobile (7163) |
| 69 | AT&T (6005) |
| 70 | Verizon (6000) |
| 71 | T-Mobile (9816) |
| 72 | T-Mobile (4971) |
| 73 | Charter Communications |
| 85 | ABC Realty (JP Morgan Chase 8366) |
| 86 | Anton Kudiumov (Bank of America 7572) |
| 87 | Inception Ventures (Bank of America 4043) |
| 88 | Kauichko (Wells Fargo 2085) |
| 90 | Mod Interiors (Bank of America 9103) |
| 91 | Zhadko (JP Morgan Chase 6822) |
| 100 | Runyan Tax Service Inc (Bank of America 9700) |
| 107 | Inception Ventures (Bank of America 4043) |
| 109 | Allstate Towing & Transport (US Bank 5135) |

Accordingly, the Court should allow the government to pre-admit these exhibits at the beginning of the trial.

**B.    Defendants Challenge to the Form of Certain Exhibits Is Not a Basis to Object to Admissibility and, In Any Event, Has Been Already Been Resolved (Thus Removing the Objection)**

Defendants raise challenges to the assembly or form of certain other exhibits identified by the government as self-authenticating business records, but not the substantive admissibility.  These challenges are not a basis to exclude evidence under the Rules and should be rejected.  The government could have resolved these purported issues well in advance of the trial had counsel for

1   defendants raised them first with counsel for the government.  The

2   government briefly addresses each of these issues below:

| Ex. | Defendants' Challenge | Government Response / Resolution |
|---|---|---|
| GEX 30 | "Compilation of 15 documents containing government-selected 'extracted pages' from 5 different document productions" (ECF 513 at 8) | Defendant's purported objection has no basis in the law or fact:  the exhibit contains documents from a single producing party about a single escrow transaction.  The government is permitted to use only a subset of these documents at trial.  There is no Rule that requires the government to do otherwise or that prohibits the government from using only a subset of a producing parties' document production.  Defendant's objection to this document on hearsay grounds is addressed further below. |
| GEX 32 | "Compilation of 12 documents containing government-selected 'extracted pages' from 3 different document productions" | All of the same arguments made immediately above in response to GEX 30 apply equally to GEX 32. Defendant's objection to this document on hearsay grounds is addressed further below. |
| GEX 37[2] | "Abbott & Hast Mortuary: Not yet produced, working with government to obtain" (id. at 6) | Defendant's claim is false.  The government produced this document on May 20, 2021, marked it as a trial exhibit, and included it on the trial exhibit list sent to defendant on June 1.  (See GEX 83.) |
| GEX 38 | "Includes records from purchases made by L[.] Gorodnia" (id. at 8) | The inclusion of the L[.] Gorodnia records was inadvertent.  The government will remove the pages. The exhibit is authentic and admissible under the Rules and should be admitted. |
| GEX 41 | "Combines the accounts of Iuliia Zhadko and Nazar Terabelian into a single exhibit" (id.) | The government received the business records for these accounts together, with the accounts broken into subfolders by the account holder.  At |

---

[2] The mortuary exhibit was incorrectly marked on Attachment 1 as GEX 37.  This exhibit should have been listed as GEX 83.  Defendants separately challenge the records that were correctly marked as GEX 37 by the government on its exhibit list, consisting of business records the government obtained from Gentlemen Timepieces.  (ECF 513 at 6, 8.)  The government plans to put in GEX 37 through the Gentlemen Timepieces witness.

