TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
     1100/1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527/2424/3819
     Facsimile: (213) 894-6269/0141
     E-mail:    Scott.Paetty@usdoj.gov
                Catherine.S.Ahn@usdoj.gov
                Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
     1400 New York Avenue NW, 3rd Floor
     Washington, DC 20530
     Telephone: (202) 320-0539
     Facsimile: (202) 514-0152
     E-mail:    Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>RICHARD AYVAZYAN,<br>  aka "Richard Avazian" and<br>      "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>  aka "Marietta Abelian" and<br>      "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>  aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>  aka "Mike Grigoryan," and | No. CR 20-579(A)-SVW<br><br>GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT PHYSICAL EVIDENCE OF GOLD COINS AND WATCHES SEIZED FROM DEFENDANTS RICHARD AYVAZYAN'S AND MARIETTA TERABELIAN'S RESIDENCE<br><br>Hearing Date: June 17, 2021<br>Hearing Time: 9:00 a.m.<br>Trial Date:   June 15, 2021<br>Location:     Courtroom of the<br>              Hon. Stephen V.<br>              Wilson |

|   |   |
|---|---|
| "Anton Kudiumov," ARMAN HAYRAPETYAN, EDVARD PARONYAN, aka "Edvard Paronian" and "Edward Paronyan," and VAHE DADYAN, Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, Assistant United States Attorneys Scott Paetty, Catherine Ahn, and Brian Faerstein, and Department of Justice Trial Attorney Christopher Fenton, hereby files this motion <u>in limine</u> seeking to admit physical evidence of certain gold coins and luxury watches seized from defendants Richard Ayvazyan's and Marietta Terabelian's residence as part of the government's investigation in this case.

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 16, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

      /s/
SCOTT PAETTY
CATHERINE AHN
BRIAN FAERSTEIN
Assistant United States Attorneys
CHRISTOPHER FENTON
Department of Justice Trial Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The government respectfully moves <u>in limine</u> for a ruling from the Court that the government may admit at trial physical evidence of gold coins and luxury watches seized from the residence of defendants Richard Ayvazyan ("R. Ayvazyan") and Marietta Terabelian ("Terabelian") on November 5, 2020.

This evidence is directly relevant and highly probative of material issues in this case, particularly in light of defendant Terabelian's multiple assertions in her opening statement that she "wasn't in on it."  The high probative value of this evidence is not substantially outweighed by a danger of unfair prejudice, nor would it constitute cumulative evidence or waste the jury's time.  To the contrary, admission of the evidence would obviate the need for prolonged descriptive testimony regarding the items and allow the government a more efficient means of presenting highly probative evidence regarding the items at trial.

More fundamentally, Federal Rule of Evidence 403 does not require the government to "sanitize its case" or to "tell its story in a monotone."  <u>United States v. Gartmon</u>, 146 F.3d 1015, 1021 (D.C. Cir. 1998).  The government should be permitted to present "the full evidentiary force of the case as the [g]overnment chooses to present it," <u>Old Chief v. United States</u>, 519 U.S. 172, 186-87 (1997) – particularly where there is minimal danger of "unfair" prejudice or other Rule 403 concerns as there is here.  For the reasons explained below, the visual depictions of the gold coins and luxury watches are an important component of the government's trial presentation,

1

are necessary to rebutting defenses raised in defendants' openings, and should be admissible through physical evidence at trial.

**II.   RELEVANT BACKGROUND**

   **A.   Gold Coins and Luxury Watches Seized From Topeka Residence**

On November 5, 2020, law enforcement executed a federal search warrant at a $3.25 million mansion located on Topeka Drive in Tarzana (the "Topeka Residence") at which defendants R. Ayvazyan and Terabelian resided. The government's investigation to that point had identified the Topeka Residence as having been purchased in the names of defendants R. Ayvazyan and Terabelian using proceeds from multiple suspected fraudulent COVID-19 disaster relief loans obtained in 2020. (See Affidavit, In the Matter of the Search of [] Topeka Drive Tarzana California 91356, No. 2:20-MJ-05282 ("SW Aff."), ¶¶ 23 (Under Seal); see also ECF 1, ¶¶ 16-26.)

