1  TRACY L. WILKISON
   Acting United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   SCOTT PAETTY (Cal. Bar No. 274719)
4  CATHERINE AHN (Cal. Bar No. 248286)
   BRIAN FAERSTEIN (Cal. Bar No. 274850)
5  Assistant United States Attorneys
   Major Frauds/Environmental and Community Safety Crimes Sections
6       1100/1300 United States Courthouse
        312 North Spring Street
7       Los Angeles, California 90012
        Telephone: (213) 894-6527/2424/3819
8       Facsimile: (213) 894-6269/0141
        E-mail:    Scott.Paetty@usdoj.gov
9                  Catherine.S.Ahn@usdoj.gov
                   Brian.Faerstein@usdoj.gov
10
   JOSEPH BEEMSTERBOER
11 Acting Chief, Fraud Section
   Criminal Division, U.S. Department of Justice
12 CHRISTOPHER FENTON
   Trial Attorney, Fraud Section
13 Criminal Division, U.S. Department of Justice
        1400 New York Avenue NW, 3rd Floor
14      Washington, DC 20530
        Telephone: (202) 320-0539
15      Facsimile: (202) 514-0152
                   E-mail: Christopher.Fenton@usdoj.gov
16
   Attorneys for Plaintiff
17 UNITED STATES OF AMERICA

18                  UNITED STATES DISTRICT COURT

19            FOR THE CENTRAL DISTRICT OF CALIFORNIA

20 UNITED STATES OF AMERICA,          No. CR 20-579(A)-SVW

21           Plaintiff,               GOVERNMENT'S MOTION *IN LIMINE* TO
                                      PRECLUE EVIDENCE OR ARGUMENT
22           v.                       REGARDING STATE INVESTIGATION AND
                                      PROSECUTION
23 RICHARD AYVAZYAN,
     aka "Richard Avazian" and
24     "Iuliia Zhadko,"
   MARIETTA TERABELIAN,
25   aka "Marietta Abelian" and
       "Viktoria Kauichko,"
26 ARTUR AYVAZYAN,
     aka "Arthur Ayvazyan," and
27 TAMARA DADYAN,
   MANUK GRIGORYAN,
28   aka "Mike Grigoryan," and

1       "Anton Kudiumov,"
ARMAN HAYRAPETYAN,
2   EDVARD PARONYAN,
     aka "Edvard Paronian" and
3       "Edward Paronyan," and
VAHE DADYAN,
4
    Defendants.
5

6       Plaintiff United States of America, by and through its counsel

7   of record, the Acting United States Attorney for the Central District

8   of California, Assistant United States Attorneys Scott Paetty,

9   Catherine S. Ahn, and Brian Faerstein, and Department of Justice

10  Trial Attorney Christopher Fenton, hereby files this motion <u>in limine</u>

11  seeking to preclude evidence and argument, including through the

12  testimony of Los Angeles Police Department Detective Lyle Barnes and

13  Federal Bureau of Investigation Special Agent Justin Palmerton,

14  regarding the State of California's investigation and prosecution in

15  <u>People of the State of California v. Tamara Dadyan et al.</u>

16      This motion is brought pursuant to Rules 401, 402, and 403 of

17  the Federal Rules of Evidence and is based upon the attached

18  //

19  //

20  //

21

22

23

24

25

26

27

28

1  memorandum of points and authorities, the files and records in this

2  case, and such further evidence and argument as the Court may permit.

3   Dated: June 20, 2021            Respectfully submitted,

4                                   TRACY L. WILKISON
                                    Acting United States Attorney
5
                                    SCOTT M. GARRINGER
6                                   Assistant United States Attorney
                                    Chief, Criminal Division
7

8                                        /s/
                                    _____
9                                   SCOTT PAETTY
                                    CATHERINE S. AHN
                                    BRIAN FAERSTEIN
10                                  Assistant United States Attorneys
                                    CHRISTOPHER FENTON
11                                  Department of Justice Trial Attorney

12
                                    Attorneys for Plaintiff
13                                  UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2  TABLE OF CONTENTS.......................................................i

