Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Meghan L. Newcomer (*pro hac vice*)
*mnewcomer@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  20-cr-579 (SVW) |
| *Plaintiff,* | **NOTICE OF MOTION AND MOTION FOR JUDGMENT OF ACQUITTAL** |
| v. | |
| RICHARD AYVAZYAN, *et al.*, | Hon. Stephen V. Wilson |
| *Defendants.* | |

## NOTICE OF MOTION AND MOTION FOR JUDGMENT OF ACQUITTAL

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant Richard Ayvazyan ("Ayvazyan"), through undersigned counsel, hereby moves the Court to enter a judgment of acquittal pursuant to Fed. R. Crim. P. 29.

This motion is based on this notice, the accompanying memorandum of points and authorities, any reply that Ayvazyan may make, the trial evidence, and the proceedings in this case.

Dated:   June 22, 2021

Respectfully submitted,

**STEPTOE & JOHNSON LLP**

*/s/ Ashwin J. Ram*
Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Meghan L. Newcomer (*pro hac vice*)
*mnewcomer@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

1

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES .................................................1

I.      LEGAL STANDARD ................................................................1

II.     ARGUMENT ......................................................................2

     A.   NO REASONABLE JUROR COULD CONCLUDE BEYOND A
        REASONABLE DOUBT THAT AYVAZYAN IS GUILTY
        BASED SOLELY ON UNTAINTED EVIDENCE, TESTIMONY,
        AND ARGUMENT .................................................................2

     B.   NO REASONABLE JUROR COULD CONCLUDE BEYOND A
        REASONABLE DOUBT THAT AYVAZYAN COMMITTED
        MONEY LAUNDERING WHILE ON RELEASE (COUNTS 28-
        32) ...............................................................................4

         1.   The Evidence ...........................................................5

             a.   Government Argument that Zhadko Is a
                  "Unique Synthetic Identity" ..................................5

             b.   Evidence of Who Used the Accounts at Issue .....................6

         2.   Application of Law ....................................................7

     C.   NO REASONABLE JUROR COULD CONCLUDE BEYOND A
        REASONABLE DOUBT THAT AYVAZYAN COMMITTED
        AGGRAVATED IDENTITY THEFT (COUNTS 21-22) ..........................8

     D.   NO REASONABLE JUROR COULD CONCLUDE BY A
        PREPONDERANCE THAT THE GOVERNMENT HAS PROVED
        VENUE FOR WIRE FRAUD (COUNTS 2-12) ...................................9

     E.   NO REASONABLE JUROR COULD CONCLUDE BEYOND A
        REASONABLE DOUBT THAT AYVAZYAN COMMITTED
        CONSPIRACY, WIRE FRAUD, BANK FRAUD, AND
        CONSPIRACY TO COMMIT MONEY LAUNDERING
        (COUNTS 1-20 & 26) ...........................................................12

III.    CONCLUSION ....................................................................14

i

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Burks v. United States,*
   437 U.S. 1 (1978) ................................................................................. 1

*Curley v. United States,*
   160 F.2d 229 (D.C. Cir. 1947) ............................................................ 2

*Evans v. Michigan,*
   133 S. Ct. 1069 (2013) ........................................................................ 2

*Jackson v. Virginia,*
   443 U.S. 307 (1979) ......................................................................... 1, 2

*Sanabria v. United States,*
   437 U.S. 54 (1978) .............................................................................. 2

*Smith v. Massachusetts,*
   543 U.S. 462 (2005) ............................................................................ 2

*United States v. Ayvazyan,*
   20-mj-3857, Dkt. 17 (S.D. Fla. Oct. 22, 2020) .................................. 3

*United States v. Bogucki,*
   No. 18-cr-21, 2019 WL 1024959 (N.D. Cal. Mar. 4, 2019) ............... 8

*United States v. D'Amato,*
   39 F.3d 1249 (2d Cir. 1994) ............................................................... 8

*United States v. Donato,*
   866 F. Supp. 288 (W.D. Va. 1994) ................................................... 12

*United States v. Duran,*
   189 F.3d 1071 (9th Cir. 1999) .......................................................... 13

*United States v. Fernandez,*
   388 F.3d 1199 (9th Cir. 2004) .......................................................... 13

*United States v. Glenn,*
   312 F.3d 58 (2d Cir. 2002) ................................................................. 8

ii

MOTION FOR JUDGMENT OF ACQUITTAL

*United States v. Johnson,*
   297 F.3d 845 (9th Cir. 2002) ................................................................... 10

*United States v. Leslie,*
   103 F.3d 1093 (2d Cir. 1997) .................................................................... 2

