1                    **UNITED STATES DISTRICT COURT**

2           **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3            **HONORABLE STEPHEN V. WILSON, U.S. DISTRICT JUDGE**

4

5     **UNITED STATES OF AMERICA,**

6                    **Plaintiff,**

7        **vs.**                          **Case No. CR 20-579-SVW**

8     **RICHARD AYVAZYAN, et al,**

9                    **Defendants.**
      _____/

10

11

12                    **REPORTER'S TRANSCRIPT OF**
                    **TRIAL - DAY 6 AFTERNOON SESSION**
13                   **WEDNESDAY, JUNE 23, 2021**
                            **1:23 P.M.**
14                   **LOS ANGELES, CALIFORNIA**

15

16

17

18

19

20

21

22    _____

23               **TERRI A. HOURIGAN, CSR NO. 3838, CCRR**
                   **FEDERAL OFFICIAL COURT REPORTER**
24               **350 WEST FIRST STREET, ROOM 4311**
                   **LOS ANGELES, CALIFORNIA  90012**
25                         **(213) 894-2849**


**UNITED STATES DISTRICT COURT**

1                    APPEARANCES OF COUNSEL:

2

3    FOR THE PLAINTIFF:

4
        UNITED STATES ATTORNEY'S OFFICE
5       BY:  CATHERINE SUN AHN
             CHRISTOPHER FENTON
6            SCOTT PAETTY
        Assistant United States Attorneys
7       United States Courthouse
        312 North Spring Street
8       Los Angeles, California  90012

9

10   FOR THE DEFENDANT:  RICHARD AYVAZYAN

11      STEPTOE and JOHNSON
        BY: ASHWIN J. RAM
12      Attorney at Law
        633 West 5th Street, Suite 1900
13      Los Angeles, California 90071

14      STEPTOE and JOHNSON
        BY: MEGHAN NEWCOMER
15      Attorney at Law
        1114 Avenue of the Americas
16      New York, New York  10036

17      STEPTOE and JOHNSON
        BY: MICHAEL A. KEOUGH
18      Attorney at Law
        1 Market Street, Spear Tower, Suite 3900
19      San Francisco, California  94105

20      STEPTOE and JOHNSON
        NICHOLAS P. SILVERMAN
21      Attorney at Law
        1330 Connecticut Avenue, NW
22      Washington, D.C.  20036

23

24

25

                    UNITED STATES DISTRICT COURT

```
1    Appearances (Cont.)

2    FOR THE DEFENDANT:  MARIETTA TERABELIAN

3       BIENERT KATZMAN LITTRELL WILLIAMS LLP
        BY:  JOHN LEWIS LITTRELL
4       Attorney at Law
        903 Calle Amenecer, Suite 350
5       San Clemente, California  92673

6       BIENERT KATZMAN LITTRELL WILLIAMS LLP
        BY:  RYAN VAUGHN FRASER
7       Attorney at Law
        601 West 5th Street, Suite 720
8       Los Angeles, California  90071

9    FOR THE DEFENDANT:  ARTUR AYVAZYAN

10      JENNIFER J. WIRSCHING
        Attorney at Law
11      1935 Alpha Road, Suite 216
        Glendale, California  91208

12

13   FOR THE DEFENDANT:  VAHE DADYAN

14      LAW OFFICE OF PETER JOHNSON
        BY:  PETER JOHNSON
15      Attorney at Law
        409 North Pacific Coast Highway, Suite 651
16      Redondo Beach, California  90277

17

18

19

20

21

22

23

24

25
```

```
 1                        WITNESS INDEX

 2                          * * *

 3    WITNESS NAME:                              Page

 4                    (NO WITNESSES CALLED.)

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



**EXHIBIT INDEX**

\* \* \*

EXHIBIT NUMBER:                                    Page

(NO EXHIBITS ENTERED.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**UNITED STATES DISTRICT COURT**

```
 1              LOS ANGELES, CALIFORNIA; WEDNESDAY, JUNE 23, 2021

 2                            1:23 P.M.

 3                            --oOo--

 4

 5              THE COURTROOM DEPUTY:  All rise.

 6                  (Jury enters the courtroom.)

 7              THE COURTROOM DEPUTY:  Please be seated.

 8                  (Judge enters the courtroom.)

 9              THE COURTROOM DEPUTY:  All rise.

10                  (Jury enters courtroom.)

11              THE COURT:  Please be seated.

12              Thank you for your indulgence.  We have

13   reached the point where the evidence in the case is now

14   complete.  Both sides have presented all of the evidence you

15   will be asked to consider.

16              What remains is for me to give you the

17   instructions of law, which you must follow.  How you view the

18   evidence is your province, but when I instruct you, you have to

19   be guided by the law as I give it to you.

20              And that requires the Court to consult with

21   the parties about the instructions and that may take some time,

22   and the lawyers have estimated the time that they want for

23   closing arguments.

24              So what I'm going to do is recess you for the

25   day; in other words, you can go home early today and then when
```

1    you come back tomorrow morning, we will begin with my

2    instructions and then the arguments.

3              The way the lawyers have estimated their

4    arguments, it may take up to the better part of the day.

5              That way, at least you will hear the arguments

6    in sequence, not hyphenated, so, I hope you understand.

7              So don't talk about the case to each other.

8    Don't access any Internet or media.  And we will begin tomorrow

9    at 9 o'clock.

10             And I will spend the rest of the day with the

11   lawyers ironing out the instructions, so there are no glitches

12   when we begin tomorrow.

13             Thank you, again, for your indulgence.

14             (The jury exits the courtroom.)

15        THE COURTROOM DEPUTY:  Please be seated.

16        THE COURT:  What I plan to do for the rest of the

17   afternoon or how long it takes is first, I want to get a little

18   sustenance, and then get back with you and give you the

19   proposed jury instructions.

20             In other words, I will hand them to you, and

21   then I'm going to give you an opportunity to respond and with

22   authorities.  I mean, you have an army of lawyers here, and so

23   you have your laptops, so, that is the equivalent of all of the

24   cases on one device.

25             You can research -- and actually, some of the

```
 1    issues that may come up have been issues that have been
 2    discussed before and you would be on notice.
 3                   And then I want to resolve the jury
 4    instructions this afternoon, hopefully earlier rather than
 5    later.
 6                   We can hear any motions that you have and then
 7    we will begin at 9 o'clock tomorrow with the arguments.
 8                   First, I will instruct, I give the jury a copy
 9    of the jury instructions.  I know that some judges don't, but
10    in a case like this, I don't see how they could possibly
11    remember all of these instructions.
12                   The verdict form, I will give you a copy of
13    the proposed verdict form.
14                   I have always used simple straightforward
15    verdict forms, it's just Count 1, then box, not guilty, or
16    guilty, and each defendant in that count, and the jury checks
17    the boxes, unadorned.
18                   When I asked the government about the
19    redaction, did you understand that I meant, the Cellebrite
20    exhibit of all of the data pulled from the phone and that the
21    redaction should only -- the document should only be left with
22    those parts of the whole that the subgroup relied on.
23                   In other words, it should be identical.
24         MS. AHN:  Your Honor, the evidence that was moved
25    in, the government physical exhibits that contained the
```

1    Cellebrite reports, those exhibits contained the subset

2    Cellebrite report that was subject to the search warrant.

3              THE COURT:  But I thought that the testimony was

4    that the subset was taken from the mass.

5              MS. AHN:  Yes, Your Honor.

6              THE COURT:  And the mass I allowed in evidence, at

7    least, provisionally.

8              MS. AHN:  So --

9              THE COURT:  I did, I remember that.

10             MS. AHN:  The CART examiner testified as to both the

11   mass Cellebrite report, and the subset Cellebrite report.

12             THE COURT:  I know that, but the question is in

13   terms of -- so I see, I was -- the witness said:  I prepared

14   the subset by looking at the mass.

15             MS. AHN:  Yes, Your Honor, in this instance.

16             THE COURT:  Let's leave that alone for a minute.

17                  All right.  Then.  It's now 1:25.

18             THE COURTROOM DEPUTY:  Yes, Your Honor.

19             THE COURT:  So let's reconvene, shall we say at

20   2 o'clock; is that okay?  Is that enough time?

21             MR. RAM:  Can we have 2:25 or 2:30?

22             THE COURT:  I didn't give you the instructions yet.

23   When I give you the instructions, I'm going to give you more

24   time than that.

25                  I'm just saying come back here for me to give

1    you the instructions.

2              MR. RAM:  I see.

3              THE COURT:  That's all.  So you could come back at

4    3:22, and I will give you the instructions, and then I won't

5    have a back and forth at that time because you deserve an

6    opportunity to read them and then comment back to me, okay.

7              MS. AHN:  Your Honor, two quick things, we neglected

8    to include a limiting instruction that the government had

9    agreed with Mr. Littrell to include, so we will bring a copy of

10   that, Your Honor, when we come back and the government also

11   intends to propose a willful blindness instruction, Your Honor.

12             THE COURT:  A what?

13             MS. AHN:  A deliberate ignorance instruction from

14   Model Number 5.8.

15             THE COURT:  The deliberate -- meaning -- what they

16   call a *Jewell* instruction.  Is that the case that is based on?

17             MS. AHN:  Yes, Your Honor.

18             THE COURT:  I will get to you in a second, ma'am.

19   Just where the Jewel instruction come in your view of the

20   evidence?

21             MS. AHN:  Well, Your Honor, Artur Ayvazyan just

22   testified that he, you know, did not actually know, did not

23   actually have an understanding what was happening, but

24   nonetheless, he had access to his phone, used his phone, saw

25   things on his phone, talked to his wife about what his wife

```
 1    was putting on his phone, and I think that --
 2              THE COURT:  I mean, I remember his testimony.  And
 3    what again, was found on his phone?
 4              MS. AHN:  Numerous images of SBA applications being
 5    submitted and names like Rosa Avakyan and others, Olof
 6    McKillian.
 7                   There were numerous driver's licenses and the
 8    names of other people, including individuals in whose names PPP
 9    and EIDL applications were submitted.  There were handwritten
10    notes with instructions on how to manufacture driver's
11    licenses, et cetera.
12              THE COURT:  I see.  So you are saying even if he
13    didn't know about the PPP -- the specifics of it -- he knew
14    there was something wrong, and he should have -- under the
15    circumstances, he willfully failed to inquire, as he should
16    have.
17              MS. AHN:  Yes, Your Honor.
18              THE COURT:  Let me hear from counsel.
19              MS. WIRCHING:  Yes, Your Honor.  We obviously object
20    to that.
21                   Our understanding is that the government has
22    provided their proposed jury instructions weeks ago.  This was
23    not among those instructions.
24                   We were advised ten minutes ago that that's
25    the case, which clearly doesn't provide us enough time to
```

```
 1    adequately respond, in the first place.
 2                     If they are saying they are relying upon
 3    information that is in their discovery, then if that was going
 4    to be their theory of the case, they were surely on notice that
 5    they could have proposed that as a jury instruction weeks -- or
 6    almost a month ago -- when they submitted those proposed
 7    instructions to the Court as well as to us.
 8                     Without getting into it, I also believe that
 9    Ms. Ahn may be misrepresenting the evidence that has been
10    provided to the jury.
11                     I don't recall Mr. Ayvazyan saying anything
12    about discussing with his wife how things work in PPP or any of
13    that nature.
14              THE COURT:  I didn't hear any of that, either.
15                     What I thought the government was saying was
16    that he saw these things on his phone and -- maybe you could
17    correct me if I misunderstood -- and that when he saw these
18    things on his phone, he said, I don't know how they got here.
19              MS. WIRCHING:  His testimony --
20              THE COURT:  One minute, who is talking now?  Are you
21    talking?  I can't see that far.  You are talking?
22              MS. WIRCHING:  I apologize.
23              THE COURT:  Just let me finish the thought here,
24    that he saw these things on his phone, he didn't know how they
25    got there.  He said his wife had access to his phone and that
```

```
 1    she sometimes used his phone, and that -- I can't remember what
 2    else he said about her taking them off or removing them or --
 3    fill in the blanks for me.
 4              MS. WIRCHING:  Your Honor, I believe that is a
 5    misinterpretation of the evidence that Mr. Artur Ayvazyan gave.
 6                   Mr. Artur Ayvazyan testified that the only
 7    time he became aware that those images were on his phone was
 8    when the government provided them to counsel as part of
 9    discovery in this case.
10                   So, I fail to see how he could be willfully
11    blind to something that he had no knowledge of, by his own
12    testimony.
13              THE COURT:  Well, your recollection is probably
14    better than mine.
15                   I mean, does the government agree that that is
16    what he said?
17              MS. AHN:  I believe what I was referencing --
18              THE COURT:  Yes or no.  Just let me know, then you
19    can explain.
20                   I mean, counsel has been clear, that is her
21    recollection of the testimony which happened just a little
22    while ago.
23                   I don't remember it specifically, maybe I
24    should.
25                   Is your memory different?
```

1          MS. AHN:  With respect to the government's

2     discovery, I believe counsel is correct.

3          THE COURT:  How did he testify, that's all I want to

4     know.  Did he say, I don't know how this got on my phone, my

5     wife had access to my phone.  And the first time I saw this was

6     when it was presented to me was by my lawyer.

7          MS. AHN:  Yes, Your Honor, that is correct.

8          THE COURT:  All right.

9          MR. RAM:  Your Honor, should we plan for a redacted

10    indictment going back to the jury as well?

11          The indictment of the case was redacted as,

12    like, to miscellaneous defendants that aren't in the case

13    anymore and counts that are applicable.

14          THE COURT:  I don't -- I don't think so.  Just tell

15    the jury that they only have to consider these defendants in

16    the jury verdict form, and they are not to concern themselves

17    why they are not being asked to consider others, but the others

18    are part of the conspiracy.

19          MR. LITTRELL:  Does the Court want us to come back

20    physically or can we get instructions via email?

21          THE COURT:  You don't have to come back physically

22    for the jury instructions, that is a good point.

23          I will have Mr. Cruz give you the instructions and

24    you can send somebody here to get them and go to your

25    respective rooms and I will say -- let's assume you get them at

UNITED STATES DISTRICT COURT

```
1    2 o'clock, I will then order you back at 3:00, give you an hour
2    to think about it.
3              We will talk and it will give you more time to
4    finalize things.
5                        (Recess.)
6              THE COURTROOM DEPUTY:  Please be seated and come to
7    order.
8              THE COURT:  We are present with parties and counsel.
9    I did e-mail the proposed jury instructions.  We should mark
10   that, Paul, as the Court exhibit to the parties, and now we're
11   going to get the responses.
12                  Let me, sort of, start in reverse order,
13   because the laboring oar here seems to be with Richard
14   Ayvazyan.
15                  But let me ask counsel for Artur Ayvazyan, I
16   did not give the Jewell instruction.  I think your argument was
17   well taken.
18                  Are there any other matters you want to raise
19   regarding your proposed instructions?
20        MS. WIRCHING:  No, Your Honor.  We would just -- we
21   appreciate the Court's ruling on that.
22                  Just to clarify, we would like to bring up
23   that the government has just in the last hour filed other
24   proposed Jewell instructions.  We want to make sure that the
25   Court is not proposing those as well.
```

1          THE COURT:  I'm only going to give the instructions

2     that I just e-mailed to you.

3          MS. WIRCHING:  We have no other issues.

4          THE COURT:  Thank you, ma'am.

5               Let me ask the same question of Vahe Dadyan's

6     counsel.

7          MR. JOHNSON:  Yes.  I have a question that I wanted

8     to clarify with the government regarding the aiding and

9     abetting instruction.

10          THE COURT:  Yes.

11          MR. JOHNSON:  The way that Court has written that

12     instruction, it's confusing and probably legally wrong.

13          THE COURT:  I mean, that is why I want to hear your

14     comment.

15               Let me turn to it.  The instructions are not

16     paginated, can you tell me what page you are referring to?

17          MR. JOHNSON:  Page 32.

18          THE COURT:  Just one moment.  What part of it is

19     legally wrong?

20          MR. JOHNSON:  Count 1 and Count 26 charge a

21     conspiracy, and you can't aid and abet a conspiracy.

22               The way that the instruction is written, the

23     jury could find Mr. Vahe Dadyan or the defendants guilty of

24     aiding and abetting Count 1 and 26.

25               Also, what I have asked the government to

1  proffer what its theory actually is regarding the aiding and

2  abetting as to each specific count.

3                I know the government's theory is a Pinkerton

4  theory, specifically related to Vahe Dadyan, that he entered

5  with Count 7 on May 18th and if it was reasonably foreseeable

6  that others were involved, the way Pinkerton is reading, he

7  would be responsible for those other offenses.

8                I don't know that he would be responsible for

9  aiding and abetting those offenses, if he's not guilty for

10  Count 7.

11                So I was really looking for the government --

12            THE COURT:  Can you hold off on that for a minute

13  and we will get back to that.

14                Other than that argument, you have no

15  objection?

16            MR. JOHNSON:  I do have one, and it's an objection

17  I'm sure -- I know the Court gave the beyond a reasonable doubt

18  instruction for the Ninth Circuit standard instruction.

19                What we requested, and I understand it's just

20  the last line that I would like to include in our instruction,

21  and that is, if the jury views the evidence in the case as

22  reasonably permitting either of two conclusions, one of

23  innocence, the other of guilt, the jury must, of course, adopt

24  the conclusion --

25            THE COURT:  I'm familiar with that language.  And

```
 1    the Ninth Circuit, the jury instruction, in my view succinctly
 2    deals with reasonable doubt, which is in and of itself an
 3    amorphous concept, and I think part of the instruction is to
 4    use as few words to reflect what the jury has to have in mind
 5    when they view the evidence.  And the key word in that
 6    instruction is firmly convinced, because nothing is proven to a
 7    metaphysical certainty.
 8                  The short answer is I'm going to stay with the
 9    Ninth Circuit instruction, but I will view that as an objection
10    and you can argue it later, if you wish.
11          MR. JOHNSON:  Your Honor, I also have objections
12    related to the instructions of Count 26 and 27.  That will be
13    addressed by counsel for Richard Ayvazyan.
14          THE COURT:  Okay.  Then I'm trying to get to Richard
15    Ayvazyan, because I know that counsel for Richard Ayvazyan has
16    more to say than most of the parties on the legal questions, at
17    least, as what has happened so far.
18          MR. JOHNSON:  I join with the objections that are
19    raised by the other co-defendants.
20          THE COURT:  All right.
21          MR. FRASER:  Ryan Fraser on behalf of Marietta
22    Terabelian.
23          THE COURT:  Yes.
24          MR. FRASER:  We would join the objections just made
25    by counsel for Vahe Dadyan.
```

UNITED STATES DISTRICT COURT

1          And I would also like to ask the Court to --

2          THE COURT:  In that regard, the objection on the

3    aiding and abetting, that it might be construed as aiding and

4    abetting and conspiracy?

5          MR. FRASER:  Yes, Your Honor.

6          THE COURT:  I see.

7          MR. FRASER:  And further, the mere presence

8    instruction is quite central to our theory of defense.

9               The government's evidence against

10   Ms. Terabelian is entirely circumstantial and explainable, in

11   our view, through her close relationship with Richard Ayvazyan

12   and her mere presence.  The instruction just fits our theory of

13   offense so well, and it is a correct statement on the law and

14   we think there is a foundation in the evidence for it, so we

15   ask the Court to give that one.

16         THE COURT:  All right.

17         MR. FRASER:  And the other instruction I wanted to

18   address is the request for a lost evidence instruction.

19              I think the *Sivilla* Ninth Circuit case from

20   2013 is helpful.

21         THE COURT:  How do you spell that case?

22         MR. FRASER:  S-i-v-i-l-l-a.  And that is a case that

23   I cited in my brief requesting the instruction.

24              In that case, this was a drug smuggling case

25   at the U.S. Mexico border and the drugs were inside of a Jeep

1    Cherokee.

2              And the government had taken photographs of

3    the Jeep and was on notice of the defendant's request to

4    preserve the Jeep for an inspection, and so the defendant could

5    have an opportunity to show how the structure of the Jeep and

6    the location of the drugs did not establish beyond a reasonable

7    doubt the driver's knowledge of the drugs.

8              In this case, Ms. Terabelian notified customs

9    and border protection when they found this Viktoria Kauichko

10   debit card that the Court has heard so much about.

11             She didn't recognized the card and hadn't used

12   it, putting the government on notice that the card had

13   exculpatory value, just as the contents of her luggage also had

14   exculpatory value because she didn't have knowledge of all of

15   the contents of the luggage.

16             In great contrast to the procedures that the

17   Court heard about the FBI following, when executing search

18   warrants at the defendant's residences, and the care that they

19   gave to trace where each item was found and maintained custody

20   of those items to preserve them in their original state.

21             Customs and Border Protection didn't do any of

22   that, and handled the evidence haphazardly and the government,

23   of course, failed to fingerprint that card and otherwise

24   document the state of --

25             THE COURT:  Well tell me more specifically, what was

```
1   lost there?
2            MR. FRASER:  The government failed to fingerprint
3   the debit card, so it's impossible to show that her
4   fingerprints were not on the card, based on the state of the
5   card at the point that Customs and Border Protection took it.
6   And documenting the contents of the luggage would also help
7   Ms. Terabelian to show that not all of the articles within
8   bags, the contents of which she was questioned about, contained
9   entirely her belongings, supporting her claim she was not
10  responsible for the debit card, which is an absolutely central
11  item of evidence in the government's case against her.
12           THE COURT:  Thank you, sir.
13           MR. FRASER:  Thank you, Your Honor.
14           THE COURT:  Have I gotten everybody, but Richard
15  Ayvazyan?  I think so.
16           Okay.  Let's turn to Richard Ayvazyan.
17           I will consider any arguments you made in
18  earlier discussions as objections to not giving the multiple
19  conspiracy instruction, but if you want to make an argument in
20  addition, hopefully brief, I will hear it.
21           MR. RAM:  Your Honor, big picture.  We're asking for
22  a theory of the defense instruction on multiple conspiracies,
23  multiple schemes.
24           Your Honor, I believe, at sidebar earlier this
25  week or last week may have quoted from Satello Mario, a
```

```
 1    criminal defendant is entitled to a jury instruction on any
 2    defense which provides a legal defense to the charge against
 3    him, and has some foundation in the evidence, even though the
 4    evidence may be weak, insufficient, inconsistent, or of
 5    doubtful credibility.
 6              THE COURT:  I'm aware of that, and I did indicate
 7    that, and that is the starting point in the analysis.
 8                   But having understood that, I will give you an
 9    opportunity.  First of all, in our arguments, there was a lot
10    of argument as such, and there wasn't a lot of reference to the
11    record as it exists.
12                   What is there in the record at trial that, in
13    your view, supports a multiple conspiracy instruction?
14              MR. RAM:  There is the IP addresses.  We talked a
15    little bit about that.  We looked at --
16              THE COURT:  You mean the IP address at Canoga
17    apartment?
18              MR. RAM:  At Canoga and Manuk Grigoryan's personal
19    residence.
20              THE COURT:  I have that in mind.
21              MR. RAM:  We looked at that example.
22              THE COURT:  I have that in mind.
23              MR. RAM:  On top of that, Your Honor, there is the
24    Government Exhibit 10, that is the key reference that the
25    government is relying in this case.  That flushes out the
```

1    Dadyan group and the individuals that are part of the Dadyan

2    group.

3              The other side of the equation, we have

4    testimony about Arman Hayrapetyan, and Payrur Hayrapetyan.

5    They were believed -- Payrur Hayrapetyan was believed to be

6    Iuliia Zhadko himself.

7              THE COURT:  When you say -- again, I'm talking about

8    the record.  Let's take it a piece at a time.

9              A lot of what Hayrapetyan and -- what is his

10   name?

11             MR. RAM:  Payrur.

12             THE COURT:  Paronyan.  And what said was in their

13   plea agreements and none of that was part of the case, because

14   they didn't testify.  There was some evidence, and I have

15   considered that, that one of them, either Paronyan or the other

16   guy was observed, I think at the Canoga Park apartment.

17             There is no evidence that who gave them

18   direction to do whatever they did.

19             They did it, they made the loans in their own

20   names, and Grigoryan himself.

21             MR. RAM:  I think you are referring to Edward

22   Paronyan.

23             THE COURT:  Yes.

24             MR. RAM:  I was referring to Payrur Hayrapetyan.

25             THE COURT:  He was on the surveillance of Canoga

