1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3               HONORABLE STEPHEN V. WILSON

4           UNITED STATES DISTRICT JUDGE PRESIDING

5                        - - -

6
   United States of America,            )
7                      PLAINTIFF,        )
                                         )
8    VS.                                 )  NO. CR 20-579 SVW
                                         )
9    Richard Ayvazyan, et al.,           )
                       DEFENDANT,        )
10   _____)

11

12

13         REPORTER'S TRANSCRIPT OF PROCEEDINGS

14               LOS ANGELES, CALIFORNIA

15               JURY TRIAL - DAY NINE

16           VOLUME 1 - A.M./P.M. SESSION

17             MONDAY, JUNE 28, 2021

18

19

20        _____

21             KATIE E. THIBODEAUX, CSR 9858
               U.S. Official Court Reporter
22                     Suite 4311
                  350 West 1st Street
23             Los Angeles, CA  90012

24

25

```
 1   APPEARANCES OF COUNSEL:

 2

 3   ON BEHALF OF THE PLAINTIFF, UNITED STATES OF AMERICA:

 4   U.S. DEPARTMENT OF JUSTICE
     U.S. ATTORNEY'S OFFICE
 5   BY: CATHERINE SUN AHN, AUSA
     -and- SCOTT PAETTY, AUSA
 6   312 North Spring Street
     Twelfth Floor
 7   Los Angeles, CA  90012

 8   -and-

 9   Christopher Fenton
     US Department of Justice
10   1400 New York Avenue, NW
     Washington, DC 20530

11

12
     FOR DEFENDANT R. AYVAZYAN:
13
     Ashwin J. Ram
14   Steptoe and Johnson LLP
     633 West 5th Street
15   Suite 1900
     Los Angeles, CA 90071
16
     Meghan Newcomer
17   Steptoe and Johnson LLP
     1114 Avenue of the Americas
18   New York, NY 10036

19   Michael A. Keough
     Steptoe and Johnson LLP
20   1 Market Street
     Spear Tower Suite 3900
21   San Francisco, CA 94105

22   Nicholas P. Silverman
     Steptoe and Johnson LLP
23   1330 Connecticut Avenue NW
     Washington, DC 20036
24

25
```

```
 1    APPEARANCES (Cont'd):

 2

 3    FOR DEFENDANT TERABELIAN:

 4    John Lewis Littrell
      Bienert Katzman Littrell Williams LLP
 5    903 Calle Amanecer
      Suite 350
 6    San Clemente, CA 92673

 7    Ryan Vaughan Fraser
      Bienert Katzman Littrell Williams LLP
 8    601 West 5th Street
      Suite 720
 9    Los Angeles, CA 90071

10

11    FOR DEFENDANT ARTUR AYVAZYAN:

12    Jennifer J. Wirsching
      1935 Alpha Road
13    Suite 216
      Glendale, CA 91208
14
      Thomas A. Mesereau, Jr.
15    Mesereau Law Group
      10100 Santa Monica Boulevard
16    Suite 300
      Los Angeles, CA 90067
17

18
      FOR DEFENDANT VAHE DADYAN:
19
      Peter Johnson
20    Law Office of Peter Johnson
      409 North Pacific Coast Highway
21    Suite 651
      Redondo Beach, CA 90277
22

23

24

25
```

```
1                    I N D E X

2

3    WITNESS NAME                        PAGE

4    MARYLEE ROBINSON

5    Direct Examination by Mr. Boyle        5

6    Cross-Examination by Mr. Silverman    23

7

8    EXHIBIT                     I.D.     IN EVID.

9    401                          11         11

10   402                          21         21

11   70*, 200-205                 22         22

12

13   *Exhibit No. 70 corrected to No. 77 at page 44.
```

```
 1         LOS ANGELES, CALIFORNIA; FRIDAY, JUNE 25, 2021

 2                        9:32 A.M.

 3                       - - - - -

 4

 5

 6        (The following proceedings were held in the

 7         presence of the jury:)

 8         THE COURT:  Good morning.  We are present with the

 9   parties and counsel.  The jury is present.  Thank you all

10   again for your attention and promptness.  We are going to

11   proceed to the forfeiture aspect of the case.

12             The government can present its evidence.

13         MR. BOYLE:  The government recalls Marylee

14   Robinson, your Honor.

15         THE CLERK:  The witness is reminded she is still

16   under oath.

17         MR. BOYLE:  May I proceed, Mr. Cruz?

18

19                   DIRECT EXAMINATION

20   BY MR. BOYLE:

21   Q    Good morning, Ms. Robinson.

22   A    Good morning.

23   Q    Did you testify previously during this trial?

24   A    Yes.

25   Q    And do you recall that testimony?
```

```
 1   A      I do.

 2   Q      Now, have you reviewed a transcript of that prior

 3   testimony?

 4   A      I have not.

 5   Q      So if I ask you questions today about that prior

 6   testimony in that earlier phase of trial will you be

 7   relying on your best recollection of that testimony?

 8   A      Yes.

 9   Q      I would like to show you a document previously

10   admitted as government Exhibit 115.

11          THE CLERK:  Can you speak up, counsel.

12          MR. BOYLE:  Government Exhibit 115, Mr. Cruz.

13          THE CLERK:  Thank you.

14   Q   BY MR. BOYLE:  Ms. Robinson, do you recognize this

15   document?

16   A      I do.

17   Q      Do you recall testifying about this document in the

18   previous phase of trial?

19   A      Yes.

20   Q      Is this document a set of summary charts that you

21   prepared based on documents provided to you by the

22   government?

23   A      It is.

24   Q      Very briefly, I would like to return to some of

25   these summary charts that you testified about during the
```

1    previous phase of trial.

2             Now, do you recall your prior testimony

3    regarding a parcel of real estate referred to as the

4    Calle La Primavera property?

5    A     Yes.

6    Q     And without going into full detail, in your prior

7    testimony did you attempt to trace PPP or EIDL funds into

8    the purchase of the Primavera property?

9    A     Yes, I did.

10   Q     I would like to show you page 5 from government

11   Exhibit 115.

12            Based on the records you reviewed, were PPP

13   funds used for the purchase of the Primavera property?

14   A     Yes.

15   Q     And how much in PPP funds were used for the

16   purchase of the Primavera property?

17   A     $238,614.

18   Q     And can you briefly describe for the jury the

19   source of those PPP funds you just referred to?

20   A     The source of those funds were two PPP loans, one

21   funded to Voyage Limo and the other funded to Runyan Tax

22   Service.

23   Q     And did you review escrow documents from Beverly

24   Hills Escrow?

25   A     I did.

1    Q      And based on the escrow documents you reviewed,

2    were the PPP funds you just referred to used to purchase

3    reel property?

4    A      Yes.

5    Q      And what real property was that?

6    A      The Calle La Primavera property.

7    Q      So moving on now, do you recall your previous

8    testimony regarding a parcel of real estate referred to

9    as the Anastasia Lane property?

10   A      Yes.

11   Q      And without going into full detail, in your prior

12   testimony did you attempt to trace PPP or EIDL funds into

13   the purchase of that property?

14   A      Yes.

15   Q      So I would like to show you page 6 of government

16   Exhibit 115.  Based on the records you reviewed, were PPP

17   or EIDL funds used for the purchase of the Anastasia Lane

18   property?

19   A      Yes.

20   Q      And how much in PPP or EIDL funds were used for the

21   purchase of the Anastasia Lane property?

22   A      $110,300.

23   Q      And can you briefly describe for the jury the

24   source of those PPP and EIDL funds used for the Anastasia

25   Lane purchase?

1   A      There were three loans, two EIDL loans and one PPP

2   loan.   The first is an EIDL loan funded through Redline

3   Auto Mechanics as well as a PPP loan to that same Bank of

4   America account, and, then, the third loan, EIDL loan,

5   was funded to Victoria Kauichko's Bank of America

6   account.

7   Q      And did you review escrow documents for Perfect

8   Escrow?

9   A      Yes, I did.

10  Q      And based on the escrow documents you reviewed,

11  were PPP and EIDL funds, the ones you just referred to,

12  used to purchase real property?

13  A      Yes.

14  Q      And what real property was that?

15  A      The Anastasia Lane property.

16  Q      I would like to move on to your testimony --

17  withdrawn.

18         Do you recall your previous testimony

19  regarding a parcel of real estate referred to as the

20  Topeka Drive property?

21  A      Yes.

22  Q      And in your prior testimony, did you attempt to

23  trace PPP or EIDL loan funds into the purchase of that

24  property?

25  A      Yes.

```
1   Q     I would like to show you page 7 of government
2   Exhibit 115.  So based on the records you reviewed, were
3   PPP or EIDL funds used for the purchase of the Topeka
4   Drive property?
5   A     Yes.
6   Q     And how much in PPP or EIDL funds were used for the
7   purchase of the Topeka Drive property?
8   A     $639,807.
9   Q     And can you briefly describe for the jury the
10  source of those PPP or EIDL funds that went to the
11  purchase of the Topeka Drive property?
12  A     This was a series of EIDL and PPP loans that were
13  funded through Timeline Transport, Allstate Towing, G&A
14  Diamonds, Redline Auto Collision and two Secureline
15  Realty accounts.
16  Q     And did you review escrow documents from Encore
17  Escrow?
18  A     Yes, I did.
19  Q     And based on those escrow documents you reviewed,
20  were the PPP and EIDL funds you just referred to used for
21  the purchase of real property?
22  A     Yes.
23  Q     And what real property was that?
24  A     The Topeka Drive property.
25  Q     I would like to move on now from this exhibit,
```

1 since your prior testimony, have you prepared any

2 additional summary charts for the government?

3 A   Yes, I have.

4     MR. BOYLE:  Your Honor and Mr. Cruz, I would like

5 to show just the witness what the government has marked

6 as government Exhibit 401.

7 Q   Ms. Robinson, do you recognize this document?

8 A   I do.

9 Q   And is this a document that you prepared?

10 A   Yes.

11     MR. BOYLE:  Your Honor, the government moves to

12 admit government Exhibit 401 as a summary exhibit under

13 Rule of Evidence 1006.

14     THE COURT:  Received.

15     MR. BOYLE:  Permission to publish, your Honor?

16     THE COURT:  Yes.

17 Q  BY MR. BOYLE:  So is government Exhibit 401, is that

18 a summary chart similar to those you testified about in

19 the previous phase of trial?

20 A   Yes.

21 Q   Now, during the course of your review of documents

22 provided to you, did you attempt to determine the balance

23 of PPP or EIDL funds in certain bank accounts that you

24 were provided?

25 A   Yes.

1   Q      And was one of the entities for which you conducted

2   that analysis Runyan Tax Services?

3   A      Yes.

4   Q      So I am showing you page 1 of government Exhibit

5   401.  Did you attempt to trace proceeds of any PPP or

6   EIDL loans into any bank accounts in the name of Runyan

7   Tax Service?

8   A      Yes.

9   Q      Did you identify any proceeds of PPP or EIDL funds

10  in the name of Runyan?

11  A      Yes, I did.

12  Q      Which account was that?

13  A      It is the Runyan Tax Service Bank of America

14  account ending in 9700.

15  Q      And can you briefly describe that tracing exercise

16  for the jury.

17  A      This involved a series of PPP -- three PPP loans

18  and one EIDL loan.  The PPP loan -- there was a PPP loan

19  funded through Voyage Limo as well as a PPP loan that

20  funded directly into Runyan Tax Service, and, then,

21  finally, a PPP and an EIDL loan funded through Mod

22  Interiors and ultimately payments to Runyan Tax.

23  Q      And what was the last date for which you reviewed

24  bank records for the Runyan Tax Service Bank of America

25  9700 account?

```
 1   A      August 31, 2020.
 2   Q      And what was the balance of PPP or EIDL funds in
 3   the account as of that date?
 4   A      $107,536.23.
 5   Q      Taking one step back, are you familiar with the
 6   term fungible property?
 7   A      Yes.
 8   Q      And can you briefly describe your understanding of
 9   the concept of fungible property to the jury?
10   A      When property is interchangeable, so one dollar is
11   interchangeable for another dollar, it is considered
12   fungible.
13   Q      And are funds in a bank account fungible property?
14   A      Yes.
15   Q      So if you put a hundred dollars into a bank
16   account, am I correct you don't necessarily get the exact
17   same hundred dollars back out?
18   A      Correct.
19   Q      So I would like to show you page 2 of government
20   Exhibit 401.  Now, did you attempt to trace proceeds of
21   any PPP or EIDL loans into any bank accounts in the name
22   of Allstate Towing and Transport LLC?
23   A      Yes.
24   Q      Did you identify proceeds of any PPP or EIDL funds,
25   loan funds, in any bank accounts in the name of Allstate?
```

1    A      Yes.

2    Q      And which bank account was that?

3    A      The Allstate Towing and Transport LLC Bank of

4    America account 7695.

5    Q      And can you briefly describe that tracing exercise

6    for the jury?

7    A      This involved a PPP loan funded into the Allstate

8    Towing US Bank account on May 5th of 2020 and then a

9    subsequent payment to the Bank of America account ending

10   7695 as well as an additional EIDL or SBA loan that

11   funded directly into the 7695 account on July 13th.

12   Q      And what was the last date for which you reviewed

13   bank records for the Allstate Bank of America 7695

14   account?

15   A      September 28th of 2020.

16   Q      And what was the balance of PPP or EIDL funds in

17   that Allstate account as of that date?

18   A      $144,970.07.

19   Q      Is it correct that for the purposes of your prior

20   testimony you only traced 27 PPP or EIDL loans?

21   A      That's correct.

22   Q      Now, during the course of reviewing the bank

23   statements provided to you by the government, did you at

24   times encounter other transactions which appeared to be

25   PPP or EIDL loans which you haven't been tasked with

1    tracing?

2    A      That's correct.

3    Q      And is one such apparent loan reflected on this

4    chart, page 2 of Exhibit 401?

5    A      It is.

6    Q      And how did you recognize this transaction as a

7    possible PPP or EIDL loan payment?

8    A      In my review of this, the Bank of America 7695

9    account, on the statement, the face of the statement,

10   there is a transaction on July 13th that is similar in

11   description to other SBA or EIDL loans, and it states on

12   the line that it is for the benefit of or payable to

13   Allstate Towing and T, Towing and Transport Company.

14   Q      Now, during your review of the documents provided

15   to you, did you attempt to calculate the rough amount of

16   cash withdrawn from the 24 bank accounts you traced for

17   your prior testimony?

18   A      Yes.

19   Q      I would like to show you page 3 of government

20   Exhibit 401.  Can you briefly explain what this chart is

21   summarizing for the jury?

22   A      This is a summary of cashier's checks identified in

23   the 24 bank accounts that I reviewed.  These are all

24   cashier's checks that were issued after the receipt of

25   any EIDL or PPP funds.

```
1   Q    So, as an example, can you briefly explain for the
2   grand jury, sorry, for the jury the fourth transaction
3   down in this chart which says Iulia Zhadko?
4   A    Yes.  That is a cashier's check from an account at
5   Wells Fargo, Iulia Zhadko, the account ending 8054.  It
6   is in the amount of $159,733, and it is made payable
7   to -- the payee indicates who it is payable to.  Payable
8   to Iulia Zhadko.
9   Q    So based on the records you reviewed, Iulia Zhadko
10  obtained a cashier's check for $159,733 payable to Iulia
11  Zhadko?
12  A    Correct.
13  Q    I would like to show you page 4 of government
14  Exhibit 401, and can you briefly explain to the jury what
15  this chart is summarizing?
16  A    This is a summary of the checks that I located that
17  were made payable to cash.  So those would have been
18  written on the payee line, the word cash on them.
19  Q    So what amount did your review of these bank
20  records indicate was withdrawn from these accounts in
21  checks payable to cash?
22  A    $17,190.
23  Q    And now I would like to show you page 5 of
24  government Exhibit 401, and can you briefly explain what
25  this chart is summarizing for the jury?
```

1    A     This is a summary of cash withdrawals between

2    April 22nd of 2020 and November 5th of 2020.

3    Q     So would it be correct to say that your review

4    identified at least $219,000 in funds withdrawn from bank

5    accounts you reviewed between April 22nd, 2020, and

6    November 5th, 2020?

7    A     Correct.

8    Q     And did you attempt to determine whether any of

9    these withdrawn funds were traceable to PPP or EIDL

10   loans?

11   A     Yes.

12   Q     And based on your review was there an amount that

13   was traceable to PPP or EIDL funds?

14   A     Yes.  The red line or the red text indicates

15   $181,302 was traceable to EIDL and PPP funds.

16   Q     And just to clarify, how many bank accounts were

17   you reviewing for the purpose of this exercise?

18   A     24.

19   Q     I would like to show you page 6 of government

20   Exhibit 401 -- actually page 7, please.  Now, if you look

21   down at the bottom of this page, can you briefly

22   summarize for the jury the transaction chain starting

23   with CRB PPP LN number 7303?

24   A     Yes.  That is a PPP loan that was funded on May 1,

25   2020, in the amount of $113,750 to Sabala Construction,

1   JP Morgan account ending 9906.  A couple of days later on

2   May 4th, $250,000 is sent out of that account to Hart

3   Construction, JP Morgan account ending 9066.  And, then,

4   between May 4th and May 14th, $105,000 is withdrawn, cash

5   withdrawals are made from that account.

6   Q    Thank you.  Now, during the course of your review

7   of the documents provided to you, did you attempt to

8   trace any transfers of funds from PPP or EIDL loans to

9   any jewelers?

10  A    Yes.

11  Q    I would like to show you page 9 of government

12  Exhibit 401.  So can you please explain to the jury what

13  this chart is summarizing?

14  A    This chart summarizes a series of EIDL and PPP

15  loans that were made to Timeline Transport which

16  ultimately are traced to Gentleman Timepieces, purchases

17  between July 3rd and July 17th of 2020 in the amount of

18  $82,000.

19  Q    So, based on your review, were PPP or EIDL loan

20  funds transferred to Picadilly Jewelers?

21  A    Yes.  That is part of the bottom part of the chart,

22  and those are PPP and EIDL through Mod Interiors towards

23  purchases at Picadilly.

24  Q    In what amount?

25  A    $238,960.

```
 1   Q       So, now, I would like to move on to page 9 of
 2   government Exhibit 401.  And can you briefly describe for
 3   the jury what this chart summarizes?
 4   A       This is a summary of the Gentleman Timepieces
 5   records of purchases made between April, 2020, and
 6   August, 2020.
 7   Q       And to prepare this summary, did you review
 8   documents provided by Gentleman Timepieces?
 9   A       I did.
10   Q       Did you review Excel spreadsheets?
11   A       Yes.
12   Q       And did you review text messages?
13   A       Yes.
14   Q       And did you review bank records?
15   A       I did.
16   Q       And did you review other documents provided by
17   Gentleman Timepieces?
18   A       Yes.
19   Q       And does this chart attempt to summarize all of
20   that data drawn from that number of sources?
21   A       Yes.
22   Q       Now, I would like to show you page 10 of government
23   Exhibit 401.  And can you briefly describe this summary
24   for the jury?
25   A       This is a summary of payments received by Gentleman
```

1  Timepieces.  The top box which sums to $283,000

2  represents payments that were deposited to Gentleman

3  Timepiece's bank account at JP Morgan ending 3656.  And

4  then the bottom box is a series of payments that were

5  also sent to Gentleman Timepieces and by really three

6  different sources, Wise Company, Cloud Currency and NECH.

7  Those total $147,620.  So the sum of the two boxes in

8  total that was received by Gentleman Timepieces is

9  $430,620.

10 Q    And when you say $430,620 was received by Gentleman

11 Timepieces, am I correct that that is just summarizing

12 what Gentleman Timepieces produced to the government?

13 A    Correct.

14 Q    Now, I notice in this top box there is a number of

15 entries under account that is a UNK.  Is that supposed to

16 mean unknown?

17 A    Yes.

18 Q    And is there a reason a number of them are marked

19 unknown?

20 A    In some instances, I was able to match a payment

21 that was in the Gentleman Timepieces records to a bank

22 record that I had, the 24 bank accounts that I have been

23 talking about.  And, if so, I was able to indicate that

24 bank, but, in other cases, I didn't -- I wasn't able to

25 connect those two.

1  Q      So is it correct to say when you created this chart

2  and summarized the Gentleman Timepieces records, you were

3  also considering the 24 bank accounts you reviewed?

4  A      Absolutely.

5         MR. BOYLE:  Your Honor and Mr. Cruz, I would like

6  to show just the witness what has been marked as

7  government Exhibit 402.

8  Q      Ms. Robinson, do you recognize this document?

9  A      Yes.

10  Q      And is this a document you prepared?

11  A      Yes.

12         MR. BOYLE:  Your Honor, move to admit government

13  Exhibit 402 as a summary exhibit under Rule of Evidence

14  1006.

15         THE COURT:  Received.

16         MR. BOYLE:  And permission to publish.

17         THE COURT:  Yes.

18  Q   BY MR. BOYLE:  So since your prior testimony, did

19  the government ask you to attempt to trace any other PPP

20  or EIDL funds relating to any additional transactions?

21  A      Yes.

22  Q      So turning your attention to government Exhibit

23  402, is this a summary of one such tracing exercise?

24  A      Yes.

25  Q      And what documents does this exhibit summarize?

```
 1   A      It summarizes a bank account -- the Turing
 2   Information Solutions JP Morgan bank account ending 2395
 3   and the Iulia Zhadko Doing Business As Top Quality
 4   Contracting Bank of America account 0762 as well as the
 5   PPP loan associated with this $384,100 PPP loan that was
 6   funded to Turing Info Solutions.
 7   Q      So, based on your review of these documents, were
 8   PPP and EIDL funds used in part to make a transfer to the
 9   entity that is circled down here at the bottom of the
10   chart which I will try to pronounce Chiraag Limited Doing
11   Business As JAIS on or about October 19th, 2020?
12   A      Yes.
13   Q      And, based on your review of those records, did
14   these funds go to First Carribean International Bank?
15   A      Yes.
16          MR. BOYLE:  No further questions for the witness,
17   your Honor.
18          MR. SILVERMAN:  Your Honor, before beginning, we
19   would move to admit defense Exhibits 70, 200, 201, 202,
20   203, 204 and 205.  We have provided copies of these to
21   the government.
22          THE COURT:  Any objections?
23          MR. BOYLE:  No objection, your Honor.
24          THE COURT:  Received.
25          MR. SILVERMAN:  Permission to publish as I go
```

```
 1    along, your Honor?

 2            THE COURT:  Yes.

 3

 4                        CROSS-EXAMINATION

 5    BY MR. SILVERMAN:

 6    Q     Good morning, Ms. Robinson.

 7    A     Good morning.

 8    Q     I would like to ask you about GX401, slide 3.

 9            MR. SILVERMAN:  Could we pull that up, Ms. Romero.

10    Q     Now, I believe you testified that this was part of

11    your summary of cash withdrawn; is that right?

12    A     Yes.

13    Q     And this isn't actually cash withdrawals, though.

14    It is cashier's checks; right?

15    A     These are cashier's checks.

16    Q     And do you know if they were then cashed after

17    this?

18    A     I don't.

19            MR. SILVERMAN:  Ms. Romero, I would like you to

20    zoom in on the top one here.

21    Q     Is the payee on this top cashier's check Anna

22    Manukyan?

23    A     Yes.

24    Q     And it is for $50,000 on May 4th; correct?

25    A     Correct.
```

1  Q     If we could bring up defense Exhibit 200 and go to

2  page 42.  Can you see who this is a bank account

3  statement to?

4  A     It is a Chase bank record.

5  Q     And is it in the name of Anna Manukyan?

6  A     It is, yes.

7  Q     And can we please go to page 43 and zoom in about

8  halfway down the page there is a number 50,000.

9        Now, does this show that on May 5th there was

10 an ATM check deposit of $50,000 into Anna Manukyan's bank

11 account?

12 A     It does.

13 Q     Fair to say that Anna Manukyan -- or that somebody

14 deposited the $50,000 cashier's check?

15     MR. BOYLE:  Objection.  Calls for speculation,

16 your Honor.

17     THE COURT:  Overruled.

18     THE WITNESS:  I would want to vary identify that

19 the bank provided a copy of the cashier's check or a

20 check deposited.

21 Q   BY MR. SILVERMAN:  Sure.  That is reasonable.  Can

22 we go to page 55, please, and could we unzoom so we can

23 see the entire cashier's check on the page.

24        Now, is this a copy of a cashier's check dated

25 May 4 from Arman Hayrapetyan to Anna Manukyan?

1    A     Yes.

2    Q     So is it fair to say that the cashier's check was

3    deposited into Ms. Manukyan's account?

4    A     That appears to be the case.

5    Q     If we could go back to government Exhibit 401,

6    slide 3.  And the second row is a $50,000 cashier's check

7    payable to Iulia Zhadko; correct?

8    A     Correct.

9    Q     And if we can pull up defense Exhibit 63 already in

10   evidence from trial, and go to page 26, please.

11          Now, is this a JP Morgan Chase account in the

12   name of Iulia Zhadko?

13   A     Yes.

14   Q     And if you look at May 14th, does it show an ATM

15   check deposit of $50,000?

16   A     Yes.

17          MR. SILVERMAN:  And if we can proceed to the next

18   page and one more and one more.  I apologize, Ms. Romero.

19   Page 30.

20   Q     And does this say posting date May 14th?

21   A     Yes.

22   Q     And it is an ATM deposit ticket?

23   A     Yes.

24   Q     And for $50,000?

25   A     Yes.

```
 1   Q     And if we can go to the next page, page 31.  It is
 2   a copy of the cashier's check from Arman Hayrapetyan to
 3   Iulia Zhadko?
 4   A     Yes.
 5   Q     So fair to say that the cashier's check from Arman
 6   Hayrapetyan to Iulia Zhadko was deposited into a JP
 7   Morgan Chase account and not cash; correct?
 8   A     Correct.
 9   Q     If we can go back to GX401, slide 3, please.  And
10   the third cashier's check on this slide is payable to
11   Fiber One Media for $50,000 on May 4th; correct?
12   A     Correct.
13         MR. SILVERMAN:  And can we please pull up GX1.C
14   and go to page 18.  18, please Ms. Romero.
15   Q     Now, is this a copy of the $50,000 cashier's check
16   from Arman Harapetyan to Fiber One Media?
17   A     Yes.
18   Q     And in the bottom right-hand corner, can you see is
19   there an endorsement on the check?
20   A     Yes.
21   Q     And it says for mobile deposit at Novo; correct?
22   A     That looks to be the case.
23   Q     And do you know Novo to be an online bank?
24   A     I am not familiar with that bank.
25   Q     But fair to say that it was presented for mobile
```

1   deposit; correct?

2   A     Yes.

3   Q     Now, if we can go back to GX401, slide 3.  The

4   fourth check is for $159,733; correct?

5   A     Yes.

6   Q     And made payable to Iulia Zhadko?

7   A     Yes.

8   Q     Now, can we please pull up DX202 already in

9   evidence.  Now, is this a deposit slip at Bank of America

10  for exactly $159,732.52?

11  A     Yes.

12        MR. SILVERMAN:  And can we go to the next page,

13  Ms. Romero, and is there another page after that.  Thank

14  you.

15  Q     And is this a copy of a cashier's check from your

16  chart GX401, slide 3?

17  A     Yes.

18        MR. SILVERMAN:  And can we zoom in slightly,

19  Ms. Romero, and then we will go back.  And then if we can

20  go back to GX401 slide 3.

21  Q     Now, the last cashier's check on this list is in

22  Secureline Realty, and it is made be payable to Tamara

23  Dadyan or ABC Realty Advisors; correct?

24  A     Yes.

25  Q     And you actually testified about this particular

```
 1  cashier's check in your trial testimony; right?
 2  A     Yes.
 3  Q     It was made payable to Tamara Dadyan or ABC Realty,
 4  but it was then deposited into ABC Realty's account
 5  wasn't it?
 6  A     Yes.
 7  Q     So not one of these five cashier's checks was
 8  actually signed into cash; right?
 9  A     It appears all five of them were deposited into
10  accounts.
11  Q     And if we can please go to slide 4.  These are
12  checks actually made payable to cash; correct?
13  A     Correct.
14  Q     Did you trace these to PPP or EIDL loan funds?
15  A     I don't know the specific for each one.
16  Q     So is it possible that of the $17,190, zero dollars
17  is traceable to PPP or EIDL loan funds?
18  A     I can't say one way or the other.
19  Q     If we can go to slide 5, please.
20        Now, at the bottom right-hand corner, it is
21  $181,302 that are traceable to EIDL or PPP loan funds;
22  correct?
23  A     Correct.
24  Q     Now, fair to say that a substantial portion of this
25  comes from Arman Harapetyan?
```

1    A       Yes.

2    Q       There is a 165,000 withdrawal; right?

3    A       Correct.

4    Q       Now, did you look at the rest of Mr. Hayrapetyan's

5    bank statements from -- strike that.

6            Did you look at the deposits made around the

7    time of withdrawal?

8    A       I have that information.  I am sure I looked at it

9    in preparing the analysis, but I don't have specific

10   recollection.

11   Q       Well, fair to say that this chart does not include

12   a column that takes into account those deposits; right?

13   A       Correct.

14   Q       Let's look at one such deposit.  If we can go to

15   government Exhibit 1.B as in boy and go to page 60,

16   please.  So this is one of the withdrawals included in

17   the chart; correct?

18   A       Yes.  I believe so.

19   Q       And can we go to the next page, please.

20           Fair to say that during the time period in

21   which you were examining withdrawals, there was also a

22   deposit of $80,000; correct?

23   A       That looks to be the case, yes.

24   Q       And do you know from this whether that deposit was

25   cash?

```
 1   A     It does not indicate on the slip.

 2   Q     I apologize.  I gave you the wrong page for that.

 3   If we can go to the next page.  It has the -- does this

 4   say a deposit of 80,000 cash in ticket?

 5   A     Yes, it does.

 6   Q     So fair to say that $80,000 in cash was deposited

 7   into Mr. Hayrapetyan's account?

 8   A     Yes.  On May 14th.

 9   Q     So if we can go back to GX401, slide 5.  So this

10   $165,000 in withdrawals minus 80,000 would be 85,000 in

11   net withdrawals; correct?

12   A     That is math, yes.  Works.

13   Q     And are you familiar with Mr. Hayrapetyan?

14   A     From -- I mean, I know the name.

15   Q     And you know that he plead guilty in this case;

16   correct?

17   A     I don't --

18         MR. BOYLE:  Objection.  Scope, your Honor.

19         THE COURT:  Overruled.

20   Q    BY MR. SILVERMAN:  Well, I would like to pull it up

21   DX77, please.

22   Q     And is this a transcript of proceedings in a change

23   of plea hearing?

24         MR. BOYLE:  Objection.  Foundation, your Honor.

25         MR. SILVERMAN:  It is in evidence, your Honor.
```

```
 1              THE COURT:  Well, you can proceed.
 2              THE WITNESS:  It says it is a transcript of
 3     proceedings for a change of plea hearing on June 4th of
 4     2021.
 5     Q    BY MR. SILVERMAN:  And the defendant is Arman
 6     Hayrapetyan; correct?
 7              MR. BOYLE:  Your Honor, it is unclear if this was
 8     actually in evidence or simply marked as an exhibit.
 9              THE COURT:  Well, I mean is this an official
10     transcript?
11              MR. SILVERMAN:  It is a transcript received from
12     the reporter directly, your Honor.
13              THE COURT:  I see.  All right.
14              MR. SILVERMAN:  And it is in evidence with respect
15     to counsel's question.
16              THE COURT:  Go ahead.
17     Q    BY MR. SILVERMAN:  So the defendant is Arman
18     Harapetyan; correct?
19     A    Yes.
20     Q    I will be brief with this document.  If we can go
21     to page 4 and just look at lines 8 to 16.  He is under
22     oath?
23     A    Yes.  That is what the transcript says.
24     Q    And if we can go to page 28, and then we will leave
25     this document behind.  And if we can blow up lines 3 to 9
```

```
 1    or even 3 to 12.  Sorry.
 2              Fair to say that Mr. Hayrapetyan testified
 3    under oath that he does not know Richard Ayvazyan or
 4    Marietta Terabelian?
 5         MR. BOYLE:  Objection.  Hearsay, your Honor.
 6         THE COURT:  Wait for a ruling.  You can proceed.
 7         MR. SILVERMAN:  Yes.
 8    Q    Is it fair to say that Mr. Harapetyan testified
 9    under oath that he does not know Mr. Ayvazian or
10    Ms. Terabelian or others?
11         THE COURT:  How does this relate to her tracing?
12         MR. SILVERMAN:  It relates to whether or not she
13    can trace the money from Arman Hayrapetyan to Richard
14    Ayvazyan.
15         THE COURT:  But her task here is not to give her
16    evaluation of testimony.  It is just to look at discrete
17    bank records and give her opinion about the tracing of
18    the monies.
19         MR. SILVERMAN:  Correct, your Honor, and this goes
20    to that opinion about the tracing of the monies,
21    specifically the limitations on that opinion.
22         THE COURT:  But you can bring that out generally
23    but not specifically.  The jury knows what she was asked
24    to do.  The objection is sustained.
25         MR. SILVERMAN:  Okay.
```

```
 1   Q     If we could please return to GX401, slide 5.  Now,
 2   fair to say that you did not review any records of
 3   Mr. Hayrapetyan delivering cash to Mr. Ayvazian or
 4   Ms. Terabelian?
 5        MR. BOYLE:  Objection.  Foundation, your Honor.
 6        THE COURT:  Any records.  He said not any
 7   evidence, any records.  In other words, how would you
 8   relate that to records?  Could you answer that in terms
 9   of records the way the question was asked?  Did the
10   records provide some answer one way or the other with
11   regard to the question?
12        THE WITNESS:  I am trying to think of a record
13   that would provide such information.  I can't think of
14   one.
15        THE COURT:  All right.  That is the answer.
16   Q   BY MR. SILVERMAN:  Do you know what happened to this
17   cash after Mr. Hayrapetyan withdrew it?
18        MR. BOYLE:  Objection.  Foundation, scope, your
19   Honor.
20        THE COURT:  Sustained.  I mean does she know by
21   way of tracing the funds after Hayrapetyan withdrew it?
22        MR. SILVERMAN:  Correct.
23        THE COURT:  All right.  Can you answer that, "yes"
24   or "no?"
25        THE WITNESS:  I don't know what happened to the
```

1    cash after it went out of the account.

2    Q    BY MR. SILVERMAN:  There is a casino gaming column

3    here.  Can you explain what that is?  Those are

4    transactions identified on the bank statements that

5    involve casinos or third-party administrators at casinos.

6    Q    And when you say transactions that involve casinos

7    are they also withdrawals or something else?

8    A    Typically, what I saw were transactions.  An

9    example would be an entity called Everi, E-V-E-R-I, and

10   they secure transactions at casinos.  And that is what I

11   was capturing here.

12   Q    And casinos sometimes produce records of winnings

13   by the players; correct?

14         MR. BOYLE:  Objection.  Foundation, your Honor.

15         THE COURT:  Answer of your knowledge if you know

16   or not or if you know or don't know.

17         THE WITNESS:  I believe a casino could produce

18   records of a player's activity at a casino.

19   Q    BY MR. SILVERMAN:  And you did not review any such

20   records in conjunction with preparing this chart, did

21   you?

22   A    I did not.

23   Q    So this does not represent winnings at a casino;

24   right?

25   A    It does not.

```
1    Q     Now, if we can go to slide 10 of this presentation,
2    please.
3              Now, these are the payments sent to Gentleman
4    Timepieces that you reviewed; correct?
5    A     Yes.
6    Q     And you say that the payments total $430,000; is
7    that right?
8    A     Correct.
9    Q     And if we go back to slide 8, please, and can we
10   zoom in on the transfer from Timeline to Gentleman
11   Timepieces.
12              Is it fair to say that of that $430,000 you
13   have traced 82,000 to PPP or EIDL loan funds?
14   A     The 82,000 is one tracing exercise.
15   Q     Well, have you traced additional money from PPP or
16   EIDL loan funds through to Gentleman Timepieces that is
17   not present on this slide?
18   A     Yes.  I believe that is true.  I just wasn't asked
19   to present that information.
20   Q     And what quantity have you traced funds through
21   from PPP or EIDL loan funds to Gentleman Timepieces?
22   A     I don't know the total.
23   Q     Is it fair to say that it is not $430,000?
24   A     If you would like to go back to the 430, I can --
25   Q     Sure.  If we could bring up slide 10.
```

```
 1    A       So I could only perform tracing through the 24 bank

 2    accounts that we have been talking about so this 430 was

 3    paid from other -- some other sources or other sources.

 4    Q       And, specifically, 82,000 of it was paid through

 5    the sources you have traced; correct?

 6    A       I traced $82,000, but I am just saying that the

 7    number could be higher.  That was just one transaction

 8    shown on a slide.

 9    Q       Right.  We don't know if the number is higher or

10    not; right?

11    A       Correct.

12    Q       And if we can please go to slide -- I'm sorry.  If

13    we could go to GX402.  And, in this instance, there is a

14    purchase from Chiraag Limited Doing Business As Jais in

15    the amount of $34,750?

16    A       Correct.

17    Q       And you trace 9,200 of those dollars to PPP funds

18    specifically; correct?

19    A       Yes.

20    Q       So that would leave approximately $25,550 that was

21    not traced to PPP funds?

22    A       That amount sounds about right.

23    Q       And one last sort of math-based question.  We have

24    got 9,200 and 82,000.  That is a total of $91,200 in

25    traceable funds; correct?
```

```
1    A     Yes.

2    Q     If we could please pull up government Exhibit 115

3    and go to slide 7.  Now, this says the purchase price was

4    $3.52 million; correct?

5    A     Yes.

6    Q     But I believe you testified during trial that the

7    down payment was more like 1.2 million?

8    A     Yes.

9    Q     So if $640,000 came from EIDL and PPP funds, that

10   would leave about 535,000 that came from untraced funds;

11   correct?

12   A     Came from funds that I didn't trace out of the 27

13   loans.  Other sources.

14   Q     Came from funds that you did not trace back to EIDL

15   or PPP funds; correct?

16   A     To the 27 loan.

17   Q     And the 27 loans were the EIDL or PPP funds that

18   you traced; right?

19         MR. BOYLE:  Objection.  Foundation.  Calls for --

20   not in evidence.

21         THE COURT:  Overruled.

22         THE WITNESS:  I was looking at 27 specific loans

23   and tracing them through.  All I am trying to distinguish

24   here is, as we discussed earlier, there is other loans

25   out there.  So there is other sources and I didn't see --
```

1    I was just looking at the 27.

2    Q    BY MR. SILVERMAN:  And when you were tracing money,

3    you haven't looked at the mortgage payments; right?

