TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
    1100/1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/2424/3819
    Facsimile: (213) 894-6269/0141
    E-mail:    Scott.Paetty@usdoj.gov
            Catherine.S.Ahn@usdoj.gov
            Brian.Faerstein@usdoj.gov

JOSEPH BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 320-0539
    Facsimile: (202) 514-0152
            E-mail: Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-579(A)-SVW-(1), (2) |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANTS RICHARD AYVAZYAN'S AND MARIETTA TERABELIAN'S JOINT *EX PARTE* APPLICATION TO COMPEL DISCLOSURE OF DISCOVERY RELATED TO *KASTIGAR* HEARING (ECF 670); EXHIBIT |
| v. | |
| RICHARD AYVAZYAN,<br>  aka "Richard Avazian" and<br>    "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>  aka "Marietta Abelian" and<br>    "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>  aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>  aka "Mike Grigoryan," and | |

```
1          "Anton Kudiumov,"
    ARMAN HAYRAPETYAN,
2   EDVARD PARONYAN,
       aka "Edvard Paronian" and
3          "Edward Paronyan," and
    VAHE DADYAN,
4
    Defendants.
5
```

6        Plaintiff United States of America, by and through its counsel

7   of record, the Acting United States Attorney for the Central District

8   of California, Assistant United States Attorneys Scott Paetty,

9   Catherine S. Ahn, and Brian Faerstein, and Department of Justice

10  Trial Attorney Christopher Fenton, hereby files this opposition to

11  defendants Richard Ayvazyan's and Marietta Terabelian's joint _ex_

12  _parte_ application to compel disclosure of discovery related to

13  _Kastigar_ hearing (ECF 670).

14       This opposition is based upon the attached memorandum of points

15  and authorities, exhibit, the files and records in this case, and

16  such further evidence and argument as the Court may permit.

17  Dated: July 12, 2021          Respectfully submitted,

18                                TRACY L. WILKISON
                                  Acting United States Attorney
19
20                                SCOTT M. GARRINGER
                                  Assistant United States Attorney
                                  Chief, Criminal Division
21

22                                      /s/
                                  _____
23                                SCOTT PAETTY
                                  CATHERINE S. AHN
24                                BRIAN FAERSTEIN
                                  Assistant United States Attorneys
25                                CHRISTOPHER FENTON
                                  Department of Justice Trial Attorney
26

27                                Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA
28

