Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Meghan L. Newcomer (*pro hac vice*)
*mnewcomer@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>RICHARD AYVAZYAN,<br>*et al.,*<br><br>*Defendants*. | Case No.  20-cr-579 (SVW)<br><br>**NOTICE OF MOTION AND MOTION FOR A NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL**<br><br>Hon. Stephen V. Wilson<br><br>Date:   July 26, 2021<br>Time:  10:00 a.m.<br>Ctrm:  10A<br><br>Trial Date:      June 15, 2021 |

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

## NOTICE OF MOTION AND MOTION FOR JUDGMENT OF ACQUITTAL

## TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Monday, July 26, 2021 at 10:00 a.m. or as soon as this counsel may be heard in Courtroom 10A of this Court at 350 W. 1st Street, 10th Floor, Los Angeles, CA 90012, Defendant Richard Ayvazyan ("Ayvazyan"), through undersigned counsel, hereby moves the Court to enter a judgment of acquittal pursuant to Fed. R. Crim. P. 29, and/or a new trial pursuant to Fed. R. Crim. P. 33.

This motion is based on this notice, the accompanying memorandum of points and authorities, any reply that Ayvazyan may make, the trial evidence, and the proceedings in this case.

Dated:   July 12, 2021                    Respectfully submitted,

**STEPTOE & JOHNSON LLP**

*/s/ Ashwin J. Ram*
Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Meghan L. Newcomer (*pro hac vice*)
*mnewcomer@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

# TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT ................................................................1

II.     LEGAL STANDARD ............................................................................2

        A.      Motion for Judgment of Acquittal..............................................2

        B.      Motion for a New Trial ............................................................2

III.    ARGUMENT ......................................................................................3

        A.      A New Trial or Judgment of Acquittal is Required Because the
                Government Did Not Prove a Single, Unitary Conspiracy and
                Scheme as Charged in the Indictment .........................................3

                1.      A New Trial is Required Because the Court Failed to
                        Allow Argument and Proper Jury Instructions on the
                        topic of Multiple Conspiracies and Schemes....................3

                2.      Judgment of Acquittal is Required Under Rule 29
                        Because the Government Failed to Prove a Single,
                        Unitary Conspiracy and Scheme...................................7

        B.      A New Trial is Required Because the Court Allowed Evidence of
                "Reserve Identities" While Simultaneously Excluding Exculpatory
                Evidence Related to Those Identities ...........................................8

        C.      Richard Ayvazyan Is Entitled to a New Trial on Both Aggravated
                Identity Theft Counts.............................................................9

                1.      Count 21: Mark Zindroski...........................................9

                2.      Count 22: Nazar Terabelian .......................................10

                3.      The Court's denial of Ayvazyan's requested changes to
                        the jury instructions for aggravated identity theft require
                        a new trial..............................................................11

        D.      Ayvazyan Is Entitled to an Acquittal, or at Minimum a New Trial,
                Because the Government Did Not Present Sufficient Evidence of
                Venue for Counts 2-12. ........................................................12

                1.      The evidence on venue requires the Court to acquit
                        Ayvazyan................................................................12

                2.      The denial of Ayvazyan's requested verdict form on
                        venue mandates a new trial ........................................15

        E.      A New Trial is Required Because the Government Knowingly
                Allowed A Key Witness to Perjure Himself on the Stand ................15

F.    A New Trial Is Required Because The Court Improperly Allowed the Government's Summary Witnesses to Testify .................................. 17

G.    A New Trial Is Required Because The Court Improperly Instructed the Jury on the Requirements for Money Laundering Under 18 U.S.C. § 1956 ........................................................................... 17

H.    A New Trial Is Required Because the Government Failed to Adduce Sufficient Untainted Evidence for a Jury to Find Ayvazyan Guilty .......... 19

I.    Ayvazyan is Entitled to a Judgment of "No", or at Minimum a New Trial, on the Forfeitures of $451,185 in U.S. Currency and Six Watches ............................................................................... 20

J.    A New Trial is Required Because Ayvazyan was Denied an Impartial Jury ................................................................... 22

K.    Cumulative Error ...................................................... 24

IV.    CONCLUSION ..................................................... 24

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Burks v. United States*,
    437 U.S. 1 (1978)............................................................................2

*City of Long Beach v. Standard Oil of California*,
    46 F.3d 929 (9th Cir. 1995) .....................................................3, 11

*Curley v. United States*,
    160 F.2d 229 (D.C. Cir. 1947) ........................................................2

*Fields v. Woodford*,
    309 F.3d 1095 (9th Cir. 2002) .................................................22, 23

*Honeycutt v. United States*,
    137 S. Ct. 1626 (2017)...................................................................21

*Jackson v. Virginia*,
    443 U.S. 307 (1979)..........................................................................2

*Killian v. Poole*,
    282 F.3d 1204 (9th Cir. 2002) .......................................................24

*Morgan v. Illinois*,
    504 U.S. 719 (1992)........................................................................22

*Napue v. People of State of Ill.*,
    360 U.S. 264 (1959) .......................................................................16

*United States v. A. Lanoy Alston, D.M.D., P.C.*,
    974 F.2d 1206 (9th Cir. 1992) .........................................................3

*United States v. Adamson*,
    291 F.3d 606 (9th Cir. 2002) .........................................................18

*United States v. Agurs*,
    427 U.S. 97 (1976).........................................................................15

*United States v. Ayika*,
    837 F.3d 460 (5th Cir. 2016) .........................................................21

*United States v. Baldwin,*
    607 F.2d 1295 (9th Cir. 1979) ............................................................... 23

*United States v. Berry,*
    627 F.2d 193 (9th Cir.1980) ................................................................... 24

*United States v. Brown,*
    912 F.2d 1040 (9th Cir. 1990) ............................................................. 4, 7

*United States v. Cooper,*
    No. 15-cr-1612018 WL 6573454 (D.D.C. Dec. 13, 2018)....................... 21

*United States v. Dipentino,*
    242 F.3d 1090 (9th Cir. 2001) ............................................................... 18

*United States v. Donato,*
    866 F. Supp. 288 (W.D. Va. 1994) ........................................................ 13

*United States v. Duran,*
    189 F.3d 1071 (9th Cir. 1999) ................................................................. 4

*United States v. Escobar de Bright,*
    742 F.2d 1196 (9th Cir. 1984) ................................................................. 6

*United States v. Fernandez,*
    388 F.3d 1199 (9th Cir. 2004) ................................................................. 4

*United States v. Goldberg,*
    830 F.2d 459 (3d Cir. 1987)................................................................... 13

*United States v. Johnson,*
    297 F.3d 845 (9th Cir. 2002) ................................................................. 12

*United States v. Kellington,*
    217 F.3d 1084 (9th Cir. 2000) ................................................................. 3

*United States v. Lapier,*
    796 F.3d 1090 (9th Cir. 2015) ................................................................. 7

*United States v. Martinez,*
    81 F. Supp. 3d 1046 (D. Colo. 2015)...................................................... 19

*United States v. Mastelotto,*
    717 F.2d 1238 (9th Cir. 1983) ............................................................. 5, 7

iv

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

*United States v. Medina-Gasca*,
　739 F.2d 1451 (9th Cir. 1984) .............................................................. 3, 15

