Ashwin J. Ram (SBN 227513)
aram@steptoe.com
Michael A. Keough (SBN 327037)
mkeough@steptoe.com
Meghan L. Newcomer (*pro hac vice*)
mnewcomer@steptoe.com
Nicholas P. Silverman (*pro hac vice*)
nsilverman@steptoe.com
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

John L. Littrell (SBN 221601)
jlittrell@bklwlaw.com
Ryan V. Fraser (SBN 272196)
rfraser@bklwlaw.com
**BIENERT KATZMAN LITTRELL WILLIAMS, LLP**
601 W. 5th Street, Suite 720
Los Angeles, CA 90071
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

*Counsel for Defendant Marietta Terabelian*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>RICHARD AYVAZYAN, MARIETTA TERABELIAN, *et al.*,<br><br>*Defendants.* | Case No. 20-cr-579 (SVW)<br><br>**JOINT OPPOSITION TO GOVERNMENT'S EX PARTE MOTION FOR ORDER TO FILE SPECIFIED EXHIBITS ATTACHED TO THE GOVERNMENT'S POST-TRIAL *KASTIGAR* BRIEFING *IN CAMERA***<br><br>Hon. Stephen V. Wilson |

## I. INTRODUCTION

The government's application for an order designating documents for *in camera* review should be denied. Buried in a footnote to its application to file other materials under seal (which the defendants do not oppose), the government asks to file ten exhibits[1] *in camera* without offering any justification. The government's efforts to cloak material evidence in secrecy and force individuals to litigate without access or notice is more reminiscent of the Star Chamber than modern criminal justice.

The Court has previously held that the defendants' statements to law enforcement at the Miami Airport on October 19–20, 2020 were compelled in violation of the Fifth Amendment and that all direct or indirect use of those statements or information derived therefrom violated the Fifth Amendment. As a result, the Court set a post-trial hearing for the government to carry its burden to prove that (a) it made no evidentiary use of that information in obtaining the indictment, the superseding indictment, or the trial conviction, and (b) it made no non-evidentiary use of that information in investigating the case, deciding to prosecute, deciding whether to plea bargain, questioning witnesses, interpreting evidence, and forming pre-trial and trial strategy. *Kastigar* is a "heavy burden," as the government must prove that the tainted information was effectively "obliterated from the prosecutor's mind," and barring such proof, the prosecutor's actions are tainted. *United States v. McDaniel*, 482 F.2d 305, 312 (8th Cir. 1973). The documents withheld are necessary to evaluate the extent of that taint. Filing those documents *in camera* denies the defendants the opportunity to respond to the government's arguments and hold the government to its burden. That is the opposite of due process. The government's application to file documents *in camera* should accordingly be denied.

---

[1] Exhibits 1, 1.a, 2, 15, 16.a-16.b, 32, 33.a-33.b, and 34 attached to the Declaration of Christopher Fenton filed with the government's post-trial *Kastigar* submission.

## II. ARGUMENT

### A. The Government Cannot Overcome the Presumption Against *In Camera* Filings

*In camera* review is generally disfavored, *K.C.R. v. Cty. of Los Angeles*, No. CV 13-3806 PSG (SSX), 2014 WL 12725470, at *9 (C.D. Cal. Aug. 6, 2014), and the party seeking *in camera* review must make a specific showing as to why *in camera* review is necessary. *Id.* The government here made no such attempt.

*In camera* filings by the government in criminal cases are particularly problematic because they deny the defendant the opportunity to advocate for himself or herself in our inherently adversarial system. As the Ninth Circuit has observed:

> The right of a criminal defendant to an adversary proceeding is fundamental to our system of justice. Our system is grounded on the notion that truth will most likely be served if the decisionmaker—judge or jury—has the benefit of forceful argument by both sides. Inquisitorial proceedings, where the judge takes an active role in ferreting out the truth, may be the rule elsewhere in the world, but they are decidedly alien to our way of thinking . . . . [S]ituations where the court acts with the benefit of only one side's presentation are uneasy compromises with some overriding necessity, such as the need to act quickly or to keep sensitive information from the opposing party. Absent such compelling justification, ex parte proceedings are anathema in our system of justice and, in the context of a criminal trial, may amount to a denial of due process.

*United States v. Thompson*, 827 F.2d 1254, 1258-59 (9th Cir. 1987) (internal citations omitted); *see also United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995) ("Ex parte communications generally are disfavored because they conflict with a fundamental precept of our system of justice: a fair hearing requires a reasonable opportunity to know the claims of the opposing party and to meet them."); *In re Taylor*, 567 F.2d 1183, 1188 (2d Cir. 1977) ("Whenever the legal rights of individuals are to be adjudicated, the presumption is against the use of secret proceedings"); *Joint Anti-*

*Fascist Refugee Comm'n v. McGrath*, 341 U.S. 123, 171 (1951) (Frankfurter, J., concurring) ("Secrecy is not congenial to truth-seeking."). By filing key documents *in camera* for an issue on which the government bears the burden of proof, a defendant is both denied access to the evidence offered against him or her, and cannot use that evidence to test the veracity of the government's statements. Neither result comports with due process.

### B. No Fair Hearing Can Be Conducted Without Access to the *In Camera* Materials

Even the bare-bones descriptions provided in the Fenton Declaration indicate that the materials filed *in camera* should be provided to the defense. For example, Exhibits 1 and 1.a to the Fenton Declaration (which the defense has not seen) purport to be an email "attaching the leads [Fenton] was asked to investigate" and an email containing "additional information about the original subjects as well as information about additional subjects." *See* Fenton Decl. at ¶ 2 & n.2. The ultimate object of the *Kastigar* hearing is to determine whether tainted information was improperly used for non-evidentiary purposes, such as which leads and lines of investigation to pursue. Understanding the government's theory of the case *before* it reviewed the tainted evidence is critical if the defendants are to cross-examine the government's witnesses on how its investigation tactics and theory of the case changed *after* it reviewed the tainted evidence. Similarly, Exhibit 2 purports to contain a "log showing every request for information served in connection with the investigation." *See* Fenton Decl. n.3. Without this information, the defense has no way to determine which requests were made before the tainted evidence was received and spread through the prosecution team, and which of these tainted requests led to evidence that was used at trial or was used for impermissible non-evidentiary purposes.

The prosecution memorandum and grand jury transcripts (Exhibits 15, 16.a, 16.b, and 32) go to the very heart of the *Kastigar* issue and cannot be litigated unless they are shared with the defense. Prosecutors and case agents will be cross-examined at the

upcoming hearing, and these same case agents and prosecutors either (1) testified before the grand jury or (2) made decisions about what evidence to present to the grand jury, as reflected in the questions asked and statements made during those proceedings. Using prior testimony and statements to challenge a witness is the bedrock of cross-examination. *See Chambers v. Mississippi*, 410 U.S. 284, 295, 93 (1973) (right to challenge a witness through cross-examination is "implicit in the constitutional right of confrontation, and helps assure the accuracy of the truth-determining process"). This information is even more critical given that a government witness has already given sworn testimony indicating that tainted evidence formed the basis on their entire theory of the case: that Iuliia Zhadko was an avatar or alias on Richard Ayvazyan, and that Viktoria Kauichko was an avatar or alias of Mary Terabelian. *See* Oct. 22, 2020 Hr'g Tr. at 23-24 (Dkt. 310-6) (Agent Palmerton: "And then, once the CBP stopped for the secondary inspection, we learned that there was a photograph of Iuliia Zhadko on the digital device and we made the connection that Iuliia Zhadko was, in fact, an alias of Richard Ayvazyan."); *see also* Compl. Palmerton Aff. ¶ 41 (Dkt. 1) ("CBP also conducted a manual search of Terabelian's cellphone for digital contraband and discovered text messages in which Terabelian appeared to be using the identity of 'Viktoria Kauichko' to communicate with others."). Given that the government already has a history of using tainted evidence in sworn testimony and other statements, no fair hearing can proceed if the government is allowed to make conclusory statements about the content of its prosecution memoranda and grand jury transcripts without offering the defense any opportunity to probe the veracity of those statements at all.[2]

    The "discovery quality check" charts (Exhibits 33.a and 33.b) should also be provided to the defense. According to the Fenton Declaration, these charts were created in part so that tainted evidence "could be utilized at trial . . . in the event it was not suppressed." *See* Fenton Decl. ¶ 57. Based on this description, the document

---

[2] For these reasons, the Court should also reconsider that part of its order allowing the government to file grand jury transcripts under seal and *in camera*. *See* Dkt. 605.

appears to contain the government's assessment of how the tainted evidence supported its theories and arguments advanced at trial. Even if the tainted evidence was not introduced at trial, the government's own assessment of how the tainted evidence could be used at trial is relevant to non-evidentiary uses. Under *Kastigar*, the government's decision to follow certain leads and make certain charging decisions based on tainted evidence, only to later go back and find untainted evidence to support those theories at trial, is still impermissible. *See United States v. Dudden*, 65 F.3d 1461, 1467 (9th Cir. 1995) ("The government may not use the statements to uncover other incriminating evidence, focus the investigation, decide to initiate prosecution, **interpret other evidence, or otherwise plan trial strategy.**") (emphasis added). The defense is thus entitled to cross-examine government witnesses on the contents of this document.

Finally, Exhibit 34 is purportedly a "trial exhibit log" where the government lists whether trial evidence was obtained before or after the Miami airport stop. *See* Fenton Decl. ¶ 60. The government concludes based on this exhibit that its trial exhibits can be traced to requests that were grounded in information not contained on the phones seized in Miami. But understanding what source the prosecutors claim their trial evidence came from—as well as whether any of those sources were involved in tainted non-evidentiary uses— is necessary to cross-examine those same prosecutors at the upcoming hearing. The truth-seeking function of the *Kastigar* hearing outweighs any work product or other protection that the government claims may apply here.

At bottom, the defense is being asked to cross-examine the government's witnesses at the July 26 hearing without the information and documents most relevant to that cross-examination. This eviscerates the truth-seeking power of cross-examination and is grossly unfair to the defendants. The Court should not allow it.

### C. The Government's Games Further Demonstrate the Need for Discovery Ahead of the *Kastigar* Hearing

The government's attempt to meet its burden by hiding the ball from the defense further supports the need for discovery from the government prior to the July 26

hearing. As set forth in Richard Ayvazyan And Marietta Terabelian's Joint Application to Compel Government Disclosure of Discovery Related to *Kastigar* Hearing (Dkt. 670), the requested discovery is necessary to conduct a complete *Kastigar* hearing. Without such discovery, the defense has no way to probe, and the Court no way to determine, the veracity of the government's claims regarding its use or lack of use of information derived from Defendants' compelled statements. Unless this discovery is produced in time for effective use at the impending hearing, that hearing will lack meaningful adversarial testing by the defense. Accordingly, the defendants' application for discovery should be granted.

### III.   CONCLUSION

The government's motion to file exhibits *in camera* should be denied, and the Court should require the government to provide copies of these materials to the defense.

Dated:   July 13, 2021          Respectfully submitted,

/s/ *Ashwin J. Ram*
Ashwin J. Ram (SBN 227513)
*aram@steptoe.com*
Michael A. Keough (SBN 327037)
*mkeough@steptoe.com*
Meghan L. Newcomer (*pro hac vice*)
*mnewcomer@steptoe.com*
Nicholas P. Silverman (*pro hac vice*)
*nsilverman@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Counsel for Defendant Richard Ayvazyan*

/s/ *John L. Littrell*
John L. Littrell (SBN 221601)
*jlittrell@bklwlaw.com*
Ryan V. Fraser (SBN 272196)

1 | *rfraser@bklwlaw.com*
2 | **BIENERT KATZMAN LITTRELL WILLIAMS, LLP**
3 | 601 W. 5th Street, Suite 720
4 | Los Angeles, CA 90071
   | Telephone: (213) 528-3400
5 | Facsimile: (949) 369-3701
6 | *Counsel for Defendant Marietta Terabelian*

**SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(i), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.