TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
    1100/1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/2424/3819
    Facsimile: (213) 894-6269/0141
    E-mail:   Scott.Paetty@usdoj.gov
               Catherine.S.Ahn@usdoj.gov
               Brian.Faerstein@usdoj.gov

JOSEPH BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 320-0539
    Facsimile: (202) 514-0152
    E-mail:   Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-579(A)-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER TO: (1) DISMISS DEFENDANTS RICHARD AYVAZYAN'S AND MARIETTA TERABELIAN'S *KASTIGAR* CLAIMS BASED ON ARGUMENTS MADE AND EVIDENCE ELICITED AT TRIAL AND (2) VACATE THE *KASTIGAR* HEARING |
| v. | |
| RICHARD AYVAZYAN,<br>  aka "Richard Avazian" and<br>    "Iuliia Zhadko," and<br>MARIETTA TERABELIAN,<br>  aka "Marietta Abelian" and<br>    "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>  aka "Arthur Ayvazyan,"<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>  aka "Mike Grigoryan," and<br>    "Anton Kudiumov," | |

i

ARMAN HAYRAPETYAN,
EDVARD PARONYAN,
   aka "Edvard Paronian" and
   "Edward Paronyan," and
VAHE DADYAN,

Defendants.

        Defendants.

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, Assistant United States Attorneys Scott Paetty, Catherine Ahn, and Brian Faerstein, and Department of Justice Trial Attorney Christopher Fenton, hereby files the government's reply in support of its motion (ECF 663) seeking an order by this Court that: (1) finds that defendants Richard Ayvazyan and Marietta Terabelian each waived their Kastigar claims based on the arguments defendants made and the evidence defendants elicited at trial, and (2) based on that waiver, dismisses defendants' Kastigar claims and vacates the hearing now scheduled for July 28, 2021.

//
//
//
//
//
//
//
//
//
//

This reply is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 15, 2021    Respectfully submitted,

            TRACY L. WILKISON
            Acting United States Attorney

            SCOTT M. GARRINGER
            Assistant United States Attorney
            Chief, Criminal Division

               /s/
            CATHERINE AHN
            SCOTT PAETTY
            BRIAN FAERSTEIN
            Assistant United States Attorneys
            CHRISTOPHER FENTON
            Department of Justice Trial Attorney

            Attorneys for Plaintiff
            UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendants do not have a constitutional right to abuse the Court's suppression order to affirmatively mislead the jury about immutable facts.  That is precisely what defendants did here.  Defendants made the false claim that certain specific evidence did not exist when defendants knew, in fact, such evidence did exist.  Defendants, however, did so with impunity because the government could not correct the record without putting before the jury suppressed evidence, which the government would not do.

Defendant Richard Ayvazyan similarly abused the Court's order granting the government's motion to redact the trial indictment to omit reference to the number of fraudulently obtained loans – 151 - which defendants claimed was based on possibly tainted evidence.  Rather than respect the Court's order granting the government motion to redact the trial indictment, which gave further effect to the Court's suppression order by redacting information that defendants claimed was possibly tainted, defendant Richard Ayvazyan deliberately referenced the 151 loans throughout the proceedings.

Defendants do not seriously dispute whether they made the arguments or elicited the evidence contained in the transcripts cited by the government, nor that they misrepresented the government's actual investigation by relying on gaps created through this Court's suppression order.  Instead, they argue – without any direct caselaw to support it – that they should be permitted to use the shield of the Fifth Amendment to make those misrepresentations without consequence.  For these reasons, the Court should issue an order finding that defendants waived their Kastigar claims, dismiss

defendants' Kastigar claims, and vacate the Kastigar hearing now scheduled for July 28, 2021.

**II. ARGUMENT**

    **A. Supreme Court and Ninth Circuit Caselaw Does Not Validate Defendants' Abuse of the Court's Suppression Order to Mislead the Jury About Immutable Facts**

Defendants appear to misunderstand the basis for the government's motion, as well as the basis for the relief the government seeks. The government does not argue that defendants, as a general matter, cannot raise the "shoddy investigation" defense. Rather, consistent with caselaw, the government objects to defendants' reliance on the Court's suppression order to specifically misrepresent to the jury that the suppressed evidence did not exist when, in reality, it did.

For example, counsel for defendant Marietta Terabelian asserted in opening statement, as purported fact, that: "You don't see evidence of activity like that" – referencing the "handling, running, and administering [of] the Viktoria Kauichko identity" – "by Ms. Terabelian." (06/15/21 P.M. Tr. at 194:01-04.) However, as counsel well knew, in reality, there was specific evidence of Ms. Terabelian handling the Viktoria Kauichko identity in one of the suppressed phones seized in Miami.

Similarly, counsel for defendant Richard Ayvazyan asserted in opening statement that: "The government is going to present to you a tiny sliver of those text messages in which Tammy refers to the person on the other end of the phone as Rich. Based on that tiny sliver of text messages at the beginning of their investigation, the evidence will show that the government assumed that Zhadko was Rich and did not investigate further." (06/15/21 P.M. Tr. at 161:18-24.)

2

However, as counsel well knew, in reality, the government had, in fact, taken other investigative steps to establish that the "Iuliia Zhadko" phone was used by defendant Richard Ayvazyan earlier in the investigation, including when the government seized the "Iuliia Zhadko" phone from defendant Richard Ayvazyan in Miami.

In their opposition, defendants argue that the Ninth Circuit's holding in <u>United States v. Helina</u>, 549 F.2d 713 (9th Cir. 1977) should not apply because "defense counsel in this case asked questions and made argument about the admissible evidence that the government did have and did not direct the jury's attention to evidence unavailable to the government by virtue of the Fifth Amendment." Opp. (ECF 669) at 18-19. The above examples show defendants' argument is simply incorrect.

In addition, defendant's repeated references to the number of fraudulently obtained loans – 151 – which had been redacted from the trial indictment similarly reveals the inaccuracy of this post-hoc characterization. Defendant's own pre-trial submissions argued that the government's reference to "at least 151 loans" in its superseding indictment was based on purportedly "tainted evidence." (ECF 426 at 5-6.) Yet, after the Court granted the government's motion to redact that allegation from the trial indictment, counsel for Richard Ayvazyan began opening statement with a reference to the number of loans – 151 - and repeatedly elicited testimony, over the government's initial objection, regarding the government's purported failure to offer evidence of all 151 loans (even though, as the Court agreed, the government was not required to offer proof with respect to the 151 loans to satisfy the elements of the crimes charged in the first superseding indictment (ECF 478 at 22)). (<u>See</u>,

e.g., 06/21/21 P.M. Tr. at 111:18-24, 112:4-14 (cross examination of Special Agent Massino) and 06/22/21 A.M. Tr. at 78:12-79:06 (cross examination of Special Agent Clark).) If defendant's argument was that the number of loans – 151 - was based on suppressed evidence, then "he cannot be heard now to complain of discussion of a subject that he introduced into the proceedings." Helina, 549 F.2d at 719.

Defendant's reliance on the Fifth Circuit's holding in United States v. Green, 272 F.3d 748 (5th Cir. 2001), is similarly unavailing. The nature of arguments and evidence at issue, which focus on the failures of the government's investigation, are far more analogous to the nature of the arguments and evidence discussed by the Ninth Circuit in Helina. There, the Court took issue with the fact defense counsel misled the jury: "defense counsel, at best, sought to discredit the Government's case by suggesting to the jury that the Government had failed to document its case and, at worst, was intimating to the jury that Helina had fully cooperated with the Government's agents." Helina, 549 F.2d at 719. The Ninth Circuit's holding in United States v. Sine, 493 F.3d 1021 (9th Cir. 2007), on which defendants misplace their reliance, similarly supports the government's position that defendants are not permitted to rely on constitutional rights to create a "false impression." Id. (internal quotations and citations omitted, emphasis in original).

The concept that a defendant's right to present a defense does not encompass the right to present any defense without consequence is not subject to serious dispute. Not only do the Federal Rules of Evidence themselves limit the evidence any party may present, courts maintain broad discretion to regulate the admission of evidence during trial ultimately grounded in principles of fairness. (See,

4

e.g., 06/21/21 P.M. Tr. at 104:07-10 (Court's warning to defense counsel that his question would open the door to the government eliciting similar evidence from the witness).)  This is because, as the government illustrated in its opening brief, the integrity of the fact-finding process must be preserved, even when Constitutional rights are implicated.  (See Gov't. Mot. (ECF 663) at 15 (citing numerous cases).)

Although exceptions to this protection of the jury's role as fact-finder have been made, see New Jersey v. Portash, 440 U.S. 450 (1979) (holding government cannot use immunized statements against defendant for purposes of impeachment), the government is not aware of any case that extends the holding of Portash to all evidence relating to the Fifth Amendment, particularly given the repeatedly asserted importance of preserving the integrity of the fact-finding process by disallowing the use of suppressed or protected evidence as both sword and shield at trial.

In fact, the Supreme Court has held that the permissible use of otherwise inadmissible evidence depends on the nature of the constitutional guarantee at issue. Kansas v. Ventris, 556 U.S. 586, 590 (2009).  The Supreme Court explained in Ventris that when suppression of evidence is predicated on pre-trial police misconduct, regardless of whether the basis was a Fourth, Fifth, or Sixth Amendment violation, the Supreme Court has applied the exclusionary rule's balancing test instead of the automatic bar contemplated in Portash.  Id. at 590-591.  Portash is further distinguishable in that the suppressed evidence at issue in the

Kastigar proceeding here are not the statements themselves[1] but rather, the fruits of those statements.  The government is not aware of authority asserting that the bright line created by the Supreme Court in Portash should be extended beyond the scope of its holding to cover nuanced issues such as those described above and at issue here -- particularly given the importance of preserving the integrity of the trial process.  See Ventris, 556 U.S. at 593 ("The interests safeguarded by such exclusion are 'outweighed by the need to prevent perjury and to assure the integrity of the trial process'" (citing Stone v. Powell, 428 U.S. 465, 488 (1976) and United States v. Walder, 347 U.S. 62, 65 (1954) ("It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained.  It is quite another to say that the defendant can . . . provide himself with a shield against contradiction of his untruths.")).

### B. A Written Waiver Is Not Required

A written waiver by a defendant would, of course, constitute waiver of his or her Fifth Amendment privileges.  This is precisely what happens when the government offers use immunity to an individual in exchange for otherwise protected testimony from that individual.  However, the intentionality analysis contemplated in Klein v. Harris, 667 F.2d 274, 287 (5th Cir. 1981), does not preclude other forms of knowing and intelligent waiver.

Moreover, the "sword and shield" line of cases are predicated on defendants' incorrect assumptions that they could, in fact, use

---

[1] The government maintains that the provision of passcodes are not "testimonial" for purposes of the Fifth Amendment or Kastigar (ECF 344 at 7-10) but acknowledges this Court's ruling.  (ECF 365 and 605.)

6

the inadmissible evidence as both sword and shield.  The fact that defendants argued, before trial, that the exact evidence whose suppression they relied on during trial was purportedly tainted shows that their use of these arguments and evidence was knowing and intelligent, even if counsel did not specifically intend to waive.

**III. Conclusion**

For the reasons stated above and in the government's motion, the government respectfully requests the Court issue an order finding that defendants waived their Kastigar claims, dismiss defendants' Kastigar claims, and vacate the Kastigar hearing now scheduled for July 28, 2021.

7