TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
    1100/1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/2424/3819
    Facsimile: (213) 894-6269/0141
    E-mail:    Scott.Paetty@usdoj.gov
                Catherine.S.Ahn@usdoj.gov
                Brian.Faerstein@usdoj.gov

JOSEPH BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 320-0539
    Facsimile: (202) 514-0152
    E-mail:    Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD AYVAZYAN,<br>  aka "Richard Avazian" and<br>    "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>  aka "Marietta Abelian" and<br>    "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>  aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>  aka "Mike Grigoryan," and<br>    "Anton Kudiumov,"<br>ARMAN HAYRAPETYAN,<br>EDVARD PARONYAN,<br>  aka "Edvard Paronian" and<br>    "Edward Paronyan," and<br>VAHE DADYAN, | No. CR 20-579(A)-SVW<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT RICHARD AYVAZYAN'S MOTION FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL (ECF 683) |

| | |
|---|---|
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, Assistant United States Attorneys Scott Paetty, Catherine S. Ahn, and Brian Faerstein, and Department of Justice Trial Attorney Christopher Fenton, hereby files its opposition to defendant Richard Ayvazyan's motion for a new trial and/or judgment of acquittal, which defendants Marietta Terabelian and Artur Ayvazyan have joined (ECF 683, 688, 691).[1]  This opposition is based upon the attached memorandum of points and authorities, the testimony and exhibits admitted at trial, the stipulations of fact entered into between the parties during trial, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 22, 2021             Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


                                 /s/
                        _____
                        SCOTT PAETTY
                        CATHERINE AHN
                        BRIAN FAERSTEIN
                        Assistant United States Attorneys
                        CHRISTOPHER FENTON
                        Department of Justice Trial Attorney

                        Attorneys for Plaintiff
                        UNITED STATES OF AMERICA

---

[1] Defendant Artur Ayvazyan also filed his own motions for judgment of acquittal and new trial, (ECF 686, 687), to which the government will be responding separately.

# TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

TABLE OF CONTENTS.......................................................i

TABLE OF AUTHORITIES.................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   RELEVANT LEGAL STANDARDS.......................................1

      A.   Federal Rule of Criminal Procedure 29....................1

      B.   Federal Rule of Criminal Procedure 33....................1

III. ARGUMENT.........................................................2

      A.   The Government Proved the Fraud Conspiracy and Schemes....2

           1.   The Government's Evidence Was Overwhelming..........2

           2.   The Court Correctly Denied Defendant's Requested
                Multiple-Conspiracies and Schemes Jury
                Instructions.......................................3

      B.   The Court's Admission of "Reserve Identities" Evidence
           and Exclusion of the State Case Does Not Warrant a New
           Trial......................................................6

      C.   Defendant is Not Entitled to a New Trial on the
           Aggravated Identity Theft Counts..........................8

           1.   The Evidence Does Not Preponderate Heavily
                Against the Aggravated Identity Theft Verdicts.......8

                a.   Count 21 – Mark Zindroski.......................8

                b.   Count 22 – Nazar Terabelian....................9

           2.   The Aggravated Identity Theft Instructions Were
                Correct...........................................10

      D.   The Government Proved Venue of the Wire Fraud Counts
           by at Least a Preponderance of the Evidence..............12

           1.   The Government's Evidence of Venue Was Sufficient...12

           2.   The Court's Denial of Defendant's Proposed
                Special Verdict Form Does Not Warrant a New Trial...15

      E.   Witness Anthony Farrer Did Not Perjure Himself..........16

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                          PAGE

     F.    The Court Correctly Denied Defendant's Motions to
          Exclude the Government's Summary Witnesses...............19

     G.    The Court's Jury Instructions Regarding the Money
          Laundering Conspiracy Count Were Proper.................19

     H.    The Government Adduced Sufficient Untainted Evidence
          on All Counts of Conviction............................22

     I.    The Government Proved Forfeitability of the $451,185
          in U.S. Currency and Six Watches by at Least a
          Preponderance of the Evidence..........................22

     J.    Defendant Was Not Denied an Impartial Jury.............24

     K.    There Was No Cumulative Error Warranting a New Trial.....25

IV.   CONCLUSION.................................................25

1

**TABLE OF AUTHORITIES**

2   DESCRIPTION                                                    PAGE

3   **Cases**

4   Jackson v. Virginia,

5     443 U.S. 307 (1979) ........................................... 1, 14

6   Killian v. Poole,

7     282 F.3d 1204 (9th Cir. 2002) ................................... 25

8   Sprint/United Management Co. v. Mendelsohn,

9     552 U.S. 379 (2008) .............................................. 7

10  United States v. 1982 Yukon Delta Houseboat,

11    774 F.2d 1432 (9th Cir. 1985) ................................... 22

12  United States v. Barragan,

13    871 F.3d 689 (9th Cir. 2017) ..................................... 4

14  United States v. Childs,

15    5 F.3d 1328 (9th Cir. 1993) ..................................... 13

16  United States v. de Cruz,

17    82 F.3d 856 (9th Cir. 1996) ..................................... 25

18  United States v. Fernandez,

19    388 F.3d 1199 (9th Cir. 2004) ............................... 3, 4, 5

20  United States v. George,

21    420 F.3d 991 (9th Cir. 2005) ................................... 16

22  United States v. Harmon,

23    537 F. App'x 719 (9th Cir. 2013) ............................. 2, 6

24  United States v. Karterman,

25    60 F.3d 576 (9th Cir. 1995) ..................................... 25

26  United States v. Kranovich,

27    401 F.3d 1107 (9th Cir. 2005) .................................... 1

28

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

United States v. Lapier,

  796 F.3d 1090 (9th Cir. 2015) .................................... 5

United States v. Lopez,

  -- F.4th --, 2021 WL 2795426 (9th Cir. July 6, 2021) ............. 16

United States v. Lozoya,

  982 F.3d 648 (9th Cir. 2020) ..................................... 16

United States v. Melrose East Subdivision,

  357 F.3d 493 (5th Cir. 2004) ..................................... 22

United States v. Murray,

  752 F. App'x 439 (9th Cir. 2018) ................................. 12

United States v. Osuna-Alvarez,

  788 F.3d 1183 (9th Cir. 2015) .................................... 12

United States v. Pace,

  314 F.3d 344 (9th Cir. 2002) ......................... 12, 13, 15, 16

United States v. Payne,

  944 F.2d 1458 (9th Cir. 1991) .................................... 25

United States v. Pimentel,

  654 F.2d 538 (9th Cir. 1981) ...................................... 2

United States v. Ruelas-Arreguin,

  219 F.3d 1056 (9th Cir. 2000) .................................... 15

United States v. Singh,

  979 F.3d 697 (9th Cir. 2020) ...................................... 7

United States v. Torres,

  794 F.3d 1053 (9th Cir. 2015) ..................................... 2

United States v. Von Stoll,

  726 F.2d 584 (9th Cir. 1984) ..................................... 21

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

United States v. Young,

  17 F.3d 1201 (9th Cir. 1994) ...................................... 18

**Statutes**

18 U.S.C. § 2(b) ............................................... 9, 15

18 U.S.C. § 1028A(a)(1) ........................................... 12

18 U.S.C. § 1343 ................................................. 20

18 U.S.C. § 1344(2) ........................................... 20, 21

18 U.S.C. § 1349 ................................................. 20

18 U.S.C. § 1956(c)(1) ........................................... 20

**Rules**

Federal Rule of Criminal Procedure 12(b)(3)(D) ..................... 7

Federal Rule of Criminal Procedure 29 ............................. 1

Federal Rule of Criminal Procedure 33 ............................. 1

Federal Rule of Evidence 403 ...................................... 7

**Other Authorities**

Cassella, S., Asset Forfeiture Law in the United States § 25-2 ..... 22

Ninth Circuit Model Instruction No. 8.83 ......................... 11

Ninth Circuit Model Instruction No. 8.147 ..................... 19, 20

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3

Defendant Richard Ayvazyan's motion largely recycles arguments
the Court already rejected with no new facts or legal arguments that
warrant reconsideration.  Defendant's few new arguments distort the
record and misstate the law.  Nothing in defendant's motion suggests
error and, even if it did, any such error would be harmless given the
overwhelming evidence of guilt.  The motion should be denied.

9

## II.   RELEVANT LEGAL STANDARDS[1]

10

### A.   Federal Rule of Criminal Procedure 29

11

Courts may not set aside a jury's verdict and enter a judgment
of acquittal unless <u>no</u> reasonable juror could have voted to convict.
"[T]he relevant question is whether, after viewing the evidence in
the light most favorable to the prosecution, <u>any</u> rational trier of
fact could have found the essential elements of the crime beyond a
reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319-20 (1979).
Courts "must respect the exclusive province of the jury to determine
the credibility of witnesses, resolve evidentiary conflicts, and draw
reasonable inferences from proven facts, by assuming that the jury
resolved all such matters in a manner which supports the verdict."
<u>United States v. Kranovich</u>, 401 F.3d 1107, 1112-13 (9th Cir. 2005).

22

### B.   Federal Rule of Criminal Procedure 33

23

Although courts may order new trials "if the interest of justice
so requires," Fed. R. Crim. P. 33(a), the remedy should be reserved
for "exceptional cases in which the evidence preponderates heavily

---

[1] <u>See also</u> the discussion of the relevant legal standards in the
government's concurrently-filed opposition to defendant Vahe Dadyan's
post-trial motion (ECF 789), which is incorporated by reference.

1   against the verdict." United States v. Pimentel, 654 F.2d 538, 545

2   (9th Cir. 1981). Courts should not grant new trials based on

3   harmless errors. See United States v. Harmon, 537 F. App'x 719, 720

4   (9th Cir. 2013); see also United States v. Torres, 794 F.3d 1053,

5   1063 (9th Cir. 2015) (error is harmless where it did not likely

6   affect the verdict).

7   **III. ARGUMENT**

8       **A.  The Government Proved the Fraud Conspiracy and Schemes**

9           1.  The Government's Evidence Was Overwhelming

10      The Court already rejected defendant's challenges to the

11  government's evidence of a single overarching conspiracy, finding the

12  evidence was "overwhelming and unrebutted." (ECF 664 at 12.) The

13  Court's July 2, 2021 Order (the "Order") includes an exhaustive

14  analysis of the evidence and arguments and concludes that "no

15  reasonable jury could reasonably find that Richard Ayvazyan was only

16  a member of separate and unrelated conspiracies." (Id. at 11.) The

17  Court explained that, to the extent there were even subgroups within

18  the conspiracy, "the overwhelming evidence shows that (1) the two

19  alleged groups had the exact same objective (i.e., obtaining

20  fraudulent PPP and EIDL loans); (2) both alleged groups accomplished

21  that goal using the exact same methods (i.e., the same set of fake

22  and synthetic identities and entities); and (3) all of the defendants

23  – in particular Richard Ayvazyan and Marietta Terabelian – obtained

24  and concealed their benefits through their coconspirators' use of

25  these methods." (Id. at 14.)

26      Defendant now repeats his claim that the evidence of a single

27  overarching conspiracy was insufficient; however, he does not make

28  any factual or legal arguments that would warrant the Court's

                                    2

1  reconsideration of its prior ruling.  Accordingly, the Court should

2  deny defendant's motion on the same grounds as before.

3           2.  <u>The Court Correctly Denied Defendant's Requested</u>
            <u>Multiple-Conspiracies and Schemes Jury Instructions</u>

4

5      In its Order, the Court explained why defendant's request for a

6  multiple-conspiracies instruction was "inconsistent with the law and

7  unsupported by the evidence at trial."  (<u>See</u> ECF 664 at 9-17.)

8  Defendant does not offer any new evidence or law for the Court to

9  reconsider its prior careful analysis.  Nonetheless, he continues to

10 press his misconception about the applicability of the multiple-

11 conspiracies instruction with several erroneous arguments.

12     First, defendant's reliance on <u>United States v. Fernandez</u>, 388

13 F.3d 1199 (9th Cir. 2004), is misplaced.  (<u>See</u> ECF 683 ("Mot.") at

14 4.)  Putting aside that there was overwhelming evidence of a single

15 conspiracy here, <u>Fernandez</u> actually undermines the applicability of

16 defendant's multiple-conspiracies theory.  Specifically, <u>Fernandez</u>

17 noted that a multiple-conspiracies instruction is warranted "only in

18 the event that the evidence showed other conspiracies that were

19 <u>unrelated to</u> or <u>separate from</u> the conspiracy charged, because it is

20 well-established that 'a single conspiracy may involve several

21 subagreements or subgroups of conspirators.'"  388 F.3d at 1248 n.34.

22 In its Order, the Court analyzed the abundant Ninth Circuit authority

23 supporting this well-established principle, for which defendant has

24 no response.  (ECF 664 at 10 (collecting cases).)[2]

25 _____

26     [2] Defendant also argues that a purported "multiple schemes" jury
instruction was required (ECF 683 at 4-5), as he did in his proposed

27 instructions at trial (<u>see</u> ECF 372 at 15).  But neither the Ninth
Circuit model instructions nor the cases defendant cites support a

28 "multiple schemes" instruction.  (<u>See</u> ECF 557 at 10-12.)  Moreover,
*(footnote cont'd on next page)*

3

1    Second, defendant once again contends the "[Manuk] Grigoryan and

2    [Tamara] Dadyan groups" represented two "different conspiracies and

3    corresponding schemes embedded within the charged conspiracy and

4    scheme." (Mot. at 5-6.) Defendant acknowledges both purported

5    groups were engaged in PPP loan fraud in 2020, but describes other

6    fraudulent activities in which the individuals in these "groups"

7    supposedly engaged (albeit with little or no citation to trial

8    evidence). (See id.) But as the Court already found, "even if the

9    evidence only established that the charged conspiracy was comprised

10   of a Grigoryan subgroup and a Dadyan subgroup, such proof by itself

11   would not allow a reasonable jury to find the defendants were only

12   involved in multiple conspiracies and not the larger conspiracy

13   charged in the indictment." (ECF 664 at 10.)

14   Nor did the evidence at trial support "separate, unrelated

15   conspiracies led by Tamara Dadyan and Manuk Grigoryan" or lack in

16   "conspiratorial interconnectivity and interdependence" of a single

17   conspiracy. (Mot. at 5-6.) Rather, there was "overwhelming and

18   unrebutted" evidence of the overarching conspiracy, including the

19   common goals, means, fraudulent identities and documents, and

20   beneficiaries of the overall conspiracy. (See ECF 664 at 11-14.)

21   Third, defendant's claim that "he was denied a jury instruction

22   on his theory of the defense," (Mot. at 6), ignores that defense

23   instructions must be both "supported by the law" and have "some

24   foundation in the evidence." United States v. Barragan, 871 F.3d

25   689, 710 (9th Cir. 2017). Defendant's multiple-conspiracies or

26   schemes instructions were not supported by the law because, once

27

28   the trial evidence did not support a "multiple schemes" instruction
     for the same reason it did not support a multiple conspiracies
     instruction. (ECF 664 at 11-14.)

4

again, a multiple-conspiracies instruction is warranted only where a case involves multiple "unrelated" or "separate" conspiracies. Fernandez, 388 F.3d at 1248 n.34. This case simply did not fit the bill. Because this case involved, at most, "several subagreements or subgroups of conspirators," id., defendant's proposed instructions also lacked an adequate foundation in the evidence. As the Court already concluded after careful analysis of "the evidence actually presented at trial," "no reasonable juror could reasonably find two separate and unrelated conspiracies" here. (ECF 664 at 14, 16.)

Finally, there is no merit to defendant's claim that "a specific unanimity instruction was required because of the specter of multiple conspiracies and schemes." (Mot. at 6-7.) Unlike in United States v. Lapier, 796 F.3d 1090 (9th Cir. 2015), upon which defendant solely relies, there was no "genuine possibility of jury confusion" about the charged wire/bank fraud conspiracy here. See id. at 1096-97 (specific unanimity instruction necessary where "perfect storm" of potential "jury confusion," including where "indictment was broadly worded and did not name the coconspirators," the "evidence adduced at trial credibly showed at least two separate conspiracies" with one beginning after the other ended, and "even the prosecutor admitted that the government may have proved two separate conspiracies"). Moreover, in addition to the general unanimity instruction (ECF 609 at 44), the Court instructed the jury that it "must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit." (Id. at 23.)

1    In any event, the jury instructions taken as a whole allowed

2    defendant to argue, as he did in closing, that the government did not

3    prove his participation in the single charged conspiracy, and any

4    error in not providing the proposed multiple-conspiracies instruction

5    was therefore harmless.  See Harmon, 537 F. App'x at 720.  That the

6    jury rejected defendant's argument is not a basis for a new trial.

7    **B.    The Court's Admission of "Reserve Identities" Evidence and**
          **Exclusion of the State Case Does Not Warrant a New Trial**

8

9    Defendant contends a new trial is necessary because the Court

10   erred in admitting "reserve identities" evidence while also excluding

11   the testimony of LAPD Detective Lyle Barnes.  According to defendant,

12   this prevented him from establishing that the "reserve identities"

13   evidence "was actually part of a separate mortgage fraud scheme

14   (unrelated to PPP or EIDL applications) operated by Tamara Dadyan,"

15   which purportedly supported his defense theory.  (Mot. at 8-9.)

16   Defendant is wrong.  The Court carefully analyzed the "reserve

17   identities" evidence to ensure that "each piece of proffered

18   evidence" was, at a minimum, inextricably intertwined with the

19   fraudulent PPP/EIDL scheme.  (ECF 478 at 15.)  The Court required the

20   government to submit supplemental briefing identifying "how each

21   piece of evidence was part of the 'overall scheme' to obtain

22   fraudulent PPP and EIDL loans."  (Id.)  In its submission, the

23   government described in detail the relationship of the "reserve

24   identities" evidence to the overall scheme, with supporting exhibits.

25   (See ECF 506, 580-583.)  The Court "closely reviewed the proffered

26   evidence" and concluded the "reserve identities" evidence was "highly

27   probative of the methods and instruments Defendants used to execute

28   the conspiracy alleged in the indictment."  (ECF 517 at 1.)

1    Separately, the Court carefully considered defendant's proffered

2  evidence with respect to Detective Barnes and the unrelated

3  California mortgage fraud prosecution.  (ECF 664 at 1-3.)  The Court

4  concluded the probative value of the testimony was substantially

5  outweighed by the danger of unfair prejudice, cumulative presentation

6  of evidence, confusion of the issues, misleading the jury, undue

7  delay, and wasting time.  (Id. (analyzing each factor under FRE

8  403).)  Defendant offers nothing to overcome the Court's Rule 403

9  analysis, for which the Court has broad discretion.[3]  See

10 Sprint/United Management Co. v. Mendelsohn, 552 U.S. 379, 384 (2008).

11   Defendant claims that the fact that the "reserve identities"

12 evidence could have been used for both the PPP/EIDL scheme and the

13 mortgage fraud scheme is "fatal to the single, unitary conspiracy and

14 scheme charged by the government in this case."  (Mot. at 8.)  This

15 is nonsensical.  Evidence regarding the same synthetic identities and

16 businesses used to advance the fraudulent PPP/EIDL scheme, such as

17 Viktoria Kauichko, Anton Kudiumov, Medet Murat, EM Construction, and

18 Sabala Construction, was found at both the Canoga apartment (leased

19 by defendant Grigoryan) and the Weddington residence (defendant

20 Tamara Dadyan's home).  (See, e.g., GEX 10, 13.b, 13.f, 24.e, 54.b,

21 54.e, 57.g.)  As previously explained, there was "overwhelming and

22 unrebutted" evidence of a single, overarching conspiracy (ECF 664 at

23

24    [3] Defendant contends only that any unfair prejudice to
   codefendant Artur Ayvazyan could have been remedied by severance.
25 The government is not aware of defendant moving to sever on this
   basis, thus waiving any such argument.  See Fed. R. Crim. P.
26 12(b)(3)(D) (severance must be sought pretrial); United States v.
   Singh, 979 F.3d 697, 732 (9th Cir. 2020) (severance must be renewed
27 at the close of evidence).  In any event, the Court found the
   probative value of the proffered evidence was substantially
28 outweighed by the other Rule 403 factors, such that it would not have
   been admissible even if defendant had been tried alone.

12), and evidence regarding the state mortgage fraud scheme had no probative value bearing on that analysis.

### C. Defendant is Not Entitled to a New Trial on the Aggravated Identity Theft Counts

#### 1. The Evidence Does Not Preponderate Heavily Against the Aggravated Identity Theft Verdicts

Defendant's claim that the aggravated identity theft evidence weighs heavily against the verdicts (Mot. at 9-11) is based on misstatements of law and fact, and should be rejected.

##### a.   Count 21 – Mark Zindroski

The government presented overwhelming evidence that defendant transferred, used, and possessed Mark Zindroski's identity during and in relation to a PPP fraud scheme involving Mr. Zindroski's company, Top Quality Contracting ("TQC").  The evidence showed: (i) the fraudulently obtained PPP funds were wired to an account in the name of TQC for which Mark Zindroski and Iuliia Zhadko were co-signers (GEX 1.f at 1; GEX 2.e at 57); (ii) the government seized from defendant a physical credit card in the name of TQC/Iuliia Zhadko (GEX 76.b); (iii) the telephone number (ending 4170) listed on TQC's bank records and email correspondence was associated with defendant and used to exchange texts with defendant T. Dadyan (GEX 1.f at 1; GEX 6.p at 10; GEX 10); and (iv) defendant and T. Dadyan's texts discussed using TQC in furtherance of the fraud (GEX 10 at 8, 40).

Ignoring this overwhelming evidence, defendant points to a patchwork of purported evidence he claims shows that it was defendant Grigoryan, not defendant, who used Zindroski's identity.  (Mot. at 9-10.)  His argument misstates the record.  For example, he claims the movement of money from TQC's bank account points to Grigoryan because that account wrote checks to Grigoryan's aunt, Anna Manukyan.  (Mot.

at 10.)  However, the evidence showed that defendant also used Anna
Manukyan's identity: he possessed digital photographs of her driver's
license and credit card.  (GEX 19.b, 19.c.)  Defendant also claims an
IP address used to submit a PPP application on behalf of TQC tied
back to the subscriber name Viktoria Kauichko at an apartment
Grigoryan rented on Canoga Avenue.  However, the evidence showed that
defendant and his wife (defendant Terabelian) used the Kauichko
identity and shared the Canoga Avenue apartment with Grigoryan (and
even used a Viktoria Kauichko credit card, later found in defendant's
and his wife's possession, to pay the rent).  (See, e.g., GEX 37.c at
1; GEX 42; GEX 76.a; GEX 76.b; GEX 88 at 28, 34, 39, 41.)[4]

Defendant also misstates the law.  Even if some evidence did
show that Grigoryan also used Mark Zindroski's identity, the evidence
nevertheless supported the jury's guilty verdict because the first
superseding indictment also alleged a willful causation theory of
liability under 18 U.S.C. § 2(b) as part of this count.

> b.    Count 22 – Nazar Terabelian

The government also presented overwhelming evidence that
defendant used and possessed the identity of Nazar Terabelian during
and in relation to a scheme involving the submission of a fraudulent
PPP application on behalf of Mod Interiors Inc.  The evidence showed
that: (i) defendant's phone (seized on November 5, 2020) contained

---

[4] Defendant also conducted a comparison of certain IP addresses
purportedly used by Manuk Grigoryan, Mark Zindroski, and TQC that is
confusing, unreliable, and without support in the record or the
facts.  (ECF 683 at 10.)  Unable to find a complete match of the
numbers used in the IP addresses, defendant instead settled for
drawing conclusions about who used the IP addresses based on a
partial match of some of the numbers (i.e., all the IP addresses
begin with "174.193").  (Id.)  Defendant's incomplete analysis and
'junk science' approach should be rejected.

9

digital photographs of credit cards in the names of Mod Interiors and

Nazar Terabelian, handwritten notes relating to PPP applications for

Mod Interiors, and log-in information for email and bank accounts for

Nazar Terabelian (GEX 19.c); (ii) the fraudulently obtained PPP funds

were wired to an account in the name of Mod Interiors and used to

purchase 60 gold coins, diamonds, and luxury furniture using the name

Viktoria Kauichko (GEX 115); and (iii) 60 gold coins were later found

in defendant's residence (which he also purchased using stolen PPP

funds).  (See GEX 34; GEX 38; GEX 39 at 17, 27; GEX 56.)

     Defendant argues that a new trial is warranted because the

government purportedly interviewed the owner of the store from which

the 60 gold coins were purchased and "failed to adduce any evidence

whether the gold coins in [defendant's] home were the coins purchased

in Nazar Terabelian's name."  (Mot. at 11.)  Defendant is mistaken.

The owner declined to be interviewed.  Defendant also fails to

explain why such evidence was necessary given that the owner provided

certified business records documenting the purchase of the 60 gold

coins found at defendant's home in the name of Viktoria Kauichko (an

alias used by defendant's wife) with money fraudulently obtained

using the identity of his wife's deceased father.[5]

          2.   The Aggravated Identity Theft Instructions Were
               Correct

     Defendant also challenges the inclusion of the Ninth Circuit's

model instruction for "possession," claiming that this instruction,

_____

     [5] Defendant also argues that the government relied on an account
statement from the wrong bank as proof that defendant used Nazar
Terabelian's identity.  (ECF 683 at 10.)  This too is incorrect.  The
government presented the account statement at issue (GEX 90) to show
that defendant had previously used Mod Interiors to fraudulently
apply for a PPP loan and thus had an opportunity to later use Mod
Interiors to fraudulently apply for a second PPP loan.

1  "coupled with the aiding and abetting instruction, permitted the jury

2  to find that Ayvazyan aided and abetted or caused aggravated identity

3  theft simply by possessing another person's identification

4  information."  (Mot. at 11.)  This is incorrect.  The Court's

5  instruction on aggravated identity theft, which followed the Ninth

6  Circuit model instruction and governing law, made clear that

7  defendant's possession of the specified means of identification must

8  have been "without legal authority" and "during and in relation to"

9  the specific bank or wire fraud count charged in the indictment.

10  (ECF 609 at 41-42; see also Ninth Circuit Model Instruction No.

11  8.83.)  The jury could not have convicted defendant of aggravated

12  identity theft for possession alone, regardless of the appropriate

13  and correct inclusion of instructions regarding aiding and abetting

14  and the meaning of "possession."[6]

15       Moreover, defendant misstates the law in arguing that the

16  Court's instructions constituted an "incorrect application of the

17  law."  (Mot. at 11.)  Defendant claims that the jury was permitted to

18  convict him for "possession of Nazar Terabelian's driver's license,

19  without any evidence Ayvazyan used the license to commit the specific

20  wire fraud charged in Count 11, a required element of the crime."

21  (Id.)  But the jury was not required to find that defendant "used"

22  Nazar Terabelian's driver's license (although there was overwhelming

23  evidence that he did); the aggravated identity theft statute

24  prohibits use or possession (or transfer), without lawful authority,

25

26       [6] Defendant challenges the instructions for possession and
    aiding and abetting as applied to both Counts 21 and 22.  But Count
27  21 did not allege aiding and abetting, and defendant's (erroneous)
    arguments as to jury confusion regarding aggravated identity theft
28  have no possible application to that count.  His argument for a new
    trial as to Count 21 should be rejected for this reason as well.

during and in relation to a specified predicate offense.  18 U.S.C.
§ 1028A(a)(1); see also United States v. Osuna-Alvarez, 788 F.3d
1183, 1185 (9th Cir. 2015).  Defendant's citation to an unpublished
opinion (United States v. Murray, 752 F. App'x 439 (9th Cir. 2018))
in which the court appears to have addressed only the "use" prong is
misleading and inapposite.  The Court properly instructed the jury,
and there is no basis for a new trial on Counts 21 and 22.

> **D.  The Government Proved Venue of the Wire Fraud Counts by at
> Least a Preponderance of the Evidence**

> **1.   The Government's Evidence of Venue Was Sufficient**

The government adduced sufficient proof at trial for a rational
juror to find venue in this District for each of the wire fraud
counts by a preponderance of the evidence.  The schemes were carried
out in this District by defendants who all lived in or around Los
Angeles within a relatively brief period of months during which
California state and local authorities had declared states of
emergency and Los Angeles residents were subject to stay-at-home
orders.[7]  Defendant's challenge to venue should be rejected.[8]

Defendant correctly recognizes that United States v. Pace, 314
F.3d 344 (9th Cir. 2002), controls the venue analysis for wire fraud.
But defendant misconstrues the government's evidence of venue and the
application of Pace here.  As Pace requires, each of the eleven
charged wire transmissions here "originated, passed through, or was
received" in, or was "orchestrated" from, the Central District of

---

[7] Special Agent Geffrey Clark testified that his investigation
confirmed the defendants lived and were actually present in this
District from March through August 2020.  (6/22/21 Tr. at 9:1-12:4.)

[8] In the text messages the government presented at trial,
defendant discussed "wires" over 40 times.  (GEX 10.)

California.  Id. at 349-50.  The evidence demonstrates either a

"direct or causal connection" between each misuse of wires and this

District, which satisfies venue for wire fraud.[9]  Id.

Three of the charged wire transmissions (Counts 2, 9, and 12)

are supported by evidence of a direct connection to this District.

Bank records show the wire underlying Count 2 terminated at a JP

Morgan Chase location in Van Nuys, California (GEX 1.a at 22), and

the wire underlying Count 9 was initiated from a JP Morgan Chase

location in Laurel Canyon, California.  (GEX 1.1 at 1084-86.)  And IP

subscriber records show the wire underlying Count 12 was initiated

from Encino, California.  (GEX 2.q at 5; GEX 73.c at 12.)

The other wire fraud counts are supported by evidence of a

causal connection to this District, which Pace describes as

"orchestration" of the wire transmission.  Pace, 314 F.3d at 349-50.

For example, four of the charged wire transmissions (Counts 3, 7, 8,

and 10) were caused by defendants' submission of fraudulent PPP and

EIDL applications via the Internet from their residences in this

District.  IP subscriber records show that the PPP applications that

caused the wires underlying Counts 3 and 7 were submitted via

Internet from Encino, California (GEX 2.f at 37; GEX 2.k at 47; GEX

73.c at 12); the EIDL application that caused the wire underlying

Count 8 was submitted via Internet from Sun Valley, California (GEX

2.h at 38; GEX 73.f at 2); and the EIDL application that caused the

wire underlying Count 10 was submitted via Internet from Woodland

Hills, California.  (GEX 2.l at 5; GEX 73.c at 5.)

---

[9] Venue can be based on circumstantial evidence alone.  See
United States v. Childs, 5 F.3d 1328, 1332 (9th Cir. 1993).

There is also substantial evidence showing that the remaining four charged wire transmissions (Counts 4, 5, 6, and 11) were caused by defendants from within this District.  Bank records show that defendant and his wife, defendant Terabelian, made retail purchases and bank deposits in and around Los Angeles around the time they caused the wires underlying Count 4 (GEX 1.f at 23; GEX 89 at 30; GEX 90 at 19) and Count 11 (GEX 1.p at 16; GEX 87 at 4; GEX 88 at 40; GEX 89 at 10).[10]  Similarly, defendant Edvard Paronyan made ATM withdrawals within this District around the time he caused the wire underlying Count 6 (GEX 1.l at 15).  And mountains of evidence seized from defendant T. Dadyan's residence on Weddington Street, IP address records, and agent testimony show she submitted dozens of fraudulent PPP and EIDL applications that caused wires to her bank accounts from her home office, from which the government seized hard copy documents related to dozens of PPP loans including the PPP loan and applicant used for Count 5.  (See, e.g., 6/17/21 P.M. Tr. at 65:19-66:13; GEX 57.e at 88-90; 57.g at 30.)  The trial evidence relating to venue for Counts 3 and 7 also confirms that, around the same time in May when defendant T. Dadyan submitted the application that caused the wire underlying Count 5 (i.e., May 8), she and her husband submitted other fraudulent PPP applications from their residence.  (See, e.g., Count 3 on May 1 and Count 7 on May 18.)  Viewing all of that evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the verdict, see Jackson, 443 U.S. at 319, 326, venue was adequately established.

---

[10] The Wells Fargo branch at which defendant opened the account that received the wire is located in Woodland Hills.  (GEX 1.f at 5.)

14

1    Although defendant proposes to limit the wire "orchestration"

2   theory of venue to cases where a defendant is charged with an 18

3   U.S.C. § 2(b) willful causation theory (Mot. at 13), nothing in <u>Pace</u>

4   supports that limitation.  To the contrary, <u>Pace</u>, which makes no

5   mention of 18 U.S.C. § 2(b), broadly describes the "essential conduct

6   prohibited by § 1343 to be the misuse of wires as well as any acts

7   that cause such misuse."  314 F.3d at 349.  Consistent with that

8   principle, defendant and his codefendants were charged with

9   "transmit[ting] and caus[ing] the transmission" of the alleged wire

10  transmissions in Counts 2 through 12.  (ECF 154 at 29.)  Defendants

11  also were alleged to have aided and abetted each other in causing the

12  wire transmissions, which necessarily included, as the jury was

13  instructed, having "aided, counseled, commanded, induced, or

14  procured" another person in connection with an element of the

15  offense.  (<u>Id.</u>; ECF 609 at 33.)  For the eight wires that did not

16  necessarily pass directly through this District, the jury was

17  entitled to consider whether defendants "orchestrated" or caused

18  those wires to be transmitted from this District.

19    Thus, the evidence sufficed for a rational juror to find venue

20  for each wire fraud count by a preponderance of the evidence,[11] and

21  the evidence did not preponderate heavily against the verdicts.

22          2.   The Court's Denial of Defendant's Proposed Special
                 Verdict Form Does Not Warrant a New Trial
23

24    Defendant also argues his proposed special verdict form on wire

25  fraud venue should have been submitted to the jury.  (Mot. at 15.)

26  _____

27    [11] If the evidence of venue was not sufficient as to any count,
    the remedy is to dismiss that count without prejudice, not a judgment
28  of acquittal.  <u>See</u> <u>United States v. Ruelas-Arreguin</u>, 219 F.3d 1056,
    1060 n.1 (9th Cir. 2000).

1    However, defendant's proposed question materially misstated the law

2    and was appropriately rejected by the Court.

3         Specifically, defendant's proposed venue question stated, "As to

4    each [wire fraud] Count, do you find proof by a preponderance of the

5    evidence that the wire was sent to or from the Central District of

6    California?" (ECF 547.)  As explained above, this is an incorrect

7    statement of law.  The question omitted both the pass-through theory

8    and the orchestration theory, both of which are recognized in Pace.

9    314 F.3d at 349-50.  "Jury verdict forms are generally considered a

10   type of jury instruction," United States v. Lopez, -- F.4th --, 2021

11   WL 2795426, at *18 (9th Cir. July 6, 2021), and defendant was "not

12   entitled to an instruction that misstates the law," United States v.

13   George, 420 F.3d 991, 1000 (9th Cir. 2005).

14        Any error in not providing a special verdict form or instruction

15   on wire fraud venue was also harmless.  The evidence established that

16   venue was properly sited in this District, as explained above, and

17   nothing required venue elsewhere.  Indeed, "[t]he Framers designed a

18   system that requires trial in the vicinity of the crime, to secure

19   the party accused from being dragged to a trial in some distant

20   state, away from his friends, witnesses, and neighborhood." United

21   States v. Lozoya, 982 F.3d 648, 651 (9th Cir. 2020) (en banc).

22   Defendants all reside in and orchestrated their crimes from this

23   District; venue here was appropriate.

24        **E.   Witness Anthony Farrer Did Not Perjure Himself**

25        Anthony Farrer, a luxury watch retailer, testified that

26   defendant purchased luxury watches from him and paid for them using

27   wires from bank accounts associated with several names the government

28   separately established were also used by defendant in furtherance of

1   the fraud.  (6/17/21 P.M. Tr. at 21:10-44:19; GEX 37.a, 37.b, 37.c,

2   37.e.)  Defendant argues that Mr. Farrer committed perjury because,

3   on cross-examination, he denied having sold a watch to an individual

4   known as "Mike from Instagram."  (Mot. at 15-16.)  Defendant further

5   argues the government knowingly allowed Mr. Farrer to perjure

6   himself.  Defendant's argument is frivolous and should be rejected.

7       Mr. Farrer's cross-examination was confusing and drew several

8   objections that the Court sustained.  When asked whether he knew Mike

9   from Instagram's real name, Mr. Farrer said that he did not.

10  (6/17/21 P.M. Tr. at 46:1-46:22.)  Defense counsel then effectively

11  told Mr. Farrer that Mike from Instagram was Manuk Grigoryan (a name

12  with which Mr. Farrer was not familiar), and proceeded to ask Mr.

13  Farrer a series of confusing compound questions that assumed facts

14  not in evidence.  (Id. at 46:1-46:22, 49:12-49:25.)  It appears that

15  Mr. Farrer believed he was testifying that he had never sold watches

16  to Manuk Grigoryan, which, based on Mr. Farrer's knowledge, was

17  accurate since he did not know any customers by that name.  (Id. at

18  49:12-49:25.)  Mr. Farrer's testimony was also accurate in that

19  defendant appears to have paid for and received the watches for which

20  Mike from Instagram was purportedly the buyer, such that Mr. Farrer

21  never sold a watch to Mike from Instagram – rather, he sold those

22  watches to defendant.  (GEX 37.b.)

23      There is no evidence that Mr. Farrer presented false testimony,

24  let alone deliberately committed perjury.  Mr. Farrer had no reason

25  to lie about whether he sold a watch to Manuk Grigoryan (or Mike from

26  Instagram) and the record shows that Mr. Farrer was trying to answer

27  a series of objectionable questions to the best of his ability.  It

28  is also clear from the record that the government did not "allow" Mr.

Farrer to commit perjury but merely objected to defense questions that were improperly formed and confusing to the witness.  In addition, it has never been the government's understanding that Manuk Grigoryan is Mike from Instagram.

Even if the government unwittingly presented false evidence (which it did not), a defendant is entitled to a new trial only "if there is a reasonable probability that [without the evidence] the result of the proceeding would have been different." <u>United States v. Young</u>, 17 F.3d 1201, 1204 (9th Cir. 1994).  Here, defendant fails to show that the result would have been different had the government not presented Mr. Farrer's purportedly false testimony.  Defendant incorrectly claims "the government used this false testimony to argue that [defendant] was the only person using the phone registered to the synthetic identity Iulia [sic] Zhadko." (Mot. at 16.)  Defendant misstates the record.  The question of whether Mike from Instagram or Manuk Grigoryan purchased a watch from Mr. Farrer is separate from, and not relevant to, the question of whether defendant was the person using the Iuliia Zhadko phone.  Based on the trial evidence, including texts and other records produced by Mr. Farrer, defendant was in fact the person using the phone registered to Iuliia Zhadko, not Mike from Instagram or Manuk Grigoryan.  (GEX 37.b, 37.c, 37.e.)[12]

---

[12] Defendant separately claims that evidence purportedly showing that Grigoryan also bought watches from Mr. Farrer would tend to show Grigoryan was "running his own schemes and operations independent of [defendant]."  (ECF 683 at 16-17.)  Such an inference is neither reasonable nor supported by the record.  There is no reason to believe Grigoryan could only have made money to buy a watch from Mr. Farrer by committing crimes about which defendant had no knowledge.

1       **F.**    **The Court Correctly Denied Defendant's Motions to Exclude**
2              **the Government's Summary Witnesses**

3       Defendant's four-sentence challenge to the admission of the

4 government's summary witnesses is conclusory and once again fails to

5 provide any basis for the Court to reconsider its careful analysis of

6 these fully-briefed and litigated issues during trial.  (ECF 451,

7 504, 511, 520, 523.)  Defendant claims Marylee Robinson's testimony

8 "exceeded the scope of a percipient fact witness and was unduly

9 prejudicial" and Special Agent Timothy Massino's testimony was

10 "argument elicited through a case agent," without providing a single

11 example or citation to the record.  (Mot. at 17.)  Defendant's

12 challenge to these witnesses' testimony should be rejected.

13       **G.**    **The Court's Jury Instructions Regarding the Money**
14              **Laundering Conspiracy Count Were Proper**

15       Defendant incorrectly contends he is entitled to a new trial on

16 the money laundering conspiracy charge (Count 26) because "the jury

17 instructions constituted an impermissible constructive amendment."

18 (Mot. at 17.)  Defendant's claim is based solely on the fact that the

19 words "as charged in the indictment" were not included in the

20 concealment money laundering instruction.  (Id. at 18 (citing ECF 609

21 at 36-37).)  Defendant relies on a legally incorrect proposed jury

22 instruction, misstates the instruction that was actually given, and

23 misconstrues the law of constructive amendment.

24       First, the Court's instruction followed the Ninth Circuit model

25 instructions for concealment money laundering virtually word-for-

26 word.  (Compare ECF 609 at 36-37 with Ninth Circuit Model Instruction

27 No. 8.147.)  Before trial, defendant sought to materially and

28 erroneously change the second element of the instruction to require

the government prove his knowledge that illegal proceeds came from a specified unlawful activity charged in the indictment.  Specifically, he proposed substituting the phrase "the proceeds of unlawful activity that is charged in the indictment" for the phrase "proceeds of some form of unlawful activity."  (Compare ECF 372 at 17 (emphasis added) with Ninth Circuit Model Instruction No. 8.147.)  Defendant again insists on this change here.

Defendant's proposed change, however, is contrary to the statute and the Ninth Circuit's model instructions.  Indeed, the statute specifies that "the term 'knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity' means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law."  18 U.S.C. § 1956(c)(1).  Defendant provides no legal authority for his proposed drastic alteration of the mens rea requirement for concealment money laundering, and his attempt to do so should be rejected.

Second, defendant selectively and misleadingly quotes the first element of the Court's given jury instruction, stating it "instructed the jury that they need only find that the transaction involved 'property that represented the proceeds of conspiracy to commit bank fraud and wire fraud.'"  (Mot. at 18.)  In fact, the instruction required the jury to find the transaction involved the criminal proceeds of "conspiracy to commit bank fraud and wire fraud, in violation of Section 1349 of Title 18 of the United States Code; wire fraud in violation of Section 1343 of Title 18 of the United States Code; or bank fraud, in violation of Section 1344(2) of Title 18 of

1    the United States Code."  (ECF 609 at 36.)  This is no small

2    omission.  The Court's instruction specified the crimes charged in

3    Counts 1, 2-12, and 13-20, respectively, of the First Superseding

4    Indictment, which detailed the allegations regarding the manner and

5    means and the overt acts of the PPP/EIDL fraud.  (ECF 154.)  The jury

6    was given a redacted copy of that indictment for its deliberations.

7    (See 6/23/21 P.M. Tr. At 74:10-75:6.)  All of the government's

8    evidence during trial focused on the PPP/EIDL fraudulent conduct.

9    Defendant's argument that the jury somehow would not have been able

10   to "specifically tie the specified unlawful activity to the PPP and

11   EIDL fraud charged in the indictment" without the words "as charged

12   in the indictment" is far-fetched and frivolous.

13       Finally, defendant's attempt to connect the omission of the

14   phrase "as charged in the indictment" to a constructive amendment is

15   similarly baseless.  Not including largely duplicative language not

16   supported by law in the jury instruction did not effect a

17   constructive amendment of the indictment.  The jury was not presented

18   with a "complex of facts distinctly different from those set forth in

19   the charging instrument" nor was "the crime charged [in the

20   indictment] . . . substantially altered at trial, so that it was

21   impossible to know whether the grand jury would have indicted for the

22   crime actually proved."[13]  United States v. Von Stoll, 726 F.2d 584,

23   586 (9th Cir. 1984).  Defendant's challenge should be rejected.

24

25

26

27

28       [13] Nor was there any variance – fatal or otherwise - because the
     evidence at trial did not "prove[] facts materially different from
     those alleged in the indictment."  Von Stoll, 726 F.2d at 586.

**H.    The Government Adduced Sufficient Untainted Evidence on All Counts of Conviction**

Defendant purports to renew his motion that the government has failed to adduce at trial sufficient untainted evidence, testimony, and argument.  (Mot. at 19.)  In compliance with the Court's June 28, 2021 order (ECF 605), the government filed a separate post-trial Kastigar submission (ECF 712) that addresses the arguments defendant makes here, which the government incorporates by reference.

**I.    The Government Proved Forfeitability of the $451,185 in U.S. Currency and Six Watches by at Least a Preponderance of the Evidence**

Defendant also moves the Court to set aside the jury's finding that $451,185 in U.S. Currency (the "Forfeited Cash") and six luxury watches (the "Forfeited Watches") were subject to forfeiture.

The government may prove forfeitability through circumstantial evidence, and "there is no need to tie [forfeited property] to proceeds of a particular identifiable illicit drug transaction." United States v. 1982 Yukon Delta Houseboat, 774 F.2d 1432, 1435 n.4 (9th Cir. 1985).[14]  As explained in the leading forfeiture treatise:

> In most forfeiture cases, the Government must rely on circumstantial evidence to establish by a preponderance of the evidence that the property constitutes proceeds traceable to the underlying offense.  In determining whether the Government has met its burden, the court or the jury must look to the totality of the circumstances, including such factors as the timing of the wrongdoer's acquisition of the property in relation to his commission of the offense, his lack of other legitimate sources of income, and the peculiar ways in which the property may have been titled, packaged, concealed or disbursed.

Stefan Cassela, Asset Forfeiture Law in the United States, § 25-2.

---

[14] This standard is not limited to narcotics transactions.  See, e.g., United States v. Melrose East Subdivision, 357 F.3d 493, 506-07 (5th Cir. 2004) (government may rely on circumstantial evidence of "pervasive fraud" to prove forfeiture).

1     Here, the Forfeited Cash was found in the backyard of a property

2 (6/28/21 Tr. at 41:6-42:19) which itself was bought with fraud

3 proceeds (GEX 115 at 7), where other personal property bought with

4 fraud proceeds was discovered (6/28/21 Tr. at 42:20-43:18; GEX 401 at

5 8), including hundreds of thousands of dollars in gold and jewelry

6 (id.; GEX 401 at 8).  Considering this evidence, a rational juror

7 could have found that the Forfeited Cash was criminal proceeds.

8     The core of defendant's argument is that the Forfeited Cash

9 could not have been traceable to his criminal conduct because there

10 simply was not enough cash traced out of the PPP/EIDL loan fraud

11 scheme.  (See Mot. at 20-21.)  Defendant ignores his conviction of a

12 broader conspiracy: the government's summary witness testified that

13 she traced only 27 fraudulent loans (6/28/21 Tr. at 14:19-21) and

14 identified at least $181,302 in tainted cash withdrawals (GEX 401 at

15 5).  But defendant repeatedly elicited that the number of loans

16 involved in the fraud scheme was far greater.  (See e.g., 6/22/21

17 A.M. Tr. at 78:12-79:6.)  A rational juror could have inferred that

18 the cash traced from the 27 loans was only a portion of the available

19 cash from the broader conspiracy.[15]

20     Finally, the jury saw evidence that "Viktoria Kauichko" – an

21 alias used by the conspirators to apply for false loans (GEX 115 at

22 2, 6) – transferred hundreds of thousands of dollars to the merchant

23 from whom defendant purchased the Forfeited Watches.  (GEX 401 at 1,

24 10.)  Having seen that the Forfeited Watches were purchased with

25

26

27    [15] Even assuming the jury should have credited defendant's
argument that only $101,302 was traced out of the criminal scheme
(Mot. at 21), a rational juror could nonetheless find the remaining

28 Forfeited Cash forfeitable as concealment property involved in the
money laundering scheme.  See Forfeiture Jury Instruction No. 15.

1  funds from one of the synthetic identities, a rational juror could

2  have concluded they were criminal proceeds.

3  **J.   Defendant Was Not Denied an Impartial Jury**

4       Defendant also contends he is entitled to a new trial because

5  "the Court-led voir dire was inadequate to guarantee Ayvazyan the

6  right to an impartial jury and resulted in prejudice," claiming the

7  "standard used" was "tilted in favor of the government."  (Mot. at

8  23.)  The two examples defendant selects underscore the frivolousness

9  of this argument and his misrepresentation of the record.

10      Defendant first claims a "retired probation officer responded

11 with an equivocal 'I don't think so' when asked if their service as a

12 probation officer would prevent them from being fair and impartial."

13 (Id.)  In truth, the very next lines of the transcript reflect the

14 prospective juror clarified, "Can I be impartial? . . . Oh, yes, of

15 course."  (6/15/21 Tr. at 133:11-19.)[16]

16      Defendant's second example turns on his factually unsupported

17 contention that "the jury foreperson listened intently and made eye

18 contact with prosecutors [during closing], only to turn away during

19 the entirety of defense counsel's presentation."  (Mot. at 23.)

20 Defendant asserts the foreperson's service in the military

21 (apparently ascertained by the defense post-trial) necessarily meant

22 she had a "pro-government slant" that should have been disclosed in

23 response to the basic question as to whether she could be "fair and

24 impartial to both sides."  (Id.)  Defendant's claims lack any support

25

26

27      [16] Defendant also omits that this questioning related to
   alternate jurors (none of whom were needed for deliberations) and the
28 defense used less than half of their peremptories, such that there
   could be no prejudice.  (See id. at 109:14-110:6, 118:24-119:11.)

in the record and are offensive in that they assume military veterans

cannot be impartial.  Defendant was not denied an impartial jury.

**K.  There Was No Cumulative Error Warranting a New Trial**

As explained above, defendant's claims all fail and, even if he

could establish one or more errors, "the fact that errors have been

committed during a trial does not mean that reversal is required."

United States v. de Cruz, 82 F.3d 856, 868 (9th Cir. 1996).  "[W]hile

a defendant is entitled to a fair trial, [he] is not entitled to a

perfect trial, for there are no perfect trials."  United States v.

Payne, 944 F.2d 1458, 1477 (9th Cir. 1991) (quotations omitted).

Where as here, any potential error is marginal at best, "the

cumulative effect of such error cannot be deemed so prejudicial that

reversal is warranted."  de Cruz, 82 F.3d at 868; see also United

States v. Karterman, 60 F.3d 576, 580 (9th Cir. 1995).

Defendant has not demonstrated any individual errors, much less

cumulative error, so prejudicial to warrant or require a new trial.[17]

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests

that the Court deny defendant Richard Ayvazyan's motion for a new

trial and/or judgment of acquittal.

---

[17] Defendant cites only one case, Killian v. Poole, 282 F.3d 1204 (9th Cir. 2002), where the Ninth Circuit found cumulative error warranting a new trial.  Defendant describes that case as involving a "government witness [that] perjured himself."  (ECF 683 at 24.) Defendant misunderstands Killian's import.  Besides the fact that Mr. Farrer did not perjure himself, Killian involved a cooperating witness whose numerous lies went "to the very heart of whether and to what extent [defendant] was involved" in the charged murder and whose testimony "was virtually the whole case for the government," the state's failure to disclose significant impeachment evidence regarding the cooperator including its deal to recommend him leniency, and the state's references "no less than eight separate times" to the defendant's silence following her arrest.  Killian, 282 F.3d 1208, 1209, 1211.  In short, this case is not Killian.