TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
    1100/1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/2424/3819
    Facsimile: (213) 894-6269/0141
    E-mail:   Scott.Paetty@usdoj.gov
              Catherine.S.Ahn@usdoj.gov
              Brian.Faerstein@usdoj.gov

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 320-0539
    Facsimile: (202) 514-0152
    E-mail:   Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>RICHARD AYVAZYAN,<br>  aka "Richard Avazian" and<br>    "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>  aka "Marietta Abelian" and<br>    "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>  aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>  aka "Mike Grigoryan," and | No. 2:20-cr-579(A)-SVW<br><br>GOVERNMENT'S RESPONSE TO PRESENTENCE INVESTIGATION REPORT FOR RICHARD AYVAZYAN<br><br>Sentencing: October 4, 2021<br>Time:      11:00 a.m.<br>Location:  Courtroom of the<br>           Hon. Stephen V. Wilson |

|   |   |
|---|---|
|   | "Anton Kudiumov,"<br>ARMAN HAYRAPETYAN,<br>EDVARD PARONYAN,<br>   aka "Edvard Paronian" and<br>      "Edward Paronyan," and<br>VAHE DADYAN,<br><br>            Defendant. |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, Assistant United States Attorneys Scott Paetty, Catherine Ahn, and Brian Faerstein, and Department of Justice Trial Attorney Christopher Fenton, hereby files its an initial response, pursuant to Federal Rule of Criminal Procedure 32(f), to the Presentence Investigation Report ("PSR"), prepared by the United States Probation and Pretrial Services Office ("Probation"), for defendant Richard Ayvazyan (ECF 886).

The government respectfully submits that the PSR should be amended to include several enhancements and adjustments necessary to reflect the egregious nature of R. Ayvazyan's crimes and conduct, including: (i) a two-level obstruction adjustment for absconding with his wife and co-defendant immediately before sentencing; (ii) a four-level aggravating role adjustment based on the fact that he was a leader of the criminal activities; (iii) a two-level victim-related adjustment based on the fact that many of his victims were vulnerable and could not protect against his use of their name; and (iv) a two-level enhancement because the offenses involved the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification.  Taken

together, these amendments result in a 10-level increase in R. Ayvazyan's Guidelines calculation from 33 to 43.

### The PSR Should Apply a Two-Level Obstruction Adjustment Because the Defendant Absconded Before Sentencing

Paragraph 49 of the PSR states, "[t]he Probation Officer has no information indicating R. Ayvazyan impeded or obstructed justice." (See also PSR ¶ 63.)  However, since the PSR was prepared, R. Ayvazyan and his wife and co-defendant Marietta Terabelian ("Terabelian") removed their location monitoring bracelets and absconded together from supervision.  On August 30, 2021, the Court signed bench warrants for R. Ayvazyan's and Terabelian's arrest.  As of the date of this filing, R. Ayvazyan and Terabelian remain fugitives at large.  The government submits that the PSR should include a two-level adjustment pursuant to USSG §3C1.1 for "Obstructing or Impeding the Administration of Justice," because, as set forth in Application Note 4(E), "escaping or attempting to escape from custody before ... sentencing" is a paradigmatic example of obstruction.

### The PSR Should Apply a Four-Level Adjustment for Aggravated Role Because the Defendant Was a Leader of the Criminal Activities

The trial evidence overwhelmingly demonstrated that R. Ayvazyan and T. Dadyan were the leaders of the crimes for which they and six other defendants were convicted.  This finding is already included in the PSRs for Terabelian and V. Dadyan, which state, "[b]ased on evidence presented at trial, R. Ayvazyan and T. Dadyan are the most culpable participants and considered the leaders and organizers of the offense."  (Terabelian PSR ¶ 94; V. Dadyan PSR

¶ 86.) The PSR for R. Ayvazyan should be amended to include the same finding, which is amply supported by the factual record.

When determining whether a defendant was a leader or organizer, the "[f]actors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." USSG §3B1.1, Application Note 4. Each of these factors compel a finding that R. Ayvazyan was a leader or organizer here.

For example, Government Exhibit ("GEX") 10, the text messages between R. Ayvazyan and T. Dadyan, details R. Ayvazyan's role as a leader and organizer. The text messages show that R. Ayvazyan came up with the idea to file fraudulent COVID-19 disaster relief loan applications (GEX 10 at 1), developed the "formula" for successfully defrauding the SBA and its lenders (id. at 10), took the lead in filing fraudulent applications (id. at 4-5 ("I did 7 apps last night and 4 of them got email that it's funded ... I didn't sleep all night I was working 24 hours straight")), and provided T. Dadyan with directions and advice on where to focus her efforts and when (id. at 4-5 ("Go to bluevine.com right now and apply they are approving and closing within 24 hours")). He thus exercised decision making authority, was extensively involved in the commission of the fraud, planned and organized the fraud, and defined the scope of the illegal activity.

Government Exhibits 115 and 116 further demonstrate that R. Ayvazyan recruited numerous individuals to participate in the fraud, provided them the raw materials they needed to prepare and submit fraudulent loan applications, and then directed the lion's share of the criminal proceeds to himself, which he and his wife and co-defendant laundered through a series of banks accounts they controlled and used to buy million-dollar luxury homes for themselves and their immediate family members. (GEX 115, 116.) For himself, R. Ayvazyan purchased a $3.25 million mansion, which he filled with gold coins and luxury watches he bought with stolen disaster relief funds. The fact that R. Ayvazyan received a larger share of the criminal proceeds is yet another hallmark of a leader and organizer. For all of these reasons, the offense level should be increased to account for R. Ayvazyan's role in the crimes.

**The PSR Should Apply a Two-Level Victim-related Adjustment**

The evidence at trial showed that R. Ayvazyan used the names of individuals who were elderly, deceased or foreign exchange students who lived thousands of miles away and had only visited the United States for a few months and never returned. Victims included, among many others, Mark Zindroski (elderly) (GEX 2e), Donald Sabala (elderly) (GEX 2a), Michael Hart (elderly) (GEX 2b), Nazar Terabelian (deceased) (GEX 2o, GEX 75), Olaf Landsgaard (deceased) (GEX 10 at 40, GEX 74), Iuliia Zhadko (foreign exchange student) (GEX 35a, GEX 6j, GEX 6l, GEX 44), Viktoriia Kauichko (GEX 44 at 11, 32) (foreign exchange student), and Anton Kudiumov (foreign exchange student) (GEX 2m, GEX 10 at 40, GEX 44). In addition, paragraph 31 of the PSR states that R. Ayvazyan and T. Dadyan also recruited elderly or disabled individuals into the fraud and explains in footnote 5 that

they were aware that at least one of these individuals may have had Alzheimer's Disease. (PSR ¶ 31, n.5; see also GEX 10 at 32 ("He has Alzheimer's[.] Right that [sic] a good excuse[.] Loll[.]")) While paragraph 47 of the PSR states that Probation has not recommended a victim-related adjustment, the government respectfully submits that the "vulnerable victim" adjustment under USSG §3A1.1(b)(1) applies here.

All of these victims meet the applicable standard for vulnerability. Application Note 2 for USSG §3A1.1(b)(1) requires that the victim be an individual "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." The purpose of the adjustment is to punish and deter criminals like R. Ayvazyan from victimizing those who cannot protect themselves:

> The "vulnerable victim" sentencing enhancement is intended to reflect the fact that some potential crime victims have a lower than average ability to protect themselves from the criminal. Because criminals incur reduced risks and costs in victimizing such people, a higher than average punishment is necessary to deter the crimes against them. . . . Defrauders who direct their activities not against banks, insurance companies, or large investors, but instead against people [with] . . . mental or educational deficiencies, . . . do not need to take as many precautions against the discovery of their scheme by the intended victims and in any event are less likely to be prosecuted, because the victims are less likely to know that they have been defrauded or if they know to have the know-how and initiative required to press a criminal complaint or bring a civil suit.

United States v. Etoty, 679 F.3d 292, 296 (4th Cir. 2012) (quoting United States v. Grimes, 173 F.3d 634, 637 (7th Cir.1999)).

In this case, R. Ayvazyan specifically victimized elderly persons (including those with disabilities), deceased persons, and foreign exchange students who had spent only a few months in the

6

United States years ago and now lived thousands of miles away in a foreign country. Each of these individuals was vulnerable because they had a lower-than-average ability to protect their name against R. Ayvazyan, who wanted to use it to fraudulently obtain loans and fraudulently open bank accounts to launder the stolen money. See, e.g., Etoty, 679 F.3d at 295-296 (explaining that a victim receiving "a fixed income of Social Security benefits, might be less inclined to take the sort of precautions against fraud and identity theft that are necessary for someone actively engaged in the job market. She had less need to monitor her employment or credit history, since they were not relevant to her source of income."); United States v. Cuellar, 165 F.3d 918 (9th Cir. 1998) (applying "vulnerable victim" enhancement where defendant used the identity of a deceased individual to fraudulently obtain a credit card in the deceased's name). Accordingly, the PSR should include a two-level "vulnerable victim" adjustment pursuant to USSG §3A1.1(b)(1).

**The PSR Should Apply a Two-Level Means of Identification Enhancement**

The government submits that the calculation of R. Ayvazyan's offense level under USSG § 2B1.1 also should be increased an additional two levels under one or both of USSG § 2B1.1(b)(11)(C)(i) and (ii). Specifically, a two-level enhancement applies under these sections where "the offense involved . . . (C)(i) the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, or (ii) the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification." USSG §2B1.1(b)(11)(C)(i), (ii).

7

A means of identification is "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." 18 U.S.C. § 1028(d)(7). Section 1028(d)(7) provides non-exhaustive examples of means of identification, including: "(A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;" or "(C) unique electronic identification number, address, or routing code." 18 U.S.C. § 1028(d)(7)(A), (C). The application notes to § 2B1.1 provide further examples contemplating that both an account number of a bank loan and a credit card are themselves means of identification. See U.S.S.G. §2B1.1 cmt. n.10(C)(ii)(I), (II); see also U.S.S.G. §2B1.1, cmt. background ("Because 18 U.S.C. § 1028(d) broadly defines "means of identification", the new or additional forms of identification can include items such as a driver's license, a credit card, or a bank loan."); United States v. Melendrez, 389 F.3d 829, 834 (9th Cir.2004) (finding the enhancement applicable where the defendant had used stolen social security numbers to create false forms of identification).[1]

Here, the evidence at trial demonstrated that R. Ayvazyan and his co-conspirators possessed and used the names of a number of actual people – including foreign exchange students who were only briefly in the United States many years earlier and at least one dead

---

[1] The application notes to § 2B1.1 further provide that "means of identification" has the meaning given that term in 18 U.S.C. § 1028(d)(7), "except that such means of identification shall be of an actual (i.e., not fictitious) individual, other than the defendant or a person for whose conduct the defendant is accountable under § 1B1.3 (Relevant Conduct)." U.S.S.G. §2B1.1 cmt. n.1.

person – to create driver's licenses submitted in support of PPP loan applications, credit cards found on R. Ayvazyan's person when he was stopped in Miami, and PPP bank loans in the names of those unwitting victims, among other means of identification. One prime example was the name "Iuliia Zhadko," in whose name R. Ayvazyan possessed at least five different credit cards when stopped in Miami and additional photographs of credit cards in this name on R. Ayvazyan's cell phone seized on November 5, 2020. (See, e.g. GEX 76.b (physical credit cards); 19.c (photos of other Zhadko means of identification from phone seized November 5, 2020).) The evidence also reflected multiple counterfeit driver's licenses in Zhadko's name submitted in support of PPP loan applications and a cryptocurrency account application. (See GEX 6.j at 18, 6.l at 16, 35.a at 30.) Zhadko was in fact a real person, having briefly visited the United States as a foreign exchange student in 2010. (See GEX 44 at 19.)

On a preponderance of the evidence, R. Ayvazyan used the name (i.e., the means of identification) of Zhadko to obtain multiple credit cards, drivers licenses, and bank loans which themselves constituted additional means of identification under one or both prongs of the § 2B1.1(b)(11)(C) enhancement. Thus, two additional levels should be applied to his offense level under section 2B1.1.

**Corrections and Clarifications**

In addition to the above, the government submits this response to correct or clarify the following:

- Paragraph 6 under the section titled "Charge(s) and Conviction(s)" should be corrected to state that R. Ayvazyan "used the name of M.Z., during and in relation to

9

bank fraud . . . ," not "the identification belonging to M.Z. . . . ."

- Paragraph 7 under the section titled "Charge(s) and Conviction(s)" should be corrected to state that R. Ayvazyan "used the name and California Driver's License number of N.T., during and in relation to wire fraud . . . .," not "used the California Driver's License number of N.T. . . . ."
- Paragraph 8 under the section titled "Charge(s) and Conviction(s)" should be corrected to state that the alleged conspiracy began "no later than March 2020," not "June 2020."
- Paragraph 10 under the section titled "Pretrial Adjustment" should be corrected to state that R. Ayvazyan was arrested on October 20, 2020, not October 21.  The second sentence should also be read to include "and home detention" after "Location Monitoring program."
- Paragraph 11 under the section titled "Pretrial Adjustment" should be updated to reflect the fact that on August 29, 2021, R. Ayvazyan and his wife and co-defendant Terabelian removed their location monitoring bracelets and absconded together from supervision; on August 30, 2021, the Court signed bench warrants for R. Ayvazyan and Terabelian's arrest; and, as of the date of this filing, R. Ayvazyan and Terabelian remain fugitives at large.
- Paragraphs 13, 14, and 19 under the section titled "Co-Defendants" should be corrected to state that co-defendants Marietta Terabelian, Artur Ayvazyan, and Vahe Dadyan were

found guilty by jury trial on June 25, 2021, not June 28. Paragraph 14 should also be corrected to state that co-defendant Artur Ayvazyan is scheduled to be sentenced on October 18, 2021, not October 4.

- Paragraph 29 under the section titled "The Conspiracy" should be corrected to state the alleged conspiracy continued "through at least August 2020," not "through July 2020."

- Footnote 2 under the section titled "The Conspiracy" should be corrected to state that "T. Dadyan texted R. Ayvazyan," not "T. Dadyan texted A. Ayvazyan."

- Paragraphs 33-36 and 38-41 under the section titled "The Conspiracy" should also be corrected to state "submitted and caused to be submitted", not "submitted".

- Paragraph 35 under the section titled "The Conspiracy" should also be corrected to state "On June 25, 2020, Grigoryan, R. Ayvazyan, Terabelian and their co-conspirators", not "On June 25, 2020, Grigoryan, Terabelian and their co-conspirators".

- Paragraph 39 under the section titled "The Conspiracy" should also be corrected to state "R. Ayvazyan, Terabelian, and their co-conspirators", not "Terabelian and her co-conspirators".

- Paragraph 41 under the section titled "The Conspiracy" should also be corrected to state "In support of the application, T. Dadyan and A. Ayvazyan", not "In support of the application, A. Ayvazyan".

- The second sentence of each of paragraphs 44 and 45 under the section titled "CBP Stop at Miami International Airport" contain references to information obtained by U.S. Customs and Border Protection during the manual search of certain phones that were in the possession of R. Ayvazyan and Terabelian during the border stop. This information was the subject of a motion to suppress, which the Court granted (ECF 296), and therefore should not be included in the PSR or otherwise used in connection with R. Ayvazyan's sentencing. To be clear, the seized credit cards described in the first sentence of each of paragraphs 44 and 45 were not implicated by the Court's suppression order, and thus the references to the credit cards should remain in the PSR.
- Paragraph 46 states that law enforcement conducted a search of "an apartment under Grigoryan's control on Canoga Avenue in Woodland Hills". Based on the evidence presented at trial, this apartment – which was located at 6150 Canoga Avenue, Unit 337 – was also under the control of R. Ayvazyan and Terabelian. Specifically, the evidence showed that, among other things, at the time of her arrest, Terabelian was in physical possession of a credit card in the name of "Viktoria Kauichko" that had been used to the pay the rent for this apartment which was leased in the name of "Viktoria Kauichko". (GEX 44, 76, 88.) A digital photograph of that same credit card was also found on a phone seized from R. Ayvazyan at his home. (GEX 19.c.)

- Paragraphs 42, 48, 57, 120, and 121 should be corrected to state that the actual amount of loan funds obtained by R. Ayvazyan and his co-conspirators was $16,907,071.26, not $17,029,484.26, as set forth in the updated information provided by the government to Probation via email on September 8, 2021.  Moreover, the actual amount of loan funds obtained from Radius Bank should be corrected to state zero, not $122,413.  Accordingly, the number of financial lenders from which Terabelian and her co-conspirators actually obtained loan funds should be corrected to state 12, not 13.
- Paragraph 80 under the section titled "Pending Charges" appears to misstate the year as "2015"; the government understands the state case was charged in "2021".

Dated: September 13, 2021        Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

　　　　/s/
CATHERINE AHN
SCOTT PAETTY
BRIAN FAERSTEIN
Assistant United States Attorneys
CHRISTOPHER FENTON
Department of Justice Trial Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA