# Exhibit 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

-oOo-

HONORABLE STEPHEN V. WILSON, UNITED STATES DISTRICT JUDGE

UNITED STATES OF AMERICA,

           Plaintiff,

  v.                                      No. 2:20-CR-000579-SVW

RICHARD AYVAZYAN; MARIETTA TERABELIAN,

           Defendants.

REPORTER'S TRANSCRIPT OF EX PARTE HEARING

LOS ANGELES, CALIFORNIA

SEPTEMBER 20, 2021

_____

SUZANNE M. McKENNON, CRR, RMR
UNITED STATES COURT REPORTER

UNITED STATES COURTHOUSE
350 W 1st STREET, ROOM 3411
LOS ANGELES, CALIFORNIA 90012
(213) 894-3913
suzanne@ears2hands.com

```
 1  APPEARANCES:

 2  On Behalf of the Government:

 3      CHRISTOPHER FENTON, Assistant United States Attorney
        SCOTT PAETTY, Assistant United States Attorney
 4      CATHERINE S. AHN, Assistant United States Attorney
        BRIAN R. FAERSTEIN, assistant United States Attorney
 5          United States Attorney's Office
            312 N Spring Street, Suite 1200
 6          Los Angeles, California 90012

 7  On behalf of the Defendant Ayvazyan:

 8      ASHWIN J. RAM, Attorney at Law
            Steptoe and Johnson LLP
 9          633 W 5th Street, Suite 1900
            Los Angeles, California 90071
10

11  On behalf of the Defendant Terabelian:

12      RYAN V. FRASER, Attorney at Law
            Bienert Katzman Littrell Williams LLP
13          601 W 5th Street, Suite 720
            Los Angeles, California 90071
14

15

16  Probation Officers:

17      EUNICE HABIG
        CRISTINA TORRES
18      DEVONA GARDNER
        GREGORY KWON
19

20

21

22

23

24

25
```

```
 1                (Proceedings commencing at 11:25 a.m.)
 2            THE COURTROOM DEPUTY:  Item Number 6, 20-579-SVW,
 3   United States of America versus Richard Ayvazyan and Marietta
 4   Terabelian.
 5       Counsel, please state your appearances.
 6            MR. FENTON:  Good afternoon, Your Honor.  Christopher
 7   Fenton, Scott Paetty, Catherine Ahn, and Brian Faerstein for
 8   the United States.
 9            MR. RAM:  Good afternoon, Your Honor.  Ashwin Ram on
10   behalf of Richard Ayvazyan, who is not present.
11            MR. FRASER:  Good morning, Your Honor.  Ryan Fraser
12   on behalf of Marietta Terabelian, who is also not present.
13            MS. AHN:  And, Your Honor, I believe U.S. Probation
14   Officers Torres and Gardner are in the audience, Your Honor.
15            THE COURT:  What did you say?
16            MS. AHN:  U.S. Probation Officers Gardner and Torres
17   are in the audience, Your Honor.
18            THE COURT:  Okay.
19            MS. HABIG:  So is Habig.
20            MS. AHN:  Yes, I apologize.
21            THE COURT:  I first want to inquire, even though
22   there is information regarding the absconding of Richard
23   Ayvazyan and his wife, Marietta Terabelian, but I want to
24   assure myself that the -- their status is as it appears.  And,
25   first, I want to hear directly from the probation officer, who
```

1  was supervising the defendants.  It may be the same person or
2  two officers, whether two officers or one.
3          MR. KWON:  Good afternoon, Your Honor.  Gregory Kwon
4  for Pretrial Services.  I'm covering for my colleague, Officer
5  Manuel Banyas.  He's on leave right now.
6          THE COURT:  I see.
7          MS. GARDNER:  Good after -- I'm sorry, good morning,
8  Your Honor.  Devona Gardner on behalf Pretrial Services.  And I
9  am also covering for the two assigned officers for the
10 defendants.
11         THE COURT:  But, as probation officers, have you
12 spoken to the officers who were assigned the respective
13 defendants?
14         MR. KWON:  Yes, Your Honor, I have.
15         THE COURT:  And have you, Ms. Gardner?
16         MS. GARDNER:  Yes, Your Honor, I have as well.
17         THE COURT:  And have those officers confirmed to you
18 that they lost contact with the defendants?
19         MR. KWON:  Yes, Your Honor.
20         THE COURT:  And that they haven't had contact since?
21         MR. KWON:  Yes, Your Honor.  I spoke with the
22 assigned officer on Friday, and he's on leave now so.
23         THE COURT:  I see.
24      And from your standpoint?
25         MS. GARDNER:  Yes, I have spoke with two assigned

```
 1  officers as well as their supervisor as late as this morning,
 2  Your Honor.
 3          THE COURT:  I see.  And so the contact was lost on
 4  what date again?  Refresh my memory.
 5          MS. GARDNER:  The date was August 29, 2021.
 6          THE COURT:  I see.
 7          MS. GARDNER:  Was it August 29th?
 8          MR. KWON:  Yes, Your Honor.
 9          THE COURT:  And that was a Sunday, wasn't it?
10          MS. GARDNER:  Off the top of my head, Your Honor,
11  yes, I believe it was.
12          THE COURT:  In your office, when defendants are
13  monitored, as these defendants were, with ankle bracelets, the
14  reports are that there is a triggering mechanism if the ankle
15  bracelet is broken; is that correct?
16          MR. KWON:  Yes, Your Honor.
17          THE COURT:  And that occurred in this instance?
18          MR. KWON:  Yes, Your Honor.
19          THE COURT:  From your standpoint?
20          MS. GARDNER:  Yes, Your Honor.  So what has taken
21  place is that, in our office, that there's two officers
22  assigned per defendant.  So Greg Kwon here is the one to
23  reference regarding any type of location monitoring points,
24  regarding both of them.
25          THE COURT:  I see.  And you have confirmed with those
```

```
 1   people that the ankle bracelets were broken?
 2             MR. KWON:  Yes, Your Honor.  I believe one of the
 3   defendants, the wife's bracelet, didn't trigger an open strap,
 4   but --
 5             THE COURT:  What was that?  I didn't hear you.
 6             MR. KWON:  The wife's ankle monitoring device didn't
 7   trigger an open strap, meaning that the device was damaged, but
 8   Mr. Ayvazyan's was.
 9             THE COURT:  I see.  But in any event, contact has
10   been lost?
11             MR. KWON:  That is correct, Your Honor.
12             THE COURT:  What type of investigation did the
13   probation department perform, if they did one, following the
14   realization that the bracelets were broken?
15             MR. KWON:  As soon as the alert occurred, the officer
16   made attempt, several telephonic attempts, to reach the
17   defendants.  And then, I believe, the following day they went
18   out to look for the tracker devices, ELOM devices.
19             THE COURT:  Say that again.
20             MR. KWON:  The following day they went out to look
21   for the ELOM devices, the tracker -- the GPS devices.  I'm
22   sorry.
23             THE COURT:  I see.  And did they find them?
24             MS. GARDNER:  No, they were not found, Your Honor.
25             THE COURT:  And did the probation officers interview
```

1  family members or other persons who might have knowledge about
2  their whereabouts?
3              MS. GARDNER:  Yes, Your Honor.  So on the date of
4  August 29, 2021, the location monitoring officer notified,
5  actually, government Counsel as well.  They were in contact
6  with the arresting agents -- one from FBI; the other from
7  IRS -- to inform them what took place.
8       Because the tracking device did not trigger a new
9  notification from the wife, Ms. Terabelian, what had occurred
10 was we felt that she might be in some type of danger.  So we
11 did notify local police department to do a welfare check as
12 well.  And then shortly after that, we did contact the family
13 member, which was the brother of Arthur Ayvazyan, to inquire if
14 he knew of his whereabouts.  At that time, he did not.
15             THE COURT:  I see.  Before I turn to Mr. Ram's
16 motion, let me inquire of the government, whoever speaks for
17 the government here.  Who is that?
18             MR. FENTON:  Me, Your Honor.
19             THE COURT:  Mr. Fenton?
20             MR. FENTON:  Yes.
21             THE COURT:  What information, if any, can you add to
22 what I've already addressed with the probation officers?
23             MR. FENTON:  Well, I can add it's the government's
24 understanding that there was also a note that was actually left
25 by one of the defendants or both of the defendants --

    1             THE COURT:  If you take the lectern -- I can hear you
    2    better if you take the lectern.
    3             MR. FENTON:  So, Your Honor, it's the government's
    4    understanding that there is a note that was left for the
    5    defendants -- by the defendants for their children, telling
    6    them that they are absconding and leaving because it's in the
    7    children's best interest.  And that was reported to us by
    8    Probation.  In addition, since that time --
    9             THE COURT:  Was that note retrieved?
   10             MR. FENTON:  I believe that the note was retrieved by
   11    Probation.
   12             MS. GARDNER:  No, it is our understanding that the
   13    note -- that we were advised of a note from the attorneys of
   14    the defendant.
   15             THE COURT:  Oh, I see.  I'll ask Mr. Ram about that
   16    when he addresses the Court.
   17             MS. GARDNER:  Thank you.
   18             MR. FENTON:  In addition, Your Honor, the government
   19    has -- the law enforcement has conducted an extensive
   20    investigation over the last three weeks since the time that the
   21    two defendants absconded, trying to locate them.  We actually
   22    have videotape of them entering a property that they used to
   23    live at, the Genesta property.  We see the two of them
   24    entering.
   25             Law enforcement then tried to apprehend them, and they

```
1   escaped.  And they are essentially --
2              THE COURT:  When they tried to enter this property,
3   was that -- how long after the government became aware that
4   they had broken the bracelets?
5              MR. FENTON:  I believe that it was on -- they
6   absconded on August 19th, and I believe it was September 2nd or
7   September 3rd, so --
8              THE COURT:  So you're saying --
9              MR. FENTON:  So they absconded on August 29th.  And
10  on September 2nd, there was a video recording of them entering
11  the Genesta property where they used live and where Mr. Richard
12  Ayvazyan's mother currently lives.
13       And at that time, law enforcement was outside that
14  property and started to amass to search the property, and a car
15  slipped out, we believe, with the two defendants, and they
16  evaded law enforcement.
17             THE COURT:  And in terms of the continuing
18  investigation, has any other lead turned up?
19             MR. FENTON:  There have been -- there's witnesses to
20  Mr. Richard Ayvazyan being in the neighborhood.  We've seen his
21  vehicle, a vehicle registered to him, that's being driven
22  around by family members.  And there are additional leads that
23  we have pursued.  The investigation is extensive and has
24  included, you know, significant effort on the part of law
25  enforcement to try to find them.  And to date, it's to no
```

```
 1  avail.
 2           THE COURT:  I see.  All right.  Let me hear from
 3  Mr. Ram.  Mr. Ram is here -- oh, Mr. Ram, yeah.
 4           MR. RAM:  Lectern, Your Honor?
 5           THE COURT:  Yes, please.
 6       First, before we get to your motion, is there anything you
 7  can add to what I've already inquired of regarding your clients
 8  status?
 9           MR. RAM:  No, Your Honor.  We've had no contact with
10  Mr. Ayvazyan since August 25th, several days prior to
11  August 29th.
12           THE COURT:  I see.  And now prior to August 29th, did
13  you and Richard Ayvazyan meet with the probation officer for
14  preparation of a presentence report?
15           MR. RAM:  No, Your Honor.  Last, I think we had
16  reached out to schedule something with the probation officer
17  and get the sentencing continued.  That was denied, and nothing
18  was scheduled with Probation.
19           THE COURT:  I see.  Before I ask some further
20  questions of you, let me inquire of Mr. Fraser.
21       In terms of your client, Marietta Terabelian, can you tell
22  me what contact, if any, you've had since August 29th with her
23  and when your last contact was with her?
24           MR. FRASER:  No contact with her since August 27th,
25  phone conversation.  And we've made multiple attempts to
```

1   contact her since then, with no response or success in reaching
2   her.
3          THE COURT:  And did you meet with the probation
4   officer with your client in preparation for a presentence
5   report?
6          MR. FRASER:  No.
7          THE COURT:  Okay.  All right.  Now, Mr. Ram, you've
8   made a motion to withdraw.  And the essence of it seems to be
9   that you've lost total contact with your client.
10         MR. RAM:  That's correct, Your Honor.
11         THE COURT:  Yeah.  But there is authority for
12  sentencing a defendant in absentia, and I intend to follow that
13  authority.  But I also understand that, given the pendency of
14  your motion, you have not had a sufficient opportunity to file
15  a memoranda -- memorandum on behalf of your client regarding
16  sentencing, and I'll give you that opportunity.
17      How much time will you need to prepare a sentencing
18  memorandum or exhibits or whatever you intend to do?
19         MR. RAM:  I think part of the challenge is we don't
20  know what to do.  We have no direction from the client.  I
21  would ask for a six-month continuance of the sentencing --
22         THE COURT:  I'm not going to do that.
23         MR. RAM:  -- to give Probation --
24         THE COURT:  No, I'm not going to extend it for six
25  months.  I'm going to give you a reasonable time to submit a

```
 1   sentencing memorandum.  And one of the reasons why I'm not
 2   going to allow you to withdraw is that the case involved a
 3   massive amount of evidence that you have spent I don't know how
 4   many hours on with four or five lawyers or more from your law
 5   firm, and you have intimate knowledge of the case, and you have
 6   represented on prior occasions that you're intimately familiar
 7   with your client.  As a matter of fact, I remember your
 8   representation at the time we had to consider bail pending
 9   sentencing.
10        So I'll give you 30 days to prepare a sentencing
11   memorandum.
12        What about you, Mr. Fraser? 30 days for you also on behalf
13   of Mr. Ayvazyan?
14             MR. FRASER:  I appreciate that, Your Honor.  I
15   think -- I mean, of course, likewise, I would make the same
16   request that I have an opportunity, if we're not allowed to
17   withdraw, to speak to Ms. Terabelian --
18             THE COURT:  Well, look, that's obvious.  And if that
19   was a reason in and of itself to withdraw, then there couldn't
20   be any sentence in absentia, because anyone who is sentenced in
21   absentia has a lawyer who is in the same or similar predicament
22   to you.
23        So you each have 30 days to prepare sentencing memorandum.
24   I'll give the government a week to respond.
25        What about the presentence reports?  Are they being
```

1  prepared as we speak, or what is the status of those?  It's
2  clear they will have to be prepared without the interview of
3  the defendants.
4          MS. TORRES:  Hi, Judge.  Cristina Torres with
5  Probation.  I wrote the presentence report for Mr. Ayvazyan.
6          THE COURT:  You've done it already?
7          MS. TORRES:  Yes.  Well, we've made several attempts
8  to make -- do the interview.  We sent the forms, but we never
9  got a response in order to --
10         THE COURT:  But is the report in final form?
11         MS. TORRES:  No.  We believe we'll be adding an
12 enhancement.
13         THE COURT:  When will your report be finalized?
14         MS. TORRES:  Typically, Your Honor, we wait for the
15 objections from the parties, and we --
16         THE COURT:  Well, what I'm thinking here is -- oh, I
17 see.  I see.
18         MS. TORRES:  Your Honor --
19         THE COURT:  One moment.
20    So you have -- the process would be to prepare the report,
21 give a copy to the defense lawyer and the government, and get
22 their responses, and then prepare a final report either
23 agreeing with their objections or not?
24         MS. TORRES:  Yes, Your Honor.  And they already
25 have -- both the parties have a preliminary report.

1     THE COURT:  I see.  So I guess -- I see.  But in
2  preparing a sentencing memorandum, it would appear to me that
3  the defense counsel should have the final report before they
4  prepare sentencing memorandum; otherwise, they don't know what
5  the recommendation is.
6     So did you say that the respective Counsel have filed
7  objections?
8     MS. TORRES:  I believe the government has.  I have
9  not received Mr. Ram's objections.
10    THE COURT:  Oh, I see.
11    And what about you, Mr. Fraser?  Have you filed any
12 objections to the report?
13    MR. FRASER:  Yes, we've submitted our objections to
14 the presentence report a week ago.
15    THE COURT:  I see.  I'll give Mr. Ram ten days to
16 file objections to the report and the --
17    MR. RAM:  Your Honor, we submitted preliminary
18 objections on September 14th.
19    THE COURT:  Oh, I see.  Then they have submitted
20 objections.
21    Do you have those?
22    MS. TORRES:  I have not received them, but I can go
23 onto PACER.
24    THE COURT:  Yes.  And Mr. Ram says he has done that.
25    And so then I think within ten days the Probation

```
1   Department should finalize the presentence report.  And then
2   the 30 days that I gave each defense lawyer to file a
3   sentencing memorandum will begin from that point.  In other
4   words, the point that the sentencing memorandum -- the
5   presentence reports are finalized.
6            MS. TORRES:  Thank you.
7            THE COURT:  Understood?
8            MS. TORRES:  Yes.  So September 30th, Your Honor?
9            THE COURT:  Well, would you -- have you been keeping
10  track of this, Paul?  Can you sort of give us specific dates?
11           THE COURTROOM DEPUTY:  Yes, Your Honor.  The
12  presentence report will be due September 30th, 30 days from
13  that date, falls on a weekend.  So the government's response
14  would then be due -- let's see.  On October 1st or the -- I
15  kind of lost track.
16           MS. GARDNER:  November 1st.
17           THE COURTROOM DEPUTY:  November 1st.
18           THE COURT:  Yeah.
19           MS. AHN:  Your Honor, did you mean the defense
20  response or the government's response 30 days from the PSR?
21           THE COURT:  The government's response.
22           MR. RAM:  The defense -- I believe that would be the
23  defense response 30 days after.
24           THE COURT:  Government -- the defendants have 30 days
25  from the date on which the presentence report is finalized,
```

1   which I'm understanding to be September 30th.
2       And October 1 would be the date that the defendants are to
3   file their sentencing memorandum.
4           THE COURTROOM DEPUTY:  I'm sorry, I misspoke.
5   November 1st.
6           THE COURT:  November 1st.  And then ten days from
7   November 1st, November 10th or 11th, the government is to file
8   a responsive pleading, and the sentencing will occur the
9   following Monday.
10      What Monday?  What Monday would that be?
11          THE COURTROOM DEPUTY:  November 15th, Your Honor.
12          THE COURT:  So what date did the government -- I said
13  November 10th.  Oh, and then it will be five days until the
14  sentencing.  Yes, November 15th.  And it will occur on
15  November 15th at 11:00 a.m.
16      And, of course, the Court has to maintain some
17  flexibility.  There may be changing circumstances.  If anything
18  changes, the parties, of course, should notify the Court
19  immediately.  All right.  Thank you.
20          MR. RAM:  Your Honor, there was a second motion to
21  disqualify the prosecution team from the sentencing.
22          THE COURT:  That's denied.
23          MR. RAM:  Thank you, Your Honor.
24      (Adjourned at 11:50 a.m.)
25                              -oOo-

```
 1                    REPORTER'S CERTIFICATE
 2
 3
 4      I certify that the foregoing is a correct transcript of
 5  proceedings in the above-entitled matter.
 6
 7  /s/ Suzanne M. McKennon, CSR, CRR, RMR
    _____    Date:  01/15/2021
 8  United States Court Reporter
```