# ORIGINAL

1   Richard J. Reynolds (SBN 89911)
    E-mail:  rreynolds@bwslaw.com
2   BURKE, WILLIAMS & SORENSEN, LLP
    1851 East First Street, Suite 1550
3   Santa Ana, CA  92705-4067
    Tel:  949.863.3363       Fax:  949.863.3350
4
    Attorneys for Third Party Claimants and Petitioners
5   PRIVATE MONEY SOLUTIONS, INC. and
    GREGORY SHIRIN
6

7

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,          Case No.  CR 20-00579-SVW

12              Plaintiff,              **PETITION AND REQUEST FOR**
                                        **HEARING PURSUANT TO 21**
13  v.                                  **U.S.C. § 853(n)(2)**

14  RICHARD AYVAZYAN, AKA
    "RICHARD AVAZIAN" AND
15  "IULIIA ZHADKO," et al.,

16              Defendants

17  and

18  PRIVATE MONEY SOLUTIONS,
    INC. AND GREGORY SHIRIN,
19  THIRD PARTY CLAIMANTS AND
    PETITIONERS
20

21         Private Money Solutions, Inc., a California corporation, and Gregory Shirin,

22  an individual (hereinafter "Petitioners") by and through their counsel, Richard J.

23  Reynolds of Burke, Williams & Sorenson, petition this Court for an ancillary

24  hearing pursuant to 21 U.S.C. § 853(n)(2), and they assert their interest as bona fide

25  purchasers pursuant to 21 U.S.C. § 853(n)(6)(B) with respect to the real property

26  located at 4910 Topeka Drive, Tarzana, California, APN No. 2176-029-031

27  (hereinafter the "Property"), which is more particularly described in this Petition.

28  The Property has been the subject of a criminal forfeiture in favor of the United

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

RIV #4869-1275-9809 v1                      - 1 -            CR 20-00579-SVW
                                                    PETITION AND REQUEST FOR HEARING
                                                    PURSUANT TO 21 U.S.C. § 853(N)(2)

1   States of America, and Petitioners hold a Promissory Note secured by First Deed of

2   Trust against the Property.

3                              <u>PARTIES AND JURISDICTION</u>

4          1.      Petitioner Private Money Solutions, Inc., is a California corporation,

5   and Petitioner Gregory Shirin is a United States citizen, and are Petitioners and

6   Third-Party Claimants in the above-captioned ancillary proceeding pursuant to 21

7   U.S.C. § 853(n) and Rule 32.2 of Federal Rules of Criminal Procedure.

8          2.      The United States of America (hereinafter "Plaintiff") is the Plaintiff

9   in the underlying criminal case.

10         3.      Richard Ayvazyan (hereinafter "Ayvazyan" or "Defendant") and

11  Marietta Terabelian (hereinafter "Terabelian" or "Defendant") are Defendants in

12  the criminal prosecution underlying this proceeding.

13         4.      The Court has jurisdiction over the Property.

14                              <u>THE PROPERTY IN ISSUE</u>

15         Petitioners claim a senior lien interest in the Property pursuant to a written

16  Promissory Note provided Petitioners by Defendants Ayvazyan and Terabelian

17  dated June 18, 2020 in the principal amount of $2,112,500.00.  A true and correct

18  copy of that signed Promissory Note is attached and incorporated hereto as Exhibit

19  1.  That Promissory Note ("Note") was provided in connection with the making of a

20  loan by Petitioners to criminal Defendants Ayvazyan and Terabelian in connection

21  with their purchase of the Property, which purchase closed escrow on June 25,

22  2020.  In connection therewith, Ayvazyan and Terabelian provided a First Deed of

23  Trust in favor of Petitioners, which Deed of Trust was recorded on June 25, 2020 in

24  Los Angeles County as Instrument No. 20200695395 ("Deed of Trust").  A true

25  and correct copy of that Deed of Trust is attached and incorporated hereto as

26  Exhibit 2.  Petitioners provided the sum of $2,112,500.00 to escrow in order to

27  facilitate that purchase.

28  ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

RIV #4869-1275-9809 v1                    - 2 -              PETITION AND REQUEST FOR HEARING
                                                            PURSUANT TO 21 U.S.C. § 853(N)(2)

1    Pursuant to 21 U.S.C. § 853(n)(2) Petitioners petition this Court to adjudicate
2    the validity of their Note secured by First Deed of Trust against the Property.
3    Petitioners specifically allege that they are bona fide purchasers for value of the
4    right, title or interest in the Property which is the Deed of Trust recorded June 25,
5    2020 and that at the time of that purchase were reasonably without cause to believe
6    that the property in question was subject to forfeiture under 21 U.S.C. § 853 or
7    otherwise. Pursuant to *United States v. Huntington National Bank*, 574 F.3d 329,
8    331 (6th Cir. 2009), the term "bona fide purchaser", includes a bona fide
9    encumbrancer.
10    Petitioners' loan is in default, and otherwise becomes all due and payable on
11    January 1, 2022.  The interest rate is 8.99 percent and the default rate is 24 percent
12    (24%).  Attached and incorporated as Exhibit 3 is a true and copy of the Demand
13    Loan Payoff on Petitioner's loan secured by the Property.  Interest is due and owing
14    from August 1, 2021 to the present, and the default rate of interest began to accrue
15    on September 1, 2021.  In addition, in order to protect Petitioners' rights to its
16    collateral, once the real property insurance was cancelled on the Property,
17    Petitioners placed insurance on the Property, which is listed on the payoff demand
18    as an unpaid loan charge or advance of $15,947.61. Upon the sale of the Property
19    by Plaintiff, Petitioners request to be paid all amounts that are due to it.
20    ///
21    ///
22    ///
23    ///
24    ///
25    ///
26    ///
27    ///
28    ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

RIV #4869-1275-9809 v1                - 3 -                PETITION AND REQUEST FOR HEARING
PURSUANT TO 21 U.S.C. § 853(N)(2)

RELIEF REQUESTED

Petitioners request that the Court hold a hearing ancillary to the criminal convictions of the Defendants in which Petitioners may present evidence and witnesses pursuant to 21 U.S.C. § 853(n)(5) and that this Court recognize the interests of Petitioners as set forth herein.

Respectfully submitted,

Dated: October 27, 2021

BURKE, WILLIAMS & SORENSEN, LLP

By: _____
Richard J. Reynolds
Attorneys for Third Party Claimants
PRIVATE MONEY SOLUTIONS,
INC. and GREGORY SHIRIN

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

RIV #4869-1275-9809 v1

- 4 -

PETITION AND REQUEST FOR HEARING
PURSUANT TO 21 U.S.C. § 853(N)(2)

1

## VERIFICATION

2

3      I declare under the laws of the United States of America that the foregoing is

4  true and correct.

5      Executed this _27_ day of October, 2021.

6

7  _____

                           Gregory Shirin

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

RIV #4869-1275-9809 v1

- 5 -

PETITION AND REQUEST FOR HEARING
PURSUANT TO 21 U.S.C. § 853(N)(2)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFICATION


I declare under the laws of the United States of America that the foregoing is
true and correct.

Executed this 27 day of October, 2021.

Alex Guralnik for
Private Money Solutions

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

RIV #4869-1275-9809 v1

- 6 -

PETITION AND REQUEST FOR HEARING
PURSUANT TO 21 U.S.C. § 853(N)(2)

# EXHIBIT 1

## PROMISSORY NOTE SECURED BY DEED OF TRUST

$2,112,500.00                                      Los Angeles, California
                                                  June 18, 2020

    1.   **Terms of Note Generally**. For value received, the undersigned Richard Ayvazyan (collectively "Maker"), promises to pay Gregory Shirin ($2,000,000.00) and Private Money Solutions, Inc. ($112,500.00) (collectively "Holder), the principal sum of Two Million One Hundred Twelve Thousand Five Hundred Dollars ($2,112,500.00), together with interest thereon at the rate of 8.99 percent per annum.

    2.   **Term, Payments, Interest on Default**. Interest shall begin to accrue on close of escrow and is pro-rated in escrow. Interest is calculated on a 360 day year basis. Maker shall make monthly payments of interest only in the sum of $15,826.15, payable in the manner set forth in paragraph 3, beginning August 1, 2020, and continuing monthly thereafter, on the first day of each month. There is three months prepaid interest, so Maker shall begin making payments on November 1, 2020. The entire sum of unpaid principal, accrued interest, and any other sums due, is payable on or before January 1, 2022. All sums will be added to the principal upon default and maturity and bear interest at the default rate. **The Interest Rate shall be increased on maturity, and on default, to a total of 24.00%**.

    3.   **Form, Amount and Place of Payment**. Principal and interest shall be payable in lawful money of the United States. All payments due hereunder are to be sent to FCI at 8180 East Kaiser Boulevard, Anaheim Hills, CA 92808, or such other place as the Holder may from time to time designate by written notice to the Maker.

    4.   **Security**. This Note is secured by a First Deed of Trust with regard to certain real property located at **4910 Topeka Drive, Tarzana CA 91356**, in favor of California TD Specialists, 8190 E. Kaiser Blvd., Anaheim Hills, CA 92808, as Trustee of even date herewith, for the benefit of the Holder.

    5.   **Extension of Note**. The underlying loan, property taxes and insurance must be current and paid on time at the time of extension. The market conditions must remain constant and the extension is only granted upon the discretion of the Holder. The term of this Note can be extended at Maker's option for six months, at the cost of 1 point payable to Private Money Solutions, Inc with written request made by Maker. Such extension request must be in writing and submitted on or before December 1, 2021, along with the payment.

    6.   **Prepayment; Charge**. This Note may be prepaid at any time provided four months' interest has been paid. There will be no refund of costs, fees, interest or points.

    7.   **Acceleration and Default**. At the option of the Holder hereof, this Note shall become immediately due and payable, without notice or demand, upon the occurrence at any time of any of the following events, each of which is a default under this Note:

A.     Default in the payment of any amount due hereunder, which default continues for a period of ten (10) days after the due date thereof, however nothing herein contained shall be interpreted or construed to be a waiver of Maker's right to reinstatement in the event of a non-judicial foreclosure, in which event reinstatement shall be effected by the payment of only the amount in default;

B.     The making of an assignment for the benefit of creditors by the Maker, or the appointment of a receiver for all or substantially all of the property of the Maker, or the filing by the Maker of a petition in bankruptcy or other similar proceeding under law for the relief of debtors;

C.     The filing against the Maker for the payment of this Note, whether as a maker, endorser, guarantor, surety or otherwise, of a petition in bankruptcy or other similar proceeding under law for relief of debtors, if such petition is not vacated or discharged within sixty (60) days after the filing thereof; or

D.     Maker's failure to perform its obligations under this Note and the accompanying Deed of Trust, including, *inter alia*, Maker's failure to pay any insurance premiums or real estate tax payments when due, which failure continues for a period of ten (10) days after the date for performance;

E.     Default on any senior lien for a period of ten (10) days; or

F.     Maker's misrepresentation or omission of a material fact on Maker's loan application, or in any other document containing a representation of a fact that is not true.

The Holder's failure to declare this Note due and payable shall not constitute a waiver of the right to later treat the entire indebtedness as due and payable.

8.     **Acceleration Upon Transfer of Property**. In the event of sale or transfer, conveyance or alienation of either said real property, or any part thereof, or any interest therein, whether voluntary or involuntary, Holder shall have the right of acceleration, at its option, to declare this Promissory Note Secured by Deed of Trust, irrespective of the maturity date expressed herein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by the Holder to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions. A conveyance or alienation of said real property by Maker to a legal entity owned by the Maker shall not give rise to such right of acceleration. However, any transfer (voluntary or involuntary) to any party other than a Maker of ownership interests in any entity that owns such property, shall give rise to such right of acceleration.

9.     **Late Charge**. If payment is not <u>received</u> by the 10th of each month, there will be a $1,582.61 (10.00%) late charge based on the minimum monthly installment. Any such late charges will be added to the principal amount and shall accrue interest at the rate of 24.00% per annum at the end of that particular month. All payments made by Maker shall be first credited to interest when due and then to principal.

10. **Costs of Collection.** If this Note is not paid when due, whether at maturity or by acceleration, the Maker promises to pay all costs incurred by the Holder in collecting the amounts due hereunder, including attorneys' fees and all expenses incurred by the Holder in connection with the protection of or realization on any collateral securing this Note, whether or not suit is filed hereon; such costs and expenses shall include, without limitation, all costs, reasonable attorneys' fees and expenses incurred by the Holder hereof in connection with any arbitration, court proceeding, insolvency, bankruptcy, reorganization, arrangement or other similar proceedings involving the Maker which in any way affects the exercise by the Holder hereof of its rights and remedies under this Note, or under any deed of trust, security agreement, or other agreement or instrument now or hereafter securing or pertaining to this Note.

11. **Waiver.** Presentment, demand, protest, notices of protest, dishonor and non-payment of this Note and all notices of every kind are hereby waived. No single or partial exercise of, or forbearance from exercising, any power hereunder or under any deed of trust, or security agreement or other agreement or instrument now or hereafter securing or pertaining to this Note shall preclude other or further exercises thereof or the exercise of any other power. The Holder hereof shall at all times have the right to proceed against any portion of any security now or hereafter held in such order and in such manner as the Holder may determine in its sole discretion, without waiving any rights with respect to any other security. No delay or omission on the part of the Holder hereof in exercising any right hereunder shall operate as a waiver of such right or of any other right under this Note. The release of any party liable on this Note shall not operate to release any other party liable hereon.

12. **Governing Law.** This Note shall be governed by and construed in accordance with the laws of the State of California.

13. **Note Arranged By Licensed Broker; Exemption from Usury.** This Note was arranged by Private Money Solutions, Inc., a California Licensed Real Estate Broker, License No. 01785022, which participated in negotiating the Note's terms and received compensation therefor.

14. **Commercial Loan.** This is a commercial loan, secured for business purposes.

15. **Assignability.** This Note is non-assignable by Maker.

IN WITNESS WHEREOF, the Maker has caused this Promissory Note to be executed as of the _19th_ day of June, 2020.

**MAKER:**

By:

Richard Ayvazyan

3

# EXHIBIT 2

FOR REFERENCE ONLY: 20200695395

**Progressive Title**

RECORDING REQUESTED BY
**Private Money Solutions**
AND WHEN RECORDED MAIL DOCUMENT TO:

NAME   Private Money Solutions Inc, Attn: Alex Gurainik

STREET
ADDRESS   15030 Ventura Blvd #500

CITY, STATE &
ZIP CODE   Sherman Oaks, CA 91403

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust, Security Agreement, Fixture Filing and Assignment of Leases and Rents

**Title of Document**

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

■ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☐ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

**This page is part of your document - DO NOT DISCARD**

## 20200695395



Pages:
0026

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**06/25/20 AT 08:00AM**

| | |
|---|---:|
| FEES: | 159.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 159.00 |



**LEADSHEET**



202006250140047

00018436563



010578618

**SEQ:
03**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E06_200624_P



Progressive Ti...

**RECORDING REQUESTED BY**
Private Money Solutions
AND WHEN RECORDED MAIL DOCUMENT TO:

NAME   Private Money Solutions Inc, Attn: Alex Guralnik

STREET ADDRESS   15030 Ventura Blvd #500

CITY, STATE & ZIP CODE   Sherman Oaks, CA 91403

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust, Security Agreement, Fixture Filing and Assignment of Leases and Rents

**Title of Document**

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☑ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☐ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

## DEED OF TRUST, SECURITY AGREEMENT, FIXTURE FILING AND ASSIGNMENT OF LEASES AND RENTS

A.P.N. 2176-029-031

THIS DEED OF TRUST, SECURITY AGREEMENT, FIXTURE FILING AND ASSIGNMENT OF LEASES AND RENTS, ("Deed of Trust") is made as of June 18, 2020, by Richard Ayvazyan and Marietta Terabelian, Husband and Wife, as Community Property ("Trustor") to California TD Specialists, 8190 E. Kaiser Blvd., Anaheim Hills, CA 92808 ("Trustee"), for the benefit of Gregory Shirin ($2,000,000.00) and Private Money Solutions, Inc. ($112,500.00) (collectively "Beneficiary") securing an indebtedness of $2,112,500.00.

## ARTICLE 1 -- GRANTS AND OBLIGATIONS SECURED

**A.    Grants.**

**1.1    Land.**  Trustor hereby irrevocably grants, transfers and assigns to Trustee, its successors and assigns, in trust, with power of sale and right of entry and possession, all estate, right, title and interest of Trustor, now owned or hereafter acquired, in to and under that certain real property situated in the County of Los Angeles, City of Los Altos Hills, State of California, commonly described as **4910 Topeka Drive, Tarzana, CA 91356**, and more particularly described  in "Exhibit A", which is attached hereto and incorporated by this reference (the "Land") together with all right, title and interest of Trustor therein and in and to:

**(a)    Improvements.**  All buildings and other improvements now or hereafter located on the Land, all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant), pumps and pumping stations used in connection therewith and all shares of stock evidencing the same, all machinery, equipment, appliances, furnishings, inventory, fixtures and other property used or useable in connection with the Land and the improvements thereon, including, but not limited to, all storage tanks and pipelines, all gas, electric, heating, cooling, air conditioning, refrigeration and plumbing fixtures and equipment, which have been or may hereafter be attached or affixed in any manner to any building now or hereafter on the Land (the "Improvements");

**(b)    Rights of Way.**  All the rights, rights of way, easements, licenses, profits, privileges, tenements, hereditaments and appurtenances, now or hereafter in any way appertaining and belonging to or used in connection with the Land and/or the Improvements, and any part thereof or as a means of access thereto, including, but not limited to, any claim at law or in equity, and any after acquired title and reversion in or to each and every part of all streets, roads, highways and alleys adjacent to and adjoining the same; and

**(c)    Income.**  All rentals, earnings, income, deposits, security deposits, receipts, royalties, revenues, issues and profits, and accounts receivable generated from the use and operation of all or any portion of the Land and/or the Improvements, which, after the date hereof, and while any portion of the indebtedness secured hereby remains unpaid, may accrue from the Land and/or the Improvements

and any part thereof, subject, however, to the rights, powers and authority described in Article 3 below.

Any of the foregoing arising or acquired by Trustor after the date hereof, the Land, and the property described in subparagraphs (a), (b) and (c) of this Section 1.1 and the rights described in Section 1.4 below are collectively defined hereinafter as the "Property."

**1.2    Collateral**. Trustor hereby grants a security interest to Beneficiary in, and assigns to Beneficiary, all of Trustor's right, title and interest in and to the following described property and any and all products and proceeds thereof, now owned or hereafter acquired by Trustor (sometimes all of such being collectively referred to herein as the "Collateral"):

**(a)    Tangible Property**.   All existing and future goods and tangible personal property located on the Property or wherever located and used or useable in connection with the use, operation or occupancy of the Property or in construction of the Improvements, including, but not limited to, all appliances, furniture and furnishings, fittings, materials, supplies, equipment and fixtures, and all building material, supplies and equipment now or hereafter delivered to the Property and installed or used or intended to be installed or used therein whether stored on the Property or elsewhere; and all renewals or replacements thereof or articles in substitution thereof;

**(b)    General Intangibles**.   All general intangibles relating to design, development, operation, management and use of the Property and construction of the Improvements, including, but not limited to (i) all names under which or by which the Property or the Improvements may at any time be operated or known, all rights to carry on business under any such names or any variants thereof, and all goodwill in any way relating to the Property; (ii) all permits, licenses, authorizations, variances, land use entitlements, approvals and consents issued or obtained in connection with the construction of the Improvements; (iii) all permits, licenses, approvals, consents, authorizations, franchises and agreements issued or obtained in connection with the use, occupancy or operation of the Property; (iv) all rights as a declarant (or its equivalent) under any covenants, conditions and restrictions or other matters of record affecting the Property, (v) all materials prepared for filing or filed with any governmental agency; (vi) all rights under any contract in connection with the development, design, use, operation, management and construction of the Property; and (vii) all books and records prepared and kept in connection with the acquisition, construction, operation and occupancy of the Property and the Improvements;

**(c)    Contracts**.   All construction, service, engineering, consulting, leasing, architectural, design and other similar contracts of any nature (including, without limitation, those of any general contractors, subcontractors and materialmen), as such may be modified, amended or supplemented from time to time, concerning the design, construction, management, operation, occupancy, use, and/or disposition of any portion of or all of the Property;

**(d)    Plans and Reports**.   All architectural, design and engineering drawings, plans, specifications, working drawings, shop drawings, general conditions, addenda, soil tests and reports, feasibility studies, appraisals, engineering

2

reports, environmental reports and similar materials relating to any portion of or all of the Property and modifications, supplements and amendments thereto;

      **(e)**   **Sureties**.   All payment and performance bonds or guarantees and any and all modifications and extensions thereof relating to the Property;

      **(f)**   **Payments**.   All reserves, deferred payments, deposits, refunds, cost savings, letters of credit and payments of any kind relating to the construction, design, development, operation, occupancy, use and disposition of all or any portion of the Property, including, without limitation, any property tax rebates now owing or hereafter payable to Trustor;

      **(g)**   **Claims**.  All proceeds and claims arising on account of any damage to or taking of the Property or any part thereof, and all causes of action and recoveries for any loss or diminution in the value of the Property;

      **(h)**   **Insurance**.   All policies of, and proceeds resulting from, insurance relating to the Property or any of the Collateral, and any and all riders, amendments, renewals, supplements or extensions thereof, and all proceeds thereof;

      **(i)**   **Deposits**.  All deposits made with or other security given to utility companies by Trustor with respect to the Land and/or the Improvements, and all advance payments of insurance premiums made by Trustor with respect thereto and claims or demands relating to insurance and all deposit accounts wherever located;

      **(j)**   **Stock**.  All shares of stock or other evidence of ownership of any part of the Property that is owned by Trustor in common with others, including all water stock relating to the Property, if any and all documents or rights of membership in any owners' or members' association or similar group having responsibility for managing or operating any part of the Property;

      **(k)**   **Proceeds**.  All proceeds, whether cash, promissory notes, contract rights or otherwise, of the sale or other disposition of all or any part of the estate of Trustor upon the Property now or hereafter existing thereon;

      **(l)**   **Sale Contracts**.   All sales contracts, escrow agreements and broker's agreements concerning the sale of any or all of the Property, and all amendments thereto;

      **(m)**   **Leases and Rents**.   All the Leases, income, rents, revenues, issues, deposits, receipts, profits and proceeds, and accounts receivable generated from the use and operation, of the Property and the Collateral to which Trustor may be entitled, whether now due, past due or to become due; including, without limiting the above items, all Goods, Accounts, Documents, Instruments, Money, Chattel Paper and General Intangibles, as those terms are defined in the Commercial Code from, time to time in effect in the State of California.

      **1.3**   **Fixture Filing**. The personal property in which Beneficiary has a security interest includes goods which are or shall become fixtures on the Property. This Deed of Trust is intended to serve as a fixture filing pursuant to the terms of Sections 9313 and 9402 of the California Uniform Commercial Code. This filing is to be

recorded in the real estate records of the county in which the Property is located.  This filing remains in effect as a fixture filing until this Deed of Trust is released or satisfied of record or its effectiveness otherwise terminates as to the Property.  In that regard, the following information is provided:

| | |
|---|---|
| Name of Debtor: | Richard Ayvazyan |
| | Marietta Terabelian |
| Address of Debtor: | See Section 6.12 hereof |
| Name of Secured Party: | Gregory Shirin |
| | Private Money Solutions, Inc. |

Address of Secured Party: See Section 6.12 hereof

**1.4    Mineral Rights**. Trustor hereby assigns and transfers to Beneficiary all damages, royalties and revenue of every kind, nature and description whatsoever that Trustor may be entitled to receive from any person or entity owning or having or hereafter acquiring a right to the oil, gas or mineral rights and reservations of the Property, with the right in Beneficiary to receive and receipt therefor, and apply the same to the indebted-ness secured hereby either before or after any default hereunder, and Beneficiary may demand, sue for and recover any such payments but shall not be required to do so.

**B.    Obligations Secured.**

**1.5    Payment of Indebtedness**. Subject to the fact that the assignment of rents, issues and profits contained in Article 3, below is intended by Trustor to be absolute in nature, the grants, assignments and transfers made in Sections 1.1, 1.2, 1.3 and 1.4 are given for the purpose of securing, in such order of priority as Beneficiary may determine.

**(a)**    Trustor's debt to Beneficiary as is evidenced by the Promissory Note Secured by Deed of Trust dated June 18, 2020, ("Promissory Note") in the sum of **$2,112,500.00** executed by Trustor, and any renewals, extensions, modifications, changes, or amendments thereof, executed by Trustor and payable to Beneficiary, together with interest thereon, late charges, attorney's fees and costs and charges as provided in the Promissory Note which is made a part hereof by reference.

**(b)**    Payment of such further sums as Trustor, or any successor in ownership hereafter may borrow from Beneficiary when evidenced by another note or notes, reciting that it is so secured, payable to Beneficiary or order and made by Trustor, or any successor-in-ownership, and all renewals, extensions, modifications, changes or amendments of such note or notes.

**(c)**    Performance of all other obligations of Trustor contained herein and all other obligations of Trustor.

**(d)**    Payment of all other monies agreed or provided to be paid by Trustor herein and performance of all other obligations of Trustor.

4

## ARTICLE 2 --COVENANTS OF TRUSTOR

### A.    Condition and Operation of Property.

**2.1    Maintenance and Preservation.**  Trustor agrees (a) to keep the Property in good condition and repair; (b) not to commit or permit any waste or deterioration of the Property; (c) not to commit or permit any removal, demolition or substantial alteration of the Property except for such alterations as may be required by any law, ordinance, rule, regulation or order of any governmental authority having jurisdiction over the Property; (d) to complete in good and workmanlike manner any construction or restoration which may be performed on the Property; (e) to promptly restore any portion of the Property which may be damaged or destroyed; (f) not to permit any mechanics' or materialmen's liens against the Property; and (g) not to initiate or acquiesce in any change of zoning or other land classification which affects the Property without Beneficiary's prior written consent.

**2.2    No Violation.**  Trustor shall not commit, permit or allow to exist any violation of any law, ordinance, rule, regulation or order of any governmental authority having jurisdiction over the Property or the Collateral or of any matter of record affecting the Property or the Collateral.

### B.    Insurance.

**2.3    Insurance Policies.**  Trustor shall keep the Property insured and shall maintain fire, casualty and general liability coverage and such other coverages reasonably requested by Beneficiary, by carrier(s), in amounts and in form at all times reasonably satisfactory to Beneficiary, which carrier(s), amounts and form shall not be changed without the prior written consent of Beneficiary. Beneficiary shall be named as loss payees on all such insurance policies. The minimum amount of coverage on each policy shall be such that Beneficiary's loan principal shall be fully covered even after accounting for any deductible amounts which may be a condition of such policies.

**2.4    Casualty Notice.**  In the case of loss or damage by fire or other casualty Trustor shall give immediate written notice thereof to the insurance carrier(s) and to Beneficiary. Beneficiary is authorized and empowered, and Trustor hereby irrevocably appoints Beneficiary as attorney-in-fact (such appointment is coupled with an interest), at its option, to make or file proofs of loss or damage and to settle and adjust any claim under insurance policies which insure against such risks, or to direct Trustor, in writing, to agree with the insurance carrier(s) on the amount to be paid in regard to such loss.

**2.5    Assignment of Proceeds.**  Trustor hereby absolutely and unconditionally assigns to Beneficiary all insurance proceeds which it may be entitled to receive. All such proceeds shall be delivered to and held by Beneficiary to be applied to Beneficiary's expenses in settling, prosecuting or defending any insurance claim, and then, subject to the satisfaction of all of the conditions set forth below, to the restoration of any portion of the Property and/or the Collateral that has been damaged or destroyed to the same condition, character and value as existed prior to such damage and destruction. The conditions to such use are (a) an event which is, or with notice or the passage of time or both would constitute, an Event of Default shall not have occurred;

5

(b) Beneficiary's security is not materially impaired, as determined by Beneficiary; (c) all income from the Property (from Leases, insurance or otherwise) required to pay all debt service and operating expenses of the Property during such restoration and thereafter will be equal to or greater than the income which was required to pay such debt service and operating expenses prior to the casualty; (d) Trustor provides evidence reasonably satisfactory to Beneficiary that the insurance required to be maintained hereunder will be available to Trustor during restoration and thereafter; (e) Beneficiary shall have approved the plans and specifications for such restoration; and (f) in the event that in Beneficiary's reasonable judgment the insurance proceeds are not sufficient to accomplish restoration, Trustor deposits with Beneficiary, within five days of demand by Beneficiary, the additional amounts necessary to accomplish restoration. Proceeds disbursed for restoration will be released to Trustor under the procedures set forth in the Beneficiary's then current customary disbursement procedures. In the event any of the conditions set forth above are not satisfied or if Trustor fails to commence restoration of the Property within thirty (30) days after receipt of such proceeds by Beneficiary, or if Trustor fails to diligently pursue such restoration to completion, then Beneficiary shall have the option to either apply the insurance proceeds upon any indebtedness secured hereby in such order as Beneficiary may determine or release such proceeds to Trustor without such release being deemed a payment of any indebtedness secured hereby, rather than to apply such proceeds to the restoration of the Property and/or the Collateral. Such application or release shall not cure or waive any Default or Event of Default or notice of default hereunder or invalidate any act done pursuant to such notice. If the Property and/or the Collateral is restored at a cost less than the available insurance proceeds, and the Promissory Note, including, without limitation, all costs and expenses incurred by Beneficiary in respect of the Promissory Note, has been paid in full, then such excess proceeds shall be paid over to Trustor. Beneficiary may commence, appear in, defend or prosecute any assigned claim or action, and may adjust, compromise, settle and collect all claims, proceeds and awards assigned to Beneficiary, but shall not be responsible for any failure to collect any claim, proceeds or award, regardless of the cause of the failure.

       **2.6**   **Transfer of Policy**. In the event of the foreclosure of this Deed of Trust or other transfer of the title to the Property to Beneficiary, including transfer, in whole or partial satisfaction of the indebtedness secured hereby, all right, title and interest of Trustor in and to any insurance policy then in force shall pass to the purchaser or grantee.

    **C.**   **Payments**.

       **2.7**   **Liens**. Trustor shall pay or cause to be paid:

         **(a)**    Prior to the assessment of any penalty or delinquency, all taxes, assessments and other governmental or public charges affecting the Property or the Collateral, including assessments on appurtenant water stock, and any accrued interest, cost and/or penalty thereon (individually, "Imposition" and collectively, "Impositions"), and shall submit paid receipts therefor to Beneficiary at least ten (10) days before delinquency.

         **(b)**    When due, all encumbrances (including any debt secured by deed of trust), ground rents, liens and/or charges, with interest, on the Property or the Collateral, or any part thereof, and all costs, fees and expenses related thereto, which,

in the opinion and judgment of Beneficiary, are or reasonably appear to be senior to the lien of this Deed of Trust.

**(c)** All mechanic and materialmen liens, whether or not senior to this Deed of Trust.

**(d)** When due, all charges for utilities or services servicing any portion of or all of the Property, including, but not limited to, electricity, gas, water and sewer.

**2.8** **Reimbursement**. Trustor shall pay immediately, without demand, after expenditure, all sums expended or expenses incurred by Trustee and/or Beneficiary in acting under any of the terms of this Deed of Trust, including, without limitation, any amounts that Trustor is required to pay pursuant to the terms of the Deed of Trust and has failed to pay, and any fees and expenses (including reasonable attorneys' fees) incurred in connection with any reconveyance of the Property or any portion thereof, or to compel payment of the Promissory Note or any portion of the indebtedness evidenced thereby or in connection with any default thereunder, including without limitation attorneys' fees incurred in any bankruptcy or judicial or nonjudicial foreclosure proceeding, with interest from date of expenditure at the rate of 24% per annum and said sums shall be secured hereby.

**2.9** **Beneficiary's Statement Fee**. Trustor shall pay the amount demanded by Beneficiary or its authorized servicing agent for any statement regarding the obligations secured hereby; provided, however, that such amount may not exceed the maximum amount allowed by law at the time request for the statement is made.

**D.** **Condemnation.**

**2.10** **Condemnation**. If the Property, the Collateral or any part thereof, is taken or damaged by reason of any public improvement or condemnation proceeding, or in any other manner, Beneficiary shall be entitled to all compensation, awards and other payments or relief therefor to which Trustor shall be entitled, and shall be entitled at its option to commence, appear in and prosecute in its own name any action or proceeding or to make any compromise or settlement in connection with such taking or damage to the extent of the interests of Trustor therein, but Beneficiary shall not be responsible for any failure to collect any claim or award, regardless of the cause of the failure. Trustor hereby absolutely and unconditionally assigns to Beneficiary all such compensation, awards, damages, rights of action and proceeds to which Trustor shall be entitled (the "Proceeds"), and Beneficiary shall, after deducting therefrom all its reasonable expenses, including attorneys' fees, apply or release the Proceeds with the same effect and as provided in Sections 2.3-2.6 above with respect to disposition of insurance proceeds; provided, however, that if there are any excess Proceeds after application thereof to the restoration of the Property or the Collateral, as applicable, Beneficiary shall be entitled to apply such excess to the reduction of the principal balance due under the Promissory Note without any adjustment in the dollar amount of the regular installments due under the Promissory Note. Trustor agrees to execute such further assignments of the Proceeds as Beneficiary or Trustee may require. Nothing herein contained shall prevent the accrual of interest as provided in the Promissory Note on any portion of the Proceeds to be applied to the principal balance due under the Promissory Note until the Proceeds are received by Beneficiary.

E.     **Injury to the Property or Improvements.**  Trustor hereby absolute and irrevocably assigns to Beneficiary all causes of action, whether accrued before or after the date of this Deed of Trust, of any type for any damage or injury to Land (or any portion of or interest in the Land), or the Improvements, or in connection with the sale or other transaction being financed by the funds that are secured by this Deed of Trust, or in connection with or affecting the Land (or any portion of or interest in the Land), or the Improvements, including causes of action arising in tort or contract and causes of action in fraud or concealment of a material fact.    Without limiting the generality of the foregoing, Trustor includes in this assignment of causes of action all claims in respect to contamination of the Land by toxic or hazardous substances.  Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of any such action or proceeding.  Trustor agrees to execute such further assignments of any settlements, awards, damages and causes of action as Lender from time to time may request. Settlements, awards, proceeds and damages (collectively, "Awards") received by Lender under the provisions of this section E, at the option of Lender, may be applied by Lender to the outstanding balance due on the Promissory Note, or any other obligation secured by this Deed of Trust, in such order as Lender may determine be used by Lender, without reducing the principal balance of the Promissory Note or any other obligation secured by this Deed of Trust, to replace, restore or reconstruct the Property to a condition satisfactory to Lender.  The Award may be released to Trustor, or any such amount may be divided in any manner among such application, use or release. No such application, use or release of the Award shall cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

F.     **Rents and Leases.**

2.11    **Lease Covenants.**  "Lease" means any lease or rental agreement of all or any portion of the Property or Improvements, entered into at any time and includes any extensions or renewals thereof and any amendments thereto consented to by Beneficiary.  Trustor shall provide Beneficiary with true, correct and complete copies of all Leases, together with such other information relating to the Leases and the tenants thereunder, as Beneficiary shall reasonably request.  Trustor shall not accept prepayments of rent for any period in excess of one month and shall perform all covenants of the lessor under all Leases.  Trustor shall not amend or terminate any Leases or consent to any assignment or subletting under any Leases or enter into any Leases without the prior written consent of Beneficiary.  Trustor shall perform and carry out all of the provisions of the Leases to be performed by Trustor and shall appear in and defend any action in which the validity of any Lease is at issue and shall commence and maintain any action or proceeding necessary to establish or maintain the validity of any Lease and to enforce the provisions thereof.  Trustor shall immediately give notice to Beneficiary of any default under any of the Leases it receives or delivers.  Beneficiary shall have the right, but not the obligation, to cure any default of Trustor under any of the Leases and all amounts disbursed in connection with said cure shall be deemed to be disbursements under the Loan Agreement.

2.12    **Subordination of Leases and Attornment.**  Except for leases consisting of month-to-month tenancies, each Lease of any portion of the Property or Improvements shall be absolutely subordinate to the lien of this Deed of Trust, but shall contain a provision satisfactory to Beneficiary, whereby each tenant thereunder, by virtue of executing a Lease covering the Property, the Improvements or any portion

8

thereof, shall have agreed, that in the event of the exercise of the private power of sale or a judicial foreclosure hereunder, such Lease, at the option of the purchaser at such sale, shall not be terminated and the tenant thereunder shall attorn to such purchaser and, if requested to do so, shall enter into a new Lease for the balance of the term of such Lease then remaining upon the same terms and conditions. Each such Lease shall, at the request of Beneficiary, be separately assigned to Beneficiary upon Beneficiary's approved form, and each such assignment shall be recorded and acknowledged by the tenant thereunder. However, any such Lease and the rents thereunder shall be subject to this Deed of Trust, regardless of whether Beneficiary requests a separate assignment.

### G.   Other Rights and Obligations.

**2.13   Assignment of Contracts.**  In addition to any other grant, transfer or assignment effectuated hereby, without in any manner limiting the generality of the grants in Article 1 hereof, Trustor shall assign to Beneficiary, as security for the indebtedness secured hereby, Trustor's interest in all agreements, contracts, licenses and permits affecting the Property and/or the Collateral in any manner whatsoever, such assignments to be made, if so requested by Beneficiary, by instruments in form satisfactory to Beneficiary; but no such assignment shall be construed as a consent by Beneficiary to any agreement, contract, license or permit so assigned, or to impose upon Beneficiary any obligations with respect thereto.

**2.14   Preservation of Lien.**  Trustor shall do any and all acts which, from the character or use of the Property or the Collateral, may be reasonably necessary to protect and preserve the lien, the priority of the lien and the security of Beneficiary granted herein, the specific enumerations herein not excluding the general.

**2.15   Compliance with Property Restrictions.**  Trustor will faithfully perform each and every covenant to be performed by Trustor under any lien or encumbrance upon or affecting the Property or the Collateral the failure to perform which might, in the opinion and judgment of Beneficiary, impair Beneficiary's security, including, without limiting the generality hereof, mortgages, deeds of trust, Leases, declarations of covenants, easements, conditions and/or Restrictions and other agreements which affect the Property, in law or in equity. A breach of or a default under any such lien or encumbrance shall constitute a default under this Deed of Trust and the Promissory Note secured thereby.

**2.16   Attorneys' Fees and Fees of Other Professionals.**  Upon election of either Beneficiary or Trustee so to do, employment of an attorney is authorized, and payment by Trustor of all attorneys' fees, costs and expenses in connection with any action or actions (including the cost of evidence or search of title) which may be brought for the foreclosure of this Deed of Trust, for possession of the Property covered hereby, for the appointment of a receiver, and/or for the enforcement of any covenant or right in this Deed of Trust contained as hereinafter provided, and the fees of all appraisers, engineers and other consultants hired by Beneficiary or Trustee to evaluate or investigate the Land and/or the Improvements for any purpose shall be secured hereby.

**2.17   Restrictions Upon Transfer**  In the event that the interest of Trustor in the Property or the Collateral, or any part thereof, or any interest therein, is sold, agreed to be sold, conveyed, encumbered, alienated or otherwise transferred by

9

Trustor, whether by operation of law or otherwise, the Promissory Note, irrespective of the maturity dates expressed therein, at the option of Beneficiary, and without demand or notice, shall immediately become due and payable. In the event that Beneficiary does not elect to declare the Promissory Note immediately due and payable, then, unless indicated otherwise in writing by Beneficiary, Trustor shall nevertheless remain liable for the obligations hereunder and under the Promissory Note and any other instrument securing the Promissory Note. This provision shall apply to each and every sale, transfer, encumbrance or conveyance, regardless of whether or not Beneficiary has consented to, or waived, Beneficiary's rights hereunder, whether by action or non-action, in connection with any previous sale, transfer or conveyance. For the purposes hereof, any change in the identity, structure, management, nature or control of Trustor, whether by way of a change in the identity of any member or shareholder of Trustor or a change in the ownership or control of Trustor or any member or shareholder of Trustor, by merger or otherwise, shall be deemed a sale hereunder.

      **2.18   Further Assurances**.   Trustor agrees to execute, acknowledge and deliver such documents and take such action as Beneficiary shall determine to be necessary or desirable to further evidence, perfect or continue the perfection and/or the priority of the lien and security interest granted by Trustor herein.

      **2.19   Protection of Security**.   At the time and in the manner herein provided, Beneficiary, or Trustee upon written instructions from Beneficiary (the legality thereof to be determined solely by Beneficiary), may, without notice to or demand upon Trustor, without releasing Trustor from any obligation hereunder and without waiving its right to declare a default as herein provided or impairing any declaration of default or election to cause the Property to be sold or any sale proceeding predicated thereon:

      **(a)**   Take action in such manner and/or to such extent as either may deem necessary to protect the security hereof, Beneficiary and Trustee being authorized to enter upon and take possession of the Property for such purposes;

      **(b)**   Commence, appear in and/or defend any action or proceedings purporting to affect the security hereof, and/or any additional or other security therefor, the interests, rights, powers and/or duties of Trustee and/or Beneficiary hereunder, whether brought by or against Trustor, Trustee or Beneficiary;

      **(c)**   Pay, purchase, contest or compromise any claim, debt, lien, charge or encumbrance, in whole or in installments, which in the judgment of either may affect or appear to affect the security and/or priority of this Deed of Trust, the interest of Beneficiary or the rights, powers and/or duties of Trustee and/or Beneficiary hereunder; and

      **(d)**   Beneficiary is authorized, either by itself or by its agents to be appointed by it for that purpose or by a receiver appointed by a court of competent jurisdiction, to enter into and upon and take and hold possession of any portion or all of the Property and/or the Collateral, both real and personal, and exclude Trustor and all other persons therefrom; and to operate and manage the Property and/or the Collateral and rent and lease the same, perform such reasonable acts of repair-or-protection -as-may be reasonably necessary or proper to conserve the value thereof, and collect any and all income, rents, issues, profits and proceeds therefrom, the same being hereby assigned and transferred to Beneficiary for the benefit and protection of Beneficiary; and from time to time apply and/or accumulate such income, rents, issues, profits and

proceeds in such order and manner as Beneficiary or such receiver in its sole discretion shall consider advisable, to or upon the following: the expense of receivership, if any; the proper costs of upkeep, maintenance, repair and/or operation of the Property and/or the Collateral; the repayment of any sums theretofore or thereafter advanced pursuant to the terms of this Deed of Trust upon the indebtedness secured hereby; the taxes and assessments upon the Property and/or Collateral then due or next to become due; and/or upon the unpaid principal of such indebtedness and/or interest thereon. The collection and/or receipt of income, rents, issues, profits and/or proceeds by Beneficiary, its agent or receiver, after declaration of default and election to cause the Property to be sold under and pursuant to the terms of this Deed of Trust, shall not affect or impair such default or declaration of default or election to cause the Property to be sold or any sale proceedings predicated thereon, but such proceedings may be conducted and sale effected notwithstanding the receipt and/or collection of any such income, rents, issues, profits and/or proceeds. Any such income, rents, issues, profits and/or proceeds in the possession of Beneficiary, its agent or receiver, at the time of sale and not theretofore applied as herein provided, shall be applied in the same manner and for the same purposes as the proceeds of the sale.

Neither Trustee nor Beneficiary shall be under any obligation to make any of the payments or do any of the acts referred to in this Section and any of the actions referred to in this Section may be taken by Beneficiary irrespective of whether any notice of default or election to sell has been given hereunder and without regard to the adequacy of the security for the indebtedness secured hereby.

2.20    **Indemnity.**   Trustor agrees to indemnify, protect, hold harmless and defend Trustee and Beneficiary from and against any and all losses, liabilities, suits, obligations, fines, damages, judgments, penalties, claims, charges, costs and expenses (including attorneys' fees and disbursements) which may be imposed on, incurred or paid by or asserted against Trustee and/or Beneficiary by reason or on account of, or in connection with (a) any willful misconduct of Trustor or any default or Event of Default by Trustor hereunder; (b) any negligence of Trustor or any negligence or willful misconduct of any lessee or sublessee of the Property, or any of their respective agents, contractors, subcontractors, servants, employees, licensees or invitees; (c) any accident, injury, death or damage to any person or property occurring in, on or about the Property or any street, driveway, sidewalk, curb or passageway adjacent thereto, except for the willful misconduct or gross negligence of the indemnified person; or (d) any action or proceeding to enforce this indemnity.  Any amount payable to Trustee or Beneficiary under this Section shall be due and payable within ten (10) days after demand therefor and receipt by Trustor of a statement from Trustee and/or Beneficiary setting forth in reasonable detail the amount claimed and the basis therefor.  Trustor's obligations under this Section shall survive the repayment or any other satisfaction of the Promissory Note and shall not be affected by the absence or unavailability of insurance covering the same or by the failure or refusal of any insurance carrier to perform any obligation on its part under any such policy of insurance. If any claim, action or proceeding is made or brought against Trustee and/or Beneficiary which is subject to the indemnity set forth in this Section, Trustor shall resist or defend against the same, if necessary in the name of Trustee and/or Beneficiary, by attorneys for Trustor's insurance carrier (if the same is covered by insurance) approved by Beneficiary (as applicable) or otherwise by attorneys retained by Trustor and approved by Beneficiary (as applicable), all of which approvals may be given or withheld by Beneficiary in its opinion and judgment. Notwithstanding the foregoing, Trustee and

Beneficiary, in their discretion, if either or both of them disapprove of the attorneys provided by Trustor or Trustor's insurance carrier, may engage their own attorneys to resist or defend, or assist therein, and Trustor shall pay, or, on demand, shall reimburse, Trustee and Beneficiary for the payment of the reasonable fees and disbursements of said attorneys.

## ARTICLE 3 -- ASSIGNMENT OF LEASES AND RENTS

Trustor hereby absolutely and unconditionally assigns and transfers to Beneficiary (and has not heretofore otherwise so assigned or transferred to any other person or entity) all the Leases (including all security deposits, guarantees and other security at any time given as security for the performance of the obligations of the tenants thereunder), income, rents, revenues, issues, deposits, profits and proceeds of the Property and the Collateral to which Trustor may be entitled, whether now due, past due or to become due, and hereby gives to and confers upon Beneficiary the right, power and authority to collect such income, rents, revenues, issues, deposits, profits and proceeds. This assignment of the Leases, income, rents, revenues, issues, deposits, profits and proceeds constitutes an irrevocable direction and authorization of all tenants under the Leases to pay all rent, revenues, income and profits to Beneficiary upon demand and without further consent or other action by Trustor. This is an absolute assignment, not an assignment for security only, and Beneficiary's right to rents, revenues, issues and profits is not contingent on Beneficiary's possession of all or any portion of the Property. Trustor irrevocably appoints Beneficiary its true and lawful attorney, at the option of Beneficiary at anytime, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, either in the name of Trustor or in the name of Beneficiary, for all such income, rents, revenues, issues, deposits, profits and proceeds and apply the same to the indebtedness secured hereby. It is understood and agreed that neither the foregoing assignment of Leases, income, rents, revenues, issues, deposits, profits and proceeds to Beneficiary nor the exercise by Beneficiary of any of its rights or remedies under this or any other Section hereof shall be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise obligated, responsible or liable in any manner with respect to the Property or the Collateral or the use, occupancy, enjoyment or operation of all or any portion thereof. Notwithstanding anything to the contrary contained herein or in the Promissory Note, so long as no event which is, or with notice or passage of time or both would constitute, an Event of Default shall have occurred, Trustor shall have a license to collect all income, rents, revenues, issues, profits and proceeds from the Property as trustee for the benefit of Beneficiary and Trustor, and Trustor shall apply the funds so collected first to the payment of the indebtedness secured pursuant to Section 1.5 above then due and payable in such manner as Beneficiary elects and thereafter to the account of Trustor. Upon the occurrence of such event, such license shall be deemed revoked, automatically, without the need for any notice or other act by Beneficiary, and any rents received thereafter by Trustor shall be delivered in kind to Beneficiary. Upon the occurrence of such event, Trustor agrees to deliver the original copies of all Leases to Beneficiary. Trustor hereby irrevocably constitutes and appoints Beneficiary its true and lawful attorney-in-fact to enforce, in Trustor's name or in Beneficiary's name or otherwise, all rights of Trustor in the instruments, including without limitation checks and money orders, tendered as payments of rents and to do any and all things necessary and proper to carry out the purposes hereof.

## ARTICLE 4 – DEFAULTS AND REMEDIES

### A.   Defaults.

**4.1   Event of Default**. Trustor shall be in default hereunder if one or more Events of Default shall have occurred and be continuing ("Event of Default"):

(a)   Failure of Trustor to pay, within, ten (10) calendar days after its due date, any payment due under the Promissory Note, this Deed of Trust Securing the Promissory Note, or any other obligation that can be satisfied by the payment of money; or

(b)   A petition under any Chapter of Title 11 of the United States Code or any similar law or regulation is filed by or against Trustor or Guarantor (and in the case of an involuntary petition in bankruptcy, such petition is not discharged within sixty (60) days of its filing), or a custodian, receiver or trustee for any of the Property is appointed, or Trustor makes an assignment for the benefit of creditors, or any of them are adjudged insolvent by any state or federal court of competent jurisdiction, or any of them admit their insolvency or inability to pay their debts as they become due or an attachment or execution is levied against any of the Property; or

(c)   Failure of Trustor, within ten (10) days after written notice and demand, to satisfy and perform each and every covenant or obligation set forth herein or in the Promissory Note that cannot be satisfied by the payment of money; provided, however, if such obligation or covenant cannot by its nature be cured within ten (10) days, and if Trustor commences to cure such failure promptly after written notice thereof and thereafter diligently pursues the curing thereof (and then in all events cures such failure within thirty (30) days after the original notice thereof), Trustor shall not be in default hereunder during such period of diligent curing.

(d)   Any misrepresentation or omission of a material fact on Trustor's loan application or in any other document containing a representation of fact that is not true.  See paragraph 7F of the Promissory Note.  Such items are noncurable defects.

All notices and cure periods described herein shall not be applicable to any event which with the giving of notice, the passage of time or both would constitute an Event of Default, if such event has occurred as of the date on which Beneficiary commences a nonjudicial foreclosure proceeding with respect to another Event or Events of Default. Such event shall constitute an independent Event of Default hereunder.

Upon the occurrence of an Event of Default at the option of Beneficiary, the indebtedness shall become immediately due and payable without additional notice to Trustor and Beneficiary shall be entitled to all of the rights and remedies provided in the Promissory Note, herein or at law or in equity.

### B.   Remedies.

**4.2   Acceleration and Foreclosure**.  Upon the occurrence of an Event of Default hereunder, then and in each such event, Beneficiary may declare all sums secured hereby immediately due and payable either by commencing an action to

13

foreclose this Deed of Trust as a mortgage, or by the delivery to Trustee of a written declaration of default and demand for sale and of written notice of default and of election to cause the Property to be sold, which notice Trustee shall cause to be duly filed for record in case of foreclosure by exercise of the power of sale herein. Should Beneficiary elect to foreclose by exercise of the power of sale herein, Beneficiary shall also deposit with Trustee this Deed of Trust, the Promissory Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require, and notice of sale having been given as then required by law and after lapse of such time as may then be required by law after recordation of such notice of default, Trustee, without demand on Trustor, shall sell the Property at the time and place of sale fixed by Beneficiary in said notice of sale, either as a whole or in separate parcels, and in such order as Beneficiary may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Neither Trustor nor any other person or entity other than Beneficiary shall have the right to direct the order in which the Property is sold. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed or deeds conveying the Property, or any portion thereof, so sold, but without any covenant or warranty, express or implied. The recitals in such deed or deeds of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary, may purchase at such sale.

   **4.3** **Rescission of Notice**. Beneficiary, from time to time before Trustee's sale, may rescind any such notice of breach or default and of election to cause the Property to be sold by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale. The exercise by Beneficiary of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Beneficiary to execute and deliver to Trustee, as above provided, other declarations of default and demand for sale, and notices of breach or default, and of election to cause the Property to be sold to satisfy the obligations hereof, nor otherwise affect any provision, agreement, covenant or condition of the Promissory Note, and/or of this Deed of Trust or any of the rights, obligations or remedies of the parties hereunder.

   **4.4** **Proceeds of Sale**. After deducting all costs, fees and expenses of Trustee and of this trust, including the cost of appraisal and evidence of title in connection with sale and attorneys' fees, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at 24%; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

   **4.5** **Other Security**. If Beneficiary at any time holds additional security for any obligations secured hereby, it may enforce the terms hereof or otherwise realize upon the same, at its option, either before or concurrently herewith or after a sale is made hereunder, and may apply the proceeds upon the indebtedness secured hereby without affecting the status of or waiving any right to exhaust all or any other security, including the security hereunder, and without waiving any breach or default or any right or power whether exercised hereunder or contained herein or in any such other security. Trustor, for itself and for all persons hereafter claiming through or under it or

14

who may at any time hereafter become holders of liens junior to the lien of this Deed of Trust, hereby expressly waives and releases all rights to direct the order in which any of the Property or any other property which is security for the indebtedness secured hereby shall be sold and to have any of the Property, or any other property which is security for the indebtedness secured hereby, marshaled upon any foreclosure of this Deed of Trust or of any other security for any indebtedness secured hereby.

      **4.6**   **Remedies Cumulative**.  No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by this instrument to Trustee or Beneficiary or to which either of them may be otherwise entitled may be exercised concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary, and either of them may pursue inconsistent remedies. No delay or omission of Trustee or Beneficiary to exercise any right or power accruing upon any Event of Default shall impair any right or power or shall be construed to be a waiver of any Event of Default or any acquiescence therein; and every power and remedy may be exercised from time to time as often as may be deemed expedient by Trustee or Beneficiary.

      **4.7**   **Appointment of Receiver**.  Upon the occurrence of an Event of Default hereunder, Beneficiary, as a matter of right and without notice to Trustor or anyone claiming under it, and without regard to the then value of the Property or the interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property or any portion thereof, and Trustor hereby irrevocably consents to such appointment and waives notice of any application therefor. Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided herein and shall continue as such and exercise all such powers until the date of confirmation of sale of the Property unless such receivership is sooner terminated.

      **4.8**   **Written Demand for Turnover of Rents, Issues and Profits**. Upon the occurrence of the Event of Default hereunder, Beneficiary, as a matter of right and without notice to Trustor or anyone claiming under it, and without regard to the value of the Property or the interests of Trustor therein, shall have the right pursuant to Civil Code Section 2938 for any all remedies set forth therein including, but not limited to, the right to deliver to any one or more of the tenants or lessees or other occupants of the Property a written demand for turnover of rents, issues, and profits in the form specified in Civil Code Section 2938. Furthermore, Beneficiary shall have all other rights and remedies allowed by law and more specifically as set forth in Civil Code Section 2938.

## ARTICLE 5 – COLLATERAL

      **5.1**   **Beneficiary's Rights as a Secured Party**.  With respect to the security interest granted in Article 1, Beneficiary shall have all the rights and remedies granted to a secured party under Division 9 of the California Uniform Commercial Code (including, without limitation, the right at Beneficiary's sole option to conduct a separate or a unified sale of all or any portion of the Property and the Collateral) as well as all other rights and remedies available at law or in equity. Trustor shall, upon the demand

15

of Beneficiary, assemble all of such Collateral and make it available to Beneficiary at the Property, which is hereby agreed to be reasonably convenient to Beneficiary and Trustee. The proceeds of any sale of any portion of the Collateral shall be applied first to the expenses of Beneficiary in retaking, holding, preparing for sale, selling or similar matters, including reasonable attorneys' fees. Any sale proceeds which are applied against principal indebtedness shall be applied first to the payment of accrued interest and then to principal in the reverse order of maturity.

      **5.2**   **Trustor's Collections**.   Until Beneficiary exercises its right to collect proceeds of the Collateral pursuant hereto, Trustor will collect with diligence any and all proceeds of the Collateral. Any proceeds received by Trustor are held in trust for Beneficiary, and, upon written request by Beneficiary, Trustor shall keep all such collections separate and apart from all other funds and property so as to be capable of identification as the property of Beneficiary and shall deliver such collections at such time as Beneficiary may request to Beneficiary in the identical form received, properly endorsed or assigned when required to enable Beneficiary to complete collection thereof.

      **5.3**   **Trustor's Obligations Regarding Collateral**.   Trustor shall: (a) permit representatives of Beneficiary to inspect the Collateral and Trustor's books and records relating to the Collateral and make copies thereof and extracts therefrom and to arrange for verification of the amount of Collateral, under procedures acceptable to Beneficiary, directly with Trustor's debtors or otherwise at Trustor's expense; (b) promptly notify Beneficiary of any attachment or other legal process levied against any of the Collateral and any information received by Trustor relative to the Collateral, Trustor's debtors or other persons obligated in connection therewith, which may in any way affect the value of the Collateral or the rights and remedies of Beneficiary in respect thereto; (c) reimburse Beneficiary upon demand for any and all costs, including, without limitation, reasonable attorneys' and accountants' fees, and other expenses (including without limitation any expenses incurred in any action or proceeding to enforce any such rights) incurred in collecting any sums payable by Trustor under any obligation secured hereby, or in the checking, handling and collection of the Collateral and the preparation and enforcement of any agreement relating thereto; (d) notify Beneficiary of each location at which the Collateral is or will be kept, other than for temporary processing, storage or similar purposes, and of any removal thereof to a new location, including without limitation each office of Trustor at which records relating to the Collateral are kept; (e) provide, maintain and deliver to Beneficiary policies of insurance insuring the Collateral against loss or damage by such risks and in such amounts, forms and by such companies as Beneficiary may require and with loss payable to Beneficiary, and in the event Beneficiary takes possession of the Collateral, the insurance policy or policies and any unearned or returned premium thereon shall at the option of Beneficiary become the sole property of Beneficiary; and (f) do all acts necessary to maintain, preserve and protect all Collateral, keep all Collateral in good condition and repair and prevent any waste or unusual or unreasonable depreciation thereof.

      **5.4**   **Beneficiary's Collection of Proceeds**.   Beneficiary may, at any time, without prior notice to Trustor, collect proceeds of the Collateral and may give notice of assignment to any and all of Trustor's debtors, and Trustor does hereby irrevocably constitute and appoint Beneficiary its true and lawful attorney-in-fact to enforce, in Trustor's name or in Beneficiary's name or otherwise, all rights of Trustor in

the Collateral and to do any and all things necessary and proper to carry out the purposes hereof; provided, however, Trustor shall have the right to collect, retain, use and enjoy such proceeds, subject to the terms hereof and the documents securing Trustor's obligations thereunder prior to the occurrence of any Event of Default hereunder or under any of said documents. It is hereby recognized that the power of attorney herein granted is coupled with an interest and shall not be revocable, and Beneficiary shall have the right to exercise this power of attorney upon any Event of Default hereunder or any of the documents securing Trustor's obligations thereunder. (Beneficiary shall promptly notify Trustor of any action taken by Beneficiary pursuant to this provision, but Beneficiary's failure to do so shall not invalidate any such act, affect any of Trustor's obligations to Beneficiary or give rise to any right, claim or defense on the part of Trustor.)

     **5.5**   **No Removal**.   No personal property covered by the security interest granted herein may be removed from the Property without the prior written consent of Beneficiary, unless Trustor shall concurrently replace such personal property with similar property of equivalent value on which Beneficiary has a valid first lien.

     **5.6**   **Financing Statements**.  If required by Beneficiary at any time during the term of this Deed of Trust, Trustor will execute and deliver to Beneficiary, in form satisfactory to Beneficiary, an additional security agreement and/or financing statement covering all personal property of Trustor which may at any time be furnished, placed on, or annexed or made appurtenant to the Property and used, useful or held for use in the operation of the improvements thereon. Any breach of or default under such security agreement shall constitute an Event of Default.

## ARTICLE 6 -- MISCELLANEOUS PROVISIONS

     **6.1**   **No Waiver**.  By accepting payment of any sum secured hereby after its due date or in an amount less than the sum due, Beneficiary does not waive its rights either to require prompt payment when due of all other sums so secured or to declare a default as herein provided for failure to pay the total sum due.

     **6.2**   **Trustee's Powers**.  At any time, or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the Promissory Note for endorsement, and without affecting the personal liability of any person for payment of all or any portion of the indebtedness secured hereby or the effect of this Deed of Trust upon the remainder of the Property, Trustee may reconvey any part of the Property; consent in writing to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

     **6.3**   **Subrogation**.  Beneficiary shall be subrogated for further security to the lien, although released of record, of any and all encumbrances paid out of the proceeds of any loan secured by this Deed of Trust.

     **6.4**   **Beneficiary's Right to Enter, Inspect and Cure**.  Beneficiary is authorized, by itself, its contractors, agents, employees or workmen, to enter at any reasonable time upon any part of the Property for the purpose of inspecting the same, and for the purpose of performing any of the acts it is authorized to perform under the terms of this Deed of Trust.

**6.5    Successors in Interest and Interpretation**.  Subject to the provisions of Section 2.20 hereof, this Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term "Beneficiary" shall mean the owner and holder, including pledgees, of the Promissory Note, now or hereafter and whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. The word "person" shall include corporation, partnership, limited liability company or other form of association. Any reference in this Deed of Trust to any document, instrument or agreement creating or evidencing an obligation secured hereby shall include such document, instrument or agreement both as originally executed and as it may from time to time be modified.

**6.6    Affidavit to Trustee**.  Trustee, upon presentation to it of an affidavit signed by or on behalf of Beneficiary, setting forth any fact or facts showing a default by Trustor under any of the terms or conditions of this Deed of Trust, is authorized to accept as true and conclusive all facts and statements in such affidavit and to act hereunder in complete reliance thereon.

**6.7    Severability**.  If any provision hereof should be held unenforceable or void, then such provision shall be deemed separable from the remaining provisions and shall in no way affect the validity of this Deed of Trust.

**6.8    Trustee's Acceptance**.  Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The trust created hereby is irrevocable by Trustor.

**6.9    No Obligation to Notify**.  Trustee shall be under no obligation to notify any party hereto of any action or proceeding of any kind in which Trustor, Beneficiary and/or Trustee shall be a party, unless brought by Trustee, or of any pending sale under any other deed of trust.

**6.10    Substitution of Trustee**.  Beneficiary may, from time to time, by a written instrument executed and acknowledged by Beneficiary and recorded in the county or counties where the Property is located, substitute a successor or successors for the Trustee named herein or acting hereunder.

**6.11    Trustor Waiver of Rights**.  Trustor waives, to the extent permitted by law: (a) the benefit of all laws now existing or that may hereafter be enacted providing for any appraisement before sale of any portion of the Property; (b) all rights and remedies which Trustor may have or be able to assert by reason of the laws of the State of California pertaining to the rights and remedies of sureties; and (c) all rights of valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the secured indebtedness and marshaling in the event of foreclosure of the liens hereby created; provided, however, nothing contained herein shall be deemed to be a waiver of Trustor's rights under Section 2924c of the California Civil Code.

**6.12    Notices**.  All notices and demands expressly provided hereunder or in the Promissory Note secured hereby to be given by Beneficiary to Trustor and all notices, demands and other communications of any kind or nature whatever which Trustor may be required or may desire to give to or serve on Beneficiary shall be in writing, shall be addressed to the appropriate address set forth in this section, or at such

other place as Trustor, Beneficiary or Trustee, as the case may be, may from time to time designate in writing by ten (10) days prior written notice and shall be served by certified mail, return receipt requested, deposited in the United States mail, with postage thereon fully prepaid and addressed to the party so to be served and shall be deemed effective on the day of actual delivery as shown by the addressees' return receipt or the expiration of three (3) calendar days after the date of mailing, whichever is the earlier in time The addresses of the parties are as follows:

To Trustor:

Richard Ayvazyan
4910 Topeka Drive
Tarzana, CA 91356

Marietta Terabelian
4910 Topeka Drive
Tarzana, CA 91356

To Beneficiary:

Gregory Shirin
553 28th Street, Unit #553
San Francisco, CA 94121

Private Money Solutions, Inc.
15030 Ventura Blvd., #500
Sherman Oaks, CA 91403

**6.13   Notice to Trustor**.  Trustor requests that a copy of any notice of default and of any notice of sale hereunder be mailed to Trustor at the address set forth above.

**6.14   Reconveyance**  Upon written request of Beneficiary stating that all sums secured hereby have been paid and upon surrender to Trustee of this Deed of Trust and the Promissory Note for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

**6.15   Releases, Extensions, Modifications and Additional Security**. Without affecting the liability or obligations of any person, including Trustor, for the performance of any obligations secured hereby (excepting only any person or property otherwise expressly released in writing by Beneficiary), Beneficiary may, from time to time and without notice, release any person liable for payment of any of said indebtedness or the performance of any of said obligations, extend the time of payment or otherwise alter the terms of any of said obligations, accept additional security therefor of any kind, including trust deeds or mortgages, or alter, substitute or release any property securing said obligations.

**6.16   Obligations of Trustor Joint and Several**.  If more than one person has executed this Deed of Trust as "Trustor, the obligations of all such persons hereunder shall be joint and several.

19

**6.17   Headings**.  The headings of each paragraph are for convenience only and shall be disregarded in construing this Deed of Trust.

**6.18   Governing Law**.   This Deed of Trust shall be construed and enforced in accordance with the laws of the State of California.


IN WITNESS WHEREOF, Trustor has executed this Deed of Trust and Security Agreement and Fixture Filing and Assignment of Leases and Rents as of the day first written above.

By: _____
Richard Ayvazyan

By: _____
Marietta Terabelian

# EXHIBIT "A"

**APN:** 2176-029-031

PARCEL 1;

THOSE PORTIONS OF LOTS 71 AND 72 OF TRACT 2605, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 27, PAGE 55, ET SEQ. OF MAPS AND THAT PORTION OF PARCEL "A" OF MAP L.A. NO. 2015 AS PER MAP FILED IN BOOK 32, PAGE 19, OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE CENTERLINE OF TOPEKA DRIVE, 40 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 15° 10' 00" WEST 178.55 FEET FROM THE NORTHEASTERLY TERMINUS OF THAT CERTAIN COURSE IN THE CENTERLINE OF TOPEKA DRIVE SHOWN ON SAID MAP AS HAVING A BEARING OF NORTH 15° 10' 00" EAST AND LENGTH OF 1055.19 FEET;

THENCE SOUTH 74° 50' 00" EAST 56.09 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE TO THE NORTHWEST, HAVING A RADIUS OF 129.86 FEET;

THENCE EASTERLY ALONG SAID CURVE 128.40 FEET; TO THE TRUE POINT OF BEGINNING;

THENCE TANGENT TO SAID CURVE NORTH 48° 30' 50" EAST 147.14 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE TO THE SOUTHEAST, HAVING A RADIUS OF 100.05 FEET;

THENCE EASTERLY ALONG SAID CURVE, 125.14 FEET, A RADIAL LINE TO SAID POINT BEARS NORTH 30° 10' 46" EAST;

THENCE NORTH 10° 52' 46" EAST 45.32 FEET;

THENCE SOUTH 84° 29' 18" EAST 182.82 FEET;

THENCE SOUTH 04° 13' 10" WEST 195.63 FEET TO A POINT IN A CURVE CONCAVE WESTERLY HAVING A RADIUS OF 175.31 FEET, A RADIAL LINE TO SAID POINT BEARS NORTH 62° 22' 50" EAST;

THENCE CONTINUING EASTERLY AND SOUTHERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 50° 06' 30" AN ARC DISTANCE OF 153.32 FEET;

THENCE TANGENT TO SAID CURVE SOUTH 22° 29' 20" WEST 63.38 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE TO THE NORTHWESTERLY HAVING A RADIUS OF 375.00 FEET;

THENCE SOUTHWESTERLY ALONG SAID CURVE, THROUGH A CENTRAL ANGLE OF 13° 52' 00" 90.76 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE TO THE SOUTHEAST HAVING A RADIUS OF 161.89 FEET;

THENCE SOUTHEASTERLY ALONG SAID CURVE, THROUGH A CENTRAL ANGLE OF 17° 46' 00" 50.20 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE TO THE NORTHWEST HAVING A RADIUS OF 75.69 FEET;

THENCE SOUTHWESTERLY AND WESTERLY ALONG SAID CURVE, THROUGH A CENTRAL ANGLE OF 33° 58' 30" 44.88 FEET TO A POINT OF CUSP IN THE NORTHERLY LINE OF SAID PARCEL "A" SAID NORTHERLY LINE BEING A CURVE CONCAVE SOUTHWESTERLY HAVING A RADIUS OF 30.00 FEET, A RADIAL LINE TO SAID POINT BEARS SOUTH 37° 26' 10" EAST;

THENCE EASTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE 116° 31' 20" AN ARC DISTANCE OF 61.01 FEET;

THENCE SOUTH 10° 54' 50" EAST 92.71 FEET;

THENCE SOUTH 80° 16' 17" WEST 20.00 FEET;

THENCE NORTH 31° 28' 33" WEST 120.33 FEET;

THENCE NORTH 22° 17' 48" WEST 20.00 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHWESTERLY HAVING A RADIUS OF 55.69 FEET;

THENCE NORTHEASTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 49° 06' 52" AN ARC DISTANCE OF 47.74 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 181.89 FEET;

NORTHEASTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 17° 46' 00" AN ARC DISTANCE OF 56.40 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE NORTHWESTERLY HAVING A RADIUS OF 355.00 FEET;

THENCE NORTHEASTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 17° 17' 43" AN ARC DISTANCE OF 107.16 FEET TO THE BEGINNING OF A NON-TANGENT CURVE CONCAVE NORTHEASTERLY HAVING A RADIUS OF 35.00 FEET, A RADIAL LINE TO SAID POINT BEARS SOUTH 25° 06' 32" WEST;

THENCE NORTHWESTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 40° 33' 12" AN ARC DISTANCE OF 24.77 FEET, A RADIAL LINE TO SAID POINT BEARS SOUTH 65° 39' 44" WEST;

THENCE NORTH 65° 45' 30" WEST 94.31 FEET;

THENCE NORTH 20° 45' 30" WEST 4.67 FEET;

THENCE NORTH 66° 12' 23" WEST 162.67 FEET;

THENCE NORTH 47° 02' 30" WEST 165.15 FEET TO THE TRUE OF POINT OF BEGINNING.

SAID PARCEL IS SHOWN AS PARCEL 1 OF CERTIFICATE OF COMPLIANCE FOR LOT LINE ADJUSTMENT WHICH WEST AUGUST 5, 2003 AS INSTRUMENT NO. 03-02254553, AND AS AMENDED DECEMBER 19, 2003 AS INSTRUMENT NO. 03-3830882, BOTH OF OFFICIAL RECORDS OF SAID COUNTY.

PARCEL 2:

THE RIGHT OF INGRESS AND EGRESS FOR SAID PROPERTY OVER A ROADWAY EASEMENT FROM TOPEKA DRIVE OVER THAT PORTION OF LOT 71, OF TRACT NO. 2605, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 27, PAGE 55, ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, INCLUDED WITHIN A STRIP OF LAND 30.00 FEET IN WITH, LYING 15.00 FEET ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTER LINE:

BEGINNING AT THE SOUTHWESTERLY CORNER OF THE LAND CONVEYED TO CIRELLA G. SMITH AND HUSBAND, BY DEED RECORDED JULY 8, 1943 AS INSTRUMENT NO. 118, IN BOOK 20132, PAGE 100, OF OFFICIAL RECORDS, SAID CORNER BEING DISTANT 261.45 FEET NORTHERLY FROM THE SOUTHWESTERLY CORNER OF LOT 71 OF SAID TRACT 2605; THENCE NORMAL TO THE EASTERLY LINE OF TOPEKA DRIVE, SOUTH 74° 50' 00" EAST 36.09 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE TO THE NORTHWEST HAVING A RADIUS OF 129.86 FEET;

THENCE NORTHEASTERLY ALONG SAID CURVE, 128.40 FEET; THENCE TANGENT TO SAID CURVE, NORTH 48° 30' 50" EAST 147.14 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE SOUTHERLY, HAVING A RADIUS OF 100.05 FEET; THENCE EASTERLY ALONG SAID CURVE, 144.70 FEET; THENCE TANGENT TO SAID CURVE, SOUTH 48° 37' 10" EAST 161.06 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 175.31 FEET; THENCE SOUTHERLY ALONG SAID CURVE, 217.57 FEET; THENCE TANGENT TO SAID CURVE, SOUTH 22° 29' 20" WEST 42.15 FEET TO A POINT.

EXCEPT THEREFROM ANY PORTION LYING WITHIN SAID PARCEL 1 ABOVE.

**ACKNOWLEDGEMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                             )ss.
COUNTY OF Los Angeles )

    On June 19    , 2020, before me, Rosario P. Flores    , Notary Public, personally appeared Richard Ayvazyan, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

    I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

    WITNESS my hand and official seal.

ROSARIO P. FLORES
Notary Public - California
Los Angeles County
Commission # 2235063
My Comm. Expires Apr 18, 2022

_____
                    **Notary Public**

23

## ACKNOWLEDGEMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA     )
                             )ss.
COUNTY OF _Los Angeles_ )

    On _June 19_____, 2020, before me, _Rosario P. Flores_____, Notary Public, personally appeared Marietta Terabelian, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

    I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

    WITNESS my hand and official seal.

> ROSARIO P. FLORES
> Notary Public · California
> Los Angeles County
> Commission # 2235063
> My Comm. Expires Apr 18, 2022

_____
Notary Public

# EXHIBIT 3



# FCI Lender Services, Inc.

Toll Free: (800) 931-2424 Hrs.: Mon-Fri 8:00 a.m. - 5:00 p.m. (PT)
Website: www.myfci.com    NMLS #4920    DRE #01022780
PO BOX 27370 Anaheim CA 92809-0112    Fax: (714) 282-2429

**Statement Date:** 10/26/2021

# Demand Loan Payoff

| Borrower | | Servicer | |
|---|---|---|---|
| | Richard Ayvazyan | | FCI Lender Services, Inc. |
| | 4910 Topeka Drive | | 8180 E Kaiser Blvd, |
| | Tarzana, CA 91356 | | Anaheim, CA 92808-2277 |
| | Account: 399305898 | | 800-931-2424 |

**This Demand Issued by FCI as Loan Servicer hereby Voids All prior Demands In Any Form and Requires the Receiver of this Demand to Call Prior to Payoff to Verify Funds, as Payoff Amounts May Change.**

| | |
|---|---|
| Estimated Payoff Date | 11/10/2021 |
| Loan Maturity Date | 1/1/2022 |
| Interest Paid to Date | 8/1/2021 |
| Next Payment Due Date | 9/1/2021 |
| Unpaid Principal Balance of Loan | $2,112,500.00 |
| Deferred Unpaid Principal Due | $0.00 |
| Note Interest Rate | 8.9900 % |
| Current Interest Rate (May include Default Interest Rate) | 24.0000 % |
| Note Rate Interest Due from 8/1/2021 to 11/10/2021 | $53,281.36 |
| Unaccrued Balance of Default Interest from 9/1/2021 to 11/10/2021 | $61,655.66 |
| Accrued/Unpaid Interest Due (May include Unpaid Default Interest) | $3,692.78 |
| Deferred Unpaid Interest Due | $0.00 |
| Unpaid Loan Fees | $0.00 |
| Prepayment Penalty Due | $0.00 |
| Other Payments | $0.00 |
| Late Fees Due from Paid-to-Date | $1,635.37 |
| Late Fees Unpaid/Due from Previous Payments | $4,747.86 |
| Late Fees Unpaid/Due & Deferred from Previous Servicer | $0.00 |
| Unpaid Loan Charges or Advances | $16,076.88 |
| Estimated Payoff Charges from Servicer | $203.00 |
| Suspense Balance | $0.00 |
| **Estimated Amount to Fully Pay Off this Loan:** | **$2,253,792.91** |
| Daily Interest Amount if Paying To: 11/10/2021 | $1,412.25 |

PLEASE BE ADVISED THAT THIS DEMAND IS ACCURATE AS OF ISSUANCE DATE BUT IT IS SUBJECT TO CHANGE. Additional interest, late charges, fees, and costs may be incurred by the Borrower between the Statement Date and the Payoff Date. ACCORDINGLY, PLEASE CALL (800) 931-2424 ext. 651 TO VERIFY THE PAYOFF AMOUNT PRIOR TO ISSUING PAYMENT. As required by state law, upon receipt of payment in FULL, FCI will process the release of lien, unless directed otherwise by lender.

Outstanding Checks:

Special Instructions:
(1) <u>Only Certified Funds or Wire Transfer will be accepted for Immediate Payoff.</u>
(2) Please make your disbursement payable to: FCI Lender Services, Inc.
(3) We reserve the right to amend this demand should any changes occur that would increase the total amount for payoff.
(4) PLEASE NOTE THIS DEMAND EXPIRES AND BECOMES NULL AND VOID ON 11/10/2021, as follows: (A) for Payment by Wire, at 2:00 p.m. PT; and (B) for Payment by Certified Funds, at 5:00 p.m. PT.
(5) THE DEMAND FEE IS DUE EVEN IF YOUR TRANSACTION IS CANCELLED.

Sincerely,

*Eliana Morales*

Eliana Morales
FCI Lender Services, Inc.
800-931-2424 x 651
Fax: 714-282-2429

| Payment Due Date | Note Rate | Payment Amount | Principal | Interest | Apply To Reserve | Impound | Other | Unp. Int. | Acc Late Chg | Unpaid Int Balance | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/01/2021 | 8.9900% | $ 16,353.68 | $ 0.00 | $ 16,353.68 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,635.37 | $ 3,692.78 | $ 2,112,500.00 |
| 10/01/2021 | 24.0000% 1 | $ 42,250.00 | $ 0.00 | $ 42,250.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 3,692.78 | $ 2,112,500.00 |
| 11/01/2021 | 24.0000% 1 | $ 43,658.33 | $ 0.00 | $ 43,658.33 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 3,692.78 | $ 2,112,500.00 |
| 11/10/2021 | 24.0000% 1 | $ 12,675.01 | $ 0.00 | $ 12,675.01 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 3,692.78 | $ 2,112,500.00 3 |
| | | $ 114,937.02 | $ 0.00 | $ 114,937.02 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,635.37 | | |

1 Using Default Interest Rate
2 This transaction was already accomplished by the borrower.
3 Rounding adjustment to match total payment amount.

### Itemization of Other Fees
### Actual Charge Subject to County Recorder's Office

| Description | Destination | Amount |
|---|---|---|
| Payoff Demand Fee | | $30.00 |
| Published Recording Fees | | $98.00 |
| Reconveyance | | $45.00 |
| Unpaid Demand Fee | | $30.00 |
| | | $203.00 |

### Itemization of Unpaid Charges

| Date | Description | Interest Rate | Unpaid Balance | Accrued Interest | Total Due |
|---|---|---|---|---|---|
| 11/03/2020 | NSF Payment Charge - NSF Payment Charge | 0.000% | $25.00 | $0.00 | $25.00 |
| 12/02/2020 | NSF Payment Charge - NSF Payment Charge | 0.000% | $25.00 | $0.00 | $25.00 |
| 01/05/2021 | NSF Payment Charge - NSF Payment Charge | 0.000% | $25.00 | $0.00 | $25.00 |
| 02/01/2021 | NSF Payment Charge - NSF Payment Charge | 0.000% | $25.00 | $0.00 | $25.00 |
| 02/19/2021 | Verification of Account - Verification of Mortgage | 0.000% | $25.00 | $0.00 | $25.00 |
| 02/24/2021 | NSF Payment Charge - NSF Payment Charge | 0.000% | $25.00 | $0.00 | $25.00 |
| 03/01/2021 | NSF Payment Charge - NSF Payment Charge | 0.000% | $25.00 | $0.00 | $25.00 |
| 05/11/2021 | NSF Payment Charge - NSF Payment Charge | 0.000% | $25.00 | $0.00 | $25.00 |
| 09/13/2021 | NSF Payment Charge - NSF Payment Charge | 0.000% | $25.00 | $0.00 | $25.00 |
| 09/29/2021 | Lender Placed Insurance | 8.990% | $15,687.35 | $164.53 | $15,851.88 |
| | | | | | $16,076.88 |

### Property List

| 4910 Topeka Drive, Tarzana CA 91356 |
|---|

# IMPORTANT DISCLOSURES

FCI Lender Services, Inc. ("FCI") is committed to professional and courteous service to our customers. If you have any questions or concerns, please call our Customer Service Department during our regular business hours at (800) 931-2424 ext. 651, Mon - Fri, 8:00 a.m. - 5:00 p.m., PT.

**ALL CONSUMERS: NOTICES OF ERROR AND REQUESTS FOR INFORMATION:** If you believe that there is an error in your account and you would like to submit a notice of error to FCI to resolve the error (Notice of Error); and/or, if you want to submit to FCI a request for documentation or information regarding your mortgage loan account (Information Request), **you must mail your Notice of Error and/or Information Request to the following exclusive address: FCI Lender Services, Inc. - Attn: Consumer Requests, P.O. Box 28960, Anaheim, CA 92809.** We do not accept a Notice of Error or Information Request sent to any other address or submitted to FCI by telephone, fax, or in any other manner, although you can call us if you have any questions about the Notice of Error and/or Information Request process. Your Notice of Error and/or Information Request should include the name of the borrower(s), the mortgage loan account number, and a description of the asserted error and/or the specific information and documentation requested.

**COLORADO CONSUMERS ONLY:** FCI Lender Services, Inc.'s agent in Colorado is located at 1776 S. Jackson Street #900, Denver, CO 80210-3808; PH: (720) 441-0010 option #1.

**MASSACHUSETTS CONSUMERS ONLY: NOTICE OF IMPORTANT RIGHTS**
YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.

**NEW YORK CONSUMERS ONLY:** FCI Lender Services, Inc. ("FCI") is registered with the Superintendent of the New York State Department of Financial Services (NMLS #4920). You may obtain information about how to file a complaint about FCI with the New York State Department of Financial Services, by visiting the Department's website at www.dfs.ny.gov or by calling the Department at 800-342-3736.

**OREGON CONSUMERS ONLY:** Borrowers: The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer by calling 800-931-2424 ext. 651 or sending an email to customerservice@myfci.com. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

**PENNSYLVANIA CONSUMERS ONLY:** The lender retains a security interest in your residential real estate whenever the security interest has not been released.

**TEXAS CONSUMERS ONLY:** COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

**IMPORTANT NOTICE: IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**PROOF OF SERVICE**

I, Kathleen van Daalen Wetters, declare:

I am a citizen of the United States and employed in Ventura County, California.  I am over

the age of eighteen years and not a party to the within-entitled action.  My business address is

2310 East Ponderosa Drive, Suite 25, Camarillo, California  93010-4747.  On October 28, 2021, I

served a copy of the within document(s):

**PETITION AND REQUEST FOR HEARING PURSUANT TO 21 U.S.C. § 853(n)(2)**

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Camarillo, California addressed as set forth below.

☐    by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

United States Department of Justice
U.S. Attorney's Office
312 N. Spring Street, 12th Floor
Los Angeles, CA 90012
Attn:  AUSA Brent A. Whittlesey

I am readily familiar with the firm's practice of collection and processing correspondence

for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same

day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on

motion of the party served, service is presumed invalid if postal cancellation date or postage

meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose

direction the service was made.

Executed on October 28, 2021, at Camarillo, California.

_____
KATHLEEN VAN DAALEN WETTERS