UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No.    2:20-cr-00579-SVW                                            Date: 12/27/2021

Present: The Honorable:    STEPHEN V. WILSON, U.S. DISTRICT JUDGE

Interpreter    N/A

| Paul M. Cruz | N/A | N/A |
|---|---|---|
| *Deputy Clerk* | *Court Reporter / Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s) | Present | Cust | Bond | Attorneys for Defendants: | Present | App | Ret |
|---|---|---|---|---|---|---|---|
| Richard Ayvazyan | | | X | N/A | | | |
| Marietta Terabelian | | | X | | | | |
| Artur Ayvazyan | | | X | | | | |
| Tamara Dadyan | | | X | | | | |

**Proceedings:    ORDER DETERMINING RESTITUTION AND FORFEITURE OBLIGATIONS OF DEFENDANTS RICHARD AYVAZYAN, MARIETTA TERABELINA, ARTUR AYVAZYAN, AND TAMARA DADYAN, AND SETTING SCHEDULE FOR FURTHER BRIEFING**

At the sentencing hearings for Richard Ayvazyan, Marietta Terabelian, and Artur Ayvazyan, held on November 15, 2021, the Court ordered supplemental briefing from the parties regarding (a) the proper amount of restitution that the Court should order from Defendants and (b) the proper amount of a money judgment of forfeiture as to Defendant Richard Ayvazyan. The restitution issue is also relevant to Defendant Tamara Dadyan, whose sentencing hearing was held on December 6, 2021. That same day, after Dadyan's sentencing, the Court also heard from the parties regarding their supplemental briefing on the restitution and forfeiture issues. Accordingly, this order resolves these two issues so that the restitution and forfeiture obligations can be reflected in the Judgment and Commitment Orders for each defendant.

For the reasons below, the Court concludes that Richard Ayvazyan, Marietta Terabelian, Artur Ayvazyan, and Tamara Dadyan shall be jointly and severally liable for $17,723,141.26 in restitution, with specific amounts due to specific victims as noted below. Further, the Court concludes that Richard Ayvazyan shall be liable for a $1,393,300 money judgment of forfeiture.

Finally, the Court orders additional briefing, as detailed below, regarding the custody of the passports belonging to the children of Richard Ayvazyan and Marietta Terablian – an issue which came up at the December 6 hearing. The government's brief shall be due by January 3, 2022, with any response due by January 10, 2022.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

I.   **Factual Background**

Defendants, along with several others, were indicted on charges for bank fraud, wire fraud, conspiracy to commit bank and wire fraud, aggravated identity theft, and money laundering as part of an effort to defraud the government of millions of dollars. First Superseding Indictment, ECF No. 154 ("FSI").

The government alleged that the conspirators submitted fraudulent applications for relief funds from the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan Program ("EIDL"), in some instances using "synthetic" identities – stolen from unwitting victims – and creating fake business entities. *Id.* ¶¶ 1-32. The government alleged that the conspirators submitted at least 151 fraudulent loan applications, seeking over $21 million in proceeds and receiving at least $18 million. *Id.*

On the eve of trial, June 14, 2021, Defendant Dadyan agreed to a plea deal with the government; pleading guilty to one count each of conspiracy to commit bank and wire fraud, conspiracy to commit money laundering, and aggravated identity theft. ECF No. 539. Three other defendants – Artur Ayvazyan, Richard Ayvazyan and Marietta Terabelian – proceeded to trial.[1] Artur Ayvazyan was found guilty on all counts, while Marietta Terabelian was found guilty on 21 of 22 counts and Richard Ayvazyan was found guilty on 24 of 28 counts. Jury Verdict Form, ECF No. 644. The jury also issued special verdicts of forfeiture as to property belonging to the trial defendants. ECF No. 645-648.

The Court sentenced the three trial defendants on November 15. In determining the defendants' offense level, the Court applied a +16 enhancement for the amount of loss involved in the fraud, which corresponds to a loss level between $1.5 million and $3.5 million. Hr'g Tr. 12:17-23, Nov. 15, 2021, ECF No. 1184 ("First Sent'g Hr'g Tr."); *see* U.S.S.G. § 2B1.1(b)(1). However, the Court noted that the government's position that the loss was far greater was "not without merit." First Sent'g Hr'g Tr. 12:25-13:12. Similarly, in sentencing Dadyan on December 6, the Court also applied a +16 enhancement for the amount of loss, noting that doing so was taking the most "charitable" possible view as to the loss. Hr'g Tr. 58:17-59:4, December 6, 2021 ("Second Sent'g Hr'g Tr.").[2]

At the sentencing for the trial defendants, the government noted that the Court's determination of the loss amount for purposes of the offense level could be relevant to the amount of restitution. First Sent'g Hr'g Tr. at 36:10-21. Accordingly, it requested an opportunity to further brief the issue, which the Court ordered. *Id.* at 38:13-39:19; *see* ECF No. 1177. The Court also sought further briefing to clarify a request by counsel for Richard Ayvazyan to revise a money judgment of forfeiture entered against him. First Sent'g Hr'g Tr. 34:7-9, 35:25-36:6; *see* ECF Nos. 1087, 1177.[3]

---

[1] Another defendant, Vahe Dadyan, also proceeded to trial, but the instant order is not relevant to him.
[2] The Court used an unofficial version of the hearing transcript, which is not filed on the docket, for reference. The statements quoted and cited herein are consistent with the Court's recollection.
[3] Richard Ayvazyan and Marietta Terabelian absconded from supervision prior to sentencing. Counsel for both filed sentencing papers on their behalf. For simplicity's sake, the Court refers to any arguments put forth by counsel in their absence as having been made "by" Ayvazyan and Terabelian.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

On December 6, 2021, after imposing Defendant Dadyan's custodial sentence, the Court held a hearing on the restitution and forfeiture issues in light of their supplemental briefing. Mins. of Restitution Hr'g, ECF No. 1194. It took the matter under submission and indicated that this order would issue. *Id.*

II.  **Restitution**
   a.  **Legal Background**

Title 18 U.S.C. § 3663A provides for mandatory orders of restitution for certain crimes. *Id.* § 3663A(a)(1). Qualifying crimes include any "offense against property under this title, [] including any offense committed by fraud or deceit" for which there is an "identifiable victim." *Id.* § 3663A(c)(1)(A)(ii), (c)(1)(B). A "victim" is a "person directly and proximately harmed as a result of the commission of [the] offense." *Id.* § 3663A(a)(2).

A court "shall order restitution to each victim in the full amount of each victim's losses as determined by the court." *Id.* § 3664(f)(1)(A); *see also* U.S.S.G. § 5E1.1. The burden of proof is on the government to demonstrate by a preponderance of the evidence "the amount of the loss sustained by a victim as a result of the offense." 18 U.S.C. § 3664(e). When multiple defendants contribute to a victim's loss, a court may make the defendants jointly and severally liable for restitution. *Id.* § 3664(h).

   b.  **Application**

In its briefs prior to the first sentencing hearing, the government sought restitution orders of $16,464,071.26 as to Richard Ayvazyan and Marietta Terabelian and restitution orders of $17,723,141.26 as to Tamara Dadyan and Artur Ayvazyan. Notwithstanding the Court's offense level determination, the government stands on those contentions in its supplemental brief. Government's Supp. Sent'g Statement 4, ECF No. 1165 ("Gov't Supp. Br.").

Defendants' supplemental brief countered that the Court should decline to order restitution here, but that if it did, it should order no more than $1,840,556. Resp. to Gov't Supp. Br. 1-2, ECF No. 1178 ("Def. Supp. Br.").[4] Further, Defendants also argued that any restitution should be owed to the United State Small Business Administration ("SBA") alone, contrary to the government's brief, which submitted that restitution is also owed to the individual lenders who disbursed SBA funds. *Id.* at 1; Gov't Sent'g Mem. Re: Marietta Terabelian 25, ECF No. 1147.

For the reasons below, the Court agrees with the government.

   1.  **Should the Court decline to order restitution?**

---

[4] Defendants' position was filed on behalf of Richard Ayvazyan. Counsel for Marietta Terabelian and Artur Ayvazyan each filed a joinder endorsing the arguments in that filing. ECF Nos. 1179, 1180. Tamara Dadyan did not file any joinder, as her sentencing hearing had not yet occurred when the briefs were filed. However, the Court invited Dadyan's counsel to participate in the hearing on the restitution and forfeiture issues to whatever extent he wished (counsel excused himself part way through the hearing). Having raised no other arguments, the Court will treat Dadyan as having joined in the filing on behalf of Richard Ayvazyan.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Defendants argue that the Court should decline to order restitution, citing 18 U.S.C. § 3663A(c)(3)(B), which permits a court to refrain from ordering restitution where "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." Def. Supp. Br. 9.

The Court rejects this argument. Although the restitution inquiry imposes some burdens on the Court, it is not so complex that "the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B). Because of Defendants' fraud, lenders administering SBA economic relief programs directly wired Defendants money for which they were not eligible. The Court concludes it can determine who should be considered a "victim" of Defendants' fraud and what amount of loss the government has proven by reviewing the parties' evidence. Any "burden" on the sentencing process from resolving these issues is therefore outweighed by the need to provide restitution to the victims of Defendants' multi-million dollar fraud.[5] *See id.*

Accordingly, there is no basis to refrain from ordering restitution, which is thus mandatory under 18 U.S.C. § 3663A(a)(1).

## 2. What is the correct amount of restitution?

The Court must order restitution "in the full amount of each victim's losses." *Id.* § 3664(f)(1)(A); *see also* U.S.S.G. § 5E1.1. Defendants contend that a roughly $1.8 million restitution amount would be consistent with the evidence in the case and the Court's conclusion as to the loss amount when it determined the offense level. Def. Supp. Br. 8-9. The government, who must prove all losses by a preponderance of the evidence, *see* 18 U.S.C. § 3664(e), contends that the evidence supports restitution orders of roughly $16.5 and $17.7 million, notwithstanding the Court's loss determination for the offense level. Gov't Supp. Br. 3-4.

First, the Court's conclusion to apply a +16 enhancement for amount of loss in determining the offense level does not compel any result here. *See* First Sent'g Hr'g Tr. 12:17-23; Second Sent'g Hr'g Tr. at 58:17-59:4. It is true that a +16 amount of loss enhancement corresponds to a loss level between $1.5 and $3.5 million, based on U.S.S.G. § 2B1.1(b)(1). However, that does not define the boundaries of a permissible restitution order.

The loss determination underlying the guidelines calculation is distinct from the loss determination underlying restitution. *United States v. Catherine*, 55 F.3d 1462, 1464 (9th Cir. 1995) ("The fact that the designation of [the] offense level [] is dependent upon an enhancement for the loss to the victim does not mean that this loss determination is to be utilized for purposes of determining the amount of restitution to be paid."). Restitution's purpose is "to make the victims whole; conversely, the Sentencing Guidelines serve a punitive purpose, necessitating a different loss calculation scheme." *United States v. Gordon*, 393 F.3d 1044, 1052 n.6 (9th Cir. 2004) *abrogated on other grounds by Lagos*

---

[5] Additionally, any concern about prolonging the sentencing process because of the restitution inquiry is not warranted here, where the remainder of sentencing is complete and where Defendants Richard Ayvazyan and Marietta Terabelian have absconded and are not awaiting the resolution of the sentencing process.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

*v. United States*, 138 S. Ct. 1684 (2018); *see also United States v. Gossi*, 608 F.3d 574, 582 (9th Cir. 2010) ("the advisory Sentencing Guidelines and restitution to victims under the MVRA clearly focus on different aspects of the offense and serve different purposes"). "A defendant's culpability will not always equal the victim's injury." *Catherine*, 55 F.3d at 1465.

Because restitution is intended to make the victims whole, the Court cannot approach the burden of calculating restitution in a flexible or lenient manner, as the Court did when it calculated the loss amount for sentencing purposes. As the Ninth Circuit has explained, although "there is little logic in increasing or decreasing a defendant's sentence" on the basis of potentially complex loss calculations in a punitive context, resolving those complexities is "necessary in making victims whole in the restitutionary context." *Gordon*, 393 F.3d at 1052 n.6.

Accordingly, for restitution purposes, the Court must (and can, *see supra* at Section II(b)(1)) resolve any complexities that it did not resolve for sentencing purposes. The Court's application of the +16 enhancement, consistent with a $1.5 to $3.5 million loss, therefore does not preclude a restitution order based on a higher amount of losses. As the Court noted in both sentencing hearings, its application of the +16 enhancement was based on the most conservative possible view of the loss that was consistent with the evidence. *See* First Sent'g Hr. Tr. 12:17-13:12; Second Sent'g Hr'g Tr. 58:17-59:4.[6]

The government submitted a table of all the loans – over 100 in total – that it connected to the conspiracy. Gov't Sent'g Mem. Re: Artur Ayvazyan, Ahn Decl., Ex. 1, ECF No. 1144 ("A.A. & T.D. Table"). The loans are connected to the conspiracy in a variety of ways; for example, some were submitted by a known alias of a conspirator, others were submitted from an IP address traced to one of the conspirator's addresses. *See id.* Even if one looked at only the 12 loans submitted by a conspirator *in their own name*, the loss amounts to $1,466,525. *See id.* And that does not even include the three loans for $684,100 in the name of Nazar Terabelian, Marietta Terabelian's father who died just days before the applications were submitted in his name. *Id.* Thus, in the Court's view, even in the most conservative approach, looking to only the loans that were most undeniably connected to the Defendants, the loss was still clearly over $1.5 million, justifying the +16 enhancement under U.S.S.G. § 2B1.1(b)(1).

However, the Court also noted that the very evidence it relied on would not be inconsistent with a higher loss determination. First Sent'g Hr. Tr. 12:17-13:12. In a restitution context, the focus on making victims whole supports a restitution order in the full amount of the losses that are proven by a preponderance of the evidence to have directly and proximately resulted from the Defendants' fraudulent scheme. *See* 18 U.S.C. §§ 3663A(a)(2), 3664(e), 3664(f)(1)(A); *Gordon*, 393 F.3d at 1052 n.6.

Here, there is no doubt that a loan disbursed pursuant to a fraudulent application submitted by the conspirators would constitute a loss that "directly and proximately" resulted from the Defendants' criminal conduct. 18 U.S.C. § 3663A(a)(2). Thus, the only real question is whether the government has produced adequate evidence that the loans it has identified were indeed submitted by the conspirators. The Court concludes that the government has done so; the tables of loans submitted with its sentencing

---

[6] If anything, the Court was overly conservative in its approach.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

briefs, supported by the evidence it adduced at trial from Exhibit 115 and its witness, Marylee Robinson, sufficiently establish the losses for which it seeks restitution. *See* A.A. & T.D. Table; Gov't Sent'g Mem. Re: Marietta Terabelian, Ahn Decl., Ex. 1, ECF No. 1157 ("R.A. & M.T. Table").

First, several of the loans in the table formed the basis of the underlying wire fraud and bank counts for which the jury convicted the trial defendants. *See* A.A. & T.D. Table; R.A. & M.T. Table; Jury Verdict Form; FSI, Counts 2-20. These are properly considered as part of the loss.

Further, as discussed above, several others were submitted by one of the conspirators in their own name for a fake business. *See* A.A. & T.D. Table; R.A. & M.T. Table. Other loans were submitted by one of the conspirators using a known alias, such as Iuliia Zhadko (alias of Richard Ayvazyan), Viktoria Kauichko (alias of Marietta Terabelian), and Anton Kudiumov (alias of Manuk Grigoryan).[7] The government has thus sufficiently proven that these loans were also part of the Defendants' fraud, and they therefore should be included in the loss.

Finally, the other loans in the government tables are connected to conspiracy in three ways: (1) the loan was submitted from an IP address that was traced to the residence of a conspirator; (2) the loan was submitted on behalf of a fake business entity or synthetic individual identity that was traced to a conspirator;[8] and (3) proceeds from the loan were directed to the conspirators or their business organizations.[9] *See* A.A. & T.D. Table; R.A. & M.T. Table. This evidence is sufficient to establish by a preponderance of the evidence that the loss associated with the loans also resulted from the Defendants' fraudulent conspiracy. *See* 18 U.S.C. § 3664(e).

Accordingly, the Court concludes that Defendants shall be liable for a restitution order of $17,723,141.26.[10] Because the Defendants engaged in a coordinated conspiracy to submit the fraudulent loan applications that resulted in the losses here, Defendants shall each be jointly and severally liable for this amount. *See* 18 U.S.C. § 3664(h) (permitting joint and several restitution liability when multiple defendants contribute to a victim's loss).

### 3. Who is the "victim" to whom restitution is owed?

---

[7] The jury necessarily concluded that the conspirators used these particular aliases, based on its conviction on Counts 10 and 18-20, which were based on loan applications submitted in the names of Zhadko, Kauichko, and Kudiumov.

[8] For example, the search of Tamara Dadyan and Artur Ayvazyan's home uncovered a trove of fraudulent identification documents, such as passports and driver's licenses, bearing the picture of a conspirator but the personal information of a synthetic identity that was used to apply for loans.

[9] For example, proceeds from several loans were used to help Richard Ayvazyan and Marietta Terabelian purchase a new home. Further, several loans were connected in more than one of these ways.

[10] The government had sought a slightly lesser restitution order of $16,464,071.26 for Richard Ayvazyan and Marietta Terabelian. This lesser amount results from the exclusion of (1) a Celtic Bank loan of $244,500; (2) a WebBank loan of $244,570; and (3) five SBA loans for $770,000. *Compare* A.A. & T.D. Table *with* R.A. & M.T. Table. The government excluded these loans out of an abundance of caution because they were arguably identified as a result of the search of Richard Ayvazyan and Marietta Terabelian's phones at Miami International airport – a search for which they sought *Kastigar* relief. Gov't Supp. Br. 9 n. 5. However, since the Court denied their *Kastigar* motion, ECF No. 874, the Court concludes there is no basis for excluding these loans from the restitution obligation of Richard Ayvazyan and Marietta Terabelian.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

A "victim" is a "person directly and proximately harmed as a result of the commission of [the] offense." *Id.* § 3663A(a)(2). Defendants contend that the only victim is the SBA, who ultimately funded both the EIDL and PPP programs. Def. Supp. Br. 7-8. In contrast, the government contends that the victims are the entities who disbursed the loans: SBA disbursed EIDL loans, but private financial institutions disbursed PPP loans. Gov't Sent'g Mem. Re: Marietta Terabelian 25. Thus, in the government's view, restitution for the EIDL loans is owed to the SBA, but restitution for the PPP loans is owed to the twelve private lenders who disbursed those loans. *Id.*

Defendants argue that the lenders should not be considered victims because they will be reimbursed by SBA, who will bear the ultimate loss. Def. Supp. Br. 7-8. Thus, the lenders will not actually be "harmed" and are not victims. *Id.* Further, Defendants highlight the Court's conclusion in calculating the offense level, where it rejected the government's argument for an enhancement based on the number of victims that was predicated on the lender banks being considered victims. *Id.*; *see* Sent'g Hr. Tr. 14:8-12; *see also* U.S.S.G. § 2B1.1(b)(2) (providing for a +2 increase to the offense level where the offense involves 10 or more victims).

Defendants' argument, though not without some merit, suffers from the same flaw as the analogous argument Defendants make with respect to the amount of restitution: it fails to recognize the different purposes underlying custodial sentencing and restitution. *See Gossi*, 608 F.3d at 582; *Catherine*, 55 F.3d at 1465.

In imposing a sentence, the Court noted that the government presented some caselaw that supported its argument for applying the number of victims enhancement, but the Court ultimately concluded that the private lenders should not be considered victims since their losses would presumably be reimbursed by SBA. Sent'g Hr'g Tr. 14:8-12. Further, the Defendants primarily saw themselves as defrauding the government, not the lenders; for example, text messages show Tamara Dadyan and Richard Ayvazyan joking about the federal government going bankrupt. *See* Government's Exhibit ("GEX") 10; Gov't Sent'g Mem. Re: Richard Ayvazyan 19-20, ECF No. 1148. Thus, in determining the Defendants *culpability* – which is the focus of sentencing – the Court determined that rejecting the number of victims enhancement was a better fit for the Defendants' conduct. *See Catherine*, 55 F.3d at 1465.

However, as previously highlighted, restitution serves a compensatory purpose, and, as with the determination of loss, different considerations may govern the determination of who is a victim. *See id; Gossi*, 608 F.3d at 582. In a restitution context, the fact that a party's losses would likely – but not necessarily – be reimbursed by a third-party should not categorically preclude that party from being considered a victim. Here, the government submits that the private lenders who disbursed the PPP loans have not yet been reimbursed and that there are regulatory requirements to be reimbursed such that there is "no guarantee" they will be paid back. Gov't Sent'g Mem. Re: Marietta Terabelian 15; Second Sent'g Hr'g Tr. 89:1-10.

Given these facts, the Court concludes that the private lenders are properly considered "victims" for purposes of restitution who should be repaid for the losses they have incurred from their disbursement of PPP loans. 18 U.S.C. § 3663A(a)(2). SBA can take steps to ensure that it does not also reimburse the lenders for these same amounts, which would bestow a windfall on the lenders.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Accordingly, the Court concludes that Defendants' joint and several restitution obligation shall be to the following victims in the following amounts:

| Victim Name | Amount of Loss |
|---|---|
| Seattle Bank | $521,223.00 |
| Celtic Bank | $3,640,335.00 |
| Cross River Bank | $1,238,691.00 |
| Ready Capital | $315,000.00 |
| Square Capital, Inc. | $295,676.26 |
| JPMC | $112,500.00 |
| CDC Small Business Finance | $499,945.00 |
| Wells Fargo Bank, N.A. | $497,596.00 |
| Comerica Bank | $137,500.00 |
| Newtek Small Business Finance | $2,691,500.00 |
| Bank of America | $318,231.00 |
| WebBank | $1,095,044.00 |
| United States Small Business Administration | $6,359,900.00 |

### III. Forfeiture
#### a. Legal Background

Title 18 U.S.C. § 981(a)(1)(c) provides for the forfeiture of proceeds traceable to the commission of a bank fraud offense, in violation of § 1344, or conspiracy to commit bank fraud. Similarly, § 982(a)(1) provides for the forfeiture of any property "involved in" a money laundering or conspiracy to commit money laundering offense, in violation of § 1956 or § 1957.

Rule 32.2 prescribes the procedures relevant to criminal forfeiture. It requires the government to provide notice to the defendant that it intends to seek forfeiture of property in the indictment or information. Fed. R. Crim. P. 32.2(a). A forfeiture judgment can order the forfeiture of a specific piece of property, or it can be in the form of a personal money judgment against the defendant. *See id.* note (2000) (Subdivision (b)); *see also United States v. Casey*, 444 F.3d 1071, 1077 (9th Cir. 2006) (concluding that money judgments of forfeiture are permissible under 21 U.S.C. § 853, which provides for forfeiture in drug cases). A forfeiture order must be imposed as part of the sentence, though it can be subsequently amended. Fed. R. Crim. P. 32.2(a)(4), (e).

#### b. Application

Here, because the Defendants were charged with money laundering and bank fraud conspiracies, the First Superseding Indictment indicated that the government was seeking forfeiture of all property constituting or derived from the proceeds of the offenses, including several homes purchased by Richard Ayvazyan and Marietta Terabelian. FSI, Forfeiture Allegations 1-5. The jury issued special verdicts as to the trial defendants, finding that three homes, multiple bank accounts, sixty gold coins, several watches and pieces of jewelry, and a bag with over $400,000 in cash were all subject to forfeiture, having been obtained from the proceeds from the fraud. ECF Nos. 645-648.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Additionally, the government also sought a money judgment of forfeiture in the amount of $1,420,199 against Richard Ayvazyan only. ECF No. 1053 ("App."). The Court issued an order granting the application, ECF No. 1087, prior to his sentencing and without any hearing, providing that the forfeiture judgment would become final on sentencing. *See* Fed. R. Crim. P. 32(c)(1) ("no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment.").

In his sentencing memorandum, Richard Ayvazyan challenged the money judgment of forfeiture in two respects, arguing that (1) the amount must be reduced to account for the value of certain items of specific property, and (2) the amount must be reduced to account for funds from the fraud that did not come to rest with him. Def. Sent'g Mem. Re: Richard Ayvazyan 34-35, ECF No. 1105.

1. **Specific Property**

Defendant argues that two deductions from the money judgment should be made for the value of specific property: (a) $774,628, representing the portion of one of Ayvazyan's forfeited homes that was purchased with "untainted" funds, and (b) $451,185, representing the value of a forfeited bag of cash found in Ayvazyan's backyard.[11]

As to the first deduction, the government counters that there was *no* "untainted" money used to purchase the house. Gov't Supp. Br. 15-16. It notes that the jury convicted Ayvazyan of Count 26 – the money laundering conspiracy count – which charged that Ayvazyan (and others) laundered the proceeds of their fraud by spending it on homes, gold, jewelry, and other luxury goods. *See* FSI, Count 26; Jury Verdict Form.

When a defendant attempts to launder and conceal their illicit proceeds by commingling them with funds from legitimate sources, such as by purchasing an asset with both "dirty" and "clean" money, the *entire* amount of money (or the asset) is subject to forfeiture. 18 U.S.C. § 982(a)(1). Funds are forfeitable when they are "involved in" a money laundering offense under § 1956 – and the "clean" money with which a defendant tries to obscure their illicit funds is just as "involved in" the offense as the "dirty" money itself. *Id.* Even though the "clean" money may not initially be forfeitable, when it is used to help perpetuate the money laundering, it *becomes* forfeitable. *See id.*

That is exactly what happened here – Ayvazyan's laundering of his criminal proceeds by purchasing the home tainted whatever funds from legitimate sources he used to help effect that transaction and conceal his ill-gotten gains. Thus, the government is correct that there are no "untainted" funds on which to base any deductions. Gov't Supp. Br. 15-16.

As to the second deduction, Defendant argues that he is essentially being forced to forfeit the $451,185 twice – once as part of the jury's forfeiture verdict and once from the money forfeiture judgment. But this misunderstands the source of the money judgment of forfeiture. The jury's forfeiture

---

[11] Ayvazyan also previously argued that a reduction must be made for the value of luxury watches that were forfeited, but based on the government's supplemental briefing, which explained how the value of those watches had already been deducted, Defendant withdrew that argument. Def. Supp. Br. 10-11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

verdict and the money judgment cover different categories of funds, thus there is no impermissible double-counting.

The government's requested money judgment was predicated solely on specific loans underlying counts for which the jury convicted Ayvazyan. App. 12-13. It then traced the proceeds of those loans to specific bank accounts controlled by Ayvazyan, excluding any funds that were (a) transferred to another party or (b) spent on items of specific property that had already been forfeited. *Id.* Thus, the $1,420,199 forfeiture requested by the government was calculated as follows:

| **Source of Funds** | **Deductions** | **Balance Controlled by Ayvazyan** |
|---|---|---|
| $394,700 in PPP/EIDL loans to Timeline Transport, Inc. | • $110,000 used to purchase home that was forfeited at trial,<br>• $82,000 used to purchase luxury watches forfeited at trial,<br>• $50,000 transferred to V. Dadyan | $152,700 |
| $182,637 PPP loan to Sabala Construction | • $132,637 held in accounts controlled by other conspirators | $50,000 |
| $534,000 in PPP/EIDL loans to Mod Interiors | • $238,960 used to purchase gold and jewelry forfeited at trial<br>• $74,616 transferred to M. Terabelian<br>• $46,000 transferred to A. Ayvazyan | $174,424 |
| $546,750 in PPP/EIDL loans to Top Quality Contracting | • $10,000 transferred to M. Terabelian | $536,750 |
| $534,000 in PPP/EIDL loans to Turing Info | • $18,475 transferred to M. Terabelian<br>• $9,200 used to purchase a luxury watch forfeited at trial | $506,325 |
| | | **$1,420,199** |

Once a defendant has been found guilty of a crime, the government need only prove the amount of money traceable to that crime by a preponderance of the evidence to obtain a money judgment of forfeiture. *See United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1149 (9th Cir. 2011); Fed. R. Crim. P. 32.2(b)(1)(A); *see also United States v. Capoccia*, 503 F.3d 103, 116 (2d. Cir. 2007). However, the government concedes that under Ninth Circuit precedent, a money judgment of forfeiture may not incorporate funds used to purchase specific property that has already been forfeited. *United States v. Thompson*, 990 F.3d 680, 690-91 (9th Cir. 2021); *see* App. 10 n. 4. Thus, the money judgment it sought could not have included any funds that wound up in the bag of $451,185 that was forfeited at trial.

Ayvazyan's argument – that "having persuaded the jury" to forfeit the bag of cash, "the government cannot force Ayvazyan to pay a money judgment for that same $451,185" – inappropriately conflates between two categories of funds. Def. Supp. Br. 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

The Court has dealt with this bag of cash on two other occasions, both of which concerned the bag's connection to the *total* sum of fraudulent funds obtained from the *entirety* of the conspiracy. First, the Court granted the government's motion in limine to admit photographs of the bag of cash during the first phase of trial on the Defendants' guilt. ECF No. 517. The Court had previously noted that the cash could be relevant to the "'overall scheme'" to obtain fraudulent funds, but that the government needed to show "'a sufficient contextual or substantive connection.'" Order 15, ECF No. 478 (quoting *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995). In supplemental briefing, the government detailed the extent of cash withdrawals made by *all* of the conspirators during the height of the fraud, *see* Supp. Mot. in Limine 11-12, ECF No. 506, thus providing a sufficient connection between the conspiracy and the bag of cash.

Second, the Court also addressed the bag of cash in resolving Richard Ayvazyan's motion for judgment of acquittal or new trial. After the jury found the bag to be forfeited in the second phase of trial, Ayvazyan argued that the jury's verdict could not stand because the government had failed to trace the cash to the fraudulent loans presented at trial. Mot. for New Trial 20-22, ECF No. 683. The Court rejected this argument, noting that the government did not have to tie the cash to "a specific offense," and that the jury only had to find that the cash was the product of the *entire* conspiracy, which was "much broader than the loans included in the indictment." Order 8, ECF No. 875.

In other words, in both contexts discussed above, the Court's conclusion was based on the fact that there was substantial circumstantial evidence that the cash in the bag was derived from the funds generated by the *entire* conspiracy – which involved dozens of identities and bank accounts, over one hundred loans, and millions of dollars. *See id.* at 8-9.

However, in the present context, the forfeiture deals only with a small subset of those funds: the proceeds from the twelve loans that the government specifically traced to five bank accounts controlled by Ayvazyan. *See* App. 13-17. The money judgment would only be subject to reduction if some proceeds from these twelve traced loans ended up in the forfeited bag. There was sufficient evidence to conclude that the cash was derived from the proceeds of the conspiracy *as a whole*, but that does not establish that the cash came from the proceeds *of these twelve specific loans* – Ayvazyan's argument relies on a false equivalency between the two.

A review of the record reveals no evidence that any of the proceeds from those twelve loans ended up in the bag. Indeed, only a small portion of the over $400,000 in cash could even plausibly have been derived from the traced loans. First, of the $546,750 in loans to Top Quality Contracting, $6,250 was withdrawn as cash. GEX 401 at 7 (filed as App., Boyle Decl., Ex. B). Second, of the $182,637 loan to Sabala Construction, up to $20,649 was withdrawn as cash. *Id.* at 8.[12]

While there is no affirmative evidence that these two cash withdrawals ended up in the bag of $451,185 found in Ayvazyan's yard, the government concedes that it is "theoretically possible" that

---

[12] GEX 401 shows that Sabala Construction also received a $113,750 loan that was <u>not</u> one of the traced loans underlying the money judgment. From the combined amount, $20,649 was withdrawn to cash. To err on the side of caution, the Court will attribute the entire $20,649 withdrawal to the traced loan of $182,637 and deduct it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

some traced loan funds could have ended up in the bag since fraudsters "do not keep accurate records tracing where their bags of stolen cash come from." Gov't Supp. Br. 18.

Thus, to err on the side of caution, the Court will deduct these two cash withdrawals from the amount of the money judgment to ensure that it is not based on any "double-counting" of already forfeited property. *See Thompson*, 990 F.3d at 690-91. However, no further deduction is warranted – certainly not the full value of the $451,185 in cash that was in the forfeited bag, as Ayvazyan would have it. The mere *possibility* that some of the cash could have come from the traced loans, without any indication that it did or even that those loans were converted into cash (beyond the two instances discussed above), is not a sufficient basis to deduct the entire value of the forfeited bag.

Accordingly, the Court will reduce the money judgment of forfeiture by $26,899.

### 2. Money Coming to Rest with Other Conspirators

Ayvazyan also argues that deductions to the money judgment of forfeiture should be made to reflect funds that did not "come to rest" with him. Specifically, Ayvazyan argues that the judgment should be reduced by $1,245,775; in essence, he argues that, except for the $174,424 that was traced from the loans to Mod Interiors, all the other loan proceeds came to rest in bank accounts that were jointly controlled by other conspirators and thus cannot be attributed to him in a money judgment. Def. Sent'g Mem. Re: Richard Ayvazyan 38-40.

Defendant's argument is based on *United States v. Thompson*, 990 F.3d 680 (9th Cir. 2021). In *Thompson*, the Ninth Circuit held that joint and several liability is impermissible in a money forfeiture order. *Id.* at 690-91. *Thompson* concerned an "advance pay" fraud where the two conspirators convinced their victims to submit the advances to three accounts maintained by escrow agents. *Id.* at 682-83. From there, the fraudulent proceeds were divided up and either transferred into other accounts controlled by one of the conspirators or spent. *Id.* at 685. The district court issued forfeiture orders that essentially held both defendants jointly and severally liable for the full amount of the funds initially transferred into the three escrow accounts. *Id.* at 690.

The Ninth Circuit reversed. It extended *Honeycutt v. United States*, 137 S.Ct. 1626 (2017), which barred joint and several forfeiture liability under 21 U.S.C. § 853 (the forfeiture statute for drug cases) and held that joint and several forfeiture liability was also impermissible under 18 U.S.C. § 981. *Thompson*, 990 F.3d at 689. Thus, the court reiterated that a money order of forfeiture must be based on the funds that "came to rest" with a specific defendant. *Id.* at 690-91.

The Ninth Circuit then applied that principle to the case at hand and distinguished between joint accounts where the proceeds "come to rest" and joint accounts that are "stops on the way to splitting up the money." *Id.* at 691. And because the escrow accounts were mere "stops on the way" to dividing the money between the two conspirators, they could not be the basis for the money forfeiture orders. *Id.* at 691-92.

Here, Ayvazyan argues that – because other conspirators, like Manuk Grigoryan, appear to also have had access to the bank accounts to which the loans were traced – they were joint accounts that were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

"stops on the way" to dividing up the proceeds and thus cannot be the basis for forfeiture. Def. Sent'g Mem. Re: Richard Ayvazyan 38-40; Def. Supp. Br. 13-15.

However, the arrangement here is less like a "stop on the way" to dividing up the fraud proceeds and more like a jointly controlled account where the funds came to rest for the benefit of all conspirators who had access to it. *See Thompson*, 990 F.3d at 691-92. Even if other conspirators, like Grigoryan, had access to the accounts and could make withdrawals for their benefit, so could Richard Ayvazyan. This is a far cry from the scenario in *Thompson* where the forfeiture order was based on accounts maintained by third-party escrow agents from which the funds were then transferred to the conspirators' individual accounts – clearly the escrow accounts were "stops on the way" to dividing up the proceeds. *See id.* at 685, 690-91.

Indeed, *Thompson* expressly noted that it would be a different case if the funds were deposited in a joint bank account. *Id.* at 691. "If the money came to rest in a joint account, [] the swindlers would each have an unfettered right to enjoy the whole." *Id.* In that context, a forfeiture order could be based on the proceeds in the joint account. *See id.* That is the exact context the Court is presented with here: a jointly controlled account where the fraudulent funds had come to rest, and each conspirator who had access to the accounts – including Ayvazyan – could enjoy the whole of the proceeds. *See id.*[13] Accordingly, a forfeiture order may be based on the funds that came to rest in those joint accounts. *See id.* Any other conclusion would allow criminals to insulate themselves from a money judgment of forfeiture simply by directing their ill-gotten gains to a bank account held jointly with their co-conspirators.[14]

In sum, the Court concludes that the money traced by the government came to rest with Ayvazyan. Accordingly, it may form the basis of a money judgment of forfeiture. Thus, given the one deduction detailed in the previous section, Richard Ayvazyan's sentence shall include a money judgment of forfeiture in the amount of $1,393,300.

IV.     **Custody of the Children's Passports**

As a final matter, Richard Ayvazyan and Marietta Terabelian's supplemental briefing also sought an order from the Court either ordering the return of the passports belonging to their children or clarifying that there was no bar to their passports being reissued – an issue that was also raised at the December 6 hearing. Def. Supp. Br. 15-16; Second Sent'g Hr'g Tr. 99:16-104:25.

When bond was issued for Ayvazyan and Terabelian by Magistrate Judge Otazo-Reyes in the Southern District of Florida, where they were arrested, the conditions of bond included a provision that they and their children surrender their passports. ECF Nos. 44, 45, 47, 48. It is unclear exactly what happened to the children's passports, but it appears that the Probation Department does not have them.

---

[13] The accounts may not have formally been joint accounts since they were held in the name of aliases, such as Iuliia Zhadko, Ayvazyan's alias, but if others, like Grigoryan, were given access credentials and could make withdrawals or transfers from the accounts, then they were functionally joint accounts.

[14] While Ayvazyan notes that the government could pursue an *in rem* forfeiture of the bank account itself, recovery would be limited to the funds remaining in the account at the time of forfeiture. Unlike a money judgment, an *in rem* forfeiture of the account would not reach any proceeds already spent on "wine, women, and song" and thus would fail to fully disgorge the benefits of criminal activity from criminals. *See United States v. Newman*, 659 F.3d 1235, 1243 (9th Cir. 2011)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

*See* Second Sent'g Hr'g Tr. 100:20-24. Counsel for Richard Ayvazyan indicated that the State Department is refusing to issue new passports, citing the bond condition. *Id.* at 100:5-17.

At the hearing, counsel for the government submitted that when a defendant absconds, as Ayvazyan and Terabelian have here, even though the bond is forfeited, the conditions of bond remain in full force and effect. *Id.* at 100:25-102:8. The Court indicated that the government should file a brief with the authority in support of that position and that counsel for Ayvazyan and Terabelian could file a reply. *Id.* at 104:1-7.

Given that the parties have not yet filed their briefs, nor any stipulation setting out a briefing schedule, the Court orders the government's brief on this matter to be filed by January 3, 2022, with any response due by January 10, 2022. The parties' briefs should not exceed 10 pages, excluding any tables.

## V.     Conclusion

For the foregoing reasons, the Court concludes that Richard Ayvazyan, Marietta Terabelian, Artur Ayvazyan, and Tamara Dadyan shall be jointly and severally liable for $17,723,141.26 in restitution, as specified above. Further, the Court concludes that Richard Ayvazyan shall be liable for a $1,393,300 money judgment of forfeiture. Finally, the Court orders briefing regarding the children's passports based on the following schedule: the government's brief shall be due by January 3, 2022, with any response due by January 10, 2022.

**IT IS SO ORDERED.**

:
**Initials of Deputy Clerk**