1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3        HONORABLE STEPHEN V. WILSON, JUDGE PRESIDING

4  UNITED STATES OF AMERICA,     )
                         )
5                      )
                         )
6              Plaintiff,   )
                         )
7                      )
                         )
8        Vs.           )  No. CR20-00579-SVW
                         )
9                      )
                         )
10  AYVAZYAN, ET AL.,       )
                         )
11                      )
                         )
12             Defendants.  )
                         )
13  _____  )

14

15

16        REPORTER'S TRANSCRIPT OF PROCEEDINGS

17           *PRETRIAL CONFERENCE*

18          LOS ANGELES, CALIFORNIA

19          MONDAY, JUNE 14, 2021

20

21

22        MIRIAM V. BAIRD, CSR 11893
      OFFICIAL U.S. DISTRICT COURT REPORTER
23     350 WEST FIRST STREET, FOURTH FLOOR
       LOS ANGELES, CALIFORNIA 90012
24         MVB11893@AOL.COM

25

1              A P P E A R A N C E S

2

3    **IN BEHALF OF THE PLAINTIFF,**      CATHERINE SUN AHN
     **UNITED STATES OF AMERICA:**        SCOTT PAETTY
4                                         AUSA - OFFICE OF US
                                          ATTORNEY
5                                         ORGANIZED CRIME DRUG
                                          ENFORCEMENT TASK FORCE
6                                         SECTION
                                          312 NORTH SPRING STREET
7                                         SUITE 1400
                                          LOS ANGELES, CA 90012
8
                                          CHRISTOPHER FENTON
9                                         US DEPARTMENT OF JUSTICE
                                          1400 NEW YORK AVENUE, NW
10                                        WASHINGTON, DC 20530

11

12   **IN BEHALF OF THE DEFENDANTS,**     FRED MINASSIAN
     **AYVAZYAN, ET AL.,:**               KAPLAN KENEGOS AND KADIN
13                                        9150 WILSHIRE BOULEVARD
                                          SUITE 175
14                                        BEVERLY HILLS, CA 90212

15                                        ASHWIN J. RAM
                                          STEPTOE AND JOHNSON LLP
16                                        633 WEST 5TH STREET SUITE
                                          1900
17                                        LOS ANGELES, CA 90071

18                                        JOHN LEWIS LITTRELL
                                          RYAN FRAZER
19                                        BIENERT KATZMAN LITTRELL
                                          WILLIAMS LLP
20                                        903 CALLE AMANECER, SUITE
                                          350
21                                        SAN CLEMENTE, CA 92673

22                                        JENNIFER J. WIRSCHING
                                          ATTORNEY AT LAW
23                                        1935 ALPHA ROAD, SUITE 216
                                          GLENDALE, CA 91208
24
                                          THOMAS A. MESEREAU, JR.
25                                        MESEREAU LAW GROUP
                                          10100 SANTA MONICA

```
 1                                    BOULEVARD SUITE 300
                                      LOS ANGELES, CA 90067
 2
                                      PETER JOHNSON
 3                                    LAW OFFICE OF PETER JOHNSON
                                      409 NORTH PACIFIC COAST
 4                                    HIGHWAY SUITE 651
                                      REDONDO BEACH, CA 90277
 5

 6

 7

 8

 9

10     ALSO APPEARING:  LAURA CRAWFORD

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

1        LOS ANGELES, CALIFORNIA; MONDAY, JUNE 14, 2021; 1:30 P.M.

2                              ---

3

4            THE CLERK:  Calling case CR20-00579-SVW, USA vs.

5    Ricahrd Ayvazyan.

6            Counsel, please state your appearance for the

7    record.

8            MR. PAETTY:  Good afternoon, Your Honor.

9            Scott Paetty for the United States, joined at

10   counsel table with me are trial attorney Chris Fenton and the

11   Assistant United States Attorney Catherine Ahn and Special

12   Agent Jeffrey Clark from the IRS.

13           MR. RAHM:  Good afternoon, Your Honor.

14           Ashwin Ram on behalf of Richard Ayvazyan.  I'm

15   joined currently not at counsel table with Michael Keogh,

16   Megan Newcomers, Nicholas Silverman.  Would it please the

17   Court if at least one co-counsel could join me within one of

18   these three empty seats?

19           THE COURT:  Yes.

20           MR. RAHM:  Thank you, Your Honor.

21           MR. LITTREL:  Good afternoon, Your Honor.

22           John Littrell, also Ryan Frazer is with me.  I

23   would also ask that he be invited to join me at counsel

24   table.  We represent Mary Terabelian.  Thank you, Your Honor.

25           MS. WIRSCHING:  Jennifer Wirsching for Artur

1   Ayvazyan, who is also represented by Tom Mesereau.  We would

2   request that Mr. Mesereau be able to be seated at the table

3   with us.

4          THE COURT:  Absolutely.

5          MR. MINASSIAN:  Good afternoon, Your Honor.

6          Fred Minassian on behalf of Tamara Dadyan who is

7   present in the court this afternoon.

8          MR. JOHNSON:  Peter Johnson on behalf of Vahe

9   Dadyan who is also present.

10          MS. CRAWFORD:  Good afternoon, Your Honor.

11          Laura Crawford standing in for attorney Gilbert

12   Tahmazian on behalf of Arman Hayrapetyan who is present being

13   assisted by the Armenian interpreter.

14          THE COURT:  Who is that now?

15          THE CLERK:  That was Laura Crawford in place of

16   Mr. Tahmazian who is on the airplane.

17          THE COURT:  Okay.  This is the time for further

18   pretrial conference.  The Court spent with the lawyers a

19   substantial part of Friday afternoon having an extensive

20   hearing regarding many of the matters that were raised.

21   There are some additional matters that are raised.  One of

22   them relates to Massino, and his testimony.  With regard to

23   the motion to bar him from testifying about the e-mails, that

24   motion is denied.  He can testify regarding the e-mails.  The

25   wording of the proposed question should be altered in the

```
 1    sense that he shouldn't be asked if he is -- does he
 2    recognize certain a name from the e-mail on another document.
 3    The term recognize implies some mental state or some
 4    knowledge.
 5         I would allow that type of questioning if the
 6    questioning is along the lines of I show you exhibit so and
 7    so, and do you see the name of so and so on the -- on that
 8    document.  It is similar, but there is a nuance.  I think
 9    that nuance should be observed.
10         With regard to the Robinson, that's the accountant.
11    I do believe that the defendants have a right to know about
12    the full extent of her compensation, not just from the work
13    she did on this case, but what her accounting firm performed
14    as much -- and all of the other cases that she was retained
15    by government to do similar work.  I don't know how many
16    cases there are, but it all goes to her bias and so that
17    should be produced to the defense.
18         The defense wants all correspondence of any kind
19    between Johnson and the government.  My view is that they're
20    entitled to any correspondence that falls within the Jencks
21    Act.  I don't know what the government has, but surely they
22    know of their responsibilities under the Jencks Act.  While
23    the Jencks Act speaks to providing documents after testimony,
24    I would implore the government to provide any Jencks
25    materials before the witness testifies so that there's a
```

1    better opportunity to prepare cross-examination.

2            Regarding drafts of summary charts, the government

3    in its answer a few hours ago said that it would provide

4    that.  It also noted that any differences are self --

5    evident.  So I'll order that.  The government is not required

6    to provide the bills and breakdown of the bills that Stout or

7    Johnson submitted.

8            With regard to the procedures at the trial, the

9    defendants have made many motions in limine regarding

10    evidentiary rulings.  The Court for better or worse has ruled

11    on all of them.  So the defense is not required to object

12    during the trial on those grounds to any testimony.  My view

13    is that the record is preserved if it comes to that.

14            Regarding a preliminary statement to the jury prior

15    to jury selection, the Court has to say something to the

16    panel as a whole.  There will be a hundred jurors reporting

17    tomorrow.  Because if I don't say something generally about

18    the case, they won't know how to answer the voir dire

19    appropriately.  So I was thinking about just saying that the

20    government has charged the defendants with wire fraud, a

21    conspiracy, bank fraud, whatever, money laundering, whatever

22    it is.  The government's theory is that the defendants

23    conspired to submit false documents in order to get those

24    loans and then used the funds for purposes that weren't

25    allowed under the loan program.  I guess, I can mention

1    generally the loan program.

2         Then I should say that the defendants, of course,

3    deny all of the charges, and the trial begins with the

4    presumption of innocence and the burden on the government to

5    prove the charges beyond a reasonable doubt.  I mean, I'm

6    sort of offering this off the cuff.  I'll try to refine it,

7    but is that something that seems reasonable or what is --

8    what comments are there?

9         MR. RAM:  Yes, Your Honor.  That seems reasonable.

10        MR. LITTRELL:  Your Honor, I would ask that the

11   Court specify that these were COVID-19 --

12        THE COURT:  You know something.  Let me ask the

13   question.  I hope that not in politic.  Is everyone here

14   vaccinated?  Anyone not vaccinated?  Who is not vaccinated?

15   You know something, my close-up vision is a lot better than

16   my distance vision.  I don't know.  Tell me who you are?

17        DEFENDANT ARTUR AYVAZYAN:  Not vaccinated.

18        THE INTERPRETER:  I'm not having nighted.

19        THE COURT:  All of the lawyers are vaccinated;

20   right?

21        (All attorneys concur)

22        MR. LITTRELL:  Shall I take off my mask when I

23   speak with you.

24        THE COURT:  It's very hard.  You know this, is kind

25   of being born again.  I haven't been here for 15 months.  I'm

```
 1   trying to get my bearings.  I am having trouble hearing if
 2   you have the mask on.
 3            MR. LITTRELL:  I'm having the same problem,
 4   Your Honor.
 5            THE COURT:  Am I being heard clearly?
 6            MR. LITTRELL:  I can hear you.
 7            THE COURT:  Go ahead.
 8            MR. LITTRELL:  The suggestion, I'd ask that the
 9   Court inform the jury that these were COVID relief funds.
10   The reason I think is they may have strong feelings about it
11   given where we are with the pandemic.
12            THE COURT:  I will.
13            MR. LITTRELL:  They are disaster relief funds
14   specifically targeted to small businesses for COVID.
15            THE COURT:  Who is your client, Mr. Littrell?
16            MR. LITTRELL:  Mary Terabelian.
17            MR. JOHNSON:  Your Honor, this is Peter Johnson on
18   behalf of Vahe Dadyan.  We have no objection to the summary.
19            THE COURT:  All right.  I will refine it.  Before I
20   deliver it, I'll run it by you to make sure I'm not
21   misstating something.
22            With regard to the -- and the voir dire will be
23   conducted by the Court.  I will ask many of the questions
24   that were proposed.  If I'm not mistaken, Mr. Littrell, you
25   proposed some questions, correct?
```

1      MR. LITTRELL:  I did, Your Honor.

2      THE COURT:  You proposed some questions about, you

3  know, the defendants being of Armenian descent and whether

4  that would affect any juror's ability to be fair and

5  impartial, something along those lines?

6      MR. LITTRELL:  Yes, Your Honor.

7      THE COURT:  I think that's a fair question.

8      MR. LITTRELL:  I may also propose a question about

9  whether any of the prospective jurors have -- speak Armenian

10  or have any understanding of the Armenian language.

11      THE COURT:  I know what you said.  I can remember

12  it.

13      MR. LITTRELL:  Very well.

14      THE COURT:  Let's see here.  I don't think this

15  hearing will be that long.  We had maybe three hours Friday.

16  We covered a lot of ground.  I just want to make sure I tie

17  up all of the loose ends.

18      Some things that I insist upon.  When you address

19  the Court or the jury, stand at the lectern.  You don't have

20  to be a wooden soldier, but don't navigate too far from the

21  lectern.  I discourage bench conferences.  In this case,

22  it -- I mean, I can't remember a criminal case with more

23  motions in limine.  Maybe there have been, but not in my

24  recent experience.  So we've covered a lot of the important

25  matters.  If there is a ruling during the trial that someone

```
 1    objected to and you want to be reheard on that, and if it's
 2    an important ruling, let's do it at a recess or the lunch
 3    hour.
 4              Regarding objections, when you make an objection,
 5    stand up.  Make the objection clearly on legal grounds,
 6    whatever it is.  Wait for the Court's ruling.  Don't argue
 7    the objection.  Don't argue it in the form of making the
 8    objection, or certainly after the Court rules on it.  That's
 9    standard practice.
10              Regarding opening statements, I did discuss the
11    Court's view of opening statements at the conference on
12    Friday.  I want to make sure that everybody understands it.
13    It has become in legal circles to be known as opening
14    argument.  It isn't an argument.  In every trial seminar,
15    even back when I was trying cases, every seminar talked about
16    the importance of the opening statement.  I'm not suggesting
17    that it's unimportant, but the opening statement can be
18    persuasive by arranging the facts but not argument.  I know
19    that in the -- in the culture, that rule is observed and not
20    observed.  What constitutes a legitimate opening statement in
21    some courts is different than what might be the case in other
22    courts.
23              I believe, as I said Friday, in the principles well
24    known in psychology of primacy and recency.  I don't want the
25    jury to make up their minds before they hear any evidence.
```

```
1   There have been studies which I don't know how reliable they
2   are, but studies as the term goes these days, that have shown
3   that jurors sometimes do make up their mind quickly.
4            So with regard to the government, I have noticed
5   over the years -- I don't know if it's part of your
6   mentoring, but when you make an opening statement, I often
7   hear the first sentence it sounds something like this, and
8   I'm just paraphrasing.  I'm not putting words in your mouth.
9   The prosecutor will address the jury and say, first words out
10  of his or her mouth, this case is about fraud and deceit, and
11  it's about a gross abuse of an important government program.
12  I mean, that's -- that's what I hear sometimes.  Don't do
13  that because that's argument.  That is your view that it's
14  about fraud and deceit.  It's the jury's mind to determine
15  that.
16           And the purpose of an opening statement is not to
17  review in detail what every witness is going to say or every
18  document says.  It's to give the jury some perspective, and
19  it shouldn't be lengthy.  I mean, I don't see why you
20  couldn't make an opening statement in this case any longer
21  than 45, 50 minutes or tops, an hour.  I mean, the detail is
22  not part of the opening statement.  The parties shouldn't
23  discuss the law in the opening statement or burdens.  I will
24  tell the jury, as I've already indicated, what the burden is
25  and what the presumption is.  I don't want the parties to
```

1    argue burdens.

2         From the defense standpoint, obviously, I can't

3    predict what evidence there will be.  Of course, the defense

4    has no obligation to produce any evidence, but certainly the

5    defense can tell the jury generally what its theory of

6    defense is.  It can describe, as I instructed the government,

7    what facts it will introduce either on cross-examination of

8    government witnesses or their own witnesses.  Don't use the

9    code words, which I discussed Friday.  You know, the code

10   words, I expect the evidence to show.  And after that, is a

11   few pages of argument, or I'm going to make this promise to

12   you in the opening statement.  Usually that is argument.  Any

13   such camouflage.  I mean, the opening statement to me is

14   important, but it is straightforward, and it may be the most

15   bland part of the case.  It's just an opportunity to help the

16   jury as the evidence comes in.  It's not an opportunity to

17   detail the evidence.

18        I mean, I'm making general comments.  I don't know

19   what you have in mind, but I'm trying to do what I can to

20   eliminate any issues.  Let's see, there was something else

21   here.  I have a question for the government.  I was reading

22   the trial memorandum yesterday.  In the trial memorandum

23   there are certain references to one of the defendants or more

24   performing some allegedly unlawful act while on bail.  What

25   is the legal significance, if any, about that?  Can someone

```
1    provide an answer?
2            MR. FENTON:  Yes, Your Honor.  There's two sets of
3    counts --
4            THE COURT:  Could you take the lectern.  It's
5    easier for me to hear you.  Tell me your name.
6            MR. FENTON:  Christopher Fenton, Your Honor.
7            THE COURT:  Okay.
8            MR. FENTON:  There are two sets of Counts that were
9    committed, crimes that were committed while the defendants
10   were on pretrial release.  The fact that those counts were
11   committed while the defendants were on pretrial release is in
12   violation of 18 USC 3167, which ultimately results in a
13   statutory enhancement at sentencing.
14           THE COURT:  So it's a sentencing issue then?
15           MR. FENTON:  It is.
16           THE COURT:  But you're saying under Apprendi and
17   those cases, it has to be determined by the jury?
18           MR. FENTON:  That's correct, Your Honor.
19           THE COURT:  I see.  What input do the defendants
20   have in that regard?  Anything?
21           MR. RAHM:  Your Honor, one option.
22           THE COURT:  You're close enough so I can hear you
23   you're, Mr. Rahm.
24           MR. RAHM:  Ashwin Ram on behalf of Richard
25   Ayvazyan.
```

1           THE COURT:  Right.

2           MR. RAHM:  One option to -- I understand the issue

3    the Court has referenced.  One option would be for the

4    parties -- we can speak to the government and, perhaps,

5    stipulate that Mr. Ayvazyan, for example, was on release.  So

6    that's something that doesn't need to be raised to the jury

7    potentially.  That is not seriously in dispute.  So that

8    could take the issue off the table.

9           THE COURT:  Okay.  If you can work that out, that

10   would be good.

11          MR. RAHM:  The issue, Your Honor, would be if the

12   stipulation is read to the jury, it has the same effect of

13   testimony that he was on release from custody.  So that is

14   ultimately the optics issue.  I don't know if the government

15   was planning on calling -- it doesn't appear that there's a

16   witness on the witness list to speak to the fact of the

17   release, but perhaps the government -- we haven't had this

18   discussion.

19          THE COURT:  I mean, I don't know whether anyone

20   committed any crime here, but to the extent a crime was

21   alleged, it would appear from a timing standpoint, it was at

22   least with some when they were on release; correct?

23          MR. LITTRELL:  Correct.  The time frame itself is

24   during the release.

25          THE COURT:  I see.  What is it -- what is the

```
 1    status of that Rule 902 question?

 2              MR. LITTRELL:  The 902.11 --

 3              THE COURT:  The certification issue.

 4              MR. LITTRELL:  Yes, Your Honor.  The parties

 5    submitted motions over the weekend.  The government --

 6    actually, Mr. Silverman from our team can speak to that issue

 7    if he can come to the lectern.

 8              THE COURT:  Now I remember seeing that.  Go ahead.

 9              Is that Mr. Fenton?

10              MR. FENTON:  Yes, Your Honor.  My understanding is

11    that issue has been resolved.

12              THE COURT:  That's what I thought.  Okay.  I was

13    thinking of time limits, because I think time limits have a

14    good effect on keeping the trial moving.  I do like to keep

15    things going and not to the detriment of allowing the parties

16    to present their case, but I don't like to waste the Court's

17    time or mostly the jury's time.

18              So with regard to a lot of the witnesses on Friday,

19    we went through the narrative of most of the witnesses.  I

20    think I could tell from the narrative that vast majority of

21    the witnesses were relatively short.  I mean, they were some

22    from the DMV who would say this or that or the other thing.

23    I think those witnesses should go very quickly.  I can't

24    anticipate cross-examination.  I'm only thinking of time

25    limits for the government's case in chief.  I have no idea
```

```
 1   which witnesses will be cross-examined or how extensively or
 2   what is going to happen.
 3           That's my initial comment.  Did you have something
 4   to say, Mr. Fenton?
 5           MR. FENTON:  Yes, Your Honor.  I would agree with
 6   the Court that the majority of the government's witnesses
 7   will be quite short.  The DMV witnesses that you posted to
 8   and the EDD witnesses, those are good examples.  The identity
 9   theft victims would be short.
10           THE COURT:  What are they going to say other than
11   did you apply for a loan?  No.  Did you ever give any -- tell
12   anyone to apply for you?  Do you know these people or
13   whatever.  I mean, you should go through it quickly.
14           MR. FENTON:  We agree, Your Honor.
15           THE COURT:  Don't -- you know, dress up the public
16   status of some of these people.  I mean, sometimes when they
17   call an officer, they -- police officer, they take him
18   through all of their training and all of that stuff.  I mean,
19   people know what a police officer does.  They know what the
20   DMV is and so forth.  So you can assume a few things.
21           MR. FENTON:  Understood, Your Honor.
22           THE COURT:  And just give me a minute to make sure
23   I did -- oh, timingwise, I don't know what the schedules are
24   of other courts.  I begin trial at 9:00 o'clock.  Take a
25   ten-minute recess in the morning, and I try to limit it to
```

1    ten minutes unless something unexpected happens and then one

2    hour for lunch.  Go back at 1:00 o'clock until 5:00.  I'm

3    going to clear my calendar Monday so we're going to have

4    trial all next week.

5              I don't know what to tell the jury in terms of the

6    length of the trial.  It's difficult for me to assess because

7    all I know now is what the government proposes to do in its

8    case in chief.  I'm going to tell the jury that my best

9    estimate is two weeks, maybe was a touch more or a touch

10   less.  I don't know.  I have to give them some idea.

11             I try to work hard along with you, so you can

12   depend on me to be punctual.  If I'm not, it would be

13   extraordinary.

14             That's all I have.  Anything else?

15             MR. RAHM:  Couple housekeeping matters, Your Honor.

16             THE COURT:  Yes.

17             MR. RAHM:  Will each defendant be afforded eight

18   peremptory strikes?

19             THE COURT:  Each defendant?

20             MR. RAHM:  Approximately --

21             THE COURT:  The rule says ten for the defense.  Six

22   for the government.  That's what I intend to do.

23             MR. RAHM:  Is that per defendant, Your Honor?

24             THE COURT:  Total.

25             MR. RAHM:  Total?

```
 1              THE COURT:  Yes.
 2              MR. RAHM:  There will likely be four defendants at
 3   trial.
 4              THE COURT:  That's all right.  We've done cases
 5   with five, six defendants.  That has been approved.  So that
 6   is what the rule says.  That's the rule that will be
 7   followed.  We're going to have 16 -- I'm going to call four
 8   alternates to make sure we have some backup.  I'll give each
 9   party another challenge for the alternates.
10              MR. LITTRELL:  Your Honor, may I just speak on that
11   very briefly?
12              THE COURT:  Yes.
13              MR. LITTRELL:  Rule 24 gives this Court discretion
14   to grant more --
15              THE COURT:  I know I have discretion.
16              MR. LITTRELL:  I ask the Court the Court grant a
17   few more.  There's a few reasons.  I do think this will be a
18   trial where jurors have strong feelings about being here
19   generally --
20              THE COURT:  But those will be for cause challenges.
21   I mean, if there is a basis for a cause challenge, I'm going
22   to rule on it.  What I intend to do is first ask questions of
23   the -- this may be a little different because there will be a
24   large number of jurors.  So generally what I do is I ask the
25   panel as a whole some questions.  Then 12 jurors are seated.
```

```
 1    I get into more personal type questions with them.  I may
 2    have to alter that and just do everything at the -- with the
 3    12 in the box.  I think -- this is sort of an unknown.  I
 4    don't know how people are going to respond to jury duty with
 5    the pandemic.
 6            I mean, whether more people -- you know, jurors --
 7    some jurors have a tendency to try to find a way not to
 8    serve.  It may be easier for them now.  They have some cover,
 9    but we'll see.  I don't know.  And certainly, I'm going to
10    probe and not just go through the paces.  If you feel
11    necessary to follow-up on something, you can ask me to.
12    That's something that happens sometimes hopefully not
13    frequently.  If there is something about a juror's answer
14    that you think requires a follow-up question, you can
15    approach and ask me to do that.
16            MR. LITTRELL:  I think the concern is this:  I
17    think jurors will admit to having feelings about being here
18    both because of the subject matter of the case and because of
19    the pandemic, but I think if the Court asked them if they can
20    be fair and set those feelings aside, many will say yes.  I
21    think they mean for that to true.  That does not change the
22    fact that they still have bias.  So the bias that doesn't
23    rise to the level of warranting to a cause challenge is what
24    I'm worried about.  I think this case presents a
25    particular --
```

```
 1              THE COURT:  I don't think I see anything, frankly,
 2      unusual about this case.  I mean, I know it's been hard
 3      fought so far and it will continue to be, I know.  You know,
 4      it's -- these kinds of allegations are unfortunately or
 5      fortunately commonplace.  That's why we have trials.  I mean,
 6      it doesn't seem like an unusual case to me.
 7              MR. LITTRELL:  I think this will -- maybe this is
 8      not unusual.  I expect the government to show lots of images
 9      of cash and jewels and gold and --
10              THE COURT:  Well, let's find out.
11              Does the government intend to show pictures of cash
12      and gold and other things?
13              MS. AHN:  Your Honor --
14              THE COURT:  Who are you?  Would you identify
15      yourself.
16              MS. AHN:  Catherine Ahn on behalf of the
17      United States.
18              THE COURT:  Yes.
19              MS. AHN:  There were gold coins and jewelry and
20      watches that were seized from defendant Richard Ayvazyan and
21      Marietta Terabelian's home, which is consistent with the
22      tracing records and is at issue both in the trial and the
23      criminal forfeiture, Your Honor.  The government will be
24      showing those exhibits on the document camera, as they will
25      be brought in physically.  As --
```

1          THE COURT:  Well, is it -- regarding -- that is
2     something else I wanted to talk about.  Thank you for
3     bringing that up.  Regarding the forfeiture counts, would it
4     be appropriate to wait until the jury returns a verdict?  If
5     the jury acquits these defendants, then we never reach
6     forfeiture.  So maybe the solution is to not show all of the
7     pictures and wait to see what happens.  Maybe you won't have
8     that opportunity.
9          MS. AHN:  Well, Your Honor, you are correct.
10     Forfeiture is not at issue until after the jury returns its
11     verdict.  The government is also alleging money laundering
12     and conspiracy counts.  Some of its proof relates to the
13     movement of money --
14          THE COURT:  Why the pictures?  Doesn't the jury
15     know what a watch looks like or gold coins?
16          MS. AHN:  Yes, Your Honor.
17          THE COURT:  Why that?  I don't like that approach.
18     You know, sometimes the government does that.  You know,
19     there's an old expression from a Texas judge -- heaven knows
20     I'm not from Texas.  He said, "You dance with dem that brung
21     ya."  You dance with the evidence you have.  We don't need
22     pictures, and this is not show-and-tell.
23          MS. AHN:  Yes, Your Honor.
24          THE COURT:  I'm glad it was raised.  Is there
25     something else here?

```
1          MR. LITTRELL:  One more thing.  The other thing I'm
2    concerned about is I think the government intends to call a
3    witness to talk about the purpose of the SBA loan program.
4          THE COURT:  Let me -- well, I mean, generally, I
5    think, you know, the -- they have a right to describe the
6    program in the most general way, but certainly no witness
7    from the SBA or the -- who is the EIDL?  What agency is that?
8    Is that SBA also?
9          MS. AHN:  Yes, Your Honor, both --
10         THE COURT:  SBA.  The -- the witnesses should
11   describe the program in a neutral way.  This is the program
12   set up during the COVID crisis to provide loans to small
13   business for these purposes and that's it.  Not, you know --
14   another thing.  I don't want the government saying in opening
15   statement anything about this case being about, you know, the
16   laudatory purposes of the loan program.  That is something
17   politicians decided upon.  It is the program, whether it's
18   good, bad, or indifferent.
19         Tell your witnesses not to use the opportunity to
20   color anything more than this is the way the program is; this
21   is the kind of information that is required; this is the
22   proper use of the funds, and the program relies on accurate
23   information.  That's it.
24         MS. WIRSCHING:  Your Honor, may I be briefly heard?
25         THE COURT:  Yes.  What is your name?
```

1          MS. WIRSCHING:  Jennifer Wirsching for Artur

2     Ayvazyan, Your Honor.

3          THE COURT:  Yes.

4          MS. WIRSCHING:  About the recent ruling about not

5     displaying photos of items from Ms. Terabelian and

6     Mr. Richard Ayvazyan's home.  It's our understanding that the

7     government also seeks to introduce many photographs of items

8     found in the Weddington home, the home of my client and Ms.

9     Dadyan.  Those are items that Your Honor ruled were able to

10    come in as inextricably intertwined.  We would note to the --

11         THE COURT:  Are those the identification cards?

12         MS. WIRSCHING:  Things that are not related as

13    checks, documents.  Things of that nature.

14         THE COURT:  Well, I feel a little differently about

15    that.  I think the government can show the jury pictures of

16    some of these things because they're not as self-evident.  I

17    mean, people know what a watch is or a house.  I remember in

18    one of the charts, the government actually put a picture of a

19    house in the chart.  I ordered that removed.

20         I mean, to some extent, I'm going let the

21    government do that.  If it becomes repetitive or excessive or

22    duplicative, I'll make the appropriate rulings.

23         MS. WIRSCHING:  Thank you, Your Honor.

24         MR. RAHM:  Similar question, Your Honor, with

25    respect to opening statement.  If the government will be

1    using a powerpoint.  If they have any images or photos in the

2    powerpoint presentation?

3               THE COURT:  That's a fair question.

4               MR. RAM:  We've not seen that yet.

5               THE COURT:  Does the government intend to use a

6    PowerPoint?

7               MS. AHN:  No, Your Honor.

8               THE COURT:  I'm glad you're not using that.  I

9    don't know where that came to be so popular, but lawyers

10   function on language.  You know, PowerPoints, I think they're

11   kind of corporate boardroom stuff.  Everybody uses them, so I

12   guess maybe they're good.  I don't know.  You're not going to

13   use it?

14              MS. AHN:  No, Your Honor.

15              MR. RAHM:  Your Honor, I can't remember if your

16   preference is to send the indictment back for jury

17   deliberations?

18              THE COURT:  I probably will because -- well, it

19   depends.  There's a lot of counts.  It depends on whether

20   there's some way to prepare a verdict form which enables the

21   jury to identify evidence that relates to a count.  We don't

22   have to address that right now.

23              MR. RAHM:  Okay.  If I -- if you'll entertain a

24   quick suggestion.  We have no objection to the indictment

25   going to the jury in lieu of a detailed verdict form.  We can

```
 1   deal with that later.
 2            THE COURT:  All right.
 3            MR. RAHM:  I would ask that the forfeiture counts
 4   or allegations be redacted out of the trial indictment.
 5            THE COURT:  We're not there yet.
 6            MR. RAHM:  Yeah.
 7            THE COURT:  Maybe -- okay.  Go ahead.  Would you
 8   identify yourself.  I'm going to wear my glasses tomorrow.  I
 9   didn't realize how long this courtroom is.
10            MR. JOHNSON:  Peter Johnson on behalf of Vahe
11   Dadyan.  Your Honor issued an order regarding the
12   inextricably intertwined evidence over the weekend.  We
13   joined the opposition to that because Mr. Vahe Dadyan is not
14   related to any of that.  We asked for a limiting instruction.
15   The Court's order did not include any limiting instruction.
16            THE COURT:  Why don't you propose one for me, and
17   I'll consider it.
18            MS. AHN:  Your Honor, this was addressed in the
19   government's reply to the opposition to the motion in limine.
20   I'm happy to provide a copy.  Essentially, the government's
21   argument is that Mr. Dadyan was a participant in the scheme
22   and in the conspiracy.
23            THE COURT:  I'm having trouble hearing you, Ms.
24   Ahn.  Can you -- where is the microphone?  Maybe the
25   microphone is too tall for you.
```

```
 1                  MS. AHN:  I am a petite person, Your Honor.
 2                  THE COURT:  Now I can hear you better.
 3                  MS. AHN:  The government addressed this issue in
 4       its reply in support of its motion in limine Number 2,
 5       Your Honor.  Essentially, the government's argument is that
 6       the defendant was part of the scheme in the conspiracy and
 7       knowingly participated.  Therefore, evidence of the scheme
 8       and the conspiracy can be brought in against him.
 9                  THE COURT:  I understand.  Okay.  That's as much as
10       I can do.  I'm sure as hard as the lawyers and the parties
11       and the Court has tried to anticipate, no trial ensues
12       without things that come up suddenly.  Hopefully not too
13       many.  We'll have to adjust as things go.
14                  So I'm looking forward to the trial.  The lawyers
15       have definitely shown that they know what they're doing in
16       the pretrial matters.  I hope we have a smooth trial.
17                  MS. AHN:  Your Honor, if I may -- oh --
18                  THE COURT:  Yes.
19                  MR. FENTON:  Your Honor, one more housekeeping
20       matter.
21                  THE COURT:  Would you take the lectern.
22                  MR. FENTON:  Sure.  One more housekeeping matter,
23       Your Honor.  There is an agreed upon motion for a 502(d)
24       stipulation that would allow the filter team in this case to
25       share the potentially privileged material that was
```

```
 1    withheld --
 2              THE COURT:  That stipulation; right?
 3              MR. FENTON:  Yes.
 4              THE COURT:  I just noticed that over the lunch
 5    hour.  I'll approve it.
 6              MR. FENTON:  Thank you, Your Honor.
 7              MS. AHN:  Your Honor, just one more item.  In a
 8    previous pretrial conference, Your Honor noted that the
 9    government could read the -- a portion of the indictment
10    which we filed for the Court --
11              THE COURT:  Oh, yes.  Okay.  Sorry.  Thank you for
12    reminding me.  I don't want you to read the entire
13    indictment.  You can read the conspiracy count, the wire
14    fraud, just the part of the count that describes whatever you
15    think was a violation, and the money laundering conspiracy.
16    No -- maybe one or two overt acts.  Not every count.  I mean,
17    there are a lot of counts.  So just read those counts.
18              MS. AHN:  Yes, Your Honor.  I believe Your Honor
19    provided a very similar instructions in the previous pretrial
20    conference.  The government, at defendant's request, filed a
21    proposed reading indictment.  We were just wondering when the
22    Court would like that to be read?
23              THE COURT:  You know, I have to -- I don't have
24    that in mind.  I have to go back and look at it.  I will.
25              MS. AHN:  Yes, Your Honor.
```

1              MR. LITTRELL:  Your Honor, on that topic.  I

2    haven't seen this proposed indictment.  One thing we object

3    to across the board is using AKAs to describe the defendants.

4    So in the captions the defendants are listed, for example, as

5    Marietta Terabelian, aka Viktoria Kauichko.  So we would

6    object to the government ever using an aka to describe

7    Ms. Terabelian.

8              THE COURT:  I think in this case that's a valid

9    objection.  I mean, in other cases, you know, where someone

10   in a drug case, for example, has an aka, that is permissible,

11   but here one of the issues, at least as the Court has been

12   informed, will be whether this Kauichko or Zhadko or whoever

13   is really a pseudonym for one of the defendants.

14             So I think by using that aka, you may be arguing or

15   suggesting.  That's impermissible.

16             MS. AHN:  Yes, Your Honor.  We're fine with that.

17   In our proposed verdict form, consistent with Mr. Littrell's

18   request, we actually removed the aka.

19             THE COURT:  Let's wait for the verdict form.

20             MS. AHN:  Yes, Your Honor.

21             THE COURT:  We've got a while to go.

22             MS. AHN:  Yes, Your Honor.

23             MR. RAHM:  Your Honor, one more issue?

24             THE COURT:  Yes.

25             MR. RAHM:  The defense would like to call two

```
1    witnesses in their case that are either part of a government
2    task force or federal agents.  The first was raised at the
3    last hearing Justin Palmerton, the lead case agent.  The
4    government said they'd make him available.  By omission, we
5    failed to acknowledge to the Court.  We also asked for a
6    second Detective Lyle Barns who was part of the search
7    warrants executed in this case.
8                THE COURT:  Detective?
9                MR. RAHM:  Yes, Your Honor.
10               THE COURT:  With the Los Angeles Police Department?
11               MR. RAHM:  Yes, Your Honor.
12               THE COURT:  I see.  Will he be available?
13               MS. AHN:  Your Honor, we agreed to provide the
14   subpoena to LAPD.  We reserve -- we don't know whether or not
15   LAPD has any objections to it.  We agreed to provide the
16   subpoena to LAPD to make them aware of the defendant's
17   request.
18               THE COURT:  So I mean, is that person served?
19   That's the important question.
20               MS. AHN:  We have -- we will provide the subpoena
21   to Officer Barns.
22               THE COURT:  That's all that is required now; right?
23               MR. RAHM:  Yes, Your Honor.  The scope of testimony
24   can be discussed later.
25               MS. AHN:  We may file a 403 motion as to Detective
```

1    Barns, Your Honor.

2              THE COURT:  I didn't hear what you said.

3              MS. AHN:  We may file a 403 motion as to Detective

4    Barns.

5              THE COURT:  Okay.

6              MR. RAHM:  Thank you, Your Honor.

7              THE COURT:  Then I think we've done as much as we

8    can.  Thank you for your participation.

9              MS. AHN:  Thank you, Your Honor.

10             THE COURT:  The pretrial conference is over.

11             (Proceedings concluded at 2:33 p.m.)

12                         CERTIFICATE

13   I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

14   TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

15   THE ABOVE MATTER.

16   FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

17   REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

18   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

19

20   /s/ Miriam V. Baird             02/15/2022

21   MIRIAM V. BAIRD                      DATE
     OFFICIAL REPORTER
22

23

24

25