FILED

1   LORI C. HERSHORIN (SBN 155977)
    **HERSHORIN & HENRY, LLP**
2   26475 Rancho Parkway South
    Lake Forest, California 92630
3   949-859-5600
    Email: Lorih@hhlawgroup.com
4
    Attorney for Prospective Intervenors
5   WFG TITLE INSURANCE COMPANY,
    A South Carolina Corporation and NOVASTAR, LLC
6

2022 APR 29  PM 2: 46

7
                    **UNITED STATES DISTRICT COURT**
8                   **CENTRAL DISTRICT OF CALIFORNIA**
                         **WESTERN DIVISION**
9

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO.: 2:20-cr-00579-SVW |
| Plaintiff, | **WFG TITLE INSURANCE COMPANY AND NOVASTAR LLC'S JOINT NOTICE OF MOTION AND MOTION TO INTERVENE FOR LIMITED PURPOSE OF ACCESSING JUDICIAL RECORDS** |
| v. | |
| RICHARD AYVAZYAN, | |
| aka "Richard Avazian" and | |
| "Iuliia Zhadko," | |
| MARIETTA TERABELIAN, | DATE: |
| aka "Marietta Abelian" and | TIME: |
| "Viktoria Kauichko," | JUDGE: Hon. Stephen V. Wilson |
| ARTUR AYVAZYAN, | COURTROOM: 10A |
| aka "Arthur Ayvazyan," | LOCATION:  350 W. 1ST St. |
| TAMARA DADYAN, | Los Angeles, CA 90012 |
| MANUK GRIGORYAN, | |
| aka "Mike Grigoryan," and | |
| "Anton Kudiumov," | |
| ARMAN HAYRAPETYAN, | |
| EDVARD PARONYAN. | |
| aka "Edvard Paronian" and | |
| "Edward Paronyan," and | |
| VAHE DADYAN, | |
| Defendants. | |

-i-

1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2

   **PLEASE TAKE NOTICE** that WFG National Title Insurance Company, a South Carolina

3

Corporation ("WFG") and Novastar, LLC ("Novastar") (collectively "Prospective Intervenors")

4

hereby move the Court to allow them to intervene in the above-captioned matter for the limited

5

purpose of requesting the Court to unseal trial exhibits admitted into evidence during the criminal

6

trial of the within criminal case for use in the upcoming civil trials of Tamara Dadyan and Arthur

7

Ayvazyan (collectively "Criminal Defendants") for loan fraud and RICO claims.   This motion is

8

9

submitted concurrently with an ex parte application for order shortening time, before the Honorable

10

Stephen V. Wilson in the United States District Court for the Central District of California, Western

11

Division of the First Street Courthouse, located at 350 W. First St, Los Angeles, CA 90012, and is not

12

set for hearing.

13

   This motion is made under the First Amendment of the United States, applicable common law,

14

and the inherent supervisory authority of the Court over its own records, and files for an order:

15

16

    1.      Permitting WFG and Novastar to intervene in this proceeding for the limited purpose

17

            of enforcing its First Amendment and common law rights of access;

18

    2.      Unsealing all exhibits admitted into evidence at trial and the Government's exhibits to

19

            its Motions in Opposition to Defendants' Motions to Suppress the Evidence obtained at

20

            Premises-1 and Premises-4 (Docket nos. 188 and 207) for the limited purpose use as

21

            evidence in WFG and Novastar's respective Civil trials, whereby WFG and Novastar

22

            agree to adhere to this Court's Protection order and to submit requested documents to

23

            the State Superior Court under seal.

24

25

   This motion is made on the grounds that the First Amendment and common law right of access

26

require that trial exhibits and exhibits attached to dispositive motions be open to the public, and there

27

are other alternatives to complete closure that would protect the privacy interests of third parties and

28

Criminal Defendants. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n. 25 (1982)

-ii-

1  (stating members of the public must be heard on the question of their exclusion); *Press-Enterprise Co.*

2  *v. Superior Court*, 478 U.S. 1, 8 (1986) (The First Amendment applies to proceedings and judicial

3  records); *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597-98 (1978) (the common law provides a right

4  to access judicial documents); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir.

5  2003) (stating documents included in dispositive motions are not afforded protected status).

6  This joint motion is based on Prospective Intervenors' Joint Motion to Intervene for a Limited

7  Purpose of Accessing Judicial Records and Memorandum of Points and Authorities in Support

8  Thereof, the Declaration of Lori C. Hershorin in Support of WFG and Novastar's Joint Motion to

9  Intervene, and the Court's file herein.

10  DATED: April 27, 2022                        **HERSHORIN & HENRY, LLP**

11

12

13                                          By: _____

14

15                                          LORI C. HERSHORIN
                                            Attorney for Prospective Intervenors
16                                          WFG TITLE INSURANCE COMPANY and
                                            NOVASTAR, LLC
17

18

19

20

21

22

23

24

25

26

27

28

WFG AND NOVASTAR'S JOINT MOTION TO INTERVENE AND ACCESS JUDICIAL RECORDS

# TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.  NOVASTAR V. DADYAN, ET AL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.  WFG V. DADYAN, ET AL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    FACTUAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.  RIGHT OF INTERVENTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.  RIGHT OF ACCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

             1.  FIRST AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                  a.   The requested documents have historically been left open to
                       the public. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                  b.   Logic favors disclosure of the requested documents. . . . . . . . . . . . . . . . 9

                  c.   WFG will submit any unsealed exhibits to the Superior Court
                       of California under seal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

             2.  COMMON LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 800 F.2d 339 (3d Cir. 1986). . . . . 6

4

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

5

*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . 8, 9, 11

6

*Globe Newspaper Co v. Sup. Ct.*, 457 U.S. 596 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7

*In re Associated Press*, 162 F.3d 503 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8

*In re Copley Press, Inc.*, 518 F.3d 1022 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

9

*In re Washington Post*, 807 F.2d 383 (4th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

10

*Kamakana v. City & County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . 8

11

*Lugosch v. Pyramid Co. of* Onondaga, 435 F.3d 110 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . 7

12

*Nixon v. Warner Communications Inc.*, 435 U.S. 589 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

13

*Phoenix Newspapers v. United States Dist. Ct.*, 156 F.3d 940 (9th Cir. 1998) . . . . . . . . . . . . . 7, 8, 11

14

*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10

15

*Rushford v. The New Yorker Magazine*, 846 F.2d 249, 252 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . . . 9

16

*Stephens Media, LLC v. Eighth Judicial Dis. Ct.*, 221 P.3d 1240 (Nev. 2009) . . . . . . . . . . . . . . . . . . 6

17

*United States v. Brooklier*, 685 F.2d 1162 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

18

*United States v. Criden*, 675 F.2d 550 (3d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

19

*United States v. Schlette*, 842 F.2d 1574 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

20

*Valley Broadcasting Co. v. United States Dist. Ct.*, 798 F.2d 1289 (9th Cir. 1986) . . . . . . . . . . . . . . 13

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3

4        The purpose of this motion is to access judicial records from the within criminal matter

5    involving Criminal Defendants, Tamara Dadyan and Arthur Ayvazyan (collectively "Criminal

6    Defendant's"), relevant to Prospective Intervenors', WFG National Title Company, South Carolina

7    corporation ("WFG") and Novastar, LLC ("Novastar") (collectively "Prospective Intervenors"), civil

8    complaints[1] against Criminal Defendants and their co-conspirators.  These cases are set for trial in the

9    Los Angeles Superior Court on May 17, 2022 and July 25, 2022.  Prospective Intervenors seek to

10   exercise their First Amendment and common law rights of access to the criminal court's records to

11   acquire vital evidence for use in their civil trials.

12

13       Prospective Intervenors' civil cases are inextricably intertwined with the criminal case as both

14   the United States and the Prospective Intervenors were victims of the Criminal Defendants' elaborate

15   fraud and conspiracy scheme using identity theft, wire fraud, synthetic borrower information and

16   manufactured documents to defraud lenders and title insurance companies. These Criminal

17   Defendants and their co-conspirators falsified borrower and real property information to induce

18   lenders to loan substantial sums of money to real and synthetic individuals for the purchases of real

19   properties, resulting in millions of dollars in losses. In addition, Defendants induced title insurance

20   companies to issue policies for the fraudulently obtained properties by creating fraudulent sales

21   agreements, false identities, fake employer information, and falsely recorded title documents.

22

23       Here, the pre-trial documents and trial exhibits are under a Court order sealing these records

24   and the records are absent from the public's view even though they are referenced in the trial

25   transcripts.  These criminal court records shed light and provide a wealth of evidence in support of

26   Prospective Intervenors' civil claims. Moreover, as members of the public who perform a vital public

27

28

---

[1]    The civil cases are entitled *WFG v. Escrow Doc et al.* ("WFG v. Dadyan"), case number BC640157, and *Akopyan v. Yesayan et al.* ("Novastar v. Dadyan"), case number BC597238.

-1-

function – providing loans and title insurance to the public – Prospective Intervenors legally should be permitted to access these records under the First Amendment and common law.  Accordingly, the motion to intervene should be granted and the pre-trial and trial documents unsealed for use in the parallel civil trials.

## II.      PROCEDURAL BACKGROUND

Criminal and Civil Defendants (collectively "Defendants") engaged in pattern of racketeering activities for over 10 years, similar in purpose, results, participants, methods of commission, and victims. Decl. of Lori C. Hershorin, filed herewith, ¶ 4 ("Hershorin Dec."); Complaints filed in the Los Angeles Superior Courts attached as Exhibits A and B. Defendants used email correspondence, telephone communications, U.S. wire transfers, and the U.S. Mail to falsify information to induce lenders into making loans to the criminal enterprise using "synthetic" borrowers. *Id.* at ¶ 8. Defendants further created websites and email addresses linked to phony businesses to provide employment references to loan and title companies for synthetic buyers. *Id.* The criminal enterprise used the County Recorder's Office, U.S. Bankruptcy Courts, and California Superior Courts to continue their racketeering activities. *Id.* at ¶ 7. Each of the Defendants agreed to personally participate in the operation, management or conduct of the racketeering enterprise. Moreover, Defendants targeted Prospective Intervenors, and duped them into making loans and issuing title insurance on phantom borrowers and phantom security. *Id.* at ¶¶ 9-14.

Defendants created non-existent, "synthetic" persons to defraud Prospective Intervenors and other lenders. *Id.* at ¶¶ 8, 12. Thereafter, they would transfer real properties into the names of those synthetic persons or entities; open bank accounts and credit cards in the synthetic persons' names; and falsify employment information, assets, credit history, and loan documentation for the synthetic person to lure lenders into funding certain loans. *Id.* at ¶¶ 9-12. Each of the defendants either (1) falsified names or agreed to allow falsified names in the real estate transactions; (2) assisted with the preparation of fraudulent loan applications by falsifying bank information, fabricating employment

-2-

histories and phone numbers for false employers, manufacturing credit information and/or other documents such as bank statements and tax returns to make the synthetic persons appear legitimate; (3) recorded fabricated title documents in the chains of title such as Trustee's Deeds Upon Sale representing that foreclosure sales of previous lenders occurred even though no such sale took place, (4) fabricated deeds of trust by stealing the identities and notary stamps of at least five different legitimate notary publics; (5) filed multiple bad faith bankruptcy petitions to stall the foreclosures of lenders with a true security interest in the properties used for the schemes; (5) manufactured "false escrow companies" to make it appear as though the loan proceeds were wired to legitimate accounts; and (6) received monies through these transactions, funneled the fraudulently obtained funds through shell companies, and used the monies to perpetuate the fraud scheme. *Id.* at ¶¶ 4-12.

The relevant facts of Prospective Intervenors' respective cases are complex, as such Prospective Intervenors offer a very brief summary of their claims. For the Court to further understand the details of Novastar's claims against the Novastar Defendants, its Cross-Complaint is attached as Exhibit A. See Hershorin Dec at ¶ 18. For the Court to further understand the details of WFG's claims against the WFG Defendants, its Second Amended Complaint is attached as Exhibit B. See Hershorin Dec at ¶ 19.

## A. NOVASTAR V. DADYAN, ET AL.

*Novastar v. Dadyan*, et al. involves only one of the hundreds of loan fraud crimes linked to Defendants, wherein Cross-Complainant, Novastar, was the unsuspecting victim of Defendants' criminal enterprise. Through a series of fraudulent real estate transactions involving the creation of synthetic identities, false banking information, and multitudes of forged documents, Defendants induced Novastar to make a six hundred thirty-seven-thousand-dollar ($637,000) loan to a synthetic person for the purchase of real property located at 4628, 4628 ½ and 4630 Kingswell Avenue, Los Angeles, California (the "Kingswell Property"). Hershorin Dec. at ¶ 13.

In April 2017, the California Superior Court for County of Los Angeles – Stanley Mosk Courthouse granted Novastar leave to file a cross complaint, case number BC597238. Novastar's cross

1    complaint alleged against the Novastar Defendants[2] actions for (1) Quiet Title; (2) Fraud; (3)

2    Conversion; (4) Breach of Escrow Agreement; (5) Escrow Negligence; (6) Breach of Escrow Fiduciary

3    Duty; (7) Breach of Broker Contract; (8) Broker Negligence; and (9) Breach of Broker Fiduciary Duty

4    for their fraudulent activities involving the Kingswell Property and for inducing Novastar into making

5    a loan to the "synthetic buyer" of the Kingswell Property. Exhibit A; Hershorin Dec. at ¶ 13, 18.

6    **B.  WFG V. DADYAN, ET AL.**

7        On November 8, 2016, WFG filed a complaint against WFG Defendants[3] in the California

8    Superior Court for the County of Los Angeles, case number BC640157. Exhibit B; Hershorin Dec. at

9    ¶ 19. On February 11, 2021, WFG filed its second amended complaint against the RICO Defendants

10   alleging (1) violation of RICO – 18 U.S.C. ; (2) Violation of RICO – 18 U.S.C. §§ 1961(5), 1962(C);

11   (3) Violation of RICO – 18 U.S.C. §§ 1961(5), 1962(D); (4) Conversion; (5) Claim and Delivery; (6)

12   fraud – Intentional Misrepresentation; (7) Conspiracy to Defraud; (8) Professional Negligence; (9)

13   Breach of Fiduciary Duty; and (10) Breach of Escrow Agreement. *Id.*

14       WFG's allegations surround RICO Defendants' fraudulent transactions and activities relating

15   to four separate properties covering a span of over 10 years.[4] Hershorin Dec. at ¶ 14. To defraud WFG,

16   RICO Defendants utilized the same plan and scheme as previously mentioned in each of the four

17   fraudulent transactions. *Id.* at ¶ 11. As a result of this scheme, many of the individuals named in the

18   complaint are "synthetic persons" created by Defendants in furtherance of their fraudulent enterprise.

19       The real properties involved in WFG v. Dadyan are the Kingswell Property, 4836 Calhoun

20   Ave., Sherman Oaks, CA 91423; 2018 North Catalina St., Los Angeles, CA 90027; and 4050 Camino

21

22   [2] The term "Novastar Defendants" shall mean and refer to Defendants Tamara Dadyan aka Tammy Dadyan; Anait Akopyan,
     Sogomon Akopyan, Vartan Akopyan aka Vardan Akopyan; Hovanes Yesayan aka Hovhannes Yesayan, an individual dba
23   Capital Securities; Karapet Emboyan; Epraksi Gevorkian; Konstantine Kabilafkas; K-Astron Ventures dba Konstant
     Closings; and Angela Simon.
24   [3] The term "WFG Defendants" shall mean and refer to Defendants Tamara Dadyan; Roza Avakian aka Rose Avakian aka
     Rosa Avakian dba Escrow Doc aka Escrow Doc Co.; Anush Ferakhyan; Arthur Abrahamov aka Arthur Abraham dba Escrow
25   Doc aka Escrow Doc Co.; Adeliya Timirova Investments, Inc.; Adeliya Timirova; Egia Kapemyan; Tetiana Vovk aka
     Tatiana Vovk; Secureline Realty and Funding, Inc; Ara Haritunian; Nerses Nakshchyan; Jubilio Escalera; Anait Akopyan;
26   Vartan Akopyan; Epraksi Gevorkian; Karapet Emboyan; Hovanes Yesayan aka Hovhannes Yesayan; Tandem Mortgage,
     Inc.; K-Astron Ventures dba Konstant Closings; Konstantine Kabilakfas; Angela Simon; Alak Mikaelyan; Arthur Ayvazyan
27   aka Artur Ayazyan  (Doe 1); Tony Gleb (Doe 2); Avetis Avetikian aka Avetis Avetikyan aka Avik Avetikyan (Doe 3);
     Tatyana Morozov, Trustee of the Vovk 2016 Trust (Doe 4); Violet Hajian aka Manushak Adzhiyan (Doe 5); Julio Cesar
28   Andia (Doe 6), Vanessa Bell (Doe 7); Steve Abramson (Doe 8); Rita Moskalenko (Doe 9), Romana Cias (Doe 10), and
     Samvel Keshishyan (Doe 12).
     [4] WFG and Novastar Defendants have been linked to over 100 fraudulent real property transactions.

-4-

De La Cumbre, Sherman Oaks, CA 91423, *Id.* at ¶ 14. WFG was the title insurer for these properties and was required to indemnify lenders for their losses, which resulted in $2,169,221.00 in damages due to WFG Defendant's fraudulent actions. *Id.*

## III.    FACTUAL ANALYSIS

The sealed documents Prospective Intervenors seek provide valuable evidentiary information to prove Civil Defendants participated in an elaborate conspiracy to defraud lenders and title insurance companies, like the within Criminal Case resulting in these Defendants' convictions.     The exhibits introduced at the trial and attached to the Government's Opposition to Defendants' Motions to Suppress Evidence obtained at Premises 1 and 4, and now sealed by this Court, will prove Defendants stole personal identifying information; created synthetic identities; forged multiple deeds of trust, purchase and sale agreements, and employment and banking records; and created shell companies to defraud Prospective Intervenors; and laundered the proceeds of these loans through various shell companies and real properties.

Because Prospective Intervenors have no other way of obtaining the documents submitted under seal in this Court, presented to the jury, and used in the Defendants' convictions, they respectfully request this Court to unseal all trial exhibits and exhibits corresponding to Docket Numbers 188 and 207, the Government's Oppositions to Motion to Suppress evidence collected at Premises-1 and Pemises-4. Prospective Intervenors agree to adhere to the protective order and will submit any documents obtained from this Court to the Civil Trial Court under seal. Prospective Interveners have also included an itemized list of requested documentation set forth in Exhibit C.

## IV.    ARGUMENT

### A. RIGHT OF INTERVENTION

Although the Federal Rules of Criminal procedure are silent as to intervention in criminal cases, "several federal jurisdictions have held that because the First Amendment implicitly guarantees the right to access criminal trials, motions to intervene are procedurally proper when the public or press

seeks to intervene for the limited purpose of accessing a criminal proceeding or court documents." *Stephens Media, LLC v. Eighth Judicial Dis. Ct.*, 221 P.3d 1240, 1247 (Nev. 2009) (citing *In re Associated Press*, 162 F.3d 503, 507 [7th Cir. 1998]; *United States v. Brooklier*, 685 F.2d 1162, 1168 [9th Cir. 1982]; *United States v. Criden*, 675 F.2d 550, 559 [3d Cir. 1982]).

While the right to intervene for the limited purpose of accessing court records is typically exercised by newspaper and media outlets, it is not uncommon for private parties, as members of the public, to exercise their public right of access. Although private entities, the public right of access encompasses them as well because private entities are members of the public. *See Nixon v. Time Warner Commc'ns, Inc.*, 435 U.S. 589 (1978); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 800 F.2d 339 (3d Cir. 1986). In addition to being members of the public, Prospective Intervenors serve an important public function – lending money to prospective homeowners and issuing title insurance policies in conjunction with the purchase and sale of real property. Hershorin Dec. at ¶ 5. Prospective Intervenors aim is to make the dream of home ownership a reality for members of the public. *Id.* As such, the public has a strong interest in seeing those who interfere with that dream brought to justice, both criminally and civilly. In conjunction with that interest exists the right of public access to dispositive trial court documents and exhibits used to convict these Defendants. *Id.*

Prospective Intervenors, like the Federal Government and United States Taxpayers, are victims of the same elaborate criminal fraud scheme perpetrated by the Criminal Defendants. *Id.* at ¶ 16. As such, both the criminal action and civil actions share common questions of law and fact. *Id.* Criminal Defendants and their associates commenced their fraudulent scheme to defraud real estate lenders and title insurance companies over 10 years ago. *Id.* at ¶ 4. Using this same scheme of forging records and creating synthetic identities, Criminal Defendants graduated from defrauding real estate lenders and title insurance companies to defrauding the Federal Government out of millions of dollars in PPP loans. *Id.* Much of the evidence obtained and admitted under seal in this case directly relates to Prospective Intervenors' civil cases against Defendants because Defendants used, not only the same synthetic

-6-

1  identities and shell companies, but executed their fraud using the same plan and scheme. *Id.* at ¶¶ 3, 4.

2  Prospective Intervenors seek access to the documents submitted under seal because there is no other

3  way by which they can gain access to them; as such, Prospective Intervenors are exercising their right

4  to access public records to ensure Defendants are brought to justice, which will further bolster the

5  public's confidence in the judicial system. *Id.* at ¶¶ 3, 6.

6

7      As lenders, providers of title insurance, members of the public, and companies who serve an

8  important public function, Prospective Intervenors have the right to intervene in this Criminal matter to

9  request access to Judicial Records that they would otherwise be unable to obtain. Thus, Prospective

10 Intervenors' motion to intervene is the procedurally proper means of requesting access to sealed judicial

11 records.

12 **B.  RIGHT OF ACCESS**

13

14     United States courts have long recognized the public has a qualified right to access judicial

15 proceedings and documents under the First Amendment and the common law and "there is a strong

16 presumption in favor of the common law right to inspect and copy judicial records." *Phoenix*

17 *Newspapers v. United States Dist. Ct.*, 156 F.3d 940, 946 (9th Cir. 1998); *see also Nixon,* 435 U.S. at

18 597. Under the common law, this presumption may only be rebutted by a showing of "countervailing

19 factors," which outweigh the public interest. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124

20 (2d Cir. 2006). One seeking to deny First Amendment Access confronts an even heavier burden – to

21 show that "specific, on the record findings . . . demonstrat[e] that closure is essential to preserve higher

22 values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court*, 478 U.S.

23 1, 13-14 (1986) ("Press-Enterprise II").

24

25     As discussed above, Prospective Intervenors are members of the public who serve an important

26 public function; thus, there is a strong presumption in favor of providing WFG and Novastar access to

27 inspect and copy the judicial records under seal in this proceeding.  This information will be kept under

28 seal in the Superior Court; thus, no harm to any Defendant or third-party will result.  Hershorin Dec at

-7-

¶ 17. However, if the Court denies this motion, the Prospective Intervenors will suffer enormous prejudice as they have no other way of obtaining this critical evidence.     In addition, Prospective Intervenors have a right to access these documents under the First Amendment and applicable common law as set forth below.  Accordingly, Prospective Intervenors respectfully request this court to grant this motion.

## 1.  **FIRST AMENDMENT**

The United States Supreme Court formulated a two-prong test, known as the "experience and logic" test, to determine whether the First Amendment right of access attaches to criminal court records. *Press-Enterprise II*, 478 U.S. at 8. Courts consider (a) "whether the place and process have historically been open to the press and general public" and (b) whether the right of access plays a "significant positive role in the functioning of the particular process in question." *Id.* If these "considerations of experience and logic" favor disclosure, a qualified First Amendment right of access attaches to the documents in question. *Id.* at 9. However, even if there is no history of public access, a First Amendment right to access still exists if proceedings would benefit from public scrutiny. *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 n. 2 (9th Cir. 2008) (stating the two inquiries are "not separate inquiries," and "where access has traditionally been granted to the public without serious adverse consequences, logic necessarily follows. It is only where access has traditionally not been granted that we look to logic. If logic favors disclosure in such circumstances, it is necessarily dispositive.")

### a.  **The requested documents have historically been left open to the public.**

Grand Jury transcripts and warrant materials in the midst of a pre-indictment investigation are the only two categories that have been deemed as traditionally secret documents. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006). Pretrial documents filed with the court and trial exhibits are documents traditionally left open to the public. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). Such documents and their included exhibits are not protected by a pre-discovery protective order because "'once the [protected or sealed discovery] documents are made

-8-

part of a dispositive motion . . . they lose their status of being raw fruits of discovery,' and no longer enjoy protected status 'without some overriding interest in favor of keeping the discovery documents under seal.'" *Id.* at 1136. (quoting *Rushford v. The New Yorker Magazine*, 846 F.2d 249, 252 [4th Cir. 1988]). In fact, the Ninth Circuit Court of Appeals held "the presumption of access is not rebutted where . . . documents subject to a protective order are filed under seal as attachments to a dispositive motion." *Id.*

The documents Prospective Intervenors seek fall squarely into categories the federal courts have acknowledged a right of access: Trial Exhibits and Exhibits attached to discovery-related motions. Hershorin Dec. at ¶ 4. Because the exhibits sought by Prospective Intervenors were filed with the court in dispositive motions or admitted into evidence at trial, this Court cannot keep these documents under seal without an overriding interest that meets the requisite Constitutional test.

**b. <u>Logic favors disclosure of the requested documents.</u>**

Lack of a tradition of access in a criminal trial to a document does not alone justify sealing. *Globe Newspaper Co v. Sup. Ct.*, 457 U.S. 596, 605 n. 13 (1982). The court must consider whether, in the context of a modern justice system, public access serves society's interest because "the first amendment is to be interpreted in light of current values and conditions," as such, a right of access may attach even if those records were not traditionally left open. *Brooklier*, 685 F.2d at 1170. Disclosure of sealed documents is appropriate when public access would act as a "curb on prosecutorial or judicial misconduct and would further the public's interest in understanding the criminal justice system." *In re Washington Post*, 807 F.2d 383, 389 (4th Cir. 1986) (citing *Press-Enterprise II*, 478 U.S. at 8).

WFG and Novastar are victims of Defendants' criminal enterprise who seek civil redress for the injuries inflicted upon them by Defendants and their criminal enterprise. Much of the evidence used to support Prospective Intervenors' civil claims is now unavailable because of this Court's protective order and orders to seal numerous exhibits. Hershorin Dec. at ¶ 3. In our modern justice system, Prospective Intervenors' access to the sealed documents serves society's interest because society has a strong

-9-

interest in seeing that fraud victims are made whole. *Id.* at ¶ 6. It would be an injustice to fraud victims if criminal courts were to hold valuable evidence hostage such that actual victims of fraud could not prove their civil case. *Id.*

Moreover, the public has a strong interest in seeing that Prospective Intervenors are able to produce as much relevant evidence as possible against Defendants because the activities of fraudsters like the Defendants have a direct impact on the public's future acquisition of home loans and title insurance policies. *Id.* An unfortunate consequence of Defendants' actions is lenders and insurance companies are placed at a greater risk; the cost of which will eventually be placed onto the innocent consumer if lending and insurance companies are not able to obtain judgments against those who defrauded them. *Id.* The evidence under seal will help Prospective Intervenors prove their cases at their respective civil trials. *Id.* Such judgments will act as a deterrent against fraudulent activities and reduce the risk to lenders and insurers when entering into real estate related contracts. *Id.*

Because real estate fraud has become more prevalent in today's society and the sealed records on file with this court will provide much needed evidence to support Prospective Intervenors' claims against Defendants in their respective civil cases, logic favors disclosure. Moreover, logic favors disclosure because civil judgments coupled with criminal judgments act as a further deterrence against fraudulent activity.

Thus, Prospective Intervenors have met their burden under the First amendment and Prospective Intervenors have a qualified right to access the records under seal in Criminal Defendants case.

      c.  **WFG will submit any unsealed exhibits to the Superior Court of California under seal.**

Once the party seeking disclosure has met its burden, the burden shifts to the party supporting nondisclosure to show that a "compelling governmental interest" supports nondisclosure and nondisclosure is "narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 10. The party who seeks to maintain sealed records must show "(1) closure served a compelling interest; (2) there is

a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Phoenix Newspapers, Inc.*, 156 F.3d at 949. For a sealing order to survive, the court must make specific, on-the-record findings that satisfy the test for closure and the record must reflect those findings. *Id.* at 13-15.

WFG is uncertain on what the basis the requested documents were sealed as each Application for Order Sealing Documents is also sealed in this Court's record. Hershorin Dec. at ¶ 3. However, even upon a showing of a compelling interest that could be harmed, the parties seeking nondisclosure will not be able to prove that there are no alternatives to closure that would protect the compelling interest.

In *Beckman Industries, Incorporated v. International Insurance Company*, Intervenors sought access to sealed court records for use in concurrent litigation against the Defendant, who was a party to both actions. 966 F.2d 470, 471-72 (9th Cir. 1992). The district court ruled in favor of the intervenors on the "grounds of the importance of access to the documents, a lack of prejudice to [Defendant] and the absence of extraordinary circumstances militating against intervention and modification [of the protective order]." *Id.* at 475. The Ninth Circuit affirmed the district court's ruling and reasoned that the orders were "subject to modification to meet the reasonable needs of other parties in other litigation." *Id.* (quoting *Olympic Refining Company v. Carter*, 332 F.2d 260, 264-65 [9th Cir. 1964]). The Court further held because trials ordinarily take place in public and the purpose of discovery is to force full disclosure, Intervenor was entitled to modification of the protective order, "subject to reasonable restrictions on disclosure." *Id.* The Court granted Intervenor access to the sealed documents, but "put the intervenors under the same restrictions as those contained in the original protective order" to preserve privacy interests. *Id.*

Similarly, in *Foltz*, the Intervenor sought access to a motion for summary judgment, its exhibits, and other records on file with the court for use in concurrent litigation against Defendant. 331 F.3d at 1136. Defendant argued against disclosure because the requested materials contained confidential

-11-

1   financial information, third-party medical records, personnel files, and trade secrets, which the district

2   court deemed compelling reasons to maintain the seal on the summary judgment motions and supporting

3   exhibits. *Id.* On appeal, the Ninth Circuit held that redacting non-relevant, injurious information "would

4   not injure third parties but would reveal only [Defendant's] actions . . . This disclosure might harm

5   [Defendant] by exposing it to additional liability and litigation . . . but a litigant is not entitled to the

6

7   court's protection from this type of harm." *Id.* at 1137.

8       Like the Prospective Intervenors in *Beckman* and *Foltz*, Prospective Intervenors agree to be

9   placed under the same restrictions as those contained in the original protective order. Hershorin Dec. ¶

10   17.   In addition, WFG and Novastar agree that any documents obtained in this matter, which are

11   submitted into evidence in their respective civil cases will be submitted under seal. *Id.* By adhering to

12   such restrictions, the privacy of any third parties will remain protected. *Id.* Prospective Intervenors

13   recognize there might be personal identifying information of third parties and banking records, which

14   are documents typically subject to redaction in order to preserve the privacy interest of third parties and

15

16   Defendants. However, the privacy interest of third parties and defendants will be protected by

17   Prospective Intervenors' agreement to abide by this courts protective order and by submitting the

18   documents under seal in their civil actions. *Id.* Moreover, WFG and Novastar's respective cases are

19   bench trials; thus, there is no risk of displaying any private information to the general public as a jury

20   will not be present.

21       Because Prospective Intervenors agree to adhere to this courts protective order and agree to

22

23   submit any documents to the civil court under seal, Prospective Intervenors have demonstrated that

24   there is an alternative to a complete seal on the requested document that will preserve the privacy

25   interests of Defendants and third parties.

26       Thus, this Court should grant Prospective Intervenors' motion to access judicial records for use

27   in their civil trials.

28

### 2. **COMMON LAW**

Although similar to the First Amendment right of access, the common law right to access "is separate and distinct from rights guaranteed by the First Amendment." *Valley Broadcasting Co. v. United States Dist. Ct.*, 798 F.2d 1289,1293-94 (9th Cir. 1986). The common law right to access attaches even when the court does not find a constitutional right of access. *United States v. Schlette*, 842 F.2d 1574, 1582-83 (9th Cir. 1988).

Prospective Intervenors have a legitimate interest in accessing the sealed records because there is no other way that WFG and Novastar can gain access to them. Hershorin Dec. at 3. Prospective Intervenors diligently attempted to acquire the sealed documents and information contained in the sealed record using discovery methods in the civil cases, but civil defendants failed to respond to such requests or claimed they could not locate the requested documents. *Id.*

Moreover, as discussed above, Prospective Intervenors are members of the public with a right to access court records. In addition, the records Prospective Intervenors seek access to are quintessential elements of the justice system – exhibits used in trial and pretrial motions – and providing Prospective Intervenors with access to the requested documents promotes a public understanding of the judicial process and a policy of ensuring victims of fraud are made whole. Providing Prospective Intervenors access to the sealed documents promotes the public's interest in both the criminal process and the civil process because it is the only way in which WGF and Novastar can ensure they and the public are provided with the full benefits of civil court proceedings. In addition, Defendants were convicted of a multimillion-dollar fraud scheme against the government, unsealing Defendant's records will allow the public to keep an eye on the workings of the government and to see where their tax dollars are flowing.

WFG and Novastar acknowledge that many of the sealed exhibits may contain personal identifying information of third parties, which is information typically kept under seal; however, many of these third parties are synthetic entities created by the Defendants in perpetration of their fraudulent scheme. *Id.* at ¶¶ 12, 16.  However, as discussed above, WFG and Novastar agree to adhere to reasonable

-13-

restrictions on disclosure and agree to use the acquired information in accordance with protective orders in their state civil actions. *Id.* at ¶ 16.

Thus, because WFG and Novastar have a common law right to access the sealed exhibits, the Court should grant them access to the requested exhibits for use in their respective civil cases with a further order that use of such documents be admitted in the civil court under seal.

## V.   **CONCLUSION**

For the reasons set forth above, Prospective Intervenors hereby request this Court to issue an order allowing it to intervene in the above-captioned matter for the limited purpose of requesting the Court to unseal documents, including pleadings with Exhibits and admitted Trial Exhibits used for the convictions of Tamara Dadyan and Arthur Ayvazyan filed and, in some cases, introduced in open court in connection with this criminal action. Prospective Intervenors further request this Court issue an order unsealing all trial exhibits and the exhibits contained in the Government's Opposition to Motions to Suppress- Docket numbers 188 and 207, or in the alternative, an order unsealing all exhibits named in Exhibit C with a confidentiality order and/or order redacting confidential information in the interests of fairness and Justice.

DATED: April 27, 2022                    **HERSHORIN & HENRY, LLP**

By: _____

LORI C. HERSHORIN
Attorney for Prospective Intervenors
WFG TITLE INSURANCE COMPANY and
NOVASTAR, LLC

EXHIBIT A

1 | LORI C. HERSHORIN, ESQ. (SBN 155977)
2 | JEAN C. WILCOX, ESQ. (SBN 97963)
CLAUDIA MOURAD, ESQ. (SBN 211139)
3 | **HERSHORIN & HENRY, LLP**
26475 Rancho Parkway South
4 | Lake Forest, California 92630
T: (949) 859-5600 ♦ F: (949) 859-5680

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

**APR 03 2017**

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

6 | Attorneys for Defendant, Cross-Defendant and Cross-
Complainant, NOVASTAR, LLC, a Delaware Limited Liability Company

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE

| | |
|---|---|
| ANAIT AKOPYAN, SOGOMON AKOPYAN, and VARTAN AKOPYAN, <br><br> Plaintiffs, <br><br> vs. <br><br> HOVANES YESAYAN aka HOVHANNES YESAYAN; EPRAKSI GEVORKIAN; KARAPET EMBOYAN; NOVASTAR, LLC; SBS TRUST DEED NETWORK; DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR HARBORVIEW MORTGAGE LOAN TRUST MORTGAGE LOAN PASS THROUGH CERTIFICATES SERIES 2006-9; RECONTRUST COMPANY; BANK OF NEW YORK MELON; LA COSTA LOANS HOLDINGS, LLC and DOES 1-100, Inclusive, <br><br> Defendants. | CASE NO.: BC597238 <br><br> *Hon. Judge Yvette M. Palazuelos* <br> *Dept. 28* <br><br> **CROSS-COMPLAINT BY NOVASTAR, LLC FOR:** <br><br> 1) **QUIET TITLE** <br> 2) **FRAUD** <br> 3) **CONVERSION** <br> 4) **BREACH OF ESCROW CONTRACT** <br> 5) **ESCROW NEGLIGENCE** <br> 6) **BREACH OF ESCROW FIDUCIARY DUTY** <br> 7) **BREACH OF BROKER CONTRACT** <br> 8) **BROKER NEGLIGENCE** <br> 9) **BREACH OF BROKER FIDUCIARY DUTY** <br> 10) **NEGLIGENCE OF NOTARY PUBLIC** |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR HARBORVIEW MORTGAGE LOAN TRUST MORTGAGE LOAN PASS-THROUGH CERTIFICATES SERIES 2006-9, <br><br> Cross-Complainant, | Action Filed:  October 9, 2015 <br> Trial Date:  February 5, 2018 |

-1-

CROSS-COMPLAINT OF NOVASTAR, LLC

1 | vs.

2 | ANAIT AKOPYAN; SOGOMON AKOPYAN;
VARTAN AKOPYAN; EPRAKSI

3 | GEVORKIAN; KARAPET EMBOYAN;
HOVANES YESAYAN a/k/a HOVHANNES

4 | YESAYAN d/b/a CAPITAL SECURITIES;
CAPITAL SECURITIES LLC d/b/a CAPITAL

5 | SECURITIES; FCI LENDER SERVICES, INC.;
LA COSTA LOANS, INC.; LA COSTA LOANS

6 | HOLDINGS, LLC; LENDING WEST, INC.;
NOVASTAR LLC; S.B.S. TRUST DEED

7 | NETWORK; All persons unknown, claiming any
legal or equitable right, title, estate, lien, or

8 | interest in the subject property adverse to Cross-
Complainant's title, or any cloud on Cross

9 | Complainant's title thereto; and DOES 1-30,
inclusive

10 |

                Cross-Defendants.

11 | _____

12 | NOVASTAR, LLC, a Delaware limited liability
company,

13 |

14 |                 Cross-Complainant,

15 | vs.

16 | ANAIT AKOPYAN, an Individual;
SOGOMON AKOPYAN, an Individual;

17 | VARTAN AKOPYAN also known as VARDAN
AKOPYAN, an Individual;

18 | DEUTSCHE BANK NATIONAL TRUST

19 | COMPANY, AS TRUSTEE FOR
HARBORVIEW MORTGAGE LOAN TRUST

20 | MORTGAGE LOAN PASS-THROUGH
CERTIFICATES SERIES 2006-9;

21 | COUNTRYWIDE HOME LOANS, INC., a New

22 | York Corporation;
APEX EQUITY HOLDINGS, an entity of

23 | unknown form;
LENDING WEST, INC., a California

24 | Corporation;
ANGELICA A. ORTIZ, an Individual;

25 | CAPITAL SECURITIES LLC dba CAPITAL

26 | SECURITIES, an entity of unknown form;
HOVANES YESAYAN aka HOVHANNES

27 | YESAYAN, an Individual dba CAPITAL
SECURITIES;

28 | TRACEY A. DOMINIQUE, an Individual;

CROSS-COMPLAINT OF NOVASTAR, LLC

C. M. FRAZIER, an Individual;
EPRAKSI GEVORKIAN, an Individual;
VICKI LE MERE, an Individual;
DEBORAH ARTEAGA, an Individual;
KARAPET EMBOYAN, an Individual;
STACY A. LIM, an Individual;
LBC CAPITAL INCOME FUND, LLC, a
California Limited Liability Company;
LENDING BEE, INC. dba LBC REALTY, a
California Corporation;
BORIS DORFMAN, an Individual;
VLADIMIR ISPEROV, an Individual;
KONSTANTIN TENIN aka KEVIN TENIN, an
Individual;
K-ASTRON VENTURES INC. dba KONSTANT
CLOSINGS, a California Corporation;
KONSTANTINE KABILAFKAS, an Individual;
ANGELA SIMON, an Individual;
TAMARA DADYAN aka TAMMY DADYAN,
an Individual;
ALL PERSONS UNKNOWN, CLAIMING ANY
LEGAL OR EQUITABLE RIGHT, TITLE,
ESTATE, LIEN, OR INTEREST IN THE
SUBJECT PROPERTY ADVERSE TO CROSS-
COMPLAINANT'S TITLE, OR ANY CLOUD
ON CROSS COMPLAINANT'S TITLE
THERETO; and
ROES 1 through 150, inclusive,

Cross-Defendants.

Cross-complainant, NOVASTAR, LLC, a Delaware limited liability company, hereby alleges as follows:

## BACKGROUND TO CROSS-COMPLAINT

1.    NOVASTAR, LLC, a Delaware limited liability company ("**Novastar**"), is organized and existing under the laws of the State of Delaware.  Novastar is authorized to and doing business in the State of California.

2.    Novastar brings this cross-complaint seeking to quiet its title to the residential real property that is commonly known as 4628 Kingswell Avenue, Los Angeles, California ("**Property**").

-3-

1  Novastar alleges that it holds title to the Property following its foreclosure upon a deed of trust,

2  recorded as Instrument No. 20131778694 ("**Novastar Deed of Trust**"), recorded December 18, 2013,

3  which trustee's sale was held on February 29, 2016.[1]  At said trustee's sale, Novastar was the

4  successful bidder, having credit bid the sum of $909.977.25.  The Trustee's Deed Upon Sale that

5  transferred the Property's title to Novastar was recorded on March 17, 2016 as Instrument

6  No. 20160292135.  In the alternative, Novastar brings this cross-complaint seeking tort and contract

7  based damages against the cross-defendants, as hereafter alleged.

8          3.       Novastar alleges, *inter alia*, that it holds title to the Property free and clear of all other

9  adverse liens or claims of interest by the Cross-Defendants named herein.  Novastar seeks, in the first

10 instance, a judgment quieting title to the Property in its name alone, as of March 17, 2016.  Novastar

11 seeks, in the alternative, monetary damages including punitive and exemplary damages against certain

12 of the Cross-Defendants, as alleged herein.

13         4.       This action was initially filed in the above-captioned court, entitled *Akopyan v.*

14 *Yesayan*, Case No. BC597238 ("**Akopyan Lawsuit**").  In the Akopyan Lawsuit the plaintiffs are

15 seeking to cancel and quiet title in their favor and against Novastar and the Novastar Deed of Trust.

16 Also in the Akopyan Lawsuit, a cross-complaint was filed by defendant, DEUTSCHE BANK

17 NATIONAL TRUST COMPANY ("**Deutsche Bank**"), Trustee, seeking to cancel and challenge the

18 title Novastar now claims to hold on the Property.  The Akopyan Lawsuit plaintiffs and Deutsche Bank

19 allege that the deed of trust held by Deutsche Bank against the Property is valid, existing and senior

20 to the Novastar Deed of Trust and to the Property's title that Novastar now holds.

21                                          **PARTIES**

22         5.       Novastar is informed and believes and thereon alleges that cross-defendant ANAIT

23 AKOPYAN ("**Anait**") at all relevant times herein was an individual residing in Los Angeles County,

24 California and within this judicial district.

25

26

27

28 _____

[1] All of the Instruments alleged in this cross-complaint by their Instrument No. were recorded in the Official Records of Los Angeles County, State of California.

-4-

CROSS-COMPLAINT OF NOVASTAR, LLC

6.     Novastar is informed and believes and thereon alleges that cross-defendant SOGOMON AKOPYAN ("**Sogomon**") at all relevant times herein was an individual residing in Los Angeles County, California and within this judicial district.

7.     Novastar is informed and believes and thereon alleges that cross-defendant VARTAN AKOPYAN also known as VARDAN AKOPYAN ("**Vartan**") at all relevant times herein was an individual residing in Los Angeles County, California and within this judicial district.

8.     Novastar is informed and believes and thereon alleges that cross-defendant DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR HARBORVIEW MORTGAGE LOAN TRUST MORTGAGE LOAN PASS-THROUGH CERTIFICATES SERIES 2006-9, ("**Deutsche Bank**") at all relevant times herein was an entity doing business in Los Angeles County, California and within this judicial district.

9.     Novastar is informed and believes and thereon alleges that cross-defendant COUNTRYWIDE HOME LOANS, INC. ("**Countrywide**") at all relevant times herein was a New York Corporation doing business in Los Angeles County, California and within this judicial district.

10.     Novastar is informed and believes and thereon alleges that cross-defendant APEX EQUITY HOLDINGS ("**Apex**") at all relevant times herein was a business entity of unknown form doing business in Los Angeles County, California and within this judicial district.

11.     Novastar is informed and believes and thereon alleges that cross-defendant LENDING WEST, INC. ("**Lending West**") at all relevant times herein was a California Corporation doing business in Los Angeles County, California and within this judicial district.

12.     Novastar is informed and believes and thereon alleges that cross-defendant ANGELICA A. ORTIZ ("**Ortiz**") at all relevant times herein was an individual conducting business in Los Angeles County, California as a notary public licensed by the State of California, and holding Commission No. 1910648.

13.     Novastar is informed and believes and thereon alleges that cross-defendant CAPITAL SECURITIES LLC dba CAPITAL SECURITIES ("**Capital Securities**") at all relevant times herein

CROSS-COMPLAINT OF NOVASTAR, LLC

1  was an entity of unknown form doing business in Los Angeles County, California and within this
2  judicial district.

3       14.  Novastar is informed and believes and thereon alleges that cross-defendant HOVANES
4  YESAYAN aka HOVHANNES YESAYAN ("**Yesayan**") at all relevant times herein was an
5  individual residing in and doing business under the fictitious business name of Capital Securities
6  and/or Capital Securities, LLC in Los Angeles County, California and within this judicial district.

7       15.  Novastar is informed and believes and thereon alleges that cross-defendant TRACEY
8  A. DOMINIQUE ("**Dominique**") at all relevant times herein was an individual residing in Los
9  Angeles County, California and within this judicial district.  NOVASTAR is informed and believes
10  and thereon alleges that Dominique is a notary public licensed by the State of California, and holding
11  Commission No. 1859149.

12       16.  Novastar is informed and believes and thereon alleges that cross-defendant C. M.
13  FRAZIER ("**Frazier**") at all relevant times herein was an individual conducting business in Los
14  Angeles County, California as a notary public licensed by the State of California, and holding
15  Commission No. 1840019.

16       17.  Novastar is informed and believes and thereon alleges that cross-defendant EPRAKSI
17  GEVORKIAN ("**Gevorkian**") at all relevant times herein was an individual residing in Los Angeles
18  County, California and within this judicial district.

19       18.  Novastar is informed and believes and thereon alleges that cross-defendant KARAPET
20  EMBOYAN ("**Emboyan**") at all relevant times herein was an individual residing in Los Angeles
21  County, California and within this judicial district.

22       19.  Novastar is informed and believes and thereon alleges that cross-defendant VICKI LE
23  MERE ("**Le Mere**") at all relevant times herein was an individual conducting business in Los Angeles
24  County, California as a notary public licensed by the State of California, and holding Commission
25  No. 1903229.

26       20.  Novastar is informed and believes and thereon alleges that cross-defendant DEBORAH
27  ARTEAGA ("**Arteaga**") at all relevant times herein was an individual conducting business in Los
28

CROSS-COMPLAINT OF NOVASTAR, LLC

Angeles County, California as a notary public licensed by the State of California, and holding Commission No. 1907596.

21.     Novastar is informed and believes and thereon alleges that cross-defendant KARAPET EMBOYAN ("**Emboyan**") at all relevant times herein was an individual residing in Los Angeles County, California and within this judicial district.

22.     Novastar is informed and believes and thereon alleges that cross-defendant STACY A. LIM ("**Lim**") at all relevant times herein was an individual conducting business in Los Angeles County, California as a notary public licensed by the State of California, and holding Commission No. 20062214.

23.     Novastar is informed and believes and thereon alleges that cross-defendant LBC CAPITAL INCOME FUND, LLC ("**LBC Capital**") at all relevant times herein was a California Limited Liability Company doing business in Los Angeles County, California and within this judicial district.

24.     Novastar is informed and believes and thereon alleges that cross-defendant LENDING BEE, INC. ("**Lending Bee**") does business as LBC Realty, and at all relevant times herein was a California Corporation doing business in Los Angeles County, California and within this judicial district.  Novastar is informed and believes and thereon alleges that Lending Bee is the managing member of LBC Capital and that Lending Bee holds a Corporation License from the California Bureau of Real Estate (License # 01445206).

25.     Novastar is informed and believes and thereon alleges that cross-defendant BORIS DORFMAN ("**Dorfman**") at all relevant times herein was an individual residing in Los Angeles County, California and within this judicial district; was the President and Chief Executive Officer of Lending Bee; and holds a Broker License with the California Bureau of Real Estate (License # 01330338).

26.     Novastar is informed and believes and thereon alleges that cross-defendant VLADIMIR ISPEROV ("**Isperov**") at all relevant times herein was an individual residing in Los

1  Angeles County, California and within this judicial district; Isperov was the sole owner of Lending

2  Bee and holds a Salesperson License with the California Bureau of Real Estate (License # 01435954).

3      27.   Novastar is informed and believes and thereon alleges that cross-defendant

4  KONSTANTIN TENIN aka KEVIN TENIN (**"Tenin"**) at all relevant times herein was an individual

5  residing in Los Angeles County, California and within this judicial district; Tenin was a Senior

6  Regional Manager of Lending Bee and holds a Salesperson License with the California Bureau of Real

7  Estate (License # 01932122).

8      28.   Novastar is informed and believes and thereon alleges that cross-defendant TAMARA

9  DADYAN aka TAMMY DADYAN (**"Dadyan"**) at all relevant times herein was an individual

10 residing in Los Angeles County, California and within this judicial district.  At the time of the events

11 herein alleged, prior to December 18, 2013, Dadyan held a Salesperson License with the California

12 Bureau of Real Estate (License # 01294823) that was hung under Secureline Realty and Funding, Inc.,

13 a California corporation.  Dadyan's license is now suspended.

14     29.   Novastar is informed and believes and thereon alleges that cross-defendant K-

15 ASTRON VENTURES INC. dba Konstant Closings (**"Konstant Closings"**), at all relevant times

16 herein was a California Corporation doing business in Los Angeles County, California and within this

17 judicial district, and held a Corporation License with the California Bureau of Real Estate (License #

18 01391181).  Konstant Closings is also licensed as an escrow agent by the California Department of

19 Corporations (License # 01391181).

20     30.   Novastar is informed and believes and thereon alleges that cross-defendant

21 KONSTANTINE KABILAFKAS (**"Kabilafkas"**) at all relevant times herein was an individual

22 residing in Los Angeles County, California and within this judicial district, and holds a Broker License

23 with the California Bureau of Real Estate (License # 01176858).  Kabilafkas is the designated licensed

24 officer for Konstant Closings, and is a licensed officer for Secureline Realty and Funding, Inc., with

25 which Dadyan was affiliated.

26     31.   Novastar is informed and believes and thereon alleges that cross-defendant ANGELA

27 SIMON (**"Simon"**) at all relevant times herein was an individual residing in Los Angeles County,

28

CROSS COMPLAINT OF NOVASTAR, LLC

1  California and within this judicial district.

2      32.    Novastar is informed and believes and based thereon alleges, that each of the cross-

3  defendants sued herein as ROES 1 through 50 claim some right, title, estate, lien, or interest in the

4  Property that is adverse to Novastar's title.

5      33.    Novastar is unaware of the true names and capacities of cross-defendants sued herein

6  as ROES 51 through 100, inclusive, and therefore sues these cross-defendants by such fictitious names.

7  Novastar will amend this cross-complaint to show the true names and capacities of these fictitiously

8  named cross-defendants when the same have been ascertained or upon proof at trial.   Novastar is

9  informed and believes and thereon alleges that each of the fictitiously named cross-defendants is

10  legally responsible for the events and damages alleged in the cross-complaint and/or jointly and

11  severally liable for the debts and obligations of some or all of the other cross-defendants.

12      34.    Novastar is informed and believes and based thereon alleges, that each of the cross-

13  defendants sued herein as ROES 101 through 150, inclusive, are, and at all times mentioned herein

14  have been, the agents, principals, partners, co-conspirators, aiders and abettors, and/or co-venturers of

15  each other, that each of them acted within the course, scope and authority of said relationships and

16  conspiracy, and that as a result, ROES 1 through 150, inclusive, are jointly and severally liable for the

17  acts and omissions alleged herein.

18                                    **VENUE**

19      35.    The Property that is the subject of this action is certain improved residential real

20  property commonly known as 4628 Kingswell Avenue, Los Angeles, California 90027.   Sometimes

21  the Property is also referred to as 4628, 4628-1/2 and 4630 Kingswell Avenue, Los Angeles,

22  California.  The Property is legally described as follows:

23          LOT 7 IN BLOCK "C" OF EDGEMONT TERRACE, IN THE CITY
            OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF
24          CALIFORNIA, AS PER MAP RECORDED IN BOOK 3, PAGE 90 OF
            MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
25          COUNTY.

26          APN: 5590-026-007

27

28

**GENERAL ALLEGATIONS**

36.     This action arises out of a series of real estate sales, foreclosures, and loan transactions that commenced in or about November of 2011, all of which involved the Property.  Ultimately, in December of 2013, Novastar, as the last in a chain of lenders, was induced to make a $637,500 purchase money loan to its borrower, Emboyan, that was secured by what it believed was a first lien deed of trust against the Property.  The chain of title on the Property reflects that Emboyan purchased the Property from Gevorkian, an individual who previously purchased the Property from Capital Securities, and that Capital Securities purchased the Property at a foreclosure sale held under the Deutsche Bank Deed of Trust on August 17, 2012.

37.     The Plaintiffs in the Akopyan Lawsuit allege that they hold title to the Property, subject only to a $774,000 first lien deed of trust currently held by Cross-Complainant, Deutsche Bank; and a $240,000 second lien deed of trust that is currently held by Bank of New York Melon.  Anait, Sogomon, Vartan, and Deutsche Bank all alleged in their pleadings that no bonafide trustee's foreclosure sale was ever held under the Deutsche Bank Deed of Trust and, consequently, that the title ultimately received by Emboyan and the Novastar Deed of Trust and later title are all void.  Novastar disputes this in its verified Answers.

38.     In the event Novastar is not successful on its claims to the Property, then Novastar alleges in the alternative, that it should receive a judgment in damages against the cross-defendants herein below identified, on the causes of action alleged herein.

**AKOPYAN PARTIES' ACQUISITION AND LOANS AGAINST PROPERTY**

39.     Novastar is informed and believes and thereon alleges that Anait purchased the Property on or about March 4, 2003.  In connection with that purchase, Anait obtained a loan from Washington Mutual Bank ("**WAMU**") in the amount of $432,000 secured by a first lien deed of trust.

40.     Novastar is informed and believes and thereon alleges that in December of 2003, Anait obtained a $225,000 Home Equity Line of Credit ("**HELOC**") from Countrywide Home Loans, Inc. ("**Countrywide**"), secured by a second lien deed of trust against the Property.

41.     Novastar is informed and believes and thereon alleges that in July 2005, Anait refinanced WAMU and Countrywide loans with a new first lien loan from Countrywide Home Loans, Inc. in the amount of $665,000, and a new second lien HELOC in the amount of $95,000.

42.     Novastar is informed and believes and thereon alleges that in August 2006, Anait refinanced the Property yet again, and obtained a new $774,000 first lien loan from Countrywide and a new second lien deed of trust also in favor of Countrywide, to secure a HELOC in the amount of $240,000. The two Countrywide deeds of trust were recorded on August 31, 2006 as Instrument Nos. 061946828 and 061946829.

43.     Novastar is informed and believes and thereon alleges that in the short amount of time since purchasing the property in March 2003, that by July of 2005 Anait had effectively taken out approximately $328,000 in equity using the Property as collateral; and, that by August 2006 the Property was encumbered by loans totaling $1,014,000.

44.     Novastar is informed and believes and thereon alleges that thereafter in 2006, Countrywide transferred its interest in the first lien deed of trust into a securitized pool of loans over which Deutsche Bank was the then acting trustee (the **"Deutsche Bank Deed of Trust"**).  Novastar is further informed and believes that Plaintiff alleges that thereafter, the second lien deed of trust was transferred by Countrywide to the Bank of New York Mellon.

## ANAIT'S DEFAULT AND FORECLOSURE PROCEEDINGS UNDER THE
## DEUTSCHE BANK DEED OF TRUST

45.     Novastar is informed and believes and thereon alleges that pursuant to the fraud scheme more fully alleged below, and beginning in or about November, 2011, three Trustee's Deeds Upon Sale were fraudulently recorded against the Property as part of a scheme to launder title to the Property and give the illusion in the public record that the Deutsche Bank Deed of Trust had been foreclosed upon and that a third party entity had purchased the Property at the foreclosure sale.

46.     Novastar is informed and believes and thereon alleges that Anait subsequently defaulted on the Deutsche Bank Deed of Trust in or about December of 2010.

47.     ReconTrust, as the trustee under the Deutsche Bank Deed of Trust, thereupon commenced a nonjudicial foreclosure proceeding against the Property by recording a Notice of Default and Election to Sell on December 29, 2010, as Instrument No. 20101927762.

48.     Novastar is informed and believes and thereon alleges that on or about January 5, 2011, a Corporation Assignment of Deed of Trust was recorded as Instrument No. 20110021377.  The assignment states that the beneficial interest in the Deutsche Bank Deed of Trust had been assigned to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP.

49.     Novastar is informed and believes and thereon alleges that in and around March of 2011, Anait managed to obtain yet another loan, even though the Property was already in foreclosure, that was secured by a third lien deed of trust against the Property, in the amount of $15,000.  Apex is the beneficiary reflected on this third lien deed of trust that was recorded on March 1, 2011 as Instrument No. 20110315667 (**"Apex Deed of Trust"**).  Novastar is informed and believes and on that basis alleges that this loan represented payment to Anait and/or Sogomon and/or Vartan for their willingness to participate in a fraudulent foreclosure avoidance scheme that was offered to them by the other cross-defendants identified below.

50.     Novastar is informed and believes and thereon alleges that on or about October 13, 2011, ReconTrust as the Trustee handling the foreclosure sale on the first lien Deutsche Bank Deed of Trust, caused to be published and recorded a Notice of Trustee's Sale as Instrument No. 20111386524, thereby scheduling a trustee's sale of the Property for November 2, 2011.

51.     Prior to that scheduled foreclosure sale, and in furtherance of the fraudulent foreclosure avoidance scheme described herein, Anait transferred title to the Property to herself, her husband Sogomon, and her son, Vartan.  That Grant Deed was recorded on October 17, 2011 as Instrument No. 20111403579.  Novastar is informed and believes and thereon alleges, that this transfer of title by Anait was in furtherance of the fraudulent foreclosure avoidance scheme and so as to prepare for the use of any of a variety of devices delinquent borrowers began using during this time period, including, without limitation, the filing of a series of individual bankruptcies to delay the foreclosure process.

52.     Also, at and around this same time period, Novastar is informed and believes and on

that basis alleges, that similar foreclosure avoidance related documents were being recorded in connection with another real property that Anait also owned that is commonly known 2018 N. Catalina St., Los Angeles ("**Catalina Property**").  Due to the similarity in recorded documentation and the overlap in parties, notaries, and related entities between the Property involved in this action, and the Catalina Property, Novastar is informed and believes that Anait, Sogomon and Vartan were willing and knowing participants in the fraud scheme alleged herein.

### CHURNING THE PROPERTY'S TITLE DURING THE PENDING FORECLOSURE

53.    Novastar is informed and believes and thereon alleges that on or about March 29, 2012, a Trustee's Deed Upon Sale, that was executed on November 21, 2011, was purportedly recorded by ReconTrust as Instrument No. 20120482852 ("**First TDUS**"). The First TDUS states that the Property had been purchased at the Trustee's November 2, 2011 foreclosure sale by Lending West, for a cash bid of $580,000.  The First TDUS was purportedly signed by an Assistant Vice President of ReconTrust and was notarized by Ortiz.  Due to similarities in the signatures of the Assistant Vice President and Ortiz, Novastar is informed and believes and on that basis alleges that both signatures were made by the same individual.

54.    Novastar is informed and believes and thereon alleges that some months later, on or about June 22, 2012, ReconTrust recorded a Notice of Rescission of Trustee's Deed Upon Sale dated June 19, 2012 as Instrument No. 20120929859, purporting to rescind the First TDUS by claiming it was "recorded in error." The Notice of Rescission of the First TDUS is purportedly notarized by Ortiz just as was the First TDUS.  Novastar is informed and believes and thereon alleges that the Notice of Rescission was created, executed and recorded by the same individuals and/or entities that were responsible for the creation, execution and recordation of the First TDUS and that for some unknown reason, those individuals wanted to place the Property's title into the name of Capital Securities instead of the name of Lending West.

55.    Novastar is informed and believes and thereon alleges that several months later, on or about September 20, 2012 a second Trustee's Deed Upon Sale executed on September 15, 2012 was purportedly recorded by ReconTrust as Instrument No. 20121417127 ("**Second TDUS**").  The Second

TDUS was purportedly executed by an Assistant Vice President of ReconTrust, and notarized by Dominique. Many of the same unique font styles, typos, and general lay-out of the First TDUS appear in the Second TDUS. The Second TDUS states that Capital Securities purchased the Property at a foreclosure sale held on August 17, 2012 with a cash bid of $580,000 (same cash bid amount as stated in the First TDUS). Following the recordation of the Second TDUS, no rescission of the Second TDUS was recorded prior to Novastar's loan to Emboyan.

56.     Novastar is informed and believes and thereon alleges that on or about November 19, 2012, ReconTrust published a second Notice of Trustee's Sale and recorded same as Instrument No. 20121753911, thereby re-scheduling a trustee's sale under the Deutsche Bank Deed of Trust on the Property for December 13, 2012. Novastar is informed and believes and thereon alleges that ReconTrust should have known by this time of the First TDUS and Second TDUS as said instruments would have been reflected in a property date-down that foreclosure trustees ordinarily obtain prior to re-noticing a Trustee's Sale.

57.     Novastar is informed and believes and thereon alleges that on or about December 28, 2012, another Trustee's Deed Upon Sale, executed on December 20, 2012 was purportedly recorded by ReconTrust as Instrument No. 20122018962 ("**Third TDUS**"). The Third TDUS was purportedly signed by an Assistant Vice President of ReconTrust, and was notarized by Frazier. The Third TDUS, like the Second TDUS, purports to convey title to the Property to Capital Securities in exchange for a cash bid of $580,000 at a foreclosure sale that allegedly took place on August 17, 2012. The Third TDUS contains the same unique font type, reflects the same typos, and general lay-out as do the First TDUS and Second TDUS; and, for that reason, Novastar is informed and believes and thereon alleges, that all three TDUS instruments were created, executed and recorded by the same individuals and/or entities and all for the purpose of furthering the foreclosure avoidance scheme to which Anait, Sogomon and Vartan had agreed and consented.

58.     Novastar is informed and believes and thereon alleges that Anait, Sogomon, Vartan and Deutsche Bank all dispute that a trustee's sale of the Property took place on August 17, 2012, and further dispute that ReconTrust executed, or was authorized to execute, the Second TDUS and Third

-14-

TDUS that purported to transfer the Property's title to Capital Securities. Novastar denies and disputes these claims, as alleged in its Verified Answers in this action; and Novastar alleges that Anait, Sogomon, Vartan and Deutsche Bank knew or should have known about the Second TDUS and Third TDUS being recorded against the Property, that a bonafide foreclosure sale was held by ReconTrust on August 17, 2012 by which Deutsche Bank foreclosed on its senior lien and foreclosed out all junior liens, and that Capital Securities purchased the Property at the foreclosure sale.

59.     Novastar is informed and believes and thereon alleges that on December 18, 2012, a Grant Deed was executed by Yesayan, as the CEO/Secretary of Capital Securities, purporting to transfer title to the Property to Gevorkian. Yesayan's signature on the Grant Deed was notarized by Le Mere. The Grant Deed was then recorded on January 23, 2013 as Instrument No. 20130109934. Prior to the Grant Deed's recordation, and ostensibly to complete Gevorkian's purchase of the Property from Capital Securities, a Deed of Trust was executed by Gevorkian in favor of La Costa Loans, Inc., a California corporation, as beneficiary, in the amount of $520,000 and the Deed of Trust was recorded on January 23, 2013 as Instrument No. 20130109935.

60.     Novastar is informed and believes and thereon alleges that Deutsche Bank knew or should have known of the recordation of the Third TDUS and the transfer of title to Gevorkian and the new Deed of Trust that were recorded against the Property in January of 2013, yet Deutsche Bank failed to take any steps to correct its version of the Property's record title until months after Novastar made a purchase money loan to Emboyan.

61.     Novastar is informed and believes and thereon alleges that on or about August 12, 2013, a Corporation Assignment of Deed of Trust was recorded as Instrument No. 20131222821, pursuant to which the beneficial interest in the Deutsche Bank Deed of Trust was assigned from BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP back to Deutsche Bank.

62.     Novastar is informed and believes and thereon alleges that unbeknownst to Novastar, on November 12, 2013, Deutsche Bank filed a complaint to quiet title to the Property in Los Angeles County Superior Court, Case No. BC527308 ("**Deutsche Bank Quiet Title Action**"). Novastar is informed and believes and thereon alleges that Deutsche Bank alleged in the Deutsche Bank Quiet

1  Title Action that the Second TDUS and Third TDUS were void, and that Gevorkian was not the lawful
2  owner of the Property.

3       63.    Novastar is informed and believes and thereon alleges that Deutsche Bank did not
4  immediately record a Notice of Lis Pendens when it filed the Deutsche Bank Quiet Title Action. Had
5  it done so, then Novastar would have received actual or constructive notice of Deutsche Bank's claims
6  and Novastar would not have agreed to finance Emboyan's purchase of the Property from Gevorkian.
7  Instead, Deutsche Bank unreasonably delayed and waited **six months** to record a Notice of Lis
8  Pendens on April 3, 2014. By the time the Notice of Lis Pendens was recorded, Novastar had already
9  made the loan to Emboyan, as hereafter described, and Novastar believed it was holding a first lien
10 deed of trust against the Property.

11      64.    The Deutsche Bank Quiet Title Action was litigated for approximately a year, during
12 which time none of the details of the fraud scheme were discovered by Novastar. Then on or about
13 April 6, 2015, the case was dismissed without prejudice.

14                    **THE FINAL FRAUD AND CONSPIRACY**

15      65.    Novastar is informed and believes and thereon alleges that beginning in or around
16 November 2011, cross-defendants Lending West, Capital Securities, Yesayan, Gevorkian, Emboyan,
17 LBC Capital, Lending Bee, Dorfman, Isperov, Tenin, Dadyan, Konstant Closings, Kabilafkas, Simon,
18 Ortiz, Dominique, Frazier, La Mere, Lim, ROES 1-50 and ROES 101 through 150 (hereinafter
19 collectively the "**Fraudsters**"), entered into a conspiracy to "rescue" Anait, Sogomon, and Vartan's
20 Property from the foreclosure proceedings that Deutsche Bank had commenced, and to unlawfully
21 convey, flip, churn and encumber the Property and launder the Property's title for the purpose of
22 delaying the foreclosure process and so as to fraudulently obtain money from innocent lenders who,
23 like Novastar, had no knowledge of the Fraudsters' illegal scheme. Pursuant to the Fraudsters' plan
24 and agreement, the Second and Third TDUS were recorded to give the false impression in the public
25 record that Capital Securities had obtained title to the Property with a cash bid at a foreclosure sale,
26 and thereafter, that it had conveyed title to the Property to Gevorkian, who thereafter conveyed title to
27 Emboyan. Novastar is informed and believes and on that basis alleges that both transfers to Gevorkian
28

-16-

and Emboyan, involved innocent lenders.

66.    Novastar is informed and believes and thereon alleges that the roles of the Fraudsters is, as follows:

(a)    **Lending West** - the first straw buyer who allegedly purchased Property at a foreclosure sale of the Deutsche Bank Deed of Trust

(b)    **Capital Securities (a dba of Yesayan)** – the second straw buyer who allegedly purchased the Property at a foreclosure sale of the Deutsche Bank Deed of Trust

(d)    **Gevorkian** – the third straw buyer who took title to Property from Capital Securities and borrowed purchase monies from La Costa Loans to complete the transaction

(e)    **Emboyan** – the fourth straw buyer who took title to Property from Gevorkian, with whom he shared a residential address, and for which he borrowed purchase monies from Novastar

(f)    **Lending Bee** – the loan broker that submitted the Emboyan Loan Application to Novastar

(g)    **LBC Capital** – an affiliate of Lending Bee

(h)    **Dorfman** – the qualifying broker under whose license Lending Bee operates

(i)    **Isperov** –an employee, agent, servant or affiliate of Lending Bee

(j)    **Tenin** – a Senior Regional Manager of Lending Bee

(k)    **Konstant Closings** – the escrow corporation that handled the Gevorkian–Emboyan transaction in which Novastar supplied the purchase money loan

(l)    **Kabilafkas** – the owner and principal of Konstant Closings

(m)    **Dadyan** – a licensed real estate agent and affiliate of Kabilafkas who is believed to have found the Property in foreclosure in 2011 and worked behind the scenes with Anait, Sogomon and Vartan and the other Fraudsters to carry out all the title transactions alleged herein and obtain the loan from Novastar

(n)    **Simon** – the escrow officer who handled the Konstant Closings escrow involving Novastar, Gevorkian and Emboyan

(o) **Ortiz, Dominique, Frazier, La Mere, Arteaga, Lim** – notary publics who notarized pivotal instruments to transfer the Property's chain of title, commencing with the First TDUS and ending with the Grant Deed from Gevorkian to Emboyan and the Novastar Deed of Trust

67.    Gevorkian's fraudulent purchase of the Property involved a loan from La Costa Loans, Inc., a California corporation, in the amount of $520,000 ("**La Costa Loan**"), which was evidenced by a Deed of Trust recorded against the Property on January 23, 2013 as Instrument No. 20130109935. Gevorkian defaulted under the La Costa Loan and a Notice of Default was recorded on November 5, 2013. That prompted the Fraudsters to transfer the Property's title once again, from Gevorkian to Emboyan, obtaining the Novastar loan in the process, and reaping for the Fraudsters' benefit additional sums of money since the Novastar Loan was greater than the La Costa Loan.

68.    Emboyan's purchase of the Property from Gevorkian involved obtaining yet another loan from an innocent lender; this time, Novastar. Gevorkian transferred the Property to Emboyan pursuant to a Grant Deed that was recorded on December 18, 2013 as Instrument No. 20131778693. The purchase money funds supplied by Novastar were used to pay-off the La Costa Loan. A reconveyance of the La Costa Loan deed of trust was later recorded on April 9, 2014 as Instrument No. 20140358352. Accordingly, when Novastar funded the loan on behalf of Emboyan, Novastar believed it to be bonafide purchase transaction and Novastar was a bonafide encumbrancer for value because Novastar were completely unaware of the Fraudsters' conspiracy, plan and agreement by which title to the Property was laundered through the names of several individuals whose identities, employment, credit, and other information had been falsely created and then supplied by the Fraudsters to Novastar. Also, Novastar had no actual or constructive knowledge or notice that Anait, Sogomon and Vartan were supporting, encouraging, and aiding and abetting the Fraudsters in their conspiracy, which continued to provide Anait, Sogomon and Vartan with more time and delayed a foreclosure under the Deutsche Bank Deed of Trust.

69.    Novastar is informed and believes and thereon alleges that in the next step of the Fraudsters' conspiracy and scheme, Gevorkian transferred title to the Property to Emboyan. In that

-18-

process, the Fraudsters conspired, planned and agreed together to secure a purchase money loan from Novastar in the amount of a $637,500.  Since the filing of the Akopyan Lawsuit, Novastar has discovered and learned for the first time the details of the Fraudsters' complex conspiracy; in part, such discovery coming from Novastar learning that similar transactions took place with respect to title to the Catalina Property, and other properties, in which the identical fraudsters performing or were involved with performing similar transactions.  Consequently, as of late 2016, Novastar has become informed and now believes and thereon alleges that the Fraudsters drafted a loan application for Emboyan that contains false information, false signatures, false documents of identification, or documents containing false or stolen identifying information on Emboyan all of which were used by the Fraudsters to induce Novastar to make the $637,500 loan, and believe that its deed of trust was a first lien on the Property.

70.     Novastar is informed and believes and thereon alleges that as an additional further step in furtherance of the fraud scheme, in or around December of 2013, Isperov, on behalf of LBC Capital and Lending Bee, contacted Novastar and represented to Novastar that he had a loan opportunity for Novastar with the purported borrower Emboyan.  Novastar is informed and believes and thereon alleges that Isperov, on behalf of LBC Capital and Lending Bee, then sent Novastar Emboyan's fraudulent loan application seeking a purchase money loan of $637,500, so that Emboyan could purchase the Property from Gevorkian.

71.     Novastar relied on LBC Capital, Lending Bee, Dorfman, Isperov, Tenin, Dadyan, and ROES 66 through 100 inclusive to provide truthful and accurate information regarding Emboyan's identity, employment, income, cash down payment, and existence as a living person.

72.     Novastar is informed and believes and thereon alleges that in or around December 2013, LBC Capital, Lending Bee, Dorfman, Isperov, Tenin, Dadyan, and ROES 66 through 100, presented false information to Novastar about Emboyan's income, employment, social security number, identification, assets, and down payment.

73.     Novastar is informed and believes and thereon alleges that in or around December 2013, LBC Capital, Lending Bee, Dorfman, Isperov, Tenin, Dadyan, and ROES 66 through 100,

1  falsely represented to Novastar that Emboyan was purchasing the Property from Gevorkian for

2  $850,000 and that if Novastar made the purchase money loan to Emboyan, that Novastar would receive

3  a first priority lien against the Property.

4       74.    Novastar is informed and believes and thereon alleges that in reliance on the aforesaid

5  fraudulent representations, on or about December 5, 2013, Novastar agreed to loan Emboyan $637,500

6  ("**Novastar Loan**") with the understanding that it would be secured by a first lien deed of trust on the

7  Property.

8       75.    Pursuant to the Promissory Note dated December 5, 2013 ("**Note**") that Emboyan

9  signed in favor of Novastar, the principal amount of $637,500 was to be repaid in monthly payments

10  beginning on February 1, 2014, and continuing thereafter for one year, until January 1, 2015, when

11  the Novastar Loan matured and all remaining sums of principal and interest became fully due and

12  payable.

13       76.    The Note was secured by a Deed of Trust allegedly signed by Emboyan, notarized by

14  Lim, and by said instrument Novastar was granted a first lien security interest in the Property

15  ("**Novastar Deed of Trust**").   Novastar is informed and believes and thereon alleges that the on or

16  about December 5, 2013, the Novastar Deed of Trust was recorded as Instrument No. 20131778694.

17       77.    Novastar is informed and believes and thereon alleges that on or about December 5,

18  2013, Gevorkian allegedly executed a Grant Deed before the same notary, Lim, and by that Grant

19  Deed title to the Property was conveyed to Emboyan ("**Emboyan Grant Deed**"). The Emboyan Grant

20  Deed was thereafter recorded as Instrument No. 20131778693.

21       78.    Novastar funded the Loan by wiring $637,500 into an account belonging to Konstant

22  Closing, the escrow servicing company that handled the purchase and sale transaction between

23  Gevorkian and Emboyan ("**Escrow**").

24       79.    Novastar is informed and believes and thereon alleges that Simon held herself out as

25  an escrow officer working for Konstant Closings and who was involved in and worked on the Escrow.

26  Novastar is informed and believes and thereon alleges that pursuant to the parties' written escrow

27  instructions, Simon, as the employee and agent of Konstant Closings, agreed and represented that

28

Emboyan was purchasing the Property from Gevorkian pursuant to a written Residential Purchase Agreement, that title to the Property would be vested in Emboyan, that Novastar would receive a first priority deed of trust against the Property, and that all existing liens would be satisfied prior to recording the Novastar Deed of Trust.

80.     Novastar is informed and believes and thereon alleges that the Final Settlement Statement provided to Novastar by Simon and Konstant Closings stated that $551,035.56 of the sale proceeds was used to pay off the existing first lien mortgage held by La Costa Loans against the Property.  Novastar is informed and believes and thereon alleges that the balance of its funds were paid out and distributed to the Fraudsters and, possibly also, to Anait, Sogomon, and Vartan, for whose benefit the foreclosure avoidance scheme was implemented.

81.     Novastar is informed and believes and thereon alleges that the Fraudsters, including Konstant Closings and Simon, made the above-described misrepresentations to Novastar for the purpose of obtaining the Novastar Loan so that the defaulted La Costa Loan could be paid in full, and allow the Fraudsters to take additional funds for themselves by churning and transferring title to the Property another time.

82.     Novastar is informed and believes and on that basis alleges that the Fraudsters were able to continue carrying out their conspiracy because all this time no action was taken to foreclose on the Deutsche Bank Deed of Trust and, even though the Deutsche Bank Quiet Title Action had been filed, no Lis Pendens was recorded against the Property and so no actual or constructive notice was imparted to Novastar that the action was pending at the time it made the Novastar Loan.

83.     Novastar is informed and believes and thereon alleges that in furtherance of the Fraudsters' scheme that the Fraudsters created and recorded the Second TDUS and Third TDUS that purported to convey the Property to Capital Securities.  Further, Novastar is informed and believes and thereon alleges that Anait, Sogomon and Vartan all benefitted and gained time due to the actions of the Fraudsters because said actions delayed the foreclosure of the Deutsche Bank Deed of Trust and clouded and confused the Property's title to such a degree that Deutsche Bank has delayed foreclosing on the Property.   Novastar is informed and believes and thereon alleges that the Fraudsters' actions

-21-

were known to, consented to, approved and ratified by Anait, Sogomon and Vartan and, therefore, they are co-conspirators or aided and abetted the Fraudsters' scheme.

84.    Novastar is informed and believes and thereon alleges that beginning in April, 2014 and continuing thereafter, Emboyan defaulted on the Note and Novastar Deed of Trust by failing to make his monthly payments.  Emboyan then also failed to pay the Note in full when it came due.

85.    Novastar is informed and believes and thereon alleges that on or about July 7, 2014, real estate agent Dadyan sent Lending Bee an email to which she attached a purported death certificate that indicated Emboyan had died in Armenia.  Thereafter, Dorfman, of Lending Bee, forwarded that same email and death certificate to Novastar.  Subsequently, Tenin of Lending Bee contacted Novastar and told Novastar that he had spoken with members of Emboyan's family and they did not want to lose the Property because Emboyan had paid approximately $200,000 in cash as a down payment on the Property.

86.    Novastar is informed and believes and thereon alleges that the death certificate of Emboyan is fraudulent or altered, such that Emboyan may have died prior to the funding of the Novastar loan but that his identity was used by the Fraudsters; and, Lending Bee's representations regarding Emboyan's death and his family were false because Novastar subsequently discovered that Emboyan's name had been used to obtain at least two additional loans subsequent to his purported death.

87.    Novastar is informed and believe and thereon alleges that the first of these additional loans was made on or about October 18, 2014, as evidenced by a Deed of Trust purportedly executed by Emboyan in favor of Oscar Hernandez evidencing a security interest in the real property described as 12330 Lithuania Drive, (Granada Hills), Los Angeles, California 91344 (the "Lithuania Property"), and purportedly securing a loan in the amount of $11,500.

88.    Novastar is informed and believe and thereon alleges that the second of these loans was made on or about December 12, 2014, as evidenced by a Deed of Trust purportedly executed by Emboyan in favor of plaintiff Sogomon evidencing a security interest in the Lithuania Property, and purportedly securing a loan in the amount of $11,000 (**"Emboyan Deed of Trust"**).

-22-

**TITLE REVERTS TO NOVASTAR**

89.    On or about July 1, 2015, Novastar recorded a Notice of Default and Election to Sell under Deed of Trust against the Property as Instrument No. 20150786667.

90.    On or about October 21, 2015, Novastar published a Notice of Trustee's Sale, scheduling a foreclosure sale for the Property, which was recorded as Instrument No. 20151290180.

91.    Novastar is informed and believes and thereon alleges that on February 29, 2016, S.B.S. Trust Deed Network, as trustee, conducted a trustee's sale of the Property, at which the Property reverted to Novastar upon its credit bid.  Thereafter, a Trustee's Deed Upon Sale was recorded on March 17, 2016 as Instrument No. 20160292135.  A true and correct copy of Novastar's Trustee's Deed Upon Sale is attached hereto as **Exhibit 1**.

92.    Novastar is informed and believes and thereon alleges that the Property is a multi-unit residential property that consists of a duplex and a free standing bungalow.  Following Novastar's acquisition of the Property, Novastar contacted the tenants occupying the Property and demanded that all rent payments be made to Novastar as the new owner of the Property.  Novastar is informed and believes and thereon alleges that the tenants in the Property have failed and refused to pay their rents to Novastar and, instead, they are continuing to pay their rents to Anait and/or the Fraudsters, until the Court orders otherwise.

93.    Novastar is informed and believes and thereon alleges that on March 31, 2016, Deutsche Bank finally recorded a Notice of Rescission of Trustees Deed Upon Sale as Instrument No. 20160357531 purporting to rescind as void, the Second TDUS.

94.    Novastar is informed and believes and thereon alleges that on April 5, 2016, Deutsche Bank finally recorded a Notice of Rescission of Trustee's Deed Upon Sale as Instrument No. 20160375797 purporting to rescind as void the Third TDUS.

95.    Both of Deutsche Bank's Notices of Rescission of Trustee's Deed Upon Sale were grossly untimely, deficient, and served no legitimate purpose other than to try and cove-up and obscure Deutsche Bank's dilatory actions, as described above.

**PLAINTIFFS' PARTICIPATION IN THE FRAUD**

96.     Novastar is informed and believes and thereon alleges that the events alleged herein occurred with the knowledge or consent of Anait, Sogomon, or Vartan.  Novastar is informed and believes and thereon alleges that Anait, Sogomon and Vartan aided and abetted the Fraudsters by knowingly permitting the Property to be transferred as described above, as part of a fraudulent scheme to avoid, delay, or impair the pending foreclosure on the Deutsche Bank Deed of Trust.  Novastar is informed and believes and on that basis alleges that the transfers have allowed the parties to launder title to the Property, take multiple loans out on the Property each time keeping all or some of the loan proceeds for themselves, and to collect rents generated by the Property, all the while allowing Anait, Sogomon and Vartan to "keep" the Property and challenge validity of the various transactions, including the one on which Novastar foreclosed and obtained title to the Property.  Novastar is informed and believes and thereon alleges that Anait, Sogomon, or Vartan's participation in the fraud is further evidenced by, *inter alia*, the deed of trust executed by Emboyan in favor of Plaintiff Sogomon, after Emboyan's purported death.

97.     Novastar is informed and believes and thereon alleges that Anait, Sogomon and Vartan have engaged in a similar scheme with respect to the Catalina Property, pursuant to which they allowed a false Trustee's Deed Upon Sale to be recorded against the Catalina Property, and permitted the Property to be fraudulently conveyed to multiple parties, including cross-defendant Gevorkian.

98.     Novastar is informed and believes and thereon alleges that Anait, Sogomon and Vartan are precluded from enforcing their ownership interest in the Property against Novastar due to, *inter alia*, their involvement in the fraudulent schemes alleged herein.

**FIRST CAUSE OF ACTION**
**Quiet Title Against Anait, Sogomon, Vartan, Deutsche Bank,**
**Countrywide, Apex, Lending West, Capital Securities, Gevorkian, and Emboyan,**
**Unknown Cross-Defendants, and ROES 1 through 50, Inclusive**

97.     Novastar realleges and incorporates herein the allegations in paragraphs 1 through 37, 39 through 50, 56, and 58 through 64, inclusive, as though fully set forth hereat.

98.     Novastar is the owner in fee simple of the Property as of March 17, 2016, free and clear of all liens, encumbrances or adverse claims of title by the Cross-Defendants, and each of them.

-24-

99.     Novastar acquired title to the Property via the Trustee's Deed Upon Sale recorded on March 17, 2016 as Instrument No. 20160292135.  The Trustee's Deed Upon Sale conveys the Property to Novastar following a trustee's sale conducted pursuant to Novastar's Deed of Trust, recorded on December 18, 2013 as Instrument No. 20131778694.  A true and correct copy of the Trustee's Deed Upon Sale is attached hereto as **Exhibit 1.**

100.     Novastar is informed and believes and thereon alleges that cross-defendants Anait, Sogomon, Vartan, Deutsche Bank, Countrywide, Apex, Lending West, Capital Securities, Yesayan, Gevorkian, and Emboyan, and ROES 1 through 50, and each of them, have or continue to claim an interest adverse to Novastar's interest in the Property.

101.     A judicial declaration is necessary and appropriate to clearly establish current ownership of the Property.

102.     Novastar is seeking to quiet title against the claims of the aforesaid cross-defendants as follows: (i) cross-defendants Anait, Sogomon, and Vartan, who Novastar is informed and believes and thereon alleges claim an interest in and to the Property, based on the Grant Deeds dated March 4, 2003 and October 14, 2011; (ii) cross-defendant Deutsche Bank, which Novastar is informed and believes and thereon alleges claims a lien on the Property based on the  Deutsche Bank Deed of Trust; (iii) cross-defendant Countrywide, which Novastar is informed and believes and thereon alleges claims a lien on the Property based on a deed of trust recorded on August 31, 2006 as Instrument No. 061946829, (iv) cross-defendant Apex, which Novastar is informed and believes and thereon alleges claims a lien on the Property based on the Apex Deed of Trust, (v) cross-defendants Lending West, Capital Securities, Gevorkian, and Emboyan to the extent said-cross-defendants assert any right, title, estate, lien, or interest whatsoever in the Property; and (vi) the claims of all unknown cross-defendants, whether or not the claim or cloud is known to Novastar.

103.     Novastar alleges that the aforesaid cross-defendants' claims are without any right, title, estate, lien, or interest whatsoever in the Property.

104.     The cross-defendants named as "all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the Property described in the cross-complaint adverse to cross-

1 | defendant's title, or any cloud on cross-defendant's title thereto" ("**Unknown Cross-Defendants**")

2 | are unknown to Novastar. Novastar is informed and believes and on that basis alleges that the

3 | Unknown Cross-Defendants claim some right, title, estate, lien, or interest in the Property adverse to

4 | Novastar's title, and their claims, and each of them, constitute a cloud on Novastar's title to the

5 | Property.

6 | 105.    Novastar seeks to quiet title its rights, title and interest in the Property as of December

7 | 18, 2013, the date on which it acquired its lien on the Property as evidenced by the Deed of Trust

8 | recorded as Instrument No. 20131778694, and as of March 17, 2016, on which date Novastar

9 | foreclosed on the Novastar Deed of Trust and obtained title to the Property as evidenced by the

10 | Trustee's Deed Upon Sale recorded on March 17, 2016 as Instrument No. 20160292135.

11 | ### SECOND CAUSE OF ACTION
**Fraud – Intentional Misrepresentation**

12 | **Against Anait, Sogomon, Vartan, Lending West, Capital Securities, Yesayan, Gevorkian,**

13 | **Emboyan, LBC Capital, Lending Bee, Dorfman, Isperov, Tenin, Konstant Closings,**
**Kabilafkas, Simon, Dadyan, Ortiz, Dominique, Frazier, Le Mere, Arteaga, Lim,**

14 | **and ROES 51 through 150**

15 | 106.    Novastar realleges and incorporates herein the allegations in paragraphs 1 through 98

16 | above as though fully set forth.

17 | 107.    Novastar is informed and believes and thereon alleges that the Fraudsters and ROES

18 | 51 through 150 intentionally made or caused to be made misrepresentations of fact concerning the real

19 | estate loans, foreclosures and related sales transactions alleged above and that said misrepresentations

20 | were made to Novastar knowing they were false and to induce Novastar to make a loan to Emboyan

21 | so that he could purchase the Property from Gevorkian.

22 | 108.    Novastar is informed and believes and on that basis specifically alleges, that cross-

23 | defendants Gevorkian, Emboyan, Lending Bee, Dorfman, Isperov, Tenin, Dadyan, Konstant Closings,

24 | Simon, Ortiz, Dominique, Frazier, Le Mere, Arteaga, and Lim falsified documents, and concealed and

25 | misrepresented material facts in the Property's chain of title in the public record and directly to

26 | Novastar, including misrepresenting to Novastar in December of 2013, that: (i) Cross-Defendant

27 | Gevorkian was the owner of the Property and held valid title to the Property by reason of the Grant

28 |

1  Deed executed to her by Capital Securities; (ii) that Gevorkian contracted with Emboyan for the sale
2  of the Property to Emboyan; (iii) that Emboyan was a legitimate buyer of the Property who paid a
3  significant down payment for the Property's purchase; (iv) that Novastar's funds would be used to
4  purchase the Property and pay off a first priority deed of trust against the Property that Gevorkian had
5  placed thereon; (v) that Novastar's loan to Emboyan would be secured by a first priority deed of trust
6  against the Property; (vi) that no other deeds of trust or mortgages encumbered the Property; and
7  (vii) that Novastar's funds were used for a lawful purpose.

8       109.  Novastar is informed and believes and thereon alleges that all of the above statements
9  of fact were false when made or when the instruments in the Property's chain of title were recorded,
10  but the cross-defendants intentionally made the misrepresentations knowing they were false at the
11  time, to induce Novastar to make its loan to Emboyan and pay its funds in order to further launder title
12  to the Property and fraudulently convert Novastar's funds to the detriment of Novastar.

13       110.  Novastar is informed and believes and on that basis specifically alleges, that cross-
14  defendants Anait, Sogomon, Vartan, Lending West, Capital Securities, Yesayan, and ROES 1 through
15  110, inclusive, conspired with and entered into an agreement with the Fraudsters to aid and abet the
16  Fraudsters, and to launder title to the Property and unlawfully transfer and encumber the Property.

17       111.  Cross-Complainant is informed and believes and on that basis alleges that cross-
18  defendants Lending West, Capital Securities, Yesayan, and ROES 51 through 150 aided and abetted,
19  and acted in furtherance of, this conspiracy to launder title to the Property and unlawfully transfer and
20  encumber the Property by: (i) unlawfully executing and recording the First TDUS in favor of Lending
21  West; (ii) misrepresenting in the false First TDUS that a trustee's sale of the Property took place on
22  November 2, 2011 and that Lending West lawfully obtained title to the Property via the trustee's sale;
23  (iii) unlawfully executing and recording the Second TDUS in favor of Capital Securities;
24  (iv) misrepresenting in the false First TDUS that a trustee's sale of the Property took place on August
25  17, 2012 and that Capital Securities lawfully obtained title to the Property via the trustee's sale;
26  (v) unlawfully executing and recording the Third TDUS in favor of Capital Securities;
27  (vi) misrepresenting in the false Third TDUS that a trustee's sale of the Property took place on August
28

17, 2012 and that Capital Securities lawfully took title to the Property at the trustee's sale; and (vii) unlawfully executing and recording the Grant Deed to Gevorkian.

112.    Cross-Complainant is informed and believes and on that basis alleges that cross-defendants Anait, Sogomon, and Vartan, and ROES 51 through 150 aided and abetted, and acted in furtherance of, this conspiracy by consenting to and aiding and abetting the Fraud Cross-Defendants and ROES 51 through 150's scheme to launder title to the Property, and to fraudulently transfer and encumber their Property to unlawfully avoid a pending foreclosure sale of the Property, and by executing the Apex Deed of Trust and Emboyan Deed of Trust in furtherance of the conspiracy.

113.    Novastar is informed and believes and thereon alleges that said cross-defendants and ROES 51 through 150 knew that Novastar would review and rely upon these concealments and misrepresentations made in connection with the Loan transaction.

114.    At the time these representations occurred, Novastar was ignorant of the falsity of the misrepresentations and concealments of said cross-defendants and ROES 51 through 150 and Novastar reasonably relied on these representations in providing Novastar's Funds for and participating in the Loan transaction.

115.    As a direct and proximate result of the material misrepresentations, concealments, and the fraud in furtherance of the conspiracy by said cross-defendants and ROES 51 through 150, Novastar has suffered general and compensatory damages in amount according to proof at trial.

116.    The conspiracy, concealment, and intentional misrepresentations by said cross-defendants and ROES 51 through 150 were done with malice, oppression and/or fraud. Thus, Cross-Complainant is entitled to recover exemplary and punitive damages in an amount according to proof.

117.    In the alternative to general and compensatory damages, Novastar is informed and believes and thereon alleges that if Novastar's Funds are not recovered, cross-defendants Gevorkian, Emboyan, Lending Bee, Dorfman, Isperov, Tenin, Dadyan, Konstant Closings, Simon, and ROES 51 through 150 will be unjustly enriched in the sum of at least $637,500.00, and any additional amounts as according to proof at trial.

118.    Cross-Complainant is therefore entitled to recover as restitution from cross-defendants

1  Gevorkian, Emboyan, Lending Bee, Dorfman, Isperov, Tenin, Dadyan, Konstant Closings, Simon,

2  and ROES 51 through 150 the sum of at least $637,500.00, together with prejudgment interest thereon

3  as allowed by law, and any additional amounts as according to proof at trial, so as to prevent these

4  cross-defendants and ROES 51 through 150 from being unjustly enriched through fraud and forgery.

5       119.   Cross-Complainant additionally is entitled to attorney's fees and costs under the tort of

6  another doctrine, as Cross-Complainant was required to file a lawsuit to recover Novastar's Funds

7  because of said cross-defendants' and ROES 51 through 150's tortious conduct.

8  ### THIRD CAUSE OF ACTION

9  **Conversion Against Gevorkian, Emboyan, LBC Capital, Lending Bee, Dorfman, Isperov,**
   **Tenin, Konstant Closings, Kabilafkas, Simon, Dadyan, and ROES 51 through 150**

10

11       120.   Cross-Complainant realleges and incorporates herein the allegations in paragraphs 1

12  through 98 above as though fully set forth.

13       121.   Novastar is informed and believes and on that basis alleges, that the cross-defendants

14  Gevorkian, Emboyan, LBC Capital, Lending Bee, Dorfman, Isperov, Tenin, Konstant Closings,

15  Kabilafkas, Simon, Dadyan, and ROES 51 through 150, inclusive, transferred a part or all of the funds

16  they wrongfully obtained from the funding of the Novastar Loan and that said cross-defendants are

17  now holding the funds they fraudulently obtained from Novastar in other accounts controlled and/or

18  owned by cross-defendants Gevorkian, Emboyan, LBC Capital, Lending Bee, Dorfman, Isperov,

19  Tenin, Konstant Closings, Kabilafkas, Simon, Dadyan, and ROES 51 through 150, inclusive; or, that

20  said funds have been used to acquire real and personal property assets that being held and/or controlled

21  by said cross-defendants.  When Novastar identifies the real and personal property assets said cross-

22  defendants acquired, improved or maintained with the funds Novastar was defrauded into supplying,

23  then Novastar will amend this cross-complaint and seek the imposition of a constructive trust over

24  those assets.

25       122.   Novastar is informed and believes and on that basis alleges, that cross-defendants

26  Gevorkian, Emboyan, LBC Capital, Lending Bee, Dorfman, Isperov, Tenin, Konstant Closings,

27  Kabilafkas, Simon, Dadyan, and ROES 51 through 150 converted Novastar's Funds in the amount of

28  $637,500, in or about December 2013, which sum said cross-defendants were not entitled to receive.

1  Novastar is informed and believes and thereon alleges that Gevorkian, Emboyan, LBC Capital,

2  Lending Bee, Dorfman, Isperov, Tenin, Konstant Closings, Kabilafkas, Simon, Dadyan, and ROES

3  51 through 150 intentionally perpetrated their fraudulent scheme and aided and abetted one another in

4  carrying it out, all in an effort to defraud Novastar. As a result, Novastar has been damaged in an

5  amount to be proven at trial.

6  123. Novastar is informed and believes and on that basis alleges that in doing the acts and

7  things alleged herein and in carrying out their conspiracy and plan to defraud Novastar, that cross-

8  defendants Gevorkian, Emboyan, LBC Capital, Lending Bee, Dorfman, Isperov, Tenin, Konstant

9  Closings, Kabilafkas, Simon, Dadyan, and ROES 51 through 150 were guilty of fraud, oppression and

10 malice and acted in wanton and willful disregard of the rights of Novastar, and by reason thereof,

11 Novastar is entitled to exemplary or punitive damages against said cross-defendants in an amount

12 appropriate to punish or set an example of.

13 124. Novastar is informed and believes and on that basis alleges that cross-defendants

14 Gevorkian, Emboyan, LBC Capital, Lending Bee, Dorfman, Isperov, Tenin, Konstant Closings,

15 Kabilafkas, Simon, Dadyan, and ROES 51 through 150 intended to transfer, convey, distribute,

16 disburse, or otherwise utilize the monies fraudulently obtained by Novastar when it was induced to

17 fund the Novastar Loan into the Bank of America Account of Konstant Closings, which funds were

18 thereafter converted and misappropriated by Gevorkian, Emboyan, LBC Capital, Lending Bee,

19 Dorfman, Isperov, Tenin, Konstant Closings, Kabilafkas, Simon, Dadyan, and ROES 51 through 150

20 inclusive.

21 125. Novastar has no adequate remedy at law to protect itself and it will be irreparably

22 damaged if the cross-defendants are permitted to further transfer, convey, or distribute the

23 misappropriated monies they obtained from Novastar; therefore, Novastar will request a temporary,

24 preliminary, and permanent injunction enjoining any further transfers, conveyances, distributions,

25 payments, or other disbursements of the misappropriated monies that Novastar was fraudulently

26 induced to pay into Konstant Closing' escrow trust account at Bank of America, and which funds

27 cross-defendants Gevorkian, Emboyan, LBC Capital, Lending Bee, Dorfman, Isperov, Tenin,

28

1  Konstant Closings, Kabilafkas, Simon, Dadyan, and ROES 51 through 150 are now holding in other

2  accounts, until this litigation is concluded.

3      126.   In the alternative to general and compensatory damages, Novastar is informed and

4  believes and thereon alleges that if Novastar's Funds are not recovered, then cross-defendants

5  Gevorkian, Emboyan, LBC Capital, Lending Bee, Dorfman, Isperov, Tenin, Konstant Closings,

6  Kabilafkas, Simon, Dadyan, and ROES 51 through 150, inclusive, will be unjustly enriched in the sum

7  of at least $637,500, and any additional amounts according to proof at trial.

8      127.   Novastar is entitled to recover the Novastar Funds from cross-defendants Gevorkian,

9  Emboyan, LBC Capital, Lending Bee, Dorfman, Isperov, Tenin, Konstant Closings, Kabilafkas,

10  Simon, Dadyan, and ROES 51 through 150, inclusive, in a sum of at least $637,500, together with

11  prejudgment interest at the maximum rate allowed by law, plus any additional amounts as Novastar

12  proves at trial, so as to prevent said cross-defendants from being unjustly enriched by their fraud.

13      128.   Novastar additionally is entitled to its attorney's fees and costs under the tort of another

14  doctrine, as it was required to file this lawsuit to recover the Novastar Funds because of said cross-

15  defendants' tortious conduct.

16                    **FOURTH CAUSE OF ACTION**

17        **Breach of Escrow Contract Against Gevorkian, Emboyan, Konstant Closings**

18                    **and ROES 51 through 65 Inclusive**

19      129.   Novastar realleges and incorporates herein the allegations in paragraphs 1 through 98

20  above as though fully set forth.

21      130.   Novastar is informed and believes and thereon alleges that on or about December 5,

22  2013, Novastar entered into a written escrow contract between Gevorkian as seller, Emboyan as buyer,

23  and Konstant Closings as the escrow ("**Escrow Instructions**"). A true and correct copy of the Buyers'

24  set of the Escrow Instructions is attached hereto, marked as **Exhibit 2**. Novastar is informed and

25  believes and on that basis alleges that ROES 51 through 65 inclusive are affiliated parties, servants,

26  agents and employees who obligated themselves to execute and perform the Escrow Instructions.

27      131.   Novastar is informed and believes and thereon alleges that pursuant to the written

28

-31-

Escrow Instructions, Konstant Closings and ROES 51 through 65 agreed and represented that Emboyan was purchasing the Property from Gevorkian pursuant to a residential purchase agreement, that title to the Property would be vested in Emboyan, that Novastar would be provided with a copy of Emboyan's driver's license, that Novastar would receive a first priority deed of trust against the Property to secure the new loan Novastar was making to Emboyan to complete his purchase, and that all existing liens would be satisfied prior to the recording of the Emboyan Grant Deed and the Novastar Deed of Trust.

132.    Novastar is informed and believes and thereon alleges that cross-defendant Konstant Closings and ROES 51 through 65 breached the Escrow Instructions by, *inter alia*, failing to provide Novastar with a copy of Emboyan's driver's license, failing to provide Novastar a first priority deed of trust against the Property, and failing to satisfy all existing liens against the Property prior to recording the Emboyan Grant Deed and Novastar Deed of Trust.

133.    With the exception of such terms and conditions as may have been excused, Novastar performed each and every covenant and condition on its part to be performed under the Escrow Instructions.

134.    Novastar is informed and believes and thereon alleges that pursuant to paragraph 21 of the Additional Escrow and Instruction Provisions of the Escrow Instructions, Novastar is entitled to recover, jointly and severally, from Gevorkian, Emboyan, Konstant Closings, and ROES 51 through 65 inclusive, all legal fees, litigation costs, damages, judgments, attorneys' fees, arbitration costs and fees, expenses, obligations, and liabilities of every kind which Novastar has in good faith incurred or suffered in connection with or arising out of the escrow and, further, that Novastar was granted a lien upon all rights, titles and interests the parties had in the Property and in the Novastar Funds that were supplied by Novastar pursuant to said Escrow Instructions. By this Cross-Complaint Novastar hereby makes demand to be fully indemnified and held harmless from all of the aforesaid damages, costs, fees, expenses, obligations and liabilities arising out of or related to said cross-defendants' breach of the Escrow Instructions.

135.    Novastar has sustained actual damages as a proximate result of the breaches of the

1   Escrow Instruction, as alleged herein, plus prejudgment interest, expenses, attorneys' fees, and costs.

2                                **FIFTH CAUSE OF ACTION**

3                      **Escrow Negligence Against Konstant Closings,**

4                  **Kabilafkas, Simon, and ROES 51 through 65 Inclusive)**

5          136.   Novastar realleges and incorporates herein the allegations in paragraphs 1 through 98

6   above as though fully set forth.

7          137.   Novastar is informed and believes and thereon alleges that at all relevant times alleged

8   herein, Konstant Closings, Kabilafkas, and Simon, and their agents, assumed and owed a professional

9   duty of care to Novastar and were required to use the same degree of reasonable care, skill and

10  diligence in acting as an escrow holder for Novastar, as other similarly situated, licensed, escrow

11  agents in Southern California.

12         138.   At all relevant times alleged herein, Konstant Closings, Kabilafkas, Simon, and ROES

13  51 through 65, inclusive, were bound by the standards of care with respect to the Novastar Loan

14  transaction described in the Escrow Instructions, Note and Novastar Deed of Trust, and said cross-

15  defendants owed a duty to Novastar to use reasonable care and skill with respect to the handling of the

16  escrow for Emboyan's purchase of the Property from Gevorkian.

17         139.   Novastar is informed and believes and thereon alleges that Konstant Closings,

18  Kabilafkas, Simon, and ROES 51 through 65, negligently breached the professional duties they owed

19  to Novastar, thereby proximately causing Novastar to sustain compensatory and consequential

20  damages in an amount according to proof at trial.

21                                **SIXTH CAUSE OF ACTION**

22                    **Breach of Fiduciary Duty Against Konstant Closings,**

23                 **Kabilafkas, Simon, and ROES 51 through 65 Inclusive**

24         140.   Cross-Complainant realleges and incorporates herein the allegations in paragraphs 98

25  through 98 above as though fully set forth.

26         141.   At all times herein alleged, Konstant Closings, Kabilafkas, Simon, and ROES 51

27  through 65, inclusive, held a position of trust and confidence with respect to Novastar, out of which

28

said cross-defendants owed Novastar a fiduciary duty to exercise the utmost loyalty and good faith towards Novastar at all times and to place Novastar's interests ahead of said cross-defendants' interests, and to deal with Novastar with the utmost truthfulness and transparency.

142.   Konstant Closings, Kabilafkas, Simon, and ROES 51 through 65 inclusive breached their fiduciary duty to Novastar by failing to notify Novastar that cross-defendants never received a photo ID for Emboyan, that many of the escrow documents showed red flags that brought Emboyan's identity or existence into question, by failing to alert Novastar that the chain of title transactions by which Gevorkian obtained title to the Property were questionable and possibly falsified, by failing to alert Novastar that Emboyan had not placed all of his funds into escrow, and failing to communicate to Novastar all of the material facts and information that was known to said cross-defendants that related to the escrow, the Property, Gevorkian and Emboyan.

143.   As a result of the cross-defendants' aforesaid breach of their fiduciary duty, Novastar has been damaged in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### Breach of Written Contract Against Lending Bee, Dorfman, LBC Capital, Isperov, Tenin, and ROES 66 through 100 Inclusive

144.   Novastar realleges and incorporates herein the allegations in paragraphs 1 through 98 above as though fully set forth.

145.   In early December, 2013, Novastar, as the lender, accepted a written Uniform Residential Loan Application ("**Loan Application**") that was supplied to it by Lending Bee and Dorfman, as the originating brokers, for purposes of Novastar underwriting, approving and funding of a purchase money Novastar Loan to Emboyan.  A true and correct copy (redacted in part) of the Loan Application is attached hereto, marked as **Exhibit 3**.

146.   Novastar, is informed and believes and on that basis alleges that Lending Bee and Dorman were assisted in performing their duties under the Loan Application, including completing the Loan Application with data about Emboyan, his employment, assets, and liabilities, by LBC Capital, Isperov, Tenin, and ROES 66 through 100, inclusive.

-34-

147.   In every contract, including the Loan Application, there is an implied covenant of good faith and fair dealing which precludes any party to a contract from taking any action which would deprive the other party of the benefit of its bargain.

148.   Pursuant to the express terms of the Loan Application that Lending Bee and Dorfman submitted to Novastar, said cross-defendants represented that the information provided in the Loan Application was true and correct and they acknowledged that if said information was intentionally or negligently misrepresented that they could have civil liability, including monetary damages, to Novastar.  Furthermore, Lending Bee and Dorfman acknowledged in the Loan Application that Novastar would rely on the information contained in the Loan Application, which was being submitted for the purpose of obtaining the Novastar Loan.

149.   Novastar is informed and believes and thereon alleges that cross-defendants Lending Bee, Dorfman, and their agents, servants, employees and affiliated cross-defendants, LBC Capital, Isperov, Tenin, and ROES 66 through 100 inclusive breached the implied covenant of good faith and fair dealing that was part of the Loan Application, as well as the Loan Application's express terms, creating and/or providing Novastar with a falsified Loan Application and related documents, failing to alert Novastar to red flags in the Loan Application and related documents, and referring to Novastar a Loan Application that was part of a fraudulent scheme to launder title to the Property to confuse record title and buy for the Akopyan parties more time on their defaulted Deutsche Bank loan. Additionally, said cross-defendants did not disclose to Novastar that the alleged seller, Gevorkian, used the same home address as did Emboyan (12330 Lithuania Drive, Granada Hills, California); and, that Lending Bee and Dorfman had never obtained proof of deposits that Emboyan claimed he was holding in an unidentified checking/savings account.

150.   Novastar is informed and believes and thereon alleges that by their conduct, cross-defendants Lending Bee, Dorfman, LBC Capital, Isperov, Tenin, and ROES 66 through 100 inclusive have unfairly frustrated the agreed common purpose of the Loan Application contract and have interfered with Novastar's expectation of financial benefit from making what it believed was a legitimate loan to Emboyan.

-35-

151.    With the exception of such terms and conditions as may have been excused, Novastar has performed each and every covenant and condition on its part to be performed under the Loan Application contract because it underwrote, approved and funded the Novastar Loan to Emboyan and accepted the Novastar Deed of Trust on the Property as security.

152.    As a direct and proximate result of the aforesaid breach of the Loan Application contract, Novastar has sustained actual damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### Broker Negligence Against Lending Bee, LBC Capital,

### Dorfman, Isperov, Tenin, and ROES 66 through 100 Inclusive

153.    Novastar realleges and incorporates herein the allegations in paragraphs 1 through 98 above as though fully set forth.

154.    Novastar is informed and believes and thereon alleges that at all relevant times alleged herein, Lending Bee, LBC Capital, Dorfman, Isperov, Tenin, and ROES 66 through 100, inclusive, and their agents, servants, employees and affiliates, assumed and owed a professional duty of care to Novastar and were required to use the same degree of reasonable care, skill and diligence in acting as a loan broker for Novastar, as other similarly situated, licensed, loan brokers in Southern California.

155.    Novastar is informed and believes and thereon alleges that at all relevant times alleged herein, Lending Bee, LBC Capital, Dorfman, Isperov, Tenin, and ROES 66 through 100, inclusive, were bound by the standards of care with respect to the above-described Loan transaction with Novastar and owed a duty to Novastar to use reasonable care and skill with respect to the handling of the Loan.

156.    Novastar is informed and believes and thereon alleges that Lending Bee, LBC Capital, Dorfman, Isperov, Tenin, and ROES 66 through 100, inclusive, breached the duty of care that they owed to Novastar and as a proximate result, Novastar was induced to underwrite, approve and fund the Loan to Emboyan and accept the Novastar Deed of Trust on the Property, completely unaware that the Property's chain of title had been tainted by the fraud scheme hereinabove alleged.

157.    As a direct and proximate result of the negligence of Lending Bee, LBC Capital,

-36-

1    Dorfman, Isperov, Tenin, and ROES 66 through 100, inclusive, Novastar has suffered general and

2    compensatory damages in amount according to proof at trial.

3                                    **NINTH CAUSE OF ACTION**

4            **Breach of Fiduciary Duty Against Lending Bee, LBC Capital, Dorfman,**

5                    **Isperov, Tenin, and ROES 66 through 100 Inclusive**

6            158.    Novastar realleges and incorporates herein the allegations in paragraphs 1 through 98

7    above as though fully set forth.

8            159.    Novastar is informed and believes and thereon alleges that at Lending Bee, LBC

9    Capital, Dorfman, Isperov, Tenin, and ROES 66 through 100 inclusive held a position of trust and

10   confidence with respect to Novastar, and thereby owed Novastar a fiduciary duty.

11           160.    Novastar is informed and believes and thereon alleges that as such Lending Bee, LBC

12   Capital, Dorfman, Isperov, Tenin, and ROES 66 through 100 inclusive owed Novastar a duty to

13   exercise the utmost loyalty and good faith towards Novastar at all times in connection with the

14   Novastar Loan.

15           161.    Novastar is informed and believes and thereon alleges that Lending Bee, LBC Capital,

16   Dorfman, Isperov, Tenin, and ROES 66 through 100 inclusive breached that duty by failing to abide

17   by the duty of loyalty and good faith by, among other things, failing to notify Novastar that many of

18   the documents in the Property's chain of record title showed red flags; by failing to alert Novastar that

19   the Loan transaction with Emboyan was falsified and his employment, identity, and assets may be

20   misrepresented; by failing to alert Novastar that Emboyan had not placed funds into escrow for the

21   transaction; that they had not confirmed the source and presence of the $200,000+ funds that Emboyan

22   was allegedly putting towards the transaction; by allowing Novastar's funds to be wired into the

23   escrow trust account at Bank of America knowing the Loan may be falsified; and, by failing to

24   communicate material facts and information that was known to said cross-defendants and that

25   concerned the Novastar Loan.

26           162.    As a result of the aforesaid breach of fiduciary duty, Novastar has been damaged in an

27   amount to be proven at trial.

28

## TENTH CAUSE OF ACTION

**Notary Negligence Against Ortiz, Dominique, Frazier, Le Mere, Arteaga,**

**Lim, and ROES 101 through 125 Inclusive**

163.    Novastar realleges and incorporates herein the allegations in paragraphs 1 through 98 above as though fully set forth.

164.    Novastar is informed and believes and thereon alleges that Ortiz, Dominique, Frazier, Le Mere, Arteaga, Lim and ROES 101 through 125 inclusive ("**Notary Cross-Defendants**") were, or held themselves out to be, duly commissioned, qualified and acting notary publics in the State of California whose commissions were in full force and effect at the times they acknowledged the First TDUS, the Second TDUS, the Third TDUS, the Grant Deed to Gevorkian, the Novastar Deed of Trust, and the Grant Deed to Emboyan ("**Fraudulent Instruments**").

165.    Novastar is informed and believes and thereon alleges that as California notary publics, the Notary Cross-Defendants were required to perform their respective notary duties subject to California statutes and regulations. As a notary public, each of the Notary Cross-Defendants owed a duty of due care to the public and to Novastar to carry out their duties with due care.

166.    Novastar is informed and believes and thereon alleges that in acknowledging the signatures on the Fraudulent Instruments, the Notary Cross-Defendants enabled the instruments to be recorded so as to perpetrate the fraudulent title laundering scheme and foreclosure avoidance scheme that is described above.  Specifically, the Notary Cross-Defendants acknowledged forged or false documents and actively furthered, aided and abetted the fraud and other wrongdoings of other cross-defendants as alleged above.  The performance of the Notary Cross-Defendants fell below the applicable standard of care and constituted breaches of the notary public's statutory or regulatory duties of care that are owed to the public and to Novastar specifically.

167.    Novastar is further informed and believes and on that basis alleges that the Notary Cross-Defendants violated their respective duties to the public and to Novastar by failing to use their skill, experience, and training to obtain lawful proof of identity including authority to sign on behalf of a corporate entity; and failed to recognize the information, evidence, and other circumstances

relating to the Fraudulent Instruments which would have put a prudent notary public who was acting up to the standard of care in the industry, on notice that persons executing the above-described documents were not the individuals they claimed to be, that the purported foreclosing trustees and lenders did not actually or apparently authorize a trustee's sale, and that the aforementioned Fraudulent Instruments were either an outright forgery or contained false statements, misrepresentations of title, misrepresentation of authority, false statements of identity, and other material misrepresentations.

168.    Novastar is further informed and believes and on that basis alleges the Notary Cross-Defendants respective acts and/or omissions constituted negligence that was the direct and proximate cause of Novastar's damages, as alleged herein.   But for the Notary Cross-Defendants' negligence, the Fraudulent Instruments could not have been recorded and the Property's chain of title would not have been impaired, to Novastar's resulting damage and detriment.

169.    Novastar is entitled to an award of damages against that Notary Cross-Defendants in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Novastar prays for judgment against the Cross-Defendants and each of them, as follows:

## FIRST CAUSE OF ACTION

1.    For a judgment of the Court quieting title to the Property in favor of Novastar as of December 18, 2013, the date on which it acquired its lien on the Property as evidenced by the Deed of Trust recorded as Instrument No. 20131778694, and as of March 17, 2016, on which date Novastar foreclosed on the Novastar Deed of Trust and obtained title to the Property as evidenced by the Trustee's Deed Upon Sale recorded on March 17, 2016 as Instrument No. 20160292135; that Novastar holds valid title to the Property as of March 17, 2016; and that cross-defendants have no interest in the Property adverse to NOVASTAR;

2.    For such other and further relief as this Court may deem just and proper;

## SECOND CAUSE OF ACTION

1. For damages in an amount of at least $637,500.00 and any further amounts to be determined at trial;

2. For prejudgment interest thereon;

3. For attorney's fees and costs under the Tort of Another Doctrine;

4. For exemplary and punitive damages;

5. For a constructive trust over all real and personal property assets said cross-defendants acquired, improved or maintained with the funds Novastar was defrauded into supplying;

6. For such other and further relief as this Court may deem just and proper, including but not limited to, restitution in the amount of at least $637,500.00 and any additional amounts as according to proof at trial;

## THIRD CAUSE OF ACTION

1. For damages in an amount of at least $637,500.00 and any further amounts to be determined at trial;

2. For prejudgment interest thereon;

3. For attorney's fees and costs under the Tort of Another Doctrine;

4. For exemplary and punitive damages;

5. For attorneys' fees, as permitted by law;

6. For costs of suit;

7. For such other and further relief as this Court may deem just and proper, including but not limited to, restitution in the amount of at least $637,500.00 and any additional amounts as according to proof at trial;

## FOURTH CAUSE OF ACTION

1. For damages in an amount to be proven at trial;

2. For prejudgment interest thereon;

3. For attorneys' fees, as permitted by law;

4.   For costs of suit;

5.   For such other and further relief as this Court may deem just and proper;

### FIFTH CAUSE OF ACTION

1.   For general, compensatory, and consequential damages in an amount to be proven at trial;

2.   For prejudgment interest thereon;

3.   For such other and further relief as this Court may deem just and proper;

### SIXTH CAUSE OF ACTION

1.   For general, compensatory, and consequential damages in an amount to be proven at trial;

1.   For prejudgment interest thereon;

2.   For such other and further relief as this Court may deem just and proper;

### SEVENTH CAUSE OF ACTION

1.   For damages in an amount to be proven at trial;

2.   For prejudgment interest thereon;

3.   For attorneys' fees, as permitted by law;

4.   For costs of suit; and

5.   For such other and further relief as this Court may deem just and proper;

### EIGHTH CAUSE OF ACTION

1.   For general, compensatory, and consequential damages in an amount to be proven at trial;

2.   For prejudgment interest thereon;

3.   For such other and further relief as this Court may deem just and proper;

### NINTH CAUSE OF ACTION

1.   For general, compensatory, and consequential damages in an amount to be proven at trial;

2.   For prejudgment interest thereon;

-41-

CROSS-COMPLAINT OF NOVASTAR, LLC

3.   For such other and further relief as this Court may deem just and proper;

### TENTH CAUSE OF ACTION

1.   For general, compensatory, and consequential damages in an amount to be proven at
     trial;

2.   For prejudgment interest thereon;

3.   For such other and further relief as this Court may deem just and proper;


Dated:  March **30**, 2017                         HERSHORIN & HENRY, LLP


                                                   By:
                                                       LORI C. HERSHORIN
                                                       JEAN C. WILCOX
                                                       CLAUDIA MOURAD
                                                       Attorneys for Defendant/Cross-Defendant/
                                                       Cross-Complainant, NOVASTAR, LLC, a
                                                       Delaware limited liability company

-42-

## VERIFICATION

I, FELIX PHILIP LANDAU, am the Account Manager of Cross-Complainant NOVASTAR, LLC, a Delaware limited liability company.

I have read the First Cause of Action for Quiet Title in the foregoing cross-complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters that are therein alleged on information and belief, and as to those matters, I believe same to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 16 day of March, 2017 in Los Angeles, California.

FELIX PHILIP LANDAU
Account Manager
Novastar, LLC, a Delaware limited liability company

-1-

VERIFICATION

This page is part of your document - DO NOT DISCARD

## 2016 0292135

 

Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

03/17/16 AT 08:00AM

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



LEADSHEET

201603170170034

00011838104

007438105

SEQ:
06

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

T09

Exhibit 1
Pg. 1 of 3

RECORDING REQUESTED BY:

WFG National-Default Services

AND WHEN RECORDED TO:
NOVASTAR, LLC
1976 S La Cienga Blvd., #257
Los Angeles CA 90084

Forward Tax Statements to
the address given above

SPACE ABOVE LINE FOR RECORDER'S USE

APN: 5590-026-007        TS #: 2015-1831                    Order #: 150017133

## TRUSTEE'S DEED UPON SALE

. A.P.N.: 5590-026-007                              Transfer Tax: $0.00
"THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE, SECTION 480.3"
The Grantee Herein was the foreclosure Beneficiary
The Amount of The Unpaid Debt was $929,867.13
The Amount Paid By The Grantee Was $909,977.25
Said Property is In The City of Los Angeles, County of Los Angeles

S.B.S. TRUST DEED NETWORK, A CALIFORNIA CORPORATION, as Trustee, (whereas so designated in the Deed of
Trust hereunder more particularly described or as duly appointed Trustee) does hereby GRANT and CONVEY to

## NOVASTAR, LLC

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now
held by it as Trustee under the Deed of Trust in and to the property situated in the county of Los Angeles, State of California,
described as follows:

LOT 7 IN BLOCK C OF EDGEMONT TERRACE, IN THE CITY OF LOS ANGELES, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 3, PAGE 90 OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by KARAPET
EMBOYAN, A SINGLE MAN as Trustor, dated 12/5/2013 of the Official Records in the office of the Recorder of Los
Angeles, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly
appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under
the Deed of Trust recorded on 12/18/2013, instrument number 20131778694, Book XX, Page XX of Official records.  Trustee
having complied with all applicable statutory requirements of the State of California and performed all duties required by the
Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale
at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance
with California Civil Code 2924b.

**Exhibit** 1
**Pg.** 2 **of** 3

1 of 2
S.B.S. is a debt collector attempting to collect a debt and any information will be used for that purpose.

3

# TRUSTEE'S DEED UPON SALE

TS #: 2015-1831
Order #: 150017133

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on 2/29/2016. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being $909,977.25, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, S.B.S. TRUST DEED NETWORK, A CALIFORNIA CORPORATION, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

Dated: 3/2/2016                                S.B.S. TRUST DEED NETWORK, A CALIFORNIA CORPORATION

By: _____
Cindy Sandoval, Trustee Sale Officer

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

STATE OF California
COUNTY OF Los Angeles

On 3/2/2016 _____ before me, Y. Blane, Notary Public, Personally appeared, Cindy Sandoval who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Y. Blane,
Comm #2002833
Expires Jan 3, 2017

Y. BLANE
Commission # 2002833
Notary Public - California
Los Angeles County
My Comm. Expires Jan 3, 2017

**Exhibit** 1
**Pg 3 of 3**

2 of 2
S.B.S. is a debt collector attempting to collect a debt and any information will be used for that purpose.

FROM: LENDING BEE, INC
6350 LAUREL CANYON BLVD., STE 340
NORTH HOLLYWOOD, CALIFORNIA 91606
Phone: (818) 761-7234
Fax: (866) 493-0040

TO: KONSTANT CLOSINGS
(818) 941-9822

ATTN: ANGELA SIMON

RE: Borrower(s): KARAPET EMBOYAN

Property Address: 4628 KINGSWELL AVE.
LOS ANGELES, CALIFORNIA 90027

Document Date: DECEMBER 5, 2013

Closing Date: DECEMBER 18, 2013

Disbursement: DECEMBER 18, 2013

Case No.:

Loan No.: 1410

App. No.:

Order No.: 6119470-JV

Escrow No.: 11070

*I Certify this a true copy of the original*

## GENERAL CLOSING INSTRUCTIONS

Do not close or fund this loan unless ALL conditions in these closing instructions and any supplemental closing instructions have been satisfied. The total consideration in this transaction except for our loan proceeds and approved secondary financing must pass to you in the form of cash. Do not close or fund this loan if you have knowledge of a concurrent or subsequent transaction which would transfer the subject property.

You must follow these instructions exactly. These closing instructions can only be modified with our advance written approval. You shall be deemed to have accepted and to be bound by these closing instructions if you fail to notify us in writing to the contrary within 48 hours of your receipt hereof or if you disburse any funds to or for the account of the Borrower(s).

All documents with the exception of those to be recorded (Security Instrument, Riders, Corporation Assignment(s), Grant Deed, Quit Claim, Power of Attorney, etc.) must be returned to our office within 48 HOURS of the signing. Please return certified copies of those documents that are to be recorded. Failure to comply with these instructions may delay funding.

### EXECUTION OF DOCUMENTS:

1. Each Borrower must sign all documents exactly as his or her name appears on the blank line provided for his or her signature. All signatures must be witnessed if required or customary. All signature acknowledgements must be executed by a person authorized to take acknowledgements in the state of closing.

2. Any correction to loan documents must be approved in writing by us in advance. No white-out permitted. Approved deletion should be made by marking a single line through the language being deleted. All additions and deletions must be initialed by all borrowers.

3. All Powers of Attorney must be provided to and approved by us in advance. If approved, the Power of Attorney must be recorded in the same county(ies) in which the Security Instrument is recorded, a certified copy provided to us.

### RESCISSION:

1. If the transaction is subject to rescission, provide each Borrower and each person having any ownership interest in the security property with two (2) copies of the completed Notice of Right to Cancel. The Notice of Right to Cancel must be properly completed (including all dates) and each borrower and person given two notices must execute an acknowledgement of receipt. Your failure to properly complete and provide the Notices of Right to Cancel to each person entitled to receive them will delay this closing.

2. No Borrower or other person having an ownership interest in the Security Property may modify or waive his or her right to rescind without our prior written consent.

3. If any Borrower or other person having an ownership interest in the security property indicates that he or she wishes to cancel this transaction, contact us immediately for further instructions.

### SURVEYS:

1. A valid survey dated within 90 days of closing is required in areas where surveys are customary.

2. The survey must contain all relevant and customary information and certifications and the legal description, lot size and street must agree with the appraisal and closing documents.

### HAZARD INSURANCE:

1. The Borrower(s) must provide satisfactory evidence of hazard insurance coverage and flood insurance coverage if the Property is located in a special flood hazard area.

2. Dwelling coverage must be equal to the lesser of the loan amount or the full replacement value of the property improvements, and must extend for either a term of at least one (1) year after the closing date for purchase transactions or six (6) months after the closing date for refinance transactions.

3. Loss payee/mortgagee clause to read: NOVASTAR, LLC.
16192 COASTAL HIGHWAY
LEWES, DELAWARE 19958
Loan Number: 1410

ACKNOWLEDGED AND AGREED:

Settlement Agent
ANGELA SIMON

GENERAL CLOSING INSTRUCTIONS
04/28/06

DocMagic eFreemie
www.docmagic.com

**Exhibit** 2

**Pg.** / of 10

FROM: LENDING BEE, INC
6350 LAUREL CANYON BLVD., STE 340
NORTH HOLLYWOOD, CALIFORNIA 91606
Phone: (818)761-7234
Fax: (866)491-0040

TO: KONSTANT CLOSINGS
(818)941-9822

ATTN: ANGELA SIMON

RE: Borrower(s): KARAPET EMBOYAN

Property Address: 4628 KINGSWELL AVE.
LOS ANGELES, CALIFORNIA 90027

Document Date: DECEMBER 5, 2013
Closing Date: DECEMBER 18, 2013
Disbursement: DECEMBER 18, 2013

Case No.:
Loan No.: 1410
App. No.:
Order No.: 6119470-JV
Escrow No.: 11070

## . SPECIFIC CLOSING INSTRUCTIONS

**LOAN DOCUMENTS:**

We enclose the following documents necessary to complete the above referenced loan transaction:

(X) Note
(X) Deed of Trust
(X) Balloon Payment Rider
(X) 1 - 4 Family Rider
(X) Interest Only Payment Period
Addendum to Note
(X) Itemization of amt. fin.
(X) Payment Letter

(X) Hazard Ins. Req.
(X) Balloon Disclosure
(X) Settlement Statement Cert.
(X) Worksheets
(X) Loan Application
(X) Patriot Act
(X) Borrowers Cert.
(X) 4506T

(X) Truth-in-Lending
(X) Affidavit and Agrmnt.
(X) Fair Lending Notice

Deliver one (1) copy of all loan documents to the Borrower(s); deliver one (1) copy of the Federal Truth-In-Lending Disclosure Statement to each Borrower.

**LOAN TERMS:**

Loan Amount: 637,500.00
Initial Advance:
Sales Price: 850,000.00
Term (Months): 12
Interest Rate: 12.000
Initial Payment 6,375.00
First Payment Date: 02/01/14
Last Payment Date: 01/01/15

ARM Loan: ( ) Yes  (X) No
Index:
Margin:
Periodic Rate Cap:
Lifetime Rate Cap:
Lifetime Rate Floor:
Interest Change Date:
Payment Change Date:
Loan Purpose: PURCHASE

**PAYOFF REQUIREMENTS:**

It is a condition to the funding of this loan that the following payoffs be made through this closing. Indicate payoffs on the HUD-1 Settlement Statement or provide other satisfactory evidence of payoff.

**CONDITIONS TO BE SATISFIED PRIOR TO DISBURSEMENT OF LOAN PROCEEDS:**
1. LOAN TO RECORD IN FIRST LIEN POSITION
2. EVIDENCE ALL LIENS, JUDGEMENTS OR CLOUDS ON TITLE SATISFIED PRIOR TO RECORDING
3. PROVIDE COPY OF BORROWER'S DRIVER LICENSE

**SEE ATTACHED ADDENDUM TO CLOSING INSTRUCTIONS**

WE ARE TO BE AT NO EXPENSE IN THIS TRANSACTION

**TITLE INSURANCE REQUIREMENTS:**

You are authorized to use funds for the account of the Borrowers and to record all instruments when you comply with the following:

1. THIS LOAN MUST RECORD IN 1ST LIEN POSITION ON OR PRIOR TO THE DISBURSEMENT DATE NOTED ABOVE. PROVIDE DUPLICATE ORIGINALS OF THE ALTA TITLE POLICY.

2. Vesting to read: KARAPET EMBOYAN, A SINGLE MAN

3. Title Policy must contain the following endorsements (or their equivalents):

4. ALTA Title Policy must be free from liens, encumbrances, easements, encroachments and other title matters except (i) the lien of our loan in the amount of our loan on the property described herein showing the Instrument or Document Number and the date of recording of the Security Instrument; (ii) general, specific, state, county, city, school or other taxes and assessments not yet due or payable: ALL TAXES TO BE PAID CURRENT

(iii) other items as permitted by us; and (iv) the following items as shown on the preliminary title report, commitment, binder or equivalent dated NOVEMBER 5, 2013: 2-4

**SECONDARY FINANCING:**

Secondary financing in the amount of $ NONE                    has been approved.

SPECIFIC CLOSING INSTRUCTIONS
SCLMSC 10/08/10                    Page 1 of 2                    DocMagic eTranms
www.docmagic.com


Exhibit 2
Pg. 2 of 10

**ESTIMATE OF FEES AND COSTS:**

| AMOUNT | PAID BY |
|---|---|
| LOAN ORIGINATION FEE to: LENDING BEE, INC.   $19,125.00 | Borrower |
| PROCESSING FEE to: LENDING BEE, INC.   $999.00 | Borrower |
| LOAN SET-UP FEE to: FCI LENDER SERVICES, INC.   $45.00 | Borrower |
| CREDIT REPORT to: LENDING BEE, INC.   $30.00 | Borrower |
| LENDER'S TITLE INSURANCE to: WFG TITLE   $560.00 | Borrower |
| DOCUMENT FEE to: LENDING BEE, INC.   $250.00 | Borrower |
| WIRE FEE to: KONSTANT CLOSINGS   $75.00 | Borrower |
| PROCESSING FEE to: KONSTANT CLOSINGS   $260.00 | Borrower |
| TITLE ENDORSEMENT FEE to: WFG TITLE   $225.00 | Borrower |
| WIRE FEE to: WFG TITLE   $50.00 | Borrower |

Subtotal of Estimated Fees and Costs: $   21,609.00

**PER DIEM INTEREST:**

From: 12/18/13    To: 01/01/14
(Anticipated Closing Date)

___14___ days at $____212.5000____ per day    Subtotal of Per Diem Interest:   $   2,975.00

**IMPOUNDS/ESCROWS:**

Impound/escrow checks should be made payable to and sent to us together with the original final HUD-1 Settlement Statement.

| | | | |
|---|---|---|---|
| _____ | _____ month(s) at $_____ | per month = | $_____ |
| _____ | _____ month(s) at $_____ | per month = | $_____ |
| _____ | _____ month(s) at $_____ | per month = | $_____ |
| _____ | _____ month(s) at $_____ | per month = | $_____ |
| _____ | _____ month(s) at $_____ | per month = | $_____ |
| _____ | _____ month(s) at $_____ | per month = | $_____ |

Aggregate Escrow Adjustment:   $   0.00

Impound Subtotal:   $   0.00
Mortgage Ins. Premium:   $_____
**TOTAL OF FEES AND COSTS:**   $   24,584.00

**HUD-1 SETTLEMENT STATEMENT:**

The final HUD-1 Settlement Statement must be completed at settlement and must accurately reflect all receipts and disbursements indicated in these closing instructions and any amended closing instructions subsequent hereto. If any changes to fees occur documents may need to be re-drawn and re-signed. Fax a certified copy of the final HUD-1 Settlement Statement to NOVASTAR, LLC.
Attention: Quality Assurance. Send the original final HUD-1 Settlement Statement to us at the following address within 24 hours of settlement: 16192 COASTAL HIGHWAY, LEWES, DELAWARE 19958

**ADDITIONAL INFORMATION:** BORROWER MUST SIGN AND DATE THESE CLOSING INSTRUCTIONS.

If for any reason this loan does not close within 48 hours of your receipt of funds, immediately return all documents to Lender and wire all funds only to: NOVASTAR, LLC.
16192 COASTAL HIGHWAY, LEWES, DELAWARE 19958

If you have any questions regarding any of these instructions, please contact NOVASTAR, LLC.
at (213)290-4112

BORROWER ACKNOWLEDGMENT: I/We have read and acknowledged receipt of these Closing Instructions.

_Karen_   12/05/13
Borrower KARAPET IMBOYAN   Date        Borrower   Date

_____   _____        _____   _____
Borrower   Date        Borrower   Date

_____   _____        _____   _____
Borrower   Date        Borrower   Date

**ACKNOWLEDGED AND AGREED:**

_____   _____
Settlement Agent   Date
ANGELA SIMON

SPECIFIC CLOSING INSTRUCTIONS
SCI.MSC 10/08/10                    Page 2 of 2                    DocMagic eForms
www.docmagic.com

**Exhibit 2**
**Pg. 3 of 10**

FROM:  LENDING  E, INC
       6350 LAUREL CANYON BLVD., STE 340
       NORTH HOLLYWOOD, CALIFORNIA 91606
       Phone: (818)761-7234 Fax:
       (866)493-0040

TO:    KONSTANT CLOSINGS
       Phone: (818)941-9822

ATTN:  ANGELA SIMON

RE:    Borrower(s): KARAPET EMBOYAN

Property Address: 4628 KINGSWELL AVE., LOS
ANGELES, CALIFORNIA 90027

Document Date: DECEMBER 5, 2013

Closing Date: DECEMBER 18, 2013

Disbursement Date: DECEMBER 18, 2013

Case No.:

Loan No.: 1410

App. No.:

Order No.: 6119470-JV

Escrow No.: 11070

## ADDENDUM TO CLOSING INSTRUCTIONS
(Additional conditions to be satisfied prior to disbursement of loan proceeds)

4. TITLE INSURANCE TO INCLUDE COVERAGE OF 125% OF LOAN AMOUNT

5. NOTARY TO PROVIDE EVIDENCE OF E&O INSURANCE

6. NOTARY TO BE APROVED BY LENDER

7. PREPAID INTEREST PAYABLE TO- FCI LENDER SERVICES, INC.

8. DO NOT DISBURSE FUNDS WITHOUT AUTHORIZATION FROM- LENDING BEE,
INC.

ACKNOWLEDGED AND AGREED:

_____  12/05/13
Settlement Agent              Date
ANGELA SIMON

**Exhibit** 2
**Pg.** 4 of ___

# KONSTANT CLOSINGS

18305 Sherman Way, Suite 23 Reseda, CA 91335 Phone: 818.245.5332/818.941.9822 Fax: 818.975.5041
Email: KCLOSINGSESCROW@HOTMAIL.COM

### Escrow Vesting Amendment

**Date:** December 5, 2013

**RE:** Escrow Number: 11070

**Escrow Officer:** Angela Simon

**Property Address:** 4628 Kingswell Ave Los Angeles, CA 90027

Buyer's vesting is as follows:

Karapet Emboyan , *a single man*

**I Certify this a true copy of the original**

SIGNED: _Karapet Emboyan_ DATE: 12/05/13

EACH OF THE ABOVE SIGNED STATES HE/SHE HAS READ THE FOREGOING INSTRUCTIONS AND UNDERSTANDS AND AGREES TO THEM

**Exhibit 2**
**Pg. 5 of 10**

I Certify this a true copy of the original

# KONSTANT CLOSINGS

**18305 Sherman Way, Suite 23 Reseda, CA 91335**
Phone: 818.941.9822/818.245.5332 Fax: 818.975.5041
Email: KC L OS I N G S E S CR OW @H OT M A I L .C OM

**ADDENDUM TO CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS DATE NOVEMBER 18, 2013**

**Karapet Emboyan,** (hereinafter known as Buyer), agree to purchase from **Epraksi Gevorkian** (hereinafter known as Selle the real property set forth herein per the terms, conditions, consideration and instructions herein after stated. The Seller an Buyer herein shall deliver these signed escrow instructions to Konstant Closings (hereinafter known as Escrow Holder), with 5 calendar days after receipt of same. Close of escrow to be on or before **DECEMBER 18, 2013.**

KONSTANT CLOSINGS IS LICENSED AS AN ESCROW AGENT BY THE DEPARTMENT OF CORPORATIONS OF TH STATE OF CALIFORNIA UNDER LICENSE NUMBER #01391181

**Escrow Number #: 11070**             **Dated: November 19, 2013,**             **Escrow Officer: Angela Simo** Terms of Transaction:

**SALE PRICE: $850,000.00 LOAN AMOUNT: $680,000.00 DOWNPAYMENT: $165,000.00**
Buyer will deposit with escrow as EMD **$5,000.00** Furthermore, I will execute and deliver any instruments and/or funds whic this escrow requires to show title as called for, all of which you are instructed to use on or before **DECEMBER 30, 2013** provided you hold a Policy of Title Insurance with the usual title company's exceptions, with a liability not less than **$850,000.00** covering property **4628 KINGSWELL AVENUE, LOS ANGELES, CALIFORNIA 90027** described as follows:

.JT 7 IN BLOCK C OF EDGEMONT TERRACE IN BOOK 3, PAGE 90 OF MAPS IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

·SHOWING TITLE VESTING IN: **KARAPET EMBOYAN (EXACT VESTING TO BE DETERMINED THROUGH ESCROW)**

## FREE FROM ENUCMBRANCES EXCEPT:

1. General and Special County and City (if any) taxes for the current fiscal year, not due or delinquent, including any special levies, payments for which are included therein and collected therewith.
2. Lien of Supplemental Taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the Revenue and Tax Code of the State of California.
3. Covenants, Conditions and Restrictions, reservations easements for public utilities, districts, water companies, alleys and streets, rights and rights of way of record, if any; also exceptions of oil, gas, minerals and hydrocarbons, and/or lease, if any, without the right of surface entry.
4. A New FIRST Trust Deed in the amount of **$680,000.00** in favor of Lender of Buyer's choice. Escrow Holder is instructed to comply with all of the lender's requirements in connection with said new loan.

## INSTRUCTIONS TO ESCROW:

**1. VESTING: Karapet Emboyan,** exact vesting to be determined through escrow prior to the close of escrow. Escrow holder is instructed to insert Buyer's Vesting and/or name variation onto the Grant Deed above Seller's signature as per Buyer's written instructions.

P~~e 1                     BUYERS INITIALS SELLERS INITIALS: *KE* _____

**Exhibit 2**
**Pg. 6 of 10**

**2. INSPECTION WAIVER:** Buyer has chosen to waive the Wood Destroying Pest and Organism Inspection and Physica Inspection and accepts subject property in its present condition without warranty from Seller. Therefore, Seller has bee relieved of any responsibility and/or liability in connection with any findings from any companies or individuals contracted b the Buyer regarding the above mentioned inspections

**3. CLOSE WITHOUT REQUIRED REPORTS AND/OR CERTIFICATES:** In the event any or all City and or County require Reports and/or Certificates (including but not limited to Certificate of Compliance and 9-A Residential Property Report) hav not been deposited into escrow by the close of escrow, Escrow Holder is authorized and instructed to proceed with the clos of this escrow, without liability in the part of Escrow Holder. Buyer understands that Escrow Holder makes no representation and/or warranties as to the content of any Reports or Certificates. In the event there are any discrepancies on said Reports c Certificates, Seller agrees to remain responsible up to the close of escrow and Buyer and Seller to handle same outside c escrow. Buyer and Seller hereby release Konstant Closings of any and all responsibility and/or liability in connection with same

**4. PRORATIONS AND ADJUSTMENTS:** Only the following prorations and/or adjustments will be made in this escrow, to be calculated by Escrow Holder as of the date of the close of escrow:

      a). Real property taxes based upon the tax information and mello-roos and Special Assessments District Bonds and Assessments, if any, which is supplied by the title company.

"Laws and Government Regulations" and "General Provisions" are made a part of previous pages as if fully incorporated therein.

THE FOREGOING INSTURCTIONS AND THOSE GENERAL PROVISIONS ATTACHED HERETO AND MADE A PART HEREOF ARE APPROVED AND ACCEPTED IN THEIR ENTIRETY AS FULLY SET OUT IN THIS PARAGRAPH. EACH OF THE UNDERSIGNED BUYER(S) AND SELLER(S) HEREBY AUTHORIZE CLOSING AGENT TO FURNISH COPIES OF CLOSING STATEMENTS TO LENDERS AND/OR BROKERS INVOLVED.THESE ESCROW INSTRUCTIONS DO NOT ESTATE ALL OF THE PROVISIONS OF THE CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS AND/OR AMY AMENDMENTS THERETO EXECUTED BY THE HERERIN BUYER(S) AND SELLER(S) NOR DO THEY SUPERSEDE SAID SAME. THE CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTURCTIONS AND ANY SUPPLEMENTS AND/OR AMENDMENTS ARE INCORPORATED INTO THE HEREIN ESCROW INSTRUCTIONS IN THEIR ENTIRETY

Karapet Emboyan

Epraksi Gevorkian

Page 2

Exhibit 2
Pg. 7 of 10

**ADDITIONAL ESCROW INSTRUCTIONS AND PROVISIONS**

1. The parties to this escrow are made aware that Escrow Holder has no obligation to verify signatures of the parties involved.

2. You shall not be responsible for the following: (1) the sufficiency or correctness as to form, manner of execution or validity of any documents deposited in this escrow: (2) the identity, authority, or right of any person executing the same either as to documents of record or those handled in the escrow: or (3) the failure of any party to comply with any of the provisions of any agreement, contract or other document filed or deposited in this escrow or referred to in those escrow instructions. Your duties shall be limited to the safekeeping of money and documents received by you as Escrow Holder and for the disposition in compliance with the written instructions accepted by you in this escrow. You shall not be required to take any action regarding the collection, maturity, or apparent outlaw of any obligations deposited with you unless otherwise instructed in writing.

3. Where the assignment of any insurance policy from Seller to Buyer is concerned, Seller guarantees to you any insurance policy handed you in this escrow policy in force, the policy has not been hypothecated and that all necessary premiums have been paid. You are authorized to execute on behalf of the parties assignments of interest in any insurance policy (other than title insurance policies) called for in this escrow, you are authorized to transmit for assignment any insurance policy to the insurance agent requesting that the insurer consent to such assignment, to request that a loss payee clause or such other endorsements as may be required be issued and to forward such policy to the lenders and entitled parties. You shall not be responsible for verifying the acceptance of the request for assignment and policy of insurance by the insurance company. The parties mutually agree that you will make no attempt to verify the receipt of the request for assignment by the issuing insurance company. All parties are placed on notice that if the insurance company should fail to receive the assignment by the issuing company may be deny coverage for any loss suffered by Buyer. IT IS THE OBLIGATION OF THE INSURED OR THE INSURED REPRESENTATIVE TO VERIFY THE ISSUING COMPANY'S ACCEPTANCE OF THE ASSIGNMENT OF THE POLICY.

4. You are not to be held responsible in any way whatsoever for any personal property tax which may be assessed against any former or present owner of the subject property described in these escrow instructions, nor for the corporation or license tax of any corporation as a former present owner.

5. If it is necessary, proper or convenient for the consummation of this escrow, you are authorized to deposit or have deposited funds or documents, or both, handed you under these escrow instructions, with any duly authorized sub escrow agent, including but not limited to, any bank, trust company, title insurance company, title company, savings and loan association, or licensed escrow agent, subject to your order at or before close of escrow in connection with closing this escrow. Any such deposit shall be deemed a deposit under meaning of these escrow instructions.

6. The parties to this escrow have satisfied themselves outside of escrow that the transaction covered by this escrow is not in violation of the Subdivision Map Act or any law regulation land division, zoning ordinances or building restrictions which may affect the land or improvements that are the subject of this escrow. You as escrow holder are relieved of all responsibility and liability in connection with such laws, ordinances, restrictions or regulations and are not to be concerned with any of their enforcement.

7. If any form of Purchase Agreement of amendment or supplement (collectively "Purchase Agreement") is deposited in this escrow, it is understood that such document shall be effective only as between the parties signing the Purchase Agreement. You, as Escrow Holder, are not to be concerned with the terms of any Purchase Agreement and are relieved of all responsibility for the enforcement of its terms. Your only duty is to comply with the
instructions set forth in the escrow instructions. You are not responsible for interpreting or acting on any provision of any Purchase Agreement on which these escrow instructions may be based and you shall not rely on any knowledge or understanding you may have of any such Purchase Agreement in ascertaining or performing your duties as Escrow Holder. In connection with any loan transactions, you are authorized to deliver copy of any Purchase Agreement, supplement or amendment and a copy of all escrow instructions, supplements or amendment to the lender.

8. You shall make no physical inspection of the real property or personal property described in any instruments deposited in, or which is the subject of this escrow. You have made no representations or warranties concerning any such real property or personal property and are not to be concerned with nor liable for the conditions of real property or personal property.

Page 3                                    BUYERS INITIALS SELLERS INITIALS: _____  _____

Exhibit _____
Pg.___of___

9 The parties authorize the recordation of any instrument delivered through this escrow if necessary or proper for the issuance of the required policy of title insurance or for the closing of this escrow. Funds, instructions or instruments received in this escrow may be delivered to, or deposited with any title insurance company or title company to comply with the terms and conditions of this escrow.

10. You are to use your usual document forms or the usual forms of any title insurance company or title company and in our instructions insert dates and terms on the instruments if incomplete when executed.

11. If the date by which Buyer's or Seller's performances are due shall be other than your regular business day, such performances shall be due on your next succeeding business day.

12. You shall conduct no lien or title sear of personal property regarding the sale or transfer of any personal property through this escrow. Should the parties desire that you conduct a lien or title search of personal property, the parties requesting the same shall deliver separate and specific written escrow instructions to you along with an agreement to pay your additional escrow fees.

13. You shall not be responsible in any way whatsoever nor are you to be concerned with any question of usury in any loan or encumbrance, whether new or of record, which may arise during the processing of this escrow.

14 The parties agree to deliver to you all documents, instruments, escrow instructions and funds required to process and close this escrow in accordance with its terms.

15. You are instructed to provide title to the subject real property in the condition identified in the escrow instructions by the parties. You are not responsible for the contents or accuracy of any beneficiary demands and/or beneficiary statements delivered to you by the existing lien holder. You are not required to submit any such beneficiary statements and/or demand to the parties for approval before the close of escrow unless expressly instructed to do so in writing. Should the parties desire to pre-approve any such beneficiary statement and or/demand, the parties requesting the same shall deliver separate and specific written escrow instructions to you.

16. You are not to be responsible in any way whatsoever nor to be concerned with the terms of any new loan or the content of any loan documents obtained by any party in connection with this escrow except to order such loan documents into the escrow file, transmit the loan documents to Buyer for execution and transmit the executed loan documents to lender. The parties understand and agree that you are neither involved nor concerned with the approval and/or processing of any loan or the contents and effect of loan documents prepared by a lender.

17. The parties expressly indemnify and hold you harmless against third-party claims for any fees, costs or expenses where you have acted in good faith, with reasonable care and/prudence and/or in compliance with these escrow instructions. You are not required to submit any such beneficiary statement and/or beneficiary demand to the parties for approval before the close of escrow unless expressly instructed to do so in writing. Should the party (ies) desire to pre-approve any such beneficiary statement and/or beneficiary demand, the party (ies) requesting the same shall deliver separate and specific written escrow instructions to you.

18. The Federal Tax Reform Act of 1986, as amended, and the California Revenue & Taxation Code, require certain transactions to be reported to the Internal Revenue Service and California State Franchise Tax Board. In those transactions Seller will furnish a correct tax identification number so you can report this transaction as required by law. Seller understands that Seller may be subject to civil or criminal penalties for failure to do so.

19. The parties agree that you have the responsibilities of an Escrow Holder only and there are no other legal relationships established in the terms and conditions of the escrow instructions. In connection with this escrow: (1) You shall have no duty or responsibility of notifying any of the parties to this escrow of any sale, resale, loan, exchange or other transaction involving any of the subject real property or personal property; (2) You shall have no responsibility or duty to disclose any benefit, including but not limited to financial gain, realized by any person, firm or corporation involving any of the subject real property or personal property (3) You shall have no responsibility or duty to disclose any profit realized by any person, firm or corporation including, but not limited to, any real estate broker, real estate sales agent and/or a party to any other escrow in connection therewith, although such other transaction may be handled by you in this escrow or in another escrow transaction. If however, you are instructed in writing by any party, Lender or other entitled person to disclose any sale, resale, loan, exchange or other transaction involving any of the subject real property or personal property or any profit realized by any

BUYERS INITIALS SELLERS INITIALS _KE_____

**Exhibit 2**
**Pg. 8 of 10**

person, firm or corporation to any party to this escrow, you shall do so without incurring any liability to any party. You shall not be liable for any of your acts or omissions done in good faith nor for any claims, demands, losses or damages made or suffered by any party tot his escrow, excepting such as may arise through or be caused by your willful neglect or gross misconduct.

20. Buyer acknowledges that pursuant to the California Revenue & Taxation Code a Change of Ownership form is required by the county recorder to be completed and affixed to any documents submitted for recording which evidence a conveyance of title. The Change of Ownership form shall be furnished to Buyer by you for Buyer's completion and execution. Buyer is aware that if Buyer does not complete the form in full, signed and returns it to you before closing, a penalty will be assessed by the county recorder. If the Change of Ownership form is not filed after the close of escrow within the time limits set forth by the county recorder, severe additional penalties will be assessed against the Buyer.

For information and assistance in completing the Change of Ownership form, Buyer may contact the County Recorder and Assessor's office in the county in which the subject property is located.

21. The parties shall cooperate with you in carrying out the escrow instructions they deposit with you and completing this escrow. The parties shall deposit into escrow, upon request, any additional funds, instruments, documents, instructions, authorizations, or other items that are necessary to enable you to comply with demands made on you by third parties, to secure policies of title insurance, or to otherwise carry out the terms of their instructions and close this escrow. If conflicting demands or notices are made or served upon you or any controversy arises between the parties or with a third person arising out of or relating to this escrow, you shall have the absolute right to withhold and stop all further proceedings in, and in performance of, this escrow until you receive written notification satisfactory to you of the settlement of the controversy by a written agreement of the parties, or by the final order or judgment of a court of competent jurisdiction.

All of the parties to this escrow, jointly and severally, promise to pay promptly on demand, as well as well as to indemnify you and hold you harmless from and against all administrative governmental investigations, audit and legal fees, litigation and interpleader costs, damages, judgments, attorneys' fees, arbitration costs and fees, expenses, obligations and liabilities of every kind (collectively "costs") which in good faith you may incur or suffer in connection with or arising out of this escrow, whether said costs arise during the performance of or subsequent to this escrow, directly or indirectly, and whether at trial, or on appeal, in administrative action, or in an arbitration. You are given a lien upon all rights, titles and interests of the parties and all escrow papers and other property and monies deposited into this escrow to protect your rights and to indemnify and reimburse you. If the parties do not pay any fees, costs or expenses due you under the escrow instructions or do not pay for costs and attorneys' fees incurred in any litigation, administrative action and/or arbitration, on demand, they each agree to pay a reasonable fee for any attorney services which may be required to collect such fees or expenses, whether attorneys' fees are incurred before trial, at a trial, on appeal or in arbitration.

22. ALL NOTICES, DEMANDS AND INSTRUCTIONS MUST BE IN WRITING. No notice demand, instruction amendment, supplement or modification of these escrow instructions shall be of any effect in this escrow until delivered in writing to you and mutually executed by all parties.

Any purported oral instruction, amendment, modification, notice or demand with you by the parties or either of them shall be ineffective and invalid. You are to be concerned only with the directives expressly set forth in the escrow instructions, supplements and amendments thereto, and are not to be concerned with nor liable for items designated as "memorandum items" in the escrow instructions. These escrow instructions may be executed in counter parts, each of which shall be deemed an original regardless of the date of its execution and delivery. All such counterparts together shall constitute the same document.

The parties acknowledge and understand that you, as Escrow Holder, are not authorized to practice the law nor do you give financial advice. The parties are advised to seek legal and financial counsel and advice concerning the effect of these escrow instructions. The parties acknowledge that no representations are made by you about the legal sufficiency, legal consequences, financial effects or tax consequences of the within escrow instructions.

23. Notwithstanding any other provisions in these escrow instructions and in addition to other fees and costs to which you may be entitled, the parties, jointly, and severally, agree that if this escrow is not consummated within ninety (90) days of the date set for closing, you are instructed to, and without further instructions, withhold your escrow fee of $50.00 per month from the funds on deposit with you regardless of who deposited such funds. The

BUYERS INITIALS SELLERS INITIALS _KE_____

Exhibit 2
Pg. 9 of 10

parties jointly and severally, further agree that if you are, for any reason required to hold funds after close of escrow, you are instructed to, and without further instructions, withhold an escrow fee of $50.00 per month from the funds on deposit with you regardless of who deposited such funds. The parties irrevocably instruct you to automatically cancel this file without further instructions when all funds on deposit have been disbursed.

24. Your Escrow Holder agency shall terminate six (60 months following the date last set for close of escrow and shall be subject to earlier termination by receipt by you of mutually executed cancellation instructions. If this escrow was not closed or cancelled within the described six (6) month period, you shall have no further obligations as Escrow Holder except to disburse funds and documents pursuant to written escrow instructions and to interplead or otherwise dispose of funds and documents in accordance with a validly issued and validly served order from a court of competent jurisdiction. If the conditions of this escrow have not been complied with at the expiration date in these escrow instructions, you are instructed to complete the conditions at the earliest possible date, unless Buyer or Seller have made written demand upon you for the return of the funds and/or instruments deposited by Buyer or Seller and/or for cancellation of this escrow. Should demands be made upon you, you may withhold and stop all further proceedings in this escrow without liability for interest on funds held or for damages until mutual cancellation instructions signed by all parties shall have been deposited with you. The parties, jointly and severally agree that if this escrow cancels or is otherwise terminated and not closed, the parties shall pay for any costs and expenses which you have incurred or have become obligated for under these escrow instructions, including, but not limited to, attorney fees, arbitration fees and costs and reasonable escrow fees for the services rendered by you, the parties agree that such costs and expenses shall bepaid and deposited in escrow before cancellation or other termination of these escrow is in effective. The parties agree that said charges for expenses, costs and fees may be apportioned between Buyer and Seller in a manner which, in your sole discretion, you consider equitable, and that your decision will be binding and conclusive upon the parties. Upon receipt of mutual cancellation instructions or final order or judgment of a court of competent jurisdiction with accompanying writs of execution, levies or garnishments, you are instructed to disburse the escrow funds and instruments in accordance with such cancellation instruction, order or judgment and accompanying writ and this escrow shall, without further notice be considered terminated and cancelled.

25. If any check submitted to you is dishonored upon presentment for payment, you are authorized to notify all parties to the within escrow, their respective real estate brokers and real estate agents and any other person or entity you deem in you sole discretion necessary to notify.

26. The parties agree to release toy from any and all liability of any kind or nature and to indemnify you from any loss, damages, claims judgments or costs of any kind or nature resulting from or related to the release or discharge of hazardous or toxic wastes on the subject property whether it occurred in the past or present or may occur in the future which release or discharge is in violation of law, in excess of any state and federal standards, permit requirements and/or disclose requirements existing at this time or which may exists at a future time. The parties represent that they made their own assessment of the condition of the subject property and have not relied on any of your representations in making the assessment. The parties are advised to seek independent legal and technical environmental expert advice in assessing the risk associated with potential hazardous toxic wastes.

27. In these escrow instructions, wherever the context so requires, the masculine gender includes the feminine and/or neuter and the singular number includes the plural.

28. You are authorized to destroy or otherwise dispose of any and all documents, papers escrow instructions, correspondence and records or other material consisting or pertaining to this escrow at any time after five (5) years from the date of: (10 the close of escrow: (2) the date of cancellation: (3) the date of the last activity without liability and without further notice to the parties.


Karapet Emboyan                                    Epraksi Gevorkian

Exhibit 2
Pg. 10 of 10

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower uding the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____    Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA   ☒ Conventional   ☐ Other (explain):  ☐ FHA   ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number |
|---|---|---|---|

| Amount | Interest Rate | No. of Months | Amortization Type: | | |
|---|---|---|---|---|---|
| $ 637,500.00 | 12.000 % | 12 | ☒ Fixed Rate  ☐ GPM | ☐ Other (explain):  ☐ ARM (type): | |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) 4628 KINGSWELL AVE., LOS ANGELES, CALIFORNIA 90027 | No. of Units |
|---|---|

Legal Description of Subject Property (attach description if necessary)  LOT 7 IN BLOCK C OF EDGEMONT TERRACE, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 3, PAGE 90 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. | Year Built

| Purpose of Loan | ☒ Purchase   ☐ Construction   ☐ Other (explain):  ☐ Refinance   ☐ Construction-Permanent | Property will be:  ☐ Primary Residence  ☐ Secondary Residence  ☒ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Ired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+ b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost $ | Amount Existing Liens $ | Purpose of Refinance | Describe Improvements  ☐ made   ☐ to be made  Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s) Karapet Emboyan | Manner in which Title will be held Single man | Estate will be held in:  ☒ Fee Simple  ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)
CHECKING SAVINGS: $212,500.00

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) KARAPET EMBOYAN | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number | Home Phone (incl. area code) (818) 967-1595 | DOB (mm/dd/yyyy) | Yrs. School 16 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married   ☒ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower)  no.  ages | ☐ Married   ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower)  no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP)  ☒ Own   ☐ Rent  2  No. Yrs. 12330 Lithuania Dr., Granada Hills, CA 91344 | Present Address (street, city, state, ZIP)  ☐ Own   ☐ Rent _____ No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

Fennie Mae Form 1003  6/09
Freddie Mac Form 65  6/09

Borrower: KE          Page 1

Exhibit 3
Pg. 1 of 7

DocMagic eForms
www.docmagic.com

*If residing at present address for less than two years, complete the following:*

| Former Address (street, city, state, ZIP) ☐ Own ☒ Rent 5 No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|
| 18210 Oxnard St #138, Tarzana, CA 91356 | |

## IV. EMPLOYMENT INFORMATION

| Borrower | | Co-Borrower | |
|---|---|---|---|
| Name & Address of Employer ☐ Self Employed | Yrs. on this job | Name & Address of Employer ☐ Self Employed | Yrs. on this job |
| Urban Solutions LLC Services 900 Wilshire Blvd., Los Angeles, CA 90017 | 5 yrs<br><br>Yrs. employed in this line of work/profession 10 | | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business Computer Tech | Business Phone (incl. area code) (213)290-5096 | Position/Title/Type of Business | Business Phone (incl. area code) |

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| Name & Address of Employer ☐ Self Employed | Dates (from - to)<br><br>Monthly Income $ | Name & Address of Employer ☐ Self Employed | Dates (from - to)<br><br>Monthly Income $ |
|---|---|---|---|
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from - to)<br><br>Monthly Income $ | Name & Address of Employer ☐ Self Employed | Dates (from - to)<br><br>Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 9,120.00 | $ | $ 9,120.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | | $ 6,375.00 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | 185.94 |
| Dividends/Interest | | | | Real Estate Taxes | | 885.42 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | -2,571.36 | | -2,571.36 | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 6,548.64 | $ | $ 6,548.64 | Total | $ | $ 7,446.36 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income**   *Notice:*   Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| B | SUBJECT PROPERTY NET CASH FLOW | $ -2,571.36 |
| | | |

Fannie Mae Form 1003 6/09
Freddie Mac Form 65 6/09     Borrower: KE     Page 2

Exhibit 3
Pg. 2 of 7

DocMagic eForms
www.docmagic.com

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Description | | | | |
| Cash deposit toward purchase held by: Deposit to Escrow | $ 5,000.00 | | | |
| | | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| *List checking and savings accounts below* | | | | |
| Name and address of Bank, S&L, or Credit Union Bank of america | | Name and address of Company FLAGSTAR BANK | $ Payment/Months 4,190.00 | $ 555,809.00 |
| Acct. no. | $ 256,000.00 | Acct. no. ▬▬▬▬ | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company VW CREDIT INC | $ Payment/Months 413.00 | $ 10,730.00 |
| Acct. no. | $ | Acct. no. ▬▬▬▬ | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CAP ONE | $ Payment/Months 24.00 R | $ 709.00 |
| Acct. no. | $ | Acct. no. ▬▬▬▬ | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company FIRST TECH | $ Payment/Months 765.00 | $ 44,008.00 |
| Acct. no. | $ | Acct. no. ▬▬▬▬ | | |

Borrower:  _KE_

Fannie Mae Form 1003  6/09
Freddie Mac Form 65  6/09

Page 3

Exhibit 3
Pg. 3 of 7

DocMagic eForms
www.docmagic.com

## VI. ASSETS AND LIABILITIES (cont'd)

| Stocks & Bonds (Company name/number & description) | $ | Name and address of Company | $ Payment/Months | $ |
|---|---|---|---|---|
| | | Acct. no. | | |
| Life Insurance net cash value | $ | Name and address of Company | $ Payment/Months | $ |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ 261,000.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 575,000.00 | | | |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. | | |
| Automobiles owned (make and year) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 5,392.00 | |
| Total Assets a. $ 836,000.00 | | Net Worth ▶ (a minus b) $ 224,744.00 | Total Liabilities b. | $ 611,256.00 |

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 12330 Lithuania Dr., Granada Hills, Ca 91344 | SFR | $ 575,000.00 | $ 555,809.00 | $ | $ 2,938.00 | $ 1,253.00 | $ 0.00 |
| | | | | | | | |
| | | | | | | | |
| Totals | | $ 575,000.00 | $ 555,809.00 | $ | $ 2,938.00 | $ 1,253.00 | $ 0.00 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |
| | | |

**Exhibit** 3
**Pg.** 4 **of** 7

| | VII.   DETAILS OF TRANSACTION | | | VIII.   DECLARATIONS | | | | |
|---|---|---|---|---|---|---|---|---|
| a. | Purchase price | $ | 850,000.00 | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | **Borrower** | | **Co-Borrower** | |
| b. | Alterations, improvements, repairs | | | | Yes | No | Yes | No |
| | Land (if acquired separately) | | | a. Are there any outstanding judgments against you? | ☐ | ☒ | ☐ | ☐ |
| d. | Refinance (incl. debts to be paid off) | | | b. Have you been declared bankrupt within the past 7 years? | ☐ | ☒ | ☐ | ☐ |
| | | | | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☒ | ☐ | ☐ |
| e. | Estimated prepaid items | | | d. Are you a party to a lawsuit? | ☐ | ☒ | ☐ | ☐ |
| f. | Estimated closing costs | | 23,921.50 | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ | ☒ | ☐ | ☐ |
| g. | PMI, MIP, Funding Fee | | | (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee e. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| h. | Discount (if Borrower will pay) | | | | | | | |
| i. | Total costs (add items a through h) | | 873,921.50 | | | | | |
| j. | Subordinate financing | | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | **Borrower** | | **Co-Borrower** | |
| k. | Borrower's closing costs paid by Seller | | | | Yes | No | Yes | No |
| l. | Other Credits (explain) | | | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | ☐ | ☒ | ☐ | ☐ |
| | Cash Deposit | | 5,000.00 | g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☒ | ☐ | ☐ |
| | | | | h. Is any part of the down payment borrowed? | ☐ | ☒ | ☐ | ☐ |
| | | | | i. Are you a co-maker or endorser on a note? | ☐ | ☒ | ☐ | ☐ |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | | 637,500.00 | j. Are you a U.S. citizen? | ☒ | ☐ | ☐ | ☐ |
| n. | PMI, MIP, Funding Fee financed | | | k. Are you a permanent resident alien? | ☐ | ☒ | ☐ | ☐ |
| o. | Loan amount (add m & n) | | 637,500.00 | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☐ | ☒ | ☐ | ☐ |
| | | | | m. Have you had an ownership interest in a property in the last three years? | ☒ | ☐ | ☐ | ☐ |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | | 231,421.50 | (1) What type of property did you own - principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| | | | | (2) How did you hold title to the home - by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

**IX.   ACKNOWLEDGMENT AND AGREEMENT**

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et. seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgment.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| | 12/05/13 | x | |

**Exhibit 3**
**Pg. 5 of 7**

DocMagic eForms
www.docmagic.com

NU

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information | | | CO-BORROWER ☐ I do not wish to furnish this information | | |
|---|---|---|---|---|---|
| Ethnicity: ☐ Hispanic or Latino  ☒ Not Hispanic or Latino | | | Ethnicity: ☐ Hispanic or Latino  ☐ Not Hispanic or Latino | | |
| Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American | | Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American | |
| | ☐ Native Hawaiian or Other Pacific Islander   ☒ White | | | ☐ Native Hawaiian or Other Pacific Islander   ☐ White | |
| Sex: ☐ Female   ☒ Male | | | Sex: ☐ Female   ☐ Male | | |

To be Completed by Loan Originator:
This information was provided:
☐ In a face-to-face interview
☐ In a telephone interview
☐ By the applicant and was submitted by fax or mail
☐ By the applicant and submitted via e-mail or the internet

| Loan Originator's Signature X _(signature)_ | | Date DECEMBER 4, 2013 |
|---|---|---|
| Loan Originator's Name (print or type) Boris Dorfman | Loan Originator Identifier 244761 | Loan Originator's Phone Number (including area code) (818) 761-7234 |
| Loan Origination Company's Name nding Bee, Inc | Loan Origination Company Identifier 245464 | Loan Origination Company's Address 6350 Laurel Canyon Blvd., Ste 340, North Hollywood, California 91606 |

Fannie Mae Form 1003  6/09
Freddie Mac Form 65  6/09

Borrower: KE

Page 6

Exhibit 3
Pg. 6 of 7

DocMagic eForms
www.docmagic.com

| CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION | | |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application.   Mark B for Borrower for Co-Borrower | Borrower: KARAPET EMBOYAN | Agency Case Number: |
| | Co-Borrower: | Lender Case Number: |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 12/05/13 | X | |

Fannie Mae Form 1003 6/09
Freddie Mac Form 65 6/09

Page 7

**Exhibit** 3
**Pg. 7 of 7**

DocMagic eForms
www.docmagic.com

EXHIBIT B

1 | LORI C. HERSHORIN (SBN 155977)
  | lorih@hhlawgroup.com
2 | ETHAN S. ROBINSON (SBN 310499)
  | ethanr@hhlawgroup.com
3 | **HERSHORIN & HENRY, LLP**
  | 26475 Rancho Parkway South
4 | Lake Forest, CA 92630
5 | T: (949) 859-5600 ♦ F: (949) 859-5680
6 | Attorneys for Plaintiff,
7 | WFG NATIONAL TITLE INSURANCE COMPANY,
  | a South Carolina corporation

**FILED**
Superior Court of California
County of Los Angeles

02/11/2021

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ K. Ghazarian _____ Deputy

Electronically Received 02/11/2021 07:48 PM

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE

| | |
|---|---|
| WFG NATIONAL TITLE INSURANCE COMPANY, a South Carolina corporation, | Case Number:  BC640157 |
| Plaintiff, | **SECOND AMENDED COMPLAINT FOR:** |
| vs. | 1)  **VIOLATION OF RICO – 18 U.S.C. §§ 1961(5), 1962(B)** |
| TAMARA DADYAN, an individual; ROSE AVAKIAN AKA ROSA AVAKIAN AKA ROZA AVAKIAN, DBA ESCROW DOC AKA ESCROW DOC CO., an individual; ADELIYA TIMIROVA INVESTMENTS, INC., a California corporation; ARTHUR ABRAHAMOV AKA ARTHUR ABRAHAM, DBA ESCROW DOC AKA ESCROW DOC CO., an individual; ADELIYA TIMIROVA, an individual; EGIA KAPEMYAN, an individual; TETIANA VOVK AKA TATIANA VOVK, an individual; SECURELINE REALTY AND FUNDING, INC., a California corporation; ARA HARITUNIAN, an individual; UNITED ESCROW CO., a California corporation; NERSES NAKSHCHYAN, an individual; QUALITY LOAN SERVICES CORPORATION, a California corporation; SELECT PORTFOLIO SERVICING, INC., a Utah corporation; WELLS FARGO BANK, N.A. AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATE HOLDERS, PARK PLACE SECURITIES, INC. ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2005-WCWS, a National Bank; JUBILIO ESCALERA, an individual; MJF FUNDING CORPORATION, | 2)  **VIOLATION OF RICO – 18 U.S.C. §§ 1961(5), 1962(C)**<br>3)  **VIOLATION OF RICO – 18 U.S.C. §§ 1961(5), 1962(D)**<br>4)  **CONVERSION**<br>5)  **CLAIM AND DELIVERY**<br>6)  **FRAUD – INTENTIONAL MISREPRESENTATION**<br>7)  **CONSPIRACY TO DEFRAUD**<br>8)  **PROFESSIONAL NEGLIGENCE**<br>9)  **BREACH OF FIDUCIARY DUTY**<br>10) **BREACH OF ESCROW AGREEMENT**<br>11) **PROFESSIONAL NEGLIGENCE**<br>12) **EQUITABLE LIEN**<br><br>**JURY TRIAL DEMANDED**<br><br>Complaint Filed: November 8, 2016<br>FAC Filed:        March 28, 2017<br>Trial Date:        February 15, 2022 |

-1-
SECOND AMENDED COMPLAINT

a California corporation; VARTAN AKOPYAN
AKA VARDAN AKOPYAN, an individual;
EPRAKSI GEVORKIAN, an individual;
KARAPET EMBOYAN; an individual;
HOVANES YESAYAN AKA HOVHANNES
YESAYAN, an individual; ANUSH
FERAKHYAN, an individual; K-ASTRON
VENTURES, INC. dba KONSTANT CLOSINGS,
a California Corporation; KONSTANTINE
KABILAKFAS, an individual; ANGELA SIMON,
an individual; ALAK MIKAELYAN, an
individual; WILLIAM PARENT, an individual;
TANDEM MORTGAGE, INC.; ANAIT
AKOPYAN, an individual; JOSE ALONZO, an
individual; and DOES 14-50, inclusive,

Defendants.

WFG NATIONAL TITLE INSURANCE COMPANY, a South Carolina corporation, alleges as follows:

## THE PARTIES

1. PLAINTIFF WFG NATIONAL TITLE INSURANCE COMPANY ("PLAINTIFF" or "WFG") is a South Carolina corporation conducting business within this judicial district.

2. PLAINTIFF is informed and believes and thereon alleges that defendant TAMARA DADYAN aka TAMARA TAMMY DADYAN AKA TAMMY DADYAN aka TAMARA DADJIAN ("DADYAN") is, and at all relevant times herein, was an individual residing in Los Angeles County, California and within this judicial district. PLAINTIFF is informed and believes, and thereon alleges that DADYAN held a Salesperson License with the California Bureau of Real Estate ("BRE") (License Number 01294823) and was the owner and President of SECURELINE REALTY AND FUNDING, INC. ("SECURELINE"), a California corporation. PLAINTIFF is informed and believes and thereon alleges that DADYAN'S license was suspended by the BRE based upon misconduct and fraud. PLAINTIFF is further informed and believes that DADYAN acted as a real estate /loan agent in the subject transactions, even though she was unlicensed.

3. PLAINTIFF is informed and believes and thereon alleges SECURELINE is, and at all relevant times referenced herein, was a California corporation conducting business within this judicial district,

-2-

SECOND AMENDED COMPLAINT

and has a licensed corporation with the DRE, License Number 01526599. PLAINTIFF is informed and believes and thereon alleges that SECURELINE uses other entity names to conduct business such as SECURELINE FUNDING, SECURELINE, and SECURELINE INVESTMENTS.

4.   PLAINTIFF is informed and believes and thereon alleges Defendant ARA HARITUNIAN ("HARITUNIAN") is, and at all relevant times referenced herein, was an individual residing in this judicial district.  Plaintiff further is informed and believes that HARITUNIAN is, and at all times, was a licensed real estate broker, number 01050355, for SECURELINE at the time of some of the transactions at issue.

5.   PLAINTIFF is informed and believes and thereon alleges Defendant ROSE AVAKIAN AKA ROSA AVAKIAN AKA ROZA AVAKIAN, DBA ESCROW DOC AKA ESCROW DOC CO. ("AVAKIAN") is, and at all relevant times referenced herein, was an individual doing business in Los Angeles County, California, and within this judicial district.

6.   PLAINTIFF is informed and believes and thereon alleges Defendant ADELIYA TIMIROVA INVESTMENTS, INC. ("ATI") is, and at all relevant times referenced herein, was a California corporation doing business in Los Angeles County, California and within this judicial district.

7.   PLAINTIFF is informed and believes and thereon alleges Defendant ADELIYA TIMIROVA ("AT") is, and at all relevant times referenced herein, was an individual residing in Los Angeles County, California, and within this judicial district.  PLAINTIFF is informed and believes and thereon alleges that defendant AT is the President of ATI and its majority shareholder.

8.   PLAINTIFF is informed and believes and thereon alleges Defendant TETIANA VOVK AKA TATIANA VOVK ("VOVK") is, and at all relevant times referenced herein, was an individual residing within this judicial district.

9.   PLAINTIFF is informed and believes and thereon alleges Defendant UNITED ESCROW CO. ("UNITED ESCROW") is, and at all relevant times alleged herein, was a California corporation, conducting business within this judicial district.

10.   PLAINTIFF is informed and believes and thereon alleges Defendant JUBILIO ESCALERA ("ESCALERA"), is, and at all relevant times referenced herein, was an individual residing

-3-

SECOND AMENDED COMPLAINT

in Los Angeles County, California and within this judicial district.

12.     PLAINTIFF is informed and believes and thereon alleges Defendant MJF FUNDING CORPORATION ("MJF"), a California corporation, is, and at all relevant times alleged herein, was a California corporation, conducting business within this judicial district.

13.     PLAINTIFF is informed and believes and thereon alleges Defendant ALAK MIKAELYAN ("MIKAELYAN"), is, and at all relevant times referenced herein, was an individual residing in Los Angeles County, California and within this judicial district.

14.     PLAINTIFF is informed and believes and on that basis alleges that Defendant HOVANES YESAYAN AKA HOVHANNES YESAYAN ("YESAYAN") is, and at all relevant times herein, was an individual residing within this judicial district.

15.     PLAINTIFF is informed and believes and on that basis alleges that Defendant K-ASTRON VENTURES, INC. dba KONSTANT CLOSINGS DBA KONSTANT CLOSING ("K-ASTRON"), is a California corporation, conducting business within this judicial district.

16.     PLAINTIFF is informed and believes and on that basis alleges that Defendant KONSTANTINE KABILAKFAS ("KABILAKFAS") is, and at all relevant times herein, was an individual residing in Los Angeles County, California, and within this judicial district and was a licensed real estate broker with the BRE, license number 01176858, at SECURELINE and K-ASTRON. PLAINTIFF is further informed and believes and thereon alleges that KABILAKFAS was the broker of record for  SECURELINE and K-ASTRON for certain transactions at issue in the Second Amended Complaint.

17.     PLAINTIFF is informed and believes and on that basis alleges that Defendant ANGELA SIMON ("SIMON") is, and at all relevant times herein, was an individual residing in Los Angeles County, California and within this judicial district.

18.     PLAINTIFF is informed and believes and on that basis alleges that Defendant TANDEM MORTGAGE, INC. ("TANDEM") is, and at all relevant times herein, was organized under the laws of the State of California as a California corporation doing business within this judicial district.

19.     PLAINTIFF if informed and believes, and on that basis alleges that Defendant JOSE

-4-

1    ALONZO ("ALONZO") is, and at all relevant times herein, holds or held a record title interest in certain

2    real property at issue in the SAC within this judicial district in Los Angeles, California.

3         20.    PLAINTIFF is informed and believes and on that basis alleges that Defendant STEVEN

4    A. ABRAMSON ("ABRAMSON") is a real estate broker, and at all relevant times herein, resided within

5    this judicial district.

6         21.    PLAINTIFF is informed and believes and on that basis alleges that Defendant ROMANA

7    CIAS ("CIAS") is an individual and at all relevant times herein, resided within this judicial district.

8         22.    PLAINTIFF is informed and believes and thereon alleges that Defendant ARTUR A.

9    AYVAZAN AKA ARTHUR A. AYVAZAN, AKA ARTHUR AYVAZIAN ("A. AYVAZAN") is and

10   at all relevant times herein was an individual residing within this judicial district in Los Angeles,

11   California.

12        23.    PLAINITFF is informed and believes and thereon alleges that Defendant AVETIS

13   AVETIKIAN AKA AVETIS AVIETIKYAN AKA AVIK AVETIKYAN ("AVETIKIAN") is, and at all

14   relevant times herein, was an individual residing within this jurisdictional district in Los Angeles,

15   California.

16        24.    PLAINITFF is informed and believes and thereon alleges that Defendant TATYANA

17   MOROZOV, Trustee of the Vovk 2016 Trust ("MOROZOV") is, and at all relevant times herein, was an

18   individual residing within this jurisdictional district in Los Angeles, California.

19        25.    PLAINITFF is informed and believes and thereon alleges that defendant JULIO CESAR

20   ANDIA AKA CESAR ANDIA  ("ANDIA") is, and at all relevant times herein, was an individual residing

21   within this jurisdictional district in Los Angeles, California.

22        26.    PLAINTIFF is informed and believes and thereon alleges that Defendant GEGHETSIK

23   NERSISYAN AKA GEGTISK NERSISYAN ("NERSISYAN") is, and at all relevant times herein, was

24   an individual residing within this jurisdictional district in Los Angeles, California.

25        27.    PLAINTIFF is informed and believes and thereon alleges that DOE Defendants 14-50 are

26   persons residing within this judicial district or entities doing business in California and within this judicial

27   district.   The true names and capacities, whether individual, corporate, associate or otherwise, of

28

SECOND AMENDED COMPLAINT

1  Defendants and DOES 14-50, inclusive, are unknown to PLAINTIFF who therefore sues said Defendants
2  and DOES 14-50 by such fictitious names.  PLAINTIFF is informed and believes and thereon alleges
3  that each of the Defendants and DOES 14-50 designated herein as a fictitiously named Defendant is in
4  some manner responsible for the events and happenings herein referred to, and tortiously caused the
5  damage to PLAINTIFF as herein alleged.  PLAINTIFF will amend the Second Amended Complaint to
6  allege such true names and capacities when same are ascertained.

7        28.    PLAINTIFF is informed and believes and thereon alleges that, at all times relevant hereto,
8  Defendants and DOES 14-50, and each of them, were agents, employees, and representatives of each of
9  the named Defendants and DOES 14-50, and in doing the things herein mentioned were acting within the
10 course and scope of such agency, employment, and representations, and each of these defendants
11 proximately caused damages to PLAINTIFF as alleged herein.  Moreover, the names and legal capacities
12 of the defendants herein named as "ALL OTHER PERSONS KNOWN OR UNKNOWN, CLAIMING
13 ANY RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE REAL PROPERTY DESCRIBED IN
14 THE COMPLAINT, ADVERSE TO PLAINTIFF'S JUNIOR LIEN INTEREST OR ANY CLOUD ON
15 PLAINTIFF'S RIGHT THERETO" ("UNKNOWN DEFENDANTS") are unknown to Plaintiffs.
16 Plaintiffs are informed and believe and thereon allege that the UNKNOWN DEFENDANTS, and each
17 of them, claim some right, title, estate, lien, or interest in the hereinafter described real property adverse
18 to Plaintiffs' rights, title and interest in that same real property.  PLAINTIFF names the UNKNOWN
19 DEFENDANTSpursuant to Code of Civil Procedure section 762.060(a).

20                       **GENERAL ALLEGATIONS**

21       29.    This is a complex civil action for damages including Racketeer Influenced and Corrupt
22 Organizations Act ("RICO"), for declaratory and injunctive relief, for actual, consequential and
23 exemplary damages, and for all other relief which this Honorable Superior Court deems just and proper
24 under all of the facts and circumstances of this case.  Beginning in 2006 through 2020, and, in Los
25 Angeles County and within this judicial district, PLAINTIFF is informed and believe and thereon allege
26 that Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFAKAS, K-ASTRON, SECURELINE,
27 HARITUNIAN, TANDEM, ABRAHMSON, YESYAN, ESCALARA and DOES 14-50, ("RICO

28

DEFENDANTS") conspired and participated in a criminal enterprise designed to defraud lenders and title insurers, including, PLAINTIFF and its assignors, by using forgery, wire fraud, mail fraud, falsification of internet records fraudulent representations, and other illegal and fraudulent means as alleged herein.

30.     The predicate acts alleged herein cluster around criminal activity by these RICO DEFENDANTS and DOES 14-50 who acquired and/or maintained, directly or indirectly, an interest in or control of a RICO enterprise of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(1), (5), (9), and 1962 *et. seq.*, during the past ten calendar years.  The RICO DEFENDANTS did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. §§ 1962(a) and (b) (Prohibited Activities).

31.     PLAINTIFF further alleges that the RICO DEFENDANTS did commit two (2) or more of the offenses itemized above, as well as other offenses to be proven at trial, in a manner which they calculated and premeditated intentionally to threaten continuity; i.e., a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 U.S.C. § 1962(b).

32.     PLAINTIFF further is informed and believes and thereon alleges that the RICO DEFENDANTS and DOES 14-50 were all parties to a criminal enterprise which commenced using real property located in Los Angeles County for their mortgage fraud schemes commencing after 2010. PLAINTIFF further is informed and believes and thereon alleges that the RICO DEFENDANTS colluded with each other to defraud lenders into making loans and defrauded title insurers into issuing title insurance obtained by fraudulent means. The scheme worked through the RICO DEFENDANTS, mostly compromised of realtors, loan brokers, loan officers, escrow officers, real estate agents and  brokers to fraudulently acquire funds by fraud from unsuspecting lenders, insured by title insurance.  By the U.S. mail system, wires of funds to banks, facsimile communications, and the internet, the RICO DEFENDANTS recorded false documents in the chains of title to properties, recorded falsified Reconveyances or Trustee's Deeds Upon Sale, fabricated fictitious or strawbuyers of the properties who

purportedly acquired the properties through the fabricated Trustee's Deeds Upon Sale or other falsified title records; produced synthetic buyers who applied for purchase money loans from the lenders; used identify theft and false social security numbers to falsify the borrower/buyer information; and falsified bank information, credit reports, tax returns, Drivers Licenses, employment information, notary information, statements of identity and other manufactured and fictitious information for the purpose of inducing lenders (unbeknowns to them,) into making loans, to the RICO DEFENDANTS, with title insurance to ultimately pass on the loss to the title insurers. The RICO DEFENDANTS used cell phones, land lines, wires, facsimiles, the U.S. Mail and other means to further the interests of the criminal enterprise. They additionally used wire fraud to transfer the fraudulently obtained loan proceeds into accounts owned by the RICO DEFENDANTS. Once the loan proceeds were wired into certain banking accounts controlled and owned by the RICO DEFENDANTS under false names, they would immediately wire transfer the funds through several banks to make the funds difficult to trace. The RICO DEFENDANTS reaped millions of dollars fraudulently obtained from the PLAINTIFF and/or its predecessor's in interest. See 18 U.S.C. §§ 1962(a) and (d) respectively.

33.    Other RICO predicate acts, although appearing to be isolated events, were actually part of the overall conspiracy and pattern of racketeering activity alleged herein, *e.g.* mail fraud and bank fraud. See 18 U.S.C. §§ 1341 and 1344 respectively.

34.    The primary objective of the racketeering enterprise has been to inflict damage upon lenders, PLAINTIFF and its predecessor's in interest by this criminal activity.

## JURISDICTION

35.    This Honorable Superior Court has original jurisdiction pursuant to the Civil RICO remedies at 18 U.S.C. § 1964, the holdings of the U.S. Supreme Court in *Tafflin v. Levitt*, 493 U.S. 455 (1990), and the U.S. Court of Appeals for the Ninth Circuit in *Lou v. Belzberg*, 834 F.2d 730, hn. 4 (9th Cir. 1987) (California State courts have concurrent jurisdiction of civil RICO claims).

## THE PROPERTIES AT ISSUE IN THIS COMPLAINT

36.    The RICO DEFENDANTS used the follow properties, among othes, to defraud lenders and title insurers in furtherance of their criminal enterprise:

-8-
SECOND AMENDED COMPLAINT

Real property is located at 4050 Camino De La Cumbre, Sherman Oaks, CA 91423, and legally described as follows:

> That portion of Lots 1 and 2 in Block 9 of Tract No. 10731, in the City of Los Angeles, County of Los Angeles, State of California, as shown on map recorded in Book 2002, Pages 20-23 inclusive of Maps, I the Office of the County Recorder of said County of said County, bounded by the following described lines:

> Beginning at a point in the Southwesterly line of said Lot 2 distant thereon South 61° 25' 47" East 148.86 feet from the Southwesterly corner of said Lot 2; thence North 28° 34'14" East 89.92 feet; thence North 62° 21' 11" West 83.50 feet to the true point of beginning; thence continuing North 62° 11' 11" West 93.18 feet to the true point of beginning; thence Northerly along the Westerly lines of said Lots 2 and 1 to the Southerly terminus of that certain course in said Westerly line of Lot 1 shown on said map as North 17° 31' 20" East 59.22 feet, being also the Northwesterly corner of the land conveyed to Edward Green and wife, by deed recorded on August 14, 1958 in Book D187, Page 32, Official Records, in said office of the County Recorder; thence along the Northerly line of said land North 83° 12' 18" East 66.76 feet; thence South 18° 11' 20" West 98.72 feet to a point in the Easterly line of said land that is distant thereon North 27 ° 38' 49" East 58.05 fee from the true point of beginning; thence along said Easterly line South 27° 38' 49" West 58.05 feet to the true point of beginning.

Hereinafter, the above-described land shall be referred to herein as the "CAMINO PROPERTY."

*** 

Real Property at issue is commonly known as 4836 Calhoun Ave., Sherman Oaks, CA 91423, and legally described as follows:

> Lot 53 of Tract No. 9075 in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 127 page 86 of Maps, in the offices of the county recorder of said county.

Hereinafter, the above-described land shall be referred to herein as the "CALHOUN PROPERTY."

*** 

The next property is located at 4628 Kingswell Ave., Los Angeles, CA 90027, and legally described as follows:

> Lot 7 In Block "C" Of Edgemont Terrace, In The City Of Los Angeles, County Of Los Angeles, State Of California, As Per Map Recorded In Book

-9-

SECOND AMENDED COMPLAINT

3, Page 90 Of Maps, In The Office Of The County Recorder Of Said County.

Hereinafter, the above-described land shall be referred to herein as the "KINGSWELL PROPERTY."

\*\*\*

The the last property is located at 2018 North Catalina St., Los Angeles, CA 90027, and legally described as follows:

Lot 142 Of Tract No. 3907, In The City Of Los Angeles, County Of Los Angeles, State Of California, As Per Map Recorded In Book 42, Pages 38 And 39 Of Maps, In The Office Of The County Recorder Of Said County.

Hereinafter, the above-described land shall be referred to herein as the "CATALINA PROPERTY."

Plaintiff is informed and believes and thereon alleges that other properties may have been used to launder money, to defraud the Plaintiff and its predecessors in interest, resulting in damage to the Plaintiff as well as to other lenders and title insures.

### THE CRIMINAL ENTERPRISE FRAUD SCHEME

#### A. **THE CAMINO PROPERTY**

37.     On or about February 2, 2005, defendant ESCALERA obtained title to the CAMINO PROPERTY by a Grant recorded on February 2, 2005 in the Official Records of Los Angeles County as Instrument Number 05-0248291. PLAINTIFF is informed and believes and thereon alleges that ESCALERA and Does 14-25 falsely used the name of ALONZO as a strawbuyer because ESCALERA was unable to qualify for a purchase money loan by himself.

38.     ESCALERA,  agreed to secure a loan from  Argent ("ARGENT LOAN") secured by a deed of transfer which was recorded on February 2, 2005 in the Official Records of Los Angeles County as Instrument Number 05-0248292 ("ARGENT DOT").

39.     PLAINTIFF is informed and believes and thereon alleges that the ARGENT DOT was assigned to WELLS FARGO via a Corporation Assignment of Deed of Trust/Mortgage recorded on March 29, 2012 in the Official Records of Los Angeles County as Instrument Number 20120478897

-10-

SECOND AMENDED COMPLAINT

assigning all beneficial interest in the ARGENT DOT ("Assignment").

40.     PLAINTIFF is informed and believes and thereon alleges that a Substitution of Trustee ("SOT") was recorded on December 15, 2015 in the Official Records of Los Angeles County as Instrument Number 20141359291, purportedly substituting QUALITY as the trustee under the ARGENT DOT.

41.     PLAINTIFF is informed and believes and thereon alleges that ESCALERA, like the other defendants in the criminal enterprise, rented the CAMINO PROPERTY to third parties for at least Four Thousand Dollars ($4,000.00) per month and retained the rents instead of making mortgage payments. PLAINTIFF is informed and believes and thereon alleges ESCALARA was in default for most of the life of the ARGENT LOAN, and to prevent the loss of the CAMINO PROPERTY to a foreclosure, ESCALERA and RICO DEFENDANTS recorded numerous false documents against the CAMINO PROPERTY, and filed numerous bankruptcies in general with respect to the CAMINO PROPERTY and the other properties identified herein.  PLAINTIFF is informed and believes and thereon alleges that DEFENDANT ESCALERA filed bankruptcy in August 29, 2008 (dismissed two months later), February 3, 2009 (dismissed March 27, 2009), October 21, 2009 (dismissed on January 8. 2010), November 25, 2009 (dismissed December 10, 2009), August 8, 2013 (dismissed on February 3, 2014), and February 14, 2014 (dismissed on May 27, 2014).  Meanwhile, defendants ESCALERA and DOES 14-50 continued collecting rents without paying the mortgage.

42.     PLAINTIFF is informed and believes and thereon alleges that in approximately December, 2016, the RICO DEFENDANTS agreed to use the CAMINO PROPERTY as a vehicle to fraudulently obtain an Eight Hundred Fifty Thousand Dollars ($850,000.00) loan from a lender, and then used the loan proceeds  gained from the fraud in the criminal enterprise and for the benefit of the RICO DEFENDANTS.

43.     PLAINTIFF is informed and believes and thereon alleges that ESCALERA failed to make payments on the ARGENT LOAN, and a Notice of Trustee's Sale setting a sale date for February 26, 2016 ("NOTS") under the ARGENT DOT was recorded on February 3, 2016 in the Official Records of Los Angeles County as Instrument Number 20160123354. PLAINTIFF is informed and believes and

thereon alleges that SPS is the servicer and/or sub-servicer of the ARGENT LOAN on behalf of WELLS FARGO and is controlling the foreclosure proceedings on behalf of WELLS FARGO.

44.    PLAINTIFF is informed and believes and thereon alleges a second Notice of Trustee's Sale, setting a sale date of April 26, 2016, ("2nd NOTS") in connection with a default under the ARGENT DOT by the ESCALERA, was recorded on February 3, 2016 in the Official Records of Los Angeles County as Instrument Number 20160123354.

45.    PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS caused a fictitious Trustee's Deed Upon Sale ("ARGENT TDUS") to be recorded on July 8, 2016 in the Official Records of Los Angeles County as Instrument Number 20160797398 purporting to eliminate the ARGENT DOT from the chain of title to the CAMINO PROPERTY. The ARGENT TDUS states that: the non-judicial foreclosure sale occurred on June 8, 2016; that ATI was the highest bidder at the sale; that consideration was paid to the Trustee (QUALITY) and/or the beneficiary under the ARGENT DOT; that QUALITY authorized the ARGENT TDUS; that "Bradley McNair" signed the ARGENT TDUS; and that title was granted to ATI. PLAINTIFF is informed and believes, and thereon alleges that all of this information is in fact false.

46.    PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS recorded the false ARGENT TDUS in the chain of title to the CAMINO PROPERTY and made it appear as though ATI obtained title to the CAMINO PROPERTY through the ARGENT TDUS. PLAINTIFF is informed and believes and thereon alleges that ANDIA signed the false ARGENT TDUS using the name Bradley McNair. The RICO DEFENDANTS thereafter agreed to create a false purchase agreement to make it appear as though ATI and AT were selling the CAMINO PROPERTY to a person named TETIANA VOVK, in actuality of "synthetic buyer" to induce a lender into making a purchase money loan to VOVK. PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS agreed that they would work to secure a purchase money loan in the amount of One Million Dollars ($1,000,000.00) from a lender.   PLAINTIFF is informed and believes and thereon alleges that ESCALERA and the RICO DEFENDANTS agreed that ESCALERA would receive Two Hundred Thousand Dollars ($200,000.00) from this fraud scheme and the other monies were to be used in other

investments and schemes by the RICO DEFENDANTS. PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS agreed to falsify documents to wire the loan proceeds from the VOVK loan transaction to banking accounts controlled and held by the RICO DEFENDANTS.

47.    As a step in furtherance of the conspiracy to defraud PLAINTIFF, PLAINTIFF is informed and believes, and thereon alleges that the RICO DEFENDANTS fabricated and recorded the ARGENT TDUS allegedly signed by QUALITY on behalf of SPS and WELLS FARGO.  The RICO DEFENDANTS and DOES 14-50 thereafter caused the recording of the ARGENT TDUS. The ARGENT TDUS reflects ATI as the new owner of the CAMINO PROPERTY.

48.    On or about July 20, 2016, the RICO DEFENDANTS and DOES 14-50, and each of them, thereafter created a fraudulent Purchase Agreement to reflect a pending sale of the PROPERTY between VOVK and ATI ("FALSE PURCHASE AGREEMENT") purportedly signed by VOK and TIMIROVA PLAINTIFF is informed and believes and thereon alleges that DADYAN and HARITUNIAN created the FALSE PURCHASE AGREEMENT falsely reflecting that VOVK was purchasing the PROPERTY from ATI/AT for One Million Three Hundred Thousand Dollars ($1,300,000.00), and falsified the signatures on said document.  The PLAINTIFF is informed and believes, and thereon alleges that to give a false credibility to the transaction, HARITUNIAN and SECURELINE, and DOES 14-50, signed the False Purchase Agreement in the section of the purchase agreement stating that they were real estate agents for the seller, ATI.  DADYAN was behind the scenes drafting the documents and communicating with the various loan agents, loan processors, and escrow transactions to make sure that a lender would fund the loan for the transaction.  This was done to further induce a lender into loaning money to what it thought was a legitimate purchase transaction involving VOVK and ATI. Moreover, the RICO DEFENDANTS, on or about July 20, 2016, created an Agent Real Estate Disclosure Form reflecting that SECURELINE and HARITUNIAN were the real estate brokers for the buyer VOVK, and seller, ATI, even though Plaintiff is informed and believes and thereon alleges that buyer and seller were fictitious and created by the RICO Defendants to defraud a lender and to fraudulently obtain the loan.

49.    On or about July 27, 2016, DADYAN, SECURELINE, HARITUNIAN, MJF, CIAS and DOES 14-50 sent the FALSE PURCHASE AGREEMENT to UNITED ESCROW and represented that

-13-
SECOND AMENDED COMPLAINT

1 | VOVK was purchasing the PROPERTY from ATI forOne Million Three Hundred Thousand Dollars
2 | ($1,300,000.00) that was to be secured by a first deed of trust ("VOVK DEED OF TRUST") against the
3 | CAMINO PROPERTY.  UNITED ESCROW opened up escrow no. 58708-TK for the ATI-VOVK sale
4 | ("VOVK SALES TRANSACTION").

5 |      50.    The RICO DEFENDANTS and DOES 14-50 thereafter attempted to obtain a loan from
6 | Stearns Lending.  On or about July 20, 2016, DADYAN  contacted Stearns Lending requesting a loan
7 | for VOVK.  PLAINTIFF is informed and believes and thereon alleges that DADYAN, arranged for an
8 | appraiser to meet ESCALERA, along with another member of the criminal enterprise identified as "AVI"
9 | to enable the criminal enterprise to submit the appraisal to a lender for the fraudulent loan.

10 |      51.    On or about August 17, 2016,  ESCALERA met with other RICO DEFENDANTS at the
11 | property and discussed the criminal enterprise and monies to be divided from the fraudulently obtained
12 | loan process.

13 |      52.    In or about mid-September, 2016, PLAINTIFF is informed and believes and thereon
14 | alleges that Stearns Lending refused to make the loan, and in furtherance of the fraud, PLAINTIFF is
15 | informed and believes and thereon alleges that DADYAN, HARITUNIAN, SECURELINE, MJF, and
16 | DOES 14-50 contacted PLAINTIFF's assignor, Milestone Financial, DBA Alviso Funding, and
17 | requested a loan for VOVK for the purported purchase of the PROPERTY from ATI and AT. DADYAN,
18 | SECURELINE, and HARITUNIAN held themselves out as real estate agents and presented the False
19 | Purchase Agreement reflecting ATI/AT as the seller, VOVK as the buyer, and MJF as the loan broker.
20 | The False Purchase Agreement was presented to PLAINTIFF's Assignor to induce it into making a loan
21 | to VOVK under false pretenses.  In late September and early October, 2016, Defendants DADYAN,
22 | SECURELINE, HARITUNIAN, CIAS, A. AYVAZYAN, and MJF additionally prepared and presented
23 | false information to PLAINTIFF, including false statements of the synthetic borrower's (VOVK) income,
24 | employment, social security number, identification, assets, and creditworthiness. PLAINTIFF is
25 | informed and believes and thereon alleges that the RICO DEFENDANTS and DOES 14-50 worked in
26 | concert to induce PLAINTIFF into making the loan to VOVK.  As a result of the reliance on the
27 | information presented by the RICO DEFENDANTS that was falsified, PLAINTIFF's Assignor approved
28 |

-14-
SECOND AMENDED COMPLAINT

the loan for Eight Hundred Fifty Thousand Dollars ($850,000.00) to VOVK for her allegedly purchase of the CAMINO PROPERTY from ATI and AT (the "VOVK LOAN"). As a further fraudulent inducement for the funding of the VOVK LOAN, DADYAN and DOES 14-50 provided falsely notarized documents to PLAINTIFF reflecting that VOVK executed the VOVK DEED OF TRUST and the promissory note ("VOVK NOTE") (now assigned to PLAINTIFF) and represented that an authorized and California licensed notary had witnessed the signing of the VOVK DEED OF TRUST by VOVK. PLAINTIFF is informed and believes and thereon alleges that such notary stamp and notary signature were false, and were provided to PLAINTIFF to induce it into making a loan to the RICO DEFENDANTS. To further the RICO enterprise, PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS, as was their custom and practice on several transactions, manufactured telephone numbers and used the telephones, U.S. Mail and U.S. Wire to induce PLAINITFF into making the loan. They further created a false website for VOVK's purported employer, when in fact, no such company has ever existed. PLAINTIFF is informed and believes, and thereon alleges that the RICO DEFENDANTS created telephone numbers that they would answer to make it appear as though the employers were in fact authentic.

53.     Prior to the closing of the VOVK LOAN, on or about October 17, 2016, ESCALERA found out that the RICO DEFENDANTS were not going to give him any of money from the VOVK LOAN proceeds as they had originally agreed.  On October 19, 2016, ESCALERA recorded a false Mechanic's Lien against the CAMINO PROPERTY in the Official Records of the County of Los Angeles as instrument No. 20161288558, wherein he made a claim for Two Hundred Thousand Dollars ($200,000.00) in work allegedly performed for the CAMINO PROPERTY by Domingo & Sons dba All Do Construction. PLAINTIFF is informed and believes, and thereon alleges that ESCALERA immediately notified the RICO DEFENDANTS, including ATI and AT, and/or their agents, about the mechanics lien documents in attempt to compel the other RICO DEFENDANTS to pay him the Two Hundred Thousand Dollars ($200,000.00) of the fraudulently obtained loan proceeds.

54.     On or about October 7, 2016, PLAINTIFF funded the VOVK LOAN in the sum of Eight Hundred and Fifty Thousand Dollars ($850,000.00) and net funded the sum of Seven Hundred Seventy

Three Thousand Dollars ($773,000.00) to UNITED ESCROW in reliance on the representations that were falsified by DADYAN, SECURELINE, CIAS, KABILAFKAS, HARITIUNIAN, MJF, and DOES 14-50 in the VOVK LOAN documents, the VOVK DEED OF TRUST, and the VOVK NOTE.  On October 7, 2016, the VOVK DEED OF TRUST, securing the VOVK LOAN, in favor of Plaintff's Assignor was recorded in the Office of the County Recorder for Los Angeles County, California.

55.     PLAINTIFF is informed and believes, and thereon alleges that in furtherance of the fraud scheme and conspiracy, DADYAN, CIAS, A. AYVAZAN, CIAS, SECURLINE, HARITUNIAN, MJF, and DOES 14-50 and each of them, presented UNITED ESCROW with e-mails sent by wire transmissions, wire instructions, false escrow information so that UNITED ESCROW would wire the loan proceeds into an account controlled and held by the RICO DEFENDANTS."  PLAINTIFF is informed and believes, and thereon alleges that these RICO DEFENDANTS falsified documents to reflect that another escrow company would be receiving the  loan proceeds by wire.  DADYAN, SECURELINE, A. AVAZYAN, HARITUNIAN, CIAS, and DOES 14-50 fabricated the name of an escrow officer and escrow office information, used false addresses, fabricated telephone numbers and manufactured documentation to induce UNITED ESCROW into transferring the fraudulently obtained VOVK LOAN proceeds to them under fraudulent circumstances.  PLAINTIFF is informed and believes, and thereon alleges that in furtherance of the fraud scheme and conspiracy, two Fictitious Business Name Statements were filed for ESCROW DOC in 2014.

56. The RICO DEFENDANTS, and each of them, represented to UNITED ESCROW in writing and orally that ATI/AT purportedly was using the loan proceeds from the VOVK transaction to purchasing  real property located at 931 University Avenue, Burbank, California 91504 ("BURBANK PROPERTY"), another property used in the criminal enterprise.  PLAINTIFF is informed and believes and thereon alleges that all of this information was false and fabricated for the purpose of obtaining the loan proceeds for the criminal enterprise.

57.     PLAINTIFF is informed and believes and thereon alleges, that the RICO DEFENDANTS and DOES 14-50 used a portion of the fraudulently obtained monies from PLAINTIFF for the BURBANK PROPERTY, in furtherance of the criminal enterprise.  The RICO DEFENDANTS and

SECOND AMENDED COMPLAINT

DOES 14-50, and each of them, received money and value in excess of Seven Hundred Seventy Three Thousand and Seventy Four Dollars and Sixty Seven Cents ($773,074.67) from their fraudulent scheme for the CAMINO PROPERTY TRANSACTION.

58.     PLAINTIFF was the assignee of rights, title and interest held by PLAINTIFF in the VOVK DEED OF TRUST, pursuant to a recorded Assignment of Deed of Trust dated January 17, 2017 and recorded on March 16, 2017 as Instrument Number 20170298782 in the Office of the County Recorder for Los Angeles County,  together with an Assignment of Promissory Note secured by the VOVK DEED OF TRUST, including the Note therein described, the money due, and to become due thereon with interest, and all rights accrued or to accrue under the VOVK NOTE executed by Tatiana Vovk in favor of PLAINTIFF, and any and all rights in the claims against the Defendants named herein. The Trial Court herein has "voided" the VOVK Deed of Trust.

59.  Based upon the actions of the RICO DEFENDANTS, PLAINTIFF was damaged in the sum of Eight Hundred and Fifty Thousand Dolalrs ($$850,000.00) from this transaction alone.

### B.     THE CALHOUN PROPERTY

60.     PLAINTIFF is informed and believes and thereon alleges that on or about July 17, 2006, Tamara Townsend ("TOWNSEND") purportedly purchased the CALHOUN PROPERTY from Ramarcinss Corporation and obtained title through a Grant Deed recorded in the Los Angeles County Recorder's Office as Instrument No. 2006-1564263.

61.     PLAINTIFF is informed and believes, and thereon alleges that in connection with that purchase, Townsend obtained a first loan in the sum of Eight Hundred Thirty Two Thousand Dollars ($832,000.00) from SBMC Mortgage ("FIRST SBMC LOAN"), secured by a Deed of Trust recorded in the Los Angeles County Recorder's Office as Instrument No. 2006-1564264.  Townsend additionally obtained a second loan in the amount of One Hundred Four Thousand Dollars ($104,000.00) from SBMC ("SECOND LOAN"), and secured said loan with a second deed of trust recorded in the Los Angeles County Recorder's Office as Instrument No. 2006-1564265 ("SBMC DOT").

62.     PLAINTIFF is informed and believes and thereon alleges that on or about August 24, 2011, the First SMBC DOT was assigned to Deutsche Bank National Trust Company as Trustee for

-17-

SECOND AMENDED COMPLAINT

HarborView Mortgage Loan Trust 2006-SB1 ("HARBORVIEW") and an Assignment of the SBMC
DOT was recorded in the Office of the County Recorder as Instrument No. 2011-1139254.

63.    PLAINTIFF is informed and believes, and thereon alleges that Townsend failed to make
payments under the loan.

64.    PLAINTIFF is informed and believes and thereon alleges that on or about August 30,
2011, a Substitution of Trustee was recorded naming Executive Trustee Services, LLC dba ETS Services,
LLC as the Trustee under the First SMBC DOT recorded in the Los Angeles County Recorder's Office
as Instrument No. 20111173610.

65.    PLAINTIFF is informed and believes and thereon alleges that on or about August 30,
2011, HarborView's trustee, ETS Services, recorded a Notice of Default & Election to Sell Townsend's
property in connection with a default under the FIRST SMBC LOAN, in the Official Records of Los
Angeles County as Instrument Number as Instrument No. 2011-1173611.

66.    PLAINTIFF is informed and believes and thereon alleges that on December 1, 2011, a
Notice of Trustee's Sale with the Los Angeles County Recorder under Instrument No. 2011-1620844
was recorded.

67.    PLAINTIFF is informed and believes and thereon alleges that RICO DEFENDANTS
caused a Trustee's Deed Upon Sale ("SBMC TDUS") to be recorded on March 29, 2012 in the Official
Records of Los Angeles County as Instrument Number 20120482851 purporting to eliminate the SMBC
DOT.  The SMBC TDUS (falsely) states that: the non-judicial foreclosure sale occurred on December
27, 2011 on the CALHOUN PROPERTY; that MIKAELYAN was the highest bidder at the sale; that
consideration was paid to the Trustee (ETS) and/or the beneficiary under the SBMC DOT; that ETS was
the authorized trustee under the SMBC DOT; that "Cathy Lee" signed the SBMC TDUS; and that title
was granted to MIKAELYAN.  PLAINTIFF is informed and believes that ETS disputes that its agent
signed the SMBC TDUS and has proceeded with a foreclosure proceeding in spite of the recorded SMBC
TDUS.  Moreover, PLAINTIFF is informed and believes and thereon alleges that ANDIA signed the
false TDUS.

68.    PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS

created a false document entitled "Grant Deed" and purportedly transferred MIKAELYAN's interest in the CALHOUN PROPERTY to Equity Partners International by recording, on or about August 14, 2012, a Grant Deed in the Los Angeles County Recorder's Office as Instrument No. 201208140720047 as a "bonified gift" for zero consideration.

69.     PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS created a false document entitled "Grant Deed" and purportedly transferred EQUITY PARTNER INTERNATIONAL, LLC's ("EQUITY PARTNER") interest in the CALHOUN PROPERTY to SAHAKYAN MANAGEMENT TRADING, INC. ("SAHAKYAN MANAGEMENT"), a California corporation, and Arthur Abrahmov, a single man, by recording a Grant Deed in the Los Angeles County Recorder's Office as Instrument No. 201220332778, on December 31, 2012.

70.     PLAINTIFF is informed and believes and thereon alleges that on or about December 17, 2012, the RICO DEFENDANTS created a false document entitled "Deed of Trust with Absolute Assignment of Rents" in favor of Rehabbers Financial, Inc. ("REHABBERS") as the beneficiary, reflecting that Rehabbers had loaned SAHAKYAN MANAGEMENT and ABRAHMOV the sum of Four Hundred Thirty Eight Thousand Seven Hundred and Fifty Dollars ($438,750.00) ("REHABBERS DOT"), and on December 31, 2012, caused said document to be recorded in the Los Angeles County Recorder's Office as Instrument No. 201212311050165.  PLAINTIFF is informed and believes, and thereon alleges that no money was loaned on this transaction as reflected in the REHABBERS DOT and this was manufactured by the RICO DEFENDANTS for the purpose of obtaining additional monies using the CALHOUN PROPERTY under false pretenses.

71.     PLAINTIFF is informed and believes and thereon alleges that on or about March 14, 2013, the RICO DEFENDANTS created another false document entitled "Assignment of Deed of Trust" assigning the REHABBERS DOT to Aztec T. D. Service Co. and recorded said document in Los Angeles County Recorder's Office as Instrument No. 20130391443 on March 14, 2013.

72.     PLAINTIFF is informed and believes and thereon alleges that on or about March 4, 2013, the RICO DEFENDANTS created another false document entitled "Assignment of Deed of Trust" assigning the REHABBERS DOT to Aztec T. D. Service Co. and recorded said document in Los Angeles

County Recorder's Office as Instrument No. 20130394279 on April 22, 2013.

73.     PLAINTIFF is informed and believes and thereon alleges that in or about February, 2013, HARITUNIAN, TANDEM, ABRAHMSON, K-ASTRON, A. AYVAZAN and DADYAN falsified bank statements, a credit report, a loan application, employment information, and asset information for YESAYAN to induce a lender into making a loan to this criminal enterprise.  Moreover, PLAINTIFF is informed and believes and thereon alleges that DAYDAN, TANDEM and ABRAHAMSON created a false Real Estate Purchase Agreement ("PURCHASE AGREEMENT") wherein it appeared as though YESAYAN was purchasing the CALHOUN PROPERTY from SAHAKYAN for a purchase price of Seven Hundred and Fifty Thousand and Two Hundred and Sixty Dollars ($750,260.00).  PLAINTIFF is informed and believes and thereon alleges that A. AYVAZAN signed the false real estate purchase agreement  and all of the information contained therein  to fraudulently induce a lender into making a purchase money loan to the RICO DEFENDANTS who used the CALHOUN PROPERTY as purported security for the loan from Flagstar Bank ("FLAGSTAR").

74.     On or about April 3, 2013, PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS, through TANDEM, submitted a loan application purportedly for the  new buyer/borrower, YESAYAN, to FLAGSTAR. Unbeknownst to FLAGSTAR, the loan application was filled with false information about YESAYAN. Such information was submitted to FLAGSTAR for the purpose of inducing FLAGSTAR into making a HUD loan to YESAYAN.  Moreover, PLAINTIFF is informed and believes and thereon alleges that Defendant A. AYVAZAN and the RICO DEFENDANTS created false information including a credit reports, bank statements, a driver's license, a social security card, employment information, a social security number, and other pertinent information, for the purpose of inducing FLAGSTAR into making the loan to YESAYAN for the benefit of the criminal enterprise and the RICO DEFENDANTS.  All of this fraudulent information was sent through  the mail system, the internet or by facsimile.   Like the VOVK LOAN, PLAINTIFF is informed and believes, and thereon alleges that TANDEM, ABRAMSON, along with the RICO DEFENDANTS, falsely created an Equifax Verification Services Taxpayer Tax Return Summary and other financial documents to make it appear as though YESAYAN earned income sufficient to qualify for a loan from FLAGSTAR.  PLAINTIFF is

1   informed and believes, and thereon alleges that all of the information provided to FLAGSTAR was false.

2       75.    To further the RICO enterprise, PLAINTIFF is informed and believes and thereon alleges

3   that the RICO DEFENDANTS, including DOES 14-50, as was their custom and practice on several

4   transactions, made up a telephone number and a false website for YESAYAN's purported employer,

5   EBK Computer Solutions, when in fact, no such company has ever existed.  PLAINTIFF is informed and

6   believes, and thereon alleges that the RICO DEFENDANTS created telephone numbers that they would

7   answer to make it appear as though the employers were in fact real for these transactions.  PLAINTIFF

8   is informed and believes and thereon alleges that the RICO DEFENDANTS created this false

9   employment information in furtherance of their criminal enterprise to induce a lender into making a loan

10   to YESAYAN.

11       76.    PLAINTIFF is further informed and believes and thereon alleges that in April 19, 2013,

12   KABILAKEAS, K-ASTRON VENTURES dba KONSTANT CLOSINGS, and CIAS acted as the

13   escrow officer throughout the transaction.  PLAINTIFF is informed and believes and thereon alleges that

14   each of the RICO DEFENDANTS were part of the criminal enterprise, facilitated the fraud by making it

15   appear as though YESAYAN was a real borrower/buyer and that he made a deposit into escrow in the

16   sum of Ten Thousand Dollars ($10,000.00) when in fact, YESAYAN never deposited any monies with

17   KONSTANT CLOSING and/or CIAS for the CALHOUN PROPERTY.  PLAINTIFF is further informed

18   and believes, and thereon alleges that the RICO DEFENDANTS, including K-ASTRON,

19   KABILAFAKAS, DADYAN, ARTHUR A. AYVAZAN thereafter falsely used the notary stamp of

20   Karen Albro ("ALBRO") and impersonated ALBRO as a notary on several documents they created

21   making it appear as though Albro had notarized the signatures of YESAYAN.  PLAINTIFF is informed

22   and believes and thereon alleges that the RICO DEFENDANTS each knew that the notarizations on the

23   loan documents sent to FLAGSTAR were in fact false, and perpetrated the fraud by sending the loan

24   documents by U.S. mail, facsimile and the internet to FLAGSTAR.

25       77.    In further of these predicate acts and in furtherance of the RICO enterprise, the RICO

26   DEFENDANTS, including presented FLAGSTAR with the false information they had manufactured,

27   including a social security number, address, employment information, tax information, credit reports,

28

banking information, a Driver's License, and pertinent information, as well as the Purchase Agreement.

78.     PLAINTIFF is informed and believes, and thereon alleges that in reliance on all of this information provided to FLAGSTAR, on or about June 28, 2013, FLAGSTAR funded a loan in the name of YESAYAN in the sum of Six Hundred Eighty-One Thousand Seven Hundred and Twenty One Dollars ($681,721.00) ("FLAGSTAR LOAN").  At the time the FLAGSTAR LOAN was made, FLAGSTAR reasonably relied upon the representations made by the RICO DEFENDANTS that were in fact false. Moreover, YESAYAN allegedly signed a Note and a Deed of Trust securing the FLAGSTAR LOAN, which was recorded in the Los Angeles Recorder's Office as Instrument No. 20130961169 on June 28, 2013 against the CALHOUN PROPERTY ("FLAGSTAR DOT").

79.     PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS received the FLAGSTAR LOAN funds through wire fraud, and used  the loan proceeds for themselves and the criminal enterprise.

80.     PLAINTIFF is informed and believes and thereon alleges that on or about July 16, 2014, FLAGSTAR conveyed all rights, title and interest in the FLAGSTAR LOAN and FLAGSTAR DOT to Caliber Home Loans, Inc. ("CALIBER"), and an Assignment of Deed of Trust was recorded on July 16, 2014 in the Los Angeles County Recorder's Office as Instrument No. 20140731345. YESAYAN failed to make any payments on the FLAGSTAR LOAN.

81.     On or about September 12, 2014, CALIBER, through its trustee, QUALITY, recorded a Notice of Default and Election to Sell under Deed of Trust in the Los Angeles County Recorder's Office as Instrument No. 20140965005.  CALIBER and its Trustee were unable to make any contact with YESAYAN.

82.     On or about June 15, 2015, caliber, through its trustee, QUALITY, recorded a Notice of Trustee's Sale in the Los Angeles County Recorder's Office as Instrument No. 20150705135.

83.     PLAINTIFF is informed and thereon alleges that on November 4, 2016, TOWNSEND filed a lawsuit for quiet title and fraud, among other causes of action, alleging that the SBMC TDUS was fraudulent, and that the all liens encumbering the CALHOUN PROPERTY should be declared void.

84.     On or about February 6, 2017, PLAINTIFF paid CALIBER's title insurance claim in the

sum of Six Hundred Eighty One Thousand and Seven Hundred and Twenty One Dollars ($681,721.00) based upon the fraud in the chain of title. CALIBER thereafter assigned PLAINTIFF all beneficial interest under the FLAGSTAR DOT together with all rights under the Note and FLAGSTAR DOT.

**THE KINGSWELL PROPERTY**

85.     PLAINTIFF is informed and believes and thereon alleges that on or about March 4, 2003, A. AKOPYAN, or someone using the name A. AKOPYAN, purchased the KINGSWELL PROPERTY.

86.     PLAINTIFF is informed and believes and thereon alleges that by July of 2005, A. AKOPYAN had refinanced the KINGSWELL PROPERTY and obtained home equity lines of credit, pursuant to which she took out approximately Three Hundred and Twenty Eight Thousand Dollars ($328,000.00) in equity for use by the RICO DEFENDANTS in the criminal enterprise, using the KINGWELL PROPERTY as collateral.

87.     PLAINTIFF is informed and believes and thereon alleges that in August 2006, A. AKOPYAN, with the assistance of VARTAN, refinanced the KINGSWELL PROPERTY yet again, and obtained a Seven Hundred and Seventy Four Thousand Dollars ($774,000.00) first lien loan from Countrywide Homes Loans, Inc. ("COUNTRYWIDE") and a second lien deed of trust also in favor of Countrywide, to secure a HELOC in the amount of Two Hundred and Forty Thousand Dollars ($240,000.00).   The two COUNTRYWIDE deeds of trust were recorded on August 31, 2006 as Instrument Nos. 061946828 and 061946829.

88.     PLAINTIFF is informed and believes and thereon alleges that thereafter in 2006, Countrywide transferred its interest in the first lien deed of trust into a securitized pool of loans over which Deutsche Bank National Trust Company ("DEUTSCHE BANK") was the then acting trustee ("DEUTSCHE BANK DOT").

89.     PLAINTIFF is informed and believes and thereon alleges that in or about December of 2010, A. AKOPYAN defaulted on the DEUTSCHE BANK DOT by failing to make payments on the loan.

90.     PLAINTIFF is informed and believes and thereon alleges that ReconTrust, as the trustee under the DEUTSCHE BANK DOT, thereupon commenced a nonjudicial foreclosure proceeding against

SECOND AMENDED COMPLAINT

the KINGSWELL PROPERTY by recording a Notice of Default and Election to Sell on December 29, 2010, as Instrument No. 20101927762.

91.    PLAINTIFF  is informed and believes and thereon alleges that in and around March of 2011, the RICO DEFENDANTS, including DOES 14-50 managed to obtain yet another loan, even though the KINGSWELL PRPOPERTY already was in foreclosure, that was secured by a third lien deed of trust against the KINGSWELL PROPERTY, in the amount of Fifteen Thousand Dollars ($15,000.00). PLAINTIFF is informed and believes and thereon alleges that such information was false and that no money was loaned from Apex, but a lien was recorded against this property by the RICO DEFENDANTS merely as part of the scheme to delay foreclosure and to collect monies from another lender through a fraudulent refinance transaction.  A third deed of trust in favor of Apex was recorded on March 1, 2011 as Instrument No. 20110315667.

92.    PLAINTIFF is informed and believes and thereon alleges that on or about October 13, 2011, ReconTrust as the Trustee handling the foreclosure sale on the first lien Deutsche Bank DOT, caused to be published and recorded a Notice of Trustee's Sale as Instrument No. 20111386524, thereby scheduling a trustee's sale of the KINGWELL PROPERTY for November 2, 2011.

93.    PLAINTIFF is informed and believes and thereon alleges that  DADYAN, K-ASTRON, KABILAFAKAS, CIAS, A. AYVAZYAN, TANDEM, ABRAMSON, and DOES 14-50 thereafter agreed to record a falsified Trustee's Deed Upon Sale against the Kingswell Property and make it appear as though Capital Securities obtained title to the KINGSWELL PROPERTY through the recorded Trustee's Deed Upon Sale.  PLAINTIFF is informed and believes and thereon alleges that the name Capital Securities listed as the buyer at the foreclosure sale, was a manufactured entity associated with the criminal enterprise and created by the RICO DEFENDANTS.   Thereafter, Capital Securities conveyed the KINGWELL PROPERTY to  a synthetic person named EPRAKSI GEVORKIAN.

94.    PLAINTIFF further is informed and believes an on that basis alleges that the RICO DEENDANTS, including DADYAN, K-ASTRON, KABILAFAKAS, CIAS, A. AYVAZYAN, TANDEM, ABRAMSON, CIAS, SECURELINE, and HARITUNIAN, thereafter created a false purchase agreement to make it appear as though GEVORKIAN was selling the KINGSWELL

PROPERTY to KARAPET EMBOYAN, another synthetic person, to induce an innocent lender, Novastar, LLC ("NOVASTAR"), into making a purchase money loan to EMBOYAN.

95.     PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS agreed that defendants DADYAN, K-ASTRON, KONSTANT CLOSINGS, KABILAKFAS, CIAS, HARITUNIAN, SECURELINE, TANDEM, ABRAHMSON, and DOES 14-50 would prepare false documentation to obtain a purchase money loan in the amount of a Six Hundred Thirty Seven Thousand and Five Hundred Dollars ($637,500.00) to be used in the criminal enterprise.  PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS, specifically TANDEM, ABRAHMSON, and DOES 14-50 drafted a false loan application making it appear as though defendant EMBOYAN was applying for the loan.  These Defendants created  false employment information, false asset statements, a manufactured identification, and other fraudulent documentation to induce a lender into making the loan.

96.     PLAINTIFF is informed and believes and on that basis alleges that in furtherance of this scheme, the RICO DEFENDANTS caused a Trustee's Deed Upon Sale ("LENDING WEST TDUS") to be recorded on March 29, 2012 in the Official Records of Los Angeles County as Instrument No. 20120482852 purporting to eliminate the Deutsche Bank DOT.  PLAINTIFF is informed and believes and on that basis alleges that the LENDING WEST TDUS (falsely) states that: a non-judicial foreclosure sale occurred on November 2, 2011 on the KINGSWELL PROPERTY; that Lending West ("LENDING WEST") was the highest bidder at the sale; that consideration was paid to the Trustee (ReconTrust) and/or the beneficiary under the DEUTSCHE BANK DOT; that an Assistant Vice President of ReconTrust signed the LENDING WEST TDUS; that the LENDING WEST TDUS was notarized by Angelica A. Ortiz ("ORTIZ"); and that title of the KINGWELL PROPERTY was granted to LENDING WEST.  PLAINTIFF is informed and believes and thereon alleges that this information was untrue.

97.     PLAINTIFF is informed and believes and thereon alleges that on or about June 22, 2012, ReconTrust recorded a Notice of Rescission of Trustee's Deed Upon Sale dated June 19, 2012 as Instrument No. 20120929859, purporting to rescind the LENDING WEST TDUS by claiming it was

"recorded in error." The Notice of Rescission of the LENDING WEST TDUS is purportedly notarized by ORTIZ just as was the LENDING WEST TDUS. PLAINTIFF is informed and believes and thereon alleges that the Notice of Rescission was created, executed and recorded by the same individuals and/or entities that were responsible for the creation, execution and recordation of the LENDING WEST TDUS and that for some unknown reason, those individuals wanted to place the KINGSWELL PROPERTY title into the name of Capital Securities instead of the name of LENDING WEST.

98.     PLAINTIFF is informed and believes and thereon alleges that several months later, on or about September 20, 2012, the RICO DEFENDANTS caused a second Trustee's Deed Upon Sale to be recorded as Instrument No. 20121417127 ("FIRST CAPITAL SECURITIES TDUS"), purporting to eliminate the DEUTSCHE BANK DOT. PLAINTIFF is informed and believes and on that basis alleges that the FIRST CAPITAL SECURITIES TDUS states that a foreclosure sale was held on August 17, 2012 on the KINGSWELL PROPERTY; that Capital Securities was the highest bidder at the sale; that consideration was paid to the Trustee (ReconTrust) and/or the beneficiary under the DEUTSCHE BANK DOT; that an Assistant Vice President of ReconTrust signed the FIRST CAPITAL SECURITIES DOT; that the FIRST CAPITAL SECURITIES DOT was notarized purportedly by Tracey A. Dominique; and that title to the KINGSWELL PROPERTY was granted to Capital Securities.

99.     PLAINTIFF is informed and believes and thereon alleges that on or about December 28, 2012, the RICO DEFENDANTS caused a third Trustee's Deed Upon Sale to be recorded as Instrument No. 20122018962 ("SECOND CAPITAL SECURITIES TDUS"), again purporting to eliminate the Deutsche Bank DOT. PLAINTIFF is informed and believes and on that basis alleges that the SECOND CAPITAL SECURITIES TDUS states that a foreclosure sale was held on August 17, 2012 on the KINGSWELL PROPERTY; that Capital Securities was the highest bidder at the sale; that consideration was paid to the Trustee (ReconTrust) and/or the beneficiary under the Deutsche Bank DOT; that an Assistant Vice President of ReconTrust signed the Second Capital Securities TDUS; that the SECOND CAPITAL SECURITIES TDUS was notarized by C. M. Frazier; and that title to the KINGSWELL PROPERTY was granted to Capital Securities.

100.     PLAINTIFF is informed and believes and thereon alleges, that all three false Trustee's

Deeds Upon Sale were created, executed, and recorded by the RICO DEFENDANTS for the purpose of furthering the foreclosure avoidance scheme to which A. AKOPYAN agreed and consented. PLAINTIFF is informed and believes and thereon alleges that A. AKOPYAN benefitted and gained time due to the RICO scheme because said actions delayed the foreclosure of the DEUTSCHE BANK DOT and clouded and confused the KINGSWELL PROPERTY's title. PLAINTIFF is informed and believes and thereon alleges that the fraud scheme was known to, consented to, approved and ratified by A. AKOPYAN and, therefore, she is a co-conspirator or aided and abetted the RICO scheme.

101.   PLAINTIFF is informed and believes and on that basis alleges that in furtherance of this scheme, on or about January 23, 2013, the RICO DEFENDANTS recorded a Grant Deed dated December 18, 2012 in the Los Angeles County Recorder's Office as Instrument Number 20130109934 purporting to transfer title to the KINGSWELL PROPERTY to GEVORKIAN ( "GEVORKIAN GRANT DEED"). The GEVORKIAN GRANT DEED states it was executed by YESAYAN, on behalf of Capital Securities, and notarized by Vicki Le Mere.  Similar to the fraud and RICO schemes with PLAINTIFF's loan to VOVK, PLAINTIFF is informed and believes, and thereon alleges, that no notary witnessed the signatures.

102.   PLAINTIFF is informed and believes and on that basis alleges that on or about January 23, 2013, the RICO DEENDANTS recorded  a Deed of Trust dated January 7, 2013 in the Los Angeles County Recorder's Office as Instrument Number 20130109935, pursuant to which GEVORKIAN as trustor, purported to convey a security interest in the KINGSWELL PROPERTY to La Costa Inc. as trustee, and La Costa LLC, as lender ("LA COSTA DEED OF TRUST").  The LA COSTA DEED OF TRUST states it was notarized by Deborah Arteaga, however PLAINTIFF is informed and believes, and thereon alleges, that no notary witnessed the signatures.

103.   PLAINTIFF is informed and believes and thereon alleges that in furtherance of the fraud scheme, in or around December 2013, LBC Capital and Lending Bee, Inc. ("LENDING BEE"), as loan brokers, contacted NOVASTAR and represented to NOVASTAR that they had a loan opportunity for NOVASTAR with purported borrower EMBOYAN.

104.   PLAINTIFF is informed and believes and thereon alleges that in or around December

SECOND AMENDED COMPLAINT

2013, defendants TANDEM MORTGAGE, DADYAN, SECURELINE, HARITUNIAN, and DOES 14 through 50, conspired with LBC Capital and LENDING BEE to present false information to NOVASTAR about defendant EMBOYAN's income, employment, social security number, identification, and assets.

105. PLAINTIFF is informed and believes and thereon alleges that in furtherance of the fraud scheme, in or around December 2013, LBC Capital and LENDING BEE, Inc. sent NOVASTAR EMBOYAN'S purported loan application – including the false information about EMBOYAN'S income, employment, social security number, identification, and assets for a loan to purchase the KINGSWELL PROPERTY for Two Million One Hundred Sixty Nine Thousand and Two Hundred and Twenty One Dollars ($2,169,221.00), pursuant to a purchase agreement with GEVORKIAN, all fraudulently created by the RICO DEFENDANTS.

106. PLAINTIFF further is informed and believes and on that basis alleges that in or around December 2013, the RICO DEFENDANTS and DOES 14-50, falsely represented to NOVASTAR that EMBOYAN was purchasing the KINGSWELL PROPERTY and that EMBOYAN desired a purchase money loan to be secured by the KINGSWELL PROPERTY.

107. PLAINTIFF is informed and believes and thereon alleges that in reliance on the fraudulently created documents that were provided to NOVASTAR to dupe into making a loan, on or about December 5, 2013, NOVASTAR agreed to loan EMBOYAN Six Hundred Thirty Seven Thousand and Five Hundred Dollars ($637,500.00) ("NOVASTAR LOAN").

108. PLAINTIFF is informed and believes and thereon alleges that the NOVASTAR LOAN is evidenced by a Note dated December 5, 2013 in favor of NOVASTAR, as lender, and signed by the RICO DEFENDANTS and DOES 14-50 in the name of EMBOYAN, as borrower, in the principal amount of Six Hundred Thirty Seven Thousand and Five Hundred Dollars ($637,500.00) ("NOVASTAR NOTE").

109. PLAINTIFF is informed and believes and thereon alleges that the NOVASTAR NOTE was secured by a Deed of Trust allegedly signed by EMBOYAN, and conveying to NOVASTAR a security interest in the KINGSWELL PROPERTY ("NOVASTAR DEED OF TRUST"). PLAINTIFF

is informed and believes and thereon alleges that the NOVASTAR DEED OF TRUST states it was notarized by Stacy A. Lim, but that no notary witnessed the signatures.

110.   PLAINTIFF is informed and believes and on that basis that on or about December 18, 2013, NOVASTAR funded the NOVASTAR LOAN by wiring Six Hundred Thirty Seven Thousand and Five Hundred Dollars ($637,500.00) to a Bank of America account for KONSTANT CLOSINGS, which acted as the purported escrow servicing company for the NOVASTAR LOAN like the VOVK SALES TRANSACTION and PLAINTIFF.

111.   PLAINTIFF is informed and believes and thereon alleges that defendant CIAS acting as SIMON, held herself out as the escrow officer for KONSTANT CLOSINGS. PLAINTIFF is informed and believes and thereon alleges that pursuant to the written escrow instructions, defendant CIAS acting as SIMON, on behalf of the RICO DEFENDANTS and defendant K-ASTRON DBA KONSTANT CLOSINGS, agreed and represented that EMBOYAN was purchasing the KINGSWELL PROPERTY from GEVORKIAN pursuant to a fictitious residential purchase agreement, title to the KINGSWELL PROPERTY would be vested in EMBOYAN, NOVASTAR would receive a first priority deed of trust against the KINGSWELL PROPERTY, and all existing liens would be satisfied prior to recording.

112.   PLAINTIFF is informed and believes and thereon alleges that CIAS, K-ASTRON and KONSTANT CLOSINGS knew that the notarizations on the loan documents sent to NOVASTAR were in fact false, and perpetrated the fraud by sending such documents to NOVASTAR.

113.   PLAINTIFF is informed and believes and thereon alleges on that basis allege that the Final Settlement Statement provided to NOVASTAR by KONSTANT CLOSINGS stated that Five Hundred Fifty One Thousand and Thirty Five Dollars and Fifty Six Cents ($551,035.56) of the sale proceeds would be used to pay off an existing first mortgage on the KINGSWELL PROPERTY.

114.   PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS made the above-described misrepresentations to NOVASTAR for the purpose of immediately disbursing the NOVASTAR LOAN proceeds wired into the fraudulent account obtained by false pretenses so that once when the fraud scheme was detected, no monies would be left in the account where the monies were wired.

SECOND AMENDED COMPLAINT

115.    PLAINTIFF is informed and believes and thereon alleges that beginning in April, 2014 and continuing thereafter, EMBOYAN defaulted on the NOVASTAR NOTE and Deed of Trust by failing to make monthly payments and failing to pay the NOVASTAR NOTE in full when it came due.

116.    PLAINTIFF is informed and believes, and thereon alleges that to perpetrate the fraud even further, the RICO DEFENDANTS, including DADYAN, falsified a death certificate purporting to be that of EMBOYAN and indicating he had died in Armenia in March 2014.  PLAINTIFF is informed and believes and thereon alleges that in or around July, 2014, LENDING BEE sent NOVASTAR the falsified death certificate, purportedly obtained by DADYAN.

117.    PLAINTIFF is informed and believes, and thereon alleges that the death certificate of defendant EMBOYAN is false because EMBOYAN and/or the RICO DEFENDANTS and DOES 14-50 took out at least one additional loan secured by an unrelated property after his purported death.

118.    PLAINTIFF is informed and believes and thereon alleges that NOVASTAR subsequently commenced nonjudicial foreclosure proceedings, and on February 29, 2016, S.B.S. Trust Deed Network, as trustee, conducted a trustee's sale of the KINGSWELL PROPERTY, at which the KINGSWELL PROPERTY reverted to NOVASTAR upon its credit bid.

119.    PLAINTIFF is informed and believes and thereon alleges that on or about October 7, 2015, A. AKOPYAN and VARTAN commenced Los Angeles Superior Court Case No. BC597238, entitled *Akopyan v. Yesayan*, in which they allege that the NOVASTAR DEED OF TRUST and Trustee's Deed Upon Sale are void.  PLAINTIFF is informed and believes and thereon alleges that on or about May 17, 2016, DEUTSCHE BANK filed a cross-complaint in *Akopyan v. Yesayan*, alleging it holds a first priority lien against the KINGSWELL PROPERTY and further that the NOVASTAR DEED OF TRUST and Trustee's Deed Upon Sale are void. Plaintiff has been damaged in the sum of Six Hundred Thirty Seven Thousand and Five Hundred Dollars ($637,500.00) as it was damaged due to the fraud.

**THE CATALINA PROPERTY**

120.    PLAINTIFF is informed and believes and on that basis alleges, that at and around this same time period, similar foreclosure avoidance related documents were being recorded in connection with another real property that A. AKOPYAN and VARTAN also owned, the CATALINA PROPERTY.

-30-

SECOND AMENDED COMPLAINT

PLAINTIFF is informed and believes that all of the RICO DEFENDANTS were involved in this fraud scheme involving the CATALINA PROPERTY, and used both of these properties in the criminal enterprise.

121.   PLAINTIFF is informed and believes and thereon alleges that on or about February 13, 1998, A. AKOPYAN and VARTAN, purchased the CATALINA PROPERTY.

122.   PLAINTIFF is informed and believes and thereon alleges that in August 2006, A. AKOPYAN, with the assistance of VARTAN, refinanced the CATALINA PROPERTY and obtained a One Million and Eight Hundred and Twenty Thousand Dollar ($1,820,000.00) first lien loan from Countrywide ("COUNTRYWIDE DOT") and a Seven Hundred and Ninety Thousand Dollar ($790,000.00) second lien deed of trust also in favor of COUNTRYWIDE. The two COUNTRYWIDE deeds of trust were recorded on September 6, 2006 as Instrument Nos. 06 1984919 and 06 1984920.

123.   PLAINTIFF is informed and believes and thereon alleges that A. AKOPYAN subsequently defaulted on the COUNTRYWIDE DOT by failing to make payments on the loan.

124.   PLAINTIFF is informed and believes and thereon alleges that ReconTrust, as the trustee under the COUNTRYWIDE DOT, thereupon commenced a nonjudicial foreclosure proceeding against the CATALINA PROPERTY by recording a Notice of Default and Election to Sell on November 3, 2011 as Instrument No. 20111492061.

125.   PLAINTIFF is informed and believes and thereon alleges that prior to any scheduled foreclosure sale, and in furtherance of the fraud scheme described herein, A. AKOPYAN transferred title to the CATALINA PROPERTY to herself, her husband Sogomon, and her son, VARTAN pursuant to a Grant Deed recorded on November 15, 2011 as Instrument No. 20111544830. PLAINTIFF is informed and believes and thereon alleges, that this transfer of title by A. AKOPYAN and VARTAN was, as with the KINGSWELL PROPERTY, the beginning of a variety of devices the criminal enterprise used, as identified above, including without limitation, the filing of a series of individual bankruptcies to delay the foreclosure process.

126.   PLAINTIFF is informed and believes and thereon alleges that on or about February 13, 2013, ReconTrust as the Trustee handling the foreclosure sale on the first lien Countrywide DOT, caused

-31-

SECOND AMENDED COMPLAINT

1  to be published and recorded a Notice of Trustee's Sale as Instrument No. 20130231038, thereby

2  scheduling a trustee's sale of the CATALINA PROPERTY for March 8, 2013.

3      127.  PLAINTIFF is informed and believes and thereon alleges that Sage Point Lender Services,

4  as the trustee under the COUNTRYWIDE DOT, recorded a second Notice of Default and Election to

5  Sell on September 16, 2014 as Instrument No. 20140974233.

6      128.  PLAINTIFF is informed and believes and thereon alleges that on or about January 23,

7  2015, Barrett Daffin Frappier Treder & Weiss, LLP as the Trustee handling the foreclosure sale on the

8  first lien COUNTRYWIDE DOT, caused to be published and recorded a Notice of Trustee's Sale as

9  Instrument No. 20150079285, thereby scheduling a trustee's sale of the CATALINA PROPERTY for

10 February 20, 2015.

11     129.  PLAINTIFF is informed and believes and thereon alleges that in furtherance of the RICO

12 DEFENDANTS' fraudulent scheme, the RICO DEFENDANTS caused a Trustee's Deed Upon Sale to

13 be recorded on June 25, 2015 in the Los Angeles County Recorder's Office as Instrument Number

14 20150760976 ("RA STERLING TDUS"), purporting to eliminate the Countrywide DOT.  PLAINTIFF

15 is informed and believes and on that basis alleges that the RA STERLING TDUS (falsely) states that: a

16 non-judicial foreclosure sale occurred on June 3, 2015 on the CATALINA PROPERTY; that RA Sterling

17 Investments & Holdings ("RA STERLING") was the highest bidder at the sale; that consideration was

18 paid to the Trustee (Barrett Daffin Frappier Treder & Weiss, LLP) and/or the beneficiary under the

19 Countrywide DOT; that an Associate Director of Barrett Daffin Frappier Treder & Weiss, LLP signed

20 the RA STERLING TDUS; that the RA STERLING TDUS was notarized by William D. Owns; and that

21 title was transferred to RA STERLING.

22     130.  PLAINTIFF is informed and believes and thereon alleges, that the RA STERLING TDUS

23 was created, executed, and recorded for the purpose of furthering the foreclosure avoidance scheme to

24 which A. AKOPYAN agreed and consented.  PLAINTIFF is informed and believes and thereon alleges

25 that A. AKOPYAN benefitted and gained time due to the RICO scheme because said actions delayed the

26 foreclosure of the COUNTRYWIDE DOT and clouded and confused the CATALINA PROPERTY's

27 title.  PLAINTIFF is informed and believes and thereon alleges that the fraud scheme was known to,

28

-32-

SECOND AMENDED COMPLAINT

1  consented to, approved and ratified by A. AKOPYAN.

2      131.  PLAINTIFF is informed and believes and thereon alleges that in furtherance of the RICO

3  DEFENDANTS' fraudulent scheme, on August 14, 2015, RA STERLING purportedly conveyed the

4  CATALINA PROPERTY to defendant GEVORKIAN via Grant Deed dated July 21, 2015, and recorded

5  in the Los Angeles County Recorder's Office as Instrument Number 20150997509.

6      132.  PLAINTIFF is informed and believes and thereon alleges that in furtherance of the RICO

7  DEFENDANTS' fraudulent scheme, on or about August 14, 2015, Defendant GEVORKIAN recorded a

8  Deed of Trust in the Los Angeles County Recorder's Office as Instrument Number 20150997511 ("RA

9  STERLING DEED OF TRUST") in favor of RA STERLING.  The RA STERLING DEED OF TRUST

10  conveyed a secured interest in the CATALINA PROPERTY, securing a loan in the amount of Five

11  Hundred Thousand and Seven Hundred Dollars ($500,700.00) ("RA STERLING LOAN").  PLAINTIFF

12  is informed and believes that the proceeds of the RA STERLING LOAN were used by the RICO

13  DEFENDANTS in furtherance of the fraud scheme.

14

15                          **FIRST CAUSE OF ACTION**

16      **(ACQUISITION AND MAINTENANCE OF AN INTEREST IN AND CONTROL OF AN**

17  **ENTERPRISE ENGAGED IN A PATTERN OF RACKETEERING ACTIVITY: 18 U.S.C. §§**

18  **1961(5), 1962(B) -- AGAINST DADYAN, K-ASTRON, SECURELINE, KABILAFAKAS, CIAS,**

19      **A. AYVAZYAN, ANDIA, HARITUNIAN, AVITIKIAN, and DOES 14-50)**

20      133.  PLAINTIFF now re-alleges each and every allegation as set forth above in paragraphs 1

21  through 132 and hereby incorporates same by reference, as if all were set forth fully herein.

22      134.  PLAINTIFF is informed and believes and thereon alleges that DADYAN, K-ASTRON,

23  SECURELINE, KABILAFAKAS, CIAS, A. AYVAZYAN, ANDIA, HARITUNIAN, and AVITIKIAN

24  acquired and/or maintained, directly or indirectly, an interest in or control of a RICO enterprise of

25  individuals who were associated in fact and who did engage in, and whose activities did affect, interstate

26  and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b).

27      135.  During the three (3) calendar years preceding the filing of the Second Amended

28

Complaint, Defendants DADYAN, K-ASTRON, SECURELINE, KABILAFAKAS, CIAS, A. AYVAZYAN, ANDIA, HARITUNIAN, AVITIKIAN, and DOES 14-50 did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that is itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. § 1962(b), as alleged in paragraphs 1 through 132 herein.

136. Plaintiff further alleges that the DADYAN, K-ASTRON, SECURELINE, KABILAFAKAS, CIAS, A. AYVAZYAN, ANDIA, HARITUNIAN, AND AVITIKIAN and DOES 14-50 did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity; *i.e.*, a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 U.S.C. § 1962(b). The RICO DEFENDANTS designed a complete fraud scheme to derive income and properties through the criminal enterprise outlined herein. The racketeering activity constitutes a pattern of racketeering activity in an interstate enterprise.

137. Under the Doctrine of Respondent Superior, DADYAN, K-ASTRON, SECURELINE, KABILAFAKAS, CIAS, A. AYVAZYAN, ANDIA, HARITUNIAN, AND AVITIKIAN and DOES 14-50 are liable for their agents' misconduct, knowledge of, participation in, and benefit from a RICO enterprise.

138. As a direct and proximate result of the DADYAN, K-ASTRON, SECURELINE, KABILAFAKAS, CIAS, A. AYVAZYAN, ANDIA, HARITUNIAN, AND AVITIKIAN, and DOES 14-50's racketeering activities and violations of 18 U.S.C. § 1962(a), PLAINTIFF has been damaged in an amount to be proven at trial, not less than Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00).

///
///
///
///
///

**SECOND CAUSE OF ACTION**

**(CONDUCT AND PARTICIPATION IN A RICO ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY: 18 U.S.C. §§ 1961(5), 1962(C) -- AGAINST DADYAN, K-ASTRON, SECURELINE, KABILAFAKAS, CIAS, A. AYVAZYAN, ANDIA, HARITUNIAN, TANDEM, ABRAMSON, AVITIKIAN, and DOES 14-50)**

139.   Plaintiff now re-alleges each and every allegation in paragraphs 1 through 138 as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

140.   At various times and places, the RICO DEFENDANTS and DOES 14-50 did associate with a RICO enterprise of individuals who were associated in fact, and who engaged in, and whose activities did affect, interstate and foreign commerce.

141.   Likewise, all RICO DEFENDANTS and DOES 14-50 did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO enterprise through a pattern of racketeering activity, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c).

142.   During the three (3) calendar years prior to this Second Amended Complaint, all RICO DEFENDANTS did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that is itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(c).

143.   PLAINTIFF further alleges that all the RICO DEFENDANTS did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to damage the PLAINTIFF and their conduct continues to threaten PLAINTIFF, the title and lending industry; i.e., a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 U.S.C. § 1962(c).

144.   As a direct and proximate result of the RICO DEFENDANTS and DOES 14-50 racketeering activities and violations of 18 U.S.C. §§ 1961 and 1962, PLAINTIFF has been damaged in an amount to be proven at trial, not less than Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00).

SECOND AMENDED COMPLAINT

**THIRD CAUSE OF ACTION**

**(CONSPIRACY TO ENGAGE IN A PATTERN OF RACKETEERING ACTIVITY: 18 U.S.C. §§ 1961(5), 1962(D) -- AGAINST THE RICO DEFENDANTS AND DOES 14-50)**

145.    Plaintiff now re-alleges each and every allegations in paragraphs 1 through 144, as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

146.    At various times and places partially enumerated in PLAINTIFF's documentary material, all RICO DEFENDANTS did conspire to acquire and maintain an interest in a RICO enterprise engaged in a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(b) and (d).

147.    At various times and places, including Studio City, California, the RICO DEFENDANTS did also conspire to conduct and participate in said RICO enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(c) and (d).

148.    During the three (3) calendar years preceding the filing of this Second Amended Complaint, the defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. 1962(d).

149.    PLAINTIFF further alleges that all defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity; i.e., a continuing threat of their respective racketeering activities, also in violation of 18 U.S.C. § 1962(d).

150.    As a proximate result of the Defendants racketeering activities and violations of 18 U.S.C. §§ 1961 and 1962, PLAINTIFF has been injured in its business and financially damaged in an amount of Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00).

**FOURTH CAUSE OF ACTION**

**(CONVERSION -- AGAINST THE RICO DEFENDANTS AND DOES 14-50, INCLUSIVE)**

151.    PLAINTIFF refers to and incorporates herein by reference the allegations contained in paragraphs 1 through 150 above as though fully set forth herein.

152.    PLAINTIFF is informed and believes, and thereon alleges, that RICO DEFENDANTS and DOES 14-50 transferred a part or all of the wrongfully obtained monies from PLAINTIFF, caused

-36-

said monies to be delivered into a Bank of America account [xxxx1364] ("BofA ACCOUNT"), and that the RICO DEFENDANTS and DOES 14-50 are now holding the fraudulently obtained monies from PLAINTIFF in other accounts controlled and/or owned by the RICO DEFENDANTS and DOES 14-50, or said monies have been used to acquire other assets presently held and/or controlled by the RICO DEFENDANTS and DOES 14-50.

153.   PLAINTIFF is informed and believes, and thereon alleges, that the RICO DEFENDANTS and DOES 14-50 have wrongfully converted PLAINTIFF's funds in the amount of in excess of Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00), which sum the RICO DEFENDANTS and DOES 14-50 were not entitled to receive.  PLAINTIFF is informed and believes and thereon alleges that RICO DEFENDANTS and DOES 14-50 intentionally perpetrated their fraudulent scheme in an effort to defraud PLAINTIFF and others. As a result, PLAINTIFF has been damaged in an amount of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any further amounts to be proven at trial.

154.   PLAINTIFF is informed and believes and thereon alleges that in doing the acts and things alleged herein, the RICO DEFENDANTS and DOES 14-50 were guilty of fraud, oppression, and malice and acted in wanton and willful disregard of the rights of PLAINTIFF and others, and by reason thereof, PLAINTIFF is entitled to exemplary or punitive damages against the RICO DEFENDANTS and DOES 14-50 in an amount appropriate to punish or set an example of the RICO DEFENDANTS and DOES 14-50.  The RICO DEFENDANTS and DOES 14-50 fraudulently obtained PLAINTIFF'S funds for the RICO DEFENDANTS and DOES 14-50 own use and benefit to PLAINTIFF's detriment.

155.   PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS and DOES 14-50 intended to transfer, convey, distribute, disburse, or otherwise utilize the monies in the BofA ACCOUNT and other banking accounts that was converted and misappropriated by the RICO DEFENDANTS and DOES 14-50, so that PLAINTIFF would be unable to compel the return of its funds, unless the Court enjoins the transfer or conveyance of any and all funds held in the RICO DEFENDANTS and DOES 14-50's other accounts.

156.   PLAINTIFF has no adequate remedy at law to protect itself as PLAINTIFF will be

SECOND AMENDED COMPLAINT

irreparably damaged by further transfer, conveyance, or distribution of the misappropriated monies and, therefore, request a temporary, preliminary, and permanent injunction enjoining any transfer, conveyance, distribution, payment, or other disbursement or distribution of the misappropriated monies previously held in the BofA Account, and now in the RICO DEFENDANTS and DOES 14-50's other accounts, until this litigation is completed.

157.    In alternative to general and compensatory damages, PLAINTIFF is informed and believes and thereon alleges that if PLAINTIFF's funds are not recovered, the RICO DEFENDANTS and DOES 14-50 will be unjustly enriched in the sum of at least Two Million dollars ($2,169,221.00) and any additional amounts as according to proof at trial.

158.    PLAINTIFF is therefore entitled to recover as restitution from these RICO DEFENDANTS and DOES 14-50 the sum of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) together with prejudgment interest thereon as allowed by law, and any additional amounts as according to proof at trial, so as to prevent these the RICO DEFENDANTS and DOES 14-50 from being unjustly enriched through fraud and forgery.

159.    PLAINTIFF additionally is entitled to attorney's fees and costs under the tort of another doctrine, as PLAINTIFF was required to file a lawsuit to recover PLAINTIFF's funds because of the RICO DEFENDANTS and DOES 14-50's tortious conduct.

## FIFTH CAUSE OF ACTION

### (CLAIM AND DELIVERY -- AGAINST THE RICO DEFENDANTS AND DOES 14-50)

160.    PLAINTIFF refers to and incorporates herein by reference Paragraphs 1 through 159 above as though fully set forth herein.

161.    Based upon the fraud scheme as alleged in paragraphs 1 through 132 above, and fully incorporated herein, the RICO DEFENDANTS and DOES 14-50, feloniously and fraudulently took the VOVK LOAN proceeds and CALHOUN LOAN Proceeds from the purported sales of the CAMINO PROPERTY and the CALHOUN PROPERTY.

162.    From April 19, 2013 until approximately October 13, 2016 UNITED ESCROW, K-

ASTRON DBA KONSTANT CLOSINGS and DOES 14-50 served as escrow companies and disbursed to the RICO DEFENDANTS the PLAINTIFF's funds that were wrongfully obtained in excess of Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00). PLAINTIFF is informed and believes and thereon alleges that in excess of Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) from this total sum was wired into the RICO DEFENDANTS's banking accounts, including a Bank of America Account, in the name of AVAKIAN/ESCROW DOC and/or DOES 14-50.

163.   PLAINTIFF is informed and believes that on or about October 7, 2016, the RICO DEFENDANTS and DOES 14-50, have further fraudulently converted PLAINTIFF's funds by transferring the approximate Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) out of the BofA ACCOUNT as wells as other accounts, and into other banking accounts held for the RICO DEFENDANTS' own use and benefit, and as a result, they have been unjustly enriched to PLAINTIFF's detriment. Moreover, the other monies fraudulently obtained were disbursed by cash and checks to the RICO DEFENDANTS.

164.   PLAINTIFF alleges that PLAINTIFF's funds were wrongfully taken from PLAINTIFF through fraud and forgery.   PLAINTIFF hereby makes a claim to all funds held by the RICO DEFENDANTS and DOES 14-50's accounts, and/or assets purchased with PLAINTIFF's funds, and demands delivery of all monies in said account or in any account where PLAINTIFF's funds are located.

165.   Based on the actions of the RICO DEFENDANTS, PLAINTIFF has been damaged in the amount of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any further amounts based upon proof at trial.

166.   In alternative to general and compensatory damages, PLAINTIFF is informed and believes and thereon alleges that if PLAINTIFF's funds are not recovered, the RICO DEFENDANTS and DOES 14-50 will be unjustly enriched in the sum of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any additional amounts as according to proof at trial.

167.   PLAINTIFF is therefore entitled to recover as restitution from the RICO DEFENDANTS

-39-

SECOND AMENDED COMPLAINT

and DOES 14-50 the sum of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) together with prejudgment interest thereon as allowed by law, and any additional amounts as according to proof at trial, so as to prevent these Defendants and DOES 14-50 from being unjustly enriched through fraud and forgery.

## SIXTH CAUSE OF ACTION

### (FRAUD – INTENTIONAL MISREPRESENTATION

### AGAINST THE RICO DEFENDANTS AND DOES 14-50, INCLUSIVE)

169.   PLAINTIFF refers to and incorporates herein by reference Paragraphs 1 through 168 above as though fully set forth herein.

170.   PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS, and DOES 14-50, made certain intentional misrepresentations to PLAINTIFF, knowing such representations were false, to induce PLAINTIFF into making a loan to the RICO DEFENDANTS using false names and fabricated information.  PLAINTIFF is informed and believes, and thereon alleges that from April, 2013 until October 13, 2016, the RICO DEFENDANTS aided and abetted each other and made the following misrepresentations in falsified documents submitted to PLAINTIFF among others, as follows:

a)    Purchase Agreements reflecting valid real estate transactions created by DADYAN, HARITUNIAN, SECURELINE, ANUSH, YSAYAN, SAHAKYAN, ABRAMSON, TANDEM MORTGAGE, and K-ASTRON;

b)    Loan Applications representing that the borrowers VOVK and YESAYAN had sufficient credit, assets and employment, created by DADYAN, HARITUNIAN, SECURELINE, ANUSH, YESAYAN, SAHAKYAN, ABRAMSON, TANDEM MORTGAGE, AVAKIAN, VOVK, MJF FUNDING; AKOPYAN, KARAPET EMBOYAN, and K-ASTRON;

c)    False Social Security Numbers created by MJF, DADYAN, HARITUNIAN, SECURELINE, ANUSH, YESAYAN, SAHAKYAN, ABRAMSON, TANDEM

-40-

MORTGAGE, AVAKIAN, VOVK, MJF FUNDING, AKOPYAN, GEVORKIAN, and
K-ASTRON;

d) False Employment information created by MJF, DADYAN, HARITUNIAN,
SECURELINE, ANUSH, YESAYAN, SAHAKYAN, ABRAMSON, TANDEM
MORTGAGE, AVAKIAN, VOVK, MJF FUNDING; AKOPYAN, GEVORKIAN,
EMBOYAN, and K-ASTRON;

e) Banking Account Information created by MJF, DADYAN, HARITUNIAN,
SECURELINE, ANUSH, YESAYAN, SAHAKYAN, ABRAMSON, TANDEM
MORTGAGE, AVAKIAN, VOVK, MJF FUNDING, AKOPYAN, and K-ASTRON;

f) Statements of Assets created by MJF, DADYAN, HARITUNIAN,  SECURELINE,
ANUSH, YESAYAN, SAHAKYAN, ABRAMSON, TANDEM MORTGAGE,
AVAKIAN, VOVK, MJF FUNDING, AKOPYAN, EMBOYAN, and K-ASTRON;

g) False Driver's licenses by MJF, DADYAN, HARITUNIAN, SECURELINE, ANUSH,
YESAYAN, SAHAKYAN, ABRAMSON, TANDEM MORTGAGE, AVAKIAN,
VOVK, MJF FUNDING, AKOPYAN, and K-ASTRON;

h) The VOVK and YESAYAN false DEEDS OF TRUST prepared by DADYAN,
HARITUNIAN, SECURELINE, ANDIA, and DOES 14-50;

i) The ARGENT TDUS and FIRST SMBC TDUS prepared by ESCALERA, DADYAN,
HARITUNIAN, SECURELINE, and DOES 14-50;

j) The false ASSIGNMENTS by ATI, TI, KAPEMIAN, VARTAN, DADYAN,
HARITUNIAN, SECURELINE, DADYAN, MJF, TANDEM, AVAKIAN, and K-
ASTRON;

k) False escrow instructions created by DADYAN, VARTAN, SECURELINE,
HARITUNIAN, MJF, KAPEMYAN, KABILAFKAS, CIAS, K-ASTRON and
AVAKIAN;

l) False information about deposits into escrow by DADYAN, VARTAN, SECURELINE,
HARITUNIAN, MJF, K-ASTRON, AVAKIAN, NAKSHCHYAN, ANDIA, and

KABILAKFAS; and,

m)     False representations about the existence of the borrower, by MJF, DADYAN, SECURELINE, HARITUNIAN, TANDEM, ABRAMSON, A. AYVAZAN, and DOES 14-50.

171.   PLAINTIFF is informed and believes, and thereon alleges, that the RICO DEFENDANTS and DOES 14-50 and each of them, from September 1, 2016 through October 13, 2016 presented PLAINTIFF with these falsified documents and falsified information outlined above, and concealed and misrepresented material facts including the statements that: Defendant ATI and its president and majority shareholder, AT, obtained title to the PROPERTY through a valid trustee's sale; that ATI and AT were owners of the PROPERTY; that ATI and AT were lawfully in possession of the PROPERTY, which SECURELINE, HARITUNIAN, and DADYAN listed for sale; that ATI and AT contracted with VOVK for the sale of the PROPERTY; that VOVK was a real buyer of the property; that MJF was the loan broker for VOVK and the company had vetted the VOVK application; that PLAINTIFF's funds would be used to purchase the PROPERTY; that PLAINTIFF would be able to secure PLAINTIFF's funds with a deed of trust against the PROPERTY; that no other deeds of trust or mortgages encumbered the PROPERTY; that PLAINTIFF's funds would be used for a lawful purpose; and that ATI and AT, and DOES 14-50 were to entitled to receive PLAINTIFF's funds as part of the VOVK SALES TRANSACTION. The U.S. Mail and wires were used the RICO DEFENDANTS in furtherance of this fraud scheme.

172.   PLAINTIFF is informed and believes, and thereon alleges, that the RICO DEFENDANTS and DOES 14-50 and each of them, also  from April 1 through April 30, 2013 presented PLAINTIFF with falsified documents and falsified information outlined above, and concealed and misrepresented material facts including the statements that:

a)     SAHAKYAN MANAGEMENT and ABRAMSON obtained title to the CALHOUN PROPERTY by a grant deed prepared by DADYAN, VARTAN, SECURELINE, HARITUNIAN, A. AYVAZAN TANDEM MORTGAGE, and CIAS;

b)     SAHAKYAN MANAGEMENT and ABRAMSON were the legal owners of the

-42-
SECOND AMENDED COMPLAINT

CALHOUN PROPERTY by DADYAN, VARTAN, SECURELINE, HARITUNIAN, TANDEM MORTGAGE, and CIAS;

c)  YESAYN and SAHAKYAN MANAGEMENT through ABRAMSON lawfully contracted for the sale of the CALHOUN PROPERTY by DADYAN, VARTAN, SECURELINE, HARITUNIAN, ABRAMSON, TANDEM MORTGAGE, PARENT, YESAYAN, KONSTANT CLOSINGS, and SIMON;

d)  YESAYN was a real buyer of the CALHOUN PROPERTY by DADYAN, VARTAN, SECURELINE, HARITUNIAN, ABRAMSON, TANDEM MORTGAGE, PARENT, YESAYAN, KONSTANT CLOSINGS, and SIMON;

e)  TANDEM MORTGAGE and ABRAMSON confirmed the truthfulness of the borrower's information on the YESAYAN loan application;

f)  The lender's funds would be used to purchase the CALHOUN PROPERTY from a valid seller – misrepresented by DADYAN, VARTAN, SECURELINE, HARITUNIAN, A. AYVAZYAN, TANDEM MORTGAGE, K-ASTRON, ABRAMSON, and CIAS;

g)  That PLAINTIFF would be able to secure its loan  funds with a deed of trust against the CALHOUN PROPERTY by DADYAN, VARTAN, SECURELINE, HARITUNIAN, ABRAMSON, TANDEM MORTGAGE, K-ASTRON, and CIAS;

h)  No other deeds of trust or mortgages encumbered the CALHOUN PROPERTY as represented by DADYAN, VARTAN, SECURELINE, HARITUNIAN, A. AYVAZAN TANDEM, K-ASTRON, and CIAS;

i)  The PLAINTIFF's funds would be used for a lawful purpose by DADYAN, VARTAN, SECURELINE, HARITUNIAN, A. AYVAZAN, TANDEM MORTGAGE, K-ASTRON, CIAS, and KABILAFIKAS; and

j)  ABRAMSON, SAHAKYAN and DOES 14-50 were to entitled to receive PLAINTIFF's funds as part of the CALHOUN Sales Transaction by DADYAN, VARTAN, SECURELINE, HARITUNIAN, A. AYVAZAN, TANDEM MORTGAGE, K-ASTRON, and CIAS.

-43-

173.    PLAINTIFF further is informed and believes and thereon alleges that the RICO DEFENDANTS and each of them, on or about October 13, 2016 sent false e-mails to UNITED ESCROW impersonating the name of Elizabeth Daviz and ESCROW DOC, and supplied false information about an alleged assignment of funds between VOVK and ATI;  a false purchase agreement between ATI, AT, and KAPEMYAN (executed by such parties); and false wiring instructions to convert the VOVK LOAN funds to their own use and benefit by using  UNITED ESCROW as a conduit for the monies. PLAINTIFF is informed and believes and thereon alleges that SIMON, CONSTANT CLOSINGS, and KABILAKFAS also were used as a conduit of wrongfully obtained monies in the CALHOUN matter.

174.    PLAINTIFF is informed and believes and thereon alleges that RICO DEFENDANTS, and each of them including DOES 14-50 made all of the above false statements to PLAINTIFF for the purpose of inducing PLAINTIFF to fund the VOVK, CALHOUN and KINGSWELL LOANS so they could fraudulently obtain the LOAN funds for the RICO DEFENDANTS' own use and benefit, to the detriment of PLAINTIFF.  The RICO DEFENDANTS and DOES 14-50 knew that PLAINTIFF would review and rely upon the representations they provided to PLAINTIFF.

175.    At the time these representations occurred, PLAINTIFF was ignorant of the falsity of the representations of the RICO DEFENDANTS and DOES 14-50 and PLAINTIFF reasonably relied on these representations in funding the VOVK LOAN.

176.    As a direct and proximate result of the material misrepresentations by the RICO DEFENDANTS and DOES 14-50, PLAINTIFF has suffered general and compensatory damages in amount of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and further amounts according to proof at trial.

177.    The conspiracy, concealment, and intentional misrepresentations by the RICO DEFENDANTS and DOES 14-50 were done with malice, oppression and/or fraud. Thus, PLAINTIFF is entitled to recover exemplary and punitive damages in an amount according to proof.

178.    In alternative to general and compensatory damages, PLAINTIFF is informed and believes and thereon alleges that if PLAINTIFF's funds are not recovered, the RICO DEFENDANTS and DOES 14-50 will be unjustly enriched in the sum of at least Two Million One Hundred Sixty Nine

Thousand Two Hundred and Twenty One Dollars ($2,169,221.00), and any additional amounts as according to proof at trial, and PLAINTIFF should be entitled to recover such funds.

179.   PLAINTIFF is therefore entitled to recover as restitution from these RICO DEFENDANTS and DOES 14-50 the sum of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00), together with prejudgment interest thereon as allowed by law, and any additional amounts as according to proof at trial, so as to prevent these RICO DEFENDANTS and DOES 14-50 from being unjustly enriched through fraud and forgery.

180.   PLAINTIFF additionally is entitled to attorney's fees and costs under the tort of another doctrine, as PLAINTIFF was required to file a lawsuit to recover PLAINTIFF's Funds because of RICO DEFENDANTS and DOES 14-50's tortious conduct.

## SEVENTH CAUSE OF ACTION

### (CONSPIRACY TO DEFRAUD -- AGAINST THE RICO DEFENDANTS AND DOES 14-50, INCLUSIVE)

181.   PLAINTIFF refers to and incorporates herein by reference Paragraphs 1 through 180, as though fully set forth herein.

182.   PLAINTIFF is informed and believes and thereon alleges that in or about February, 2016, the RICO DEFENDANTS and DOES 14-50, and collectively agreed to defraud PLAINTIFF as alleged herein.

183.   Pursuant to the fraud scheme and agreement, from February 2016, the RICO DEFENDANTS acted in furtherance of this conspiracy by making false statements to PLAINTIFF to induce it to fund the VOVK LOAN transaction. PLAINTIFF is informed and believes, and thereon alleges, as set forth in paragraphs 1 through 150, these RICO DEFENDANTS acted in furtherance of the conspiracy to defraud PLAINTIFF by making false statements to induce PLAINTIFF to close the VOVK LOAN transaction and the PLAINTIFF is informed and believes, and thereon alleges that the defendants falsified documents and presented them to PLAINTIFF; concealed and misrepresented material facts to PLAINTIFF for the VOVK SALES TRANSACTION, including a false loan application, false statements

SECOND AMENDED COMPLAINT

that: Defendant ATI and its president and majority shareholder, AT, obtained title to the CAMINO PROPERTY through a valid trustee's sale; that ATI and AT were owners of the CAMINO PROPERTY; that ATI and Timirova were lawfully in possession of the CAMINO PROPERTY, which the RICO DEFENDANTS listed for sale; that ATI contracted with the buyer VOVK for the VOVK sale transaction; that VOVK was a real buyer; that VOVK made a down payment on the CAMINO PROPERTY; that VOVK's social security number was valid; that VOVK's employment history was valid; that VOVK's information on the loan application was all true; that a falsified identification presented to PLAINTIFF was in fact valid; that PLAINTIFF's funds would be used to purchase the CAMINO PROPERTY; that PLAINTIFF would be able to secure the VOVK LOAN with a deed of trust against the CAMINO PROPERTY; that no other deeds of trust or mortgages encumbered the CAMINO PROPERTY; that PLAINTIFF's funds would be used for a lawful purpose; that ATI and DOES 14-50 were to entitled to receive PLAINTIFF's funds as part of the VOVK Sales Transaction; that ATI was entitled to the VOVK LOAN funds and that a real estate purchase agreement existed for the Burbank Property between ATI and KAPEMYAN; and that the BofA ACCOUNT was for an escrow account and not a criminal enterprise.

184. As a direct and proximate result of the conspiracy to defraud PLAINTIFF and the RICO DEFENDANTS and DOES 14-50 and steps in furtherance, PLAINTIFF has suffered general and compensatory damages in amount of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00), and further amounts according to proof at trial.

185. The conspiracy, concealment, and intentional misrepresentations by the RICO DEFENDANTS and DOES 14-50 were done with malice, oppression, and/or fraud. Thus, PLAINTIFF is entitled to recover exemplary and punitive damages in an amount according to proof.

186. In alternative to general and compensatory damages, PLAINTIFF is informed and believes and thereon alleges that if PLAINTIFF's funds are not recovered, the RICO DEFENDANTS and DOES 14-50 will be unjustly enriched in the sum of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00), and any additional amounts as according to proof at trial, and PLAINTIFF should be entitled to recover such funds.

SECOND AMENDED COMPLAINT

187.   PLAINTIFF alternatively are entitled to recover as restitution from these RICO DEFENDANTS and DOES 14-50 the sum of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00), together with prejudgment interest thereon as allowed by law, and any additional amounts as according to proof at trial, so as to prevent these RICO DEFENDANTS and DOES 14-50 from being unjustly enriched through fraud and forgery.

188.   PLAINTIFF additionally asserts that certain real property, personal property, checking accounts, savings accounts, and brokerage accounts were funded and/or tainted with the funds converted by the RICO DEFENDANTS, and each of them, with VOVK's LOAN funds and the CALHOUN loan funds.   PLAINTIFF is further informed and believes and thereon alleges that real properties were acquired, refinanced, maintained, enhanced, improved, or retained by the RICO DEFENDANTS, and each of them by using the funds they had converted pursuant to the fraud scheme.   PLAINTIFF seeks and is entitled to have impressed an involuntary constructive trust over any and all banking, checking, savings and brokerage accounts; any and all personal property; and any and all real properties held by the RICO DEFENDANTS, and each of them, that were funded, tainted, acquired, refinanced, enhanced, maintained, improved or retained by the RICO DEFENDANTS, and each of them, including any and all direct product, profit, fruit or enhanced values thereof to which the converted funds can be traced ("CONSTRUCTIVE TRUST ASSETS"). PLAINTIFF seeks and is entitled to have impressed the involuntary constructive trust over the CONSTRUCTIVE TRUST ASSETS as an equitable remedy that is necessary to recoup the damages and losses sustained by PLAINTIFF as a direct and proximate result of the RICO DEFENDANTS' actions pursuant to the conspiracy scheme in an amount to be proven at trial but not less than Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00), plus prejudgment interest at the rate of ten percent (10%) per annum.

189.   PLAINTIFF additionally is entitled to attorney's fees and costs under the tort of another doctrine, as PLAINTIFF was required to file a lawsuit to recover PLAINTIFF's funds because of RICO DEFENDANTS and DOES 14-50's tortious conduct.

## EIGHTH CAUSE OF ACTION

### (PROFESSIONAL NEGLIGENCE -- AGAINST DEFENDANTS UNITED ESCROW, AND DOES 14-50)

190.    PLAINITFF refers to and incorporates herein by reference Paragraphs 1 through 189 above as though fully set forth herein.

191.    PLAINTIFF is informed and believes and thereon alleges that at all relevant times alleged herein, UNITED ESCROW, and its agents assumed and owed a professional duty of care to PLAINTIFF and its predecessors, and were required to use the same degree of reasonable care, skill, and diligence in acting as an escrow holder, in Southern California.

192.    At all relevant times alleged herein, UNITED ESCROW, its escrow officers and DOES 14-50, were bound by the standards of care with respect to the VOVK Sales Transaction and owed a duty to PLAINTIFF to use reasonable care and skill with respect to the handling of the escrow.

194.    PLAINTIFF is informed and believes and thereon alleges that UNITED ESCROW breached its duties owed to PLAINTIFF on the VOVK SALES TRANSACTION causing damage to PLAINTIFF in an amount not less than Eight Hundred and Fifty Thousand Dollars ($850,000.00) by the following actions, among other things: failing to obtain a valid Identification for VOVK, failing to set up a notary to notarize the signatures of VOVK or have a California notary complete the signing, failing to alert PLAINTIFF that no money by VOVK was deposited into escrow, wiring of funds to a third-party without notification, accepting the Borrower's deposit into escrow from a third-party without notifying the lender, and failing to notify PLAINTIFF of all the red flags and irregularities with respect to the escrow.

196.    As a direct and proximate result of the negligence by UNITED ESCROW, PLAINTIFF has suffered general and compensatory damages in amount of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and further amounts according to proof at trial.

SECOND AMENDED COMPLAINT

## NINTH CAUSE OF ACTION

### (BREACH OF FIDUCIARY DUTY-- AGAINST DEFENDANTS UNITED ESCROW, K-ASTRON DBA KONSTANT CLOSINGS, KABILAKFAS, CIAS, TANDEM, ABRAMSON, AND DOES 14-50)

197.   PLAINTIFF refers to and incorporates herein by reference Paragraphs 1 through 196 above as though fully set forth herein.

198.   Defendants UNITED ESCROW, K-ASTRON DBA KONSTANT CLOSINGS, KABILAKFAS, SIMON, CIAS, TANDEM AND ABRAMSON and DOES 14-50, held a position of trust and confidence with respect to PLAINTIFF, owing it a fiduciary duty.

199.   As such, Defendants UNITED ESCROW, K-ASTRON DBA KONSTANT CLOSINGS, KABILAKFAS, CIAS, ABRAMSON, TANDEM and DOES 14-50 had a duty to exercise the utmost loyalty and good faith towards PLAINTIFF and its predecessor in interst at all times.  UNITED ESCROW breached that duty by failing to abide by the duty of loyalty and good faith by, among other things, failing to notify PLAINTIFF of the irregularities in the escrow, failure to notify PLAINTIFF that Defendant VOVK had not placed one dime into escrow for the alleged purchase from ATI, failing to notify PLAINTIFF that its VOVK LOAN funds were to be wired to a third party, ESCROW DOC, that was not a real escrow company, the red flags raised by demands to wire funds to this third party escrow, and by failing to communicate information acquired with respect to material facts relating to the VOVK LOAN. K-ASTRON DBA KONSTANT CLOSINGS, KABILAKFAS, DADYAN, TANDEM, ABRAMSON and CIAS breached that duty by failing to abide by the duty of loyalty and good faith by, among other things, making it appear as though YESAYAN was a real borrower/buyer and that he made a deposit into escrow in the sum of Ten Thousand Dollars ($10,000.00) when in fact YESAYAN never deposited any monies with KONSTANT CLOSING and CIAS for the CALHOUN PROPERTY, KINGSWELL PROPERTY and other real properties; falsely using the notary stamp of Albro; failing to disclose the notarizations on the loan documents sent to FLAGSTAR were in fact false; and failing to notify PLAINTIFF of all the red flags and irregularities with respect to the escrow.

200.   As a result of this breach of fiduciary duty alleged above and the mishandling of the

-49-

VOVK LOAN funds, PLAINTIFF has been injured in an amount not less than Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) in an amount to be proven at trial plus interest.

## TENTH CAUSE OF ACTION

### (BREACH OF ESCROW AGREEMENT -- AGAINST DEFENDANT UNITED ESCROW AND DOES 14-50)

201.    PLAINTIFF refers to and incorporates herein by reference Paragraphs 1 through 200 above as though fully set forth herein.

202.    On or about September 27, 2016, PLAINTIFF entered into a written escrow agreement with UNITED ESCROW wherein UNITED ESCROW agreed to act as an escrow holder for PLAINTIFF with respect to the VOVK Sales Transaction ("ESCROW AGREEMENT"). A true and correct copy of the ESCROW AGREEMENT is attached hereto as **Exhibit 1**. The ESCROW AGREEMENT required UNITED ESCROW to "meticulously" follow the escrow instructions provided by the PLAINTIFF in connection with the closing of the VOVK LOAN. The ESCROW AGREEMENT further required that prior to closing on October 4, 2016, UNITED ESCROW agreed to deliver to PLAINTIFF the following documents:

> 1.1  All documents executed by borrower and requiring a notary, shall be executed by a notary at the office first described above under the direction of the closing agent (Title or Escrow Company).
>
> 1.2    An estimated settlement statement as of the actual Closing Date approved in writing by the Borrower and Broker.
>
> 1.3    A copy of the first (1st) deed of trust (the "First Deed of Trust") securing the Promissory Note and encumbering the Property, which has been executed by the Borrower IN BLUE INK, identifying and securing that Property first described above and the signature duly NOTARIZED. The Lender has prepared the First Deed of Trust which conforms to the

-50-

SECOND AMENDED COMPLAINT

Promissory Note and the Title Policy. You shall not allow or accept the First Deed of Trust to be executed under a power of attorney, without Lender's prior written consent, **and shall confirm that the individual who is executing the First Deed of Trust is in fact the person whose signature is on the document by proper identification**.

203.    UNITED ESCROW breached the Escrow Agreement by failing to have the Deed of Trust notarized at UNITED ESCROW's office or under the direction of UNITED ESCROW, failing to obtain a first deed of trust encumbering the PROPERTY and failing to verify that VOVK was the person signing the SUBJECT DEED OF TRUST.

204.    PLAINTIFF fully performed its obligations under the ESCROW AGREEMENT .

205.    DEFENDANT UNITED ESCROW's performance was not excused.

206.    As a proximate result of the breach of the ESCROW AGREEMENT, PLAINTIFF has been damaged in an amount to be proven at trial, with pre-trial interest.

## ELEVENTH CAUSE OF ACTION

### (PROFESSIONAL NEGLIGENCE -- AGAINST BROKER MJF, SECURELINE, DADYAN, KABILAFAS,d HARITUNIAN, TANDEM, ABRAMSON AND DOES 14-50)

207.    PLAINTIFF refers to and incorporates herein by reference Paragraphs 1 through 206 and as though fully set forth herein.

208.    PLAINTIFF is informed and believes and thereon alleges that at all relevant times alleged herein MJF, SECURELINE, DADYAN, KABILAFAS, HARITUNIAN, ABRAMSON, TANDEM and DOES 14-50 were  professionals who owed a duty of care to PLAINTIFF and  PLAINTIFF's assignors in submitting loan applications and credit information for loans.  MJF, SECURELINE, DADYAN, HARITUNIAN, KABILAFAS, TANDEM, ABRAMSON,and DOES 14-50 owed PLAINTIFF's  a duty to use reasonable care, skill, and diligence in submitting the information contained in the loan applications to PLAINTIFF's assignors and to PLAINTIFF.   Further, at all relevant times alleged herein PLAINTIFF's assignors were each bound by the standards of care set forth by law and imposed upon them as licensees of the California Bureau of Real Estate.

-51-

SECOND AMENDED COMPLAINT

209.   PLAINTIFF is informed and believes and thereon alleges that MJF, SECURELINE, DADYAN, KABILAFAS, HARITUNIAN, TANDEM, ABRAMSON, and DOES 14-50, as the loan brokers, owed certain duties of care to PLAINTIFF and its assignors, which include but are not limited to, ensuring the loan application packages submitted to PLAINTIFF were true and correct, and that VOVK was a real person.

210.   PLAINTIFF is informed and believes and thereon alleges that at all relevant times alleged herein MJF, SECURELINE, DADYAN, KABILAFAS, HARITUNIAN, TANDEM, ABRAMSON, and DOES 14-50 each breached their respective professional duties, including statutory duties, by submitting to PLAINTIFF's assignor false, inaccurate, and/or misleading information in the VOVK loan application process.  In addition, breached their duties by failing to determine if the borrower was real, failing to verify the borrower's information, and failing to properly vet the borrower.

211.   PLAINTIFF is informed and believes and thereon alleges that at all relevant times alleged herein PLAINTIFF's assignor reasonably relied on the loan application that MJF, SECURELINE, DADYAN, KABILAFAS, HARITUNIAN, TANDEM, ABRAMSON, and DOES 14-50 prepared, compiled, analyzed and presented to it, and, consequently, PLAINTIFF's assignor approved and funded the VOVK, KINGSWELL and CALHOUN LOANS.

212.   PLAINTIFF is informed and believes and on thereon alleges that at all relevant times alleged herein SECURELINE and HARITUNIAN, the licensed brokers, and TANDEM AND ABRAMSON, licensed brokers, were vicariously liable for each of the acts and omissions committed by their agents and employees   PLAINTIFF is further informed and believes and thereon alleges that at all relevant times alleged herein, KABILAFAS, HARITUNIAN, and ABRAMSON were the qualifying brokers for the transactions at issue,  negligently failed to properly train and supervise the activities of their employees, and others who performed services related to the preparation of the VOVK, KINGSWELL, and CALHOUN loan transaction.

213.   PLAINTIFF is informed and believes and thereon alleges that as a direct and proximate result of the breach of their duty of care, MJF, SECURELINE, DADYAN, KABILAFAS, HARITUNIAN, TANDEM, ABRAMSON, CIAS and DOES 14-50, and each of them, proximate caused

-52-

to PLAINTIFF and as assignee of certain lender's rights, , to be damaged in an amount to be proven at trial, not less than Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00), together with prejudgment interest on Plaintiff's liquidated damages at the maximum rate allowed by law.

## TWELFTH CAUSE OF ACTION

**(TO IMPRESS AND FORECLOSE EQUITABLE LIEN -- AGAINST JUBILLIO ESCALARA, ALONZO, ALL PERSONS KNOWN AND UNKNOWN CLAIMING AN ADVERSE INTEREST IN PLAINTIFF'S INTEREST IN THE CAMINO PROPERTY AND DOES 14-50)**

214.   PLAINTIFF re-alleges and incorporation herein by reference paragraphs 1 through 213, inclusive, as though fully set forth herein.

215.   On or about February 2, 2005, defendant ESCALERA obtained title to the CAMINO PROPERTY by a Grant recorded on February 2, 2005 in the Official Records of Los Angeles County as Instrument Number 05-0248291. PLAINTIFF is informed and believes and thereon alleges that ESCALERA falsely used the name of ALONZOA as a strawbuyer because ESCALERA was unable to qualify for a purchase money loan by himself.

216.   ESCALERA, and DOES 14-50,  agreed to obtain a loan from the ARGENT LOAN from Argent Mortgage Company ("ARGENT LOAN") that would be secured by an ARGENT DOT against the Camino Property.  Said Deed of Trust was recorded on February 2, 2005 in the Official Records of Los Angeles County as Instrument Number 05-0248292 ("ARGENT DOT").

217.   PLAINTIFF is informed and believes and thereon alleges that ESCALERA, like the other defendants in the criminal enterprise, rented the CAMINO PROPERTY to third parties for at least Four Thousand Dollars ($4,000.00) per month and retained the rents were used for the criminal enterprise instead of making mortgage payments.

218.   PLAINTIFF is informed and believes and thereon alleges ESCALARA was in default for most of the life of the ARGENT LOAN, and to prevent the loss of the CAMINO PROPERTY to a foreclosure, ESCALERA and RICO DEFENDANTS recorded numerous false documents against the

-53-
SECOND AMENDED COMPLAINT

CAMINO PROPERTY, and filed numerous bankruptcies in general with respect to the CAMINO PROPERTY and the other Properties identified herein. PLAINTIFF is informed and believes and thereon alleges that the chain of title to the CAMINO PROPERTY reflects that DEFENDANT ESCALERA filed bankruptcy in August 29, 2008 (dismissed two months later), February 3, 2009 (dismissed March 27, 2009), October 21, 2009 (dismissed on 1/8/10), November 25, 2009 (dismissed 12/10/2009), August 8, 2013 (dismissed on February 3, 2014), and February 14, 2014 (dismissed on May 27, 2014). Meanwhile, Defendants ESCALERA and DOES 14-50 continued collecting rents without paying the mortgage.

219. PLAINTIFF is informed and believes and thereon alleges that in approximately December, 2015, the RICO DEFENDANTS, ESCALARA, and DOES 14-50 agreed to use the CAMINO PROPERTY as a vehicle to fraudulently obtain an Eight Hundred and Fifty Thousand Dollars ($850,000.00) loan from a lender, and then used the loan proceeds monies gained from the fraud in in the criminal enterprise and for the benefit of the RICO DEFENDANTS.

220. PLAINTIFF is informed and believes and thereon alleges that ESCALERA failed to make payments on the ARGENT LOAN, and a Notice of Trustee's Sale setting a sale date for February 26, 2016 ("NOTS") under the ARGENT DOT was recorded on February 3, 2016 in the Official Records of Los Angeles County as Instrument Number 20160123354.

221. PLAINTIFF is informed and believes and thereon alleges a second Notice of Trustee's Sale, setting a sale date of April 26, 2016, ("2nd NOTS") in connection with a default under the ARGENT DOT by the ESCALERA, was recorded on February 3, 2016 in the Official Records of Los Angeles County as Instrument Number 20160123354.

222. PLAINTIFF is informed and believes and thereon alleges that the ESCALARA, the RICO DEFENDANTS, and DOES 14-50 agreed to record a ficticuous trustee's deed upon sale against the property so that they could obtain loan proceeds for ESCALARA and the other RICO DEFENDANTS. On July 8, 2016, the RICO DEFENDANTS, with ESCALARA's consent, caused a fictitious Trustee's Deed Upon Sale ("ARGENT TDUS") to be recorded on July 8, 2016 in the Official Records of Los Angeles County as Instrument Number 20160797398 purporting to eliminate the ARGENT DOT from the chain of title to the CAMINO PROPERTY. The recorded falsified ARGENT TDUS states that: the

non-judicial foreclosure sale occurred on June 8, 2016; that ATI was the highest bidder at the sale; that consideration was paid to the Trustee (QUALITY) and/or the beneficiary under the ARGENT DOT; that QUALITY authorized the ARGENT TDUS; that "Bradley McNair" signed the ARGENT TDUS; and that title was granted to ATI. PLAINTIFF is informed and believes, and thereon alleges that all of this information is in fact false.

223.   PLAINTIFF is informed and believes and thereon alleges that ESCALARA participated in the fraud, and ratified and consented to the false ARGENT TDUS to be recorded in the chain of title to the CAMINO PROPERTY  to made it appear as though ATI obtained title to the CAMINO PROPERTY through the ARGENT TDUS.  PLAINTIFF is informed and believes and thereon alleges that ANDIA signed the false  ARGENT TDUS using the name Bradley McNair.

224.   Once the ARGENT TDUS was recorded, Escalara and the RICO DEFENDANTS agreed to create a false purchase agreement to make it appear as though ATI and AT were selling the CAMINO PROPERTY to a person named TETIANA VOVK.  VOVK was a "synthetic buyer," used to induce a lender into making a purchase money loan to ESCALARA and the criminal enterprise.

225.   PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS agreed that DADYAN, HARITUNIAN, ESCALARA, SECURELINE, ATI, AT, VOVK, AVAKIAN, MJF, and DOES 14-50 would work to secure a purchase money loan in the amount of One Million Dollars ($1,000,000.00) from a lender.   PLAINTIFF is informed and believes and thereon alleges that ESCALERA and the RICO DEFENDANTS agreed that ESCALERA would receive Two Hundred Thousand ($200,000.00) from this fraudulent loan scheme and the remaining funds would be used by the RICO DEFENDANTS and enterprise.

226.   PLAINTIFF further is informed and believes and thereon alleges that in or  about July 20, 2016, the RICO DEFENDANTS and DOES 14-50, with the agreement and consent of ESCALARA, created the FALSE PURCHASE AGREEMENT to reflect a pending sale of the CAMINO PROPERTY between VOVK and ATI.  This was done to further induce a lender into loaning money to what it thought was a legitimate purchase transaction involving VOVK and ATI.

227.   The FALSE PURCHASE AGREEMENT thereafter was sent to UNITED ESCROW to

secure the loan as it showed that VOVK was purchasing the property for One Million Three Hundred Thousand Dollars ($1,300,000.00) that was to be secured by a first deed of trust ("VOVK DEED OF TRUST") against the CAMINO PROPERTY.  UNITED ESCROW opened up escrow no. 58708-TK for the ATI-VOVK sale ("VOVK SALES TRANSACTION").

228.   On or about August 17, 2016, ESCALARA met with some of the RICO DEFENDANTS at the CAMINO PROPERTY to discuss the transaction and to allow an appraiser into the Property for submittal to a lender to make it appear as though the transaction was legitimate. Once again, ESCALARA was assured that he would receive Two Hundred Thousand Dollars ($200,000.00) out of the loan proceeds fraudulently obtained from a lender.

229.   In or about mid-September, 2016 PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS, with ESCALARA's approval, submittal a loan application along with the falsified purchase agreement to PLAINTIFF's predecessor in interest, Milestone Financial, DBA Alviso Funding.   These RICO DEFENDANTS presented false information to PLAINTIFF and its predecessor, including false statements of the synthetic borrower's (VOVK) income, employment, social security number, identification, assets, and creditworthiness. PLAINTIFF is informed and believes and thereon alleges that the RICO DEFENDANTS and DOES 14-50 worked in concert to induce PLAINTIFF into making the loan to VOVK.  As a result of the reliance on the information presented by the RICO DEFENDANTS that was falsified and with Escalara's consent, PLAINTIFF's Assignor approved the loan for Eight Hundred and Fifty Thousand Dollars ($850,000.00) to for VOVK for her  to allegedly purchase of  the CAMINO PROPERTY from ATI and AT ("VOVK LOAN") and PLAINTIFF agreed to issue title insurance based upon this false information.

230. As a further fraudulent inducement for the funding of the VOVK LOAN, DADYAN and DOES 14-50 provided falsely notarized documents to PLAINTIFF reflecting that VOVK executed the VOVK DEED OF TRUST and the promissory note ("VOVK NOTE") (now assigned to PLAINTIFF) and represented that an authorized and California licensed notary had witnessed the signing of the VOVK DEED OF TRUST by VOVK.  PLAINTIFF is informed and believes and thereon alleges that such notary stamp and notary signature were false, and were provided to PLAINTIFF to induce it into making a loan

SECOND AMENDED COMPLAINT

to the RICO DEFENDANTS. Thus, Plaintiff and its predecessor in interest's reliance on all of this information was reasonable.

231. On or about October 7, 2016, PLAINTIFF funded the VOVK LOAN in the sum of Eight Hundred and Fifty Thousand Dollars ($850,000.00). On October 7, 2016 the VOVK Deed of Trust in favor of PLAINTIFF's predecessor/assignor, securing the VOVK LOAN, was recorded in the Office of the County Recorder for Los Angeles County, California

232. PLAINTIFF is informed and believes and thereon alleges, that ESCALARA agreed to participate, consented to and ratified the entire fraudulent transction, including releasing ARGENT's DOT with the falsified ARGENT TDUS, agreeing to the FALSE PURCHASE AGREEMENT that was to be submitted to a new lender, and falsifying loan information for the new lender.  As a result, PLAINTIFF is entitled to an equitable lien against the Property as of October 17, 2016.

233. PLAINTIFF seeks a judicial declaration that PLAINTIFF is entitled to impress and foreclose upon an equitable lien dated October 7, 2016 against the CAMINO PROPERTY.

## **PRAYER FOR RELIEF**

**WHEREFORE,** PLAINTIFF prays for judgment against the Defendants and DOES 14-50, and each of them, as follows:

### ***FIRST CAUSE OF ACTION***

1.      That this Court liberally construe the RICO laws and thereby find that all Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, and DOES 14-50, both jointly and severally, have acquired and maintained, both directly and indirectly, an interest in and/or control of a RICO enterprise of persons and of other individuals who were associated in fact, all of whom engaged in, and whose activities did affect, interstate and foreign commerce in violation of 18 U.S.C. § 1962(b) (Prohibited Activities);

2.      That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, and DOES 14-50 and all their directors,

officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from acquiring or maintaining, whether directly or indirectly, any interest in or control of any RICO enterprise of persons, or of other individuals associated in fact, who are engaged in, or whose activities do affect, interstate or foreign commerce;

3. That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, and DOES 14-50 and all of their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from committing any more predicate acts in furtherance of the RICO enterprise alleged in COUNT ONE supra;

4. That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, and DOES 14-50 be required to account for all gains, profits, and advantages derived from their several acts of racketeering activity in violation of 18 U.S.C. 1962(b) and from all other violation(s) of applicable State and Federal law(s);

5. That judgment be entered for PLAINTIFF and against all Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, and DOES 14-50 for PLAINTIFF's actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. § 1962(b), according to the best available proof;

6. That all Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, and DOES 14-50 pay to PLAINTIFF treble (triple) damages, under authority of 18 U.S.C. § 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. § 1962(b), according to the best available proof;

7. That   Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON,

SECURELINE, HARITUNIAN, ANDIA, and DOES 14-50 pay to PLAINTIFF all damages sustained by PLAINTIFF in consequence of Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, and DOES 14-50's several violations of 18 U.S.C. § 1962(b), according to the best available proof;

8.   That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, and DOES 14-50 pay to PLAINTIFF thes costs of the lawsuit incurred herein including, but not limited to, all necessary research, all non judicial enforcement and all reasonable counsel's fees, at a minimum of Two Hundred and Seventy Five Dollars ($275.00) per hour worked (Plaintiff's standard professional rate at start of this action);

9.   That all damages caused by Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, and DOES 14-50, and all gains, profits, and advantages derived by Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, and DOES 14-50, from their several acts of racketeering in violation of 18 U.S.C. § 1962(b) and from all other violation(s) of applicable State and federal law(s), be deemed to be held in constructive trust, legally foreign with respect to the Federal zone [sic], for the benefit of Plaintiff and its heirs and assigns; and

10.   That PLAINTIFF have such other and further relief as this Court deems just and proper, under the circumstances of this action.

### ***SECOND CAUSE OF ACTION***

1.   That this Court liberally construe the RICO laws and thereby find that Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50 have associated with a RICO enterprise of persons and of other individuals who were associated in fact, all of whom did engage in, and whose activities did affect, interstate and foreign

1    commerce in violation of the RICO law at 18 U.S.C. § 1962(c) (Prohibited Activities);

2.   That this Court liberally construe the RICO laws and thereby find that Defendants
     DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE,
     HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50 have conducted
     and/or participated, directly or indirectly, in the affairs of said RICO enterprise through a
     pattern of racketeering activity in violation of the RICO laws at 18 U.S.C. §§ 1961(5)
     ("pattern" defined) and 1962(c) supra;

3.   That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON,
     SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50
     and all of their directors, officers, employees, agents, servants and all other persons in
     active concert or in participation with them, be enjoined temporarily during pendency of
     this action, and permanently thereafter, from associating with any RICO enterprise of
     persons, or of other individuals associated in fact, who do engage in, or whose activities
     do affect, interstate and foreign commerce;

4.   That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON,
     SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50
     and all of their directors, officers, employees, agents, servants and all other persons in
     active concert or in participation with them, be enjoined temporarily during pendency of
     this action, and permanently thereafter, from conducting or participating, either directly
     or indirectly, in the conduct of the affairs of any RICO enterprise through a pattern of
     racketeering activity in violation of the RICO laws at 18 U.S.C. §§ 1961(5) and 1962(c)
     supra;

5.   That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON,
     SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50
     and all of their directors, officers, employees, agents, servants and all other persons in
     active concert or in participation with them, be enjoined temporarily during pendency of
     this action, and permanently thereafter, from committing any more predicate acts in

furtherance of the RICO enterprise alleged in COUNT TWO supra;

6. That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50 be required to account for all gains, profits, and advantages derived from their several acts of racketeering in violation of 18 U.S.C. § 1962(c) supra and from all other violation(s) of applicable State and Federal law(s);

7. That judgment be entered for PLAINTIFF and against Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50 for PLAINTIFF's actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. § 1962(c) supra, according to the best available proof;

8. That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50 pay to PLAINTIFF treble (triple) damages, under authority of 18 U.S.C. § 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. § 1962(c) supra, according to the best available proof;

9. That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50 pay to PLAINTIFF all damages sustained by PLAINTIFF in consequence of DEFENDANTS DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50's several violations of 18 U.S.C. § 1962(c) supra, according to the best available proof;

10. That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50 pay to Plaintiff its costs of the lawsuit incurred herein including, but not limited to, all necessary research, all non judicial enforcement and all reasonable counsel's fees, at a minimum of Two Hundred and Seventy Five Dollars ($275.00) per hour worked

(Plaintiff's standard professional rate at start of this action);

11. That all damages caused by Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50 and all gains, profits, and advantages derived from their several acts of racketeering in violation of 18 U.S.C. § 1962(c) supra and from all other violation(s) of applicable State and federal law(s), be deemed to be held in constructive trust, for the benefit of PLAINTIFF, and its assigns; and

12. That PLAINTIFF have such other and further relief as this Court deems just and proper, under the full range of relevant circumstances which have occasioned the instant action.

### ***THIRD CAUSE OF ACTION***

1. That this Court liberally construe the RICO laws and thereby find that Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50 have conspired to acquire and maintain an interest in, and/or conspired to acquire and maintain control of, a RICO enterprise engaged in a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961(5), 1962(b) and (d) supra;

2. That this Court liberally construe the RICO laws and thereby find that Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50 have conspired to conduct and participate in said RICO enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961(5), 1962(c) and (d) supra;

3. That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50 and all their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from conspiring to acquire or maintain an interest in, or control of, any RICO enterprise that engages in a pattern of racketeering activity in

1      violation of 18 U.S.C. §§ 1961(5), 1962(b) and (d) supra;

2    4.      That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON,

3          SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50

4          and all their directors, officers, employees, agents, servants and all other persons in active

5          concert or in participation with them, be enjoined temporarily during pendency of this

6          action, and permanently thereafter, from conspiring to conduct, participate in, or benefit

7          in any manner from any RICO enterprise through a pattern of racketeering activity in

8          violation of 18 U.S.C. §§ 1961(5), 1962(c) and (d) supra;

9    5.      That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON,

10          SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50

11          and all their directors, officers, employees, agents, servants and all other persons in active

12          concert or in participation with them, be enjoined temporarily during pendency of this

13          action, and permanently thereafter, from committing any more predicate acts in

14          furtherance of the RICO enterprise alleged in COUNT THREE supra;

15    6.      That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON,

16          SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50

17          be required to account for all gains, profits, and advantages derived from their several acts

18          of racketeering in violation of 18 U.S.C. § 1962(d) supra and from all other violation(s)

19          of applicable State and Federal law(s);

20    7.      That judgment be entered for Plaintiff and against Defendants DADYAN, A. AYVAZAN,

21          CIAS, KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA,

22          TANDEM, ABRAHMSON, and DOES 14-50 for Plaintiff's actual damages, and for any

23          gains, profits, or advantages attributable to all violations of 18 U.S.C. § 1962(d) supra,

24          according to the best available proof at the time of trial;

25    8.      That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON,

26          SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50

27          pay to PLAINTIFF treble (triple) damages, under authority of 18 U.S.C. § 1964(c), for

28

-63-

1    any gains, profits, or advantages attributable to all violations of 18 U.S.C. § 1962(d) supra,

2    according to the best available proof;

3    9.    That Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON,

4    SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50

5    pay to PLAINTIFF all damages sustained by PLAINTIFF in consequence of Defendants

6    DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON, SECURELINE,

7    HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50's several

8    violations of 18 U.S.C. § 1962(d) supra, according to the best available proof;

9    10.    That DEFENDANTS DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON,

10    SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON and DOES 14-50s

11    pay to PLAINTIFF its costs of the lawsuit incurred herein including, but not limited to,

12    all necessary research, all non judicial enforcement, and all reasonable counsel's fees, at

13    a minimum of Two Hundred and Seventy Five Dollars ($275.00) per hour worked

14    (PLAINTIFF's standard professional rate at start of this action);

15    11.    That all damages caused by Defendants DADYAN, A. AYVAZAN, CIAS,

16    KABILAFKAS, K-ASTRON, SECURELINE, HARITUNIAN, ANDIA, TANDEM,

17    ABRAHMSON, and DOES 14-50, and all gains, profits, and advantages derived by

18    Defendants DADYAN, A. AYVAZAN, CIAS, KABILAFKAS, K-ASTRON,

19    SECURELINE, HARITUNIAN, ANDIA, TANDEM, ABRAHMSON, and DOES 14-50,

20    from their several acts of racketeering in violation of 18 U.S.C. § 1962(d) supra and from

21    all other violation(s) of applicable State and Federal law(s), be deemed to be held in

22    constructive trust, for the benefit of PLAINTIFF,  and its assigns; and

23    12.    That PLAINTIFF have such other and further relief as this Court deems just and proper,

24    under the full range of relevant circumstances which have occasioned the instant action.

### FOURTH CAUSE OF ACTION

26    1.    For damages in an amount of at least Two Million One Hundred Sixty Nine Thousand

27    Two Hundred and Twenty One Dollars ($2,169,221.00) and any further amounts to be

28

proven at trial;

2.      For prejudgment interest thereon;

3.      For attorney's fees and costs under the Tort of Another Doctrine;

4.      For exemplary and punitive damages;

5.      For a preliminary and permanent injunction during the pendency of this action on all accounts of Defendants and DOES 14-50, including Bank of America Account number xxxx-xxxx-1364, and thereafter a release to PLAINTIFF by the Court's Judgment, of all monies in any identified accounts of Defendants of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any further amounts to be determined at trial;

6.      For attorneys' fees, as permitted by law;

7.      For costs of suit; and

8.      For such other and further relief as this Court may deem just and proper, including but not limited to, restitution in the amount of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any additional amounts as according to proof at trial.

### *FIFTH CAUSE OF ACTION*

1.      For damages in an amount of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any further amounts to be proven at trial;

2.      For prejudgment interest thereon;

3.      For attorney's fees and costs under the Tort of Another Doctrine;

4.      For exemplary and punitive damages;

5.      For a preliminary and permanent injunction during the pendency of this action on all accounts of Defendants and DOES 14-50, including Bank of America Account number xxxx-xxxx-1364, and thereafter a release to PLAINTIFF by the Court's Judgment, of all monies in any identified accounts of Defendants of at least Two Million One Hundred

Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any further amounts to be determined at trial;

6.    For attorneys' fees, as permitted by law;

7.    For costs of suit; and

8.    For such other and further relief as this Court may deem just and proper, including but not limited to, restitution in the amount of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any additional amounts as according to proof at trial.

## *SIXTH CAUSE OF ACTION*

1.    For damages in an amount of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any further amounts to be proven at trial;

2.    For prejudgment interest thereon;

3.    For attorney's fees and costs under the Tort of Another Doctrine;

4.    For exemplary and punitive damages;

5.    For a preliminary and permanent injunction during the pendency of this action on all accounts of Defendants and DOES 14-50, including Bank of America Account number xxxx-xxxx-1364, and thereafter a release to PLAINTIFF by the Court's Judgment, of all monies in any identified accounts of Defendants of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any further amounts to be determined at trial;

6.    For a constructive trust on the BURBANK PROPERTY as the VOVK LOAN proceeds were fraudulently obtained and transferred to obtain interests said property;

7.    For costs of suit; and

8.    For such other and further relief as this Court may deem just and proper, including but not limited to, restitution in the amount of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any additional

SECOND AMENDED COMPLAINT

amounts as according to proof at trial.

### SEVENTH CAUSE OF ACTION

1.    For damages in an amount of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any further amounts to be determined at trial;

2.    For prejudgment interest thereon;

3.    For attorney's fees and costs under the Tort of Another Doctrine;

4.    For exemplary and punitive damages;

5.    For a preliminary and permanent injunction during the pendency of this action on all accounts of Defendants and DOES 1-50, including Bank of America Account number xxxx-xxxx-1364, and thereafter a release to PLAINTIFF by the Court's Judgment, of all monies in any identified accounts of Defendants of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any further amounts to be determined at trial;

6.    For a constructive trust on the BURBANK PROPERTY as the VOVK LOAN proceeds were fraudulently obtained and transferred to obtain interests said property;

7.    For attorneys' fees, as permitted by law;

8.    For costs of suit; and

9.    For such other and further relief as this Court may deem just and proper, including but not limited to, restitution in the amount of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any additional amounts as according to proof at trial.

### EIGHTH CAUSE OF ACTION

1.    For damages in an amount of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any further amounts to be determined at trial;

2.    For prejudgment interest thereon;

SECOND AMENDED COMPLAINT

3.   For attorney's fees; and

4.   For such other and further relief as this Court may deem just and proper.

### NINTH CAUSE OF ACTION

1.   For damages in an amount of at least Eight Hundred and Fifty Thousand Dollars ($850,000.00) and any further amounts to be determined at trial;

2.   For damages against K-ASTRON in the sum of One Million Three Hundred Nineteen Thousand Two Hundred and Twenty One Dollars ($1,319,221.00), plus any further amounts to be determined at trial;

3.   For prejudgment interest thereon;

4.   For exemplary and punitive damages; and

5.   For costs of suit.

### TENTH CAUSE OF ACTION

1.   For damages in an amount of at least Eight Hundred and Fifty Thousand Dollars ($850,000.00) and any further amounts to be determined at trial;

2.   For prejudgment interest thereon;

3.   For attorneys' fees, as permitted by law;

4.   For costs of suit; and

5.   For such other and further relief as this Court may deem just and proper, including but not limited to, restitution in the amount of at least Eight Hundred and Fifty Thousand Dollars ($850,000.00) and any additional amounts as according to proof at trial.

### ELEVENTH CAUSE OF ACTION

1.   For damages in an amount of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any further amounts to be determined at trial;

2.   For prejudgment interest thereon;

3.   For attorneys' fees, as permitted by law;

4.   For costs of suit; and

-68-

SECOND AMENDED COMPLAINT

5.     For such other and further relief as this Court may deem just and proper, including but not limited to, restitution in the amount of at least Two Million One Hundred Sixty Nine Thousand Two Hundred and Twenty One Dollars ($2,169,221.00) and any additional amounts as according to proof at trial.

### *TWELFTH CAUSE OF ACTION*

1.     For a judgment of the Court imposing an equitable lien in favor of Plaintiff with an effective date of October 7, 2016 against the CAMINO PROPERTY adjudging that PLAINTIFF's lien, and its terms as specified in the SUBJECT DEED OF TRUST recorded on October 7, 2016, and that PLAINTIFF may foreclose upon such lien.

2.     For costs; and

3.     For such other and further relief as this Court may deem just and proper.

DATED: February 11, 2021                    **HERSHORIN & HENRY, LLP**

By: _____
     LORI C. HERSHORIN, ESQ.
     ETHAN S. ROBINSON, ESQ.
     Attorneys for Plaintiff,
     WFG NATIONAL TITLE INSURANCE
     COMPANY, a South Carolina corporation

SECOND AMENDED COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiff WFG National Title Insurance Company hereby demands a jury trial.

3

4    DATED: February 11, 2021              **HERSHORIN & HENRY, LLP**

5

6                                          By: _____

7                                              LORI C. HERSHORIN, ESQ.
                                               ETHAN S. ROBINSON, ESQ.
8                                              Attorneys for Plaintiff,
                                               WFG NATIONAL TITLE INSURANCE
9                                              COMPANY, a South Carolina corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-70-

SECOND AMENDED COMPLAINT

EXHIBIT 1

# *LENDER'S ESCROW INSTRUCTIONS*
## *&*
## *AGREEMENT*

*Date:*      September 27, 2016

*To:*      United Escrow Co. ("Escrow Company")
Attention: Tracy Ko ("Escrow Officer")
Address: 3440 Wilshire Blvd., #600, Los Angeles, CA 90010
E-mail: tracyk@unitedescrowinc.com
Phone: 213-386-1830
Fax: 213-385-1666

*cc:*      MJF Funding Corporation ("Broker")
Attention: Marc Fournier

*From:*      Milestone Financial, LLC dba Alviso Funding ("Lender")
Attention: William R. Stuart/Zoe Hamilton
Address: 4970 El Camino Real #230, Los Altos, CA 94022
Phone: 650-690-1473
Fax: 603-719-4786
Email: zhamilton@milestonefinancial.net

*Subject:*      Lender Instructions to Escrow and Title Companies
Escrow Number:      **58708-TK** ("Escrow")
Borrower:      **Tatiana A. Vovk** ("Borrower")
Amount of Loan:      **$850,000.00** ("Loan Amount")
Property to Secure Loan:      **4050 Camino de la Cumbre, Sherman Oaks Area of Los Angeles County, CA 91423** ("Property")
Title Company:      **WFG National Title Company (the "Title Company")**
Title Report(s):      Issued by the Title Company dated **July 8, 2016** Order #: **6134558-JV** (the "Title Report")

This document shall constitute the escrow instructions to be followed meticulously by the Escrow Company and the Title Company in connection with the closing of the above referenced loan to be funded by Lender to the Escrow Company for Borrower secured through a first (1st) Deed of Trust as the same is amended by that certain Rider to Deed of Trust dated concurrently therewith (collectively, the "Deed of Trust") which is to be recorded against the Property and when executed by Lender, Borrower, Broker, the Escrow Company, and the Title Company.

WFG000021

Ms. Tracy Ko
September 27, 2016
Page 2

1.  On or before <u>TUESDAY, OCTOBER 4, 2016</u> (the "Closing" or the "Closing Date"), Lender shall provide written confirmation to the Escrow Company (which can include confirmation by email) that the Escrow Company has delivered to Lender the following documents:

   1.1  These Instructions executed by **Lender, Borrower, Broker, and the Escrow Company and the Title Company. ALL DOCUMENTS EXECUTED BY BORROWER AND REQUIRING A NOTARY, SHALL BE EXECUTED BY A NOTARY AT THE OFFICES FIRST DESCRIBED ABOVE UNDER DIRECTION OF THE CLOSING AGENCY (TITLE OR ESCROW COMPANY).**

   1.2  An estimated settlement statement as of the actual Closing Date approved in writing by the Borrower and Broker. **Such statement shall be consistent with the terms and conditions of that certain Promissory Note given by Borrower in favor of Lender, the Deed of Trust and this Agreement.**

   1.3  A copy of the first (1st) deed of trust (the "First Deed of Trust") securing the Promissory Note and encumbering the Property, which has been executed by the Borrower <u>IN BLUE INK</u>, identifying and securing that Property first described above and the signature duly NOTARIZED. The Lender has prepared the First Deed of Trust which conforms to the Promissory Note and the Title Policy further defined below. You shall not allow or accept the First Deed of Trust to be executed under a power of attorney, without Lender's prior written consent, **and shall confirm that the individual who is executing the First Deed of Trust is in fact the person whose signature is on the document by proper identification and shall confirm, if the signatory is not a natural person but rather a business entity, that the individual signing the document is authorized to execute such a document.**

   The return address after recording shown on the document shall be:

      c/o   William R. Stuart
            4970 El Camino Real, #230
            Los Altos, CA 94022

   1.4  "Authorization to Provide Information" **NOTARIZED** and executed by Borrower.

   1.5  "Lender, Broker, Borrower Agreement to Arrange Credit" executed by Broker and Borrower.

   1.6  "Affidavit Regarding Loan Purpose" **NOTARIZED** and executed by Borrower.

   1.7  "Borrower Certification" executed by Borrower.

WFG000022

Ms. Tracy Ko
September 27, 2016
Page 3

1.8   W-9 completed and executed by Borrower.

1.9   Borrower Contact Information completed and executed by Borrower.

1.10 A Statement of Information/Identity from each Borrower using standard for use by the Title Company.

1.11 Copy of driver's license from each individual signing on behalf of Borrower.

1.12 **A copy of all documentation relating to the transfer of ownership interest Tatian A. Vovk.**

1.13 A certificate confirming that Borrower has procured that insurance coverage set forth on the enclosed Agreement To Maintain Property Insurance, to be executed by Borrower as part of this Closing.

1.14 A commitment from the Title Company to issue an **ALTA 2006 EXTENDED LOAN POLICY** of title insurance, (the "Title Policy") in favor of Lender as the insured, together with and including the following provisions:

     A.    <u>ALTA</u> endorsements:

         100        (Restrictions, Encroachments & Minerals)
         103.7     (Land Abuts Street)
         110.9     (Environmental Lien)
         116 ·      (Designation of Improvements as <u>Single Family House</u>; Address <u>as first stated above</u>)
         116.7     (Compliance with Subdivision Map Act)
         125        (Truth-In-Lending)
         129        (Single Tax Parcel)

     B.    Coverage under the Title Policy shall be in the amount of <u>125%</u> of the Loan Amount.

     C.    The Title Policy is to insure that fee title to the Property is vested in Borrower, that the First Deed of Trust is a <u>First (1st) priority</u> lien against the Property, SUBJECT ONLY TO unpaid property taxes (which shall be paid current at Closing), and that there are not any mortgages, deeds of trust, or other liens, encumbrances, rights-of-way or leases affecting or encumbering the Property that are junior and subordinate to the First Deed of Trust. If your search discloses any liens, restrictions, reservations, or other matters affecting title, not waived in these instructions, please inform Lender immediately giving full details.

WFG000023

Ms. Tracy Ko
September 27, 2016
Page 4

---

    D.    The Title Policy shall be assignable without cost or notice for the benefit of any successor-in-interest (assignee) of Lender but such assignability shall not relieve the Title Insurer of any duty to defend and indemnify Lender as if an assignment had never taken place.

    E.    Lender accepts Title Policy subject to items 1, 1b – 4 & 7 listed on the Title Report.

2.    Once the Escrow Company receives written confirmation (which can include confirmation by email) that lender is **in possession all the following documents listed in Paragraph 1 above, Lender will wire Title Company the Loan Amount and Title Company shall only use these proceeds in accordance with these instructions.**

3.    Once the Title Company receives the Loan Amount, it *is immediately directed to close the transaction as follows:*

    3.1.    Carry out this Agreement and such other instructions as may be approved in writing by Lender.

    3.2    Pay on behalf of Borrower out of the Loan Amount the following costs and items:

    A.    Pay in full and remove all other liens against the Property to comply with **Paragraph 1 above.**

    B.    Pay to Lender interest under the Note **FROM THE ACTUAL FUNDING DATE through October 1, 2016 - BASED ON 365 DAYS**

| | | | |
|---|---|---|---|
| C. | Broker Fee: | $17,000.00 | to: MJF Funding Corp. |
| D. | Broker Processing Fee: | $650.00 | to: MJF Funding Corp. |
| E. | Lender Points (Origination): | $33,150.00 | to: Milestone Financial LLC |
| F. | Underwriting Fee: | $475.00 | to: Milestone Financial LLC. |
| G. | Loan Documents: | $400.00 | to: Milestone Financial LLC. |
| H. | Funding Fee: | $250.00 | to: Milestone Financial LLC. |
| I. | Wire Fee: | $45.00 | to: Milestone Financial LLC. |
| J. | Property Inspection: | $325.00 | to: Milestone Financial LLC. |
| K. | Credit Report: | $35.00 | to: Milestone Financial LLC. |

WFG000024

Ms. Tracy Ko
September 27, 2016
Page 5

3.3  Deduct and pay from the loan proceeds your own ordinary and customary costs and
charges required to close this Escrow and which are not disbursed as provided
herein and which are approved in writing by Borrower. Lender shall not incur any
costs associated with the conduct of this transaction, the close of this Escrow, the
recordation of any documents, or the issuance of the Title Policy or any other title
insurance required herein.

3.4  Record in the Recorder's Office of Los Angeles County the Deed of Trust only at
such time as the Title Policy can be underwritten and insured by the Title Company
in favor of Lender as set forth above. NO JUNIOR TRUST DEEDS OR LIENS
ARE PERMITTED BEHIND THE DEED OF TRUST AT CLOSING.

3.5  If you obtain or receive at any time any communication, certificates, resolutions, or
other materials from Borrower or any other person or entity as a condition to or
which may alter the issuing of the Title Policy as provided above, then you shall
immediately deliver copies of each such information to lender for Lender's review
and written approval prior to Closing.

3.6  Where you or your agents or employees have knowledge that Borrower is
contemplating or planning another transaction or escrow (either under your control
or under the control of some other person or entity) for the recordation of some
junior or other lien, mortgage or other hypothecation of the Property, you have
received written approval from Lender to such junior or other deed of trust,
mortgage or other hypothecation of the Property.

3.7  Deliver all documents and funds in favor of Lender to:

c/o William R. Stuart
4970 El Camino Real, #230
Los Altos, CA 94022
Phone: 800.391.0596
Fax: 603-719-4786

4.   Arbitration: Notwithstanding any other provision of this Agreement, or any of the
provisions of the Title Policy or Title Report, the parties to this Agreement agree that any
controversy between the parties regarding the construction or application of this
Agreement, the Title Policy or the Title Report (collectively, the "Arbitrable Contracts"),
including any claim, demand, breach or tort arising out of the Arbitrable Contracts,
including breach of fiduciary duty or fraud, shall be submitted to binding arbitration on
the written request of one party after service of that request on the other. The rules to be
governing the arbitration are as follows:

4.1  Arbitrator. Any dispute, claim or controversy arising out of or relating to this
Agreement or the breach, termination, enforcement, interpretation or validity
thereof, including the determination of the scope or applicability of this agreement
to arbitrate, shall be determined by arbitration in San Francisco, CA before three (3)

Page 5 of 7

Ms. Tracy Ko
September 27, 2016
Page 6

arbitrators. The arbitration shall be administered by JAMS pursuant to its
Comprehensive Arbitration Rules and Procedures and in accordance with the
Expedited Procedures in those Rules. Judgment on the Award may be entered in any
court having jurisdiction. This clause shall not preclude parties from seeking
provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

4.2.  Award.  The award of the arbitrator shall be binding, and conclusive on the parties.
A judgment confirming the award may be given by any superior court having
jurisdiction, including the Superior Court of Santa Clara County.

4.3  Integration.  The terms and conditions of this arbitration supersede any other
arbitration or mediation provision which may be set forth in any of the actual
Arbitrable Contracts.

These instructions supersede any prior instructions, whether written or oral. These instructions
represent the final and only instructions from Lender to the Title Company and may only be
modified or changed by written amendment executed by Lender. We reserve the right to cancel
or amend these instructions at any time prior to the recording of the First Deed of Trust. Time is
of the essence with respect to these instructions and the delivery of all documents and materials
(including the Title Policy) required herein.  Kindly acknowledge receipt of these instructions
and the enclosed documents by signing and returning this letter with your wiring instructions to:

c/o William R. Stuart
4970 El Camino Real, #230
Los Altos, CA 94022
Phone: 800.391.0596
Fax: 603-719-4786

If this transaction has not closed by the Closing Date please contact the undersigned. If you have
any questions, please to not hesitate to contact the below.

IN WITNESS WHEREOF, the parties executing below acknowledge their receipt of a fully
executed copy of this agreement and agree to carry out each of their respective duties and
obligations hereunder.

LENDER:  MILESTONE FINANCIAL LLC
By: Bear Bruin Ventures, Inc., its Manager

By: _____         Date: 9-27-16
William R. Stuart, its President

Page 6 of 7

WFG000026

Ms. Tracy Ko
September 27, 2016
Page 7

**BORROWER:**

Company: _____  _____

By: _Tetiana Vovk_____     Date: _9-27-2016_

_Tetiana A. Vovk_____
Print Name & Title

**ESCROW COMPANY:**

Company: _United Escrow Co._____

By: _____     Date: _10/3/16_

_Tracy Ko, Escrow Officer___
Print Name & Title

**TITLE COMPANY:**

Company: _____

By: _____     Date: _10/5/16_

_____ Title Officer
Print Name & Title

**BROKER:**

Company: _____

By: _____     Date: _____

_____
Print Name & Title

Page 7 of 7

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 26475 Rancho Parkway South, Lake Forest, California 92630.

On **February 11, 2021**, I served the foregoing document(s) described as **SECOND AMENDED COMPLAINT** on all interested parties in this action by placing a true copy(ies) in sealed envelope(s) addressed as follows: **SEE ATTACHED SERVICE LIST.**

**METHOD OF SERVICE**

[XX]   **(BY ELECTRONIC MAIL)** By personally transmitting to the above-named person(s), who has previously agreed to receive documents via electronic mail, to the e-mail address as shown above, on the date and time listed below, originating from Hershorin & Henry, LLP's electronic mail address, pursuant to the C.R.C. 2060 and Government Code § 11440.20. A true copy of the above-described document(s) was transmitted by electronic transmission through Hershorin & Henry, LLP's mail server, which did not report any error in sending the transmission.

[X]   **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **February 11, 2021** at Lake Forest, California.

/s/ *Katie T. Ellingsen*                    .
Katie T. Ellingsen

-1-
PROOF OF SERVICE

**SERVICE LIST**

| COUNSEL/PARTIES | REPRESENTING |
|---|---|
| Corey A. Carter, Esq.<br>27240 Turnberry Lane, Suite 200<br>Valencia, CA 91355<br>Tel: (323) 825-5529<br>Fax: (323) 450-2222<br>E-mail: corey@themainstreetattorney.com | *Attorneys for Defendants TANDEM MORTGAGE, INC. and STEVEN ABRAMSON (DOE 8)* |
| Michael Y. Yi, Esq.<br>KIM PARK CHOI & YI<br>3435 Wilshire Blvd., Suite 2150<br>Los Angeles, CA 90010-2003<br>Tel: (213) 384-7600<br>Fax: (213) 384-4888<br>E-mail: michaelyi@kpcylaw.com | *Attorneys for Defendant UNITED ESCROW CO.* |
| Jubilio Escalera<br>7912 Ventura Canyon Avenue<br>Panorama City, CA 91402<br>Tel: (818) 402-1718<br>E-mail: jubilioe@yahoo.com<br><br>Jubilio Escalera<br>4050 Camino De La Cumbre<br>Sherman Oaks, CA 91423 | *Defendant IN PRO PER* |
| Ara T. Haritunian<br>1484 Third Street, Unit A<br>La Verne, CA 91750<br>Tel: (909) 938-9585<br>E-Fax: (818) 279-2289<br>E-mail: araharitunian@yahoo.com | *Defendant IN PRO PER* |
| Vincent J. Quigg, Esq.<br>Law Offices of Vincent J. Quigg<br>5411 Long Beach Blvd.<br>Long Beach, CA 90805-5205<br>Tel: (562) 428-0550<br>Fax: (562) 428-1880<br>E-mail: quigglaw@yahoo.com | *Attorneys for Defendant K-ASTRON VENTURES, INC. d/b/a KONSTANT CLOSINGS* |
| Konstantine Kabilafkas<br>1423 15th Street #2<br>Santa Monica, CA 90404<br>Tel: (310) 597-7211<br>E-mail: konstantinek@roadrunner.com | *Defendant IN PRO PER* |
| Jerry Kaplan<br>Gohar Sogomonyan<br>KAPLAN KENEGOS & KADIN<br>9150 Wilshire Blvd., Suite 175<br>Beverly Hills, CA 90212<br>Tel: (310) 859-7700<br>Fax: (310) 859-7773<br>E-mail: office@3klaw.com / gohar@3klaw.com | *Attorneys for Defendant SECURELINE REALTY AND FUNDING, INC.; TAMARA DADYAN; and ARTHUR AYVAZYAN* |

EXHIBIT C

DOCUMENTS SOUGHT

**1. Government's Trial Exhibits**

Bank Records from the First Superseding Indictment
　　　　Exhibit 1.d: Secureline Realty (Comerica 8935)
　　　　Exhibit 1.e: Secureline Realty (Wells Fargo 1754)
　　　　Exhibit 1.p: Runyan Tax Service (Bank of America 6271)
　　　　Exhibit 1.q: Mod Interiors (Radius 2395)
PPP/EIDL Loan Files from FSI
　　　　Exhibit 2.c: Loan file – Secureline Realty (Comerica PPP)
　　　　Exhibit 2.d: Loan File – Secureline Realty (Wells Fargo PPP)
　　　　Exhibit 2.n: Loan File – Runyan Tax Service (Seattle Bank PPP)
　　　　Exhibit 2.o: Loan File – Mod Interiors (Newtek PPP)
Summary Chart Exhibits – Comparison
　　　　Exhibit 3.d: Loan File – Escrow Doc (BofA PPP)
　　　　Exhibit 3.k: Loan File – Liudmyla Kopytova dba LK Design (Newtek PPP)
　　　　Exhibit 3.m: Loan File – Mod Interiors, Inc (Celtic PPP)
Summary Exhibits – Loans
　　　　Exhibit 4.d: ABC Realty Advisors Inc (EIDL)
　　　　Exhibit 4.e: ABC Realty Advisors Inc (B of A PPP)
　　　　Exhibit 4.y: Grigor Akopyan (EIDL)
　　　　Exhibit 5.c: Journeymen Construction (EIDL)
　　　　Exhibit 5.d: Liudmyla Kopytova/LK Design (EIDL)
　　　　Exhibit 5.e: Liudmyla Kopytova/LK Design (EIDL)
　　　　Exhibit 5.f: Liudmyla Kopytova/LK Design (Fountainhead PPP)
　　　　Exhibit 5.k: Mod Interiors (CDC SBF PPP)
　　　　Exhibit 5.l: Mod Interiors (Cross River PPP)
　　　　Exhibit 5.m: Mod Interiors (EIDL)
　　　　Exhibit 5.x: Runyan Tax Service (EIDL)
　　　　Exhibit 6.e: Secureline Realty & Funding (EIDL)
　　　　Exhibit 10: Text Message Excerpt (Tammy to Rich New)
　　　　Exhibit 10-1 to 10-70: Text Message Files attachments
　　　　Exhibit 12.a: Photo of 1B21 (iPhone belonging to Tamara Dadyan, et al.)
　　　　Exhibit 13.a: User Information (apple ID of T., Tammy.Dadyan@aol.com, and
　　　　　　　　others)
　　　　Exhibit 13.b: Identification Cards
　　　　Exhibit 13.c: Checkbooks
　　　　Exhibit 13.d: SBA Applications
　　　　Exhibit 13.e: Tax Documents
　　　　Exhibit 13.f: Mail
　　　　Exhibit 13.g: Photograph
　　　　Exhibit 13.h: Web History Artifact
　　　　Exhibit 13.i: Screenshot
Digital Devices – 1B81
　　　　Exhibit 16.a: User Information (Apple ID Mary.Abelian@yahoo.com)

Exhibit 16.b: handwritten Notes
Digital Devices – 1B85
    Exhibit 19.a: User Information (Apple ID Rich@flipper.com, et al.)
    Exhibit 19.b: Identification
    Exhibit 19.c: Financial Information
    Exhibit 19.d: handwritten Notes
    Exhibit 19.e: Photograph of EIDL Website
Digital Devices – 1B17
    Exhibit 23: User Information
    Exhibit 24.a ID Editing
    Exhibit 24.b: Identification
    Exhibit 24.c: Financial Information
    Exhibit 24.d: SBA Application Images
Money Laundering & Misuse of Funds
    Exhibit 31.a through k: CV Escrow Documents
State-Federal
    Exhibit 44: U.S. Department of Homeland Security/Customs Border Protection – TECS Records and Certification
    Exhibit 45: California EDD – Certificate of Facts
    Exhibit 51.b: California DMV – Records affidavit
Premises Search Warrant Evidence
    Exhibit 56.d: Topeka SW photos
    Exhibit 56.j through 56.p: Topeka SW photos
    Exhibit 57.a: Weddington – Copies and/ or photos of checks, checkbooks, etc.; Identification documents; PPP and EIDL; Handwritten notes; list of emails
    Exhibit 57.b through 57.m: Weddington – Copies and/ or photos
Other – IP Addresses
    Exhibits 73.a through 73.i: Charter Communications
Other – Death Certificates
    Exhibit 74: Olaf Landsgard Death Certificate
    Exhibit 75: Nazar Terabelyan Death Certificate
Other – Miscellaneous
    Exhibit 83: Abbott & Hast Mortuary Invoices
    Exhibit 84: Glendale Gas and Power Invoices
Summary Exhibits – Banks
    Exhibit 85: ABC Realty (JPMC 8366) – Signature card, bank statements
    Exhibit 86: Anton Kudiumov (BofA 7572) – Signature card, bank statements
    Exhibit 90: Mod Interiors (BofA) – Opening document, signature card, bank statements
Additional Banks and Sources
    Exhibit 100: Bank of America (9700) – Signature card, bank statements, bank records
    Exhibit 101: Bank of America (9713) – Signature Card, bank statements, bank records
    Exhibit 110: Wells Fargo (5076) – Signature card, bank statements, bank records
    Exhibit 116: Summary Chart – loan application document analysis

Exhibits 117-120: Not to Jury

**2. Exhibits to Pre-Trial Motions**

Docket no. 207: Opposition to Motion to Suppress

Exhibit 13: Report regarding the execution of the search warrant for Subject Premises-4, Bates-stamped DOH_PROD_0000149591-DOJ_PROD_0000149602, describing "official looking rubber stamps, including stamps for the Clerk of the United States Bankruptcy Court for the Central District of California, Los Angeles Registrar-Recorder/County Clerk, the Los Angeles Superior Court, and numerous notaries."