E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
     1100/1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527/3819
     Facsimile: (213) 894-6269/0141
     E-mail:   Scott.Paetty@usdoj.gov
               Brian.Faerstein@usdoj.gov

GLENN S. LEON
Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
     1400 New York Avenue NW, 3rd Floor
     Washington, DC 20530
     Telephone: (202) 320-0539
     Facsimile: (202) 514-0152
     E-mail:   Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff/Respondent
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

RICHARD AYVAZYAN,

          Petitioner,

              v.

UNITED STATES OF AMERICA,

          Respondent.

Nos. CV 22-8915-SVW
     CR 20-579(A)-SVW

GOVERNMENT'S OPPOSITION TO MOTION
TO VACATE, SET ASIDE, OR CORRECT
HIS SENTENCE PURSUANT TO 28 U.S.C.
§ 2255; DECLARATION OF CHRISTOPHER
FENTON; EXHIBITS

Hearing Date: March 6, 2023
Hearing Time: 1:30 P.M.
Location:     Courtroom of the
              Hon. Stephen V.
              Wilson

1      Plaintiff/respondent United States of America, by and through

2  its counsel of record, the United States Attorney for the Central

3  District of California and Assistant United States Attorneys Scott

4  Paetty and Brian Faerstein, and United States Department of Justice

5  Trial Attorney Christopher Fenton, hereby files its opposition to

6  defendant/petitioner Richard Ayvazyan's motion to vacate, set aside,

7  or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1342).

8      This submission is based upon the attached memorandum of points

9  and authorities; the Declaration of Christopher Fenton and

10 accompanying exhibits; the files and records in this case; and such

11 further evidence and argument as the Court may permit.

12 Dated: February 10, 2023        Respectfully submitted,

13                                 E. MARTIN ESTRADA
                                   United States Attorney
14
                                   MACK E. JENKINS
15                                 Assistant United States Attorney
                                   Chief, Criminal Division
16

17                                 _____/s/_____
                                   SCOTT PAETTY
18                                 BRIAN FAERSTEIN
                                   Assistant United States Attorneys
19                                 CHRISTOPHER FENTON
                                   Department of Justice Trial Attorney
20
                                   Attorneys for Plaintiff/Respondent
21                                 UNITED STATES OF AMERICA

22

23

24

25

26

27

28

                                   2

# TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION.................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND............................1

III.  LEGAL STANDARD...............................................3

IV.   ARGUMENT.....................................................4

      A.    Defendant Has Procedurally Defaulted His Claims by
            Failing to Raise Them on Direct Appeal..................4

      B.    Defendant's § 2255 Claims Are Substantively Meritless.....7

            1.    Defendant's Fourth Amendment Claim Is Meritless......7

            2.    Defendant's Discovery Order Claim Is Meritless......10

            3.    Defendant's GEX 10 Claim Is Meritless...............11

            4.    Defendant's Filter Team Claim Is Meritless.........12

            5.    Defendant's Claim Based on His Sentence Is
                  Meritless...........................................13

            6.    Defendant's Claim Based on the Timing of the
                  Kastigar Hearing Is Meritless.......................16

            7.    Defendant's Brady Claim Is Meritless...............19

            8.    Defendant's Jury Instruction Claim Is Meritless.....21

      C.    Defendant Is Not Entitled to an Evidentiary Hearing......21

      D.    The Court Should Deny Any Request for a Certificate of.....
            Appealability...........................................22

V.    CONCLUSION..................................................23

1

**TABLE OF AUTHORITIES**

2   <u>DESCRIPTION</u>                                                        <u>PAGE</u>

3   **Federal Cases**

4   <u>Davis v. Ayala</u>,

5      576 U.S. 257 (2015) ............................................  3

6   <u>Edwards v. Carpenter</u>,

7      529 U.S. 446 (2000) ............................................  5

8   <u>Hendricks v. Vasquez</u>,

       908 F.2d 490 (9th Cir. 1990) ............................. 10, 12

9   <u>Houser v. United States</u>,

10     508 F.2d 509 (8th Cir. 1974) ................................. 14

11  <u>Lynn v. United States</u>,

12     365 F.3d 1225 (11th Cir. 2004) ............................. 4-5

13  <u>Massaro v. United States</u>,

14     538 U.S. 500 (2003) ............................................  4

15  <u>McQuiggin v. Perkins</u>,

16     569 U.S. 383 (2013) ............................................  5

17  <u>O'Neal v. McAninch</u>,

18     513 U.S. 432 (1995) ............................................  3

19  <u>Reed v. Ross</u>,

       468 U.S. 1 (1984) ............................................  5

20  <u>Redmond v. United States</u>,

21     2021 WL 1156845, at *5-6 (C.D. Cal. Feb. 16, 2021) .............  3

22  <u>Sanders v. United States</u>,

23     373 U.S. 1 (1963) ............................................  8

24  <u>Slack v. McDaniel</u>,

25     529 U.S. 473 (2000) ............................................  22

26  <u>Stone v. Powell</u>,

27     428 U.S. 465 (1976) ............................................  7

28  <u>Strickler v. Greene</u>,

       527 U.S. 263 (1999) ............................................  6

i

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

United States v. Addonizio,
  442 U.S. 178 (1979) ........................................... 17

United States v. Braswell,
  501 F.3d 1147 (9th Cir. 2007) ................................. 5

United States v. Campo,
  919 F.2d 741 (9th Cir. 1990) ................................. 14

United States v. Frady,
  456 U.S. 152 (1982) ...................................... 4, 5, 6

United States v. Gullett-El,
  2020 WL 3963743, at *7 (C.D. Cal. July 13, 2020) .............. 8

United States v. Hearst,
  638 F.2d 1190 (9th Cir. 1980) ................................. 7

United States v. Howard,
  381 F.3d 873 (9th Cir. 2004) ................................. 18

United States v. Meyers,
  847 F.2d 1408 (9th Cir. 1988) ................................ 14

United States v. Morris,
  633 F.3d 885 (9th Cir. 2011) ................................. 17

United States v. Pollard,
  20 F.4th 1252 (9th Cir. 2021) ................................. 4

United States v. Price,
  566 F.3d 900 (9th Cir. 2009) ................................. 20

United States v. Pulido,
  2021 WL 3476600, at *6 (M.D. Fla. July 2, 2021) .............. 9

United States v. Quan,
  789 F.2d 711 (9th Cir. 1986) ............................. 21, 22

United States v. Quarles,
  2022 WL 3684661, at *2 (M.D. Fla. Aug. 25, 2022) ............. 9

United States v. Ratigan,

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                      PAGE

  351 F.3d 957 (9th Cir. 2003) ................................... 5

United States v. Timmreck,

  441 U.S. 780 (1979) .......................................... 10

United States v. Touset,

  890 F.3d 1227 (11th Cir. 2018) ............................. 8, 9

United States v. Wilcox,

  640 F.2d 970 (9th Cir. 1981) ................................. 17

United States v. Winkles,

  795 F.3d 1134 (9th Cir. 2015) ................................ 22

Weatherford v. Bursey,

  429 U.S. 545 (1997) .......................................... 17

Wood v. Hall,

  130 F.3d 373 (9th Cir. 1997) .................................. 4

**Federal Statutes**

28 U.S.C. § 2253 ............................................... 22

28 U.S.C. § 2255 .......................................... passim

28 U.S.C. § 3553 ...................................... 13, 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

After he was tried and convicted, defendant Richard Ayvazyan fled the country in order to avoid being held accountable for his many crimes.  He opted to abscond and hide out abroad rather than file an appeal.  As soon as defendant was caught and extradited from Montenegro to the United States, he sought relief under § 2255.  Such a motion, however, is not a substitute for the appeal a fugitive would have filed had he not decided to flee.  For that reason alone, defendant's § 2255 motion should be dismissed in its entirety.

Defendant's claims also fail on the merits.  Many are not cognizable and even those that may be addressed by the Court are largely based on conclusory allegations and numerous misstatements of law and fact.  But even if defendant could establish one or more errors (which he cannot), there is no reasonable probability that the outcome of the trial would have been any different because, as the Court has remarked on several occasions, the evidence against defendant was overwhelming.  Given the extensive record developed in this case as a result of the nine-day trial, two-day <u>Kastigar</u> hearing, and eight sentencing hearings, the Court should dismiss and/or deny defendant's § 2255 motion and decline to hold an evidentiary hearing.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On June 25, 2021, defendant was convicted after a jury trial of 23 felony counts, including conspiracy to commit wire fraud and bank fraud (Count 1), wire fraud (Counts 2-12), bank fraud (Counts 13-20), aggravated identity theft (Counts 21-22), and conspiracy to commit money laundering (Count 26).

On July 28, 2021, following extensive briefing by the parties, the Court held a <u>Kastigar</u> hearing.  At the two-day hearing, defendant cross-examined nearly all of the members of the prosecution team.  On August 20, 2021, the Court issued an 88-page opinion and order denying defendant's motion for <u>Kastigar</u> relief.  (ECF 874.)

After defendant had been convicted at trial, the government moved to remand him pending sentencing.  In response, defendant assured the Court he did not present a flight risk because, according to him, "[h]is family, children, church, and business relationships are all [in the LA area]" and "he lacks the resources to flee the jurisdiction even if he wanted to".  (ECF 603 at 3-4.)  Defendant lied.  While on release awaiting sentencing, he declined to be interviewed by the United States Probation and Pretrial Services Office ("USPO"), failed to make the mandatory financial disclosures, and as soon as the Court denied his <u>Kastigar</u> motion (ECF 874), absconded with his wife, co-defendant Marietta Terabelian (ECF 1094).

Counsel for defendant immediately attempted to withdraw its representation of defendant and indefinitely continue defendant's sentencing, claiming – without evidence - that defendant may have been abducted.  (ECF 942, 954, 1062.)  The Court denied counsel's motions and sentenced defendant <u>in absentia</u>.  (ECF 980, 1094.)

On November 15, 2021, defendant was sentenced to a term of 15 years on each of Counts 1 through 20 and 15 years on Count 26, to be served concurrently, and 24 months on each of Counts 21 and 22, to be served concurrently with each other but consecutively to the terms imposed on Counts 1 through 20 and Count 26, for a total sentence of 17 years' imprisonment.  (ECF 1166.)  Defendant, who was a fugitive at that time, did not file a notice of appeal.

1    On February 23, 2022, petitioner was arrested in Montenegro.  In

2    November 2022, petitioner was extradited to the United States and

3    began serving his 17-year sentence.

4    On December 8, 2022, defendant filed a motion to vacate, set

5    aside, or correct his sentence pursuant to 28 U.S.C. § 2255 based on,

6    among other things, allegations of ineffective assistance of counsel.

7    (ECF 1337.)  On January 10, 2023, defendant abandoned his allegations

8    of ineffective assistance and amended his § 2255 motion.  (ECF 1342.)

9    **III.  LEGAL STANDARD**

10   "A prisoner in custody under sentence of this Court may petition

11   for the right to be released upon the ground that the sentence was

12   imposed in violation of the Constitution or laws of the United

13   States."  Redmond v. United States, Nos. 20-cv-5170-SVW, 15-cr-00532-

14   SVW-2, 2021 WL 1156845, at *5-6 (C.D. Cal. Feb. 16, 2021) (citing 28

15   U.S.C. § 2255(a)).  Even if a federal right was violated however,

16   "that does not necessarily mean that [the prisoner] is entitled to

17   habeas relief.  In the absence of 'the rare type of error' that

18   requires automatic reversal, relief is appropriate only if the

19   prosecution cannot demonstrate harmlessness."  Davis v. Ayala, 576

20   U.S. 257, 267 (2015).  Relief is proper only if the error had a

21   "'substantial and injurious effect or influence in determining the

22   jury's verdict.'"  Id. at 268 (citing O'Neal v. McAninch, 513 U.S.

23   432, 436 (1995)).  "There must be more than a 'reasonable

24   possibility' that the error was harmful."  Id.

25   Defendant primarily argues his sentence was imposed in violation

26   of his constitutional rights based on his claim that the Court

27   misread Eleventh Circuit law in finding that a border search of

28   defendant's luggage, which yielded evidence in the form credit cards

3

belonging to "Viktoria Kauichko" and "Iuliia Zhadko," did not violate defendant's Fourth Amendment rights.  (ECF 1342 at 9-26.)

Defendant also argues that the government: (i) produced discovery late; (ii) used information from an unconstitutionally seized cell phone to identify text messages used as an exhibit at trial; (iii) did not use a filter team; and (iv) failed to disclose Brady material.  (Id. at 26-34, 41-45.)  Defendant further argues that the Court: (i) imposed an unconscionable sentence; (ii) erred by holding the Kastigar hearing after the trial; and (iii) erred by refusing to provide a jury instruction on multiple conspiracies.

The Court should dismiss and/or deny defendant's § 2255 motion.

## IV.  ARGUMENT

### A.  Defendant Has Procedurally Defaulted His Claims by Failing to Raise Them on Direct Appeal

Claims not raised at trial or on direct appeal may not be raised on collateral review.  Massaro v. United States, 538 U.S. 500, 504 (2003); United States v. Frady, 456 U.S. 152, 165 (1982) ("[A] collateral challenge may not do service for an appeal.").  Here, defendant never even attempted to file a direct appeal and therefore raised none of the claims he is now attempting to litigate in his § 2255 motion.  That is a classic procedural default.  United States v. Pollard, 20 F.4th 1252, 1255-56 (9th Cir. 2021) (petitioner's motion was procedurally defaulted because he did not appeal his conviction).[1]

---

[1] A defendant who, unlike here, actually files a direct appeal but has his claims dismissed under either state or federal fugitive disentitlement principles must indeed meet the procedural default standard on collateral review.  See Wood v. Hall, 130 F.3d 373, 377-78 (9th Cir. 1997) (state-law disentitlement triggers procedural default); Lynn v. United States, 365 F.3d 1225, 1242-43 (11th Cir.

*(footnote cont'd on next page)*

4

1    Once a claim is procedurally defaulted, a district court may

2    entertain that claim in a § 2255 proceeding only if defendant

3    establishes both cause for failing to raise the issue and resulting

4    prejudice.  Frady, 456 U.S. at 162, 164; United States v. Ratigan,

5    351 F.3d 957, 964 (9th Cir. 2003).  The Supreme Court has construed

6    the "cause" prong narrowly, excusing procedurally defaulted claims

7    only where: (1) defendant received ineffective assistance of

8    counsel, see Edwards v. Carpenter, 529 U.S. 446, 450-51 (2000); (2)

9    defendant introduced a "novel" claim, see Reed v. Ross, 468 U.S. 1,

10   16 (1984); or (3) petitioner was actually innocent, see,

11   e.g., McQuiggin v. Perkins, 569 U.S. 383, 392-93 (2013).  With

12   respect to the "prejudice" prong, the Ninth Circuit has found that a

13   defendant must demonstrate that the alleged errors "not merely . . .

14   created a possibility of prejudice, but that [the errors] worked to

15   [defendant's] actual and substantial disadvantage, infecting

16   [defendant's] entire [proceedings] with error of constitutional

17   dimensions."  United States v. Braswell, 501 F.3d 1147, 1150 (9th

18   Cir. 2007) (quoting Frady, 456 U.S. at 170) (emphasis in original).

19

20

21   2004) (federal-law disentitlement triggers procedural default).  As
     the Eleventh Circuit explained in Lynn, permitting a defendant to
22   raise his claims in a § 2255 motion merely because they were barred
     on direct appeal by his fugitive status "would render the fugitive
23   disentitlement doctrine a nullity."  365 F.3d at 1242.  "If
     traditional rules of procedural default did not apply in this case,
24   the fugitive disentitlement doctrine would lose all meaning as
     criminal defendants could escape, have their direct appeals
25   dismissed, and then later bring a § 2255 motion as a substitute for a
     direct appeal. This cannot be and is not the law of this or any other
26   circuit."  Id.  Here, defendant never even had his claims dismissed
     under the fugitive disentitlement doctrine—he simply failed to pursue
27   them at all.

28

Defendant has waived any claim that he meets the "cause" and "prejudice" standard by failing even to acknowledge the standard in his brief, let make an argument as to how he satisfies it. That alone warrants dismissal of his § 2255 claims.

In any event, defendant cannot meet the standard for the "cause." Flight from justice is not "cause" that would excuse the procedural default. Nor can the defendant show "prejudice," which requires not merely a showing of error but an error of substantial merit, see Frady, 456 U.S. at 170 (error must have "worked to [the petitioner's] actual and substantial disadvantage"). At a minimum, there must be a "reasonable probability" that he would have been acquitted absent the alleged error. Strickler v. Greene, 527 U.S. 263, 296 (1999).

Here, for all of the reasons set forth below, defendant's claims are meritless; but even if defendant could establish one or more errors (which he cannot), there is no "reasonable probability" that the outcome of the trial would have been any different: as the Court remarked on numerous occasions following a nine-day trial and a two-day Kastigar hearing, the evidence against defendant was overwhelming. (ECF 874 at 83 ("The single conspiracy in this case was overwhelmingly supported by untainted evidence."); id. at 84 ("[T]he Government's untainted evidence against Ayvazyan was, in fact, overwhelming."); ECF 875 at 2 ("[T]he evidence the Government presented at trial overwhelmingly supports the guilty verdict. This includes, but is not limited to, the loan files containing fake and synthetic identities, entities, IRS forms, and payroll reports; the bank accounts created for those fake and synthetic identities or entities; the flow of funds between those accounts; the evidence

6

showing how the fraudulently obtained funds were used on real estate, gold coins, luxury watches, cryptocurrency, and other personal expenses; the physical evidence seized at the Miami airport and the Topeka, Weddington, and Canoga residences; and the evidence discovered on the digital devices from the Topeka and Weddington residences."); Tr. of Nov. 15, 2021 Sentencing Hr'g. at 29:11-19 ("[I]n the Court's experience which now is in excess of 30 years, I can't recall a fraud case that was conducted in a more calloused, intentional way without any regard for the law.  It was remarkable, at least in the Court's experience, to observe what the government introduced in its evidence, not only the circumstantial evidence but from the mouth of the defendant himself.").

**B.   Defendant's § 2255 Claims Are Substantively Meritless**

1.   Defendant's Fourth Amendment Claim Is Meritless

Defendant's principal claim is that the Court erred when it denied his motion to suppress credit cards belonging to "Viktoria Kauichko" and "Iuliia Zhadko" that were found in defendant's luggage during a border search.  (ECF 1342 at 9-26.)

Defendant may not raise his Fourth Amendment challenge in a § 2255 motion and, as a result, it should be dismissed.  See United States v. Hearst, 638 F.2d 1190, 1196 (9th Cir. 1980) ("The government provided [defendant] a full and fair opportunity to raise [the Fourth Amendment] issue on direct appeal; therefore, it cannot be raised on collateral review.") (applying Stone v. Powell, 428 U.S. 465 (1976)).

Even were the Court to consider defendant's Fourth Amendment claim (which the Court should not), it fails.  Defendant does not seriously dispute that the Court correctly applied Eleventh Circuit

law instead of Ninth Circuit law.[2]  Instead he argues that the Court misread Eleventh Circuit law to permit warrantless border searches based on suspicion of general criminal activity, and also argues that any border search of defendant's luggage should have been limited to a search for contraband.  (See, e.g., id. at 13-14, 19-20.) Defendant is wrong in both respects.

The Court did not misread Eleventh Circuit law to permit warrantless border searches based on suspicion of general criminal activity; rather, the Court correctly understood Eleventh Circuit law to hold that "border searches of property are reasonable without any level of suspicion . . . includ[ing] searching a traveler's luggage." (ECF 296 at 6 (citing United States v. Touset, 890 F.3d 1227, 1232, 1237 (11th Cir. 2018)).)  Eleventh Circuit law is unmistakably clear: "The Supreme Court has never required reasonable suspicion for a search of property at the border, however non-routine and intrusive, and neither have we."  890 F.3d at 1233.  Under Eleventh Circuit law, the search of defendant's luggage was unquestionably permitted and defendant cites to no authority to suggest otherwise.  The Court's denial of defendant's motion to suppress the credit cards was

_____

[2] In a heading, defendant asserts in conclusory terms that the Court erroneously applied Eleventh Circuit law instead of Ninth Circuit law, but defendant does not make any arguments disputing the Court's determination that Eleventh Circuit law applies.  (ECF 1342 at 9.)  "'[B]ald legal conclusions with no supporting factual allegations' are not enough to carry a petitioner's burden under § 2255."  United States v. Gullett-El, Nos. 19-CV-10247-CAS; 14-CR-00725-CAS-1, 2020 WL 3963743, at *7 (C.D. Cal. July 13, 2020) (quoting Sanders v. United States, 373 U.S. 1, 19 (1963)).  Moreover, for all of the reasons set forth in the Court's extensive opinion and order, the Court correctly determined that the lawfulness of the search was governed by the law of the place where the search occurred, namely the Eleventh Circuit.  (ECF 296 at 8-13.)  Defendant cites no authority to the contrary.

8

therefore based on this correct interpretation of Eleventh Circuit law.[3]

Even if the Court erroneously denied defendant's motion to suppress the credit cards (which it did not), there is no "reasonable probability" that the absence of this evidence would have impacted the outcome at trial. Defendant repeats his mistaken claim that purportedly tainted evidence from cellphones seized during the border stop in Miami was the "lynchpin" of the government's case against him. (ECF 1342 at 10-11.) It was not. This issue has been exhaustively briefed and argued by the parties in their extensive Kastigar submissions and rejected by the Court following the two-day Kastigar hearing: "Specifically—and contrary to Defendants' suggestion that the Government was 'still learning the basic facts of the case' and 'had not reviewed and interpreted the documents it subpoenaed,' []—the Government had already accumulated a tremendous amount of evidence and knowledge before Defendants were stopped in Miami. And the Government had either directly identified, or had a lead for, every one of its witnesses at trial. Simply put, on the eve of the Miami stop, the Government's investigation was firmly established and comprehensive." (ECF 874 at 21; see also id. 15-20.)

---

[3] To the extent the Court made reference to the portion of the Touset opinion in which the Touset court articulated the standard for reasonable suspicion and applied it to the facts of the Touset case, the Court did so to refute defendant's argument that the border exception only allows the government to search for contraband. (ECF 296 at 4-5.) Other courts applying Touset have similarly concluded that the Eleventh Circuit's opinion in that case did not restrict the parameters of a border search solely to contraband. See generally United States v. Pulido, No. 8:20-cr-292-VMC-CPT, 2021 WL 3476600, at *6 (M.D. Fla. July 2, 2021); United States v. Quarles, No. 8:21-cr-13-TPB-AEP, 2022 WL 3684661, at *2 (M.D. Fla. Aug. 25, 2022).

2. <u>Defendant's Discovery Order Claim Is Meritless</u>

Defendant alleges the government intentionally manipulated the grand jury process to lengthen the time during which it could build a case against him without disclosing tainted information to the defense. (ECF 1342 at 27.) Among other things, defendant claims the government did so by violating the Court's discovery order. (<u>Id.</u>) This claim also fails.

First, procedural rulings, such as the Court's discovery order, do not provide a basis for review pursuant to § 2255. <u>United States v. Timmreck</u>, 441 U.S. 780, 783-784 (1979). Second, summary dismissal of this claim is appropriate because defendant's allegations are "vague", "conclusory", and "palpably incredible." <u>Hendricks v. Vasquez</u>, 908 F.2d 490, 491 (9th Cir. 1990). Third, the Court already considered the issue and denied defendant any relief because the Court did not find that the government violated the discovery order and, in any event, held that defendant had failed to establish that the purported violations of the Court's discovery order prejudiced defendant in any way. (ECF 343 at 2.) Defendant fails to establish why the Court's rulings on this issue were erroneous (which they were not). Fourth, defendant's assertion that the government required additional time to build a case against him without disclosing tainted information to the defense is patently false and directly contradicted by the detailed factual record established by the parties' <u>Kastigar</u> submissions and two-day <u>Kastigar</u> hearing. (ECF 874 at 15-21.)[4]  Contrary to defendant's assertion, the factual record

_____

[4] Defendant's claim that the government improperly obtained an extension to review search warrant returns is asserted in a heading but unsupported by any factual allegations. That alone warrants
*(footnote cont'd on next page)*

10

1  demonstrates the government had overwhelming evidence of defendant's

2  guilt in advance of the border stop.  (Id.)

3          3.   Defendant's GEX 10 Claim Is Meritless

4      Defendant argues that the text messages between defendant and

5  co-defendant Tamara Dadyan used to create GEX 10 were selected based

6  on tainted information from a cell phone that was unlawfully seized

7  from defendant at the border stop ("1B123").  (ECF 1342 at 29-32.)

8  Defendant asserts in conclusory terms that after the Court granted

9  defendant's motion suppressing 1B123, the government improperly used

10 notes from their agents' review of tainted text messages from 1B123

11 to identify which of co-defendant Tamara Dadyan's two lawfully seized

12 cell phones ("1B21" or "1B130")[5] to ask the filter team to

13 prioritize.  According to defendant, the government selected "1B21"

14 because it contained the mirror image of the text messages on 1B123

15 and then used those text messages to create GEX 10.  (ECF 1342 at 29-

16 32.)  Defendant's claim is entirely based on a fictionalized

17 narrative that has been repeatedly proven false.  (ECF 874 at 43-47.)

18     Following the Court's review of the parties' extensive Kastigar

19 submissions and a two-day Kastigar hearing, the Court determined that

20 "defendants' view . . . is flatly contradicted by the documentary

21 evidence and credible testimony provided by the Government."  (ECF

22 874 at 44.)  Specifically, the prosecutor who told the filter team

23 which of the two lawfully seized smartphones to prioritize for review

24 repeatedly told the filter team to prioritize 1B130 (not 1B21).

25

26 summary dismissal.  Gullett-El, 2020  WL 3963743, at *8.  In
   addition, this claim fails for all of the same reasons that
27 defendant's discovery order claim fails.

28     [5] Both 1B21 and 1B130 were seized pursuant to a valid search
   warrant.  (ECF 297.)

(Id.)  Moreover, when the prosecutor learned that the filter team had mistakenly prioritized 1B21 (not 1B130), the prosecutor asked the filter team to stop its review of 1B21 and switch to 1B130 instead. (Id. at 45.)  When the prosecutor later learned that the filter team had continued its review of 1B21 (and not switched to 1B130 as he had asked), the prosecutor settled for 1B21, explaining "We need one of the [two] [Tamara] Dadyan devices – 1B21 is fine."  (Id.)  The prosecutor testified to these facts under oath before the Court and was subject to cross-examination, and his testimony was deemed by the Court to be credible because, among other things, his testimony was corroborated by documentary evidence (namely contemporaneous emails). (Id. at 43-47.)  This conclusively demonstrates that the government did not use tainted information to select the cell phone that contained the texts messages used to create GEX 10 and that GEX 10 is not tainted.  Defendant does not now – and never has – offered any factual evidence to the contrary.[6]

### 4.   Defendant's Filter Team Claim Is Meritless

Defendant argues that the government misrepresented that it had used a filter team to review certain materials for potentially privileged materials when, according to defendant, it had not.  (ECF 1342 at 32-34.)  This claim should be dismissed on the ground that it is patently frivolous and false.  Vasquez, 908 F.2d at 491. Defendant is well aware the government actually used a filter team to

---

[6] Even had the prosecution team used 1B123 to prioritize "1B21" (which it did not), such use would have been harmless because the government was already in possession of "1B21" pursuant to a valid search warrant and had already directed the filter team to review that particular phone for reasons unrelated to the text messages. (ECF 850 ¶¶ 14-18 (filed under seal).)

conduct a review for potentially privileged materials because: (i) the filter team actually produced to defendant the potentially privileged documents that the filter team had segregated as a result of its review (Declaration of Christopher Fenton ("Fenton Decl.") ¶ 1, Ex. 1); and (ii) the filter team negotiated with defendant's counsel a stipulated order that would permit the sharing of this potentially privileged information between and amongst defendant and his co-defendants (id. ¶ 2, Ex. 2) (ECF 466, 537). To the extent defendant alleges otherwise, those allegations are refuted by the record.[7]

>    5.   Defendant's Claim Based on His Sentence Is Meritless

Defendant attacks his sentence as excessive. (ECF 1342 at 34-37.) He argues in conclusory terms that the Court should have sentenced him to 72 months' imprisonment instead of 204 months' imprisonment based on his counsel's view of the Guidelines' calculation and § 3553(a) factors, and his summary comparison of his case to others involving disaster relief loan fraud. (Id. at 35.) Defendant also accuses the Court of sentencing based on its "personal view" of the case rather than the Guidelines or § 3553(a) factors, and alleges the Court improperly relied on GEX 10 (which defendant again insists was tainted). He is wrong on the law and the facts.

---

[7] Defendant also appears to object that the filter team should have filtered 1B123 for "tainted" information prior to the date on which the Court issued its opinion granting defendant's motion to suppress 1B123, but did not. (ECF 1342 at 32-34.) This claim too is frivolous. Neither the prosecution team nor the filter team had reason to believe the information on 1B123 was "tainted" until the Court issued its order granting defendant's motion to suppress the evidence from 1B123 based on Fifth Amendment grounds, at the earliest. (See generally ECF 296 (entered Apr. 27, 2021).) Once the Court issued its suppression order, there was no need for the filter team to conduct a review of 1B123 because the entirety of 1B123's contents was to be segregated and made inaccessible to the prosecution team.

1   Defendant's claim should be dismissed because allegations that a

2   sentence within the statutory maximum is excessive are not ordinarily

3   grounds for relief under § 2255, including allegations based on

4   purported sentencing disparities.  See United States v. Campo, 919

5   F.2d 741 (9th Cir. 1990) (citing United States v. Meyers, 847 F.2d

6   1408, 1416 (9th Cir. 1988); Houser v. United States, 508 F.2d 509,

7   516 (8th Cir. 1974)).

8   Were the Court to review defendant's claim, it still fails.

9   The Court permissibly exercised its discretion and committed neither

10  procedural nor substantive error in determining defendant's sentence.

11  The Court began, as it was required to do, by calculating the

12  applicable sentencing range under the advisory Sentencing Guidelines.

13  (Tr. of Nov. 15, 2021 Sentencing Hr'g at 12:3-16:12.)  Defendant does

14  not actually challenge that calculation, which yielded a Guidelines

15  range of 108-135 months' imprisonment for Counts 1 through 20 and

16  Count 26.  (Id. at 16:6-7.)

17  The Court then considered the factors prescribed in § 3553(a),

18  giving particular weight to the seriousness of the offense and the

19  need for deterrence.  The Court explained that "in the Court's

20  experience which now is in excess of 30 years, [the Court] can't

21  recall a fraud case that was conducted in a more calloused,

22  intentional way without any regard for the law."  (Id. at 29:6-15.)

23  The Court further explained that:

24      The Court recognizes that in the universe of white collar
        cases, this is a sentence that is very meaningful and not
25      unprecedented but certainly at the higher range of
        sentences that this Court has imposed and other courts have
26      imposed.  But, given the nature of what was introduced at
        trial, the Court is convinced that this is the least
27      sentence that the Court can impose to satisfy the element
        of promoting respect for the law and to provide punishment
28      and, on the second factor, adequate deterrence to criminal

                                    14

> conduct.  Given what the defendant said in the course of
> this trial, the Court has a clear view that, if given the
> opportunity, he would concoct another fraud because the way
> he spoke of this fraud indicates that that is his way of
> life.

Id. at 29:23-30:12.  These statements do not, as defendant suggests,

show that the Court sentenced him based on its "personal view" (ECF

1342 at 36); to the contrary, these statements demonstrate that the

Court appropriately considered the § 3553(a) factors when determining

his sentence and considered how other defendants had been sentenced.[8]

The Court also provided a detailed explanation of the basis for

the variance on Counts 1-20 and Count 26 (from 135 months to 180

months), which it characterized as "small":

> In -- in imposing a variance, I have considered many of the
> same comments that I have made already, in addition, the
> fact that this PPP program was implemented by the
> government on an emergency level to help businesses which
> were upside down because of the pandemic, and the
> government recognized that, to some extent, it was on the
> honor system because there was no way the government could
> conduct audits in a way that would allow the purpose of the
> program and that was to get relief immediately.  And the
> defendant took advantage in the most flagrant way of that
> program and not only caused harm to the SBA, but this type
> of conduct could deter governments in the future from doing
> things that are necessary because of the fear of being
> ripped off as they were here.  This defendant had no regard
> for the law.  He is a [sic] endemic, cold hard fraudster --
> that is the only way to say it -- who takes pride in what
> he does and views fraud as an achievement.  And so, in my
> view, based upon what I heard at the trial and my
> consideration of the guidelines and the sentencing factors,
> I think this small variance is justified.

---

[8] The Court made a point of stating for the record that it has
considered the cases that defendant cited when determining his
sentence:  "I have considered the need to avoid unwarranted
sentencing disparities among defendants with similar records who have
been found guilty of similar conduct, and I have not ignored, as
perhaps the government suggested, the defendant's representations
about other PPP fraud cases and sentences imposed by those judges."
(Id. at 31:18-23.)

15

1   (Id. at 32:23-33:21.)   It was appropriate for the Court to take all

2   of these facts into consideration when determining the sentence,

3   including whether to vary upwards, and defendant does not argue

4   otherwise.[9]

5        Defendant also argues that government "gamed the extradition

6   process by waiting until the last minute to extract [defendant] from

7   Montenegro" in order to enhance the sentence based on his flight and

8   deprive him of his ability to file an appeal.  (ECF 1342 at 37.)

9   Defendant's claim is frivolous and contradicted by the factual

10  record.  The government could not have extradited defendant in

11  November 2021 (when defendant was sentenced and the government sought

12  the obstruction enhancement based on flight), because the government

13  had not yet located defendant.  In fact, the government was not aware

14  of defendant's location until on or about February 23, 2022, when it

15  was first notified that defendant had been arrested in Montenegro.

16  (Fenton Decl. ¶ 6.)  Defendant's time to appeal had already expired

17  by that date.  To be certain, the government did not take any actions

18  to prevent defendant from timely filing an appeal.  Defendant's

19  failure to do so was entirely his own doing based on his decision to

20  flee after the jury convicted him at trial and the Court denied his

21  Kastigar motion.

22        6.   Defendant's Claim Based on the Timing of the Kastigar
               Hearing Is Meritless

23

24   Defendant claims the Court erred in holding the Kastigar hearing

25  after the trial because it deprived him of the opportunity to

26

27  _____

28        [9] It was also appropriate for the Court to consider GEX 10 when
     sentencing defendant because, as explained above, it was not tainted.

                                    16

1   knowingly and intelligently plea bargain with the government and
2   therefore violated his due process rights.

3       Defendant's claim should be dismissed because it is not
4   cognizable under § 2255.  Defendant's claim does not implicate a
5   constitutional right because "'there is no constitutional right to
6   plea bargain.'" United States v. Morris, 633 F.3d 885, 888 (9th Cir.
7   2011) (quoting Weatherford v. Bursey, 429 U.S. 545, 561 (1977)).  As
8   a result, there is no basis for collateral relief under § 2255 unless
9   defendant can show that claimed error constituted a fundamental
10  defect which inherently results in a "complete miscarriage of
11  justice." United States v. Wilcox, 640 F.2d 970, 972-973 (9th Cir.
12  1981) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)).
13  Defendant does not try to make this showing, nor can he.  The
14  decision about when to hold the Kastigar hearing was entirely within
15  the Court's discretion.  (ECF 356 at 4.)  In this case, the Court
16  exercised its discretion to hold the hearing based, in part, on the
17  fact that defendant delayed in filing his motion requesting the
18  Kastigar hearing.  (Id.)  The Court also wanted to allow the parties
19  sufficient time to prepare for – and the Court to conduct - a
20  thorough Kastigar hearing.  (Id.)  Under these circumstances, the
21  Court's proper exercise of its discretion clearly did not result in a
22  "miscarriage of justice".  If anything, holding the hearing after the
23  trial presented defendant the best opportunity to argue his Kastigar
24  motion.

25      Defendant's claim also fails on the merits because it is
26  premised on the idea that, if the Court conducted the Kastigar
27  hearing before trial, then defendant would have had more information
28  about the government's case (including, specifically the text

17

1   messages from 1B21 used to create GEX 10) and potentially pleaded

2   guilty.

3          First, defendant had all of the information necessary to make a

4   knowing and intelligent decision about whether to plea bargain.

5   Specifically, defendant had a copy of the text messages from 1B21

6   since at least February 2021, when the government produced a forensic

7   copy of 1B21.  (ECF 278 at 6-8; 278-4 (filed under seal).)  Defendant

8   also had every reason to believe the government would potentially use

9   this evidence against him at trial because, among other things, the

10  evidence had been lawfully obtained pursuant to a search warrant and

11  the Court had denied his co-defendant's motion to suppress the

12  evidence.  (ECF 297.)  Moreover, in the lead up to trial, defendant

13  had no reason to believe this evidence was tainted.  The claim that

14  GEX 10 was tainted was an argument that his counsel manufactured

15  after the trial – and in any event, it was based on a fictional

16  narrative unsupported by fact and contradicted by the record.

17         Second, defendant's assertion that he would have engaged in good

18  faith plea negotiations is simply incredible.  United States v.

19  Howard, 381 F.3d 873, 879 (9th Cir. 2004) ("When a

20  § 2255 petitioner's claim . . . [is] inherently incredible, a

21  district court has the discretion to dismiss the petition without a

22  hearing.")  Defendant fled from justice after he was convicted and

23  the Court denied his Kastigar motion.  In light of these facts,

24  defendant cannot now credibly claim that, if the Court had only held

25

26

27

28

1   his Kastigar hearing before the trial, he would have opted to plea

2   guilty rather than flee.[10]

3        Third, defendant assumes that the government would have made him

4   a plea offer, however, as the Court previously found following the

5   Kastigar hearing, the government had refused to engage in plea

6   negotiations with defendant for a number of reasons, including

7   because the government believed its evidence against Ayvazyan was

8   overwhelming.  (ECF 874 at 83-84.)  The Court found this to be

9   "credible because the Government's untainted evidence against

10  Ayvazyan was, in fact, overwhelming."  (Id. at 84.)

11       For all of these reasons, defendant's claim should be dismissed

12  and/or denied.[11]

13            7.   Defendant's Brady Claim Is Meritless

14       Defendant argues that the government failed to produce Brady

15  materials in the possession of state prosecutors relating to charges

16  the state brought against defendant in a separate unrelated state

17  case several months after he was indicted by a federal grand jury in

18  this case.  (ECF 1342 at 43.)  "There are three components of

19  a Brady violation: The evidence at issue must be favorable to the

20  accused, either because it is exculpatory, or because it is

21  impeaching; that evidence must have been suppressed by the State,

22

23  ─────────────────────

24       [10] Indeed, it appears defendant planned his escape with his wife
    and co-defendant to Montenegro while carefully concealing his plans
    from USPO:  in the interim between his trial conviction and his

25  Kastigar hearing, he declined to be interviewed by USPO and failed to
    make the mandatory financial disclosures.  (ECF 1094.)

26
         [11] In addition, to the extent this claim is based on defendant's

27  mistaken claim that GEX 10 is tainted, it fails for all of the
    reasons explained above. (ECF 874 at 43-47.)

28
                                  19

either willfully or inadvertently; and prejudice must have ensued." <u>United States v. Price</u>, 566 F.3d 900, 907 (9th Cir. 2009) (internal quotations omitted).  Defendant fails to satisfy any of these components – nor can he.

With respect to the first component – the existence of evidence favorable to the accused – defendant does not offer any specific factual allegations to show the state discovery materials contained evidence favorable to him, let alone exculpatory evidence.  Given that the evidence from the state case presumably supports the state indictment allegations charging defendant with more fraud, there is no reason to believe the state case discovery is exculpatory.

Defendant also fails to satisfy the second component.  As a threshold matter, the government did not have an obligation under <u>Brady</u> to make discovery from the state case available to defendant: the state investigators and state prosecutors were not part of the federal prosecution team and the state case was an independent case brought by state prosecutors.  In any event, the discovery from the state case was available to defendant because: (i) defendant was a party to the state case and therefore received discovery relating to the state case from the state; and (ii) out of an abundance of caution, the government made arrangements with the state prosecutors to make the entirety of discovery from the state case available to all of the defendants in this case for inspection.[12]  (Fenton Decl.

---

[12] The government understood that prior to the state's involvement, the Los Angeles Police Department referred the underlying mortgage fraud investigation to the FBI in 2017, and the FBI opened an investigation.  (Fenton Decl., Ex. 3.)  The FBI referred the investigation to the U.S. Attorney's Office in Los Angeles, which similarly opened an investigation, but ultimately declined to pursue the matter further in 2019.  (*Id.*)  The FBI had a
*(footnote cont'd on next page)*

¶¶ 3-5, Exs. 3-5.) Moreover, the fact that defendant had access to these discovery materials is demonstrated by the fact that he tried to offer exhibits based on these discovery materials into evidence at trial. (ECF 1342 at 44.)

Defendant's Brady claim also fails because he cannot establish prejudice. As defendant explains in his motion, the Court precluded defendant from admitting evidence relating to the state case. (Id.) Even if defendant were permitted to admit such evidence, there is no reasonable probability it would have resulted in an acquittal: if anything, the evidence may have further inculpated defendant.

### 8. Defendant's Jury Instruction Claim Is Meritless

The Court has twice explained at length why it properly rejected defendant's multiple conspiracies jury instruction. (ECF 664 at 9-17; ECF 875 at 3.) In his § 2255 motion, defendant repeats his same arguments without arguing that the Court's rulings were erroneous. (ECF 1342 at 45-51.) Merely repeating arguments that the Court already rejected is not a cognizable basis for a § 2255 motion and does not provide any basis for relief.

### C. Defendant Is Not Entitled to an Evidentiary Hearing

"A district court may . . . deny a § 2255 motion without an evidentiary hearing [if] the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." United States v. Quan, 789 F.2d 711, 715 (9th Cir. 1986). "Where a prisoner's motion presents no more than conclusory allegations,

---

small amount of information relating to this case in its possession. (Id.) Despite the fact that the government did not plan to use this information as evidence at trial (and indeed did not use the information), the government nevertheless made it available to all of the defendants in this case for inspection during discovery. (Id.)

unsupported by facts and refuted by the record, an evidentiary hearing is not required."  Id.

Applying this standard, the Court should decline to hold an evidentiary hearing.  In light of the dozens of motions filed in this case, the nine-day jury trial, the extensive Kastigar submissions, the two-day Kastigar hearing, and the sentencing submissions and hearings for the eight defendants in this case, there is an ample record for the Court to resolve the motion.  In addition, as explained above, defendant's claims are largely based on conclusory allegations and factual assertions that have already been disproven as false.  There is no new documentary evidence or witness testimony required to resolve defendant's § 2255 motion.  For all of these reasons, the Court should decline to hold a hearing.

**D.  The Court Should Deny Any Request for a Certificate of Appealability**

To warrant a certificate of appealability, defendant's motion under § 2255 must have "made a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2)-(3); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000) (stating that when a district court denies a habeas petition on procedural grounds, a certificate of appealability is warranted only if the petitioner shows that (1) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling"); see also United States v. Winkles, 795 F.3d 1134, 1143 (9th Cir. 2015) (adopting the Slack standard for granting a certificate of appealability).  As discussed at length above, defendant cannot meet

this standard because he has not stated any valid claim of the denial of his constitutional rights, nor would the correctness of the Court's dismissal of defendant's motion on procedural grounds be debatable.  Therefore, the Court should deny a certificate of appealability if the Court dismisses and/or denies defendant's § 2255 motion.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court dismiss and/or deny defendant Richard Ayvazyan's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.