Carlo Brooks, CA Bar # 316485
3826 Grand View Boulevard, Suite 661472
Los Angeles, CA 90066
(310) 691-9373
carlo@carlobrooks.com

Attorney for Petitioner
RICHARD AYVAZYAN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

|  |  |
|---|---|
| RICHARD AYVAZYAN,<br><br>              Petitioner<br><br>    vs.<br><br>UNITED STATES OF AMERICA,<br><br>              Respondent. | Case No.: 2:22-cv-8915<br><br>[CR No. 2:20-cr-579-SVW]<br><br>**PETITIONER'S REPLY IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**<br><br>Hon. Stephen V. Wilson<br><br>Hearing Date: March 6, 2023<br>Time: 1:30 p.m. |

## I.   INTRODUCTION

The government's opposition advocates for a circular reasoning in which every single one of Petitioner's contentions is "meritless" because "the Court remarked on numerous occasions following a nine-day trial and a two-day *Kastigar* hearing [that] the evidence against defendant was overwhelming." Gov. Opp'n to Mot. to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Opp'n") at 6, Dkt. 6 (citing ECF 874 at 83; 84). The government's circular reasoning depends on the assumption that the Court's ruling is inviolable. Such assumption would preclude the possibility that a sentence could be "imposed in violation of the Constitution or laws of the United States, . . . that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack," thus eviscerating 28 U.S.C. § 2255. This Court must not adopt the government's proposed reasoning.

The government states that Mr. Ayvazyan "must demonstrate that the alleged errors "not merely . . . created a *possibility* of prejudice, but that [the errors] worked to [his] *actual* and substantial disadvantage, infecting [his] entire [proceedings] with error of constitutional dimensions." Opp'n at 5 (citing *United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982))). This is precisely what Petitioner argued in his opening

motion.

It is not every day that a government case is built upon avowedly tainted evidence, such as here. The government conducted an unlawful search and seizure and compelled statements from Petitioner which led to documentary evidence from an unconstitutionally seized phone – a text chain in which Petitioner and co-defendant Tamara Dadyan allegedly discussed the conspiracy, the "mirror image" of which was eventually curated into what came to be known as the government's "star witness" at trial: Government Exhibit 10 ("GEX 10"). *See* Dkt. 823, Gov't. Exhibit A to Ahn Decl.; Dkt. 813 (July 29, 2021 Kastigar Hr'g Tr.) *at* 196.

The taint can be traced back all the way to the October 19, 2020 Miami airport FBI-directed "customs" inspection, which yielded a treasure trove of tainted evidence for the government's review. The exposure from that point forward is not in dispute:

- On October 20, 2020, after instructing Customs and Border Protection (CBP) to initiate a secondary inspection of Petitioner and his wife, information was conveyed to Agent Palmerton from Customs and Border Protection (CBP). *See* Dkt. 813 (July 29, 2021 Kastigar Hr'g Tr*.) at* 11-18. However, his review is undocumented. *Id.*

- DOJ Trial Attorney Fenton also received information on October 20, 2021.

*See* Dkt. 813 (July 28, 2021 Kastigar Hr'g Tr.) at 87 ("Q: So the October 20th … airport stop. You received information [on] approximately October 20th about some of the contents on the Miami phones orally; correct? A: Yes.").

- On November 13, 2020, Agent Palmerton reviewed the seized Miami phones for approximately two hours and took 65 photographs of the phones and their contents. *See* Dkt. 813 (July 29, 2021 Kastigar Hr'g Tr.) at 15-17; Kastigar Ex. 1 at 23. His review is undocumented. *Id.* at 11-18.

- On February 2, 2021, Agent Palmerton received 141 photographs from CBP, which included photographs of text messages from Mr. Ayvazyan. *Id.* at 21; *Kastigar Ex.* 2 at 140. The prosecution team received the 141 photos on February 2, 2021. Dkt. 813 (July 28, 2021 Kastigar Hr'g Tr.) at 156-57, 203-204, 239-240; *Kastigar Ex.* 2 at 111.

- On February 11, 12, and 19, 2021, the Cellebrite data extractions from three key Miami smartphones, including the "Iuliia Zhadko" phone (an alias of Richard Ayvazyan), were released and reviewed. *See* Dkt. 813 (July 28, 2021 Kastigar Hr'g Tr.) at 29-40, 71-87. 918 pages of text messages were extracted from the Zhadko phone (phone "1B123"). Dkt. 813 (July 29, 2021 *Kastigar* Hr'g Tr.) at 32.

- Of particular interest to the government were text messages between Petitioner and Tamara Dadyan discussing PPP or EIDL loan applications.

These text messages and responses from the Dadyan phone (phone "1B21") were exported into PDF format for review. Dkt. 813 (July 29, 2021 Kastigar Hr'g Tr.) at 31-35; *Kastigar Ex.* 19 (Ex. O to Palmerton Decl. at 391, 474, 561).

- On March 9, 2021, the government filed a superseding indictment.

- On April 27, 2021, Agent Palmerton sent 918 pages of text messages excerpted from the Zhadko phone to trial attorney Fenton. Dkt. 813 (July 29, 2021 Kastigar Hr'g Tr.) at 39-39.

- The Tamara Dadyan phone was seized from Dadyan's Weddington residence on November 5, 2020. Dkt. 813 (July 29, 2021 Kastigar Hr'g Tr.) at 18-19. However, the government did not review the contents of the Dadyan phone until May 2021. *Id.* They realize they are seeing the "mirror image" of the text messages they extracted from Petitioner's phone in November. *Id.* at 19-21.

- On May 7, 2021, AUSA Catherine Ahn, the author of GEX 10, is assigned to the case. Dkt. 813 (July 29, 2021 Kastigar Hr'g Tr.) at 67. She reviewed text messages from the Dadyan phone (1B21); Agent Palmerton selected the text messages and uploaded them to the government's file share system. *Id.* at 70 to 71. Ms. Ahn then took this information and created Government Exhibit 10. *Id.* at 79. Agent Palmerton – who had reviewed the Zhadko phone containing the mirror image of the text messages on the Dadyan phone –

provided the precursor to Government Exhibit 10.

- In June 2021, the government used a subset of Petitioner's unlawfully seized text messages at trial as part of Government Exhibit 10. Dkt. 813 (July 29, 2021 *Kastigar* Hr'g Tr.) at 35-36. As predicted by Ms. Ahn in her May 11, 2021 email, the text messages became the government's "star witness" at trial. Dkt. 823, Gov't. Exhibit A to Ahn Decl.

- DOJ Trial Attorney Fenton recalls reviewing all three Cellebrite files, including the contents of Petitioner's "Zhadko" phone. Dkt. 813 (July 28, 2021 Kastigar Hr'g Tr.) at 38. However, he does not "specifically recall" the specific images and documents he reviewed. *Id.* at 38, 53, 63, 73, 92, 118, 158, 2013, 225; Kastigar Exhibit 31 (Fenton Decl.) at 29 ("I do not have a specific recollection of the information that I saw.").

- Despite months and months of robust exposure to patently tainted evidence, the government cannot prove it did not use tainted evidence because, by its own admission, it had no appreciation of the taint. The government cannot prove GEX 10 is untainted because it does not "specifically recall" what was reviewed.

## II.   ARGUMENT

### A. Petitioner's claims are not procedurally defaulted

Normally a petitioner who fails to raise his § 2255 claims on direct appeal

5

must demonstrate cause and prejudice to overcome the procedural default. "The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350-51 (2006); *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) ("A § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default."). There is, however, "an exception if a defendant can demonstrate both 'cause' for not raising the claim at trial, and 'prejudice' from not having done so." *Sanchez-Llamas*, 548 U.S. at 351. A defendant who fails to show cause and prejudice can obtain review by demonstrating "that the constitutional error . . . has probably resulted in the conviction of one who is actually innocent." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

"In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim [on direct appeal]." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991). "If a petitioner succeeds in showing cause, the prejudice prong of the test requires demonstrating 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *United States v. Braswell*,

501 F.3d 1147, 1150 (9th Cir. 2007) (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

A defendant filing a 28 U.S.C. § 2255 motion can also overcome procedural default based on failure to file a direct appeal by demonstrating "structural errors" – that is, errors that affect the framework within which the trial proceeds and defy analysis by harmless-error standards. "[S]ome errors should not be deemed harmless beyond a reasonable doubt." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017). "These errors came to be known as structural errors." *Id.* at 1907-08 (citing *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991)). "The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial. Thus, the defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Id.* (quoting *Fulminante*, 499 U.S. 279 at 310). "For the same reason, a structural error 'def[ies] analysis by harmless error standards.'" *Id.* (quoting *Fulminante*, 499 U.S. 279 at 309).

Here, it is undisputed that Petitioner did not file a direct appeal. An objective factor external to the defense impeded counsel's efforts to raise the claim on direct appeal as Petitioner was not residing within the jurisdiction of the United States.

As to prejudice, the errors raised in Petitioner's motion concern constitutional

violations that worked to his "actual and substantial disadvantage." As set forth in Petitioner's opening motion and herein, the unlawfully executed FBI-directed customs search and tainted evidence derived therefrom "infected" Petitioner's entire trial with "error of constitutional dimensions." The government *cannot* prove it did not use tainted evidence in this case. The *Kastigar* issue *is* an issue of constitutional dimensions. *See Kastigar v. United States*, 406 U.S. 441, 444-45 (1972) ("[T]he power to compel testimony is not absolute. There are a number of exemptions from the testimonial duty, the most important of which is the Fifth Amendment privilege against compulsory self-incrimination. The privilege reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty. It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used. This Court has been zealous to safeguard the values that underlie the privilege.").

The *Kastigar* taint in this case is not harmless by any measure. Among other things, the illegal search and seizure directed by Agent Palmerton *was* the precursor to the government's "star witness," GEX 10. Petitioner's unlawfully seized phone contained the "mirror image" of the text messages from the Dadyan phone (1B21) that was obtained via the search warrant on the Weddington Street residence.

AUSA Ahn took the text messages selected by Agent Palmerton – who had been seeped in tainted evidence since October 2020 – and created GEX 10, a reverse-engineered exhibit containing the text messages that were seized at the Miami airport. The fact that these text messages also existed in "mirror image" form on the Dadyan phone does not "purge" the taint. The Dadyan "mirror image" is not a "legitimate independent source" – it was not reviewed until May 2021, eons after the text messages from Petitioner's Miami phone had already been extracted, exported and reviewed. In sum, Petitioner's Fifth Amendment privilege against compulsory self-incrimination was blatantly violated, and the violation worked to his actual and substantial disadvantage.

This blatant constitutional violation was also a "structural error" in that, rather than being "simply an error in the trial process itself," it affected the *entire* framework of the trial. In essence, Petitioner's smartphone, unlawfully seized by coerced statements during *incommunicado* interrogation, spoke for him, against his will, at trial *and* sentencing. In support of the admittedly exemplary sentencing, the Court relied not on Petitioner's testimony, but on the *text messages* from his phone. See Dkt. 1166 (minutes); 1154 (transcript) ("He says, for example, in the text messages . . . "). Petitioner's "own words" were really just GEX 10, reverse-engineered at the 11th hour as texts "from" Dadyan's phone. As such, Petitioner's claims are not procedurally defaulted.

9

## B. Petitioner's Fourth Amendment claim is not "meritless"

The government makes the perfunctory argument that Petitioner's Fourth Amendment claim is "meritless." First, it claims that "Defendant does not seriously dispute that the Court correctly applied Eleventh Circuit law instead of Ninth Circuit law." This is false on the face of the pleadings. In his opening motion, Petitioner argued that the Court erroneously applied Eleventh Circuit law even though, if it was one circuit's law, it should be the Ninth Circuit, "because that's where the search was directed from." The government makes no substantive argument as to why a "customs inspection" directed by an FBI agent from California should be controlled by the customs jurisprudence of the situs. In fact, the Court granted Petitioner's Fifth Amendment *Miranda* motion and suppressed the evidence from Defendants' phones based on a threshold determination that the interrogation was *criminal* in nature. *See* Dkt. 296. Therefore, 9th Circuit criminal law jurisprudence should have controlled the criminal aspect of the Fourth Amendment claim.

Moreover, the government's contention that Defendant may not raise a Fourth Amendment challenge in a § 2255 motion is without merit. While *Stone v. Powell* established a *general rule* that the exclusionary rule should not be applied in state criminal proceedings where a defendant has had a full and fair opportunity to litigate their Fourth Amendment claim, a critical exception to this rule applies in

this case: when the police or government officials engage in bad faith or deliberate conduct that violated the defendant's Fourth Amendment rights, the exclusionary rule still applies.

In his opening motion, Petitioner went to great lengths to detail the bad-faith circumstances warranting deterrence in this case. CBP agents' violation of their own regulations and policies apply regardless of the "situs of the search." CBP, working in concert with the prosecutors in this case, conducted a series of searches of private smartphones over the course of almost four hours, lied about the purpose of their search, violated CBP policy by executing the search without the travelers present, and clearly violated 19 C.F.R. § 162.21. Bad faith constitutional violations are *per se* egregious. *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1449 n.5 (9th Cir. 1994) ("Federal courts cannot countenance deliberate violations of basic constitutional rights. To do so would violate our judicial oath to uphold the Constitution of the United States.").

Moreover, whether the Court correctly applied Eleventh Circuit law instead of Ninth Circuit law is not a decisive factor here because CBP regulations have extraterritorial application and apply beyond the boundaries of a particular jurisdiction. Petitioner's phone was seized by CBP.  Part 162 of Chapter I of Title 19 of the Code of Federal Regulations Customs sets forth the rules which regulate U.S. Customs and Border Protection's Inspection, Search, and Seizure powers. 19

C.F.R. § 162.21 of Subpart C, "Seizures," provides that "Property may be seized, if available, by any Customs officer *who has reasonable cause to believe that any law or regulation enforced by Customs and Border Protection or Immigration and Customs Enforcement has been violated,* by reason of which the property has become subject to seizure or forfeiture." 19 C.F.R. § 162.21. Loan fraud is not a "law or regulation enforced by Customs and Border Protection." *United States v. Touset*, 890 F.3d 1227 (11th Cir. 2018) involved the "importation of contraband," specifically, child pornography. It has no application in this case. Therefore, the government's "meritness" claim is meritless.

### C. Petitioner's discovery order claim is not meritless

Citing *United States v. Timmreck*, 441 U.S. 780, 783-784 (1979), the government argues that "procedural rulings" do not provide a basis for review pursuant to § 2255.

*Timmreck* dealt with a "technical violation" of a rule without a showing of prejudice. Here, the government's dumping of data related to this alleged overarching conspiracy and continued production after the close of discovery violated the Court's Discovery Order and operated as an extension of the search warrant that ultimately provided the key evidence at trial. Moreover, the Court's rulings were erroneous because they failed to take into account the prosecution's "bad faith" and "deliberate" conduct in this regard. Therefore, the continued

production of discovery after the Court's March 15, 2021 deadline prejudiced Petitioner.

### D. Petitioner's GEX 10 claim is far from meritless

In its opposition, the government reduces Petitioner's GEX 10 claim to asserting that the government improperly used notes from their agents' review of tainted text messages from 1B123 to identify which of co-defendant Tamara Dadyan's two lawfully seized cell phones ("1B21" or "1B130") to ask the filter team to prioritize.

As set forth in the opening motion and above, Petitioner's GEX 10 claim has far greater import. On May 7, 2021, AUSA Catherine Ahn, the author of GEX 10, was assigned to the case. Dkt. 813 (July 29, 2021 Kastigar Hr'g Tr.) at 67. She reviewed text messages from 1B21; Agent Palmerton *selected* the text messages and uploaded them to the government's file share system. *Id.* at 70 to 71. Ms. Ahn then took this information and created Government Exhibit 10. *Id.* at 79. <u>Agent Palmerton – who had reviewed the Zhadko phone containing the mirror image of the text messages on the Dadyan phone – provided the precursor to Government Exhibit 10.</u> At trial, the government used a subset of Petitioner's unlawfully seized text messages as part of Government Exhibit 10. Dkt. 813 (July 29, 2021 Kastigar Hr'g Tr.) at 35-36. As predicted by Ms. Ahn in her May 11 email, the text messages became the government's "star witness" at trial. Dkt. 823, Gov't. Exhibit A to Ahn

Decl. They spoke for Petitioner against his will and in violation of his fundamental right against self-incrimination. Therefore, Petitioner's GEX 10 claim is not meritless.

### E. Petitioner's filter team claim is not meritless

The government states the filter team functioned lawfully because it "actually produced to defendant the potentially privileged documents that the filter team had segregated as a result of its review."

The government conveniently fails to address the elephant in the room: that the filter team failed entirely to filter away the taint and instead allowed it to spread like ink. The government argues that it could have found the loans through other sources. But whether the government had other reason to suspect that some of these loans might be fraudulent is irrelevant, because their derivation was, in fact, from the tainted information, not untainted information. *See Kastigar*, 406 U.S. at 461-62 (government's "heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources standard requires proving that evidence" (emphasis added)); *United States v. Crowson*, 828 F.2d 1427, 1429 (9th Cir. 1987) ("[T]he government may still use the evidence derived from compelled testimony if it meets its burden of showing that the evidence it intends to present is derived from a prior, independent source;" *United States v. Montoya*, 45 F.3d 1286, 1295 (9th Cir. 1995) (holding that government carried burden by "establish[ing]

that the indictment rested entirely on sources independent of Montoya's immunized testimony").

The prosecution team in the instant case purportedly used a filter team. *See* Dkt. 813, Kastigar hearing transcript, at 25-25; 136; 192; 213-214. However, government testimony proves that the taint from Petitioner's unlawfully seized phone was hardly "filtered." Agent Palmerton testified that the Cellebrite reports from the digital devices from the Miami seizure were released to him from the filter team on February 23, 2021. *Id.* at 25. Agent Palmerton reviewed phone 1B123 which was registered to Zhadko, and the other was 1B126, which was registered to a Victoria Kauichko, approximately once per week from  February 24 and April 27 2021. *Id.* at 26-27. He exported what he thought were relevant text messages into a PDF format. *Id.* at 27. IRS Criminal Investigation Special Agent Geffrey Clark "never spoke with the filter team." *Id.* at 136. Prior to April 27, 2021, no one provided Agent Clark with information from *any other other phones* besides the Miami phones. *Id.* Agent Clark reviewed the Tamara Dadyan phone, of which the Zhadko phone contained the mirror image, but as of April 26, 2021, that phone had *not* been released from the filter team to the government team. *Id.* at 136-137. In other words, the Tamara Dadyan phone was not purged of the taint of the Zhadko phone – Petitioner's phone. In sum, the testimony demonstrates that no tainted information was filtered in any meaningful way. There was no judicial review

before any tainted materials could be released to the prosecution team. Petitioner's Fifth Amendment rights were clearly violated.

### F.  Petitioner's claim based on his sentence is not meritless

The government argues that Petitioner's claim should be dismissed because allegations that a sentence within the statutory maximum is excessive are not ordinarily grounds for relief under § 2255, including allegations based on purported sentencing disparities. However, "not ordinarily" does not constitute a bar. *See Campo v. United States*, No. 89-56273, 1990 U.S. App. LEXIS 21325, at *3 (9th Cir. Dec. 6, 1990) (assuming that Campo raised a cognizable constitutional claim under § 2255 but finding that ten-year sentence imposed was within the statutory maximum and was not an unreasonable exercise of discretion).

Therefore, the Court should consider Petitioner's sentencing claim.

### G. Petitioner's claim based on the timing of the *Kastigar* hearing is not meritless

The government contends that Petitioner's claim should be dismissed because it "does not implicate a constitutional right because "'there is no constitutional right to plea bargain.'" Yet while there may not be a "constitutional right to plea bargain," there is a basic due process right to be given all of the information necessary to make a knowing and intelligent decision about *whether* to plea bargain.

Here, it is clear from the record that the decision to engage in – or not to engage in plea negotiations – with Mr. Ayvazyan was based at least in part on exposure to tainted evidence and not the belief that the evidence against him was "overwhelming." The possibility of a plea bargain was discussed in telephone calls that occurred on May 13, 2021 involving Ms. Ahn, Mr. Paetty and Mr. Fenton. Dkt. 813 (July 29, 2021 Kastigar Hr'g Tr.) at 83. Ultimately, the government decided not to proceed any further with discussions about a potential plea bargain with Mr. Ayvazyan, supposedly due to a policy "when there is pending misconduct motions." *Id.* at 86. This is the same period in which Ms. Ahn joined the prosecution and identified the potential "star witness" in the case: Petitioner's text messages.

"The standard for a [certificate of appealability] is lenient." *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010). A petitioner "need only show that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further. This showing requires something more than the absence of frivolity, but something less than a merits determination." The standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Obtaining a certificate of appealability "does not require a showing that the appeal will succeed," and "a

court of appeals should not decline the application . . . merely because it believes the applicant will not demonstrate an entitlement to relief." *Cockrell*, 537 U.S. at 337.

Here, should the Court deny Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, it would be bound to recognize that Petitioner's motion presents complex issues that are "adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003), and grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c). Petitioner here makes a "substantial showing of the denial of a constitutional right." §2253(c)(2). To obtain a certificate of appealability, Petitioner need only show that the district court's resolution of the constitutional issues set forth herein is "debatable;" it is not necessary to establish that the appeal will succeed.

There can be no doubt that the issues raised in Petitioner's motion implicate fundamental constitutional rights. At a minimum, the Fifth Amendment right against compulsory self-incrimination and the Fourth Amendment right against unreasonable searches and seizures are clearly at issue and properly raised. Therefore, the Court should grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

## III.   CONCLUSION

For the reasons set forth above, Petitioner's sentence was "imposed in

violation of the Constitution or laws of the United States." Pursuant to 28 U.S.C. §

2255, "[u]nless the motion and the files and records of the case conclusively show

that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing

thereon, determine the issues and make findings of fact and conclusions of law with

respect thereto." 28 U.S.C. § 2255(b). Here, Petitioner has alleged cognizable

claims that are supported by the record. Therefore, the Court should vacate the

conviction or promptly schedule this matter for an evidentiary hearing.

Dated: February 24, 2023                      Respectfully submitted,

                                               */s/ Carlo Brooks*
                                              Carlo Brooks, Esq.
                                              3826 Grand View Bl, Ste 661472
                                              Los Angeles, CA 90066
                                              (310) 691-9373
                                              carlo@carlobrooks.com

                                              *Attorney for Petitioner*

## CERTIFICATE OF SERVICE

I certify that I served a copy of this document and its attachments on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.


DATED: February 24, 2023                    Respectfully submitted,

                                            */s/ Carlo Brooks*____
                                            Carlo Brooks, Esq