E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section
ROBERT I. LESTER (Cal. Bar No. 116429)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-2464
    Facsimile: (213) 894-7819
    E-mail: robert.lester@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD AYVAZYAN and<br>MARIETTA TERABELIAN,<br><br>Defendants. | No. CR 20-0579-SVW-1 and -2<br><br>**UNITED STATES OF AMERICA'S OPPOSITION TO SURETY GOHAR ABELIAN'S "MOTION TO SET ASIDE BOND FORFEITURE"** [1362];<br><br>**EXHIBIT**.<br><br><br>DATE: May 8, 2023<br>TIME: 11:00 a.m.<br>CTRM: Hon. Stephen V. Wilson |

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1
I.   INTRODUCTION ................................................................................................ 1
II.  FACTS .................................................................................................................. 1
     A.   Filing of the Criminal Complaint, the Bond Setting, and the Trial .............. 1
     B.   Defendants Then Fled the Country and Were Sentenced *in Absentia* .......... 2
     C.   The Bond Judgments ...................................................................................... 3
     D.   Surety Abelian's Motion to Set Aside Bond Judgments ............................. 3
III. LEGAL BACKGROUND ................................................................................... 3
IV.  THE COURT SHOULD DECLINE TO SET ASIDE THE BAIL
     JUDGMENTS ...................................................................................................... 4
     A.   Abelian has not Shown that Application of the Ninth Circuit's
          Six-Factor Test Supports Setting Aside the Bond Judgment ........................ 4
          1.   The Defendants' Willfulness in Breaching a Release Condition ....... 4
          2.   The Surety's Participation in Apprehending the Defendants ............. 5
          3.   The Cost, Inconvenience, and Prejudice Suffered by the
               Government ................................................................................................ 6
          4.   Mitigating Factors ..................................................................................... 7
               a.   Abelian's Asserted Lack of Awareness of Her
                    Obligations Under the Bonds ..................................................... 7
               b.   A Surety's Lack of Financial Resources Should not
                    Excuse Liability for a Bond Violation ....................................... 8
          5.   Whether the Surety is a Professional or a Family Member or a
               Friend ........................................................................................................ 10
          6.   Appropriateness of the Amount of the Bond ................................... 11
     B.   The Court Should Reject Abelian's Other Arguments ............................... 12
V.   CONCLUSION .................................................................................................. 14

# TABLE OF AUTHORITIES

Page
**CASES**

*Hassell v. United States*,
  2021 WL 5984899 (8th Cir. Dec. 16, 2021) ................................................................. 7

*United States v. Abernathy*,
  757 F.2d 1012 (9th Cir. 1985) ..................................................................................... 7

*United States v. Amwest Surety Insurance Co.*,
  54 F.3d 601 (9th Cir. 1995) ........................................................................................ 11

*United States v. Brooks*,
  872 F.3d 78 (2d Cir. 2017) .......................................................................................... 5

*United States v. Figuerola*,
  58 F.3d 502 (9th Cir. 1995) ......................................................................................... 8

*United States v. Frias–Ramirez*,
  670 F.2d 849 (9th Cir. 1982) ................................................................................. 4, 11

*United States v. Gambino*,
  17 F.3d 572 (2d Cir. 1994) ......................................................................................... 9

*United States v. Gifford*,
  423 F. Supp. 3d 819 (C.D. Cal. 2019) ...................................................................... 11

*United States v. Lopez*,
  669 F. App'x 442 (9th Cir. Oct. 4, 2016) .................................................................. 10

*United States v. Martinez*,
  2013 WL 6002441 (S.D. Cal. Nov. 12, 2013) .................................................... 7, 8, 9

*United States v. Mosheev*,
  2022 WL 3219642 (D. Az. July 11, 2022) (report and recommendation), *adopted*,
  2022 WL 3213264 (D. Az. Aug. 9, 2022) ................................................................... 4

*United States v. Murphy*,
  2020 WL 790407 (N.D. Cal. Feb. 18, 2020) ......................................................... 7, 10

# TABLE OF AUTHORITIES (Cont'd)

Page

*United States v. Nguyen*,
  279 F.3d 1112 (9th Cir. 2002) ...................................................................*passim*

*United States v. Noriega–Sarabia*,
  116 F.3d 417 (9th Cir. 1997) ..............................................................................8, 9

*United States v. Pastrana*,
  2013 WL 781938 (C.D. Cal. Mar. 1, 2013) .........................................................4, 5

*United States v. Perez-Verdugo*,
  2019 WL 6218782 (S.D. Cal. Nov. 21, 2019 (report and recommendation), *adopted*,
  2020 WL 231092 (S.D. Cal. Jan. 15, 2020)………………………………… 10, 11

*United States v. Stanley*,
  601 F.2d 380 (9th Cir. 1979) ................................................................................4, 6

*United States v. Tirado*,
  674 F. App'x 743 (9th Cir. Jan. 23, 2017) ................................................................8

*United States v. Vickers*,
  144 F. Supp. 3d 1146 (E.D. Cal. 2015) ..................................................................11

*United States v. Villalobos*,
  2005 WL 6127290 (N.D. Cal. Feb. 17, 2005) ..........................................................9

**<u>RULES</u>**

Fed. R. Crim. P. 46(f)(1) ..........................................................................................3

Fed. R. Crim. P. 46(f)(2) ..................................................................................3, 5, 13

Fed. R. Crim. P. 46(f)(3)(C) ................................................................................... 13

Fed. R. Crim. P. 46(f)(4) ...........................................................................3, 13, 14

Local Civ. R. 41-6 ………………………………………………………… 13

Local Crim. R. 46-3.1(c) ………………………………………………….. 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Richard Ayvazyan and his wife, co-defendant Marietta Terabelian ("Defendants"), were among several defendants who were indicted in 2020 for fraudulently obtaining COVID-19 relief funds. They were afforded pretrial bail because, among other things, two sureties posted bonds of their behalf. Specifically, a bail bond company signed surety bonds for both defendants; Ayvazyan's mother also signed a bail bond for Ayvazyan, and Gohar Abelian ("Abelian") also signed a surety bond for Terabelian.

In June 2021, both Defendants were convicted after a jury trial on more than 20 felony counts. In August 2021 they absconded to a resort town in Montenegro using false passports. The Court then sentenced them *in absentia* to lengthy prison terms, ordered them to pay, among other things, substantial fines and a total of nearly $18 million to their victims. Ultimately, Defendants were caught six months later and returned to the United States, where they are serving their sentences. (*See* Dkt. 1360, at 1-2.)

When the Court sentenced Defendants, it also forfeited their bail bonds. Subsequently, the Court entered bail bond forfeiture judgments (the "Bond Judgments") against them and their sureties and directed the Clerk of the Court ("Clerk") to serve the Bond Judgments on the sureties. Now, more than one year later, one of the sureties, Abelian, has filed a motion to set aside the Bond Judgments. (Dkt. 1362.) For the reasons set forth below, the Court should deny Abelian's motion.

## II. FACTS

### A. Filing of the Criminal Complaint, the Bond Setting, and the Trial

On October 20, 2020, the government filed a Complaint against Defendants, charging them with Conspiracy to Commit Wire Fraud and Bank Fraud. (Dkt. 1.)[1]

---

[1] Later, the government filed an Indictment (Dkt. 32) and First Superseding Indictment. (Dkt. 154.)

1

Defendants were arrested in the Southern District of Florida. On October 22, 2020, a Magistrate Judge in that District set bail for Ayvazyan in the amount of $250,000, subject to the posting of a $100,000 corporate security bond and a $150,000 personal surety bond. (SDFL Dkt. 6.[2]) The same day, the Magistrate Judge set bail for Terabelian in the amount of $175,000, subject to the posting of a $75,000 corporate security bond and a $100,000 personal surety bond. (SDFL Dkt. 7.)

On October 30, 2020, Ayvazyan filed a $100,000 corporate surety bond posted by Faroy Bail Bonds, Inc. (SDFL Dkt. 10), and a $150,000 personal surety bond posted by Zhanter Mondzayan. (SDFL Dkt. 11.) That same day, Terabelian filed a $75,000 corporate surety bond also posted by Faroy Bail Bonds, Inc. (SDFL Dkt. 9), and a $100,000 personal surety bond posted by Gohar Abelian. (SDFL Dkt. 8.)

On or about November 18, 2020, the court ordered Defendants removed to this District. (SDFL Dkts. 22, 25.) Subsequently, on November 24, 2020, the surety bonds posted on behalf of Defendants were docketed in this Court. (Dkts. 44, 45, 47, and 48.)

On June 25, 2021, a jury returned more than 20 guilty verdicts against both Defendants. (Dkt. 644.)

### B. Defendants Then Fled the Country and Were Sentenced *in Absentia* Sentenced *in Absentia*

In late August 2021, prior to sentencing, Defendants fled the country. (*See* Dkts. 904, 942, 954.) On November 15, 2021, the Court sentenced both Defendants *in absentia* to, among other things, a term of incarceration. (Dkts. 1167, 1196.)[3] At the same time, the Court forfeited their bail bonds. (*Id.* at 2.)

---

[2] Citations to "SDFL Dkt. _" refer to the docket in the bond proceedings in *United States v. Richard Ayvazyan and Marietta Terabelian*, Case No. 1:20-mj-03857-AOR (S.D. Fla.). Citations to "Dkt. _" refer to the docket in the instant substantive prosecution.

[3] On December 27, 2021, the Court determined that Defendants, along with two co-defendants, are jointly and severally liable for a total amount of $17,723,141.26 in restitution, and that Ayvazyan is also liable for a $1,393,300 money judgment of forfeiture. (Dkt. 1219, at 1; *see also* Dkts. 1233, 1234.)

### C. The Bond Judgments

On February 8, 2022, the government proposed lodged bail bond forfeiture judgments against Defendants and their respective sureties. (Dkt. 1278.) No responses were filed. On March 16, 2022, the Court entered the Bond Judgments against Ayvazyan and his sureties (Dkt. 1288) and Terabelian and her sureties (Dkt. 1289.) The Court also ordered the Clerk to serve the sureties by mail with the Judgment. (Dkts. 1288, 1289.)

### D. Surety Abelian's Motion to Set Aside Bond Judgments

More than one year later, on March 28, 2023, surety Abelian filed a motion to set aside the Bond Judgments. (Dkt. 1362.)

## III. LEGAL BACKGROUND

The Court "must declare the bail forfeited if a condition of the bond is breached." Fed. R. Crim. P. 46(f)(1). In such a case, forfeiture is mandatory. *United States v. Nguyen*, 279 F.3d 1112, 1115 (9th Cir. 2002). Rule 46(f) further provides:

> The court may set aside in whole or in part a bail forfeiture upon any
> condition the court may impose if:
>
>> (A) the surety later surrenders into custody the person released on
>> the surety's appearance bond; or
>>
>> (B) it appears that justice does not require bail forfeiture.

Fed. R. Crim. P. 46(f)(2). Similarly, if a bond forfeiture judgment has already been entered, "the court may remit in whole or in part the judgment under the same conditions specified in Rule 46(f)(2)." Fed. R. Crim. P. 46(f)(4).

In determining whether to set aside a bail forfeiture or to remit a bond forfeiture judgment, the Court should consider the following factors:

> 1) the defendant's willfulness in breaching a release condition;
> 2) the sureties' participation in apprehending the defendant;
> 3) the cost, inconvenience, and prejudice suffered by the government; 4) mitigating factors; 5) whether the surety is

3

          a professional or a member of the family or a friend, and

          6) the appropriateness of the amount of the bond.

*Nguyen*, 279 F.3d at 1115-16 (9th Cir. 2002). "[T]hese are merely non-exclusive factors for consideration, and not all of the factors need to be resolved in the government's favor." *Id.* at 1116. The Court has "wide discretion" to determine whether to grant relief from forfeiture. *United States v. Stanley*, 601 F.2d 380, 382 (9th Cir. 1979) (per curiam). "But the party seeking relief from forfeiture bears the burden of establishing grounds for the Court to do so." *United States v. Mosheev*, 2022 WL 3219642, at *1 (D. Az. July 11, 2022) (report and recommendation), *adopted*, 2022 WL 3213264 (D. Az. Aug. 9, 2022).

## IV. THE COURT SHOULD DECLINE TO SET ASIDE THE BAIL JUDGMENT

### A. Abelian has not Shown that Application of the Ninth Circuit's Six-Factor Test Supports Setting Aside the Bond Judgment

Application of the Ninth Circuit's six-factor test to the facts and circumstances of this case shows that the Court should decline to set aside the Bail Judgment.

#### 1. The Defendants' Willfulness in Breaching a Release Condition

The Court may assume that a defendant's breach is voluntary "in the absence of convincing evidence to the contrary." *United States v. Frias–Ramirez*, 670 F.2d 849, 853 (9th Cir. 1982) ("The district court could have assumed that defendant's breach was voluntary in the absence of convincing evidence to the contrary"); *United States v. Pastrana*, 2013 WL 781938, at *2 (C.D. Cal. Mar. 1, 2013) ("In the absence of evidence to the contrary, it can be assumed that a serious breach of a bail condition was voluntary").

Abelian acknowledges that Defendants violated the conditions of their bonds. (Dkt. 1362, at 16, 17.) There is no doubt that Defendants' fleeing from the United States before sentencing was willful and defiant. (*See, e.g.*, Dkt. 1360, at 3 ["The reason {Ayvazyan} was 'not residing within the jurisdiction of the United States' was that

he intentionally fled to Montenegro to avoid serving his prison sentence"]; *see also id.* at 5 (Ayvazyan "intentionally abscond[ed]"].)[4]

Therefore, the first of the six factors clearly supports the government.

### 2. The Surety's Participation in Apprehending the Defendants

Even if a defendant is later returned to Court, the Court has the discretion to refuse to set aside the bail forfeiture. *See* Fed. R. Crim. P. 46(f)(2) (pre-judgment); Rule 46(f)(4) (post-judgment); *Nguyen*, 279 F.3d at 1116-18 (district court did not act arbitrarily or capriciously in forfeiting full amount of bond, even though U.S. Marshals eventually arrested defendant who failed to self-surrender). As set forth above, the Court may set aside a bond forfeiture judgment if the surety later surrenders the defendant into custody, and even if a surety participated in the defendant's apprehension, it could be considered a factor in favor of setting aside the judgment.

Here, Abelian acknowledged that she did not participate in any way in the apprehension of Defendants in Montenegro. (Dkt. 1362, at 17.) Nor does she assert that she even attempted to render assistance to law enforcement – because she did not.[5] Abelian suggests that the second factor is in her favor because she did not assist Defendants in their escape. (Dkt. 1362, at 6, 17.) However, even assuming that is true, "Fed. R. Crim. P. 46 does not require that sureties be involved in the violation of the terms of the bond order to forfeit their interests. All that is required for the security (or the bond) to be forfeited is that the defendant violate one of the terms." *United States v. Brooks*, 872 F.3d 78, 95 (2d Cir. 2017)

Accordingly, the second factor does not support Abelian.

---

[4] Abelian conspicuously avoids addressing whether Defendants' conduct was willful. (Dkt. 1362, at 16, 17.)

[5] The FBI case agent did not receive any assistance from Abelian in his efforts to locate Defendants. The United States will obtain a declaration regarding this factual statement from the FBI case agent and file and serve it before the hearing on this matter.

5

          3.      <u>The Cost, Inconvenience, and Prejudice Suffered by the Government</u>

Abelian asserts that the third factor is in her favor. (Dkt. 1362, at 18-19). However, the government has no obligation to furnish a bill of costs . . . nor can the cost and inconvenience factor be dismissed simply because they were not substantial." *Nguyen*, 279 F.3d at 1117. The Ninth Circuit has repeatedly held that where there has been an intentional breach of bond conditions, such as when the government is forced to search for a defendant and apprehend him or her, the court may deny remission even if the dollar amounts for the search and the specific prejudice to the government are not shown. *See, e.g., Nguyen*, 279 F.3d at 1117; *Stanley*, 601 F.2d at 382.

Abelian asserts that the government was not inconvenienced because it did not have to prove that Ayvazyan violated the terms of his bail conditions. (Dkt. 1362, at 18.) It is true that Pretrial Services knew that Ayvazyan's ankle monitor "had gone offline," and therefore the government did not need the Court to conduct a bail violation hearing. However, that misses the point. The relevant consideration in this case is that the government's expenditure of time and money and inconvenience in having to track down Defendants in Montenegro and return them to the United States was considerable. The government's efforts to locate Defendants included surveillance, numerous subpoenas, interviews, and liaisons with foreign governments. The FBI case agent had to travel to Montenegro with an IRS case agent and three deputy U.S. Marshals to return Defendants (and valuable evidence that they possessed when arrested) to the United States.[6] And the efforts of the U.S. Attorney's Office to locate Defendants and get them returned to this country were also intensive, including the preparation of voluminous extradition documents.

---

[6] The United States will obtain a declaration regarding these factual statements from the FBI case agent and file and serve it before the hearing on this matter.

"[T]he government's protracted search for, re-apprehension of, and additional proceedings against the appellants provide a basis for finding that the government suffered considerable cost and inconvenience even if the dollar amounts are unspecified." *United States v. Abernathy*, 757 F.2d 1012, 1015-16 (9th Cir. 1985). As another court stated, "[a]ll of this time could have been spent on the prosecution of the merits of this case, or on other cases." *United States v. Murphy*, 2020 WL 790407, at *8 (N.D. Cal. Feb. 18, 2020). *See also Hassell v. United States*, 2021 WL 5984899, at *2 (8th Cir. Dec. 16, 2021) ("In the Court's view, the time and effort spent on this matter was considerable, so this factor leans against setting aside Defendant's bond forfeiture.")

Therefore, the third factor clearly favors of the government.

### 4. Mitigating Factors

#### a. Abelian's Asserted Lack of Awareness of Her Obligations Under the Bonds

Abelian argues that she was not aware of her obligations under the bond agreement, which the Court should consider to be a mitigating factor, pursuant to *United States v. Martinez*, 2013 WL 6002441 (S.D. Cal. Nov. 12, 2013). (Dkt. 1362, at 19-24.) She claims that because of the rush of time to deal with the bond issues, she "had no time to read the inconspicuous fine print; she signed the out-of-district [bonds] without fully understanding the terms . . . ." (Dkt. 1362, at 5; *see also id.* at 23.)

Abelian's arguments are not meritorious. First, that Abelian was involved in a "rush situation" when posting bond proves nothing; nearly all bail bond settings involve "rushes" for a potential surety. Second, she does not identify what the "inconspicuous fine print" was that she had "no time to read," and why it is important now.

Third, it is difficult to imagine what Abelian did not understand about the bond procedure, and why such purported misunderstanding should be a factor in excusing her from liability under the bonds. In *Martinez*, the main case that Abelian relies on, the surety claimed not to be aware that one of the conditions of the defendant's bond is that

7

1 he does not commit a crime during his release; instead, the surety thought he was "only
2 signing an appearance bond." 2013 WL 6002441, at *4, 8.  Because Martinez's bond
3 violation was not a failure to appear at a hearing, the court set aside the bond forfeiture
4 as to the surety. *Id.* at *8.  In the instant action, however, Defendants absconded from
5 the country.  Any layperson should understand that such conduct is the prototypical
6 bond violation.  And as a lawyer who handles civil matters as well as "criminal and
7 constitutional matters,"[7] Abelian surely understood that.  And the primary case that
8 *Martinez* cites, *United States v. Figuerola*, 58 F.3d 502 (9th Cir. 1995), does not support
9 her case, because in *Figuerola*, the sureties primarily spoke Spanish, had no counsel,
10 "and were unfamiliar with American legal processes or bail procedures." *Martinez*, at *7
11 (quoting *Figuerola*, 58 F.3d at 503).  Abelian's situation differed in all material respects
12 from the sureties in *Figuerola*.

Abelian predicts that the government will contend that her statements regarding her purported lack of understanding regarding the bonds are self-serving. (Dkt. 1362, at 23-24.) Just so. The Court should reject her assertions that she, a practicing attorney, lacked an understanding of the obligations of a bond surety.

       b.  A Surety's Lack of Financial Resources Should not Excuse Liability for a Bond Violation

Abelian asserts at length in various parts of her brief that Defendants' conduct has caused a significant, adverse impact upon her and on Defendants' children, and therefore should be deemed a mitigating factor.  However, Abelian's argument runs against public policy.  Courts should not excuse or reduce a surety's liability for a defendant's bond violation based on the surety's argument that she has limited financial means. *United States v. Noriega–Sarabia*, 116 F.3d 417, 420 (9th Cir. 1997) (stating that "a surety cannot complain because he has failed to actually swear to a sufficient net worth, or

---

[7] https://www.abelianlawfirm.com/#meet-the-lawyer; *see also* https://apps.calbar.ca.gov/attorney/LicenseeSearch/QuickSearch?FreeText=abelian%2C%20g (stating that Gohar Abelian is a member of the California Bar).

8

because a lesser net worth might mean that the full amount of the bond will never be recovered.") *See also United States v. Tirado*, 674 F. App'x 743, 743 (9th Cir. Jan. 23, 2017) (quoting *Noriega-Sarabia*). That is because the purpose of enforcing the terms of a bond is to increase the likelihood "that defendants and sureties will take their bond commitments seriously and that defendants will attend scheduled court appearances and not engage in criminal activity while they are on pretrial release." *United States v. Villalobos*, 2005 WL 6127290, at *4 (N.D. Cal. Feb. 17, 2005). Declining to hold a surety equally financially responsible as the defendant for a bond violation undermines the purpose of a bail bond. *See id.* at *4-5. More broadly, "[t]he court, the government, and the public may be doubly disappointed when a defendant flees, if the sureties cannot, or will not, abide by their promises." *Noriega-Sarabia*, 116 F.3d at 420.[8]

There is another flaw in Abelian's argument with respect to the fourth factor. She acted as a surety for Terabelian, but she also states that she provided collateral for the corporate surety bonds that were posted as to both Defendants (by Faroy Bail Bonds, Inc.). (Dkt. 1362, at 3.) If Abelian has been or may be forced to surrender her collateral to the bond company as a result of Defendants' bond violations, that is not because she agreed to be a surety in her own name on Terabelian's bond. Instead, it is because the Court's Bond Judgments include the bond company *itself* as being liable for the bond violations of both Defendants. However, Abelian (and her lawyer) lack standing to urge this Court to nullify the bond company's liability – as a principal on the bail bonds -- for the bond violations.

---

[8] Notably, although Abelian vigorously contends that the Bond Judgments have been a source of strain to her and Defendants' children, that is something of a red herring. It is really Defendants' underlying criminal acts, followed by their escape from the United States (and abandonment of their children), that are the dominant source of strain. In any event, Abelian, although implying that the Bond Judgment is exacerbating her financial difficulties, does not contend (perhaps to her credit) that she will be *unable* to care for Defendants' children if her motion to set aside the Bond Judgments is denied.

Finally, there are other factors that argue in favor of forfeiture. For example, "the deterrence value served by total forfeiture is especially important" in high-profile criminal cases. *United States v. Gambino*, 17 F.3d 572, 575 (2d Cir. 1994) (affirming denial of sureties' partial motion for remission in narcotics and racketeering case). Here, Defendants' crimes and especially their escape generated considerable media exposure,[9] and they appeared on the FBI's Ten Most Wanted list.[10]

Therefore, the fourth factor also favors the government.

### 5. Whether the Surety is a Professional or a Family Member or a Friend

Abelian contends that her status as a family member of Defendants rather than a professional bond surety should counsel in her favor. (Dkt. 1362, at 24-29.) Although a bond surety's status as a member of the family or friend of the defendant may be considered in support of a surety's position, the Ninth Circuit has clarified that it is by no means dispositive[11]: "We decline to adopt, as the dissent apparently urges, a 'loving relative' exception to our bond forfeiture jurisprudence." *Nguyen*, 279 F.3d at 1117 n. 2. *See also United States v. Lopez*, 669 F. App'x 442 (9th Cir. Oct. 4, 2016) (citing footnote 2 in *Nguyen*); *Murphy*, 2020 WL 790407, at *6, 8, and 9 (same); *United States v.*

---

[9] *See, e.g.*, Michael Finnegan, *L.A. Family Members Convicted in COVID Disaster Loan Fraud* (July 16, 2021), https://www.latimes.com/california/story/2021-07-16/covid-fraud-conspiracy-los-angeles-ayvazyan; Michael Finnegan, *et al., Tarzana Couple Convicted in $18-million Pandemic Relief Fraud Flee and Vanish*, FBI says (Aug. 31, 2021), https://www.latimes.com/california/story/2021-08-31/tarzana-couple-convicted-of-18-million-pandemic-relief-fraud-flee-considered-fugitives; Maria Cramer, *A Couple Convicted of Stealing Covid Funds is on the Run, the F.B.I. Says* (Nov. 17, 2021), https://www.nytimes.com/2021/11/17/us/covid-relief-fraud-fugitives.html; Gregory Yee, *et al., 3 Virus Relief Scammers Seized in Europe*, 2022 WLNR 5712908 (L.A. Times, Feb. 24, 2022); Michael Finnegan, *L.A. COVID Swindlers Extradited from Montenegro to the United States, police say*, 2022 WLNR 36990039 (Nov. 17, 2022).

[10] *See* Andrew Blankstein, *et al., Trio on FBI's Most Wanted List in COVID Fraud Scheme Captured in Montenegro* (Feb. 23, 2022),https://www.nbclosangeles.com/news/coronavirus/encino-covid-fraud-fugitives-captured-montenegro-ayvazyan/2833612/.

[11] Indeed, Abelian acknowledges that the distinction between professional bond surety and family member or friend "is non-decisive." (Dkt. 1362, at 24.)

*Perez-Verdugo*, 2019 WL 6218782, at *3 (S.D. Cal. Nov. 21, 2019) (report and recommendation), *adopted*, 2020 WL 231092 (S.D. Cal. Jan. 15, 2020) (same).[12]

Thus, the fifth factor is at most neutral.

### 6. Appropriateness of the Amount of the Bond

Abelian contends that the sixth factor is in her favor. But she acknowledges that "the amount of each individual bond may well have been appropriate to ensure the defendants' appearance in light of the offenses for which they were charged . . .." (Dkt. 1362, at 29.) Instead, she urges the Court to consider the amount of the bond from *her* perspective. (*Id.*) However, Abelian's argument invites the Court to consider a surety's financial condition long after bond conditions had been violated, which (as explained above) is inappropriate. Moreover, the question in the sixth factor is whether the bond amount set was "appropriate in light of the nature of the offense with which defendant was charged." *United States v. Frias-Ramirez*, 670 F.2d 849, 853 (9th Cir. 1982).[13]

The Ninth Circuit does not require that the bond approximate the costs of rectifying the breach of a condition of bail. "Instead, we regard forfeiture as a form of liquidated damages. . . . Indeed, appropriateness looks more to the proper fixing of the amount of the bond itself." *United States v. Amwest Surety Insurance Co.*, 54 F.3d 601, 604 (9th Cir. 1995) (stating that "[t]he hallmark of a liquidated damages provision is reasonableness at the time the agreement is made rather than a calculation of actual

---

[12] Abelian cites *United States v. Gifford*, 423 F. Supp. 3d 819 (C.D. Cal. 2019) (Dkt. 1362, at 25), but that case hardly supports her cause. In *Gifford*, the Court (the Hon. John F. Walter) did first state that the fact that the surety is the defendant's sister favors setting aside the bond forfeiture. *Id.* at 825. However, the Court then acknowledged what the Ninth Circuit said in footnote 2 of *Nguyen*, and ultimately concluded: "At the very least, given that Ms. Gifford is not a professional bondsman, this factor is neutral." *Id.* at 825 n. 3.

[13] *See also United States v. Vickers*, 144 F. Supp. 3d 1146, 1149 (E.D. Cal. 2015) ("Here, where Vickers faced a mandatory minimum custodial sentence of five years and a maximum of twenty, and given the nature of his offense, the $50,000 bond was not exorbitant.")

11

provable losses when the breach occurs.")[14]  Consequently, "[t]he actual damages may be more or less than the liquidated amount." *Id.*

Here, the charged fraud of Defendants involved large financial losses. (*See* Dkt. 1.) Additionally, the Magistrate Judge was informed at the bond hearing that, leaving aside the evidence of guilt already gathered in the case, Ayvazyan has a prior federal conviction in which he was ordered to pay restitution, as well as a state court conviction. (Ex. 1, at 12.)[15] The Magistrate Judge was also informed that Ayvazyan had a history of foreign travel; when stopped at the Miami airport, he was in possession of a credit card in the name of his alias; and that he had no real employment. (*Id.* at 14, 30, 31.)

Based on the foregoing, the sixth factor is in favor of the government.

**B.  The Court Should Reject Abelian's Other Arguments**

Finally, Abelian asserts that she should be able to press her motion to set aside the Bond Judgments at this time because they are void and she did not receive the Bond Judgments when they were served, and did not learn about their existence until January 2023. (Dkt. 1362, at 30-34.)

Abelian's complaint that the Bond Judgments (purportedly) never reached her should be rejected. The Clerk is not required to investigate whether a surety has moved many months after the person had become a surety. Instead, as a closely related rule provides, the Clerk is required to mail the government's bail bond forfeiture motion

---

[14]  Presumably, that is largely because it would be impracticable for the government (or a court) to estimate with any degree of reliability at the time the court sets a bail bond what the cost of rectifying any breach of a bond condition would be that may or may not ever occur at some unpredictable time in the future.

[15]  *See United States v. Richard Ayvazyan*, SACR 11-0180-CJC; *State v. Richard Ayvazyan*, Los Angeles County Superior Court No. LA032922.

Undersigned counsel does not yet have a transcript of Terabelian's bond hearing, so it is unclear what background and arguments the government with respect to Terabelian's bond.

12

"to the surety at its last known address." Fed. R. Crim. P. 46(f)(3)(C). And notably, Abelian has not cited any docket entry reflecting that the Postal Service returned the Clerk's mail to the Clerk's Office.

Abelian asserts – without citation to case law, statute, or Federal Rule of Criminal Procedure -- that she only had "14 days from the date of the forfeiture order to file a motion to set aside the forfeiture," and she seeks relief from that purported deadline. (Dkt. 1362, at 7.) The government takes no position regarding the existence of such a 14-day rule. If there is one, Abelian has not established good cause for relief from it, because the Local Criminal Rules provide that a bond "surety will notify the Court and counsel of any change of address." Local Crim. R. 46-3.1(c). This rule, by its terms, applies to all sureties, irrespective of whether they are represented by counsel. *See also* Local Civ. R. 41-6 [regarding failure of pro se plaintiff in civil case to keep Court apprised of current address].) But as a lawyer who handles civil matters as well as "criminal and constitutional matters,"[16] Abelian surely was aware of such Court rules – or should have been. She was, by her own admission, already well aware before she moved that her sister and brother-in-law had fled the country in 2021.

However, for purposes of the instant motion, the government will assume that Abelian's argument about the existence of a 14-day rule is incorrect. Abelian's contention that the Bond Judgments are void is still flawed. Even if she did not know and should not have known about the bond forfeiture proceedings in 2022, she has every opportunity *now* to attack the Bond Judgments, in the context of a motion to set aside the Bond Judgments -- which she obviously is trying to do. A surety may advance the same arguments, under the same "conditions," in a motion to remit a bond forfeiture judgment under Rule 46(f)(4) as if she had filed an opposition under Rule 46(f)(2) to the entry of a

---

[16] *See* page 8 and note 7 *supra*.

13

bond forfeiture judgment.  *See* Fed. R. Crim. P. Rule 46(b)(4).  Therefore, the Court can rule on the merits now with respect to Abelian's motion to remit.[17]

## V.   CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Abelian's motion to set aside the Bond Judgments.

DATED:  April 21, 2023.                 Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


    */s/ Robert I. Lester*
ROBERT I. LESTER
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

[17]   However, if the procedural posture of this matter with respect to Abelian is of concern, the government does not object if the Court issues an order vacating the Bond Forfeiture Judgments without prejudice (as to Abelian only) and denies her motion without prejudice.  The government would then promptly file a new motion for the entry of bond forfeiture judgments against Abelian, and she could file an opposition brief, and the Court can consider anew whether to enter such judgments against Abelian.

14