E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section
DAN G. BOYLE (Cal. Bar No. 332518)
ROBERT I. LESTER (Cal. Bar No. 116429)
Assistant United States Attorneys
Asset Forfeiture and Recovery Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2426/2464
     Facsimile: (213) 894-0142
     E-mail:  Daniel.Boyle2@usdoj.gov
              Robert.Lester@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-579(A)-SVW |
| Plaintiff, | GOVERNMENT'S NOTICE OF MOTION AND MOTION FOR ORDER DIRECTING THE DEPOSIT OR RETENTION OF RESTITUTION ASSETS OF DEFENDANTS RICHARD AYVAZYAN AND MARIETTA TERABELIAN |
| v. | |
| RICHARD AYVAZYAN and MARIETTA TERABELIAN, | |
| Defendants. | [Proposed] ORDER FILED SEPARATELY |
| | DATE:        June 26, 2023 |
| | TIME:        11:00 a.m. |
| | LOCATION:    Courtroom of the Hon. Stephen V. Wilson |

        Plaintiff United States of America (the "Government")

government moves this Court for an Order authorizing the deposit or

retention of assets of defendants Richard Ayvazyan and Marietta

1

1   Terabelian, in order to preserve assets to satisfy the order of

2   restitution this Court imposed on defendants, either by depositing

3   this property with the Clerk of Court, or authorizing the Federal

4   Bureau of Investigation to retain custody of these items pending the

5   resolution of appellate proceedings.

6       This Application is based on the attached memorandum of points

7   an authorities, the accompanying declaration of FBI-SA Justin

8   Palmerton and exhibits thereto, and the records and files in this

9   case.

10      On May 22, 2023 I contacted counsel to defendants Ayvazyan and

11  Terabelian, and notified counsel of the substance of this motion,

12  and counsel for Ayvazyan indicated that defendant did not consent to

13  the relief requested.

14

15   Dated: May 23, 2023                  E. MARTIN ESTRADA
                                          United States Attorney
16                                        MACK E. JENKINS
                                          Assistant United States Attorney
17                                        Chief, Criminal Division
                                          JONATHAN GALATZAN
18                                        Assistant United States Attorney
                                          Chief, Asset Forfeiture and Recovery
19                                        Section

20                                        _____
                                                  /s/
21                                        DAN G. BOYLE
                                          Assistant United States Attorney

22                                        Attorneys for
                                          UNITED STATES OF AMERICA
23

24

25

26

27

28

                                    2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Defendants Richard Ayvazyan ("Ayvazyan") and Marietta Terabelian ("Terabelian" and collectively with Ayvazyan, "defendants") jointly and severally owe more than $17 million in restitution ordered by this Court after defendants were convicted for their part in a massive pandemic relief fraud scheme. As the Court is aware, however, prior to their sentencing, defendants absconded while under pretrial supervision. After a dogged international manhunt by the FBI and other law enforcement, defendants were located in Montenegro, apprehended with the aid of Montenegrin authorities, and ultimately extradited back to serve their respective sentences of incarceration.

Upon defendants' extradition, Montenegrin authorities handed over certain personal possessions seized from defendants upon their arrest to the U.S. Deputy Marshals and agents escorting the defendants back to the United States (the "Personal Property").[1] Some of these items, such as digital devices, were held as evidence in an ongoing investigation into defendants' international flight, while the remainder of these items were catalogued, inventoried, and where the Personal Property appeared to have restitution value, appraised. In total, the Personal Property appears to have a liquidation value of approximately $164,000.

Defendant Terabelian has a direct appeal pending, and although applicable law permits the government to begin enforcing a restitution order during the pendency of an appeal, because the

---

[1] In addition to the Personal Property, two vehicles belonging to defendant Ayvazyan were seized by Montenegrin authorities during these arrests. These vehicles will be the subject of a forthcoming motion for forfeiture of substitute property.

3

1   Personal Property would need to be liquidated to enforce the

2   restitution order, the government is not yet seeking permission to

3   liquidate the Personal Property. Instead, the government now moves

4   this Court for an order permitting the government either deposit the

5   Personal Property with the Clerk of Court, or alternately, for the

6   Federal Bureau of Investigation to hold the Personal Property during

7   the pendency of defendant Terabelian's direct appeal.

8                              RELEVANT FACTS

9        The Court is well-versed in the factual background on this

10   criminal matter, so the government limits its recitation of the facts

11   to those directly relevant here.

12        On November 17, 2020, defendants were indicted on a range of

13   charges including wire fraud, bank fraud, identity theft and related

14   conspiracies arising from a multi-million dollar COVID-19 relief

15   fraud scheme. See ECF No. 32. On March 9, 2021, a First Superseding

16   Indictment was returned against defendants and others, adding new

17   charges including money laundering. Defendants proceeded to trial and

18   were convicted by a jury in this district on numerous counts. See ECF

19   No. 644. Following the jury's verdict, on or about August 29, 2021,

20   defendants cut their court-ordered ankle monitors and fled the

21   jurisdiction prior to their sentencing. See ECF No. 971.

22        Defendants were sentenced *in absencia* on November 15, 2021. See

23   ECF No. 1166. The court set a schedule for supplemental briefing on

24   restitution and forfeiture, and held a restitution hearing on

25   December 6, 2021. See ECF No. 1194. The Court ultimately ordered

26   restitution against all defendants, joint and severally, in the

27   amount of $17,723,141.26. See ECF No. 1219.

28        On or about February 23, 2022, defendants were apprehended in

                                     4

Montenegro with the aid of Montenegrin law enforcement authorities. Defendants were then detained in that country, and the government began extradition proceedings shortly thereafter. In November 2022, defendants were extradited from Montenegro and remanded to the custody of the United States Marshals Service ("USMS") as well as escorting agents of the Federal Bureau of Investigation and Internal Revenue Service – Criminal Investigations. See Declaration of FBI SA Justin Palmerton ("Palmerton Decl."), ¶ 2.

During the transfer of defendant to the custody of USMS, Montenegrin authorities handed over personal property seized from defendants upon their arrest by Montenegrin authorities (the Personal Property). Palmerton Decl., ¶ 2. An itemized list of the Personal Property is attached to the accompanying declaration of FBI Special Agent Justin Palmerton as Appendix A. Id. Where the Personal Property appeared to have restitution value, the items were inventoried and appraised. Palmerton Decl., ¶ 3; Ex. 1. The total appraised value of this Personal Property was $164,209. Palmerton Decl., ¶ 3.

Defendant Terabelian filed a timely notice of appeal of her conviction (notwithstanding her flight). See ECF No. 1205. Her appeal was initially dismissed on fugitive disentitlement grounds, but upon her capture in Montenegro, was ultimately reinstated.[2] See United States v. Terabelian, 9th Cir. Case No. 21-50291, ECF No. 38. Defendant Terabelian's opening brief is due in June of 2023.

---

[2] Defendant Ayvazyan did not file a timely notice of appeal but upon his capture and extradition, filed a motion to vacate his conviction under 28 U.S.C. § 2255, see ECF No. 1337, which was denied and no certificate of appealability issued. See ECF No. 1360. Defendant Ayvazyan has sought to appeal the denial of his § 2255 motion, see ECF No. 1372, but as no certificate of appealability has issued, the government focuses its application here on defendant Terebelian's pending direct appeal.

1

RELEVANT LAW

2    The government may enforce a restitution order while a

3 defendant's direct appeal is pending, absent the Court issuing a stay

4 order. See Fed. R. Crim. P. 38(e). A district court has discretion as

5 to whether to stay enforcement of restitution pending appeal, but if

6 the district court denies the defendant's motion, then pursuant to

7 Federal Rule of Appellate Procedure 8, the defendant may file a

8 similar stay motion with the court of appeals.

9    Rule 38(e)(2) states that a court "may issue any order reasonably

10 necessary to ensure compliance with a restitution order or a notice

11 order after disposition of an appeal," and subsection (e)(2)(C)

12 explicitly permits a court issue an "order requiring the defendant to

13 deposit all or part of any monetary restitution into the district

14 court's registry" where reasonably necessary to ensure compliance

15 with a restitution order pending the disposition of any appeals.

16 Relatedly, Federal Rule of Civil Procedure 67(a) states that where

17 "any part of the relief sought is a money judgment or the disposition

18 of a sum of money or some other deliverable thing, a party—on notice

19 to every other party and by leave of court—may deposit with the court

20 all or part of the money or thing."

21    The Mandatory Victims Restitution Act ("MVRA") provides that the

22 United States may enforce a criminal restitution order in accordance

23 with the provisions of 18 U.S.C. §§ 3571-3574 and §§ 3611-3615, or

24 "by all other available and reasonable means." 18 U.S.C.

25 § 3664(m)(1)(A).[3]

26 _____

27    [3] Such means include enforcement pursuant to the Federal Debt
Collection Procedures Act ("FDCPA"). See United States v. Swenson,
28 971 F.3d 977, 979 n. 1 (9th Cir. 2020) (citing In re Partida, 862
F.3d 909, 913 (9th Cir. 2017)).

1    The FDCPA *does not* contain a tracing requirement; consequently,

2    whether property subject to the writ of garnishment was used in

3    criminal activity or purchased with the proceeds of criminal activity

4    "'has absolutely no bearing on the government's authority to levy'

5    under the FDCPA." United States v. Latorre, 2014 WL 3530830, at *1

6    (N.D. Tex. July 16, 2014), quoting United States v. Feichtinger, 1998

7    WL 894664, at *1 (7th Cir. Dec. 15, 1998); see also United States v.

8    Kolbusz, 2023 WL 2161661, at *8 (N.D. Ill. Feb. 22, 2023). As such,

9    the government is not required to show that the any personal property

10   available to satisfy a restitution order is traceable to any offense

11   of conviction, or traceable to any criminal offense at all.

12        Finally, pursuant to 18 U.S.C. § 3664(k), the government may

13   give notice to the Court and seek any of the above-described relief

14   upon learning that a defendant owing restitution has changed economic

15   circumstances – such as the discovery of assets which might satisfy

16   such an obligation.

17                              ARGUMENT

18        As detailed above, upon defendants' extradition from Montenegro,

19   their Personal Property was handed over to the escorting agents and

20   deputy U.S. marshals. The Personal Property was catalogued,

21   inventoried, and where items appeared to have material value for

22   restitutionary purposes, appraised.[4] Palmerton Decl., ¶ 2-3. Certain

23   of the Personal Property appears to have significant liquidation

24   value, and the total appraised value of the Personal Property is

25

26   _____

27        [4] Certain additional items appeared to have evidentiary value,
     such as digital devices which may have evidence of who facilitated
     defendants' flight. The government is not seeking to liquidate these
28   items, and accordingly, these items are not included in in the total
     assessed value. See Appendix A.

                                    7

1  $164,209. Palmerton Decl., ¶ 3.

2      There is no serious question that turning over the Personal

3  Property to defendants would risk dissipation of value or its

4  outright disappearance. Similarly, in light of defendants' prior

5  breaches of their promises to abide by pretrial supervision –

6  including by cutting their court-ordered monitoring devices and

7  fleeing the country prior to sentencing – the Court cannot rely on

8  any promise by defendants to preserve the value of the Personal

9  Property if returned to them during the pendency of any appeals.

10  Finally, the government is continuing to investigate the

11  circumstances of defendant's flight, including potential accomplices,

12  so an order to deliver the Personal Property to defendants' family or

13  friends would similarly fail to ensure the property remains available

14  for restitution once all appeals are resolved.

15      While the Federal Rules permit the government to proceed with

16  enforcement of a restitution order while an appeal is pending,

17  because the Personal Property consists of items which would need to

18  be liquidated before any resulting funds could be applied to

19  defendant's restitution orders, and because defendant Terabelian has

20  a direct appeal pending, at this time the government is only seeking

21  to preserve the value of the Personal Property at this time, pending

22  resolution of appellate proceedings.[5]

23      Finally, the government does not intend to enforce the

24  restitution Order against any Personal Property which appears to have

25

26  _____

27      [5] Defendants may argue that certain of the Personal property was
previously ordered returned because it was not subject to forfeiture,
but this is irrelevant for restitutionary purposes, as noted above,

28  the MVRA has no tracing requirement. The only question is whether the
property belongs to the defendant.

both limited economic value and significant sentimental value (for example, family heirlooms). The government will confer with defense counsel in good faith as to the return of any Personal Property with minimal liquidation value which may have sentimental value to defendants.

Accordingly, the government requests that the Court sign the accompanying proposed order, permitting the government to either turn over the Personal Property to Clerk of Court, or alternately, to hold the Personal Property pending the resolution of all appeals.

DATED:   May 23, 2023.          E. MARTIN ESTRADA
                                United States Attorney

                                MACK E. JENKINS
                                Assistant United States Attorney
                                Chief, Criminal Division


                                /s/
                                _____
                                DAN G. BOYLE
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

<u>DECLARATION OF JUSTIN PALMERTON</u>

I, Justin Palmerton, hereby declare and state as follows:

I have personal knowledge of the following facts and, if called as a witness, would testify thereto under oath.

1.   I am a Special Agent with the Federal Bureau of Investigation and was a case agent for the prosecution of <u>United States v. Ayvazyan</u>, 20-cr-579-SVW.

2.   In or about November of 2022, I participated in the extradition of defendants Richard Ayvazyan and Marietta Terabelian. During this process, I was informed by Montenegrin authorities that the authorities in that country had seized various personal property from defendants incident to their arrest. Attached as Appendix A is a true and correct inventory of items turned over to transporting agents and U.S. Deputy Marshals by Montenegrin authorities upon the extradition of defendants (the "Personal Property").

3.   Attached as Exhibit 1 is a true and correct copy of appraisals of certain of the Personal Property, with a total appraised value of $164,209.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May __, 2023 in Los Angeles, California.


_____

JUSTIN PALMERTON, SA FBI

1

**APPENDIX A**

| No. | Item Description |
|---|---|
| 1. | One White iPhone |
| 2. | One Blue iPhone |
| 3. | One Black Samsung Galaxy S10 |
| 4. | One E-talk phone |
| 5. | One Black iPhone 12 |
| 6. | One Black iPhone |
| 7. | One Cream colored iPhone |
| 8. | One Red iPhone with charging cable |
| 9. | One mobile Verizon router |
| 10. | One D-Link router |
| 11. | One Apple MacBook with charger and cables |
| 12. | One Blue iPhone with gold corners |
| 13. | One brown bag with miscellaneous documents |
| 14. | One Rolex Day-Date 40 watch |
| 15. | One pair 18k white gold earrings w/ diamonds |
| 16. | One 18k white gold ring w/ diamond |
| 17. | One 14k white gold ring w/ diamond |
| 18. | One 14k white gold ring w/ garnet |
| 19. | One 14k white gold ring w/ onyx |
| 20. | One platinum ring w/ diamond |
| 21. | One pair 14k white gold earrings w/ diamonds |
| 22. | One 18k yellow gold neck chain |
| 23. | One 14k white gold brooch w/ diamonds |
| 24. | One 14k yellow gold pendant |
| 25. | One 14k yellow gold bracelet w/ diamonds |
| 26. | One 14k yellow gold bracelet |
| 27. | One 18k white gold ring w/ star diamond |
| 28. | One Rolex Day-Date watch |
| 29. | One Rolex Air-King watch |
| 30. | One Rolex DateJust 41 watch |
| 31. | One Audemars Piguet Royal Oak OffShore watch |
| 32. | One 14k rose gold necklace |
| 33. | Three bronze Roman coins |

2

# EXHIBIT 1

# IN DEPTH APPRAISALS

███████████

*www.indepthappraisals.com*

April 7, 2023
Report # 097

Federal Bureau of Investigation (FBI)
Asset Forfeiture Unit/ Steven Olson
11000 Wilshire Blvd.
Los Angeles, CA 90024

      Seizure #: ████████████
      CATS #: ██████████
      FBI Case #: █████████████████
      Date of Seizure: November 16, 2022

Attention; Asset Forfeiture Unit

Enclosed is the appraisal report for the jewelry and watches I examined on March 23, 2023 at the above location with personnel present. I understand that the Asset Forfeiture Unit of the FBI has requested an appraisal to determine the Liquidation Value for internal purposes. Value conclusions are effective as of the stipulated date of November 16, 2022. An appraisal is not an all-inclusive document and there are many specific types of appraisals suited for specific needs. To avoid any misunderstandings, the enclosed report should be read in its entirety.

The total Liquidation Value for the nineteen items is $164,106.00.

Development of valuation is based on my professional background and experience, using gemological procedures and appraisal methods that are standard and acceptable within the industry. I relied upon available market resources for value conclusions.

This report is presented as PDF, sent via email attachment. I will retain a copy for only five years. Where additional services are requested by the client, authorized agent or the courts, compensation will be at the current hourly rate charged by this appraiser at that time.

I welcome questions you might have now or in the future.

Jennifer Thornton, G.G.

**Table of Contents**

- Introduction
- Liquidation Value
- Sources of Research
- Approaches to Value
- Limitations of Mounted Goods
- Certification
- Description
    - Valuation
    - Photo
- Procedure
- Equipment Available
- Glossary
- USPAP
- Disclosure & Use

**Introduction**

The following report is for the jewelry and watches I examined on March 23, 2023, with personnel from the Asset Forfeiture Unit of the FBI present. Representative Steven Olson requested an appraisal to determine Liquidation Value of said items for inventory and internal purposes. Value conclusions are effective as of the date of "seizure" November 16, 2022.

Under no circumstance is this appraisal to be used or accepted by anyone for any purpose other than that for which it is specifically noted. This report remains confidential. Market research information obtained from this assignment may be referenced anonymously by the appraiser solely for the purpose of subsequent professional discourse.

**Liquidation Value**

The value of a business or of an asset when it is sold in liquidation, as opposed to being sold in the ordinary course of business[1].

Liquidation Value Has Two Market Levels; Forced/*immediate* and Orderly/*leisurely*

- Orderly liquidation means that the assets are sold over a reasonable period of time: normal exposure in the market to their appropriate secondary markets.
  - An opinion of the gross amount, expressed in terms of money, that typically could be realized from a liquidation sale, given a reasonable period of time to find a purchaser, with the seller being compelled to sell on an as-is, where-is basis, as of a specific date[2].
- Forced liquidation means that the assets are sold as quickly as possible: less than normal exposure time in the market[3].
  - The key conditions are consummation of a sale within a short time period; seller is under extreme compulsion to sell and; a normal marketing effort is not possible due to the brief exposure time[4].

The Auction Market is Most Appropriate for the Purpose of Orderly Liquidation

The level of trade or the most common market for previously worn jewelry (estate jewelry market) is auction or estate jewelry stores[5]. The auction market is an appropriate secondary market for estate jewelry and also provides a platform where an item may be sold (liquidated) within a normal exposure time thereby meeting the elements of orderly liquidation. The estate jewelry store has too many variables[6] comprising acquisition and sales of estate jewelry in which to consider it as a primary source of comparable sales. However, it may deserve consideration towards the value (opinion) conclusion because, it may provide a "check and balance" of the estate jewelry market, i.e., supply & demand or, a buyer or seller's market.

---

[1] Black's Law Dictionary.
[2] Definitions of Value Relating to MTS Assets. Source: Machinery & Technical Specialties Committee of the American Society of Appraisers – July 25, 2018.
[3] The Dictionary of Real Estate Appraisal, Fifth Edition.
[4] Liquidation Value Addendum © Appraisal Institute 2013.
[5] Physical retail location that is dedicated to estate jewelry or combination of new and estate jewelry versus a virtual seller's platform.
[6] At a minimum, variables may include financing, consignment and extended periods of exposure.

## Sources of Research

An opinion of value is a researched conclusion built on and supported by facts gathered, analyzed and interpreted from the appropriate market (level of trade) in which the most sales for the item (like, kind and quality) occur.  The most common market for estate jewelry is the secondary market, with sales through public auctions and estate jewelry stores.  Property that is seized in consequence of a violation of public law has a probability of being sold, and the market level in which it is offered for sale is a public auction[7].  Value expresses an economic concept, as such, it is never a fact but always an opinion of the worth of a property at a given time in accordance with a specific definition of value[8].

For this report, unless otherwise stated, valuation was based on comparable items found at auction. Some extrapolation, interpolation and adjustment is necessary for estate jewelry due to availability of similar pieces, quality of material and manufacture, style and desirability. The Internal Revenue Service (IRS) states that sales of comparable property is an important method for determining the fair market value[9].

All sources considered or relied on are presumed to be reliable.  If a market[10] used in the development of the value conclusions was other than balanced (neither a buyers nor seller's market), it will be noted.

## Approaches to Value

Unless otherwise noted, the appropriate approach for this assignment is the Sales Comparison Approach because the item was not income producing, nor is the item being estimated for replacement. If any other approach has been used it will be noted.

There are three traditional approaches to value in the appraisal field, "All are based on the principle of substitution… no reasonable buyer would pay more for the property being appraised than the cost of an equivalent substitute."  As part of the analysis towards a value conclusion, all three have been considered. "All three approaches involve research of actual market events... Each provides different information and a different perspective on the market thus, each checks the other.[11]

---

[7] Part 9. Criminal Investigation, Chapter 7. Asset Seizure and Forfeiture, Section 6. Custody and Storage of Seized Assets. (1) 9.7.8.6.4 (12-03-2002) Methods of Sale "Forfeited property is to be sold by the seized property contractor at public auction using competitive methods. Public auctions can be opened to prospective bidders in locations outside the local sale site by means of telecommunication or audio/visual networks." GSA Subchapter B-Personal Property, Part 102-38-Sale of Personal Property, Subpart A-General Provisions Competitive Sales §102-38.95—An auction is a sale where the bid amounts of different bidders are disclosed as they are submitted, providing bidders the option to increase their bids if they choose. Bids are submitted electronically and/or by those physically present at the sale. Normally, the bidder with the highest bid at the close of each bidding process is awarded the property.
[8] Advisory Opinions 2016-2017 Edition, pg. 155, sec. 24-27. The Appraisal Foundation.
[9] IRS Pub. 561. The definition is inferred to be a consistent approach in other circumstances.
[10] USPAP Standard Rule 7-3 (c) "analyze the relevant economic conditions that exist on the effective date of the valuation, including market acceptability of the property and supply, demand, scarcity or rarity."
[11] Gems and Jewelry Appraisal Techniques and Standards Student Manual, ASA, 2006.

<u>Sales Comparison Approach</u>[12] "A procedure to conclude an opinion of value for a property by comparing it with similar properties that have been sold in the relevant marketplace by adjusting prices based on marketplace conditions and the properties' characteristics of value."

<u>Cost Approach</u>[13] When a cost approach is necessary for credible assignment results, an appraiser must: (I) analyze such comparable cost data as are available to estimate the cost new of the property; and (II) analyze such comparable data as are available to estimate the difference between cost new and the present worth of the property (depreciation).

Cost**:** the amount required to create, produce, or obtain a property[14].

<u>Income Approach</u>[15] For an income-producing property.

**Limitations of Mounted Goods**

Mountings prohibit full and accurate observation of gem quality and weight. All data pertaining to mounted gems are considered only as approximate. The grading of gemstones is a subjective procedure and grades may vary from one professional, trained grader/appraiser to another, depending upon conditions of lighting, time allowed for grading, quality and accuracy of master (comparison) diamonds, and color and hue discrimination abilities of the appraiser.

*Unless otherwise stated,*

- o Weights and measurements are estimates, based upon formulas and the use of measuring instruments as generally practiced and accepted in gemology and the jewelry appraisal profession.
- o Color and clarity grades are provisional, due to the limitations created by the mounting, and might be changed by the undersigned if graded out of the mounting later.
  - o Note: The influence of a grading report from an industry recognized gemological laboratory[16] on valuation is strong and should be considered. Diamond or colored gemstone reports provide grading of actual key characteristics such as weight, color or origin that are assessed within a controlled environment while the diamond or gemstone is unmounted.
- o Watch cases (in most instances) have not been opened because, the movement may become contaminated or the seal (gasket) would need to be replaced. This is especially a consideration towards high value watches.

---

[12] Gems and Jewelry Appraisal Techniques and Standards Student Manual, ASA, 2006.
[13] USPAP Standards Rule 7-4(b)
[14] USPAP Definition.
[15] Sales Comparison, Cost and Income Approach (Approaches to Value, 2017).
[16] Gem labs such as, GIA (*www.gia.org*) or AGS (*www.ags.org*).

**Certification** I certify that to the best of my knowledge and belief, that statements of fact contained in this appraisal report are true and correct. *The reported analyses, opinions and conclusions were developed, and are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.*

- I have no present or prospective interest in the property that is subject of this report and have no personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of the report or to the parties involved in the assignment.
- I have performed services as an appraiser regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined result or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.  The fee structure for this assignment is based on an hourly fee plus expenses.
- I have made a personal inspection of the property that is the subject of this certification.
- No one provided significant personal property appraisal assistance to the person signing this certificate.
- Other than as noted below, this report has been prepared in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP), published by the Appraisal Foundation.
- <u>Jurisdictional Exception Rule</u>: If any applicable law or regulation (administrative rules) precludes compliance with any part of USPAP, only that part of USPAP will become void for this assignment. This rule serves as a severability clause that is intended to preserve the balance of USPAP. As required by USPAP, a departure from USPAP requirements must be stated within the report.
  - The Asset Forfeiture Policy Manual requires the use of "Liquidation Value" or "Wholesale Value." This requirement was relayed verbally and, in writing, but the actual manual was not provided.

Jennifer Thornton [17]
*All Rights Reserved, 2023*

---

[17] *This appraisal report has been transmitted electronically to my client and includes my signature in electronic form. I affirm that I maintain sole personal control over the use of the electronic signature appended hereto. Electronically affixing my signature to this report carries the same level of authenticity and responsibility for this report's content, analyses and conclusions as would appending an original ink signature on a paper copy of this report.* Graduate Gemologist (GG) The Gemological Institute of America (GIA), Juris Doctor (JD).

**ITEM 1 - WRISTWATCH**[18]
**LIQUIDATION VALUE $39,000.00**

**Watch Attributes**



| | |
|---|---|
| Maker: | Rolex |
| Model: | Day-Date 40 |
| Movement: | Automatic |
| Material: | 18k Everose |
| Bezel: | Fluted |
| Dial / Features: | Olive Green / Day & Date |
| Hour markings: | Roman numerals |
| Bracelet: | President, 18k |
| Clasp: | Deployant |
| Serial number: | W6685656 |
| Model number: | 228235 |
| Weight: | 185 grams |



---

[18] FBI Case #: ███████████

**ITEM 2 - EARRINGS**[19]
**LIQUIDATION VALUE $380.00**

Each with a post, and one plastic friction back.
Each with a four-prong set round brilliant cut diamond and four bead set diamonds upon the outer wall of each earring.

**Item Attributes**

| | |
|---|---|
| Metal fineness: | 18k white gold |
| Weight: | 0.60 dwt, 1.0 grams |

**Total Diamond Weight: 0.67 carats**
**Attributes**



| | |
|---|---|
| Shape and cut: | Round full |
| Weight each: | 0.29 cts. |
| Number of diamonds: | 2 |
| Total Weight: | 0.58 cts. |
| Clarity grade: | I-1 |
| Color grade: | G-H |
| Finish: | Good |

**Attributes**

| | |
|---|---|
| Shape and cut: | Round full |
| Number of diamonds: | 8 |
| Total Weight: | 0.09 cts. |
| Clarity grade: | SI-2 to I-1 |
| Color grade: | H-I |
| Finish: | Good |

---

[19] FBI Case #: ███████████

**ITEM 3 - RING[20]**
**LIQUIDATION VALUE $11,700.00**

A four, double prong set round brilliant cut diamond, and prong and channel set round and baguette diamonds.

**Mounting Attributes**
| | |
|---|---|
| Metal fineness: | 18k white gold |
| Fineness stamp: | 18 |
| Stamp: | D185[21] |
| Weight: | 6.40 dwt, 9.90 grams |



**Diamond Grading**
| | |
|---|---|
| **Shape and Cut:** | Round brilliant |
| Measurements: | 8.00 x 4.93 mm |
| **Weight:** | **1.92 Cts.** |
| Depth: | 61.63% |
| Table: | 58.8% |
| Girdle: | Medium-slightly thick |
| **Finish** | |
| Polish: | Good |
| Symmetry: | Good |
| **Clarity grade:** | **SI-2** |
| **Color grade:** | **H-I** |
| Fluorescence: | None |

**Total Diamond Melee Weight: 1.85 carats**
**Attributes**
| | |
|---|---|
| Shape and cut: | Round full |
| Number of diamonds: | 12 |
| Clarity grade: | SI |
| Color grade: | G-H |
| Cut: | Good |
| Finish: | Good |

**Attributes**
| | |
|---|---|
| Shape and cut: | Baguette |
| Number of diamonds: | 12 |
| Clarity grade: | VS |
| Color grade: | G-H |
| Cut: | Good |
| Finish: | Good |



---

[20] FBI Case #: ███████████
[21] Inferred to represent the actual total carat weight of round full and baguette (melee) diamonds.

**ITEM 4 - RING**[22]
**LIQUIDATION VALUE $22,500.00**

A four-prong set round brilliant cut diamond within a halo of four rows of diamonds; baguette and round diamonds upon the gallery; and baguette and round diamonds upon the shoulders. Sizing balls within the shank.

**Mounting Attributes**

| | |
|---|---|
| Metal fineness: | 14k white gold |
| Fineness stamp: | 14 |
| Weight: | 5.60 dwt, 8.70 grams |



**Diamond Grading**

| | |
|---|---|
| **Shape and Cut:** | Round brilliant |
| Measurements: | 9.20 x 5.56 mm |
| **Weight:** | **2.87 Cts.** |
| Depth: | 60.43% |
| Table: | 64.1% |
| Girdle: | Thick |
| **Finish** | |
| Polish: | Good |
| Symmetry: | Good |
| **Clarity grade:** | **SI-2** |
| **Color grade:** | **I** |
| Fluorescence: | Strong blue |



**Total Diamond Melee Weight:  2.80 carats**
**Attributes**

| | |
|---|---|
| Shape and cut: | Round full |
| Weight each: | 0.004 to 0.008 cts. |
| Number of diamonds: | 278 |
| Total Weight: | 1.36 cts. |
| Clarity grade: | VS-2 to SI-2 |
| Color grade: | G-H-I |
| Cut: | Good |
| Finish: | Good |

**Attributes**

| | |
|---|---|
| Shape and cut: | Baguette |
| Weight: | 0.05 to 0.04 cts. |
| Number of diamonds: | 32 |
| Total Weight: | 1.44 cts. |
| Clarity grade: | VS |
| Color grade: | G-H |
| Cut: | Good |
| Finish: | Good |



---

[22] FBI Case #: ▮▮▮▮▮▮▮▮

**ITEM 5 - RING**[23]
**LIQUIDATION VALUE $175.00**

End set square cabochon crown garnet (8 x 8 mm) and bead set diamonds.

**Mounting Attributes**

| | |
|---|---|
| Metal fineness: | 14k white gold |
| Fineness stamp: | 14k 585 |
| Trademark: | DJ |
| Weight: | 4.20 dwt, 6.60 grams |

**Diamond Attributes**



| | |
|---|---|
| Shape and cut: | Round full |
| Number of diamonds: | 8 |
| Total Weight: | 0.05 cts. |
| Clarity grade: | I-1 to I-2 |
| Color grade: | H-I |
| Cut: | Fair |
| Finish: | Fair |

---

[23] FBI Case #: ▮▮▮▮▮▮▮▮▮

**ITEM 6 - RING**[24]
**LIQUIDATION VALUE $225.00**

Onyx tablet with applied initials, RRA.

**Mounting Attributes**
    Metal fineness:           14k white gold
    Fineness stamp:          14k
    Weight:                   4.20 dwt, 6.50 grams



---

[24] FBI Case #: ███████████

**ITEM 7 - RING**[25]
**LIQUIDATION VALUE $1,500.00**

Solitaire design with a four-prong set princess cut diamond.

**Mounting Attributes**

| | |
|---|---|
| Metal fineness: | Platinum |
| Fineness stamp: | Plat 950 |
| Weight: | 4.0 dwt, 6.20 grams |



**Diamond Attributes**

| | |
|---|---|
| Shape and cut: | Square, modified brilliant Aka, Princess cut |
| Measurements: | 5.70 x 5.00 mm |
| **Weight:** | **0.73 Cts.** |
| **Clarity grade:** | **VS-2** |
| **Color grade:** | **G-H** |
| Finish: | Good |
| Fluorescence: | Faint blue |



---

[25] FBI Case #: ████████████

**Item 8 - Earrings**[26]
**LIQUIDATION VALUE $5,300.00**

Each with a post and friction back, and a four-prong set round brilliant cut diamond.

**Mounting Attributes**
    Metal fineness:               14K white gold
    Fineness stamp:            14k
    Weight:                        1.30 dwt, 2.0 gms

**Total Diamond Weight: 2.79 cts.**
    Finish (both):              Good
**Attributes**



    Diamond #1
    Shape and cut:            Round brilliant
    Measurements:           7.21 - 7.22 mm
    Weight:                        1.39 Cts.
    Clarity:                       I-1
    Color:                        G-H

    Diamond #2
    Shape and cut:            Round brilliant
    Measurements:           7.25 - 7.23 mm
    Weight:                        1.40 Cts.
    Clarity:                       I-2
    Color:                        H-I

---

[26] FBI Case # ███████████████

**ITEM 9 - NECK CHAIN**[27]
**LIQUIDATION VALUE $340.00**

**Chain Attributes**

| | |
|---|---|
| Metal type: | 18K yellow gold |
| Fineness stamp: | 750 |
| Clasp: | Lobster claw |
| Length / Width: | 18.00 inches / 2.00 mm |
| Weight: | 5.40 dwt, 8.40 gms |





---

[27] FBI Case #: ██████████

**ITEM 10 – BROOCH/PIN**[28]
**LIQUIDATION VALUE $660.00**

Safety pin design with pavé diamonds.

**Mounting Attributes**

| | |
|---|---|
| Metal fineness: | 14K white gold |
| Length: | ¾ inches |
| Weight: | 3.80 dwt, 6.0 gms |

**Diamond Attributes**

| | |
|---|---|
| Shape and cut: | Round full |
| Number of diamonds: | 84 |
| **Total Weight:** | **1.00 cts.** |
| Clarity grade: | VS-SI |
| Color grade: | G-H-I |
| Finish: | Good |



---

[28] FBI Case #: ███████████

**ITEM 11 - PENDANT**[29]
**LIQUIDATION VALUE $1,800.00**

Cross design with pavé diamonds and clear resin tubes containing gold shot[30].

**Mounting Attributes**

| | |
|---|---|
| Metal fineness: | 14K yellow gold |
| Measurements: | 2-7/8 x ¾ inches |
| Weight: | 27.60 dwt, 42.90 gms |

**Diamond Attributes**

| | |
|---|---|
| Shape and cut: | Round full |
| Number of diamonds: | 82 |
| Total Weight: | 1.80 cts. |
| Clarity grade: | VS-SI |
| Color grade: | G-H-I |
| Finish: | Good |



---

[29] FBI Case #: ▮▮▮▮▮▮▮▮▮▮
[30] The assumption is that the tubes contain gold shot: small pellets or grains. The use of an assumption results in a credible opinion or conclusion. Extraordinary assumptions involve conditions that are established as true in the appraisal. That is, the appraisal conclusion reflects an "as though true" circumstance. The condition may or may not be true; there is uncertainty created because the truth simply is not known at the time the appraisal is prepared. (USPAP)

## ITEM 12 - BRACELET[31]
## LIQUIDATION VALUE $2,770.00

Box clasp with two safeties, and bead set diamond curb links.

### Mounting Attributes
| | |
|---|---|
| Metal fineness: | 14K yellow gold |
| Fineness stamp: | 14k |
| Trademark: | FJ |
| Weight: | 28.30 dwt, 44.10 gms |

### Diamond Attributes
| | |
|---|---|
| Shape and cut: | Round full |
| Weight each: | 0.03 and 0.02 cts. |
| Number of diamonds: | 178 |
| **Total Weight:** | **4.14 cts.** |
| Clarity grade: | SI |
| Color grade: | H-I |
| Finish: | Good |



---

[31] FBI Case #: ███████

**ITEM 13 - BRACELET**[32]
**LIQUIDATION VALUE $230.00**

**Attributes**

| | |
|---|---|
| Metal fineness: | 14K yellow gold |
| Fineness stamp: | 14k |
| Link design: | Paper-clip |
| Clasp: | Perpendicular |
| Length: | 9-1/4 inches |
| Weight: | 4.10 dwt, 6.30 gms |



---

[32] FBI Case #: ███████████

**ITEM 14 - RING**[33]
**LIQUIDATION VALUE $150.00**

Star motif with pavé diamonds.

**Mounting Attributes**
    Metal fineness:           18K white gold
    Weight:                 2.20 dwt, 3.50 gms



**Diamond Attributes**
    Shape and cut:          Round full
    Quantity:               25
    Total Weight:          0.20 cts.
    Clarity grade:          VS-SI
    Color grade:           H-I
    Finish:                 Good
    Comments:            at least one is a cubic zirconia

---

[33] FBI Case # ▮▮▮▮▮▮▮▮▮▮

**ITEM 15 - WRIST WATCH**[34]
**LIQUIDATION VALUE $36,000.00**

### Watch Attributes

| | |
|---|---|
| Maker: | Rolex |
| Model: | Day-Date |
| Movement: | Automatic |
| Material: | 18K white gold |
| Bezel: | Fluted |
| Dial / Features: | Blue / Day & date |
| Hour markings: | Batons |
| Bracelet: | 18k gold President |
| Clasp: | Deployant |
| Serial number: | 01CW6140 |
| Model number: | 228239 |
| Weight: | 121.20 dwt, 188.50 gms |
| Comments: | Six removed links |
| | 13.0 dwt, 20.30 grams |







---

[34] FBI Case #: ███████████

**ITEM 16 - WRIST WATCH[35]**
**LIQUIDATION VALUE $6,800.00**

**Watch Attributes**



| | |
|---|---|
| Maker: | Rolex |
| Model: | Air-King |
| Movement: | Automatic |
| Material: | Stainless Steel |
| Bezel: | Smooth |
| Dial: | Black with green accents |
| Hour markings: | Arabic numerals |
| | with minute scale |
| Bracelet: | Stainless steel Oyster |
| Clasp: | Deployant |
| Serial number: | 5U70G431 |
| Model number: | 116900 |



---

[35] FBI Case #: ████████████

**ITEM 17 - WRIST WATCH**[36]
**LIQUIDATION VALUE $14,500.00**

**Watch Attributes**

| | |
|---|---|
| Maker: | Rolex |
| Type: | DateJust 41 |
| Movement: | Automatic |
| Material: | Stainless steel |
| | 18K yellow gold |
| Bezel: | Fluted |
| Dial / Features: | Champagne / Date |
| Hour markings: | Diamonds |
| Bracelet: | Stainless Steel |
| | 18K gold Jubilee |
| Clasp: | Deployant |
| Serial number: | 43QK3722 |
| Model number: | 126333 |
| Weight: | 98.60 dwt, 153.40 gms |





---

[36] FBI Case # ███████████

**ITEM 18 - WRIST WATCH**[37]
**LIQUIDATION VALUE $20,000.00**

**Watch Attributes**

| | |
|---|---|
| Maker: | Audemars Piguet |
| Model: | Royal Oak, Off Shore |
| Movement: | Automatic |
| Material: | Stainless Steel |
| Dial / Features: | Brown Tapisserie Chronograph, date |
| Hour markings: | Arabic numerals |
| Strap/Bracelet: | Strap |
| Clasp: | AP Buckle |
| Model number: | 26470 |
| Serial number: | J62369 |
| Rear case: | Skeleton |





---

[37] FBI Case #: ███████████

**ITEM 19 - NECKLACE**[38]
**LIQUIDATION VALUE $76.00**

Spring ring clasp, link chain and two attached pendants: bead set diamond heart and cross.[39]

**Item Attributes**

| | |
|---|---|
| Metal fineness: | 14K rose gold |
| Fineness stamp: | 14kt |
| Weight: | 1.30 dwt, 1.90 gms |
| Length: | 18 inches |



**Diamond Attributes**

| | |
|---|---|
| Shape and cut: | Round full |
| Number of diamonds: | 51 |
| Total Weight: | 0.20 cts. |
| Clarity grade: | SI |
| Color grade: | H-I |
| Finish: | Good |

---

[38] FBI Case #: ▬▬▬▬▬▬▬
[39] The chain was entangled at the time of evaluation.

**Procedure** Evaluation usually consists, at a minimum, of identifying the elements of the jewelry item: condition, measurement's and/or weight of the gemstone including the color, clarity and cut. Metal type either depends upon the representing stamp of quality or is tested (purity is assumed to be consistent with the area tested), gross weight of mounting and analyze the method and style of manufacturing (if possible, determine circa date or period). Also, noting any hallmarks or makers mark. Last, a photo (not representative of actual color or size).

**Equipment Available** Microscope; Natural Diamonds, (GIA-GTL color graded): E, G, I, L, N; Leveridge gauge; Polariscope; Tanita scale; Refractometer; Touchstone and acid for metal testing (limited to gold, platinum & silver); Specific Gravity Liquids; Gem Dialogue; UV light; Dichroscope and; Hanuman filters.

**Glossary**
*Cts* carats
*Dwt* pennyweight
*Full Cut* a brilliant-cut diamond or colored stone with a possible 58 facets, consisting of 32 facets and a table above the girdle and 24 facets and an optional culet below.
*Gms* grams
*Melee* weight less than 0.05 carats.
*Normal Wear* denotes an item which may contain scuffing, light scratches, or other wear that would occur in the normal use of an item of the approximate age of the subject piece.
*Worn Condition* damage and/or fragile.

**Uniform Standards of Professional Appraisal Practice** (USPAP) The Appraisal Standards Board (ASB) of The Appraisal Foundation (so authorized by Congress as the source of appraisal standards and appraiser qualifications) develops, publishes, interprets and amends the USPAP on behalf of appraisers and users of appraisal services.

- The Appraisal Foundation
  www.appraisalfoundation.org
- Gemological Institute of American (*GIA*)
  www.gia.edu

**Disclosure and Use** This report is not a title of ownership. Possession of this report or its copy does not carry the right of publication, nor may this report be used for any purpose by anyone other than the client named in this report or clients authorized agent without previous written consent by the appraiser. If this report is reproduced, copied or otherwise used it must be done so in its entirety including all attachments and no change to any part in this appraisal will be made by anyone other than the person signing this report. Notwithstanding any superseding obligation of law, disputes arising from the creation, presentation, and/or use of this document shall be resolved within the jurisdiction of Los Angeles, California.

# IN DEPTH APPRAISALS

██████████
██████████

*www.indepthappraisals.com*

April 7, 2023
Report # 098

Federal Bureau of Investigation (FBI)
Asset Forfeiture Unit/ Steven Olson
11000 Wilshire Blvd.
Los Angeles, CA 90024

      Seizure #: ████████
      CATS #: ██████████
      FBI Case #: ████████████████
      Date of Seizure: November 16, 2022

Attention; Asset Forfeiture Unit

Enclosed is the appraisal report for the coins I examined on March 23, 2023 at the above location with personnel present. I understand that the Asset Forfeiture Unit of the FBI has requested an appraisal to determine the Liquidation Value for internal purposes. Value conclusions are effective as of the stipulated date of November 16, 2022. An appraisal is not an all-inclusive document and there are many specific types of appraisals suited for specific needs. To avoid any misunderstandings, the enclosed report should be read in its entirety.

The total Liquidation Value for the three coins is $103.00.

Development of valuation is based on my professional background and experience, using gemological procedures and appraisal methods that are standard and acceptable within the industry. I relied upon available market resources for value conclusion(s).

This report is presented as PDF, sent via email attachment. I will retain a copy for only five years. Where additional services are requested by the client, authorized agent or the courts, compensation will be at the current hourly rate charged by this appraiser at that time.

I welcome questions you might have now or in the future.

Jennifer Thornton, G.G.

**Table of Contents**

- Introduction
- Liquidation Value
- Sources of Research
- Approaches to Value
- Limitations
- Certification
- Description
    - Valuation
    - Photo
- Procedure
- Equipment Available
- USPAP
- Disclosure & Use

**Introduction**

The following report is for the three coins I examined on March 23, 2023, with personnel from the Asset Forfeiture Unit of the FBI present. Representative Steven Olson requested an appraisal to determine Liquidation Value of the coins for inventory and internal purposes. Value conclusions are effective as of the date of "seizure" November 16, 2022.

Under no circumstance is this appraisal to be used or accepted by anyone for any purpose other than that for which it is specifically noted. This report remains confidential. Market research information obtained from this assignment may be referenced anonymously by the appraiser solely for the purpose of subsequent professional discourse.

**Liquidation Value**

The value of a business or of an asset when it is sold in liquidation, as opposed to being sold in the ordinary course of business[1].

<u>Liquidation Value Has Two Market Levels; Forced/*immediate* and Orderly/*leisurely*</u>
- Orderly liquidation means that the assets are sold over a reasonable period of time: normal exposure in the market to their appropriate secondary markets.
    - An opinion of the gross amount, expressed in terms of money, that typically could be realized from a liquidation sale, given a reasonable period of time to find a purchaser, with the seller being compelled to sell on an as-is, where-is basis, as of a specific date[2].
- Forced liquidation means that the assets are sold as quickly as possible: less than normal exposure time in the market[3].
    - The key conditions are consummation of a sale within a short time period; seller is under extreme compulsion to sell and; a normal marketing effort is not possible due to the brief exposure time[4].

<u>Auction and Coin Dealers are Most Appropriate for the Purpose of Orderly Liquidation</u>
The level of trade or the most common market for coins is auction or coin dealers. The auction market is an appropriate market for coins and also provides a platform where an item may be sold (liquidated) within a normal exposure time thereby meeting the elements of orderly liquidation. The coin dealer makes acquisitions and sales of coins, bars and bullion. Both are considered towards the value (opinion) because they provide a "check and balance" of the market, i.e., supply & demand or, a buyer or seller's market.

---

[1] Black's Law Dictionary.
[2] Definitions of Value Relating to MTS Assets. Source: Machinery & Technical Specialties Committee of the American Society of Appraisers – July 25, 2018.
[3] The Dictionary of Real Estate Appraisal, Fifth Edition.
[4] Liquidation Value Addendum © Appraisal Institute 2013.

## Sources of Research

An opinion of value is a researched conclusion built on and supported by facts gathered, analyzed and interpreted from the appropriate market (level of trade) in which the most sales for the item (like, kind and quality) occur.  Value expresses an economic concept, as such, it is never a fact but always an opinion of the worth of a property at a given time in accordance with a specific definition of value. The most common market for coins is the secondary market, with sales through public auctions and coin dealers.  Property that is seized in consequence of a violation of public law has a probability of being sold, and the market level in which it is offered for sale is a public auction[5].

For this report, unless otherwise stated, valuation was based on comparable items found at auction. Some extrapolation, interpolation and adjustment is necessary for estate jewelry due to availability of similar pieces, quality of material and manufacture, style and desirability. The Internal Revenue Service (IRS) states that sales of comparable property is an important method for determining the fair market value[6].

All sources considered or relied on are presumed to be reliable.  If a market[7] used in the development of the value conclusions was other than balanced (neither a buyers nor seller's market), it will be noted.

## Approaches to Value

Unless otherwise noted, the appropriate approach for this assignment is the Sales Comparison Approach because the item was not income producing, nor is the item being estimated for replacement. If any other approach has been used it will be noted.

There are three traditional approaches to value in the appraisal field, "All are based on the principle of substitution… no reasonable buyer would pay more for the property being appraised than the cost of an equivalent substitute."  As part of the analysis towards a value conclusion, all three have been considered. "All three approaches involve research of actual market events... Each provides different information and a different perspective on the market thus, each checks the other.[8]

---

[5] Part 9. Criminal Investigation, Chapter 7. Asset Seizure and Forfeiture, Section 6. Custody and Storage of Seized Assets. (1) 9.7.8.6.4 (12-03-2002) Methods of Sale "Forfeited property is to be sold by the seized property contractor at public auction using competitive methods. Public auctions can be opened to prospective bidders in locations outside the local sale site by means of telecommunication or audio/visual networks." GSA Subchapter B-Personal Property, Part 102-38-Sale of Personal Property, Subpart A-General Provisions Competitive Sales §102-38.95—An auction is a sale where the bid amounts of different bidders are disclosed as they are submitted, providing bidders the option to increase their bids if they choose. Bids are submitted electronically and/or by those physically present at the sale. Normally, the bidder with the highest bid at the close of each bidding process is awarded the property.

[6] IRS Pub. 561. The definition is inferred to be a consistent approach in other circumstances.

[7] USPAP Standard Rule 7-3 (c) "analyze the relevant economic conditions that exist on the effective date of the valuation, including market acceptability of the property and supply, demand, scarcity or rarity."

[8] Gems and Jewelry Appraisal Techniques and Standards Student Manual, ASA, 2006.

<u>Sales Comparison Approach</u>[9] "A procedure to conclude an opinion of value for a property by comparing it with similar properties that have been sold in the relevant marketplace by adjusting prices based on marketplace conditions and the properties' characteristics of value."

<u>Cost Approach</u>[10] When a cost approach is necessary for credible assignment results, an appraiser must: (I) analyze such comparable cost data as are available to estimate the cost new of the property; and (II) analyze such comparable data as are available to estimate the difference between cost new and the present worth of the property (depreciation).

Cost**:** the amount required to create, produce, or obtain a property[11].

<u>Income Approach</u>[12] For an income-producing property.

**Limitations**

All data pertaining to the coins is approximate and the term "Ancient" is used broadly. It was not possible to determine period due to worn condition nor are the descriptions an authentication of origin because the coins were uncertified and not graded: not accompanied by a "Certification." Certification as provided by such companies as Numismatic Guaranty Company (NGS).

---

[9] Gems and Jewelry Appraisal Techniques and Standards Student Manual, ASA, 2006.
[10] USPAP Standards Rule 7-4(b)
[11] USPAP Definition.
[12] Sales Comparison, Cost and Income Approach (Approaches to Value, 2017) ASA.

**Certification** I certify that to the best of my knowledge and belief, that statements of fact contained in this appraisal report are true and correct. *The reported analyses, opinions and conclusions were developed, and are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.*

- I have no present or prospective interest in the property that is subject of this report and have no personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of the report or to the parties involved in the assignment.
- I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined result or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal. The fee structure for this assignment is based on an hourly fee plus expenses.
- I have made a personal inspection of the property that is the subject of this certification.
- No one provided significant personal property appraisal assistance to the person signing this certificate.
- Other than as noted below, this report has been prepared in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP), published by the Appraisal Foundation, and the Principles of Appraisal Practice.
- <u>Jurisdictional Exception Rule</u>: If any applicable law or regulation (administrative rules) precludes compliance with any part of USPAP, only that part of USPAP will become void for this assignment. This rule serves as a severability clause that is intended to preserve the balance of USPAP. As required by USPAP, a departure from USPAP requirements must be stated within the report.
  - The Asset Forfeiture Policy Manual requires the use of "Liquidation Value" or "Wholesale Value." This requirement was relayed verbally and, in writing, but the actual manual was not provided.

[13]

Jennifer Thornton
*All Rights Reserved, 2023*

---

[13] *This appraisal report has been transmitted electronically to my client and includes my signature in electronic form. I affirm that I maintain sole personal control over the use of the electronic signature appended hereto. Electronically affixing my signature to this report carries the same level of authenticity and responsibility for this report's content, analyses and conclusions as would appending an original ink signature on a paper copy of this report.* Graduate Gemologist (GG), of The Gemological Institute of America (GIA); Juris Doctor (JD).

**ITEM 1 - COIN**[14]
**LIQUIDATION VALUE $21.00**

**Coin Attributes**

| | |
|---|---|
| Metal: | Bronze |
| Era: | Ancient Roman |
| Obverse: | Bust Right |
| Legend: | Illegible |
| Reverse: | Illegible |
| Measurements: | 30 x 31 mm |
| Weight: | 13.30 dwt, 20.70 grams |
| Condition: | Fair - Poor |





---

[14] FBI Case #: ███████████

**ITEM 2 - COIN**[15]
**LIQUIDATION VALUE $41.00**

## Coin Attributes

| | |
|---|---|
| Metal: | Bronze |
| Era: | Ancient Roman |
| Obverse: | Bust Right |
| Legend: | Illegible to partial AVGG[16] |
| Reverse: | Illegible |
| Measurements: | 28 x 26 mm |
| Weight: | 6.70 dwt, 10.50 grams |
| Condition: | Fair-Poor |





---

[15] FBI Case #: ███████████

[16] Interprets as, Emperors reigning together.

**ITEM 3 - COIN**[17]
**LIQUIDATION VALUE $41.00**

## Coin Attributes

| | |
|---|---|
| Metal: | Bronze |
| Era: | Ancient Roman |
| Obverse: | Bust Right |
| Legend: | Illegible |
| Reverse: | Standing figure grasping hand of kneeling figure |
| Measurements: | 25 x 26 mm |
| Weight: | 6.20 dwt, 9.70 grams |
| Condition: | Fair |





---

[17] FBI Case #: ██████████

**Procedure** Evaluation usually consists, at a minimum, of identifying the elements of the item: condition, measurement's and/or weight. Metal type determined by the apparent quality as bronze. No certification accompanied the coins (i.e., Numismatic Guaranty Company (NGC) Last, a photo (not representative of actual color or size).

**Equipment Available** Microscope; Natural Diamonds, (GIA-GTL color graded): E, G, I, L, N; Leveridge gauge; Polariscope; Tanita scale; Refractometer; Touchstone and acid for metal testing (limited to gold, platinum & silver); Specific Gravity Liquids; Gem Dialogue; UV light; Dichroscope and; Hanuman filters.

**Uniform Standards of Professional Appraisal Practice** (USPAP) The Appraisal Standards Board (ASB) of The Appraisal Foundation (so authorized by Congress as the source of appraisal standards and appraiser qualifications) develops, publishes, interprets and amends the USPAP on behalf of appraisers and users of appraisal services.

- The Appraisal Foundation
  www.appraisalfoundation.org
- Gemological Institute of American (*GIA*)
  www.gia.edu

**Disclosure and Use** This report is not a title of ownership. Possession of this report or its copy does not carry the right of publication, nor may this report be used for any purpose by anyone other than the client named in this report or clients authorized agent without previous written consent by the appraiser. If this report is reproduced, copied or otherwise used it must be done so in its entirety including all attachments and no change to any part in this appraisal will be made by anyone other than the person signing this report. Notwithstanding any superseding obligation of law, disputes arising from the creation, presentation, and/or use of this document shall be resolved within the jurisdiction of Los Angeles, California.