5

| Ex. | Defendants' Challenge | Government Response / Resolution |
|---|---|---|
| | | trial, the government will introduce the accounts as GEX 41.a and 41.b. |
| GEX 49 | "Appears to combine both FDIC certifications with California DMV certifications" (id.) | The inclusion of the DMV records was inadvertent.  The government will remove the pages.  The exhibit is authentic and admissible under the Rules and should be admitted. |
| GEX 89 | Terabelian checking account "including statements from after her arrest and a check image of a November 5, 2020 check for $300,000 to Steptoe & Johnson LLP" (id. at 9). | The government will remove the bank statements for the time period after Terabelian's arrest and redact the check written to "Steptoe & Johnson". The remaining bank records – which are referenced in the first superseding indictment and relate directly to the crimes charged – are authentic and admissible. |
| GEX 92 | "Checking accounts belonging to Diana Saakyan and Diana Saakyan DBA Montadrath with statements going back to December 2019" (id.) | The government will remove pages for statements containing information pre-dating March 2020.  With respect to relevance, while not expressly referenced in the first superseding indictment, the loan is part of the charged conspiracy and thus relevant. Indeed, evidence relating to Diana Saakyan and Montadrath was found in defendants Artur Ayvazyan's and Tamara Dadyan's residence. |
| GEX 108 | "258 pages related to four different accounts held by two daughters of Tamara Dadyan and Artur Ayvazyan, Redline Auto Collision, and ABC Realty, all combined into one exhibit" (id. at 10) | The government will remove from the exhibit all of the records relating to bank accounts other than ABC Realty. |
| GEX 110 | "The account statements [for New Acre Farm Produce Inc.] go back to July 2018" (id.) | The government will remove pages for statements pre-dating March 2020. With respect to relevance, while not expressly referenced in the first superseding indictment, the loan is part of the charged conspiracy and thus relevant.  Indeed, evidence relating to New Acre Farm was found in defendants Artur Ayvazyan's and Tamara Dadyan's residence. |

In light of the record showing that defendants do not raise substantive objections to these exhibits as revised (with exceptions noted above and addressed further below), the government submits that the revised versions of these exhibits are admissible as self-authenticating business records and asks that the Court allow the government to move these exhibits into evidence at the beginning of trial.[3]

## C. Defendants' Relevance Challenges Are Frivolous

Defendants also challenge the admissibility of certain exhibits based on purported relevance or Rule 403 grounds. (See ECF 513 at 6-10.) These arguments are meritless and should be rejected.

### 1. Defendants' Blanket Relevance Challenges Are Frivolous

Defendants broadly contest the relevance of all of the loan files that were not among the 17 loans specifically described in the

---

[3] Defendant Marietta Terabelian submitted a supplemental opposition challenging the authenticity of sales receipts from the owner of a jewelry store named Picadilly Jewelers. (ECF 514.) The sales receipts tie back to "Viktoria Kauichko", defendant Terabelian's alias, and Mod Interiors, the company that defendants used to fraudulently obtain PPP loans using the name of Terabelian's then recently-deceased father. The 902(11) declaration was completed by the owner of the business, who owned and worked at the store for forty-years. His knowledge of the sales receipts was, according to the owner, based on his hands-on experience over the course of those forty-two years owning and operating his store. Defendant Terabelian's challenges to the owner's declaration about sales receipts are truly frivolous. For example, defendant argues the declaration is insufficient because "he has no relevant training." (ECF 514 at 1.) It is difficult to imagine from whom the decades-long owner of the store would receive training if not from himself. Defendant also argues that the presence of a Turkish language document negates an otherwise valid 902(11) declaration. Defendant cites no authority in support of her argument. And her argument defies common sense. To the extent the Turkish-language document was inadvertently included, it does not change the fact that the owner of the jewelry store's statement about the authenticity of sales receipts from his own store are valid and trustworthy. The government will remove the Turkish-language document from the exhibit so that it is not presented to the jury at trial.

overt acts in the First Superseding Indictment.  (See id. at 6-7,
challenging relevance of GEX 3.a.-3.t, 4.a.-4.z, 5.a-5.z, and 6.a-
6.y.)  Defendants contend that the government's "disclosure of a list
of 151 loans and subsequent retreat from that number show that the
alleged conspiracy has no limiting definition beyond a target of
Armenian-Americans in the Los Angeles area."  (Id. at 7.)  This is
false and the Court has already rejected similar arguments made by
defendants.

Defendants repeat the erroneous legal premise they relied upon
in challenging the scope of the government's summary chart exhibits
and summary witness's testimony, attempting to limit the government's
evidence to the loans specified in the overt acts.  However, as the
Court recently found, the government's redaction of the superseding
indictment for trial "does not in any way change the charged
offenses, the overt acts and objects of the conspiracy, or any of the
allegations in the indictment other than the total number of alleged
fraudulent loans and their value."  (ECF 478 at 22.)

Indeed, redaction of the superseding indictment allows the
government to meet its burden of proof without having to prove each
of the 151 fraudulent loan applications.  But it does not alter the
relevance of the numerous fraudulent loan applications beyond the 17
described in the overt acts – including multiple applications made on
behalf of the same companies identified in the overt acts - to the
charged conspiracies.  The redacted superseding indictment expressly
makes clear that the overt acts describe a non-exclusive list of
fraudulent loan applications that illustrate how the charged
bank/wire fraud and money laundering conspiracies were carried out.

1    (See ECF 422-2, ¶ 32 (defendants "commit[ted] the following overt

2    acts, among others") (emphasis added).)

3        The Court's prior ruling is particularly relevant here because

4    the loan files that comprise Exhibits 3.a – 6.y are the loan files

5    cited in the summary chart exhibits relating to the loans, which the

6    Court has already deemed admissible.  There is thus no question that

7    these exhibits are relevant – they are part of the group of loans

8    that the government alleges the defendants fraudulently obtained and

9    are the support for the summary chart exhibits the Court has already

10   agreed can be shown to the jury at trial.

11       Defendants also continue to misapprehend basic tenets of the

12   interplay of the law of conspiracy and the rules of evidence.  "The

13   rule is well established that the government in a conspiracy case may

14   submit proof on the full scope of the conspiracy; it is not limited

15   in its proof to the overt acts alleged in the indictment."  United

16   States v. Rizk, 660 F.3d 1125, 1131 (9th Cir. 2011) (collecting cases

17   within and outside of Ninth Circuit).

18       The redacted superseding indictment here alleges broad

19   conspiracies (Counts 1 and 26) among at least eight charged

20   coconspirators to submit fraudulent COVID-19 disaster relief loan

21   applications and launder the ill-gotten proceeds of those loans.

22   (See generally ECF 422-2.)  The government has detailed in recent

23   pretrial filings the extensive scope of the fraudulent scheme,

24   including the use by defendants of numerous stolen and synthetic

25   identities to submit fraudulent loan applications on behalf of the

26   business entities (some real, some fictious) identified in the

27   government's exhibit list.  (See, e.g., ECF 384, 441.)  The loan

28   application files identified in government exhibits 3-6 (the

1  relevance of which defendants challenge here) all share significant

2  commonalities with the specific loans identified as examples in the

3  overt acts.  These commonalities include the use of the same stolen

4  or synthetic personal or business identifying information, fraudulent

5  supporting documentation, or were submitted by the same businesses.

6      Defendants misleadingly claim that the "government concedes that

7  [exhibits 3-6] are not within the categories of exhibits 'from [the]

8  First Superseding Indictment,'" comparing the title of government

9  exhibit 2 to government exhibits 3-6 in the chart attached to MIL #4.

10  (See ECF 468-1 at 1.)  This is another example of defendants'

11  habitually making the false claim that the government "conceded" a

12  substantive point when, in reality, the government did not make any

13  such concession.  To the extent defendants seek to twist the exhibit

14  headings in the chart into a statement of significance about the

15  scope of the conspiracy, nothing could be further from the truth.

16  The chart describes exhibits 3-6 as "[o]ther PPP/EIDL Loan Files That

17  Were Part of the Conspiracy," and indeed they were.  In fact,

18  numerous loan applications identified in government exhibits 3-6 were

19  submitted using the same synthetic names and same company names as

20  those identified in the overt acts.  (See, e.g., 468-1 at 1-3

21  (multiple loan applications for Sabala Construction, Hart

22  Construction, Top Quality Contracting, Timeline Transport, Mod

23  Interiors, and others).)

24

25

26

27

28

Defendants' blanket challenge to relevance of government exhibits 3-6, unsupported by the facts and law, should thus be rejected.[4]

### 2.   Defendants' Specific Relevance Challenges Are Frivolous

Defendants also contest the admissibility of several specified exhibits on relevance grounds because they purportedly pertain to loans or accounts "not mentioned in the indictment." (ECF 513 at 9-10.) Defendants' challenges on these bases similarly are without merit.

Defendants once again rely on the faulty premise that the four corners of the superseding indictment define the scope of the government's relevant and admissible evidence of their far-ranging fraudulent scheme. As explained above, that is not the law.

While not specifically identified in the superseding indictment, the information defendants challenge in each of the exhibits described below is either directly relevant to the alleged fraudulent

---

[4] Defendants also challenge certain exhibits that consist of the same or largely the same loan files, claiming that these exhibits are "cumulative." (ECF 513 at 7-8.) As the government already explained at the June 11 conference, the government attempted to simplify the presentation of evidence to the jury by separately marking the loans underlying the First Superseding Indictment and each of the summary chart exhibits using separate exhibit numbers. The government's goal was ease of reference. As a result, there are instances where the government marked certain loan application files as two separate exhibits. Contrary to defendants' speculation, the government did not do so in order to show the same loan files to the jury "over and over again." (Id. at 8.) As the government explained on June 11, the number of loans is the number, and that number does not change based on how the government marked the loans as exhibits. In any event, the fact that an exhibit is marked twice is not a basis to challenge the admissibility of the loan file itself for purposes of Rules 803(6) and 902(11). At most it would be a basis for the Court to order that the government reference each loan by one exhibit number.

loan and money laundering conspiracies or is inextricably intertwined
to that evidence, as explained more fully in the government's filings
in support of its motion in limine #2 ("MIL #2") to admit evidence
inextricably intertwined with the charged offenses (see ECF 384-385,
441, 443, 505-506), which the government incorporates by reference
herein.  In most cases, the individual or business identities that
defendants challenge pertain to information the government seized as
part of its search of codefendants Tamara Dadyan's ("T. Dadyan") and
Artur Ayvazyan's ("A. Ayvazyan") residence located on Weddington
Street in Encino (the "Weddington residence") on November 5, 2020
and/or from defendant T. Dadyan's cell phone seized at that location.

Thus, defendants' relevance challenges based loans or accounts
not being "mentioned in the indictment" should be rejected as
follows:

| Ex. | Relevance Challenge | Government Response |
|---|---|---|
| GEX 92, 105 | Checking accounts "belonging to Diana Saakyan and Diana Saakyan DBA Montadrath." (ECF 513 at 9, 10) | These names were used to fraudulently apply for a PPP loans and evidence relating to these names were found in defendant Artur Ayvazyan and Tamara Dadyan's residence, including a Social Security card and blank checks. |
| GEX 101 | Savings account owned by "Viktoria Kauichko involving no material transactions" (id. at 9) | "Viktoria Kauichko" is alleged to be Marietta Terabelian's alias and is one of the synthetic identities used to fraudulently apply for loans and launder the proceeds. |
| GEX 102 | "Checking account belonging to Tamara Dadyan that received an SBA deposit from a loan" (id.) | Evidence from defendant T. Dadyan's cell phone, among other things, illustrates her significant role in submitting and directing fraudulent loan applications and obtaining loan proceeds from the SBA. |
| GEX 103, 106 | Checking accounts "belonging to AM & AM Financial with signatory Tamara | Evidence from defendant T. Dadyan's phone reflects images and communications between T. Dadyan ("tammy") and R. Ayvazyan ("Rich New") regarding the |

12

| Ex. | Relevance Challenge | Government Response |
|-----|---------------------|--------------------|
| | Dadyan" (id. at 9, 10) | potential use of "AM & AM" for PPP/EIDL loans. |
| GEX 104 | "Checking account belonging to Liudmyla Kopytova" (id. at 10) | This name was used to fraudulently apply for a PPP loan and evidence relating to this name was found in defendant Artur Ayvazyan and Tamara Dadyan's residence, including fake driver's licenses using different pictures for this individual, loan applications, blank checks and checkbooks. |
| GEX 110 | "Checking account belonging to New Acre Farm Produce Inc." (id.) | This company name was used to fraudulently apply for a PPP loan and evidence relating to these names was found in defendant Artur Ayvazyan and Tamara Dadyan's residence, including blank checks and checkbooks. |
| GEX 111 | "Checking account belonging to Mykhail Diuzhenko and MD Acquisition Services" (id.) | These names were used to fraudulently apply for a PPP loan and evidence relating to these names was found in defendant Artur Ayvazyan and Tamara Dadyan's residence, including a driver's license, loan applications, blank checks and checkbooks. |

Defendants' relevance challenges are frivolous and should not preclude the admissibility of these exhibits as self-authenticating business records.

### D.   Defendants' Hearsay Challenges Are Perfunctory

Defendants' primary concern with respect to hearsay appears to be an October 9, 2020 text message that "Iuliia Zhadko" sent to Radius Bank to put a travel notice on the "Iuliia Zhadko" account because he wanted to be able to use his bank cards while on vacation in Turks & Caicos Islands:

> [Ryan]: Thank you for contacting Radius Bank! My name is Ryan. How can I help you today?
>
> Iuliia Zhadko:  Hello Ryan, I wanted to put a travel notice on my account, just to make sure I don't run into problems with accessing my debit card.

1    Ryan: I'll be more than happy to assist you.

2                              ***

3    Ryan: What dates with you be traveling and where will you be
     traveling to?

4    Iuliia Zhadko: 10/10 thru 10/20

5    Iuliia Zhadko: Caribbean/Turks and Caicos Islands

6  (GEX 1.n at DOJ_PROD_0000021259.)  As the Court knows, defendant

7  Richard Ayvazyan has repeatedly claimed that he could not be "Iuliia

8  Zhadko" because "Iuliia Zhadko" made a purchase at a Lamps Plus store

9  in California on October 13, while he, Richard Ayvazyan, was on

10 vacation in Turks and Caicos:

11       Page 3 of this [Radius Bank] bank account statement shows that
         Zhadko made an October 13, 2020 purchase at Lamps Plus in
12       California, while Ayvazyan and Terabelian were in Turks and
         Caicos. Ayvazyan did not make the purchase in question, and
13       someone else had control of the Zhadko account. But the
         government did not pursue this lead, and instead stuck to its
14       theory that Zhadko is Ayvazyan's identity and Ayvazyan is
         responsible for Zhadko's conduct.
15

16 (ECF 417 at 3.) The very evidence defendants attempt to exclude

17 provide further support to the already ample evidentiary record

18 establishing the link between defendant Richard Ayvazyan and "Iuliia

19 Zhadko."  And it shows that defendants' arguments to the contrary are

20 not only unavailing, they are flatly contradicted by the record on

21 which they purport to rely.  There are simply no facts and no law

22 that actually defendants' purported objections.

23      The same is true for the remainder of the evidence (ECF 513 at

24 5-6), which defendants incorrectly claim is hearsay within hearsay

25 barring admission of the government's exhibits under the business

26 records exception.  Under this exception, the proponent must

27 establish that "(A) the record was made at or near the time by — or

28 from information transmitted by — someone with knowledge; (B) the

                                   14

1   record was kept in the course of a regularly conducted activity of a

2   business, organization, occupation, or calling, whether or not for

3   profit; and (C) making the record was a regular practice of that

4   activity.  Fed. R. Evid. 803(6)(a)-(c).  These conditions may be

5   satisfied, as the government has done here, "by a certification that

6   complies with Rule 902(11) or (12)."  Fed. R. Evid. 803(6)(d).  Once

7   the proponent has made this initial showing, the burden shifts to the

8   opponent to "show that the source of information or the method or

9   circumstances of preparation indicate a lack of trustworthiness."

10       Even if a business record contains statements made by outsiders

11   to the business, "hearsay within hearsay is not excluded by the rule

12   against hearsay if each part of the combined statements conforms with

13   an exception to the rule."  Fed. R. Evid. 805.  Here, as defendants

14   acknowledge, the alleged additional hearsay to which they point in

15   the business records fall under multiple exclusions to the hearsay

16   rule, including party admissions and co-conspirator statements.  See

17   Fed. R. Evid. 801(d)(2)(A), (E).

18       Specifically, statements by a defendant, when offered by the

19   government, are admissions by a party-opponent and are therefore not

20   hearsay under Federal Rule of Evidence 801(d)(2)(A).  United States

21   v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000).  Courts routinely admit

22   electronic evidence, like text messages and emails, as party

23   admissions in criminal cases.  See, e.g., United States v. Safavian,

24   435 F. Supp. 2d 36, 43 (D.D.C. 2006) ("The statements attributed

25   directly to [defendant] come in as admissions by a party opponent

26   under Rule 801(d)(2)(A)"); United States v. Siddiqui, 235 F.3d 1318,

27   1323 (11th Cir. 2000) ("Those [emails] sent by [defendant] constitute

28   admissions of a party").  Party admissions contained within otherwise

                                    15

admissible business records, such as customers statements to banks,
satisfy the requirements of admissibility for the business records.
See, e.g., United States v. Williams, 205 F.3d 23, 35 (2d Cir. 2000)
("[B]ecause defendant himself supplied the address to the bank
teller, the information was admissible as a party admission contained
within a business record.") (citing Fed. R. Evid. 802(d)(2), 805).

Similarly, statements of one co-conspirator during the course of
and in furtherance of the conspiracy may be used against another
conspirator because such statements are not hearsay. See Fed. R.
Evid. 801(d)(2)(E). The introduction of co-conspirator statements
pursuant to Fed. R. Evid. 801(d)(2)(E) requires only a foundation
that: (1) the declaration was made during the course of the
conspiracy; (2) it was made in furtherance of the conspiracy; and (3)
there is, including the co-conspirator's statement itself, sufficient
proof of the existence of the conspiracy and of the defendant's
connection to it. Bourjaily v. United States, 483 U.S. 171, 173, 181
(1987); United States v. Larson, 460 F.3d 1200, 1211 (9th Cir. 2006).
The government must prove by a preponderance of the evidence that a
statement is a co-conspirator statement in order for the statement to
be admissible under Rule 801(d)(2)(E). Bourjaily, 483 U.S. at 176.

The Court may rely on inadmissible evidence, such as a co-
conspirator's plea agreement, in determining whether the 801(d)(2)(E)
exception applies. Cf. United States v. Gil, 58 F.3d 1414, 1420 (9th
Cir. 1995) (the preliminary determination of whether Fed. R. Evid.
801(d)(2)(E) applies is to be made "by the court, not the jury,
pursuant to Fed. R. Evid. 104(a)); Fed. R. Evid. 104(a) ("the court
must decide any preliminary question about whether . . . evidence is

admissible.  In so deciding, the court is not bound by evidence rules, except those on privilege").

The evidence defendant challenges as containing hearsay within hearsay (in addition to Government Exhibit 1.n, described above) satisfies these legal requirements for admissibility.  For example:

- Government Exhibit 2.e contains communications between someone who stole Mark Zindroski's identity and the bank;

- Government Exhibit 2.n contains communications between "Viktoria Kauchiko," which is a synthetic identity used by defendant Marietta Terabelian and the bank;

- Government Exhibit 2.o contains communications between "Nazar Terabelian," who was deceased at the time the communications were made, and the bank;

- Government Exhibit 30 contains emails with "Iuliia Zhadko," which is defendant Richard Ayvazyan's alias.

- Government Exhibit 31 contains "biographical information" and "statements" made by "Anton Kudiumov," which is a synthetic identity that Manuk Grigoryan admitted that he and defendant Richard Ayvazyan used in furtherance of the fraud.  (ECF 436 at 13-14.)

These communications fit squarely within the exceptions to hearsay and defendants do not make credible arguments to the contrary – nor can they.  The record is replete with evidence sufficient to establish that these statements are not hearsay.[5]

---

[5] Even if these communications contain inadmissible hearsay, the appropriate course is to exclude the communications from the exhibits, not to exclude the exhibits altogether.  Loan files and bank records are textbook examples of self-authenticating business records.

**E.   Defendants' Challenge to Admissibility Under <u>Kastigar</u> Will Be Addressed Post-Trial**

The government has not argued – and will not argued – that the defendants waived any <u>Kastigar</u> arguments based on their position with respect to the authenticity or admissibility of a given exhibit for the purpose of admission at trial.

**II.   CONCLUSION**

For the foregoing reasons, and the reasons set forth in its motion (ECF 468), the government respectfully requests that this Court admit the exhibits identified in Attachment 1 to the government's motion (ECF 468-1) as self-authenticating business records under Federal Rules of Evidence 806(6) and 902(11).

18