 The investigation also revealed that a substantial portion of the stolen disaster relief funds had been funneled through various bank accounts, including a bank account opened in the name of defendant Terabelian's father, N.T., after he was deceased, and used to purchase over $400,000 in goods from jewelers. (SW Aff. ¶ 62.f.; see also Govt Trial Exhibits ("GEX") 34, 39.) The stolen disaster relief funds also were used to purchase luxury watches (that were delivered to one of defendant R. Ayvazyan's properties) and other luxury personal items. (SW Aff. ¶ 62.f; GEX 37, 39.)

During the search of the Topeka Residence on November 5, 2020, law enforcement seized, among other things, approximately 60 gold coins. As the evidence at trial will demonstrate, the government separately obtained records from Piccadilly Jewelers reflecting that 60 gold coins had been purchased purportedly by N.T. for the

aggregate price of $122,960. (See GEX 39.) The government anticipates the evidence at trial will show that the funds for this purchase derived, in part, from the proceeds of two fraudulent COVID-19 disaster relief loans submitted on behalf of the purported company "Mod Interiors, Inc.," both in the name of N.T. (defendant Terabelian's then recently deceased father). (See GEX 2.o, 5.m.) The government has marked the gold coins with a placeholder under GEX 56 in its exhibit list filed with the Court.

Agents also seized from the Topeka Residence approximately ten luxury watches, including at least three watches the government was able to determine based on serial numbers were purchased from a retailer called Gentleman Timepieces in July and August 2020, for the prices of $11,000, $37,000, and $51,000, respectively.[1] (See GEX 37.) The records from Gentleman Timepieces reflect that defendant R. Ayvazyan purchased at least five additional luxury watches from this retailer. (See id.) Similar to the gold coins, the government anticipates the evidence at trial will show the purchases of at least three of these luxury watches from Gentleman Timepieces derived, in part, from fraudulent COVID-19 disaster relief proceeds. The government also has included in its exhibit list a placeholder exhibit under GEX 56 for the watches.

---

[1] Defendants moved to suppress the evidence of the luxury watches and gold coins (in addition to other evidence seized during the search of the Topeka Residence). The Court denied defendants' motion to suppress this evidence. (ECF 296.) Even though the Court ordered the government to return five of the ten watches to defendants, the Court nonetheless permitted the government to use evidence of these additional five watches at trial. (See id. at 39-40.) The government already has returned those five additional watches to defendants and seeks to admit at trial physical evidence of the five remaining watches in its possession. The government, however, has photographs (produced to defendants) of the five additional watches that it already returned.

At trial, in addition to the records reflecting the purchases of much of the evidence described above, the government intends to offer as physical evidence the 60 gold coins (contained in a bag and marked as one exhibit) and the five watches that remain in the government's possession that were seized from the Topeka Residence.[2]

### B. Discussion of Gold Coins and Luxury Watches During June 14, 2021 Pretrial Conference

During the pretrial conference on June 14, 2021, in connection with a discussion regarding jury selection, counsel for defendant Terabelian stated a concern that photographs of the gold coins and luxury watches seized from the Topeka Residence could cause, for some unspecified reason, potential jurors on the panel not to want to serve on the jury in this case. In response to this concern, the Court raised the issue as to whether it would be necessary for the government to show photographs of the gold coins and luxury watches to the jury in addition to testimony about the seized items. During the hearing, the government did not provide the Court with a complete presentation of the relevant factual and legal issues to allow the Court to conduct a thorough Rule 403 balancing analysis of this evidence. The government does so now.

## III. ARGUMENT

### A. Evidence Regarding the Gold Coins and Luxury Watches is Relevant Under Rules 401 and 402

Under Federal Rule of Evidence 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than

---

[2] The government also may seek to admit photographs of this specific evidence that have previously been produced to the defense and are encompassed within the placeholder for GEX 56 in the government's exhibit list.

4

it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is presumptively admissible. See Fed. R. Evid. 402.

Physical evidence of the gold coins and luxury watches seized from defendants R. Ayvazyan's and Terabelian's residence are unquestionably relevant to facts of consequence in this case – particularly in light of defendant Terabelian's defense, as articulated in her opening statement, that she had no knowledge of any aspects of the charged conduct.

Defendants are charged, among other things, with conspiracy to commit bank fraud and wire fraud through which they and their coconspirators obtained millions of dollars in fraudulent loans from the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") program.[3] (See ECF 154, Count 1.) The manner and means of the charged bank/wire fraud conspiracy specifically allege that defendants spent the fraudulent loan proceeds on, among other things, "gold coins, diamonds, jewelry, [and] luxury watches," along with residential properties and other high-end personal goods prohibited under the PPP and EIDL programs. (Id., ¶ 31.f.)

Defendants are further charged with a money laundering

---

[3] The Court approved the government's redacted superseding indictment for trial, which removes the original paragraph 32 from the First Superseding Indictment specifying that the alleged charged bank/wire fraud conspiracy involved at least 151 fraudulent PPP/EIDL loan applications seeking a total of at least $21.9 million in proceeds. (See ECF 422-2.) However, the fraudulent loan applications described in the overt acts of the trial superseding indictment, standing on their own, add up to more than $3.24 million. To be clear, the loans included in the overt acts are provided merely as examples of the numerous other fraudulent PPP/EIDL loans submitted as part of the conspiracy. However, through just that exemplary subset of loans, the jury will be considering fraudulent conduct involving millions of dollars.

conspiracy arising out of their use of the fraudulent PPP/EIDL proceeds for their own personal benefit. (See id., Count 26.) The superseding indictment similarly alleges that defendants purchased, among other things, "gold coins" and "luxury watches" in furtherance of their conspiracy to launder the proceeds of their fraudulent scheme. (Id., ¶ 53.c.) Thus, not only were the gold coins and luxury watches among the fruits of defendants' conspiracy to commit bank fraud and wire fraud (not to mention the substantive wire fraud and bank fraud counts also alleged in the superseding indictment), but also they constitute the means through which defendants laundered a portion of the proceeds of the fraud.

Evidence of the appearance of the gold coins and luxury watches also is directly relevant to defendant Terabelian's stated defense that she "wasn't in on it." Defendant will be asking the jury to believe that she lived with her husband, defendant R. Ayvazyan, as he amassed millions of dollars in proceeds from fraudulent PPP/EIDL loans, spending the money on lavish items (including the 60 gold coins and multiple luxury watches) found in her own house, all without her knowledge or raising any concerns in her mind. Testimony only tells half the story. The physical appearance of these opulent items - including a $51,000 18-karat rose gold watch and a stack of gold coins that, by their description alone, may not be recognizable items to some members of the jury - is highly probative of the items' significant value, and defendant Terabelian's knowledge of that fact. The government needs to be able to show the jury the actual seized items, so the jury can evaluate the credibility of her defense that she was just a "homemaker" and had no reason to suspect her husband may have been

engaging in financial fraud.

Thus, the visual evidence of the gold coins and luxury watches is directly relevant to the charges the jury will be considering and highly probative of the fruits and means of the charged conspiracies and defendant Terabelian's state of mind.

### B. The High Probative Value of the Gold Coins and Luxury Watches Evidence is Not Substantially Outweighed by the Danger of Unfair Prejudice Under Rule 403

Under Rule 403, the high probative value of this evidence is not "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 403 does not preclude evidence that prejudices a defendant's case, "as all unfavorable evidence about a defendant does" – it only precludes evidence that unfairly prejudices a defendant's case. United States v. Blitz, 151 F.3d 1002, 1009 (9th Cir. 1998).

Courts have explained that "Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate witnesses' testimony, or to tell its story in a monotone. It does not bar powerful, or even 'prejudicial' evidence." United States v. Gartmon, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (citing Old Chief v. United States, 519 U.S. 172, 192 (1997)) (internal citation omitted). Indeed, the Supreme Court recognizes that "the familiar, standard rule that the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full

7

evidentiary force of the case as the Government chooses to present it" is "unquestionably true as a general matter." Old Chief, 519 U.S. at 186-87.

Guided by these principles, courts have found admissible under Rule 403 far more potentially inflammatory evidence than the visual depiction of the gold coins and luxury watches at issue here.

For example, in Gartmon, a case involving charges of interstate transportation of securities obtained by fraud and money laundering, the D.C. Circuit affirmed the admission of witness testimony that defendant had threatened her by "put[ting] a gun up [her] vagina . . . [and] told [her] that [she] will listen to everything he says and do as he says." Gartmon, 146 F.3d at 1019. The court acknowledged that "there [wa]s no question but that the conduct portrayed by the testimony was outrageous, and that it may dramatically have injured [defendant's] case." Id. at 1021. But the court explained that "[a]lthough there may have been some risk that a recitation of the facts of the incident would evoke emotions in the courtroom, that risk was comparatively small, and it alone did not render the testimony 'unfair' or 'substantially outweigh[]' its probative value." Id. at 1021. The court did not require the government to "sanitize" its case.

Similarly, in United States v. Gloster, 185 F.3d 910 (D.C. Cir. 1999), defendant attempted to limit under Rule 403 evidence of his gun being loaded to testimony about the ammunition but not admission of the ammunition itself. Id. at 913-914. The court rejected defendant's unfair prejudice argument, explaining that "[t]here is no question . . . that physical evidence is an important part of an effective trial presentation and that the 'persuasive power of the

8

concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them.'" Id. at 913 (quoting Old Chief, 519 U.S. at 172). See also United States v. DeMuro, 677 F.3d 550 (3d Cir. 2012) (testimonial evidence regarding defendants' spending on "vacations, jewelry, cars, and parties . . . not so inflammatory as to carry a great risk of prejudice," explaining the evidence was in part "relevant to the conspiracy [to defraud the United States] charge as it was probative of [defendants'] conspiratorial purpose"); Honie v. Crowther, Case No. 2:07-CV-628 JAR, 2017 WL 6398616, at *6 (D. Utah Dec. 13, 2017) (affirming admission of graphic photographs of deceased victim, defendant "covered in blood," and children "with blood on them," explaining that the "State was not required to rely exclusively on testimony to prove its case") (citing Old Chief, 519 U.S. at 187-88, and Gartmon, 146 F.3d at 1021).

    The same is true here. The government seeks to admit physical evidence of the fruits and means of defendants' alleged bank/wire fraud and money laundering conspiracies. The government should not be required to "sanitize" this highly probative evidence for the jury nor to "tell its story in a monotone." Gartmon, 146 F.3d at 1021. The admission here of the visual depictions of the gold coins and luxury watches is "an important part of an effective trial presentation," as "the 'persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them.'" Gloster, 185 F.3d at 913 (quoting Old Chief, 519 U.S. at 172).

    On the other side of the balance, there is little in the way of "unfair" prejudice about the physical evidence of the gold coins and

9

luxury watches. They accurately and effectively reflect the high value of the expenditures defendants illegally made in laundering the proceeds of their fraudulently obtained PPP/EIDL loans.

In addition, the admission of this evidence will conserve, not waste, time during trial. Fed. R. Evid. 403. The government will be able to limit the sponsoring witness's testimony regarding detailed descriptions of each of the luxury watches and the gold coins seized from the Topeka Residence, should the government be permitted to admit into evidence the actual items for ease of the jury's review. Nor is presenting this highly probative evidence through both witness testimony and physical evidence cumulative under Rule 403. The physical evidence will complement and aid in the witness's testimony about these items, and, with the exception of the Gentleman Timepiece witness who sold defendant R. Ayvazyan at least three of the luxury watches seized from his home and the government's summary witness regarding flow of funds, the government does not anticipate other witnesses testifying about these items.

In sum, the visual images of the gold coins and luxury watches are relevant to facts of consequence and are highly probative of elements of the charged offenses, and present no credible danger of unfair prejudice that substantially outweighs their probative value.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests the Court order that physical evidence of the gold coins and luxury watches seized from the Topeka Residence be admissible at trial.