3  TABLE OF AUTHORITIES....................................................ii

4  MEMORANDUM OF POINTS AND AUTHORITIES....................................1

5  I.   INTRODUCTION.......................................................1

6  II.  RELEVANT BACKGROUND................................................2

7       A.   The State of California Mortgage Fraud Investigation
             and Prosecution...............................................2
8
        B.   Defendant Richard Ayvazyan's Prior Baseless
9            Accusations Regarding the Federal Government's
             Purported Instigation of the State Case.......................4
10
        C.   Anticipated Defense Case......................................5
11
   III. ARGUMENT...........................................................6
12
        A.   Evidence Regarding the State Case is Not Relevant to
13           the Charges Here Under Rules 401 and 402......................6

14      B.   Any Limited Probative Value Regarding the State Case
             is Substantially Outweighed by Multiple Dangers Under
15           Rule 403......................................................8

16 IV.  CONCLUSION.........................................................13

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**CASES**

<u>Dicks v. United States</u>, Civil Action No. 09-2614, 2010 WL
    11484356 (E.D. Pa. Sept. 8, 2010)............................10

<u>United States v. Hite</u>, 769 F.3d 1154 (D.C. Cir. 2014)..............10

<u>United States v. Jimenez</u>, 513 F.3d 62 (3d Cir. 2008)..........10, 11

<u>United States v. Lupton</u>, 620 F.3d 790 (7th Cir. 2010).............10

<u>United States v. Rewald</u>, 889 F.2d 836 (9th Cir. 1989).......8, 9, 11

<u>United States v. Sarno</u>, 73 F.3d 1470 (9th Cir. 1995)...............9

**RULES**

Federal Rule of Evidence 401...............................1, 6, 8

Federal Rule of Evidence 402...............................1, 6, 8

Federal Rule of Evidence 403...............................1, 8, 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The government respectfully moves <u>in limine</u> to preclude defendants from presenting evidence or argument, including through witnesses called during the defense case, regarding the State of California's investigation and prosecution in <u>People of the State of California v. Tamara Dadyan et al.</u> (the "State Case").

Defendant Richard Ayvazyan has previously alleged – falsely and with no foundation – that the federal government caused the State of California (the "State") to draw up a 99-page, 133-count indictment against him and codefendants Artur Ayvazyan and Tamara Dadyan (as well as nine other people not charged in this federal case) in a purported attempt to stymie his preparation for trial in this case. These allegations are false.  The State Case arose out of an entirely separate alleged mortgage and clean energy loan fraud scheme going back at least six years before the COVID-19 disaster relief loan fraud scheme at issue here.  The State exercised its independent prosecutorial discretion in bringing charges relating to the factually and temporally distinct fraud scheme at the heart of its case.  Evidence or argument pertaining to the unrelated State Case is irrelevant to this case, and should be precluded as inadmissible under Federal Rules of Evidence 401 and 402.

Moreover, any probative value of any such evidence is substantially outweighed by numerous dangers under Rule 403.  The practical effect of permitting testimony and argument about a completely separate case involving a different conspiracy will be to confuse the jury.  Such confusion is especially problematic in light

1

of the jury instruction (and verdict form) sought by defendant Richard Ayvazyan regarding single conspiracies versus multiple conspiracies.  (See ECF 372, Defense Proposed Instruction Nos. 2, 7, 9; ECF 547.)  Evidence or argument regarding the State Case will no doubt mislead the jury and possibly suggest that, if the jury were to agree that there was a separate conspiracy in the State Case, then the jury could not find defendant Richard Ayvazyan guilty in this case.  This is, of course, not the law and the government respectfully requests that the Court issue an affirmative ruling limiting the scope of testimony to prevent such confusion.

Accordingly, for the reasons explained herein, defendants should be precluded from offering evidence or argument regarding the investigation and prosecution of the State Case.

## II.  RELEVANT BACKGROUND

### A.   The State of California Mortgage Fraud Investigation and Prosecution

In late April and early May 2021, authorities from the State of California (the "State") arrested three defendants in this case – defendants Tamara Dadyan ("T. Dadyan"), Richard Ayvazyan ("R. Ayvazyan"), and Artur Ayvazyan ("A. Ayvazyan") – along with numerous others in connection with a longstanding investigation and prosecution brought by the State.  (See Indictment, People of the State of California v. Tamara Dadyan, et al., filed April 26, 2021 ("State Ind.").[1])

Specifically, the State has charged the defendants in its case with "allegedly operating a sophisticated mortgage fraud and green

---

[1] See https://oag.ca.gov/system/files/attachments/press-docs/Indictment%2020210426.pdf.

loan scheme . . . [that] resulted in a loss of approximately $15
million" between approximately 2014 and 2020.  (See State of
California Department of Justice, Office of the Attorney General,
Press Release, "Attorney General Bonta Announces Arrests and
Arraignment in $15 Million Mortgage Fraud and Green Loan Scheme in
Southern California," May 3, 2021 ("State Press Release").[2])  The
State's 133-count indictment names twelve defendants and is
predicated on at least a six-year fraud scheme that began more than
half-a-decade before COVID-19 and the CARES Act-related fraud at the
heart of the instant case.  (See State Ind.)

    As described further in the State's Press Release, the charges
in the State Case center upon "a scheme that used stolen identities
to obtain mortgage and green loans, which were wired to bank accounts
[the defendants] controlled.  As a part of their scheme, they
allegedly exploited the Ygrene Energy Fund and Renew Funding,
companies that provide funding to licensed contractors for energy-
efficient home improvements for homeowners.  The defendants also
allegedly used their false identities to obtain mortgage loans from
conventional banks and hard money lenders for years, culminating in a
loss of $15 million."  (See State Press Release.)

    According to the State's indictment and Press Release, the State
Case involves a substantial amount of evidence and information going
back many years, including testimony provided by at least 47
witnesses who appeared before the grand jury in the State
proceedings.  (See State Ind. at 99.)

---

    [2] See https://oag.ca.gov/news/press-releases/attorney-general-
bonta-announces-arrests-and-arraignment-15-million-mortgage.

**B.   Defendant Richard Ayvazyan's Prior Baseless Accusations Regarding the Federal Government's Purported Instigation of the State Case**

In his reply in support of his motion to dismiss for prosecutorial misconduct (ECF 329), defendant R. Ayvazyan made a series of false and groundless allegations regarding the federal government's[3] supposed role in prompting the State to bring charges in the State Case.

Defendant R. Ayvazyan erroneously claimed, among other things, that:

- the "government decided to bring charges in a years-old FBI-state investigation," (ECF 329 at 3);

- the "government responded to the Court's April 16 ruling [setting trial for June 15] by having the state government charge Ayvazyan and co-defendants Tamara Dadyan and Artur Ayvazyan in a state indictment, arrest them, and seek draconian state detention orders that would inhibit the defendants' abilities to prepare for a June 15 federal trial," (id.);

- "federal and state authorities have conspired to undermine Court orders and Ayvazyan's fundamental rights," (id. at 4);

- the "circumstantial evidence strongly implies that the state government arrested and charged Ayvazyan after a years-long investigation at the behest of the federal government," (id. at 4); and

---

[3] To avoid confusion, the use of "government" herein refers to the federal government, not including State and local authorities.

4

- the "government aggressively pushed for Ayvazyan's detention (and that of his co-defendants) in the state case knowing that it would detract from federal trial preparation, force another continuance, or coerce defendants into pleading." (Id. at 5.)

All of these accusations were and are false, as the government explained in its sur-reply to defendant R. Ayvazyan's brief. (ECF at 334.) The Court denied defendant's motion to dismiss. (ECF 343.)

## C.  Anticipated Defense Case

Defendant R. Ayvazyan has informed the government and the Court that he intends to call at least two witnesses as part of his defense case: (1) Los Angeles Police Department ("LAPD") Detective Lyle Barnes; and (2) Federal Bureau of Investigation ("FBI") Special Agent Justin Palmerton.

The government understands that Detective Barnes was part of the law enforcement team that conducted the investigation leading to the charges in the State Case. Detective Barnes's primary contact with the government in relation to the federal charges currently being tried was his provision of assistance to federal authorities in the execution of a search warrant in the Federal Case at defendants A. Ayvazyan's and T. Dadyan's residence on Weddington Street in Tarzana on November 5, 2020, on a day when law enforcement executed six other federal premises search warrants. In addition, as the government disclosed to defendants within days of the State making arrests in the State Case, the LAPD referred the underlying mortgage fraud investigation in the State Case to the FBI in 2017, but federal authorities ultimately did not bring charges relating to that investigation. (See ECF 331-3.)

1    The government expects that defense counsel will attempt to
2    question one or both of these witnesses and offer evidence regarding
3    the investigation and prosecution of the State Case.  For the
4    following reasons, defendants should be precluded from doing so.
5    **III. ARGUMENT**
6         **A.   Evidence Regarding the State Case is Not Relevant to the
              Charges Here Under Rules 401 and 402**
7
8    Defendant R. Ayvazyan has attempted previously, based on
9    speculation and false accusations, to draw a connection of
10   consequence between the State Case and the government's prosecution
11   in this case (hereinafter the "Federal Case").  To the contrary, the
12   State exercised its independent prosecutorial authority to
13   investigate and address violations of state law that are wholly
14   separate from the violations of federal law addressed in the
15   superseding indictment in the Federal Case.  The State Case does not
16   bear on a "fact . . . of consequence in determining the action" and
17   thus is irrelevant and inadmissible under Federal Rules of Evidence
18   401 and 402.  Fed. R. Evid. 401, 402.
19   The charges in the Federal Case arise out of a scheme to submit
20   fraudulent COVID-19 disaster relief loan applications and launder the
21   proceeds of those fraudulently-obtained loans.  (See ECF 154.)  These
22   loans were made available through the Paycheck Protection Program
23   ("PPP") and Economic Injury Disaster Loan ("EIDL") program following
24   the passage of the CARES Act in March 2020.  (Id. at ¶¶ 10-18.)  The
25   bank/wire fraud and money laundering conspiracies charged in this
26   case are alleged to have begun "no later than in or around March
27   2020," when loans through the PPP and EIDL programs first became

28

1  available in response to the economic dislocations of the COVID-19

2  pandemic.  (Id. at 30, 53.)

3      The 133-count indictment in the State Case, on the other hand,

4  alleges mortgage fraud, grand theft by false pretenses, and forgery,

5  among other California state offenses, relating to conduct alleged to

6  have taken place predominantly between 2014 and 2019, well before the

7  onset of the COVID-19 pandemic.[4]  (See generally State Ind.)  The

8  State Case appears to focus upon a scheme involving the swindling of

9  money through "energy-efficient home improvement" loans and

10  traditional mortgage fraud (see State Press Release) – matters

11  unrelated to the PPP/EIDL loans targeted by defendants at the heart

12  of the Federal Case.  While the State's indictment references certain

13  purported business names that also appear to pertain to entities in

14  the Federal Case, including "Secureline Realty and Funding" and

15  "Fiber One," the allegations in the State Case involving these

16  entities relate to conduct in 2016 and 2017, respectively,

17  significantly predating the charges in the Federal Case and

18  necessarily unrelated to COVID-19 disaster relief loans.  (See, e.g,

19  State Ind., Count 14, Overt Act 14; id., Count 65, Overt Act 8.)

20      The government anticipates the defense will argue that these and

21  possibly other stolen or synthetic individual or business entities

22  were used by defendants in connection with both the PPP/EIDL loan

23  fraud scheme alleged here and the separate mortgage and green loan

24  fraud scheme charged by the State.  That does not import relevance

25  from the factually and temporally distinct allegations in the State

26

27      [4] The state indictment reflects a few allegations as late as
   January 23, 2020 and February 4, 2020 (see State Ind., Counts 42-44,
28  97-99), which still predate passage of the CARES Act in late March
   2020 and the charges in the Federal Case.

7

1    Case to matters "of consequence in determining" guilt in the Federal

2    Case.  Fed. R. Evid. 401.  Defendants' use of some of the same stolen

3    or synthetic identities to perpetrate two wholly separate fraudulent

4    schemes - carried out at different times, targeting different

5    victims, and involving at least nine different co-conspirators – is

6    reflective of the overall breadth of their fraudulent activities, not

7    a common scheme or plan with the PPP/EIDL scheme alleged in <u>this</u>

8    case.  The defense has not proffered any credible and material basis

9    for drawing such a connection – aside from its past false accusations

10   about the government purportedly attempting to influence the

11   direction of the State's prosecution.

12        Because the mortgage and green loan fraud scheme alleged in the

13   State Case is not relevant to any fact of consequence at trial, the

14   Court should find that evidence regarding the State Case is

15   inadmissible on this basis alone.  Fed. R. Evid. 401, 402.

16        **B.    Any Limited Probative Value Regarding the State Case is**
             **Substantially Outweighed by Multiple Dangers Under Rule 403**
17

18        Even if the State Case bore some relevance to the charges in the

19   Federal Case based on the overlapping possession or use of certain

20   fraudulent identities, any limited probative value regarding the

21   allegations in the State Case to the charges here is substantially

22   outweighed by multiple concerns under Federal Rule of Evidence 403,

23   including the danger of confusing the issues, misleading the jury,

24   undue delay, wasting time, and unfair prejudice.  Fed. R. Evid. 403.

25   "Rule 403 recognizes that as the probative value of evidence

26   decreases, the potential increases for it to be substantially

27   outweighed by the dangers identified in the rule."  <u>United States v.</u>

28   <u>Rewald</u>, 889 F.2d 836, 853 (9th Cir. 1989).  This disparity between

8

the minimal (or non-existent) probative value and the Rule 403 concerns is especially pronounced in this case.

First, allowing defendants to introduce evidence regarding the allegations and circumstances underlying the State Case undoubtedly will confuse the issues and mislead the jury.  The government's case, as it has been presented to the jury during this trial, focuses upon the period of time starting in March 2020 when PPP and EIDL loans were first made available to the public.  The scope of the evidence has been limited to defendants' use of these two programs to submit fraudulent loan applications and launder the millions of dollars in proceeds during 2020 and into 2021.  The introduction of evidence regarding a wholly separate scheme or schemes, going back to at least 2014 and involving a factually distinct set of circumstances, would "require delving into particular transactions and events that are far afield from this prosecution."  Rewald, 889 F.2d at 836 (affirming exclusion of defense proposed evidence where "[a]dmission of this evidence posed the substantial risk of permitting the trial to degenerate into an unfocused presentation of facts and testimony that would confuse the issues and mislead the jury"); see also United States v. Sarno, 73 F.3d 1470, 1488-89 (9th Cir. 1995) ("Evidence of a 'grand conspiracy' might well have (as the district court here concluded) induced confusion in the minds of the jury and distracted them from the true issue [in the case].").

Courts recognize that evidence relating to separate investigations and cases, including state cases not directly related to a federal prosecution, present a significant danger of confusing the issues and misleading the jury under Rule 403.

1    For example, in United States v. Jimenez, the Third Circuit
2    affirmed a district court's limitation of the defense's cross-
3    examination of a bank witness concerning the bank "being investigated
4    by the state district attorney in another totally unrelated matter."
5    513 F.3d 62, 76 (3d Cir. 2008).  The court limited cross-examination
6    of the witness under Rule 403 where the "unrelated investigation
7    occurred years after the investigation of the actions at issue [in
8    the federal case]" and the witness had "little knowledge of the other
9    investigation."  Id.  The court found that the "marginal relevance
10   and the risk of delay and confusion created by a mini-trial to
11   explain the evidence" supported the district court's limitation under
12   Rule 403.  Id.  See also United States v. Hite, 769 F.3d 1154, 1171-
13   72 (D.C. Cir. 2014) (affirming exclusion of prior testimony of
14   government witness which "could only be fairly understood in the
15   context of the specific chats that had taken place in . . . two
16   prior, unrelated cases," presenting "potential for jury confusion");
17   United States v. Lupton, 620 F.3d 790, 800 (7th Cir. 2010) (affirming
18   exclusion of defense expert witness testimony regarding state
19   statutes that were "relevant to [defendant's] defense" but
20   "tangential to the crucial questions the factfinder had to answer,"
21   and "[t]estimony about them would have been of limited value at best
22   and unduly confusing at worst"); Dicks v. United States, Civil Action
23   No. 09-2614, 2010 WL 11484356, at *6 (E.D. Pa. Sept. 8, 2010)
24   (excluding evidence regarding separate investigation and three civil
25   lawsuits where admission would have "redirected the focus of
26   Petitioner's trial, creating several mini-trials" and "distracting
27   and confusing the jury").
28

The same concerns apply with equal force here.  Allowing the defense to introduce evidence of the State Case, including through the examination of Detective Barnes, would require "a mini-trial to explain the evidence" in order to avoid juror confusion about unrelated issues injected into the trial during the defense case. Jimenez, 513 F.3d at 76.  There is a substantial risk that doing so would cause the trial to "degenerate into an unfocused presentation of facts and testimony that would confuse the issues and mislead the jury."  Rewald, 889 F.2d at 853.

Second, admission of evidence about the State Case would cause undue delay and waste time.  If the defense were permitted to open the door and elicit testimony from Detective Barnes about the State Case, the government would need to complete the picture, whether through questioning Detective Barnes more extensively about his knowledge of the State Case and/or putting on additional witnesses on rebuttal.[5]  See Rewald, 889 F.2d at 853 ("Of course, the government would be permitted to offer rebuttal evidence, thereby further drawing out the proceedings.")  Given the apparent broad evidentiary scope of the State Case, this trial-within-a-trial would "considerably delay[] an already lengthy trial."  Id.

---

[5] As the government previously explained to defendants, the government has not taken possession of nor reviewed the discovery maintained in the State's custody underlying the charges in the State Case (although it has made efforts to make such discovery available to all defendants in this case) and thus has not investigated or reviewed the evidence underlying those charges.  (See 331-3.) However, should issues regarding the State Case become admissible at trial, the government will need to develop its understanding of the State's charges and prepare to offer evidence completing the picture of defendants R. Ayvazyan's and A. Ayvazyan's involvement in that alleged conduct.

1    The government's need to complete the picture would be

2    especially strong were defendants R. Ayvazyan and A. Ayvazyan to try

3    to pin responsibility for their criminal conduct in the Federal Case

4    on defendant T. Dadyan (who already has pleaded guilty here) based on

5    the allegations against her in the State Case - as both defendants R.

6    Ayvazyan and A. Ayvazyan have indicated may be part of their theories

7    of defense.  Indeed, defendants R. Ayvazyan and A. Ayvazyan are the

8    number two and three defendants (of twelve) charged in the State

9    Case.  Any defense contention that they are somehow absolved of

10   responsibility here due to defendant T. Dadyan's alleged fraudulent

11   conduct in the State Case would require a mini-trial as to defendants

12   R. Ayvazyan's and A. Ayvazyan's criminal conduct alleged by the

13   State.  This would be a waste of time and cause undue delay,

14   particularly when balanced against the minimal probative value (at

15   best) of any evidence relating to the State Case.

16   Finally, introduction of evidence regarding the State Case

17   presents a substantial danger of unfair prejudice to the government.

18   The government anticipates that defendant R. Ayvazyan may seek to

19   continue his baseless, false argument, whether through his

20   examination of Detective Barnes or Agent Palmerton, that the

21   government somehow engineered the State's 133-count indictment as a

22   means to deprive defendant of his rights in this case.  This is

23   false, as the government played no role in the State's decision to

24   investigate and bring charges against defendant.  (See ECF 331.)  Any

25   such line of cross-examination, innuendo, or argument would unfairly

26   prejudice the government in its presentation of evidence to the jury

27   in this case, and further confuse the issues and mislead the jury.

28   Fed. R. Evid. 403.

## IV.   CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court preclude defendants from questioning witnesses or offering evidence or argument regarding the State of California's investigation and prosecution in <u>People of the State of California v. Tamara Dadyan et al.</u>