*United States v. Lopez,*
   74 F.3d 575 (5th Cir. 1996) ...................................................................... 8

*United States v. Martin Linen Supply Co.,*
   430 U.S. 564 (1977) ................................................................................... 2

*United States v. Martinez,*
   54 F.3d 1040 (2d Cir. 1995) ..................................................................... 8

*United States v. Mikell,*
   163 F. Supp. 2d 720 (E.D. Mich. 2001) ................................................. 12

*United States v. Mulheren,*
   938 F.2d 364 (2d Cir. 1991) ..................................................................... 9

*United States v. Pace,*
   314 F.3d 344 (9th Cir. 2002) .............................................................. 10, 11

*United States v. Pauling,*
   924 F.3d 649 (2d Cir. 2019) ...................................................................... 2

*United States v. Rodriguez-Moreno,*
   526 U.S. 275 (1999) ................................................................................. 11

*United States v. Ruelas-Arreguin,*
   219 F.3d 1056 (9th Cir. 2000) ........................................................... 10, 11

*United States v. Tisor,*
   96 F.3d 370 (9th Cir. 1996) .................................................................... 15

*United States v. Torres,*
   604 F.3d 58 (2d Cir. 2010) ........................................................................ 1

*United States v. Valle,*
   807 F.3d 508 (2d Cir. 2015) .................................................................. 1, 2

*United States v. Wellington,*
   754 F.2d 1457 (9th Cir. 1985) ................................................................ 13

MOTION FOR JUDGMENT OF ACQUITTAL

*United States v. Wood*,
364 F.3d 704 (6th Cir. 2004) ....................................................................... 11

**Statutes**

18 U.S.C. § 1956(a)(1)(B) ............................................................................... 4

18 U.S.C. § 3237(a).................................................................................. 11, 12

**Other Authorities**

2A Wright & Henning § 467 (4th ed. 2009) ..................................................... 2

Charles Alan Wright & Peter Henning, *Federal Prac. & Proc. Crim.* §462 .................. 1

Fed. R. Crim. P. 18......................................................................................... 10

Fed. R. Crim. P. 29(a) ................................................................................. 1, 2

Fed. R. Crim. P. 29(d)(3) ................................................................................. 2

Justice Manual § 967, *available at*
https://www.justice.gov/archives/jm/criminal-resource-manual-967-
venue-wire-fraud............................................................................................ 11

Ninth Cir. Jury Instr. § 8.147 ........................................................................... 4

U.S. Const. amend. vi ...................................................................................... 10

MOTION FOR JUDGMENT OF ACQUITTAL

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3      Defendant Richard Ayvazyan respectfully moves for judgment of acquittal under

4   Rule 29(a) of the Federal Rules of Criminal Procedure.  With the government now

5   having presented its evidence, it is clear there is insufficient evidence for a reasonable

6   jury to find guilt beyond a reasonable doubt on any of the charges.

## I.     LEGAL STANDARD

7

8      "After the government closes its evidence . . . , the court on the defendant's

9   motion must enter a judgment of acquittal of any offense for which the evidence is

10  insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a) (emphasis added); *see, e.g.,*

11  *Burks v. United States*, 437 U.S. 1, 10 n.5 (1978) (reaffirming the mandatory nature of

12  this rule); accord 2A Charles Alan Wright & Peter Henning, *Federal Prac. & Proc.*

13  *Crim.* §462 (same).  Rule 29(a) "implements 'the requirement that the prosecution must

14  establish a prima facie case by its own evidence before the defendant may be put to his

15  defense.'"  *Id.*  (citation omitted).   Although the court must "look at the evidence in the

16  light most favorable to the government," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979),

17  "[t]his standard does not mean that" the verdict must be sustained "if there is any

18  evidence that arguably could support a verdict."  *United States v. Valle*, 807 F.3d 508,

19  515 (2d Cir. 2015).  "In any criminal trial there is always some evidence of guilt,

20  otherwise there could not have been a prosecution."  *Id.*

21      Although a reviewing court defers to jury assessments of credibility, conflicting

22  testimony, and reasonable inferences from the evidence, "specious inferences are not

23  indulged, because it would not satisfy the Constitution to have a jury determine that the

24  defendant is *probably* guilty."  *Id*. (internal quotations omitted) (emphasis in original);

25  *see also United States v. Torres*, 604 F.3d 58, 67 (2d Cir. 2010) ("[T]he jury's

26  inferences must be reasonably based on evidence presented at trial, not on

27  speculation.") (internal quotations omitted).  Speculation, even reasonable speculation,

28

1

MOTION FOR JUDGMENT OF ACQUITTAL

is insufficient to establish an element of guilt beyond a reasonable doubt. *United States v. Pauling*, 924 F.3d 649, 655, 659-61 (2d Cir. 2019); *United States v. Leslie*, 103 F.3d 1093, 1102 (2d Cir. 1997).

"If 'reasonable' jurors 'must necessarily have a reasonable doubt' as to guilt, the judge 'must require acquittal, because no other result is permissible within the fixed bounds of jury consideration.'" *Jackson*, 443 U.S. at 318 n.11 (quoting *Curley v. United States*, 160 F.2d 229, 232–33 (D.C. Cir. 1947)) (alteration marks omitted). "If the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *Valle*, 807 F.3d at 515 (citations omitted); *accord* 2A Wright & Henning § 467 (4th ed. 2009) (noting that the *Curley* test "is universally accepted by the courts").

A pre-verdict judgment of acquittal under Rule 29(a) is final and unappealable. *See United States v. Martin Linen Supply Co.*, 430 U.S. 564, 575 (1977) ("[T]he Double Jeopardy Clause bars appeal from an acquittal entered under . . . Rule 29(a) . . . .").[1]  In contrast, a post-verdict judgment of acquittal is appealable and may result in a new trial if the judgment is reversed on sufficiency grounds but remanded because of other errors. *See, e.g.*, Fed. R. Crim. P. 29(d)(3).

## II.   ARGUMENT

### A.   No reasonable juror could conclude beyond a reasonable doubt that Ayvazyan is guilty based solely on untainted evidence, testimony, and argument

Understanding that the Court intends to hold a *Kastigar* hearing after trial regarding both indictment and trial taint, Ayvazyan respectfully submits that the

---

[1] *Accord Evans v. Michigan*, 133 S. Ct. 1069, 1074 (2013); *Smith v. Massachusetts*, 543 U.S. 462, 467-68 (2005) (midtrial judgment of acquittal under equivalent state rule was final and unreviewable); *Sanabria v. United States*, 437 U.S. 54, 59, 64, 66-67, 69 (1978).

MOTION FOR JUDGMENT OF ACQUITTAL

government has failed to adduce sufficient untainted evidence, testimony, and argument such that a reasonable juror—considering only untainted evidence, testimony, and argument—could return a verdict of guilty on any count.

Jencks productions during trial have confirmed the defendant's previous statements: the taint in this case occurred early, spread without prophylactic measures, and infected every investigator, prosecutor, and witness in the government's indictment and trial case. S.A. Palmerton's October 22, 2020 testimony established how tainted information had already been put to non-evidentiary use. When asked why the Complaint attributed the conduct of Iuliia Zhadko to Richard Ayvazyan, S.A. Palmerton did not cite the physical credit cards, unread subpoena returns, or witness statements. Instead, he testified under oath that it was the tainted evidence that led to "the connection that Iuliia Zhadko was, in fact, an alias of Richard Ayvazyan." *See* Oct. 22, 2020 Hr'g Tr. at 23-24, *United States v. Ayvazyan*, 20-mj-3857, Dkt. 17 (S.D. Fla. Oct. 22, 2020) ("Oct. 22 Tr."). The tainted information led to the "connection" that formed the basis of the allegations against Ayvazyan—and for some counts, the only evidence at all.

Whether that "connection" *could* have been made earlier or *would* have been made later is irrelevant to the question of whether derivative use of tainted information in fact occurred. There is no inevitable discovery exception to *Kastigar*. The Fifth Amendment prohibits using compelled testimony against the speaker in a criminal case. There is no "except."

The Jencks produced during trial has cracked the door open into just how far this taint spread beyond S.A. Palmerton. The evidence has shown that Agent Palmerton worked in concert with Agents Massino and Clark to investigate this case. These three agents functioned as a unit, exchanging emails and text messages about surveillance, subpoena returns and other aspects of their investigation. On November 13, 2020, Agent Palmerton emailed Agent Massino, Agent Clark, Christopher Fenton and Julian Andre with the subject line "Phone Photos". Discovery in this case has demonstrated

3

that Agent Palmerton requested that the other agents and attorneys "look through the photos I uploaded into USAFX, folder '11.13.2020 Photos'." Ex. A (DOJ_PROD_0000166051). Agent Massino responds later that same night to let the team know he has looked through the photos and "ran all the unfamiliar names/entities/SSNs/addresses observed in the photos." *Id.* These photos were taken from the Zhadko phone seized at the Miami International Airport, which this Court suppressed.

The entire trial team was tainted by the government's constitutional violations. Its strategic choices, exhibit selections, witness questions, and pretrial and trial strategy in general were impermissibly shaped by information derived from compelled statements. The untainted evidence—if any exists—is not sufficient for a reasonable juror to return a guilty verdict, and a judgment of acquittal should be entered.

**B.     No reasonable juror could conclude beyond a reasonable doubt that Ayvazyan committed money laundering while on release (Counts 28-32)**

Counts 28-32 charge money laundering based on five transactions executed beginning on December 21, 2020, just four days after someone attempted to empty the account via transfers to different companies (see table below). Money laundering under 18 U.S.C. § 1956(a)(1)(B) requires that the government prove beyond a reasonable doubt that the defendant conducted a financial transaction involving property that represented the proceeds of the specified unlawful activity, that the defendant knew that the property represented such proceeds, that the defendant knew the transaction was designed to conceal or disguise one of several variables about the proceeds, and that the defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime. Ninth Cir. Jury Instr. § 8.147. The government has not proven any of the elements beginning with the government's mistaken allegation that Ayvazyan conducted a financial transaction, when, in fact, the financial transactions were conducted by someone else.

4

MOTION FOR JUDGMENT OF ACQUITTAL

| Count | Date | From | To | Amount |
|-------|------|------|-----|--------|
| NA | 12/15-12/21 | x5268 (Turing/Zhadko) | [Various companies] | Dishonored checks |
| 28 | 12/21/20 | x5268 (Turing/Zhadko) | x6822 (Zhadko) | $47,000 |
| NA | 12/21/20 | x5268 (Turing/Zhadko) | x6994 (Zhadko) | $26,000 |
| 29 | 12/22/20 | x5268 (Turing/Zhadko) | x6822 (Zhadko) | $86,000 |
| 30 | 12/23/20 | x6822 (Zhadko) | TDAmeritrade (Zhadko) | $50,000 |
| 31 | 12/24/20 | x6822 (Zhadko) | TDAmeritrade (Zhadko) | $75,000 |
| 32 | 1/13/21 | x5268 (Turing/Zhadko) | Coinbase 8efe (Zhadko) | $22,000 |
| | 1/19/21 | x5268 (Turing/Zhadko) | x6994 (Zhadko) | $28,000 |

Source: GX 1.r; GX 35.a; GX 41.b; GX 91

### 1. The Evidence

#### a. Government Argument that Zhadko Is a "Unique Synthetic Identity"

Counts 28-32 charge transfers from two linked Chase Bank accounts (one in Zhadko's name and one in the name of Turing Info Solutions with Zhadko as signatory) to three accounts in the name of Iuliia Zhadko.  The government has adduced no evidence that Ayvazyan had access to any of these accounts after October 19 at the latest.[2]  In pre-trial briefing, the government argued that its theory of culpability was

---

[2] Ayvazyan had a Turing Info Solutions card when he was detained on October 19.  It was taken from him, and no further Turing Info Solutions evidence has been adduced against him.

5

MOTION FOR JUDGMENT OF ACQUITTAL

1  that Zhadko was a "unique synthetic identity belonging to defendant R. Ayvazyan."

2  Dkt. 219 at 10-11.  Trial has proven the government wrong.

3       As explained below, trial has proven that Zhadko submitted applications and

4  accessed bank accounts from Manuk Grigoryan's IP address and that Manuk

5  Grigoryan's associate (Paruyr Hayrapetyan) posed as Zhadko to go to a bank.  To the

6  extent Zhadko was anyone's "unique synthetic identity," it would have to be Manuk

7  Grigoryan.

8              **b.    Evidence of Who Used the Accounts at Issue**

9       There is no evidence tying Ayvazyan to the transactions at issue, and ample

10  circumstantial evidence points towards Manuk Grigoryan as the most likely culprit.

11       First, circumstantial evidence regarding the source accounts points towards

12  Grigoryan.  Grigoryan used multiple IP addresses[3] to log into both his personal

13  JPMorgan Chase account and his Zhadko/Turing JPMorgan Chase accounts even doing

14  so on the same day repeatedly.  DX 19.  He also used the same IP addresses to access

15  Zhadko's Bank of America account (DX 20), Top Quality Contracting's Bank of

16  America account (DX 20), and Timeline Transport's bank account (DX 22) among

17  others.[4]

18       Moreover, the $22,000 transfer to Coinbase was used to purchase Ripple

19  cryptocurrency (denoted as XRP).  GX 35.a at 27.  Notably, in Ayvazyan's own

20  Coinbase account, which spans four years and 143 pages, he has *never* once purchased

21  Ripple cryptocurrency, opting instead for litecoin, bitcoin, and ethereum.  GX 35.c.

22       At the same time the Turing Info Solutions and Zhadko JPMorgan Chase

23  accounts were transferring money to TDAmeritrade and Coinbase, they were also

24  sending money to another JPMorgan Chase account ending in 6994.  GX 1.r at 20

25

26  ---

    [3] 104.34.75.188 (Canoga Apartment); 54.88.74.128; 54.208.59.10.

27  [4] Grigoryan's use of the Zhadko/Turing Info Solutions JPMorgan Chase accounts would explain why
    the accounts were used to make a purchase at a Lamps Plus in California on October 13 when
28  Ayvazyan and Terabelian were in Turks and Caicos.  GX 1.r at 15.

MOTION FOR JUDGMENT OF ACQUITTAL

($26,000 transfer to x6994 on Dec. 21, 2020 and $28,000 transfer on Jan. 19, 2021). The recipient JPMorgan Chase account is a Iuliia Zhadko account that appears to make the very cash payments to Arman Hayrapetyan that Hayrapetyan cited in his plea colloquy to the Court. Hayrapetyan attributed those payments to Grigoryan implying that he (not Ayvazyan) is the one behind the December 2020-January 2021 transfers out of the Turing Info Solutions account.

## 2. Application of Law

"A hypothetical is a thin reed indeed on which to hang criminal charges." *United States v. Bogucki*, No. 18-cr-21, 2019 WL 1024959, at *5 (N.D. Cal. Mar. 4, 2019) (granting Rule 29 motion because no reasonable jury could find materiality based on an isolated statement accompanied by a contrary disclaimer). The government has adduced no evidence that Ayvazyan was responsible for these transactions. Instead, it asks the jury to speculate.

It is axiomatic that "a conviction based on speculation and surmise alone cannot stand." *United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994). This is because the Court must "be satisfied that the inferences [advocated by the government] are sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt." *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995). When "the evidence viewed in the light most favorable to the prosecution gives 'equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence,' then 'a reasonable jury must necessarily entertain a reasonable doubt.'" *United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002) (quoting *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996) (reversing conviction for insufficiency of evidence)). In short, the government "must do more than introduce evidence 'at least as consistent with innocence as with guilt.'" *D'Amato*, 39 F.3d at 1256 (quoting *United States v. Mulheren*, 938 F.2d 364, 372 (2d Cir. 1991)). As to the post-indictment charges, the evidence is more consistent with innocence than guilt. The Rule 29 motion should therefore be granted.

7

MOTION FOR JUDGMENT OF ACQUITTAL

1

2

**C.     No reasonable juror could conclude beyond a reasonable doubt that Ayvazyan committed aggravated identity theft (Counts 21-22)**

3      To prove aggravated identity theft, the government must prove that the defendant

4 knowingly transferred, possessed, or used without legal authority a means of

5 identification of another person, knew that the means of identification belonged to a

6 real person, and do so during and in relation to a specified felony.  Ninth Cir. Model

7 Jury Instr. 8.83.  The government's evidence falls short with respect to both counts.

8      As to Count 21, the government has adduced substantial evidence that it was

9 Manuk Grigoryan—not Ayvazyan—that applied for a loan under the name of Mark

10 Zindroski.  Top Quality Contracting was one of the construction companies that

11 Grigoryan had acquired in order to run his construction funding scheme.   As shown by

12 GX 2.e at 59, Top Quality Contracting had just been registered on March 9, 2020,

13 showing that it predated the CARES Act by a mere two and a half weeks.  The Mark

14 Zindroski application was submitted from IP address 174.193.145.67 (GX 2.e at 6), and

15 another Top Quality loan application was submitted from 174.193.198.70 (GX 6.p).

16 Manuk Grigoryan used a variety of IP addresses beginning with 174.193 to access his

17 personal bank account and accounts belonging to Iuliia Zhadko (DX 19, to be offered

18 into evidence), thus making it clear that the Mark Zindroski application was submitted

19 from Grigoryan's VPN.   A third application in Top Quality Contracting's name was

20 submitted using the IP address 2605:e000:1701:4cd5:1c51:346e:6c62:efa7, which was

21 registered to Viktoria Kauichko at the Canoga Avenue apartment.  GX 6.q, GX 73.c.

22 Moreover, a Wells Fargo bank account was opened in Top Quality Contracting's name

23 and used to receive PPP loan proceeds.  GX 1.f.  The person using that account (the

24 signatories were Iuliia Zhadko and Mark Zindroski) wrote multiple checks to Anna

25 Manukyan, Grigoryan's aunt, GX 1.f at 32, 37, 43, as well as multiple checks for over

26 $20,000 to Jobe Construction, one of the construction companies listed on handwritten

27 notes found at Grigoryan's Canoga Avenue apartment. GX 1.f at 50, 55; GX 54.b.  All

28

MOTION FOR JUDGMENT OF ACQUITTAL

1  of this evidence points to Manuk Grigoryan using Zindroski's identity, not Ayvazyan.

2  The motion should therefore be granted with respect to Count 21.

3      As to Count 22, the government has adduced insufficient evidence to overcome

4  the presumption of innocence.  The government cannot prove who applied for the loan

5  in the name Nazar Terabelian.  The evidence has instead shown that Manuk Grigoryan

6  applied for Mod Interiors loans both before and after Terabelian's death.  And the only

7  mention of Nazar Terabelian in the text messages found in GX 10 between "tammy"

8  and "Rich New" is one question from "tammy" asking for the spelling of Nazar

9  Terabelian's name shortly after his death, consistent with a family member sending

10  condolences.  The government also points to gold coins purchased by Mod Interiors,

11  but no evidence demonstrates that those were not the gold coins found at Ayvazyan and

12  Terabelian's home.  The motion should therefore be granted with respect to Count 22.

13      As to both Counts 21 and 22, the government has failed to prove each element

14  beyond a reasonable doubt.

### D.  No reasonable juror could conclude by a preponderance that the government has proved venue for wire fraud (Counts 2-12)

17      The Sixth Amendment guarantees criminal defendants the right to be tried in the

18  state and district in which the crime was committed. U.S. Const. amend. vi; *see also*

19  Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government

20  must prosecute an offense in a district where the offense was committed.").  When a

21  defendant has been indicted on multiple counts, the government bears the burden of

22  proving by a preponderance that venue is "proper for each count." *United States v.*

23  *Pace*, 314 F.3d 344, 349 (9th Cir. 2002).[5]

---

25  [5] "'[I]f a defect in venue is clear on the face of the indictment, a defendant's objection must be raised
26  before the government has completed its case,' or the objection to venue will be waived." *United*
   *States v. Johnson*, 297 F.3d 845, 861 (9th Cir. 2002) (quoting *United States v. Ruelas-Arreguin*, 219
27  F.3d 1056, 1060 (9th Cir. 2000)).  "[I]f the venue defect is not evident on the face of the indictment, a
   defendant may challenge venue in a motion for acquittal at the close of the government's case."
28  *Ruelas-Arreguin*, 219 F.3d at 1060.  Here, the indictment's venue allegation invoked the requisite
   statutory language and was not facially deficient.  Dkt. 154 ¶ 37

9

1      "The relevant venue statute prescribes that venue may lies in any district in
2  which the offense "was begun, continued, or completed."  18 U.S.C. § 3237(a) (noting
3  that for mail this means the district from, through, or into which the mail moves).  "In
4  determining the "locus delecti" of a crime, the Supreme Court directs us to 'initially
5  identify the conduct constituting the offense (the nature of the crime) and then discern
6  the location of the commission of the criminal acts.'  Venue is therefore appropriate
7  only in the district where the conduct comprising the essential elements of the offense
8  occurred."  *United States v. Wood*, 364 F.3d 704, 710 (6th Cir. 2004) (quoting *United*
9  *States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999)).  For wire fraud, the pertinent
10  fact is the wire transmission, not the scheme to defraud.  "[V]enue is established in
11  those locations where the wire transmission at issue originated, passed through, or was
12  received, or from which it was orchestrated.  In other words, venue may lie only where
13  there is a direct or causal connection to the misuse of wires."  *Id.* at 349-50 (internal
14  quotation marks omitted).  As summarized in the DOJ's Justice Manual, venue for wire
15  fraud exists "in an district in which [the] interstate or foreign transmission was issued or
16  terminated."  Justice Manual § 967, *available at*
17  https://www.justice.gov/archives/jm/criminal-resource-manual-967-venue-wire-fraud.

18      The government has not proved that the wires in Counts Two through Twelve
19  originated in, passed through, were received in, or were orchestrated in the Central
20  District of California.  To the contrary, the interstate wires stipulation confirms that
21  only five of the eleven wires even entered California, and the stipulation does not
22  specify what district.

| Count | Wire From | Wire To |
|---|---|---|
| 2 | Utah | California |
| 3 | New Jersey, Pennsylvania, or Texas | Kansas |
| 4 | Utah | Minnesota |
| 5 | Ohio | California |

10
MOTION FOR JUDGMENT OF ACQUITTAL

| 6 | Utah | California |
|---|---|---|
| 7 | Utah | Minnesota |
| 8 | Colorado | Missouri, New Jersey, and Colorado |
| 9 | California | Pennsylvania or Texas, and California |
| 10 | Colorado | Missouri, New Jersey, and Massachusetts |
| 11 | Illinois or Virginia | Arkansas, Georgia, and Massachusetts |
| 12 | California | Arizona |

Dkt. 530.  The government bears the burden of proving that the wires actually occurred in this district.

The government has adduced evidence that the defendants resided in the Central District of California and argues therefore that the scheme to defraud was based here. But venue for wire fraud is based on the location of the wires, not the scheme to defraud.  *See, e.g.*, *United States v. Donato*, 866 F. Supp. 288 (W.D. Va. 1994) (dismissing wire fraud on venue grounds because "[18 U.S.C. §] 3237(a) does not allow prosecution in any place where a scheme to defraud touches, in the absence of evidence that a defendant caused a mailing or interstate wire communication to be sent through or to be received in the district."); *United States v. Mikell*, 163 F. Supp. 2d 720, 735 (E.D. Mich. 2001) (dismissing wire fraud counts because "Section 3237(a) does not allow prosecution in any place where a scheme to defraud touches, in the absence of evidence that a defendant caused a[n] interstate wire communication to be sent through or to be received in the district.").  The wires have not been shown to have been sent

1  from, through, or to the Central District of California and therefore venue has not been
2  proven.

### E.    No reasonable juror could conclude beyond a reasonable doubt that Ayvazyan committed conspiracy, wire fraud, bank fraud, and conspiracy to commit money laundering (Counts 1-20 & 26)

The government has failed to adduce sufficient evidence to carry its burden with respect to the elements of each of the above-referenced counts.  The government has charged a single, unitary conspiracy and executions of a single, unitary scheme to defraud in the indictment and must prove it beyond a reasonable doubt.  "A single conspiracy can only be demonstrated by proof that an overall agreement existed among the conspirators."  *United States v. Fernandez*, 388 F.3d 1199, 1226 (9th Cir. 2004) (quoting *United States v. Duran*, 189 F.3d 1071, 1080 (9th Cir. 1999).  To prove a conspiracy, "the evidence must show that each defendant knew, or had reason to know, that his benefits were probably dependent upon the success of the entire operation." *Id.* If the evidence at trial establishes multiple conspiracies, then there is insufficient evidence to support conviction of a single conspiracy and any conviction must be reversed.  *United States v. Fernandez*, 388 F.3d 1199, 1226-27 (9th Cir. 2004). Similarly, the evidence must establish "a single scheme to defraud" in order to convict on the wire and bank fraud counts.  *See United States v. Wellington*, 754 F.2d 1457, 1463 & n.3 (9th Cir. 1985).  In this case, there are (if anything) multiple conspiracies and schemes lacking a single "overall agreement … among the conspirators."  The alleged conspirators' success was not dependent upon the success of the entire operation, and—even though the alleged co-conspirators had substantial pre-existing ties unrelated to any conspiracy—there is not sufficient conspiratorial interconnectivity and interdependence to permit a factual finding of a single conspiracy or scheme.

The available evidence indicates the existence of at least two (and potentially many more) different conspiracies and corresponding schemes embedded within the charged conspiracy and scheme.  First, Manuk Grigoryan is at the center of a set of

12

MOTION FOR JUDGMENT OF ACQUITTAL

schemes involving credit card bust-outs and construction funding fraud that involved the use of synthetic identities of Russian and Ukrainian foreign exchange students, including Iuliia Zhadko, Viktoria Kauichko, and Anton Kudiumov. This conduct pre-dated the existence of PPP loans. Several of Manuk Grigoryan's dedicated group of co-conspirators, including Asya Vostanikyan, Paruyr Hayrapetyan (no relation to co-defendant Arman Hayrapetyan), Hayk Ohanyan, and Edvard Paronyan, further engaged in Employment Development Department (EDD) fraud, and *separately* engaged in PPP loan fraud, *at the same time*, using overlapping synthetic identities and entities. Grigoryan's Canoga Avenue apartment, for example, was found to contain references to Grigoryan's PPP loan fraud companies and synthetic identities, EDD fraud documents, and medical bills for Grigoryan's wife. *See* GX 54.b; DX 59; DX 48.

Second, over the last several years, Tamara Dadyan was at the center of a different set of schemes, and is alleged to involve Grigor Tatoian, Arshak Bartoumian, and Art Martirosyan among others. Dadyan also deployed some of these people to commit PPP loan fraud in 2020. Although Dadyan's group also obtained synthetic identities derived from Russian and Ukrainian foreign exchange students (among other sources), including Iuliia Zhadko, there was no joint venture or sufficient interdependence between the Grigoryan and Dadyan groups to allow the jury to find, beyond a reasonable doubt, the existence of a conspiracy involving all of the defendants charged in the indictment.

Judgment of acquittal is mandated here because the Government has failed to adduce sufficient evidence to support a conviction on any charge, even when the evidence is viewed in the light most favorable to the Government. Because no rational trier of fact could find guilt beyond a reasonable doubt on the record before the Court, Ayvazyan is entitled to judgment of acquittal in order to "avoid[] the risk that a jury may capriciously find him guilty though there is no legally sufficient evidence of his guilt." *United States v. Tisor*, 96 F.3d 370, 379 (9th Cir. 1996).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   CONCLUSION

For the foregoing reasons, Ayvazyan respectfully requests that the Court enter a judgment of acquittal.

Dated:   June 22, 2021

Respectfully submitted,

**STEPTOE & JOHNSON LLP**

*/s/ Ashwin J. Ram*
Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Meghan L. Newcomer (*pro hac vice*)
*mnewcomer@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

14
MOTION FOR JUDGMENT OF ACQUITTAL

# EXHIBIT A

| From: | Massino, Timothy J. (Off. Inspector Gen.) |
|---|---|
| To: | Palmerton, Justin (LA) (FBI); Fenton, Christopher (CRM) |
| Cc: | Andre, Julian L. (USACAC); Clark Geffrey B |
| Subject: | RE: Phone Photos |
| Date: | Friday, November 13, 2020 8:54:00 PM |
| Attachments: | image002.png |

Good stuff, Justin.

I ran all the unfamiliar names/entities/SSNs/addresses observed in the photos and identified the following additional loans/applications (10 total):

1. Misak Arakelyan:
   a. Loan 15827780-02        New World Empire Trading Inc   PPP/Celtic Bank
      $244,500.00        Disbursed Current
   b. Loan 22809979-05        New World Empire Trading Inc   PPP/WebBank
      $244,570.00        Disbursed Current
   c. Loan 95234778-01        New World Empire Trading Inc   PPP/Fountainhead
      SBF                Fully Cancelled
   d. Loan 76591279-10        New World Trading                EIDL
      $150,000.00        Disbursed Current

2. 8045 Highway 95, Bullhead City, AZ:
   a. Loan 64325081-08        BART1CO Inc                PPP/Newtek SBF
      $121,200        Disbursed Current

3. Gagik Khachatryan:
   a. Loan 42907280-00        KGG Home                EIDL
      $150,000        Disbursed Current

4. Lilia Turcan:
   a. Loan 52891282-01        Turcan Tours                EIDL
      $146,200        Disbursed Current

5. Camilo Amaya:
   a. Loan 54026982-00        Camilo Amaya                EIDL
      $146,800        Disbursed Current

6. Annandale Nursery:
   a. Loan 69466679-06        Annandale Nursery        EIDL
      $150,000        Disbursed Current

7. Long Canyon Nursery:
   a. Loan 59292978-08        Long Canyon Nursery        EIDL
      $150,000        Disbursed Current

I've uploaded E-Tran data for each to USAfx (in the "SBA Documents" folder).

Tim
562-330-3805



Timothy N                                                   fassino
Special Ag                                                  ent

---

**From:** Palmerton, Justin (LA) (FBI) <JPALMERTON@fbi.gov>
**Sent:** Friday, November 13, 2020 4:05 PM
**To:** Fenton, Christopher (CRM) <Christopher.Fenton@usdoj.gov>
**Cc:** Andre, Julian L. (USACAC) <Julian.L.Andre@usdoj.gov>; Clark Geffrey B <Geffrey.Clark@ci.irs.gov>;
Massino, Timothy J. (Off. Inspector Gen.) <Timothy.Massino@sba.gov>
**Subject:** Phone Photos

CAUTION - The sender of this message is external to the SBA network. Please use care when
clicking on links and responding with sensitive information. Send suspicious email to
spam@sba.gov.

Hey All,

Please look through the photos I uploaded into USAFX, folder "11.13.2020 Photos".

Justin Palmerton

Special Agent

Federal Bureau of Investigation

Los Angeles Field Office

White Collar Crimes

Tel: 310-996-3941

CONFIDENTIAL SUBJECTT TO PROTECTIVE ORDER