```
 1    apartment.  Then there is also Arman Hayrapetyan.
 2                    Was Arman at the apartment, too?
 3              MR. RAM:  He's connected.
 4              THE COURT:  Was he at the apartment?
 5              MR. RAM:  Well, he's not on the surveillance
 6    footage.
 7              THE COURT:  Just answer the question.  Don't just
 8    keep arguing.
 9              MR. RAM:  I'm not arguing.
10              THE COURT:  I'm trying my best to get to the root of
11    it, and I don't want to hear argument at this point, because I
12    have heard a lot of argument.  I want to hear references to the
13    trial record.
14              MR. RAM:  The testimony is clear that --
15              THE COURT:  Don't tell me if it's clear or not
16    clear, tell me what it is.
17              MR. RAM:  Palmerton testified that Arman Hayrapetyan
18    was connected to Payrur Hayrapetyan based on depositing and
19    cashing of checks and paying $10,000 for each check.
20              THE COURT:  That is his opinion.  Is that evidence?
21              MR. RAM:  That is evidence, Your Honor.  We talked
22    about his investigation and what he did.
23              THE COURT:  I mean, connected -- I mean, I don't
24    know -- let's say they are connected.
25              MR. RAM:  Right.
```

```
 1              THE COURT:  But the point is in this trial, I have
 2    been trying to scratch my memory, it's been notable because
 3    there has been nothing said about Grigoryan.
 4                   I mean, he is mentioned briefly.  No one seems
 5    to make note of it, including the government, surprisingly, in
 6    that Exhibit 10.
 7                   I believe it's brief, but it's one time.
 8                   One of the -- I saw that.  Then what the real
 9    estate people, he's with Richard Ayvazyan and Grigoryan are
10    there together.
11                   The agent said something about they were
12    appearing to be good friends and then there was the third
13    person that -- that Russian name, I can't keep all of these
14    Russian names in my head.  What was the name -- the house they
15    bought was in his name in Palm Springs?  What was that person's
16    name.  Somebody tell me.
17              MS. AHN:  Anton Kudiumov.
18              THE COURT:  Then Kudiumov was the third person at
19    that meeting and the very house they were looking at was in
20    Kudiumov's name.  That is evidence that I remember.
21              MR. RAM:  There was also --
22              THE COURT:  One second here.
23              MR. RAM:  Sorry.
24              THE COURT:  I remember that there was documents
25    seized at Grigoryan's home that were some of the false
```

1    identities that were used by others in this case to make loans.

2    I do remember that.

3                       And I remember, I think, that and all of these

4    Internet terms, I'm not totally conversant with them, but the

5    IP address for the Canoga apartment, I think was used in some

6    of the loans, correct?

7                MR. RAM:  Correct.

8                THE COURT:  And the Canoga apartment was leased to

9    Grigoryan?

10               MR. RAM:  Correct, and Paronyan.

11               THE COURT:  I have considered all of those things.

12   What other piece of evidence -- sit down.  Why are you getting

13   up?

14               MR. FENTON:  I thought you were asking the

15   government.

16               THE COURT:  I didn't ask you anything.

17                       Is there anything else in the record?

18               MR. RAM:  Yes.

19               THE COURT:  The record?

20               MR. RAM:  Yes.

21               THE COURT:  That I should focus on?

22               MR. RAM:  Yes, Your Honor.  Paronyan was also

23   connected to Manuk Grigoryan through Redline Collision.

24                       There was -- and then there was testimony

25   specifically that Edward Paronyan provided funds to Manuk

```
1   Grigoryan, No. 1.
2            THE COURT:  Wait a second now.  Let's go slow on
3   that.
4                  You are saying that Grigoryan in the record
5   was connected to who?
6            MR. RAM:  Edward Paronyan.
7            THE COURT:  And how was that connection established?
8   There is no testimony.
9            MR. RAM:  There was the Redline Collision, Your
10  Honor.  That was Justin Palmerton testified that Redline --
11  and it's also in the exhibits.
12           THE COURT:  Well no, what Palmerton, he wasn't there
13  to testify about facts.
14                 What is the exhibit that supports what you are
15  saying?
16           MR. RAM:  I don't have the exhibit on me.  I'm happy
17  to give you the proffer of my entire closing argument, Your
18  Honor, with the exhibit citations, but the big picture there
19  was testimony that connects --
20           THE COURT:  Wait a minute, do you have your --
21           MR. RAM:  Yes.
22           THE COURT:  Give it to me when we finish.
23           MR. RAM:  Yes.
24           THE COURT:  I have time to rethink, I will wait on
25  that until I see what you say, because I have a lot of these
```

```
 1    things already in mind in the analysis, so, but I will consider

 2    anything further, okay.

 3                    What else, passing on this, do you have to

 4    comment on regarding the proposed instructions?

 5                    MR. RAM:  So, beyond the multiple conspiracy,

 6    multiple schemes instruction, Your Honor, there is a number

 7    of -- it's just for clarity's sake.

 8                    THE COURT:  Well, tell me -- give me a page number,

 9    and then tell me what your argument is.

10                    MR. RAM:  Okay.  Maybe we will start with -- so we

11    have covered 22 and 23, which was multiple conspiracies.

12                    Let's go to page 24.

13                    THE COURT:  When you say 22 and 23 was multiple

14    conspiracies, there is no multiple conspiracy instruction.

15                    MR. RAM:  I think that's what would be modified.

16                    THE COURT:  I see, what is the next page?

17                    MR. RAM:  Maybe we can come back to 24, when we talk

18    about -- when we talk about the multiple conspiracies

19    instruction.

20                    Let's jump to 25, Your Honor, which is the

21    Pinkerton instruction.

22                    THE COURT:  Yes.

23                    MR. RAM:  So, first someone committed the crime.

24                    Second, that person was a member of a

25    conspiracy.
```

1          I think given the confusion in this case

2     potentially around this issue with or without the multiple

3     conspiracies instruction, we should modify a conspiracy to the

4     single overall conspiracy charged.

5          THE COURT:  Well, maybe the conspiracy alleged.

6          MR. RAM:  I think the emphasis instead of "a," would

7     be single overall.

8          THE COURT:  That the member was a member of the

9     conspiracy charge -- the.

10         MR. RAM:  Okay.

11         THE COURT:  I have made a note of it, what else?

12         MR. RAM:  Same thing with that third person.

13         THE COURT:  I will consider that every time that

14    comes.

15         MR. RAM:  There it would be the single overall

16    conspiracy would be the request.

17         THE COURT:  Okay.

18         MR. RAM:  Next, we can go to 28 which is the mail

19    and wire fraud counts.

20              The second page of it, after the chart.

21              First, the defendant knowingly participated in

22    or devised one overall scheme or plan to defraud or one overall

23    scheme or plan for obtaining money or property.

24              Instead of "a".

25         THE COURT:  I mean, this instruction comes from the

```
 1   Ninth Circuit pattern.
 2                   I see your observation, and it's noted.
 3             MR. RAM:  Thank you, Your Honor.
 4                   Given the facts of this case, same thing with
 5   29, top of the page, in determining whether --
 6             THE COURT:  I'm noting it.
 7             MR. RAM:  Okay.  Next, we can go to 31, and here is
 8   two corrections, or suggestions, Your Honor:  For each count
 9   modifies first.
10                   I will read it in a second, I think should
11   modify all of the elements.
12                   So in other words, in order to be found guilty
13   of bank fraud, in violation of dot, dot, dot, the government
14   must prove each of the elements beyond a reasonable doubt for
15   each count.  And then go first, and then strike "for each
16   count," the defendant knowingly carried out one --
17             THE COURT:  I see what you are saying, I have noted
18   that.
19             MR. RAM:  Again, I would substitute one overall for
20   "a" scheme.
21             THE COURT:  Okay.  What next.
22             MR. RAM:  Next, Your Honor, we can go to 33, the
23   aiding and abetting instruction.
24                   I believe my co-counsel raised this issue
25   already.
```

1          THE COURT:  How about the aiding and abetting

2    conspiracy?

3          MR. RAM:  Yeah, I don't know how that is possible.

4    Same thing with the scheme, Your Honor, you already have the

5    Pinkerton instruction.

6               So I think this would modify, at best,

7    aggravated identity theft.

8          THE COURT:  When you are saying you can't aid and

9    abet bank fraud or wire fraud?

10         MR. RAM:  Let me correct that.  So you can willfully

11   cause and aid and abet a specific execution, but you can't aid

12   and abet the plan or scheme itself, the agreement in a

13   conspiracy, and the plan itself.

14         THE COURT:  Are you saying that the aiding and

15   abetting instruction is inapplicable in a wire fraud and bank

16   fraud context?

17         MR. RAM:  No, Your Honor.

18         THE COURT:  All right.

19         MR. RAM:  I'm limiting it to the executions.

20         THE COURT:  Next.

21         MR. RAM:  Next, Your Honor, 34, money laundering.

22   I'm going to take these together.  Money laundering, there is

23   several charges, I just think we can maybe unpack them slightly

24   better with the same information.

25               So, for example, starting on page 34,

1   concealment money laundering.

2               Two edits here, the first one, Your Honor

3   already knows, first beginning no later than in or around March

4   to at least October 2020, there was one overall agreement

5   instead of "an."

6               And here is the new change proposed we go:

7   One, money laundering in violation of 1956, Title 18, as

8   charged in the indictment.

9               And it's going to be the same for one and two,

10  Your Honor.  The objects, because we want to avoid a

11  constructive amendment or fatal variance, if, for example, some

12  other conduct constituted concealment money laundering or

13  transactional money laundering that was not related to PPP or

14  EIDL loans.

15          THE COURT:  I understand your proposed edit.

16          MR. RAM:  In fact, it's done that way on page 37, so

17  just maybe repeat what we did on 37.

18          THE COURT:  Okay.  Next.

19          MR. RAM:  Next, Your Honor, let's look at page 36.

20  I was just -- this just applies to Vahe Dadyan, because it's

21  Count 27.

22              So my one organizational suggestion would be

23  for Count 26, which charges both objects anyway, concealment

24  and transactional.  Lay it out, and then say, here is what

25  substantive concealment money laundering elements are, here is

1   transactional money laundering elements.

2                   And then come to Count 27 with Vahe Dadyan and

3   having already defined those two things or repeating them for

4   clarify, because right now, if you look at page 37, Your Honor,

5   I know I'm going fast, tell me to slow down if you want me to,

6   it's a little confusing, then we drop in the final paragraph

7   this is a count about Vahe Dadyan, it says Richard Ayvazyan is

8   charged with committing 28 through 32 while on release.

9                   And he's charged with concealment money

10  laundering only while on release.

11                  This seems to be tagging on to the Vahe Dadyan

12  in Count 27.  This is largely just organizational issue, beyond

13  tying it to the PPP and EIDL conduct.

14          THE COURT:  Understood.

15          MR. RAM:  Next, Your Honor, we got aggravated

16  identity theft.

17                  Given the facts we heard in this case, I'm a

18  little concerned.

19                  I'm sorry, before I get there, page 38 is an

20  example of tying the SUA to unlawful activity that is charged

21  in the indictment.  That seems very clear in 38.

22                  Okay.  Now, 39.

23          THE COURT:  Say that again.

24          MR. RAM:  I was just citing.

25          THE COURT:  Where are you on that instruction, what

```
1    line?
2            MR. RAM:  Second, the person knew that the
3    transaction involved property representing the proceeds of
4    unlawful activity that is charged in the indictment.  I thought
5    that was very clear.
6            THE COURT:  Okay.
7            MR. RAM:  All right.  And now we get to go to my
8    points on aggravated identity theft.
9                Pages 39, if you juxtapose it with the
10   possession instruction on 41, it's somewhat confusing, at
11   least, I didn't follow.
12           THE COURT:  Let me see that.
13           MR. RAM:  I can tell you what I mean, specifically.
14           THE COURT:  Explain.
15           MR. RAM:  These are standard instructions.  I
16   recognize that.  Given the facts of this case, it says first,
17   the defendant knowingly transferred, possessed, or used without
18   lawful means, and then it's standard instruction.
19                It lumps all three identities from the three
20   different counts together, that is obviously the Court's
21   prerogative.
22                Perhaps for clarity, we could break it out,
23   but if we kept them all together, my concern is when you read
24   the possession instruction, it says a person has possession of
25   something if they know -- which is the standard instruction.
```

1          A juror could read this and say okay, well

2    even though I don't think, for example, Richard Ayvazyan had

3    anything to do with Mark Zindroski's loan application, he

4    certainly possessed Mark Zindroski's identifying information

5    and there was a loan submitted by someone, let's say Manuk

6    Grigoryan, if they thought that which is the IP address, but

7    they say Rich possessed it.  There was a loan submitted for

8    Zindroski, in his name so maybe he's guilty of aggravated

9    identify theft, which is obviously not the state of the law.

10          I suspect the government will point to, and

11   say, Your Honor, it's got to be in connection with the

12   underlying felony, which here, is I believe bank or wire fraud.

13          But just the way this is laid out, I did not

14   understand that.

15          And I thought my client would be guilty just

16   by virtue of having Mark Zindroski's name in his possession,

17   even if he did not submit the application, and if he didn't

18   cause it and didn't aid and abet it.  That is not the state of

19   the law.

20          THE COURT:  Okay.

21          MR. RAM:  Those were my high levels, Your Honor.

22          I'm sorry, one or two more.  Also, a venue

23   request, Your Honor, for Mr. Silverman.

24          THE COURT:  I'm going to reject that.

25          MR. SILVERMAN:  Yes, Your Honor.

```
1              MR. FRASER:  Ms. Terabelian joins Richard Ayvazyan's

2    request and objections insofar as they pertain to the counts in

3    which she's charged.

4              THE COURT:  Understood.

5              MR. FRASER:  Thank you.

6              MR. JOHNSON:  I know that counsel for Richard -- I

7    know that counsel for Richard Ayvazyan mentioned the

8    instruction on page 36 as it relates to Vahe Dadyan.

9                   My only edit to that was to --

10             THE COURT:  One second, page 36.  Yes.

11             MR. JOHNSON:  My only edit to that was to add in on

12   the second element as charged in the indictment, and I know

13   that --

14             MR. RAM:  Sorry, I meant to add that as well.

15             MR. JOHNSON:  That's the only correction.  And, Your

16   Honor, I failed to renew my motion for judgment of acquittal.

17   I wanted to make sure that the Court wasn't asking me for that

18   argument at this time.

19             THE COURT:  No.  You have made -- I will deem that

20   all of the parties have made motions on behalf of their clients

21   for acquittal.

22             MR. RAM:  Thank you, Your Honor, on behalf of

23   Richard Ayvazyan.

24             MR. FRASER:  Thank you on behalf of Ms. Terabelian.

25             THE COURT:  All right.  Let me hear from the
```

```
 1    government.
 2                    With regard to first my question about what
 3    the record shows, and understanding that the record has to be
 4    looked at at this point, as counsel, Mr. Ram, represented it,
 5    what evidence is there in this record regarding Grigoryan?
 6                    I mean, Grigoryan, I didn't hear much about
 7    him at all, except for what I mentioned in my colloquy with
 8    Ram.
 9                    What else do you have to add to that?
10            MR. FENTON:  I think the key evidence against
11    Grigoryan is the evidence relating to 6150 Canoga, which is the
12    location from which a number of fraudulent PPP and EIDL loan
13    applications were submitted.
14            THE COURT:  I did mention that.
15            MR. FENTON:  Right.
16            THE COURT:  I mean, I'm not -- maybe I misstated the
17    question.
18                    Other than what I have said or what Mr. Ram
19    said, is there anything in this record that I have missed, that
20    is what I wanted to ask.
21            MR. FENTON:  I understand, Your Honor.  I think it's
22    Government Exhibit 115 and 116 which are the summary chart
23    exhibits that show Grigoryan's role with respect to the
24    transfer, the laundering and the transfer.
25            THE COURT:  Is he mentioned in that?  In one
```

```
1   transaction, there is in that chart, there is money going from
2   Artacious (phonetic) Grigoryan, what was the name of
3   Mr. Grigoryan in this case?  Arman, what is his name?
4           MR. FENTON:  So the defendant is Manuk Grigoryan.
5           THE COURT:  Manuk.  And in that one transaction,
6   both are passing money along, I saw that reference.
7           MR. FENTON:  Right.
8           THE COURT:  Regarding to the loan, I mean, we have
9   talked about Canoga Park.
10              There was no testimony about Grigoryan and
11  maybe some of the -- I don't know why I can't remember these
12  names.
13          MR. FENTON:  Amirah Halum?
14          THE COURT:  Paronyan and Arman and some other person
15  with that last name were seen at the visiting the apartment,
16  correct?
17          MR. FENTON:  I believe it was Payrur Hayrapetyan,
18  who is essentially just a money mule.
19          THE COURT:  Why are you saying that?  I don't know
20  anything about this guy.
21              Was there any evidence in the case about that?
22          MR. FENTON:  No.
23          THE COURT:  Well, why are you saying that?  I'm
24  trying to find out for the benefit of everyone what is in this
25  record and you are telling me somebody was a mule when there is
```

```
 1   no evidence of that.
 2                Have we reviewed everything that is in the
 3   record, forgetting whatever inference may or may not flow from
 4   that underlying evidence.
 5                MR. FENTON:  I agree with, Your Honor.
 6                THE COURT:  I'm asking you, you don't have to agree
 7   with me.  Is there something that we haven't mentioned so far
 8   that is in the record?
 9                MR. RAM:  Yes, Your Honor.  The testimony about hits
10   and connections between individuals of the two different
11   groups, you may have heard that.  That is the one thing I
12   accomplished yesterday with the agent is to get in what were
13   the different contacts and communications.
14                We talked about text messages, emails,
15   telephone calls, and I linked them specifically with members of
16   both groups, Your Honor, and that came in.
17                THE COURT:  Well, make yourself clearer.  I don't
18   know why it is -- I don't intend, certainly, any personal
19   criticism, but I have more trouble understanding what you say
20   than any other lawyer in the case.
21                I don't know why that is.  It may be my
22   shortcoming, but I just can't register with you.
23                MR. RAM:  It's me, Your Honor.  I talk too fast.
24                THE COURT:  You are talking beyond me -- beyond my
25   capacity or something?
```

1          I just don't understand what you are trying to

2     tell me as readily as others.

3          So, what is it with these hits?  Tell it to me

4     in as simple and straightforward way as you can.

5          MR. RAM:  Sure.  The testimony was about whether

6     there is any communications of any kind, let alone about let's

7     enter into a conspiracy.

8          THE COURT:  What does the exhibit show?

9          MR. RAM:  This is testimony from yesterday, Your

10    Honor, on the agent.

11         THE COURT:  From what agent?

12         MR. RAM:  This is Agent Palmerton about

13    communications and hits between the different groups of

14    defendants.

15         So we listed off Edward Paronyan, Manuk

16    Grigoryan, Hayrapetyans, both of them, and asked -- first, we

17    established some of the connections between them, which I

18    mentioned earlier, Redline Collision connected Edward Paronyan

19    to Manuk Grigoryan.

20         Then we connected Hayrapetyan, Arman

21    Hayrapetyan to Grigoryan.  Then we connected Payrur

22    Hayrapetyan, who Mr. Fenton again referred to as the mule, to

23    the Canoga address.

24         We connected Manuk Grigoryan to the Canoga

25    address.

41

```
 1            THE COURT:  I have all of that in mind.
 2            MR. RAM:  We connected Mr. Grigoryan to the Calle La
 3   Primavera address.
 4            THE COURT:  How is that connection made?
 5            MR. RAM:  Couple of different ways.  For example,
 6   from the search of the Canoga.
 7            THE COURT:  That address somehow associated with
 8   Richard Ayvazyan.
 9            MR. RAM:  It was.  So the trash pool that the agent
10   testified to, it was all materials in the Grigoryan family
11   members' names.
12                 I think the only reference to anyone from this
13   side was some utilities were in the name of someone, I believe
14   someone's mother.  That was not --
15            THE COURT:  So everything you just said so far, I
16   have understood.  What else is there?
17            MR. RAM:  So there was one document and this is
18   important for the pattern like the MO of the two different
19   conspiracies.
20            THE COURT:  Don't tell me what is important or not,
21   just tell me what it is.
22            MR. RAM:  There was a listing of the different
23   construction companies and contracting companies that were
24   found at Manuk Grigoryan's -- was it apartment?
25            MR. KEOUGH:  Yes.
```

1          MR. RAM:  Apartment.  And those same companies had

2    loans that were made, and the IP address ties back to Grigoryan

3    as well.

4          THE COURT:  No, I understand that.  I have that in

5    mind.

6          MR. RAM:  Okay.  Then the additional evidence -- I

7    think that if you asked me for a bucket list of the key things

8    to look at.

9          THE COURT:  Is this all in your argument?

10          MR. RAM:  It is going to be the transcript, we're

11    just getting the transcript from today, Your Honor.  That is

12    going to be in the slides as well.

13               And we can show you all with the quoted

14    testimony, that is there.

15          THE COURT:  All right, thank you.  Address this

16    question, in light of what was just said.

17          MR. FENTON:  Yes, Your Honor.  So I want to make

18    three points to establish to point to the facts that show there

19    is one single conspiracy here, and not two groups.

20               The first --

21          THE COURT:  Well, I don't want to hear that at this

22    time.

23               I will hear it, but I want you to give me your

24    response, if you have one, to this argument or the statement

25    that Palmerton advanced the argument of multiple conspiracies.

1          MR. FENTON:  Special Agent Palmerton absolutely did

2     not advance the theory of two or multiple conspiracies.

3     Everything that Agent Palmerton testified to is consistent with

4     eight defendants working together.

5                   It may be the case that some of those

6     defendants don't know each other, like, for example,

7     Hayrapetyans doesn't know other members, but with respect to

8     everybody else, those charged defendants all know each other,

9     they are either related or they are friends.

10          THE COURT:  I don't know that there is evidence of

11    that.  I mean, for example, Vahe Dadyan, he dealt with his

12    cousin, and the only connection that I can think of beyond his

13    cousin, Tamara, was that he received some monies later on from

14    that Runyan Tax Service.

15          MR. FENTON:  So he sent money to Runyan Tax

16    Services.

17          THE COURT:  Right.

18          MR. FENTON:  Which is Richard Ayvazyan and Marietta

19    Terabelian.

20          THE COURT:  I know I'm talking about what he -- slow

21    down -- what he knows.

22                  The only evidence is that he sent something --

23    some money to Runyan.  I mean, there is plenty of evidence if

24    it's credited by the jury that it was a false application that

25    he got half of it back, and what again was the part that he --

```
 1   what was the part about sending the money to Runyan Tax
 2   Service?
 3            MR. FENTON:  So after Vahe Dadyan received the PPP
 4   money, he wired it to Runyan Tax Service.  And then put on that
 5   wire that it was payroll, which was false.
 6            THE COURT:  Okay.  I remember that.  Now, but I mean
 7   that doesn't show that he knew anyone in the conspiracy other
 8   than Tamara Dadyan.
 9                 It may be inferable from that that he knew
10   others, and he knew that -- or had reason to think that he was
11   being involved in this way, others were similarly, but that is
12   a different story.
13            MR. FENTON:  But there is additional evidence as
14   well, Your Honor, that shows that he knew Richard Ayvazyan and
15   Artur Ayvazyan, who are two other members of the conspiracy.
16            THE COURT:  What is that?
17            MR. FENTON:  That evidence is the text messages
18   showing that Tamara and Arthur are trying to --
19            THE COURT:  Well, I remember that.
20            MR. FENTON:  Trying to find a way to pay.
21            THE COURT:  They are in those text messages, they
22   are saying half -- they call him the idiot or something, do
23   something, and he wasn't the party to that discussion.
24            MR. FENTON:  But then he receives the money from
25   Richard Ayvazyan -- the company controlled by Richard Ayvazyan.
```

```
 1              THE COURT:  How does he know Richard Ayvazyan
 2   controls that company?
 3              MR. FENTON:  He's receiving money from Timeline
 4   Transport and Iuliia Zhadko.
 5              THE COURT:  But how does he know, other than it's
 6   odd that he's getting these amounts of money from entities he
 7   doesn't have any connection to that he knows what they are?
 8              MR. FENTON:  Well, the fact that he's sending money
 9   to an entity that he has no connection to, receiving money.
10              THE COURT:  That is all something you can argue.
11              MR. FENTON:  Right.
12              THE COURT:  But it may be part of the argument that
13   he knew this was beyond just himself and Tamara Dadyan.
14                    All right.  What else were you going to say
15   with regard to the proposals which were made by Mr. Ram?
16              MR. FENTON:  So the one additional point was that
17   Mr. Ram points out all of the construction companies, the list
18   of construction companies found on the notepad at Canoga, those
19   same construction companies are found, a list of those
20   construction companies and checks belonging to those
21   construction companies are found at Weddington, where Tamara
22   and Arthur Ayvazyan live as well.
23                    That is key evidence, because a lot of those
24   construction companies took PPP loans and EIDL loans and that
25   shows that these two groups are actually one group.
```

1              Because they are going through and they are

2    using the same companies to get the PPP money.  That is an

3    essential fact that Mr. Ram did not address.

4              THE COURT:  All right.

5              MR. FENTON:  I can give you -- if you would like the

6    government's exhibits, I can provide them.

7              THE COURT:  Give them to me.

8              MR. FENTON:  54B as in boy, 57J, and 57G.

9              THE COURT:  G?

10             MR. FENTON:  G.

11             THE COURT:  Okay.

12             MR. FENTON:  Then the two final points that I would

13   make on this Exhibit 115, which I spoke about earlier, shows

14   the financial transactions where that the parties, the eight

15   defendants are sharing and transferring the PPP and EIDL loan

16   proceeds.  And then summary Exhibit 116 shows how they are all

17   using the same underlying documentation, and this goes to the

18   assembly line of fraud argument that we made in our briefs.

19             THE COURT:  All, meaning including Grigoryan?

20             MR. FENTON:  Absolutely, Your Honor, yes.

21             THE COURT:  All right.

22             MR. FENTON:  So if you look at those -- if you look

23   at those charts, those charts provide examples of how the

24   different defendants are sharing the same 940s the IRS tax

25   forms, and how they are sharing the same Gusto reports.

```
1              There are three different groupings that
2   provide three different examples that all shows that this group
3   is a cohesive unit.
4              THE COURT:  I follow what you are saying.
5              MR. FENTON:  The one additional point that I wanted
6   to --
7              THE COURT:  I will allow a brief interruption here.
8              MR. RAM:  On that last point, the evidence that came
9   in explains why there is some overlapping, for example, payroll
10  reports, in Government Exhibits 10 that we heard this morning.
11  Tamara Dadyan was asking Rich New, hey, what should I ask
12  Grigoryan, one of the members of the Dadyan group, for payroll
13  reports.
14              And Rich New responds, nah, don't use that
15  one, why don't you use this one.
16              And it's Rich Ayvazyan that -- well, Rich New,
17  that provided the information to Dadyan.
18              So, the fact that the payroll or the 940s are
19  the same is not surprising.
20              It's not because there is a joint venture
21  between the two groups, it's because Rich New is part of both
22  conspiracies, and he shared certain information that is
23  documented.
24              THE COURT:  Understood.
25              MR. FENTON:  Your Honor, we would maintain that
```

1   there is not a joint venture between these two separate units.

2   Mr. Ayvazyan is Richard Ayvazyan, he is the leader of the

3   conspiracy.

4           This is all consistent with our argument that

5   he and Tamara are the leaders of this conspiracy.

6           THE COURT:  But understanding the question before me

7   is not to weigh the evidence and determine who has the better

8   argument.

9           If there is an argument based beyond

10   speculation that a jury could accept regarding multiple

11   conspiracies, then it should be granted.

12           If the argument is without sufficient support

13   in the record for a jury to so determine beyond speculation it

14   shouldn't be.  That is the question that I have to resolve.

15           MR. FENTON:  I understand, Your Honor, and the

16   government agrees there is no evidence of multiple conspiracies

17   here.

18           THE COURT:  Right.

19           MR. FENTON:  In the same that Mr. Ram presents, but

20   the one point -- I want to make one final point on this.

21           THE COURT:  You don't have the final point.  This is

22   the final, final point.

23           MR. FENTON:  This is the final, final point.

24           THE COURT:  The preliminary final point.

25           MR. FENTON:  This will be the final, final point.

1    We charge here two separate conspiracies.  One

2  conspiracy under 1349, the second under 1956(h).

3    If the Court were to instruct the jury the way

4  that Mr. Ram is asking Your Honor to instruct the jury, I think

5  it will lead to complete confusion given that the government

6  alleges two conspiracies.

7    And as it is, the jury could find the

8  defendants guilty of one or the other or both and I think that

9  we're concerned if Your Honor would instruct, as Mr. Ram

10  suggests, if they were to find the defendants guilty of both,

11  they may feel compelled to find the defendant guilty of

12  neither.

13    THE COURT:  I understand that.  Let's hear anything

14  further from you about -- let's wait until somebody finishes.

15    Okay.  And everybody has a chance.

16    What next do you want to address regarding

17  some of the other edits that were suggested?

18    MR. FENTON:  The other edit I would like to touch

19  on, aiding and abetting instruction.

20    We agree that the aiding and abetting

21  instruction is not appropriate for the conspiracy counts.  We

22  believe it's absolutely for the bank and wire fraud counts.

23    THE COURT:  It has to be edited?

24    MR. FENTON:  Yes.  We don't think there is any case

25  law that supports Mr. Ram's argument that you wouldn't have

1  aiding and abetting that it would be inappropriate for

2  substantive bank fraud or wire fraud account.

3              Additionally, with the respect to the mere

4  presence instruction that was requested by defendant

5  Terabelian's counsel, we believe there is no evidence.

6              THE COURT:  How, in your view, does mere presence

7  fit into the evidence?

8              MR. FENTON:  So there is no evidence to suggest that

9  defendant Terabelian did nothing.

10              The evidence suggests that from the jail call

11  to the possession of the Viktoria Kauichko card, even that most

12  basic evidence, puts her as an active participant in something.

13              It all suggests she has some role, and the

14  jury obviously will weigh that role and weigh her intent with

15  respect to that role.

16              THE COURT:  Well, there is a lot of money being

17  transferred to her account; isn't that true?

18              MR. FENTON:  There is PPP and EIDL loan proceeds

19  that are being transferred through her accounts.

20              She's in possession of cards -- one card --

21  sorry, one credit card in the name of somebody else.  She makes

22  the jail call saying that.

23              THE COURT:  I have that in mind.

24              MR. FENTON:  So I think the mere presence

25  instruction is not appropriate in light of that fact.

1            THE COURT:  Well, let me ask -- just tell me in the

2    most straightforward way you can, how does mere presence fit

3    into your argument?

4            MR. FRASER:  There is no direct evidence of action

5    by Ms. Terabelian in furtherance of the conspiracy or to

6    execute.

7            THE COURT:  So let's focus on the word "presence."

8    Do you mean presence that she was the wife of Richard Ayvazyan

9    and that she was just there in the house, and the fact that she

10   is just there in the house doesn't mean that she knew what was

11   going on?

12           MR. FRASER:  I do mean it physically with regard to

13   presence in the house, and presence with Mr. -- Richard

14   Ayvazyan, whether they were traveling back from their vacation

15   through Miami, but I also mean it in terms of the other

16   circumstances.  Obviously, there are electronic transactions

17   that are at issue in this case that don't really readily

18   translate to a particular physical location, but the concept of

19   mere presence applies even there as well.

20           THE COURT:  Thank you.  I understood.  Thank you.

21               What else do you have to comment on regarding

22   the edits?

23           MR. FENTON:  One additional point in the mere

24   presence.  There is language that we believe is satisfactory

25   that is included on page 23 of Your Honor's proposed jury

```
 1   instructions.  This is the last sentence on page 23.
 2              THE COURT:  Okay.  I have that this mind.  Move on.
 3              MR. FENTON:  Okay.  The next point I would address
 4   is the additional instruction on spoliation of evidence that
 5   counsel for defendant Terabelian has proposed.
 6                   We believe this is not appropriate.  This
 7   particular instance, is very different than the cases cited in
 8   their request.
 9                   In that case there was a Jeep that is actually
10   destroyed.  There is evidence that was collected.
11              THE COURT:  I will consider that argument.  I tend
12   to think you are correct.  Move on to something else.
13              MR. FENTON:  Thank you, Your Honor.
14                   And Ms. Ahn will address the money laundering
15   jury instructions.
16              THE COURT:  Okay.
17              MR. FENTON:  Thank you.
18              THE COURT:  Okay.  Ms. Ahn?
19              MS. AHN:  Thank you, Your Honor.  Let me go to the
20   money laundering instruction.
21              THE COURT:  I'm at page 36 where the money
22   laundering instructions begin.
23              MS. AHN:  Yes, Your Honor.  I would like to speak
24   first about page 38, Your Honor.
25              THE COURT:  38, let me get there, hold on.  Okay.
```

```
 1   I'm there.
 2            MS. AHN:  It relates to Section 1957.  And in the
 3   second element, Your Honor proposed the second, the person knew
 4   that the transaction involved property representing proceeds of
 5   unlawful activity that is charged in the indictment, which
 6   deviates from the model instruction.
 7                 I would point Your Honor to the actual
 8   language in the statute of Section 18, U.S.C., 1957.
 9            THE COURT:  You are saying that the instruction that
10   I proposed is different than the model instructions?
11            MS. AHN:  Yes, Your Honor, the model.
12            THE COURT:  So where did I get this instruction
13   from?  Is this proposed by the defendants?
14            MS. AHN:  It's not exactly what was proposed by the
15   defendant, but yes, the defendant did propose attaching
16   specific knowledge that the unlawful proceeds came from the
17   bank fraud or wire fraud.
18            THE COURT:  Let's turn back to the second element
19   and tell me why you think it's incorrect.
20            MS. AHN:  If you look at the actual statutory
21   language, Your Honor, of 18, U.S.C., 1957, it has a usual
22   statutory language, and in subparagraph C, it says in a
23   prosecution for an offense under this section, the government
24   is not required to prove the defendant knew the offense -- knew
25   that the offense from which the criminally derived property was
```

1    derived was specified unlawful activity, which is consistent

2    with the model instruction, Your Honor.

3              THE COURT:  What does specified unlawful activity

4    mean?

5              MS. AHN:  Your Honor, the specified unlawful

6    activity refers to the fact that the money was derived from the

7    bank fraud and wire fraud conspiracy, Your Honor.

8              THE COURT:  So you are saying that 1957 doesn't

9    require knowledge by the defendant that the defendant knew that

10   the proceeds were from a specific criminal activity, just some

11   criminal activity?

12             MS. AHN:  Yes, Your Honor.

13             THE COURT:  I see, okay.

14             MR. RAM:  Your Honor.  May I be heard on that?

15             THE COURT:  Just one point.  Finish up on your money

16   laundering arguments.

17             MS. AHN:  Yes, Your Honor.  And that relates to the

18   second element.

19                  I did want to also address the Court's

20   instruction on page 20, which is a different instruction, Your

21   Honor.

22             THE COURT:  Okay.  Wait a minute, let me get there.

23                  Okay.  Yes.  What about that?

24             MS. AHN:  So, on page 20, the Court has an

25   instruction on evidence of defendant's statement, and I think

```
 1    that was based upon the model instructions.
 2                    Actually, it relates to confessions,
 3    defendant's confessions.
 4            THE COURT:  Well, you know, I did think that as I
 5    considered the instruction that in every case I have had, I
 6    have given this instruction when the defendant made some
 7    statement, if not a confession, usually some statement to an
 8    agent investigating the case.  That was where the instruction
 9    was used.
10                    What I wasn't sure about was how that related
11    to this case, because there were no statements like that in
12    this case.
13                    The only statements if they are considered as
14    such for the purposes of this instruction were in Exhibit 10.
15            MS. AHN:  Yes, Your Honor.  So the government's
16    position is that this doesn't actually apply to the facts of
17    this case, Your Honor.
18            THE COURT:  Because you are thinking that the
19    question of who was the speaker or not in Exhibit 10, is not
20    within the realm of this instruction?
21            MS. AHN:  Yes, Your Honor.
22            THE COURT:  I understand.
23            MR. LITTRELL:  On that point?
24            THE COURT:  Let me finish, I will give everybody a
25    chance.
```

1          MS. AHN:  Yes, Your Honor.  And I would just note

2     that there was an agreed upon limiting instruction between the

3     government and counsel for Ms. Terabelian that was included in

4     the government's supplemental amended instructions, and we

5     would just request to include that.

6          THE COURT:  What was that, I don't have that in

7     mind.

8          MS. AHN:  Let me grab it from my table, Your Honor.

9          THE COURT:  Okay.

10         MS. AHN:  It was, you have heard that defendant

11    Marietta Terabelian made phone calls from jail.  You must not

12    consider the fact that she was in jail as evidence of her

13    guilt, the crimes charged in this case.

14         THE COURT:  I see, okay.

15              All right.  Let me first hear from -- I will

16    do it in reverse order, you, and then you, and Johnson, and

17    then finally Ram.

18         MR. LITTRELL:  Just quickly on the defendant's

19    statement, I think that applies to Ms. Terabelian's jail call

20    as well.  That is a statement that was made by her, and I think

21    that instruction should apply.

22         THE COURT:  I see, okay.

23         MR. JOHNSON:  Your Honor, my statements are related

24    to the evidence against Mr. Vahe Dadyan and the Pinkerton

25    theory.  I heard the government say that there is evidence that

1   Mr. Vahe Dadyan had knowledge of other co-defendants, that is

2   not in this record.

3          THE COURT:  No.  I thought I tried to develop that

4   point that he didn't have specific knowledge of other

5   co-defendants, but there were circumstantial evidence, perhaps,

6   that he knew that the conspiracy involved others even if he

7   didn't know the specific identity of those others.

8          MR. JOHNSON:  I want to be very, very clear.  There

9   is no evidence that Mr. Vahe Dadyan is connected to any other

10  defendant other than Tamara Dadyan in this record.

11          The Court -- Exhibit 1-N that the government

12  referred to earlier is a banking record from a timeline -- a

13  company that is not related to Mr. Vahe Dadyan.

14          They did not put into this record bank records

15  related to V&D Limo showing that Mr. Vahe Dadyan received

16  money.

17          What they are referring to is wires from a

18  co-defendant's bank account, those banking records that

19  Mr. Vahe Dadyan could never have looked at.

20          So what the -- what I wanted to be very, very

21  clear --

22          THE COURT:  You are saying that when the money

23  arrived in your client's account there would be no recording of

24  where the money came from?

25          MR. JOHNSON:  What I'm saying that --

1           THE COURT:  Are you saying that?

2           MR. JOHNSON:  What I'm saying the money did not,

3    there is no evidence that it actually arrived.  It's an

4    inference that the government is -- I believe entitled to

5    argue, that V&D Limo stood for Vahe Dadyan Limo.  But the

6    inference comes from the banking records of co-defendants, not

7    Mr. Vahe Dadyan.

8                There is no evidence in this record, no

9    testimony, no exhibits that show that Mr. Vahe Dadyan had

10   knowledge that other people were involved.

11               This is the problem with the Pinkerton theory

12   related to this case.  It relates to Mr. Vahe Dadyan, and

13   deficiency in bringing it forward to the jury as related to the

14   Pinkerton theory, I understand the Court's rule as it relates

15   to Count 7, that the Court said there is sufficient information

16   to show that he submitted -- these records -- but we will

17   disagree with that.

18               I understand the Court's ruling as it relates

19   to Count 27, that there is sufficient evidence to prove beyond

20   a reasonable doubt.  I disagree with that.

21               But as it relates to the Pinkerton theory,

22   there is no evidence and I would ask the government to proffer

23   specifically the evidence related to his knowledge as to Count

24   8, 9, 10, 11, 12, 19, and 20.

25               THE COURT:  All right.  Let me ask the government to

1  address that.

2                  Just walk me through.  Take the lectern,

3  Mr. Fenton, and just without putting adjectives on your

4  descriptions, just walk me through the evidence that would

5  support a Pinkerton theory.

6        MR. FENTON:  Yes, Your Honor.  Government Exhibit 10

7  contains extensive text messages between Richard Ayvazyan and

8  Tamara Dadyan about their efforts to pay Vahe Dadyan and Vahe

9  Dadyan's insistence that he get his cut.

10                 They talk about having Artur Ayvazyan get him

11  the money and they ultimately resolve to send it to Vahe Dadyan

12  at V&D Limo.

13                 There are photographs that are attached to

14  text messages that evidence the actual transaction and show

15  that the wire transfers did take place in fact from Timeline

16  Transport to V&D Limo and the text messages provide very strong

17  evidence that they were trying to, and in fact did, pay Vahe

18  Dadyan his cut for his role in the fraud.

19                 We have told Mr. Johnson on several occasions,

20  and we put this into evidence and featured it before the jury.

21        THE COURT:  What exhibit are you referring to?

22        MR. FENTON:  This is exhibit -- Government

23  Exhibit 10.

24        THE COURT:  Last word, Mr. Johnson?

25        MR. JOHNSON:  As the Court noted, Exhibit 10 they

```
1    are mentioning Vahe Dadyan, but Mr. Vahe Dadyan did not say
2    there is no evidence he saw those text messages.  They are text
3    messages from Tamara and Rich New.  At best they are talking
4    about Vahe Dadyan.  It is reasonable, I guess, for the
5    government to argue he did in fact receive those.
6                   It is unreasonable based upon this record to
7    say he had knowledge that others would be involved because
8    there is no evidence that he had knowledge.
9              THE COURT:  I have it in mind, okay.
10                  There was some other -- let's see, we have to
11   Mr. Ram, now, I guess?
12             MR. RAM:  This is going to be a short point.  I
13   actually agree with the government's construction of the Ninth
14   Circuit instruction on money laundering with respect to
15   page 38.  But that doesn't address the issue that the Court
16   flagged in the instruction.
17             THE COURT:  One moment.
18             MR. RAM:  Page 38.  The person knew that the
19   transaction involved property representing the proceeds of
20   unlawful activity, and then it says currently, that is charged
21   in the indictment.
22                  There is two different things going on.  The
23   state of the law was accurately portrayed by Ms. Ahn; in other
24   words, the defendant doesn't need to know, was it bank fraud or
25   wire fraud or healthcare fraud.  They don't need to know which
```

1    SUA which unlawful activity, but they have to know it's

2    unlawful activity, it's dirty money.  They have to know that in

3    fact it has to be one of the qualifying SUAs charged.

4            THE COURT:  When you say one of the qualifying SUA

5    charged, what do you mean?

6            MR. RAM:  In other words, there has to be -- in

7    fact, be money derived, in this case, bank fraud or wire fraud

8    or conspiracy to commit bank fraud or wire fraud.  That is not

9    in dispute in fact.

10           THE COURT:  So how does that --

11           MR. RAM:  If I may?

12           THE COURT:  So, are you saying that the defendant

13   has to know that it was bank fraud or wire fraud?

14           MR. RAM:  I'm saying the opposite.  The defendant

15   has to know it's dirty money and in fact it has to be from bank

16   fraud or wire fraud.  So that is not the issue in dispute right

17   now.

18               The issue in dispute, given the testimony and

19   evidence we heard at this trial, there is a real issue with --

20   which is why I believe the Court modified the language with a

21   constructive amendment or fatal variance.  So one simple fix to

22   what both parties are proposing, would be to say something like

23   second, the person knew that the transaction involved property

24   representing the proceeds of unlawful activity related to PPP

25   or EIDL loans.

**UNITED STATES DISTRICT COURT**

1          Basically hooking it back to the subject

2    matter of this case as opposed to anything else the jury may

3    have heard about other unlawful activity.

4          So in other words, if there --

5          THE COURT:  I got it.

6          MR. RAM:  Okay.

7          MS. AHN:  Your Honor, on that point, Mr. Ram is

8    correct in that the money does in fact have to be from the bank

9    fraud, wire fraud or conspiracy to commit bank fraud or wire

10   fraud as charged in the indictment, but that is contained in

11   the forth element on page 38.

12         THE COURT:  That is a question I had you raise.  Can

13   the element be satisfied with conspiracy?

14         MS. AHN:  It -- yes, it could be.

15         THE COURT:  In other words, conspiracy to commit

16   bank fraud or wire fraud or bank fraud as opposed to the

17   substantive wire fraud or bank fraud count?

18         MS. AHN:  It could be any one of those three

19   charges, Your Honor.

20         THE COURT:  I see.

21         MS. AHN:  With respect to Mr. Ram's proposal, the

22   concern is that the second element, the purpose of the second

23   element is to establish the knowledge requirement.  If you add

24   -- that is charged in the indictment, the action word or the

25   verb there is the person knew, and that is what is affecting

1    the rest of that clause.

2              It looks like we are requiring the jury to

3    find the person knew that the unlawful proceeds were from the

4    activity charged in the indictment, which makes -- which is

5    just wrong on the law, Your Honor.

6              As such, we would request the Court revert

7    back either to the government's proposed instruction or the

8    model instruction, which instead, just requires.

9         THE COURT:  Hold on.  Do I have the proper

10   instruction here?  Do I have it -- one second, here.

11        MS. AHN:  8.17, Your Honor.

12        THE COURT:  I don't have it here.  8.147?  I will

13   look at that.

14        MS. AHN:  Rather, 8.150, as well, Your Honor, that

15   is on specifically to 1957.

16        THE COURT:  Okay.  I will look at that.

17              Now, what is this --

18        MR. RAM:  Really brief follow-up on that.

19              So in other words, the defendants would be

20   factually innocent if they thought the money came from

21   something else like a mortgage fraud scheme, that would not be

22   within the scope of this count in the indictment.

23              I don't think the government disputes that.

24              So that's why I'm proposing the modified

25   language, not to say they need to know whether it came from

1   bank fraud, wire fraud, or conspiracy, but rather, they need to

2   know that it came from PPP/EIDL loans, that is all it is.

3                   It's not changing the requisite knowledge

4   required.  It's clarifying that it's got to be from this case.

5           THE COURT:  Okay.

6           MS. AHN:  We respectfully disagree, Your Honor.

7           THE COURT:  All right.  What is it you wanted to

8   offer?

9           MR. FRASER:  One sentence on the Sivilla case on the

10  lost evidence.

11                  The point of that case is that when the

12  government is on notice that there is exculpatory evidence and

13  negligently destroys it or fails to preserve it, the

14  instruction is warranted, rather than factual match to the Jeep

15  Cherokee.

16          THE COURT:  Would you end up that which you want to

17  give to me, Mr. Ram, so I can read it?

18          MR. RAM:  Your Honor, we haven't put together the --

19  I still need to add in the testimony from today into the --

20          THE COURT:  Well, I'm trying to give everybody their

21  due here.  So I mean, I mean, you can give me much as you can.

22                  What else is there?

23          MR. RAM:  It doesn't include testimony from today.

24          THE COURT:  Well, are you talking about Palmerton?

25          MR. RAM:  I think we're missing Palmerton and parts

```
 1    of Clark still, right?
 2              MR. SILVERMAN:  Most of Clark is in there, however.
 3              THE COURT:  Why don't you tell me so I can resolve
 4    this, because I don't want to have the jury sitting around
 5    tomorrow when we're still trying to iron this out.
 6              Tell me -- I mean, once again, what it is
 7    about Palmerton that advances your argument, and then I will
 8    give the government a chance to respond, and then we will leave
 9    it at that.
10              MR. RAM:  Okay.
11              THE COURT:  Take the lectern.
12              MR. RAM:  Yes, Your Honor.
13              THE COURT:  Okay.  Be as succinct as you can.
14              MR. RAM:  In a sentence, Your Honor, the best
15    evidence from Palmerton is it's the lack of evidence of an
16    overall agreement between all eight defendants.
17              That is the gist of what comes out of
18    Palmerton's testimony from yesterday, primarily.
19              THE COURT:  And put just a little more detail on
20    that.
21              MR. RAM:  Right.  So specifically the testimony on
22    were there any e-mail communications, text messages, phone
23    calls and we defined -- if you remember, Your Honor, we defined
24    Manuk Grigoryan's crew essentially to be Edward Paronyan, Manuk
25    Grigoryan, and the Hayrapetyans, both of them.
```

1          THE COURT:  I have that in mind.  I do remember that

2     so I can consider that along with everything else.

3          MR. RAM:  Today, Your Honor, that was yesterday --

4     today, I walked Agent Palmerton through the Government Exhibit

5     10 and references to three members of the Dadyan group, and

6     specifically, payments -- so, for example, the use of payroll

7     reports, who was Tamara Dadyan talking to about using payroll

8     reports.  That was Grigor Tatorian.

9               We walked through payments made for synthetic

10    identity in this case to another one of the Dadyan group.

11         THE COURT:  I understand what you are saying.  I'm

12    not saying I agree with it, but I understand it.  You made your

13    point.

14         MR. RAM:  Thank you, Your Honor.  I submitted to you

15    the proffer.  I would just highlight, even just the IP address

16    information alone there, Your Honor.

17              THE COURT:  I have it.

18              MR. RAM:  Okay.

19              THE COURT:  Anything further?

20              MR. LITTRELL:  I have a very quick motion,

21    unopposed.

22              THE COURT:  What is that?

23              MR. FENTON:  Are you going give the government an

24    opportunity?

25              THE COURT:  Let him have a quick say, then we will

```
 1   go to it.
 2           MR. RAM:  That is sealed and in camera, isn't it,
 3   Your Honor?
 4           THE COURT:  Absolutely.
 5           MR. FENTON:  So, Your Honor, I would just say Justin
 6   Palmerton very clearly testified that he believed there was
 7   conspiracy between all eight defendants, and he pointed to the
 8   flow of funds.  And the fact that he followed the money and he
 9   also pointed --
10           THE COURT:  I remember that.
11           MR. FENTON:  So I think that Mr. Ram is essentially
12   pointing to arguments -- shoddy investigation arguments and
13   trying to use those arguments that there are multiple
14   conspiracies.
15           THE COURT:  Okay.  Now, let me get to the undisputed
16   part of this, which is always welcome.
17           MR. LITTRELL:  It's a motion to strike the portion
18   of Special Agent Palmerton's testimony where he discussed
19   contacts between Manuk Grigoryan and Marietta Terabelian.  The
20   Court instructed -- the Court -- it was stricken, but I never
21   moved to strike it.
22           THE COURT:  Motion is granted.
23                Okay.  Let's be here, if you can.  What time
24   is it now?
25           MS. AHN:  5:17, Your Honor.
```

1          THE COURT:  Okay.  Can you hang around for five

2   minutes and let me get my thoughts together and see if there is

3   something else I want to ask, so I can get everything

4   established in my thinking.

5          MS. AHN:  Yes, of course, Your Honor.

6          THE COURT:  Just five minutes.  Let's take a break.

7                    (Recess.)

8          THE COURTROOM DEPUTY:  All rise.  This Honorable

9   Court is now in session.

10          THE COURT:  I want to ask the government a couple of

11   things.

12               Maybe I didn't make myself clear on -- this is

13   directed to the instructions, but on the Cellebrite exhibits

14   that Massino testified to.

15               He testified that Exhibit 10, the text

16   messages were based upon the subset of the Cellebrite report,

17   117, 118, 119, 120, correct?

18          MS. AHN:  Yes, Your Honor.

19          THE COURT:  And when I was talking about redaction,

20   I thought that the subset should be redacted to just reflect

21   what he says he relied on.

22          MS. AHN:  Yes, Your Honor.

23          THE COURT:  Did you understand that, or did I not

24   say that clearly?

25          MS. AHN:  I understand it now, Your Honor.

```
 1              THE COURT:  Okay.  I don't think I made it clear
 2    before.
 3              The other thing is I wanted to see Exhibit 50,
 4    that is the transcript of Terabelian's phone call to make sure
 5    it's properly redacted.
 6         MS. AHN:  Yes, Your Honor, we can.
 7         THE COURT:  Make sure I see that.
 8         MS. AHN:  Yes, Your Honor.
 9         THE COURT:  I'm going to give the suggestions or
10    edits further thought.
11              I'm suggesting -- suggesting is, like, I
12    remember a long time ago, my drill sergeant telling me in basic
13    training, a suggestion was not a suggestion -- but let's be
14    here tomorrow morning at -- I'm working you hard, but you are a
15    lot younger than I am, so I don't feel so bad about it.
16              Be here at 8:30 in case there are any, you
17    know, things and I will tell you -- I will give you a copy of
18    the instructions that will be given so you will have a chance
19    to look at those.
20              Then we can begin promptly at 9 o'clock and
21    the government will go and then -- do you have any particular
22    order worked out among yourselves as to how you are going to
23    make your argument?
24              Is there any agreement or is it just going to
25    be who is numbered on the exhibit -- on the indictment?
```

1          MR. RAM:  I believe I have been designated to go

2     first for the defense.

3          MR. JOHNSON:  I think the order is going to go down

4     the numbers on the indictment.

5          THE COURT:  I see.

6          MR. MESEREAU:  Your Honor, if I may, can you use the

7     jury instructions in closing?

8          THE COURT:  Yes.  I'm glad you raised that point.

9     Thank you.

10          This is the way I think you should do that.

11     The parties are welcome to use the jury instructions in

12     closing.  I mean, any way you want.  You can use the whole

13     instruction, part of it.  I do tell the jury, you know, they

14     are all to be considered and they are all equally important and

15     you heard that language over and over.

16          But, if you want to emphasize one part of an

17     instruction in your argument, you can do that.  This is the

18     only -- this is an important requirement, though.

19          When you refer to the jury instruction, refer

20     to it, as like my grandmother used to say *in haec verba*, I

21     mean, she could hardly speak English, but she knew *in haec*

22     *verba*.

23          She was looking at me like I am for real.  She

24     didn't know *in haec verba*, but she could hardly speak English.

25     I mean, you have to use the exact words of the jury instruction

1  and that is especially true for all of them.

2              Lawyers like to talk about reasonable doubt,

3  and all of this kind of stuff, and that is very important, but

4  when you talk about reasonable doubt, you know, I remember

5  lawyers taking charts and doing graphs.  And reasonable doubt

6  is somewhere between 99.1, and 99.9, and the proof beyond

7  preponderance -- that can't be done.

8              You have to use the words of the reasonable

9  doubt instruction any way you want.  You can tell the jury as

10  many times and as many different ways as you want why there

11  should be reasonable doubt, why the jury shouldn't be firmly

12  convinced that the government has proven its case.

13              You can refer to, you know, obviously anything

14  that is in the record.  But don't draw war stories about

15  reasonable doubt and analogies because reasonable doubt is an

16  amorphous concept.

17              I think the jury instruction does the best

18  that can be done, unless somebody comes up with a better one

19  that defines reasonable doubt.

20              So -- and the jury will get a copy of the

21  instructions when they go back, not when you are making your

22  argument, but I will instruct the jury first, so when you make

23  the argument they will have heard me read the instructions.

24              I think that gives the jury some

25  understanding.  I think it helps the parties to know the legal

1  parameters, at least, generally.  I mean, they are not going to

2  remember everything I say, but you can certainly tell them when

3  you go back, look at this part of the instruction, look at

4  that, look at this.  This is important.

5             You have to prove all of these elements,

6  whatever you want to do.  Am I clear?

7             MR. RAM:  Yes, Your Honor.

8             MR. MESEREAU:  Your Honor, you cannot refer to the

9  civil burdens of proof, clear and convincing, you can't compare

10  civil burdens of proof?

11             THE COURT:  Don't do that.

12             MR. RAM:  The defendants conferred about whether --

13  I think at the start of the trial, you asked if we had a

14  preference on the indictment going back, and given the detailed

15  jury instructions that includes the charts?

16             THE COURT:  Let me just answer Mr. Mesereau's

17  question.

18             You can do that in this sense without getting,

19  you know, to the three types of instructions.  Convincing --

20  you know, preponderance and reasonable doubt.  I mean you can

21  certainly, in your argument, say to the jury, you know, maybe

22  as jurors you are convinced that it's more likely than not,

23  that what the government has offered or argued is probably what

24  happened, but that is not good enough, you know, that sort of

25  argument.

1        MR. MESEREAU:  Can you use a chart for that

2   suspicious, highly suspicious, and just show these are

3   different levels of conviction?

4        THE COURT:  I think you can, without getting into,

5   you know, in a civil case it's by preponderance, and a civil

6   fraud case, it's by convincing -- what is the term?

7        MR. MESEREAU:  Clear and convincing.

8        THE COURT:  What is it?

9        MR. MESEREAU:  Clear and convincing.

10       THE COURT:  And here, it's the high standard that

11  our system allows by proof beyond a reasonable doubt.  Don't do

12  that.

13           But if you want to use a chart to say this is

14  suspicious, this is maybe the government -- you could accept

15  the government by a slight margin, et cetera.

16              If you do it in a general way like that, I see

17  nothing wrong with it.

18       MR. MESEREAU:  I may ask the Court in advance if

19  these charts are acceptable tomorrow, I mean -- I have some

20  charts, I think I will ask for your approval before I use them

21  tomorrow.

22       THE COURT:  All right.

23       MR. MESEREAU:  Thank you, Your Honor.

24       MR. JOHNSON:  Your Honor.  I noticed that Count 27

25  -- I apologize for not bringing it up in the jury instruction

```
 1    -- doesn't have the date that is listed in the indictment, it's

 2    July 3rd, 2020.

 3              THE COURT:  I missed what you said.

 4              MR. JOHNSON:  I noticed in the instruction for

 5    Count 27, it doesn't have the date of July 3rd, 2020.

 6                   I think there is a consensus among the defense

 7    about the indictment not going back.

 8                   If the indictment does not go back, I would

 9    like to make sure that the instruction has the date.

10              THE COURT:  In this case, I think I am going to let

11    the indictment go back, because it would be very difficult for

12    the jury, I think, to correlate that.  The vertical can be very

13    simple.

14              MR. LITTRELL:  Just want to be clear, I think we're

15    in the agreement there should be no akas or aliases listed on

16    anything?

17              THE COURT:  Absolutely.

18              MR. JOHNSON:  Thank you, Your Honor.

19              MS. AHN:  Just to confirm, Your Honor, is Your Honor

20    using the redacted trial indictment that was filed and subject

21    to motions?

22              THE COURT:  I guess so.  I haven't thought about

23    that.  But I guess -- does everyone agree on that, right?

24              MS. AHN:  We filed it, I believe it was

25    opposition --
```

```
 1              THE COURT:  Meaning the akas were taken out?
 2              MS. AHN:  We have no objection to the akas being
 3   taken out, but the redacted trial indictment removed two
 4   paragraphs.
 5              THE COURT:  No, I ruled you could do that.
 6              MS. AHN:  Okay.
 7              MR. BOYLE:  Real quick, Your Honor.  We spoke with
 8   the defendants to the extent jury returns convictions, the
 9   defendants have requested that the jury be retained for
10   forfeiture and the government concurs in that request.
11                  So to the extent the Court is instructing the
12   jury tomorrow about timing, they may be required to stay --
13   well, they will be required to stay in the event there is a
14   conviction.
15              THE COURT:  Just remind me, I don't know what is
16   going to happen, if there is a conviction, then remind me.
17              MR. BOYLE:  Absolutely, Your Honor.
18              THE COURTROOM DEPUTY:  All rise.  This Honorable
19   Court is adjourned.
20              (The proceedings concluded at 5:48 p.m.)
21                              *  *  *
22
23
24
25
```

1                    **CERTIFICATE OF OFFICIAL REPORTER**

2

3     COUNTY OF LOS ANGELES   )
                              )
4     STATE OF CALIFORNIA     )

5

6             I, TERRI A. HOURIGAN, Federal Official Realtime

7     Court Reporter, in and for the United States District Court for

8     the Central District of California, do hereby certify that

9     pursuant to Section 753, Title 28, United States Code that the

10    foregoing is a true and correct transcript of the

11    stenographically reported proceedings held in the

12    above-entitled matter and that the transcript page format is in

13    conformance with the regulations of the judicial conference of

14    the United States.

15

16    Date:  June 24, 2021

17

18

19                         /s/ TERRI A. HOURIGAN

20    _____
                    TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
21                    Federal Official Court Reporter

22

23

24

25

**UNITED STATES DISTRICT COURT**

**$**

**$10,000** [1] - 24:19

**/**

**/s** [1] - 76:19

**1**

**1** [5] - 2:18, 8:15, 16:20, 16:24, 27:1
**1-N** [1] - 57:11
**10** [11] - 22:24, 25:6, 47:10, 55:14, 55:19, 58:24, 59:6, 59:23, 59:25, 66:5, 68:15
**10036** [1] - 2:16
**11** [1] - 58:24
**1114** [1] - 2:15
**115** [2] - 37:22, 46:13
**116** [2] - 37:22, 46:16
**117** [1] - 68:17
**118** [1] - 68:17
**119** [1] - 68:17
**12** [1] - 58:24
**120** [1] - 68:17
**1330** [1] - 2:21
**1349** [1] - 49:2
**18** [3] - 32:7, 53:8, 53:21
**18th** [1] - 17:5
**19** [1] - 58:24
**1900** [1] - 2:12
**1935** [1] - 3:11
**1956** [1] - 32:7
**1956(h)** [1] - 49:2
**1957** [5] - 53:2, 53:8, 53:21, 54:8, 63:15
**1:23** [2] - 1:13, 6:2
**1:25** [1] - 9:17

**2**

**2** [2] - 9:20, 15:1
**20** [3] - 54:20, 54:24, 58:24
**20-579-SVW** [1] - 1:7
**20036** [1] - 2:22
**2013** [1] - 19:20
**2020** [3] - 32:4, 74:2, 74:5
**2021** [3] - 1:13, 6:1, 76:16
**213** [1] - 1:25
**216** [1] - 3:11
**22** [2] - 28:11, 28:13
**23** [6] - 1:13, 6:1, 28:11, 28:13, 51:25, 52:1

**24** [3] - 28:12, 28:17, 76:16
**25** [1] - 28:20
**26** [4] - 16:20, 16:24, 18:12, 32:23
**27** [7] - 18:12, 32:21, 33:2, 33:12, 58:19, 73:24, 74:5
**28** [3] - 29:18, 33:8, 76:9
**29** [1] - 30:5
**2:25** [1] - 9:21
**2:30** [1] - 9:21

**3**

**31** [1] - 30:7
**312** [1] - 2:7
**32** [2] - 16:17, 33:8
**33** [1] - 30:22
**34** [2] - 31:21, 31:25
**350** [2] - 1:24, 3:4
**36** [4] - 32:19, 36:8, 36:10, 52:21
**37** [3] - 32:16, 32:17, 33:4
**38** [7] - 33:19, 33:21, 52:24, 52:25, 60:15, 60:18, 62:11
**3838** [2] - 1:23, 76:20
**39** [2] - 33:22, 34:9
**3900** [1] - 2:18
**3:00** [1] - 15:1
**3:22** [1] - 10:4
**3rd** [2] - 74:2, 74:5

**4**

**409** [1] - 3:15
**41** [1] - 34:10
**4311** [1] - 1:24

**5**

**5.8** [1] - 10:14
**50** [1] - 69:3
**54B** [1] - 46:8
**57G** [1] - 46:8
**57J** [1] - 46:8
**5:17** [1] - 67:25
**5:48** [1] - 75:20
**5th** [2] - 2:12, 3:7

**6**

**6** [1] - 1:12
**601** [1] - 3:7
**6150** [1] - 37:11
**633** [1] - 2:12
**651** [1] - 3:15

**7**

**7** [3] - 17:5, 17:10, 58:15
**720** [1] - 3:7
**753** [1] - 76:9

**8**

**8** [1] - 58:24
**8.147** [1] - 63:12
**8.150** [1] - 63:14
**8.17** [1] - 63:11
**894-2849** [1] - 1:25
**8:30** [1] - 69:16

**9**

**9** [4] - 7:9, 8:7, 58:24, 69:20
**90012** [2] - 1:24, 2:8
**90071** [2] - 2:13, 3:8
**90277** [1] - 3:16
**903** [1] - 3:4
**91208** [1] - 3:11
**92673** [1] - 3:5
**940s** [2] - 46:24, 47:18
**94105** [1] - 2:19
**99.1** [1] - 71:6
**99.9** [1] - 71:6

**A**

**a"** [1] - 29:24
**abet** [5] - 16:21, 31:9, 31:11, 31:12, 35:18
**abetting** [12] - 16:9, 16:24, 17:2, 17:9, 19:3, 19:4, 30:23, 31:1, 31:15, 49:19, 49:20, 50:1
**above-entitled** [1] - 76:12
**absolutely** [7] - 21:10, 43:1, 46:20, 49:22, 67:4, 74:17, 75:17
**accept** [2] - 48:10, 73:14
**acceptable** [1] - 73:19
**access** [4] - 7:8, 10:24, 12:25, 14:5
**accomplished** [1] - 39:12
**account** [4] - 50:2, 50:17, 57:18, 57:23
**accounts** [1] - 50:19

**accurately** [1] - 60:23
**acquittal** [2] - 36:16, 36:21
**action** [2] - 51:4, 62:24
**active** [1] - 50:12
**activity** [14] - 33:20, 34:4, 53:5, 54:1, 54:3, 54:6, 54:10, 54:11, 60:20, 61:1, 61:2, 61:24, 62:3, 63:4
**actual** [3] - 53:7, 53:20, 59:14
**add** [5] - 36:11, 36:14, 37:9, 62:23, 64:19
**addition** [1] - 21:20
**additional** [6] - 42:6, 44:13, 45:16, 47:5, 51:23, 52:4
**additionally** [1] - 50:3
**address** [18] - 19:18, 22:16, 26:5, 35:6, 40:23, 40:25, 41:3, 41:7, 42:2, 42:15, 46:3, 49:16, 52:3, 52:14, 54:19, 59:1, 60:15, 66:15
**addressed** [1] - 18:13
**addresses** [1] - 22:14
**adequately** [1] - 12:1
**adjectives** [1] - 59:3
**adjourned** [1] - 75:19
**adopt** [1] - 17:23
**advance** [2] - 43:2, 73:18
**advanced** [1] - 42:25
**advances** [1] - 65:7
**advised** [1] - 11:24
**affecting** [1] - 62:25
**afternoon** [2] - 7:17, 8:4
**AFTERNOON** [1] - 1:12
**Agent** [5] - 40:12, 43:1, 43:3, 66:4, 67:18
**agent** [6] - 25:11, 39:12, 40:10, 40:11, 41:9, 55:8
**aggravated** [4] - 31:7, 33:15, 34:8, 35:8
**ago** [5] - 11:22, 11:24, 12:6, 13:22,

69:12
**agree** [7] - 13:15, 39:5, 39:6, 49:20, 60:13, 66:12, 74:23
**agreed** [2] - 10:9, 56:2
**agreement** [5] - 31:12, 32:4, 65:16, 69:24, 74:15
**agreements** [1] - 23:13
**agrees** [1] - 48:16
**Ahn** [4] - 12:9, 52:14, 52:18, 60:23
**AHN** [49] - 2:5, 8:24, 9:5, 9:8, 9:10, 9:15, 10:7, 10:13, 10:17, 10:21, 11:4, 11:17, 13:17, 14:1, 14:7, 25:17, 52:19, 52:23, 53:2, 53:11, 53:14, 53:20, 54:5, 54:12, 54:17, 54:24, 55:15, 55:21, 56:1, 56:8, 56:10, 62:7, 62:14, 62:18, 62:21, 63:11, 63:14, 64:6, 67:25, 68:5, 68:18, 68:22, 68:25, 69:6, 69:8, 74:19, 74:24, 75:2, 75:6
**aid** [5] - 16:21, 31:8, 31:11, 35:18
**aiding** [12] - 16:8, 16:24, 17:1, 17:9, 19:3, 30:23, 31:1, 31:14, 49:19, 49:20, 50:1
**akas** [3] - 74:15, 75:1, 75:2
**al** [1] - 1:8
**aliases** [1] - 74:15
**alleged** [1] - 29:5
**alleges** [1] - 49:6
**allow** [1] - 47:7
**allowed** [1] - 9:6
**allows** [1] - 73:11
**almost** [1] - 12:6
**alone** [3] - 9:16, 40:6, 66:16
**Alot** [1] - 11:5
**Alpha** [1] - 3:11
**amended** [1] - 56:4
**amendment** [2] - 32:11, 61:21
**Amenecer** [1] - 3:4
**AMERICA** [1] - 1:5
**Americas** [1] - 2:15
**Amirah** [1] - 38:13
**amorphous** [2] -

18:3, 71:16
**amounts** [1] - 45:6
**analogies** [1] - 71:15
**analysis** [2] - 22:7, 28:1
**ANGELES** [4] - 1:14, 1:24, 6:1, 76:3
**Angeles** [3] - 2:8, 2:13, 3:8
**answer** [3] - 18:8, 24:7, 72:16
**Anton** [1] - 25:17
**anyway** [1] - 32:23
**apartment** [10] - 22:17, 23:16, 24:1, 24:2, 24:4, 26:5, 26:8, 38:15, 41:24, 42:1
**apologize** [2] - 12:22, 73:25
**Appearances** [1] - 3:1
**APPEARANCES** [1] - 2:1
**appearing** [1] - 25:12
**applicable** [1] - 14:13
**application** [3] - 35:3, 35:17, 43:24
**applications** [3] - 11:4, 11:9, 37:13
**applies** [3] - 32:20, 51:19, 56:19
**apply** [2] - 55:16, 56:21
**appreciate** [1] - 15:21
**appropriate** [3] - 49:21, 50:25, 52:6
**approval** [1] - 73:20
**argue** [4] - 18:10, 45:10, 58:5, 60:5
**argued** [1] - 72:23
**arguing** [2] - 24:8, 24:9
**argument** [28] - 15:16, 17:14, 21:19, 22:10, 24:11, 24:12, 27:17, 28:9, 36:18, 42:9, 42:24, 42:25, 45:12, 46:18, 48:4, 48:8, 48:9, 48:12, 49:25, 51:3, 52:11, 65:7, 69:23, 70:17, 71:22, 71:23, 72:21, 72:25
**arguments** [11] - 6:23, 7:2, 7:4, 7:5, 8:7, 21:17, 22:9, 54:16, 67:12, 67:13
**Arman** [7] - 23:4,

24:1, 24:2, 24:17, 38:3, 38:14, 40:20
**army** [1] - 7:22
**arrived** [2] - 57:23, 58:3
**Artacious** [1] - 38:2
**Arthur** [2] - 44:18, 45:22
**articles** [1] - 21:7
**ARTUR** [1] - 3:9
**Artur** [6] - 10:21, 13:5, 13:6, 15:15, 44:15, 59:10
**ASHWIN** [1] - 2:11
**assembly** [1] - 46:18
**Assistant** [1] - 2:6
**associated** [1] - 41:7
**assume** [1] - 14:25
**attached** [1] - 59:13
**attaching** [1] - 53:15
**Attorney** [8] - 2:12, 2:15, 2:18, 2:21, 3:4, 3:7, 3:10, 3:15
**ATTORNEY'S** [1] - 2:4
**Attorneys** [1] - 2:6
**authorities** [1] - 7:22
**Avakyan** [1] - 11:5
**Avenue** [2] - 2:15, 2:21
**avoid** [1] - 32:10
**aware** [2] - 13:7, 22:6
**AYVAZYAN** [3] - 1:8, 2:10, 3:9
**Ayvazyan** [32] - 10:21, 12:11, 13:5, 13:6, 15:14, 15:15, 18:13, 18:15, 19:11, 21:15, 21:16, 25:9, 33:7, 35:2, 36:7, 36:23, 41:8, 43:18, 44:14, 44:15, 44:25, 45:1, 45:22, 47:16, 48:2, 51:8, 51:14, 59:7, 59:10
**Ayvazyan's** [1] - 36:1

**B**

**bad** [1] - 69:15
**bags** [1] - 21:8
**bank** [21] - 30:13, 31:9, 31:15, 35:12, 49:22, 50:2, 53:17, 54:7, 57:14, 57:18, 60:24, 61:7, 61:8, 61:13, 61:15, 62:8, 62:9, 62:16, 62:17, 64:1
**banking** [3] - 57:12,

57:18, 58:6
**based** [7] - 10:16, 21:4, 24:18, 48:9, 55:1, 60:6, 68:16
**basic** [2] - 50:12, 69:12
**Beach** [1] - 3:16
**became** [1] - 13:7
**begin** [6] - 7:1, 7:8, 7:12, 8:7, 52:22, 69:20
**beginning** [1] - 32:3
**behalf** [4] - 18:21, 36:20, 36:22, 36:24
**belonging** [1] - 45:20
**belongings** [1] - 21:9
**benefit** [1] - 38:24
**best** [5] - 24:10, 31:6, 60:3, 65:14, 71:17
**better** [5] - 7:4, 13:14, 31:24, 48:7, 71:18
**between** [11] - 39:10, 40:13, 40:17, 47:21, 48:1, 56:2, 59:7, 65:16, 67:7, 67:19, 71:6
**beyond** [14] - 17:17, 20:6, 28:5, 30:14, 33:12, 39:24, 43:12, 45:13, 48:9, 48:13, 58:19, 71:6, 73:11
**BIENERT** [2] - 3:3, 3:6
**big** [2] - 21:21, 27:18
**bit** [1] - 22:15
**blanks** [1] - 13:3
**blind** [1] - 13:11
**blindness** [1] - 10:11
**border** [2] - 19:25, 20:9
**Border** [2] - 20:21, 21:5
**bought** [1] - 25:15
**box** [1] - 8:15
**boxes** [1] - 8:17
**boy** [1] - 46:8
**BOYLE** [2] - 75:7, 75:17
**break** [2] - 34:22, 68:6
**brief** [5] - 19:23, 21:20, 25:7, 47:7, 63:18
**briefly** [1] - 25:4
**briefs** [1] - 46:18
**bring** [2] - 10:9, 15:22
**bringing** [2] - 58:13,

73:25
**bucket** [1] - 42:7
**burdens** [2] - 72:9, 72:10
**BY** [7] - 2:5, 2:11, 2:14, 2:17, 3:3, 3:6, 3:14

**C**

**CALIFORNIA** [5] - 1:2, 1:14, 1:24, 6:1, 76:4
**California** [8] - 2:8, 2:13, 2:19, 3:5, 3:8, 3:11, 3:16, 76:8
**Calle** [2] - 3:4, 41:2
**CALLED** [1] - 4:4
**camera** [1] - 67:2
**cannot** [1] - 72:8
**Canoga** [12] - 22:16, 22:18, 23:16, 23:25, 26:5, 26:8, 37:11, 38:9, 40:23, 40:24, 41:6, 45:18
**capacity** [1] - 39:25
**card** [11] - 20:10, 20:11, 20:12, 20:23, 21:3, 21:4, 21:5, 21:10, 50:11, 50:20, 50:21
**cards** [1] - 50:20
**care** [1] - 20:18
**carried** [1] - 30:16
**CART** [1] - 9:10
**case** [49] - 6:13, 7:7, 8:10, 10:16, 11:25, 12:4, 13:9, 14:11, 14:12, 17:21, 19:19, 19:21, 19:22, 20:24, 20:8, 21:11, 22:25, 23:13, 26:1, 29:1, 30:4, 33:17, 34:16, 38:3, 38:21, 39:20, 43:5, 49:24, 51:17, 52:9, 55:5, 55:8, 55:11, 55:12, 55:17, 56:13, 58:12, 61:7, 62:2, 64:4, 64:9, 64:11, 66:10, 69:16, 71:12, 73:5, 73:6, 74:10
**Case** [1] - 1:7
**cases** [2] - 7:24, 52:7
**cashing** [1] - 24:19
**CATHERINE** [1] - 2:5
**CCRR** [1] - 1:23
**Cellebrite** [7] - 8:19, 9:1, 9:2, 9:11, 68:13, 68:16

**central** [2] - 19:8, 21:10
**CENTRAL** [1] - 1:2
**Central** [1] - 76:8
**certain** [1] - 47:22
**certainly** [4] - 35:4, 39:18, 72:2, 72:21
**certainty** [1] - 18:7
**CERTIFICATE** [1] - 76:1
**certify** [1] - 76:8
**cetera** [2] - 11:11, 73:15
**chance** [4] - 49:15, 55:25, 65:8, 69:18
**change** [1] - 32:6
**changing** [1] - 64:3
**charge** [4] - 16:20, 22:2, 29:9, 49:1
**charged** [17] - 29:4, 32:8, 33:8, 33:9, 33:20, 34:4, 36:3, 36:12, 43:8, 53:5, 56:13, 60:20, 61:3, 61:5, 62:10, 62:24, 63:4
**charges** [3] - 31:23, 32:23, 62:19
**chart** [5] - 29:20, 37:22, 38:1, 73:1, 73:13
**charts** [6] - 46:23, 71:5, 72:15, 73:19, 73:20
**check** [1] - 24:19
**checks** [3] - 8:16, 24:19, 45:20
**Cherokee** [2] - 20:1, 64:15
**CHRISTOPHER** [1] - 2:5
**Circuit** [6] - 17:18, 18:1, 18:9, 19:19, 30:1, 60:14
**circumstances** [2] - 11:15, 51:16
**circumstantial** [2] - 19:10, 57:5
**citations** [1] - 27:18
**cited** [2] - 19:23, 52:7
**citing** [1] - 33:24
**civil** [4] - 72:9, 72:10, 73:5
**claim** [1] - 21:9
**clarify** [3] - 15:22, 16:8, 33:4
**clarifying** [1] - 64:4
**clarity** [1] - 34:22
**clarity's** [1] - 28:7

**Clark** [2] - 65:1, 65:2
**clause** [1] - 63:1
**clear** [15] - 13:20, 24:14, 24:15, 24:16, 33:21, 34:5, 57:8, 57:21, 68:12, 69:1, 72:6, 72:9, 73:7, 73:9, 74:14
**clearer** [1] - 39:17
**clearly** [3] - 11:25, 67:6, 68:24
**Clemente** [1] - 3:5
**client** [1] - 35:15
**client's** [1] - 57:23
**clients** [1] - 36:20
**close** [1] - 19:11
**closing** [4] - 6:23, 27:17, 70:7, 70:12
**co** [6] - 18:19, 30:24, 57:1, 57:5, 57:18, 58:6
**co-counsel** [1] - 30:24
**co-defendant's** [1] - 57:18
**co-defendants** [4] - 18:19, 57:1, 57:5, 58:6
**Coast** [1] - 3:15
**Code** [1] - 76:9
**cohesive** [1] - 47:3
**collected** [1] - 52:10
**Collision** [3] - 26:23, 27:9, 40:18
**colloquy** [1] - 37:7
**comment** [4] - 10:6, 16:14, 28:4, 51:21
**commit** [3] - 61:8, 62:9, 62:15
**committed** [1] - 28:23
**committing** [1] - 33:8
**communications** [4] - 39:13, 40:6, 40:13, 65:22
**companies** [10] - 41:23, 42:1, 45:17, 45:18, 45:19, 45:20, 45:21, 45:24, 46:2
**company** [3] - 44:25, 45:2, 57:13
**compare** [1] - 72:9
**compelled** [1] - 49:11
**complete** [2] - 6:14, 49:5
**concealment** [5] - 32:1, 32:12, 32:23, 32:25, 33:9

**concept** [3] - 18:3, 51:18, 71:16
**concern** [3] - 14:16, 34:23, 62:22
**concerned** [2] - 33:18, 49:9
**concluded** [1] - 75:20
**conclusion** [1] - 17:24
**conclusions** [1] - 17:22
**concurs** [1] - 75:10
**conduct** [2] - 32:12, 33:13
**conference** [1] - 76:13
**conferred** [1] - 72:12
**confession** [1] - 55:7
**confessions** [2] - 55:2, 55:3
**confirm** [1] - 74:19
**conformance** [1] - 76:13
**confusing** [3] - 16:12, 33:6, 34:10
**confusion** [2] - 29:1, 49:5
**connected** [12] - 24:3, 24:18, 24:23, 24:24, 26:23, 27:5, 40:18, 40:20, 40:21, 40:24, 41:2, 57:9
**Connecticut** [1] - 2:21
**connection** [6] - 27:7, 35:11, 41:4, 43:12, 45:7, 45:9
**connections** [2] - 39:10, 40:17
**connects** [1] - 27:19
**consensus** [1] - 74:6
**consider** [9] - 6:15, 14:15, 14:17, 21:17, 28:1, 29:13, 52:11, 56:12, 66:2
**considered** [5] - 23:15, 26:11, 55:5, 55:13, 70:14
**consistent** [3] - 43:3, 48:4, 54:1
**conspiracies** [14] - 21:22, 28:11, 28:14, 28:18, 29:3, 41:19, 42:25, 43:2, 47:22, 48:11, 48:16, 49:1, 49:6, 67:14
**conspiracy** [33] - 14:18, 16:21, 19:4, 21:19, 22:13, 28:5,

28:14, 28:25, 29:3, 29:4, 29:5, 29:9, 29:16, 31:2, 31:13, 40:7, 42:19, 44:7, 44:15, 48:3, 48:5, 49:2, 49:21, 51:5, 54:7, 57:6, 61:8, 62:9, 62:13, 62:15, 64:1, 67:7
**constituted** [1] - 32:12
**construction** [8] - 41:23, 45:17, 45:18, 45:19, 45:20, 45:21, 45:24, 60:13
**constructive** [2] - 32:11, 61:21
**construed** [1] - 19:3
**consult** [1] - 6:20
**Cont** [1] - 3:1
**contacts** [2] - 39:13, 67:19
**contained** [4] - 8:25, 9:1, 21:8, 62:10
**contains** [1] - 59:7
**contents** [4] - 20:13, 20:15, 21:6, 21:8
**context** [1] - 31:16
**contracting** [1] - 41:23
**contrast** [1] - 20:16
**controlled** [1] - 44:25
**controls** [1] - 45:2
**conversant** [1] - 26:4
**conviction** [3] - 73:3, 75:14, 75:16
**convictions** [1] - 75:8
**convinced** [3] - 18:6, 71:12, 72:22
**convincing** [5] - 72:9, 72:19, 73:6, 73:7, 73:9
**copy** [5] - 8:8, 8:12, 10:9, 69:17, 71:20
**correct** [12] - 12:17, 14:2, 14:7, 19:13, 26:6, 26:7, 26:10, 31:10, 38:16, 52:12, 62:8, 68:17, 76:10
**correction** [1] - 36:15
**corrections** [1] - 30:8
**correlate** [1] - 74:12
**COUNSEL** [1] - 2:1
**counsel** [17] - 11:18, 13:8, 13:20, 14:2, 15:8, 15:15, 16:6,

18:13, 18:15, 18:25, 30:24, 36:6, 36:7, 37:4, 50:5, 52:5, 56:3
**Count** [5] - 8:15, 16:20, 16:24, 17:5, 17:10, 18:12, 32:21, 32:23, 33:2, 33:12, 58:15, 58:19, 58:23, 73:24, 74:5
**count** [8] - 8:16, 17:2, 30:8, 30:15, 30:16, 33:7, 62:17, 63:22
**counts** [6] - 14:13, 29:19, 34:20, 36:2, 49:21, 49:22
**COUNTY** [1] - 76:3
**couple** [2] - 41:5, 68:10
**course** [3] - 17:23, 20:23, 68:5
**Court** [29] - 6:20, 12:7, 14:19, 15:10, 15:25, 16:11, 17:17, 19:1, 19:15, 20:10, 20:17, 36:17, 49:3, 54:24, 57:11, 58:15, 59:25, 60:15, 61:20, 63:6, 67:20, 68:9, 73:18, 75:11, 75:19, 76:7, 76:20
**COURT** [242] - 1:1, 1:23, 6:11, 7:16, 9:3, 9:6, 9:9, 9:12, 9:16, 9:19, 9:22, 10:3, 10:12, 10:15, 10:18, 11:2, 11:12, 11:18, 12:14, 12:20, 12:23, 13:13, 13:18, 14:3, 14:8, 14:14, 14:21, 15:8, 16:1, 16:4, 16:10, 16:13, 16:18, 17:12, 17:25, 18:14, 18:20, 18:23, 19:2, 19:6, 19:16, 19:21, 20:25, 21:12, 21:14, 22:6, 22:16, 22:20, 22:22, 23:7, 23:12, 23:23, 23:25, 24:4, 24:7, 24:10, 24:15, 24:20, 24:23, 25:1, 25:18, 25:22, 25:24, 26:8, 26:11, 26:16, 26:19, 26:21, 27:2, 27:7, 27:12, 27:20, 27:22, 27:24, 28:8, 28:13, 28:16, 28:22, 29:5, 29:8, 29:11, 29:13, 29:17, 29:25, 30:6, 30:17, 30:21,

31:1, 31:8, 31:14, 31:18, 31:20, 32:15, 32:18, 33:14, 33:23, 33:25, 34:6, 34:12, 34:14, 35:20, 35:24, 36:4, 36:10, 36:19, 36:25, 37:14, 37:16, 37:25, 38:5, 38:8, 38:14, 38:19, 38:23, 39:6, 39:17, 39:24, 40:8, 40:11, 41:1, 41:4, 41:7, 41:15, 41:20, 42:4, 42:9, 42:15, 42:21, 43:10, 43:17, 43:20, 44:6, 44:16, 44:19, 44:21, 45:1, 45:5, 45:10, 45:12, 46:4, 46:7, 46:9, 46:11, 46:19, 46:21, 47:4, 47:7, 47:24, 48:6, 48:18, 48:21, 48:24, 49:13, 49:23, 50:6, 50:16, 50:23, 51:1, 51:7, 51:20, 52:2, 52:11, 52:16, 52:18, 52:21, 52:25, 53:9, 53:12, 53:18, 54:3, 54:8, 54:13, 54:15, 54:22, 55:4, 55:18, 55:22, 55:24, 56:6, 56:9, 56:14, 56:22, 57:3, 57:22, 58:1, 58:25, 59:21, 59:24, 60:9, 60:17, 61:4, 61:10, 61:12, 62:5, 62:12, 62:15, 62:20, 63:9, 63:12, 63:16, 64:5, 64:7, 64:16, 64:20, 64:24, 65:3, 65:11, 65:13, 65:19, 66:1, 66:11, 66:17, 66:19, 66:22, 66:25, 67:4, 67:10, 67:15, 67:22, 68:1, 68:6, 68:10, 68:19, 68:23, 69:1, 69:7, 69:9, 70:5, 70:8, 72:11, 72:16, 73:4, 74:3, 74:10, 74:17, 74:22, 75:1, 75:5, 75:15
**Court's** [5] - 15:21, 34:20, 54:19, 58:14, 58:18
**Courthouse** [1] - 2:7
**COURTROOM** [8] - 6:5, 6:7, 6:9, 7:15, 9:18, 15:6, 68:8, 75:18
**courtroom** [4] - 6:6,

6:8, 6:10, 7:14
  **cousin** [2] - 43:12, 43:13
  **covered** [1] - 28:11
  **cR** [1] - 1:7
  **credibility** [1] - 22:5
  **credit** [1] - 50:21
  **credited** [1] - 43:24
  **crew** [1] - 65:24
  **crime** [1] - 28:23
  **crimes** [1] - 56:13
  **criminal** [3] - 22:1, 54:10, 54:11
  **criminally** [1] - 53:25
  **criticism** [1] - 39:19
  **CRR** [1] - 76:20
  **Cruz** [1] - 14:23
  **CSR** [2] - 1:23, 76:20
  **custody** [1] - 20:19
  **customs** [2] - 20:8, 20:21
  **Customs** [1] - 21:5
  **cut** [2] - 59:9, 59:18

## D

  **D.C** [1] - 2:22
  **Dadyan** [38] - 16:23, 17:4, 18:25, 23:1, 32:20, 33:2, 33:7, 33:11, 36:8, 43:11, 44:3, 44:8, 45:13, 47:11, 47:12, 47:17, 56:24, 57:1, 57:9, 57:10, 57:13, 57:15, 57:19, 58:5, 58:7, 58:9, 58:12, 59:8, 59:11, 59:18, 60:1, 60:4, 66:5, 66:7, 66:10
  **DADYAN** [1] - 3:13
  **Dadyan's** [2] - 16:5, 59:9
  **data** [1] - 8:20
  **Date** [1] - 76:16
  **date** [3] - 74:1, 74:5, 74:9
  **DAY** [1] - 1:12
  **deals** [1] - 18:2
  **dealt** [1] - 43:11
  **debit** [3] - 20:10, 21:3, 21:10
  **deem** [1] - 36:19
  **defendant** [22] - 8:16, 20:4, 22:1, 29:21, 30:16, 34:17, 38:4, 49:11, 50:4, 50:9, 52:5, 53:15, 53:24, 54:9, 55:6, 56:10, 57:10, 60:24,

61:12, 61:14
  **DEFENDANT** [4] - 2:10, 3:2, 3:9, 3:13
  **defendant's** [6] - 20:3, 20:18, 54:25, 55:3, 56:18, 57:18
  **defendants** [22] - 14:12, 14:15, 16:23, 18:19, 40:14, 43:4, 43:6, 43:8, 46:15, 46:24, 49:8, 49:10, 53:13, 57:1, 57:5, 58:6, 63:19, 65:16, 67:7, 72:12, 75:8, 75:9
  **Defendants** [1] - 1:9
  **defense** [6] - 19:8, 21:22, 22:2, 70:2, 74:6
  **deficiency** [1] - 58:13
  **defined** [3] - 33:3, 65:23
  **defines** [1] - 71:19
  **defraud** [1] - 29:22
  **deliberate** [2] - 10:13, 10:15
  **depositing** [1] - 24:18
  **DEPUTY** [8] - 6:5, 6:7, 6:9, 7:15, 9:18, 15:6, 68:8, 75:18
  **derived** [4] - 53:25, 54:1, 54:6, 61:7
  **descriptions** [1] - 59:4
  **deserve** [1] - 10:5
  **designated** [1] - 70:1
  **destroyed** [1] - 52:10
  **destroys** [1] - 64:13
  **detail** [1] - 65:19
  **detailed** [1] - 72:14
  **determine** [2] - 48:7, 48:13
  **determining** [1] - 30:5
  **develop** [1] - 57:3
  **deviates** [1] - 53:6
  **device** [1] - 7:24
  **devised** [1] - 29:22
  **different** [18] - 13:25, 34:20, 39:10, 39:13, 40:13, 41:5, 41:18, 41:22, 44:12, 46:24, 47:1, 47:2, 52:7, 53:10, 54:20, 60:22, 71:10, 73:3
  **difficult** [1] - 74:11
  **direct** [1] - 51:4
  **directed** [1] - 68:13

  **direction** [1] - 23:18
  **dirty** [2] - 61:2, 61:15
  **disagree** [3] - 58:17, 58:20, 64:6
  **discovery** [3] - 12:3, 13:9, 14:2
  **discussed** [2] - 8:2, 67:18
  **discussing** [1] - 12:12
  **discussion** [1] - 44:23
  **discussions** [1] - 21:18
  **dispute** [3] - 61:9, 61:16, 61:18
  **disputes** [1] - 63:23
  **DISTRICT** [3] - 1:1, 1:2, 1:3
  **District** [2] - 76:7, 76:8
  **DIVISION** [1] - 1:2
  **document** [3] - 8:21, 20:24, 41:17
  **documentation** [1] - 46:17
  **documented** [1] - 47:23
  **documenting** [1] - 21:6
  **documents** [1] - 25:24
  **done** [3] - 32:16, 71:7, 71:18
  **dot** [3] - 30:13
  **doubt** [15] - 17:17, 18:2, 20:7, 30:14, 58:20, 71:2, 71:4, 71:5, 71:9, 71:11, 71:15, 71:19, 72:20, 73:11
  **doubtful** [1] - 22:5
  **down** [4] - 26:12, 33:5, 43:21, 70:3
  **draw** [1] - 71:14
  **drill** [1] - 69:12
  **driver's** [3] - 11:7, 11:10, 20:7
  **drop** [1] - 33:6
  **drug** [1] - 19:24
  **drugs** [3] - 19:25, 20:6, 20:7
  **due** [1] - 64:21

## E

  **e-mail** [2] - 15:9, 65:22
  **e-mailed** [1] - 16:2
  **early** [1] - 6:25

  **edit** [4] - 32:15, 36:9, 36:11, 49:18
  **edited** [1] - 49:23
  **edits** [4] - 32:2, 49:17, 51:22, 69:10
  **Edward** [6] - 23:21, 26:25, 27:6, 40:15, 40:18, 65:24
  **efforts** [1] - 59:8
  **EIDL** [8] - 11:9, 32:14, 33:13, 37:12, 45:24, 46:15, 50:18, 61:25
  **eight** [4] - 43:4, 46:14, 65:16, 67:7
  **either** [5] - 12:14, 17:22, 23:15, 43:9, 63:7
  **electronic** [1] - 51:16
  **element** [8] - 36:12, 53:3, 53:18, 54:18, 62:11, 62:13, 62:22, 62:23
  **elements** [5] - 30:11, 30:14, 32:25, 33:1, 72:5
  **email** [1] - 14:20
  **emails** [1] - 39:14
  **emphasis** [1] - 29:6
  **emphasize** [1] - 70:16
  **end** [1] - 64:16
  **English** [2] - 70:21, 70:24
  **enter** [1] - 40:7
  **entered** [1] - 17:4
  **ENTERED** [1] - 5:4
  **enters** [3] - 6:6, 6:8, 6:10
  **entire** [1] - 27:17
  **entirely** [2] - 19:10, 21:9
  **entities** [1] - 45:6
  **entitled** [3] - 22:1, 58:4, 76:12
  **entity** [1] - 45:9
  **equally** [1] - 70:14
  **equation** [1] - 23:3
  **equivalent** [1] - 7:23
  **especially** [1] - 71:1
  **essential** [1] - 46:3
  **essentially** [3] - 38:18, 65:24, 67:11
  **establish** [3] - 20:6, 42:18, 62:23
  **established** [3] - 27:7, 40:17, 68:4
  **estate** [1] - 25:9
  **estimated** [2] - 6:22, 7:3

  **et** [3] - 1:8, 11:11, 73:15
  **event** [1] - 75:13
  **evidence** [69] - 6:13, 6:14, 6:18, 8:24, 9:6, 10:20, 12:9, 13:5, 17:21, 18:5, 19:9, 19:14, 19:18, 20:22, 21:11, 22:3, 22:4, 23:14, 23:17, 24:20, 24:21, 25:20, 26:12, 37:5, 37:10, 37:11, 38:21, 39:1, 39:4, 42:6, 43:10, 43:22, 43:23, 44:13, 44:17, 45:23, 47:8, 48:7, 48:16, 50:5, 50:7, 50:8, 50:10, 50:12, 51:4, 52:4, 52:10, 54:25, 56:12, 56:24, 56:25, 57:5, 57:9, 58:3, 58:8, 58:19, 58:22, 58:23, 59:4, 59:14, 59:17, 59:20, 60:2, 60:8, 61:19, 64:10, 64:12, 65:15
  **exact** [1] - 70:25
  **exactly** [1] - 53:14
  **examiner** [1] - 9:10
  **example** [10] - 22:21, 31:25, 32:11, 33:20, 35:2, 41:5, 43:6, 43:11, 47:9, 66:6
  **examples** [2] - 46:23, 47:2
  **except** [1] - 37:7
  **exculpatory** [3] - 20:13, 20:14, 64:12
  **execute** [1] - 51:6
  **executing** [1] - 20:17
  **execution** [1] - 31:11
  **executions** [1] - 31:19
  **exhibit** [9] - 8:20, 15:10, 27:14, 27:16, 27:18, 40:8, 59:21, 59:22, 69:25
  **Exhibit** [14] - 22:24, 25:6, 37:22, 46:13, 46:16, 55:14, 55:19, 57:11, 59:6, 59:23, 59:25, 66:4, 68:15, 69:3
  **EXHIBIT** [2] - 5:1, 5:3
  **Exhibits** [1] - 47:10
  **exhibits** [7] - 8:25, 9:1, 27:11, 37:23, 46:6, 58:9, 68:13
  **EXHIBITS** [1] - 5:4
  **exists** [1] - 22:11

exits [1] - 7:14
explain [2] - 13:19, 34:14
explainable [1] - 19:10
explains [1] - 47:9
extensive [1] - 59:7
extent [2] - 75:8, 75:11

## F

fact [17] - 32:16, 45:8, 46:3, 47:18, 50:25, 51:9, 54:6, 56:12, 59:15, 59:17, 60:5, 61:3, 61:7, 61:9, 61:15, 62:8, 67:8
facts [6] - 27:13, 30:4, 33:17, 34:16, 42:18, 55:16
factual [1] - 64:14
factually [1] - 63:20
fail [1] - 13:10
failed [4] - 11:15, 20:23, 21:2, 36:16
fails [1] - 64:13
false [3] - 25:25, 43:24, 44:5
familiar [1] - 17:25
family [1] - 41:10
far [4] - 12:21, 18:17, 39:7, 41:15
fast [2] - 33:5, 39:23
fatal [2] - 32:11, 61:21
FBI [1] - 20:17
featured [1] - 59:20
FEDERAL [1] - 1:23
Federal [2] - 76:6, 76:20
felony [1] - 35:12
FENTON [50] - 2:5, 26:14, 37:10, 37:15, 37:21, 38:4, 38:7, 38:13, 38:17, 38:22, 39:5, 42:17, 43:1, 43:15, 43:18, 44:3, 44:13, 44:17, 44:20, 44:24, 45:3, 45:8, 45:11, 45:16, 46:5, 46:8, 46:10, 46:12, 46:20, 46:22, 47:5, 47:25, 48:15, 48:19, 48:23, 48:25, 49:18, 49:24, 50:8, 50:18, 50:24, 51:23, 52:3, 52:13, 52:17, 59:6, 59:22, 66:23, 67:5, 67:11

Fenton [2] - 40:22, 59:3
few [1] - 18:4
filed [3] - 15:23, 74:20, 74:24
fill [1] - 13:3
final [11] - 33:6, 46:12, 48:20, 48:21, 48:22, 48:23, 48:24, 48:25
finalize [1] - 15:4
finally [1] - 56:17
financial [1] - 46:14
fingerprint [2] - 20:23, 21:2
fingerprints [1] - 21:4
finish [4] - 12:23, 27:22, 54:15, 55:24
finishes [1] - 49:14
firmly [2] - 18:6, 71:11
first [19] - 7:17, 8:8, 12:1, 14:5, 22:9, 28:23, 29:21, 30:9, 30:15, 32:2, 32:3, 34:16, 37:2, 40:16, 42:20, 52:24, 56:15, 70:2, 71:22
FIRST [1] - 1:24
fit [2] - 50:7, 51:2
fits [1] - 19:12
five [2] - 68:1, 68:6
fix [1] - 61:21
flagged [1] - 60:16
flow [2] - 39:3, 67:8
flushes [1] - 22:25
focus [2] - 26:21, 51:7
follow [4] - 6:17, 34:11, 47:4, 63:18
follow-up [1] - 63:18
followed [1] - 67:8
following [1] - 20:17
footage [1] - 24:6
FOR [5] - 2:3, 2:10, 3:2, 3:9, 3:13
foregoing [1] - 76:10
foreseeable [1] - 17:5
forfeiture [1] - 75:10
forgetting [1] - 39:3
form [3] - 8:12, 8:13, 14:16
format [1] - 76:12
forms [2] - 8:15, 46:25
forth [2] - 10:5, 62:11
forward [1] - 58:13
foundation [2] -

19:14, 22:3
Francisco [1] - 2:19
FRASER [15] - 3:6, 18:21, 18:24, 19:5, 19:7, 19:17, 19:22, 21:2, 21:13, 36:1, 36:5, 36:24, 51:4, 51:12, 64:9
Fraser [1] - 18:21
fraud [40] - 29:19, 30:13, 31:9, 31:15, 31:16, 35:12, 46:18, 49:22, 50:2, 53:17, 54:7, 59:18, 60:24, 60:25, 61:7, 61:8, 61:13, 61:16, 62:9, 62:10, 62:16, 62:17, 63:21, 64:1, 73:6
fraudulent [1] - 37:12
friends [1] - 25:12, 43:9
funds [2] - 26:25, 67:8
furtherance [1] - 51:5

## G

general [1] - 73:16
generally [1] - 72:1
gist [1] - 65:17
given [9] - 29:1, 30:4, 33:17, 34:16, 49:5, 55:6, 61:18, 69:18, 72:14
glad [1] - 70:8
Glendale [1] - 3:11
glitches [1] - 7:11
Government [6] - 22:24, 37:22, 47:10, 59:6, 59:22, 66:4
government [43] - 8:18, 8:25, 10:8, 10:10, 11:21, 12:15, 13:8, 13:15, 15:23, 16:8, 16:25, 17:11, 20:2, 20:12, 20:22, 21:2, 22:25, 25:5, 26:15, 30:13, 35:10, 37:1, 48:16, 49:5, 53:23, 56:3, 56:25, 57:11, 58:4, 58:22, 58:25, 60:5, 63:23, 64:12, 65:8, 66:23, 68:10, 69:21, 71:12, 72:23, 73:14, 73:15, 75:10
government's [9] - 14:1, 17:3, 19:9,

21:11, 46:6, 55:15, 56:4, 60:13, 63:7
grab [1] - 56:8
grandmother [1] - 70:20
granted [2] - 48:11, 67:22
graphs [1] - 71:5
great [1] - 20:16
Grigor [1] - 66:8
Grigoryan [26] - 23:20, 25:3, 25:9, 26:9, 26:23, 27:1, 27:4, 35:6, 37:5, 37:6, 37:11, 38:2, 38:4, 38:10, 40:16, 40:19, 40:21, 40:24, 41:2, 41:10, 42:2, 46:19, 47:12, 65:25, 67:19
Grigoryan's [5] - 22:18, 25:25, 37:23, 41:24, 65:24
group [7] - 23:1, 23:2, 45:25, 47:2, 47:12, 66:5, 66:10
groupings [1] - 47:1
groups [6] - 39:11, 39:16, 40:13, 42:19, 45:25, 47:21
guess [4] - 60:4, 60:11, 74:22, 74:23
guided [1] - 6:19
guilt [2] - 17:23, 56:13
guilty [10] - 8:15, 8:16, 16:23, 17:9, 30:12, 35:8, 35:15, 49:8, 49:10, 49:11
Gusto [1] - 46:25
guy [1] - 23:16, 38:20

## H

haec [3] - 70:20, 70:21, 70:24
half [2] - 43:25, 44:22
Halum [1] - 38:13
hand [1] - 7:20
handled [1] - 20:22
handwritten [1] - 11:9
hang [1] - 68:1
haphazardly [1] - 20:22
happy [1] - 27:16
hard [1] - 69:14
hardly [2] - 70:21, 70:24

Hayrapetyan [12] - 23:4, 23:5, 23:9, 23:24, 24:1, 24:17, 24:18, 38:17, 40:20, 40:21, 40:22
Hayrapetyans [3] - 40:16, 43:7, 65:25
head [1] - 25:14
healthcare [1] - 60:25
hear [14] - 7:5, 8:6, 11:18, 12:14, 16:13, 21:20, 24:11, 24:12, 36:25, 37:6, 42:21, 42:23, 49:13, 56:15
heard [13] - 20:10, 10:17, 24:12, 33:17, 39:11, 47:10, 54:14, 56:10, 56:25, 61:19, 62:3, 70:15, 71:23
held [1] - 76:11
help [1] - 21:6
helpful [1] - 19:20
helps [1] - 71:25
hereby [1] - 76:8
high [2] - 35:21, 73:10
highlight [1] - 66:15
highly [1] - 73:2
Highway [1] - 3:15
himself [2] - 23:6, 23:20, 45:13
hits [3] - 39:9, 40:3, 40:13
hold [3] - 17:12, 52:25, 63:9
home [2] - 6:25, 25:25
Honor [112] - 8:24, 9:5, 9:15, 9:18, 10:7, 10:10, 10:11, 10:17, 10:21, 11:17, 11:19, 13:4, 14:7, 14:9, 15:20, 18:11, 19:5, 21:13, 21:21, 21:24, 22:23, 24:21, 26:22, 27:10, 27:18, 28:6, 28:20, 30:3, 30:8, 30:22, 31:4, 31:17, 31:21, 32:2, 32:10, 32:19, 33:4, 33:15, 35:11, 35:21, 35:23, 35:25, 36:16, 36:22, 37:21, 39:5, 39:9, 39:16, 39:23, 40:10, 42:11, 42:17, 44:14, 46:20, 47:25, 48:15, 49:4, 49:9, 52:13, 52:19, 52:23, 52:24, 53:3, 53:7, 53:11,

53:21, 54:2, 54:5, 54:7, 54:12, 54:14, 54:17, 54:21, 55:15, 55:17, 55:21, 56:1, 56:8, 56:23, 59:6, 62:7, 62:19, 63:5, 63:11, 63:14, 64:6, 64:18, 65:12, 65:14, 65:23, 66:3, 66:14, 66:16, 67:3, 67:5, 67:25, 68:5, 68:18, 68:22, 68:25, 69:6, 69:8, 70:6, 72:7, 72:8, 73:23, 73:24, 74:18, 74:19, 75:7, 75:17

**Honor's** [1] - 51:25
**HONORABLE** [1] - 1:3
**Honorable** [2] - 68:8, 75:18
**hooking** [1] - 62:1
**hope** [1] - 7:6
**hopefully** [2] - 8:4, 21:20
**hour** [2] - 15:1, 15:23
**HOURIGAN** [4] - 1:23, 76:6, 76:19, 76:20
**house** [5] - 25:14, 25:19, 51:9, 51:10, 51:13
**hyphenated** [1] - 7:6

### I

**identical** [1] - 8:23
**identify** [1] - 35:9
**identifying** [1] - 35:4
**identities** [2] - 26:1, 34:19
**identity** [5] - 31:7, 33:16, 34:8, 57:7, 66:10
**idiot** [1] - 44:22
**ignorance** [1] - 10:13
**images** [2] - 11:4, 13:7
**important** [6] - 41:18, 41:20, 70:14, 70:18, 71:3, 72:4
**impossible** [1] - 21:3
**inapplicable** [1] - 31:15
**inappropriate** [1] - 50:1
**include** [5] - 10:8, 10:9, 17:20, 56:5, 64:23
**included** [2] - 51:25, 56:3

**includes** [1] - 72:15
**including** [3] - 11:8, 25:5, 46:19
**inconsistent** [1] - 22:4
**incorrect** [1] - 53:19
**INDEX** [2] - 4:1, 5:1
**indicate** [1] - 22:6
**indictment** [21] - 14:10, 14:11, 32:8, 33:21, 34:4, 36:12, 53:5, 60:21, 62:10, 62:24, 63:4, 63:22, 69:25, 70:4, 72:14, 74:1, 74:7, 74:8, 74:11, 74:20, 75:3
**individuals** [3] - 11:8, 23:1, 39:10
**indulgence** [2] - 6:12, 7:13
**inferable** [1] - 44:9
**inference** [3] - 39:3, 58:4, 58:6
**information** [7] - 12:3, 31:24, 35:4, 47:17, 47:22, 58:15, 66:16
**innocence** [1] - 17:23
**innocent** [1] - 63:20
**inquire** [1] - 11:15
**inside** [1] - 19:25
**insistence** [1] - 59:9
**insofar** [1] - 36:2
**inspection** [1] - 20:4
**instance** [2] - 9:15, 52:7
**instruct** [6] - 6:18, 8:8, 49:3, 49:4, 49:9, 71:22
**instructed** [1] - 67:20
**instructing** [1] - 75:11
**instruction** [77] - 10:8, 10:11, 10:13, 10:16, 10:19, 12:5, 15:16, 16:9, 16:12, 16:22, 17:18, 17:20, 18:1, 18:3, 18:6, 18:9, 19:8, 19:12, 19:17, 19:18, 19:23, 21:19, 21:22, 22:1, 22:13, 28:6, 28:14, 28:19, 28:21, 29:3, 29:25, 30:23, 31:5, 31:15, 33:25, 34:10, 34:18, 34:24, 34:25, 36:8,

49:19, 49:21, 50:4, 50:25, 52:4, 52:20, 53:6, 53:9, 53:12, 54:2, 54:20, 54:25, 55:5, 55:6, 55:8, 55:14, 55:20, 56:2, 56:21, 60:14, 60:16, 63:7, 63:8, 63:10, 64:14, 70:13, 70:17, 70:19, 70:25, 71:9, 71:17, 72:3, 73:25, 74:4, 74:9
**instructions** [41] - 6:17, 6:21, 7:2, 7:11, 7:19, 8:4, 8:9, 8:11, 9:22, 9:23, 10:1, 10:4, 11:10, 11:22, 11:23, 12:7, 14:20, 14:22, 14:23, 15:9, 15:19, 15:24, 16:1, 16:15, 18:12, 28:4, 34:15, 52:1, 52:15, 52:22, 53:10, 55:1, 56:4, 68:13, 69:18, 70:7, 70:11, 71:21, 71:23, 72:15, 72:19
**insufficient** [1] - 22:4
**intend** [1] - 39:18
**intends** [1] - 10:11
**intent** [1] - 50:14
**Internet** [2] - 7:8, 26:4
**interruption** [1] - 47:7
**investigating** [1] - 55:8
**investigation** [2] - 24:22, 67:12
**involved** [9] - 17:6, 34:3, 44:11, 53:4, 57:6, 58:10, 60:7, 60:19, 61:23
**IP** [6] - 22:14, 22:16, 26:5, 35:6, 42:2, 66:15
**iron** [1] - 65:5
**ironing** [1] - 7:11
**IRS** [1] - 46:24
**issue** [8] - 29:2, 30:24, 33:12, 51:17, 60:15, 61:16, 61:18, 61:19
**issues** [3] - 8:1, 16:3
**item** [2] - 20:19, 21:11
**items** [1] - 20:20
**itself** [3] - 18:2, 31:12, 31:13
**Iuliia** [2] - 23:6, 45:4

### J

**jail** [5] - 50:10, 50:22, 56:11, 56:12, 56:19
**Jeep** [6] - 19:25, 20:3, 20:4, 20:5, 52:9, 64:14
**JENNIFER** [1] - 3:10
**Jewel** [1] - 10:19
**Jewell** [3] - 10:16, 15:16, 15:24
**JOHN** [1] - 3:3
**Johnson** [3] - 56:16, 59:19, 59:24
**JOHNSON** [25] - 2:11, 2:14, 2:17, 2:20, 3:14, 3:14, 16:7, 16:11, 16:17, 16:20, 17:16, 18:11, 18:18, 36:6, 36:11, 36:15, 56:23, 57:8, 57:25, 58:2, 59:25, 70:3, 73:24, 74:4, 74:18
**join** [2] - 18:18, 18:24
**joins** [1] - 36:1
**joint** [2] - 47:20, 48:1
**JUDGE** [1] - 1:3
**Judge** [1] - 6:8
**judges** [1] - 8:9
**judgment** [1] - 36:16
**judicial** [1] - 76:13
**July** [2] - 74:2, 74:5
**jump** [1] - 28:20
**JUNE** [2] - 1:13, 6:1
**June** [1] - 76:16
**juror** [1] - 35:1
**jurors** [1] - 72:22
**jury** [52] - 7:14, 7:19, 8:3, 8:8, 8:9, 8:16, 11:22, 12:5, 12:10, 14:10, 14:15, 14:16, 14:22, 15:9, 16:23, 17:21, 17:23, 18:1, 18:4, 22:1, 43:24, 48:10, 48:13, 49:3, 49:4, 49:7, 50:14, 51:25, 52:15, 58:13, 59:20, 62:2, 63:2, 65:4, 70:7, 70:11, 70:13, 70:19, 70:25, 71:9, 71:11, 71:17, 71:20, 71:22, 71:24, 72:15, 72:21, 73:25, 74:12, 75:8, 75:9, 75:12
**Jury** [2] - 6:6, 6:10
**Justin** [2] - 27:10, 67:5
**juxtapose** [1] - 34:9

### K

**KATZMAN** [2] - 3:3, 3:6
**Kauichko** [2] - 20:9, 50:11
**keep** [2] - 24:8, 25:13
**KEOUGH** [2] - 2:17, 41:25
**kept** [1] - 34:23
**key** [5] - 18:5, 22:24, 37:10, 42:7, 45:23
**kind** [2] - 40:6, 71:3
**knowingly** [3] - 29:21, 30:16, 34:17
**knowledge** [13] - 13:11, 20:7, 20:14, 53:16, 54:9, 57:1, 57:4, 58:10, 58:23, 60:7, 60:8, 62:23, 64:3
**knows** [3] - 32:3, 43:21, 45:7
**Kudiumov** [2] - 25:17, 25:18
**Kudiumov's** [1] - 55:20

### L

**laboring** [1] - 15:13
**lack** [1] - 65:15
**laid** [1] - 35:13
**language** [8] - 17:25, 51:24, 53:8, 53:21, 53:22, 61:20, 63:25, 70:15
**laptops** [1] - 7:23
**largely** [1] - 33:12
**last** [7] - 15:23, 17:20, 21:25, 38:15, 47:8, 52:1, 59:24
**laundering** [15] - 31:21, 31:22, 32:1, 32:7, 32:12, 32:13, 32:25, 33:1, 33:10, 37:24, 52:14, 52:20, 52:22, 54:16, 60:14
**law** [8] - 6:17, 6:19, 19:13, 35:9, 35:19, 49:25, 60:23, 63:5
**Law** [8] - 2:12, 2:15, 2:18, 2:21, 3:4, 3:7, 3:10, 3:15
**LAW** [1] - 3:14
**lawful** [1] - 34:18
**lawyer** [2] - 14:6, 39:20
**lawyers** [6] - 6:22, 7:3, 7:11, 7:22, 71:2,

71:5
**lay** [1] - 32:24
**lead** [1] - 49:5
**leader** [1] - 48:2
**leaders** [1] - 48:5
**leased** [1] - 26:8
**least** [6] - 7:5, 9:7, 18:17, 32:4, 34:11, 72:1
**leave** [2] - 9:16, 65:8
**lectern** [2] - 59:2, 65:11
**left** [1] - 8:21
**legal** [3] - 18:16, 22:2, 71:25
**legally** [2] - 16:12, 16:19
**levels** [2] - 35:21, 73:3
**LEWIS** [1] - 3:3
**licenses** [2] - 11:7, 11:11
**light** [2] - 42:16, 50:25
**likely** [1] - 72:22
**limiting** [1] - 10:8, 31:19, 56:2
**Limo** [5] - 57:15, 58:5, 59:12, 59:16
**line** [3] - 17:20, 34:1, 46:18
**linked** [1] - 39:15
**list** [3] - 42:7, 45:17, 45:19
**listed** [3] - 40:15, 74:1, 74:15
**listing** [1] - 41:22
**LITTRELL** [5] - 3:3, 3:3, 3:6, 14:19, 55:23, 56:18, 66:20, 67:17, 74:14
**Littrell** [1] - 10:9
**live** [1] - 45:22
**LLP** [2] - 3:3, 3:6
**loan** [7] - 35:3, 35:5, 35:7, 37:12, 38:8, 46:15, 50:18
**loans** [9] - 23:19, 26:1, 26:6, 32:14, 42:2, 45:24, 61:25, 64:2
**location** [3] - 20:6, 37:12, 51:18
**look** [12] - 32:19, 33:4, 42:8, 46:22, 53:20, 63:13, 63:16, 69:19, 72:3, 72:4
**looked** [4] - 22:15, 22:21, 37:4, 57:19
**looking** [4] - 9:14,

17:11, 25:19, 70:23
**looks** [1] - 63:2
**Los** [3] - 2:8, 2:13, 3:8
**LOS** [4] - 1:14, 1:24, 6:1, 76:3
**lost** [2] - 19:18, 21:1, 64:10
**luggage** [3] - 20:13, 20:15, 21:6
**lumps** [1] - 34:19

## M

**ma'am** [2] - 10:18, 16:4
**mail** [3] - 15:9, 29:18, 65:22
**mailed** [1] - 16:2
**maintain** [1] - 47:25
**maintained** [1] - 20:19
**manufacture** [1] - 11:10
**Manuk** [13] - 22:18, 26:23, 26:25, 35:5, 38:4, 38:5, 40:15, 40:19, 40:24, 41:24, 65:24, 67:19
**March** [1] - 32:3
**margin** [1] - 73:15
**MARIETTA** [1] - 3:2
**Marietta** [4] - 18:21, 43:18, 56:11, 67:19
**Mario** [1] - 21:25
**mark** [1] - 15:9
**Mark** [3] - 35:3, 35:4, 35:16
**Market** [1] - 2:18
**mass** [4] - 9:4, 9:6, 9:11, 9:14
**Massino** [1] - 68:14
**match** [1] - 64:14
**materials** [1] - 41:10
**matter** [2] - 62:2, 76:12
**matters** [1] - 15:18
**McKillian** [1] - 11:6
**mean** [32] - 7:22, 11:2, 13:15, 13:20, 16:13, 22:16, 24:23, 25:4, 29:25, 34:13, 37:6, 37:16, 38:8, 43:11, 43:23, 44:6, 51:8, 51:10, 51:12, 51:15, 54:4, 61:5, 64:21, 65:6, 70:12, 70:21, 70:25, 72:1, 72:20, 73:19
**meaning** [3] - 10:15,

46:19, 75:1
**means** [1] - 34:18
**meant** [2] - 8:19, 36:14
**media** [1] - 7:8
**meeting** [1] - 25:19
**MEGHAN** [1] - 2:14
**member** [3] - 28:24, 29:8
**members** [5] - 39:15, 43:7, 44:15, 47:12, 66:5
**members'** [1] - 41:11
**memory** [1] - 13:25, 25:2
**mention** [1] - 37:14
**mentioned** [6] - 25:4, 36:7, 37:7, 37:25, 39:7, 40:18
**mentioning** [1] - 60:1
**mere** [8] - 19:7, 19:12, 50:3, 50:6, 50:24, 51:2, 51:19, 51:23
**MESEREAU** [7] - 70:6, 72:8, 73:1, 73:7, 73:9, 73:18, 73:23
**Mesereau's** [1] - 72:16
**messages** [10] - 39:14, 44:17, 44:21, 59:7, 59:14, 59:16, 60:2, 60:3, 65:22, 68:16
**metaphysical** [1] - 18:7
**Mexico** [1] - 19:25
**Miami** [1] - 51:15
**MICHAEL** [1] - 2:17
**might** [1] - 19:3
**mind** [11] - 18:4, 22:20, 22:22, 28:1, 41:1, 42:5, 50:23, 52:2, 56:7, 60:9, 66:1
**mine** [1] - 13:14
**minute** [5] - 9:16, 12:20, 17:12, 27:20, 54:22
**minutes** [3] - 11:24, 68:2, 68:6
**miscellaneous** [1] - 14:12
**misinterpretation** [1] - 13:5
**misrepresenting** [1] - 12:9
**missed** [2] - 37:19, 74:3
**missing** [1] - 64:25

**misstated** [1] - 37:16
**misunderstood** [1] - 12:17
**MO** [1] - 41:18
**model** [6] - 53:6, 53:10, 53:11, 54:2, 55:1, 63:8
**Model** [1] - 10:14
**modified** [3] - 28:15, 61:20, 63:24
**modifies** [1] - 30:9
**modify** [3] - 29:3, 30:11, 31:6
**moment** [2] - 16:18, 60:17
**money** [41] - 29:23, 31:21, 31:22, 32:1, 32:7, 32:12, 32:13, 32:25, 33:1, 33:9, 38:1, 38:6, 38:18, 43:15, 43:23, 44:1, 44:4, 44:24, 45:3, 45:6, 45:8, 45:9, 46:2, 50:16, 52:14, 52:20, 52:21, 54:6, 54:15, 57:16, 57:22, 57:24, 58:2, 59:11, 60:14, 61:2, 61:7, 61:15, 62:8, 63:20, 67:8
**monies** [1] - 43:13
**month** [1] - 12:6
**morning** [3] - 7:1, 47:10, 69:14
**mortgage** [1] - 63:21
**most** [4] - 18:16, 50:11, 51:2, 65:2
**mother** [1] - 41:14
**motion** [4] - 36:16, 66:20, 67:17, 67:22
**motions** [3] - 8:6, 36:20, 74:21
**move** [2] - 52:2, 52:12
**moved** [2] - 8:24, 67:21
**MR** [196] - 9:21, 10:2, 14:9, 14:19, 16:7, 16:11, 16:17, 16:20, 17:16, 18:11, 18:18, 18:21, 18:24, 19:5, 19:7, 19:17, 19:22, 21:2, 21:13, 21:21, 22:14, 22:18, 22:21, 22:23, 23:11, 23:21, 23:24, 24:3, 24:5, 24:9, 24:14, 24:17, 24:21, 24:25, 25:21, 25:23, 26:7, 26:10, 26:14, 26:18, 26:20, 26:22, 27:6, 27:9,

27:16, 27:21, 27:23, 28:5, 28:10, 28:15, 28:17, 28:23, 29:6, 29:10, 29:12, 29:15, 29:18, 30:3, 30:7, 30:19, 30:22, 31:3, 31:10, 31:17, 31:19, 31:21, 32:16, 32:19, 33:15, 33:24, 34:2, 34:7, 34:13, 34:15, 35:21, 35:25, 36:1, 36:5, 36:6, 36:11, 36:14, 36:15, 36:22, 36:24, 37:10, 37:15, 37:21, 38:4, 38:7, 38:13, 38:17, 38:22, 39:5, 39:9, 39:23, 40:5, 40:9, 40:12, 41:2, 41:5, 41:9, 41:17, 41:22, 41:25, 42:1, 42:6, 42:10, 42:17, 43:1, 43:15, 43:18, 44:3, 44:13, 44:17, 44:20, 44:24, 45:3, 45:8, 45:11, 45:16, 46:5, 46:8, 46:10, 46:12, 46:20, 46:22, 47:5, 47:8, 47:25, 48:15, 48:19, 48:23, 48:25, 49:18, 49:24, 50:8, 50:18, 50:24, 51:4, 51:12, 51:23, 52:3, 52:13, 52:17, 54:14, 55:23, 56:18, 56:23, 57:8, 57:25, 58:2, 59:6, 59:22, 59:25, 60:12, 60:18, 61:6, 61:11, 61:14, 62:6, 63:18, 64:9, 64:18, 64:23, 64:25, 65:2, 65:10, 65:12, 65:14, 65:21, 66:3, 66:14, 66:18, 66:20, 66:23, 67:2, 67:5, 67:11, 67:17, 70:1, 70:3, 70:6, 72:7, 72:8, 72:12, 73:1, 73:7, 73:9, 73:18, 73:23, 73:24, 74:4, 74:14, 74:18, 75:7, 75:17
**MS** [54] - 8:24, 9:5, 9:8, 9:10, 9:15, 10:7, 10:13, 10:17, 10:21, 11:4, 11:17, 11:19, 12:19, 12:22, 13:4, 13:17, 14:1, 14:7, 15:20, 16:3, 25:17, 52:19, 52:23, 53:2, 53:11, 53:14, 53:20, 54:5, 54:12, 54:17,

54:24, 55:15, 55:21, 56:1, 56:8, 56:10, 62:7, 62:14, 62:18, 62:21, 63:11, 63:14, 64:6, 67:25, 68:5, 68:18, 68:22, 68:25, 69:6, 69:8, 74:19, 74:24, 75:2, 75:6
**mule** [3] - 38:18, 38:25, 40:22
**multiple** [16] - 21:18, 21:22, 21:23, 22:13, 28:5, 28:6, 28:11, 28:13, 28:14, 28:18, 29:2, 42:25, 43:2, 48:10, 48:16, 67:13
**must** [4] - 6:17, 17:23, 30:14, 56:11

**N**

**nah** [1] - 47:14
**name** [13] - 23:10, 25:13, 25:14, 25:15, 25:16, 25:20, 35:8, 35:16, 38:2, 38:3, 38:15, 41:13, 50:21
**NAME** [1] - 4:3
**names** [7] - 11:5, 11:8, 23:20, 25:14, 38:12, 41:11
**nature** [1] - 12:13
**need** [5] - 60:24, 60:25, 63:25, 64:1, 64:19
**neglected** [1] - 10:7
**negligently** [1] - 64:13
**never** [2] - 57:19, 67:20
**new** [1] - 32:6
**New** [7] - 2:16, 47:11, 47:14, 47:16, 47:21, 60:3
**NEWCOMER** [1] - 2:14
**next** [12] - 28:16, 29:18, 30:7, 30:21, 30:22, 31:20, 31:21, 32:18, 32:19, 33:15, 49:16, 52:3
**NICHOLAS** [1] - 2:20
**Ninth** [6] - 17:18, 18:1, 18:9, 19:19, 30:1, 60:13
**NO** [2] - 1:23, 76:20
**none** [1] - 23:13
**nonetheless** [1] - 10:24
**North** [2] - 2:7, 3:15

**notable** [1] - 25:2
**note** [3] - 25:5, 29:11, 56:1
**noted** [3] - 30:2, 30:17, 59:25
**notepad** [1] - 45:18
**notes** [1] - 11:10
**nothing** [4] - 18:6, 25:3, 50:9, 73:17
**notice** [5] - 8:2, 12:4, 20:3, 20:12, 64:12
**noticed** [2] - 73:24, 74:4
**notified** [1] - 20:8
**noting** [1] - 30:6
**number** [3] - 28:6, 28:8, 37:12
**NUMBER** [1] - 5:3
**Number** [1] - 10:14
**numbered** [1] - 69:25
**numbers** [1] - 70:4
**numerous** [2] - 11:4, 11:7
**NW** [1] - 2:21

**O**

**o'clock** [5] - 7:9, 8:7, 9:20, 15:1, 69:20
**oar** [1] - 15:13
**object** [1] - 11:19
**objection** [5] - 17:15, 17:16, 18:9, 19:2, 75:2
**objections** [5] - 18:11, 18:18, 18:24, 21:18, 36:2
**objects** [2] - 32:10, 32:23
**observation** [1] - 30:2
**observed** [2] - 23:16
**obtaining** [1] - 29:23
**obviously** [6] - 11:19, 34:20, 35:9, 50:14, 51:16, 71:13
**occasions** [1] - 59:19
**October** [1] - 32:4
**odd** [1] - 45:6
**OF** [8] - 1:2, 1:5, 1:12, 2:1, 3:14, 76:1, 76:3, 76:4
**offense** [4] - 19:13, 53:23, 53:24, 53:25
**offenses** [2] - 17:7, 17:9
**offer** [1] - 64:8
**offered** [1] - 72:23

**OFFICE** [2] - 2:4, 3:14
**Official** [2] - 76:6, 76:20
**OFFICIAL** [2] - 1:23, 76:1
**once** [1] - 65:6
**one** [52] - 7:24, 12:20, 16:18, 17:16, 17:22, 19:15, 23:15, 25:4, 25:7, 25:8, 25:22, 29:22, 30:16, 30:19, 32:2, 32:4, 32:7, 32:9, 32:22, 35:22, 36:10, 37:25, 38:5, 39:11, 41:17, 42:19, 42:24, 45:16, 45:25, 47:5, 47:12, 47:15, 48:20, 49:1, 49:8, 50:20, 50:21, 51:23, 54:15, 60:17, 61:3, 61:4, 61:21, 62:18, 63:10, 64:9, 66:10, 70:16, 71:18
**oOo** [1] - 6:3
**opinion** [1] - 24:20
**opportunity** [5] - 7:21, 10:6, 20:5, 22:9, 66:24
**opposed** [2] - 62:2, 62:16
**opposite** [1] - 61:14
**opposition** [1] - 74:25
**order** [7] - 15:1, 15:7, 15:12, 30:12, 56:16, 69:22, 70:3
**organizational** [1] - 32:22, 33:12
**original** [1] - 20:20
**otherwise** [1] - 20:23
**overall** [8] - 29:4, 29:7, 29:15, 29:22, 30:19, 32:4, 65:16
**overlapping** [1] - 47:9
**own** [2] - 13:11, 23:19

**P**

**p.m** [1] - 75:20
**P.M** [2] - 1:13, 6:2
**Pacific** [1] - 3:15
**PAETTY** [1] - 2:6
**page** [25] - 4:3, 16:16, 16:17, 28:8, 28:12, 28:16, 29:20, 30:5, 31:25, 32:16, 32:19, 33:4, 33:19,

36:8, 36:10, 51:25, 52:1, 52:21, 52:24, 54:20, 54:24, 60:15, 60:18, 62:11, 76:12
**Page** [1] - 5:3
**pages** [1] - 34:9
**paginated** [1] - 16:16
**Palm** [1] - 25:15
**Palmerton** [13] - 24:17, 27:10, 27:12, 40:12, 42:25, 43:1, 43:3, 64:24, 64:25, 65:7, 65:15, 66:4, 67:6
**Palmerton's** [2] - 65:18, 67:18
**paragraph** [1] - 33:6
**paragraphs** [1] - 75:4
**parameters** [1] - 72:1
**Park** [2] - 23:16, 38:9
**Paronyan** [11] - 23:12, 23:15, 23:22, 26:10, 26:22, 26:25, 27:6, 38:14, 40:15, 40:18, 65:24
**part** [15] - 7:4, 13:8, 14:18, 16:18, 18:3, 23:1, 23:13, 43:25, 44:1, 45:12, 47:21, 67:16, 70:13, 70:16, 72:3
**participant** [1] - 50:12
**participated** [1] - 29:21
**particular** [3] - 51:18, 52:7, 69:21
**parties** [9] - 6:21, 15:8, 15:10, 18:16, 36:20, 46:14, 61:22, 70:11, 71:25
**parts** [2] - 8:22, 64:25
**party** [1] - 44:23
**passing** [2] - 28:3, 38:6
**pattern** [2] - 30:1, 41:18
**Paul** [1] - 15:10
**pay** [3] - 44:20, 59:8, 59:17
**paying** [1] - 24:19
**payments** [2] - 66:6, 66:9
**Payour** [7] - 23:4, 23:5, 23:11, 23:24, 24:18, 38:17, 40:21
**payroll** [6] - 44:5, 47:9, 47:12, 47:18,

66:6, 66:7
**people** [3] - 11:8, 25:9, 58:10
**perhaps** [2] - 34:22, 57:5
**permitting** [1] - 17:22
**person** [12] - 25:13, 25:18, 28:24, 29:12, 34:2, 34:24, 38:14, 53:3, 60:18, 61:23, 62:25, 63:3
**person's** [1] - 25:15
**personal** [2] - 22:18, 39:18
**pertain** [1] - 36:2
**PETER** [2] - 3:14, 3:14
**phone** [17] - 8:20, 10:24, 10:25, 11:1, 11:3, 12:16, 12:18, 12:24, 12:25, 13:1, 13:7, 14:4, 14:5, 56:11, 65:22, 69:4
**Phonetic)** [1] - 66:8
**photographs** [2] - 20:2, 59:13
**physical** [2] - 8:25, 51:18
**physically** [3] - 14:20, 14:21, 51:12
**picture** [2] - 21:21, 27:18
**piece** [2] - 23:8, 26:12
**Pinkerton** [9] - 17:3, 17:6, 28:21, 31:5, 56:24, 58:11, 58:14, 58:21, 59:5
**place** [2] - 12:1, 59:15
**Plaintiff** [1] - 1:6
**PLAINTIFF** [1] - 2:3
**plan** [6] - 7:16, 14:9, 29:22, 29:23, 31:12, 31:13
**plea** [1] - 23:13
**plenty** [1] - 43:23
**point** [30] - 6:13, 14:22, 21:5, 22:7, 24:11, 25:1, 35:10, 37:4, 42:18, 45:16, 47:5, 47:8, 48:20, 48:21, 48:22, 48:23, 48:24, 48:25, 51:23, 52:3, 53:7, 54:15, 55:23, 57:4, 60:12, 62:7, 64:11, 66:13, 70:8
**pointed** [2] - 67:7,

67:9
**pointing** [1] - 67:12
**points** [4] - 34:8,
42:18, 45:17, 46:12
**pool** [1] - 41:9
**portion** [1] - 67:17
**portrayed** [1] - 60:23
**position** [1] - 55:16
**possessed** [3] -
34:17, 35:4, 35:7
**possession** [6] -
34:10, 34:24, 35:16,
50:11, 50:20
**possible** [1] - 31:3
**possibly** [1] - 8:10
**potentially** [1] - 29:2
**PPP** [12] - 11:8,
11:13, 12:12, 32:13,
33:13, 37:12, 44:3,
45:24, 46:2, 46:15,
50:18, 61:24
**PPP/EIDL** [1] - 64:2
**preference** [1] -
72:14
**preliminary** [1] -
48:24
**prepared** [1] - 9:13
**preponderance** [3] -
71:7, 72:20, 73:5
**prerogative** [1] -
34:21
**presence** [12] - 19:7,
19:12, 50:4, 50:6,
50:24, 51:2, 51:7,
51:8, 51:13, 51:19,
51:24
**present** [1] - 15:8
**presented** [2] - 6:14,
14:6
**presents** [1] - 48:19
**preserve** [3] - 20:4,
20:20, 64:13
**primarily** [1] - 65:18
**Primavera** [1] - 41:3
**problem** [1] - 58:11
**procedures** [1] -
20:16
**proceedings** [2] -
75:20, 76:11
**proceeds** [9] - 34:3,
46:16, 50:18, 53:4,
53:16, 54:10, 60:19,
61:24, 63:3
**proffer** [4] - 17:1,
27:17, 58:22, 66:15
**promptly** [1] - 69:20
**proof** [4] - 71:6, 72:9,
72:10, 73:11
**proper** [1] - 63:9
**properly** [1] - 69:5

**property** [6] - 29:23,
34:3, 53:4, 53:25,
60:19, 61:23
**proposal** [1] - 62:21
**proposals** [1] - 45:15
**propose** [2] - 10:11,
53:15
**proposed** [18] - 7:19,
8:13, 11:22, 12:5,
12:6, 15:9, 15:19,
15:24, 28:4, 32:6,
32:15, 51:25, 52:5,
52:3, 53:10, 53:13,
53:14, 63:7
**proposing** [3] -
15:25, 61:22, 63:24
**prosecution** [1] -
53:23
**protection** [1] - 20:9
**Protection** [2] -
20:21, 21:5
**prove** [4] - 30:14,
53:24, 58:19, 72:5
**proven** [2] - 18:6,
71:12
**provide** [5] - 11:25,
46:6, 46:23, 47:2,
59:16
**provided** [5] - 11:22,
12:10, 13:8, 26:25,
47:17
**provides** [1] - 22:2
**province** [1] - 6:18
**provisionally** [1] -
9:7
**pulled** [1] - 8:20
**purpose** [1] - 62:22
**purposes** [1] - 55:14
**pursuant** [1] - 76:9
**put** [5] - 44:4, 57:14,
59:20, 64:18, 65:19
**puts** [1] - 50:12
**putting** [3] - 11:1,
20:12, 59:3

**Q**

**qualifying** [2] - 61:3,
61:4
**questioned** [1] - 21:8
**questions** [1] - 18:16
**quick** [4] - 10:7,
66:20, 66:25, 75:7
**quickly** [1] - 56:18
**quite** [1] - 19:8
**quoted** [2] - 21:25,
42:13

**R**

**raise** [2] - 15:18,
62:12
**raised** [3] - 18:19,
30:24, 70:8
**RAM** [97] - 2:11,
9:21, 10:2, 14:9,
21:21, 22:14, 22:18,
22:21, 22:23, 23:11,
23:21, 23:24, 24:3,
24:5, 24:9, 24:14,
24:17, 24:21, 24:25,
25:21, 25:23, 26:7,
26:10, 26:18, 26:20,
26:22, 27:6, 27:9,
27:16, 27:21, 27:23,
28:5, 28:10, 28:15,
28:17, 28:23, 29:6,
29:10, 29:12, 29:15,
29:18, 30:3, 30:7,
30:19, 30:22, 31:3,
31:10, 31:17, 31:19,
31:21, 32:16, 32:19,
33:15, 33:24, 34:2,
34:7, 34:13, 34:15,
35:21, 36:14, 36:22,
39:9, 39:23, 40:5,
40:9, 40:12, 41:2,
41:5, 41:9, 41:17,
41:22, 42:1, 42:6,
42:10, 47:8, 54:14,
60:12, 60:18, 61:6,
61:11, 61:14, 62:6,
63:18, 64:18, 64:23,
64:25, 65:10, 65:12,
65:14, 65:21, 66:3,
66:14, 66:18, 67:2,
70:1, 72:7, 72:12
**ram** [12] - 37:4,
37:18, 45:15, 45:17,
46:3, 48:19, 49:4,
49:9, 60:11, 62:7,
64:17, 67:11
**Ram** [2] - 37:8, 56:17
**ram's** [2] - 49:25,
62:21
**rather** [4] - 8:4,
63:14, 64:1, 64:14
**reached** [1] - 6:13
**read** [6] - 10:6,
30:10, 34:23, 35:1,
64:17, 71:23
**readily** [2] - 40:2,
51:17
**reading** [1] - 17:6
**real** [4] - 25:8, 61:19,
70:23, 75:7
**really** [3] - 17:11,
51:17, 63:18

**realm** [1] - 55:20
**Realtime** [1] - 76:6
**reason** [1] - 44:10
**reasonable** [16] -
17:17, 18:2, 20:6,
30:14, 58:20, 60:4,
71:2, 71:4, 71:5, 71:8,
71:11, 71:15, 71:19,
72:20, 73:11
**reasonably** [2] -
17:5, 17:22
**receive** [1] - 60:5
**received** [3] - 43:13,
44:3, 57:15
**receives** [1] - 44:24
**receiving** [2] - 45:3,
45:9
**recess** [2] - 6:24,
15:5, 68:7
**recognize** [1] - 34:16
**recognized** [1] -
20:11
**recollection** [2] -
13:13, 13:21
**reconvene** [1] - 9:19
**record** [22] - 22:11,
22:12, 23:8, 24:13,
26:17, 26:19, 27:4,
37:3, 37:5, 37:19,
38:25, 39:3, 39:8,
48:13, 57:2, 57:10,
57:12, 57:14, 58:8,
60:6, 71:14
**recording** [1] - 57:23
**records** [4] - 57:14,
57:18, 58:6, 58:16
**redacted** [6] - 14:9,
14:11, 68:20, 69:5,
74:20, 75:3
**redaction** [3] - 8:19,
8:21, 68:19
**Redline** [4] - 26:23,
27:9, 27:10, 40:18
**Redondo** [2] - 3:16
**refer** [4] - 70:19,
71:13, 72:8
**reference** [4] - 22:10,
22:24, 38:6, 41:12
**references** [2] -
24:12, 66:5
**referencing** [1] -
13:17
**referred** [2] - 40:22,
57:12
**referring** [5] - 16:16,
23:21, 23:24, 57:17,
59:21
**refers** [1] - 54:6
**reflect** [2] - 18:4,
68:20

**regard** [4] - 19:2,
37:2, 45:15, 51:12
**regarding** [9] -
15:19, 16:8, 17:1,
28:4, 37:5, 38:8,
48:10, 49:16, 51:21
**register** [1] - 39:22
**regulations** [1] -
76:13
**reject** [1] - 35:24
**related** [12] - 17:4,
18:12, 32:13, 43:9,
55:10, 56:23, 57:13,
57:15, 58:12, 58:13,
58:23, 61:24
**relates** [8] - 36:8,
53:2, 54:17, 55:2,
58:12, 58:14, 58:18,
58:21
**relating** [1] - 37:11
**relationship** [1] -
19:11
**release** [2] - 33:8,
33:10
**relied** [2] - 8:22,
68:21
**relying** [2] - 12:2,
22:25
**remains** [1] - 6:16
**remember** [18] -
8:11, 9:9, 11:2, 13:1,
13:23, 25:20, 25:24,
26:2, 26:3, 38:11,
44:6, 44:19, 65:23,
66:1, 67:10, 69:12,
71:4, 72:2
**remind** [2] - 75:15,
75:16
**removed** [1] - 75:3
**removing** [1] - 13:2
**renew** [1] - 36:16
**repeat** [1] - 32:17
**repeating** [1] - 33:3
**report** [4] - 9:2, 9:11,
68:16
**reported** [1] - 76:11
**REPORTER** [2] -
1:23, 76:1
**Reporter** [2] - 76:7,
76:20
**REPORTER'S** [1] -
1:12
**reports** [6] - 9:1,
46:25, 47:10, 47:13,
66:7, 66:8
**represented** [1] -
37:4
**representing** [4] -
34:3, 53:4, 60:19,
61:24

**request** [9] - 19:18, 20:3, 29:16, 35:23, 36:2, 52:8, 56:5, 63:6, 75:10
**requested** [3] - 17:19, 50:4, 75:9
**requesting** [1] - 19:23
**require** [1] - 54:9
**required** [4] - 53:24, 64:4, 75:12, 75:13
**requirement** [2] - 62:23, 70:18
**requires** [2] - 6:20, 63:8
**requiring** [1] - 63:2
**requisite** [1] - 64:3
**research** [1] - 7:25
**residence** [1] - 22:19
**residences** [1] - 20:18
**resolve** [4] - 8:3, 48:14, 59:11, 65:3
**respect** [7] - 14:1, 37:23, 43:7, 50:3, 50:15, 60:14, 62:21
**respectfully** [1] - 64:6
**respective** [1] - 14:25
**respond** [3] - 7:21, 12:1, 65:8
**responds** [1] - 47:14
**response** [1] - 42:24
**responses** [1] - 15:11
**responsible** [3] - 17:7, 17:8, 21:10
**rest** [3] - 7:10, 7:16, 63:1
**retained** [1] - 75:9
**rethink** [1] - 27:24
**returns** [1] - 75:8
**reverse** [2] - 15:12, 56:16
**revert** [1] - 63:6
**reviewed** [1] - 39:2
**Rich** [7] - 35:7, 47:11, 47:14, 47:16, 47:21, 60:3
**RICHARD** [2] - 1:8, 2:10
**Richard** [24] - 15:13, 18:13, 18:14, 18:15, 19:11, 21:14, 21:16, 25:9, 33:7, 35:2, 36:1, 36:6, 36:7, 36:23, 41:8, 43:18, 44:14, 44:25, 45:1, 48:2, 51:8, 51:13, 59:7

**rise** [4] - 6:5, 6:9, 68:8, 75:18
**Road** [1] - 3:11
**role** [5] - 37:23, 50:13, 50:14, 50:15, 59:18
**ROOM** [1] - 1:24
**rooms** [1] - 14:25
**root** [1] - 24:10
**Rosa** [1] - 11:5
**RPR** [1] - 76:20
**rule** [1] - 58:14
**ruled** [1] - 75:5
**ruling** [2] - 15:21, 58:18
**Runyan** [5] - 43:14, 43:15, 43:23, 44:1, 44:4
**Russian** [2] - 25:13, 25:14
**Ryan** [1] - 18:21
**RYAN** [1] - 3:6

# S

**S-i-v-i-l-l-a** [1] - 19:22
**sake** [1] - 28:7
**San** [2] - 2:19, 3:5
**Satello** [1] - 21:25
**satisfactory** [1] - 51:24
**satisfied** [1] - 62:13
**saw** [8] - 10:24, 12:16, 12:17, 12:24, 14:5, 25:8, 38:6, 60:2
**SBA** [1] - 11:4
**scheme** [6] - 29:22, 29:23, 30:20, 31:4, 31:12, 63:21
**schemes** [2] - 21:23, 28:6
**scope** [1] - 63:22
**SCOTT** [1] - 2:6
**scratch** [1] - 25:2
**sealed** [1] - 67:2
**search** [3] - 9:2, 20:17, 41:6
**seated** [4] - 6:7, 6:11, 7:15, 15:6
**second** [18] - 10:18, 25:22, 27:2, 28:24, 29:20, 30:10, 34:2, 36:10, 36:12, 49:2, 53:3, 53:18, 54:18, 61:23, 62:22, 63:10
**Section** [3] - 53:2, 53:8, 76:9
**section** [1] - 53:23
**see** [22] - 8:10, 9:13,

10:2, 11:12, 12:21, 13:10, 19:6, 27:25, 28:16, 30:2, 30:17, 34:12, 54:13, 56:14, 56:22, 60:10, 62:20, 68:2, 69:3, 69:7, 70:5, 73:16
**seized** [1] - 25:25
**send** [2] - 14:24, 59:11
**sending** [2] - 44:1, 45:8
**sense** [1] - 72:18
**sent** [2] - 43:15, 43:22
**sentence** [2] - 52:1, 64:9, 65:14
**separate** [2] - 48:1, 49:1
**sequence** [1] - 7:6
**sergeant** [1] - 69:12
**Service** [3] - 43:14, 44:2, 44:4
**Services** [1] - 43:16
**SESSION** [1] - 1:12
**session** [1] - 68:9
**several** [2] - 31:23, 59:19
**shall** [1] - 9:19
**shared** [1] - 47:22
**sharing** [3] - 46:15, 46:24, 46:25
**shoddy** [1] - 67:12
**short** [2] - 18:8, 60:12
**shortcoming** [1] - 39:22
**show** [12] - 20:5, 21:3, 21:7, 37:23, 40:8, 42:13, 42:18, 44:7, 58:9, 58:16, 59:14, 73:2
**showing** [2] - 44:18, 57:15
**shows** [6] - 37:3, 44:14, 45:25, 46:13, 46:16, 47:2
**side** [2] - 23:3, 41:13
**sidebar** [1] - 21:24
**sides** [1] - 6:14
**SILVERMAN** [3] - 2:20, 35:25, 65:2
**Silverman** [1] - 35:23
**similarly** [1] - 44:11
**simple** [4] - 8:14, 40:4, 61:21, 74:13
**single** [4] - 29:4, 29:7, 29:15, 42:19
**sit** [1] - 26:12
**sitting** [1] - 65:4

**Sivilla** [2] - 19:19, 64:9
**slides** [1] - 42:12
**slight** [1] - 73:15
**slightly** [1] - 31:23
**slow** [3] - 27:2, 33:5, 43:20
**smuggling** [1] - 19:24
**someone** [3] - 28:23, 35:5, 41:13
**sometimes** [1] - 13:1
**somewhat** [1] - 34:10
**somewhere** [1] - 71:6
**sorry** [5] - 25:23, 33:19, 35:22, 36:14, 50:21
**sort** [2] - 15:12, 72:24
**sp** [1] - 38:2
**speaker** [1] - 55:19
**Spear** [1] - 2:18
**Special** [2] - 43:1, 67:18
**specific** [6] - 17:2, 31:11, 53:16, 54:10, 57:4, 57:7
**specifically** [10] - 13:23, 17:4, 20:25, 26:25, 34:13, 39:15, 58:23, 63:15, 65:21, 66:6
**specifics** [1] - 11:13
**specified** [3] - 54:1, 54:3, 54:5
**speculation** [2] - 48:10, 48:13
**spell** [1] - 19:21
**spend** [1] - 7:10
**spoliation** [1] - 52:4
**Spring** [1] - 2:7
**Springs** [1] - 25:15
**standard** [5] - 17:18, 34:15, 34:18, 34:25, 73:10
**start** [3] - 15:12, 28:10, 72:13
**starting** [2] - 22:7, 31:25
**STATE** [1] - 76:4
**state** [6] - 20:20, 20:24, 21:4, 35:9, 35:18, 60:23
**statement** [7] - 19:13, 42:24, 54:25, 55:7, 56:19, 56:20
**statements** [3] - 55:11, 55:13, 56:23

**STATES** [3] - 1:1, 1:5, 2:4
**States** [5] - 2:6, 2:7, 76:7, 76:9, 76:14
**statute** [1] - 53:8
**statutory** [2] - 53:20, 53:22
**stay** [3] - 18:8, 75:12, 75:13
**stenographically** [1] - 76:11
**STEPHEN** [1] - 1:3
**STEPTOE** [4] - 2:11, 2:14, 2:17, 2:20
**still** [3] - 64:19, 65:1, 65:5
**stood** [1] - 58:5
**stories** [1] - 71:14
**story** [1] - 44:12
**straightforward** [3] - 8:14, 40:4, 51:2
**Street** [4] - 2:7, 2:12, 2:18, 3:7
**STREET** [1] - 1:24
**stricken** [1] - 67:20
**strike** [3] - 30:15, 67:17, 67:21
**strong** [1] - 59:16
**structure** [1] - 20:5
**stuff** [1] - 71:3
**SUA** [3] - 33:20, 61:1, 61:4
**SUAs** [1] - 61:3
**subgroup** [1] - 8:22
**subject** [3] - 9:2, 62:1, 74:20
**submit** [1] - 35:17
**submitted** [4] - 11:5, 11:9, 12:6, 35:5, 35:7, 37:13, 58:16, 66:14
**subparagraph** [1] - 53:22
**subset** [6] - 9:1, 9:4, 9:11, 9:14, 68:16, 68:20
**substantive** [3] - 32:25, 50:2, 62:17
**substitute** [1] - 30:19
**succinct** [1] - 65:13
**succinctly** [1] - 18:1
**sufficient** [3] - 48:12, 58:15, 58:19
**suggest** [1] - 50:8
**suggested** [1] - 49:17
**suggesting** [2] - 69:11
**suggestion** [3] - 32:22, 69:13
**suggestions** [2] -

30:8, 69:9
  **suggests** [3] - 49:10, 50:10, 50:13
  **Suite** [6] - 2:12, 2:18, 3:4, 3:7, 3:11, 3:15
  **summary** [2] - 37:22, 46:16
  **SUN** [1] - 2:5
  **supplemental** [1] - 56:4
  **support** [2] - 48:12, 59:5
  **supporting** [1] - 21:9
  **supports** [3] - 22:13, 27:14, 49:25
  **surely** [1] - 12:4
  **surprising** [1] - 47:19
  **surprisingly** [1] - 25:5
  **surveillance** [2] - 23:25, 24:5
  **suspect** [1] - 35:10
  **suspicious** [3] - 73:2, 73:14
  **sustenance** [1] - 7:18
  **synthetic** [1] - 66:9
  **system** [1] - 73:11

### T

  **table** [1] - 56:8
  **tagging** [1] - 33:11
  **Tamara** [11] - 43:13, 44:8, 44:18, 45:13, 45:21, 47:11, 48:5, 57:10, 59:8, 60:3, 66:7
  **Tatoyan** [1] - 66:8
  **Tax** [4] - 43:14, 43:15, 44:1, 44:4
  **tax** [1] - 46:24
  **telephone** [1] - 39:15
  **ten** [1] - 11:24
  **tend** [1] - 52:11
  **Terabelian** [13] - 18:22, 19:10, 20:8, 21:7, 36:1, 36:24, 43:19, 50:9, 51:5, 52:5, 56:3, 56:11, 67:19
  **TERABELIAN** [1] - 3:2
  **Terabelian's** [3] - 50:5, 56:19, 69:4
  **term** [1] - 73:6
  **terms** [3] - 9:13, 26:4, 51:15
  **TERRI** [4] - 1:23,

76:6, 76:19, 76:20
  **testified** [10] - 9:10, 10:22, 13:6, 24:17, 27:10, 41:10, 43:3, 67:6, 68:14, 68:15
  **testify** [3] - 14:3, 23:14, 27:13
  **testimony** [22] - 9:3, 11:2, 12:19, 13:12, 13:21, 23:4, 24:14, 26:24, 27:8, 27:19, 38:10, 39:9, 40:5, 40:9, 42:14, 58:9, 61:18, 64:19, 64:23, 65:18, 65:21, 67:18
  **text** [10] - 39:14, 44:17, 44:21, 59:7, 59:14, 59:16, 60:2, 65:22, 68:15
  **THE** [253] - 2:3, 2:10, 3:2, 3:9, 3:13, 6:5, 6:7, 6:9, 6:11, 7:15, 7:16, 9:3, 9:6, 9:9, 9:12, 9:16, 9:18, 9:19, 9:22, 10:3, 10:12, 10:15, 10:18, 11:2, 11:12, 11:18, 12:14, 12:20, 12:23, 13:13, 13:18, 14:3, 14:8, 14:14, 14:21, 15:6, 15:8, 16:1, 16:4, 16:10, 16:13, 16:18, 17:12, 17:25, 18:14, 18:20, 18:23, 19:2, 19:6, 19:16, 19:21, 20:25, 21:12, 21:14, 22:6, 22:16, 22:20, 22:22, 23:7, 23:12, 23:23, 23:25, 24:4, 24:7, 24:10, 24:15, 24:20, 24:23, 25:1, 25:18, 25:22, 25:24, 26:8, 26:11, 26:16, 26:19, 26:21, 27:2, 27:7, 27:12, 27:20, 27:22, 27:24, 28:8, 28:13, 28:16, 28:22, 29:5, 29:8, 29:11, 29:13, 29:17, 29:25, 30:6, 30:17, 30:21, 31:1, 31:8, 31:14, 31:18, 31:20, 32:15, 32:18, 33:14, 33:23, 33:25, 34:6, 34:12, 34:14, 35:20, 35:24, 36:4, 36:10, 36:19, 36:25, 37:14, 37:16, 37:25, 38:5, 38:8, 38:14, 38:19, 38:23, 39:6, 39:17, 39:24,

40:8, 40:11, 41:1, 41:4, 41:7, 41:15, 41:20, 42:4, 42:9, 42:15, 42:21, 43:10, 43:17, 43:20, 44:6, 44:16, 44:19, 44:21, 45:1, 45:5, 45:10, 45:12, 46:4, 46:7, 46:9, 46:11, 46:19, 46:21, 47:4, 47:7, 47:24, 48:6, 48:18, 48:21, 48:24, 49:13, 49:23, 50:6, 50:16, 50:23, 51:1, 51:7, 51:20, 52:2, 52:11, 52:16, 52:18, 52:21, 52:25, 53:9, 53:12, 53:18, 54:3, 54:8, 54:13, 54:15, 54:22, 55:4, 55:18, 55:22, 55:24, 56:6, 56:9, 56:14, 56:22, 57:3, 57:22, 58:1, 58:25, 59:21, 59:24, 60:9, 60:17, 61:4, 61:10, 61:12, 62:5, 62:12, 62:15, 62:20, 63:9, 63:12, 63:16, 64:5, 64:7, 64:16, 64:20, 64:24, 65:3, 65:11, 65:13, 65:19, 66:1, 66:11, 66:17, 66:19, 66:22, 66:25, 67:4, 67:10, 67:15, 67:22, 68:1, 68:6, 68:8, 68:10, 68:19, 68:23, 69:1, 69:7, 69:9, 70:5, 70:8, 72:11, 72:16, 73:4, 73:8, 73:10, 73:22, 74:3, 74:10, 74:17, 74:22, 75:1, 75:5, 75:15, 75:18
  **theft** [4] - 31:7, 33:16, 34:8, 35:9
  **themselves** [1] - 14:16
  **theory** [13] - 12:4, 17:1, 17:3, 17:4, 19:8, 19:12, 21:22, 43:2, 56:25, 58:11, 58:14, 58:21, 59:5
  **thinking** [2] - 55:18, 68:4
  **third** [3] - 25:12, 25:18, 29:12
  **thoughts** [1] - 68:2
  **three** [8] - 34:19, 42:18, 47:1, 47:2, 62:18, 66:5, 72:19
  **ties** [1] - 42:2

  **timeline** [1] - 57:12
  **Timeline** [2] - 45:3, 59:15
  **timing** [1] - 75:12
  **Title** [2] - 32:7, 76:9
  **today** [6] - 6:25, 42:11, 64:19, 64:23, 66:3, 66:4
  **together** [7] - 25:10, 31:22, 34:20, 34:23, 43:4, 64:18, 68:2
  **tomorrow** [9] - 7:1, 7:8, 7:12, 8:7, 65:5, 69:14, 73:19, 73:21, 75:12
  **took** [2] - 21:5, 45:24
  **top** [2] - 22:23, 30:5
  **totally** [1] - 26:4
  **touch** [1] - 49:18
  **Tower** [1] - 2:18
  **trace** [1] - 20:19
  **training** [1] - 69:13
  **transaction** [7] - 34:3, 38:1, 38:5, 53:4, 59:14, 60:19, 61:23
  **transactional** [3] - 32:13, 32:24, 33:1
  **transactions** [2] - 46:14, 51:16
  **TRANSCRIPT** [1] - 1:12
  **transcript** [5] - 42:10, 42:11, 69:4, 76:10, 76:12
  **transfer** [2] - 37:24
  **transferred** [3] - 34:17, 50:17, 50:19
  **transferring** [1] - 46:15
  **transfers** [1] - 59:15
  **translate** [1] - 51:18
  **Transport** [2] - 45:4, 59:16
  **trash** [1] - 41:9
  **traveling** [1] - 51:14
  **trial** [7] - 22:12, 24:13, 25:1, 61:19, 72:13, 74:20, 75:3
  **TRIAL** [1] - 1:12
  **tried** [1] - 57:3
  **trouble** [1] - 39:19
  **true** [3] - 50:17, 71:1, 76:10
  **trying** [11] - 18:14, 24:10, 25:2, 38:24, 40:1, 44:18, 44:20, 59:17, 64:20, 65:5, 67:13
  **turn** [1] - 16:15, 21:16, 53:18

**two** [20] - 10:7, 17:22, 30:8, 32:2, 32:9, 33:3, 35:22, 39:10, 41:18, 42:19, 43:2, 44:15, 45:25, 46:12, 47:21, 48:1, 49:1, 49:6, 60:22, 75:3
  **tying** [1] - 33:13, 33:20
  **types** [1] - 72:19

### U

  **U.S** [2] - 1:3, 19:25
  **U.S.C** [2] - 53:8, 53:21
  **ultimately** [1] - 59:11
  **unadorned** [1] - 8:17
  **under** [4] - 11:14, 49:2, 53:23
  **underlying** [3] - 35:12, 39:4, 46:17
  **understood** [6] - 22:8, 33:14, 36:4, 41:16, 47:24, 51:20
  **undisputed** [1] - 67:15
  **unit** [1] - 47:3
  **United** [5] - 2:6, 2:7, 76:7, 76:9, 76:14
  **UNITED** [3] - 1:1, 1:5, 2:4
  **units** [1] - 48:1
  **unlawful** [13] - 33:20, 34:4, 53:5, 53:16, 54:1, 54:3, 54:5, 60:20, 61:1, 61:2, 61:24, 62:3, 63:3
  **unless** [1] - 71:18
  **unopposed** [1] - 66:21
  **unpack** [1] - 31:23
  **unreasonable** [1] - 60:6
  **up** [9] - 7:4, 8:1, 15:22, 26:13, 54:15, 63:18, 64:16, 71:18, 73:25
  **usual** [1] - 53:21
  **utilities** [1] - 41:13

### V

  **V&D** [4] - 57:15, 58:5, 59:12, 59:16
  **vacation** [1] - 51:14
  **VAHE** [1] - 3:13
  **Vahe** [28] - 16:5, 16:23, 17:4, 18:25,

32:20, 33:2, 33:7, 33:11, 36:8, 43:11, 44:3, 56:24, 57:1, 57:9, 57:13, 57:15, 57:19, 58:5, 58:7, 58:9, 58:12, 59:8, 59:11, 59:17, 60:1, 60:4
**value** [2] - 20:13, 20:14
**variance** [2] - 32:11, 61:21
**VAUGHN** [1] - 3:6
**venture** [2] - 47:20, 48:1
**venue** [1] - 35:22
**verb** [1] - 62:25
**verba** [3] - 70:20, 70:22, 70:24
**verdict** [4] - 8:12, 8:13, 8:15, 14:16
**vertical** [1] - 74:12
**via** [1] - 14:20
**view** [8] - 6:17, 10:19, 18:1, 18:5, 18:9, 19:11, 22:13, 50:6
**views** [1] - 17:21
**Viktoria** [2] - 20:9, 50:11
**violation** [2] - 30:13, 32:7
**virtue** [1] - 35:16
**visiting** [1] - 38:15
**vs** [1] - 1:7

## W

**wait** [5] - 27:2, 27:20, 27:24, 49:14, 54:22
**walk** [2] - 59:2, 59:4
**walked** [2] - 66:4, 66:9
**war** [1] - 71:14
**warrant** [1] - 9:2
**warranted** [1] - 64:14
**warrants** [1] - 20:18
**Washington** [1] - 2:22
**ways** [2] - 41:5, 71:10
**weak** [1] - 22:4
**Weddington** [1] - 45:21
**WEDNESDAY** [2] - 1:13, 6:1
**week** [1] - 21:25
**weeks** [2] - 11:22, 12:5
**weigh** [3] - 48:7,

50:14
**welcome** [2] - 67:16, 70:11
**West** [2] - 2:12, 3:7
**WEST** [1] - 1:24
**WESTERN** [1] - 1:2
**whole** [2] - 8:22, 70:12
**wife** [6] - 10:25, 12:12, 12:25, 14:5, 51:8
**willful** [1] - 10:11
**willfully** [3] - 11:15, 13:10, 31:10
**WILLIAMS** [2] - 3:3, 3:6
**WILSON** [1] - 1:3
**WIRCHING** [6] - 11:19, 12:19, 12:22, 13:4, 15:20, 16:3
**wire** [20] - 29:19, 31:9, 31:15, 35:12, 44:5, 49:22, 50:2, 53:17, 54:7, 59:15, 60:25, 61:7, 61:8, 61:13, 61:16, 62:9, 62:16, 62:17, 64:1
**wired** [1] - 44:4
**wires** [1] - 57:17
**WIRSCHING** [1] - 3:10
**wish** [1] - 18:10
**witness** [1] - 9:13
**WITNESS** [2] - 4:1, 4:3
**WITNESSES** [1] - 4:4
**word** [4] - 18:5, 51:7, 59:24, 62:24
**words** [12] - 6:25, 7:20, 8:23, 18:4, 30:12, 60:24, 61:6, 62:4, 62:15, 63:19, 70:25, 71:8
**written** [2] - 16:11, 16:22

## Y

**yesterday** [4] - 39:12, 40:9, 65:18, 66:3
**York** [2] - 2:16
**younger** [1] - 69:15
**yourself** [1] - 39:17
**yourselves** [1] - 69:22

## Z

**Zhadko** [2] - 23:6,

45:4
**Zindrosky** [1] - 35:8
**Zindrosky's** [3] - 35:3, 35:4, 35:16

**UNITED STATES DISTRICT COURT**