4    A    No.  I have not reviewed the mortgage payments.

5    Q    And this purchase was made in June of 2020.  So

6    fair to say that the mortgage payments had been going on

7    for almost a year?

8    A    I have no knowledge one way or the other if those

9    payments have been made.

10   Q    And if we could just bring up defense Exhibit 205

11   which was one of the ones offered into evidence already.

12            Now, if we could read the statement date in

13   the top right-hand corner, Ms. Robinson, please?

14   A    June 14th, 2021.

15   Q    And does this appear to be a mortgage statement

16   addressed to Richard Ayvazyan and Marietta Terabelian at

17   4910 Topeka Drive?

18   A    Yes.

19       MR. SILVERMAN:  And if you could, Ms. Romero, zoom

20   in on the explanation of payment due in the top

21   right-hand corner.

22   Q    Fair to say that the current payment is over

23   $15,000.

24   A    This states the current payment is $15,826.15.

25   Q    And this states that the amount of overdue payments

1   is less than $5,000; right?

2   A      Yes.

3          MR. SILVERMAN:  So I would like to take this down

4   now, please, Ms. Romero.

5   Q      Now, you testified about a number of cash

6   withdrawals.  Fair to say that you didn't analyze all the

7   places where Richard Ayvazyan may have obtained cash?

8          MR. BOYLE:  Objection.  Foundation, your Honor.

9          THE COURT:  She can answer "yes" or "no" or what

10  she did.

11         THE WITNESS:  I reviewed the 24 bank accounts.

12  Q   BY MR. SILVERMAN:  And so it is possible that he has

13  other sources of income; correct?

14         MR. BOYLE:  Calls for speculation, your Honor.

15         THE COURT:  Sustained.

16  Q   BY MR. SILVERMAN:  I will bring up defense Exhibit

17  203 which was offered into evidence at the outset of this

18  examination.

19              If we can zoom in on the first paragraph, is

20  this a tax information statement from MGM Resorts?

21         MR. BOYLE:  Objection.  Foundation, scope,

22  hearsay, your Honor.

23         MR. SILVERMAN:  It is in evidence, your Honor.

24         THE COURT:  Don't respond to each other.  I

25  thought it was offered and you had no objection to it

1   being in evidence.

2          MR. BOYLE:  No objection to it being in evidence,

3   your Honor, but the witness is being asked about

4   documents far outside the scope of her testimony.

5          THE COURT:  But you agreed to it being in

6   evidence.  It is in evidence so the examiner can ask

7   questions about it.  Go ahead.

8          THE WITNESS:  Can you repeat the question?

9   Q    BY MR. SILVERMAN:  Does this second line say MGM

10  Resorts International Consolidated M Life Rewards Tax

11  Statement?

12  A    Yes.

13         MR. SILVERMAN:  And, Ms. Romero, if we can reduce

14  that.

15  Q    If you look at total estimated win/loss in the very

16  bottom righthand corner, what is that amount?

17  A    $211,695.

18  Q    And what year is this statement for according to

19  the statement itself?

20  A    It says it is for 2019.

21  Q    And if we can bring up defense Exhibit 204 and go

22  to page 18.  And is this a statement from back in 2009?

23  A    This statement references 2009.

24  Q    And the total win/loss for the year of 2009 is

25  $148,450; correct?

```
 1   A       That is what it says.  Yes.

 2          MR. SILVERMAN:  No further questions, your Honor.

 3          MR. BOYLE:  Nothing from the government, your

 4   Honor.

 5          THE COURT:  Thank you, Ms. Robinson.

 6          MR. BOYLE:  Your Honor, the government has no

 7   further witnesses, but there is one stipulation the

 8   parties have all agreed to to be read into the record.

 9          THE COURT:  Go ahead.

10          MR. BOYLE:  The government has submitted an ex

11   parte application for a trial bill of particulars

12   identifying certain specific property allegedly subject

13   to forfeiture.

14            The bill of particulars.  The parties agree

15   that the property identified in the bill of particulars

16   was, in fact, seized as described in the bill of

17   particulars.  This stipulation is being entered into

18   freely and voluntarily by all parties.  The stipulation

19   does not constitute an admission by any defendant that

20   any property identified in the bill of particulars is

21   actually subject to forfeiture, and the parties agree and

22   stipulate that this stipulation be entered into evidence

23   at trial.  This stipulation constitutes conclusive proof

24   of the above matters for all purposes.

25            And I will read the relevant portion of the
```

1  bill of particulars.

2        Notice is hereby given that the government

3  pursuant to the forfeiture allegations set out in the

4  first superseding indictment intends to seek criminal

5  forfeiture of the following specific property:

6        $74,557.79 in bank funds seized pursuant to a

7  federal seizure warrant executed on November 20, 2020

8  from Bank of America account number ending 7695 held in

9  the name of Allstate Towing and Transport, LLC;

10  $65,990.42 in bank funds seized pursuant to a federal

11  seizure warrant executed on or about December 2nd, 2020,

12  from Bank of America account ending in 9700 in the name

13  of Runyan Tax Service Incorporated; $3422.00 in United

14  States currency seized on October 20, 2020, from Richard

15  Ayvazyan and Marietta Terabelian at the Miami

16  International Airport; $451,185 in US currency seized on

17  November 5th, 2020 during the execution of a federal

18  seizure warrant in various areas in the backyard of a

19  Tarzana, California residence;

20        Miscellaneous jewelry and precious items

21  seized on November 5th, 2020, during the execution of a

22  federal seizure warrant at a Tarzana, California

23  residence consisting of, one, Audemars Piquet Royal Oak

24  18 karat rose gold wristwatch, model 26331 serial number

25  J52335; one Rolex date adjust stainless steel wristwatch,

1   model 126334, serial number 4U95Z313; one Audemars Piquet

2   Royal Oak Offshore Black Ceramic wristwatch, serial

3   number K23313, one Audemars Piquet Royal Oak Offshore

4   Black Ceramic wristwatch, serial number LU44845K, one

5   Audemars Piquet Royal Oaks stainless steel wristwatch,

6   serial number LW3397N;

7        One 1979 gold bullion coin, two 1980 gold

8   bullion coins, 10 1982 gold bullion coins,  17 1983 gold

9   bullion coins, 5 1984 gold bullion coins; 5 1985 gold

10  bullion coins, 10 1986 gold bullion coins and 10 1987

11  gold bullion coins;

12        Miscellaneous jewelry and precious items

13  seized on October 20, 2020, from Richard Ayvazyan and

14  Marietta Terabelian at Miami International Airport

15  consisting of one Rolex day date watch serial number

16  W44P7238, one 14 karat yellow gold 24-inch neck chain and

17  one pair of 14 carat white gold earrings with diamond

18  studs.

19        That concludes the stipulation, your Honor.

20       THE COURT:  Okay.  Anything further from either

21  side?

22       MR. BOYLE:  Nothing further from the government,

23  your Honor.

24       MR. SILVERMAN:  Nothing further from the defense,

25  your Honor.

```
 1              THE COURT:  All right.  The evidence regarding

 2    this phase of the case is now complete.  I may need a

 3    little time to consult with the parties about some

 4    additional jury instructions so I will ask you to take

 5    about 20 minutes or so, and then I will give you the

 6    remaining jury instructions.  And then you can decide

 7    this phase of the case.  Thank you.

 8              (The following proceedings were held at sidebar

 9               outside the presence of the jury and the Court:)

10              THE CLERK:  We are here on the record with AUSA

11    Dan Boyle and defense counsel, Nicholas Silverman, to

12    clarify the record of an admitted exhibit.

13              MR. SILVERMAN:  When I was speaking, I

14    accidentally said defense Exhibit 70.  The correct number

15    is defense Exhibit 77.

16              MR. BOYLE:  Agreed.

17              THE CLERK:  All right.  We are good.

18              (Recess from 10:39 to 10:46 a.m.)

19              (The following proceedings were held outside the

20               presence of the jury:)

21              THE COURT:  Everybody here?

22              MR. RAM:  I think we are missing a couple, a

23    defendant and then an attorney.

24              MR. JOHNSON:  We are missing the interpreter as

25    well.
```

```
 1            THE COURT:  I meant 20 minutes for the jury.  I
 2   didn't make myself clear.  I intended to discuss the jury
 3   instructions briefly with the parties.  I have examined
 4   the government's proposed instructions and the
 5   government's objection to the defendant's instructions.
 6            The -- one of the principle arguments concerns
 7   the applicability of the Honeycut case.  My view is that
 8   the Honeycut case does not apply here, and there was some
 9   discussion about the model Seventh Circuit jury
10   instruction, and I agree with the government's position
11   in that regard.  If there is some further argument that
12   defendants want to make, I will consider it.
13            MR. FRASER:  Just, your Honor, on behalf of
14   Ms. Terabelian, she joins Richard Ayvazyan's request as
15   to the jury instruction and verdict form.
16            THE COURT:  All right.
17            MR. SILVERMAN:  And, your Honor, there is one
18   specific government proposed instruction that we would
19   request be omitted, specifically, the forfeiture of
20   fungible property, instruction No. 12 which, first of
21   all, it applies to in rem proceedings as opposed to in
22   personum and also would cause juror confusion in this
23   case which deals not with any allegations that cash or
24   currency was replaced with identical cash or currency but
25   rather that it never was transferred to begin with.
```

```
 1          THE COURT:  Let me read that again.  Just one

 2   moment.

 3          MR. SILVERMAN:  Yes, your Honor.

 4          THE COURT:  What is the government's response on

 5   that?

 6          MR. BOYLE:  Your Honor, this case involves a

 7   number of fungible properties including two bank

 8   accounts, cash and precious metals.  This is exactly the

 9   kind of case where a fungible property forfeiture

10   instruction would apply, and the fungible property

11   statute which is 18, U.S.C., 984, it does apply through

12   28 USC -- the citation is on my jury instructions, your

13   Honor, but the section which states that 2461(c) which

14   states that simple forfeiture is applicable in criminal

15   proceedings where alleged properly, your Honor.

16          THE COURT:  What did you say?  The last part.

17          MR. BOYLE:  2461(c) states that the rules and the

18   statutes for civil forfeiture apply in criminal

19   forfeiture where properly alleged which the government

20   has done here, your Honor.

21          THE COURT:  All right.  I will take a look at

22   that, and then we will get back.  Have the jury come

23   back.  Just wait a few minutes.

24          (Recess from 10:50 to 11:12 a.m.)

25          (The following proceedings were held in the
```

```
1          presence of the jury:)
2          THE COURT:  Okay.  Members of the jury, I will now
3     give you the instructions which apply to this phase of
4     the case.
5               While deliberating concerning the issue of
6     forfeiture, you must not re-examine your previous
7     determination regarding the defendant's guilt.  However,
8     all the instructions previously given to you concerning
9     duties of the jury, your consideration of the evidence,
10    what is and is not evidence, the credibility of
11    witnesses, expert testimony, your duty to deliberate
12    together, your duty to base your verdict solely on the
13    evidence without prejudice, bias or sympathy, and the
14    necessity of a unanimous verdict will continue to apply
15    during these supplemental instructions.
16              Your duty at this phase of the proceeding is
17    solely to determine whether the government has proven the
18    required connection between the property sought for
19    forfeiture and the offenses for which you have found the
20    defendants guilty.
21              You should not consider what might happen to
22    the property in determining whether the property is
23    subject to forfeiture.  The disposition of any property
24    that is declared forfeited is exclusively a matter for
25    the court to decide.  Similarly, if any property has been
```

1    transferred to a third party, the court will later

2    determine the rights of that third party to the property.

3            Some of the property which the government

4    claims is subject to forfeiture may be in the name of one

5    or more defendants and persons or business entities other

6    than the defendants.  However, any interest that a person

7    other than a defendant may claim to such property will be

8    taken into account by this Court in a separate

9    proceeding.  Interests of persons or entities other than

10   any of the defendants are not for your consideration.

11           Your sole task is to determine whether the

12   defendants' interest in the property, whatever that

13   interest may be, is subject to forfeiture under the

14   applicable law.

15           With two important exceptions, all previous

16   instructions will continue to apply to your

17   deliberations.

18           The first exception is that, during this

19   phase, the government's burden is no longer proof beyond

20   a reasonable doubt but instead it is proof by a

21   preponderance of the evidence which I will define for

22   you.

23           The second exception is that, during this

24   phase, you will consider a component of a potential

25   punishment to be imposed on the defendants, but your sole

1    task is to determine whether the government has

2    established by a preponderance of the evidence the

3    required connection between the crimes of which

4    defendants have been found guilty and the property sought

5    for forfeiture.

6         When a party has the burden of proof on any

7    claim by a preponderance of the evidence, it means you

8    must be persuaded by the evidence that the claim is more

9    probably true than not true.  You should base your

10   decision on all the evidence regardless of which party

11   presented it.

12        In making the forfeiture determination, you

13   should consider all of the evidence presented during the

14   trial as well as the evidence presented during these post

15   verdict forfeiture proceedings regardless of who offered

16   it.  You should evaluate the evidence and its credibility

17   according to the instructions given to you earlier.

18        The forfeiture allegations are set forth in

19   the first superseding indictment, are not evidence and do

20   not create any inference that the property is subject to

21   forfeiture.  The defendants have denied the property is

22   subject to forfeiture.

23        I will soon describe the specific property the

24   government seeks to forfeit and what the government must

25   prove to forfeit such property.  You will be asked to

1    consider whether such property is subject to forfeiture

2    including on multiple grounds.  You need not be concerned

3    with the double counting of monetary amounts or

4    overlapping of properties.  Even if you find that a

5    particular property is subject to forfeiture for more

6    than one reason, that does not mean the government will

7    receive the property twice.

8              However, it is important that you indicate on

9    the special verdict form all bases on which you find any

10   property is subject to forfeiture.  Any issues of double

11   counting or overlapping will be considered by the court

12   when imposing sentence.

13             Under federal law, any defendant convicted of

14   one more or more violations of Title 18, United States

15   Code, Section 1343 shall forfeit to the government all

16   defendant's right, title and interest in any and all

17   property, real or personal constituting or derived from

18   any proceeds obtained directly or indirectly as a result

19   of the offense.

20             Under federal law, any defendant convicted of

21   one or more violations of Title 18, United States Code,

22   Section 1344 shall forfeit to the government all of

23   defendant's right, title and interest in any and all

24   property, real or personal, constituting or derived from

25   any proceeds obtained directly or indirectly as a result

1    of the offense.

2           Under federal law, any defendant convicted of

3    one or more violations of Title 18, United States Code,

4    Section 1028(a) concerning a violation of Title 18,

5    United States Code, Sections 1343 or 1344 shall forfeit

6    to the government all of defendant's right, title and

7    interest in any and all property, real or personal,

8    constituting or derived from any proceeds obtained

9    directly or indirectly as a result of the offense.

10          Property subject to forfeiture as proceeds of

11   a scheme to defraud includes any money obtained as a

12   result of the scheme and any property obtained with that

13   money.  Proceeds remain proceeds regardless of how many

14   times the property may change form.

15          For example, the proceeds of a crime may start

16   out as money in one bank account, be moved to a second

17   bank account, be converted to a check and then used to

18   buy a car.  In that case, each of the items would be

19   considered the proceeds of the offense or property

20   derived from such proceeds.

21          In a case like this one involving a scheme to

22   defraud, property is subject to forfeiture if it is

23   derived from or traceable to the scheme as a whole.  It

24   is not necessary for the government to trace the property

25   to a particular execution of the scheme such as a

1    particular wire transfer.

2            The government is not required to identify

3    specific cash, precious metals or bank funds involved in

4    an offense that is the basis for the forfeiture because

5    it is not a defense that the cash, precious metals or

6    bank funds involved in such an offense were removed and

7    replaced by identical property.  Any identical cash,

8    precious metals or bank funds found in the same place or

9    account as the property involved in the offense that is

10   the basis for the forfeiture shall be subject to

11   forfeiture.

12           The government seeks to forfeit the following

13   property pursuant to the findings of guilt on each of

14   Counts 1 through 22 and 24:

15           One, all of the convicted defendants' right,

16   title and interest in certain real property located in

17   Tarzana, California, identified by assessor's parcel

18   No. 2176-029-031;

19           Two, all of the convicted defendants' right,

20   title and interest in certain property located in

21   Glendale, California, identified by assessor's parcel

22   No. 5663-036-033;

23           Three, all of the defendants' right, title and

24   interest in certain real property located in Palm

25   Springs -- strike that -- Palm Desert, California,

1    identified by assessor's parcel number 694-331-008;

2          $74,557.79 in bank funds seized from Bank of

3    America account number ending in 7695 held in the name of

4    Allstate Towing and Transport LLC;

5          Five, $65,990.43 in bank funds seized from

6    Bank of America account ending in the 9700 in the name of

7    Runyan Tax Service, Inc.;

8          Six, $451,185 in US currency seized on

9    November 8th, 2020, in various areas and backyard of a

10   Tarzana, California, residence;

11         Seven, $3,422 in US currency seized on

12   November 20, 2020, from Richard Ayvazyan and Marietta

13   Terabelian at the Miami International Airport;

14         Eight, one Audemars Piquet -- is that how you

15   say it -- Piquet Royal Oak 18 karat rose gold wristwatch,

16   model 26331, serial number J52335;

17         Nine, one Rolex date adjust stainless steel

18   wristwatch, model 126334, serial number 4U95Z313;

19         Ten, one Audemars Piquet Royal Oak Offshore

20   Black Ceramic wristwatch, serial number K23313;

21         Eleven, one Audemars Piquet Royal Oak Offshore

22   Black Ceramic wristwatch, serial number LU44845K;

23         Twelve, Audemars Piquet Royal Oak Stainless

24   Steel wristwatch, serial number LW3397N;

25         Thirteen one Rolex Day Date watch, serial

1  number W44P7238;

2          Fourteen, 16 gold bullion coins;

3          Fifteen, one 14 karat yellow gold 24-inch neck

4  chain;

5          And, sixteen, one pair of 14 karat white gold

6  earrings with diamond studs.

7          The government contends that the property

8  described above constitutes or is derived from the

9  proceeds obtained directly or indirectly as a result of

10 the violations at which one or more defendants was found

11 guilty and is therefore subject to forfeiture to the

12 United States pursuant to Title 18, United States Code,

13 Section 981(a)(1)(C).

14         If you conclude that the government has proved

15 by a preponderance of the evidence that the property

16 listed above constitutes or is derived from proceeds of

17 one or more of the defendants obtained directly or

18 indirectly as a result of the violations of which one or

19 more defendants has been found guilty, you must find that

20 such property is forfeitable to the United States.

21         Under federal law, any defendant convicted of

22 one or more violations of Title 18, United States Code,

23 Section 1956 or a conspiracy to commit the same shall

24 forfeit to the government all of defendants' right, title

25 and interest in any and all property, real or personal

1    involved in such offense or any property traceable to

2    such property.

3            Property subject to forfeiture as property

4    involved in a violation of Section 1956 of Title 18 of

5    the United States Code, Count 26, includes, one, money or

6    other property that was the subject of the financial

7    transactions that constituted the money laundering

8    violation, two, any property used to facilitate such a

9    money laundering violation, and, three, any fees or

10   commissions paid to the money launderer.

11           Property may be the subject of the financial

12   transaction in a number of ways.  For example, the

13   property may be the proceeds of the underlying specified

14   unlawful activity which were used to conduct the

15   transaction.  It may be property that was committed with

16   those proceeds at the time the financial transaction took

17   place or it may be property that was obtained as part of

18   an exchange or purchase that constituted the violation

19   for which a defendant has been found guilty.

20           Property that was used to facilitate the money

21   laundering transaction may include property that was not

22   part of the transaction itself but was used to make the

23   money laundering offense easier to commit or harder to

24   detect.

25           Property that is traceable to the property

1  described in 1 through 3 above in this instruction is

2  also subject to forfeiture.  The property -- any property

3  traceable to such property includes any property which

4  was exchanged for, derived from or obtained with any of

5  the property involved in the underlying money laundering

6  crime.

7           For example, property involved in a money

8  laundering violation may be used to acquire, improve or

9  maintain real or personal property in a transaction that

10 is not a money laundering violation but that real or

11 personal property is for -- but that real or personal

12 property is forfeitable because it can be traced to

13 property that was involved in the money laundering

14 violation.

15          Property is forfeitable as traceable to

16 property that was involved in a money laundering -- in a

17 money laundering if -- let me start that again.  Property

18 is forfeitable as traceable to property that was involved

19 in money laundering even if some untainted funds were

20 also used to purchase, improve or maintain the property.

21          And the government seeks to forfeit the

22 following property pursuant to the findings of guilt on

23 Count 26 -- it appears to me that the property described

24 in that instruction is the same property that I

25 previously described; is that correct?

1          MR. BOYLE:  That is correct with one exception,

2     your Honor.  There is one asset omitted, and that is the

3     $74,557.79 cents.  That is the only distinction between

4     those two.

5          THE COURT:  I see.  All right.

6               The government contends that the property

7     described above -- I am not reading it to you because it

8     is the same with that exception as I previously read to

9     you, and you will have a copy of these instructions.

10              The government contends that the property

11    described above was involved in or traceable to the money

12    laundering violations for which one or more defendants

13    were found guilty and is therefore subject to forfeiture

14    to the United States pursuant to Title 18, United States

15    Code, Section 982(a)(1).

16              If you conclude that the government has proved

17    by a preponderance of the evidence that the property

18    listed above was involved in such offense or traceable to

19    the violations of which one or more defendant has been

20    found guilty, you must find that such property is

21    forfeitable to the United States.

22              A special verdict form has been prepared for

23    your use with respect to the property listed or

24    described.  You are asked to decide whether it is subject

25    to forfeiture to the government based on the reasons I

1    have explained to you.  Your decision must be unanimous.

2    Indicate on the verdict form whether you find that the

3    property listed is subject to forfeiture and, then, the

4    foreperson should sign and date the form.

5              And, then, there will be a special verdict

6    form presented to you that you should complete if you can

7    reach a unanimous verdict.

8              Is the bailiff here?

9         THE CLERK:  Yes, your Honor.

10        THE COURT:  The bailiff is still sworn; correct?

11        THE CLERK:  Yes, your Honor.

12        THE COURT:  So will the bailiff usher the jury to

13   the jury room so they can deliberate.

14        MR. SILVERMAN:  And, your Honor, before they

15   deliberate, we would ask first that our objections be

16   deemed renewed and for argument, your Honor.

17        THE COURT:  Okay.

18        (The following proceedings were held outside the

19          presence of the jury:)

20        THE COURT:  While the jury is deliberating, there

21   was a new matter raised by the government concerning the

22   issue of waiver, and can the government describe that

23   issue with some more detail?

24        MR. FENTON:  Yes, your Honor.

25        THE COURT:  Oh.  Wait a minute.  Wait a second.

 1  Get the jury back here.  I'm sorry.  Get them back right

 2  away, Paul.

 3          Did I do something that I shouldn't have by --

 4  the government or the defense want to make arguments?

 5          MR. RAM:  Yes, your Honor.

 6          THE COURT:  I am getting the jury back

 7  immediately.  They have not even got to the jury room.  I

 8  apologize for that oversight.

 9          MR. BOYLE:  Your Honor, to the extent the court

10  permits argument, the government would move to strike the

11  defense Exhibit 77.  The government recognizes that the

12  rules of evidence do not apply at the forfeiture phase.

13  However, the defendant showed two pages of a multiple,

14  almost 50-page transcript and now intends to send that

15  entire transcript back to the jury, and that risks

16  serious jury confusion including --

17          THE COURT:  How does that -- why is that part of

18  the transcript so relevant?

19          MR. BOYLE:  We don't believe any part of it is

20  relevant, your Honor.

21          THE COURT:  What is the relevance of that part of

22  the transcript?

23          MR. SILVERMAN:  Your Honor, the government's

24  argument with respect to cash is that Arman Hayrapetyan

25  withdrew cash and that at some point it was transferred

1    to Mr. Ayvazyan.

2         THE COURT:  I am not going to allow the transcript

3    but you can make the argument.

4         MR. SILVERMAN:  Your Honor, if I may be heard just

5    briefly.  Hearsay testimony is permitted under Ninth

6    Circuit law at forfeiture proceedings.

7         THE COURT:  I am not allowing the transcript.  You

8    can make the argument.

9         MR. SILVERMAN:  Yes, your Honor.

10        MR. BOYLE:  We understand that Exhibit 77 is

11    stricken, then, your Honor?

12        THE COURT:  Yes.

13        MR. BOYLE:  And would your Honor permit the

14    parties a brief recess to prepare for closing arguments.

15    I believe we have slides and things like that.  Would the

16    court permit a brief recess?

17        THE COURT:  Can't we go forward now?

18        MR. BOYLE:  I believe I need to set up some

19    slides.

20        THE COURT:  Set them up.  Let's go.

21        MR. RAM:  We are ready, your Honor.

22        THE COURT:  I told the jury to come back.  If you

23    have to go to the restroom, I can't say no, but you heard

24    me tell the bailiff to bring the jury back.

25        MR. RAM:  Yes, sir.

```
 1          MR. BOYLE:  My apologies, your Honor.  I do need
 2   to retrieve something from the second floor.
 3          THE COURT:  Well, then.  We will take 5 or 10
 4   minutes.
 5          MR. BOYLE:  Thank you, your Honor.
 6          (Recess from 11:38 to 11:41 a.m.)
 7          (The following proceedings were held in the
 8           presence of the jury:)
 9          THE COURT:  Members of the jury, through my
10   oversight, and I apologize, I sent you out a few minutes
11   ago to deliberate, but I didn't give the lawyers a chance
12   to give their arguments which, of course, are very
13   important for your consideration.
14              So I just called you back very briefly to tell
15   you -- I don't think you had a chance to start your
16   deliberations because it was just a few minutes, but, if
17   you did, you should begin your deliberations anew without
18   any thought as to what you may have said in the last few
19   minutes, only after you have heard the final arguments
20   from the lawyers.
21              Do I understand -- the foreperson, did you
22   begin any deliberations?
23          THE JUROR:  No, your Honor.
24          THE COURT:  Okay.  Thank you.  Are we ready to go
25   now, or do you need more time to set up your slides?
```

1          MR. PAETTY:  Your Honor, we are still waiting on

2    Mr. Boyle who has gone downstairs to retrieve some

3    materials but should be back very soon.

4          THE COURT:  Okay.  Members of the jury, sorry to

5    back and forth, but give us a few minutes to get the

6    slide presentation ready and we will go.

7          (Recess from 11:42 to 12:02 p.m.)

8          (The following proceedings were held outside the

9           presence of the jury:)

10          THE COURT:  First, we will hear from the

11    government.

12          MR. BOYLE:  Good afternoon, ladies and gentlemen.

13           As you heard from the judge and from us

14    earlier, you have been asked to continue your jury

15    service just a little bit longer.  Specifically, you are

16    now asked to help determine if the defendants should

17    forfeit their interest in certain specific property as

18    part of the penalty for the crimes for which you found

19    them guilty beyond a reasonable doubt.

20           Now, this last remaining task is actually a

21    bit narrower than it sounds because, as the court

22    instructed you, your sole duty now is to determine

23    whether the government has proven the required connection

24    between the property sought for forfeiture and the

25    offenses for which you found the defendants guilty.  And

1    it is that required connection that is all that is left

2    for you to deliberate on today.  And when you consider

3    the evidence that you heard in the prior phase of trial

4    as well as the evidence you heard today, that connection

5    will be clear.

6            Now, first, I would ask you to keep in mind

7    the court's jury instructions from the prior phase of

8    trial as well as the court's jury instructions you heard

9    today.  Now, because you have recently been given new

10   jury instructions for the second phase of trial, I am

11   going to refer to this as the forfeiture phase.  And I

12   will refer to those as the forfeiture jury instructions,

13   and I will do my best to avoid any confusion when I am

14   referring to them.

15           Now, you heard the court mention that there

16   were two big differences between the court's instructions

17   in the prior guilt phase and this phase of trial

18   concerning forfeiture, and I want to address one of those

19   differences right away.  Now, you heard the words "beyond

20   a reasonable doubt" many times in the prior phase of

21   trial both from the prosecutors and from the defendant's

22   lawyers.

23           Well, now that you have convicted the

24   defendants of certain offenses beyond a reasonable doubt,

25   that standard is gone.  The standard now is a

1    preponderance of the evidence.

2            As the court instructed you, the government's

3    burden is no longer proof beyond a reasonable doubt but

4    instead, simply, proof by a preponderance of the

5    evidence.  And what is a preponderance of the evidence?

6    Well, it is more likely than not.

7            As the court instructed you, a preponderance

8    means you must be persuaded by the evidence that a claim

9    is more probably true than not.  So, now, what is this

10   connection that you are being asked to consider in your

11   deliberations today?  Well, for most of the charges upon

12   which you convicted the defendants including wire fraud,

13   bank fraud and aggravated identity theft based on wire

14   and bank fraud as well as the conspiracy charged in Count

15   1 relating to those offenses -- and I am going to refer

16   to all of those as the fraud convictions by the way --

17   that required connection is the same for all of them.

18           And it has been defined for you by the court

19   in the forfeiture jury instructions.  Proceeds obtained

20   directly or indirectly as a result of the offense.  And

21   keep in mind all of the parts of the court's forfeiture

22   jury instructions on this required connection for these

23   fraud convictions.  Remember that you have been

24   instructed that proceeds can be direct or indirect.

25           Remember that proceeds stay proceeds.

1    Proceeds remain proceeds regardless of how many times a

2    property may change form.  So how are you going to know

3    what those proceeds are?  Well, because they have already

4    been identified for you.  You have seen a lot of summary

5    charts both today and in the prior phase of trial, most

6    of them through the testimony of Ms. Robinson, the

7    government's summary witness.

8         And, on many of them, you saw black numbers

9    and red numbers, and, as you heard Ms. Robinson testify,

10   the black numbers are the total amounts transferred, and

11   the red numbers represented traceable PPP and EIDL loan

12   funds.  Well, now that you have convicted defendants on

13   the fraud charges and on a conspiracy to fraudulently

14   obtain those PPP and EIDL loan funds, you are entitled to

15   follow those red numbers wherever they may lead because,

16   remember, proceeds remain proceeds.

17        Now, that proceeds definition I just gave you

18   and I just spoke about, it applies to the fraud

19   convictions, but, as the court instructed you, the money

20   laundering conviction in Count 26 is a bit different.

21   For money laundering convictions, the court has defined

22   that required connection for you as property, real or

23   personal involved in such an offense.

24        And this matters, ladies and gentlemen,

25   because, as the court instructed you, property involved

1    in a money laundering crime is actually more than just

2    the proceeds of the crime.  It is both the property that

3    was the subject of the money laundering offense as well

4    as property used to facilitate that money laundering

5    offense.  And that means property used to make the money

6    laundering offense easier to commit or harder to detect.

7    So mixing up clean and dirty money doesn't necessarily

8    excuse anything.

9              So now that we discussed how the court has

10   defined this required connection for you and we discussed

11   the court's new forfeiture jury instructions what is the

12   government actually seeking to forfeit here today based

13   on the fraud convictions and the money laundering

14   conviction.

15             Well, as you were instructed, you will be

16   asked to consider today whether the government has proven

17   by a preponderance of the evidence this required

18   connection between the counts for which you convicted the

19   defendants and four groups of property.  And that is

20   funds seized from two bank accounts, three real

21   properties, personal property in the form of gold coins,

22   watches and jewelry as well as seized cash.  And let's go

23   into each of those groups now.

24             The first assets I am going to talk to you

25   about are the funds seized from two bank accounts in the

1  name of Runyan Tax Services and Allstate Trucking and

2  Towing, and both those names are probably familiar to you

3  from the previous phase of trial.

4        First, the government is seeking to forfeit

5  just over $65,000 seized from a Bank of America account

6  ending in 9700 held in the name of Runyan on

7  December 2nd, 2020.  And that is as both fraud proceeds

8  and as property involved in a money laundering

9  conviction.  Now, you found the defendants guilty beyond

10  a reasonable doubt of conspiracy and schemes to

11  fraudulently obtain PPP and EIDL loan proceeds, and, as

12  you heard and can see now, funds from four EIDL and PPP

13  loans were transferred into Runyan's 9700 account both

14  directly and indirectly.

15        And you also heard that as of August 31, 2020,

16  there was at least a $107,536.23 in red numbers, proceeds

17  in that Runyan account.  And that is more than the

18  roughly $65,000 the government seized and is seeking to

19  forfeit, and the evidence shows those funds seized from

20  the Runyan account are connected to counts of conviction

21  because you herd Ms. Robinson summarize the bank chart

22  including the one you see right here.  You saw the moving

23  the money from EIDL and PPP loans transferred into the

24  Runyan account, and you convicted the defendants for some

25  of that very same conduct in Count 1 which is the

1    conspiracy count as well as in counts 7, 11 and 18.  The

2    evidence before you shows that the funds seized from the

3    Runyan account are proceeds of the fraud convictions.

4            The government is also seeking to forfeit

5    $74,557.79 seized from a Bank of America account ending

6    in 7695 in the name of Allstate on November 20 both as

7    proceeds of fraud convictions and property involved in

8    the money laundering convictions.  As you heard from the

9    government's summary witness, Ms. Robinson, and you can

10   see here, the Allstate account received $124,000 PPP loan

11   through a US Bank account in the same name, $80,000 of

12   which ended up in the Allstate Bank of America 7695

13   account.

14           And you will see that loan came from Cross

15   River Bank, and that Cross River Bank loan was charged in

16   the Count 1 conspiracy and counts 3 and 15 all of which

17   you found the defendants guilty on.  In addition, you

18   heard Ms. Robinson note that there was another $149,900

19   transaction which appeared to be from another PPP or EIDL

20   loan.

21           Now, you convicted the defendants on a

22   conspiracy, ladies and gentlemen, and you are entitled to

23   determine whether this money was more probably than not

24   part of that conspiracy as well.  And when you look at

25   the evidence you are presented with and the charges you

1    convicted on, there will be no question that these bank

2    funds were proceeds of the counts of conviction.

3         So the next group of assets I will address are

4    three real properties the government is seeking to

5    forfeit.  Now, these three properties are certainly

6    familiar to you now from the guilt phase of trial.  First

7    is the Calle La Primavera property.  The evidence shows

8    the Primavera property was purchased with proceeds of the

9    fraud conviction offenses and that this property was

10   involved in the money laundering conduct.

11        First, you heard Ms. Robinson, again, $238,614

12   in PPP loans transferred directly or indirectly to

13   Beverly Hills Escrow where they were used as a down

14   payment on the Calle La Primavera property.

15        And these same loans were charged in the

16   conspiracy count in Count 1 and executions of the schemes

17   alleged in Count 7, 18 and 20 all of which you convicted

18   the defendants on.  The Primavera property was also

19   involved in the Count 26 money laundering conspiracy.  As

20   you can see, this property is directly traceable to a

21   transfer of approximately $230,000.  That transfer is

22   specifically identified in the overt acts alleged in

23   Count 26 for which you found the defendants guilty.

24        Next, is the Anastasia Lane property.  Again,

25   the evidence also shows that this property was purchased

1    with PPP and EIDL loan proceeds transferred directly or

2    indirectly to Perfect Escrow where they were used as a

3    down payment on the Anastasia property.  The same loans

4    were identified in the overt acts in the conspiracy count

5    for which you convicted the defendants and its executions

6    of the scheme for which you convicted the defendants for

7    Count 19.  Again, the evidence shows this property was

8    involved in the conduct underlying the money laundering

9    conviction in Count 26.  These transfers were identified

10   among the overt acts.

11          Finally, the Topeka Drive property.  You heard

12   from Ms. Robinson, $639,807 in PPP and EIDL loan proceeds

13   were transferred directly or indirectly to Encore Escrow

14   where they were used as a down payment on the Topeka

15   property.  These same loans were identified in Count 1 as

16   executions of that conspiracy and in Counts 3, 5, 6, 10,

17   15, 16 and 17, and you convicted defendants beyond a

18   reasonable doubt on every one of those charges.

19          And, again, the evidence shows that the Topeka

20   Drive property was involved in the conduct underlying the

21   Count 26 money laundering convictions because these

22   transfers were, again, identified in the overt acts for

23   the money laundering conspiracy.

24          Now, as you probably noticed, unlike some of

25   the accounts we just looked at, the Topeka Drive property

1    in particular was purchased with some funds traceable to

2    EIDL and PPP loans but also with funds that were not

3    traceable to PPP and EIDL loans here.

4           Don't forget the Court's jury instructions.

5    Property is forfeitable as traceable -- as involved in a

6    money laundering offense even if some untainted funds

7    were mixed in with the tainted money so long as the

8    purpose was to conceal or make the offense easier to

9    commit or harder to detect.

10          The next property I will address is the

11   personal property, specifically, 60 gold coins, watches

12   and two pieces of miscellaneous jewelery.  First, the

13   government is seeking to forfeit 60 gold coins which are

14   identified in the instructions and the bill of

15   particulars that you heard me read earlier.  You have

16   seen ample evidence that these gold coins were purchased

17   with proceeds from fraud convictions.  First, you saw and

18   heard evidence of the defendant's transactions with

19   Piccadilly Jewelers where the defendants spent more than

20   $238,000 in proceeds in just three months buying gold and

21   jewelry.  You also heard Ms. Robinson testify that these

22   funds are traceable to two PPP and EIDL loans for which

23   you convicted the defendants as part of the Count 1

24   conspiracy.

25          And you have also seen Piccadilly's invoices,

1    and you will have them back there with you in the jury

2    room.  And you have actually seen the specific checks

3    identified.  30 coins and 30 coins paid from Mod

4    Interiors.  A loan which is part of the conspiracy.

5           Moving on to the six watches the government is

6    seeking to forfeit, you have seen and heard evidence

7    connecting these items to the counts of conviction as

8    well.  First, you heard from Ms. Robinson that at least

9    $82,000 of PPP and EIDL loan proceeds were transferred to

10   Gentleman Timepieces, and you saw some of those very same

11   watches here in court.

12          You heard Mr. Farr testify about his

13   transactions with Richard Ayvazyan.  You also saw

14   evidence that hundreds and thousands of dollars more were

15   transferred from the entities involved in the conspiracy,

16   entities which you should recognize from the earlier

17   phase of trial, charged in Count 1.

18          Now, you can see in Ms. Robinson's summary

19   chart, numerous entities familiar to you and the total

20   received by Gentleman Timepieces, $430,620.

21          Now, the government is seeking to forfeit six

22   watches, and they are listed here.  You also heard them

23   when the court provided you the jury instructions.  And

24   you will see, four Audemars Piguet and two Rolexes.

25          And if we look at the records produced from

1    Gentleman Timepieces, we see multiple Audemars Piquet and

2    Rolexes.  But that is not all.  You also heard that with

3    respect to some of the jewelry and watches, there was an

4    additional $9,200 in PPP funds which were part of a wire

5    transfer just the day before the defendants were arrested

6    in Miami using a card linked to Iulia Zhadko which was

7    found on Richard Ayvazyan at Miami Airport when he was

8    arrested.

9            Think about it, ladies and gentlemen.  Just

10   one day before they were stopped at Miami International

11   Airport, returning from the Turks and Caicos islands, a

12   card found on Richard Ayvazyan was used to wire more than

13   $34,000 to a Carribean Bank for the purchase of goods.

14   You are entitled to draw reasonable inferences, ladies

15   and gentlemen.

16           You have seen and heard the conspirator's

17   purchasing history.  You have seen the card not in their

18   name which was used to wire the money, and you know what

19   the government is seeking to forfeit here.  The evidence

20   shows that all of the personal property, the gold coins,

21   the watches and the pieces of jewelry found on the

22   defendants in Miami are traceable or involved in the

23   counts of conviction.

24           And the final assets I will address are the

25   seized cash.  Specifically, the government is seeking to

1   forfeit just over $450,000 in cash seized on

2   November 5th, 2020, from the home and backyard of the

3   Topeka property as well as $3,422 in cash seized on

4   November 20th from Richard Ayvazyan and Marietta

5   Terabelian when they were stopped at Miami International

6   Airport.

7            You have seen and heard more than enough

8   evidence to determine by a preponderance of the evidence

9   that the cash seized from these defendants is connected

10  to the crimes for which you have convicted them beyond a

11  reasonable doubt both as the proceeds of the fraud

12  convictions and as property involved in the money

13  laundering conspiracy conviction.

14           First, you heard Ms. Robinson testify about

15  tracing just 27 of these loans and 24 bank accounts, and

16  in just those 27 loans and 24 bank accounts, she found

17  over $300,000 in cashier's checks.  She found $17,000 in

18  checks, and more than $180,000 in withdrawals traceable

19  to PPP and EIDL funds.

20           So you heard there was ample money moving

21  around in this conspiracy.  And, now, even if you

22  suspected that maybe these defendants were mixing tainted

23  proceeds with legitimate proceeds, remember the Court's

24  jury instructions for money laundering.  You do not need

25  to find that each and every dollar of cash was connected

 1   to a particular transaction that Ms. Robinson traced for

 2   you so long as you conclude by a preponderance of the

 3   evidence, more probable than not that the defendants were

 4   mixing tainted and untainted money in order to make their

 5   criminal proceeds harder to find.

 6          As the Court instructed you, property used to

 7   facilitate the money laundering transaction may include

 8   property that was not part of the transaction itself but

 9   was used to make the money laundering offense easier to

10   commit or harder to detect.

11          Second, you heard again and again that these

12   defendants were rapidly converting their criminal

13   proceeds into fungible property.

14          MR. RAM:  Objection.  Not in evidence.  That never

15   came up.

16          MR. BOYLE:  Withdrawn.

17          THE COURT:  Objection sustained.

18          MR. BOYLE:  Second, you heard again and again the

19   defendants were rapidly converting their criminal

20   proceeds into property.  You heard, you saw a hundred

21   thousand dollar transfer to Diamond Merchants.  That is

22   Belgium, New York.  You heard about the purchase of

23   hundreds of thousands of dollars in luxury watches.  You

24   saw receipts for purchases.  These are receipts from

25   Piccadilly Jewelers, purchases of kilogram after kilogram

1     after kilogram of gold.

2             You are entitled to draw a reasonable

3     inference from this evidence you have seen, ladies and

4     gentlemen.  These conspirators were conspiring to launder

5     and convert the tainted funds that they had obtained in

6     multiple ways.  Don't forget.  You convicted them of a

7     money laundering conspiracy.

8             Third, you can consider where this cash was

9     found.  You have heard that the bulk of this cash was

10    found at the Topeka property.  As you have seen, that

11    entire property was part of the money laundering

12    conspiracy.  You have heard it was bought with tainted

13    funds and that it was used to house numerous other items

14    which were also bought with tainted funds including

15    numerous watches which you have already heard about and

16    the 60 gold coins which you have already heard about.

17            So you know that this property, the Topeka

18    property, it was a place that defendants used to hide the

19    items that they had purchased with the proceeds of their

20    fraud.  In addition, you heard that some of the cash was

21    actually found in the back yard of the property, and your

22    common sense can tell you why people would or would not

23    keep large amounts of cash in the backyard of their

24    house.

25            Fourth, don't abandon your common sense at the

1  courthouse steps, ladies and gentlemen.  Quite the

2  opposite.  You are entitled to rely on that common sense.

3  You are entitled to ask why someone would have nearly

4  half a million dollars of cash in their home and draw

5  reasonable inferences from that.

6        Now, you have seen and you know it is not

7  because these defendants didn't trust or didn't know how

8  to use the bank.  We saw Ms. Terabelian's bank accounts.

9  You can certainly see she had no problem conducting

10 business with them.  You also saw records from

11 Mr. Ayvazyan's company, Inception Ventures, and for Mod

12 Interiors, a company he was a signator on the bank card

13 for.  You also heard that these defendants were stopped

14 at Miami International Airport with multiple banking

15 credit cards which weren't in their names.

16        So you have seen more than enough evidence to

17 conclude that these defendants knew how to use banks when

18 it suited them.  Then consider why the defendants who are

19 plainly familiar with electronic banking might have over

20 $450,000 around their house.  Don't forget your common

21 sense, ladies and gentlemen.

22        Finally, remember the burden of proof at this

23 stage.  More probable than not.  You are entitled to ask

24 yourself is it probable a family sitting on more than

25 $450,000 in untainted cash savings might suddenly decide

1   to start committing all of the crimes you have convicted

2   them for.  Then ask yourself is it more probable than not

3   that this cash and the remainder of the assets I

4   discussed today come from the very similar criminal

5   schemes for which you have convicted the defendants.

6           Ladies and gentlemen, remember the court's

7   jury instructions, remember the court's forfeiture and

8   jury instructions, and don't forget your common sense.

9   You have seen and heard the evidence in both phases of

10  trial and that evidence shows that each and every one of

11  the assets identified in those instructions are connected

12  to the crimes for which you have convicted the defendants

13  beyond a reasonable doubt.

14          Thank you, ladies and gentlemen.

15      THE COURT:  Defense.

16      MR. RAM:  Yes, your Honor.

17          Good afternoon.  Let's be clear what this is

18  not about.  It is not about restitution or any money owed

19  to banks or anyone else affected by the crimes that the

20  defendants were convicted of.  This is not a restitution

21  hearing.  That will be decided by the court at a later

22  date.

23          As the prosecutor pointed out, forfeiture is

24  part of the penalty or punishment flowing from a

25  conviction, and your analysis is based on each specific

1   piece of property.  And for each specific piece of

2   property, it boils down to essentially two questions

3   which you heard the prosecutor describe.  For what he

4   called the fraud offenses, the question is, is that piece

5   of property directly or indirectly traceable to proceeds

6   of the fraud.  And for any piece of property you deem or

7   find to be obtained by means of money laundering, was it

8   involved in that money laundering that you found.  Okay.

9           This is not like the conspiracy charges.  The

10  burden is on the government to tie a specific piece of

11  property to the specific PPP loans that were traced in

12  this case.  And you heard that the standard to do that is

13  a preponderance of the evidence.  So the government has

14  to prove to you that it is more likely than not.  Over

15  the 50-yard line so to speak.

16          And you can break down the items in different

17  categories just like the government did.  I didn't see

18  his slides before I did this.  So we agreed that these

19  are the categories for the most part, and that is

20  currency, slash, cash, watches, other jewelry, gold

21  coins, bank accounts which you heard about, but they are

22  not in dispute with respect to Richard Ayvazyan.  There

23  is no argument about bank accounts here.  And, finally,

24  real estate.  And only one property is at issue with

25  respect to real estate with respect to Richard Ayvazyan.

```
 1              Let's start with currency and cash.  As you
 2    heard today and from trial, there is no evidence that the
 3    $451,000 of cash found at Richard Ayvazyan's personal
 4    residence is proceeds that are traceable to PPP fraud.
 5    You did not hear a single piece of evidence doing that.
 6              The government tried to do that with deposit
 7    receipts which you saw this morning with Ms. Robinson,
 8    but we shall able to show for essentially every single
 9    transaction which we will go through in a second, that
10    wasn't -- that did not yield cash.  That was deposited in
11    another bank account.  That is not cash.  And we are only
12    talking about right now that $451,000 of cash.
13              You also heard that throughout trial that the
14    government surveilled the defendants in this case.  They
15    kept a close eye on them.  They watched them.  They had
16    ATM footage which some of that you saw at the trial.  And
17    none of those instances do you see any cash going to
18    anyone sitting on this side of the room.  That wasn't
19    part of the case at all.  And you also didn't hear
20    evidence of any abnormal cash withdrawals or text
21    messages talking about withdrawing cash.
22              And that is unremarkable because the way the
23    scheme worked according to the government is the
24    defendants were obtaining PPP funds, putting them in bank
25    accounts and moving them to buy property.  Cash wasn't
```

1    even in the government's own theory of the case, period.

2            And as you saw this morning, the government

3    ignored where Richard Ayvazyan's cash actually came from,

4    and in the exhibits provided to you, there is accountings

5    into different bank accounts connected to Richard

6    Ayvazyan.  And you will see that he got some money from

7    health care companies unrelated to any allegation of PPP

8    fraud.

9            You also heard at trial what Richard Ayvazyan

10   actually does or at least used to do before this trial,

11   and he works with tech start ups.  And one of them, you

12   heard the incubator's name was COLabs.  You will see he

13   was getting paid from COLabs every two weeks anywhere

14   from 15 to $30,000 and that is designated as Company

15   Laboratory LLC.  That is in government Exhibit 87.  That

16   is in evidence.  That is what Richard Ayvazyan did, and

17   that is how he got paid.  15 to $30,000 every two weeks

18   for working with incubators in connecting start ups.

19           You also heard that he had money before PPP.

20   You heard that he gave, for example, a $600,000

21   investment into one of the start up founders that came in

22   and testified at trial, Matt Pelletier, and that start

23   up's name is Community.com a well known start up.  And

24   that is all before PPP.  And the -- what you see in

25   Exhibit 87 on the screen here is even during the months

1  of August, September and October leading up to his

2  arrest, he is getting 15 to $30,000 every two weeks from

3  an established tech incubator called COLabs.  That is not

4  in dispute here.  And that is a source of money, a lot of

5  money.

6           The other source of money the government

7  conveniently neglected is casino earnings.  We picked one

8  example from 2019 because that is before PPP.  We also

9  showed you an example from 2009 to show you how long

10  Richard Ayvazyan has been gambling in Vegas at casinos.

11  Okay.  Just looking at the funds from 2019 meaning

12  immediately before the alleged -- well, what you have now

13  concluded was a PPP fraud scheme, Richard Ayvazyan earned

14  $211,695 just from one casino.  That is one casino.  And

15  that is the Bellagio.  That cannot be proceeds of PPP

16  fraud because this happened before PPP existed.  Okay.

17  And there is obviously -- and we don't need to get into

18  other casinos or other money, but there are legitimate

19  sources of funds for Richard Ayvazyan, clean funds from

20  casinos pre-PPP and from his work with tech start ups,

21  and that far exceeds $450,000 in cash.

22           So let's talk about what the government did to

23  suggest that cash was part of this PPP loan fraud scheme.

24  They put up this summary chart, Exhibit 401, and almost

25  the vast majority of the transaction is focused on a man

1    named Arman Hayrapetyan who you heard plead guilty for

2    being connected to the PPP loan fraud.

3            And I won't do it with you now, but each one

4    of these lines was addressed on cross-examination with

5    actual records both from the defense, and from the

6    government to show these transactions did not result in

7    cash.  They just didn't.  Let's take the first one as an

8    example.  Account name Arman Harapetyan, and the payee

9    was Anna Manukyan.  You saw there was a check deposit

10   into that account of Anna Manukyan.  Okay.  That wasn't

11   deposited to cash.  Same thing next entry, Iulia Zhadko.

12   It is deposited into an account on May 14th.  That is ten

13   days after the check is written.

14           Next entry, same thing, Fiber One Media.  It

15   is deposited into an account, in this case a bank called

16   Novo, a mobile bank.  The Zhadko transaction, Wells

17   Fargo.  Same thing.  Defense exhibits 201, 202.  It is

18   deposited on June 17th into the Bank of America account.

19   No cash there.

20           And, finally, the Secureline, slash, Tamara

21   Dadyan transaction of $120,000, it is deposited on

22   June 12th into the ABC Realty Advisors account.  And we

23   know that is the case because it is even one of the

24   government's overt acts in the indictment.  It says that

25   she and others deposited that very check for $120,010

1   into Secureline Realty's bank account.  That is not cash

2   proceeds.

3          Okay.  Next, along the same lines of evidence,

4   they cited to this page 5 of Exhibit 401 and said look at

5   this activity here, this could have all led to cash.  And

6   they flagged $219,000 with 181,000 of it traceable to

7   PPP, EIDL loans.  The vast majority of that comes from a

8   single withdrawal by, again, Arman Hayrapetyan for

9   $165,000.

10          You saw that after -- and that is in May.  You

11   saw that on May 14th, Arman Hayrapetyan deposits $80,000

12   in cash into the bank account here.  80,000 in cash.

13   That is essentially half the amount the government has in

14   play.  Leaving only 85,000 in net withdrawals.

15          But you also know that Arman Hayrapetyan is

16   not connected to any of the defendants sitting at this

17   table to my left here.  He is not.  To the extent he had

18   any cash, that is not going to any of these defendants,

19   and, frankly, you have just heard no evidence to that

20   effect either way.  So that is certainly not a

21   preponderance of the evidence, more likely than not.

22          Now, you see the reference to GX10.  That is

23   the text messages.  That is Tami and Rich New text

24   messages.  They were fairly explicit in everything they

25   did in those text messages, and there is not a single

1   conversation about converting funds to cash.  As I

2   mentioned earlier, that simply wasn't part of this scheme

3   that the government charged.  This wasn't about

4   generating cash.

5            We talked about the surveillance, the security

6   tapes, all of that.  The trash pulls from different

7   houses connected to this case.  The 500-plus subpoenas

8   served in this case, review of bank files and records.

9   None of it points to any cash withdrawals related to

10  anyone sitting at this table.  Period.  I think that is

11  affirmatively disproved that there was any cash from PPP

12  or EIDL loans that end up with Richard or Mary Ayvazian

13  at their house at Topeka Drive.  And, again, the burden

14  is on the government not the defense to prove that, but

15  we have.  There was no cash.

16           Now, let's talk about watches, other jewelry

17  and gold coins.  As you heard, if watches or jewelry or

18  gold coins were proceeds of the crime, then they can be

19  subject to forfeiture.  But it is the government's burden

20  to prove which watches, jewelry or coins were traceable

21  to any PPP loan fraud.  So just the fact, obviously, that

22  someone owns jewelry, watches or gold coins before the

23  alleged PPP or even during the alleged PPP scheme does

24  not mean they are subject to forfeiture.  The whole point

25  of this exercise is to show a connection between the

1    crimes of conviction, the counts of conviction and any

2    specific piece of property.  So let's talk about what

3    connections were shown.

4              First, there is the watches.  As you saw from

5    Ms. Robinson's chart and her testimony, approximately

6    $82,500 is traceable to PPP funds that went to

7    Gentleman's Timepieces.  82,000.  There was an additional

8    watch purchased in Turks and Caicos.  Of that amount

9    approximately 9,000 was actually traceable to PPP.  Doing

10   the math, roughly $91,200 in watch purchases is traceable

11   to PPP EIDL loans.  91,200.  That is all the government

12   can show in terms of tracing.

13             So we would propose two watches that you will

14   see on your verdict form that would be subject to

15   forfeiture based on that tracing.  And that is the AP

16   watch with the serial number ending in 2335 which was

17   $60,000, and the Rolex purchased in Turks and Caicos for

18   34,750.  That adds up to $91,200.

19             Let's walk through that so you see where it

20   comes from in the evidence.  So here, there is only

21   82,000 traced to Gentleman's Timepieces.  And you herd

22   Ms. Robinson explaining, well, I only reviewed 27

23   accounts and 24 loans, but, bear in mind, it is the

24   government's burden to show anything being forfeited

25   which is a penalty independent of restitution is actually

1   from the crimes of conviction.  Right.  It has to

2   actually be from PPP and EIDL loan fraud.  If it is not

3   connected to the fraud, any specific piece of property,

4   then it is not subject to forfeiture.  Okay.

5           And the government talked to you about money

6   laundering, and we are going to get into that in a

7   second.  But high level, the only money with the

8   exception of Vahe Dadyan for Count 27 of the indictment,

9   the only count in the indictment relating and not

10  including the counts that you acquitted Mr. Ayvazian of

11  which was post release money laundering, there is only

12  one money laundering count in the indictment, and that is

13  count 26.  And that was a conspiracy or an agreement to

14  commit money laundering.  There were no specific findings

15  based on the indictment or your deliberations so far that

16  any specific piece of property was tied to the money

17  laundering.

18          The overall gist of the government's money

19  laundering case is that these funds and bank accounts

20  were being concealed because they are in other people's

21  names, and the loans were being applied for in other

22  people's names, specifically, Zhadko, Kauichko and

23  others.  Right.  And we are not contesting a single bank

24  account here.  All of that is subject to forfeiture.

25  There is no argument on the bank accounts.

1          The question is is any specific property

2   purchased that you heard about that the government is

3   trying to forfeit, that the government has already

4   seized, is it subject to forfeiture.  So with respect to

5   Gentleman's Timepieces, there is watches adding up to

6   over $400,000.  How many of those watches is connected to

7   the PPP and EIDL loans that are the foundation of this

8   case.  The answer that the government came up with is

9   only 82,000 are traceable.

10          It is not enough to say hey there is a money

11   laundering account out there, and it was a conspiracy.

12   The question is have they proved by a preponderance

13   meaning past the 50-yard line on the football field that

14   any given watch is tied to any count of conviction.  And

15   they haven't done that.  And Ms. Robinson, to her credit,

16   told you she wasn't even asked to do it.  She just looked

17   at the 27 accounts and the 24 loans.

18          And the burden at all times here is on the

19   government.  Not on the defense.  But what we can tell

20   you is 82,000 at most is tied to any criminal conduct in

21   this case.  There is no specific money laundering

22   allegation on any specific watch in this case.  Period.

23   The agreement was in the abstract, and that is largely

24   focused on the bank accounts and the flow of funds.

25          This is the watch purchased in Turks and

```
 1   Caicos, 9,000 of it, 9200 of it was traceable to PPP
 2   proceeds.  And this is a great example.  So what about
 3   this transaction makes it subject to forfeiture?  So the
 4   government could argue this particular watch was
 5   purchased as part of the money laundering conspiracy.
 6   But what evidence have you heard that this particular
 7   watch was purchased as part of the money laundering
 8   conspiracy.  That is an argument.  That is not evidence.
 9          And evidence is what decides just like in the
10   criminal proceedings before, evidence is what decides
11   what is subject to forfeiture.  And, again, the two
12   watches we propose that are subject to forfeiture that
13   add up to $91,200 would be the AP model 26331 and the
14   Rolex serial W44P7238.
15          Let's talk about the other jewelry.  The
16   government's evidence must link up each particular
17   specific item to the case.  So, obviously, if a piece of
18   jewelry was bought before the case started, it can't be
19   part of the PPP loan fraud.  It just can't.  And if it
20   was bought from proceeds completely independent of this
21   case meaning clean money, it can't be part of forfeiture.
22   It is a specific item purchased that has nothing to do
23   with any count of conviction.
24          So what did the government present to you in
25   terms of actual evidence that any particular piece of
```

1  jewelry is connected.  Frankly, the only evidence you

2  really saw in this case is the invoices and receipts from

3  the stores, and they had very general descriptions.  So

4  here is an example of a, quote, unquote, receipt that may

5  or may not relate to a watch that was seized in this

6  case.  It is frankly impossible to tell.

7         To the extent you can read this, at the top I

8  have the description from the bill of particulars, and

9  that is a 14 karat white gold earring with diamond studs.

10  And the question is has the government proved by a

11  preponderance of the evidence that this item on the

12  receipt here.  This is just an example, but is that a 14

13  karat white gold earring with diamond studs that was

14  seized.  That is for you to decide and for you to decide

15  whether they proved that by a preponderance of the

16  evidence.  I submit to you that it is entirely unclear.

17  It is at best equally likely.  So it is not more likely

18  than not.

19         Same thing, here is another description from a

20  receipt, and, remember, the government didn't call to

21  testify either in the criminal case or in this proceeding

22  today anyone from the store to say here is what this item

23  description means, this is what it is, here is a picture

24  of the item.  You didn't hear any of that testimony.

25         And the person ho has the burden is the

1   government to put on that testimony.  They didn't do it.

2   They have not proved their case for forfeiture.  But,

3   again, up to you to decide.  Is this more likely than not

4   evidence.

5          Not going to spend a lot of time on the coins.

6   You heard that there were receipts for 30 coins and 30

7   coins and that a number of -- something like 60 coins

8   were seized from the Topeka address.  You did not hear

9   testimony whether there were 75 coins at the Topeka

10  address.  You didn't hear testimony that the coins seized

11  at Topeka were the coins actually purchased from these

12  PPP related transactions.  You did not hear that

13  evidence.  Let me go back to that.  That is Mod Interiors

14  receipts, government Exhibit 39.

15         And, finally, the second to last, the

16  category of bank accounts.  That is not being contested

17  so if there is any bank accounts that the government

18  proposed forfeiting that is not subject to dispute from

19  Mr. Ayvazyan at least.

20         Now, before we go to the last category of

21  property, I want to show you an instruction that was

22  included that the court read to you.  And, obviously, the

23  handwriting is mine.  This is instruction No. 1, and it

24  says forfeiture of fungible property:  The government is

25  not required to identify specific cash, precious metals

1    or bank funds involved in an offense that is the basis

2    for forfeiture because it is not a defense that the cash,

3    precious metals or bank funds involved in such an offense

4    were removed and replaced by identical property.  Any

5    identical cash, precious metals or bank funds found in

6    the same place or account as the property involved in the

7    offense that is the basis for the forfeiture shall be

8    subject to forfeiture.

9            Now, couple of things to observe here.  First,

10   and foremost, the government still has to prove that that

11   property whether -- well, two things really.  Was it

12   removed and replaced.  You have heard no evidence that

13   any particular piece of jewelry in this case was removed

14   and replaced.  You have heard no evidence on cash that it

15   even existed in this case.

16           So what this is talking about is when, let's

17   say you have a gold coin.  Let's just use the example.

18   And I buy the gold coin from the store using PPP funds

19   that were legally obtained.  That is forfeitable.  If I

20   move it to my house, it is forfeitable.  If I sell that

21   gold coin for a thousand dollars and buy something else

22   that costs a thousand dollars, a golf club, that golf

23   club is forfeitable because as the prosecutor told you

24   any proceeds that are traceable remain forfeitable.

25   Okay.  That is absolutely true.

1          But what this doesn't do is if that initial

2     gold coin for a thousand dollars was not proven to be

3     part of any crime of conviction, then it is not

4     forfeitable.  It doesn't matter whether -- and there is

5     no evidence that it was replaced or otherwise changed,

6     the burden is still on the government to show you by a

7     preponderance of the evidence that that gold coin is

8     proceeds of a crime of conviction.  Okay.

9          I submit to you even for the gold coins the

10    government hasn't done that here.  No one came up on the

11    stand to tell you what gold coins were related to any PPP

12    funds.  That just didn't happen.  And you have a very

13    vague description from the receipt.  But that may be a

14    close call for you.  What is not a close call with this

15    instruction or otherwise is the cash in this case.  There

16    is no evidence of any connection of cash to the schemes

17    or conspiracy in this case.  There just isn't.

18         So whether a particular dollar is fungible or

19    not, obviously that is not in debate.  Of course, one

20    dollar here is the same as another dollar in another

21    pocket.  It doesn't matter.  But the government doesn't

22    get the benefit of this unless they can show that the

23    original property was, in fact, derived from an offense

24    of conviction and, second, that it was somehow removed or

25    replaced.  And so it is still -- we don't need to show

1    the original coin if you have a replacement coin.  That

2    doesn't apply to anything in this case, let alone the

3    cash.

4            Okay.  Now coming back to wrap up here on

5    the last category of property.  It is the house.  Okay.

6    There are I believe three houses that are subject to

7    forfeiture in this case according to the government.

8    Richard Ayvazyan has no claim to the house at La Calle

9    Primavera or the other house you just heard about today.

10   The only house in dispute is Richard Ayvazyan's personal

11   residence, and that is the Topeka Drive house.

12           And you heard from Ms. Robinson today that

13   just to synthesize the testimony about half the proceeds

14   that went into escrow were she argued traceable to PPP,

15   EIDL loans and half were not.  They were clean funds

16   unrelated to PPP.  Okay.  That is a fact, and the

17   government told you it doesn't matter if only a portion

18   are traceable because if the property resulted from the

19   money laundering offense of conviction, then the entire

20   property can be taken.  Okay.

21           So think of it this way in an extreme example.

22   If one dollar of PPP went into the house, and the other

23   1.19 million was from clean funds, the government could

24   argue that the entire house is subject to forfeiture

25   because a single dollar of PPP went in.  Right.  It

1   could.

2           And that as a legal proposition is true, but

3   what the government has to do and you heard the

4   prosecutor admit it several times over and over.  They

5   can't just say there was a conspiracy money laundering

6   conviction.  The government has to show that this

7   specific property subject to forfeiture, in this case,

8   their personal residence, right, was in fact a

9   monetary -- a financial transaction that came from

10  concealment money laundering charge in the indictment.

11  That is what the government has to show, and they are not

12  going to be able do it in this case.  And here is why

13  that is.

14          So, you first you see the transfers that

15  come in.  This just establishes that there is something

16  like $632,000 that are undisputedly not PPP funds, are

17  not traced to PPP.  So, again, we will use the number

18  about half of the funds to purchase this house are not

19  PPP.  What is the other thing you see?  The other thing

20  you see is this is a house.  And you have heard testimony

21  that there was an escrow company that held the funds for

22  the transaction.  And, in escrow, there are detailed

23  documents identifying the sources of funds.

24          Right.  So, in other words, the fact that

25  money came from Timeland Transport in $110,000 which was

```
 1    PPP funds, that is in the escrow documents.  The fact
 2    that money came from Allstate Towing, Marietta
 3    Terabelian, and from Inception Ventures which is Richard
 4    Ayvazyan's tech company, all of that is in the escrow
 5    documents.  None of that is concealed.  So with respect
 6    to the actual purchase of the house through the escrow,
 7    there is no concealment.  There is no concealment there.
 8           This is the actual escrow records which are in
 9    evidence.  You can see that for yourself.  It is
10    government's Exhibit 32A and 32B.  All of it is plainly
11    laid out which entities and from whom the funds are
12    coming from.  That is not concealment money laundering.
13    At best, at best and, remember, the government only
14    charged with respect to this property putting aside Vahe
15    Dadyan, there is only one count of conviction on money
16    laundering, and that is a conspiracy to commit.
17           It wasn't linked to specific property at all.
18    But at best, I submit to you the only money laundering
19    arguably is with respect from the transfers of the loan
20    funding to accounts that are in ambiguated account
21    holders.  So, in other words, Iulia Zhadko, you have
22    concluded is a fake person, and there is money moved to
23    Iulia Zhadko.
24           Artur Ayvazian is a real person.  Right.  So
25    that is not concealment money laundering for Artur
```

1   Ayvazian to apply for a loan in his own name and get

2   funds into his own bank account.  Same thing, Redline

3   Auto Collision.  You heard about Edward Paronyan.  That

4   is not concealment money laundering.  That is committing

5   PPP loan fraud but not concealment money laundering.

6   Same thing, Secureline Realty and Tamara Dadyan.  None of

7   that -- that is in her own name and her own company --

8   none of that is concealment money laundering.

9          At best, if you have to argue for some

10  concealment somewhere, it would be the transfers in this

11  secondary field here.  The hundred thousand to the

12  Terabelian account.  The 120,000 and the 136,000 to the

13  Dadyan account.  Okay.  At best, those.  So if the

14  government was seeking to seize and forfeit those

15  accounts which they are, those are subject to forfeiture,

16  no question.  The entire contents of the account.

17         The government can make the argument that

18  clean money in that account served to make it -- that is

19  the magic phrase -- to facilitate or make it harder to

20  detect that money laundering was happening.

21         So that could be concealment money laundering,

22  but what is not concealment money laundering, it is the

23  opposite of concealment money laundering is any escrow

24  transaction here which highlights on essentially a public

25  record who and which accounts the money is coming from.

1    And that is accurately reported there.  That is not

2    concealment money laundering.

3            So the question is why does it matter.  Okay.

4    Why does it matter that this isn't concealment money

5    laundering because you are going to get a verdict form

6    for each piece of property, and, as the prosecutor

7    explained to you, there is essentially two different --

8    if you boil down all the accounts to two different

9    pathways.  There is the first pathway for the fraud

10   counts which say it is directly traceable, and, then,

11   there is the second pathway for money laundering specific

12   property meaning property obtained by virtue of money

13   laundering.  And then the question is what was involved

14   in that transaction.  Okay.

15           Now, within the money laundering, the

16   government charged two different objects.  One is what is

17   called transaction almoney laundering or spending money

18   laundering where there is a transaction of greater than

19   $10,000 that used PPP funds.

20           Money involved in that transaction would be

21   the PPP funds.  So the example for the Turks and Caicos

22   watch, it would be the $9,000 out of the 34,000, but if

23   there was concealment money laundering with respect to a

24   specific asset as the government has argued, then the

25   money involved in that transaction would be the other --

1    for using the Turks and Caicos watches as an example, the

2    other 25 something thousand dollars.  Right.

3          And the reason it matters and makes a

4    difference here is when we are looking at the escrow

5    transaction, if it is not concealment money laundering

6    which it is not I submit to you.  Then the funds that are

7    subject to forfeiture is at most, at most just the

8    $639,807.  Okay.  That is it.  And, again, the burden is

9    on the government.  So when you are checking, you know,

10   your verdict form box, you are going to have essentially

11   three options.

12         You are going to say for any given property

13   not just this house, yes, it is subject to forfeiture,

14   or, no, it is not.  Well, you have a third option of it

15   is subject to forfeiture but in a lesser amount than the

16   full value of the property.  And you can write that in.

17   Okay.  And here for the house, it is the third option at

18   best.  It is -- if it is subject to forfeiture, it is

19   only in the amount of 639,000.  This is not a concealment

20   money laundering transaction.  This is open to the world.

21         And I will leave you with the burden is on the

22   government, and it matters.  Okay.  The government has to

23   affirmatively prove that this specific purchase, not any

24   upstream bank accounts or whatever else they are trying

25   to forfeit -- right -- but this purchase of a house, this

1  personal residence, they got to prove that by a

2  preponderance.  And it matters because this is the family

3  home, and, while forfeiture includes a penalty or

4  punishment, it is not intended to punish the three

5  children that live there.

6        So we got to be sure that the government has

7  proved concealment money laundering before you take those

8  kids' house away.  That is the law.  They have to prove

9  that this house purchase is concealment money laundering

10  for you, not you, for the government to take the entire

11  house.  Okay.  It is that important, and it makes a

12  difference in everyone's lives.

13        All right.  At the end of the day, the big

14  picture points, this is about tracing specific assets to

15  counts of conviction.  Right.  And you get that.  And

16  that is the exercise that needs to be done both for the

17  fraud counts which is the traceable proceeds and for

18  anything you deem to be part of money laundering which is

19  potentially broader.  Okay.

20        So it is up to you to ask the critical

21  questions, what evidence has the government presented for

22  this specific asset subject to forfeiture.  And if you

23  don't have evidence that convinces you that it is more

24  likely than not, if you think it is a close call and may

25  be evenly likely or less likely than it is likely, then,

1   that means you select no when it comes to forfeiting that

2   specific piece of property.

3               And at the end of the day, it is the

4   government's burden at all times.  Thank you.

5          THE COURT:  Do the other defendants wish to make

6   final arguments?

7          MR. MESEREAU:  Submitted, your Honor.

8          MR. FRASER:  On behalf of Ms. Terabelian, briefly,

9   your Honor.

10         THE COURT:  You wish to make an argument.  I just

11  asked.

12         MR. FRASER:  Yes, your Honor.

13         THE COURT:  Members of the jury, my suggestion is

14  it is now 1:00 o'clock.  I think lunch is ready for you.

15  Can we take a quicker lunch than usual, maybe a half-hour

16  and then come back, listen to the final defense's

17  argument, the government has a rebuttal, and then you

18  will have the case for decision.  Take about 30, 40

19  minutes and then we will get going.  Thank you.

20         (The following proceedings were held outside the

21          presence of the jury:)

22         THE COURT:  Let's take a quick lunch break.  I

23  have some other matters to take up over lunch.  So you

24  can leave your belongings if you want or take them at the

25  table, but other lawyers are coming in just for a brief

```
 1   time to make some arguments.  I would say 40 minutes.
 2          (Recess from 1:01 to 1:45 p.m.)
 3          (The following proceedings were held in the
 4           presence of the jury:)
 5          THE COURT:  Yes, sir.
 6          MR. FRASER:  Thank you, your Honor.
 7              This is Ryan Fraser on behalf of Marietta
 8   Terabelian.
 9              As I anticipate you will see soon when you
10   receive your verdict form, you are about to make a series
11   of findings that is more specific than the findings that
12   you made in the earlier phase of the trial.  You will see
13   that your findings go defendant by defendant but also
14   item of property by item of property.
15              Now, I am going to be brief.  I don't want to
16   take up any more of your time than is needed, and I stood
17   up here in part to tell you that everything that Mr. Ram
18   said in his arguments on behalf of Richard Ayvazyan also
19   applies as to Ms. Terabelian and the reasons you should
20   not find property forfeitable as to her.
21              The government didn't prove the forfeitability
22   of property as to Ms. Terabelian any better than it did
23   as to Richard Ayvazyan.  The government in its argument
24   made reference to reasonable inferences, and I need to
25   point out here the question for you is not whether it
```

1  could be reasonable for a person to draw the inferences

2  that the government is asking you to make, there is no

3  deference to the government here.

4        Your role is to be independent finders of the

5  facts and to decide whether the government convinced you

6  that it is more likely than not as to each item of

7  property that the government has proven what it must in

8  order to forfeit that item of property.

9        Forfeiting property as to Ms. Terabelian would

10  mean that you would be concluding that it was proved to

11  you, and you are convinced that it is more likely than

12  not as to her for each item what she did as to that item

13  of property, what she knew and when.

14        And there is no evidence in this trial at that

15  level of detail.  I ask you not to find property

16  forfeitable as to Ms. Terabelian.

17      MR. JOHNSON:  Your Honor, Peter Johnson on behalf

18  of Vahe Dadyan.  Nothing related to Vahe Dadyan so we

19  submit.

20      THE COURT:  Government?

21      MR. BOYLE:  The government rests, your Honor.

22      THE COURT:  Okay.  Then the jury has what it needs

23  to decide this phrase of the case.  You will get the

24  exhibits.  You already have the exhibits relating to the

25  first phase.  You will get the exhibits that have been

1    introduced in the second phase and a copy of the jury

2    instructions and a verdict form.  So you should proceed

3    to decide the case, this phase of the case.

4        (The following proceedings were held outside the

5         presence of the jury:)

6        THE COURT:  You may be seated.  Let me --

7        MR. RAM:  Your Honor, if I may just on a pressing

8    issue related to the jury.

9        THE COURT:  Yes.

10        MR. RAM:  It is unclear which verdict form is

11    going back.

12        THE COURT:  I am giving the government's verdict

13    form, detailed verdict form.

14            The -- I wanted to briefly -- obviously, we

15    can't do it in depth, but I wanted to understand the

16    newest filing which actually we counted the filings.

17    There have been just about 600 filings in this case.

18    600.  That must set some sort of record.

19            But leaving that aside for the moment, can

20    someone from the government tell me what this newest

21    issue is about?

22        MR. FENTON:  Yes, your Honor.

23            So the government believes that during trial,

24    defendants Richard Ayvazyan and Marietta Terabelian

25    affirmatively waived their that Castegar claims by

1    affirmatively making arguments and eliciting testimony

2    and evidence related to the compelled statements.

3              And, if your Honor would like, I can provide a

4    little bit more detail if that would be helpful.

5              THE COURT:  Let me hear some context.

6              MR. FENTON:  Sure.  So I think that it really

7    falls into two different categories.

8              The first is that the parties introduced

9    evidence relating to the compelled statements that the

10   defendants made during the custodial interrogation while

11   in CBP custody in response to questions that the

12   defendants were asked by CBP about certain evidence like,

13   for example, the credit cards.

14             The second bucket is that the parties

15   introduced evidence relating to what was on the

16   telephones that were suppressed or about the telephones

17   that were suppressed, for example, by arguing that there

18   was an absence of evidence based on the fact that some of

19   this evidence had been suppressed and the government

20   could not use it.

21             So the government's argument in a nutshell is

22   that the defendants used Castegar both as a sword and as

23   a shield as well which is improper and waives their

24   claims.

25             THE COURT:  And I haven't considered the matter in

1    depth as yet, but is there a case that speaks to this

2    waiver issue?

3         MR. FENTON:  Yes, your Honor.  We would cite two

4    cases.  The first would be United States versus Benson.

5         THE COURT:  B-E-N-S-O-N?

6         MR. FENTON:  B-E-N-S-O-N.  And the citation is

7    2016 West Law, 215, 233.  And the second case that would

8    be helpful is Bittaker, B-I-T-T-A-K-E-R, versus Woodford,

9    W-O-O-D-F-O-R-D, and the citation is 331 F.3d, 715.

10        THE COURT:  Is that a Ninth Circuit case?

11        MR. FENTON:  That is a Ninth Circuit case, yes,

12   your Honor.

13        THE COURT:  And in terms of -- and I am just

14   exploring this on the most surface level at this point,

15   but does the -- is it a complete waiver or just a waiver

16   as to the particular subject of the Castegar ruling?

17        MR. FENTON:  The government would argue that it is

18   a complete waiver.  The subject matter is relatively

19   narrow so we think it is both with respect to -- well,

20   just with respect to everything that happened on that

21   day.

22        THE COURT:  How would it relate, for example, to

23   the Castegar issue and the second superseding indictment?

24             In other words, are you saying that even if

25   what you say is established, that that would take off the

1   table the argument regarding Castegar with the second

2   superseding indictment?

3        MR. FENTON:  Yes, your Honor.  Based on what

4   happened during trial, yes.

5        THE COURT:  I mean do these cases speak to that

6   type of situation?

7        MR. FENTON:  The Benson case talks about the use

8   of a sword and shield generally, and the Bittaker case

9   talks about waiving privilege when privilege is -- when

10  essentially a defendant relies on that privilege.

11       THE COURT:  Doesn't sound like the cases answer

12  the question precisely.

13       MR. FENTON:  I think that that is -- the two cases

14  that I cited are more general cases.  The government

15  seeks the opportunity to brief this issue in further

16  detail.

17       THE COURT:  Well, here is what I am going to do.

18  I am going to issue an order today which I have already

19  prepared directing the government to file a submission

20  regarding its burden in the case, and the way I am

21  understanding the defense contention is that the second

22  superseding indictment was linked to the violation in

23  Miami, and that -- and that evidence at trial and/or

24  nonevidence, there are bases for Castegar.  Aside from

25  the use of evidence, it was also traced to the violation,

1    and this has to be done on a short turnaround.

2            The reason is that this case involves many,

3    many facts, many issues, and, with the backlog of cases

4    we have with the pandemic, I am going right into other

5    things, and I can't -- I don't have the resources and the

6    time to relearn everything that I think I have retained.

7            So I am going to give you 10 days to do that,

8    and the order I am outlining is very specific as to what

9    you should do.  And then there is going to be a short

10   turn around for the defense.  I think maybe a little

11   longer than 10 days but not much, and then I am setting a

12   date for the hearing.

13           I think I set the date for July 12th.

14   Actually, the hearing is going to be -- no.  The hearing

15   is going to be on July 26th, and that will give the court

16   a little time to consider all that is briefed.  If you

17   have some compelling argument about -- have you briefed

18   the waiver argument?

19           MR. FENTON:  Not yet, your Honor, no.

20           THE COURT:  Well, then, if you want to do it, I

21   mean, you have an army of lawyers.  I don't know how many

22   more you have than you have already displayed, but there

23   are at least I don't know four or five lawyers and you

24   have the resources of the Justice Department and the U.S.

25   Attorney's office.  File something in three days.

```
 1              But I am not going to hold up the order

 2    because I think you will need the time to start thinking

 3    about it, and, from what you say, so far, the teaching of

 4    these cases, if any, is not specific as to the scope of a

 5    waiver if there is any waiver.

 6              Has the defense given this any thought?  I

 7    don't want to commit you or have you argue something that

 8    you haven't given enough thought to, but do you have any

 9    preliminary thoughts on it?

10         MR. RAM:  Yes, your Honor.  I found out about it

11    in court.

12         THE COURT:  Go to the lectern, and tell me what

13    your thoughts are.  I mean this is all preliminary

14    because obviously it has to be.

15         MR. RAM:  Yes, your Honor.  As I was saying I

16    found out about it when I was in court today.  We were

17    preparing for forfeiture over the weekend.  I did not see

18    any filing yet so I don't know what the substance of it

19    is.

20         THE COURT:  This is all I know is what I just

21    heard.

22         MR. RAM:  Big picture, I am somewhat at a loss

23    with the even suggestion of a waiver argument.  As the

24    court is aware, the defendants repeatedly requested, in

25    fact, the court initially ruled that there would be a
```

1    Castegar hearing before trial.  The government explicitly

2    asked for reconsideration of that ruling and got it.

3         THE COURT:  I am aware of the history.  That won't

4    get us very far.  I mean, if you were just made aware of

5    this motion, it is unfair to get you to speculate and it

6    is unhelpful to the court.  So let's just table it.

7         MR. RAM:  Okay.  Just two things I would point

8    out, just big picture, your Honor, in terms of the

9    schedule you proposed.  I understand the court wants to

10   deal with this while the facts of the case are still

11   fresh, and that makes sense.  I think the biggest part of

12   the Castegar hearing from the survey of cases that we

13   have gone through is going to be the production of

14   discovery that speaks to the issues of non-evidentiary

15   use which is at the heart of the defense's contention.

16        THE COURT:  That discovery issue will be more

17   apparent if necessary as the matter is briefed, and so we

18   are going to go forward with the schedule.  And I am just

19   telling you to, you know, get yourselves prepared, and it

20   is all detailed in an order which I will issue within the

21   hour.  All right.

22        MR. FENTON:  Thank you, your Honor.  The

23   government has one more issue it would like to raise with

24   the court.

25        THE COURT:  Okay.

1           MR. FENTON:  And that is the issue of detention

2    pending sentencing.

3           THE COURT:  Yes.

4           MR. FENTON:  The government would like to move to

5    remand to custody defendants Richard Ayvazyan and Artur

6    Ayvazian pending sentencing pursuant to Section 3143.

7           THE COURT:  And what is the basis for that?

8           MR. FENTON:  So with respect to Richard Ayvazyan,

9    just as a general matter, at this point at this stage in

10   the proceedings, the burden is on the defendants to

11   demonstrate by a clear and convincing standard that

12   Richard Ayvazyan does not pose a flight risk or a danger

13   to the community.  The government believes that he poses

14   both.  With respect to flight risk, he faces as

15   substantial sentence including a mandatory minimum as

16   demonstrated by the evidence during trial.

17          THE COURT:  What is the mandatory minimum?

18          MR. FENTON:  The mandatory minimum is the two year

19   mandatory minimum for the aggravated identity theft

20   counts under Section 1028(a).  He has a history of using

21   fake identities including all the identities that we

22   offered evidence on at trial.  There is a history of

23   opening bank accounts in other people's names, a history

24   of borrowing money in other people's names, all of which

25   make him a flight risk because he is able to disappear

1   and essentially move about without detection.

2          He also has access to millions of dollars in

3   criminal proceeds that are still unaccounted for.  We

4   have identified $18 million in loans that were taken.

5   About 80 percent of that amount of money is still

6   unaccounted for which means it is out there and available

7   for him to use.  He has also been indicted by the

8   California State Attorney General in a case that will be

9   proceeding shortly.

10          And he has experience as an international

11  traveler including as demonstrated very recently

12  willingness to travel during the pandemic to the

13  Caribbean even just for vacation.

14          In terms of danger to the community, there are

15  jest a few points here that are very important.  The

16  first is that this is his third conviction for fraud

17  which is significant and shows that he poses a --

18          THE COURT:  I only knew of one other.  There was

19  some conviction some years ago for mortgage fraud.

20  Wasn't that right?

21          MR. FENTON:  That's right.  In 2012, he plead

22  guilty.  There was a federal conviction.  In 1999, there

23  was a grand theft charge which was a California state

24  conviction as well.

25          THE COURT:  Was that a fraud conviction?

1      MR. FENTON:  It is a grand theft.

2      THE COURT:  What was involved in that case?

3      MR. FENTON:  Very similar facts to those alleged

4  here which is the use of other people's names to

5  essentially obtain money from a bank.  So we see facts

6  that are similar over the decades.

7           The nature of the crimes with which he was

8  convicted is extremely serious, you know, including

9  defrauding the federal government and banks during a

10  national catastrophe, and, in addition to that, when his

11  home was searched even though he is a felon, he had a gun

12  safe which was found during the search of his home which

13  strongly suggests that at some point he actually had gun

14  and likely hid them after he was arrested in Miami and

15  then released from custody and then returned back home.

16           So, for all of those reasons, the government

17  would move to remand Richard Ayvazyan in custody while he

18  awaits sentencing.

19           And then, if it pleases the Court, I can speak

20  on Artur Ayvazian as well or give counsel a chance to

21  respond.

22      THE COURT:  Go ahead.

23      MR. FENTON:  With regard to Artur Ayvazian, he

24  similarly poses a flight risk.  He faces a substantial

25  sentence including a mandatory minimum, Section 1028(a),

1    aggravated identity theft.  He has a history of using

2    fake identities as demonstrated by the evidence at tria

3    and also a history of creating fake identities which is

4    also demonstrated by the evidence found on his telephone

5    that was offered during trial.

6         There is a history of opening bank accounts in

7    other people's names, dozens of different checks and

8    checkbooks were found in his home, and there are also

9    other people's checks found in his phone.  He has a

10   history of borrowing money in other people's names as

11   well and access to the criminal proceeds that are still

12   unaccounted for.

13        And then he, too, has been indicted by the

14   California State Attorney General for fraud as well.  So

15   he is facing additional charges in addition to everything

16   that he is facing --

17        THE COURT:  He has no prior convictions though.

18        MR. FENTON:  That's correct, your Honor.  That's

19   correct.

20        With respect to danger to the community,

21   again, the nature of the crimes for which he was

22   convicted are extremely serious for the same reasons I

23   explained with respect to Richard Ayvazyan.  The other

24   point that I would note was when Artur Ayvazian's house

25   was searched, 12 guns were found during that search.  We

1    also found 12 guns and ammunition and accessories as well

2    which shows that he is armed.  And those guns were taken

3    but, nevertheless, he has that --

4         THE COURT:  But there was nothing illegal about

5    having those guns?

6         MR. FENTON:  He does not have a criminal history,

7    and that is correct, your Honor.  But, nevertheless, he

8    has a large number of guns in his home or had at that

9    point.

10        THE COURT:  You never moved to remand Tamara

11   Dadyan Dadyan, did you?

12        MR. FENTON:  We did not, your Honor.  And the

13   government acknowledges the fact that, in this particular

14   case, there are two families involved, both of whom have

15   children, and we are not moving to remand to custody

16   Marietta Terabelian nor Tamara Dadyan.

17        THE COURT:  But does that mean that your position

18   is that you are not going to ask for a custodial sentence

19   for the other spouse?

20        MR. FENTON:  At sentencing?

21        THE COURT:  Yes.

22        MR. FENTON:  No.  We will be asking for a

23   custodial sentence.  Absolutely.

24        THE COURT:  Well, then how is that consistent?

25        MR. FENTON:  Well, we believe, and we are trying

1    to -- we think that the brothers pose a flight risk.  We

2    think that if the two brothers are both detained, it

3    makes it less likely that other members of the family

4    would flee --

5         THE COURT:  I see.

6         MR. FENTON:  -- together.

7         THE COURT:  And there was some mention of

8    children.  How many children are there in each family,

9    and what are their ages?

10        MR. FENTON:  I will -- the other thing -- there is

11   three children in the Richard Ayvazyan's household, and

12   two in Artur Ayvazian's household.

13        THE COURT:  What are their age groups?

14        MR. FENTON:  I will have to let defense counsel

15   speak to their ages.

16        THE COURT:  I see.

17        MR. FENTON:  I believe that they are younger to

18   mid teens.

19             The one additional point I want to make about

20   the distinction between Artur Ayvazian and Tamara Dadyan

21   is that Tamara Dadyan has plead guilty and accepted

22   responsibility and Artur Ayvazian has not which I do

23   think also accounts for the difference.

24        THE COURT:  He has a constitutional right to go to

25   trial.  The fact that he went to trial, even if you

1   believe that he was guilty, shouldn't be held against

2   him.

3        MR. FENTON:  Absolutely, your Honor.  But I do

4   think the acceptance of responsibility factors into

5   whether or not an individual is a flight risk.

6        THE COURT:  That is only a factor that the

7   guidelines consider.  I mean, it is a consideration, but

8   I don't see how compelling it is in distinguishing Tamara

9   Dadyan from Richard Ayvazyan.  What about Grigoryan?  You

10  never moved to remand him either.

11       MR. FENTON:  That's correct, your Honor.  We have

12  not moved to remand him.  We think that the roles are

13  also different as well.  Again, Mr. Grigoryan accepted

14  responsibility, and, based on what we know, we do not

15  have reason to believe that he has firearms as well.

16       THE COURT:  All right.  Let me hear from the other

17  party briefly.

18       MR. RAM:  Your Honor, we are passing out briefing

19  on this issue that we had had as a pocket memo.  The

20  government --

21       THE COURT:  What was that now?

22       MR. RAM:  We passed up some briefing on this issue

23  as well, your Honor, so you could have the full history

24  and facts, the relationships, the children, the family,

25  the locations, the monitoring by probation.  I can give

```
 1   your Honor a moment to review that and then speak or I

 2   can speak now.

 3        THE COURT:  Let me read it quickly.

 4        MR. RAM:  Okay.

 5        (Pause in proceedings.)

 6        THE COURT:  Okay.  I have read it.

 7        MR. RAM:  Big picture, the government's arguments

 8   are entirely inconsistent and punitive.  The punitive is

 9   because Mr. Ayvazian went to trial and through his

10   counsel filed motions to litigate the case.  The

11   government is requesting his detention.

12             Its argument is inconsistent because of the

13   treatment of other defendants that your Honor has just

14   pointed to, and there is more.  So, for example, Arman

15   Hayrapetyan who has no connections to the United States

16   at all --

17        THE COURT:  He is a different category.  I do

18   remember his situation.  A year or so before the

19   indictment, he was splitting his time between Armenia and

20   here.

21        MR. RAM:  Right.  So, your Honor, big picture of

22   the other defendants who have plead guilty, they are not

23   seeking detention.  Because Mr. Ayvazyan and his brother

24   went to trial, they are seeking detention.  Richard

25   Ayvazyan is not a flight risk.  That is the big picture
```

1  point to underscore here.  He has significant, as your

2  Honor can see from the filing, significant surety bonds.

3        THE COURT:  What kind of pretrial supervision is

4  he under?  How does he report to the probation

5  department?

6        MR. RAM:  Yes, your Honor.  He is currently under

7  home detention, and he has location monitoring.  And he

8  reports to probation officer Manuel Ybanez who was a

9  witness who testified at this trial.  He has been in

10  complete compliance with all requests from Mr. Ybanez.  I

11  have spoken to Mr. Ybanez multiple times including when

12  there were state charges, your Honor.  And Mr. Ybanez has

13  shared with me that he has had no issues with

14  Mr. Ayvazian whatsoever under supervision.

15        THE COURT:  Is the other Ayvazian -- is he under

16  the same supervision?

17        MR. MESEREAU:  Your Honor, he wears an ankle

18  bracelet.  He is allowed to go to work.

19        THE COURT:  I see.

20        MR. RAM:  Your Honor, adding to it, Mr. Ayvazian

21  is not a flight risk at all.  He has three kids, age 13,

22  14 and 15.  They are his world.  The passports are with I

23  believe the government or the probation officer or one

24  and the same.  They don't have their passports.  Their

25  kids are here in school.  Their whole life and community

1      is here.

2                  I believe that Mr. Fenton pointed to

3      international travel and cited a vacation to Turks and

4      Caicos.  That is not indicative of flight.  That is not

5      even a serious argument.  The other thing I heard which

6      stood out, your Honor, talking about danger to the

7      community, Mr. Fenton mentioned something about guns.

8      Mr. Ayvazyan has not had a gun in his place since his

9      conviction in 2012, and that is documented, the turnover

10     of firearms from that case and that conviction period.

11                 He is not a danger to anyone in any shape or

12     form.  I have gotten to know him over the last eight

13     months, and, frankly, he is a friend of mine.  He is not

14     a danger to anyone.  That is not a serious contention

15     that this Court should even look at for a split second.

16     The other thing Mr. Fenton referenced, there is a 2012

17     conviction, and that is involving a false submission to a

18     bank in connection with a mortgage purchase.  That is a

19     fact.

20                 Now, this reference to a 1999 grand theft in

21     state court, and Mr. Fenton alluded to the facts being

22     similar to this case.  That is not true.  What I

23     understand, I don't have the documentation for the '99

24     conviction in front of me.  Big picture, Mr. Ayvazian was

25     a bank employee.  He was working at the bank, and I don't

1    have the full details but I think the allegation and

2    conviction was for having his hand in the cookie jar when

3    he was 19 years old.  That is what the 1999 conviction is

4    for.

5        THE COURT:  All right.  Let's leave it for the

6    moment.  Thank you.

7        MR. MESEREAU:  May I speak on behalf of Artur

8    Ayvazian?

9        THE COURT:  Yes.

10       MR. MESEREAU:  Thank you.

11            Good afternoon.  Tom Mesereau for Artur

12   Ayvazian.  Your Honor, you heard him testify, and you

13   have seen the evidence.  He is not a major player in this

14   alleged scheme, and the evidence clearly showed that his

15   wife and others were masterminding whatever went on.  He

16   is a very peaceful person.  He has been in total

17   compliance with pretrial services.  They have allowed him

18   to go to work.  There has been no violation of any kind,

19   no criticism that I am aware of.

20            There were some guns that were taken.  They

21   were all in his name.  I am informed the majority were

22   hunting weapons.  He does not pose a threat to anyone.

23   There wasn't one witness that said they ever saw him use

24   a false ID.  The court may recall there was one

25   transaction involving his towing company that he regrets

1    being involved in, but he is not a threat to anyone.

2            He is certainly not going to flee, and I am

3    informed that the last time he took any trip outside the

4    country was 2017.  That is my information.  He is not a

5    major player in the case.  He testified, I submit

6    truthfully.  I think that your Honor had a chance to

7    observe who he is and what kind of a person he is.  And I

8    think he is not a flight risk, and we definitely hope he

9    is not remanded.

10           Thank you.

11       THE COURT:  Thank you.

12           (Recess from 2:26 to 4:30 p.m.)

13       THE COURT:  The parties have received the note;

14   correct?  What is the defense's position in terms of how

15   to answer?

16       MR. RAM:  We have conferred with the government

17   and agree on a potential response.

18       THE COURT:  That is great.

19       MR. RAM:  So we have it typed.

20       THE COURT:  Let me see it.

21       MR. RAM:  You won't be able to read my writing.

22       THE COURT:  Well, then read it.

23       MR. RAM:  "It is in your sole discretion whether

24   the government has established the requisite connection

25   between a count of conviction and a specific piece of

```
 1   property and, if so, the extent of that connection.
 2   While you may write in an amount, it is up to you to
 3   determine the amount connected to a count of conviction
 4   for any given property subject to forfeiture."
 5        THE COURT:  I mean, that is pretty close to what I
 6   had in mind before I came out here, so I agree to it.
 7        MR. RAM:  Okay.
 8        THE COURT:  You say you have it typed out?
 9        MR. RAM:  I think we just sent it to Mr. Cruz.
10        MR. SILVERMAN:  I sent it maybe 30 seconds ago,
11   and I CC'd Mr. Boyle.
12        MR. RAM:  We also looked for a person with good
13   handwriting, but could not find one.
14        THE COURT:  I am just going to write on top in my
15   handwriting and then "to the jury" and sign my name Judge
16   Wilson, answer to note No. 1.
17        THE COURT:  Okay.  Would you send this to the
18   jury.
19        (Recess from 4:33 to 5:03 p.m.)
20        (The following proceedings were held outside the
21         presence of the jury:)
22        THE COURT:  We have received a note from the
23   foreperson of the jury that the jury has reached a
24   unanimous verdict.
25             Can you hand me the verdict, or have the
```

1   foreperson hand it to you, Mr. Cruz.

2          I am just reading them in the order that they

3   were handed to me.  There are so many entries in the

4   verdict form.  If all the answers are the same, I am just

5   going to say yes or indicate where there is no.

6          So, as to Vahe Dadyan, on the verdict form,

7   every question is answered yes, and it is signed by the

8   foreperson dated 28 June, 2021; correct, madam

9   foreperson?

10          THE JUROR:  Yes, your Honor.

11          THE COURT:  And, then, next, in the order given to

12   me is as to Artur Ayvazian.  Question 6 was answered no.

13   Question 12 was answered no.  Question 18 was answered

14   no.  There is a circle around that and some initials with

15   a slash in the yes bracket with what appears to be the

16   foreperson's initials; is that correct?

17          THE JUROR:  Yes, your Honor.

18          THE COURT:  So is the answer to question 18 no?

19          THE JUROR:  Yes.

20          THE COURT:  And question 24, no.  Signed by the

21   foreperson dated June 28th, 2021.  24, I said was no.

22   All the other answers are yes.

23          As to Richard Ayvazyan, question 6 has a yes

24   but a circle.  Was that the answer to question 6, yes?

25   With regard to Richard Ayvazyan?

1        THE JUROR:  If it is circled, your Honor.

2        THE COURT:  That means that is the answer?

3        THE JUROR:  Yes, your Honor.

4        THE COURT:  Question 7 is no.  Question 23 is no.

5    Question 39 is no.  Question 55 is no.  All the other

6    answers are yes.  Signed by the foreperson, 28 June,

7    2021.

8            Next is to defendant Marietta Terabelian.  7

9    is no.  Question 23 is no.  Question 39 is no.  Question

10   55 is no.  All the other questions are answered yes

11   signed, 28 June, 2021 by the foreperson.

12           Is that the verdict so say each of you?

13           I see nodding of heads, does anyone want the

14   jury polled?

15       MR. MESEREAU:  Yes, your Honor.

16       MR. RAM:  And just clarification because they

17   don't have it with them.  On the 451,000, there was a yes

18   circled.

19       THE COURT:  I don't know.  They answered the

20   questions.  The verdict form was responsive.

21           Just poll the jury.

22       THE CLERK:  Yes, your Honor.  Ladies and gentlemen

23   of the jury, as I call your name, please answer yes if

24   the verdict as presented and read is your verdict.

25           Ms. Vargas?

```
 1            THE JUROR:  Yes.

 2            THE CLERK:  Mr. Diaz Brown?

 3            THE JUROR:  Yes.

 4            THE COURT:  Ms. Perez?

 5            THE JUROR:  Yes.

 6            THE CLERK:  Mr. Lam?

 7            THE JUROR:  Yes.

 8            THE CLERK:  Ms. McGilly?

 9            THE JUROR:  Yes.

10            THE CLERK:  Mr. Regidor?

11            THE JUROR:  Yes.

12            THE CLERK:  Ms. Kaminir?

13            THE JUROR:  Yes.

14            THE CLERK:  Ms. Hernandez?

15            THE JUROR:  Yes.

16            THE CLERK:  Mr. Almader?

17            THE JUROR:  Yes.

18            THE COURT:  Ms. Lars?

19            THE JUROR:  Yes.

20            THE CLERK:  Ms. Calloway?

21            THE JUROR:  Yes.

22            THE COURT:  And Ms. Kish?

23            THE JUROR:  Yes.

24            THE CLERK:  Did I miss someone.

25            THE COURT:  Everybody was polled?
```

1    THE CLERK:  Yes, your Honor.

2    THE COURT:  Okay.  At this point, members of the

3  jury your service is complete, and, at this point, I can

4  thank you for your extraordinary service in this case.

5  You were extraordinarily punctual, you were very

6  attentive, and many of the exhibits involved numbers and

7  other things and sometimes a jury fades out, but I didn't

8  notice that at all.

9    And so I want to commend you and thank you,

10  and you are now all excused.  I have one parting thing to

11  tell you.

12    You may have some questions about the

13  confidentiality of the proceedings.  Now that the case is

14  over, you are free to discuss it with any person you

15  choose.  But by the same token, I should advise you that

16  you are under no obligation whatsoever to discuss the

17  case with any person.

18    Always bear in mind that if you do decide to

19  discuss this case, the other jurors fully and freely

20  stated their opinions with the understanding that they

21  were being expressed in confidence.  Please respect the

22  privacy of the views of the other jurors.

23    Finally, if you would prefer not to discuss

24  the case with anyone but are feeling under pressure to do

25  so, please feel free to contact the courtroom deputy who

```
 1    will notify me, and I will assist.  Thank you again.
 2              (The following proceedings were held outside the
 3               presence of the jury:)
 4              THE COURT:  All right.  That concludes the case at
 5    least for the moment.  The government did, I trust, get
 6    the order?  Did you see it?
 7              MR. FENTON:  Yes, your Honor.  On Castegar?
 8              THE COURT:  Yes.
 9              MR. FENTON:  Yes.
10              THE COURT:  All right.  And so our next meeting
11    will be the hearing on the Castegar motion.
12                   Thank you all for your vigorous representation
13    and your participation.  Thank you.
14              MR. SILVERMAN:  Your Honor, one piece of
15    scheduling.  We would propose that Rule 29 and 33 motions
16    be briefed three weeks after the Castegar hearing.  That
17    would be August 16th.  We have floated that idea to the
18    government.  I don't know if they have a position at this
19    time.
20              THE COURT:  Why are the motions dependent on
21    Castegar?
22              MR. SILVERMAN:  Your Honor, we will be preparing
23    for and writing to the court about Castegar in the
24    interim.
25              THE COURT:  I mean, wouldn't your arguments
```

 1  regarding Rule 29, if they are based upon Castegar, be

 2  evident in the Castegar motion?

 3       MR. SILVERMAN:  They would, your Honor.  However,

 4  we will be litigating the Castegar motions actively

 5  between now and the conclusion of the Castegar hearing.

 6       THE COURT:  I see.  Well, I have to think about

 7  the -- about the schedule.  I don't want to put things

 8  off long because, as I said, the case is fresh in my

 9  mind, and the longer it drifts, the more difficult it

10  will be for me to get back into it.

11       And I have made an effort to do the best I can

12  to study the evidence as it has been presented and

13  argued.

14       I will issue an order in that regard.  Okay.

15       MR. SILVERMAN:  Thank you, your Honor.

16       THE COURT:  Yes.  Let's set a date for sentencing.

17       What about -- what is the government's

18  position on the suggestion about the Rule 29 motions?

19       MR. FENTON:  The government defers to the court,

20  your Honor.

21       THE COURT:  I see.

22       Is there some reason why you couldn't make a

23  motion now on all issues that you think are deserving of

24  a Rule 29 motion, and we can hear them all on the same

25  date?  Or a date soon after the Castegar hearing?

 1          MR. RAM:  One reason, your Honor, would be there

 2   is some case law that would suggest if there is a finding

 3   of evidentiary or non-evidentiary use, that would

 4   implicate, for example, the Rule 29 motion we made at the

 5   close of the government's case.  It would be viewed as a

 6   sufficiency of the evidence and could warrant dismissal

 7   of the case altogether in the Rule 29 posture because it

 8   was preserved at the close of the government's case.

 9          So there is some interplay there.  We

10   certainly understand your Honor's point on while things

11   are fresh, moving.  We think there might be more

12   efficiency waiting till three weeks after.

13          THE COURT:  I will think about that.

14          On the motion that you made for remand, I am

15   going to deny those motions.

16          Okay.  Sentencing date, the usual date is 10

17   weeks; correct, Paul?

18          THE CLERK:  September 13th at 11:00 a.m.

19          THE COURT:  That will be the date.

20          THE CLERK:  Yes, your Honor.

21          (Proceedings concluded.)

```
 1                        CERTIFICATE

 2

 3

 4   I hereby certify that pursuant to Section 753, Title 28,

 5   United States Code, the foregoing is a true and correct

 6   transcript of the stenographically reported proceedings held

 7   in the above-entitled matter and that the transcript page

 8   format is in conformance with the regulations of the

 9   Judicial Conference of the United States.

10   Date:  July 8, 2021

11

12    /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**MR. BOYLE: [43]** 5/12 5/16
6/11 11/3 11/10 11/14 21/4
21/11 21/15 22/15 22/22
24/14 30/17 30/23 31/6 32/4
33/4 33/17 34/13 37/18 39/7
39/13 39/20 40/1 41/2 41/5
41/9 43/21 44/15 46/5 46/16
56/25 59/8 59/18 60/9 60/12
60/17 60/25 61/4 62/11 75/15
75/17 103/20
**MR. FENTON: [35]** 58/23
104/21 105/5 106/2 106/5
106/10 106/16 107/2 107/6
107/12 108/18 110/21 110/25
111/3 111/7 111/17 112/20
112/25 113/2 113/22 114/17
115/5 115/11 115/19 115/21
115/24 116/5 116/9 116/13
116/16 117/2 117/10 128/6
128/8 129/18
**MR. FRASER: [4]** 45/12 101/7
101/11 102/5
**MR. JOHNSON: [2]** 44/23
103/16
**MR. MESEREAU: [5]** 101/6
119/16 121/6 121/9 125/14
**MR. PAETTY: [1]** 61/25
**MR. RAM: [28]** 44/21 59/4
60/20 60/24 75/13 78/15
104/6 104/9 109/9 109/14
109/21 110/6 117/17 117/21
118/3 118/6 118/20 119/5
119/19 122/15 122/18 122/20
122/22 123/6 123/8 123/11
125/15 129/25
**MR. SILVERMAN: [34]** 22/17
22/24 23/8 23/18 25/16 26/12
27/11 27/17 30/24 31/10
31/13 32/6 32/11 32/18 32/24
33/21 38/18 39/2 39/22 40/12
41/1 43/23 44/12 45/16 46/2
58/13 59/22 60/3 60/8 123/9
128/13 128/21 129/2 129/14
**THE CLERK: [20]** 5/14 6/10
6/12 44/9 44/16 58/8 58/10
125/21 126/1 126/5 126/7
126/9 126/11 126/13 126/15
126/19 126/23 126/25 130/17
130/19
**THE COURT: [147]**
**THE JUROR: [18]** 61/22 124/9
124/16 124/18 124/25 125/2
125/25 126/2 126/4 126/6
126/8 126/10 126/12 126/14
126/16 126/18 126/20 126/22
**THE WITNESS: [8]** 24/17 31/1
33/11 33/24 34/16 37/21
39/10 40/7

**$**

**$10,000 [1]** 98/19
**$105,000 [1]** 18/4
**$107,536.23 [2]** 13/4 67/16
**$110,000 [1]** 95/25
**$110,300 [1]** 8/22
**$113,750 [1]** 17/25
**$120,000 [1]** 83/21
**$120,010 [1]** 83/25
**$124,000 [1]** 68/10
**$144,970.07 [1]** 14/18
**$147,620 [1]** 20/7
**$148,450 [1]** 40/25
**$149,900 [1]** 68/18
**$15,000 [1]** 38/23
**$15,826.15 [1]** 38/24
**$159,732.52 [1]** 27/10
**$159,733 [3]** 16/6 16/10 27/4

**$165,000 [2]** 30/10 84/9
**$1,000 [1]** 112/8
**$17,190 [2]** 16/22 28/16
**$18 [1]** 112/4
**$18 million [1]** 112/4
**$180,000 [1]** 74/18
**$181,302 [2]** 17/15 28/21
**$211,695 [2]** 40/17 82/14
**$219,000 [2]** 17/4 84/6
**$230,000 [1]** 69/21
**$238,000 [1]** 71/20
**$238,614 [2]** 7/17 69/11
**$238,960 [1]** 18/25
**$25,550 [1]** 36/20
**$250,000 [1]** 18/2
**$283,000 [1]** 20/1
**$3,422 [2]** 53/11 74/3
**$3.52 [1]** 37/4
**$3.52 million [1]** 37/4
**$30,000 [3]** 81/14 81/17 82/2
**$300,000 [1]** 74/17
**$34,000 [1]** 73/13
**$34,750 [1]** 36/15
**$3422.00 [1]** 42/13
**$384,100 [1]** 22/5
**$400,000 [1]** 88/6
**$430,000 [3]** 35/6 35/12
35/23
**$430,620 [3]** 20/9 20/10
72/20
**$450,000 [4]** 74/1 77/20
77/25 82/21
**$451,000 [2]** 80/3 80/12
**$451,185 [2]** 42/16 53/8
**$5,000 [1]** 39/1
**$50,000 [8]** 23/24 24/10
24/14 25/6 25/15 25/24 26/11
26/15
**$60,000 [1]** 86/17
**$600,000 [1]** 81/20
**$632,000 [1]** 95/16
**$639,807 [3]** 10/8 70/12 99/8
**$640,000 [1]** 37/9
**$65,000 [2]** 67/5 67/18
**$65,990.42 [1]** 42/10
**$65,990.43 [1]** 53/5
**$74,557.79 [4]** 42/6 53/2
57/3 68/5
**$80,000 [4]** 29/22 30/6 68/11
84/11
**$82,000 [3]** 18/18 36/6 72/9
**$82,500 [1]** 86/6
**$9,000 [1]** 98/22
**$9,200 [1]** 73/4
**$91,200 [4]** 36/24 86/10
86/18 89/13

**'**

**'99 [1]** 120/23

**—**

**—and [2]** 2/5 2/8

**/**

**/s [1]** 131/12

**0**

**008 [1]** 53/1
**031 [1]** 52/18
**033 [1]** 52/22
**0762 [1]** 22/4

**1**

**1.19 million [1]** 94/23
**1.2 million [1]** 37/7
**1.B [1]** 29/15
**10 [11]** 19/22 35/1 35/25
43/8 43/10 43/10 61/3 70/16

**108/7 108/11 130/16**
**1006 [1]** 3/15
**1006 [2]** 11/13 21/14
**10100 [1]** 3/15
**1028 [3]** 51/4 111/20 113/25
**10:39 [1]** 44/18
**10:46 [1]** 44/18
**10:50 [1]** 46/24
**11 [3]** 4/9 4/9 68/1
**1114 [1]** 2/17
**115 [6]** 6/10 6/12 7/11 8/16
10/2 37/2
**11:00 a.m [1]** 130/18
**11:12 [1]** 46/24
**11:38 [1]** 61/6
**11:41 [1]** 61/6
**11:42 [1]** 62/7
**12 [5]** 32/1 45/20 114/25
115/1 124/13
**120,000 [1]** 97/12
**126334 [2]** 43/1 53/18
**12:02 [1]** 62/7
**12th [2]** 83/22 108/13
**13 [1]** 119/21
**1330 [1]** 2/23
**1343 [2]** 50/15 51/5
**1344 [2]** 50/22 51/5
**136,000 [1]** 97/12
**13th [3]** 14/11 15/10 130/18
**14 [7]** 43/16 43/17 54/3 54/5
90/9 90/12 119/22
**1400 [1]** 2/10
**14th [7]** 18/4 25/14 25/20
30/8 38/14 83/12 84/11
**15 [6]** 68/16 70/17 81/14
81/17 82/1 119/22
**16 [3]** 31/21 54/2 70/17
**165,000 [1]** 29/2
**16th [1]** 128/17
**17 [2]** 43/8 70/17
**17th [2]** 18/17 83/18
**18 [18]** 26/14 26/14 40/22
42/24 46/11 50/14 50/21 51/3
51/4 53/15 54/12 54/22 55/4
57/14 68/1 69/17 124/13
124/18
**181,000 [1]** 84/6
**19 [2]** 70/7 121/3
**1900 [1]** 2/15
**1935 [1]** 3/12
**1956 [2]** 54/23 55/4
**1979 [1]** 43/7
**1980 [1]** 43/7
**1982 [1]** 43/8
**1983 [1]** 43/8
**1984 [1]** 43/9
**1985 [1]** 43/9
**1986 [1]** 43/10
**1987 [1]** 43/10
**1999 [3]** 112/22 120/20 121/3
**19th [1]** 22/11
**1:00 o'clock [1]** 101/14
**1:01 [1]** 102/2
**1:45 [1]** 102/2
**1st [1]** 1/22

**2**

**20 [8]** 42/7 42/14 43/13 44/5
45/1 53/12 68/6 69/17
**20-579 [1]** 1/8
**200 [2]** 22/19 24/1
**200-205 [1]** 4/11
**20036 [1]** 2/23
**2009 [4]** 40/22 40/23 40/24
82/9
**201 [2]** 22/19 83/17
**2012 [3]** 112/21 120/9 120/16
**2016 [1]** 106/7
**2017 [1]** 122/4

**2**
**2019 [3]** 40/20 82/8 82/11
**202 [2]** 22/19 83/17
**2020 [24]** 13/1 14/8 14/15
17/2 17/2 17/5 17/6 17/25
18/17 19/5 19/6 22/11 38/5
42/7 42/11 42/14 42/17 42/21
43/13 53/9 53/12 67/7 67/15
74/2
**2021 [9]** 1/17 5/1 31/4 38/14
124/8 124/21 125/7 125/11
131/10
**203 [2]** 22/20 39/17
**204 [2]** 22/20 40/21
**205 [3]** 4/11 22/20 38/10
**20530 [1]** 2/10
**20th [1]** 74/4
**21 [2]** 4/10 4/10
**215 [1]** 106/7
**216 [1]** 3/13
**22 [3]** 4/11 4/11 52/14
**22nd [2]** 17/2 17/5
**23 [3]** 4/6 125/4 125/9
**233 [1]** 106/7
**2335 [1]** 86/16
**2395 [1]** 22/2
**24 [14]** 15/16 15/23 17/18
20/22 21/3 36/1 39/11 52/14
74/15 74/16 86/23 88/17
124/20 124/21
**24-inch [2]** 43/16 54/3
**2461 [2]** 46/13 46/17
**25 [2]** 5/1 99/2
**26 [9]** 25/10 55/5 56/23
65/20 69/19 69/23 70/9 70/21
87/13
**26331 [3]** 42/24 53/16 89/13
**26th [1]** 108/15
**27 [11]** 14/20 37/12 37/16
37/17 37/22 38/1 74/15 74/16
86/22 87/8 88/17
**28 [7]** 1/17 31/24 46/12
124/8 125/6 125/11 131/4
**28th [2]** 14/15 124/21
**29 [6]** 128/15 129/1 129/18
129/24 130/4 130/7
**2:26 [1]** 122/12
**2nd [2]** 42/11 67/7

**3**
**30 [7]** 25/19 72/3 72/3 91/6
91/6 101/18 123/10
**300 [1]** 3/16
**31 [3]** 13/1 26/1 67/15
**312 [1]** 2/6
**3143 [1]** 111/6
**32A [1]** 96/10
**32B [1]** 96/10
**33 [1]** 128/15
**331 [1]** 106/9
**34,000 [1]** 98/22
**34,750 [1]** 86/18
**350 [2]** 1/22 3/5
**3656 [1]** 20/3
**39 [3]** 91/14 125/5 125/9
**3900 [1]** 2/20
**3rd [1]** 18/17

**4**
**40 [2]** 101/18 102/1
**401 [17]** 4/9 11/6 11/12
11/17 12/5 13/20 15/4 15/20
16/14 16/24 17/20 18/12 19/2
19/23 25/5 82/24 84/4
**402 [4]** 4/10 21/7 21/13
21/23
**409 [1]** 3/20
**42 [1]** 24/2

**43 [1]** 24/7
**430 [2]** 122/12
**4311 [1]** 1/22
**44 [1]** 4/13
**451,000 [1]** 125/17
**4910 [1]** 38/17
**4:30 [1]** 122/12
**4:33 [1]** 123/19
**4th [5]** 18/2 18/4 23/24
26/11 31/3
**4U95Z313 [2]** 43/1 53/18

**5**
**50,000 [1]** 24/8
**50-page [1]** 59/14
**50-yard [2]** 79/15 88/13
**500-plus [1]** 85/7
**535,000 [1]** 37/10
**55 [3]** 24/22 125/5 125/10
**579 [1]** 1/8
**5:03 [1]** 123/19
**5th [9]** 2/14 3/8 14/8 17/2
17/6 24/9 42/17 42/21 74/2

**6**
**60 [5]** 29/15 71/11 71/13
76/16 91/7
**600 [2]** 104/17 104/18
**601 [1]** 3/8
**63 [1]** 25/9
**633 [1]** 2/14
**639,000 [1]** 99/19
**651 [1]** 3/21
**694-331-008 [1]** 53/1

**7**
**70 [4]** 4/11 4/13 22/19 44/14
**715 [1]** 106/9
**720 [1]** 3/8
**7303 [1]** 17/23
**75 [1]** 91/9
**753 [1]** 131/4
**7695 [9]** 14/4 14/10 14/11
14/13 15/8 42/8 53/3 68/6
68/12
**77 [4]** 4/13 44/15 59/11
60/10

**8**
**80 percent [1]** 112/5
**80,000 [3]** 30/4 30/10 84/12
**8054 [1]** 16/5
**82,000 [8]** 35/13 35/14 36/4
36/24 86/7 86/21 88/9 88/20
**85,000 [2]** 30/10 84/14
**87 [2]** 81/15 81/25
**8th [1]** 53/9

**9**
**9,000 [2]** 86/9 89/1
**9,200 [2]** 36/17 36/24
**90012 [2]** 1/23 2/7
**90067 [1]** 3/16
**90071 [2]** 2/15 3/9
**90277 [1]** 3/21
**903 [1]** 3/5
**9066 [1]** 18/3
**91,200 [1]** 86/11
**91208 [1]** 3/13
**9200 [1]** 89/1
**92673 [1]** 3/6
**94105 [1]** 2/21
**9700 [6]** 12/14 12/25 42/12
53/6 67/6 67/13
**981 [1]** 54/13
**982 [1]** 57/15
**984 [1]** 46/11
**9858 [2]** 1/21 131/12

**9906 [1]** 18/1
**9:36 [1]** 1/16

**A**
**a.m [5]** 5/2 44/18 46/24 61/6
130/18
**A.M. [1]** 1/16
**A.M./P.M [1]** 1/16
**abandon [1]** 76/25
**ABC [4]** 27/23 28/3 28/4
83/22
**able [7]** 20/20 20/23 20/24
80/8 95/12 111/25 122/21
**abnormal [1]** 80/20
**about [77]**
**above [8]** 41/24 54/8 54/16
56/1 57/7 57/11 57/18 131/7
**above-entitled [1]** 131/7
**absence [1]** 105/18
**absolutely [4]** 21/4 92/25
115/23 117/3
**abstract [1]** 88/23
**acceptance [1]** 117/4
**accepted [2]** 116/21 117/13
**access [2]** 112/2 114/11
**accessories [1]** 115/1
**accidentally [1]** 44/14
**according [4]** 40/18 49/17
80/23 94/7
**account [72]**
**accountings [1]** 81/4
**accounts [41]** 10/15 11/23
12/6 13/21 13/25 15/16 15/23
16/20 17/5 17/16 20/22 21/3
28/10 36/2 39/11 46/8 66/20
66/25 70/25 74/15 74/16 77/8
79/21 79/23 80/25 81/5 86/23
87/19 87/25 88/17 88/24
91/16 91/17 96/20 97/15
97/25 98/8 99/24 111/23
114/6 116/23
**accurately [1]** 98/1
**acknowledges [1]** 115/13
**acquire [1]** 56/8
**acquitted [1]** 87/10
**actively [1]** 129/4
**activity [3]** 34/18 55/14
84/5
**acts [5]** 69/22 70/4 70/10
70/22 83/24
**actual [4]** 83/5 89/25 96/6
96/8
**actually [21]** 17/20 23/13
27/25 28/8 28/12 31/8 41/21
62/20 66/1 66/12 72/2 76/21
81/3 81/10 86/9 86/25 87/2
91/11 104/16 108/14 113/13
**add [1]** 89/13
**adding [2]** 88/5 119/20
**addition [4]** 68/17 76/20
113/10 114/15
**additional [9]** 11/2 14/10
21/20 35/15 44/4 73/4 86/7
114/15 116/19
**address [6]** 63/18 69/3 71/10
73/24 91/8 91/10
**addressed [2]** 38/16 83/4
**adds [1]** 86/18
**adjust [2]** 42/25 53/17
**administrators [1]** 34/5
**admission [1]** 41/19
**admit [4]** 11/12 21/12 22/19
95/4
**admitted [2]** 6/10 44/12
**advise [1]** 127/15
**Advisors [2]** 27/23 83/22
**affected [1]** 78/19
**affirmatively [4]** 85/11
99/23 104/25 105/1

**A**

**after [15]** 15/24 23/16 27/13 33/17 33/21 34/1 61/19 75/25 76/1 83/13 84/10 113/14 128/16 129/25 130/12
**afternoon [3]** 62/12 78/17 121/11
**again [21]** 5/10 46/1 56/17 69/11 69/24 70/7 70/19 70/22 75/11 75/11 75/18 75/18 84/8 85/13 89/11 91/3 95/17 99/8 114/21 117/13 128/1
**against [1]** 117/1
**age [2]** 116/13 119/21
**ages [2]** 116/9 116/15
**aggravated [3]** 64/13 111/19 114/1
**ago [3]** 61/11 112/19 123/10
**agree [5]** 41/14 41/21 45/10 122/17 123/6
**agreed [4]** 40/5 41/8 44/16 79/18
**agreement [2]** 87/13 88/23
**ahead [4]** 31/16 40/7 41/9 113/22
**AHN [1]** 2/5
**Airport [7]** 42/16 43/14 53/13 73/7 73/11 74/6 77/14
**al [1]** 1/9
**all [81]**
**allegation [3]** 81/7 88/22 121/1
**allegations [3]** 42/3 45/23 49/18
**alleged [9]** 46/15 46/19 69/17 69/22 82/12 85/23 85/23 113/3 121/14
**allegedly [1]** 41/12
**allow [1]** 60/2
**allowed [2]** 119/18 121/17
**allowing [1]** 60/7
**Allstate [15]** 10/13 13/22 13/25 14/3 14/7 14/13 14/17 15/13 42/9 53/4 67/1 68/6 68/10 68/12 96/2
**alluded [1]** 120/21
**Almader [1]** 126/16
**almoney [1]** 98/17
**almost [3]** 38/7 59/14 82/24
**alone [1]** 94/2
**along [2]** 23/1 84/3
**Alpha [1]** 3/12
**already [10]** 25/9 27/8 38/11 65/3 76/15 76/16 88/3 103/24 107/18 108/22
**also [38]** 20/5 21/3 29/21 34/7 45/22 56/2 56/20 67/15 68/4 69/18 69/25 71/2 71/21 71/25 72/13 72/22 73/2 76/14 77/10 77/13 80/13 80/19 81/9 81/19 82/8 84/15 102/13 102/18 107/25 112/2 112/7 114/3 114/4 114/8 115/1 116/23 117/13 123/12
**altogether [1]** 130/7
**Always [1]** 127/18
**am [37]** 12/4 13/16 20/11 26/24 29/8 33/12 36/6 37/23 57/7 59/6 60/2 60/7 63/10 63/13 64/15 66/24 102/15 104/12 106/13 107/17 107/18 107/20 108/4 108/7 108/8 108/11 109/1 109/22 110/3 110/18 121/19 121/21 122/2 123/14 124/2 124/4 130/14
**Amanecer [1]** 3/5
**ambiguated [1]** 96/20
**America [20]** 1/6 2/3 9/4 9/5

**B**

12/13 12/24 14/4 14/9 14/13 53/3 53/6 67/5 68/5 68/12 83/18
**Americas [1]** 2/17
**ammunition [1]** 115/1
**among [1]** 70/10
**amount [18]** 15/15 16/6 16/19 17/12 17/25 18/17 18/24 36/15 36/22 38/25 40/16 84/13 86/8 99/15 99/19 112/5 123/2 123/3
**amounts [3]** 50/3 65/10 76/23
**ample [2]** 71/16 74/20
**analysis [3]** 12/2 29/9 78/25
**analyze [1]** 39/6
**Anastasia [7]** 8/9 8/17 8/21 8/24 9/15 69/24 70/3
**and/or [1]** 107/23
**anew [1]** 61/17
**ANGELES [7]** 1/14 1/23 2/7 2/15 3/9 3/16 5/1
**ankle [1]** 119/17
**Anna [7]** 23/21 24/5 24/10 24/13 24/25 83/9 83/10
**another [8]** 13/11 27/13 68/18 68/19 80/11 90/19 93/20 93/20
**answer [14]** 33/8 33/10 33/15 33/23 34/15 39/9 88/8 107/11 122/15 123/16 124/18 124/24 125/2 125/23
**answered [6]** 124/7 124/12 124/13 124/13 125/10 125/19
**answers [3]** 124/4 124/22 125/6
**anticipate [1]** 102/9
**any [100]**
**anyone [10]** 78/19 80/18 85/10 90/22 120/11 120/14 121/22 122/1 125/13 127/24
**anything [5]** 43/20 66/8 86/24 94/2 100/18
**anywhere [1]** 81/13
**AP [2]** 86/15 89/13
**apologies [1]** 61/1
**apologize [4]** 25/18 30/2 59/8 61/10
**apparent [2]** 15/3 110/17
**appear [1]** 38/15
**APPEARANCES [2]** 2/1 3/1
**appeared [2]** 14/24 68/19
**appears [4]** 25/4 28/9 56/23 124/15
**applicability [1]** 45/7
**applicable [2]** 46/14 48/14
**application [1]** 41/11
**applied [1]** 87/21
**applies [3]** 45/21 65/18 102/19
**apply [10]** 45/8 46/10 46/11 46/18 47/3 47/14 48/16 59/12 94/2 97/1
**approximately [4]** 36/20 69/21 86/5 86/9
**April [3]** 17/2 17/5 19/5
**April 22nd [2]** 17/2 17/5
**are [135]**
**areas [2]** 42/18 53/9
**arguably [1]** 96/19
**argue [5]** 89/4 94/24 97/9 106/17 109/7
**argued [3]** 94/14 98/24 129/13
**arguing [1]** 105/17
**argument [20]** 45/11 58/16 59/10 59/24 60/3 60/8 79/23 87/25 89/8 97/17 101/10 101/17 102/23 105/21 107/1

**C**

108/17 108/18 108/23 118/12
**arguments [11]** 45/6 59/4 60/14 61/12 61/19 101/6 102/1 102/18 105/1 118/7 128/25
**Arman [15]** 24/25 26/2 26/5 26/16 28/25 31/5 31/17 32/13 59/24 83/1 83/8 84/8 84/11 84/15 118/14
**armed [1]** 115/2
**Armenia [1]** 118/19
**army [1]** 108/21
**around [5]** 29/6 74/21 77/20 108/10 124/14
**arrest [1]** 82/2
**arrested [3]** 73/5 73/8 113/14
**ARTUR [13]** 3/11 96/24 96/25 111/5 113/20 113/23 114/24 116/12 116/20 116/22 121/7 121/11 124/12
**as [162]**
**Ashwin [1]** 2/13
**aside [3]** 96/14 104/19 107/24
**ask [13]** 6/5 21/19 23/8 40/6 44/4 58/15 63/6 77/3 77/23 78/2 100/20 103/15 115/18
**asked [14]** 32/23 33/9 35/18 40/3 49/25 57/24 62/14 62/16 64/10 66/16 88/16 101/11 105/12 110/2
**asking [2]** 103/2 115/22
**aspect [1]** 5/11
**assessor's [3]** 52/17 52/21 53/1
**asset [3]** 57/2 98/24 100/22
**assets [6]** 66/24 69/3 73/24 78/3 78/11 100/14
**assist [1]** 128/1
**associated [1]** 22/5
**ATM [4]** 24/10 25/14 25/22 80/16
**attempt [11]** 7/7 8/12 9/22 11/22 12/5 13/20 15/15 17/8 18/7 19/19 21/19
**attention [2]** 5/10 21/22
**attentive [1]** 127/6
**attorney [3]** 44/23 112/8 114/14
**ATTORNEY'S [2]** 2/4 108/25
**Audemars [10]** 42/23 43/1 43/3 43/5 53/14 53/19 53/21 53/23 72/24 73/1
**August [5]** 13/1 19/6 67/15 82/1 128/17
**August 16th [1]** 128/17
**August 31 [2]** 13/1 67/15
**AUSA [3]** 2/5 2/5 44/10
**Auto [3]** 9/3 10/14 97/3
**available [1]** 112/6
**Avenue [3]** 2/10 2/17 2/23
**avoid [1]** 63/13
**awaits [1]** 113/18
**aware [4]** 109/24 110/3 110/4 121/19
**away [3]** 59/2 63/19 100/8
**Ayvazian [19]** 32/9 33/3 85/12 87/10 96/24 97/1 111/6 113/20 113/23 116/20 116/22 118/9 119/14 119/15 119/20 120/24 121/8 121/12 124/12
**Ayvazian's [2]** 114/24 116/12
**Ayvazyan [39]** 1/9 2/12 3/11 32/3 32/14 38/16 39/7 42/15 43/13 53/12 62/1 72/13 73/7 73/12 74/4 79/22 79/25 81/6 81/9 81/16 82/10 82/13 82/19

**A**

**Ayvazyan... [16]** 91/19 94/8
102/18 102/23 104/24 111/5
111/8 111/12 113/17 114/23
117/9 118/23 118/25 120/8
124/23 124/25
**Ayvazyan's [7]** 45/14 77/11
80/3 81/3 94/10 96/4 116/11

**B**

**B-E-N-S-O-N [2]** 106/5 106/6
**B-I-T-T-A-K-E-R [1]** 106/8
**back [31]** 13/5 13/17 25/5
26/9 27/3 27/19 27/20 30/9
35/9 35/24 37/14 40/22 46/22
46/23 59/1 59/1 59/6 59/15
60/22 60/24 61/14 62/3 62/5
72/1 76/21 91/13 94/4 101/16
104/11 113/15 129/10
**backlog [1]** 108/3
**backyard [4]** 42/18 53/9 74/2
76/23
**bailiff [4]** 58/8 58/10 58/12
60/24
**balance [3]** 11/22 13/2 14/16
**bank [106]**
**banking [2]** 77/14 77/19
**banks [3]** 77/17 78/19 113/9
**base [2]** 47/12 49/9
**based [23]** 6/21 7/12 8/1
8/16 9/10 10/2 10/19 16/9
17/12 18/19 22/7 22/13 36/23
57/25 64/13 66/12 78/25
86/15 87/15 105/18 107/3
117/14 129/1
**bases [2]** 50/9 107/24
**basis [5]** 52/4 52/10 92/1
92/7 111/7
**be [101]**
**Beach [1]** 3/21
**bear [2]** 86/23 127/18
**because [32]** 52/4 56/12 57/7
61/16 62/21 63/9 65/3 65/15
65/25 67/21 70/21 77/7 80/22
82/8 82/16 83/23 87/20 92/2
92/23 94/18 94/25 98/5 100/2
109/2 109/14 111/25 118/9
118/12 118/23 125/16 129/8
130/7
**been [28]** 14/25 16/17 20/22
21/6 36/2 38/6 38/9 47/25
49/4 54/19 55/19 57/19 57/22
62/14 63/9 64/18 64/23 65/4
82/10 103/25 104/17 105/19
112/7 114/13 119/9 121/16
121/18 129/12
**before [20]** 22/18 58/14 68/2
73/5 73/10 79/18 81/10 81/19
81/24 82/8 82/12 82/16 85/22
89/10 89/18 91/20 100/7
110/1 118/18 123/6
**begin [3]** 45/25 61/17 61/22
**beginning [1]** 22/18
**behalf [7]** 2/3 45/13 101/8
102/7 102/18 103/17 121/7
**behind [1]** 31/25
**being [14]** 40/1 40/2 40/3
40/5 41/17 64/10 83/2 86/24
87/20 87/21 91/16 120/21
122/1 127/21
**Belgium [1]** 75/22
**believe [15]** 23/10 29/18
34/17 35/18 37/6 59/19 60/15
60/18 94/6 115/25 116/17
117/1 117/15 119/23 120/2
**believes [2]** 104/23 111/13
**Bellagio [1]** 82/15
**belongings [1]** 101/24

**benefit [2]** 15/12 93/22
**Benson [2]** 104/22 117/7
**best [10]** 6/7 63/13 90/17
96/13 96/13 96/18 97/9 97/13
99/18 129/11
**better [1]** 102/22
**between [16]** 17/1 17/5 18/4
18/17 19/5 47/18 49/3 57/3
62/24 63/16 66/18 85/25
116/20 118/19 122/25 129/5
**Beverly [2]** 7/23 69/13
**beyond [9]** 48/19 62/19 63/19
63/24 64/3 67/9 70/17 74/10
78/13
**bias [1]** 47/13
**Bienert [2]** 3/4 3/7
**big [8]** 63/16 100/13 109/22
110/8 118/7 118/21 118/25
120/24
**biggest [1]** 110/11
**bill [8]** 41/11 41/14 41/15
41/16 41/20 42/1 71/14 90/8
**bit [5]** 62/15 62/21 65/20
105/4
**Bittaker [2]** 106/8 107/8
**black [6]** 43/2 43/4 53/20
53/22 65/8 65/10
**blow [1]** 31/25
**boil [1]** 98/8
**boils [1]** 79/2
**bonds [1]** 119/2
**borrowing [2]** 111/24 114/10
**both [16]** 63/21 65/5 66/2
67/2 67/7 67/13 68/6 74/11
78/9 83/5 100/16 105/22
106/19 111/14 115/14 116/2
**bottom [7]** 17/21 18/21 20/4
22/9 26/18 28/20 40/16
**bought [4]** 76/12 76/14 89/18
89/20
**Boulevard [1]** 3/15
**box [4]** 20/1 20/4 20/14
99/10
**boxes [1]** 20/7
**boy [1]** 29/15
**Boyle [5]** 4/5 5/20 44/11
62/2 123/11
**bracelet [1]** 119/18
**bracket [1]** 124/15
**break [2]** 79/16 101/22
**brief [6]** 31/20 60/14 60/16
101/25 102/15 107/15
**briefed [4]** 108/16 108/17
110/17 128/16
**briefing [2]** 117/18 117/22
**briefly [20]** 6/24 7/18 8/23
10/9 12/15 13/8 14/5 15/20
16/1 16/14 16/24 17/21 19/2
19/23 45/3 60/5 61/14 101/8
104/14 117/17
**bring [7]** 24/1 32/22 35/25
38/10 39/16 40/21 60/24
**broader [1]** 100/19
**brother [1]** 118/23
**brothers [2]** 116/1 116/2
**Brown [1]** 126/2
**bucket [1]** 105/14
**bulk [1]** 76/9
**bullion [9]** 43/7 43/8 43/8
43/9 43/9 43/10 43/10 43/11
54/2
**burden [16]** 48/19 49/6 64/3
77/22 79/10 85/23 85/19
86/24 88/18 90/25 93/6 99/8
99/21 101/4 107/20 111/10
**business [5]** 22/3 22/11
36/14 48/5 77/10
**buy [4]** 51/18 80/25 92/18
92/21

**buying [1]** 71/20

**C**

**CA [9]** 1/23 2/7 2/15 2/21
3/6 3/9 3/13 3/16 3/21
**Caicos [7]** 73/11 86/8 86/17
89/1 98/21 99/1 120/4
**calculate [1]** 15/15
**CALIFORNIA [12]** 1/2 1/14 5/1
42/19 42/22 52/17 52/21
52/25 53/10 112/8 112/23
114/14
**call [5]** 90/20 93/14 93/14
100/24 125/23
**Calle [6]** 3/5 7/4 8/6 69/7
69/14 94/8
**called [6]** 34/9 61/14 79/4
82/3 83/15 98/17
**Calloway [1]** 126/20
**Calls [3]** 24/15 37/19 39/14
**came [14]** 37/9 37/10 37/12
37/14 68/14 75/15 81/3 81/21
88/8 93/10 95/9 95/25 96/2
123/6
**can [93]**
**can't [10]** 28/18 33/13 60/17
60/23 89/18 89/19 89/21 95/5
104/15 108/5
**cannot [1]** 82/15
**capturing [1]** 34/11
**car [1]** 51/18
**carat [1]** 43/17
**card [4]** 73/6 73/12 73/17
77/12
**cards [2]** 77/15 105/13
**care [1]** 81/7
**Caribbean [1]** 112/13
**Carribean [2]** 22/14 73/13
**case [74]**
**cases [9]** 20/24 106/4 107/5
107/11 107/13 107/14 108/3
109/4 110/12
**cash [73]**
**cashed [1]** 23/16
**cashier's [22]** 15/22 15/24
16/4 16/10 23/14 23/15 23/21
24/14 24/19 24/23 24/24 25/2
25/6 26/2 26/5 26/10 26/15
27/15 27/21 28/1 28/7 74/17
**casino [7]** 34/2 34/17 34/18
34/23 82/7 82/14 82/14
**casinos [8]** 34/5 34/5 34/6
34/10 34/12 82/10 82/18
82/20
**Castegar [18]** 104/25 105/22
106/16 106/23 107/1 107/24
110/1 110/12 128/7 128/11
128/16 128/21 128/23 129/1
129/2 129/4 129/5 129/25
**catastrophe [1]** 113/10
**categories [3]** 79/17 79/19
105/7
**category [4]** 91/16 91/20
94/5 118/17
**CATHERINE [1]** 2/5
**cause [1]** 45/22
**CBP [2]** 105/11 105/12
**CC'd [1]** 123/11
**CENTRAL [1]** 1/2
**cents [1]** 57/3
**Ceramic [4]** 43/2 43/4 53/20
53/22
**certain [8]** 11/23 41/12
52/16 52/20 52/24 62/17
63/24 105/12
**certainly [5]** 69/5 77/9
84/20 122/2 130/10
**CERTIFICATE [1]** 131/1
**certify [1]** 131/4

**C**

**chain [3]** 17/22 43/16 54/4
**chance [4]** 61/11 61/15 113/20 122/6
**change [4]** 30/22 31/3 51/14 65/2
**changed [1]** 93/5
**charge [2]** 95/10 112/23
**charged [7]** 64/14 68/15 69/15 72/17 85/3 96/14 98/16
**charges [7]** 64/11 65/13 68/25 70/18 79/9 114/15 119/12
**chart [21]** 11/18 15/4 15/20 16/3 16/15 16/25 18/13 18/14 18/21 19/3 19/19 21/1 22/10 27/16 29/11 29/17 34/20 67/21 72/19 82/24 86/5
**charts [4]** 6/20 6/25 11/2 65/5
**Chase [3]** 24/4 25/11 26/7
**check [25]** 16/4 16/10 23/21 24/10 24/14 24/19 24/20 24/23 24/24 25/2 25/6 25/15 26/2 26/5 26/10 26/15 26/19 27/4 27/15 27/21 28/1 51/17 83/9 83/13 83/25
**checkbooks [1]** 114/8
**checking [1]** 99/9
**checks [13]** 15/22 15/24 16/16 16/21 23/14 23/15 28/7 28/12 72/2 74/17 74/18 114/7 114/9
**children [6]** 100/5 115/15 116/8 116/8 116/11 117/24
**Chiraag [2]** 22/10 36/14
**choose [1]** 127/15
**Christopher [1]** 2/9
**circle [2]** 124/14 124/24
**circled [3]** 22/9 125/1 125/18
**Circuit [4]** 45/9 60/6 106/10 106/11
**citation [3]** 46/12 106/6 106/9
**cite [1]** 106/3
**cited [3]** 84/4 107/14 120/3
**civil [1]** 46/18
**claim [5]** 48/7 49/7 49/8 64/8 94/8
**claims [3]** 48/4 104/25 105/24
**clarification [1]** 125/16
**clarify [2]** 17/16 44/12
**clean [6]** 66/7 82/19 89/21 94/15 94/23 97/18
**clear [4]** 45/2 63/5 78/17 111/11
**clearly [1]** 121/14
**Clemente [1]** 3/6
**close [7]** 80/15 93/14 93/14 100/24 123/5 130/5 130/8
**closing [1]** 60/14
**Cloud [1]** 20/6
**club [2]** 92/22 92/23
**Coast [1]** 3/20
**Code [9]** 50/15 50/21 51/3 51/5 54/12 54/22 55/5 57/15 131/5
**coin [8]** 43/7 92/17 92/18 92/21 93/2 93/7 94/1 94/1
**coins [30]** 43/8 43/8 43/9 43/9 43/10 43/10 43/11 54/2 66/21 71/11 71/13 71/16 72/3 72/3 73/20 76/16 79/21 85/17 85/18 85/20 85/22 91/5 91/6 91/7 91/7 91/9 91/10 91/11 93/9 93/11

**COLabs [3]** 81/12 81/13 82/3
**collision [2]** 97/17 97/17
**column [2]** 29/12 34/2
**come [5]** 46/22 60/22 78/4 95/15 101/16
**comes [4]** 28/25 84/7 86/20 101/1
**coming [4]** 94/4 96/12 97/25 101/25
**commend [1]** 127/9
**commissions [1]** 55/10
**commit [8]** 54/23 55/23 66/6 71/9 75/10 87/14 96/16 109/7
**committed [1]** 55/15
**committing [2]** 78/1 97/4
**common [5]** 76/22 76/25 77/2 77/20 78/8
**community [5]** 111/13 112/14 114/20 119/25 120/7
**Community.com [1]** 81/23
**companies [1]** 81/7
**company [9]** 15/13 20/6 77/11 77/12 81/14 95/21 96/4 97/7 121/25
**compelled [2]** 105/2 105/9
**compelling [2]** 108/17 117/8
**complete [2]** 44/2 58/6 106/15 106/18 119/10 127/3
**completely [1]** 89/20
**compliance [2]** 119/10 121/17
**component [1]** 48/24
**conceal [1]** 71/8
**concealed [2]** 87/20 96/5
**concealment [19]** 95/10 96/7 96/7 96/12 96/25 97/4 97/5 97/8 97/10 97/21 97/22 97/23 98/2 98/4 98/23 99/5 99/19 100/7 100/9
**concept [1]** 13/9
**concerned [1]** 50/2
**concerning [5]** 47/5 47/8 51/4 58/21 63/18
**concerns [1]** 45/6
**conclude [4]** 54/14 57/16 75/2 77/17
**concluded [3]** 82/13 96/22 130/21
**concludes [2]** 43/19 128/4
**concluding [1]** 103/10
**conclusion [1]** 129/5
**conclusive [1]** 41/23
**conduct [6]** 55/14 67/25 69/10 70/8 70/20 88/20
**conducted [1]** 12/1
**conducting [1]** 77/9
**Conference [1]** 131/9
**conferred [1]** 122/16
**confidence [1]** 127/21
**confidentiality [1]** 127/13
**conformance [1]** 131/8
**confusion [3]** 45/22 59/16 63/13
**conjunction [1]** 34/20
**connect [1]** 20/25
**connected [12]** 67/20 74/9 74/25 78/11 81/5 83/2 84/16 85/7 87/3 88/6 90/1 123/3
**Connecticut [1]** 2/23
**connecting [2]** 72/7 81/18
**connection [16]** 47/18 49/3 62/23 63/1 63/4 64/10 64/17 64/22 65/22 66/10 66/18 85/25 93/16 120/18 122/24 123/1
**connections [2]** 86/3 118/15
**consider [12]** 45/12 47/21 48/24 49/13 50/1 63/2 64/10 66/16 76/8 77/18 108/16 117/7

**consideration [4]** 47/9 48/10 49/13 49/17
**considered [4]** 13/11 50/11 51/19 105/25
**considering [1]** 21/3
**consistent [1]** 115/24
**consisting [2]** 42/23 43/15
**Consolidated [1]** 40/10
**conspiracy [28]** 54/23 64/14 65/13 67/10 68/11 68/16 68/22 68/24 69/16 69/19 70/4 70/16 70/23 71/24 72/4 72/15 74/13 74/21 76/7 76/12 79/9 87/13 88/11 89/5 89/8 93/17 95/5 96/16
**conspirator's [1]** 73/16
**conspirators [1]** 76/4
**conspiring [1]** 76/4
**constitute [1]** 41/19
**constituted [2]** 55/7 55/18
**constitutes [3]** 41/23 54/8 54/16
**constituting [3]** 50/17 50/24 51/8
**constitutional [1]** 116/24
**Construction [2]** 17/25 18/3
**consult [1]** 44/3
**Cont'd [1]** 3/1
**contact [1]** 127/25
**contends [3]** 54/7 57/6 57/10
**contention [3]** 107/21 110/15 120/14
**contents [1]** 97/16
**contested [1]** 91/16
**contesting [1]** 87/23
**context [1]** 105/5
**continue [3]** 47/14 48/16 62/14
**Contracting [1]** 22/4
**conveniently [1]** 82/7
**conversation [1]** 85/1
**convert [1]** 76/5
**converted [1]** 51/17
**converting [3]** 75/12 75/19 85/1
**convicted [26]** 50/13 50/20 51/2 52/15 52/19 54/21 63/23 64/12 65/12 66/18 67/24 68/21 69/1 69/17 70/5 70/6 70/17 71/23 74/10 76/6 78/1 78/5 78/12 78/20 113/8 114/22
**conviction [36]** 65/20 66/14 67/9 67/20 69/2 69/9 70/9 72/7 73/23 74/13 78/25 86/1 86/1 87/1 88/14 89/23 93/3 93/8 93/24 94/19 95/6 96/15 100/15 112/16 112/19 112/22 112/24 112/25 120/9 120/10 120/17 120/24 121/2 121/3 122/25 123/3
**convictions [12]** 64/16 64/23 65/19 65/21 66/13 68/3 68/7 68/8 70/21 71/17 74/12 114/17
**convinced [2]** 103/5 103/11
**convinces [1]** 100/23
**convincing [1]** 111/11
**cookie [1]** 121/2
**copies [1]** 22/20
**copy [7]** 24/19 24/24 26/2 26/15 27/15 57/9 104/1
**corner [5]** 26/18 28/20 38/13 38/21 40/16
**correct [63]** 13/16 13/18 14/19 14/21 15/2 16/12 17/3 17/7 20/11 20/13 21/1 23/24 23/25 25/7 25/8 26/7 26/8 26/11 26/12 26/21 27/1 27/4

**C**

**correct... [41]** 27/23 28/12
28/13 28/22 28/23 29/3 29/13
29/17 29/22 30/11 30/16 31/6
31/18 32/19 33/22 34/13 35/4
35/8 36/5 36/11 36/16 36/18
36/25 37/4 37/11 37/15 39/13
40/25 44/14 56/25 57/1 58/10
114/18 114/19 115/7 117/11
122/14 124/8 124/16 130/17
131/5
**corrected [1]** 4/13
**costs [1]** 92/22
**could [25]** 23/9 24/1 24/22
25/5 33/1 33/8 34/17 35/25
36/1 36/7 36/13 37/2 38/10
38/12 38/19 84/5 89/4 94/23
95/1 97/21 103/1 105/20
117/23 123/13 130/6
**couldn't [1]** 129/22
**counsel [7]** 2/1 5/9 6/11
44/11 113/20 116/14 118/10
**counsel's [1]** 31/15
**count [28]** 55/5 56/23 64/14
65/20 67/25 68/1 68/16 69/16
69/16 69/17 69/19 69/23 70/4
70/7 70/9 70/15 70/21 71/23
72/17 87/8 87/9 87/12 87/13
88/14 89/23 96/15 122/25
123/3
**counted [1]** 104/16
**counting [2]** 50/3 50/11
**country [1]** 122/4
**counts [15]** 52/14 66/18
67/20 68/1 68/16 69/2 70/16
72/7 73/23 86/1 87/10 98/10
100/15 100/17 111/20
**couple [3]** 18/1 44/22 92/9
**course [5]** 11/21 14/22 18/6
61/12 93/19
**court [37]** 1/1 1/21 44/9
47/25 48/1 48/8 50/11 59/9
60/16 62/21 63/15 64/2 64/7
64/18 65/19 65/21 65/25 66/9
72/11 72/23 75/6 78/21 91/22
108/15 109/11 109/16 109/24
109/25 110/6 110/9 110/24
113/19 120/15 120/21 121/24
128/23 129/19
**court's [9]** 63/7 63/8 63/16
64/21 66/11 71/4 74/23 78/6
78/7
**courthouse [1]** 77/1
**courtroom [1]** 127/25
**CR [1]** 1/8
**CRB [1]** 17/23
**create [1]** 49/20
**created [1]** 21/1
**creating [1]** 114/3
**credibility [2]** 47/10 49/16
**credit [3]** 77/15 88/15
105/13
**crime [7]** 51/15 56/6 66/1
66/2 85/18 93/3 93/8
**crimes [10]** 49/3 62/18 74/10
78/1 78/12 78/19 86/1 87/1
113/7 114/21
**criminal [13]** 42/4 46/14
46/18 75/5 75/12 75/19 78/4
88/20 89/10 90/21 112/3
114/11 115/6
**critical [1]** 100/20
**criticism [1]** 121/19
**cross [5]** 4/6 23/4 68/14
68/15 83/4
**cross-examination [3]** 4/6
23/4 83/4
**CRR [1]** 131/12

**Cruz [6]** 5/17 6/12 11/4 21/5
31/22 31/24
**CSR [2]** 1/21 131/12
**currency [9]** 20/6 42/14
42/16 45/24 45/24 53/8 53/11
79/20 80/1
**current [2]** 38/22 38/24
**currently [1]** 119/6
**custodial [3]** 105/10 115/18
115/23
**custody [5]** 105/11 111/5
113/15 113/17 115/15

**D**

**DADYAN [17]** 3/18 27/23 28/3
83/21 87/8 96/15 97/6 97/13
103/18 103/18 115/11 115/11
115/16 116/20 116/21 117/9
124/6
**Dan [1]** 44/11
**danger [6]** 111/12 112/14
114/20 120/6 120/11 120/14
**data [1]** 19/20
**date [21]** 12/23 13/3 14/12
14/17 25/20 38/12 42/25
43/15 53/17 53/25 58/4 78/22
108/12 108/13 129/16 129/25
129/25 130/16 130/16 130/19
131/10
**dated [3]** 24/24 124/8 124/21
**day [8]** 1/15 43/15 53/25
73/5 73/10 100/13 101/3
106/21
**days [5]** 18/1 83/13 108/7
108/11 108/25
**DC [2]** 2/10 2/23
**deal [1]** 110/10
**deals [1]** 45/23
**debate [1]** 93/19
**decades [1]** 113/6
**December [2]** 42/11 67/7
**December 2nd [1]** 67/7
**decide [11]** 44/6 47/25 57/24
77/25 90/14 90/14 91/3 103/5
103/23 104/3 127/18
**decided [1]** 78/21
**decides [2]** 89/9 89/10
**decision [3]** 49/10 58/1
101/18
**declared [1]** 47/24
**deem [2]** 79/6 100/18
**deemed [1]** 58/16
**defendant [21]** 1/9 2/12 3/3
3/11 3/18 31/5 31/17 41/19
44/23 48/7 50/13 50/20 51/2
54/21 55/19 57/19 59/13
102/13 102/13 107/10 125/8
**defendant's [7]** 45/5 47/7
50/16 50/23 51/6 63/21 71/18
**defendants [58]** 45/12 47/20
48/5 48/6 48/10 48/25 49/4
49/21 54/10 54/17 54/19
57/12 62/16 62/25 63/24
64/12 65/12 66/19 67/9 67/24
68/17 68/21 69/18 69/23 70/5
70/6 70/17 71/19 71/23 73/5
73/22 74/9 74/22 75/3 75/12
75/19 76/18 77/7 77/13 77/17
77/18 78/5 78/12 78/20 80/14
80/24 84/16 84/18 101/5
104/24 105/10 105/12 105/22
109/24 111/5 111/10 118/13
118/22
**defendants' [5]** 48/12 52/15
52/19 52/23 54/24
**defense [23]** 22/19 24/1 25/9
38/10 39/16 40/21 43/24
44/11 44/14 44/15 52/5 59/4
59/11 78/15 83/5 83/17 85/14

88/19 92/2 107/21 108/10
108/11 112/21
**defense's [3]** 101/16 110/15
122/14
**deference [1]** 103/3
**defers [1]** 129/19
**define [1]** 48/21
**defined [3]** 64/18 65/21
66/10
**definitely [1]** 122/8
**definition [1]** 65/17
**defraud [2]** 51/11 51/22
**defrauding [1]** 113/9
**deliberate [5]** 47/11 58/13
58/15 61/11 63/2
**deliberating [2]** 47/5 58/20
**deliberations [6]** 48/17
61/16 61/17 61/22 64/11
87/15
**delivering [1]** 33/3
**demonstrate [1]** 111/11
**demonstrated [4]** 111/16
112/11 114/2 114/4
**denied [1]** 49/21
**deny [1]** 130/15
**department [4]** 2/4 2/9
108/24 119/5
**dependent [1]** 128/20
**deposit [12]** 24/10 25/15
25/22 26/21 27/1 27/9 29/14
29/22 29/24 30/4 80/6 83/9
**deposited [15]** 20/2 24/14
24/20 25/3 26/6 28/4 28/9
30/6 80/10 83/11 83/12 83/15
83/18 83/21 83/25
**deposits [3]** 29/6 29/12
84/11
**depth [2]** 104/15 106/1
**deputy [1]** 127/25
**derived [9]** 50/17 50/24 51/8
51/20 51/23 54/8 54/16 56/4
93/23
**describe [11]** 7/18 8/23 10/9
12/15 13/8 14/5 19/2 19/23
49/23 58/22 79/3
**described [8]** 41/16 54/8
56/1 56/23 56/25 57/7 57/11
57/24
**description [5]** 15/11 90/8
90/19 90/23 93/13
**descriptions [1]** 90/3
**Desert [1]** 52/25
**deserving [1]** 129/23
**designated [1]** 81/14
**detail [6]** 7/6 8/11 58/23
103/15 105/4 107/16
**detailed [3]** 95/22 104/13
110/20
**details [1]** 121/1
**detained [1]** 116/2
**detect [5]** 55/24 66/6 71/9
75/10 97/20
**detection [1]** 112/1
**detention [5]** 111/1 118/11
118/23 118/24 119/7
**determination [2]** 47/7 49/12
**determine [11]** 11/22 17/8
47/17 48/2 48/11 49/1 62/16
62/22 68/23 74/8 123/3
**determining [1]** 47/22
**diamond [5]** 43/17 54/6 75/21
90/9 90/13
**Diamonds [1]** 10/14
**Diaz [1]** 126/2
**did [65]** 5/23 7/7 7/9 7/23
7/25 8/12 9/7 9/9 9/22 10/16
10/18 11/22 12/5 12/9 12/11
13/20 13/24 14/23 15/6 15/15
16/19 17/8 18/7 19/7 19/9

**D**

**did... [40]** 19/10 19/12
19/14 19/15 19/16 21/18
22/13 28/14 29/4 29/6 33/2
33/9 34/19 34/20 34/22 37/14
39/10 46/16 59/3 61/17 61/21
79/17 79/18 80/5 80/10 81/16
82/22 83/6 84/25 89/24 91/8
91/12 102/22 103/12 109/17
115/11 115/12 126/24 128/5
128/6
**didn't [18]** 20/24 37/12
37/25 39/6 45/2 61/11 77/7
77/7 79/17 80/19 83/7 90/20
90/24 91/1 91/10 93/12
102/21 127/7
**difference [3]** 99/4 100/12
116/23
**differences [2]** 63/16 63/19
**different [12]** 20/6 65/20
79/16 81/5 85/6 98/7 98/8
98/16 105/7 114/7 117/13
118/17
**difficult [1]** 129/9
**direct [3]** 4/5 5/19 64/24
**directing [1]** 107/19
**directly [16]** 12/20 14/11
31/12 50/18 50/25 51/9 54/9
54/17 64/20 67/14 69/12
69/20 70/1 70/13 79/5 98/10
**dirty [1]** 66/7
**disappear [1]** 111/25
**discovery [2]** 110/14 110/16
**discrete [1]** 32/16
**discretion [1]** 122/23
**discuss [5]** 45/2 127/14
127/16 127/19 127/23
**discussed [4]** 37/24 66/9
66/10 78/4
**discussion [1]** 45/9
**dismissal [1]** 130/6
**displayed [1]** 108/22
**disposition [1]** 47/23
**disproved [1]** 85/11
**dispute [4]** 79/22 82/4 91/18
94/10
**distinction [2]** 57/3 116/20
**distinguish [1]** 37/23
**distinguishing [1]** 117/8
**DISTRICT [3]** 1/1 1/2 1/4
**DIVISION [1]** 1/2
**do [50]** 5/25 6/1 6/14 6/16
6/17 7/2 8/7 9/18 11/7 11/8
21/8 23/16 26/23 29/24 32/24
33/16 49/19 59/3 59/12 61/1
61/21 61/25 63/13 74/24
79/12 80/6 80/17 81/10 83/3
88/16 89/22 91/1 93/1 95/3
95/12 101/5 104/15 107/5
107/17 108/7 108/9 108/20
109/8 116/22 117/3 117/14
118/17 127/18 127/24 129/11
**document [10]** 6/9 6/15 6/17
6/20 11/7 11/9 21/8 21/10
31/20 31/25
**documentation [1]** 120/23
**documented [1]** 120/9
**documents [18]** 6/21 7/23 8/1
9/7 9/10 10/16 10/19 11/21
15/14 18/7 19/8 19/16 21/25
22/7 40/4 95/23 96/1 96/5
**does [34]** 19/19 21/25 24/9
24/12 25/14 25/20 29/11 30/1
30/3 30/5 32/3 32/9 32/11
33/20 34/23 34/25 38/15 40/9
41/19 45/8 46/11 50/6 59/17
81/10 85/23 98/3 98/4 106/15
111/12 115/6 115/17 119/4

121/22 125/13
**doesn't [8]** 6/24 11/1 44/11
93/21 93/21 94/2 94/17
107/11
**doing [5]** 22/3 22/10 36/14
80/5 86/9
**dollar [9]** 13/10 13/11 74/25
75/21 93/18 93/20 93/20
94/22 94/25
**dollars [2]** 13/15 13/17
28/16 36/17 72/14 75/23 77/4
92/21 92/22 93/2 99/2 112/2
**don't [34]** 13/16 23/18 28/15
29/9 30/17 33/25 34/16 35/22
36/9 39/24 59/19 61/15 71/4
76/6 76/25 77/20 78/8 82/17
93/25 100/23 102/15 108/5
108/21 108/23 109/7 109/18
117/8 119/24 120/23 120/25
125/17 125/19 128/18 129/7
**done [5]** 46/20 88/15 93/10
100/16 108/1
**double [2]** 50/3 50/10
**doubt [9]** 48/20 62/19 63/20
63/24 64/3 67/10 70/18 74/11
78/13
**down [12]** 16/3 17/21 22/9
24/8 37/7 39/3 69/13 70/3
70/14 79/2 79/16 98/8
**downstairs [1]** 62/2
**dozens [1]** 114/7
**draw [4]** 73/14 76/2 77/4
103/1
**drawn [1]** 19/20
**drifts [1]** 129/9
**Drive [11]** 9/20 10/4 10/7
10/11 10/24 38/17 70/11
70/20 70/24 85/13 94/11
**due [1]** 38/20
**during [26]** 5/23 6/25 11/21
14/22 15/14 18/6 29/20 37/6
42/17 42/21 47/15 48/18
48/23 49/13 49/14 81/25
85/23 104/23 105/10 107/4
111/16 112/12 113/9 113/12
114/5 114/25
**duties [1]** 47/9
**duty [4]** 47/11 47/12 47/16
62/22
**DX202 [1]** 27/8
**DX77 [1]** 30/21

**E**

**E-V-E-R-I [1]** 34/9
**each [16]** 28/15 39/24 51/18
52/13 66/23 74/25 78/10
78/25 79/1 83/3 89/16 98/6
103/6 103/12 116/8 125/12
**earlier [8]** 6/6 37/24 49/17
62/14 71/15 72/16 85/2
102/12
**earned [1]** 82/13
**earnings [1]** 82/7
**earring [2]** 90/9 90/13
**earrings [2]** 43/17 54/6
**easier [4]** 55/23 66/6 71/8
75/9
**Edward [1]** 97/3
**effect [1]** 84/20
**efficiency [1]** 130/12
**effort [1]** 129/11
**EIDL [67]**
**eight [2]** 53/14 120/12
**either [4]** 43/20 84/20 90/21
117/10
**electronic [1]** 77/19
**Eleven [1]** 53/21
**eliciting [1]** 105/1
**else [4]** 34/7 78/19 92/21

99/24
**employee [1]** 46/20
**Encore [2]** 10/16 70/13
**encounter [1]** 14/24
**end [3]** 85/12 100/13 101/3
**ended [1]** 68/12
**ending [14]** 12/14 14/9 16/5
18/1 18/3 20/3 22/2 42/8
42/12 53/3 53/6 67/6 68/5
86/16
**endorsement [1]** 26/19
**enough [4]** 74/7 77/16 88/10
109/8
**entered [2]** 41/17 41/22
**entire [7]** 24/23 59/15 76/11
94/19 94/24 97/16 100/10
**entirely [2]** 90/16 118/8
**entities [7]** 12/1 48/5 48/9
72/15 72/16 72/19 96/11
**entitled [8]** 65/14 68/22
73/14 76/2 77/2 77/3 77/23
131/7
**entity [2]** 22/9 34/9
**entries [2]** 20/15 124/3
**entry [2]** 83/11 83/14
**equally [1]** 90/17
**escrow [21]** 7/23 7/24 8/1
9/7 9/8 9/10 10/16 10/17
10/19 69/13 70/2 70/13 94/14
95/21 95/22 96/1 96/4 96/6
96/8 97/23 99/4
**essentially [9]** 79/2 80/8
84/13 97/24 98/7 99/10
107/10 112/1 113/5
**established [4]** 49/2 82/3
106/25 122/24
**establishes [1]** 95/15
**estate [5]** 7/3 8/9 9/19
79/24 79/25
**estimated [1]** 40/15
**et [1]** 1/9
**evaluate [1]** 49/16
**evaluation [1]** 32/16
**even [20]** 32/1 50/4 56/19
59/7 71/6 74/21 81/1 81/25
83/23 85/23 88/16 92/15 93/9
106/24 109/23 112/13 113/11
116/25 120/5 120/15
**evenly [1]** 100/25
**ever [1]** 121/23
**Everi [1]** 34/9
**every [8]** 70/18 74/25 78/10
80/8 81/13 81/17 82/2 124/7
**Everybody [2]** 44/21 126/25
**everyone's [1]** 100/12
**everything [5]** 84/24 102/17
106/20 108/6 114/15
**EVID [1]** 4/8
**evidence [106]**
**evident [1]** 129/2
**evidentiary [3]** 110/14 130/3
130/3
**ex [1]** 41/10
**exact [1]** 13/16
**exactly [2]** 27/10 46/8
**examination [6]** 4/5 4/6 5/19
23/4 39/18 83/4
**examine [1]** 47/6
**examined [1]** 45/3
**examiner [1]** 40/6
**examining [1]** 29/21
**example [21]** 16/1 34/9 51/15
55/12 56/7 81/20 82/8 82/9
83/8 89/2 90/4 90/12 92/17
94/21 98/21 99/1 105/13
105/17 106/22 118/14 130/4
**exceeds [1]** 82/21
**Excel [1]** 19/10
**exception [5]** 48/18 48/23

## E

exception... [3]  57/1 57/8 87/8
exceptions [1]  48/15
exchange [1]  55/18
exchanged [1]  56/4
exclusively [1]  47/24
excuse [1]  66/8
excused [1]  127/10
executed [2]  42/7 42/11
execution [3]  42/17 42/21 51/25
executions [3]  69/16 70/5 70/16
exercise [7]  12/15 14/5 17/17 21/23 35/14 85/25 100/16
exhibit [47]  4/8 4/13 6/10 6/12 7/11 8/16 10/2 10/25 11/6 11/12 11/12 11/17 12/4 13/20 15/4 15/20 16/14 16/24 17/20 18/12 19/2 19/23 21/7 21/13 21/13 21/22 21/25 24/1 25/5 25/9 29/15 31/8 37/2 38/10 39/16 40/21 44/12 44/14 44/15 59/11 60/10 81/15 81/25 82/24 84/4 91/14 96/10
exhibits [7]  22/19 81/4 83/17 103/24 103/24 103/25 127/6
existed [2]  82/16 92/15
experience [1]  112/10
expert [1]  47/11
explain [6]  15/20 16/1 16/14 16/24 18/12 34/3
explained [3]  58/1 98/7 114/23
explaining [1]  86/22
explanation [1]  38/20
explicit [1]  84/24
explicitly [1]  110/1
exploring [1]  106/14
expressed [1]  127/21
extent [4]  59/9 84/17 90/7 123/1
extraordinarily [1]  127/5
extraordinary [1]  127/4
extreme [1]  94/21
extremely [2]  113/8 114/22
eye [1]  80/15

## F

F.3d [1]  106/9
face [1]  15/9
faces [2]  111/14 113/24
facilitate [5]  55/8 55/20 66/4 75/7 97/19
facing [2]  114/15 114/16
fact [12]  41/16 85/21 93/23 94/16 95/8 95/24 96/1 105/18 109/25 115/13 116/25 120/19
factor [1]  117/6
factors [1]  117/4
facts [7]  103/5 108/3 110/10 113/3 113/5 117/24 120/21
fades [1]  127/7
fair [16]  24/13 25/2 26/5 26/25 28/24 29/11 29/20 30/6 32/2 32/8 33/2 35/12 35/23 38/6 38/22 39/6
fairly [1]  84/24
fake [4]  96/22 111/21 114/2 114/3
falls [1]  105/7
false [2]  120/17 121/24
familiar [7]  13/5 26/24 30/13 67/2 69/6 72/19 77/19

families [1]  115/14
family [5]  10/9 11/2 11/3 116/8 117/24
far [5]  40/4 82/21 87/15 109/3 110/4
Fargo [2]  16/5 83/17
Farr [1]  72/12
federal [10]  42/7 42/10 42/17 42/22 50/13 50/20 51/2 54/21 112/22 113/9
feel [1]  127/25
feeling [1]  127/24
fees [1]  55/9
felon [1]  113/11
Fenton [5]  2/9 120/2 120/7 120/16 120/21
few [6]  46/23 61/10 61/16 61/18 62/5 112/15
Fiber [3]  26/11 26/16 83/14
field [2]  88/13 97/11
Fifteen [1]  54/3
file [2]  107/19 108/25
filed [1]  118/10
files [1]  85/8
filing [3]  104/16 109/18 119/2
filings [2]  104/16 104/17
final [4]  61/19 73/24 101/6 101/16
finally [7]  12/21 70/11 77/22 79/23 83/20 91/15 127/23
financial [4]  55/6 55/11 55/16 95/9
find [11]  50/4 50/9 54/19 57/20 58/2 74/25 75/5 79/7 102/20 103/15 123/13
finders [1]  103/4
finding [1]  130/2
findings [6]  52/13 56/22 87/14 102/11 102/12 102/13
firearms [2]  117/15 120/10
first [27]  9/2 22/14 39/19 42/4 45/20 48/18 49/19 58/15 62/10 63/6 66/24 67/4 69/6 69/11 71/12 71/17 72/8 74/14 83/7 86/4 92/9 95/14 98/9 103/25 105/8 106/4 112/16
five [4]  28/7 28/9 53/5 108/23
flagged [1]  84/6
flee [2]  116/4 122/2
flight [10]  111/12 111/14 111/25 113/24 116/1 117/5 118/25 119/21 120/4 122/8
floated [1]  128/17
floor [2]  2/6 61/2
flow [1]  88/24
flowing [1]  78/24
focused [2]  82/25 88/24
follow [1]  65/15
following [15]  5/6 42/5 44/8 44/19 46/25 52/12 56/22 58/18 61/7 62/8 101/20 102/3 104/4 123/20 128/2
footage [1]  80/16
football [1]  88/13
foregoing [1]  131/5
foremost [1]  92/10
foreperson [9]  58/4 61/21 123/23 124/1 124/8 124/9 124/21 125/6 125/11
foreperson's [1]  124/16
forfeit [23]  49/24 49/25 50/15 50/22 51/5 52/12 54/24 56/21 62/17 66/12 67/4 67/19 68/4 69/5 71/13 72/6 72/21 73/19 74/1 88/3 97/14 99/25 103/8

forfeitability [1]  102/21
forfeitable [25]  49/17 52/12 56/15 56/18 57/21 71/5 92/19 92/20 92/23 92/24 93/4 102/20 103/16
forfeited [2]  47/24 86/24
forfeiting [3]  91/18 101/1 103/9
forfeiture [73]
forget [4]  71/4 76/6 77/20 78/8
form [21]  45/15 50/9 51/14 57/22 58/2 58/4 58/6 65/2 66/21 86/14 98/5 99/10 102/10 104/2 104/10 104/13 104/13 120/12 124/4 124/6 125/20
format [1]  131/8
forth [2]  49/18 62/5
forward [2]  60/17 110/18
found [32]  47/19 49/4 52/8 54/10 54/19 55/19 57/13 57/20 62/18 62/25 67/9 68/17 69/23 73/7 73/12 73/21 74/16 74/17 76/9 76/10 76/21 79/8 80/3 92/5 109/10 109/16 113/12 114/4 114/8 114/9 114/25 115/1
foundation [8]  30/24 33/5 33/18 34/14 37/19 39/8 39/21 88/7
founders [1]  81/21
four [4]  66/19 67/12 72/24 108/23
Fourteen [1]  54/2
fourth [3]  16/2 27/4 76/25
Francisco [1]  2/21
frankly [4]  84/19 90/1 90/6 120/13
Fraser [2]  3/7 102/7
fraud [34]  64/12 64/13 64/14 64/16 64/23 65/13 65/18 66/13 67/7 68/3 68/7 69/9 71/17 74/11 76/20 79/4 79/6 80/4 81/8 82/13 82/16 82/23 83/2 85/21 87/2 87/3 89/19 97/5 98/9 100/17 112/16 112/19 112/25 114/14
fraudulently [2]  65/13 67/11
free [2]  127/14 127/25
freely [2]  41/18 127/19
fresh [3]  110/11 129/8 130/11
FRIDAY [1]  5/1
friend [1]  120/13
front [1]  120/24
full [5]  7/6 8/11 99/16 117/23 121/1
fully [1]  127/19
funded [12]  7/21 7/21 9/2 9/5 10/13 12/19 12/20 12/21 14/7 14/11 17/24 22/6
funding [1]  96/20
funds [100]
fungible [11]  13/6 13/9 13/12 13/13 45/20 46/7 46/9 46/10 75/13 91/24 93/18
further [8]  22/16 41/2 41/7 43/20 43/22 43/24 45/11 107/15

## G

gambling [1]  82/10
gaming [1]  34/2
gave [3]  30/2 65/17 81/20
general [5]  90/3 107/14 111/9 112/8 114/14
generally [2]  32/22 107/8
generating [1]  85/4

# G

**Gentleman [19]** 18/16 19/4
19/8 19/17 19/25 20/2 20/5
20/8 20/10 20/12 20/21 21/2
35/3 35/10 35/16 35/21 72/10
72/20 73/1
**Gentleman's [3]** 86/7 86/21
88/5
**gentlemen [11]** 62/12 65/24
68/22 73/9 73/15 76/4 77/1
77/21 78/6 78/14 125/22
**get [19]** 13/16 46/22 59/1
59/1 62/5 82/17 87/6 93/22
97/1 98/5 100/15 101/19
103/23 103/25 110/4 110/5
110/19 128/5 129/10
**getting [3]** 59/6 81/13 82/2
**gist [1]** 87/18
**give [11]** 32/15 32/17 44/5
47/3 61/11 61/12 62/5 108/7
108/15 113/20 117/25
**given [10]** 42/2 47/8 49/17
63/9 88/14 99/12 109/6 109/8
123/4 124/11
**giving [1]** 104/12
**Glendale [2]** 3/13 52/21
**go [49]** 22/14 22/25 24/1
24/7 24/22 25/5 25/10 26/1
26/9 26/14 27/3 27/12 27/19
27/20 28/11 28/19 29/14
29/15 29/19 30/3 30/9 31/16
31/20 31/24 35/1 35/9 35/24
36/12 36/13 37/3 40/7 40/21
41/9 60/17 60/20 60/23 61/24
62/6 66/22 80/9 91/13 91/20
102/13 109/12 110/18 113/22
116/24 119/18 121/18
**goes [1]** 32/19
**going [35]** 5/10 7/6 8/11
38/6 60/2 63/11 64/15 65/2
66/24 80/17 84/18 87/6 91/5
95/12 98/5 99/10 99/12
101/19 102/15 104/11 107/17
107/18 108/4 108/7 108/9
108/14 108/15 109/1 110/13
110/18 115/18 122/2 123/14
124/5 130/15
**gold [36]** 42/24 43/7 43/7
43/8 43/8 43/9 43/9 43/10
43/11 43/16 43/17 53/15 54/2
54/3 54/5 66/21 71/11 71/13
71/16 71/20 73/20 76/1 76/16
79/20 85/17 85/18 85/22 90/9
90/13 92/17 92/18 92/21 93/2
93/7 93/9 93/11
**golf [2]** 92/22 92/22
**gone [3]** 62/2 63/25 110/13
**good [10]** 5/8 5/21 5/22 23/6
23/7 44/17 62/12 78/17
121/11 123/12
**goods [1]** 73/13
**got [7]** 36/24 59/7 81/6
81/17 100/1 100/6 110/2
**gotten [1]** 120/12
**government [157]**
**government's [23]** 45/4 45/5
45/10 46/4 48/19 59/23 64/2
65/7 68/9 81/1 83/24 85/19
86/24 87/18 89/16 96/10
101/4 104/12 105/21 118/7
129/17 130/5 130/8
**grand [4]** 16/2 112/23 113/1
120/20
**great [2]** 89/2 122/18
**greater [1]** 98/18
**Grigoryan [2]** 117/9 117/13
**grounds [1]** 50/2
**group [2]** 3/15 69/3

**groups [3]** 66/19 66/23
**G793 [1]** 1/23
**guidelines [1]** 117/7
**guilt [5]** 47/7 52/13 56/22
63/17 69/6
**guilty [18]** 30/15 47/20 49/4
54/11 54/19 55/19 57/13
57/20 62/19 62/25 67/9 68/17
69/23 83/1 112/22 116/21
117/1 118/22
**gun [3]** 113/11 113/13 120/8
**guns [7]** 114/25 115/1 115/2
115/5 115/8 120/7 121/20
**GX1.C [1]** 26/13
**GX10 [1]** 84/22
**GX401 [7]** 23/8 26/9 27/3
27/16 27/20 30/9 33/1
**GX402 [1]** 36/13

---

# H

**had [21]** 20/22 38/6 39/25
61/15 76/5 76/19 77/9 80/15
81/19 84/17 90/3 105/19
113/11 113/13 115/8 117/19
117/19 119/13 120/8 122/6
123/6
**half [6]** 77/4 84/13 94/13
94/15 95/18 101/15
**half-hour [1]** 101/15
**halfway [1]** 24/8
**hand [7]** 26/18 28/20 38/13
38/21 121/2 123/25 124/1
**handed [1]** 124/3
**handwriting [3]** 91/23 123/13
123/15
**happen [2]** 47/21 93/12
**happened [5]** 33/16 33/25
82/16 106/20 107/4
**happening [1]** 97/20
**Harapetyan [5]** 26/16 28/25
31/18 32/8 83/8
**harder [6]** 55/23 66/6 71/9
75/5 75/10 97/19
**Hart [1]** 18/2
**has [76]**
**hasn't [1]** 93/10
**have [130]**
**haven't [5]** 14/25 38/3 88/15
105/25 109/8
**having [2]** 115/5 121/2
**Hayrapetyan [16]** 24/25 26/2
26/6 30/13 31/6 32/2 32/13
33/3 33/17 33/21 59/24 83/1
84/8 84/11 84/15 118/15
**Hayrapetyan's [2]** 29/4 30/7
**he [83]**
**heads [1]** 125/13
**health [1]** 81/7
**hear [10]** 62/10 80/5 80/19
90/24 91/8 91/10 91/12 105/5
117/16 129/24
**heard [64]** 60/4 60/23 61/19
62/13 63/3 63/4 63/8 63/15
63/19 65/9 67/12 67/15 68/8
68/18 69/11 70/11 71/15
71/18 71/21 72/6 72/8 72/12
72/22 73/2 73/16 74/7 74/14
74/20 75/11 75/18 75/20
75/22 76/9 76/12 76/15 76/16
76/20 77/13 78/9 79/3 79/12
79/21 80/2 80/13 81/9 81/12
81/19 81/20 83/1 84/19 85/17
88/2 89/6 91/6 92/12 92/14
94/9 94/12 95/3 95/20 97/3
109/21 120/5 121/12
**hearing [12]** 30/23 31/3
78/21 108/12 108/14 108/14
110/1 110/12 128/11 128/16
129/5 129/25

**hearsay [3]** 32/5 39/22 60/5
**heart [1]** 108/15
**held [18]** 5/6 42/8 44/8
44/19 46/25 53/3 58/18 61/7
62/8 67/6 95/21 101/20 102/3
104/4 117/1 123/20 128/2
131/6
**help [1]** 62/16
**helpful [2]** 105/4 106/8
**her [11]** 32/11 32/15 32/15
32/17 40/4 86/5 88/15 97/7
97/7 102/20 103/12
**herd [2]** 67/21 86/21
**here [53]** 22/9 23/20 32/15
34/3 34/11 37/24 44/10 44/21
45/8 46/20 58/8 59/1 66/12
67/22 68/10 71/3 72/11 72/22
73/19 79/23 81/25 82/4 84/5
84/12 84/17 86/20 87/24
88/18 90/4 90/12 90/19 90/22
90/23 92/9 93/10 93/20 94/4
95/12 97/11 97/24 99/4 99/17
102/17 102/25 103/3 107/17
112/15 113/4 118/20 119/1
119/25 120/1 123/6
**hereby [2]** 42/2 131/4
**Hernandez [1]** 126/14
**hey [1]** 88/10
**hid [1]** 113/14
**hide [1]** 76/18
**high [1]** 87/7
**higher [2]** 36/7 36/9
**highlights [1]** 97/24
**Highway [1]** 3/20
**Hills [2]** 7/24 69/13
**him [9]** 111/25 112/7 117/2
117/10 117/12 120/12 121/12
121/17 121/23
**his [26]** 72/12 79/18 82/1
82/20 97/1 97/2 102/18
112/16 113/10 113/12 114/4
114/8 114/9 115/8 118/9
118/11 118/18 118/19 118/23
119/22 120/8 120/8 121/2
121/14 121/21 121/25
**history [11]** 73/17 110/3
111/20 111/22 111/23 114/1
114/3 114/6 114/10 115/6
117/23
**ho [1]** 90/25
**hold [1]** 109/1
**holders [1]** 96/21
**home [9]** 74/2 77/4 100/3
113/11 113/12 113/15 114/8
115/8 119/7
**Honeycut [2]** 45/7 45/8
**Honor [109]**
**Honor's [1]** 130/10
**HONORABLE [1]** 1/3
**hope [1]** 122/8
**hour [2]** 101/15 110/21
**house [22]** 76/13 76/24 77/20
85/13 92/20 94/5 94/8 94/9
94/10 94/11 94/22 94/24
95/18 95/20 96/6 99/13 99/17
99/25 100/8 100/9 100/11
114/24
**household [2]** 116/11 116/12
**houses [2]** 85/7 94/6
**how [25]** 7/15 8/20 10/6 15/6
17/16 32/11 33/7 51/13 53/14
59/17 65/1 65/2 66/9 77/7
77/17 81/17 82/9 88/6 106/22
108/21 115/24 116/8 117/8
119/4 122/14
**However [5]** 47/7 48/6 50/8
59/13 129/3
**hundred [4]** 13/15 13/17
75/20 97/11

**H**

hundreds [2]   72/14 75/23
hunting [1]   121/22

**I**

I'm [2]   36/12 59/1
I.D [1]   4/8
ID [1]   121/24
idea [1]   128/17
identical [5]   45/24 52/7
52/7 92/4 92/5
identified [18]   15/22 17/4
34/4 41/15 41/20 52/17 52/21
53/1 65/4 69/22 70/4 70/9
70/15 70/22 71/14 72/3 78/11
112/14
identify [5]   12/9 13/24
24/18 52/2 91/25
identifying [2]   41/12 95/23
identities [4]   111/21 111/21
114/2 114/3
identity [3]   64/13 111/19
114/1
ignored [1]   81/3
illegal [1]   115/4
immediately [2]   59/7 82/12
implicate [1]   130/4
important [5]   48/15 50/8
61/13 100/11 112/15
imposed [1]   48/25
imposing [1]   50/12
impossible [1]   90/6
improper [1]   105/23
improve [2]   56/8 56/20
Inc [1]   53/7
Inception [2]   77/11 96/3
inch [2]   43/16 54/3
include [3]   29/11 55/21 75/7
included [2]   29/16 91/22
includes [4]   51/11 55/5 56/3
100/3
including [13]   46/7 50/2
59/16 64/12 67/22 76/14
87/10 111/15 111/21 112/11
113/8 113/25 119/11
income [1]   39/13
inconsistent [2]   118/8
118/12
Incorporated [1]   42/13
incubator [1]   82/3
incubator's [1]   81/12
incubators [1]   81/18
independent [3]   86/25 89/20
103/4
indicate [6]   16/20 20/23
30/1 50/8 58/2 124/5
indicates [2]   16/7 17/14
indicative [1]   120/4
indicted [2]   112/7 114/13
indictment [12]   42/4 49/19
83/24 87/8 87/9 87/12 87/15
95/10 106/23 107/2 107/22
118/19
indirect [1]   64/24
indirectly [11]   50/18 50/25
51/9 54/9 54/18 64/20 67/14
69/12 70/2 70/13 79/5
individual [1]   117/5
inference [2]   49/20 76/3
inferences [4]   73/14 77/5
102/24 103/1
Info [1]   22/6
information [6]   22/2 29/8
33/13 35/19 39/20 122/4
informed [2]   121/21 122/3
initial [1]   93/1
initially [1]   109/25
initials [2]   124/14 124/16

instance [1]   36/13
instances [1]   80/14
instead [2]   48/20 64/4
instructed [8]   62/22 64/2
64/7 64/24 65/19 65/25 66/15
75/6
instruction [10]   45/10 45/15
45/18 45/20 46/10 56/1 56/24
91/21 91/23 93/15
instructions [28]   44/4 44/6
45/3 45/4 45/5 46/12 47/3
47/8 47/15 48/16 49/17 57/9
63/7 63/8 63/10 63/12 63/16
64/19 64/22 66/11 71/4 71/14
72/23 74/24 78/7 78/8 78/11
104/2
intended [2]   45/2 100/4
intends [2]   42/4 59/14
interchangeable [2]   13/10
13/11
interest [11]   48/6 48/12
48/13 50/16 50/23 51/7 52/16
52/20 52/24 54/25 62/17
Interests [1]   48/9
interim [1]   128/24
Interiors [5]   12/22 18/22
72/4 77/12 91/13
international [10]   22/14
40/10 42/16 43/14 53/13
73/10 74/5 77/14 112/10
120/3
interplay [1]   130/9
interpreter [1]   44/24
interrogation [1]   105/10
introduced [3]   104/1 105/8
105/15
investment [1]   81/21
invoices [2]   71/25 90/2
involve [2]   34/5 34/6
involved [37]   12/17 14/7
52/3 52/6 52/9 55/1 55/4
56/5 56/7 56/13 56/16 56/18
57/11 57/18 65/23 65/25 67/8
68/7 69/10 69/19 70/8 70/20
71/5 72/15 73/22 74/12 79/8
92/1 92/3 92/6 98/13 98/20
98/25 113/2 115/14 122/1
127/6
involves [2]   46/6 108/2
involving [3]   51/21 120/17
121/25
is [624]
islands [1]   73/11
isn't [3]   23/13 93/17 98/4
issue [17]   47/5 58/22 58/23
79/24 104/8 104/21 106/2
106/23 107/15 107/18 110/16
110/20 110/23 111/1 117/19
117/22 129/14
issued [1]   15/24
issues [5]   50/10 108/3
110/14 119/13 129/23
it [252]
item [11]   89/17 89/22 90/11
90/22 90/24 102/14 102/14
103/6 103/8 103/12 103/12
items [7]   42/20 43/12 51/18
72/7 76/13 76/19 79/16
its [6]   5/12 49/16 70/5
102/23 107/20 118/12
itself [3]   40/19 55/22 75/8
Iulia [15]   16/3 16/5 16/8
16/9 16/10 22/3 25/7 25/12
26/3 26/6 27/6 73/6 83/11
96/21 96/23

**J**

J52335 [2]   42/25 53/16
JAIS [2]   22/11 36/14

jar [1]   121/2
Jennifer [1]   131/6
jest [1]   112/15
jewelers [4]   18/9 18/20
71/19 75/25
jewelery [1]   71/12
jewelry [15]   42/20 43/12
66/22 71/21 73/3 73/21 79/20
85/16 85/17 85/20 85/22
89/15 89/18 90/1 92/13
John [1]   3/4
Johnson [7]   2/14 2/17 2/19
2/22 3/19 3/20 103/17
joins [1]   45/14
JP [6]   18/1 18/3 20/3 22/2
25/11 26/6
Jr [1]   3/14
judge [3]   1/4 62/13 123/15
Judicial [1]   131/9
July [7]   14/11 15/10 18/17
18/17 108/13 108/15 131/10
July 12th [1]   108/13
July 13th [2]   14/11 15/10
July 17th [1]   18/17
July 26th [1]   108/15
July 3rd [1]   18/17
JUNE [11]   1/17 5/1 31/3 38/5
38/14 83/18 83/22 124/8
124/21 125/6 125/11
June 12th [1]   83/22
June 14th [1]   38/14
June 17th [1]   83/18
June 28th [1]   124/21
juror [1]   45/22
jurors [2]   127/19 127/22
jury [79]
just [74]
JUSTICE [3]   2/4 2/9 108/24

**K**

K23313 [2]   43/3 53/20
Kaminir [1]   126/12
karat [7]   42/24 43/16 53/15
54/3 54/5 90/9 90/13
KATIE [2]   1/21 131/12
Katzman [2]   3/4 3/7
Kauichko [1]   87/22
Kauichko's [1]   9/5
keep [3]   63/6 64/21 76/23
Keough [1]   2/19
kept [1]   80/15
kids [2]   119/21 119/25
kids' [1]   100/8
kilogram [3]   75/25 75/25
76/1
kind [4]   46/9 119/3 121/18
122/7
Kish [1]   126/22
knew [3]   77/17 103/13 112/18
know [34]   23/16 26/23 28/15
29/24 30/14 30/15 32/3 32/9
33/16 33/20 33/25 34/15
34/16 34/16 35/22 36/9 65/2
73/18 76/17 77/6 77/7 83/23
84/15 99/9 108/21 108/23
109/18 109/20 110/19 113/8
117/14 120/12 125/19 128/18
knowledge [2]   34/15 38/8
known [1]   81/23
knows [1]   32/23

**L**

La [5]   7/4 8/6 69/7 69/14
94/8
Laboratory [1]   81/15
ladies [11]   62/12 65/24
68/22 73/9 73/14 76/3 77/1
77/21 78/6 78/14 125/22

**L**
**laid [1]**   96/11
**Lam [1]**   126/6
**Lane [6]**   8/9 8/17 8/21 8/25
9/15 69/24
**large [2]**   76/23 115/8
**largely [1]**   88/23
**Lars [1]**   126/18
**last [12]**   12/23 14/12 27/21
36/23 46/16 61/18 62/20
91/15 91/20 94/5 120/12
122/3
**later [3]**   18/1 48/1 78/21
**launder [1]**   76/4
**launderer [1]**   55/10
**laundering [72]**
**law [11]**   3/15 3/20 48/14
50/13 50/20 51/2 54/21 60/6
100/8 106/7 130/2
**lawyers [6]**   61/11 61/20
63/22 101/25 108/21 108/23
**lead [1]**   65/15
**leading [1]**   82/1
**least [7]**   17/4 67/16 72/8
81/10 91/19 108/23 128/5
**leave [6]**   31/24 36/20 37/10
99/21 101/24 121/5
**leaving [2]**   84/14 104/19
**lecturn [1]**   109/12
**led [1]**   84/5
**left [2]**   63/1 84/17
**legal [1]**   95/2
**legally [1]**   92/19
**legitimate [2]**   74/23 82/18
**less [3]**   39/1 100/25 116/3
**lesser [1]**   99/15
**let [10]**   46/1 56/17 91/13
94/2 104/6 105/5 116/14
117/16 118/3 122/20
**let's [17]**   29/14 60/20 66/22
78/17 80/1 82/22 83/7 85/16
86/2 86/19 89/15 92/16 92/17
101/22 110/6 121/5 129/16
**level [3]**   87/7 103/15 106/14
**Lewis [1]**   3/4
**life [2]**   40/10 119/25
**like [35]**   6/9 6/24 7/10 8/15
9/16 10/11 10/25 11/4 13/19
15/19 16/13 16/23 17/19
18/11 19/1 19/22 21/5 23/8
23/19 30/20 35/24 37/7 39/3
51/21 60/15 79/9 79/17 89/9
91/7 95/16 105/3 105/12
107/11 110/23 111/4
**likely [14]**   64/6 79/14 84/21
90/17 90/17 91/3 100/24
100/25 100/25 100/25 103/6
103/11 113/14 116/3
**limitations [1]**   32/21
**Limited [2]**   22/10 36/14
**Limo [2]**   7/21 12/19
**line [6]**   15/12 16/18 17/14
40/9 79/15 88/13
**lines [4]**   31/21 31/25 83/4
84/3
**link [1]**   89/16
**linked [3]**   73/6 96/17 107/22
**list [1]**   27/21
**listed [5]**   54/16 57/18 57/23
58/3 72/22
**listen [1]**   101/16
**litigate [1]**   118/10
**litigating [1]**   129/4
**little [5]**   44/3 62/15 105/4
108/10 108/16
**Littrell [3]**   3/4 3/4 3/7
**live [1]**   100/5
**lives [1]**   100/12

**LLC [5]**   13/22 14/3 42/9 53/4
53/18 102/18
**LLP [6]**   2/14 2/17 2/19 2/22
3/4 3/7
**LN [1]**   17/23
**loan [46]**   9/2 9/2 9/3 9/4
9/4 9/23 12/18 12/18 12/18
12/19 12/21 13/25 14/7 14/10
15/3 15/7 17/24 18/19 22/5
22/5 28/14 28/17 28/21 35/13
35/16 35/21 37/16 65/11
65/14 67/11 68/10 68/14
68/15 68/20 70/1 70/12 72/4
72/9 82/23 83/2 85/21 87/2
89/19 96/19 97/1 97/5
**loans [38]**   7/20 9/1 9/1
10/12 12/6 12/17 13/21 14/20
14/25 15/11 17/10 18/8 18/15
37/13 37/17 37/22 37/24
67/13 67/23 69/12 69/15 70/3
70/15 71/2 71/3 71/22 74/15
74/16 79/11 84/7 85/12 86/11
86/23 87/21 88/7 88/17 94/15
112/4
**located [4]**   16/16 52/16
52/20 52/24
**location [1]**   119/7
**locations [1]**   117/25
**long [4]**   71/7 75/2 82/9
129/8
**longer [5]**   48/19 62/15 64/3
108/11 129/9
**look [13]**   17/20 25/14 29/4
29/6 29/14 31/21 32/16 40/15
46/21 68/24 72/25 84/4
120/15
**looked [5]**   29/8 38/3 70/25
88/16 123/12
**looking [4]**   37/22 38/1 82/11
99/4
**looks [2]**   26/22 29/23
**LOS [7]**   1/14 1/23 2/7 2/15
3/9 3/16 5/1
**loss [3]**   40/15 40/24 109/22
**lot [3]**   65/4 82/4 91/5
**LU44845K [2]**   43/4 53/22
**lunch [4]**   101/14 101/15
101/22 101/23
**luxury [1]**   75/23
**LW3397N [2]**   43/6 53/24

**M**
**madam [1]**   124/8
**made [19]**   16/6 16/17 18/5
18/15 19/5 27/6 27/22 28/3
28/12 29/6 38/5 38/9 102/12
102/24 105/10 110/4 129/11
130/4 130/14
**magic [1]**   97/19
**maintain [2]**   56/9 56/20
**major [2]**   121/13 122/5
**majority [3]**   82/25 84/7
121/21
**make [22]**   22/8 45/2 45/12
55/22 59/4 60/3 60/8 66/5
71/8 75/4 75/9 97/17 97/18
97/19 101/5 101/10 102/1
102/10 103/2 111/25 116/19
129/22
**makes [5]**   89/3 99/3 100/11
110/11 116/3
**making [2]**   49/12 105/1
**man [1]**   82/25
**mandatory [5]**   111/15 111/17
111/18 111/19 113/25
**Manuel [1]**   119/8
**Manukyan [6]**   23/22 24/5
24/13 24/25 83/9 83/10
**Manukyan's [2]**   24/10 25/3

**many [13]**   17/16 51/13 63/20
108/3 108/21 116/8 124/3
127/6
**Marietta [11]**   32/4 38/16
42/15 43/14 53/12 74/4 96/2
102/7 104/24 115/16 125/8
**marked [4]**   11/5 20/18 21/6
31/8
**Market [1]**   2/20
**Mary [1]**   85/12
**MARYLEE [2]**   4/4 5/13
**masterminding [1]**   121/15
**match [1]**   20/20
**materials [1]**   62/3
**math [3]**   30/12 36/23 86/10
**math-based [1]**   36/23
**Matt [1]**   81/22
**matter [12]**   47/24 58/21 93/4
93/21 94/17 98/3 98/4 105/25
106/18 110/17 111/9 131/7
**matters [6]**   41/24 65/24 99/3
99/22 100/2 101/23
**may [44]**   5/17 14/8 17/24
18/2 18/4 18/4 23/24 24/9
24/25 25/14 25/20 26/11 30/8
39/7 44/2 48/4 48/7 48/13
51/14 51/15 55/11 55/13
55/15 55/17 55/21 56/8 60/4
61/18 65/2 65/15 75/7 83/12
84/10 84/11 90/4 90/5 93/13
100/24 104/6 104/7 121/7
121/24 123/2 127/12
**May 1 [1]**   17/24
**May 14th [6]**   18/4 25/14
25/20 30/8 83/12 84/11
**May 4 [1]**   24/25
**May 4th [4]**   18/2 18/4 23/24
26/11
**May 5th [2]**   14/8 24/9
**maybe [4]**   74/22 101/15
108/10 123/10
**McGilly [1]**   126/8
**me [20]**   46/1 56/17 56/23
60/24 71/15 91/13 104/6
104/20 105/5 109/12 117/16
118/3 119/13 120/24 122/20
123/25 124/3 124/12 128/1
129/10
**mean [15]**   20/16 30/14 31/9
33/20 50/6 85/24 103/10
107/5 108/21 109/13 110/4
115/17 117/7 123/5 128/25
**meaning [4]**   82/11 88/13
89/21 98/12
**means [8]**   49/7 64/8 66/5
79/7 90/23 101/1 112/6 125/2
**meant [1]**   45/1
**Mechanics [1]**   9/3
**Media [3]**   26/11 26/16 83/14
**meeting [1]**   128/10
**Meghan [1]**   2/16
**members [6]**   47/2 61/9 62/4
101/13 116/3 127/2
**memo [1]**   117/19
**mention [2]**   63/15 116/7
**mentioned [2]**   85/2 120/7
**Merchants [1]**   75/21
**Mesereau [5]**   3/14 3/15
121/11
**messages [5]**   19/12 80/21
84/23 84/24 84/25
**metals [7]**   46/8 52/3 52/5
52/8 91/25 92/3 92/5
**MGM [2]**   39/20 40/9
**Miami [11]**   42/15 43/14 53/13
73/6 73/7 73/10 73/22 74/5
77/14 107/23 113/14
**Michael [1]**   2/19

**M**

**mid [1]**  116/18
**might [4]**  47/21 77/19 77/25 130/11
**million [5]**  37/4 37/7 77/4 94/23 112/4
**millions [1]**  112/2
**mind [6]**  63/6 64/21 86/23 123/6 127/18 129/9
**mine [2]**  91/23 120/13
**minimum [5]**  111/15 111/17 111/18 111/19 113/25
**minus [1]**  30/10
**minute [1]**  58/25
**minutes [10]**  44/5 45/1 46/23 61/4 61/10 61/16 61/19 62/5 101/19 102/1
**miscellaneous [3]**  42/20 43/12 71/12
**miss [1]**  126/24
**missing [2]**  44/22 44/24
**mixed [1]**  71/7
**mixing [3]**  66/7 74/22 75/4
**mobile [3]**  26/21 26/25 83/16
**Mod [5]**  12/21 18/22 72/3 77/11 91/13
**model [6]**  42/24 43/1 45/9 53/16 53/18 89/13
**moment [5]**  46/2 104/19 118/1 121/6 128/5
**MONDAY [1]**  1/17
**monetary [2]**  50/3 95/9
**money [106]**
**Monica [1]**  3/15
**monies [2]**  32/18 32/20
**monitoring [2]**  117/25 119/7
**months [3]**  71/20 81/25 120/13
**more [50]**  25/18 25/18 37/7 48/5 49/8 50/5 50/14 50/14 50/21 51/3 54/10 54/17 54/19 54/22 57/12 57/19 58/23 61/25 64/6 64/9 66/1 67/17 68/23 71/19 72/14 73/12 74/7 74/18 75/3 77/16 77/23 77/24 78/2 79/14 84/21 90/17 91/3 100/23 102/11 102/16 103/6 103/11 105/4 107/14 108/22 110/16 110/23 118/14 129/9 130/11
**Morgan [6]**  18/1 18/3 20/3 22/2 25/11 26/7
**morning [7]**  5/8 5/21 5/22 23/6 23/7 80/7 81/2
**mortgage [6]**  38/3 38/4 38/6 38/15 112/19 120/18
**most [7]**  64/11 65/5 79/19 88/20 99/7 99/7 106/14
**motion [7]**  110/5 128/11 129/2 129/23 129/24 130/4 130/14
**motions [6]**  118/10 128/15 128/20 129/4 129/18 130/15
**move [10]**  9/16 10/25 19/1 21/12 22/19 59/10 92/20 111/4 112/1 113/17
**moved [5]**  51/16 96/22 115/10 117/10 117/12
**moves [1]**  11/11
**moving [7]**  8/7 67/22 72/5 74/20 80/25 115/15 130/11
**Mr [7]**  4/5 4/6 5/20 23/5 87/10 123/11 126/6
**Mr. [38]**  5/17 6/12 11/4 21/5 29/4 30/7 30/13 32/2 32/8 32/9 33/3 33/3 33/17 60/1 62/2 72/12 77/11 91/19 102/17 117/13 118/9 118/23

**N**

**name [26]**  4/3 12/6 12/10 13/21 13/25 24/5 25/12 30/14 42/9 42/12 48/4 53/3 53/6 67/1 67/6 68/6 68/11 73/18

**119/10 119/11 119/12 119/14 120/5 120/7 120/10 120/20 120/16 120/21 120/24 123/9 124/1 126/2 126/10 126/16**
**Mr. Almader [1]**  126/16
**Mr. Ayvazian [6]**  32/9 33/3 118/9 119/14 119/20 120/24
**Mr. Ayvazyan [4]**  60/1 91/19 118/23 120/8
**Mr. Ayvazyan's [1]**  77/11
**Mr. Boyle [1]**  62/2
**Mr. Cruz [6]**  5/17 6/12 11/4 21/5 123/9 124/1
**Mr. Diaz [1]**  126/2
**Mr. Farr [1]**  72/12
**Mr. Fenton [4]**  120/2 120/7 120/16 120/21
**Mr. Grigoryan [1]**  117/13
**Mr. Harapetyan [1]**  32/8
**Mr. Hayrapetyan [4]**  30/13 32/2 33/3 33/17
**Mr. Hayrapetyan's [2]**  29/4 30/7
**Mr. Ram [1]**  102/17
**Mr. Regidor [1]**  126/10
**Mr. Ybanez [3]**  119/10 119/11 119/12
**Ms. [51]**  5/21 6/14 11/7 21/8 23/6 23/9 23/19 25/3 25/18 26/14 27/13 27/19 32/10 33/4 38/13 38/19 39/4 40/13 41/5 45/14 65/6 65/9 67/21 68/9 68/18 69/11 70/12 71/21 72/8 72/18 74/14 75/1 77/8 80/7 86/5 86/22 88/15 94/12 101/8 102/19 102/22 103/9 103/16 125/25 126/4 126/8 126/12 126/14 126/18 126/20 126/22
**Ms. Calloway [1]**  126/20
**Ms. Hernandez [1]**  126/14
**Ms. Kaminir [1]**  126/12
**Ms. Kish [1]**  126/22
**Ms. Lars [1]**  126/18
**Ms. Manukyan's [1]**  25/3
**Ms. McGilly [1]**  126/8
**Ms. Perez [1]**  126/4
**Ms. Robinson [22]**  5/21 6/14 11/7 21/8 23/6 38/13 41/5 65/6 65/9 67/21 68/9 68/18 69/11 70/12 71/21 72/8 74/14 75/1 80/7 86/22 88/15 94/12
**Ms. Robinson's [2]**  72/18 86/5
**Ms. Romero [9]**  23/9 23/19 25/18 26/14 27/13 27/19 38/19 39/4 40/13
**Ms. Terabelian [8]**  32/10 33/4 45/14 101/8 102/19 102/22 103/9 103/16
**Ms. Terabelian's [1]**  77/8
**Ms. Vargas [1]**  125/25
**much [4]**  7/15 8/20 10/6 108/11
**multiple [6]**  50/2 59/13 73/1 76/6 77/14 119/11
**must [10]**  47/6 49/8 49/24 54/19 57/20 58/1 64/8 89/16 103/7 104/18
**my [14]**  15/8 45/7 46/12 61/1 61/9 63/13 84/17 92/20 101/13 122/4 122/21 123/14 123/15 129/8
**myself [1]**  45/2

**81/12 81/23 83/8 97/1 97/7 117/3 123/23 129/2 131/16**
**named [1]**  83/1
**names [9]**  67/2 77/15 87/21 87/22 111/23 111/24 113/4 114/7 114/10
**narrow [1]**  106/19
**narrower [1]**  62/21
**national [1]**  113/10
**nature [2]**  113/7 114/21
**nearly [1]**  77/3
**necessarily [2]**  13/16 66/7
**necessary [2]**  51/24 110/17
**necessity [1]**  47/14
**NECH [1]**  20/6
**neck [2]**  43/16 54/3
**need [10]**  44/2 50/2 60/18 61/1 61/25 74/24 82/17 93/25 102/24 109/2
**needed [1]**  102/16
**needs [2]**  100/16 103/22
**neglected [1]**  82/7
**net [2]**  30/11 84/14
**never [4]**  45/25 75/14 115/10 117/10
**nevertheless [2]**  115/3 115/7
**new [7]**  2/10 2/18 58/21 63/9 66/11 75/22 84/23
**Newcomer [1]**  2/16
**newest [2]**  104/16 104/20
**next [14]**  25/17 26/1 27/12 29/19 30/3 69/3 69/24 71/10 83/11 83/14 84/3 124/11 125/8 128/10
**Nicholas [2]**  2/22 44/11
**NINE [2]**  1/15 53/17
**Ninth [3]**  60/5 106/10 106/11
**no [65]**  4/8 4/13 4/13 22/16 22/23 33/24 38/4 38/8 39/9 39/25 40/2 41/2 41/6 48/19 60/23 61/23 64/3 69/1 77/9 79/23 80/2 83/19 84/19 85/15 87/14 87/25 88/21 92/12 92/14 93/5 93/10 93/16 94/8 96/7 96/7 97/6 99/14 101/1 103/2 103/14 108/14 108/19 114/17 115/22 118/15 119/13 121/18 121/19 124/5 124/12 124/13 124/14 124/18 124/20 124/21 125/4 125/4 125/5 125/5 125/9 125/9 125/9 125/10 127/16 131/12
**No. [5]**  45/20 52/18 52/22 91/23 123/16
**No. 1 [2]**  91/23 123/16
**No. 12 [1]**  45/20
**No. 2176-029-031 [1]**  52/18
**No. 5663-036-033 [1]**  52/22
**nodding [1]**  125/13
**non [2]**  110/14 130/3
**non-evidentiary [2]**  110/14 130/3
**none [5]**  80/17 85/9 96/5 97/6 97/8
**nonevidence [1]**  107/24
**North [2]**  2/6 3/20
**not [164]**
**note [5]**  68/18 114/24 122/13 123/16 123/22
**nothing [6]**  41/3 43/22 43/24 89/22 103/18 115/4
**notice [3]**  20/14 42/2 127/8
**noticed [1]**  70/24
**notify [1]**  128/1
**November [10]**  17/2 17/6 42/7 42/17 42/21 53/9 53/12 68/6 74/2 74/4
**November 20 [3]**  42/7 53/12 68/6

**N**

November 20th [1] 74/4
November 5th [5] 17/2 17/6
42/17 42/21 74/22
November 8th [1] 53/9
Novo [3] 26/21 26/23 83/16
now [80]
number [30] 17/23 19/20
20/14 20/18 24/8 36/7 36/9
39/5 42/8 42/24 43/1 43/3
43/4 43/6 43/15 44/14 46/7
53/1 53/3 53/16 53/18 53/20
53/22 53/24 54/1 55/12 86/16
91/7 95/17 115/8
numbers [7] 65/8 65/9 65/10
65/11 65/15 67/16 127/6
numerous [3] 72/19 76/13
76/15
nutshell [1] 105/21
NW [2] 2/10 2/23
NY [1] 2/18

**O**

o'clock [1] 101/14
Oak [7] 42/23 43/2 43/3
53/15 53/19 53/21 53/23
Oaks [1] 43/5
oath [4] 5/16 31/22 32/3
32/9
objection [17] 22/23 24/15
30/18 30/24 32/5 32/24 33/5
33/18 34/14 37/19 39/8 39/21
39/25 40/2 45/5 75/14 75/17
objections [2] 22/22 58/15
objects [1] 98/16
obligation [1] 127/16
observe [2] 92/9 122/7
obtain [3] 65/14 67/11 113/5
obtained [16] 16/10 39/7
50/18 50/25 51/8 51/11 51/12
54/9 54/17 55/17 56/4 64/19
76/5 79/7 92/19 98/12
obtaining [1] 80/24
obviously [7] 82/17 85/21
89/17 91/22 93/19 104/14
109/14
October [4] 22/11 42/14
43/13 82/1
October 19th [1] 22/11
October 20 [2] 42/14 43/13
off [2] 106/25 129/8
offense [23] 50/19 51/1 51/9
51/19 52/4 52/6 52/9 55/1
55/23 57/18 64/20 65/23 66/3
66/5 66/6 71/6 71/8 75/9
92/1 92/3 92/7 93/23 94/19
offenses [6] 47/19 62/25
63/24 64/15 69/9 79/4
offered [6] 38/11 39/17
39/25 49/15 111/22 114/5
office [3] 2/4 3/20 108/25
officer [2] 119/8 119/23
official [2] 1/21 31/9
Offshore [4] 43/2 43/3 53/19
53/21
Oh [1] 58/25
Okay [36] 32/25 43/20 47/2
58/17 61/24 62/4 79/8 82/11
82/16 83/10 84/3 87/4 92/25
93/8 94/4 94/5 94/16 94/20
97/13 98/3 98/14 99/8 99/17
99/22 100/11 100/19 103/22
110/7 110/25 118/4 118/6
123/7 123/17 127/2 129/14
130/16
old [1] 121/3
omitted [2] 45/19 57/2
one [93]

ones [2] 9/11 38/11
online [1] 99/1
only [22] 14/20 36/1 57/3
61/19 79/24 80/11 84/14
86/20 86/22 87/7 87/9 87/11
88/9 90/1 94/10 94/17 96/13
96/15 96/18 99/19 112/18
117/6
open [1] 99/20
opening [1] 111/23 114/6
opinion [3] 32/17 32/20
32/21
opinions [1] 127/20
opportunity [1] 107/15
opposed [1] 45/21
opposite [2] 77/2 97/23
option [2] 99/14 99/17
options [1] 99/11
order [10] 75/4 103/8 107/18
108/8 109/1 110/20 124/2
124/11 128/6 129/14
original [2] 93/23 94/1
other [67]
others [4] 32/10 83/25 87/23
121/15
otherwise [2] 93/5 93/15
our [2] 58/15 128/10
out [23] 13/17 18/2 32/22
34/1 37/12 37/25 42/3 51/16
61/10 78/23 88/11 96/11
98/22 102/25 109/10 109/16
110/8 112/6 117/18 120/6
123/6 123/8 127/7
outlining [1] 108/8
outset [1] 39/17
outside [10] 40/4 44/9 44/19
58/18 62/8 101/20 104/4
122/3 123/20 128/2
over [14] 38/22 67/5 74/1
74/17 77/19 79/14 88/6 95/4
95/4 101/23 109/17 113/6
120/12 127/14
overall [1] 87/18
overdue [1] 38/25
overlapping [2] 50/4 50/11
Overruled [3] 24/17 30/19
37/21
oversight [2] 59/8 61/10
overt [5] 69/22 70/4 70/10
70/22 83/24
owed [1] 78/18
own [5] 81/1 97/1 97/2 97/7
97/7
owns [1] 85/22

**P**

p.m [5] 1/16 62/7 102/2
122/12 123/19
Pacific [1] 3/20
PAETTY [1] 2/5
page [40] 4/3 4/13 7/10 8/15
10/1 12/4 13/19 15/4 15/19
16/13 16/23 17/19 17/20
17/21 18/11 19/1 19/22 24/2
24/7 24/8 24/22 24/23 25/10
25/18 25/19 26/1 26/1 26/14
27/12 27/13 29/15 29/19 30/2
30/3 31/21 31/24 40/22 59/14
84/4 131/7
pages [1] 59/13
paid [6] 36/3 36/4 55/10
72/3 81/13 81/17
pair [2] 43/17 54/5
Palm [2] 52/24 52/25
pandemic [2] 108/4 112/12
paragraph [1] 39/19
parcel [6] 7/3 8/8 9/19
52/17 52/21 53/1
Paronyan [1] 97/3

part [30] 18/21 21/21 22/8
34/17 38/16 46/22 59/1
59/17 59/19 59/21 62/18
68/24 71/23 72/4 73/4 75/8
76/11 78/24 79/19 80/19
82/23 85/2 89/5 89/7 89/19
89/21 93/3 100/18 102/17
110/11
parte [1] 41/11
participation [1] 128/13
particular [14] 27/25 50/5
51/25 52/1 71/1 75/1 89/4
89/6 89/16 89/25 92/13 93/18
106/16 115/13
particulars [8] 41/11 41/14
41/15 41/17 41/20 42/1 71/15
90/8
parties [11] 5/9 41/8 41/14
41/18 41/21 44/3 45/3 60/14
105/8 105/14 122/13
parting [1] 127/10
parts [1] 64/21
party [6] 34/5 48/1 48/2
49/6 49/10 117/17
passed [1] 117/22
passing [1] 117/18
passports [2] 119/22 119/24
past [1] 88/13
pathway [2] 98/9 98/11
pathways [1] 98/9
Paul [2] 59/2 130/17
Pause [1] 118/5
payable [13] 15/12 16/6 16/7
16/7 16/10 16/17 16/21 25/7
26/10 27/6 27/22 28/3 28/12
payee [4] 16/7 16/18 23/21
83/8
payment [10] 14/9 15/7 20/20
37/7 38/20 38/22 38/24 69/14
70/3 70/14
payments [11] 12/22 19/25
20/2 20/4 35/3 35/6 38/3
38/4 38/6 38/9 38/25
peaceful [1] 121/16
Pelletier [1] 81/22
penalty [4] 62/18 78/24
86/25 100/3
pending [2] 111/2 111/6
people [1] 76/22
people's [8] 87/20 87/22
111/23 111/24 113/4 114/7
114/9 114/10
percent [1] 112/5
Perez [1] 126/4
Perfect [2] 9/7 70/2
perform [1] 36/1
period [5] 29/20 81/1 85/10
88/22 120/10
permission [3] 11/15 21/16
22/25
permit [2] 60/13 60/16
permits [1] 59/10
permitted [1] 60/5
person [10] 48/6 90/25 96/22
96/24 103/1 121/16 122/7
123/12 127/14 127/17
personal [15] 50/17 50/24
51/7 54/25 56/9 56/11 56/11
65/23 66/21 71/11 73/20 80/3
94/10 95/8 100/1
persons [2] 48/5 48/9
personum [1] 45/22
persuaded [2] 49/8 64/8
Peter [3] 3/19 3/20 103/17
phase [26] 6/6 6/18 7/1
11/19 44/2 44/7 47/3 47/16
48/19 48/24 59/12 63/3 63/7
63/10 63/11 63/17 63/17
63/20 65/5 67/3 69/6 72/17

**P**

**phase... [4]** 102/12 103/25 104/1 104/3
**phases [1]** 78/9
**phone [1]** 114/9
**phrase [2]** 97/19 103/23
**Picadilly [2]** 18/20 18/23
**Piccadilly [2]** 71/19 75/25
**Piccadilly's [1]** 71/25
**picked [1]** 82/7
**picture [8]** 90/23 100/14 109/22 110/8 118/7 118/21 118/25 120/24
**piece [16]** 79/1 79/1 79/4 79/6 79/10 80/5 86/2 87/3 87/16 89/17 89/25 92/13 98/6 101/2 122/25 128/14
**pieces [2]** 71/12 73/21
**Piquet [11]** 42/23 43/1 43/3 43/5 53/14 53/15 53/19 53/21 53/23 72/24 73/1
**place [5]** 52/8 55/17 76/18 92/6 120/8
**places [1]** 39/7
**plainly [2]** 77/19 96/10
**PLAINTIFF [2]** 1/7 2/3
**play [1]** 84/14
**player [2]** 121/13 122/5
**player's [1]** 34/18
**players [1]** 34/13
**plea [2]** 30/23 31/3
**plead [5]** 30/15 83/1 112/21 116/21 118/22
**please [24]** 17/20 18/12 24/7 24/22 25/10 26/9 26/13 26/14 27/8 28/11 28/19 29/16 29/19 30/21 33/1 35/2 35/9 36/12 37/2 38/13 39/4 125/23 127/21 127/25
**pleases [1]** 113/19
**plus [1]** 85/7
**pocket [2]** 93/21 117/19
**point [14]** 59/25 85/24 102/25 106/14 110/7 111/9 113/13 114/24 115/9 116/19 119/1 127/2 127/23 130/10
**pointed [3]** 78/23 118/14 120/2
**points [3]** 85/9 100/14 112/15
**poll [1]** 125/21
**polled [2]** 125/14 126/25
**portion [3]** 28/24 41/25 94/17
**pose [3]** 111/12 116/1 121/22
**poses [3]** 111/13 112/17 113/24
**position [5]** 45/10 115/17 122/14 128/18 129/18
**possible [3]** 15/7 28/16 39/12
**post [2]** 49/14 87/11
**posting [1]** 25/20
**posture [1]** 130/7
**potential [2]** 48/24 122/17
**potentially [1]** 100/19
**PPP [116]**
**pre [1]** 82/20
**pre-PPP [1]** 82/20
**precious [9]** 42/20 43/12 46/8 52/3 52/5 52/8 91/25 92/3 92/5
**precisely [1]** 107/12
**prefer [1]** 127/23
**prejudice [1]** 47/13
**preliminary [2]** 109/9 109/13
**prepare [2]** 19/7 60/14
**prepared [7]** 6/21 11/1 11/9

21/10 57/22 107/19 110/19
**preparing [1]** 11/14
**prepayment [2]** 104/23 109/17 128/22
**preponderance [19]** 48/21 49/2 49/7 54/15 57/17 64/1 64/4 64/5 64/7 66/17 74/8 75/2 79/13 84/21 88/12 90/11 90/15 93/7 100/2
**presence [12]** 5/7 44/9 44/20 47/1 58/19 61/8 62/9 101/21 102/4 104/5 123/21 128/3
**present [6]** 5/8 5/9 5/12 35/17 35/19 89/24
**presentation [2]** 35/1 62/6
**presented [9]** 26/25 49/11 49/13 49/14 58/6 68/25 100/21 125/24 129/12
**preserved [1]** 130/8
**PRESIDING [1]** 1/4
**pressing [1]** 104/7
**pressure [1]** 127/24
**pretrial [2]** 119/3 121/17
**pretty [1]** 123/5
**previous [8]** 6/18 7/1 8/7 9/18 11/19 47/6 48/15 67/3
**previously [5]** 5/23 6/9 47/8 56/25 57/8
**price [1]** 37/3
**Primavera [10]** 7/4 7/8 7/13 7/16 8/6 69/7 69/8 69/14 69/18 94/9
**principle [1]** 45/6
**prior [16]** 6/2 6/5 7/2 7/6 8/11 9/22 11/1 14/19 15/17 21/18 63/3 63/7 63/17 63/20 65/5 114/17
**privacy [1]** 127/22
**privilege [3]** 107/7 107/9 107/10
**probable [4]** 75/3 77/23 77/24 78/2
**probably [5]** 49/9 64/9 67/2 68/23 70/24
**probation [4]** 117/25 119/4 119/8 119/23
**problem [1]** 77/9
**proceed [6]** 5/11 5/17 25/17 31/1 32/6 104/2
**proceeding [4]** 47/16 48/9 90/21 112/9
**proceedings [25]** 1/13 5/6 30/22 31/3 44/8 44/19 45/21 46/15 46/25 49/15 58/18 60/6 61/7 62/8 89/10 101/20 102/3 104/4 111/10 118/5 123/20 127/13 128/2 130/21 131/6
**proceeds [60]** 12/5 12/9 13/20 13/24 50/18 50/25 51/8 51/10 51/13 51/13 51/15 51/19 51/20 54/9 54/16 55/13 55/16 64/19 64/24 64/25 64/25 65/1 65/1 65/3 65/16 65/16 65/17 66/2 67/7 67/11 67/16 68/3 68/7 69/2 69/8 70/1 70/12 71/17 71/20 72/9 74/11 74/23 74/23 75/5 75/13 75/20 76/19 79/5 80/4 82/15 84/2 85/18 89/2 89/20 92/24 93/8 94/13 100/17 112/3 114/11
**produce [2]** 34/12 34/17
**produced [2]** 20/12 72/25
**production [1]** 110/13
**promptness [1]** 5/10
**pronounce [1]** 22/10
**proof [7]** 41/23 48/19 48/20 49/6 64/3 64/4 77/22
**properly [2]** 46/15 46/19
**properties [5]** 46/7 50/4

66/21 69/4 69/5
**property [6]** 16/19 24/1 46/5 46/12 46/19 72/10
**propose [3]** 86/13 89/12 128/15
**proposed [4]** 45/4 45/18 91/18 110/9
**proposition [1]** 95/2
**prosecutor [5]** 78/23 79/3 92/23 95/4 98/6
**prosecutors [1]** 79/4
**prove [9]** 49/25 79/14 85/14 85/20 92/10 99/23 100/1 100/8 102/21
**proved [8]** 54/14 57/16 88/12 90/10 90/15 91/2 100/7 103/10
**proven [5]** 47/17 62/23 66/16 93/2 103/7
**provide [3]** 33/10 33/13 105/3
**provided [12]** 6/21 11/22 11/24 14/23 15/14 18/7 19/8 19/16 22/20 24/19 72/23 81/4
**public [1]** 97/24
**publish [3]** 11/15 21/16 22/25
**pull [6]** 23/9 25/9 26/13 27/8 30/20 37/2
**pulls [1]** 85/6
**punctual [1]** 127/5
**punish [1]** 100/4
**punishment [3]** 48/25 78/24 100/4
**punitive [2]** 118/8 118/8
**purchase [27]** 7/8 7/13 7/16 8/2 8/13 8/17 8/21 8/25 9/12 9/23 10/3 10/7 10/11 10/21 36/14 37/3 38/5 55/18 56/20 73/13 75/22 95/18 96/6 99/23 99/25 100/9 120/18
**purchased [13]** 69/8 69/25 71/1 71/16 76/19 86/8 86/17 88/2 88/25 89/5 89/7 89/22 91/11
**purchases [6]** 18/16 18/23 19/5 75/24 75/25 86/10
**purchasing [1]** 73/17
**purpose [2]** 17/17 71/8
**purposes [2]** 14/19 41/24
**pursuant [9]** 42/3 42/6 42/10 52/13 54/12 56/22 57/14 111/6 131/4
**put [4]** 13/15 82/24 91/1 129/7
**putting [2]** 80/24 96/14

**Q**

**Quality [1]** 22/3
**quantity [1]** 35/20
**question [30]** 31/15 33/9 33/11 36/23 40/8 69/1 79/4 88/1 88/12 90/10 97/16 98/3 98/13 102/25 107/12 124/7 124/12 124/13 124/13 124/18 124/20 124/23 124/24 125/4 125/4 125/5 125/5 125/9 125/9 125/9
**questions [10]** 6/5 22/16 40/7 41/2 79/2 100/21 105/11 125/10 125/20 127/12
**quick [1]** 101/22
**quicker [1]** 101/15
**quickly [1]** 118/3
**Quite [1]** 77/1
**quote [1]** 90/4

**R**

**raise [1]** 110/23

**R**

**raised [1]** 58/21
**Ram [2]** 2/13 102/17
**rapidly [2]** 75/12 75/19
**rather [1]** 45/25
**re [1]** 47/6
**re-examine [1]** 47/6
**reach [1]** 58/7
**reached [1]** 123/23
**read [13]** 38/12 41/8 41/25
46/1 57/8 71/15 90/7 91/22
118/3 118/6 122/21 122/22
125/24
**reading [2]** 57/7 124/2
**ready [4]** 60/21 61/24 62/6
101/14
**real [23]** 7/3 8/5 8/8 9/12
9/14 9/19 10/21 10/23 50/17
50/24 51/7 52/16 52/24 54/25
56/9 56/10 56/11 65/22 66/20
69/4 79/24 79/25 96/24
**really [4]** 20/5 90/2 92/11
105/6
**Realty [6]** 10/15 27/22 27/23
28/3 83/22 97/6
**Realty's [2]** 28/4 84/1
**reason [7]** 20/18 50/6 99/3
108/2 117/15 129/22 130/1
**reasonable [15]** 24/21 48/20
62/19 63/20 63/24 64/3 67/10
70/18 73/14 74/11 76/2 77/5
78/13 102/24 103/1
**reasons [4]** 57/25 102/19
113/16 114/22
**rebuttal [1]** 101/17
**recall [6]** 5/25 6/17 7/2 8/7
9/18 121/24
**recalls [1]** 5/13
**receipt [5]** 15/24 90/4 90/12
90/20 93/13
**receipts [6]** 75/24 75/24
80/7 90/2 91/6 91/14
**receive [2]** 50/7 102/10
**received [11]** 11/14 19/25
20/8 20/10 21/15 22/24 31/11
68/10 72/20 122/13 123/22
**recently [2]** 63/9 112/11
**recess [9]** 44/18 46/24 60/14
60/16 61/6 62/7 102/2 122/12
123/19
**recognize [5]** 6/14 11/7 15/6
21/8 72/16
**recognizes [1]** 59/11
**recollection [2]** 6/7 29/10
**reconsideration [1]** 110/2
**record [8]** 20/22 24/4 33/12
41/8 44/10 44/12 97/25
104/18
**records [27]** 7/12 8/16 10/2
12/24 14/13 16/9 16/20 19/5
19/14 20/21 21/2 22/13 32/17
33/2 33/6 33/7 33/8 33/9
33/10 34/12 34/18 34/20
72/25 77/10 83/5 85/8 96/8
**red [6]** 17/14 17/14 65/9
65/11 65/15 67/16
**Redline [3]** 9/2 10/14 97/2
**Redondo [1]** 3/21
**reduce [1]** 40/13
**reel [1]** 8/3
**refer [3]** 63/11 63/12 64/15
**reference [3]** 84/22 102/24
120/20
**referenced [1]** 120/16
**references [1]** 40/23
**referred [7]** 7/3 7/19 8/2
8/8 9/11 9/19 10/20
**referring [1]** 63/14

**reflected [1]** 15/3
**regard [5]** 19/1 29/11 44/11
113/23 124/25 129/14
**regarding [8]** 7/3 8/8 9/19
44/1 47/7 107/1 107/20 129/1
**regardless [4]** 49/10 49/15
51/13 65/1
**Regidor [1]** 126/10
**regrets [1]** 121/25
**regulations [1]** 131/8
**relate [4]** 32/11 33/8 90/5
106/22
**related [6]** 85/9 91/12 93/11
103/18 104/8 105/2
**relates [1]** 32/12
**relating [6]** 21/20 64/15
87/9 103/24 105/9 105/15
**relationships [1]** 117/24
**relatively [1]** 106/18
**relearn [1]** 108/6
**release [1]** 87/11
**released [1]** 113/15
**relevance [1]** 59/21
**relevant [3]** 41/25 59/18
59/20
**relies [1]** 107/10
**rely [1]** 77/2
**relying [1]** 6/7
**rem [1]** 45/21
**remain [4]** 51/13 65/1 65/16
92/24
**remainder [1]** 78/3
**remaining [2]** 44/6 62/20
**remand [7]** 111/5 113/17
115/10 115/15 117/10 117/12
130/14
**remanded [1]** 122/9
**remember [10]** 64/23 64/25
65/16 74/23 77/22 78/6 78/7
90/20 96/13 118/18
**reminded [1]** 5/15
**removed [5]** 52/6 92/4 92/12
92/13 93/24
**renewed [1]** 58/16
**repeat [1]** 40/8
**repeatedly [1]** 109/24
**replaced [7]** 45/24 52/7 92/4
92/12 92/14 93/5 93/25
**replacement [1]** 94/1
**report [1]** 119/4
**reported [2]** 98/1 131/6
**reporter [2]** 1/21 31/12
**REPORTER'S [1]** 1/13
**reports [1]** 119/8
**represent [1]** 34/23
**representation [1]** 128/12
**represented [1]** 65/11
**represents [1]** 20/2
**request [2]** 45/14 45/19
**requested [1]** 109/24
**requesting [1]** 118/11
**requests [1]** 119/10
**required [11]** 47/18 49/3
52/2 62/23 63/1 64/17 64/22
65/22 66/10 66/17 91/25
**requisite [1]** 122/24
**residence [7]** 42/19 42/23
53/10 80/4 94/11 95/8 100/1
**Resorts [2]** 39/20 40/10
**resources [2]** 108/5 108/24
**respect [19]** 31/14 57/23
59/24 73/3 79/22 79/25 79/25
88/4 96/5 96/14 96/19 98/23
106/19 106/20 111/8 111/14
114/20 114/23 127/21
**respond [2]** 39/24 113/21
**response [3]** 46/4 105/11
122/17
**responsibility [3]** 116/22

117/4 117/14
**responsive [1]** 32/21
**rest [1]** 29/4
**restitution [3]** 78/18 78/20
86/25
**restroom [1]** 60/23
**rests [1]** 103/21
**result [8]** 50/18 50/25 51/9
51/12 54/9 54/18 64/20 83/6
**resulted [1]** 94/18
**retained [1]** 108/6
**retrieve [2]** 61/2 62/2
**return [2]** 6/24 33/1
**returned [1]** 113/15
**returning [1]** 73/11
**review [22]** 7/23 9/7 10/16
11/21 15/8 15/14 16/19 17/3
17/12 18/6 18/19 19/7 19/10
19/12 19/14 19/16 22/7 22/13
33/2 34/19 85/8 118/1
**reviewed [17]** 6/2 7/12 8/1
8/16 9/10 10/2 10/19 12/23
14/12 15/23 16/9 17/5 21/3
35/4 38/4 39/11 86/22
**reviewing [2]** 14/22 17/17
**Rewards [1]** 40/10
**Rich [1]** 84/23
**Richard [40]** 1/9 32/3 32/13
38/16 39/7 42/14 43/13 45/14
53/12 72/13 73/7 73/12 74/4
79/22 79/25 80/3 81/3 81/5
81/9 81/16 82/10 82/13 82/19
85/12 94/8 94/10 96/3 102/18
102/23 104/24 111/5 111/8
111/12 113/17 114/23 116/11
117/9 118/24 124/23 124/25
**right [57]** 23/11 23/14 26/18
28/1 28/8 28/20 29/2 29/12
31/13 33/15 33/23 34/24 35/7
36/9 36/10 36/22 37/18 38/3
38/13 38/21 39/1 44/1 44/17
45/16 46/21 50/16 50/23 51/6
52/15 52/19 52/23 54/24 57/5
59/1 63/19 67/22 80/12 87/1
87/23 94/25 95/8 95/24 96/24
99/2 99/25 100/13 100/15
108/4 110/21 112/20 112/21
116/24 117/16 118/21 121/5
128/4 128/10
**right-hand [4]** 26/18 28/20
38/13 38/21
**righthand [1]** 40/16
**rights [1]** 48/2
**risk [9]** 111/12 111/14
111/25 113/24 116/1 117/5
118/25 119/21 122/8
**risks [1]** 59/15
**River [2]** 68/15 68/15
**Road [1]** 3/12
**ROBINSON [24]** 4/4 5/14 5/21
6/14 11/7 21/8 23/6 38/13
41/5 65/6 65/9 67/21 68/9
68/18 69/11 70/12 71/21 72/8
74/14 75/1 80/7 86/22 88/15
94/12
**Robinson's [2]** 72/18 86/5
**role [1]** 103/4
**roles [1]** 117/12
**Rolex [6]** 42/25 43/15 53/17
53/25 86/17 89/14
**Rolexes [2]** 72/24 73/2
**Romero [9]** 23/9 23/19 25/18
26/14 27/13 27/19 38/19 39/4
40/13
**room [4]** 58/13 59/7 72/2
80/18
**rose [2]** 42/24 53/15
**rough [1]** 15/15
**roughly [2]** 67/18 86/10

## R

**row [1]**   25/6
**Royal [8]**   42/23 43/2 43/3
  43/5 53/15 53/19 53/21 53/23
**RPR [1]**   131/12
**Rule [8]**   11/13 21/13 128/15
  129/1 129/18 129/24 130/4
  130/7
**ruled [1]**   109/25
**rules [2]**   46/17 59/12
**ruling [3]**   32/6 106/16 110/2
**Runyan [16]**   7/21 12/2 12/6
  12/10 12/13 12/20 12/22
  12/24 42/13 53/7 67/1 67/6
  67/17 67/20 67/24 68/3
**Runyan's [1]**   67/13
**Ryan [2]**   3/7 102/7

## S

**Sabala [1]**   17/25
**safe [1]**   113/12
**said [8]**   33/6 44/14 61/18
  84/4 102/18 121/23 124/21
  129/8
**same [28]**   9/3 13/17 52/8
  54/23 56/24 57/8 64/17 67/25
  68/11 69/15 70/3 70/15 72/10
  83/11 83/14 83/17 84/3 90/19
  92/6 93/20 97/2 97/6 114/22
  119/16 119/24 124/4 127/15
  129/24
**San [2]**   2/21 3/6
**Santa [1]**   3/15
**savings [1]**   77/25
**saw [19]**   34/8 65/8 67/22
  71/17 72/10 72/13 75/20
  75/24 77/8 77/10 80/7 80/16
  81/2 83/9 84/10 84/11 86/4
  90/2 121/23
**say [40]**   17/3 20/10 21/1
  24/13 25/2 25/20 26/5 26/25
  28/18 28/24 29/11 29/20 30/4
  30/6 32/2 32/8 33/2 34/6
  35/6 35/12 35/23 38/6 38/22
  39/6 40/9 46/16 53/15 60/23
  88/10 90/22 92/17 95/5 98/10
  99/12 102/1 106/25 109/3
  123/8 124/5 125/12
**saying [3]**   36/6 106/24
  109/15
**says [9]**   16/3 26/21 31/2
  31/23 37/3 40/20 41/1 83/24
  91/24
**SBA [2]**   14/10 15/11
**schedule [3]**   110/9 110/18
  129/7
**scheduling [1]**   128/15
**scheme [12]**   51/11 51/12
  51/21 51/23 51/25 70/6 80/23
  82/13 82/23 85/2 85/23
  121/14
**schemes [4]**   67/10 69/16 78/5
  93/16
**school [1]**   119/25
**scope [5]**   30/18 33/18 39/21
  40/4 109/4
**SCOTT [1]**   2/5
**screen [1]**   81/25
**search [2]**   113/12 114/25
**searched [2]**   113/11 114/25
**seated [1]**   104/6
**second [21]**   25/6 40/9 48/23
  51/16 58/25 61/2 63/10 75/11
  75/18 80/9 87/7 91/15 93/24
  98/11 104/1 105/14 106/7
  106/23 107/1 107/21 120/15
**secondary [1]**   97/11
**seconds [1]**   123/10

**section [12]**   46/13 50/15
  57/15 111/6 111/20 113/25
  131/4
**Sections [1]**   51/5
**secure [1]**   34/10
**Secureline [5]**   10/14 27/22
  83/20 84/1 97/6
**security [1]**   85/5
**see [41]**   24/2 24/2 26/18
  31/13 37/25 57/5 67/12 67/22
  68/10 68/14 69/20 72/18
  72/24 73/1 77/9 79/17 80/17
  81/6 81/12 81/24 84/22 86/14
  86/19 95/14 95/19 95/20 96/9
  102/9 102/12 109/17 113/5
  116/5 116/16 117/8 119/2
  119/19 122/20 125/13 128/6
  129/6 129/21
**seek [1]**   42/4
**seeking [13]**   66/12 67/4
  67/18 68/4 69/4 71/13 72/6
  72/21 73/19 73/25 97/14
  118/23 118/24
**seeks [4]**   49/24 52/12 56/21
  107/15
**seen [14]**   65/4 71/16 71/25
  72/2 72/6 73/16 73/17 74/7
  76/3 76/10 77/6 77/16 78/9
  121/13
**seize [1]**   97/14
**seized [28]**   41/16 42/6 42/10
  42/14 42/16 42/21 43/13 53/2
  53/5 53/8 53/11 66/20 66/22
  66/25 67/5 67/18 67/19 68/2
  68/5 73/25 74/1 74/3 74/9
  88/4 90/5 90/14 91/8 91/10
**seizure [4]**   42/7 42/11 42/18
  42/22
**select [1]**   101/1
**sell [1]**   92/20
**send [2]**   59/14 123/17
**sense [6]**   76/22 76/25 77/2
  77/21 78/8 110/11
**sent [6]**   18/2 20/5 35/3
  61/10 123/9 123/10
**sentence [5]**   50/12 111/15
  113/25 115/18 115/23
**sentencing [6]**   111/2 111/6
  113/18 115/20 129/16 130/16
**separate [1]**   48/8
**September [3]**   14/15 82/1
  130/18
**September 28th [1]**   14/15
**serial [14]**   42/24 43/1 43/2
  43/4 43/6 43/15 53/16 53/18
  53/20 53/22 53/24 53/25
  86/16 89/14
**series [5]**   10/12 12/17 18/14
  20/4 102/10
**serious [5]**   59/16 113/8
  114/22 120/5 120/14
**served [2]**   85/8 97/18
**service [10]**   7/22 12/7 12/13
  12/20 12/24 42/13 53/7 62/15
  127/3 127/4
**services [3]**   12/2 67/1
  121/17
**SESSION [1]**   1/16
**set [9]**   6/20 42/3 49/18
  60/18 60/20 61/25 104/18
  108/13 129/16
**setting [1]**   108/11
**Seven [1]**   53/11
**Seventh [1]**   45/9
**several [1]**   95/4
**shall [7]**   50/15 50/22 51/5
  52/10 54/23 80/8 92/7
**shape [1]**   120/11

**shared [1]**   119/13
**she [16]**   32/18 33/1 33/12
  33/20 39/9 39/10 45/14 74/16
  74/17 77/9 83/25 88/16 88/16
  94/14 103/12 103/13
**shield [2]**   105/23 107/8
**short [2]**   108/1 108/9
**shortly [1]**   112/9
**should [15]**   47/21 49/9 49/13
  49/16 58/4 58/6 61/17 62/3
  62/16 72/16 102/19 104/2
  108/9 120/15 127/15
**shouldn't [2]**   59/3 117/1
**show [27]**   6/9 7/10 8/15 10/1
  11/5 13/19 15/19 16/13 16/23
  17/19 18/11 19/22 21/6 24/9
  25/14 80/8 82/9 83/6 85/25
  86/12 86/24 91/21 93/6 93/22
  93/25 95/6 95/11
**showed [3]**   59/13 82/9 121/14
**showing [1]**   12/4
**shown [2]**   36/8 86/3
**shows [10]**   67/19 68/2 69/7
  69/25 70/7 70/19 73/20 78/10
  112/17 115/2
**side [2]**   43/21 80/18
**sidebar [1]**   44/8
**sign [2]**   58/4 123/15
**signator [1]**   77/12
**signed [5]**   28/8 124/7 124/20
  125/6 125/11
**significant [3]**   112/17 119/1
  119/2
**Silverman [4]**   2/22 4/6 23/5
  44/11
**similar [6]**   11/18 15/10 78/4
  113/3 113/6 120/22
**similarly [2]**   47/25 113/24
**simple [1]**   46/14
**simply [3]**   31/8 64/4 85/2
**since [3]**   11/1 21/18 120/8
**single [6]**   80/5 80/8 84/8
  84/25 87/23 94/25
**sir [2]**   60/25 102/5
**sitting [4]**   77/24 80/18
  84/16 85/10
**situation [2]**   107/6 118/18
**six [3]**   53/8 72/5 72/21
**sixteen [1]**   54/5
**slash [3]**   79/20 83/20 124/15
**slide [19]**   23/8 25/6 26/9
  26/10 27/3 27/16 27/20 28/11
  28/19 30/9 33/1 35/1 35/9
  35/17 35/25 36/8 36/12 37/3
  62/6
**slides [4]**   60/15 60/19 61/25
  79/18
**slightly [1]**   27/18
**slip [2]**   27/9 30/1
**so [127]**
**sole [4]**   48/11 48/25 62/22
  122/23
**solely [2]**   47/12 47/17
**Solutions [2]**   22/2 22/6
**some [40]**   6/24 20/20 33/10
  36/3 44/3 45/8 45/11 48/3
  56/19 58/23 59/25 60/18 62/2
  67/24 70/24 71/1 71/6 72/10
  73/3 76/20 80/16 81/6 97/9
  101/23 102/1 104/18 105/5
  105/18 108/17 112/19 112/19
  113/13 116/7 117/22 121/20
  124/14 127/12 129/22 130/2
  130/9
**somebody [1]**   24/13
**somehow [1]**   93/24
**someone [4]**   77/3 85/22
  104/20 126/24
**something [10]**   34/7 59/3

**S**

**something...** **[8]**  61/2 91/7
92/21 95/15 99/2 108/25
109/7 120/7
**sometimes** **[2]**  34/12 127/11
**somewhat** **[1]**  109/22
**somewhere** **[1]**  97/10
**soon** **[4]**  49/23 62/3 102/9
129/25
**sorry** **[5]**  16/2 32/1 36/12
59/1 62/4
**sort** **[2]**  36/23 104/18
**sought** **[3]**  47/18 49/4 62/24
**sound** **[1]**  107/11
**sounds** **[2]**  36/22 62/21
**source** **[6]**  7/19 7/20 8/24
10/10 82/4 82/6
**sources** **[10]**  19/20 20/6 36/3
36/3 36/5 37/13 37/25 39/13
82/19 95/23
**speak** **[8]**  6/11 79/15 107/5
113/19 116/15 118/1 118/2
121/7
**speaking** **[1]**  44/13
**speaks** **[2]**  106/1 110/14
**Spear** **[1]**  2/20
**special** **[3]**  50/9 57/22 58/5
**specific** **[36]**  28/15 29/9
37/22 41/12 42/5 45/18 49/23
52/3 62/17 72/2 78/25 79/1
79/10 79/11 86/2 87/3 87/14
87/16 88/1 88/21 88/22 89/17
89/22 91/25 95/7 96/17 98/11
98/24 99/23 100/14 100/22
101/2 102/11 108/8 109/4
122/25
**specifically** **[10]**  32/21
32/23 36/4 36/18 45/19 62/15
69/22 71/11 73/25 87/22
**specified** **[1]**  55/13
**speculate** **[1]**  110/5
**speculation** **[2]**  24/15 39/14
**spend** **[1]**  91/5
**spending** **[1]**  98/17
**spent** **[1]**  71/19
**split** **[1]**  120/15
**splitting** **[1]**  118/19
**spoke** **[1]**  65/18
**spoken** **[1]**  119/11
**spouse** **[1]**  115/19
**spreadsheets** **[1]**  19/10
**Spring** **[1]**  2/6
**Springs** **[1]**  52/25
**stage** **[2]**  77/23 111/9
**stainless** **[4]**  42/25 43/5
53/17 53/23
**stand** **[1]**  93/11
**standard** **[4]**  63/25 63/25
79/12 111/11
**start** **[12]**  51/15 56/17 61/15
78/1 80/1 81/11 81/18 81/21
81/22 81/23 82/20 109/2
**started** **[1]**  89/18
**starting** **[1]**  17/22
**state** **[5]**  112/8 112/23
114/14 119/12 120/21
**stated** **[1]**  127/20
**statement** **[11]**  15/9 15/9
24/3 38/12 38/15 39/20 40/11
40/18 40/19 40/22 40/23
**statements** **[5]**  14/23 29/5
34/4 105/2 105/9
**states** **[27]**  1/1 1/4 1/6 2/3
15/11 38/24 38/25 42/14
46/13 46/14 46/17 50/14
50/21 51/3 51/5 54/12 54/12
54/20 54/22 55/5 57/14 57/14
57/21 106/4 118/15 131/5

131/9
**statute** **[1]**  49/25
**statutes** **[1]**  46/18
**stay** **[1]**  64/25
**steel** **[4]**  42/25 43/5 53/17
53/24
**stenographically** **[1]**  131/6
**step** **[1]**  13/5
**STEPHEN** **[1]**  1/3
**steps** **[1]**  77/1
**Steptoe** **[4]**  2/14 2/17 2/19
2/22
**still** **[10]**  5/15 58/10 62/1
92/10 93/6 93/25 110/10
112/3 112/5 114/11
**stipulate** **[1]**  41/22
**stipulation** **[6]**  41/7 41/17
41/18 41/22 41/23 43/19
**stood** **[2]**  102/16 120/6
**stopped** **[3]**  73/10 74/5 77/13
**store** **[2]**  90/22 92/18
**stores** **[1]**  90/3
**Street** **[5]**  1/22 2/6 2/14
2/20 3/8
**stricken** **[1]**  60/11
**strike** **[3]**  29/5 52/25 59/10
**strongly** **[1]**  113/13
**studs** **[4]**  43/18 54/6 90/9
90/13
**study** **[1]**  129/12
**subject** **[45]**  41/12 41/21
47/23 48/4 48/13 49/20 49/22
50/1 50/5 50/10 51/10 51/22
52/10 54/11 55/3 55/6 55/11
56/2 57/13 57/24 58/3 66/3
85/19 85/24 86/14 87/4 87/24
88/4 89/3 89/11 89/12 91/18
92/8 94/6 94/24 95/7 97/15
99/7 99/13 99/15 99/18
100/22 106/16 106/18 123/4
**submission** **[2]**  107/19 120/17
**submit** **[6]**  90/16 93/9 96/18
99/6 103/19 122/5
**submitted** **[2]**  41/10 101/7
**subpoenas** **[1]**  85/7
**subsequent** **[1]**  14/9
**substance** **[1]**  109/18
**substantial** **[3]**  28/24 111/15
113/24
**such** **[20]**  15/3 21/23 29/14
33/13 34/19 48/7 49/25 50/1
51/20 51/25 52/6 54/20 55/1
55/2 55/8 56/3 57/18 57/20
65/23 92/3
**suddenly** **[1]**  77/25
**sufficiency** **[1]**  130/6
**suggest** **[2]**  82/23 130/2
**suggestion** **[3]**  101/13 109/23
129/18
**suggests** **[1]**  113/13
**Suite** **[8]**  1/22 2/15 2/20 3/5
3/8 3/13 3/16 3/21
**suited** **[1]**  77/18
**sum** **[1]**  20/7
**summarize** **[4]**  17/22 19/19
21/25 67/21
**summarized** **[1]**  21/2
**summarizes** **[3]**  18/14 19/3
22/1
**summarizing** **[5]**  15/21 16/15
16/25 18/13 20/11
**summary** **[20]**  6/20 6/25 11/2
11/12 11/18 15/22 16/16 17/1
19/4 19/7 19/23 19/25 21/13
21/23 23/11 65/4 65/7 68/9
72/18 82/24
**sums** **[1]**  20/1
**SUN** **[1]**  2/5
**superseding** **[5]**  42/4 49/19

106/23 107/2 107/22
**supervision** **[1]**  131/14
119/16
**supplemental** **[1]**  47/15
**supposed** **[1]**  20/15
**suppressed** **[3]**  105/16 105/17
105/19
**sure** **[5]**  24/21 29/8 35/25
100/6 105/6
**surety** **[1]**  119/2
**surface** **[1]**  106/14
**surveillance** **[1]**  85/5
**surveilled** **[1]**  80/14
**survey** **[1]**  110/12
**suspected** **[1]**  74/22
**sustained** **[4]**  32/24 33/20
39/15 75/17
**SVW** **[1]**  1/8
**sword** **[2]**  105/22 107/8
**sworn** **[1]**  58/10
**sympathy** **[1]**  47/13
**synthesize** **[1]**  94/13

**T**

**table** **[5]**  84/17 85/10 101/25
107/1 110/6
**tainted** **[6]**  71/7 74/22 75/4
76/5 76/12 76/14
**take** **[14]**  39/3 44/4 46/21
61/3 83/7 100/7 100/10
101/15 101/18 101/22 101/23
101/24 102/16 106/25
**taken** **[5]**  48/8 94/20 112/4
115/2 121/20
**takes** **[1]**  29/12
**Taking** **[1]**  13/5
**talk** **[5]**  66/24 82/22 85/16
86/2 89/15
**talked** **[2]**  85/5 87/5
**talking** **[6]**  20/23 36/2 80/12
80/21 92/16 120/6
**talks** **[2]**  107/7 107/9
**Tamara** **[9]**  27/22 28/3 83/20
97/6 115/10 115/16 116/20
116/21 117/8
**Tami** **[1]**  84/23
**tapes** **[1]**  85/6
**Tarzana** **[4]**  42/19 42/22
52/17 53/10
**task** **[4]**  32/15 48/11 49/1
62/20
**tasked** **[1]**  14/25
**tax** **[12]**  7/21 12/2 12/7
12/13 12/20 12/22 12/24
39/20 40/10 42/13 53/7 67/1
**teaching** **[1]**  109/3
**tech** **[4]**  81/11 82/3 82/20
96/4
**teens** **[1]**  116/18
**telephone** **[1]**  114/4
**telephones** **[2]**  105/16 105/16
**tell** **[10]**  60/24 61/14 76/22
88/19 90/6 93/11 102/17
104/20 109/12 127/11
**telling** **[1]**  110/19
**ten** **[2]**  53/19 83/12
**TERABELIAN** **[21]**  3/3 32/4
32/10 33/4 38/16 42/15 43/14
45/14 53/13 74/5 96/3 97/12
101/8 102/8 102/19 102/22
103/9 103/16 104/24 115/16
125/8
**Terabelian's** **[1]**  77/8
**term** **[1]**  13/6
**terms** **[7]**  33/8 86/12 89/25
106/13 110/8 112/14 122/14
**testified** **[11]**  6/25 11/18
23/10 27/25 32/2 32/8 37/6
39/5 81/22 119/9 122/5

**testify [7]** 5/23 65/9 71/21
72/12 74/14 90/21 121/12
**testifying [1]** 6/17
**testimony [29]** 5/25 6/3 6/6
6/7 7/2 7/7 8/8 8/12 9/16
9/18 9/22 11/1 14/20 15/17
21/18 28/1 32/16 40/4 47/11
60/5 65/6 86/5 90/24 91/1
91/9 91/10 94/13 95/20 105/1
**text [6]** 17/14 19/12 80/20
84/23 84/23 84/25
**than [37]** 39/1 48/6 48/7
48/9 49/9 50/6 62/21 64/6
64/9 66/1 67/17 68/23 71/19
73/12 74/7 74/18 75/3 77/16
77/23 77/24 78/2 79/14 84/21
90/18 91/3 98/18 99/15
100/24 100/25 101/15 102/11
102/16 102/22 103/6 103/11
108/11 108/22
**thank [23]** 5/9 6/13 18/6
27/13 41/5 44/7 61/5 61/24
78/14 101/4 101/19 102/6
110/22 121/6 121/10 122/10
122/11 127/4 127/9 128/1
128/12 128/13 129/15
**that [657]**
**That's [6]** 14/21 15/2 112/21
114/18 114/18 117/11
**theft [6]** 64/13 111/19
112/23 113/1 114/1 120/20
**their [23]** 61/12 62/17 73/17
75/4 75/12 75/19 76/19 76/23
77/4 77/15 77/20 85/13 91/2
95/8 104/25 105/23 116/9
116/13 116/15 119/24 119/24
119/25 127/20
**them [28]** 16/18 20/18 28/9
37/23 59/1 60/20 62/19 63/14
64/17 65/6 65/8 72/1 72/22
74/10 76/6 77/10 77/18 78/2
80/15 80/15 80/24 80/25
81/11 101/24 113/14 124/2
125/17 129/24
**then [46]** 9/4 12/20 14/8
18/3 20/4 23/16 27/19 27/19
28/4 31/24 44/5 44/6 44/23
46/22 51/17 58/3 58/5 60/11
61/3 77/18 78/2 85/18 87/4
93/3 94/19 98/10 98/13 98/24
99/6 100/25 101/16 101/17
101/19 103/22 108/9 108/11
108/20 113/15 113/15 113/19
114/13 115/24 118/1 122/22
123/15 124/11
**theory [1]** 81/1
**there [114]**
**therefore [2]** 54/11 57/13
**these [43]** 6/25 15/23 16/19
16/20 17/9 22/7 22/14 22/20
23/15 28/7 28/11 28/14 35/3
47/15 49/14 57/9 64/22 69/1
69/5 69/15 70/9 70/15 70/21
71/16 71/21 72/7 74/9 74/15
74/22 75/11 75/24 76/4 77/7
77/13 77/17 79/18 83/4 83/6
84/18 87/19 91/11 107/5
109/4
**they [58]** 23/16 34/7 34/10
58/13 58/14 59/7 65/3 65/15
69/13 70/2 70/14 72/22 73/10
74/5 76/5 76/19 79/21 80/14
80/15 80/15 82/24 83/7 84/4
84/6 84/24 84/24 85/18 85/24
87/20 88/12 88/15 90/3 90/15
91/1 91/2 93/22 94/15 95/4
95/11 97/15 99/24 100/1

100/8 116/17 118/22 119/24
121/23 124/2 125/16 125/19
127/20 128/18 129/1 129/3
**THIBODEAUX [2]** 1/21 131/12
**thing [12]** 83/11 83/14 83/17
90/19 95/19 95/19 97/2 97/6
116/10 120/5 120/16 127/10
**things [8]** 60/15 92/9 92/11
108/5 110/7 127/7 129/7
130/10
**think [30]** 33/12 33/13 44/22
61/15 73/9 85/10 94/21
100/24 101/14 105/6 106/19
107/13 108/6 108/10 108/13
109/2 110/11 116/1 116/2
116/23 117/4 117/12 121/1
122/6 122/8 123/9 129/6
129/23 130/11 130/13
**thinking [1]** 109/2
**third [9]** 9/4 26/10 34/5
48/1 48/2 76/8 99/14 99/17
112/16
**third-party [1]** 34/5
**Thirteen [1]** 53/25
**this [229]**
**Thomas [1]** 3/14
**those [43]** 7/19 7/20 8/24
10/10 10/19 11/18 16/17
18/22 20/7 20/25 22/13 29/12
34/3 36/17 38/8 55/16 57/4
63/12 63/18 64/15 64/16 65/3
65/14 65/15 66/23 67/2 67/19
70/18 72/10 74/16 78/11
80/17 84/25 88/6 97/13 97/14
97/15 100/7 113/3 113/16
115/2 115/5 130/15
**though [3]** 23/13 113/11
114/17
**thought [4]** 39/25 61/18
109/6 109/8
**thoughts [2]** 109/9 109/13
**thousand [6]** 75/21 92/21
92/22 93/2 97/11 99/2
**thousands [2]** 72/14 75/23
**threat [2]** 121/22 122/1
**three [17]** 9/1 12/17 20/5
52/23 55/9 66/20 69/4 69/5
71/20 94/6 99/11 100/4
108/25 116/11 119/21 128/16
130/12
**through [21]** 9/2 10/13 12/19
12/21 18/22 35/16 35/20 36/1
36/4 37/23 46/11 52/14 56/1
61/9 65/6 68/11 80/9 86/19
96/6 110/13 118/9
**throughout [1]** 80/13
**ticket [2]** 25/22 30/4
**tie [1]** 79/10
**tied [3]** 87/16 88/14 88/20
**till [1]** 130/12
**time [14]** 29/7 29/20 44/3
55/16 61/25 91/5 102/1
102/16 108/6 108/16 109/2
118/19 122/3 128/19
**Timeland [1]** 95/25
**Timeline [3]** 10/13 18/15
35/10
**Timepiece's [1]** 20/3
**Timepieces [21]** 18/16 19/4
19/8 19/17 20/1 20/5 20/8
20/11 20/12 20/21 21/2 35/4
35/11 35/16 35/21 72/10
72/20 73/1 86/7 86/21 88/5
**times [8]** 14/24 51/14 63/20
65/1 88/18 95/4 101/4 119/11
**title [16]** 50/14 50/16 50/21
50/23 51/3 51/4 51/6 52/16
52/20 52/23 54/12 54/22

54/24 55/4 57/14 131/4
**study [1]** 131/4
63/9 64/11 65/5 66/12 66/16
78/4 80/2 90/22 94/9 94/12
107/18 109/16
**together [2]** 47/12 116/6
**token [1]** 127/15
**told [4]** 60/22 88/16 92/23
94/17
**Tom [1]** 121/11
**too [1]** 114/13
**took [2]** 55/16 122/3
**top [9]** 20/1 20/14 22/3
23/20 23/21 38/13 38/20 90/7
123/14
**Topeka [18]** 9/20 10/3 10/7
10/11 10/24 38/17 70/11
70/14 70/19 70/25 74/3 76/10
76/17 85/13 91/8 91/9 91/11
94/11
**total [10]** 20/7 20/8 35/6
35/22 36/24 40/15 40/24
65/10 72/19 121/16
**towards [1]** 18/22
**Tower [1]** 2/20
**towing [11]** 10/13 13/22 14/3
14/8 15/13 15/13 42/9 53/4
67/2 96/2 121/25
**trace [13]** 7/7 8/12 9/23
12/5 13/20 18/8 21/19 28/14
32/13 36/17 37/12 37/14
51/24
**traceable [36]** 17/9 17/13
17/15 28/17 28/21 36/25
51/23 55/11 55/25 56/3 56/15
56/18 57/11 57/18 65/11
69/20 71/1 71/3 71/5 71/22
73/22 74/18 79/5 80/4 84/6
85/20 86/6 86/9 86/10 88/9
89/1 92/24 94/14 94/18 98/10
100/17
**traced [16]** 14/20 15/16
18/16 35/13 35/15 35/20 36/5
36/6 36/21 37/18 56/12 75/1
79/11 86/21 95/17 107/25
**tracing [16]** 12/15 14/5 15/1
21/23 32/11 32/17 32/20
33/21 35/14 36/1 37/23 38/2
74/15 86/12 86/15 100/14
**transaction [31]** 15/6 15/10
16/2 17/22 36/7 55/12 55/15
55/16 55/21 55/22 56/9 68/19
75/1 75/7 75/8 80/9 82/25
83/16 83/21 89/3 95/9 95/22
97/24 98/14 98/17 98/18
98/20 98/25 99/5 99/20
121/25
**transactions [11]** 14/24
21/20 34/4 34/6 34/8 34/10
55/7 71/18 72/13 83/6 91/12
**transcript [15]** 1/13 6/2
30/22 31/2 31/10 31/11 31/23
59/14 59/15 59/18 59/22 60/2
60/7 131/6 131/7
**transfer [7]** 22/8 35/10 52/1
69/21 69/21 73/5 75/21
**transferred [12]** 18/20 45/25
48/1 59/25 65/10 67/13 67/23
69/12 70/1 70/13 72/9 72/15
**transfers [6]** 18/8 70/9
70/22 95/14 96/19 97/10
**Transport [8]** 10/13 13/22
14/3 15/13 18/15 42/9 53/4
95/25
**trash [1]** 85/6
**travel [2]** 112/12 120/3
**traveler [1]** 112/11
**treatment [1]** 118/13
**tria [1]** 114/2

**T**

**trial [42]**   1/15 5/23 6/6
6/18 7/1 11/19 25/10 28/1
37/6 41/11 41/23 49/14 63/3
63/8 63/10 63/17 63/21 65/5
67/3 69/6 72/17 78/10 80/2
80/13 80/16 81/9 81/10 81/22
102/12 103/14 104/23 107/4
107/23 110/1 111/16 111/22
114/5 116/25 116/25 118/9
118/24 119/9
**tried [1]**   80/6
**trip [1]**   122/3
**Trucking [1]**   67/1
**true [8]**   35/18 49/9 49/9
64/9 92/25 95/2 120/22 131/5
**trust [2]**   77/7 128/5
**truthfully [1]**   122/6
**try [1]**   22/10
**trying [5]**   33/12 37/23 88/3
99/24 115/25
**Turing [2]**   22/1 22/6
**Turks [7]**   73/11 86/8 86/17
88/25 98/21 99/1 120/3
**turn [1]**   108/10
**turnaround [1]**   108/1
**turning [1]**   21/22
**turnover [1]**   120/9
**Twelfth [1]**   2/6
**Twelve [1]**   53/23
**twice [1]**   50/7
**two [36]**   7/20 9/1 10/14 20/7
20/25 43/7 46/7 48/15 52/19
55/8 57/4 59/13 63/16 66/20
66/25 71/12 71/22 72/24 79/2
81/13 81/17 82/2 86/13 89/11
92/11 98/7 98/8 98/16 105/7
106/3 107/13 110/7 111/18
115/14 116/2 116/12
**type [1]**   107/6
**typed [2]**   122/19 123/8
**Typically [1]**   34/8

**U**

**U.S [4]**   1/21 2/4 2/4 108/24
**U.S.C [1]**   46/11
**ultimately [2]**   12/22 18/16
**unaccounted [3]**   112/3 112/6
114/12
**unanimous [4]**   47/14 58/1
58/7 123/24
**unclear [3]**   31/7 90/16
104/10
**under [20]**   5/16 11/12 20/15
21/13 31/21 32/3 32/9 48/13
50/13 50/20 51/2 54/21 60/5
111/20 119/4 119/6 119/14
119/15 127/16 127/24
**underlying [4]**   55/13 56/5
70/8 70/20
**underscore [1]**   119/1
**understand [6]**   60/10 61/21
104/15 110/9 120/23 130/10
**understanding [3]**   13/8
107/21 127/20
**undisputedly [1]**   95/16
**unfair [1]**   110/5
**unhelpful [1]**   110/6
**UNITED [21]**   1/1 1/4 1/6 2/3
42/13 50/14 50/21 51/3 51/5
54/12 54/14 54/20 54/22 55/5
57/14 57/14 57/21 106/4
118/15 131/5 131/9
**UNK [1]**   20/15
**unknown [2]**   20/16 20/19
**unlawful [1]**   55/14
**unless [1]**   93/22
**unlike [1]**   70/24

**unquote [1]**   90/4
**unrelated [1]**   114/4
**unremarkable [1]**   80/22
**untainted [4]**   56/19 71/6
75/4 77/25
**untraced [1]**   37/10
**unzoom [1]**   24/22
**up [39]**   6/11 23/9 24/1 25/9
26/13 27/8 30/20 31/25 35/25
37/2 38/10 39/16 40/21 60/18
60/20 61/25 66/7 68/12 75/15
81/21 81/23 82/1 82/24 85/12
86/18 88/5 88/8 89/13 89/16
91/3 93/10 94/4 100/20
101/23 102/16 102/17 109/1
117/22 123/2
**up's [1]**   81/23
**upon [2]**   64/11 129/1
**ups [3]**   81/11 81/18 82/20
**upstream [1]**   99/24
**us [9]**   2/9 14/8 42/16 53/8
53/11 62/5 62/13 68/11 110/4
**USC [1]**   46/12
**use [13]**   57/23 77/8 77/17
92/17 95/17 105/20 107/7
107/25 110/15 112/7 113/4
121/23 130/3
**used [32]**   7/13 7/15 8/2 8/17
8/20 8/24 9/12 10/3 10/6
10/20 22/8 51/17 55/8 55/14
55/20 55/22 56/8 56/20 66/4
66/5 69/13 70/2 70/14 73/12
73/18 75/6 75/9 76/13 76/18
81/10 98/19 105/22
**usher [1]**   58/12
**using [5]**   73/6 92/18 99/1
111/20 114/1
**usual [2]**   101/15 130/16

**V**

**vacation [2]**   112/13 120/3
**vague [1]**   93/13
**VAHE [6]**   3/18 87/8 96/14
103/18 103/18 124/6
**value [1]**   99/16
**Vargas [1]**   125/25
**various [2]**   42/18 53/9
**vary [1]**   24/18
**vast [2]**   82/25 84/7
**Vaughan [1]**   3/7
**Vegas [1]**   82/10
**Ventures [2]**   77/11 96/3
**verdict [25]**   45/15 47/12
47/14 49/15 50/9 57/22 58/2
58/5 58/7 86/14 98/5 99/10
102/10 104/2 104/10 104/12
104/13 123/24 123/25 124/4
124/6 125/12 125/20 125/24
125/24
**versus [2]**   106/4 106/8
**very [18]**   6/24 40/15 61/12
61/14 62/3 67/25 72/10 78/4
83/25 90/3 93/12 108/8 110/4
112/11 112/15 113/3 121/16
127/5
**Victoria [1]**   9/5
**view [1]**   45/7
**viewed [1]**   130/5
**views [1]**   127/22
**vigorous [1]**   128/12
**violation [11]**   51/4 55/4
55/8 55/9 55/18 56/8 56/10
56/14 107/22 107/25 121/18
**violations [8]**   50/14 50/21
51/3 54/10 54/18 54/22 57/12
57/19
**virtue [1]**   98/12
**VOLUME [1]**   1/16
**voluntarily [1]**   41/18

**Voyage [2]**   7/21 12/19

**W**

**W-O-O-D-F-O-R-D [1]**   106/9
**W44P7238 [3]**   43/16 54/1
89/14
**wait [4]**   32/6 46/23 58/25
58/25
**waiting [2]**   62/1 130/12
**waived [1]**   104/25
**waiver [9]**   58/22 106/2
106/15 106/15 106/18 108/18
109/5 109/5 109/23
**waives [1]**   105/23
**waiving [1]**   107/9
**walk [1]**   86/19
**want [13]**   24/18 45/12 59/4
63/18 91/21 101/24 102/15
108/20 109/7 116/19 125/13
127/9 129/7
**wanted [2]**   104/14 104/15
**wants [1]**   110/9
**warrant [5]**   42/7 42/11 42/18
42/22 130/6
**was [186]**
**Washington [2]**   2/10 2/23
**wasn't [13]**   20/24 28/5 35/18
80/10 80/18 80/25 83/10 85/2
85/3 88/16 96/17 112/20
121/23
**watch [12]**   43/15 53/25 86/8
86/10 86/16 88/14 88/22
88/25 89/4 89/7 90/5 98/22
**watched [1]**   80/15
**watches [20]**   66/22 71/11
72/5 72/11 72/22 73/3 73/21
75/23 76/15 79/20 85/16
85/17 85/20 85/22 86/4 86/13
88/5 88/6 89/12 99/1
**way [10]**   28/18 33/9 33/10
33/21 38/8 64/16 80/22 84/20
94/21 107/20
**ways [2]**   55/12 76/6
**we [135]**
**weapons [1]**   121/22
**wears [1]**   119/17
**weekend [1]**   109/17
**weeks [6]**   81/13 81/17 82/2
128/16 130/12 130/17
**well [48]**   9/3 12/19 14/10
22/4 29/11 30/20 31/1 31/9
35/15 44/25 49/14 61/3 63/4
63/8 63/23 64/6 64/11 64/14
65/3 65/12 66/3 66/15 66/22
68/1 68/24 72/8 74/3 81/23
82/12 86/22 92/11 99/14
105/23 106/19 107/17 108/20
112/24 113/20 114/11 114/14
115/1 115/24 115/25 117/13
117/15 117/23 122/22 129/6
**Wells [2]**   16/5 83/16
**went [10]**   10/10 34/1 86/6
94/14 94/22 94/25 116/25
118/9 118/24 121/15
**were [113]**
**weren't [1]**   77/15
**West [4]**   1/22 2/14 3/8 106/7
**WESTERN [1]**   1/2
**what [101]**
**whatever [3]**   48/12 99/24
121/15
**whatsoever [2]**   119/14 127/16
**when [28]**   13/10 20/10 21/1
34/6 38/2 44/13 49/6 50/12
63/2 63/13 68/24 72/23 73/7
74/5 77/17 92/16 99/4 99/9
101/1 102/9 103/13 107/9
107/9 109/16 113/10 114/24
119/11 121/2

**W**

**where [13]**   39/7 46/9 46/15
46/19 69/13 70/2 70/14 71/19
76/8 81/3 86/19 98/18 124/5
**wherever [1]**   65/15
**whether [22]**   17/8 29/24
32/12 47/17 47/22 48/11 49/1
50/1 57/24 58/2 62/23 66/16
68/23 90/15 91/9 92/11 93/4
93/18 102/25 103/5 117/5
122/23
**which [100]**
**while [8]**   47/5 58/20 100/3
105/10 110/10 113/17 123/2
130/10
**white [4]**   43/17 54/5 90/9
90/13
**who [13]**   16/7 24/2 49/15
62/2 77/18 83/1 97/25 118/15
118/22 119/8 119/9 122/7
127/25
**whole [3]**   51/23 85/24 119/25
**whom [2]**   96/11 115/14
**why [9]**   59/17 76/22 77/3
77/18 95/12 98/3 98/4 128/20
129/22
**wife [1]**   121/15
**will [70]**
**Williams [2]**   3/4 3/7
**willingness [1]**   112/12
**WILSON [2]**   1/3 123/16
**win [2]**   40/15 40/24
**win/loss [2]**   40/15 40/24
**winnings [2]**   34/12 34/23
**wire [6]**   52/1 64/12 64/13
73/4 73/12 73/18
**Wirsching [1]**   3/12
**Wise [1]**   20/6
**wish [2]**   101/5 101/10
**withdrawal [3]**   29/2 29/7
84/8
**withdrawals [13]**   17/1 18/5
23/13 29/16 29/21 30/10
30/11 34/7 39/6 74/18 80/20
84/14 85/9
**withdrawing [1]**   80/21
**withdrawn [8]**   9/17 15/16
16/20 17/4 17/9 18/4 23/11
75/16
**withdrew [3]**   33/17 33/21
59/25
**within [2]**   98/15 110/20
**without [5]**   7/6 8/11 47/13
61/17 112/1
**witness [10]**   4/3 5/15 11/5
21/6 22/16 40/3 65/7 68/9
119/9 121/23
**witnesses [2]**   41/7 47/11
**won't [3]**   83/3 110/3 122/21
**Woodford [1]**   106/8
**word [1]**   16/18
**words [5]**   33/7 63/19 95/24
96/21 106/24
**work [3]**   82/20 119/18 121/18
**worked [1]**   80/23
**working [2]**   81/18 120/25
**works [2]**   30/12 81/11
**world [2]**   99/20 119/22
**would [78]**
**wouldn't [1]**   128/25
**wrap [1]**   94/4
**wristwatch [10]**   42/24 42/25
43/2 43/4 43/5 53/15 53/18
53/20 53/22 53/24
**write [3]**   99/16 123/2 123/14
**writing [2]**   122/21 128/23
**written [2]**   16/18 83/13
**wrong [1]**   30/2

**Y**

**yard [3]**   76/21 79/15 88/13
**Ybanez [4]**   119/8 119/10
119/11 119/12
**year [5]**   38/7 40/18 40/24
111/18 118/18
**years [2]**   112/19 121/3
**yellow [2]**   43/16 54/3
**yes [148]**
**yet [3]**   106/1 108/19 109/18
**yield [1]**   80/10
**York [3]**   2/10 2/18 75/22
**you [540]**
**younger [1]**   116/17
**your [181]**
**yourself [3]**   77/24 78/2 96/9
**yourselves [1]**   110/19

**Z**

**zero [1]**   28/16
**Zhadko [17]**   16/3 16/5 16/8
16/9 16/11 22/3 25/7 25/12
26/3 26/6 27/6 73/6 83/11
83/16 87/22 96/21 96/23
**zoom [6]**   23/20 24/7 27/18
35/10 38/19 39/19