                                    2
```

# **TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................i

TABLE OF AUTHORITIES..............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.    INTRODUCTION.................................................1

II.   ARGUMENT....................................................2

      A.    Defendants' Application Should Be Denied as Moot.........2

      B.    The Court Has Broad Discretion in Conducting the
            Kastigar Analysis and the Court's Order Provides for a
            More Than Sufficient Evidentiary Foundation for its
            Determination...........................................3

      C.    Defendants Are Not Entitled to Discovery Under Brady......5

      D.    Defendants Are Not Entitled to Discovery Under the
            Jencks Act or Other Statutory Authorities.................9

III.  CONCLUSION.................................................12

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

**Federal Cases**

Brady v. Maryland,
    373 U.S. 83 (1963) ...................................... passim

Pennsylvania v. Ritchie,
    480 U.S. 39 (1987) ........................................... 8

United States v. Augenblick,
    393 U.S. 348 (1969) ........................................ 8, 9

United States v. Barton,
    995 F.2d 931 (9th Cir. 1993) .............................. 6, 7

United States v. Crowson,
    828 F.2d 1427 (9th Cir. 1987) ............................. 3, 5

United States v. Danielson,
    325 F.3d 1054 (9th Cir. 2003) ............................... 4

United States v. Dudden,
    65 F.3d 1461 (9th Cir. 1995) ................................ 4

United States v. Griffin,
    659 F.2d 932 (9th Cir. 1981) ................................ 9

United States v. Lucas,
    841 F.3d 796 (9th Cir. 2016) ................................ 8

United States v. Michaels,
    796 F.2d 1112 (9th Cir. 1986) ............................... 8

United States v. Mincoff,
    574 F.3d 1186 (9th Cir. 2009) ............................... 8

United States v. Montoya,
    45 F.3d 1286 (9th Cir. 1995) ........................... 3, 4, 5

United States v. Rogers,
    722 F.2d 557 (9th Cir. 1983) ........................... 3, 4, 5

United States v. Shyne,
    617 F.3d 103 (2d Cir. 2010) ................................. 9

United States v. Soto-Zuniga,
    837 F.3d 992 (9th Cir. 2016) ............................ 11, 12

Weatherford v. Bursey,
    429 U.S. 545 (1977) ......................................... 8

**Federal Statutes**

18 U.S.C. § 3500 ......................................... 9, 10, 12

28 U.S.C. § 2255 ............................................. 10

**Other Authorities**

Federal Rule of Criminal Procedure 12 ...................... 10, 11

Federal Rule of Criminal Procedure 16 .................... 2, 11, 12

Federal Rule of Criminal Procedure 26.2 .................... passim

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On June 28, 2021, in response to a question about *Kastigar*-related discovery from counsel to defendant Richard Ayvazyan, the Court stated, "[t]hat discovery issue will be more apparent if necessary as the matter is briefed, and so we are going to go forward with the schedule."  The Court entered its detailed order regarding the *Kastigar* hearing procedures later the same day.

Notwithstanding the Court's clear directive, defendants Richard Ayvazyan and Marietta Terabelian ("defendants") filed an *ex parte* application on Friday, July 9, 2021, seeking to compel the government's production of discovery by the following Monday -- *i.e.*, today, or the day the government's response to the *ex parte* application would be due.  Defendants' discovery demands, purportedly relating to the *Kastigar* hearing, are wide-ranging, indefinite, and oppressive.  They also are not supported by governing law.

The Court should deny defendants' *ex parte* application for the following reasons.  First, the Court already instructed the parties to follow its order regarding the procedures for the *Kastigar* hearing, including detailed instructions as to the government's required evidentiary submission, and thus defendants' request for discovery is moot.  Second, the Court has broad discretion in its adjudication of defendants' *Kastigar* claim, and the procedures the Court has set forth for the hearing are more than sufficient to provide the Court and the parties a complete record for the *Kastigar* determination.  Third, defendants erroneously seek to rely on *Brady* and its progeny for what amounts to a fishing expedition, which is

1 not the law.  Finally, defendants' claims for discovery under the

2 Jencks Act, Federal Rule of Criminal Procedure 26.2, and Rule 16 are

3 not supported by these statutory bases for discovery.

4      Accordingly, defendants' <u>ex parte</u> application to compel

5 discovery related to the <u>Kastigar</u> hearing should be denied.

6 **II.  ARGUMENT**

7      **A.   Defendants' Application Should Be Denied as Moot**

8      The Court has already addressed defendants' request for

9 discovery in connection with the post-trial <u>Kastigar</u> hearing,

10 directing defendants to the Court's order detailing the procedures

11 for the hearing.

12      Specifically, on June 28, 2021, following the forfeiture

13 proceeding, counsel for defendant Richard Ayvazyan questioned the

14 schedule for the <u>Kastigar</u> hearing, contending, "the biggest part of

15 the [<u>Kastigar</u>] hearing from the survey of cases that we have gone

16 through is going to be the production of discovery that speaks to the

17 issues of non-evidentiary use which is at the heart of the defense's

18 contention."  (Exhibit 1 (Excerpt of 6/28/21 Transcript) at 110:11-

19 15.[1])  The Court responded, "[t]hat discovery issue will be more

20 apparent if necessary as the matter is briefed, and so we are going

21 to go forward with the schedule.  And I am just telling you to, you

22 know, get yourselves prepared, and it is all detailed in an order

23 which I will issue within the hour."  (<u>Id.</u> at 110:16-21.)

24      The Court issued the Order Regarding Post-Trial Kastigar Hearing

25 (the "Order") later the same day.  (ECF 605.)  The Court's Order

26

27      [1] The government is attaching only the relevant page from the
June 28, 2021 transcript reflecting the discussion of the discovery
28 request.  A restricted copy of the full transcript, subject to
redaction, is available at ECF 679.

2

addresses in detail the government's obligations in connection with

the hearing, including the scope, type, and form of information the

government must submit in connection with meeting its burden.  The

government will file its briefing, declarations, and exhibits in

compliance with the Court's order.  Defendants' ex parte request for

discovery thus should be denied as moot.[2]

**B.   The Court Has Broad Discretion in Conducting the Kastigar Analysis and the Court's Order Provides for a More Than Sufficient Evidentiary Foundation for its Determination**

District courts have broad discretion as to whether and how to

conduct a Kastigar evidentiary hearing, including the types of

information the court will consider in adjudicating a Kastigar claim.

The Ninth Circuit has consistently held that the government can meet

its Kastigar burden of demonstrating independent sources for tainted

information through affidavits alone.  See United States v. Montoya,

45 F.3d 1286, 1292 (9th Cir. 1995); see also United States v.

Crowson, 828 F.2d 1427, 1429 (9th Cir. 1987) ("This court has

permitted the government to meet its burden of proof as to the

existence of independent, prior sources through affidavits."); United

States v. Rogers, 722 F.2d 557, 560 (9th Cir. 1983) (finding

defendant's Kastigar claim "untenable" in light of government's

_____

[2] Despite the Court's unequivocal response to defendants' request for discovery during the June 28, 2021 hearing, defendants nevertheless sent the government a letter setting forth an extensive list of discovery demands late in the evening of July 5, 2021 -- even after receiving the Court's detailed and comprehensive Order on June 28, 2021.  (See 670-3.)  The government devoted its time and resources to complying with all aspects of the Court's Order in advance of the July 12, 2021 filing deadline, and has not responded to defendants' letter given the Court's clear instructions to the parties on June 28, 2021.  In any event, defendants are not legally entitled to the information they demand, as discussed further herein.

"exhaustive filing" of "sworn declarations by prosecutors, investigators and witnesses").

The same principles of broad discretion hold true even in the cases relied upon by defendants in their ex parte application regarding the scope of the Kastigar inquiry. (ECF 670 at 3 (citing United States v. Danielson, 325 F.3d 1054 (9th Cir. 2003), and United States v. Dudden, 65 F.3d 1461 (9th Cir. 1995)).)  Indeed, the Ninth Circuit observed in Danielson that "[t]he particular proof that will satisfy the government's 'heavy burden' [under Kastigar] . . . will vary from case to case, and we therefore cannot be specific as to precisely what evidence the government must bring forward."  325 F.3d at 1072 (applying Kastigar in Sixth Amendment context) (internal citation omitted).  In Dudden, the Ninth Circuit similarly noted that where Kastigar is in issue, "a hearing is not required if no factual issues are left to resolve, or if the government meets its burden to show independent sources through the use of affidavits," and the "need for an evidentiary hearing . . . also depends on the circumstances of each case."  65 F.3d at 1469 (citing Montoya, 45 F.3d at 1298).

In setting forth the procedures for the Kastigar hearing in its Order, the Court was and is well within its broad discretion in delineating the type and form of proof to be submitted by the government.  As the Court could appropriately limit (or preclude altogether) confrontation of witnesses at the Kastigar hearing under Ninth Circuit precedent, so too could it limit the scope and method of discovery.  And the Ninth Circuit has repeatedly endorsed the scope of the evidence the government will be marshaling here, including declarations, exhibits, and testimony if necessary, as

1   sufficient in the Kastigar context.  See, e.g., Montoya, 45 F.3d at

2   1290, 1295, 1297-99 (affirming finding of no Kastigar violation based

3   on district court's review of nine declarations from prosecutors and

4   agents and discovery materials submitted by defense, even without

5   defense opportunity to cross-examine government witnesses); Crowson,

6   828 F.2d at 1429 (no Kastigar violation based on affidavits from two

7   AUSAs and one case agent, cross-examination of AUSA and agent, and

8   government's submission of grand jury transcripts in camera and

9   "[a]ll documents establishing prior, independent sources, along with

10  a list of evidence obtained in chronological order"); Rogers, 722

11  F.2d at 560 (no Kastigar violation based on "sworn declarations by

12  prosecutors, investigators and witnesses").

13      None of these cases or the cases defendants cite speak to

14  specific discovery requirements on the part of the government in the

15  Kastigar context.  Defendants are entitled to nothing more -- nor is

16  anything more necessary or warranted -- should the government meet

17  its burden on the forthcoming evidence it will be submitting.[3]

18      **C.   Defendants Are Not Entitled to Discovery Under Brady**

19      Defendants rely on Brady and its progeny in calling for, by the

20  terms of their discovery demand letter, the production of effectively

21  unfettered discovery in advance of the Kastigar hearing.  (ECF 670 at

22  2-4; 670-3.)  Defendants' reliance on Brady is misplaced and

23  unavailing.

24

25  _____

26      [3] The Court's broad discretion in conducting and adjudicating a
    Kastigar hearing also is reflected in the standards applied on
27  appellate review.  The Ninth Circuit reviews a district court's
    finding that the government has established an independent source for
    its evidence for clear error, and reviews a court's denial of a
28  motion for an evidentiary hearing for abuse of discretion.  Montoya,
    45 F.3d at 1291.

1      To be clear, the government is complying in full with the

2 Court's Order.  The government thus will be "identify[ing] all of the

3 information and evidence that the Government accessed from the two

4 phones for which Defendants' passcodes were compelled."  (ECF 605 at

5 2.)  The government will be "explain[ing] when the independent filter

6 team turned over non-privileged material from the phones to the

7 prosecution team and case agents."  (Id.)  The government will be

8 further "explain[ing] how, if at all, it used the information and

9 evidence the Government accessed from the two phones."  (Id.)  And

10 the government will be submitting this information in the form

11 ordered by the Court, that is, through "detailed declarations under

12 penalty of perjury from agents and prosecutors who directed the

13 investigation," referencing "documents and supporting materials" to

14 be "attached as exhibits," and the "fil[ing] in camera and under seal

15 [of] the transcripts for both grand jury proceedings."[4]  (Id.)

16      At the outset of their discussion of Brady in their ex parte

17 application, defendants state that they seek "[e]vidence that

18 prosecutors and other members of the prosecution team viewed and used

19 tainted evidence," which defendants cast as being required under

20 "Brady, Giglio, and their progeny."  (ECF 670 at 2).  To the extent

21 defendants' demands were so limited, the government will be

22 disclosing that specific information in its forthcoming filing, as

23 described above.[5]

24

25      [4] The government also will be filing in camera and under seal
   the internal prosecution memoranda pertaining to both the initial
26 indictment and the superseding indictment.

27      [5] Defendants contend that "Brady and its progeny apply in
   ancillary proceedings such as suppression hearings," citing to United
   States v. Barton, 995 F.2d 931 (9th Cir. 1993).  Notably, Barton held
28 that "the due process principles announced in Brady and its progeny
                                                  (footnote cont'd on next page)

1    But that is not the full extent of defendants' demands.  While

2    defendants broadly describe the principles of Brady as well as

3    ethical obligations under the California Rules of Professional

4    Conduct, they do not further define or specify what they contend

5    constitutes purported "Brady material" in their ex parte application.

6    However, taking defendants' ex parte application and sweeping

7    discovery demand letter together, defendants appear to characterize

8    as Brady material numerous broad and indefinite categories of

9    information.  Among other things, defendants demand "[a]ny

10   presentations, memoranda, or debriefing information provided to the

11   agents executing search warrants," (ECF 670-3 at 2); "[a]ny memoranda

12   or other summaries (whether written or oral) prepared between October

13   19, 2020 and the present that summarize the facts of the case or

14   evidence against the defendants including but not limited to

15   summaries for superiors, summaries for new team members, summaries

16   related to witness meetings, summaries related to subpoena issuance

17   or execution, summaries related to empanelment of a second grand

18   jury, or any other portion of pre-trial or trial strategy," (id. at

19   3); and "[a]ll communications regarding trial strategy or pre-trial

20   strategy involving any of the following AUSAs, agents, team members,

21

22

23   _____

24   must be applied to a suppression hearing involving a challenge to the
     truthfulness of allegations in an affidavit for a search warrant."
25   Id. at 935.  Barton involved a defendant's claim that law enforcement
     purposefully allowed drug evidence to be lost, alleging that the
26   absence of that evidence did not allow defendant to contest a
     warrant.  Putting aside defendants' unsupported assertion here that a
27   Kastigar hearing is a "species" of suppression hearing (discussed
     further below), it is worth noting that Barton did not speak to the
28   specific context of a Kastigar hearing or a defendant's purported
     right to unfettered discovery under Brady in connection with such a
     hearing.

7

1   or <u>any other people exposed to tainted information</u>: [list of names]."

2   (<u>Id.</u> at 4 (emphasis in original).) [6]

3       Defendants articulate no credible basis for how the information

4   requested in their demand letter constitutes "favorable" information

5   that is "material either to guilt or punishment." <u>Brady v. Maryland</u>,

6   373 U.S. 83, 87 (1963). <u>Brady</u> does not "permit a defendant to sift

7   through information held by the government to determine

8   materiality." <u>United States v. Lucas</u>, 841 F.3d 796, 807 (9th Cir.

9   2016) (construing <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 59-60 (1987).

10  Nor does "'mere speculation about materials in the government's

11  files' . . . require the district court to make those materials

12  available, or mandate an <u>in camera</u> inspection." <u>United States v.</u>

13  <u>Mincoff</u>, 574 F.3d 1186, 1200 (9th Cir. 2009) (quoting <u>United States</u>

14  <u>v. Michaels</u>, 796 F.2d 1112, 1116 (9th Cir. 1986)). In short,

15  "[t]here is no general constitutional right to discovery in a

16  criminal case, and Brady did not create one." <u>Weatherford v. Bursey</u>,

17  429 U.S. 545, 559 (1977).

18      Moreover, to the extent defendants seek disclosure of witness

19  statements (discussed further below) under the framework of

20  <u>Brady</u>/<u>Giglio</u>, demands for such information are not of constitutional

21  dimension. See <u>United States v. Augenblick</u>, 393 U.S. 348, 356 (1969)

22  ("Our <u>Jencks</u> decision and the Jencks Act were not cast in

23

24      [6] Akin to a civil discovery letter, defendants also request an
    unlimited scope of types of materials, asserting that the "request
25  for documents or evidence includes, but is not limited to, all
    papers, letters, reports, memoranda, calendar entries, e-mails, text
26  messages, app-based messages (including but not limited to Skype,
    Slack, Signal, WhatsApp, or similar apps), notes, instant messages,
27  other computer facilitated or transmitted materials, images,
    photographs, logs, or recordings, and all copies or portions thereof,
28  and any other written, recorded, or memorialized material." (ECF
    670-3 at 1-2.)

1    constitutional terms."). Following <u>Augenblick</u>, the Ninth Circuit has

2    observed that "in the absence of a showing by defendant under <u>Brady</u>

3    of materiality and content favorable to defendant, the disclosure

4    requirements of <u>Brady</u> cannot apply, since the detailed statutory

5    procedures set forth by Congress in the Jencks Act were the exclusive

6    vehicle by which prior statements of a government witness were to be

7    disclosed." <u>United States v. Griffin</u>, 659 F.2d 932, 939 n.7 (9th

8    Cir. 1981); <u>see also</u> <u>United States v. Shyne</u>, 617 F.3d 103, 108 (2d

9    Cir. 2010) (defendant's "Confrontation Clause and Due Process Clause

10   arguments are unavailing because those clauses do not obligate the

11   government to disclose § 3500 material for its testifying witnesses –

12   – the government's disclosure obligations are compelled by the Jencks

13   Act, not the Constitution").

14       Defendants' discovery demands in the context of this <u>Kastigar</u>

15   hearing, framed under <u>Brady</u> and its progeny, amount to a fishing

16   expedition, and should be denied. In any event, the government will

17   be submitting in its forthcoming <u>Kastigar</u> filing the specific

18   information ordered by the Court, including information about its

19   access to and use of the suppressed information from defendants'

20   cellphones seized in Miami.

21       **D.    Defendants Are Not Entitled to Discovery Under the Jencks**
         **Act or Other Statutory Authorities**

22

23       Defendants additionally contend that the discovery they demand

24   "is also required to be disclosed under both the Jencks Act and

25   Federal Rule of Criminal Procedure 26.2." (ECF 670 at 4.) This is

26   incorrect.

27       Neither the Jencks Act nor Rule 26.2 applies to a <u>Kastigar</u>

28   hearing. By its plain terms, the Jencks Act only requires disclosure

                                    9

1   after a government witness has "testified on direct examination <u>in</u>
2   <u>the trial</u> of the case." 18 U.S.C. § 3500(a) (emphasis added). Rule
3   26.2 expands Jencks discovery outside of trial in only six discrete
4   instances: at a suppression hearing under Rule 12; at a preliminary
5   hearing; at sentencing; at a revocation hearing; at a detention
6   hearing; and at a hearing under 28 U.S.C. § 2255. Fed. R. Crim. P.
7   26.2(g). A <u>Kastigar</u> hearing is none of these. By its terms, Rule
8   26.2(g) does not include all pretrial hearings under Rule 12. To the
9   contrary, by specifically referring to "a <u>suppression</u> hearing under
10  Rule 12," <u>id.</u> (emphasis added), Rule 26.2(g) limits Jencks
11  obligations to hearings dealing with Rule 12(b)(3)(C) motions to
12  suppress. Motions to dismiss the indictment are made under Rule
13  12(b)(3)(A) and/or (B), and do not call for "suppression hearings."

14      Here, defendants' initial motion premised on <u>Kastigar</u> sought an
15  order "(i) to hold a Kastigar hearing to confirm the government has
16  used information directly or indirectly derived from tainted
17  evidence, (ii) to disqualify the prosecution team, and (iii) to
18  dismiss the case . . . ." (ECF 338.) Less than two weeks later,
19  defendants filed a second <u>Kastigar</u> motion, once again seeking an
20  order "(i) to dismiss the original and first superseding indictments
21  . . ., or, in the alternative, (ii) to continue the June 15, 2021
22  trial date . . . ." (ECF 381.) The latter motion specified it was
23  seeking dismissal purportedly pursuant to Federal Rules of Criminal
24  Procedure 12(b)(3)(A) and 12(b)(3)(B). (<u>See</u> <u>id.</u>) These two motions
25  formed the foundation for the Court's ordering of a post-trial
26  <u>Kastigar</u> hearing. (<u>See</u> ECF 356, 478, 605.) Both motions sought
27  dismissal, not suppression, under Rule 12. Thus, defendants are not

28

10

1   entitled to Jencks materials under the enumerated categories of

2   applicable hearings under Rule 26.2(g).

3       Defendants now claim that a "Kastigar hearing is a species of

4   suppression hearing -- it was sought pretrial, and sought to suppress

5   any evidence obtained directly or derivatively from use of

6   Defendants' compelled statements, as well as other relief." (ECF 670

7   at 4.)  Tellingly, defendants cite no authority in support of this

8   unfounded proposition, and the government has not identified any

9   cases where Rule 26.2 has been applied in the context of a Kastigar

10  hearing.  Moreover, none of the numerous cases discussed in section

11  II.B above regarding the evidentiary and procedural scope of Kastigar

12  hearings reflect consideration of the production of Jencks materials,

13  much less hold that the production of witness statements is required

14  in connection with such hearings.  To the contrary, the cases reflect

15  the Court's broad discretion in determining the information the

16  government is required to submit to meet its Kastigar burden.

17      Defendants filed multiple motions to suppress pursuant to Rule

18  12(b)(3)(C) in this case, and those motions have all been

19  adjudicated.  Defendants' attempt at this stage, with no supporting

20  authority, to transform their dispositive motions seeking dismissal

21  into motions to suppress for purposes of the Jencks Act and Rule 26.2

22  should be rejected.

23      Finally, in a footnote, defendants assert in passing that

24  "[t]his discovery would also be required under Rule 16." (ECF 670 at

25  3 n.1.)  Defendants do not further clarify what specific information

26  "[t]his discovery" contemplates nor what specific bases for

27  production they assert under Rule 16.  Defendants only cite to United

28  States v. Soto-Zuniga, 837 F.3d 992 (9th Cir. 2016), which held, in

the specific context of a motion to suppress drug evidence obtained during an immigration checkpoint stop, that the government was required to produce "discovery of the checkpoint's arrest and search statistics" for defendant to assess the primary purpose of the checkpoint. Id. at 995, 1002. This case has no bearing on broad, unfettered discovery requests in connection with a Kastigar hearing.

Moreover, as defendants' discovery demands seek disclosure of work product and what amounts to government witness statements, the discovery of such information is specifically barred under Federal Rule of Criminal Procedure 16(a)(2): "Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. §3500." Fed. R. Crim P. 16(a)(2). For the reasons discussed above, the latter exception for discovery of such information under the Jencks Act (and Rule 26.2) does not apply in the context of this Kastigar hearing.

**III. CONCLUSION**

For the foregoing reasons, defendants' joint ex parte application to compel disclosure of discovery related to the Kastigar hearing should be denied.

12