*United States v. Mikell*,
　163 F. Supp. 2d 720 (E.D. Mich. 2001) ................................................... 13

*United States v. Morse*,
　785 F.2d 771 (9th Cir. 1986) ............................................................ 4, 5, 7

*United States v. Murray*,
　752 F. App'x 439 (9th Cir. 2018) ........................................................ 9, 11

*United States v. Necoechea*,
　986 F.2d 1273 (9th Cir. 1993), *as amended on denial of reh'g*
　(Apr. 15, 1993)........................................................................................ 24

*United States v. Nevils*,
　598 F.3d 1158 (9th Cir. 2010) .................................................................. 2

*United States v. Pace*,
　314 F.3d 344 (9th Cir. 2002) ............................................................ 12, 13

*United States v. Palomba*,
　31 F.3d 1456 (9th Cir. 1994) .................................................................. 13

*United States v. Pimentel*,
　654 F.2d 538 (9th Cir. 1981) .................................................................... 3

*United States v. Ramirez*,
　420 F.3d 134 (2d Cir. 2005)..................................................................... 12

*United States v. Ruelas-Arreguin*,
　219 F.3d 1056 (9th Cir. 2000) ................................................................. 12

*United States v. Sotelo-Murillo*,
　887 F.2d 176 (9th Cir. 1989) .................................................................... 6

*United States v. Thomas*,
　586 F.2d 123 (9th Cir. 1978) .................................................................... 7

*United States v. Tisor*,
　96 F.3d 370 (9th Cir. 1996) ...................................................................... 8

*United States v. Voigt*,
　89 F.3d 1050 (3d Cir. 1996)..................................................................... 22

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

*United States v. Wellington*,
  754 F.2d 1457 (9th Cir. 1985) ........................................................ 4

*United States v. Wilkerson*,
  361 F.3d 717 (2d Cir. 2004) ........................................................... 3

*United States v. Williams*,
  878 F.2d 388 (9th Cir. 1989) .......................................................... 9

*United States v. Young*,
  17 F.3d 1201 (9th Cir. 1994) ................................................... 15, 17

**Statutes**

18 U.S.C. § 2(b) ............................................................................ 13

18 U.S.C. § 982(a)(1) ................................................................... 20

18 U.S.C. § 982(a)(2) ................................................................... 20

18 U.S.C. § 1028A(a)(1) ................................................................ 9

18 U.S.C. § 1956 ............................................................... 1, 17, 19

18 U.S.C. § 3237(a) ..................................................................... 13

21 U.S.C. § 853(a)(1) ................................................................... 21

**Other Authorities**

2A Charles Alan Wright, et al., *Federal Prac. & Proc. Crim.* § 462
  (4th ed. 2009) ............................................................................ 2

2A Charles Alan Wright, et al., *Federal Prac. & Proc. Crim.* § 467
  (4th ed. 2009) ............................................................................ 2

Fed. R. Crim. P. 14 ........................................................................ 9

Fed. R. Crim. P. 18 ...................................................................... 12

Fed. R. Crim. P. 29 ...................................................................... 20

Fed. R. Crim. P. 29(a) ................................................. 1, 2, 7, 14, 24

Fed. R. Crim. P. 33 ..................................................... 1, 2, 6, 20, 24

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

Fed. R. Crim. P. 33(a) ................................................................................. 2

Fed. R. Crim. P. 41 ..................................................................................... 8

Justice Manual § 967, *available at*
    https://www.justice.gov/archives/jm/criminal-resource-manual-967-
    venue-wire-fraud ............................................................................. 12, 13

U.S. Const. amend. IV ................................................................................. 8

U.S. Const. amend. VI ...................................................................... 7, 12, 22

U.S. Const. art. III, § 2 ................................................................................ 7

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

## I.   PRELIMINARY STATEMENT

Ayvazyan is entitled to a new trial pursuant to Rule 33 for the reasons set forth below.  The prejudicial harm requiring a new trial included:

- Preventing Ayvazyan from arguing that the evidence showed the existence of multiple conspiracies and schemes and not the single, unitary conspiracy and scheme charged in the indictment;

- Rejecting a multiple conspiracies / theory of the defense jury instruction, in addition to other errors related to the jury;

- Allowing evidence of "reserve identities" while simultaneously excluding exculpatory evidence related to those identities;

- Incorrectly instructing the jury on the requirements of aggravated identity theft;

- Providing the jury with a verdict form that failed to ask the jury to determine whether the government had proved that each charged wire fraud execution occurred in the Central District of California;

- Allowing a verdict to be obtained through knowingly perjured testimony;

- Improperly allowing the government's summary witnesses to testify;

- Improperly instructing the jury on the requirements for money laundering under 18 U.S.C. § 1956;

- The lack of untainted evidence or argument;

- The jury's erroneous forfeiture verdict; and

- The cumulative effect of these errors.

Ayvazyan is also entitled to a judgment of acquittal pursuant to Rule 29.  No rational trier of fact could have concluded based solely on untainted evidence and argument that Ayvazyan was guilty beyond a reasonable doubt of the counts of conviction.

1

## II.    LEGAL STANDARD

### A.    Motion for Judgment of Acquittal

"After the government closes its evidence . . . , the court on the defendant's motion *must* enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a) (emphasis added); *see, e.g.*, *Burks v. United States*, 437 U.S. 1, 10 n.5 (1978) (reaffirming the mandatory nature of this rule); *accord* 2A Charles Alan Wright et al., *Federal Prac. & Proc. Crim.* § 462 (4th ed. 2009) ("Wright & Henning") (same).  Although the court must "look at the evidence in the light most favorable to the government," acquittal is required if the evidence is not sufficient "to convince a [rational] trier of fact beyond a reasonable doubt of the existence of every element of the offense."  *Jackson v. Virginia*, 443 U.S. 307, 316, 319 (1979).  "If 'reasonable' jurors 'must necessarily have a reasonable doubt' as to guilt, the judge 'must require acquittal, because no other result is permissible within the fixed bounds of jury consideration.'"  *Id.* at 318 n.11 (quoting *Curley v. United States*, 160 F.2d 229, 232-33 (D.C. Cir. 1947) (internal quotation marks and alteration marks omitted)); *accord* Wright & Henning § 467 (noting *Curley* formulation states the "proper test" and "is universally accepted by the courts").

This decision requires a two-step analysis: "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010). Second, the reviewing court must determine whether this evidence is adequate to allow a "rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.

### B.    Motion for a New Trial

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "A district court's power to grant a motion

for a new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992). "The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). A motion for a new trial is "directed to the discretion of the district judge," *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981), and should be granted "if the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict." *Lanoy Alston,* 974 F.2d at 1211. Additionally, evidentiary errors may justify a new trial if—considered individually or together—they "substantially affect[ed] the fairness of the trial" and were of "such prejudicial harm as to require a new trial." *United States v. Medina-Gasca*, 739 F.2d 1451, 1454 (9th Cir. 1984).

## III.    ARGUMENT

### A.    A New Trial or Judgment of Acquittal is Required Because the Government Did Not Prove a Single, Unitary Conspiracy and Scheme as Charged in the Indictment

#### 1.    A New Trial is Required Because the Court Failed to Allow Argument and Proper Jury Instructions on the topic of Multiple Conspiracies and Schemes

A new trial is required because the court failed to properly instruct the jury on the issue of multiple conspiracies and schemes. In reviewing instructions for error, the court must ask whether the jury instructions, "taken as a whole, [] misle[d] the jury or state[d] the law incorrectly to the prejudice of the objecting party." *City of Long Beach v. Standard Oil of California*, 46 F.3d 929, 933 (9th Cir. 1995); *see also United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004) ("A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law").

3

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

1   Here, the jury instructions misled the jury by not informing them that, if the

2   government's evidence supported the existence of multiple, separate conspiracies and

3   schemes rather than the single, unitary conspiracy and scheme charged in Counts 1-20

4   of the indictment, they were required to acquit the defendants on all of these counts.

5   The defense was entitled to this instruction because the government failed to adduce

6   sufficient evidence to carry its burden with respect to the elements of each of the above-

7   referenced counts.  The government charged a single, unitary conspiracy and

8   executions of a single, unitary scheme to defraud in the indictment and were required to

9   prove that single conspiracy and scheme beyond a reasonable doubt.  "A single

10  conspiracy can only be demonstrated by proof that an overall agreement existed among

11  the conspirators."  *United States v. Fernandez*, 388 F.3d 1199, 1226 (9th Cir. 2004)

12  (quoting *United States v. Duran*, 189 F.3d 1071, 1080 (9th Cir. 1999)).  To prove a

13  conspiracy, "the evidence must show that each defendant knew, or had reason to know,

14  that his benefits were probably dependent upon the success of the entire operation."  *Id.*

15  If the evidence at trial establishes multiple conspiracies (as it did here), then there is

16  insufficient evidence to support conviction of a single conspiracy and any conviction

17  must be reversed.  *Id.* at 1226-27; *see also United States v. Brown*, 912 F.2d 1040, 1043

18  (9th Cir. 1990) ("the trial court instructed the jury that in order to convict Brown it must

19  find that he was a member of the single conspiracy charged in the indictment.  If he did

20  conspire but not as a member of that conspiracy, a not guilty verdict was required.  This

21  is of no little importance.  It underscores the fact that this is not a case where a trial

22  court permitted a defendant to be convicted of a single overall conspiracy even though

23  only separate conspiracies were shown.").

24  Similarly, the evidence must establish "a single scheme to defraud" in order to

25  convict on the wire and bank fraud counts.  *See United States v. Wellington*, 754 F.2d

26  1457, 1463 & n.3 (9th Cir. 1985); *see also United States v. Morse*, 785 F.2d 771, 776-

27  77 (9th Cir. 1986) ("In a mail fraud case in which a defendant contends that a variance

28  has occurred between the single scheme charged in each count of the indictment and the

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

proof at trial, the jury must be instructed that, to return a guilty verdict, each of the jurors must find the defendant guilty of participation in the same single scheme to defraud alleged in the indictment."); *United States v. Mastelotto*, 717 F.2d 1238 (9th Cir. 1983) (same).

In this case, there are (if anything) multiple conspiracies and schemes lacking a single "overall agreement . . . among the conspirators." The alleged conspirators' success was not dependent upon the success of the entire operation, and—even though the alleged co-conspirators had substantial pre-existing ties unrelated to any charged conspiracy—there is not sufficient conspiratorial interconnectivity and interdependence to permit a factual finding of a single conspiracy or scheme. The evidence adduced at trial supported the existence of at least two (and potentially many more) different conspiracies and corresponding schemes embedded within the charged conspiracy and scheme. First, Manuk Grigoryan was at the center of a set of schemes involving credit card fraud and construction funding fraud that involved the use of synthetic identities of Russian and Ukrainian foreign exchange students, including Iuliia Zhadko, Viktoria Kauichko, and Anton Kudiumov. This conduct pre-dated the existence of PPP loans. Several of Manuk Grigoryan's dedicated group of co-conspirators, including Asya Vostanikyan, Paruyr Hayrapetyan, Hayk Ohanyan, and Edvard Paronyan, further engaged in Employment Development Department (EDD) fraud, and *separately* engaged in PPP loan fraud, *at the same time*, using overlapping synthetic identities and entities. Grigoryan's Canoga Avenue apartment, for example, was found to contain references to Grigoryan's PPP loan fraud companies and synthetic identities, EDD fraud documents, and medical bills for Grigoryan's wife. *See* GX 54.b; DX 59; DX 48.

Second, over the last several years, Tamara Dadyan was at the center of a different set of schemes, and is alleged to involve Grigor Tatoian, Arshak Bartoumian, and Art Martirosyan among others. Dadyan also deployed some of these people to commit PPP loan fraud in 2020. Although Dadyan's group also obtained synthetic identities derived from Russian and Ukrainian foreign exchange students (among other

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

sources) including Iuliia Zhadko, there was no joint venture or sufficient interdependence between the Grigoryan and Dadyan groups to allow the jury to find, beyond a reasonable doubt, the existence of a conspiracy involving all of the defendants charged in the indictment.  Taken together, this evidence of separate, unrelated conspiracies led by Tamara Dadyan and Manuk Grigoryan required that the jury be given a multiple conspiracies and multiple schemes instruction as requested by Ayvazyan.  Because this instruction was not given, at a minimum, a new trial is required.

Ayvazyan is also entitled to a new trial under Rule 33 because he was denied a jury instruction on his theory of the defense:  that the government's evidence demonstrated multiple conspiracies and schemes rather than the single, unitary conspiracy and scheme charged.  Thus, acquittal was required.  The burden to receive such an instruction is minimal—all that is required is "some foundation in the evidence" even if that evidence is "weak, insufficient, inconsistent, or of doubtful credibility."  *United States v. Sotelo-Murillo*, 887 F.2d 176, 179 (9th Cir. 1989) ("A criminal defendant is entitled to a jury instruction on any defense which provides a legal defense to the charge against him and has some foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility. Where a defendant's requested instruction is supported by some evidence, a trial court's failure to give it is reversible error.").  A jury instruction on the defendant's theory of the defense is a right "so basic to a fair trial" that failure to give it is reversible error. *United States v. Escobar de Bright*, 742 F.2d 1196, 1201 (9th Cir. 1984) ("The right to have the jury instructed as to the defendant's theory of the case is one of those rights 'so basic to a fair trial' that failure to instruct where there is evidence to support the instruction can never be considered harmless error.") (citations omitted).

At a minimum, a specific unanimity instruction was required because of the specter of multiple conspiracies and schemes underlying the indictment.  Ayvazyan requested such an instruction.  *See* June 25, 2021 Trial Transcript (AM & PM) at 9:14-

6

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

10:2.  Such an instruction is required where evidence of multiple conspiracies is presented, because there is a "genuine possibility of jury confusion" or a possibility "that a conviction may occur as the result of different jurors concluding that the defendant committed different acts."  *United States v. Lapier*, 796 F.3d 1090, 1096 (9th Cir. 2015) ("Because the evidence in this case tended to show multiple conspiracies instead of the single charged conspiracy, the failure to give a specific unanimity instruction was plain error violating [defendant]'s substantial right to a unanimous jury verdict as granted by Article III, § 2, and the Sixth Amendment of the United States Constitution.").  The same result is appropriate here.

### 2. Judgment of Acquittal is Required Under Rule 29 Because the Government Failed to Prove a Single, Unitary Conspiracy and Scheme

But even if the proper jury instruction was given, judgment of acquittal under Rule 29 is mandated here because the Government has failed to adduce sufficient evidence to support a conviction on any charge, even when the evidence is viewed in the light most favorable to the Government.  Where the government has charged a single, unitary conspiracy and scheme to commit fraud, acquittal is required where the evidence at trial demonstrates two or more conspiracies and schemes.  *See Brown*, 912 F.2d at 1043; *United States v. Thomas*, 586 F.2d 123, 132 (9th Cir. 1978) ("[T]he judge specifically admonished the jury that if "two or more separate conspiracies have been proven, rather than the single conspiracy charged in the indictment, then you must acquit. Whether a scheme is one conspiracy or several conspiracies is ordinarily a question for the jury . . . .  Submitting the question to the jury in this case was proper, since a prima facie case of a single conspiracy was clearly presented."); *Morse*, 785 F.2d at 776-77 ("In a mail fraud case in which a defendant contends that a variance has occurred between the single scheme charged in each count of the indictment and the proof at trial, the jury must be instructed that, to return a guilty verdict, each of the jurors must find the defendant guilty of participation in the same single scheme to defraud alleged in the indictment."); *Mastelotto*, 717 F.2d at  1247.

7

Because no rational trier of fact could find guilt beyond a reasonable doubt on the record before the Court, Ayvazyan is entitled to judgment of acquittal in order to "avoid[] the risk that a jury may capriciously find him guilty though there is no legally sufficient evidence of his guilt." *United States v. Tisor*, 96 F.3d 370, 379 (9th Cir. 1996).

**B.    A New Trial is Required Because the Court Allowed Evidence of "Reserve Identities" While Simultaneously Excluding Exculpatory Evidence Related to Those Identities**

The Court also erred in granting the government's motion to admit evidence of "reserve identities" (Dkt 384) while simultaneously excluding evidence and questions that explained why that evidence actually existed.[1]  The government argued that the "reserve identities" (for example, fake or synthetic drivers licenses that were seized from Tamara Dadyan's residence and admitted into evidence at trial as GX 57.a) were evidence of "the parts for an assembly line to produce fraudulent loan applications" that were relevant to whether the defendants were guilty of the single, unitary conspiracy and scheme charged in Counts 1-20 of the First Superseding Indictment.  *Id.* at 6.  In response to this evidence, the defense attempted to introduce evidence that this "assembly line of fraud" was actually part of a separate mortgage fraud scheme (unrelated to PPP or EIDL applications) operated by Tamara Dadyan.  The existence of this other conspiracy, completely unrelated to the Grigoryan crew, made it more likely that Dadyan operated her own PPP scheme using the same infrastructure from the alleged mortgage fraud scheme.  This is fatal to the single, unitary conspiracy and scheme charged by the government in this case.  Ayvazyan was precluded from

---

[1] A new trial is also required because the Court erred in denying Ayvazyan's motion to suppress credit card evidence seized from him at the Miami Airport (Dkt. 130 & 135), his motion to suppress the fruits of the premises searches (which will also be subject to *Kastigar* analysis at the forthcoming hearing) (Dkt. 147), and his motion to suppress evidence seized from cell phones that were not subject to the responsiveness review required by Federal Rule of Criminal Procedure 41 as well as the Fourth Amendment (Dkt. 363).  To the extent these arguments have not already been preserved, Ayvazyan specifically incorporates and preserves them here.

1    presenting this evidence via the testimony of Detective Lyle Barnes, Dkt. 664 at 1-3,

2    and repeatedly precluded from questioning other witnesses regarding the same.

3    Because Ayvazyan was not permitted to present this relevant and exculpatory evidence

4    to the jury, the interests of justice require a new trial.

5        Further, to the extent such evidence was excluded because it could have

6    prejudiced co-defendant Artur Ayvazyan (Dkt. 664 at 1), severance—not the exclusion

7    of exculpatory evidence—was the appropriate remedy.  Under Rule 14 of the Federal

8    Rules of Criminal Procedure the district court may order a severance when it appears

9    that a defendant may be significantly prejudiced by a joint trial with his codefendants.

10   When one defendant's exculpatory evidence might prejudice another, the remedy is not

11   to deny the first defendant the right to present his defense, but rather to sever the two

12   defendants and conduct their trials separately.  *See United States v. Williams*, 878 F.2d

13   388 (9th Cir. 1989) (both antagonistic defenses and the risk of spillover evidence from

14   another defendant's defense are grounds for severance).  Failure to sever here requires a

15   new trial.

16   **C.    Richard Ayvazyan Is Entitled to a New Trial on Both Aggravated**

17   **Identity Theft Counts**

18        The balance of the evidence on both aggravated identity theft counts weighs

19   heavily against the jury's verdict, entitling Ayvazyan to a new trial.  "A conviction for

20   aggravated identity theft under 18 U.S.C. § 1028A(a)(1) requires that the fraudulent use

21   of another person's identification occur 'during and in relation to' certain predicate

22   felonies."  *United States v. Murray*, 752 F. App'x 439, 441-42 (9th Cir. 2018) (vacating

23   conviction where there was insufficient evidence that defendant's use of his wife's

24   identity occurred "'during and in relation to' the four wire fraud convictions charged as

25   predicate felonies.").  Here, the predicate felonies were bank and wire fraud.

26   **1.    Count 21: Mark Zindroski**

27        There is insufficient evidence to sustain Ayvazyan's conviction on Count 21.

28   The evidence presented by the government at trial showed that Manuk Grigoryan, not

9

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

Ayvazyan, used Mark Zindroski's identity. First, the IP addresses used to access bank accounts and submit loan applications in Zindroski's name were tied to Manuk Grigoryan. Manuk Grigoryan used a variety of IP addresses beginning with 174.193 to access his personal bank account and accounts belonging to Iuliia Zhadko. DX 19. The Mark Zindroski application was submitted from IP address 174.193.145.67. GEX 2.e at 6. A second Top Quality Contracting application was submitted from 174.193.198.70. GEX 6.p. These 174.193 IP addresses all tie back to Manuk Grigoryan. A third Top Quality Contracting application was submitted using the IP address 2605:e000:1701:4cd5:1c51:346e:6c62:efa7, which was registered to Viktoria Kauichko at the Canoga Avenue apartment. GEX 6.q, GEX 73.c.

Second, the movement of money from loans and accounts in Zindroski's name all point to Manuk Grigoryan. The Wells Fargo bank account opened in Top Quality Contracting and Mark Zindroski's name wrote checks to Anna Manukyan, Grigoryan's aunt, (GEX 1.f at 32, 37, 43), and Jobe Construction, one of the construction companies listed on handwritten notes seized from Grigoryan's Canoga Avenue apartment. (GEX 1.f at 50, 55; GEX 54.b). Furthermore, an EDD card in Mark Zindroski's name was mailed to Redline Auto Collision, a company associated with Edvard Paronyan, a member of Grigoryan's crew, and which transferred money to Grigoryan. This evidence "preponderates sufficiently heavily against the verdict" that the Court should order a new trial on Count 21.

### 2.     Count 22: Nazar Terabelian

The weight of the evidence on Count 22, aggravated identity theft of Nazar Terabelian's name, also requires a new trial. The government relied on a Bank of America account statement for Mod Interiors at 15928 Ventura Blvd, on which Ayvazyan was added as a signer back in 2018, as proof that Ayvazyan used Nazar Terabelian's name. GX 90 & GX 19C. But the Mod Interiors bank account opened in Nazar Terabelian's name was a Radius Bank account. Ayvazyan was not a signatory on that account, nor did he have a credit card for that account. The government argued

10

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

that Ayvazyan must have operated the Nazar Terabelian bank account, because gold coins were purchased from funds in the account, and Ayvazyan was found to have gold coins in his home.  But the government met with the owner of Piccadilly Jewelers, the store from which the gold coins were purchased, and failed to adduce any evidence whether the gold coins in Ayvazyan's home were the coins purchased in Nazar Terabelian's name from Piccadilly.  This evidence is insufficient to sustain the verdict against Ayvazyan on Count 22.

### 3. The Court's denial of Ayvazyan's requested changes to the jury instructions for aggravated identity theft require a new trial.

In addition to the lack of evidence, the jury instruction regarding possession was uniquely confusing with regard to the aggravated identity theft counts.  The government presented evidence that a photo of an ID for Nazar Terabelian was found on Ayvazyan's phone.  Given this evidence, Ayvazyan's counsel objected to the jury instruction regarding possession, noting that the possession instruction, when coupled with the aiding and abetting instruction, permitted the jury to find that Ayvazyan aided and abetted or caused aggravated identity theft simply by possessing another person's identifying information.  This incorrect application of the law would permit a guilty verdict on aggravated identity theft for the possession of Nazar Terabelian's driver's license, without any evidence Ayvazyan used the license to commit the specific wire fraud charged in Count 11, a required element of the crime.  *See Murray*, 752 F. App'x 441-42.  The denial of Ayvazyan's requested change to the jury instructions stated the law incorrectly to Ayvazyan's prejudice.  *See City of Long Beach v. Standard Oil of California*, 46 F.3d 929, 933 (9th Cir. 1995).  Accordingly, the failure to grant Ayvazyan's requested change to the jury instruction substantially affected the fairness of the trial and was of such prejudicial harm as to require a new trial on Counts 21 and 22.

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

**D.**     **Ayvazyan Is Entitled to an Acquittal, or at Minimum a New Trial, Because the Government Did Not Present Sufficient Evidence of Venue for Counts 2-12.**

**1.**     **The evidence on venue requires the Court to acquit Ayvazyan.**

The Sixth Amendment guarantees criminal defendants the right to be tried in the state and district in which the crime was committed. U.S. Const. amend. vi; *see also* Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."). When a defendant has been indicted on multiple counts, the government bears the burden of proving by a preponderance that venue is "proper for each count." *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002).[2] Here, even when viewed in the light most favorable to the prosecution, the evidence is inadequate to allow a rational trier of fact to determine that the government proved venue by a preponderance of the evidence.

"[V]enue is properly laid in any of the districts where an essential conduct element of the crime took place." *United States v. Ramirez*, 420 F.3d 134, 145 (2d Cir. 2005) (holding that devising a scheme or artifice to defraud "while an essential element, is not an essential conduct element for purposes of establishing venue" because "a fraudulent scheme is not itself proscribed conduct"). In *Pace*, the Ninth Circuit held that venue is not appropriate any place the defendant "concoct[s] his 'scheme to defraud.'" 314 F.3d at 349. Instead, the prohibited conduct is the use of the wires, and "venue may lie only where there is a direct or causal connection to the misuse of wires." *Id.* at 350. The baseline rule is therefore that venue for wire fraud exists "in an

---

[2] A defendant need only object to venue before trial "'if a defect in venue is clear on the face of the indictment, a defendant's objection must be raised before the government has completed its case.'" *United States v. Johnson*, 297 F.3d 845, 861 (9th Cir. 2002) (quoting *United States v. Ruelas-Arreguin*, 219 F.3d 1056, 1060 (9th Cir. 2000)). "[I]f the venue defect is not evident on the face of the indictment, a defendant may challenge venue in a motion for acquittal at the close of the government's case." *Ruelas-Arreguin*, 219 F.3d at 1060. Here, the indictment's venue allegation invoked the requisite statutory language and was not facially deficient. Dkt. 154 ¶ 37. Ayvazyan raised the venue argument at the close of the government's evidence in his Motion for Judgment of Acquittal, Dkt. 562, and renews that motion here.

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

district in which [the] interstate or foreign transmission was issued or terminated." Justice Manual § 967, *available at* https://www.justice.gov/archives/jm/criminal-resource-manual-967-venue-wire-fraud; *see, e.g.*, *United States v. Donato*, 866 F. Supp. 288 (W.D. Va. 1994) (dismissing wire fraud on venue grounds because "[18 U.S.C. §] 3237(a) does not allow prosecution in any place where a scheme to defraud touches, in the absence of evidence that a defendant caused a mailing or interstate wire communication to be sent through or to be received in the district."); *United States v. Mikell*, 163 F. Supp. 2d 720, 735 (E.D. Mich. 2001) (dismissing wire fraud counts because "Section 3237(a) does not allow prosecution in any place where a scheme to defraud touches, in the absence of evidence that a defendant caused a[n] interstate wire communication to be sent through or to be received in the district.").

At oral argument, the government argued that based on the word "orchestrated" in *Pace*, 314 F.3d at 349, "All we need to demonstrate is that the scheme was … orchestrated from the Central District of California. 6/22/2021 PM Tr. at 53-54. The government overreads *Pace*'s reference to a narrow exception and following its erroneous reading would drastically expand venue for mail and wire fraud. *Pace* took the "orchestrated" word from *United States v. Palomba*, 31 F.3d 1456, 1461 (9th Cir. 1994), which in turn took the word from *United States v. Goldberg*, 830 F.2d 459, 465 (3d Cir. 1987). *Goldberg* creates a carve-out from existing cases in which venue was held improper where "neither the use of the wires nor the transportation of the money charged . . . began, continued or end." 830 F.2d at 465. Specifically, *Goldberg* states that unlike in those cases, the defendant was charged under 18 U.S.C. § 2(b) with "orchestrat[ing]" the use of wires elsewhere by causing innocent persons to unknowingly effectuate his scheme. *Id*. Ayvazyan, however, is not charged under 18 U.S.C. § 2(b), *see* Dkt. 154, or with causing innocent persons to unknowingly effectuate a scheme, so *Goldberg*'s carve-out simply does not apply. Moreover, expanding the *Goldberg* carve-out to places in which the scheme to defraud (rather than the wires themselves) is orchestrated would require rewriting the wire fraud statute to

13

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

make the scheme to defraud the actus reus. The actus reus is the use of the wires and venue must properly focus on the use of the wires.

The evidence adduced at trial, in the form of the interstate wires stipulation, confirmed that only five of the eleven wires even entered California, and the stipulation did not specify what district.

| Count | Wire From | Wire To |
|-------|-----------|---------|
| 2 | Utah | California |
| 3 | New Jersey, Pennsylvania, or Texas | Kansas |
| 4 | Utah | Minnesota |
| 5 | Ohio | California |
| 6 | Utah | California |
| 7 | Utah | Minnesota |
| 8 | Colorado | Missouri, New Jersey, and Colorado |
| 9 | California | Pennsylvania or Texas, and California |
| 10 | Colorado | Missouri, New Jersey, and Massachusetts |
| 11 | Illinois or Virginia | Arkansas, Georgia, and Massachusetts |
| 12 | California | Arizona |

Dkt. 530.

Because the wires were not shown to have been sent from, through, or to the Central District of California, *see* Dkt. 562 at 10-11; Dkt. 530, no rational trier of fact could have convicted Ayvazyan on Counts 2-12.

Even if the Court finds that acquittal under Rule 29 is not proper on the government's deficient proof of venue, the Court should still grant Ayvazyan a new

14

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

trial.  As explained above, the evidence preponderates heavily against the jury's finding that the government proved that each wire transfer was sent from, to or through the Central District of California.  Accordingly, the Court should grant Ayvazyan a new trial with respect to those counts.

### 2. The denial of Ayvazyan's requested verdict form on venue mandates a new trial

The Court should grant Ayvazyan a new trial for the independent reason that the Court denied Ayvazyan's request to use a special verdict form for Counts 2-12.  *See* Dkt. 547 (Ayvazyan's Proposed Verdict Form).  The government failed to prove by a preponderance of the evidence that each wire fraud count occurred in the Central District of California.  *See supra* at 9-10.  Given that failure, Ayvazyan requested that the verdict form include a question regarding whether the government had proven that the wire for each wire transfers originated in or was sent to the Central District of California.  The failure to include that question substantially affected the fairness of the trial by allowing the jury to convict Ayvazyan without finding that each wire transfer actually originated in or was sent to the Central District of California.  That error was of such prejudicial harm so as to require a new trial.  *See United States v. Medina-Gasca*, 739 F.2d 1451, 1454 (9th Cir. 1984).  The Court should grant Ayvazyan a new trial.

### E. A New Trial is Required Because the Government Knowingly Allowed A Key Witness to Perjure Himself on the Stand

Ayvazyan is entitled to a new trial because the prosecution allowed Anthony Farrer to give testimony that it knew to be false, and did nothing to correct that false testimony.  "[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976); *United States v. Young*, 17 F.3d 1201, 1203 (9th Cir. 1994).  "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears. . . .  The principle that a State may not

15

1    knowingly use false evidence, including false testimony, to obtain a tainted conviction,

2    implicit in any concept of ordered liberty, does not cease to apply merely because the

3    false testimony goes only to the credibility of the witness." *Napue v. People of State of*

4    *Ill.*, 360 U.S. 264, 269 (1959).

5        During his direct examination, Farrer stated that he was introduced to Richard

6    Ayvazyan through one of his Instagram followers. On cross-examination, Farrer stated

7    that the Instagram friend who introduced him to Ayvazyan was "Mike from Instagram."

8    6/17 PM Trial Tr. 45:23-46:3.  Farrer was asked whether he had ever sold a watch to

9    Mike from Instagram, and denied doing so.  Specifically, Farrer was asked "Is your

10   testimony that you have never sold watches to Mike from Instagram or Manuk

11   Grigoryan?" and Farrer answered "I have never received any payments or completed a

12   watch deal with him." 6/17 PM Trial Tr. 49:22-25.  This was false.  *See* GX 401.  The

13   government used this false testimony to argue that Ayvazyan was the only person using

14   the phone registered to the synthetic identity Iulia Zhadko.

15       The government unquestionably knew this testimony was false.  Government

16   Exhibit 37.a is a chart of sales made by Gentlemen Timepieces, which shows that

17   Farrer completed three transactions with "Mike from IG", or Mike from Instagram.

18   (Other testimony in the case connected Mike from Instagram to Manuk Grigoryan.)

19   The government had a duty to correct the false statement made by its witness and failed

20   to do so.  That failure became even more egregious when, during the forfeiture hearing,

21   the government introduced evidence that Mike from Instagram bought watches from

22   Farrer.  *See* GX 401.  In fact, one of the summary charts used during the forfeiture

23   hearing included a list of watches purchased from Gentlemen Timepieces, and listed

24   three purchases made by Mike from IG.  *Id.* at 9.  There is no question that the

25   prosecution team knew that Mike from Instagram had purchased watches from Farrer,

26   and that Farrer's testimony to the contrary was false when it was made.

27       The truth from Farrer on this issue would have strengthened Ayvazyan's defense.

28   Evidence that Mike from Instagram (*i.e.*, Grigoryan) also bought watches from Farrer

16

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

1  tends to show that Grigoryan was running his own schemes and operations independent

2  of Ayvazyan.  That evidence is probative of Grigoryan serving as ringleader of one or

3  more fraudulent schemes, which goes to the heart of Ayvazyan's multiple conspiracies

4  defense.  Because Ayvazyan's conviction was obtained in part "by the knowing use of

5  perjured testimony," that had a reasonable likelihood of effecting the judgment of the

6  jury, the Court must set aside the verdict against Ayvazyan and grant him a new trial.

7  *Young*, 17 F.3d at 1203.

8        **F.     A New Trial Is Required Because The Court Improperly Allowed the
9               Government's Summary Witnesses to Testify**

10       A new trial is also required because the Court erred in denying Ayvazyan's

11  motion to exclude the testimony of the government's two summary witness, Marylee

12  Robinson (Dkt. 451) and Timothy Massino (Dkt. 520), and their respective summary

13  charts.  As anticipated, Ms. Robinson's testimony exceeded the scope of a percipient

14  fact witness and was unduly prejudicial because it gave the imprimatur of a purportedly

15  independent certified public accountant to contested issues regarding the flow of funds,

16  which improperly colored the jury's view of the evidence.  Similarly, Agent Massino

17  explained the meaning of self-evident text messages that an ordinary juror could

18  interpret, which was argument elicited through a case agent masquerading as a fact

19  witness.  To the extent these arguments have not already been preserved, Ayvazyan

20  specifically preserves the full arguments set forth in Docket entries 451 and 520 here.

21       **G.     A New Trial Is Required Because The Court Improperly Instructed
22               the Jury on the Requirements for Money Laundering Under 18 U.S.C.
23               § 1956**

24       A new trial is required as to the money laundering conspiracy count (Count 26)

25  because the jury instructions constituted an impermissible constructive amendment.

26  The indictment charged Ayvazyan with conspiracy to commit money laundering under

27  18 U.S.C. § 1956, which requires that the laundered funds come from a "specified

28  unlawful activity."  The indictment alleged that the "specified unlawful activity" was

17

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

the single, unitary conspiracy and scheme (bank and wire fraud) to commit PPP and EIDL fraud charged in Counts 1-20 of the first superseding indictment).  *See* First Superseding Indictment ¶ 53(a) ("specified unlawful activity, that is, wire fraud and bank fraud") and ¶ 52 (re-alleging Paragraphs 1-29 describing the single, unitary conspiracy and scheme alleged in Counts 1-20).  The defense requested that the jury instruction include the clarification that the wire and bank fraud was "as charged in the indictment" to specifically tie the specified unlawful activity to the PPP and EIDL fraud charged in the indictment.  *See* June 23, 2021 PM Tr. at 32:6-14.  The final jury instruction did not include this clarification, and instead instructed the jury that they need only find that the transaction involved "property that represented the proceeds of conspiracy to commit bank fraud and wire fraud" and that "the defendant knew that the property involved in the transaction represented proceeds in some form, though not necessarily which form, of activity that constitutes a felony."  *See.* Dkt. 609 at 36-37.

This amounted to an impermissible constructive amendment[3] of the indictment. The Ninth Circuit has explained that a constructive amendment of an indictment occurs "where (1) there is a complex of facts [presented at trial] distinctly different from those set forth in the charging instrument, or (2) the crime charged [in the indictment] was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved."  *United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002) (citations omitted).  For example, in *United States v. Dipentino*, 242 F.3d 1090, 1094-95 (9th Cir. 2001), the Ninth Circuit found an improper constructive amendment where the indictment charged defendants with allowing scraped asbestos-containing materials to dry out on floor, instead of placing materials, while wet, into leak proof containers, but the jury instructions permitted the

---

[3] Alternatively, this was a fatal variance that also warrants dismissal.  *See United States v. Adamson*, 291 F.3d 606, 615-16 (9th Cir. 2002) (a fatal variance "occurs when the evidence offered at trial proves facts materially different from those alleged in the indictment," leaving the defendant prejudiced by not giving notice of "what he is accused of doing in violation of the criminal law, so that he can prepare his defense.")

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

jury to convict defendants for failing to deposit asbestos as soon as possible (even though this disposal issues was not actually charged in the indictment).

The same is true here – because the jury was not required to find that the "specified unlawful activity" was the wire and bank fraud *as charged in the indictment*, the jury could have found that the funds were derived from the other conspiracies or schemes referenced at trial (for example, fraud having nothing to do with PPP or EIDL committed by either the Tamara Dadyan group or the Manuk Grigoryan group) that were not charged in the indictment. Because the jury was not given an adequate instruction with regards to money laundering under 18 U.S.C. § 1956, a new trial is required.

### H.      A New Trial Is Required Because the Government Failed to Adduce Sufficient Untainted Evidence for a Jury to Find Ayvazyan Guilty

Ayvazyan respectfully renews his motion that the government has failed to adduce sufficient untainted evidence, testimony, and argument such that a reasonable juror—considering only untainted evidence, testimony, and argument—could return a verdict of guilty on any count. *See* Dkt. 338, 381, 562; *see also* Dkt 529. The entire trial team and multiple prosecution witnesses—including Agent Massino and Agent Clark—were tainted by the government's constitutional violations. Because of the complete lack of prophylactic measures and the consequent way in which the taint spread uncontrollably through the government's investigatory and trial team, the government cannot possibly establish that the tainted information did not provide an investigatory lead, shape its questioning of witnesses, or affect any of its other strategic decision. *See United States v. Martinez*, 81 F. Supp. 3d 1046, 1056, 1058 (D. Colo. 2015) (holding that the government failed to establish that "each step of the investigative chain was untainted" because the "unprotected circulation" of tainted information among agents made it impossible to trace how the tainted information was used). The untainted evidence—if any exists—is not sufficient for a reasonable juror to return a guilty verdict, and a judgment of acquittal should be entered.

19

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

1

2

**I.     Ayvazyan is Entitled to a Judgment of "No", or at Minimum a New Trial, on the Forfeitures of $451,185 in U.S. Currency and Six Watches**

3

4     Forfeiture requires tracing the specific property sought for forfeiture to property

5     involved in a money laundering offense, 18 U.S.C. § 982(a)(1), or property that was a

6     proceed of a fraud offense, 18 U.S.C. § 982(a)(2).  The government bears the burden of

7     proof by a preponderance of the evidence.  Here, the government failed to prove that

8     the $451,185 in U.S. Currency seized from various rooms in Ayvazyan's home and

9     yard (Dkt. 645 ¶¶ 6, 22, 38, 54), and six watches (Dkt. 645 ¶¶ 8-13, 24-29, 40-45, 56-

10    61), were traceable to the PPP/EIDL loan funds that were obtained by fraud and

11    laundered.  The jury's verdict of forfeiture rests upon speculation and confusion and is

12    against the weight of the evidence.  The jury's verdict on questions 6, 22, 38, and 54

13    (currency), and questions 8-13, 24-29, 40-45, and 56-61 (watches) should be vacated

14    pursuant to Fed. R. Crim. P. 29 and 33.

15    The government's testimony and argument on the $451,185 broke down into two

16    categories.  First, the government's summary witness testified that cashier's checks

17    formed the basis for the currency found.  GX 401 at 3; 6/28/2021 Tr. at 23.  This

18    argument broke down under even cursory analysis, which proved that the cashier's

19    checks were not withdrawn as cash.  6/28/2021 Tr. at 23-28 (concluding "all five

20    [cashier's checks] were deposited into accounts," not cashed).[4]  Second, the government

21    argued that currency withdrawals by others—particularly Arman Hayrapetyan who

22    never met Ayvazyan or had any reason to gave him currency—could be attributed to

23    _____

      [4] As the Court noted in its pretrial ruling that the government failed to "present[] a sufficient

24    contextual or substantive connection between the bag of cash and the charged offenses," Dkt. 478 at

      15, the government previously claimed that $120,010 in cash withdrawals by Tamara Dadyan but

25    subsequently "d[id] not mention that representation in its briefing and provides no documentary

      evidence to support it."  *Id.*  The government abandoned that claim because the supposed $120,010

26    cash withdrawal was in fact a $120,000 cashier's check purchase that was deposited into Dadyan's

      companies account and allegedly used to purchase Ayvazyan's home.  First Superseding Indictment at

27    14 (Over Act Nos. 14-15); 6/28/2021 Tr. at 28; GX 108 at 28-29.  It could not have been the source of

      the currency seized from Ayvazyan.

28

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

1   Ayvazyan contrary to the letter and spirit of Supreme Court forfeiture law.[5]  This

2   allegation too broke down when it turned out that even including any transaction

3   touching on cash (even "Casino/Gaming" transactions not meeting the definition of

4   "Withdrawals" or "Cash"), there was only $181,302 in traced cash, GX 401 at 5,[6] of

5   which $80,000 was re-deposited, leaving only $101,302 in net withdrawals.

6       The problem is that none of these withdrawals were made by Ayvazyan.  Instead,

7   they were largely made by Arman Hayrapetyan.  The government's witness testified

8   that she did not know what Hayrapetyan did with the money.  6/28/2021 Tr. at 33-34.

9   And the government adduced no evidence that he gave the money to Ayvazyan.

10   Indeed, the evidence at trial made clear that Ayvazyan had no ties to Hayrapetyan, and

11   there was no motive or reason provided for Hayrapetyan to be funneling $101,302 in

12   cash to Ayvazyan.  Finally, no witness testified to ever seeing Hayrapetyan and

13   Ayvazyan in the same place, much less seeing Hayrapetyan delivering such funds to

14   Ayvazyan.  It simply did not happen.

15       Even if the government carried its burden of proof with respect to $101,302,

16   however, it would not have been entitled to forfeiture of all of the currency.  *See United*

17   *States v. Ayika*, 837 F.3d 460, 474, 476 (5th Cir. 2016) (government not entitled

18   forfeiture of account when it traced only 33.55% of the deposits into the account

19   because the tracing requirement is "demanding for establishing forfeiture, particularly

20   as it relates to fungible assets").  The government established, at most, that Hayrapetyan

21   and others withdrew $101,302.  That does not entitle the government to forfeiture of

22   $451,185.  *See United States v. Cooper*, No. 15-cr-1612018 WL 6573454, at *4

23   (D.D.C. Dec. 13, 2018) (rejecting government argument that court could infer that

24

---

25   [5] *See Honeycutt v. United States*, 137 S. Ct. 1626, 1634-35 (2017) (holding based on the "background
26   principles . . . of forfeiture" that forfeiture under 21 U.S.C. § 853(a)(1) is "limited to property the
    defendant himself actually acquired as the result of the crime").

27   [6] Although slide 4 references $17,190 in checks payable to cash, the witness testified that she had not
    traced any of those funds to PPP/EIDL loan funds.  *See* 6/28/2021 Tr. at 28 (testifying that she could
28   not say whether any funds were traceable to PPP/EIDL loan funds).

21
MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

defendant kept all $46,432 he received to buy heroin because "it would be sheer speculation" and could result in defendant forfeiting untainted assets, "which is prohibited by the statute").

Similarly, the government traced at most $82,000 worth of the watches purchased from Gentleman Timepieces (GX 401 at 8) and $9,200 worth of the watch purchased from Chiraag Ltd. DBA Jais (GX 402) to PPP/EIDL loan funds.  That would entitle the government—at most—to forfeiture of the portion of the watches traceable to PPP/EIDL loan funds (one Audemars Piguet and one Rolex).  *See United States v. Voigt*, 89 F.3d 1050, 1087-88 (3d Cir. 1996) (holding that jewelry is not traceable to offense when it is purchased with funds from an account in which "proceeds have been commingled with other funds").  It would require speculation, not reasoned inference, to inflict greater punishment by forfeiting more.

Ayvazyan respectfully requests that the Court hold the government to its burden of proof and enter a judgment of "No" (the equivalent of acquittal) with respect to Questions 6, 22, 38, and 54 as to currency; and Questions 8-13, 24-29, 40-45, and 56-61 as to watches on the Forfeiture Special Verdict Form.  In the alternative, Ayvazyan respectfully requests that the Court vacate that portion of the verdict and hold a re-trial as to those questions.

## J.    A New Trial is Required Because Ayvazyan was Denied an Impartial Jury

Ayvazyan was also denied his Sixth Amendment right to be tried before an impartial jury.  A defendant is denied the right to an impartial jury even if only one juror is biased or prejudiced.  *Fields v. Woodford*, 309 F.3d 1095, 1103 (9th Cir. 2002).  Adequate *voir dire* to identify unqualified jurors is critical to guaranteeing the defendant's right to an impartial jury.  *Morgan v. Illinois*, 504 U.S. 719, 729 (1992) ("*Voir dire* plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored.  Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able

1   impartially to follow the court's instructions and evaluate the evidence cannot be

2   fulfilled.") (citation omitted).

3          Here, the Court-led *voir dire* was inadequate to guarantee Ayvazyan the right to

4   an impartial jury and resulted in prejudice.  In the first instance, the standard used in

5   *voir dire* to determine whether a juror biased towards the government could be fair and

6   impartial was tilted in favor of the government.  For example, a prospective juror who

7   was a retired probation officer responded with an equivocal "I don't think so" when

8   asked if her service as a probation officer would prevent her from being fair and

9   impartial.  June 15, 2021 Trial Transcript at 133:11-15.  After further questioning the

10  Court sat the juror anyway, forcing the defense to use a peremptory challenge because

11  the juror was not struck for cause.  This unnecessary loss of a peremptory challenge is

12  prejudicial to the defense.  *United States v. Baldwin*, 607 F.2d 1295, 1298 (9th Cir.

13  1979).  Similarly, during closing arguments, the jury foreperson listened intently and

14  made eye contact with prosecutors, only to turn away during the entirety of defense

15  counsel's presentation.  The *voir dire* process failed to adduce that (as defense counsel

16  only learned after the verdict) that the foreperson had served in the military, which may

17  have explained the foreperson's pro-government slant.  The foreperson was not

18  questioned regarding government or military service during *voir dire*, and did not

19  disclose this fact when asked the open-ended question "Do you know of any reason that

20  would prevent you from being fair and impartial to both sides?"  June 15, 2021 Trial

21  Transcript at 105:25-106:2.  Ayvazyan was prejudiced when this juror with undisclosed

22  bias was seated on the juror without the chance to either request that the juror be struck

23  for cause or to exercise a peremptory challenge.  *See Fields*, 309 F.3d at 1103 (purpose

24  of *voir dire* is to identify bias to allow the parties to use peremptory challenges

25  effectively).  This prejudice requires a new trial.

26

27

28

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

### K.    Cumulative Error

Even if the Courts finds that no single error is sufficient to grant Ayvazyan a new trial, the cumulative effect of the above described errors and the erroneous pre-trial rulings requires a new trial.  "Even if no single error were prejudicial, where there are several substantial errors, their cumulative effect may nevertheless be so prejudicial as to require reversal." *Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002) (finding cumulative error where the court found three evidentiary errors, including that a government witness perjured himself) (internal citation omitted).  In reviewing for cumulative error, the court must review all errors preserved for appeal and all plain errors.  *United States v. Berry*, 627 F.2d 193, 200 (9th Cir.1980).  "Even if a particular error is cured by an instruction, the court should consider any traces which may remain." *United States v. Necoechea*, 986 F.2d 1273, 1282 (9th Cir. 1993), *as amended on denial of reh'g* (Apr. 15, 1993).  Here, each of the above errors was prejudicial to Ayvazyan.  When taken together, the cumulative effect of these errors is so prejudicial so as to require a new trial.

## IV.    CONCLUSION

For the foregoing reasons, Ayvazyan respectfully requests that the Court either (1) enter a judgment of acquittal pursuant to Rule 29 or (2) grant him a new trial pursuant to Rule 33.


Dated:   July 12, 2021                      Respectfully submitted,

                                            **STEPTOE & JOHNSON LLP**

                                            */s/ Ashwin J. Ram*
                                            Ashwin J. Ram (SBN 227513)
                                            *aram@steptoe.com*
                                            Michael A. Keough (SBN 327037)
                                            *mkeough@steptoe.com*
                                            Meghan L. Newcomer (*pro hac vice*)

MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*mnewcomer@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

25
MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL